**CODE:**
ACTING IN PRO SE
Glenn Galvan
7866 Morgan Pointe Circle
Reno, NV 89523
(775)-997-2097
Pro Se

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GLENN GALVAN,

    Plaintiff,

vs.

    Defendants

Mortgage Electronic Registration Systems (MERS), Deutsche Bank National Trust Company (DBNTC); Beneficiaries, other related Loan Servicers; et al., and Does 1 through 100, inclusive,

**Case No.:** 3:15-cv-00632-RCJ-VPC

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    Comes now the plaintiff acting in Pro Se, pursuant to FED. R. Civ. Proc. Rule 56 and LR 56-1 along with the pleadings, evidence, state and federal laws, case law, the preponderance of the evidence, and that theirs NO question of facts remain, the plaintiff's moves for summary judgment against the defendants. Because of MERS and DBNTC knew of Aurora Loan Services and Nationstar Mortgage misrepresentations and their defective documentation then to execute a frivolous foreclosure action against the plaintiff, then conceal those material facts, the defendants are liable. Plaintiff requests the court to grant summary judgment against the defendants for the plaintiff's 4 actions.

**DEFINITIONS:**

    "Subject Property" is the plaintiff's property of 7866 Morgan Pointe Circle Reno, NV

    "Subject Loan" is the promissory note in **Exhibit 10**.

    "MERS" is Mortgage Electronic Registration Systems, incorporated in January 1, 1999 in Delaware.

## STATEMENT OF FACTS

**A.     History of Events of Plaintiff**- On December 5, 2005 Galvan executed a refinance of the "Subject Property" through MILA. MILA filed for bankruptcy *(U.S. Bankruptcy Court, Western District of Washington, Case # 07-13059)*. MILA's is NO longer in existence as the company ceased operations thereabouts in April 2007.   This refinance is known as the **"Subject Loan"** in this complaint. The "Subject Loan" original amount was for about $410,000 however, with penalties and other fees and costs Nationstar is asking for about $580,000. The "Subject Loan" of the "Subject Property" was allegedly sold and improperly transferred several times during the period of 2005 and 2012. DBNTC is listed as a trustee/investor/party of interest **(See Exhibit 11)** and investor/party of interest.

**B.** Aurora Loan Services became the unauthorized servicer for the plaintiff's mortgage in the March/April of 2008.

**C.** Sometime in the spring of 2009 Quality Home Service became unauthorized trustee for the servicer Aurora Loan Services. Deed of Trust state that the Lender can only *"remove trustee and appoint a successor trustee"*. In September 2009 a Quality Home Service through their attorneys McCarthy Holthus held a mediation. Where the plaintiff was induced to agree to a short sale of plaintiff's "subject property". Agreements were signed and the plaintiff held a short sale for more than a year, the subject property was NOT sold. The unauthorized short sale of the plaintiff's "subject property" was a great nuisance and disruption to the plaintiff's life. All this took place before an invalid an/or fraudulent assignment of Deed of Trust was executed between MERS and Aurora Loan Services on April 22, 2010 and filed with the Washoe Recorder on May 4, 2010 **(Exhibit 2)**.

**D.** On October 22, 2012, Aurora Loan Services transferred the mortgage to Nationstar Mortgage as Nationstar acquired the assets of Aurora Loan Services on June 2012. Then  the Judicial Foreclosure was commenced in the 2nd District Court of Nevada, Wahoue County on November 6, 2012 by Nationstar.

**E.     Court Procedural History** -  Only Nationstar Mortgage initiated a judicial foreclosure action against the plaintiff's  "Subject Property" on November 06, 2012 in the Nevada's State Court specifically in the 2nd District Court in Washoe County; Case No: CV12-02785.

**F.**     Galvan answered the complaint from Nationstar Mortgage and filed counterclaims on December 28, 2012 for five causes of action against **ONLY** Nationstar Mortgage. Namely for Fraud in the Inducement, Bad Faith, Violations of the Nevada Revised statutes and Nevada court Procedures, violation of RESPA and HOEPA, and violations of the Fair Credit Reporting Act (FCRA) with NO rem action.

**G.**     On May 7, 2013 Galvan amended the State's Court case (from 5 causes of action) and removed them into the U.S. District Court of Nevada and supplemented the federal case with additional claims to 14 causes of action which included Foreclosure Fraud, Inducement, Misrepresentation, Enrichment, Civil Conspiracy, Civil Rico Violations, Breach of Fiduciary Duties, Breach of Security Instrument, Usury, etc. Galvan's case in the District Court supplemented additional parties other than Nationstar for diversity jurisdiction .

**H.**     June 3, 2013 the Nevada's 2nd District Court transferred the entire "States Case" into the U.S. District Court.

**I.**     On July 17 2013, Nationstar and other parties, filed a motion to dismiss Galvan's Federal case and Remand the "Judicial Foreclosure" back to the State Court. Plaintiff opposed both motions.

**J.**     On Februrary 18, 2014 the District Court issued its dismissal of the Plaintiffs Case and to remand the "Judicicial Foreclosure" back to the State Court of Nevada because of, mostly due to lack of subject matter jurisdiction compulsory counterclaims FRCP 13(a).

**K.**     Galvan Filed a Motion for reconsideration on February 28, 2014. After the district court's dismissal, in early March 2014 during Galvan's reconsideration motion in the US District Court and upon further inspection of the documents it was discovered that the Corporate Assignment of the Deed of Trust is alleged to be fraudulent. It was discovered that the individual, Theodore Schultz, who signed on the affidavit on the Corporate Transfer of the Deed Of Trust of the 'subject property" signed as VP Mortgage Electronic Registration Systems. In fact, by a ruling out of the Court of Appeals of Ohio, (See Aurora Loan Servs., L.L.C. v. Louis, 2012-Ohio-384).  Mr. Schultz was an employee of Aurora Loan Services at the time as admitted by and Request for Admissions. There was NO valid corporate resolution attached in any documentation or there was NO Power attorney or no order attached authorizing Shultz to sign for MERS. The assignment was recorded with the Washoe County recorder on May 4, 2010.

**L.** On August 30, 2014, the District Court issued its final order denying the Plaintiff for reconsideration, amend the judgement, and for a new trial even after Galvan discovered new evidence on Theodore Shultz. Subsequently, Galvan appeals the final order to the Ninth Circuit Court of Appeals on September 3, 2014.

**M.** Galvan filed a Response to Order to Show Cause on December 5, 2014 then filed a Motion for Sanctions against Nationstar et al on January 5, 2015 for concealment of facts and for filing frivolous pleadings namely the defendant's dismissal. The Court issued its order to affirm on February 27, 2015 citing that FRCP 13(a) was the primary reason behind the District Court's dismissal**.**

**N.** On March 9, 2015 Galvan filed a Petition for rehearing and rehearing en bank. This was due to the fact the Ninth Circuit Panel's decision to dismiss the case was primarily due to compulsory counterclaims FRCP 13(a) where the panel utilized only a single element of compulsory counterclaims and did NOT take into account of *"presence of additional parties",* whereas two elements were utilized in other court cases in the Court of Appeals of the Ninth Circuit.

**O.** On April 24, 2015 the Ninth Circuit Court of Appeals Panel denied Galvan's petition for rehearing and rehearing en banc. Subsequently, Galvan filed with Ninth Circuit a Motion to Stay the Mandate pending of Writ of Certiorari. On May 1, 2015 Ninth Circuit denied the stay. On May 13, 2015 Galvan filed directly an "Application" with the Supreme Court of the United States *"Application To Recall And Stay Mandate And Issue A Stay For Lower Court Proceedings Pending Resolution Of Certiorari Petition"*. On May 19, 2015, the Honorable Justice Anthony Kennedy denied the recall and stay. Galvan had the option to file the Certiorari petition. The plaintiff intended to file Certiorari Petition, however, after further review of the Supreme Court case and because of economic reasons along with the discovery of new evidence after the Federal Dismissal and with the Doctrine of Res Judicata Galvan, decided NOT to pursue the Certiorari petition. Instead the plaintiff filed a new action with the State Court.

**P.** On July 27, 2015 the Washoe County Second District Court of Nevada approved the plaintiff's motion to proceed in forma pauperis and subsequently filed the plaintiff's complaint which included nine causes of action of Statutory Concealment of a Material Fact, Fraudulent Concealment, Fraudulent Inducement, Construct Fraud, Notory Fraud/Fraudulent Misrepresentation, Aiding and Abetting, Negligent Misrepresentation, Breach Of

Covenant of Good Faith and Dealings-Tort, and Quite Title against Nationstar Mortgage, Aurora Loan Services, and Quality Loan Service. The Case Number with the parties that Nevada has jurisdiction is CV15-01360.  CV15-01360 and CV12-02785 were consolidated. The state court dismissed CV15-01360 due to compulsory counterclaims even though many cases across the nation have ruled that once cases are consolidated that compulsory counterclaims are no longer an issue. This case in discovery. Trial date has been set.

**Q.**      This federal case was opened in December 31, 2015. The pleading was filed on April 18, 2016. Discovery period was held till September 5, 2016, however discovery motions are pending because of the lack cooperation from the defendant RFAs and PODs that were upon them. Some admissions were made, however defendants fail to provide critical documents. Nevertheless, the plaintiff has obtained numerous documents to substantiate the plaintiff's claims to where this summary judgment is based on.

**1.  Broad Aspect of the Facts for MERS and DBNTC**-

**A. MERS**- Based on the Consent Orders[1] issued by the Board of Governors on April 13, 2011, documentation from the Delaware of Secretary State, MERS own System Procedures there were 2 separate companies of Mortgage Electronic Registration Systems:

**1.** The first company of Mortgage Electronic Registration Systems was incorporated in October 16, 1995 then ceased operations in June 30, 1998.  **(See Exhibit 4)**

**2.** Second Company of  MERS was incorporated in January 1, 1999. This is where all of the documents and all of the mortgages, assignment activities and others are under the MERS System including the plaintiff's "subject property". **(See Exhibit 4 and Exhibit 5, Page 209)**

**3.** According to the consent orders MERS were engaging "unsound and unsafe practices" where MERS:

> *"(4) In connection with services provided to Examined Members related to tracking, and registering residential mortgage loans and initiating foreclosures ("residential mortgage and foreclosure-related services"), MERS and MERSCORP:*
> *(a) Have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; and*
> *(b) have failed to establish and maintain adequate internal controls, policies, and*

---

**1.** Regarding Consent Orders  pursuant to 12 USC §1818(i)(1) *"no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order."*

*procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members.*
*(5) By reason of the conduct set forth above, MERS and MERSCORP engaged in unsafe or unsound practices that expose them and Examined Members to unacceptable operational, compliance, legal, and reputational risks."* **See Exhibit 6, Page 5**

**4.** According to the same consent orders, the OTC ordered MERS to establish the Corporate Resolution Management System (CRMS) *"development and implementation of a plan to ensure that MERS certifying officers are transitioned expeditiously onto the Corporate Resolution Management System "CRMS" in accordance with MERS' current certifying officer policy and process;"* **(See Exhibit 6, Page 10 at g)**

**B. Aurora Loan Services (ALS)-** Based on the consent orders and other documentation-

**5.** Aurora Loan Services (ALS) was a subsidiary of the Aurora Bank, FSB who was a subsidiary of Lehman Brothers who filed for bankruptcy in September 15, 2008.  ALS claims it is a member associated with MERS.

**6.** Consent orders issued by Office of Thrift and Supervision (OTS), January, 09, 2009 issued a cease and desist order for Lehman and its subsidiaries. The order stated that the *Association (Lehman, ALS Etc) shall NOT (i) engage in any transaction with an affiliate"* **See Exhibit 16 page 6** *In addition the OTS finds that the association has engaged in unsafe and unsound banking practices and failed to comply with requirement of various laws and regulation including"* **See Exhibit 16 page 15 .** The order lists out detailed violations, including *"Operating with capital that is insufficient"*

**7.** On April 13, 2011 again the OTS issued Consent Orders against ALS and stated that they were engaging in unsound and unsafe practices. The OTS findings were significant:

*"2. In connection with certain foreclosures of loans in its residential mortgage servicing portfolio, the Association engaged in the following* **unsafe or unsound practices***:*
*(a) filed or caused to be filed in state and federal courts numerous affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;*

> *(b) filed or caused to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, specifically that were not signed or affirmed in the presence of a notary;*
> *(c) litigated foreclosure and bankruptcy proceedings and initiated non-judicial foreclosure proceedings without always ensuring that the promissory note and mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time;*
> *(d) failed to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes;*
> *(e) failed to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and*
> *(f) failed sufficiently to oversee outside counsel and other third-party providers handling foreclosure-related services."* **See Exhibit 16 Page 21**

### C. Specific Facts Relating to this Case:

**8.** MERS is listed in the plaintiff's Deed of Trust in **Exhibit 12** as the beneficiary. This case is an example unsound and unsafe practices as stated in the consent order from all parties, including MERS, ALS, DBNTC *"filed or caused to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, specifically that were not signed or affirmed in the presence of a notary;" See* **Exhibit 16 page 21.**

**9.** A corporate resolution was submitted as part of the discovery, however, it is alleged to be invalid as it was executed by William Hultman, Officer of MERS, in October 22, 1998 before 1999 MERS corporation was incorporated on January 1, 1999. There was NO MERS in existence when this Corporate Resolution was executed as 1995 MERS Corporation cease to exist on June 31, 1998 **(See Exhibit 4).** No Corporate Resolution exists between the 1999 Corporation of MERS and Aurora Loan Services.

**10.** In the plaintiff's Deed of Trust in **Exhibit 12,** it states that "***MERS is a separate corporation*** *that is acting solely as a nominee for Lender and Lender's successor and assigns.* ***MERS is the beneficiary of this Security Instrument***". MERS incorporated in 1999 is a separate and distinct Corporation and legal entity from 1995 MERS.

**11.** DBNTC is the trustee and/or the Investor/Party of Interest to the plaintiff's mortgage see **Exhibit 11.**

**12.** The corporate assignment of the Deed of Trust for the Subject property executed by Theodore Schultz in **exhibit 2** utilizes a 1995 seal/stamp where, according to MERS it suppose to use a 1999 seal/stamp for the 1999 corporation of MERS. The use of the 1995 MERS seal/stamp misrepresents the real corporation of MERS. This is corroborated by MERS own procedures **(See Exhibit 5, Page 182 and Exhibit 7, Pages 244, 461, 629).**

**13.** Evidence that was recently discovered illustrate the assignment signed by Theodore Schultz in other courts throughout the nation have named him as "known robosigner". **(See Exhibit 7 pages 244, 461, 629)**

The above facts are all supported by the Secretary State of Delaware **(Exhibit 4),** MERS own internal procedures **(Exhibit 5),** OTC Consent Orders**(Exhibit 6 and 16),** in Galvan's Deed of Trust, the Viel Doctrine, William Hultman's own testimony **(Exhibit 13)** and other court cases across the country **(Exhibit 7 pages pages 244, 461, 629).**

## MEMORANDUM WITH PONITS AND AUTHORITY TO GRANT MOTION FOR JUMMARY JUDGMENT

**1. FRCP Rule 56 Summary Judgement**-   Summary judgment is appropriate if *"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."* Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).   All justifiable inferences must be viewed in the light most favorable to the *1167 non-moving party. See County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir.2000) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

**2. Facts Material to the Disposition of the Motion Illustrate NO Genuine issue of Material fact remain, as Torts Perpetrated by DBNTC, ALS, and MERS (Tortfeasors) are detailed and clear**- Here the defendants of MERS and DBNTC had broad and detailed knowledge of the torts perpetrated by ALS as stated in the consent orders by the OTC, along with the details surrounding the Corporate Resolution, plaintiff's instruments namely the Corporate Assignment of the Deed of Trust **(Exhibit 2),** the promissory Note **(Exhibit 10)** and the Deed of Trust **(Exhibit 12)**.

Nevada is a state that requires all three documents in order to execute a foreclosure. NRS 107.071 and 107.086 including case law state *"The legislative intent behind requiring a party to produce the assignments of the deed of trust and mortgage note is to ensure that whoever is foreclosing "actually owns the note" and has authority to modify the loan."* Leyva v. National Default Servicing Corp., 255 P.3d 1275 (Nev. 2011).  *"The deed of trust, with any assignments, identifies the person who is foreclosing"* (Quoting Leyva) Valid assignment are needed Pursuant to *"NRS 111.205(1) (emphases added). Thus, to prove that MortgageIT properly assigned its interest in land via the deed of trust to Wells Fargo"* Again see Leyva 255 P.3d 1275 at id.  From this, a VALID assignment is required in which is the basis of the torts perpetrated by ALS, Nationstar Mortgage and by the defendants as outlined below pursuant to LR 56-1.

**A. Pursuant to 1 U.S.C. § 1 and 12 U.S.C. § 1818(i)(3)  MERS did NOT exist as a Legal Entity when the CR was Executed**- As stated in the consent orders by the OTC, MERS were careless and reckless regarding administering their responsibilities on its claimed members (servicers), lenders and ultimately to the borrower where they  *"Have failed to exercise appropriate oversight, management supervision and corporate governance,"* (**See Exhibit 6).**  As an example, as stated above, documentation ascertained from Secretary State of Delaware **(Exhibit 4)** in the place where MERS was incorporated twice as the Corporate Resolution provided by MERS was executed by William Hultman when MERS was not in existence as a legal entity in October 22, 1998. As the 1995 MERS was incorporated in October 16, 1995 then cease to exist on June 30, 1998. The 1999 MERS corporation, where all mortgage activities are being controlled, was incorporated on January 1, 1999.

The 1995 MERS and the current 1999 MERS are separate legal entities pursuant to 1 USC § 1 *"the words "person" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals;"* As the United States Supreme Court has noted *"The well-settled rule is that a corporation is a separate legal entity; the separate corporate form cannot be disregarded."* See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984). The Plaintiff's Deed of Trust states: "**MERS is a separate corporation** *that is acting solely as a nominee for Lender and Lender's successor and assigns."*. Furthermore, MERS System Procedure Manual in **Exhibit 5 page 209** states:

> *"MERS was incorporated in 1999 in the state of Delaware. The corporate office of MERS is located at 1818 Library Street, Suite 300, Reston, Virginia 20190. MERS is a wholly-owned subsidiary of MERSCORP. MERS serves as the mortgagee of record for mortgage loans that Members are required to register on the MERS® System and MERS® Commercial."*

To those facts that the 1999 incorporation of MERS is a separate corporation and as such required a valid corporate resolution under the 1999 MERS corporation. Even Mr. William Hultman, who signed the corporate resolution, who claimed to be an Officer of MERS, testimony[2] in a deposition **Exhibit 13 page 65** indicated when questioned:

> *"Q: At that point on January 1, 1999 the two prior MERS corporations, MERS one and MERS two had adopted over the course of time numerous resolutions, is that correct ??*
> *Mr. Brochin:   Object to the form of the question*
> *A: Yes*
>
> *Q: And of all those prior resolutions adopted by MERS three or just some of them*
> *A: Some of them.*
>
> *Q; Was the resolution of April 9, 1998 granting the secretary the power to appoint certifying officers adopted by the new MERS corporation on or after January 1, 1999?*
> *A: I don't know."*

Even Mr. Hultman didn't know when the power was given to the secretary of 1995 MERS to appoint certifying officers, including Theodore Schultz, were in fact adopted for the 1999 MERS corporation. Again, these were all separate corporations in which a valid corporate resolution is required for the current MERS

---

[2]. The issues were discussed in a conversation the Lead Examiner had with Mark J. Malone, a consumer lawyer based in New Jersey who deposed William Hultman on April 7, 2010 in the MERS-related case of Ukpe v. Bank of New York asTrustee for the Certificate holders of CWABS, Inc. Asset-Backed Certificates Series 2005-AB3 et al (Docket #F10209-08 Sup. Ct. NJ Chancery Div., Atlantic Co.). The portion of the deposition discussed here is attached in **exhibit 13**, for specific viewing if necessary, as it is 170 pages.

corporation and Aurora Loan Services. The tort here is that the current MERS and Aurora Loan Services did Not have a VALID or a proper Corporate Resolution in place to execute the assignment in **Exhibit 2.**

**B.  Assignment Utilizes an Invalid and/or Counterfeit seal/stamp/insignia which is in Violation of Nevada and Federal Laws**- Second important tort is that Aurora Loan Services in the Corporate  Assignment of the Deed of Trust executed by Theodore Schultz on April 22, 2010 in **Exhibit 2,** by

affixing a MERS 1995 seal/stamp/insignia, which at the time it was affixed, misrepresents the true MERS corporation now in existence (1999), which users using MERS as a "cover" for the chain of custody of the mortgage required the use a MERS 1999 corporate seal/stamp as illustrated below. **(See Exhibit 5, Page 182 and Exhibit 7, Pages 244, 461, 629)**   As a reminder UCC 104.3308 states  *"the burden of establishing validity is on the person claiming validity,"*

| **Valid MERS Corp Seal** | **Invalid and/or Counterfeit MERS Corp Seal** |
|---|---|
|  |  |

Improper use or misrepresentation of seal/stamp or insignia of MERS to authenticate that Theodore Schultz of Aurora Loan Services had authority to sign for MERS are criminal violations violation of 18 U.S. Code § 473 – "*Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined under this title or imprisoned not more than 20 years, or both"* or criminal and civil violations under TILA 15 USC § 1611 (1) "***gives false or inaccurate information*** *or fails to provide information which he is required to disclose under the provisions of this subchapter or any regulation issued thereunder*," Private rights of action are pursuant to 15 U.S. Code § 1640 & § 1641 or Nevada state law NRS 370.382(e) or NRS  205.120-  "False certificate to certain instruments punishable as forgery" or NRS 239.330- "Offering false instrument for filing or record" or  NRS  205.395- "False representation concerning

title; penalties; civil action." The tort here is that Aurora Loan Services recorded an assignment in the Washoe County Recorder on May 4, 2010 (**Exhibit 2**) that contained a 1995 Seal/Stamp/-Insignia of MERS, which misrepresented the true corporation of MERS where a 1999 MERS seal/Stamp or insignia were required to authenticate the assignment. **(See Exhibit 5, Page 182 and Exhibit 7, Pages 244, 461, 629)**

**3. MERS System Procedures Manual are Public Documents**- The plaintiff utilizes the MERS System Procedures Manual where this document **(exhibit 5)** in this case are public documents as cited: *"MERS System Procedures Manual, which are publicly available on MERS' website (www.mersinc.org)."* See Bowers et al v. Mortgage Electronic Registration Systems, Inc. et al, No. 5:2010cv04141 - Document 352 (D. Kan. 2013)

**4. Defendants Never Lawfully Cooperated with the Discovery**- Additional issues that this court should consider for summary judgment is the fact that MERS and DBNTC did NOT lawfully cooperated with the discovery. DBNTC and MERS did NOT provide the documents as requested by the plaintiff pursuant to the discovery rules and federal law, pursuant to TILA 15 USC § 1611 (1) and 12 CFR § 1024.32 and 1024.36. The defendants did not sufficiently answer the requests for admissions (RFAs) with clear and conspicuous responses. Responses were full of frivolous objections and were evasive once new evidence was discovered on the Corporate Resolution executed between MERS and ALS and the invalid seal/stamp/insignia that was utilized in the assignment in **exhibit 2**. At the time of this writing motions are pending to have the court order the defendants for production of documents and determine the sufficiency of the responses for that RFAs that were served on the defendants.

**5. MERS and DBNTC had Specific Knowledge of the Torts and the Deficiencies of the Plaintiff's Defective Documentation where an Affirmative Duty arose for the Defendants to Speak to the Plaintiff**- From the broad view, the defendants knew of the industry wide problems regarding of MERS and its members (servicers) as stated in the consent orders. In specific, the defendants knew of the plaintiff's defective documentation by the action MERS took themselves, by executing the defective CR for the 1999 corporation of MERS and actions that took place with the Tortfeasors such Aurora Loan Services with their misrepresentations and the resultant defective assignment. The plaintiff specifically outlined in a court document that there is a

defective assignment which misrepresented the seal stamp or insignia of MERS and the lack a VALID CR executed between MERS and Aurora **(See Exhibit4)**. Since both MERS and DBNTC were parties of the case in 3:13-cv-0234-MMD-WGC and other court cases throughout the country, the defendants must of known and should have known the defects of the documentation and because of their silence, concealment, or non-disclosure and misrepresentation of the facts the plaintiff was harmed. As the U.S. Supreme has noted:

> *"Silence can only be equated with fraud when there is a legal and moral duty to speak or when an inquiry left unanswered would be intentionally misleading.  We cannot condone this shocking conduct… If that is the case we hope our message is clear.  This sort of deception will not be tolerated and if this is routine it should be corrected immediately."* See U.S. v. Prudden, 424 F.2d. 1021; U.S. v. Tweel, 550 F. 2d. 297, 299, 300 (1977)

Since the MERS and DBNTC had relationship with the plaintiff as "*MERS is the beneficiary of this Security Instrument"* and DBNTC is the investor/party of interest/Lender to the plaintiffs mortgage **(exhibit 11)**, each had a legal duty to speak as the facts of the CR and the assignment affected the plaintiffs interest in his "subject property" pursuant to NRS 645B.0147(3) (d),  Furthermore, the inquiry regarding the defective documentation within the defendants were left unanswered as RFA # and POD were left unanswered.

MERS System Procedure's in **Exhibit 5 page 17,** this  MERS internal document indicates when an assignment is erroneously assigned in the name of MERS there is NO mechanism within the procedures to contact and inform the borrower of the error. This is a problem for the plaintiff in their procedure where MERS has a lawful duty to inform the plaintiff of such errors. MERS did NOT inform the plaintiff on the facts See Declarations in **Exhibit 1 #3.**

**6.   Based on the Evidence, Pleadings, and Declarations this Court Warrantss to Grant Summary Judgment for the Plaintiff's Four Actions-** There was a question of fact, if the defendants committed torts against the defendants and whether the defendants communicated those facts. This question of fact is no longer an issue, as stated in this motion filed and the proposed pleadings attached, which have been motioned to be amended, both MERS and DBNTC concealed facts and/or knew or should have known the torts and the mis-representations regarding the defective documents that were executed by Aurora Loan Services along with Nationstar Mortgage.  Based on these defective documents, Aurora and Nationstar gave the illusion that they had

authority to enforce the foreclosure action against the plaintiff in the mediation and in the Nevada state court. Parties acted separately and jointly to defraud the plaintiff out of his "subject property". During this long process of about more than 7.5 years the plaintiff was harmed and damaged. The attached pleadings, along with their the detailed elements for each of the actions are supplemented by the new evidence and findings during the discovery. Below summarizes the actions.

**A.**         **Action 1- Concealment of Facts**-  MERS and DBNTC claim they are beneficiaries or Trustees/Investor/Party of Interest to the "Subject Loan" and "Deed of Trust" of the "Subject Property" and MERS has authority to assign the Deed of Trust.  The Plaintiff claims that MERS and/or DBNTC, violated <u>15 U.S.C. § 1611(1)</u>, <u>12 C.F.R. § 16.32</u>  and/or <u>NRS 645E.130(1,2, and 3)</u> and/or  <u>NRS 645B.0147 (3)(d)</u> and/or <u>NRS 645F-400(g)</u>  by not NOT disclosing, or concealed, or suppressed, or omitted that the fact that Theodore Schultz was an employee of Aurora Loan Services when he allegedly signed as Vice President for Mortgage Electronic Registration Systems (MERS) in the Corporate Assignment of the Deed of Trust of Galvan's "subject property" on April 22, 2010. Mr. Schultz misrepresented himself as an officer of MERS in having authority to sign for MERS.

   Facts concealed to the plaintiff,  based on the evidence, Mr. Shultz was an employee of Aurora Loan Services. Theodore Shultz as an employee of Aurora claimed to be an authorized officer for MERS did not have a VALID corporate resolution executed between the 1999 MERS Corporation and Aurora Loan Services **(Exhibit 3).** There was no MERS in existence when the Corporate Resolution was executed as the current MERS was incorporated in Janurary 1, 1999.  In additions the use of 1995 MERS seal/stamp/insignia used in **Exhibit 2** misrepresents the true corporation of MERS where a 1999 MERS stamp is required **(See Exhibit 5, Page 182 and Exhibit 7, Pages 244, 461, 629)** . DBNTC as the plaintiff's lender/investor or party of interest along with its agent, MERS, had a lawful duty to speak to disclose the material facts to the plaintiff pursuant to <u>NRS 645B.0147(3) (d)</u>   *"Disclose any material fact that the person knows or should know may affect the client's rights or interests or the ability to obtain the intended benefit from the mortgage transaction",* as these facts are directly related on whether Aurora and/or Nationstar had authority to foreclose on the plaintiff's "subject property".   Because of MERS and DBNTC in NOT disclosing the material facts, the plaintiff was harmed.

**B.** **Action 2-Fraudulent Concealment-** MERS and DBNTC have willfully, knowingly, and intentionally fraudulently concealed material information that Theodore Schultz was an employee of Aurora Loan Services when he signed for MERS in the Corporate Assignment of the Deed of Trust. This material Fact is required by federal law 15 U.S.C. § 1611(1), 12 C.F.R. § 16.32 and by the Nevada Revised Statutes specifically NRS 645E.130 and NRS 645B.0147(1) and (3)(d) in which the defendants had a lawful duty to disclose to the Plaintiff. The plaintiff was harmed by subjecting him to a frivolous lawsuit (CV12-02785) known as the "Judicial Foreclosure" filed by Nationstar on November 6, 2012 to try to defraud the plaintiff out of his "subject property".

Because of MERS and DBNTC knew or should have known on the INVALID Corporate Resolutions executed by MERS and Aurora and by the improper or invalid or counterfeit seal/stamp/insignia used in the assignments, Mr. Schultz lack of authorization for MERS, all constitutes fraudulent concealment where both MERS and DBNTC had specific knowledge of the plaintiff's material facts in which there was a lawful duty to disclose [NRS 645B.0147(3) (d)]. The evidence of MR. Hultman's testimony **(Exhibit 13 page 65)** and the plaintiff communicating to the defendants on a motion [3:13-cv-00232-MMD-WGC] **(See Exhibit 14)** were aware of the defects in the plaintiffs documentation in which the defendants had a lawful duty to speak. "*Nondisclosure will become the equivalent of fraudulent concealment when it becomes the duty of a person to speak in order that the party with whom he is dealing may be placed on an equal footing with him."* See Mackintosh v. Jack Matthews and Co., 109 Nev. 628 at 553, 993.

**C.** **Action 3- Aiding And Abetting the Breach Of Fiduciary Duty** - This action is associated with the facts with Action 1 and 2. Plaintiff asserts that MERS and DBNTC violated NRS 645F.445 and/or aided and abetted along with Nationstar and/or Aurora Loan Services and/or Quality Loan Services where all of the defendants had a fiduciary duty to the plaintiff to disclose all material facts to the plaintiff. All defendants breach that duty by NOT disclosing the material facts of Mr. Schultz on the assignment of the Deed of Trust is/was employed by Aurora Loan Services, not having a VALID a corporate resolution executed and utilizing an invalid corporate seal/stamp/insignia in the plaintiff's assignment of the deed of trust for the plaintiff's "subject property". These facts became known to the defendants on March 27, 2014 on a motion document **(see Exhibit 14).** The defendants had a lawful and fiduciary duty to to speak to the plaintiff about those material facts.

MERS and/or DBNTC breached the fiduciary duty by omitting, suppressing or NOT disclosing Material Facts **(see action 1)**. Aurora Loan Services and Nationstar are/were the third parties that committed the specific torts (INVALD CR, executing invalid assignment by utilizing a INVALID and or Counterfeit MERS 1995 corporate seal/stamp/insignia) in which MERS and DBNTC had specific knowledge of. Ultimately, the plaintiff was damaged.

**D.**     **Action4- Constructive Fraud-**   The plaintiff asserts Constructive Fraud which is in conjunction with Action 1 and 2 where the same facts and law to support the fundamental elements of concealment, fraud and/or misrepresentations are being utilized for this action.  MERS and/or DBTNC with their knowledge of the material facts of Mr. Schultz on the assignment of the Deed of Trust was employed by Aurora Loan Services, not having a VALID a corporate resolution executed and utilizing an invalid corporate seal/stamp/insignia in the plaintiff's assignment of the deed of trust for the plaintiff's "subject property".  All defendants had a superior fiduciary relationship between mortgage banks, servicers (agents) and to the plaintiff; to disclose to the plaintiff and to the court material facts that affects the interest to the plaintiff's "subject property.  Defendants had a lawful duty **(see action1 and 2)** to speak. The plaintiff entrusted the defendants with confidence by their superior positions as Beneficiaries and Investors/Party of Interest of the subject loan and the deed of Trust which are agents of the mortgage banks. The defendants breached that confidence by NOT disclosing the material facts. As such the plaintiff was harmed and damaged.

**7.   Damages Claims And Relief**- For each of the actions above 1-4 along with the new evidence and pleadings, the plaintiff has been severely harmed and damaged and is seeking relief and are as follows. Plaintiff is entitled to claims and relief. With all of the above 4 actions from the Plaintiff the total damages perpetrated by the defendants are worth much more than the "subject Loan" and/or Deed of Trust. In addition, to deter the defendants for the egregious conduct and/or perfidious misconduct perpetrated by the defendants, and/or its agents, the plaintiff is seeking statutory, exemplary punitive, and treble damages along with other economic, non-economic damages, physical harm, and emotional distress pursuant to NRS 42, NRS  645B.930, and other damages allowed by state and federal law for knowingly and allowing many years of abuse against the indigent

ProSe plaintiff. ProSe plaintiff is being prejudiced by the defendants as other court actions throughout the country have concluded with settlements.

**8. Emotional Distress-** With the above totality and the recklessness of the defendants. The plaintiff was harmed and suffered emotional distress where the plaintiff has been subjected to more than 7.5 years of foreclosure action, in which included the inducement to an unlawful short sale then to defend a frivolous judicial foreclosure in the state court (CV12-02785).

During the short sale of the "subject property" the plaintiff enlisted real estate agents for a number of months **(See Exhibit 15) from November 16, 2009 through December 10, 2010**. The "Subject Property is located in a nice community, thus there were many walk-throughs showings. The short sale caused a huge disruption on the plaintiff's personal life and time as about 50 showings were executed by the sales agents on to the "Subject Property". The "Subject Property" had to be kept up to ensure that the condition of the property was clean and be ready to sell quickly. This was very demanding and stressful. The plaintiff received an offer but was later rescinded  The plaintiff was given a 2 hour notice from the notice of appointment to the actual showing of the subject property **(See Exhibit 15)**. Not all sales agents followed the rules and thus the plaintiff's privacy was invaded on several occasions**(See Exhibit 15).** Sales agents were given easy access to the "Subjest Property". All this could have been avoided and prevented if the MERS members Aurora were truthful and did not omit critical facts.  Thus, the plaintiff suffered preventable emotional distress.

**A.  Supportability of the Emotional Distress and other Punitive Awards**

In the Ninth Circuit Court of Appeals; *Zang v. American Gem Seafoods, Inc; No: 0136130*, 339 F. 3d 1020 *(Aug 7, 2003);* "Emotional Distress" was argued and the opinion of the Ninth Circuit regarding this issue:

> *"While objective evidence requirements may exist in other circuits, such a requirement is not imposed by case law in ... the Ninth Circuit, or the Supreme Court. See Chalmers v. City of Los Angeles, 762 F.2d 753, 761 (9th Cir.1985) (upholding emotional damages based solely on testimony); Johnson v. Hale, 13 F.3d 1351, 1352 (9th Cir.1994) (noting that emotional damages may be awarded based on testimony alone or appropriate inference from circumstances); Carey v. Piphus, 435 U.S. 247, 264 n. 20, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (noting that emotional distress damages are "essentially*

> *subjective" and may be proven by reference to injured party's conduct and observations by others)."*

Let it be known that the injured party is the pro-se Plaintiff and the statements made above are solely his and his only and shall be used as testimony for defendant's conduct regarding emotional distress. Going further than the 9th Circuit's opinion, additional evidence was presented to substantiate the emotional distress claims.

With all of the totality from above, the plaintiff is also asking for treble damages of the note which is worth more than $410K. The plaintiff is asking for 3 times the worth of the "subject loan" or whatever the honorable Judge deems appropriate for the defendant's wrongdoing. Ensure defendants will never conduct such wrongdoing ever again to an indigent pro-se plaintiff and all other likewise pro-se litigants who can't afford an attorney to defend the egregious behavior of the mortgage lenders and their agents.

Plaintiff prays this court to enter judgment against Defendants and each of them, as follows:

**1.** For a determination that Plaintiff is the rightful holder of title to the Subject Property and that Defendants herein, and each of them, be declared to have no estate, right, title or interest in said property;

**2.** As relief, to deem any Corporate Resolution **Exhibit** 4 and assignment in **Exhibit 2** which were executed under the laws of Delaware and/or Nebraska to be declared INVALID and/or FRAUD ON THE COURT as they were NOT executed under the auspices of 1999 MERS corporation and contain an invalid and/or counterfeit 1995 Corporate seal/stamp/insignia in the Corporate Assignment of the Deed of Trust in **Exhibit 2**.

**3.** Return of any money or property paid by Plaintiff, including all payments made in connection with the transaction; The amount of money equal to twice the finance charge in connection with the transactions; for 10 months $1600/month starting April 2008.

**4.** For attorneys' fees according to statutes for the plaintiff.

**5.** For actual, compensatory and punitive damages for plaintiff;

**6**. The relinquishment of the right to retain any proceeds for the defendants.

**7.** For costs of the suit herein incurred by the plaintiff.

**8.** For such other further relief as the court may deem just and proper for the plaintiff.

**9.** The total the plaintiff is seeking for claims and relief and damages is for $1 million ($250K for each action) against MERS and $500k (125K for each action) against DBNTC.

## CONCLUSION

Pursuant to FRCP 56, the plaintiff requests the court to grant summary judgment against the MERS and DBNTC

The undersigned declares and certifies under penalty of perjury that the foregoing is true and correct.

Executed on  **10th of October 2016**

_____
Glenn Galvan
Pro Se
7866 Morgan Pointe Circle
Reno, NV 89523

## Certificate of Service

This, **Plaintiff's Motion for Summary Judgment** and separate declaration, exhibits if applicable, copies have been sent to the United States District Court on October 10, 2016 parties on CM/ECF will receive copies.

October 10, 2016.

_____
Glenn Galvan
Pro Se
7866 Morgan Pointe Circle
Reno, NV 89523

```
Ballard Spahr
100 North City Parkway, Ste 1750
Las Vegas, NV 89106
Attn: Joseph Sakai (Counsel for
MERS and DBNTC)
```

**Table of Exhibits**

**Exhibit 1----Affidavit of Authenticity of Evidence----------------------------------------5 pages**
**Exhibit 2----Corporate Assignment of Deed of Trust  ------------------------------------4 pages**
**Exhibit 3----1995 MERS Corporate Resolution ------------------------------------------- 3 pages**
**Exhibit 4---- Secretary of State, Delaware, MERS incorporations 1995 &1999----- 4 pages**
**Exhibit 5---- MERS 1999 Internal Procedures -------------------------------------------- 220 pages**
**Exhibit 6----OCC Consent Order for MERS----------------------------------------------- 32 pages**
**Exhibit 7----Examination on Forclosure Cases, Florida---------------------------------760 pages**
**Exhibit 8----RFAs PODs Responses for MERS and DBNTC----------------------------13 pages**
**Exhibit 9----Plaintiff's Pleadings-----------------------------------------------------------175pages**
**Exhibit 10---Promissory Note or "Subject Loan" for Plaintiff's Property------------9pages**
**Exhibit 11---MERS Document---------------------------------------------------------------3 pages**
**Exhibit 12---Deed of Trust for Plaintiff's Mortgage-------- -----------------------------16 pages**
**Exhibit 13---William Hultman's Deposition for MERS---------------------------------171 pages**
**Exhibit 14---Motion Document Showing Defendants Knowledge---------------------46 pages**
**Exhibit 15---Plaintiff's Evidence for Claims and Relief---------------------------------17 pages**
**Exhibit 16---Consent Order from OCC for ALS-----------------------------------------48 pages**