# EXHIBIT 7

# EXHIBIT 7

# FORENSIC EXAMINATION OF THE REAL PROPERTY RECORDS AND THE CIRCUIT COURT RECORDS OSCEOLA COUNTY, FLORIDA

## PART 1 OF 2: SECTIONS 1 - 4



**EXAMINATION CONDUCTED BY DK CONSULTANTS LLC**
**SAN ANTONIO, TEXAS**
**July 14, 2014 - December 20, 2014**

**REPORT ISSUED: December 29, 2014**

# INTRODUCTION

The forensic examination of the real property records of Osceola County, Florida was commissioned by Armando Ramirez, a duly elected public official with the title of Clerk of the Circuit Court of Osceola County, Florida. In all times and places within this report, the Clerk of the Circuit Court shall be hereinafter referred to as "Clerk".

In Florida, the Clerks of the Court have a dual role as both a clerk of the official records (which contain vital statistics as well as real property records, the focus of this examination) and as clerks of the circuit courts in the counties which they serve. It is this Clerk's opinion, being autonomous from legislative and judicial influence, that it is his moral duty to the property owners of Osceola County to conduct a comprehensive forensic examination of not only his Court Records but also of his Official Property Records in light of the ongoing foreclosure crisis.

While the Florida Statutes do not specifically state that among the duties of the Clerks is to be concerned with the integrity of the records they were elected to maintain, there is nothing in the Statutes that prohibit the Clerks from engaging the services of examiners to review and investigate the records as to whether the records violate civil or criminal statutes by virtue of their submission for recordation or filing with said Clerks. Thus, it appears that the Clerk in question desired to undertake such a task, believing that the records he was duly elected to maintain have been compromised as to their integrity.  To that end, the Clerk took it upon himself to investigate and seek out examiners worthy of such a task, a specialty which proffers very few contenders, and entered into a contract with DK Consultants LLC, a Texas-based limited liability company, that performs such tasks. DK Consultants LLC did not solicit the Osceola County Clerk.

By mutual agreement, specific filing dates of June 1, 2012 through June 1, 2014 were selected as target filing dates; however, there was nothing prohibiting the examiners from conducting a forensic examination outside of those target dates if they found probable cause to search outside of those parameters where alleged criminal violations would apply; such was the case here.

It was the initial intent of this Clerk to have this forensic examination and investigation conducted of his records due to the current state of suspect affairs surrounding certain corporate entities operating within the United States and the State of Florida that appear to have tainted his real property and court records with false, misrepresentative and malicious filings that have not only comprised the integrity of the records he was duly elected to maintain, but also may have committed crimes against the people of the State of Florida as well as against the real property owners of Osceola County, Florida.  The Clerk therefore contractually retained the examiners to conduct such an investigation by virtue of a comprehensive forensic examination, which initially took place between July 14 through July 18, 2014, and continued thereafter until the time the results of the examination were released in this report.  There appears to be probable cause to believe that criminal activity within both sets of these records did in fact occur.

# TABLE OF CONTENTS

### SECTION ONE: OVERVIEW

**I. The Difference between an Audit and a Forensic Examination**          **1**

**II. Probable Cause**          **1**

**III. The Basis for the Belief that the Integrity of the Records**          **2**
**has been Compromised**

**IV. The Basis for the Belief that Criminal Enterprises are Currently Active**          **7**
**in the State of Florida (affecting Osceola County, Florida)**

**V. How Securitization Caused the Evolution of the Criminal Enterprises**          **15**

**VI. Summary of the Overview**          **25**

**VII. List of Exhibits Referenced in this Forensic Examination Report**          **28**

**VIII. List of Witnesses that have Personal Knowledge of Certain Statements**          **31**
**Contained in this Forensic Examination**


### SECTION TWO: INSIGHTS INTO THE MERS® SYSTEM
### AND WHAT IS NOT REVEALED TO THE "BORROWER"

**I. The Suspect Issues Behind the Recorded MERS-Originated Mortgages**          **33**

**II. MERS use of the Court System in Osceola County to "Share" in the Spoils**          **45**

**III. Summary**          **53**

**SECTION THREE: RECORDATION OF SUSPECT DOCUMENTS**

**I. Suspect Document Manufacturing Abuses**                    57

**II. Suspect Assignments Violate REMIC Regulations**           63

> *HSBC Bank USA, N.A. v. Teresa Marra* … **"magically settled"**
> **The More Egregious of the REMIC Behaviors**

**III. Use of Shared Computer-Generated Data and Florida's RICO Statute**    74

**IV. Document Manufacturing Plants Facilitate RICO Issues**    76

**V. Summary**                                                  79

**SECTION FOUR: SUSPECT ACTORS EXPOSED AS THE
RESULT OF THIS FORENSIC EXAMINATION**

**I. The Parties**                                              83

**Ablitt-Scofield**                                             157
**Adorno & Yoss, LP**                                           157
**Albertelli Law**                                              158
**American Home Mortgage Servicing, Inc. (Homeward Residential, Inc.)**    89
**Aurora Bank, FSB / Aurora Loan Services, LLC**                237
**Bank of America, N.A.**                                       239
**Bank of New York Mellon**                                     72
**Bayview Loan Servicing, LLC**                                 92
**Ben-Ezra & Katz, P.A.**                                       20
**Brock & Scott, PLLC**                                         160
**Butler & Hosch, P.A.**                                        161
**Choice Legal Group, P.A.**                                    165
**Citimortgage, Inc.**                                          255
**Clarfield, Okon, Salamone & Pincus, P.L.**                    170
**Connolly, Geaney, Ablitt & Willard, P.C.**                    159
**Daniel C. Consuegra**                                         172
**Deutsche Bank National Trust Company**                        73
**Florida Default Law Group (***see Ronald Wolfe***)**          231
**Florida Foreclosure Attorneys, PLLC**                         176

**Gilbert Garcia Group, P.A.  (aka Gilbert McGrotty Group, P.A.)**     178

**Gladstone Law Group, P.A.**     179

**Goldman-Sachs (Mortgage Company)**     75

**Greenspoon Marder, P.A.**     180

**Heller & Zion, L.P.**     184

**HSBC Bank USA, N.A.**     63

**HSBC Mortgage Services, Inc.**     99

**Indecomm Global Services, Inc.**     256

**JPMorgan Chase Bank, N.A. (Florida, Texas)**     264

**JPMorgan Chase Bank, N.A. (Monroe, LA)**     265

**Kahane & Associates, P.A.**     185

**Kass Shuler, P.A.**     187

**Lender Legal Services, LLC**     191

**Lender Processing Services, Inc. (DOCX)**     100

**Loancare, A Division of FNF Servicing, Inc.**     102

**M &T Bank**     275

**Marinosci Law Group, P.C.**     192

**McCalla Raymer, LLC**     198

**MERSCORP Holdings, Inc.**     33

**Morris | Hardwick | Wittstaft LLC**     200

**Mortgage Electronic Registration Systems, Inc. (“MERS”)**     33

**Nationstar Mortgage**     278

**Nationwide Title Clearing, Inc.**     103

**Ocwen Loan Servicing, LLC**     121

**OneWest Bank, FSB**     284

**Orion Financial Group, Inc.**     288

**Peirson Patterson, LLP**     201

**Pendergast & Morgan, P. A.**     206

**Phelan Hallinan, PLC**     207

**Quintairos, Prieto, Wood & Boyer, P.A.**     232

**ReconTrust Company, N.A. (see *Bank of America, N.A.*)**     239

**Robertson, Anschutz & Schneid, P.L.**     208

**Saxon Mortgage Services**     294

**Security Connections, Inc.**     295

**Select Portfolio Servicing, Inc.**     303

**Selene Finance, LP**     303

**Seterus, Inc.**     304

**Shapiro, Fishman & Gache, LLP (fka Shapiro & Fishman)**     214

**Smith, Hiatt & Diaz, P.A.**     216

**David J. Stern, P. A.**     218

**Suntrust Bank**     306

**Suntrust Mortgage, Inc.**     306

**T. D. Service Company**     307

**Tripp Scott, P.A.**                                                      **227**
**U. S. Bancorp (U. S. Bank, N.A.)**                                       **73**
**Van Ness Law Firm, PLC**                                                 **229**
**Marshall C. Watson, P.A. (see *Choice Legal, P.A.*)**                    **165**
**Wells Fargo Bank, N.A.**                                                 **312**
**Wells Fargo Default Assignment Team**                                    **312**
**Weltman, Weinberg & Reis Co. L.P.A.**                                    **230**
**Ronald R. Wolfe & Associates**                                           **231**
**Douglas C. Zahm, P.A.**                                                  **234**


**II. Specific Party Listings of Isolated Allegations**                    **89**


    **A. ALLEGED IN-STATE VIOLATORS**                   **89**


    **B. DOCUMENT MANUFACTURING BY FLORIDA FORECLOSURE LAW FIRMS**   **157**


    **C. DOCUMENT MANUFACTURING PLANTS WITHOUT THE STATE OF FLORIDA**   **237**


**III. Summary**                                                           **325**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

# SECTION ONE: OVERVIEW OF THE FORENSIC EXAMINATION

## I.  The Difference between an Audit and a Forensic Examination

The Clerk retained DK Consultants LLC after conducting (with due diligence) sufficient research to believe that this firm had prior experience in reviewing issues contained within county real property records.  It was firmly disclosed to the Clerk that DK Consultants did in fact conduct an audit of the Official Property Records of Williamson County, Texas, as commissioned by the Clerk of that county.   To differentiate the two scenarios however, it must be understood that the Clerk of Williamson County, Texas only maintains public records and does not maintain court records; Florida Clerks are mandated by Constitutional provisions to act as public trustees.

It is also understood that Florida Circuit Clerks, despite specific autonomies, are judicial officers. Judicial officers of Florida have a duty to prevent fraud from being perpetrated upon their court systems, if they in fact become aware of such occurrences. The Clerk in this instance chose the latter of the two investigations, as an audit would have only provided statistical analysis of data and the resulting issues thereof, whereas a comprehensive forensic examination seeks to identify specific persons or entities which have conducted alleged criminal enterprises with the intent to violate both civil and criminal statutes of Osceola County and the State of Florida. In this instance, the forensic examination revealed pattern evidence of more widespread criminal behavior as the result of suspect perjury, subornation of perjury, notary fraud, false swearing, false and misrepresentative public filings in both the real property records and within the circuit court systems of Osceola County indicative of defined "white collar crime" statutes. However, any civil issues that arose which affected the integrity of an owner's chain of title were also noted in many of the instances observed here.

## II. Probable Cause

It is the belief of the Examiners, after conducting this forensic examination, that suspect criminal enterprises exist within the State of Florida, which may be influenced by other suspect criminal enterprises without the State of Florida, who together appear to have engaged in a conspiracy in the nature of a corrupt racketeering enterprise (RICO) to commit crimes against the People of Osceola County, Florida, with the alleged intent to deprive property owners of their property by fraudulent and misrepresentative means, including but not limited to the violation of Florida Criminal Code § 817.535; in most instances through the use of "state-sanctioned officers" as noted in F.S.A. Chapter 117.  Many of these cases may prove to violate 18 USC § 371, § 1341 and § 1343.  To that end, the Clerk expressed the desire that this report and all accompanying evidence be first examined by the State's Attorney for Osceola County, Florida for the purposes of empaneling a grand jury to investigate the allegations contained herein, prior to releasing this report to the general public.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

If the State's Attorney finds, after review, that in fact, probable cause exists in these matters, that it is requested by the Clerk that this report and all accompanying notes and evidence be placed under seal for further examination by the grand jury representing Osceola County, Florida.

It is also understood that all Examiners and persons involved with this forensic examination are potential witnesses, having particular knowledge of the details of this examination and report. A detailed history of these enterprises are discussed in as much detail as possible as time permitted. Due to the ongoing history of certain issues and cases before the courts across the United States at present, certain witnesses described herein are listed anonymously for their protection against physical retaliation against their individual persons for bringing forth information essential to this forensic examination. The witnesses' names will only be revealed to the State's Attorney verbally in confidence and to the Osceola County, Florida grand jury investigating these matters.

### *EXAMINERS NOTE REGARDING ALL EXHIBITS USED IN THIS REPORT:*

*All documents noted as Exhibits herein are stated as an Exhibit and are accompanied by a corresponding number and are incorporated herein by reference, without restatement. All Exhibits discussed in this report are contained in a separately-marked container, as noted, for the purposes of review by the State's Attorney for the 9th Judicial Circuit of Florida.*

### III. The Basis for the Belief that the Integrity of the Records has been Compromised

Prior to the financial crash of 2008, there were numerous inquiries and investigations conducted by counsel on behalf of property owners in counties across the U.S. that revealed issues involving certain corporate entities that have proliferated suspect fraud upon the chains of title to over 70-million pieces of real property. Osceola County, Florida is among those counties affected by these suspect issues.

After the financial crash of 2008, numerous government agencies investigated all of the financial institutions involved and to date, only a handful of criminal cases have been prosecuted. In the civil realm however, tens of billions of dollars in fines have been levied against most of the major lending institutions (and some of the Wall Street brokerage houses) who participated in the events leading up to the crash. In some instances, it appears that money was literally thrown at the United States Department of Justice ("DOJ") to thwart the filing of criminal charges.

Much of the "protection" from criminal prosecution is believed to be derived from the relationship between the DOJ and the Washington, DC law firm of Covington & Burling ("C&B"). It is no secret that Lanny Breuer, former Assistant U. S. Attorney General, resigned his position with the DOJ to return to C&B as an officer of that firm. It is also no secret that Eric Holder, the U. S. Attorney General, resigned his post to take a corporate position with JPMorgan Chase Bank.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is important to understand why C&B is part of this scenario.

One of C&B's clients is MERSCORP Holdings, Inc., the parent company of "MERS" (pronounced MERZ as in "hers") an acronym Mortgage Electronic Registration Systems, Inc. (hereinafter referred to as "MERS").  C&B also represents many of the major U. S. financial institutions. As part of the effort to further this scheme, C&B drafted a position paper (October 21, 2004) on the use of electronic notes ("eNotes") with respect to the E-SIGN and Uniform Electronic Transfers Act ("UETA") and MERSCORP's "eRegistry" as it pertains to the "beta model" known as the "MERS® System".  This letter is attached as **Exhibit 1** to this report. It is necessary to preface the entire scenario based on certain documents presented here in exhibit form. MERSCORP Holdings, Inc. was formerly known as MERSCORP, Inc., until February 23, 2012, when the former entity subsumed the latter entity. The Certificate of Merger was located in the records of the Delaware Secretary of State's office and presented as **Exhibit 2** as part of this report. It is the "MERS® System"  and its current parent corporation, MERSCORP Holdings, Inc. that are at the root of the suspect behaviors and abuses upon which these suspect criminal enterprises operate.  It is with these two corporate entities' alleged corporate "resolute permission" that is at the core of this investigation as explained further within the contents of this report.

The inception of MERS began in 1995.  The first corporate version of MERS began in 1995 and ended in April of 1998.  The second corporation version of MERS ended in late 1998 and the current version of MERS (which was spun out of the second MERS entity into Mortgage Electronic Registration Systems, Inc. and then-MERSCORP, Inc. occurred on January 1, 1999.  To further the ambitions and objectives of using MERS for tracking transfers of mortgage loans on Wall Street, Moody's Investor Service (also suspect for its role in falsely rating of AAA bonds relied upon by investors who bought them) was asked to rate, review and issue a report on MERS and MERSCORP for investment purposes (probably at the request of the founders of these two entities … Fannie Mae, Freddie Mac, the Mortgage Bankers Association, the American Land Title Association and most of the major banks) to entice participation in the scheme.  A copy of the Moody's Investor Service report on Structured Finance is included as **Exhibit 3** to this report.

The Lead Examiner of this Forensic Examination, Dave Krieger, authored a book called *Clouded Titles*, which was used as an authority in the amicus brief filed in the Washington State case of *Bain v. Metropolitan Mortgage Group, Inc. et al*, No. 86206-1 (2012) on behalf of the non-profit group *OUR Washington.* MERS was a Defendant party in this action.  A copy of this book, which is widely read by affected property owners and their attorneys, as well as this Clerk, is included in the Report Exhibit package for review by the State's Attorney.

Additional copies of this 432-page book will be made available to any member of the Osceola County grand jury who requests it.  Again, for the purposes of backgrounding the case, the book is attached (as one copy) to this report as **Exhibit 4** to the Exhibits package.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In the *Bain* decision, decided August 16, 2012, the Supreme Court of the State of Washington decided that MERS was NOT a valid beneficiary as defined under the State's Deed of Trust Act. The Washington State Assistant Attorney General, James Sugarman (now an enforcement chief with the Consumer Financial Protection Bureau in Washington, DC) also submitted an amicus brief on behalf of the Washington Attorney General (Rob McKenna), denouncing MERS's role, in apparent parallel as to sum and substance of the amicus brief filed by OUR Washington.

The Supreme Court of the State of Oregon soon followed the Washington Supreme Court's lead on June 6, 2013, deciding that MERS was not a valid beneficiary as defined under that State's Deed of Trust Act.  The decisions were fully expressed in the *Niday v. GMAC Mortgage LLC et* al; SC S060655 (2013); and *Brandrup v. ReconTrust Company, N.A. et al*; SC S060281 (2013).

The Supreme Court of the State of Montana followed suit with a November 25, 2013 in *Pilger-am v. Greenpoint Mortgage Funding, Inc. et* al; DA 12-0629, 2013 MT 354 ruling that MERS could not appoint a successor trustee because that duty was without the scope of its beneficial interests in the loan.

Conflicting case law appears to have been created depending on what particular court in any given State of the Union is hearing a case.  The database and its parent clearly (by and through its attorneys, as explained in *Clouded Titles)* have argued that MERS being named as a "nominee" and a "beneficiary" in the Mortgages and Deeds of Trust executed by homeowners across the country give it "permission" to act as a counterparty in the transaction.

In response to the foregoing rulings in Washington, Oregon and Montana, MERSCORP officials issued a "MERS Rider", Form 3158, approved for use as a Fannie Mae/Freddie Mac *Uniform Instrument* since April of 2014.  This Rider is intended to be utilized by title companies, which would require persons obtaining mortgage loans to sign this Rider as a condition of the loan, which appears to effectuate circumvention of the foregoing rulings by contractually including MERS' as an alleged counterparty agent (aka "nominee").  This Rider is allegedly and currently being used by title companies in the foregoing States to further MERS's alleged criminal enterprise and is attached to this report as **Exhibit 5**.  Because of the fact that the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation are MERSCORP founders and stockholders, it is necessary to point out that these two entities names (as "Fannie Mae" and "Freddie Mac") appear on the MERS-originated recorded Mortgages in Osceola County, Florida; thus, it is necessary to emphasize that these two entities may be found to be co-conspirators in the particular RICO claims that may be discovered by the State's Attorney.

It must be further understood that even though MERS and MERSCORP Holdings, Inc. are both Delaware corporations that operate out of headquarters located at 1818 Library Street, Reston, Virginia, these entities are distinctly and separately-named corporations.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

MERSCORP Holdings, Inc. is the parent, for-profit corporation, while MERS, the wholly-owned subsidiary of MERSCORP Holdings, Inc. is a "shell, bankruptcy-remote" corporation, that, for all intents and purposes, is the "child" of the parent and has the name of the **"MERS® System"**.

It is no secret that MERS has been sued thousands of times in courts across the country. A *Consent Order*, issued by five federal regulatory agencies on April 13, 2011, a copy of which is attached as **Exhibit 6** to this report, now requires MERS and MERSCORP to divulge all suits filed against it or against any of its members to the U. S. government.   The government appears to have even been "hoodwinked" into believing the wordsmithing used by MERSCORP attorneys to try to claim that the parent and child are the same; yet contractually, the "members" are bound to MERSCORP Holdings, Inc. and not MERS.   Sadly, this misinformation campaign continues in current MERS-related litigation.

It is also no secret that the intent of the founders of MERS (Fannie Mae, Freddie Mac, Mortgage Bankers Association and numerous major financial institutions) created this corporation to circumvent the payment of recording fees to county clerks and recorders and registers of deeds by initially creating a "place card, nominee status", through the payment of the recording fee first paid by the Borrower as part of his closing costs to record the Mortgage in Osceola County, Florida's official public records.  This scenario was first brought to light in the case of *MERSCORP, Inc. v. Edward Romaine*, 8 N.Y. 3d 90 (2006), which can be reviewed in brief on Page 399 of *Clouded Titles*.

In subsequent litigation against it, MERS would then insist that it had contractual authority to act as a nominee (an agent with limited authority), given to it by its "members" (which are really contractually-bound members of MERSCORP, the parent and NOT MERS, the child).   This is further evidenced by the repudiation notice of "MERSCORP executory contracts" issued by counsel for the now-defunct New Century Mortgage Corporation, Delaware Bankruptcy Court Case No. 07-10416; also attached to this report as **Exhibit 7**.   During its investigation, the examination team discovered MERS-related assignments filed in the real property records of Osceola County, Florida which appear to violate this bankruptcy repudiation notice.

### *Crafty Wordsmithing*

According to New Mexico attorney Robert M. Janes (who many of the Examiners involved in this forensic examination have spoken with personally and reviewed his work), *"ShellGame MERS, Contrived Confusion"* (http://www.esprouts.com), the framers of MERS crafted vague and ambiguous language, which was then proliferated into mortgage documents, wherein MERS claimed itself as an undefined "nominee" and a "mortgagee" for the purposes of recordation, then premised to be contractually agreed to by the Borrowers, who had no idea that their MERS-originated Mortgages were destined to be fractionalized and sold as debt obligations. It is estimated that only 1 out of 150 loan closings involved the signing of a *MERS Disclosure Notice*.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Even then, the meaning of that document apparently got past borrowers who signed these notices because it was part of the rushed, title-closing process of becoming property owners. The process appears to have escalated between 2003 and 2007, specifically, which eventually was exposed after the financial crash of 2008.

The "MERS® System" is registered with the Office of Patents and Trademarks. It is the vehicle by which these corporations appear to have obfuscated the real parties in interest from the borrowers. Due to the fact that this folder of information is so voluminous, it has been included on a separate USB flash drive for review, as **MERS USPTO DOCS**, if deemed necessary.

This system's business model was promoted to the banks and Wall Street to save its users tens of millions of dollars a year in recording fees, at the expense of county clerks and recorders, by circumventing the recording of assignments of mortgages using the MERS' "place card status". In Florida, it is also apparent that the State Legislature bought into this "scheme" by allowing the "MERS® System" users an exorbitant amount of latitude in not paying recording fees.

This practice continues today in every county in the United States, including Osceola County, Florida. Since MERS' (Corporation Version #3) inception on January 1, 1999, every U. S. county has lost revenue estimated into the hundreds of millions of dollars, because of the way the MERS business model operates. Of late, the legal challenge against MERSCORP and MERS in Pennsylvania has affirmed that both entities appear to have violated (as agents of their member-users) the states's mandatory recordation statutes. This case is still ongoing in the U. S. District Court for the Eastern District of Pennsylvania. The current outcome of this case will likely be appealed.

Dozens of U.S. Counties (through individual and class action-type litigation) have attempted to sue MERS and its parent for unpaid fees, noted as generally unsuccessful due to the manner in which the cases were presented and litigated. Not once has a county attempted to criminally prosecute these enterprises, which are not specifically sanctioned as "government-held or sponsored enterprises" (as are Fannie Mae and Freddie Mac), but are created as "corporate creatures" of the State of Delaware. It is also highly likely that Fannie Mae and Freddie Mac benefit financially from the alleged criminal activities that have manifested themselves within this Report.

Due to the nature and function of the MERS business model, the belief of the Examiners and the resulting supporting evidence, the entire chain of title to each affected property in Osceola County, Florida (as well as every county in the United States) has been compromised and corrupted if MERS is involved, despite its claim to the contrary. MERS is a privately-held "shell corporation" whose behaviors are controlled by MERSCORP Holdings, Inc.

If MERS was involved in any portion of that given property's chain of title, the intervening assignees, by design, would not record and preserve their interests because these unknown counterparties utilized the "MERS® System" to obfuscate their interests from the Borrowers affected by these MERS-originated Mortgages.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In virtually all instances, the original counterparties appeared to have already sold their interests in the mortgage notes BEFORE the respective Borrowers actually signed their loan closing documents.  In this report, you will also discover that the "MERS® System" refers to the term "Borrower" in quite a different way than you'd expect. There are more pre- and post-closing points to be discussed here as well, because of the way the loans were designed to be securitized based on the line of credit offered at the inception of the loan application.  This will be discussed in more detail in *Section Two* of this report.


### IV. The Basis for the Belief that Criminal Enterprises are Currently Active in the State of Florida (affecting Osceola County, Florida)

It is the belief of the Examiners, based on the admissions shown in the previous Exhibits, that the promissory notes were converted into "eNotes" (electronic image versions of promissory notes), which is unique to the "MERS® System" business model.  Once scanned into eNotes, it is believed that the original promissory notes may have been lost or shredded (more than likely shredded).  Much of the "robo-signing" scandal revolved around lost/missing Notes and Mortgages and so document manufacturing plants sprung up all over the country to help the ailing mortgage industry "fix" their lost document problems, to prove the alleged lender's claims that it owned a particular mortgage or note.  The intent however is clear:   The use of the "MERS® System" was the intention of the parties involved in the loan origination to fund these loans with funds eventually derived from aggregate funding sources within securitized trusts, common law creatures set up by the Sponsor-Sellers of these trusts.  In turn, the Sponsor-Sellers wrapped the pools of loans into derivatives known as credit default swaps (insurance-type "side bets"). Many of these loans were predatory in nature, a majority of which were negatively amortized, adjustable-rate and interest-only mortgage loans.  The way the loans appear to have been structured to fail over time and the lack of quality control in the underwriting of these loans has been noted in dozens of lawsuits filed against the issuing entities of the trust vehicles allegedly holding these mortgage pools of loans.

In any case, the securities that were registered with the United States Securities and Exchange Commission, appear to have been structured to fail collectively and simultaneously upon the alleged default of the Borrowers. It further appears that the loans were collectively and similarly structured to the point that when placed within specific tranches in these trust pools, defaults would occur simultaneously in each respective class of certificates (known as "tranches") and the Real Estate Mortgage Investment Conduits (hereinafter "REMICs") the loans were placed into would collectively and simultaneously fail.  Thus, the REMIC would collect on numerous insurance policies taken out against the pools of loans. When this alleged illicit behavior was discovered by the reinsurers of these policies (companies like AMBAC, MBIA and AIG), they filed lawsuits against these issuing entities, claiming *inter alia* that the applications made by the REMICs contained misrepresentative information as to the quality of the loans offered in each REMIC's 424(b)(5) Prospectuses. Many of these suits were settled for pennies on the dollar.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In virtually all instances, the unknown counterparties that participated in these processes were MERSCORP members who utilized the "MERS® System" business model to participate in said activities. It is therefore alleged that MERS was created (by its own admission in its public relations materials) for the purpose of streamlining transfers of these loans among investors on Wall Street. It is also implied here that many of these loans may have been fractionalized and split into multiple batches of loans, thereby increasing the number of REMICs who would wrap these fractionalized notes into multiple credit default swaps for the purposes of collecting multiple insurance claims, multiple times, thus enriching themselves at the expense of borrowers and investors alike.

At the other end of the equation, because the loans offered to Wall Street residential mortgage-backed securities investors soon failed, the alleged structured number of defaults (designed to push homeowners to their financial limits in being able to pay their monthly loan payments) caused the number of foreclosure filings in Osceola County and the State of Florida to rise as homeowners' adjustable rate mortgages simultaneously reset themselves to higher rates. Many of these loans were tied to the scandalous LIBOR issue, not a part of this report but still part of the manipulative structure involved in the predatory lending schemes of the mortgage brokers.

Still, as the foreclosure scenario began to develop, it became necessary to procure certain documentation to present to the Florida courts, something that the alleged claimant Plaintiff-banks appeared to be lacking; thus, the reason for this investigation into the use of and abuse of the "MERS® System" to mass produce copies of notes, mortgages and assignments of mortgages to "cover up" the failed "internal controls" described in the April 13, 2011 *Consent Order*.

At the heart of this matter is the furtherance of the alleged schemes and artifices, as described in Florida Criminal Code § 817.535 on "white collar crime", regarding the fraudulent filing of documents in the real property records with the intent to deprive homeowners of their property using MERS-related assignments and related claims by the law firms filing judicial foreclosures on homeowners in Osceola County and elsewhere in the State of Florida, using suspect documents of this nature. On many occasions, these documents appear to have used in tandem with court filings, also suspect for fraudulent alterations of their contents by Plaintiff-banks' counsel.

In the alternative, despite the legislative alterations to Florida Statutes Annotated Chapter 701 in 2004-05, the unperfected interests of the alleged lenders in these scenarios would suddenly surface in the land records months, if not years, AFTER the foreclosure action was concluded and the property sold. These documents appear to be "manufactured", in every instance observed, for the purposes of using the "MERS® System" business model to "tie the ends of the chain of title" together in such a way as to perfect title by fraudulent artifices so properties taken in foreclosure that had questionable chains of title could be remedied for the purposes of the issuance of title insurance, post-foreclosure. The examination team is also aware however, that insurability and marketability of title have two totally opposite meanings.

# COMPREHENSIVE FORENSIC EXAMINATION OF THE
# REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Title insurance aside, the "MERS® System" business model appears to create potential civil and criminal issues (through the abuses of this business model by MERSCORP members). In most instances reviewed, many of the submissions involved apparent document manufacturing by the banking entities themselves or through third-party document manufacturing mills, effectuating abuses with reckless and wanton impunity, both pre- and post-foreclosure.

### The Suspect Nature of MERS-related Filings

This report presents a disturbing pattern evidenced in tens of millions of MERS-related filings in county land records all across America.  Osceola County, Florida is no exception.  In instances discovered and related here, there are numerous events wherein employees of law firms, attorneys and employees of servicers and document manufacturing plants, utilized the official titles of "Assistant Secretary of MERS" and Vice President of MERS", when in fact:

> 1. They were in reality employees of the various entities conducting self-assignments of mortgages as $10/hour paid minions, acting under the direction of their supervisors;

> 2. Their official "authority" by then-MERS officer William Hultman is suspect as to Hultman's actual authority to grant such official titles to the foregoing employees; and

> 3. Despite the fact that MERSCORP/MERS policies strongly suggest that the signors of these documents be "officers" of the members who use the MERS database, the users, and thus the fabricators of these documents, ignore that rule in favor of cheap labor that the Examiners herein believe is vested with not much more than a high school education.

The Examiners believe, based on previous reports like the one on *60 Minutes* with Scott Pelley, that the employees of these document manufacturers had nothing more than signing skills and had little or no knowledge of the banking industry.  It is in this way that the Examiners believe that these employees were manipulated into signing these documents by being told that it was "okay" to do so.  These signors were given anywhere from 250-350 documents a day to "ro-bosign" (signing their names in robotic fashion; hence the term).  Many of the document manufacturing plants actually appeared to have sponsored and paid for the notaries' commissions and bonds, so they could have a ready supply of people to acknowledge the signors' signatures, without question.  Bonding is required in most of the States, including Florida, California and Texas, where notary bonds can have claims filed against them by the State's Attorney for anywhere from $7,500 to $15,000 for each notary involved in these practices, meaning that there is a viable way to pay for at least the up-front costs of the prosecutions of these alleged violators and the creators of these document mills, law firms and servicers who sponsor their activities.

These activities in large part, involve the use of a "title", known as a Certifying Officer (or signing officer) of MERS.  These alleged titles were initially handed out by William Hultman, who claimed that he had "authority" via a Board Resolution to do so.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Unfortunately, the aspects of this "authority" were discussed relative to MERS Corporate Version #1 and not the current version (#3).  The foregoing issues were discussed in a conversation the Lead Examiner had with Mark J. Malone, a consumer lawyer based in New Jersey who deposed William Hultman on April 7, 2010 in the MERS-related case of *Ukpe v. Bank of New York as Trustee for the Certificateholders of CWABS, Inc. Asset-Backed Certificates Series 2005-AB3* et al (Docket #F10209-08 Sup. Ct. NJ Chancery Div., Atlantic Co.). The deposition discussed here is attached to this report as a USB .pdf file, for specific viewing if necessary, as it is 170 pages in length.

In this particular case, Hultman was asked to provide copies of the two (2) alleged MERS Board Resolutions which were allegedly created (from an allegedly-memorialized conversation Hultman claimed he had with the MERS Board of Directors) and signed April 9, 1998 (during the pendency of MERS Version #1).  Neither Hultman nor MERS provided Malone or any of the other counsel involved in the proceedings with these two resolutions.  Additionally, there is no other viable information that would lead the Examiners to believe that these alleged "resolutions" were adopted into the current version of MERS (#3); or MERSCORP Holdings, Inc.

Malone, a former federal prosecutor, does not believe these Resolutions exist, despite Hultman's vague and ambiguous statements under oath that the MERS Board of Directors granted him such authority.  A letter that contains statements regarding this deposition and Malone's comments was sent to then-Adjunct Professor Christopher Peterson (University of Utah, S. J. Quinney School of Law; Peterson is now an enforcement chief at the Consumer Financial Protection Bureau, "CFPB," in Washington, DC), is attached to this report as **Exhibit 8** by reference.

The first "MERS" was dissolved on June 30, 1998, at a point in time when Hultman was allegedly given this "authority" to appoint "Assistant Secretaries" and "Vice Presidents" of MERS. It appears that despite other depositions and cases involving the challenge to and request for production of these two resolutions (as researched by the Examiners of the forensic examination team), MERS has refused to produce these documents.  Again, **Malone does not believe they exist.** The rationale here is that if these documents did exist, why then did MERS not produce them?  It is on this basis and belief that the examiners regard these resolutions as non-existent; thus forming the basis for the allegations that Hultman did NOT have such authority and therefore, every single assignment or other MERS-related document entered into any court case in Osceola County, Florida or recorded by mail or electronically recorded in the official real property records of Osceola County, Florida is suspect for fraud based on the foregoing scenarios.

Also worthy of note here is the fact that these "resolutions" are very seldom recorded in the real property records as individual signing authorities, but rather in "group listings" under an Agreement filed with any given  MERSCORP/MERS member.  The number of MERS-related Limited Powers of Attorney recorded in the real property records of Osceola County, Florida that would give notarized and acknowledged authority to any signor of any of these documents are noticeably negligible.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Examiners assert here that MERS plays loose and fast with the facts and creates these documents to be confusing to anyone attempting to interpret them; or in the alternative, does not proffer notarized Limited Power of Attorney forms within the "signing agreements"; thus, the authority is only "resolute" and not "absolute", again, due to MERS's fast and loose "beta policies".  MERS further demands its members indemnify MERS from all harm in connection with these signed documents; thus, it appears MERS is attempting to isolate itself from criminal prosecution while its members appear to commit perjury in concert with the actions taken by the law firms filing foreclosure actions against the properties wherein the MERS-related Assignments are used as a "reliance" in the appearance of effectuating "proof" that the Plaintiff-bank owns the Note AND Mortgage.

### *Statistical Analysis of Suspect MERS-Related Real Property Record Filings*

It should be understood here that MERS-related real property record filings do not discriminate based on gender or any specific or non-specific demographic profile or political persuasion. For example, out of all of the **elected officials** serving Osceola County, Florida property owners and residents, **26 of them have MERS involved in their chains of title to property** that they may own or rent, where there is a recorded MERS-originated mortgage ("MOM") or a MERS-utilized Assignment of Mortgage filed or a MERS-related Satisfaction of Mortgage or Release filed.

Within the target period in which this forensic examination of real property records was conducted (June 1, 2012 through June 1, 2014), the following statistical information revealed:

(1) there were **9,404 MERS-originated Mortgages** recorded in the real property records of Osceola County, Florida, which means that 9,404 pieces of property may have issues with the chain of title, wherein marketability of title and insurability of title would be affected; thus causing potential "double liability" for conveying property owners;

(2) there were **5,367 MERS-related Assignments of Mortgage** filed, both electronically and by presentment, including but not limited to, members of MERSCORP that have alleged permission to utilize the MERS business model to self-assign mortgages using MERS as a "cover" for the potentially broken chain of title;

(3) where an occurred instance of a **MERS-related Assignment** was used to convey an interest into any existing SEC-registered or private label trust vehicle, **the transfer failure rate was 100%**, meaning that the Closing Date was exceeded by the regulations allowed under the trust REMICs' Pooling and Servicing Agreements. This failure rate could also directly affect the REMIC's tax-exempt status under IRS regulations;

(4) the use of MERS in conveying an interest via an Assignment of Mortgage appears to have been used for:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(a.) assignment of an allegedly non-performing mortgage loan from a defunct originating lender into a closed REMIC trust pool;

(b.) purposeful creation of a MERS-related Assignment by a foreclosure mill law firm attorney or non-attorney using MERS as a "holder" or "party of the first part" to convey an interest to a Plaintiff involved in foreclosure-related litigation;

(c.) assignment of a mortgage loan using MERS as a "standalone entity", using various addresses for MERS, whichwould not show the real party in interest present in the document (only the Originating Lender), wherein any party wishing to know who the originating lender was would have to reference the original MERS-originated Mortgage; and

(d.) the creation of an Assignment of Mortgage wherein the employees of the Assignor AND the Assignee were using MERS as a "cover" to assign the rights and interests in a Mortgage to their employer (the Lender, not necessarily of record at the time the assignment was executed), as Assignee, who would then retain a foreclosure mill law firm to commence proceedings in reliance of the manufactured, self-assigned document;

(5) when a Release of Mortgage was utilized, there were **8,264 such MERS-related Satisfactions of Mortgage** filed for record, meaning that MERS, in name, was utilized as a "cover" in an attempt to clear the chain of title, which may have resulted in:

(a.) the preparation of boiler-plated Satisfactions, prepared and drafted by non-lawyers or third-party contractors, who had no personal knowledge as to the accuracy of the information relayed to them through third-party data software platforms that derive information about mortgage loans from multiple sources;

(b.) a determination that the preparation of these Satisfactions of Mortgage are relied upon by title companies to determine insurability and in the event of error or omission, the property owner's title suffers marketability issues;

(c.) the real parties in interest may in fact, have no knowledge that the lien they may have an unrecorded interest in was released and thus, their future claim poses a threat of "double liability" upon the property owner;

(d.) the preparation and use of non-lawyers to draft and submit such documents may constitute the unauthorized practice of law ("UPL"), which is a felony in the State of Florida; and

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(e.) the eventual clouding of the property's title should a Notice of Lis Pendens be filed by an unrecorded intervening assignee within the MERS electronic database that received a fractionalized portion of the Borrower's loan;

(6) there were **150 suspect Loan Modifications**, using standard or HAMP-originated documents, wherein MERS was named in the execution portion of the recorded document as a "nominee" for a lender who was NOT of record nor had a recorded Assignment to validate ownership interest prior to the ACT itself; or in the alternative, claimed to have power of attorney privileges when no such privileges were recorded PRIOR TO the act itself; many times signed by someone not employed by the Lender;

(7) there were only four (4) MERS-related Limited Powers of Attorney filed for record during the target period wherein MERS granted signing authority that it may not have had to grant, especially on behalf of the Federal Deposit Insurance Corporation.

*All of the foregoing statistical analyses were based on key searches of "Mortgage Electronic Registration Systems, Inc." and the data obtained and presented here is for ONLY A TWO-YEAR PERIOD.   Had this search been extrapolated over the entire period of time from MERS' inception in 1995 until the present, there would be well into the hundreds of thousands of MERS-related documents recorded in Osceola County, Florida alone.*

### *The Suspect Nature of MERSCORP Member and Non-Member Related Court Filings*

Because Hultman gave signing agreements to thousands of MERSCORP members, there are literally over 20,000 such signers of these documents that work for various entities that have caused these suspect documents to be created; directed them to be created by a foreclosure mill law firm in Florida or elsewhere; directed them to be filed in the real property records of Osceola County, Florida or filed with the Circuit Court of Osceola County, Florida to be used as "valid" evidence at trial. These suspect documents were then relied upon by judges, who knew or should have known by the Borrower's attorneys response and reply briefs, that these documents had been challenged for fraud and were not self-authenticating.   Still, the Osceola County, Florida circuit judges appear to have granted most banks' summary judgment motions without ever giving the authenticity of these assignments and other MERS-related documents a second glance.

These types of bank-client behavior were also evidenced in Florida cases such as *U. S. Bank, N.A. v. Harpster* in Pasco County, Florida, wherein then-Circuit Judge Hon. Lynn Tepper declared a MERS Assignment of Mortgage to be "fraud on the court" and dismissed the case with prejudice.   In that instance, then-David J. Stern law firm secretary Cheryl Samons (also having been deposed in other related cases) attempted to backdate an assignment to December 5, 2007 (recorded in the Pasco County real property records April 6, 2010), witnessed by Florida notary Terry Rice, whose commission was not valid at the time of acknowledgment.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

This is only a sample of the abuses uncovered as part of this forensic examination. This particular case of proven abuse will be discussed in more detail under the ***David J. Stern*** heading in this Report.

In another matter, it is believed that court documents and filings were altered and submitted as verified complaints by at least one law firm, whose ex-senior partner has since filed a whistleblower lawsuit against the firm, who fired her because she refused to take part in the alteration of said documents. There is reason to believe that the out-of-state parent law firm directed other attorneys working at the West Palm Beach, Florida satellite office to alter the sworn declarations **AFTER** they were signed as a Verification by the Plaintiff's representative, knowing they were altered and thus a by-product of perjury; and did this in concert with other actors, wherein there are believed to be sufficient multiple suspect Florida criminal RICO violations worthy of investigation and prosecution. In most instances, MERS-related assignments preceded or followed summary judgments for foreclosure, resulting in the suspect wrongful taking of thousands of Osceola County, Florida property owners' homes using recorded documents that contained false and misrepresentative information, created to deprive the homeowners of their properties, probable cause for violation of Florida Criminal Code § 817.535.

The evidence pool of documents presented as part of this report, along with supporting documents accompanying *Section Five* and *Section Six* of this Report, shows that in many of the instances of foreclosure, any assignment giving any authority or rights of transfer of the mortgage to any party, subjected to any review or discretion for prejudicial treatment by any judicial court in Osceola County, Florida, apparently did not matter.

The content of the analyses of a majority of the cases presented show that the Assignments were not filed: (a.) until after the foreclosure process had already been commenced; or in the alternative (b.) until long after the foreclosure was adjudicated by the court.

In certain instances however, these manufactured documents were produced as a precursor to the filing of a Notice of Lis Pendens, raising additional suspect concerns of why the Assignments weren't recorded when the actual transfer of the Mortgage took place. This is due largely in part to the MERS business model promoting that it saves its "members" millions of dollars in not having to record Assignments in the first place (advocating the creation of Assignments only when necessary to foreclose). This is the "Pandora's Box" that is going to haunt the Florida Legislature, which appears to have been duped into helping these actors conduct their criminal enterprises within the State of Florida.

Many of these manufactured documents appear to have been "self-assigned" to create standing for the Plaintiff lender. Whether it was the Florida Legislature's intent to hinder the practice of duly recording assignments as proof of transfer of mortgage loans or not, it appears from the investigation conducted by the Examination Team that there was complete disregard for the timely filing of assignments in most instances found in this forensic examination.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Further, the methodology used to create these documents is supported by both video and written depositions of many of the persons involved in these suspect document manufacturing issues, which are incorporated into the report as USB Exhibits by reference herein.

## V. How Securitization Caused the Evolution of the Criminal Enterprises

Since the courtroom battles involving standing issues regarding securitized trusts were incorporated into the target research, the Examiner herein reflects that counsel for the banking industry has mounted what appears to be a contrived argument to convince the Courts that the Borrowers are not third-party beneficiaries to the trusts their loans were allegedly bundled into. This appears to be a very well-crafted, "less than honest" argument designed to confuse the courts into believing that securitization is Wall Street's problem and not Main Street's problem.

The Examination Team believes that the bank, knowing that back-door accounting of the trusts would be called into question, "got out in front of this argument" in advance of the foreclosure defense industry's grasp of the situation, by getting case law passed to make it harder to get the courts to "open the evidentiary door" into the Borrower's actual involvement with the securitized trusts.

If one were to absolutely trust the government's perspectives regarding securitization, then the Borrower indeed is a party to the transaction and derived a benefit from it. Without the Borrower's intended financing of the loan and eventual signature on the Note, the trust REMICs would NOT be able to operate. In light of the previous statement, there are issues with whether the Notes were actually conveyed into the trust pools in the first place and these issues proliferate current litigation against the Sponsor-Sellers of the respective REMIC trusts.

Further, it is the belief of the Examiners that every loan intended for securitization was placed into the MERS electronic database and that the chain of title to each MERS-affected property was compromised the moment the MERS-originated Mortgage was recorded in the real property records of Osceola County, Florida (and all across America). Inversely, if one were to allege that the U. S. Attorney General's office was colluding with the Sponsor-Sellers to "frame litigation" to put a damper on foreclosure defense securitization attacks on the REMICs, one would hold the recent resignation of Eric Holder to take a position as "Compliance Officer" in a $77-million-a-year corporate position with JPMorgan Chase Bank, N.A., at best, ironic; at least, oxymoronic.

When one reads the *Asset Securitization Comptroller's Handbook* put out by the Office of the Comptroller of the Currency in November of 1997, attached to this report as **Exhibit 9** by reference, one can see that the Borrower benefitted tremendously from the securitization process, whether the argued point of not being a "third-party" beneficiary has anything to do with the banks' argument, as noted below (excerpted in part from Pages 4-5, 8; ***emphasis in bold italics***):

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Benefits of Asset Securitization**

The evolution of securitization is not surprising given the benefits that it offers to each of the major parties in the transaction.

**For Originators**

Securitization improves returns on capital by converting an on-balance-sheet lending business into an off-balance-sheet fee income stream that is less capital intensive. Depending on the type of structure used, securitization may also lower borrowing costs, release additional capital for expansion or reinvestment purposes, and improve asset/liability and credit risk management.

**For Investors**

Securitized assets offer a combination of attractive yields (compared with other instruments of similar quality), increasing secondary market liquidity, and generally more protection by way of collateral overages and/or guarantees by entities with high and stable credit ratings.

They also offer a measure of flexibility because their payment streams can be structured to meet investors' particular requirements. Most important, structural credit enhancements and diversified asset pools free investors of the need to obtain a detailed understanding of the underlying loans. This has been the single largest factor in the growth of the structured finance market.

***For Borrowers***

***Borrowers benefit from the increasing availability of credit on terms that lenders may not have provided had they kept the loans on their balance sheets.*** For example, because a market exists for mortgage-backed securities, ***lenders can now extend fixed rate debt***, which many consumers prefer over variable rate debt, without overexposing themselves to interest rate risk. Credit card lenders can originate very large loan pools for a diverse customer base at lower rates than if they had to fund the loans on their balance sheet. Nationwide competition among credit originators, coupled with strong investor appetite for the securities, has significantly expanded both the availability of credit and the pool of cardholders over the past decade. ***(see Exhibit 1 on the following page)***

***The borrower is responsible for payment on the underlying loans and therefore the ultimate performance of the asset-backed security. Borrowers however do not realize that their loans have been multiply pledged as to cash flow through the REMIC and not the Notes themselves. Again, the "security" is not necessarily the Note itself, but the cash flow it produces as pass-through income to the investors. A criminal investigation is warranted to resolve issues involving the path the Notes actually took and whether or not the Borrowers' homes were illegally taken. On the other hand, as described in Section Three of this report, the term "Borrower" may have a double meaning that may make this scenario more confusing.***

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Exhibit 1: Parties Involved in Structuring Asset-Backed Securities

It is also important to note here that the Office of the Comptroller of the Currency ("OCC") had one idea in mind when it crafted the flow chart (above), with securitization being an optimum way for **lenders to extend fixed rate debt to borrowers who would not otherwise qualify.**

The problem is however, was that what the OCC had contemplated back in 1997 was a little less elaborate than it appears the banks had in mind.  Secondary *interim funding lenders* like Countrywide Financial (and its web of corporate subsidiaries); and Washington Mutual Bank, FA (who managed much of its own securitized portfolios) decided to lend money to anyone "who could fog up a mirror" (meaning that the Borrowers' incomes and appraisals were inflated to generate more up-front profit for the brokerage houses handling the initial loans as (originating lenders) "Borrowers" of extended credit lines using (homeowners) "Borrowers" credit ratings and questionably-altered financial statements).  In other words (as the related MERS issues will demonstrate in *Section Two* of this report), the meaning of what a "Borrower" is in the securitization chain was NOT disclosed to the "Borrower" who signed a promissory note at the closing table. These misrepresentations (and the apparent manipulation of documents, which become the focus of this report) are exacerbated by what *"Corporate Version 3"* of Mortgage Electronic Registration Systems, Inc.'s ("MERS") "beta model" did to facilitate the creation of "eNotes", placed into an "eRegistry", which was controlled by then-MERSCORP, Inc. now known as MERSCORP Holdings, Inc.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Below is one such sample *(Figure 2)* of a flow chart for a Countrywide (CWABS, Inc.) Asset-Backed Securities trust is described within its 424(b)(5) Prospectus, which was filed with the United States Securities and Exchange Commission:

*Figure 2*



In the foregoing figure, notice that the "Borrower" is omitted from this flow chart, yet it is the Borrower's line of credit and monthly payments that make this chart work.  Also notice that there are "insurance" entities (lower, left-hand box) that make the trust (or portions of it) whole in the event the Borrowers in a particular tranche can't make their payments.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Since the Borrower's loan was "insured" against "default", the lender and the servicer benefitted the most, rather than the investors who bought the certificates in the pool. Since the Trustee was part of the pool's hierarchy, it too was not harmed financially. The investors, however, bought non-recourse bonds. Buying these bonds is like playing in the stock market. It's a gamble. You can't sue if you lose your money. But what if the trusts were "structured" in such a way that a portion of them would fail? What if the lower tranches of the trust (which paid a higher interest rate) were more at risk of failure because the loans in those portions of the trust pools were "designed" to be more "toxic"? The assumption here is that the higher the rating of the bond (the "Class" of the tranche, or slice of the trust pool's assets), the lesser rate of interest is paid out. The riskier the tranche, the more interest it pays, but the risk means you get paid last (or not at all) in case of a "credit event" (which could be the collapse of the tranche). The "cause and effect" appears to have passed the "credit risk" onto the investors of the bonds, who were only supposed to assume the "interest rate risk". Without going into major, complex detail on the issues of predatory lending, the loans appear to have been structured in such a way as to transfer the "credit risk" (which was supposed to affect the Borrower and the top end of the securitization chain, as shown above *Figure 1*) to the investors (at the bottom end of the securitization chain), who were only supposed to absorb "interest rate risk" according to the 424(b)(5) prospectuses that the Examiners (whose findings are reported here) utilized to determine whether or not governing regulations of these securitized trust pools had been violated. This is why the investors and insurance companies are suing all of the trusts, claiming misrepresentation and fraud in the prospectus. These prospectuses are submitted and certified to be truthful and accurate under the *Sarbanes-Oxley Act*, which provides for both civil and criminal penalties for violations of said Act.

**The failure rate in the compliance with the governing regulations of these securitized trusts appears to have been 100% when the pooling and servicing agreements ("PSAs") were used to analyze each particular case that was reviewed in this report.**

This is why this area of forensic study has become so specialized, particularly when it comes to finding reliable (but severely limited) sources of firms who conduct audits and forensic examinations into these areas of study. The aspects of what the "lenders" apparent increased risk behaviors did to destabilize the government's financial markets, through the guaranty programs offered through the Federal National Mortgage Association (hereinafter "Fannie Mae") and the Federal Home Loan Mortgage Corporation (hereinafter "Freddie Mac") and their own sets of securitized trust pools, which still exist today, also contributed to the financial crash of 2008, causing both Fannie and Freddie to become "delisted" on the New York Stock Exchange and taken under the conservatorship of the Federal Housing Finance Agency (hereinafter "FHFA"). When federal regulators realized that Fannie Mae and Freddie Mac had been "played" by the major banking institutions (within and without the United States), the FHFA initiated a volley of lawsuits against those institutions involved in the "credit risk scam" to recover what are known as "put backs", meaning that the major banks had to buy back their toxic assets that they used the government-sponsored entities to initiate and later sold to the GSE's.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

History will show that the first entity to suffer in the securitization meltdown was AIG, who did in fact receive a $185-billion bailout from the U. S. government.  The apparent "squeeze play" by firms engaged in setting up credit default swap (insurance side bets) mechanisms (like Goldman-Sachs, Lehman Brothers and Bear Stearns), which caused AIG's demise, came to light when investors who bought these *collateralized debt obligations* ("CDOs") on behalf of municipalities, retirement funds and private investment firms, realized that the shifting "credit risk" was actually "structured" to cause the collapse, resulting in severe losses at the bottom end of the securitization chain.  Dozens of lawsuits then followed, alleging that the secondary *interim funding lenders* misrepresented to investors the "risks" they were actually taking.  The massive failures on Wall Street were the result of the predatory, subprime loans (adjustable rate, pick-a-pay, negatively-amortized and interest-only mortgages) given to the "Borrowers" on Main Street.  The major banking institutions who relied on the guarantees connected through the use of Fannie Mae and Freddie Mac ended up buying back a huge chunk of what most of Main Street now understands were "toxic assets".

Thus, because of the few pages of historical data represented here, the courts are not getting the entire simplified story as foreclosure mill law firms appear to misdirect the courts (by design) into believing that "Borrowers" (the term most thought of referring to American homeowners who signed mortgages and promissory notes at the closing table) have no beneficial interest in the securitization chain.  The Examiners believe that this is part of the "wordsmithing" used to persuade the Court to keep "Borrowers" away from vital discovery that might prove the "back door accounting" would show that their notes **were actually paid in full by third-party payors** (insurance payments like credit default swap side bets; default insurance payouts; and title insurance payouts) and that the Borrowers are actually **NOT in default**, as claimed by the foreclosing law firms on behalf of their clients.  As shocking as this may seem, this would intimate that if the Borrower's loan was securitized, chances are likely that the Borrower was never in default. The foregoing scenario presents itself as one of the key reasons that these trust pools and their sponsor-sellers are settling with the investors and insurance companies; they do not want the "back-door accounting" exposed.  For in so doing, the criminal aspects of these enterprises would be revealed and the U. S. government would be forced to do something about it.

### *The Causes and Effects of Manipulation and Fraud via the Florida Legal Community*

One only needs to examine the cause and effect scenarios of David J. Stern's law operations to realize that even the Florida "system of justice" could not tolerate his alleged document manufacturing abuses and lackluster suspect management of his self-proclaimed 100,000 court cases due to Stern's failure to keep up with day-to-day management of those cases from his Plantation, Florida offices.  This led to the collapse of Stern's enterprises and Stern's eventual disbarment. It is well documented Ben-Ezra & Katz and the law offices of Marshall C. Watson also fell victim to Court and Florida Bar scrutiny, which resulted in major shake-ups at both law firms and Watson's 6-month suspension from the practice of law.  Other attorneys were also affected similarly.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

On April 30, 2014, the *Tampa Bay Business Journal* reported that the law firm of Ronald Wolfe & Associates (formerly known as the Florida Default Law Group, or "FDLG"; also the subject of focus in this report) had filed a WARN notice with the State of Florida indicating it would lay off 116 workers. This entity was investigated by the Florida Attorney General's office in 2010 for robosigning and other sloppy work, but the case was eventually dropped.  The corporate foreclosure law firm of McCalla Raymer LLC appears to have taken over at least all of Wolfe's Bank of America business, which in part, resulted in the layoffs.  The news report previously noted is included as **Exhibit 10** to this report by reference.

Also coming to light as part of this forensic examination, discussed in detail in *Section Five* of this report, is the alleged behavior of the law firm of Ablitt Scofield, P.C. (which later changed its name to Connolly Geaney Ablitt & Willard, P.C.); the former with offices in West Palm Beach, Florida and home offices in Woburn, Massachusetts.  Prior to the start of this forensic examination, news reports surfaced that the Connolly law firm was being evicted from its Woburn, Massachusetts offices, employees' paychecks were being delayed and third-party vendors' checks were bouncing. A copy of this article is attached as **Exhibit 11** by reference.  Even more alarming was the content within the news story (Page 4) that stated that this report's **WITNESS A** had initiated a whistleblower lawsuit against the Ablitt Scofield firm, claiming that she was fired for refusing to alter the sworn declarations contained within the verified complaints **AFTER they were signed by the lender/client's representatives**, which would render the verified complaints filed by the foreclosure law firm and its attorneys as false statements (perjury), which for all intents and purposes, reflects fraud on the court in the taking of homeowners' properties.

*Section Five* also contains the separate review of 33 Ablitt Scofield-Connolly Geaney Ablitt & Willard cases, which reflect the alarming behaviors alleged in this report that **WITNESS A** more than likely has personal knowledge of.  Many of these cases, in addition to some of the cases discussed in *Section Six* of this report, focus on the securitization chain and the misrepresentations brought before the Courts in Osceola County, Florida.

Many homeowners lost their homes due to these misrepresentations, which were largely based on the claims made in the Assignments of Mortgages proffered in their Complaints (many of these cases did not reveal the Assignments; the Examiners had to conduct further research to locate them within the real property records of Osceola County, Florida and to separately examine them).  The sad state of affairs that is this foreclosure mess in Florida was described in an article put out on a blog site by national foreclosure attorney Jeff Barnes, attached to this report as **Exhibit 12** by reference, which speaks to the failure of the "Rocket Docket" and the cause and effect scenarios created by repeated alleged due process violations of the affected homeowners.

The Examiners further believe that the Florida Legislature equally shares in the blame for the way the real property records have been compromised through the alterations of F.S.A. Chapter 701 et seq, regarding assignments of mortgage, which basically does not make it mandatory for a lien holder to perfect its interests unless its wants to.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The Examiners feel anything less than mandatory recording makes every chain of title questionable as to suspect defects within it, as  many of these issues involve the Assignment of Mortgage to a securitized trust or in the alternative, represent a self-assignment by the entity directly benefitting from the Assignment, whether through the use of MERS as a "cover" for the self-assignment or as a standalone as a "party of the first part, Assignor" in an apparent attempt to not only obfuscate the chain of title, but the custody of the Note as well.  Thus, BOTH the marketability and the insurability of titles in the State of Florida, including Osceola County, is severely and adversely affected.  It would be a safe bet to assert that the banking lobby had much to do with the influence to change the F. S. A. Chapter 701 requirements to comport to the design of the "MERS® System".  It is this scenario that directly contributed to the foreclosure mess in Florida.

In numerous court cases around the country, it is established fact that the "MERS® System" has been extolled as a way to save "MERS® System" users money by not having to record assignments.  The cause and effect of this business model has now come under fire in Pennsylvania in the *Montgomery County Recorder of Deeds (Nancy Becker) v. MERSCORP Holdings, Inc. et al*, No. 11-CV-6968 (U. S. E.D. Pa, June 30, 2014) wherein this business model appears to have run afoul of Pennsylvania Recording Statutes.  A copy of the judge's Memorandum and Order is attached as **Exhibit 13**, by reference.  Pages 28 to 35 of this Memorandum and Order specifically itemize MERS's role as a "nominee" and that it shares in the liability of the acts of the principal it represents.  This agency argument presented itself similarly in a two separate cases in New York, a State that appears to have little tolerance for the MERS business model.

Despite the fact that the MERS business model was eviscerated by New York Bankruptcy Judge Robert Grossman in *In Re Ferrell Agard*, Case No. 810-77338 (2011; and his opinion of MERS later vacated by a New York U.S. District Judge), his comments similarly ended up in part in a later case decided by the Supreme Court of the State of New York State Appellate Division - Second Judicial Department in *Bank of New York et al v. Stephen Silverberg et al*, Index No. 17464-08, June 7, 2011. A copy of the Opinion & Order is attached as **Exhibit 14** by reference.

### *The "MERS® System" was Designed to Obfuscate the Securitization Chain to Borrowers*

MERSCORP Holdings, Inc. owns a website where it claims Borrowers can go to find out who owns their loan, at:  https://www.mers-servicerid.org/sis/index.jsp

Despite MERS' officials claims that the MERS website is transparent for Borrowers to go and see who owns their loan at any given moment is again, appearing to play fast and loose with the facts. Unfortunately, when a Borrower visits that website, it is looking at information that is: (a.) inputted and managed by "MERS® System" users that service the loan; (b.) that is not regulated in the same manner as the credit bureaus are regulated through the *Fair Credit Reporting Act*, in that no one is allowed to challenge the information on the MERSCORP-owned website; and (c.) the information that is maintained is disclaimed for accuracy by MERSCORP Holdings, Inc.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thus, the information that Borrowers view on the "MERS® System" website is being manipulated by the "MERS® System" users who place whatever information they want the Borrowers to see at any given moment with little to no oversight from MERSCORP and NO oversight from the government. In fact, in order to view what information the "MERS® System" users want the Borrower to view as to who the "Investor" is, they have to input their name and Social Security Number, which was given to MERSCORP without the Borrowers' express written consent. This is one of many abuses that has been litigated against in courts across the United States. Included in these allegations are charges of identity theft and non-disclosure of MERS's actual function in the transaction, pre-closing. The real property records are equally plagued by this problem as well, because the MERS business model claims to create a "static condition" using MERS as a "place card" by creating a vague and ambiguously-worded contract (Mortgage, Deed of Trust) with the Borrower so as to stand in the stead of the real party in interest, while the real parties in interest participate in the transfer of the Borrower's loan (including multiple fractionalizations of that loan) to unknown intervening assignees, without recording any specific interests in the real property records of the county the subject property is located in. This was discussed in detail in the white paper entitled, *"Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory"* by Prof. Christopher L. Peterson, William and Mary Law Review, Vol. 53, No. 1, attached to this report as **Exhibit 15** by reference. Again, Mr. Peterson is now an enforcement chief with the CFPB (along with Washington State Assistant Attorney General James Sugarman) in Washington, DC.

### The "MERS® System" Facilitates Abuse of False and Misrepresentative Recordations in Real Property Records, including the Real Property Records of Osceola County, Florida

The "MERS® System" facilitates suspect abuses involving all of the back-end parties of the chain of securitization (as shown above); including, but not limited to:

(1) Manipulated control of information available to the Borrowers and Courts;

(2) Lack of recorded perfected interests in the securitization chain, causing issues with Borrowers' chains of title, impairing their vendibility and potential insurability;

(3) Servicer manipulations of data in third-party computer software platforms generated and utilized by document manufacturing plants and foreclosure mill law firms that create, manufacture and file documents containing questionable and potentially false and misrepresentative information under the direction of the servicers and title companies;

(4) Manipulation of document manufacturing software to engineer false and misleading "hearsay" data, which is then transferred by parties with lack of actual, personal knowledge of the loan transfer wherein the data is applied to documents recorded in the real property records and to documents used to facilitate verified foreclosure complaints;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(5) The use of "MERS" as a "cover" to obfuscate the real parties in interest involved in the transfer of rights in any given property via an Assignment of Mortgage or Deed of Trust, which cause suspect issues for self-assignment by the party claiming an interest, using its own information and manufactured data to:

(a.) assign the Mortgage to itself using different addresses to obfuscate parties so it can thwart detection for use in effectuating the foreclosure process;

(b.) assign the Mortgage to itself using MERS as a "party of the first part" Assignor (representing that MERS is the "owner" or "holder" of a note it is not involved in), using a MERS-related street or post office box address to hide the real party in interest;

(c.) supply foreclosure mill attorneys with manufactured data, which in turn subvert the truth and bring fraud on the court by utilizing document manufacturing plant sources to facilitate the suspect fraud to obfuscate RICO-enforceable claims through the use of outside, "arms-length" contractually-created (or attorney-in-fact) relations between lenders, servicers, document signors and the REMICs attempting foreclosure;

(6) Deprive county recorders and clerks needed revenue to maintain the integrity of their state-mandated recording processes by controlling document flow into said processes; and

(7) Creation of documents and inherent "database directives" that could involve the subornation of perjury, unauthorized practice of law and ethical violations of Florida Bar Rules as well as general mandates issued by the Florida Supreme Court.

Below is an example taken from one specific case file in Florida (*C. Rachelle Roach v. Wells Fargo Bank, N.A. et al*), wherein the Servicer directed the foreclosure mill law firm to utilize one of these so-called "computer databases" to generate fraudulent documents, based on a work order directive to a foreclosure law firm, obtained by the examination team:

4. **Foreclose in the name of** :Wells Fargo Bank, NA. Do not initiate Foreclosure in the name of MERS, Fannie Mae or Freddie Mac. If title comes up in Fannie Mae or Freddie Mac please prepare an assignment to Wells Fargo Bank N.A. If title comes up in the name of MERS and you have Power of Attorney to sign on behalf of MERS, please prepare, execute and record the assignment from MERS to Wells Fargo Bank, N.A. and forward a copy of the executed assignment via VendorScape to the "Assignment Issues" processor. Upon receipt of the recorded assignment, please forward the original recorded assignment to: Default Doc Department MAC X7801-02R 3476 Stateview Boulevard Fort Mill,SC 29715. If you do not have Power of Attorney to sign on behalf of MERS, please prepare and send the assignment via VendorScape to the "Assignment Issues" processor for execution.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The directive contained within the foregoing paragraph pairs with the 150-page **Foreclosure Attorney Manual** allegedly developed for use by Wells Fargo Bank, N.A. attorneys.  This foreclosure manual is now under scrutiny by state regulators and federal bankruptcy judges in New York as well as judges in other jurisdictions across the United States. This is another example of how MERS is used to facilitate suspect fraud on the court.  A copy of this 150-page  "manual" is included as part of the Exhibit package as a USB .pdf file, by reference; and is also attached in printed form to the Wells Fargo Bank, N.A. Exhibit package for review by the State's Attorney and the grand jury.  According to reports in the New York Bankruptcy case of Cynthia Carrsow-Franklin, Linda Tirelli, the attorney representing the debtor, confronted Wells Fargo's attorney who stated to her that the manual was "classified", thus admitting to its existence.

From the examples shown in the section on Wells Fargo's Default Assignment Team in Dakota, County, Minnesota (one of many suspect document manufacturing plants around the country), these issues are numerous and rampant throughout the U.S. as well as the subject county of this Forensic Examination.

The focus centers on MERS-related Assignments of Mortgage and the resulting case documentation produced thereafter, which revealed numerous issues with the chain of title being incongruent with the chain of custody of the note, as would be expected from a system that advocates not recording assignments to save money.

Further, because it also appears that MERS wants to "have its cake an eat it too", MERS, through its Florida counsel, also petitioned the Court in one instance to "share in the spoils" of a foreclosure sale, even though MERS is NOT the real beneficiary and in so doing would violate its bankruptcy-remote status.


## VI. Summary of the Overview

Since the Clerk elected to make public the fact that he intended to conduct a forensic examination of the official real property and court records that he was elected as a public trustee to maintain, he has informed the examination team that he has come under political pressure from outside law firms and former judges, who appear to be scrutinizing his right to examine the integrity of the land records he was elected to be the custodian of.

It is the belief of the examination team that based on the research personally conducted by the Clerk, a former law enforcement officer, that based on the research conducted by the examination team, the Clerk has reason to suspect that fraud has been perpetrated upon not only the land records but the court records as well.  The examiners believe that as a result of the Clerk himself being physically exposed to the team and their examination effort, he too is a witness to the issues set forth herein and subject to being called to testify to the grand jury, if necessary.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The amount of money spent on this forensic examination pales in comparison to the millions of dollars of taxpayer money wasted in the handling of incomplete or facially-deficient foreclosure filings utilizing MERS-related documents or in the alternative, documents prepared by document manufacturing plants (under the direction of foreclosing counsel) or directly prepared by the foreclosure mill law firms themselves. The examination team was provided with documentation from Osceola County, Florida's foreclosure "rocket docket" proceedings which appears to validate the statements contained in this paragraph.

This scenario does not speak well to the intent of Florida Legislature or the Supreme Court of the State of Florida to mandate speedy judicial outcomes over apparent denial of due process of law.

The fact that suspect documents appear to exist in both the real property records and in the court filings themselves probably has these outside law firms worried that there may be a political backlash as the result of this forensic examination.

If not for any other reason, criminal prosecution of these allegations would indeed send a strong message to these law firms that Osceola County, Florida's Clerk does not intend to tolerate this aberrant and suspect behavior despite the political pressure that continues to be applied against him from the inception of this examination through to the date of the release of this Report.

Shortly after the forensic examination into the Osceola County real property recorded began, the Clerk of Osceola County, Florida posted a **WARNING** sign on his website, using his recording platform to alert potential violators intending to record suspect documents that his department intends to investigate such matters.

DK Consultants LLC and its examiners comprehend that the Clerk believes he is justified that there are suspect fraudulent real property recordings and court filings but maintains an even stronger position that it is up to the State's Attorney that prosecutes cases in Osceola County, Florida to investigate these allegations and bring criminal charges against those responsible for perpetrating such frauds and the resulting illegal taking of property utilizing procedures that comport to white collar criminal activity.

The examiners further maintain that these alleged criminal enterprises will continue their behavior unless they are stopped through prosecution or forced to "consent to changes in their behaviors" by agreement and order of the Court overseeing this prosecution. It has been shown through the results of this forensic examination that despite the Attorneys' General Settlement Agreement, robosigning and document manufacturing continues to affect the recording systems of Osceola County, Florida (and everywhere else in America) to this very day. It is the belief of the Examination Team that there is probable cause to believe that multiple parties have indeed engaged in numerous criminal enterprises through the filing of suspect real property recordations and court filings which would constitute the wrongful and illegal taking of real property from property owners in Osceola County, Florida.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is further asserted that the evidence (combined with witness testimony from **at least** two whistleblowers involved with this forensic examination) that entities within the State of Florida, working in concert with entities without the State of Florida, would be, upon further investigation by a grand jury, found criminally responsible and thus worthy of the issuance of true bills in these matters.

The balance of this report has been set forth into specific sections to describe the behaviors of the various entities that the Examiners believe took part in the preparation of and recordation of the schemes and artifices to defraud Osceola County, Florida real property owners of both their real and personal property.

As Florida is a deficiency judgment State, once the banks sold the property at a foreclosure sale (some of the sale sheets are present here, where the Plaintiff only paid $100 for the property at sale), the Borrowers were left facing a deficiency once the bank made a profit selling its "REO" (real estate owned) property.  It is suspect that the banks additionally and unjustly enriched themselves during the commission of these alleged criminal acts.

Thus, the conveyance of any title from an REO-type transaction (despite the assurances that the titles to these properties were insurable) would be at great risk for exposure to double liability from outside intervening assignees in the chain of title.   The title companies would knowingly suffer less risk of having to pay claims on such issues, because their *Schedule B* portion of their own title policies clearly state that if the basis for the claim is not found in the real property records, then it is excluded from coverage.   In sum, this would make the title policies worthless ab initio.

**The question then pondered is: Why is the issuance of worthless title insurance (required) and allowed to continue in Florida if the title companies have allowed MERS and the banks to obfuscate the chain of title while excluding these alleged criminal acts from coverage?**

Further, the fact that the American Land Title Association ("ALTA") is also a member of MERSCORP should add suspicion as to why ALTA was needed to make the "MERS® System" work. From the beginning, ALTA's job was to extol and pontificate the reason for the lenders' participation in the "MERS® System" in order to "speed up" the process (in by-passing the land records) through the use of the "MERS® System", to effectuate streamlining of securitization.

Had all of the foregoing scenario described in this entire *Section One* **NOT** occurred, there would be no reason for this forensic examination.

Listed below are the Exhibits and Witnesses referenced in this report.  The witnesses names have been withheld for their personal safety and referred to only by letter values.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

*Section Two* takes a closer look at the "MERS® System" and the scenarios it appears to have created by design.

*Section Three* discusses the specific issues involving the recordation of suspect documents.

*Section Four* lists the suspect actors that were exposed and reported on in the results of this Forensic Examination.

*Section Five* discusses a cross-section of the cases filed by Ablitt-Scofield, P.C. (Connolly, Geaney, Ablitt & Willard, P.C.) in the Osceola County, Florida Circuit Court.

*Section Six* presents an overview of the forensic issues within the foreclosure cases brought by multiple foreclosure mill law firms into the Osceola County Circuit Court.

**VII. List of Printed Exhibits Referenced in this Forensic Examination Report**

The following is a chronological listing of the Exhibits referenced within this comprehensive Forensic Examination of the real property records of Osceola County, Florida as they present themselves within each category of discussion, as incorporated herein by reference.  Some of the Exhibits are too voluminous and thus, in order to save time, paper and unnecessary expense, these files were included in ".pdf" format on a USB flash drive; copied and provided in part to the State's Attorney serving Osceola County, Florida.

**EXHIBIT LIST BY NUMBER**

**(01) Covington & Burling letter to MERSCORP Corporate Counsel regarding the Validity of MERSCORP, Inc.'s eRegistry System, October 21, 2004**

**(02) Certificate of Ownership and Merger merging MERSCORP Holdings, Inc. with and into MERSCORP, Inc., filed with the Delaware Secretary of State on February 27, 2012**

**(03) Moody's Investor Service, "Structured Finance" Special Report on "*MERS and its Impact on the Credit Quality of First-Mortgage Jumbo MBS Transactions"*, April 30, 1999**

**(04) *Clouded Titles - Mayday Edition*, by Dave Krieger, V. 3.4, Copyright 2014; original edition Copyrighted 2010; ISBN 10: 0-692200967 *(printed by Law Bulletin Publishing Co.)***

**(05) MERS RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 (04/2014)**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(06) MERS/MERSCORP, INC.** *Consent Order* **(#2011-044); April 13, 2011; issued by Office of the Comptroller of the Currency, Board of Governors of the Federal Reserve System, Federal Deposit Insurance Corporation, Office of Thrift Supervision and Federal Housing Finance Agency**

**(07)** <u>Notice of Rejection of Executory Contract</u>**; In re New Century TRS Holdings, Inc. et al; March 19, 2008; Case No. 07-10416 (Ch. 11 BK Ct. Delaware)**

**(08) Mark J. Malone on MERS, Letter to Professor Christopher Peterson, November 29, 2010 (re: William Hultman deposition of April 7, 2010)**

**(09)** *Asset Securitization, Comptroller's Handbook;* **November, 1997; Comptroller of the Currency (Liquidity and Funds Management)**

**(10)** *Tampa Bay Business Journal* **article by Eric Snider, re: FLDG/Wolfe law firm laying off 116 workers, April 30, 2014**

**(11)** *Massachusetts Lawyers Weekly* **article by Brandon Gee, re: Connolly, Geaney, Ablitt & Willard facing eviction, in financial disarray, June 12, 2014**

**(12)** *Foreclosure Defense Nationwide* **blog post by Jeff Barnes, Esq. entitled "Courts Continue to Trample on Homeowners Rights and Reward Banksters, September 18, 2014**

**(13) Memorandum and Order,** *Montgomery County, Pennsylvania Recorded of Deeds et al v. MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc.***; No. 11-CV-6968, U. S. Dist. Ct. E. D. Pa., June 30, 2014**

**(14)** *Bank of New York et al v. Stephen Silverberg et al***, No. 17464-08, S.C.NY, App. Div. 2nd Jud. Dept., June 7, 2011**

**(15)** *"Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory"* **by Christopher L. Peterson,** *William and Mary Law Review,* **October 2011, Vol. 53, No. 1**

**(16) ELECTRONIC TRACKING AGREEMENT - WAREHOUSE LENDER, internal MERS document (with exhibits)**

**(17) ELECTRONIC TRACKING AGREEMENT - WHOLE LOAN SALE AGREEMENT, internal MERS document (with exhibits)**

**(18) ELECTRONIC TRACKING AGREEMENT - GESTATION AGREEMENT, internal MERS document (with exhibits)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(19)** *MERS FAQ SHEET*, as excerpted in part from http://www.mersinc.org

**(20)** *MERS Policy Bulletin - Number 2011-5*, issued July 21, 2011

**(21)** *"The Case Against Allowing Mortgage Electronic Registration Systems, Inc. (MERS) to Initiate Foreclosure Proceedings"*, by Nolan Robinson, Cardozo Law Review, April 3, 2011

**(22)** *MERS Announcement Number 2011-01*, issued February 16, 2011

**(23)** *Comments of the Florida Bankers Association*, Case No. 09-1460, Sup. Ct. FL, September 28, 2009 (In re: *Amendments to Rules of Civil Procedure and Forms*, etc.)

**(24)** *Dennis Delia v. GMAC Mortgage*, Case No. 5D14-78, Oct. 17, 2014, 5th DCA FL

**(25)** Verified Amended Complaint, *Lorelei Fiala v. Ablitt Scofield, P.C.,* Case No. 2013 CA 0750, 15th Jud. Cir. Ct., Palm Beach County, Florida

**(26)** Listings of filed Ablitt-Scofield/Connolly Geaney Ablitt & Willard Cases

**(27)** *Fiala v. Ablitt Scofield*, Palm Beach County, Florida Clerk's docket sheet printout

**(28)** Connolly, Geaney, Ablitt & Willard, P.C. "form" letter to Nationstar Mortgage LLC, dated August 7, 2013 (extracted from an actual court case filing in *Section Five* herein)

**(29)** 11-Page Principal Forgiveness Flow Charts describing manufacture of documents for the purposes of forgiveness of fines due as part of the federal Settlement Agreement

**(30)** MERSCORP / MERS "Signing Agreement" sample for Flagstar Bank, FSB and its "vendor", Security Connections, Inc.

**(31)** Final Judgment, *Bank of America, N.A. v. Linda A. Nash, et al* (2011 CA 4389; Div. 14-K; 18th Judicial Circuit, Seminole County, FL; Oct. 16, 2014)

**(32)** *Burdeshaw v. Bank of New York Mellon, et al* (1D13-2703; 1st DCA, Oct. 13, 2014)

**(33)** *Kiefert v. Nationstar Mortgage LLC* (1D13-5998; 1st DCA, Oct. 13. 2014)

**(34)** *Lacombe v. Deutsche Bank National Trust Company, et al* (1D13-4094, Oct. 14, 2014)

**(35)** *LNV Corp. v. Madison Real Estate, LLC* (2010 NY Slip Op 33376(U); Dec. 6, 2010)

**(36)** Docket & Recommended Order of Magistrate, *HSBC Bank USA, N.A. v. Marra, et al* (2008 CA 0630 NC; Aug. 15, 2013; CLOSED Apr. 8, 2014)

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**VIII. List of Witnesses that have Personal Knowledge of Certain Statements Contained in this Forensic Examination**

### WITNESS A

**WITNESS A** is the party who is mentioned within this report that filed a whistleblower lawsuit against Ablitt Scofield, as described in *Section Five*.

### WITNESS B

**WITNESS B**, whose name cannot be released in this report due to personal safety concerns, has knowledge of the inner workings of the processes inside a specific financial institution noted in this Report, which are being utilized for the purposes of manufacturing notes and other documents in an attempt to tie the institution to certain second mortgage loans that can be used to off-set the fees owed to the government involving their Consent Order arrangement (allegations of 18 USC 371, RICO and perjury claims involving the use of Florida Notaries to commit fraud on the land records in violation of Florida Criminal Code § 817.535).

### WITNESS C

**WITNESS C** is a former mortgage loan officer with inner workings and knowledge of certain documents mentioned in this report; and can attest to certain issues only known to "insiders". His name must also be kept private for personal safety concerns.

### WITNESS D

**WITNESS D,** a potential witness for the grand jury, has personal knowledge of the issues involving alleged criminal behavior regarding the "blind eye" treatment of Goldman-Sachs by the New York Federal Reserve Bank.

### WITNESS E

**WITNESS E**, a potential witness for the grand jury, has personal knowledge of the issues involved alleged criminal activity conducted by JPMorgan Chase Bank, N.A.

### WITNESS F

**WITNESS F,** a potential witness for the grand jury, is an ex-Bank of America, N.A. employee, employed as a robosigner, with personal knowledge of the bank's California operations; specifically that no notary public ever personally witnessed his signature and that he had no idea who MERS was or what authority he had, yet he signed hundreds of documents a month claiming he was an officer of MERS.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**[This page intentionally left blank.]**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

# SECTION TWO: INSIGHTS INTO THE "MERS® SYSTEM" AND WHAT IS NOT REVEALED TO THE "BORROWER"

## I. The Suspect Issues Behind the Recorded MERS-Originated Mortgages

The "wordsmithing" previously described in this report would appear to make what MERS and its alleged "members" (who are users of the "MERS® System" and are contractually bound to MERSCORP Holdings, Inc.) are doing behind the scenes (without participation of the "Borrower") is suspect of not only non-disclosure but of potential constructive fraud.

In this section, there are numerous Exhibits offered that must be validated by proper investigation because they are allegedly used in the "MERS® System" to further the objectives of the "beta model" and its users. **These documents are NEVER DISCLOSED to the public, only to the users of the "MERS® System".** All exhibits shown here are incorporated by reference in *Section One* of this report. Each of these exhibits will be noted as they appear by exhibit number.

It becomes necessary at this juncture to discuss that the definition of a "Borrower" as noted on a Mortgage loan appears to be given only a common meaning. The average person would see the term and believe that what the Mortgage states is that the "Borrower" is the party or parties that are Borrowing the actual funds by signing a promissory note and Mortgage to secure the home as collateral for the Note. This is the only scenario that the courts are apparently taking notice of.

However, behind the scenes, there exists what is known as an ***"Electronic Tracking Agreement - Warehouse Lender"*** Form that the "Borrower" on the recorded mortgage never sees and thus never signs or is ever made aware of. This form is attached to this report as **Exhibit 16** (in blank; highlighted for the purposes of emphasis to illustrate the "wordsmithing" in the USB .pdf version, which appears deceptive to the average "person"), part of which is shown below.

According to what appears on this Form, there are two distinct definitions of the party or parties involved in the participation of the execution of a Mortgage and Promissory Note. The form shown below clearly refers to MERSCORP Holdings, Inc. is an "Electronic Agent", yet MERSCORP Holdings, Inc. is never shown on the original Note and Mortgage that is executed by the homeowner. In this form, the party is referred to as the "homeowner" to distinguish it from the "Borrower", who is NOT the apparent person that one would believe it to be.

In the first highlighted sentence, it clearly shows that the "Borrower" appears to be the table-funded mortgage broker, the party who is listed on the recorded Mortgage document found in the real property records of Osceola County, Florida. It further appears that the Lender shown on this form (below) is NOT the "Lender" represented on the MERS-originated Mortgage signed by the "homeowners" at closing.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The second highlighted paragraph obligates the "Borrower" to "pledge the Mortgage Loans to the Lender and to service the Mortgage Loans". How can the "Borrower" referred to in the foregoing form be the same "Borrower" as stated on the MERS-originated Mortgage? **They aren't.**

This is why this document refers to the "Borrower" as stated on the recorded Mortgage as a "potential homeowner", which the Examiner construes to mean that the "set-up" of the loan in the "MERS® System" requires this form to be filled out based on the information provided to the originating "Borrower" (the Lender shown on the recorded Mortgage) from the homeowner's Form 1003 Mortgage Loan Application, which appears to utilize that "Form 1003" to facilitate a line of credit with the "interim funding lender", who is NOT listed on the recorded Mortgage. The use of this "wordsmithing" appears to create deception ab initio, from the moment the homeowner submits the Form 1003 to the mortgage broker, **the REAL "Borrower".** Further, the "Definitions" contained within this Agreement, "as amended from time to time" (unlike the homeowner's loan), do NOT state the meaning of the term "Borrower", which would then be construed to mean that the party wishing to depose or subpoena any person or entity signing this Agreement would have to ascertain the true meanings within this Form.

### ELECTRONIC TRACKING AGREEMENT
### WAREHOUSE LENDER

Lender Org ID _____
Borrower Org ID _____

THIS ELECTRONIC TRACKING AGREEMENT dated as of _____, 20__ (this "Agreement") among _____ ("Lender"), MERSCORP Holdings, Inc. ("Electronic Agent"), Mortgage Electronic Registration Systems, Inc. ("MERS") and _____ ("Borrower").

WHEREAS, the Lender has agreed to extend a line of credit to the Borrower for the purpose of the Borrower lending money to potential homeowners for mortgage loans (the "Mortgage Loans") pursuant to the terms and conditions of a Mortgage Warehouse Loan and Security Agreement dated as of _____ between the Lender and Borrower, as amended from time to time (the "_____ Agreement").

WHEREAS, the Borrower is obligated to pledge the Mortgage Loans to the Lender and a___ to service the Mortgage Loans pursuant to the terms and conditions of the _____ Agreement and to complete all actions necessary to cause the issuance and delivery to the Lender of the Mortgage Notes (the "Mortgage Notes"), and

WHEREAS, the Lender and the Borrower desire to have certain Mortgage Loans registered on the MERS® System (defined below) such that the mortgagee of record under each Mortgage (defined below) shall be identified as MERS;

NOW, THEREFORE, the parties, intending to be legally bound, agree as follows:

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**The foregoing scenario appears to create deception from the time the "homeowner" (referred to in the sense of the party signing the recorded Mortgage at closing) is never noticed that by signing the Form 1003 Mortgage Loan Application, he has unknowingly entered into the front end of a warehousing securitization agreement.  This would explain that by the time he sits down at the closing table to sign the Mortgage and Note, a MERS MIN (owned by MERSCORP Holdings, Inc., the "Electronic Agent" in the securitization transaction as described above, and NOT spelled out finitely in the Mortgage the homeowner signs at closing) was already inserted onto the front page of the Mortgage and Note (in most cases) to indicate that electronic tracking of the transaction had already begun.**

This is why the homeowner (as the "Borrower" on the Mortgage) is actually a third-party beneficiary to the securitization transaction:

> (1) His personal identifying information ("P I I") is utilized to further the originating Lender's line of warehousing credit with the interim funding lender; and

> (2) Because his P I I is used to get him a loan he would not otherwise get from a standard "good credit risk" loan scenario, his credit is pledged to set up the securitization platform for the REMIC (as shown in the diagram above in ***Figure 2***) to work effectively; thus, he derives the direct benefit of a pass-through of funds from the investors (holding non-recourse bonds) to the closing escrow agent handling the homeowner's loan closing.

In other words, without the Borrower's signature and pledging of credit, there is no "guarantee" and the securitization process will not work.  The Borrower's (at closing) benefit is the guarantee that he will get the mortgage loan; however, the caveats are never disclosed that the homeowner unknowingly participated in a securitization scheme.   There has also been much discussion of whether or not the promissory Notes were shredded once they were scanned and turned into image files within the "MERS® System".   The homeowner never consented to that, nor were they ever informed that their loan application furthered someone else's financial gain, without their knowledge.  The Examiners believe that this non-disclosure was at all times, deliberate.

Under the "Definitions" of the next document attached to this report as an Exhibit and incorporated herein by reference, the ***"Electronic Tracking Agreement - Whole Loan Sale Agreement"*** specifically defines who MERS and MERSCORP Holdings, Inc. are according to their real meaning, as well as where the promissory Notes are supposed to go once turned into image files on the "MERS® System" and it is attached as **Exhibit 17** by reference (also defined below, in part):

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

"MERS® System" shall mean the Electronic Agent's mortgage electronic registry system, as more particularly described in the MERS Procedures Manual.

"Mortgage" shall mean a mortgage or deed of trust securing a Mortgage Note.

"Mortgage Loan" shall mean each mortgage loan included in a Mortgage Pool, in each case secured by a Mortgage.

"Mortgage Loan Documents" shall mean the originals of the Mortgage Notes and other documents and instruments required to be delivered to the Custodian in connection with each transaction, all pursuant to the Custodial Agreement.

"Mortgage Note" shall mean a promissory note or other evidence of indebtedness of the obligor thereunder, representing a Mortgage Loan, and secured by the related Mortgage.

"Mortgage Pool" shall mean a designated pool of Mortgage Loans, a 100% ownership interest in which is purchased and sold under the Purchase Agreement.

**From the above "Definitions", it becomes clear that the "MERS® System" IS the registry.**

Further, to answer the posited question of whether or not the trust possesses the original Note and mortgage (as has been previously suggested to the contrary), the foregoing definition of "Mortgage Loan Documents" identifies that the "originals of the Mortgage Notes and other documents and instruments required to be delivered to the Custodian" would appear to indicate, barring a court's protective orders against it (because it is undetermined whether the Custodian of the trust pool actually has the documents), the **Custodian** of the trust pool has the original documents.

### *The Government Cracks Down on MERS and MERSCORP, Inc.*

If MERS is a bankruptcy-remote "shell" which is used interchangeably in court cases all across the county to mean whatever MERS' counsel refers to as a "nominee" or "mortgagee of record", the real meaning being defined by the users of the "MERS® System", which is wholly-owned by MERSCORP Holdings, Inc., makes BOTH corporations and their officers suspect for participation in the scheme to defraud homeowners by deception under the Florida RICO statutes.  It should also be noted here that many of MERS policy manuals and membership rules were made inaccessible to the public following the issuance of the April 13, 2011 *Consent Order*, which is also attached to this report as an Exhibit and incorporated herein by reference; the sum and substance of emphasis shown below for the Examiner's concern that MERS and its parent MERSCORP Holdings, Inc. have indulged in the reckless and misrepresentative behavior of the users of the "MERS® System" (the "Examined Members" being Fannie Mae and Freddie Mac, all other "members" apparently excluded):

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(4)   In connection with services provided to Examined Members related to tracking, and registering residential mortgage loans and initiating foreclosures ("residential mortgage and foreclosure-related services"), MERS and MERSCORP:

(a)   have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; and

(b)   have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members.

(5)   By reason of the conduct set forth above, MERS and MERSCORP engaged in unsafe or unsound practices that expose them and Examined Members to unacceptable operational, compliance, legal, and reputational risks.

Despite the above findings being only pertinent in part to "Examined Members" (being Fannie Mae and Freddie Mac), there is probable cause to believe that the allegations set forth in the foregoing paragraphs are systemic and inherent (and continue to plague) in the "MERS® System" regarding these alleged document manufacturing abuses noted throughout this report; otherwise, the Examiner herein believes that the federal agencies involved in the issuance of this *Consent Order* would not have seen fit to mention these behaviors at all regarding "Examined Members".

**Again, restated here, despite all of the alleged "training" conducted by MERSCORP to its current members using the "MERS® System", this apparently not stopped document manufacturing, robosigning, surrogate signing, notary fraud, false swearing and perjury in the recordation of documents into the real property records of Osceola County, Florida.**

The protecting only Fannie Mae and Freddie Mac from the behaviors described in these findings, through the government agencies' *Consent Order,* makes this Order (in the least) wantonly discriminate to the behaviors exhibited throughout the system **not covered by this Order** to the point of being protective of only government-sponsored enterprises ("GSE"), which are covered under a separate Agreement in the "MERS® System", known as the ***"Electronic Tracking Agreement - Gestation Agreement"***, is also attached to this report as **Exhibit 18**, by reference.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Part of the problem with GSE-related loans, is that in most instances, these entities do not surface until AFTER the foreclosure sale has occurred.  In most instances observed by the Examiners taking part in this Forensic Examination, when an Assignment of Mortgage is recorded, it is not self-authenticating; however, the lack of a recorded Assignment can be legally challenged as to the actual "standing" of the claimant Plaintiff, as noted in one of the Definitions contained within the *"Electronic Tracking Agreement - Gestation Agreement"*, below:

> "Assignment of Mortgage" shall mean, with respect to any Mortgage, an assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related mortgaged property is located to effect the assignment of the Mortgage upon recordation.

Thus, according to this Agreement, which affects GSE's, if there is no Assignment, how can an effective transfer of the Note and Mortgage be held to be valid as to the standing of the Plaintiff?  Further, the GSE's had to give their written consent to the Gestation Agreement to make it work, thus, they were participants in this scheme, even if only remote.  Fannie Mae and Freddie Mac are still founding members of MERS, so each understands the implications of being involved in the scheme.

Further, in every available *Black's Law Dictionary* known to the legal community, the word "gestation" has a meaning construed to deal with the term of pregnancy of a woman (sic).  It is highly likely, given the data in this Form, that it will probably only be made available to a grand jury because cooperation directly with the GSE's and their counsel may meet with certain resistance in the civil realm.  It is also important to note that none of the GSE's originate loans; they only guarantee them.  All the GSE's however, do have trust pools of loans they manage.

The listings of these can be found under *IRS Publication 938*, which is contained in the USB Exhibit package for every available publication year that was accessible to the Examiners.

This would lead the Examiner to believe that the intentional misrepresentation of the true party in interest in the real property records under Florida Criminal Code § 817.535 may also find probable cause that such a crime has been committed when the GSE is the real party in interest but only the name of the "servicer" is shown in the real property records.

The claims of Assignment of Mortgage to the servicer of the loan (whether in name only or otherwise) is still violate of the real facts contained therein if a GSE is found to be the real party in interest NOT represented in this equation. Again, even with the recorded Assignment of Mortgage in place, the real party in interest may still be obfuscated from not only the Borrower (homeowner) but also from the Courts as well.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It should be further understood that the allegations set forth herein are stated due to the "MERS® System" being a **corporate-designed private enterprise** that, despite the issuance of the foregoing *Consent Order*, is still a private system that has pontificated its authority **by self-proclamation** without full disclosure to the parties who unknowingly made themselves victims of its beta model by signing MERS-originated Mortgages and misrepresentative promissory Notes, when the true facts of "line of credit pledging" into a private corporate electronic system, maintained by privately-held corporate agreements, were undisclosed to them.

Further, it should be noted that absent the foregoing *Consent Order*, these two corporate entities have no real regulatory oversight; and they both continue to act as private corporations, claiming in numerous court cases that MERS's "rights have been violated" (when MERS is simply a "shell" owned by parent MERSCORP) and that they have both "sustained an injury" in relation to the homeowner.

The nexus created within the Deed of Trust or Mortgage appears to tie MERS into the front end of the securitization equation, whereas, the foregoing documents appear to tie MERS into the back end of the securitization process.

In virtually all instances reviewed by the Examiners, the Defendants in the named foreclosure actions were never privy to the foregoing information; otherwise, there would have been some allegations of commercial non-disclosure or *fraud in the inducement* provided for review as a counterclaim. Until these forms and allegations can be vetted throughly by a grand jury, the nation (and Osceola County, Florida) may never know the real truth and the consequences of them.

### *MERS' Officer Fails to Effectively Validate His Resolute Signing Authority*

In revisiting this allegation, it becomes extremely important to understand that during the ***Ukpe Deposition***, supra (because the deposition of William Hultman was 170 pages in length, it is included as an Exhibit in a USB .pdf version only; specific issues will be noted here), MERS's counsel (Robert Brochin) appeared evasive, as did Hultman himself, when it came to the discussion surrounding the Board Resolution which was allegedly passed (by the Board of Directors) and signed, which gave Hultman the legal authority to appoint "Certifying Officers", which in the context of this Forensic Examination as noted as $10 an hour employees who have been committing document manufacturing abuse examples ad infinitum, ad nauseum throughout this report. It becomes necessary to demonstrate this evasiveness from the transcript, below, specifically to the Ukpe case, where Hultman allegedly gave signing authority to the foreclosure attorney law firm of Phelan, Hallinan & Schmieg, L.L.P. (which evolved into a discussion of Mr. Hultman's complete authority; by Mark J. Malone):

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

1    directed to produce that resolution as a central

2    document in the case and we're going -- we will adjourn

3    the deposition today to a further date until the witness

4    has an opportunity to search for and locate and if it

5    exists, produce that particular resolution.  When was

6    that?

7        MR. BROCHIN:  Personally it's not relevant,

8    but what -- I think we are all talking about a different

9    resolution, so can you tell us what resolution you are

10   even referring to?

11       MR. MALONE:  The question I asked Mr. Hultman

12   a moment ago was whether the Board of Directors passed a

13   resolution relating to Hultman Exhibit 4 and I'll spell

14   that out a little bit more.

15   BY MR. MALONE:

16   Q    Did the Board of Directors appoint a

17   resolution appointing employees of Phelan, Hallinan &

18   Schmieg, L.L.P. as assistant secretaries and

19   vice-presidents of Mortgage Electronic Registration

20   Systems, Inc., that's the first question.  I think

21   Mr. Hultman answered it yes.  Is that correct,

22   Mr. Hultman?

23   A    That's correct.

24   Q    And my next question is -- my next question

25   will be when did the Board pass that resolution

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

1    appointing members of Phelan, Hallinan & Schmieg, L.L.P.

2    as assistant secretaries and vice-presidents of MERS?

3        A     The resolution was adopted pursuant to the

4    delegated authority to me on October 23, 2007.

5            MR. BROCHIN:  And a copy of that resolution

6    that authorized him has been produced.

7            MR. MALONE:  Please, Mr. Brochin.  Could I

8    have the last answer by the witness read back.

9            (The following answer was read by the

10   stenographer:  "Answer:  The resolution was adopted

11   pursuant to the delegated authority to me on October 23,

12   2007?")

13   BY MR. MALONE:

14       Q     So when did the Board meet to pass that

15   resolution, the one referenced in Hultman Exhibit 4?

16       A     They didn't.

17       Q     When did the Board duly adopt a resolution

18   authorizing the appointment of attorneys from Phelan,

19   Hallinan & Schmieg to be appointed as assistant

20   secretaries and vice-presidents of the corporation?

21       A     October 23, 2007.

22       Q     And did the Board meet that day, October 23,

23   2007?

24       A     No.

25       Q     When did the Board meet in relation to this

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

1    particular resolution, this Corporate Resolution Hultman

2    Exhibit 4?

3         A    They originally met in April of 1998 and

4    delegated me the authority to do this, and so by virtue

5    of the fact that I had the delegated authority when I

6    appointed them officers on October 23, 2007, that was an

7    action of the Board.

8         Q    Your testimony, Mr. Hultman, is back in April

9    of 1998 the Board of a predecessor company authorized

10   you to appoint non-members of MERS as assistant

11   secretaries and vice-presidents of a successor

12   corporation?

13            MR. BROCHIN:  Excuse me.  Object to the form

14   of the question.

15        Q    Go ahead, please answer.

16        A    No.

17        Q    What did the Board do in April of 1998 in

18   terms of authorizing you to appoint anyone to do

19   anything?

20        A    What they authorized me to do was they

21   delegated me the authority to elect persons requested by

22   members to be officers of Mortgage Electronic

23   Registration Systems, Inc.

24        Q    What kind of officers?

25        A    Assistant secretary and vice-president.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

1    Q    And your testimony is that is what the Board
2    did in April of 1998?
3    A    Yes.
4    Q    And that resolution that was passed back in
5    April of 1998 was by a company that as I understand it
6    went out of existence in June of 1998, is that correct?
7    A    Yes.
8    Q    How does a resolution of a company that went
9    out of existence in June of 1998 become effective
10   October 23, 2007?
11        MR. BROCHIN:  Object to the form of the
12   question.  Calls for a legal conclusion.
13   Q    Answer the question, please.
14   A    As I explained to you before, the corporation
15   -- the first MERS corporation went out of existence and
16   the second MERS corporation assumed its duties and
17   obligations and then when the third MERS corporation was
18   formed, that corporation assumed some of the duties and
19   obligations of the original MERS vis-a-vis the second
20   MERS.  At that point, what I think I said was that I
21   didn't know where the documentation was that ratified
22   the original resolution.
23   Q    I recall some testimony along those lines that
24   certain resolutions were ratified, but not all
25   resolutions of the prior MERS corporation, is that

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

1    exercised by the original two MERS were split off and

2    placed into that company and those are the ones that

3    relate to acting as mortgagee or acting as beneficiary

4    of loans originated by MERS members that had chosen, or

5    their borrowers had chosen to make us the mortgagee or

6    beneficiary.

7        Q    And at that point on January 1, 1999 the two

8    prior MERS corporations, MERS one and MERS two, had

9    adopted over the course of time numerous resolutions, is

10   that correct?

11             MR. BROCHIN:  Object to the form of the

12   question.

13       A    Yes.

14       Q    And were all of those prior resolutions

15   adopted by MERS three or just some of them?

16       A    Some of them.

17       Q    Was the resolution of April 9, 1998 granting

18   the secretary the power to appoint certifying officers

19   adopted by the new MERS corporation on or after January

20   1, 1999?

21       A    I don't know.

22             MR. BROCHIN:  Object to the form of the

23   question.

24       A    When the third MERS corporation was

25   incorporated, some of the duties and authority that was


**[deposition excerpt in part ends here]**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Malone claims that Brochin objected to the request for continued further testimony and assured Malone that they would "make every effort to produce … those documents".   It has been over 4-1/2 years now and Malone has told the Examiner writing this report that he has **NOT** received any resolutions giving Hultman any signing authority, which could also be construed to mean that any "authority" that claims to be "superceding authority" based on the previous resolutions, must also be suspect as invalid.

It would appear that a grand jury would have more success in compelling Hultman and the MERS/MERSCORP Boards of Directors to produce the originals of these requested resolutions **and the corporate minutes wherein Hultman claims he "memorialized" the conversations on paper**; in addition to all of the by-laws and amendments that connected these resolutions together through all three (3) MERS ventures because MERS and its counsel appear to be successful in noncompliance of request for production in discovery.

**II. MERS' use of the Court System in Osceola County to "Share" in the Spoils**

**NOTE: This case is the second observance in the State of Florida by the Examiner preparing this report wherein MERS has filed an answer with the Court in a foreclosure case, asking to "participate in the surplus" of a foreclosure sale.   This particular case is the Osceola County, Florida case of *Wells Fargo Bank, N.A. as Trustee, on behalf of the holders of the Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1 v. Duc C. Nguyen et al.***

This case was analyzed in part in *Section Five*, Case No. 31. The relevant documents, being Certified Copies from the Court records, are contained in the actual evidence package and are not made a part of this report.  Public access of this file may be obtained through the Osceola County, Florida Official Court Records site.

Two (2) documents were electronically filed with the Court on 02-06-2014 by the Florida law firm of Shapiro, Fishman & Gache, LLP (another foreclosure mill law firm under examination by this team) on behalf of MERS in Case No. 2013 CA 0140 MF, as:

> (1) "Notice of Appearance as Counsel for Defendant Mortgage Electronic Registration Systems, Inc. as Nominee for First Magnus Financial Corporation"; and

> (2) "Defendant's Answer and Petition to Participate in Surplus".

The Examiner preparing this entry takes note of the preceding filings and submits the following suspect issues for consideration, to wit:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) It is the belief of the Examiner that the reason MERS is listed as a Defendant in foreclosure actions is that if there are any unknown intervening assignees within the MERS electronic database concerning the affected MIN (100039290594957037) in this instance, it is for the purposes of researching and notifying said unknown assignees obfuscated from the Borrowers by the MERS database and the MERSCORP members that input the data that is intended for the Borrower's to read; otherwise, MERS and its parent, MERSCORP Holdings, Inc. would have no idea that a challenge involving the MERSCORP-owned "MIN" even exists;

(2) The foregoing summation parallels the apparent assertions in the Defendant MERS' answer to the Complaint that it is without knowledge as to the allegations contained in Paragraphs 1 through 19 and 21 and 22 of the Complaint. Paragraph 20 of the Complaint mentions MERS as having a possible interest. This "interest" is specifically undefined in the MERS-originated Mortgage as to the "interests" granted to it by the Borrowers.

(3) It is for good reason, as it becomes apparent here as MERS (by and through its counsel) appears to be interested in violating MERS's alleged bankruptcy-remote corporate charter by asking for a "cut of the action". The Examiner believes the intent is to attempt to "validate" its "beneficiary" status, when in fact, MERS's own internal documents state that MERS is only a "beneficiary of record" and does not possess any pecuniary interest in the mortgage loans recorded in its name as nominee (agent) for the lender;

(4) In light of the internal documents discussed in the previous section, there is probable cause to believe that the entire scheme wherein the "Borrower" is not who MERS intends the actual "Borrower" to be, that the signing of the document at the closing table would lead the Examiner to believe that certain fundamental elements of MERS's "nominee" and "mortgagee" status in Florida were never disclosed to the Borrowers, despite MERS's claims that it is a "mortgagee in record" only. The specific definitions of WHAT MERS IS are never shown in any mortgage contract; thus, leaving interpretation of the meanings of these terms up to the courts where MERS' counsel can continue to "play loose and fast with the facts";

(5) By virtue of deposition testimony of former MERS CEO R. K. Arnold and then Secretary William Hultman, MERS is a bankruptcy-remote entity, which is construed to mean that it cannot have assets or liabilities, receive an income or pay expenses; thus, it can have no employees and can't share in the spoils of anything, including any proceeds arising from a foreclosure sale;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(6) Clearly, MERSCORP Holdings, Inc. fka MERSCORP, Inc. MERS's parent since January 1, 1999, is the for-profit entity that First Magnus Financial Corporation created a nexus (by contract) with to use the MERS electronic database, which is the "SHELLGAME" that is being played on Courts across the country (that "the parent and the child are one in the same" when in fact they are not);

(7) MERS's own policies preclude MERS from receiving payments (see below): The foregoing section was excerpted from MERS' own FAQ page, included as Exhibit 19 to this report, by reference (as shown below):

## Does MERS collect mortgage payments from borrowers?

No. MERS, MERSCORP Holdings or the MERS® System do not service mortgages. Mortgage lenders, or other mortgage servicing companies, collect payments from borrowers and manage their loans.  Borrowers who have questions about their loans, or who need help with foreclosure prevention, should contact the company they send their payments to—not MERS or MERSCORP Holdings.

(8) Since the financial debacle of 2008, MERS has attempted to foreclose on real property in Florida, albeit unsuccessfully.  Policy Bulletin 2011-5 however, effective as of July 23, 2011, instructed that "MERS MEMBERS" should not foreclose in the name of Mortgage Electronic Registration Systems, Inc. any longer;

(9) On occasion however, MERS is named as a Defendant and not a Plaintiff, as noted previously in this report;

(10) First Magnus Financial Corporation entered into a Chapter 11 Bankruptcy in Arizona on August 21, 2007 and it is unknown whether or not this entity asked the Court to rescind and revoke its MERSCORP executory contract (as New Century Mortgage Corporation and Fieldstone Mortgage had in their respective bankruptcies), which would mean that MERS no longer has "nominee" status of First Magnus or any of "its successors and/or assigns";

(11) If in fact, the bankruptcy court Trustee were aware of the Petition by MERS to share in the spoils of a debtor's estate, that MERS would have entered the Nguyen's bankruptcy action in the Middle District of Florida and would demand and thus attempt to prove that it owns the Note with the right to enforce it.  Only the party who has the right to enforce the Note executed by the Nugyens has the right to share in its proceeds;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(12) Accordingly, MERS is attempting to set case law here by asking the Court to insert what it claims is an "interest" via a recitation contained in Paragraph 6 of its Petition to the Court that it should get the proceeds due First Magnus Financial Corporation, which, if First Magnus transferred those rights by Assignment to another entity, as previously noted herein, and said transfers were lawful, then First Magnus would be due nothing as a result of the sale, and neither would MERS;

(13) The Examiner herein believes that MERS cannot participate in the surplus as that would effectively be considered an income that MERS does not rightfully deserve, as MERS did not suffer a financial damage or injury under Restatement of Mortgages Third at § 5.4;

(14) This Examiner has seen one other instance in Broward County, Florida where MERS has attempted to insert itself into the Note equation as a Defendant in an action where it seeks to gain credibility; however, it would appear that if MERS is not entitled to share in proceeds it did not derive without injury, then for MERS to receive one dime of any proceeds would constitute a fraud on the Court, as well as a potential fraud on the bankruptcy court of Arizona (the Examiner does not believe that MERS could file a proof of claim as a creditor in this case);

(15) In this instance, the Court would have to inquire of MERS whether it filed such a claim of interest in the Nguyen's bankruptcy proceedings in the Middle District of Florida, where it would be given every opportunity to present its interest in the promissory note, which if acknowledged, would contradict the information supplied in its Appellant Brief in A-04-000786, *Mortgage Electronic Registration Systems, Inc. vs. Nebraska Department of Banking and Finance,* where MERS argued that it was not a lender subject to taxes and charges customarily charged to lenders that are true Mortgagees by virtue of Restatement of Mortgages Third at § 5.4;

(16) MERS' counsel in this action automatically assumes that the trust has standing to foreclose on the property, when there are certain issues involving MERS' ability (through its alleged signing agreement authority) to appoint any outside party who agrees to indemnify MERS, to legally participate in Assigning Mortgages and Releasing MERS-originated liens as a matter of convenience, without having a recorded Limited Power of Attorney in place (like every other corporate entity has to have in conducting its normal course of business); and

**48 of 326**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(17) MERS counsel still has to prove that MERS did in fact suffer an injury and thus is entitled to any proceeds whatsoever.  MERS appearance here is NOT self-authenticating just because MERS (through its counsel) says so.

It is the Examiner's belief that once these facts are examined by the proper authority, that the real truths of what former New Jersey federal prosecutor Mark Malone (who has deposed William Hultman) has stated publicly (that MERS is a criminal enterprise) will become the focus of an official criminal investigation.

The foregoing statement is necessary, especially in light of the foregoing matter, wherein MERS is attempting to participate, as an actor, along with its Board of Directors of itself and its owner-parent, MERSCORP Holdings, Inc. to cause itself to become complicit in the violations of Florida's RICO statutes. Further, given MERS's own policies and dictates, MERS has told its alleged "membership" NOT to foreclose in its name (MERS Policy Bulletin 2011-5; attached as **Exhibit 20** herein, by reference.  Much of academia has aligned with the American legal system majority philosophy (with the exception of a few States) that MERS should not initiate foreclosure proceedings, as noted in "The Case Against Allowing Mortgage Electronic Registration Systems, Inc. (MERS) to Initiate Foreclosure Proceedings" by Nolan Robinson; Cardozo Law Review, April 3, 2011, a copy of which is attached to this report by reference as **Exhibit 21**.

Further, There are certain apparent contradictory aspects of preceding MERS Policy Bulletins, particularly #2011-01 (issued February 16, 2011), attached hereto as **Exhibit 22** by reference.

This document refers to MERS Certifying Officers aka MERS Signing Officers.  Despite the reference to the utilization thereof, the Rule claims that MERS must be taken out of the equation BEFORE a foreclosure action may be commenced; thus, MERS has nothing to do with sharing in the spoils because it's no longer a party by its own policies.

Rules, however, are made to be broken.  It appears that users of the "MERS® System" break the rules quite frequently, especially when it comes to manufacturing documents for the purposes of effectuating assignments of mortgage and engaging in procedures designed to "bolster" the lender's case before the Court, procedures that should be regarded as suspicious; procedures that violate MERS' own polices.  There is no proof attached to #2011-01 that Hultman or anyone else has been given signing authority without a firmly-recorded Limited Power of Attorney to execute documents on behalf of MERS.  Everyone else requires a Limited Power of Attorney, MERS of course, takes exception to this legal maxim, especially when such a document should have been recorded in the real property records of Osecola County, Florida BEFORE such signings were to take place, yet weren't recorded at all. The Examiner points to certain instances herein when certain users of the "MERS® System", especially the servicers, in many instances do NOT have a recorded Limited Power of Attorney at all, giving them authority to sign as attorney-in-fact on verified Complaints to Foreclose, when in fact, their authority is non-existent.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

*The Electronic Paper Debacle and its Relevance in Foreclosure Cases*

It should be noted that in a set of comments delivered to Hon. Jennifer D. Bailey (Task Force Chair for the Supreme Court Task Force on Residential Mortgage Foreclosure Cases) by the Florida Bankers Association (by and through its counsel Virginia Townes of Akerman Senterfitt, another well-known foreclosure law firm) on September 28, 2009, clearly used the term (as excerpted below), "eliminated" in reference to the promissory Note:

> In actual practice, confusion over who owns and holds the note stems less from the fact that the note may have been transferred multiple times than it does from the **form** in which the note is transferred. It is a reality of commerce that virtually all paper documents related to a note and mortgage are converted to electronic files almost immediately after the loan is closed. Individual loans, as electronic data, are compiled into portfolios which are transferred to the secondary market, frequently as mortgage-backed securities. The records of ownership and payment are maintained by a servicing agent in an electronic database.

{00436893;1}                              3

> The reason "many firms file lost note counts as a standard alternative pleading in the complaint" is because the physical document was deliberately eliminated to avoid confusion immediately upon its conversion to an electronic file. *See State Street Bank and Trust Company v. Lord*, 851 So. 2d 790 (Fla. 4th DCA 2003). Electronic storage is almost universally acknowledged as safer, more efficient and less expensive than maintaining the originals in hard copy, which bears the concomitant costs of physical indexing, archiving and maintaining security. It is a standard in the industry and becoming the benchmark of modern efficiency across the spectrum of commerce—including the court system.

A copy of these Comments has been attached as **Exhibit 23**, incorporated herein by reference.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The problem with the scenario presented here is that there appears to have been created certain counter-productivity between the desires of the Florida Legislature, the Supreme Court of Florida and the "rocket docket" judges mandated to rule "quickly" on a matter involving any note and mortgage that is part of the "MERS® System".

The argument here is that if in fact it has been represented that the notes are missing or at best, "eliminated" as the foregoing "comments" suggest, the "rocket docket" appears to run contrary to due process* because bank-represented foreclosure law firms appear to be paid to boiler plate not only their complaints, but their responses as well to queries from the courts.

As a result, the "senior courts" appear to have little tolerance for application of Florida law.  This was evidenced in the recent 5th DCA decision in *Dennis Delia v. GMAC Mortgage Corporation*, Case No. 5D14-78, October 17, 2014.   In this case, the appellate court reversed and remanded the case back to the Orange County Circuit Court (also part of the Florida Ninth Circuit with Osceola County, which makes this case applicable to the Osceola County Courts as well), agreeing with the homeowner "that the trial court (L. Kirkwood, J.) reversibly erred in concluding that the bank sustained its burden of proving that it possessed standing to proceed on its lost note theory because the bank failed to submit any evidence on the issue of adequate protection."

In its four-page ruling, the 5th DCA cited F.S.A. **Section 673.3091 (Enforcement of lost, destroyed, or stolen instrument)** and **Section 702.11(1)** of **what defines Adequate protections for lost, destroyed, or stolen notes in mortgage foreclosure**.  For clarity, a copy of this ruling has been attached to this report as **Exhibit 24** and incorporated herein by reference.

Another reason this scenario appears more damning to the proffered "agenda" is the application of the "5-minute" rule.  In this instance, all of the cases in the Court are set for five minutes each, as it appears that many homeowners, not understanding their rights and remedies (or for financial reasons), don't even show up.  Thus, the "rule" has literally created a scenario where the property, under any presented circumstance to the Court, could be given away in less than 60 seconds based on the lack of knowledge (or appearance) of a homeowner who was supposedly educated enough to sign a Note and Mortgage but not prepared to defend his home in jeopardy.

Thus, it is apparent that those who can only afford the appellate process (by initially retaining counsel to defend their "instant … 5-minute … case") might reverse a "rocket docket" judge.  This forces the homeowner to have to spend at least $10,000 to $15,000 more defending a property that may be upside down in its value.

---

*Part of the problem that the Examiner preparing this report has directly witnessed in a Miami-Dade "rocket docket" case is that the apparent Supreme Court mandate has been substituted for "blind justice" in favor of the bank, using the adage, "if the bank showed up, they must own the note".  In this instance, the bank was attempting to seek re-establishment of a lost Note on a 2001 Option One Trust Series (which after intensive research was shown not to exist; thus, a fictitious Plaintiff).  In that case, there was no indorsement stamp (in blank or otherwise) on what the servicer's representative claimed was a copy of a "lost note".   That case was settled on appeal, which means that the homeowner in *Delia* was forced to appeal (thus spending more sums of money to defend his property) the lower court's decision apparently based on the agenda that the "docket must be cleared at all costs".

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It further appears that the heightened standard of proof was ignored in *Delia* for the sake of "judicial expediency". From the indications presented in the various cases reviewed by the Examiners, the recorded documents which are manufactured by third-party document mills or generated through multiple sources such as law firms (whether under the direction of counsel or not) and servicers' own "signing rooms", then recorded in the real property records to reflect "standing", create false conditions precedent to a foreclosure.

To record an assignment AFTER the foreclosure has taken place and the property has been sold appears to then be a "moot issue" because the "taking" has already occurred vis a vis the "Florida system of justice", apparent in so many cases. The belief here appears that once the homeowner has been deprived of the property, there's no use in fighting for the property anymore. This is why the Florida justice system can no longer ignore the application of the Florida Criminal Code Section 817.535 when it comes to suspect recorded Assignments of Mortgages and Affidavits of Lost Notes. The Forensic Examiners believe that this "manufacturing process" will continue until it is stopped by stiff fines and jail sentences, something the civil processes in Osceola County and the State of Florida do not appear to question.

It also appears that the concern mandated by the foregoing statutes was to prevent the imposition of double liability upon the homeowner. When these statutes are ignored, so is the apparent attempt by the Plaintiff bank to circumvent the law using Florida's convenient "process". However, it would further appear that HB87, which many in the legislature advocated would help speed up the foreclosure process in Florida, apparently has had somewhat of a reverse effect. Still, the "5 minute calendar" per case still seems to circumvent that.

This is not to say that if there are obvious circumstances the judge will not dismiss a Complaint. From examination of the Court dockets, it appears that a number of cases were dismissed for lack of prosecution. Many of these cases involve the very lost note scenarios which presented themselves in the form of recorded Affidavits by representatives of the Servicers who more than likely had no control or personal knowledge of the facts they attested to in the recorded Instrument, which makes these lost note affidavits all suspect for violations of Florida Criminal Code Section 817.535.

"Double liability" has always been a concern where the "MERS® System" is involved as there have been significantly-noted issues with foreclosure actions mistakenly taken against Florida homeowners that: (a.) paid cash for the home; (b.) bought a real estate owned property ("REO") that had previous ties to the "MERS® System"; and (c.) did not have a mortgage in the name of the foreclosing lender; or in the alternative, had more than one lender attempting foreclosure at the same time. The greater concern is that the title companies appear to "write around" the defects created in the chain of title by those using the "MERS® System" because the unknown intervening assignees do not have recorded interests in the chain of title; thus are excluded from title policy coverage.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

## III. Summary

The following key issues involving the "MERS® System" and its involvement in the foregoing described scenarios in this Section of the report are noted, to wit:

(1) The "intent" appears that the use of the "MERS® System" was for the purpose of the electronic manufacture of an "eNote" as part of an overall effort to securitize that eNote as part of a larger pool of mortgages;

(2) Unknown to the homeowner, it appears that in order for this securitization process to occur, a line of credit was established by the real "Borrower", the mortgage loan broker, who would pledge the homeowner's credit score/rating/history (in acceptable form required to achieve compliant securitization processes); thus, what the property owner signed at closing appears to have contained misrepresentations as to the real status of the Mortgagor (based on semantics utilized by MERS and MERSCORP);

(3) There are suspect issues involving the creation of MERS' signing agreements, construed to mean that to date, MERS and MERSCORP have offered no concrete and viable proof that the "resolutions" that are uncertain to exist, are even available for examination.  Therefore, as it now stands, we are told that what MERS and MERSCORP have done up to this point is perfectly legal, despite the suspect use and abuse of the MERS name and corporate seal (whether properly dated or not) to effectuate recorded documents purposed to create standing so a Plaintiff lender could foreclose;

(4) It is clear that the users of the "MERS® System" do not follow MERS and MERSCORP-mandated rules, by and through the evidence procured from the real property records of Osceola County, Florida; including but not limited to:

(a.) complete obfuscation of the chain of title through the use of MERS' name as a "cover" for all unknown intervening assignees;

(b.) use of obvious boiler-plated document templates for the purposes of inserting information received from third-party, hearsay sources; and

(c.) involvement from the foreclosure mill law firm in designing the Assignment of Mortgage to purposefully give recorded "standing" to its Plaintiff bank client, using misrepresentative information within the actual recorded document;

(5) There may be clear misrepresentations as to the term "Borrower" as described in the recorded Mortgage document, given the spate of information noted in this section;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(6) The misrepresentative information appears to have been included in Assignments of Mortgages, Affidavits of Lost Notes and Satisfactions of Mortgages recorded in the real property records of Osceola County, Florida, many documents suspect for being prepared by non-lawyers without attorney supervision;

(7) The issue of whether a promissory Note was misplaced or shredded appears to be confusing and must be considered on a case by case basis; however, the Florida Bankers Association made it clear that electronic Notes and documents are now the preferred method, which then begs the question … how can an indorsement stamp be affixed to a "copy" of a note, when original documentation is lacking, especially a stamp that is not restrictive in nature or undated to prove effective transfer of the Note?

(8) It further appears that the banking institutions and their minions, in tandem with their attorneys of record in foreclosure matters, continue to perpetuate "MERS® System" arguments through the use of self-serving Assignments of Mortgage in an apparent effort to "manufacture" standing.

More seriously, the game of semantics utilized within the "MERS® System" appears to have inherent double meanings when it comes to the use of terms by its own "member/users" than what the average consumer or layman would understand as a sole purpose meaning, as in the term "Borrower".

Further, the mere fact that the Examiner would be led to believe that the consumers' lines of credit was utilized for the benefit of others without disclosure to those consumers en masse, as each loan is placed into the securitization chain, is extremely alarming and shocks the conscience. The electronic note, unless remanufactured, is NOT the original note. The original Note, if shredded, could not have simply manifested itself with endorsements on it if the electronic file had to be "manipulated" to include such without proof of effective date of transfer.

The mere fact we are even questioning that such document manipulations and boiler-plating processes continue to be utilized, just because the users of the "MERS® System" (a corporate entity with questionable authority behind these processes) say so, does not make what has happened here morally, ethically or politically correct.

In summation, much of academia has found (based on the previous research shown in the front end of this report) fault with the "MERS® System" in its use to facilitate the process of securitization, albeit evidently flawed. The criminal repercussions are already apparent with the finite recording of suspect false and misrepresentative documents using MERS in various forms, to cover up the misdeeds of what are not even the remnants of the 2008 financial crash, but rather, evidence of probable cause of apparent current and ongoing criminal behaviors within the real property records of Osceola County, Florida, which are eventually reflected within its own court proceedings, that highly likely affect the other 66 Florida counties as well.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

*The "MERS® System", MERS, MERSCORP Holdings, Inc. and the Lanham Trademark Act*

It is interesting to note that when a Borrower (homeowner) enters the offices of the escrow agent or title company to sign a MERS-originated Mortgage and Note (and accompanying paperwork), there appears to be more than just a two-party unilateral adhesion contract being executed.

Specifically, the Mortgage Identification Number ("MIN"), an 18-digit number that is solely the property of MERSCORP Holdings, Inc., which is incorporated as part of the "MERS® System", appears to bring MERS's parent into the contractual nexus. This occurs because what the Borrower does not understand is that even in light of the term "MERS" (under Definitions "C" or in the alternative "E") being used, there is no specific definition as to which MERS is involved in the transaction.  The "MERS® System" is also involved in the transaction without the Borrower's knowledge or consent because what is not disclosed in writing to the Borrower at closing is:

(1) that the promissory note is to be scanned and converted into an electronic image file, which in turn does not appear to be the real "lender" at all, but rather the lender signing back-office agreements with MERS and MERSCORP Holdings, Inc. as the "Borrower" (using the homeowner's credit history and credit score) to establish a line of credit with the secondary mortgage market;

(2) that the "MERS® System" account was already set up and the homeowner's loan had already been transferred within the "MERS® System" multiple times before the "Borrower" affixed his signature to the loan documents;

(3) that despite the agreements made in the contract which MERS and its parent MERSCORP claim apply to the Mortgage, MERSCORP's and the "MERS® System"s presence in the contract are never disclosed in writing to the "Borrower" and the fact that there are concealed factors within the contract that remain undisclosed until such time as the "Borrower" becomes aware of what has really happened, he is most likely already in an alleged "default" state, not understanding the consequences of where he stands in the securitization chain, let alone who has the right to enforce his mortgage note; and

(4) that because the Borrower relied on and gave an entity called "MERS" written permission to participate in the Mortgage agreement (wherein the parties concealing themselves from the Borrower relied on a registered trademark to allow MERS, as Mortgage Electronic Registration Systems, Inc., a shell corporation that is a front for the "MERS® System"), the counterparties appear to have misrepresented themselves in the Mortgage contract.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Through fraudulent concealment, they appear to have become counterparties to the contract by stealth in order to facilitate securitization; thus, the Borrower was not protected from making a purchasing decision in complete confidence, because the name "MERS" apparently has a double meaning by virtue of the incorporation of a trademark as part of its undisclosed purposes.

Thus, the Borrower put its faith in a party to the contract (MERS®) which relies on a registered trademark to conduct its operations, not realizing that the "MERS® System" would work to the detriment of the Borrower by obfuscating the real party in interest while financially benefitting every time the Borrower's loan was transferred within the "MERS® System", thus creating issues with title and insodoing, facilitated what appears to be a criminal enterprise of RICO-style document manufacturing for the purposes of trying to "cover up" the breaks in the chain of title with self-proclaimed authority that is at best questionable, based on the previously-noted scenarios involving a half-baked resolution that is believed to NOT exist.

The misrepresentations involving MERS and MERSCORP's participation in the scheme as an "Electronic Agent", when such participation might have discouraged consumers from making the choice to purchase (or engage in the loan transaction) a home using a MERS-originated Mortgage, was fraudulently concealed from said consumers, in apparent violation of the Lanham Trademark Act (15 U.S.C.A. Section 1501 et seq), which is supposed to build consumer confidence so they can enter into a transaction without fear of serious legal repercussions.

While the "Act" does in fact protect the "MERS® System" from piracy, it should be noted that MERS has sued entities for use of the name "Mortgage Electronic Registration Systems, Inc., as noted in the USPTO Exhibit (offered in USB/.pdf format due to the 272 pages in size).  Since MERS sued to protect its business model, its business model needed to have been fully represented in the MERS-originated Mortgage, which remains undisclosed to this day.

Had the Borrowers known of this scheme in full detail, including the end result (securitization), they may have not entered into the contract in the first place.  The foregoing scenario appears to exacerbate an already legally-volatile situation.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

# SECTION THREE: RECORDATION OF SUSPECT DOCUMENTS

## I. Suspect Document Manufacturing Abuses

Between 2003 and 2008, there was a rush by lenders to extend credit to prospective homebuyers and to current homeowners who wanted to refinance their existing mortgages. The U.S. government's agenda was to promote the "American Dream"; that everyone should own a home and take pride in home ownership.   Unfortunately, for tens of millions of Americans, this scheme came with serious consequences. The rush to process loans, many of which ended up being sub-prime and predatory in nature, led to sloppy document manufacturing by both attorneys and lender document processing teams. Deliberate mass production of documents led to what now amounts to serious issues with chains of title that could literally make it difficult for a homeowner to sell his house to mitigate an alleged lender's claim of damages in the event of foreclosure. Here are two of the less serious examples:

### *The Case of Carl and Audrey Thilburg*

**CFN#2005218350, recorded by presentment on 10-05-2005**

This document surfaced in our forensic target period due to conflicts with other documents that caused the team to back track into the original "Mortgage".   Unfortunately, what looked like a "Mortgage" turned out to contain numerous "mistakes" that took the state-mandated mortgage system and turned it on its ear in this case.   Not only did the persons at Greater Florida Title Company appear to fail in their task to provide enough witnesses to the Borrower's signatures on the signing page of the mortgage document, once a person began to examine the contents of the Mortgage, other conflicting information manifested itself:

(1) Under the section "Transfer of Rights in the Property", the following language appears on Pages 2 and 3 of the Mortgage Document:

For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in _____Orange_____ County, Florida:

LOT 28, REMINGTON-PHASE 1, TRACT "A", ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 9, PAGES 144 THROUGH 146, PUBLIC RECORDS OF OSCEOLA COUNTY, FLORIDA.

In Florida, the legislature chose to create a system that favored mortgages instead of deeds of trust; however, the foregoing language appeared to discuss the issue of conveying to a Trustee, which is common in Deed of Trust States, rather than a Lender, which is common in Mortgage States.   The property is located in Osceola County; but that isn't what the document says.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(2) As the examiner read through the Mortgage document, more "deed of trust" language manifested itself (Page 8 of 16) as shown below:

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender or Trustee; (b) at Lender's option, assign to Lender, to the extent of Lenders interest, any claims, demands, or causes of action of any kind, and any award, court judgment, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to any interest in the acquisition or ownership of the Property. Lender and Trustee shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the

Notice the foregoing language in the paragraph of the "Copy" the examiner was looking at?  The word "Trustee" is mentioned twice in this portion of the contract the Borrower's signed.  Can you imagine the contractual issues the property owners face at this juncture?

(3) To make matters worse, on September 25, 2008, Washington Mutual Bank, FA was taken over by the Federal Deposit Insurance Corporation, as noted below:

On September 25, 2008, the Federal Deposit Insurance Corporation was appointed the Receiver for Washington Mutual Bank ("WAMU"). The Receiver transferred substantially all WAMU's assets and liabilities to JPMorgan Chase ("JPMC") pursuant to a Purchase and Assumption Agreement, of which there are two (2) known versions.  The next day, Washington Mutual Inc. ("WMI"), the holding company for WAMU, filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware (assigned to Judge Mary F. Walrath). Thereafter, WMI, JPMC, the FDIC, in its Corporate capacity, and the Receiver became involved in several lawsuits contesting the ownership of over $20 billion in assets. The parties reached a settlement that was approved by the FDIC's Board of Directors on May 20, 2010, and WMI filed a plan of reorganization incorporating the terms of the settlement ("Settlement"). Come to find out, there are "two" Purchase and Assumption Agreements floating around, but most Borrowers are only aware of one of them.

(4) More unfortunate for the Thilburgs, they refinanced their residence through Quicken Loans, Inc., and obtained a MERS-originated Mortgage (hereinafter "MOM" Loan), which now brings more suspect issues into the chain of title, as MERS members take the "eNote" version of their loan and allegedly sell it off into securitized trusts on Wall Street.  From this point forward, the Thilburgs will never know who actually has a lien interest in their property.  The mortgage they obtained was recorded in the real property records of Osceola County, Florida on December 27, 2013 as **CFN#2013200299**.

(5) As referenced in the Ocwen Loan Servicing, LLC listings, the following document was recorded in the Osceola County, Florida real property records as an "Affidavit of Lost Assignment" by Ocwen employees, despite the fact that JPMorgan Chase claims to have purchased Washington Mutual Bank's portfolio of loans, which is still in dispute.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Yet, target document **CFN#2014053211** appears in the Thilburg's chain of title six (6) years later, recorded on April 16, 2014.  Sadly, the declarations made in this Affidavit pose serious legal challenges, to wit:

> (a.) The signor of this Affidavit has a title of "Contract Manager" and not "Affiant";

> (b.) The signor (Leticia N. Arias) is a known "robosignor" as will be demonstrated throughout certain sections of this report;

> (c.) This document was not prepared by an attorney or anyone with access to any proof; and

> (d.) The Ocwen Signing Team has once again demonstrated its ability to quickly scribble their signatures onto documents to "effectuate a process".

(6) Ocwen has come under fire because of abuses that include the foregoing, as noted below:

Ocwen stands accused of "violating consumer financial laws at every stage of the mortgage servicing process," according to CFPB Director Richard Cordray.  Ocwen built their servicing empire in part by purchasing the rights to handle mortgage accounts from big banks like JPMorgan Chase, Bank of America and Ally Bank, the same banks that settled their own cases of mortgage servicing abuse in the $25 billion National Mortgage Settlement in February 2012. So to recap, big bank servicers abused homeowners, paid a nominal fine, and sold their servicing operations to non-bank servicers like Ocwen, who routinely engaged in identical practices.    **http://www.newrepublic.com/article/116010/ocwen-mortgage-fraud-settlement-servicer-fined-homeowner-abuse**

Further, there is no proof that Ocwen purchased the servicing rights on this mortgage from Chase.

> (7) Finally, Ocwen employees prepared and executed a "Full Satisfaction & Release of Collateral" and caused it to be recorded in the Osceola County, Florida real property records as CFN#2014053210 on April 16, 2004. Unfortunately, the Affidavit should have been recorded FIRST, prior to this document, which purports to release the Washington Mutual Mortgage from 2005.  There is no documentation to demonstrate Ocwen signor Joel Pires' (who witnessed the previous document) authority on behalf of Washington Mutual, Chase or anyone else.  The documents appear to have been recorded backwards, which now imply suspect clouds on the Thilburg's chain of title.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(8) This document was also NOT attorney-prepared.  The same notary (Derek Garrett) notarized the alleged "satisfaction" who notarized the Affidavit of Lost Assignment, also notarized this document.  None of the signors had actual knowledge or proof any "payoff" had ever occurred.  Thus, the Thilburgs may in fact have paid off the wrong party, because Washington Mutual Bank securitized its own loans into WaMu-sponsored trusts which WaMu managed and administered itself.

### *The Case of Brian and Janel Humphrey*

In Florida, the examiner believes that two witness signatures are required on Assignments of Mortgage.  This apparently did not happen on **CFN#2013000880 (also known as K.S. EX. 1, under the _Kass Shuler, P.A._ heading)**, recorded by presentment on 01-03-2013 in the real property records of Osceola County, Florida.  Any assignment that is to be recorded in the State of Florida must be recorded in the county where the subject property is located.  Such was not the case here.  This document was purportedly prepared by Edward B. Pritchard, an attorney with Kass Shuler, P.A. law firm in Tampa, Florida and it appears to have been executed by an "Assistant Secretary of MERS as nominee for Access Mortgage Corporation, which may no longer be in business.  This scenario is typical of MERS-originated mortgages, where a MERS "member" assigns a mortgage to itself using MERS as a "catch-all" in an attempt to preserve the chain of title.  This is problematic due to securitization and the number of parties that may claim an interest at some point in time in the future.  None of these intervening assignees recorded their interests in the real property records.

More unfortunately, however, the Humphrey's property is located in **Okaloosa County, Florida**, NOT Osceola County, Florida. Whoever processed this questionable assignment recorded it in the wrong county; thus, constructive notice had been given to no one.  Also unfortunate is the fact that Kass Shuler, P.A. didn't realize its error until AFTER it filed a Notice of Lis Pendens (to effectuate a foreclosure on the property 3 months earlier) and had to re-record the self-assignment of mortgage to Chase in the Okaloosa County real property records on 06-10-2013 as CFN#2860528. The Osceola County Clerk's stamp appears on the document.   Despite the late recording, the Humphreys were foreclosed on by Chase, who appear to have self-assigned the mortgage in order to do so, using MERS as a "cover" for its own employees apparent misdeeds.

This has led the examiners to believe that a majority of American property owners do not understand the foreclosure process and cannot recognize the patterns developing in their cases. Sadly, it also appears that most Florida judges don't want to recognize these processes or don't care.  These kinds of document manufacturing abuses are common to this scenario, as Lenders who were in a rush to make money: (a.) made predatory, subprime loans; (b.) issued faulty and incorrect paperwork; (c.) gave loans to people who couldn't afford them; (d.) more than likely shredded the original paperwork and thus had to re-create it; (e.) falsified and forged documents in an attempt to effectuate foreclosures; (f.) brought fraud on the court in doing so; and (g.) took people homes using this methodology in violation of Florida Criminal Code § 817.535.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### *The Case of the "Deed to Nowhere"?*

This particular case involves a property purchased by Charles Bernard (a single man), who bought a condominium in Seminole County, Florida and signed a Note and Mortgage for such on January 5, 2007.  The title company who handled the closing (Royal Title and Escrow Company, Inc. of Miami, Florida) apparently does not know that Longwood, Florida is in Seminole County, Florida, because it caused the *Special Condominium Warranty Deed* and the *Mortgage* to BOTH be recorded in Osceola County, Florida as **CFN#2007008665** and **CFN#2007008666**, respectively and NOT in Seminole County, Florida, where it was supposed to have been recorded to give "constructive notice to the world".   A check of the Seminole County, Florida Clerk's records showed that these two documents were NEVER recorded there.  So what did Mr. Bernard have to show for all of the mortgage payments he's been making?  (The documents are included in this Report.)

It gets worse.

Relying on the recorded information in the Osceola County, Florida real property records, the Wells Fargo Default Assignment Team appears to have "manufactured" two Assignments of Mortgage (the second being a "corrective" Assignment) and again, recorded them in Osceola County, Florida's real property records as (these are listed and attached as ***Wells Fargo Bank, N.A.*** Assignments under the bank's respective heading in *Section Four* of this Report):

**CFN#2012035162, electronically recorded on 03-14-2012**
**Document Prepared by: Wendy A. Butler (alleged Wells Fargo employee)**
**Signer: Jason P. Brumm (electronic signature of his initials), who claims to be an Assistant Secretary of MERS as nominee for New Century Mortgage Corporation (using BOTH MERS's Flint, Michigan post office box address AND Metro Detective Agency's Danville, Illinois addresses as a "cover"; as Assignor), to a closed HSI Asset REMIC 2007-NC1 trust.**
**Notary: Janet L. Jones (Minnesota Notary Commission active until 01-31-2017; it appears Jones's notary signature is also electronically affixed.)**
**Witnesses: None Listed**

**CFN#2013003161, recorded by presentment on 01-08-2013**
**Document Prepared by: Unknown employee of Wells Fargo Bank**
**Signer: April Emily Jones (also a Minnesota Notary Public and alleged Wells Fargo employee), claiming to be an Assistant Secretary of MERS as nominee for New Century Mortgage Corporation (using BOTH MERS's Flint, Michigan post office box address AND Metro Detective Agency's Danville, Illinois addresses as a "cover"; as Assignor), to a closed HSI Asset REMIC 2007-NC1 trust.**
**Notary: Rochelle Kachi Chien (Minnesota Notary Commission active until 01-31-2016)**
**Witnesses: None Listed**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**There are multiple issues with these Assignments of Mortgage, to wit:**

**(1) BOTH Assignments of Mortgage referenced the recordation of the Mortgage as being in Osceola County, Florida;**

**(2) The Corrective Assignment of Mortgage lists the location of the property as being located in Longwood, Florida (the first Assignment does not), yet Wells Fargo Bank's employees appear to be relying on false and inaccurate information instead of doing their homework to discover that there are no records of this property filed where they should legally be filed;**

**(3) The first Assignment attempts to transfer the promissory Note ("Note"), which MERS cannot do, since it has no interest in the Note.  The Corrective Assignment does NOT transfer the Note, only the Mortgage … so where is the Note?**

**(4) The Note could not have made the trust pool, because the Closing Date of this REMIC trust was June 5, 2007, which meant that the Assignment would have had to have been recorded and sent to the document Custodian of the REMIC nearly FIVE (5) YEARS before the first Assignment was actually recorded … and the Pooling and Servicing Agreement ("PSA") requires that the Assignment be recorded in the County where the property is located, which appears to be non-compliant;**

**(5) On April 2, 2007, nearly three months AFTER Mr. Bernard signed the Note and Mortgage, his originating Lender, New Century Mortgage Corporation ("NCMC"), filed for Chapter 11 bankruptcy protection.  The PSA claims that NCMC sold Mr. Bernard's loan to NC Capital Corporation, its affiliate (also included in the bankruptcy), which in turn allegedly sold his loan to HSBC Bank USA, N.A.;**

**(6) It is highly likely that NCMC did NOT loan Mr. Bernard the money to buy his condo, but rather got that money from investors who purchased non-recourse bonds as part of the aggregate funds within New Century's REMIC trust pools;**

**(7) To add insult to injury to Wells Fargo Bank's employees' efforts to "assign" the mortgage (or in the alternative, the Note), NCMC received bankruptcy court permission to repudiate all MERS/MERSCORP, Inc. executory contracts. A copy of the NOTICE OF REJECTION OF EXECUTORY CONTRACT is attached to this file of Exhibits herein.  The Objection Deadline was March 31, 2008 and MERS appears to have received a copy of this Notice.  Thus, it appears that Wells Fargo employees could not legally have named NCMC as a nominee on these Assignments.**

**It will be interesting to see what Florida Circuit Court claims jurisdiction in an attempt to deal with any foreclosure issues.  Does Mr. Bernard have legitimate proof of ownership?**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

## II. Suspect Assignments Violate REMIC Regulations

There were hundreds of suspect assignments reviewed as part of this forensic examination. Due to the number of Real Estate Mortgage Investment Conduits (hereinafter "REMICs") involved, specific concentration of the examiners' efforts focused on particular groupings of assignments.

Every REMIC has a "Closing Date". This Closing Date is the same date as the alleged "start-up date" (as shown in the listings within *IRS Publication 938*) of the trust vehicle. Two things are supposed to occur by the Closing Date: (1) all of the Notes, Mortgages and related paperwork, including Assignments of Mortgages into the pool, are supposed to have been tendered by the: (a.) loan originator (the "Borrower" in the MERS back-end transaction), to the (b.) sponsor-seller (or *interim funding lender*) to the (c.) Depositor, to the (d.) Trustee, in what are termed three (3) true sales; and (2) the trust certificates are issued to the investors. The Pooling and Servicing Agreements ("PSAs") for these REMICs contain regulations regarding the specific transfer of mortgage loans into the trust pools. In order for the assignment to be effective, these notes had to be conveyed by the closing date of the trust (or 90 days thereafter in certain instances, exceptions) in order to be valid transfers into the trust REMIC. In **ALL** of the cases reviewed, every single Assignment of Mortgage into the REMIC trust violated New York Powers, Estates and Trusts at § 7-2.4 and put the REMIC trust at risk of permanently losing its tax-exempt status in violation of 17 CFR 210, 228, 229 et seq, which is included as a **USB Exhibit** in this report by reference (127 pages in .pdf format; also obtainable on the Internet).

**The relevance of the PSA to this forensic examination is discussed within the case of *HSBC Bank USA, N.A. vs. Teresa Marra*, 2008 CA 000630 NC, 12th Judicial Circuit Court, Sarasota County, Florida; August 15, 2013; Bailey (Deborah) J., Magistrate, (in part):**

> "Plaintiff's standing argument takes another turn for the worse when it refers the Court to the Pooling and Servicing Agreement ("PSA") for the Deutsche Alt-A Securities, Inc. Mortgage Loan Trust, Series 2006-AB1 for "further clarification" of the Plaintiff's standing in this action. The Magistrate accepted the Plaintiff's invitation and researched the PSA on www.secinfo.com."

> "After taking into consideration the … information from the PSA, it appears that the transfers that have been variously asserted by the Plaintiff in several Motions and/or documents attached to those Motions as conferring standing upon it could not possibly have occurred as the Plaintiff represents. Further, the Magistrate cannot conceive of any manner in which the Plaintiff could possibly create additional documentation in an effort to manufacture standing in this action. At the very least, the instant Renewed Motion to Amend must be denied and the Magistrate so recommends."

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**It should be noted that Kahane & Associates (a known foreclosure law firm) was represent-ing the Plaintiff REMIC in the foregoing case.  The Magistrate's Order was adopted by the 12th Judicial Circuit shortly after its issuance and the case magically "settled" soon after being set for trial.  Through Court and real property recordations, Kahane & Associates presented the examiners with several suspect files for review in this forensic examination, which, in light of this case, must also be considered suspect for various issues.**

At issue in the Florida court systems however (and these disputed issues vary from one court to another) is whether these suspect REMIC assignments constitute probable cause of violating Florida Criminal Code § 817.535 for five specific reasons:

    1. The documents appear to have been generated by third-party document manufacturers using stated information that could be construed to be false and misrepresentative for the purposes of concealing the true capacity of the signor of the document;

    2. The documents were signed using MERS as a "cover" to attempt to by-pass mesne intervening assignees in tandem with court filings showing promissory notes with indorsements-in-blank.  Many of these documents were generated at the direction of a known foreclosure mill law firm;

    3. Said indorsements-in-blank (where specifically identified) were undated and failed to show effective date of actual transfer of the promissory note to the REMIC, the only reliance of effective date of transfer being the actual Assignment of Mortgage;

    4. Said assignments were dated years after the Closing Date of the REMIC pool, in contravention of New York trust law and IRS regulations (which pairs with the results ascertained by Magistrate Bailey in the *Marra* case, supra; and

    5. The alleged "MERS" members (who are actually MERSCORP members), required its "members" to utilize actual "officers" of their own corporations to effectuate these assignments; however, as presented here, it appears that $10-per-hour employees were used to misrepresent themselves as "officers" when they (and their acknowledging notaries) knew or should have known this information was in fact false and misrepresentative in violation of the Florida Criminal Code § 817.535.

The following examples are discussed with respect to said alleged violations. Again, the Exam-iners used the same website database (http://www.secinfo.com) as the foregoing Magistrate uti-lized for the purposes of determining the closing dates of each respective REMIC.  This website is tied to the information contained within the SEC's own EDGAR search site at http://www.sec.gov but the Examiners used the former site as it is easier to navigate and research REMIC trusts to verify the violations of the Closing Dates of these REMICs.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

*NOTE: Certified Copies of the Pooling and Servicing Agreements ("PSAs") can be ordered from the SEC's website at a cost of $4.00 each, including shipping and handling. The Examination Team can assist the State's Attorney's investigators in procuring these documents.*

There is also reason to suspect probable cause in the manner in which the process of manufacturing of these documents took place among one or more actors in different locations for the purpose of effectuating fraudulent assignments to be recorded in the real property records of Osceola County, Florida. The manner in which these actors consorted with each other appears to be in violation of Florida's RICO Statute, which will be discussed further herein. The recorded documents provided for examination to determine probable cause were all certified by the office of the Clerk of the Circuit Court for Osceola County, Florida and provided to the Examiners as part of the evidence pool provided to the State's Attorney upon request. All of the following documents were in fact recorded in the real property records of Osceola County, Florida (using HSBC as an example in instances shown below):

### Assignments Involving HSBC Bank USA, N.A. as Trustee for Known REMICs

**(HSBC EX. 1) CFN#2013155081; electronically recorded on 10-01-2013**

This three-page document appears to have been prepared by "Daniel C. Consuegra, Esquire" (or someone under his direction; at his law firm at 9204 King Palm Drive, Tampa, FL 33619-1328) on behalf of Suntrust Bank, in connection with a foreclosure action (Case No. 158953, SunTrust Bank v. Curtis Saunders) filed in the Circuit Court of Osceola County, Florida. HSBC Bank USA, National Association is listed as the Trustee for the SunTrust Alternative Loan Trust 2006-1F as the Plaintiff, asserting that it is the "owner" of the loan it is foreclosing on against the property owner. Where Consuegra (or his subordinate) obtained this information is highly likely from a computer database maintained and supplied with information in another part of the U. S.

In this "Assignment of Mortgage", HSBC maintains that it is the assignor of the indenture being transferred (without specifically mentioning the promissory note per se) and it is assigning the rights to SunTrust Mortgage, Inc. (which appears different from the actual styling of the case itself) "without recourse, as is".

On Page 2 of 3, the document appears to have been executed on September 25, 2013 by employees of SunTrust Bank (apparent evidence of self-assignment) in Richmond, Virginia, where SunTrust's main headquarters are located. SunTrust's alleged Vice President, "Kip D. Judson", appears to have scribbled his signature onto the space provided, underneath which appears a rubber stamp of his name and title, both markers of robosigning and document manufacturing. The notary (Dean Liverman) appears to have a current and valid commission as of the release of this report.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is unknown as to whether any of the witnesses to Judson's signature were actually present when Judson scribbled his signature onto the document. It is also unknown as to whether Judson was actually just a paid $10-an-hour employee or a real Vice President, due to document manufacturing conditions precedent.

Page 3 of 3 solely contains only the property's legal description.  The fact that Page 2 could have been manufactured separately is irrelevant as the document was apparently prepared in Florida by the foreclosure mill attorney and signed in Virginia by apparent employees with no personal knowledge of the facts they were attesting to, witnessing or acknowledging therein.

The document further demonstrates a "fill-in-the-blank" style template, which is another marker of document manufacturing.  The document also claims that Judson is an "Attorney-in-Fact" for HSBC Bank USA, NA on behalf of the REMIC, whose information is demonstrated at the link below:

http://www.secinfo.com/d13f21.vMs.htm

With this document's Pooling and Servicing Agreement (hereinafter "PSA"),  the closing date of the REMIC was on or about May 30, 2006. There is no evidence to indicate effective transfer of the Note into the REMIC, so the actual alleged transfer took place over seven (7) years later, when an alleged default occurred, or if a default in fact, did occur.

The alleged default may not have actually occurred based on the lack of payments made by the Borrower, as the examiners believe that the Master Servicer made up the balance of payments until the REMIC's credit default swap insurance side bet paid the note off in full.  There is nothing contained in the Borrower's mortgage to indicate that payment cannot be "paid in full" from sources other than the Borrower (Saunders).  The conditions preceding the alleged default are unknown to the Examination Team.  Thus, if the note was paid in full by a third-party payor, there would be no need to foreclose on the promissory note and mortgage which follows it.

As to the "attorney-in-fact" status for SunTrust Mortgage, Inc. or HSBC Bank USA, NA, there is no current power of attorney recorded prior to the execution of this document recorded in the real property records of Osceola County, Florida wherein either party listed here is directly involved.

However, there are multiple listings of other power of attorney documents for HSBC Bank USA NA to other grantees (not SunTrust) in the real property records as noted from research.  Without this express authority, the conveyance would not have been possible.

Further investigation is warranted here, as to the actual existence of such a power of attorney; as to Judson's specific signing authority; and as to the reasons why no power of attorney is recorded in the real property records in the county where the subject property is located.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**As to the outcome of this matter:**

On January 2, 2009, nearly five (5) years BEFORE the foregoing assignment was recorded, Kimberly A. Humphrey (FBN0008745; on behalf of Hollan M. Fintel [FBN 847631] of Shapiro & Fishman, LLP; 10004 N. Dale Mabry Highway, Suite 112, Tampa, FL 33618) filed a Notice of Lis Pendens in the real property records of Osceola County, Florida (CFN#2009000646) when in fact, her REMIC client was not yet assigned the note and mortgage.  As a side note to this event, Fintel also appears to have been involved in a previous assignment from MERS as nominee for MFC Mortgage, Inc. of Florida c/o Shapiro & Fishman (another known foreclosure mill), into the Trust REMIC previously described here, involving the very same loan involved in the foreclosure proceedings discussed here.

This document is noted as CFN#2009090164 and appears to have been executed by known employees of Litton Loan Servicing, LP out of Harris County, Texas (Litton was bought by Ocwen Loan Servicing, LLC). According to research conducted by the Team Leader, the Florida Department of State's listing for MFC shows the company filed for dissolution on September 28, 2012; Document  No. S46092) and is now shown as Inactive.

Based on the review of documents prior to this examination, their is continued suspicion that Fintel** and other attorneys (like Consuegra, supra) participate regularly in schemes of this nature with the intent to further fraud upon the court, the real property records of the affected counties as well as upon the Borrowers/Property Owners themselves.

Further, on August 12, 2009, a Final Summary Judgment for Foreclosure was signed *in chambers* by Hon. R. James Stroker (Circuit Court Judge) based on the claims made by Consuegra.  The property appears to have been sold.  Again, the assignment was NOT recorded until October 1, 2013 … almost FOUR YEARS after the sale of the property on September 24, 2009.  The judgment was recorded as CFN#2009132206.

The main reason the foregoing instances manifested themselves is due to the recorded assignments that took place long after the foreclosures occurred and the sales of the property took place.

---

**Hollan M. Fintel has been associated with other law firms, one particular Assignment of Mortgage which showed her to be a "Vice President of Loan Documentation" for Wells Fargo Bank, N.A., when the Power of Attorney recorded in the real property records of Hillsborough County, Florida showed Fintel's status as "attorney-in-fact" limited to certain types of document signings involving foreclosure and NOT as a Wells Fargo "Vice President of Loan Documentation", which is clearly misrepresentative of Fintel's true character and status, when in fact this status only applied to a previous (now defunct) foreclosure law firm she worked for.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(HSBC EX. 2) CFN#2013160255; recorded by presentment on 10-09-2013**

This three-page document was prepared by Joe Simmons who appears to be an employee of Ocwen Loan Servicing, LLC affecting the property of Sonia Margarita Robles and Andres Martinez. Ocwen may be in possession of the original document. Page 2 of 3 contains four scribbled signatures of alleged Ocwen employees, including one "Leticia N. Arias" who claims to be an Assistant Secretary for MERS, when it appears she is a paid employee of Ocwen.

Scribbled signatures are a "marker" (indicator) of robosigning. As listed in the prior document, the document further appears to contain numerous "rubber stamped" printed names, another marker of robosigning and document manufacturing.

Page 3 of 3 appears to be the first page of the alleged mortgage which is the subject of the assignment herein.

It is further noted that the notarial execution was created in Palm Beach County, Florida and was acknowledged by Stephanie Simpson (Florida Notary Commission No. EE 845386), whose commission still appears to be valid at the time this report was issued. Further, Simpson, who was a witness on the following document, appears to have moved into the notary position here (possibly to avoid notice of suspicious activity). The witnesses in this case are shown as Victoria Vasquez and Christian J. Ferrer, also believed to be paid Ocwen employees and NOT officers of MERS. The notarial execution is undelineated as to gender, which is also a marker of document manufacturing.

The document again shows the address of the REMIC (Rennaissance Home Equity Loan Trust 2007-3) as c/o Ocwen Loan Servicing, LLC, 5720 Premier Park Dr., West Palm Beach, FL 33407 (as assignee). The date of the assignment is September 17, 2013. The closing date of the REMIC was on or about September 14, 2007 **(nearly 6 years AFTER the law allowed the assignment to take place)**, as found at the following link below:

http://www.secinfo.com/$/SEC/Filings.asp?AN=0000882377-07-002186&Find=closing&Page=1&List=Docs&Show=Each

The servicer (Ocwen) is listed as the Servicer of this REMIC and it appears that the assignment was initiated by employees of Ocwen rather than officer(s) of Delta Funding Corporation, a subprime lender who filed for Chapter 11 Bankruptcy in Delaware on December 17, 2007. How then, could a defunct lender assign a mortgage to the trust when it lacked the capacity to do so?

Thus, again, it appears that Ocwen employees "self-assigned" the mortgage and note to the REMIC with the appearance of giving the trust authority to commence foreclosure proceedings against the property owners, when in fact its agents knew or should have known that such assignment was invalid, the MERSCORP member instructed its employees to sign the document.

**68 of 326**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

On August 21, 2008, over five (5) years BEFORE the assignment was recorded, Elizabeth R. Wellborn, P.A. (FBN 0155047; 1701 West Hillsboro Blvd., Suite 307, Deerfield Beach, FL 33442) filed a Notice of Lis Pendens in the real property records of Osceola County, Florida (CFN#2008134939) when in fact, her REMIC client was not yet assigned the note and mortgage.

Further, on December 14, 2009, a Final Summary Judgment for Foreclosure was signed *in chambers* by Hon. R. James Stroker (Circuit Court Judge) based on the claims made by Wellborn. The property appears to have been sold. Again, the assignment was NOT recorded until October 9, 2013 … almost FOUR YEARS after the sale of the property on January 15, 2010. The judgment was recorded as CFN#2009197169.

The Examiners believe that the REMIC did NOT own the borrower's loan at any point in time before, during or after the foreclosure proceedings took place; thus, there is probable cause to believe that this assignment was manufactured and filed to "tie loose ends together" so that title to the property could be conveyed to a bona fide purchaser and was purposefully and deliberately manufactured, containing misrepresentative statements and thus causing false swearing by the notary, as to the real party in interest at the time of the sale of the Property and at the time the Notice of Lis Pendens was filed and suit to foreclose commenced.

**(HSBC EX. 3) CFN#2013161275; electronically recorded on 10-10-2013**

This two-page document was prepared by Joe Simmons who appears to be an employee of Ocwen Loan Servicing, LLC affecting the property of Stephen F. and Jayla Nelson. Ocwen may be in possession of the original document. Page 2 of 2 contains four scribbled signatures of alleged Ocwen employees, including one "Noemi Morales" who claims to be an Assistant Secretary for MERS, when it appears she is a paid employee of Ocwen. Scribbled signatures are a "marker" (indicator) of robosigning. The document further appears to contain numerous "rubber stamped" printed names, another marker of robosigning and document manufacturing.

It is further noted that the notarial execution was created in Palm Beach County, Florida and was acknowledged by Janira Walker (Commission No. EE 861713), whose commission still appears to be valid at the time this report was issued. Further, Christopher Kelley, also a Florida notary, is signing as a witness, along with Stephanie Simpson, also believed to be paid Ocwen employees and NOT officers of MERS. The notarial execution is undelineated as to gender, which is also a marker of document manufacturing.

The document shows the address of the REMIC (Rennaissance Home Equity Loan Trust 2006-3) as c/o Ocwen Loan Servicing, LLC, 5720 Premier Park Dr., West Palm Beach, FL 33407 (as assignee). The date of the assignment is October 2, 2013.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The Closing Date of the REMIC was on or about September 28, 2006 **(over 6-1/2 years AFTER the foreclosure took place)**, as found at the following link below:

**http://www.secinfo.com/dqTm6.v35w.htm**

The servicer (Ocwen) is listed as the Servicer of this REMIC and it appears that the assignment was initiated by employees of Ocwen rather than officer(s) of Delta Funding Corporation, a sub-prime lender who filed for Chapter 11 Bankruptcy in Delaware on December 17, 2007. How then, could a defunct lender assign a defaulted mortgage to the trust when it lacked the capacity to do so and in violation of New York Estates Powers and Trusts law?

Thus, it appears that Ocwen employees used their "alleged capacity" to assign the mortgage and note to the REMIC with the appearance of giving the trust authority to commence foreclosure proceedings against the property owners, when in fact its agents knew or should have known that such assignment was invalid. It further appears that the document manufacturing processes utilized in this regard are in violation of the Florida RICO Statutes as to multiple parties engaging in a process to manufacture recorded assignments for the purposes of alleging ownership of the mortgage and/or promissory note for the purposes of commencing foreclosure (or in the alternative in this case, due to potential default of the property owners, who appear to have been divorced in July of 2009 according to Osceola County court records).

**(HSBC EX. 4) CFN#2013196280; electronically recorded on 12-17-2013**

This two-page document was prepared by Fred Jeune who appears to be an employee of Ocwen Loan Servicing, LLC affecting the property of Henry and Carolina Velazquez.  Ocwen may be in possession of the original document.   Page 2 of 2 contains four scribbled signatures of alleged Ocwen employees, including one "Joel Pires" who claims to be an Assistant Secretary for MERS, when it appears he is a paid employee of Ocwen.   The basic information about the assignment is contained on Page 1 of 2, while the signatures and notarial execution are contained solely on Page 2, another marker of document manufacturing, where parts of the document are allegedly prepared in one area of the building, while the signors affix their signatures to another part of the document in another part of the building.  Scribbled signatures are a "marker" (indicator) of robosigning.  The document further appears to contain numerous "rubber stamped" printed names, another marker of robosigning and document manufacturing.

It is further noted that the notarial execution was created in Palm Beach County, Florida and was acknowledged by Christian J. Ferrer (Florida Notary Commission No. FF062234), whose commission still appears to be valid at the time this report was issued.  Further, Simpson, who was a witness on the previous document, appears to have moved into the notary position here (possibly to avoid notice of suspicious activity) signed as a witness on the previous document.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The witnesses in this case are shown as Jason Ayers and Gladys M. Prieto. These two individuals are also believed to be paid Ocwen employees and NOT actual "officers" of MERS. The notarial execution is undelineated as to gender, which is also a marker of document manufacturing.

The document again shows the address of the REMIC (Ace Securities Corp. Home Equity Loan Trust 2007-HE1) as c/o Ocwen Loan Servicing, LLC, 5720 Premier Park Dr., West Palm Beach, FL 33407 (as assignee). The date of the assignment is September 12, 2013. The closing date of the REMIC was on or about January 30, 2007 **(over six (6) years AFTER New York trust law allowed the assignment to take place)**, as found at the following link below:

http://www.secinfo.com/d12TC3.u43h.htm

The servicer (Ocwen) is listed as the Servicer of this REMIC and it appears that the assignment was initiated by employees of Ocwen rather than officer(s) of Sebring Capital Partners (whose address ironically is the same address as MERS in Flint, Michigan), a subprime lender who ceased operations in early December of 2006. How then, could a defunct lender assign an allegedly-defaulted mortgage to the trust (using MERS) when it lacked the capacity to do so?

Thus, again, it appears that Ocwen employees "self-assigned" the mortgage and note to the REMIC (and to their own benefit) with the appearance of giving the trust authority to commence foreclosure proceedings against the property owners, when in fact its agents knew or should have known that such an assignment was invalid.

On November 19, 2008, over five (5) years BEFORE the assignment was recorded, Maria F. Pfohl (on behalf of Hollan M. Fintel of Shapiro & Fishman, LLP; 10004 N. Dale Mabry Highway, Suite 112, Tampa, FL 33618) filed a Notice of Lis Pendens in the real property records of Osceola County, Florida (CFN#2008187398) when in fact, the REMIC client was not yet assigned the note and mortgage.

Further, on December 14, 2009, a Final Summary Judgment for Foreclosure was signed *in chambers* by Hon. R. James Stroker (Circuit Court Judge) based on the claims made by Wellborn. The property appears to have been sold. Again, the assignment was NOT recorded until October 9, 2013 … almost FOUR YEARS after the sale of the property on January 15, 2010. The judgment was recorded as CFN#2009197169.

The examiners believe that the REMIC did NOT own the borrower's loan at any point in time before, during or after the foreclosure proceedings took place; thus, there is probable cause to believe that this assignment was filed to "tie loose ends together" so that title to the property could be conveyed to a bona fide purchaser and was purposefully and deliberately manufactured, containing misrepresentative statements and thus causing false swearing by the notary, as to the real party in interest at the time of the sale of the Property and at the time the Notice of Lis Pendens was filed and suit to foreclose commenced.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### *The More Egregious of the REMIC Behaviors*

**(BONY MELLON EX. 1) CFN#2013111136, recorded by presentment on 07-18-2013**

A final judgment of foreclosure was recorded in the real property records of Osceola County, Florida, showing Bank of New York Mellon Trust Company (fka The Bank of New York Trust Company, N.A.) as successor to JPMorgan Chase Bank, N.A. as Trustee … for what REMIC?

There is no REMIC series listed on the document. The subject property was ordered sold on November 18, 2013.  The assignment to the alleged REMIC did not occur until five (5) months AFTER THE SALE.  Not only does the real party in interest NOT appear in the court proceedings, Osceola County Circuit Judge Robert J. Pleus, Jr. apparently failed to recognize the fictitious Plaintiff as such and granted Summary Judgment.  The Summary Judgment was recorded in the official real property records of Osceola County, Florida on July 18, 2013.

The filing of the case and the Notice of Lis Pendens appear to have been effectuated on behalf of Nathan P. Gryglewicz (FBN81715) on behalf of the Albertelli Law Firm, who may have never verified the information submitted to the Court.  The Notice of Lis Pendens did NOT contain the name of the REMIC trust either.  The team lead believes that  this egregious behavior could have been avoided had counsel for the property owner (Darren Soto) been aware of the facts at hand and the judge was better informed. What's worse … the security is not listed with the other RAMP securities on the SEC website.  Thus, the Assignment by Ocwen appears to indicate probable cause with intent to defraud the homeowner, pursuant to Florida Criminal Code § 817.535.

**(DEUTSCHE EX. 1) CFN#2014045226, electronically recorded on 04-01-2014**

In another issue involving the use of a Power of Attorney, this document purports to represent a filing by Ocwen Loan Servicing, LLC in the real property records of Osceola County, Florida, claiming "attorney-in-fact" status granted to it by the now-defunct New Century Mortgage Corporation.  The "Corrective Assignment" purports (in writing) that the Power of Attorney was duly recorded on August 24, 2005; Book 2878 at Page 1380; Instrument Number: 2005-188655. A search of both county real property records in Broward County, Florida (where Ocwen is headquartered) and in the county where the subject property being affected by this assignment (Osceola County, Florida) produced NO results.  The only Limited Power of Attorney from New Century Mortgage Corporation recorded in Osceola County, Florida around that date was CFN#2005188657, in which the cover page shows the Grantee of the Power of Attorney to be "Ocwen Federal Bank, FSB" and not "Ocwen Loan Servicing, LLC, two totally distinct entities. Upon examination of the actual document recorded in Broward County, Florida, it shows the cover sheet with the Grantee being "Ocwen Loan Servicing, LLC", which appears to conflict with the recorded cover sheet in Osceola County, Florida, which shows "Ocwen Federal Bank, FSB".

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Since the document appears to have been sent to Financial Dimensions, Inc. (1400 Lebanon Church Road, Pittsburgh, PA 15236), this entity may have been responsible for altering the cover sheet for the Osceola County, Florida recording, which is missing the Clerk's file information at the top of the recorded cover sheet in Broward County, Florida.  The Power of Attorney recorded in Osceola County, Florida also does NOT specifically mention the county of record this Corrective Assignment was recorded in; thus, further investigation had to be conducted to determine the issues presented herein.

Further, this document was recorded when New Century Mortgage Corporation was still in business; however, this Corrective Assignment was not recorded until April 1, 2014, years after New Century Mortgage Corporation filed for bankruptcy and repudiated its MERSCORP executory contracts.   The initial assignment filed in Osceola County, Florida (**CFN#2009043213**), contains only minor language issues, but fails to comport to what it claims as the original Mortgagee, Ameripath Mortgage Corporation, which is NOT mentioned in the 2009 Assignment, but yet is mentioned in the 2014 assignment as the original "Mortgagee".   Upon further searching, it was discovered that Ameripath filed an assignment to New Century Mortgage Corporation on March 18, 2009 (**CFN#2009042982**), which does NOT match the Instrument Number shown in the Corrective Assignment recorded in 2014. It appears that the Servicer (Ocwen) cannot keep track of its own filings and recreated another filing with the intent to "cover its tracks" after Shapiro & Fishman attorney Craig T. Smith (FBN0020315) filed a Notice of Lis Pendens on behalf of the law firm and its alleged client, Deutsche Bank National Trust Company, as Trustee for the Registered Holders of New Century Home Equity Loan Trust, Series 2005-B, Asset Backed Pass-Through Certificates, which comports to the recorded Assignment mentioned in the 2014 Corrective Assignment.  The Plaintiff Trust is found at the following link below:

**http://www.secinfo.com/dr66r.z1pn.htm**

The closing date of this Trust REMIC is shown as "on or about September 29, 2005 (Page 4 of the 424(b)(5) Prospectus (which is certified as true and correct under Sarbanes-Oxley certification); thus, there is no way that either the 2009 or the Corrective Assignment filed in 2014 could have effectively transferred this mortgage (with all beneficial interest) to a trust that could not accept it, as the certificates had already been issued and the question of whether the REMIC still has tax-exempt status is hanging in the balance.

**(US BANK EX. 1) CFN#2012089034; electronically recorded on 06-12-2012**

In this instance, it appears that employees of Bank of America, N.A.'s subsidiary, BAC Home Loans Servicing, LP, used the "MERS place card" arbitrarily, without naming any nominee other than MERS itself as the mortgagee, in assigning a mortgage, dated June 8, 2012, to a closed REMIC that cannot be located within the registry of the United States Securities & Exchange Commission's website.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are LXS Series Trusts listed, just not 2005-7N, so it is obvious that the LXS series of trust did in fact exist. Further verification that there is such a REMIC will more than likely have to become necessary here.  Two signors and two witnesses took part in the assignment, which was prepared by Bank of America, which makes it highly likely that the signors had no actual personal knowledge of what they were affixing their signatures to.


### III. Use of Shared Computer-Generated Data and Florida's RICO Statute

Of concern here is the probable cause that the third-party document manufacturers, in concert with the foreclosure mill law firms, conspired with each other via a third-party, computer database such as VendorScape, NewTrak, DeskTop*, ServiceLink or some other variation thereof.

These systems involve a user at one end of the system inputting a username and password, entering specific data they received from allegedly unverified sources, saving this information to a borrower's servicing file and then causing it to be transmitted across the country to another user, who would similarly access these databases to retrieve this information, to either add their own information to the file or access it and utilize this information to "manufacture" the necessary documents needed to foreclose.

It is highly likely that there were multiple actors involved in these instances which would lead the Examination Team to believe that the intent to defraud homeowners of their properties involving notary fraud, false swearing, robosigning, document manufacturing and perjury by misrepresentation on these documents, constitute a violation of Florida's RICO statute. To that end, the Examination Team believes that investigation by a grand jury is warranted.

Another relevant discussion involving RICO issues is also warranted where the unnecessary costs to the Clerk and the Court System of Osceola County, Florida is observed.  Each time a foreclosure suit is commenced, many of the documents required to prove ownership of the borrower's loan being foreclosed upon are facially deficient. The costs assessed to file these suits do not appear to come close to the damage inflicted upon the property owners being foreclosed upon. However, it does appear predominant that with the number of voluntary and involuntary dismissals of these lawsuits comes the undue burden on the Circuit Courts of Florida in the processing of these matters.


*The "LPS desktop" starts foreclosure actions, assigns work to law firms and supervises the cases to conclusion with almost no intervention by humans. (LPS says foreclosure actions are started by its clients, the loan servicers. But copies of agreements with servicers obtained by reuters show that LPS has direct access to the banks' and other servicers' computer systems, and LPS detects defaults and initiates foreclosures based on parameters given to it by the banks.) This article also states that LPS was accused of fee-splitting with foreclosure mill attorneys and UPL. *Excerpted from the Reuters article "The Foreclosure King", December, 2010*

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

This scenario also appears to indicate that those endeavoring to bring HB87 into law have failed in their attempts to streamline the foreclosure process when it appears that forensically, there are still robosigning and document manufacturing issues present in this examination, despite the assurances of the servicers to conduct themselves accordingly with respect to the terms of all of the settlements and consent orders they agreed to, especially Ocwen Loan Servicing, LLC and potentially with Lender Processing Services, now Black Knight, in Jacksonville, Florida.

**WITNESS B** also discovered that Goldman-Sachs may have violated its federally-agreed-to Consent Order. **WITNESS B** asserts that Goldman-Sachs agreed NOT to foreclose on property owners during the pendency of the agreement **(CFN#2014056802, recorded by presentment on 04-23-2014)**.

The issues at hand in this instance also involved multiple actors with the intent to not only violate the Consent Order but to also defraud the federal government of fees due as part of Goldman-Sachs' settlement over the robosigning issues, wherein **WITNESS B** maintains Goldman-Sachs is directing operations, through Ocwen, to manufacture and robosign documents to prove its interest in second mortgage loans, the very thing that got Goldman-Sachs into trouble in the first place.

Thus, the 18 names in the possession of **WITNESS B**, upon further examination, are expected to tie former Litton Loan Servicing, Ocwen Loan Servicing and Goldman-Sachs together into a scheme to manufacture further evidence of loan ownership via the manufacture of not only assignments but of the actual promissory notes themselves.

Evidence from this forensic examination also illustrates that despite the issues involving document manufacturing and robosigning by Lender Processing Services, Inc., suspect documents are still present in the official real property records of Osceola County, Florida **(CFN#2012103699, recorded by presentment on 07-13-2012)**.  LPS, now known as Black Knight, may still be employing many of the suspected actors involved in the same activities that LPS was criminally investigated for.

In yet another issue, Nationstar Mortgage, a servicer headquartered in Nebraska and also at 350 Highland Drive in Lewisville, Texas (75067) utilized the services of Nationwide Title Clearing (hereinafter "NTC") in Palm Harbor, Florida to execute **CFN#2014073685, electronically recorded on 05-27-2014)**  attempts to represent that the Bank of New York Mellon's address is in Lewisville, Texas as well as Nationstar Mortgage.  In this assignment, Nationstar is attempting to transfer an apparent non-performing loan from one failed REMIC transfer into another failed REMIC transfer, nearly NINE (9) YEARS after the REMICs could legally accept them.

Whatever the case, the effort to produce these documents appears to be tied into the computer data networks which share information among the parties, who acted in concert with each other to validate the Examination Team's assertion of multiple violations of Florida's RICO statutes.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**IV. Document Manufacturing Plants Facilitate RICO Issues**

Document Preparers (whether under the direct control of their servicing entities or by the law firms directing the foreclosure action) are suspect for their participation to obtain information from unverified, third-party, computer database sources and then to prepare the manufactured documents to be signed and represented as fact when they knew or should have known that the information contained in these databases was not made available to the signors, who then had no personal knowledge of the actual contents therein.  Despite what the notarial executions may or may not intimate as to the responsibility of the signers, these people are affixing their signatures to a document, with the intent that the document be recorded, to represent that some official act took place on a given point in time.  By virtue of the fact that the signors actually had no personal knowledge of what they were signing in of itself appears to play a part in the misrepresentation of the information presented that is being relied on by Plaintiffs' counsel during the judicial foreclosure process.

Many times, these documents are prepared in a physical area not in close proximity to the signors.  In one video deposition, which is a part of the USB file provided to the State's Attorney, one known robosigner admits that:

> (1) he is located in a cubicle that has sides on it; thus, his direct line of sight was impaired to the point that he did not physically witness the person affixing their signature to the document that he eventually notarized;

> (2) he was told by his supervisors in many instances that he had the authority to sign for someone, yet he was never presented with the document that gave him that authority so he could visually verify it;

> (3) he claimed he was a Vice President of MERS, yet there is no verification of Hultman's authority to vest him with such official titles;

> (4) he has to indemnify Hultman and MERS/MERSCORP for any commissions of a crime he might potentially commit whether he is a signer or acting as a Florida notary, affixing his signature and seal to documents wherein he may not have physically witnessed the signor actually signing the document he is notarizing; and

> (5) he had no personal knowledge of any of the contents of the documents he was given to sign.

In fact, many of these documents are prepared in another part of the country by someone relying on information contained in these databases, generated by someone else in another part of the country, who appears to have relied on someone else's third-party data entries with no verification whatsoever as to its origin.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In fact, as noted previously in some of the foregoing case studies, these individuals are tasked with the duty to then manufacture misrepresentative and fraudulent information based on (for all intents and purposes) third-party hearsay data, which is then transferred onto the manufactured document (many of which are "templated") and then sent to a "signing team", complete with witnesses, to be "robosigned" and notarized in batches of hundreds of documents per hour, many of which are then recorded in the official real property records of Osceola County, Florida. Many of the recorded files are noticeably tied to these closed REMIC trust entities, who legally cannot accept them in violation of their pooling and servicing agreements ("PSAs").

### *Robosigning is still Alive and Well in Document Manufacturing Plants*

Due to the fact that many of the original documents were shredded as part of the loan origination process, the chain of title, as well as the chain of custody of the promissory note, have to be recreated to serve the purpose of foreclosing on a borrower that the lender-client (to the servicer document manufacturing plant) claims is in default.  This scenario has given rise to a number of document manufacturing plant start-ups around the country, which all contract with servicers and lenders to re-create the documents by whatever means necessary, with the intended purpose of causing these documents (most of which contain false and misleading or misrepresentative information under Florida Criminal Code § 817.535) to be recorded with the intent to help the servicer or lender (as alleged Plaintiff) take the property through judicial means.

**Despite what the servicers and operators of these plants maintained in their settlement agreements with the U. S. government and the 49 states Attorneys General, these processes are still continuing even after the settlements were finalized and agreements to stop these processes were put into effect.**

These document manufacturing plants are identified by the processes they utilize, to wit:

(1) Template assignment forms;

(2) Use of "photoshopped" signatures and notary seals (to save processing time);

(3) Use of rubber stamped dates, names and titles (to speed up processing time);

(4) Use of rubber stamps to affix the location of the notarial execution;

(5) Two-page assignment templates (so the notary processing can be developed separately from the signature pages;

(6) Bold-faced black type in **ALL CAPITAL LETTERS** which is a marker of a computer-generated template form that allows the user to simply "fill in the blanks";

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(7) Failure to make the notary that is acknowledging the document actually delineate the basis of identification, gender and plurality (if there is more than one signor);

(8) Use of eSignatures to speed up document template processing;

(9) Document preparation personnel are separately noted, which may be in a different part of the building and/or State other than where the signature(s) were affixed;

(10) The document was prepared by an attorney, who is directing the manufacturing process of the lender's processing arms or of independent third-party plants;

(11) Use of "autopen" -type signing devices to imprint signatures on the signing lines (to speed up the signing processes);

(12) Documents that are dated, recorded and issued the same day that a foreclosure case has been filed (it will generally be the same filing date as the Notice of Lis Pendens);

(13) The "Return To" address on the document is to that of an alleged service provider such as CoreLogic, Orion Financial Group, Ocwen Loan Servicing, DOCX, LPS, FNF, FANDO, MR Default Servicers, Wells Fargo Default Assignment, Promiss Solutions, NDEX Technologies LLC (or any other NDEX-listed member), Fidelity National Title or Fidelity National Financial and/or an attorney or law firm;

(14) The signor scribbles their signature (a key "marker" of robosigning or surrogate signing and/or it appears that the handwriting is that of a female when a "male name" appears on the document below the signature line; and

(15) There is missing information on the copies submitted to the recorder of the subject jurisdiction where the recordation of the original (such as a Power of Attorney) contains the headers or other missing information not found on the subject recordation.

The following individuals, whether under the direct control of their servicing entities or otherwise, are suspect for their participation to attest (or provide witness) to documents as fact, when the participants knew or should have known that the information contained in these documents was not made available to them; thus they had no personal knowledge of the actual contents therein, despite their claims to the contrary. Thus, these individuals were directly involved as attestants or witnesses to facts they had no personal knowledge of in the manufacture of misrepresentative and fraudulent documents recorded in the official real property records of Osceola County, Florida. This activity among multiple parties may constitute violations of Florida's RICO statute. These signors and their witnesses are placed in groupings to identify them by and through the document plants they are employed by.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

## V. Summary

As previously noted, the Florida Mortgage Bankers Association (as far back as September of 2009) admitted in writing to Judge Jennifer Bailey that documents were "eliminated" (which the Examination Team construes to mean "shredded") after they were scanned into an image file, many of which found their way into the MERS® System database.

Without the MERS® System being created and set into motion (to clearly help the members of MERSCORP, as well as its stockholders make money) for the purposes of facilitating file transfers at lightning fast speeds, there would be no need for document manufacturing plants to be set up for the purposes of helping manufacturers recreate these lost documents.

Further, with the help of the Florida Legislature, the banks appear to have managed to further the ambitions of the MERS® System in being able to avoid having to record Assignments of Mortgage every time the image file changed hands.  However, due to the unenforced policies of MERS and its parent, MERSCORP, many of the MERSCORP member/users of the MERS® System chose not to log on and record their transfers, which disrupts and creates chain of custody issues that cannot be proven in the civil judicial realm.  Thus, the MERS® System then gives the servicer or lender's employees the option to create whatever they want the document to represent (or misrepresent), using "MERS" as a nominee "cover" for the mistakes created within the MERS® System, to facilitate document processing to replace the lost documents containing the wet signatures of the Borrowers affected by the foreclosures to offer solid proof of effective transfers of the Notes and Mortgages.

Systematically, it appears that while the inner office workings of the lenders and servicers were recreating the Notes and ordering indorsement stamps to further misrepresent the effective date of the transfers of the Notes and Mortgages, the document manufacturing plants (through the third-party software platforms) were being directed to manufacture and execute the Assignments of Mortgages using MERS's "cover" to "tie off all the loose ends" to match what the "invented" indorsements would state on the proffered Complaint Notes presented to the Court.

The Examination Team recognizes that Assignments of Mortgage are not self-authenticating just because they are recorded in the real property records claiming to memorialize an official act. However, the dilemma that must be explored here is how any mandate to expedite the foreclosure process through the Court (whether ordered by the Florida Supreme Court or by the Florida Legislature through its expedited foreclosure bills) system in a judicial proceeding could ignore the possibility that everything that is presented to the Court and being relied on in the judicial foreclosure process (in light of the events disclosed here), would not be suspect and thus subject to further discovery to vet out the authenticity of these claims.

As a reminder (because of some of the recordings viewed by the Examination Team), it becomes necessary to present the following **PRICE LIST** for what these document mills really represent:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**DOCX PRICE LIST (PAGE 1)**



DOCX Home
About DOCX
What's Up @ DOCX
Contact DOCX



| Online Services | Downloads | Services | Products |



### GETNET™ DOCUMENT RECOVERY

DOCX's GetNet™ Document Recovery solution is a national network of runners that is engaged to provide document recovery, expedited recordation services, title searches, and insurance submissions.

The service is unique in that our clients can request that DOCX obtain any missing recordable documents through this web site through our online GetNet™ Work Order Form.  Status of existing projects can also be obtained through our Online Services. We also accept work orders the "old fashioned" way via fax or mail.  Upon receipt of the work order, DOCX will access the national network of runners, place the order and follow up to ensure prompt delivery.

GetNet™ was designed to assist mortgage servicers in meeting agency certifications and to avoid costly penalties for filing late satisfaction pieces.

### GetNet™ Features

- A National Network of title runners retains presence in every county jurisdiction nationwide.
- Obtains missing mortgage documents, assignments, title policies and LGC/MICs.
- Expedites recordation by physically walking documents in to county recorder offices.
- Provides title searches to identify mortgage holders.
- Provides online reporting capabilities.

### GETNET™ RATE SHEET

| XCODE | SERVICE | AMOUNT |
|-------|---------|--------|
| INF1 | Obtain PIN Number from Online Public Records | $5.50 + SH |
| INF2 | Obtain from Online Public Records Lot Block or Section | $5.50 + SH |
| INF3 | Obtain Property Address | $5.50 + SH |
| INF4 | Obtain Recorded Mortgage, Book, Page or Instrument Number | $12.95 + TPC |
| INF5 | Obtain Vehicle Identification Number | $12.95 + SH |
| CT01 | Cursory Title Search to Identify Mortgages of Record | $15.95 + TPC |
| TS01 | Perform Complete Title Search | $15.95 + TPC |
| SI01 | Obtain Copy of Mortgage | $12.95 + TPC |
| SI02 | Cure Defective Mortgage | $12.95 + TPC |
| SI03 | Retrieve Certified Copies of Mortgages | $12.95 + TPC |
| PA01 | Obtain Copy of Power of Attorney or Name Certification | $12.95 + TPC |
| PA02 | Record Power of Attorney | $12.95 + TPC |

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

## DOCX PRICE LIST (PAGE 2)

| PA03 | Obtain Clerk Certified Copy of Power of Attorney | $12.95 + TPC |
|------|--------------------------------------------------|--------------|
| IC01 | Obtain Copy of Installment Contract from VA | $15.95 + SH |
| SA01 | Obtain Copy of Subordination Agreement | $15.95 + TPC |
| MA02 | Obtain Copy of Modification | $15.95 + TPC |
| MI01 | Obtain Copy of MIC | $12.95 + SH |
| MI02 | Correct MIC | $12.95 + SH |
| LG01 | Obtain Copy of LGC | $12.95 + SH |
| LG02 | Correct LGC | $12.95 + SH |
| TP01 | Obtain Copy of Title Policy Within 7 years (based on calender year) | $19.95 + TPC |
| TP02 | Correct Existing Title Policy | $19.95 + TPC |
| TP03 | Obtain Copy of Title Policy over 7 years (based on calendar year) | $29.95 + TPC |
| TP04 | Obtain Quotes to Write and Order New Lenders Title Policy | $29.95 + TPC |
| TP05 | Obtain Abstract from Title Company (State of Iowa) | $15.95 + TPC |
| TE02 | Correct Title Policy Endorsement | $15.95 + TPC |
| LN02 | Create Lost Note Affidavit | $12.95 + SH |
| NA01 | Create Note Allonge | $12.95 + SH |
| NC01 | Name Affidavit | $12.95 + SH |
| IA01 | Obtain Copy of Assignment | $15.95 + TPC |
| IA02 | Retrieve Certified Copies of Assignments | $15.95 + TPC |
| IA03 | Create Missing Intervening Assignment | $35.00 + TPC |
| IA04 | Record Prepared Assignments | $12.95 + TPC |
| IA05 | Cure Defective Assignment | $12.95 + TPC |
| IS01 | FHA and VA Mortgage Insurance Submission | $95.00 + TPC |
| UC01 | Retrieving a UCC Package | $15.95 + TPC |
| CF01 | Recreate Entire Collateral File | $95.00 + TPC |
| ER01 | Expedited Recordation: Hand Carry Recordable Documents | $25.00 + TPC |

**Contact DOCX for volume discounts on orders of 200 items or more.**

**TPC =** Third Party Costs include Title Runner, County Jurisdictional, courier and postage costs.

**SH =** Shipping costs.

*The DOCX Service Fee will be invoiced upon receipt of the work order.*

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

## DOCX PRICE LIST (PAGE 3)

*TPC and SH costs will be billed upon completion of the work order.*
*You can also place orders online at www.docx.com.*

### Getting Started

To get started using the DOCX GetNet Service:

- Complete the **DOCX GetNet™** Service Agreement and obtain a Client ID.  **CALL DOCX**  Marketing at: 888/DOCX-NET 888/362-9638 or email sales@docx.com for an Agreement and Client ID.
- Once you complete the agreement and obtain a Client ID you can submit **GetNet™ Work Order Forms**. Clients can send work orders via the internet, email, fax, or mail.  **CALL DOCX**  Marketing at: 888/DOCX-NET 888/362-9638 or email sales@docx.com for a Work Order form, *or how to submit* **GetNet™ Work Order Forms** online.
- Contact DOCX Support at 800/723-0215 Ext 3014 or email support@docx.com for requirements and procedures of email and online **GetNet™ Work Order Form**.

It then becomes necessary to understand that a "work order" has to be generated in order to obtain a "manufactured" document for use either in recorded form or as an "exhibit" at trial.  This again brings into focus the Wells Fargo Foreclosure Attorney Manual that this lender's attorneys are allegedly using to order "manufactured" documents from the "Default Assignment Team" in Dakota County, Minnesota.  As demonstrated in this Report, these documents have also found their way into the real property records of Osceola County, Florida (and every other county in America).

It also becomes necessary to mention that the efforts of then-Florida Assistant Attorneys General June Clarkson and Theresa Edwards' investigation of DOCX and its then-parent Lender Processing Services resulted in the prosecution of Lorraine M. Brown (DOCX's President), who plead guilty to engineering the entire manufacturing process, which was found to be fraudulent, and sentenced to five (5) years in a federal penitentiary and to pay fines for her part in the wrongdoing.  Further, after Clarkson and Edwards released their report of their findings into Lender Processing Services, they were forced to resign their positions by current Florida Attorney General Pamela Jo Bondi, who allegedly has ties to Lender Processing Services ("LPS") who may be bankrolling her political campaign.  There are several articles included with this Report that intimate that Bondi (who vehemently denies any wrongdoing) and other Attorneys General are regularly wined and dined on various bank-retained law firm sponsored junkets.

However, this did not stop Missouri Attorney General Chris Koster from pursuing claims brought by the Boone County, Missouri Recorder of Deeds (who the Team Leader of this Forensic Examination personally contacted and spoke with about the prosecution of this case), who then also prosecuted Brown, accepted a guilty plea and a 2-year prison term.  LPS had to pay over $2-million in fines as well.  Brown's federal sentencing also did not stop Michigan Attorney General Bill Schuette from going after Brown either, who will eventually have to "face the music" in Michigan after she serves her prison term in the "Show Me State".

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

# SECTION FOUR: SUSPECT ACTORS EXPOSED AS THE RESULT OF THIS FORENSIC EXAMINATION

## I. The Parties

The following entities and their listed officers are suspect for their participation in the scheme (RICO) to give alleged signing authority or capacity to the foregoing list of applicable signers in any the manufacture and filing of misrepresentative and fraudulent documents in the official real property records of Osceola County, Florida, with apparent knowledge that such authority either (a.) violates their own entity policies or in the alternative, (b.) does not exist and has never existed during the entire document manufacturing process:

Mortgage Electronic Registration Systems, Inc. ("MERS")
Current Board of Directors of MERS:

Bill Beckman, President and CEO
Dan McLaughlin, Vice President
Juanita Russell, Treasurer
Sharon Horstkamp, Corporate Secretary
Timothy Renner, Associate Secretary

MERSCORP Holdings, Inc. (fka MERSCORP, Inc.)
(R. K. Arnold, former CEO of MERSCORP, Inc.)
Current Board of Directors of MERSCORP Holdings, Inc.:

Bill Beckman, President and CEO
Dan McLaughlin, Executive Vice President
Bryan Kanefield, Senior Vice President and Chief Risk Officer
Sharon Horstkamp, Senior Vice President, Chief Legal and Legislative Officer and
   Chief Corporate Secretary
Juanita Russell, Senior Vice President, Treasurer and Chief Financial Officer
Thomas Frosina, Senior Vice President, Member Services
Helina Dancer, Vice President, Human Resources
Freddy Feliz, Vice President, Information Systems
*William C. Hultman, Vice President, Legislative Affairs
Janis L. Smith, Vice President, Corporate Communications
Mark Roberge, Vice President, Customer Group
Amanda Crowley, Vice President, Internal Audit

*Hultman has had numerous corporate positions within all of the MERS entities since MERS's inception.

83 of 326

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The following financial institutions and their respective subsidiary operations are suspect for their participation to direct the manufacture and filing of misrepresentative and fraudulent documents in the official real property records of Osceola County, Florida:

Aurora Bank, FSB, c/o P. O. Box 1706, Scottsbluff, NE 69363-1706

Bank of America, N.A., 100 North Tryon Street, Charlotte, NC 28202

Bank of New York Mellon, One Wall Street, New York, NY 10286

Deutsche Bank Trust Company Americas, 60 Wall Street, New York, NY 10005

Goldman-Sachs (Mortgage Company), 85 Broad Street, 19th Floor, New York, NY 10004

HSBC Bank USA, N.A., 1800 Tysons Blvd., McLean, VA 22102

M & T Bank, One Fountain Plaza, Buffalo, NY 14213

JPMorgan Chase Bank, N.A., 1111 Polaris Parkway, Columbus, OH 43240

OneWest Bank, FSB, 2900 Esperanza Crossing, DM-01-08, Austin, TX 78758

SunTrust Bank, N. A., 303 Peachtree Street, Atlanta, GA 30308

U. S. Bancorp (U. S. Bank, N.A.), 800 Nicollet Mall, Minneapolis, MN 55402

Wells Fargo Bank, N.A., 101 N. Phillips Avenue, Sioux Falls, SD 57104


The following mortgage servicing entities and suspect document manufacturing plants are suspect for their participation to direct the manufacture and filing of misrepresentative and fraudulent documents in the official real property records of Osceola County, Florida:

American Home Mortgage Servicing, Inc., 4600 Regent Blvd., Irving, Texas 75063 (operates a satellite office in Florida in what appears to be Owen's 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409; now known as Homeward Residential, Inc.)

Aurora Loan Services, LLC, P. O. Box 1706, Scottsbluff, NE 69363-1706

Bayview Loan Servicing, LLC, 4425 Ponce De Leon Blvd., 5th Floor, Coral Gables, FL 33146

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

CoreLogic Document Solutions, 450 E. Boundary Street, Chapin, SC 29036

Financial Dimensions, Inc., 1400 Lebanon Church Road, Pittsburgh, PA 15236

Home Loan Services, Inc., P. O. Box 1838, Pittsburgh, PA 15230-9500

HSBC Mortgage Services, Inc., 636 Grand Regency Blvd., Brandon, FL 33510

IBM Lender Business Process Services, Inc., 14523 SW Millikan Way #200, Beaverton, OR 97005

Lender Processing Services, Inc. (DOCX), 601 Riverside Avenue, Jacksonville, FL 32204

Loancare, A Division of FNF Servicing, Inc., P. O. Box 8068, Virginia Beach, VA 23450

Nationstar Mortgage LLC, 2617 College Park, Scottsbluff, NE 69361

Ocwen Loan Servicing, LLC, 5720 Premier Park Drive, West Palm Beach, FL 33407

Ocwen Loan Servicing, LLC, 1661 Worthington Road, Suite 100, West Palm Beach, FL 33409

ReconTrust Company, N.A., 1330 W. Southern Avenue, MS: TPSA-88, Tempe, AZ 85292-4545

Saxon Mortgage Services, Inc., 4708 Mercantile N, Fort Worth, TX 76137

Specialized Loan Servicing, LLC, P. O. Box 266005, Littleton, Colorado 80163-6005

Select Portfolio Servicing, Inc., 3815 South West Temple, Salt Lake City, Utah 84115

Selene Finance, LP, 9990 Richmond Avenue, Suite 400 South, Houston, TX 77042

Suntrust Mortgage, Inc., 1001 Semmes Ave., RVW-5033, Richmond, VA 23224

T. D. Service Company, 4000 West Metropolitan Avenue, Suite 400, Orange, California 92868

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The following known third-party document manufacturing plants are suspect for their participation to direct the manufacture and filing of misrepresentative and fraudulent documents in the official real property records of Osceola County, Florida:

Indecomm Global Services, 2925 Country Drive, St. Paul, Minnesota 55117

IBM Lender Business Process Services, Inc., 14523 SW Millikan Way #200, Beaverton, OR 97005

Nationwide Title Clearing, Inc., 2100 Alt. 19 North, Palm Harbor, Florida 34683

Orion Financial Group, Inc., 2860 Exchange Blvd., #100, Southlake, Texas 76092

Security Connections, Inc., 240 Technology Drive, Idaho Falls, Idaho 83401

T. D. Service Company, 4000 West Metropolitan Avenue, Suite 400, Orange, California 92868

Wells Fargo Default Assignment Team, MAC: X9996-018, P. O. Box 1629, Minneapolis, MN 55440-9790

The following law firms and their attorneys (listed throughout this section) are suspect for their participation to prepare, or in the alternative, direct the manufacture and filing of (or in the alternative, relying on the filing of) misrepresentative and fraudulent documents in the official real property records of Osceola County, Florida :

Ablitt Scofield, P. C., 100 South Dixie Highway, Suite 200, West Palm Beach, Florida 33401

Adorno & Yoss, LLP, 2525 Ponce De Leon Blvd., Suite 400, Coral Gables, FL 33134

Albertelli Law, P. O. Box 23028, Tampa, Florida 33623

Aldridge Connors, LLP, 1615 South Congress Avenue, Suite 200, Delray Beach, Florida 33445

Ben-Ezra & Katz, P.A., 2901 Stirling Road, Suite 300, Fort Lauderdale, FL 33312

Brock & Scott, PLLC, 1501 NW 49th Street, Suite 200, Fort Lauderdale, FL 33309

Butler & Hosch, P. A., 3185 South Conway Road, Suite E, Orlando, FL 32812

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Butler & Hosch, P.A., 13800 Montfort Drive, Suite 300, Dallas, TX 75240

Choice Legal Group, P.A. (fka Law Office of Marshall C. Watson), 1800 NW 49th Street, Suite 120, Fort Lauderdale, FL 33309

Clarfield, Okon, Salomone & Pincus, P.L., 500 South Australian Avenue, Suite 730, West Palm Beach, FL 33401

Connolly, Geaney, Ablitt & Willard, PC, 100 South Dixie Highway, Suite 200, West Palm Beach, FL 33401

Connolly, Geaney, Ablitt & Willard, PC, 304 Cambridge Road, Woburn, MA 01801

Law Office of Daniel C. Consuegra, 9204 King Palm Drive, Tampa, Florida 33619-1328

Dumas & McPhail, L. L. C., 126 Government Street, Mobile, AL 36602

Fasset, Anthony & Taylor, P. A., 1325 W. Colonial Drive, Orlando, FL 32804

Florida Default Law Group, P. L., P. O. Box 25018, Tampa, Florida 33622-5018

Florida Foreclosure Attorneys, PLLC, 601 Cleveland Street, Suite 690, Clearwater, FL 33755

Frenkel Lambert Weiss Weisman & Gordon, LLP, 1 East Broward Blvd., Suite 1111, Fort Lauderdale, FL 33301

Gilbert Garcia Law Group (Gilbert McGrotty Group, P.A.), 3200 Henderson Blvd., Suite 100, Tampa, FL 33609

Gladstone Law Group, P.A., 1499 W. Palmetto Park Road, Suite 300, Boca Raton, FL 33486

Greenspoon Marder P.A., 100 W. Cypress Creek Road, Suite 700, Fort Lauderdale, FL 33309

Heller & Zion, LLP, 1428 Brickell Avenue, Suite 700, Miami, FL 33131

Kahane & Associates, P.A., 8201 Peters Road, Suite 3000, Plantation, FL 33324

Kass Shuler, P.A., 1505 N. Florida Avenue, Tampa, FL 33601

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Lender Legal Services, LLC, 201 East Pine Street, Suite 730, Orlando, FL 32801

Marinosci Law Group, 100 W. Cypress Creek Road, #1045, Fort Lauderdale, FL 33309

McCalla Raymer, LLC, 225 East Robinson Street, Suite 660, Orlando, FL 32801

Peirson Patterson, LLP, 4400 Alpha Road, Dallas, TX 75244

Pendergast & Morgan, P. A., 6675 Corporate Center Pkwy., Ste. 301, Jacksonville, FL 32216

Phelan Hallinan, PLC, 2727 West Cypress Creek Road,  Ft. Lauderdale, FL 33309

Quintairos, Prieto, Wood & Boyer, P.A. law firm (255 S Orange Ave., Ste. 900, Orlando, FL 32801-3454

Robertson, Anschutz & Schneid, P.L., 3010 N. Military Trail, Suite 300, Boca Raton, FL 33431

Rutherford Mulhall, P.A., 2600 North Military Trail, 4th Floor, Boca Raton, FL 33431-6348

Shapiro & Fishman, LLP, 10004 N. Dale Mabry Highway, Suite 112, Tampa, FL 33622-5018

Smith, Hiatt & Diaz, P.A., P. O. Box 11438, Fort Lauderdale, FL 33339-1438

David J. Stern, P. A., 900 South Pine Island Road, Suite 400, Plantation, FL 33324-3920

Law Offices of Michael Storey, 1380 North Courtenay Parkway, Merritt Island, FL 32953

Tripp Scott, P. A., 110 S.E. 6th Street, 15th Floor, Fort Lauderdale, FL 33301

Van Ness Law Firm, PLC, 1239 E. Newport Center Dr., Ste. 110, Deerfield Beach, FL 33442

Ward, Damon, Posner, Pheterson & Bleau, P.L., 4420 Beacon Circle, West Palm Beach, FL 33407

Weltman, Weinberg & Reis Co. L.P.A., 550 W. Cypress Creek Road, Suite 550, Fort Lauderdale, FL 33309

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Elizabeth R. Wellborn, P.A., 350 Jim Moran Blvd., Suite 100, Deerfield Beach, FL 33442

Ronald Wolfe & Associates, P. L.,  P. O. Box 25018, Tampa, FL 33618

Douglas C. Zahm, P.A., 12425 28th Street North, Suite 200, St. Petersburg, FL 33716

II. Specific Party Listings of Isolated Allegations

A. ALLEGED IN-STATE VIOLATORS

*American Home Mortgage Servicing, Inc. (aka Homeward Residential) Jacksonville, Florida*

(AHMSI-HR EX. 1) CFN#2012100962, electronically recorded on 07-09-2012
Document Prepared by: "kmasias", Robertson, Anschutz & Schneid, P.L.
Signor: Tonya Hopkins (alleged AHMSI employee), signing as Assistant Secretary of MERS
Notary: Linda G. Bayless (alleged AHMSI employee; EE 140306)
Witnesses: Lori Richard, Vicki Brantley (alleged AHMSI employees)
Issues: The document purports to assign a Mortgage executed by Joseph and Rosemary Kaub (using MERS as a standalone "Assignor"; in consideration of the sum of "Ten Dollars and 00/100 Cents"; MERS is a bankruptcy-remote entity and cannot receive an income) to Deutsche Bank National Trust Company as Trustee for a Harborview 2007-6 series REMIC trust (using Homeward Residential, Inc.'s Coppell, Texas address as the address of the "Assignee"). This Assignment has created multiple issues, discussed here:

(1) The Closing Date for the Harborview Mortgage Loan Trust Series 2007-5 was July 12, 2007.  This Assignment was dated June 26, 2012.  Under New York Estates Powers and Trusts law Section 7-2.4, this transfer contravenes the law and is thus void;

(2) There are apparent violations of SEC and IRS governing regulations;

(3) There are numerous markers of document manufacturing, including but not limited to:

(a.) the preparation by an employee of a foreclosure mill law firm;

(b.) the lack of personal knowledge of the contents of the document by the signors who executed it (not that it is required under Florida law);

(c.) the use of MERS as a "cover" for the chain of title and chain of custody of the note;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(d.) the misrepresentative use of addresses for the Assignor and Assignee
which obfuscates the owner of the note; and**

**(e.) American Brokers Conduit was insolvent and filed for bankruptcy
in 2007; the signors and the law firm are acting in concert to create a
document that purports to assign a mortgage (only) from MERS (as an
assumed "nominee" for no one, showing American Brokers Conduit as
the "originating lender", only) from a defunct lender to a closed
trust REMIC.**

**(AHMSI-HR EX. 2) CFN#2012103699, recorded by presentment on 07-13-2012**
**The document was notably prepared by Florida Foreclosure Attorneys, PLLC on Clearwa-
ter, Florida *(see their listing regarding their specific actions regarding the use of the docu-
ment)* for execution by employees of the alleged servicer of a mortgage executed by Cheery
and Jackie Davis.  The recorded Instrument was returned to the law firm after being filed
in the real property records of Osceola County, Florida.   It is interesting to note the follow-
ing article, excerpting the relevant part, pertinent to robosigning documents and Sand
Canyon Corporation (who hasn't been in business since 2009):**

## Mortgage servicers still lying in court

By Felix Salmon September 1, 2011
http://blogs.reuters.com/felix-salmon/2011/09/01/mortgage-servicers-still-lying-in-court/

American Banker's Kate Berry has a fantastic piece of reporting today, under the head-
line "Robo-Signing Redux: Servicers Still Fabricating Foreclosure Documents". Among
her discoveries is this document, dated August 3, 2011, wherein Tonya Hopkins signed
over a mortgage in her capacity as Assistant Secretary of Sand Canyon Corporation.

The problem with this? Sand Canyon hasn't been in the mortgage business since 2009,
and Tonya Hopkins doesn't work for Sand Canyon: she works for American Home Mort-
gage Servicing Inc.   This, naturally, causes problems.

North Carolina consumer bankruptcy lawyer O. Max Gardner III says servicers and
trustees often submit promissory notes in court without proper endorsements, which
show the chain of title from one lender to another. Then, after the fact, there will be "a
magically appearing note with a stamped endorsement," Gardner said.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

When plaintiff's lawyers then try to depose the person whose name is stamped on the endorsement, "we're being told the person is no longer employed by the servicer or by the party for whom they signed," Gardner says.

**The document being examined contains not only Hopkin's signature as Assistant Secretary for Sand Canyon Corporation, three years after Sand Canyon's demise, other signors' signatures and presence also revealed known robosignors whose names pop up on tens of thousands of documents across the U.S.   This document purports to assign a mortgage from Sand Canyon to a <u>closed</u> Soundview 2006-OT3 REMIC trust.**

**Signors: Tonya Hopkins, April King (both claiming to be Assistant Secretaries for San Canyon Corporation fka Option One Mortgage Corporation)**
**Notary: Brenda L. Frazier (Florida Notary Commission #DD885641)**
**Witnesses: Vicki Brantley, Lori Richard**

**(AHMSI-HR EX. 3) CFN#2012103998, electronically recorded on 07-13-2012**
**Document Preparer: "Ksimmons", Robertson, Anschutz & Schneid, P.L.**
**Signor: Rolanda Wagner, who purports to be an Assistant Secretary of MERS attempts to assign a mortgage from then-defunct**
**Notary: Brenda L. Frazier (Florida Notary Commission #DD885641)**
**Witnesses: Vicki Brantley, Lori Richard**
**Issues: Typical markers of document manufacturing (rubber stamps alternating with fill in the blanks); use of MERS to convey a note (which MERS does not own); prepared by "K. Simmons" of Robertson, Anschutz & Schneid, P.L. *(see this listing under the law firm name)***

**(AHMSI-HR EX. 4) CFN#2012106156, electronically recorded on 07-18-2012**
**Signor: April King (known employee of American Home Mortgage Servicing, Inc.), signing as Assistant Secretary of MERS as nominee for FBC Mortgage LLC (still showing ACTIVE under the Florida Department of State business registration's §) to a closed 2006-11 REMIC trust.**
**Notary: Linda G. Bayless (Florida Notary Commission #EE140306)**
**Witnesses: Lori Richard, W. D. Zaleski**
**ISSUES: The sum and substance of the assignment appears to assert the same information as its predecessor assignment.  Evidence of document manufacturing markers present.  As the law firm of Robertson, Anschutz & Schneid prepared this document, it is highly likely that AHMSI employees had actual, personal knowledge of its contents and used their alleged authority to execute the assignment into a closed REMIC trust.  This "Corrective" action appears to correct minor language, but also appears to deflect scrutiny from previous DOCX assignment CFN#2009058836. This assignment conveniently omitted the CFN. This Corrective Assignment of Mortgage, prepared by this law firm (RA&S) attempts to assert that an error was made in the first assignment (recorded in Book 3822 at Page 2778).**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**This reference was traced to, which was prepared by DOCX, then a division of Lender Processing Services, Inc. and filed by presentment on April 15, 2009.  The newer corrective assignment appears to correct not only language, but also appears (under direction and preparation of the law firm of Robertson, Anschutz & Schneid, P.L.) to deflect scrutiny from DOCX, whose President Lorraine Brown, plead guilty of document manufacturing and is currently in federal prison and replace it with another MERS-attempted assignment of the mortgage and note into the same closed Goldman-Sachs Home Equity 2006-11 REMIC trust. *(NOTE: Since the former assignment was a DOCX manufacture, it will be also shown under LPS's heading)*  In sum, since there are 4 issues here, Florida RICO may apply in addition to any issues regarding Florida Criminal Code Section 817.535.**

### *Bayview Loan Servicing, LLC*

In the following batch of documents, numerous "officers" of this servicer claim to be "affiants" when they appear to have nothing to do with the preparation of the document.  In many instances in the following scenario, the documents are manufactured by the foreclosure mill law firm seeking to execute a foreclosure sale transfer on a given piece of property in Osceola County, Florida. Based on the "convenience" of these so-called affidavits, it appears to be part of a bigger process (accompanied by the manufacture of assignments, etc.) in the foreclosure process, so this servicer can make more profit on the back end of the process.

A copy of the corporate registration of this entity, along with its roster of officers, is attached hereto as a referenced exhibit known as "**BAYVIEW EX. 1**", incorporated within the evidence package herein. The following "manufactured" documents create a suspect pattern for other schemes and artifices, which are recorded in the real property records of Osceola County, Florida and may constitute RICO violations, in addition to violations of the Florida Criminal Code at § 817.535:

**(BAYVIEW EX. 2) CFN#2012085900, recorded by presentment on 06-05-2012
Signer: Elva Neumann, Senior Vice President
Notary: Doris Silva (Florida Notary Commission EE158707)
Issues: There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Elva Neumann, who also scribbled her signature on the Affidavit.  How could even a Senior Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into? The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(BAYVIEW EX. 3) CFN#2012092950, recorded by presentment on 06-20-2012**
**Signer: Glysette Piedra, First Vice President**
**Notary: Sasha M. Cohen (Florida Notary Commission DD914213)**
**Issues: There is no indication or proof in the notarial execution that Sasha M. Cohen (through her scribbled signature) administered an oath to Glysette Piedra, who also scribbled her signature on the Affidavit. How could a First Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into? The document was returned to the Law Office of Daniel Consuegra after recordation.**
**CFN#2014031529, recorded by presentment on 03-05-2014**
**CFN#2012108408, recorded by presentment on 07-23-2012**
**Signer: Elva Neumann, Senior Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Elva Neumann, who also scribbled her signature on the Affidavit. How could even a Senior Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into? The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

**(BAYVIEW EX. 4) CFN#2012108408, recorded by presentment on 07-23-2012**
**Signer: Elva Neumann, Senior Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Elva Neumann, who also scribbled her signature on the Affidavit. How could a Senior Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into? Further, the notarial execution is missing the date, thus creating an apparent manufacturing "deficiency" in the recorded document. The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

**(BAYVIEW EX. 5) CFN#2013000555, recorded by presentment on 01-02-2013**
**Signer: David Briggs, who purports to be an Assistant Secretary for MERS as nominee for then-bankrupt Accredited Home Lenders, Inc. (using a MERS post office box in Flint, Michigan as an address for the defunct lender) appears to self-assign the mortgage to Bayview Loan Servicing, LLC.**
**Notary: Adeline Quintero (Florida Notary Commission EE831859)**
**Witnesses: None Listed**
**Issues: Self-assignment from a defunct lender using MERS. No witness signatures, which may be required under Florida law.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(BAYVIEW EX. 6) CFN#2013021838, recorded by presentment on 02-08-2013**
**Signer: Elva Neumann, Senior Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Elva Neumann, who also scribbled her signature on the Affidavit.  How could even a Senior Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into? The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

**(BAYVIEW EX. 7) CFN#2013032741, recorded by presentment on 02-27-2013**
**Signer: Luis Portal, Assistant Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: This is an Affidavit of Attorney-in-Fact status was recorded BEFORE the subject document was recorded; however, since Bank of New York Mellon is representing (as Trustee, that it owns a specific piece of property, investigation is warranted into what actual knowledge Mr. Portal had on exactly WHICH property Bank of New York Mellon is selling, especially if Mr. Portal simply scribbled his signature and did not examine the entire portfolio to make sure the foreclose of the property was proper and that Bank of New York Mellon actually OWNED THE NOTE which it foreclosed on.**
**Considering the status of the trusts Bank of New York Mellon represents as Trustee, it is highly unlikely the Borrower's note was in the trust pool; thus, Portal and his associates took part in the seizure and sale of the Borrower's real property, potentially utilizing similar manufactured schemes and artifices to convince the court that Bank of New York Mellon had the right to foreclose on the note in the first place.  There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Luis Portal, who also scribbled his signature on the Affidavit.  The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.  It is further noted (in the verification research conducted here) that Doris Silva is also a Senior REO Manager for Bayview Loan Servicing, LLC.**

**(BAYVIEW EX. 8) CFN#2013052156, recorded by presentment on 04-04-2013**
**Signer: Patrick Joyce, Assistant Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Luis Portal, who also scribbled his signature on the Affidavit.  How could even an Assistant Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into?  The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(BAYVIEW EX. 9) CFN#2013068655, recorded by presentment on 05-21-2013**
**Signer: Luis Portal, Assistant Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: This is an Affidavit of Attorney-in-Fact status was recorded BEFORE the subject document was recorded; however, since Bank of New York Mellon is representing (as Trustee, that it owns a specific piece of property, investigation is warranted into what actual knowledge Mr. Portal had on exactly WHICH property Bank of New York Mellon is selling, especially if Mr. Portal simply scribbled his signature and did not examine the entire portfolio to make sure the foreclose of the property was proper and that Bank of New York Mellon actually OWNED THE NOTE which it foreclosed on.**
**Considering the status of the trusts Bank of New York Mellon represents as Trustee, it is highly unlikely the Borrower's note was in the trust pool; thus, Portal and his associates took part in the seizure and sale of the Borrower's real property, potentially utilizing similar manufactured schemes and artifices to convince the court that Bank of New York Mellon had the right to foreclose on the note in the first place.  There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Luis Portal, who also scribbled his signature on the Affidavit.   The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

**(BAYVIEW EX. 10) CFN#2013088579, recorded by presentment on 06-04-2013**
**Signer: Elva Neumann, Senior Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Elva Neumann, who also scribbled her signature on the Affidavit.  How could even a Senior Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into? The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

**(BAYVIEW EX. 11) CFN#2013095699, recorded by presentment on 06-19-2013**
**Signer: Luis Portal, Assistant Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Luis Portal, who also scribbled his signature on the Affidavit.  How could even an Assistant Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into?  The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(BAYVIEW EX. 12) CFN#2013130788, recorded by presentment on 08-21-2013**
**Signer: Elva Neumann, Senior Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: This is an Affidavit of Attorney-in-Fact status was recorded BEFORE the subject document was recorded; however, since Bank of New York Mellon is representing (as Trustee, that it owns a specific piece of property, investigation is warranted into what actual knowledge Mr. Portal had on exactly WHICH property Bank of New York Mellon is selling, especially if Ms. Neumann simply scribbled her signature and did not examine the entire portfolio to make sure the foreclose of the property was proper and that Bank of New York Mellon actually OWNED THE NOTE which it foreclosed on.**
**Considering the status of the trusts Bank of New York Mellon represents as Trustee, it is highly unlikely the Borrower's note was in the trust pool; thus, Neumann and her associates took part in the seizure and sale of the Borrower's real property, potentially utilizing similar manufactured schemes and artifices to convince the court that Bank of New York Mellon had the right to foreclose on the note in the first place.  There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Elva Neumann, who also scribbled her signature on the Affidavit.  Further, there is nothing on the document to indicate the party is an "affiant".  The document, prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process, appears to be a boiler plated document that was slopped through in a hurry to get signed; thus, missing any reference to an "affiant" being present therein.**

**(BAYVIEW EX. 13) CFN#2013164051, recorded by presentment on 10-16-2013**
**Signer: Luis Portal, Assistant Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: This is an Affidavit of Attorney-in-Fact status was recorded BEFORE the subject document was recorded; however, since E*Trade Bank is representing that it owns a specific piece of property, investigation is warranted into what actual knowledge Mr. Portal had on exactly WHICH property E*Trade Bank is selling, especially if Mr. Portal simply scribbled his signature and did not examine the entire portfolio to make sure the foreclose of the property was proper and that E*Trade Bank actually OWNED THE NOTE which it foreclosed on.**
**It is highly likely, given the suspect issues involved here, that Portal and his associates took part in the seizure and sale of the Borrower's real property, potentially utilizing similar manufactured schemes and artifices to convince the court that E*Trade Bank had the right to foreclose on the note in the first place.  There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Luis Portal, who also scribbled his signature on the Affidavit.   The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(BAYVIEW EX. 14) CFN#2013167931, recorded by presentment on 10-24-2013**
**Signer: Elva Neumann, Senior Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Elva Neumann, who also scribbled her signature on the Affidavit. How could even a Senior Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into? The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

**(BAYVIEW EX. 15) CFN#2013167945, recorded by presentment on 10-24-2013**
**Signer: Luis Portal, Assistant Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: This is an Affidavit of Attorney-in-Fact status was recorded BEFORE the subject document was recorded. The document appears to have been prepared by John A. Taylor who is not related to Bayview Loan Servicing, LLC. It is highly likely that this document, like all the others contained in this file batch, are robosigned without review. Mr. Portal more than likely signed this document without review of the contents he was attesting to.**

**(BAYVIEW EX. 16) CFN#2013198346, recorded by presentment on 12-19-2013**
**Signer: Robert G. Hall (alleged employee of Bayview Loan Servicing LLC) signing as Assistant Secretary of MERS as nominee for defunct Countrywide Home Loans, Inc. to assign a 2005 mortgage executed by Tracy A. Gilbert into a closed CWALT 2005-63 REMIC trust.**
**Notary: Jane R. Diaz (Florida Notary Commission No. DD957753)**
**Witnesses: Maria Isabel Puerto, Maria T. Ruiz**
**Issues: This is the second of two assignments recorded in this case. The first assignment was recorded as CFN#2009069179 (as shown above). This assignment appears to re-arrange the manner in which succession occurred between the Bank of New York Mellon and the Bank of New York. The fundamental elements of what is assigned is the same. The first assignment was drafted by Daniel C. Consuegra, Esq. and was executed in Collin County, Texas by Bank of America, N.A. employees. The assignment using MERS was identical to the new assignment. There are identical markers of document manufacturing throughout the document and it is highly unlikely that the persons executing the document knew for a fact who actually owned the Gilbert note and mortgage and who ended up with it. The fundamental issues concerning the foreclosure attempt are shown under Consuegra's listing herein.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(BAYVIEW EX. 17) CFN#2014020912, recorded by presentment on 02-13-2014**
**Signer: Luis Portal, Assistant Vice President**
**Notary: Milagros Garcia (Florida Notary Commission EE863633)**
**Issues: There is no indication or proof in the notarial execution that Milagros Garcia (through her scribbled signature) administered an oath to Luis Portal, who also scribbled his signature on the Affidavit.  How could even an Assistant Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into?  The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.  Clear evidence of robosigning and document manufacturing.**

**(BAYVIEW EX. 18) CFN#2014027847, recorded by presentment on 02-26-2014**
**Signer: Patrick Joyce, Assistant Vice President**
**Notary: Notary: Milagros Garcia (Florida Notary Commission EE863633)**
**Issues: This is an Affidavit of Attorney-in-Fact status was recorded BEFORE the subject document was recorded; however, since Bank of New York Mellon is representing (as Trustee, that it owns a specific piece of property, investigation is warranted into what actual knowledge Mr. Portal had on exactly WHICH property Bank of New York Mellon is selling, especially if Mr. Portal simply scribbled his signature and did not examine the entire portfolio to make sure the foreclose of the property was proper and that Bank of New York Mellon actually OWNED THE NOTE which it foreclosed on.**
**Considering the status of the trusts Bank of New York Mellon represents as Trustee, it is highly unlikely the Borrower's note was in the trust pool; thus, Portal and his associates took part in the seizure and sale of the Borrower's real property, potentially utilizing similar manufactured schemes and artifices to convince the court that Bank of New York Mellon had the right to foreclose on the note in the first place.  There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Luis Portal, who also scribbled his signature on the Affidavit.   The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

**(BAYVIEW EX. 19) CFN#2014031529, recorded by presentment on 03-05-2014**
**Signer: Luis Portal, Assistant Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues: There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Luis Portal, who also scribbled his signature on the Affidavit.  How could even an Assistant Vice President have personal knowledge as to what the "assets" of the company are or what agreements it has entered into?  The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(BAYVIEW EX. 20) CFN#2014054484, recorded by presentment on 04-21-2014**
**Signer: Patrick Joyce, Assistant Vice President**
**Notary: Doris Silva (Florida Notary Commission EE158707)**
**Issues:** This is an Affidavit of Attorney-in-Fact status was recorded BEFORE the subject document was recorded; however, since M&T Bank is representing that it owns a specific piece of property, investigation is warranted into what actual knowledge Mr. Joyce had on exactly WHICH property M&T Bank is selling, especially if Mr. Joyce simply scribbled his signature and did not examine the entire portfolio to make sure the foreclose of the property was proper and that M&T Bank actually OWNED THE NOTE which it foreclosed on. Considering the suspect nature in which these documents are manufactured, it is highly likely that Joyce and his associates took part in the seizure and sale of the Borrower's real property, potentially utilizing similar manufactured schemes and artifices to convince the court that M&T had the right to foreclose on the note in the first place.
There is no indication or proof in the notarial execution that Doris Silva (through her scribbled signature) administered an oath to Patrick Joyce, who also scribbled his signature on the Affidavit.   The document was prepared by an outside attorney (John A. Taylor) for Fassett, Anthony & Taylor, P.A. as part of the document manufacturing process.

### *HSBC Mortgage Services*

**(HSBC MTG EX. 1) CFN#2014054131, recorded by presentment on 04-17-2014**
**Signor: Nataly Cabrera (alleged employee of this servicer) signing as Assistant Secretary of MERS as nominee for defunct Lenders Investment Corporation (inactive as of October, 2007; using the MERS post office box as a "cover" for the defunct lender's address) to itself, as a targeted assignment to Household Finance Corporation III (a legal entity of HSBC Mortgage Services as shown here: https://www.hsbcmortgageservices.com/privacy_display).**
**Notary: Hildalyn Gonzalez Rosado (Florida Notary Commission No. EE880812)**
**Witnesses: Kendra Velasco, Jill Kinsell (also employees of HSBC)**

**EXAMINER'S NOTES:**

There are multiple instances of Assignment issues contained in *Section Five* of this report, as it appears that the foregoing entity has been repeatedly been represented by Ablitt-Scofield, P.C. nka Connolly, Geaney, Ablitt & Willard, P.C.   There appears to be sufficient evidence to warrant probable cause for further investigation for violations of Florida Criminal Code § 817.535 and Florida's RICO Statutes.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(HSBC MTG EX. 2) CFN#2013062447, recorded by presentment on 04-27-2012
Signor: Melissa D. Cleary, (alleged employee of HSBC Mortgage Services, Inc. in Florida)
claiming to be an Assistant Secretary of MERS as nominee for defunct Choice Capital
Group, Inc. (using a MERS address in Vienna, Virginia), as Assignor to HSBC Mortgage
Services, Inc. NOW using their Brandon, Florida address); in what appears to be a repeat
performance of a self-assignment using MERS as a "cover" for the chain of title and chain
of custody of the Note.
Notary: Trevin Myers (Florida Notary Commission No. EE 098231; still valid)
Witnesses: Angela M. Johnson, Jill Kinsell (also believed to be known employees of HSBC)
Issues: It appears that this assignment was prepared by Deveri Dorsey of HSBC, who was
not involved in the signing of this document, executed on April 18, 2012. Since the Assign-
ment pattern has moved to Florida within what appears to be an active case, the issues,
even though apparently redundant, moved within the target period of this examination.
This document does contain a 1999 MERS corporate seal (in an attempt to make the doc-
ument look more "official").**

### *Lender Processing Services, Inc. nka Black Knight Financial Services (also DOCX, a now-defunct LPS subsidiary)*

It becomes necessary at this juncture to expose another Florida-based company that is largely
responsible for foreclosure assistance with mortgage lenders, via its third-party, computer soft-
ware-based, data entry system called ServiceLink.  It is through this database that the former
Lender Processing Services, Inc. (hereinafter "LPS"), which was investigated by Florida Attor-
ney General Bill McCollum, was spun off from its parent, Fidelity National Financial (FNF),
along with DOCX, a subsidiary of LPS which was investigated by both state and federal authori-
ties.  A copy of a Reuter's news story entitled, "The Foreclosure King" is attached as **LPS EX.
1** and incorporated by reference herein (as background to this investigation).

LPS was merged with ServiceLink, which is Black Knight's computer link between its members
and all of its departments.  Black Knight Financial Services SEC Registry however shows sever-
al LPS entities in existence, which may mean that the new company name is simply a "smoke
screen" for its continued existing operations.  The investigation into a subsidiary of LPS (DOCX
in Alpharetta, Georgia) resulted in the prosecution of DOCX and its President, Lorraine M.
Brown by the federal government, but also through an indictment from the grand jury empaneled
by Boone County, Missouri, directed by Missouri Attorney General Chris Koster. Further,
Michigan Attorney General Bill Schuette also effectuated prosecution against DOCX and Brown.
Brown plead guilty to a count of masterminding the filing of fraudulent documents in the land
records and was sentenced to five (5) years in federal prison and fined $15,000.00.  This would
seem like a mere slap on the wrist; however, both Missouri and Michigan collected over $2-mil-
lion each in settlement costs as a result of their subsequent prosecutions of Brown and DOCX.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

However, the forensic examination of the land records brought up multiple documents that LPS generated that were never prosecuted but still appear to fall under the parameters of probable cause. It is to that end that the following information is represented in this report. After the "smoke cleared", it appears that Fidelity National Financial ("FNF" as referred to in McCollum's Press Release) brought LPS back into fruition and changed its name to Black Knight Financial Services, which appears to be basically doing the same thing (only more refined and compartmentalized to avoid scrutiny) as LPS did during its document manufacturing reign over the mortgage foreclosure actions taken against property owners across America. It should also be noted that LPS nka Black Knight do not represent borrowers but rather lenders dealing in default issues. It should also be noted that the Nevada Attorney General, Catherine Cortez Masto, filed suit against LPS in California, accusing it of unauthorized practice of law, because LPS employees were alleged to have been "instructing" (giving legal advice or in the alternative, badgering and threatening attorneys who did not meet their foreclosure quotas) attorneys, using potentially unsupervised non-lawyers to do its bidding in the foreclosure process.

As a result of the investigation of the real property records in Osceola County, Florida, the following documents are suspect for probable cause under Florida Criminal Code § 817.535 for their manufacture in aiding the intent to defraud homeowners of their property, and are noted in detail as follows by Clerk's File Number:

**(LPS EX. 2) CFN#2009058836, recorded by presentment on 04-15-2009
Its successor assignment was electronically recorded as CFN#2012106156 on 07-18-2012. The successor assignment conveniently omitted the CFN of this assignment. *(NOTE: Since the successor assignment was apparently created to deflect scrutiny from a DOCX manufacture, it is also shown under the heading of American Home Mortgage Servicing, Inc. and Robertson, Anschutz & Schneid).***
**Signors: Korell Harp (claiming to be a Vice President of MERS); Tywanna Thomas (claiming to be an Assistant Vice President of MERS; there were no known official "Assistant Vice President" titles claimed to be issued by MERS to anyone); both signing for MERS as nominee for FBC Mortgage, LLC of Florida. Both Harp and Thomas were known robosignors and were investigated as part of the LPS-DOCX robosigning scandal by former Florida Attorney General Bill McCollum, as well as federal authorities). This Assignment is attached (even though technically outside of the 5-year statute of limitations because the following assignment ties into this one).**
**Witnesses: Dawn Williams, Christina Huang (both also known robosignors).**
**Notary: Brittany Snow (know robosignor and robonotary; Fulton County, Georgia (commission expired on May 21, 2011).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(LPS EX. 3) CFN#2012106156, electronically recorded on 07-18-2012**
**This assignment is a Corrective Assignment of Mortgage which attempts to "fix" the in-equities of the previous 2009 assignment noted above.  The document was prepared by "Kmasias" of the law firm of Robertson, Anschutz & Schneid, P.L.** *The specific case will be discussed in more detail under the law firm's heading in this report.*
**Signor: April King, as Assistant Secretary of MERS (known robosignor for AHMSI nka Homeward Residential, Inc.), attempting to assign the Mortgage (AND NOTE; using the MERS post office box in Flint, Michigan) from MERS, as a standalone Assignor (as a nom-inee for then-defunct FBC Mortgage, LLC to a closed Deutsche Bank National Trust Com-pany as Trustee for Goldman-Sachs Home Equity Trust 2006-11, which closed on June 30, 2006 and could not accept the assignment over six (6) years later.**
**Notary: Linda G. Bayless (Florida Notary Commission No. EE 140306; still active)**
**Witnesses: Lori Richard, W. D. Zaleski (known robosignors)**
**Issues: In attempting to assert a "Corrective Assignment", the document preparer at Robertson, Anschutz & Schneid, P.L. (more than likely without attorney supervision, which brings Florida Bar Rule issues into fruition) conveniently omitted the previous document for which a correction was required to be recorded.  There are numerous markers of doc-ument manufacturing.**

**(LPS EX. 4) CFN#2014051148, electronically recorded on 04-11-2014**
**Return to: Document Control Department**
**Loancare, A Division of FNF Servicing, Inc. (P. O. Box 8068, Virginia Beach, VA 23450)**
**Signor: Sonja R. Lawson (allegedly an employee of Loancare) signing as Assistant Secre-tary of MERS, as nominee for**
**Notary: Dawn L. Kretchmar (Virginia Notary Commission #7518224)**
**Witnesses: No witnesses signed this document, which may be required in Florida**
**This document appears to have been prepared by Loancare employee C. J. Maag and pur-ports to assign the mortgage executed by Osceola County property owners Noel and Mari-bel Rodriguez, husband and wife, from MERS as nominee for Freedom Mortgage Corpora-tion (using a MERS-based, Flint, Michigan post office box address) to Freedom Mortgage Corporation (907 Pleasant Valley Avenue, Suite 3, Mount Laurel, NJ 08054).  It does not appear that any Freedom Mortgage Corporation officers are involved in the execution of this transaction; thus, it would appear that the signor, being different from the document creator, had no personal knowledge of what she was attesting to.**

**Based on the foregoing assignments, it still appears that there is a willingness to manufac-ture assignments despite claims to the contrary as proffered by LPS officials.  All of the network with LPS and FNF are connected with ServiceLink software platforms, thus, there are Florida RICO issues potentially present here, especially in light of DOCX's Lorraine M. Brown's five-year prison sentence.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### *Nationwide Title Clearing, Inc., Palm Harbor, Florida*

Nationwide Title Clearing, Inc. (hereinafter "NTC") is based out of Palm Harbor, Florida. It is a known document manufacturing plant. In the past, NTC has put out circulars, which are attached to this report as exhibits, to reinforce the assumptions of the examiners herein that NTC clearly engages in document manufacturing processes and further causes the recordation of said manufactured document for the purposes of effectuating assignments necessary to foreclose on real property and to "clear" title. It is a known MERSCORP member, yet its employees do not sign in the name of MERSCORP, but rather MERS.

It is interesting to note that Michael O'Connell, NTC's Chief Operations Officer, who claims to have been with the company since 2005 (at the beginning of the height of the housing boom, where robosigned documents began to permeate the real property records in every county in America), authored a 9-page "white paper" entitled, "Four Ways to use Property Records to Uncover Hidden Risks". This report is attached as an exhibit to this report. In this report, O'Connell states he is "giving step-by-step guidance on how to use property records to ensure clear title conveyance and reduce the risk of buyback or inability to foreclose."

This white paper (an office copy of which is attached hereto by reference as **NTC EX. 1**) appears to disclose O'Connell and NTC are aware that land records need to be verified to ensure that loan servicer employees "get things right". He specifically points out that:

> "For example, physical files may have additional documents that never made it to the imaged file. The most common example is when a loan was in and out of default and attorneys prepared and potentially recorded assignments but never brought it to the servicer's attention."

While O'Connell encourages all parties participating in the assignment creation process to "verify the integrity of these documents", he appears to acknowledge that his non-lawyer firm may be giving legal advice to attorneys, which (1) would constitute unauthorized practice of law; and (2) implies that NTC is aware that "too many cooks spoil the broth" (meaning "the left hand doesn't know what the right hand is doing" when it comes to slandering chains of title of the affected borrowers by the current inept practices of servicers in relation to document manufacturing, something NTC claims it's good at. O'Connell also insists that Borrowers are "in and out of default" when O'Connell arguments cater to the vagueness and ambiguity of what constitutes a default and further fails to disclose what pooling and servicing agreements require when a missed payment occurs. Further, many servicers tell borrowers to "stop making payments for 90 days" for good reason. Most pooling and servicing agreements of the REMIC trusts that were set up require the Master Servicer of the trust to make the borrower's missed payment, so the borrower is never actually in default. The second piece of "truth" here is that if the borrower's loan is "fractionalized" or split up into pieces, the loan could be divided into ten pieces and 1/10th of each piece could be placed into a separate tranche of the same REMIC trust.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In the alternative, 1/10th of each piece could be placed into different tranches in different REMIC trusts altogether, which means that if the REMICs are structured properly, they will all simultaneously collapse when all of the 1/10th pieces "default" due to the resetting of the adjustable rate, predatory mortgage loans being put into the marketplace as subprime paper. In this instance, after the 90-day period expires (on Day 91), the REMIC then could go to the insurer holding the credit default swap and demand payment in full, which would result in the Borrower's loan balance being reduced to zero. Further, in the event of foreclosure, multiple entities could claim ownership interests in the note and thus, the real "boss of the note" would not be present with "person entitled to enforce" ("PETE") status.

It would appear that the Borrower's loan is actually never in default when it comes to the Generally Accepted Accounting Practices (hereinafter "GAAP") of the REMIC trusts, provided the REMICs have actually complied with all of the terms of their respective pooling and servicing agreements, as well as with IRS regulations promulgated under 17 CFR 210, 228, 229 et seq.

The banks, which represent a majority of the sponsor-sellers in the REMIC transactions do not want the borrowers bringing this up in court.  The banks will advise their attorneys to thwart examination of GAAP within the trust pool, claiming it's not the borrowers' "standing" to be able to be a party to the trust transaction.  Yet it's the borrowers' signed promissory notes that are guaranteeing the performance of the trust pool of loans, if they ever made the REMICs in the first place.

The examiners and author of this report do not believe these loans were properly placed because the actual recordation of the assignments did not take place until after the alleged "default" occurred and the servicers commenced foreclosure proceedings to take properties of borrowers who were never in default in the first place because the credit default swap paper paid off their loans.

Instead of releasing the loans (as there is no "condition" where under the "Release" terms of a mortgage) because the "sums due and owing were paid in full" (the covenant does NOT say "by the Borrower", it could come from any third-party source, including a credit default swap, LPMI payment, title policy payment or any other insurance transaction designed to pay the account in full upon a missed payment being applied to the pool of loans or a fraction of each loan thereof), the servicer handling the collateral loan file would immediately start foreclosure proceedings.

So O'Connell admits that there exists an "image file" but does not reference an original document anywhere in his paperwork, which could imply the information the examiners are hearing about the shredding of loan paperwork, including the original promissory notes, is true, once the loans are converted into eNotes as part of the MERSCORP member's participation in the MERS business model.  On Page 5 of the "white paper", O'Connell specifically goes into itemized detail about the matter of (at bulleted Paragraph 4), where it says, "the loan is transferred again, and another assignment is prepared from MERS to the trust".

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The PSA clearly states that the recorded assignment to the trust must include proof of local recordation in the land records PRIOR TO the closing date of the trust, which is the date that the trust certificates are issued.

To do otherwise would constitute a violation of the REMIC status, render the REMIC void (which means it is no longer tax-exempt for the purposes for which it was designed) and thus demonstrate that the loan was never properly transferred to the pool in the first place.  This is why the banks don't want the courts to know how a REMIC functions and protest any securitization arguments being presented. Thus, the Courts are not getting all of the needed information to require banks to produce a "full accounting" of the borrower's loan.  If they did, they would find that some entity may have paid the borrower's loan off in full.  Rather than deal with apparent truth, the Courts rely on attorney statements regarding, "the borrower just wants a free and clear house, your Honor" or in the alternative, "the borrower is in default, your Honor", when counsel may be aware that the borrower's note was paid in full because it was securitized.  So the bank and the parties to the trust, using the borrower's personal identifying information, place it into the MERS database knowing that the loans (or fractionalized parts thereof) were never in default in the first place.

This scenario goes to the core of the belief as to the fact that the servicing entities are recording false and misrepresentative assignments in the real property records of not just Osceola County, Florida, but into every other county land record in America.  This includes document manufacturing mills like NTC and Ocwen.

Further, since the discovery of robosigning came into the public spotlight, Lisa Madigan, Attorney General for the People of the State of Illinois, filed suit for injunctive relief against NTC, asserting that:

> (1) NTC violated the Consumer Fraud Act and the Uniform Deceptive Trade Practices Act by creating signing and recording fraudulent documents in the land records throughout the counties in the State of Illinois;

> (2) Inter alia, said recorded documents utilized the MERS System, they were alleged to claim that both the mortgage and note were transferred when in fact, only the mortgage was transferred; and

> (3) Documents generated by NTC were alleged to have been signed by NTC employees who had no personal knowledge of the facts they were attesting to.

NTC CEO John Hillman executed a Final Consent Order on October 15, 2013, agreeing to certain conditions, which were approved by the Cook County, Illinois Court on October 21, 2013.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Part of the Consent Order required a one-time payment of $350,000.00 to the State of Illinois by NTC as part of the settlement of this matter. The Consent Order further binds NTC to certain conditions for a prescribed period of time.  An office copy of this Consent Order is attached as referenced herein as **NTC EX. 2**.

Upon review of documents generated by NTC during the time period allotted in the Forensic Examination, dozens of Osceola County, Florida recorded real property files were reviewed.   Of particular interest in the scenario surrounding the behaviors of NTC, it was discovered that many of the recorded documents were generated by certain document preparers at NTC, but were not executed by NTC employees.  These documents are also listed within the framework of this examination because they effect real property in Osceola County, Florida.

The notaries at NTC may or may not be directly involved with the signors or "signing-in-charge" employees; however, a certain number of notaries do appear in the forensic review of these documents.   The notaries who are acknowledging these signatures are required to keep a notary journal according to Florida Statutes Annotated Chapter 117 et seq.  It is highly likely that these journals, if in fact they are indeed kept, have been manipulated to assert mass signings, as several signors at NTC have been deposed.

Partial deposition videos have been recovered onto USB flash drive and are included, along with all previous depositions taken in writing, if applicable, and are provided as exhibits to this report by reference herein.

Because of the cubicle spacing admitted to by certain deponents in deposition, it is highly unlikely that the notary acknowledging the documents being recorded in the official real property records of Osceola County, Florida were physically witnessed the signors affixing their signatures to the documents. The same scenario is believed to still exist at NTC wherein document preparers like "E. (Erika) Lance" continue to prepare documents using the same parameters as previously discussed herein, wherein none of the signing parties had personal knowledge of the contents to which they were attesting by signature.

An office copy of her 60-page deposition is attached by reference hereto as **NTC EX. 3** and specific sections are highlighted in yellow to identify potential third-party "hearsay" issues with the transmittal of information through her computer software platform and also as to the lack of knowledge of the signors of the information contained in the Assignments of Mortgage they are affixing their signatures to.  If this practice is found to be ongoing, it would in effect be in violation of the Illinois Consent Order.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The following is a listing of 20 documents prepared by NTC's **"E. (Erika) Lance"** for execution by **JPMorgan Chase Bank, N.A.** employees (via an apparent contract with Chase):

**(NTC EX. 4) CFN#2012021534, recorded by presentment on 02-14-2012**
**Return To: JPMorgan Chase Bank, N.A.**
**c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Shaquita Knox (believed to be a Chase employee) as Vice President of Chase. The document purports to assign a mortgage (with all interest therein) from the defunct entity's liquidation trust to a closed J. P. Morgan Alternative Loan Trust 2007-A1 REMIC trust.**
**Notary: Angela Ruth Payne (Notary ID #60422; lifetime commission)**
**Witnesses: Tina Richard, LeShona Anderson (both believed to be employees of Chase)**

**(NTC EX. 5) CFN2012083721, recorded by presentment on 06-01-2012**
**Return To: JPMorgan Chase Bank, N.A.**
**c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Ingrid Whitty (who claims to be a Vice President of MERS as nominee for Resmae Mortgage Corporation), issuing a release of lien which may constitute the unauthorized practice of law.**
**Notary: Amy Gott (Louisiana Notary Commission No. is illegible; lifetime)**
**Witnesses: Jonita Johnson-Carter, George Standifer**
**This Satisfaction of Mortgage is based on a MERS-originated mortgage (and note) executed by Alex Grigoryev and recorded in the real property records of Osceola County, Florida as on 12-16-2005 in favor of Resmae Mortgage Corporation (CFN#2005278448). Only the notary (Joaquin Colon) witnessed the mortgage.**

At this juncture, there are prevalent issues with the chain of title, to wit:

**(1) In 2008, the Law Office of Marshall C. Watson, by and through its attorney, Nathalie F. Demesmin, prepared a document for signing by Chase employees at Chase's main headquarters in Columbus, Ohio.  The intent was to foreclose on the property in the name of Chase Home Finance, LLC;**

**(2)  The Assignment was signed by known robosignor Christina Trowbridge, who claimed to be a Vice President of MERS when in fact, she was an employee of Chase, who for all intents and purposes directed Trowbridge (no other witnesses) to sign the document which the examiner believes contains false and misrepresentative information (CFN#2008183434). This assignment has no effective date (left blank), a marker of document manufacturing;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) The Marshall C. Watson law firm filed a Notice of Lis Pendens on the property by and through their attorney representative, Natalie S. Pappas (FBN 26721) for attorney Karen A. Thompson (FBN96440) on November 17, 2006, on behalf of U. S. Bank, N.A. as Trustee for a Lehman Brothers 2006-BC2 REMIC trust (CFN#2006277877).  At this point in the Borrower's chain of title, the Lis Pendens appears to have slandered title to the property because there was no action taken even though a case number had been assigned (2006 CI 2697 MF).  The apparent cloud on title exists because there was no recorded assignment to the Lehman Brothers REMIC trust in the real property records as noted;**

**(4) In 2008, the Marshall C. Watson law firm filed another Notice of Lis Pendens on the property by and through its attorney representative April Glover Harriott (FBN37547), recorded by presentment as CFN#2008159526 on 10-06-2008, claiming to represent Chase Home Finance, LLC;**

**(5) It is evident to the examiner that Chase employees and E. Lance from NTC had no prior knowledge of the facts in the chain of title because the Satisfaction was drafted and signed naming MERS as nominee for the original lender, when in fact, the mortgage and note were assigned to Chase Home Finance, LLC which was NOT listed on the Satisfaction of Mortgage document.  Instead, Chase employees executed the Satisfaction (with no apparent attorney assistance) and further appear to have clouded the Borrower's chain of title by recording a release of lien from a party that was not entitled to issue such a release.**

**Thus, there are issues with the chain of title and the numerous potential clouds that exist on it, due solely to document manufacturing and what appears to be unauthorized practice of law issues due to the lack of attorney supervision on the Satisfaction of Mortgage.  Had an attorney examined the release, it would have been noted that Chase Home Finance, LLC was the alleged party in interest at the time.  As a result, the borrower, whose title appears to have been slandered, is now stuck with these issues until he can quiet his title.**

**(NTC EX. 6) CFN#2012084152, recorded by presentment on 06-01-2012
Document Prepared by: Erika Lance, Nationwide Title Clearing ("NTC") in Palm Harbor, Florida.  After recording, the document was returned to Chase c/o NTC in Florida.
Signer: LeShonda Anderson, who claims she is a Vice President of MERS as nominee for Pulte Mortgage LLC., who appears to attempt a self-assignment to her employer (Chase).
Notary: Angela Ruth Payne (Louisiana Lifetime Notary Commission No. 60422)
Witnesses: LaQuina Wilson Doaty, Sandy Wells**

**There are numerous issues with this Assignment, to wit:**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(1) The notary is attesting to the "authorized capacities" of the signers, which is at best, questionable due to the lack of proof of legitimate MERS authority;

(2) JPMorgan Chase Bank, N.A. ("Chase") declares on a publicly recorded document that it is "responsible for receiving payments", in an attempt to make itself look as if it is a creditor;

(3) Erika Lance, a known third-party document manufacturer for NTC, more than likely obtained the information she relied on to prepare the document from hearsay, third-party sources;

(4) The address used to represent Pulte Mortgage LLC (which is still in business and could have prepared this document themselves, by someone with full knowledge and authority to do so) is the MERS post office box in Flint, Michigan;

(5) At the bottom of the document, just below the Document Preparer's name, are the capital letters, "EMC", which means that this defunct lender (EMC Mortgage) may be the interim funding lender that was instrumental in funding the loan (unknown to the Borrowers in this instance);

(6) The document only assigns the Mortgage.  It does NOT assign the Note.  The argument here is that the Note is "bearer paper" because it is "indorsed-in-blank"; however, the assignment is self-executing (meaning the Assignor and Assignee are one in the same party); and

(7) There is no effective date of transfer of the Note, despite what the information states on the Assignment; Assignments are NOT self-authenticating.


(NTC EX. 7) CFN#2012084641, recorded by presentment on 06-04-2012
Document Prepared by: Erika Lance, Nationwide Title Clearing ("NTC") in Palm Harbor, Florida.  After recording, the document was returned to Chase c/o NTC in Florida.
Signer: Tina Richard, who claims she is a Vice President of MERS as nominee for the now-defunct American Mortgage Network, who appears to attempt an of the Mortgage only to a closed WaMu 2006-5 REMIC trust.
Notary: Eva Reese (Louisiana Lifetime Notary Commission No. 17070)
Witnesses: Pearl M. Burch, LeShonda Anderson
There are numerous issues with this Assignment, to wit:

(1) The notary is attesting to the "authorized capacities" of the signers, which is at best, questionable due to the lack of proof of legitimate MERS authority;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(2) JPMorgan Chase Bank, N.A. ("Chase") declares on a publicly recorded document that it is "responsible for receiving payments", in an attempt to make itself look as if it is a creditor;

(3) Erika Lance, a known third-party document manufacturer for NTC, more than likely obtained the information she relied on to prepare the document from hearsay, third-party sources;

(4) The address used to represent the now-defunct American Mortgage Network is the MERS post office box in Flint, Michigan;

(5) At the bottom of the document, just below the Document Preparer's name, are the capital letters, "WAMU", which means that this defunct lender (Washington Mutual Bank, FA) may be the interim funding lender that was instrumental in funding the loan (unknown to the Borrowers in this instance);

(6) The document only assigns the Mortgage.  It does NOT assign the Note.  The argument here is that the Note is "bearer paper" because it is "indorsed-in-blank"; however, the assignment brings into question the validity of the transfer of BOTH the Mortgage and the Note, because the effective date of transfer of the Assignment violates the PSA, which shows a Closing Date for this REMIC trust as June 29, 2006, which contravenes New York trust law and is thus void; and

(7) There is no effective date of transfer of the Note, despite what the information states on the Assignment; Assignments are NOT self-authenticating.

(NTC EX. 8) CFN#2012093381, recorded by presentment on 06-21-2012
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Latoshia Brazil (believed to be a Chase employee) as Vice President, using attorney-in-fact status granted by New Century Liquidating Trust, Successor-in-Interest to New Century Mortgage Corporation (now defunct).
The document purports to assign a mortgage (with all interest therein) from the defunct entity's liquidation trust to a closed Morgan Stanley ABS Capital I Trust 2004-HE6 REMIC trust.
Notary: Helen P. Tubbs (Notary ID #40392; lifetime commission)
Witnesses: Erin Auger, Tanika L. Green (both believed to be employees of Chase)

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(NTC EX. 9) CFN#2012099825, recorded by presentment on 07-06-2012
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Toni Boland (believed to be a Chase employee) as Vice President of MERS as nom-inee for Suntrust Mortgage. The document purports to assign a mortgage (with all interest therein) from MERS to Chase in an apparent self-assignment using its own employees.
Notary: Helen P. Tubbs (Notary ID #40392; lifetime commission)
Witnesses: Iquisha J. Criff, Erin Auger (both believed to be employees of Chase)

(NTC EX. 10) CFN#2012101346, recorded by presentment on 07-10-2012
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: LeShonda Anderson (believed to be a Chase employee) as Vice President of JP-Morgan Chase as successor by merger to Chase Home Finance LLC. The document pur-ports to assign a mortgage (with all interest therein) from Chase to a closed Morgan Stan-ley Home Equity Loan Trust 2005-3 REMIC trust.
Notary: Angela Ruth Payne (Notary ID #60422; lifetime commission)
Witnesses: Tobias Bryant, Shaquita Konx (both believed to be employees of Chase)

(NTC EX. 11) CFN#2012105199, recorded by presentment on 07-17-2012
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Kadesha Slaughter (believed to be a Chase employee) as Vice President of FDIC as receiver of Washington Mutual Bank, Successor in Interest to Long Beach Mtg. Co., its at-torney-in-fact. This document purports to assign a mortgage from the FDIC to a closed Long Beach Mortgage 2006-4 REMIC trust.
Notary: Helen P. Tubbs (Notary ID #40392; lifetime commission)
Witnesses: Erin Auger, R. Quintessa (?; illegible last name)
CFN#2013004592, recorded by presentment on 01-09-2013
Return To: Choice Legal Group, P.A. (1800 NW 49th St., #120, Fort Lauderdale, FL 33309)
Signor: Joseph Krupa (believed to be a Chase employee in Columbus, Ohio) as Assistant Secretary of MERS as nominee for now-defunct Columbia Home Loans LLC to a closed Bear Stearns Securities I 2007-HE3 REMIC trust.
Notary: Tricia L. Cross (Ohio Notary Commission Expires 08-01-2016)
Witnesses: (first name illegible), Timothy R. Bunce (believed to be Chase employees in Columbus, Ohio)

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(NTC EX. 12) CFN#2012130623, recorded by presentment on 09-07-2012
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Kadesha Slaughter (alleged Chase employee) purporting to sign as Vice President of MERS as nominee for SunTrust Mortgage, Inc. in an apparent self-assignment to Chase, following which foreclosure proceedings were commenced as referenced under the Ablitt-Scofield cases files in § Five of this report (2013 CA 3718 MF)
Notary: Helen P. Tubbs (Notary ID #40392; lifetime commission)
Witnesses: Iquisha J. Criff, Jalessa T. Moore

(NTC EX. 13) CFN#2012165416, recorded by presentment on 11-08-2012
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Latoshia S. Brazil (alleged Chase employee) purporting to sign as Assistant Secretary for MERS as nominee for Freedom Mortgage Corporation in a self-assignment to Chase, following which foreclosure proceedings were commenced.
Notary: Helen P. Tubbs (Notary ID #40392; lifetime commission)
Witnesses: Ashley P. Clegg, Vernita L. Causey

NTC EX. 14) CFN#2013004592, recorded by presentment on 01-09-2013
Return To: JPMorgan Chase Bank, N.A. (P. O. Box 8000, Monroe, LA 71203)
Signor: Joseph Krupa (believed to be a Chase employee) as Assistant Secretary of MERS as nominee for the defunct Columbia Home Loans LLC. The document purports to assign a mortgage (with all interest therein) from MERS to a closed Bear Stearns Securities I 2007-HE3 REMIC trust.
Notary: Tricia L. Cross (Ohio Notary Commission Expires 08-01-2016)
Witnesses: First witness signature illegible, Timothy R. Bunce (both believed to be employees of Chase)

(NTC EX. 15) CFN#2013011413, electronically recorded on 01-18-2013
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Toni Boland (believed to be a Chase employee) as Assistant Secretary of MERS as nominee for the defunct Bear Stearns. The document purports to assign a mortgage (with all interest therein) from MERS to a closed Bear Stearns Securities I 2007-HE1 REMIC trust.
Notary: Helen P. Tubbs (Notary ID #40392; lifetime commission)
Witnesses: Vernita L. Causey, Erin Auger (both believed to be employees of Chase)

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(NTC EX. 16) CFN#2013015332, electronically recorded on 01-29-2013**
**Return To: JPMorgan Chase Bank, N.A.**
**c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Kaila A. Murphy (believed to be a Chase employee) as Assistant Secretary of MERS as nominee for now defunct Quick Loan Funding, Inc.  The document purports to assign a mortgage (with all interest therein) from MERS to a closed Bear Stearns Securities I 2006-HE6 REMIC trust.**
**Notary: Eva Reese (Notary ID #17070; lifetime commission)**
**Witnesses: Shaquita Knox, Sandy N. Wells (both believed to be employees of Chase)**

**(NTC EX. 17) CFN#2013015334, electronically recorded on 01-29-2013**
**Return To: JPMorgan Chase Bank, N.A.**
**c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Shaquita A. Knox (believed to be a Chase employee) as Assistant Secretary of MERS as nominee for now defunct Encore Credit Corp.  The document purports to assign a mortgage (with all interest therein) from MERS to a closed Bear Stearns Securities I 2006-EC1 REMIC trust.**
**Notary: Angela Ruth Payne (Notary ID #60422; lifetime commission)**
**Witnesses: Kelly McWilliams, LeShonda Anderson (both believed to be employees of Chase)**

**(NTC EX. 18) CFN#2013171010, recorded by presentment on 10-30-2013**
**Return To: Choice Legal Group, P.A. (1800 NW 49th St., #120, Fort Lauderdale, FL 33309)**
**Signor: Susan Lindhorst (believed to be an employee of the servicer, Nationstar) as Assistant Secretary of Bank of America, N.A. by Nationstar Mortgage, LLC, its attorney-in-fact. The document purports to assign a mortgage (with all interest therein) from Bank of America, N.A. to a closed Structured Asset Inv. II 2005-AR7 REMIC trust.**
**Notary: Helen Scott (Nebraska Notary Commission Expires 11-25-2016)**
**Witnesses: Angel Bolton, Angela Sanchez (both believed to be employees of Nationstar)**

**(NTC EX. 19) CFN#2013181750, electronically recorded on 11-20-2013**
**Return To: JPMorgan Chase Bank, N.A.**
**c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Kelly McWilliams (believed to be a Chase employee) as Vice President of FDIC as receiver of Washington Mutual Bank, Successor in Interest to Long Beach Mtg. Co., its attorney-in-fact. This document purports to assign a mortgage from the FDIC to a closed WaMu 2007-HE1 REMIC trust.**
**Notary: Eva Reese (Notary ID #17070; lifetime commission)**
**Witnesses: (?; illegible first name) Williams, Sara Lynn Manly**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(NTC EX. 20) CFN#2013186992, electronically recorded on 12-02-2013
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Eric M. Bird (believed to be a Chase employee) as Vice President of FDIC as receiver of Washington Mutual Bank, Successor in Interest to Long Beach Mtg. Co., its attorney-in-fact. This document purports to assign a mortgage from the FDIC to a closed Long Beach Mortgage 2006-2 REMIC trust.
Notary: Tommie J. Nelson (Notary ID #67566; lifetime commission)
Witnesses: Erin Auger, Kadesha Slaughter

(NTC EX. 21) CFN#2014046610, electronically recorded on 04-03-2014
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Sara Lynn Manly (believed to be an employee of Chase) as Vice President of FDIC as receiver of Washington Mutual Bank, Successor in Interest to Long Beach Mtg. Co., its attorney-in-fact. This document purports to assign a mortgage from the FDIC to a closed Long Beach Mortgage 2004-4 REMIC trust.
Notary: Eva Reese (Notary ID #17070; lifetime commission)
Witnesses: Kaila A. Murphy, Mark B. Eaton

(NTC EX. 22) CFN#2014074677, electronically recorded on 05-28-2014
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Iquisha J. Criff (believed to be an employee of Chase) as Assistant Secretary of MERS as nominee for Residential Acceptance Corporation. This document purports to assign a mortgage from the foregoing entity to Chase it what appears to be a self-assignment. This document appears to have been fabricated from an NTC template.
Notary: Todd C. Sylvester (Notary ID #62367; lifetime commission)
Witnesses: Latoshia S. Brazil, Barbara Watkins

(NTC EX. 23) CFN#2014079072, recorded by presentment on 06-05-2014
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Ingrid Whitty as Vice President of JPMorgan Chase Bank, N.A., based on a second mortgage loan that may have been self-assigned from Chase Manhattan Mortgage Corporation to the current Chase entity for the purposes of releasing a second mortgage loan (as of May 22, 2014) which was tied to a closed foreclosure proceeding against Emilia Hoy and her husband, Jaime. This document appears to have been fabricated from an NTC template without attorney supervision, which may constitute unauthorized practice of law.
Notary: Bridget A. Chunn (Notary ID #54479; lifetime commission)
Witnesses: Amy Kight, Chastity A. Newsome

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The following is a listing of 6 documents prepared by NTC's Erika Lance for execution by other alleged "lenders" or "servicers", executed in reality by NTC employees and NOT employees of the alleged "lenders" or "servicers", namely, Green Tree Servicing, LLC; Specialized Loan Servicing, Inc.; or Nationstar Mortgage, LLC (there may be felony UPL issues here):

**(NTC EX. 24) CFN#2012084117, recorded by presentment on 06-01-2012**
**Return To: Green Tree Servicing LLC**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Derrick White (alleged NTC employee), signing as Assistant Secretary of MERS as nominee for already-subsumed Countrywide Bank, FSB, as Assignor (using MERS's Flint, Michigan post office box to hide the real Assignor's presence); to Green Tree Servicing LLC (as Assignee; apparently at Green Tree's request) of the Mortgage ONLY (attached for reference).**
**Notary: Miranda Avila (Florida Notary Commission EE 019063; expires 08-22-2014)**
**Witnesses: Debra Goyer, Shay Mossing (alleged NTC employees)**
**NOTE: See *Section Six*, Case No. 91 (Rodriguez) for reference**

**(NTC EX. 25) CFN#2012084118, recorded by presentment on 06-01-2012**
**Return To: Green Tree Servicing LLC**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Derrick White (alleged NTC employee), signing as Assistant Secretary of MERS as nominee for then-subsumed Countrywide Home Loans, Inc., as Assignor (using MERS's Flint, Michigan post office box to hide the real Assignor's presence); to Green Tree Servicing LLC (as Assignee; apparently at Green Tree's request) of the Mortgage ONLY (attached for reference).**
**Notary: Miranda Avila (Florida Notary Commission EE 019063; expires 08-22-2014)**
**Witnesses: Debra Goyer, Shay Mossing (alleged NTC employees)**

**(NTC EX. 26) CFN#2012084119, recorded by presentment on 06-01-2012**
**Return To: Green Tree Servicing LLC**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Derrick White (alleged NTC employee), signing as Assistant Secretary of MERS as nominee for then-defunct KB Home Mortgage Company, as Assignor (using MERS's Flint, Michigan post office box to hide the real Assignor's presence); to Green Tree Servicing LLC (as Assignee; apparently at Green Tree's request) of the Mortgage ONLY (attached for reference).**
**Notary: Miranda Avila (Florida Notary Commission EE 019063; expires 08-22-2014)**
**Witnesses: Debra Goyer, Shay Mossing (alleged NTC employees)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(NTC EX. 27) CFN#2012084129, recorded by presentment on 06-01-2012**
**Return To: Green Tree Servicing**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Derrick White (alleged NTC employee), signing as Assistant Secretary of MERS as nominee for still active Ryland Mortgage Company, as Assignor (using MERS's Flint, Michigan post office box to hide the real Assignor's presence); to Green Tree Servicing LLC (as Assignee; apparently at Green Tree's request) of the Mortgage ONLY (attached for reference).**
**Notary: Miranda Avila (Florida Notary Commission EE 019063; expires 08-22-2014)**
**Witnesses: Debra Goyer, Shay Mossing (alleged NTC employees)**

**(NTC EX. 28) CFN#2013004525, recorded by presentment on 01-09-2013**
**Return to: Specialized Loan Servicing**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Barry Coon (purporting to be an Assistant Vice President of Bank of New York Mellon as Successor to JPMorgan Chase as Trustee for Terwin Mortgage Trust 2006-6 as its attorney-in-fact and NOT as an Affiant attesting to any facts therein.**

**This document purports declare a lost assignment which if recorded would have assigned a mortgage from Argent Mortgage Company, LLC to said 2006-6 closed REMIC trust nearly seven (7) years later. The affidavit admits to breaks in the chain of title, claiming "at least one assignment between" the two parties is missing, when in fact, there should only be one, properly-recorded assignment. Despite the claims made at the bottom of the document, this document is not self-authenticating. There is no possible way the alleged "affiant" has the knowledge of this transaction he claims to possess; thus, this document would constitute a violation of Florida Criminal Code § 817.535.**
**Notary: Jackie Hartman (Colorado Notary Commission #199340111619); no witnesses.**

**(NTC EX. 29) CFN#2013138857, electronically recorded on 09-03-2013**
**Return To: Nationstar Mortgage, LLC**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Tyler Driver (alleged NTC employee), signing as Vice President of Loan Documentation for Aurora Loan Services LLC, as Assignor (using Nationstar Mortgage, LLC's address in Lewisville, Texas); to assign the Mortgage ONLY to Nationstar (as Assignee; apparently at Nationstar's request). Driver signs for Nationstar as Aurora's attorney-in-fact.**
**Notary: Nicole Baldwin (Florida Notary Commission EE 222285; expires 09-05-2016)**
**Witnesses: Daniel Thompson, Jessica Sheetz (alleged NTC employees)**
**NOTE: See *Section Six*, Case No. 49 (Cardenas) for reference.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(NTC EX. 30) CFN#2013150622, electronically recorded on 09-23-2013**
**Return To: Nationstar Mortgage, LLC**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Tyler Driver (alleged NTC employee), signing as Assistant Secretary of MERS (using MERS's Flint, Michigan post office box address as a cover) for then-defunct Home First Funding, LLC, as Assignor; to assign the Mortgage ONLY to Nationstar (as Assignee; apparently at Nationstar's request).**
**Notary: Nicole Baldwin (Florida Notary Commission EE 222285; expires 09-05-2016)**
**Witnesses: Daniel Thompson, Jessica Sheetz (alleged NTC employees)**
**NOTE: See *Section Six*, Case No. 47 (Hoa Ti Do, Tho Duc Do) for reference.**

**(NTC EX. 31) CFN#2013150625, electronically recorded on 09-23-2013**
**Return To: Nationstar Mortgage, LLC**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Tyler Driver (alleged NTC employee), signing as Assistant Secretary of MERS (using MERS's Flint, Michigan post office box address as a cover) for then-defunct Fidelity Mortgage Services, Inc., as Assignor; to assign the Mortgage ONLY to Nationstar (as Assignee; apparently at Nationstar's request).**
**Notary: Nicole Baldwin (Florida Notary Commission EE 222285; expires 09-05-2016)**
**Witnesses: Daniel Thompson, Jessica Sheetz (alleged NTC employees)**

**(NTC EX. 32) CFN#2013151488, electronically recorded on 09-24-2013**
**Return To: Green Tree Servicing LLC**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Nadine Homan (alleged NTC employee), signing as Assistant Secretary of MERS as nominee for never Florida-registered America's Wholesale Lender, as Assignor (using MERS's Flint, Michigan post office box to hide the real Assignor's presence); to Green Tree Servicing LLC (as Assignee; apparently at Green Tree's request) of the Mortgage ONLY (attached for reference; George and Debra Kushner).**
**Notary: Nicole Baldwin (Florida Notary Commission EE 222285; expires 09-05-2016)**
**Witnesses: Daniel Thompson, Jessica Sheetz (alleged NTC employees)**
**NOTE: See *Bank of America, N.A. v. Linda Nash* (see Summary, *Section Seven*); also, this property was foreclosed on by the homeowner's association (2014 CC 0533).**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(NTC EX. 33) CFN#2013158076, electronically recorded on 10-04-2013**
**Return To: Green Tree Servicing LLC**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Kimberly Nance (alleged NTC employee), signing as Vice President of Green Tree**
**Servicing LLC (as Assignor; apparently at Green Tree's request); declaring full satisfaction**
**of the Rodriguez's MERS-originated Mortgage.**
**Notary: Nicole Baldwin (Florida Notary Commission EE 222285; expires 09-05-2016)**
**Witnesses: Payson Gibson, Susan Schotsch (alleged NTC employees)**
**NOTE: See *Section Six*, Case No. 91 (Rodriguez) for reference; this Satisfaction was more**
**than likely NOT supervised by an attorney and may constitute probable cause for UPL.**

**(NTC EX. 34) CFN#20131186869, recorded by presentment on 11-27-2013**
**Return To: Nationstar Mortgage, LLC**
**C/O 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Kristina Emmanouil (alleged NTC employee), signing as Vice President of Loan**
**Documentation for Aurora Loan Services LLC, as Assignor (using Nationstar Mortgage,**
**LLC's address in Lewisville, Texas); to assign the Mortgage ONLY to a closed LXS**
**2006-18N REMIC trust, as Aurora's attorney-in-fact.**
**Notary: Nicole Baldwin (Florida Notary Commission EE 222285; expires 09-05-2016)**
**Witnesses: Daniel Thompson, Jessica Sheetz (alleged NTC employees)**
**NOTE: See *Section Six*, Case No. 9 (Botella) for reference**

**(NTC EX. 35) CFN#2014033228, electronically recorded on 03-07-2014**
**Signer: Kimberly Samonte (alleged NTC employee), claiming to sign as Assistant Secretary**
**of MERS as nominee for Florida-unregistered America's Wholesale Lender attempting to**
**declare that a Mortgage and Note have been satisfied by Green Tree Servicing, LLC, which**
**may constitute unjust enrichment if the Note and Mortgage were declared invalid ab initio**
**by Judge Pleus in another case in Seminole County, Florida.**
**Notary: Tonya L. Tejera (Florida Notary Commission EE 849072; expires 02-25-2017)**
**Witnesses: Kristin Price, Heather Navarro (also alleged NTC employees)**
**NOTE: See *Section Six*, Case No. 62 (Alamo) for reference; see also *Bank of America, N.A.***
***v. Linda Nash* (see Summary, *Section Seven*)**

**(NTC EX. 36) CFN#2014048386, electronically recorded on 04-07-2014**
**Return To: Green Tree Servicing LLC c/o Nationwide Title Clearing**
**2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Tyler Driver (purporting to be an NTC employee) as Assistant Secretary of Pulte**
**Mortgage, LLC. This document purports to assign a mortgage from the foregoing entity to**
**Green Tree Servicing LLC.  The signors are believed to have no personal knowledge of that**
**fact, despite their written claims.**
**Notary: Nicole Baldwin (Florida Notary Commission #EE222285)**
**Witnesses: Kristopher Sandberg, Matthew Gaylor**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(NTC EX. 37) CFN#2014052774, electronically recorded on 04-16-2014**
**Return To: Green Tree Servicing LLC c/o Nationwide Title Clearing**
**2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Tyler Driver (purporting to be an NTC employee) as Assistant Secretary of now-defunct Countrywide Home Loans, Inc. This document purports to assign a mortgage from the foregoing entity to Green Tree Servicing LLC. The signors are believed to have no personal knowledge of that fact, despite their written claims.**
**Notary: Nicole Baldwin (Florida Notary Commission #EE222285)**
**Witnesses: Daniel Thompson, Nadine Homan**


**(NTC EX. 38) CFN#2014053523, electronically recorded on 04-17-2014**
**Return To: Green Tree Servicing LLC c/o Nationwide Title Clearing**
**2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Nadine Homan (purporting to be an NTC employee) as Assistant Secretary of MERS for GMAC Mtg. Corp. (currently in Chapter 11 bankruptcy) DBA Ditech.com. This document purports to assign a mortgage from the foregoing entity to Green Tree Servicing LLC. The signors are believed to have no personal knowledge of that fact, despite their written claims.**
**Notary: Nicole Baldwin (Florida Notary Commission #EE222285)**
**Witnesses: Daniel Thompson, Tyler Driver**


**(NTC EX. 39) CFN#2014054203, electronically recorded on 04-21-2014**
**Return to: CitiFinancial, Inc. C/O Nationwide Title Clearing, Inc.**
**2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Tyler Driver (purporting to be an NTC employee) as Vice President of CFNA Receivables, Inc. This document purports to assign a mortgage from the foregoing entity to CVI Loan GT Trust I REMIC trust. (None of the parties likely know any of the details.)**
**Notary: Nicole Baldwin (Florida Notary Commission #EE222285)**
**Witnesses: Kristopher Sandberg, Robert Vercellini**


**(NTC EX. 40) CFN#2014073685, electronically recorded on 05-27-2014**
**Return to: Nationstar Mortgage LLC**
**C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Daniel Thompson (purporting to be an NTC employee) as Vice President of Loan Documentation for closed First Horizon FH05-AA3 REMIC trust by Nationstar as attorney-in-fact. This document purports to assign a mortgage from the foregoing closed FH05-AA3 REMIC trust to another closed FHASI 2003-10 REMIC trust.**
**Notary: Nicole Baldwin (Florida Notary Commission #EE222285)**
**Witnesses: Tyler Driver, Nadine Homan**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(NTC EX. 41) CFN#2014073712, electronically recorded on 05-27-2014**
**Return to: Nationstar Mortgage LLC**
**C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Daniel Thompson (purporting to be an NTC employee) as Vice President of Loan Documentation for closed First Horizon FH05-AA3 REMIC trust by Nationstar as attorney-in-fact. This document purports to assign a mortgage from the foregoing closed FH05-AA3 REMIC trust to another closed FHASI 2003-10 REMIC trust.**
**Notary: Nicole Baldwin (Florida Notary Commission #EE222285)**
**Witnesses: Tyler Driver, Nadine Homan**

There appears to be some concern by the Examiners as to whether or not the statute of limitations would be enforceable as to a felony count under Florida Criminal Code § 817.535 relative to a Satisfaction of Mortgage that was recorded on July 14, 2010 on an issue that was apparently "forced" to be resolved in lieu of a foreclosure action. The case at bar is *Section Six*, Case No. 25 (Bassett) wherein it appears that the property was paid in full and this involves the apparent claim by JPMorgan Chase Bank, N.A. that it acquired the Bassett's loan, which is still in dispute, based on the ***Nardi Deposition***, included in the USB drive as an Exhibit herein by reference.

The second questionable case involves an undisclosed CitiMortgage, Inc./Fannie Mae relationship that was not made manifest until the Assignment of Mortgage was recorded by NTC. The loan was released via **CFN#2013139073** on 09-04-2013 (see ***Security Connections*** heading).

The two questionable listings may involve transfers and assignments that were improper and may have resulted in, at best, unjust enrichment, which would fall under the Florida Criminal Code § 817.535 as to the deprivation of property through the use of a recorded Instrument; at least, the two documents shown below were more than likely done by unsupervised non-lawyers, which may constitute probable cause for felony unauthorized practice of law.

**(NTC EX. 42) CFN#2010100545, recorded by presentment on 07-14-2010**
**Return To: Nationwide Title Clearing, Inc.**
**2100 Alt 19 North, Palm Harbor, FL 34683**
**Document Prepared by: "J. Lesinski" (alleged NTC employee)**
**Signer: Bryan Bly (known NTC employee and alleged robosigner), claiming to be a Vice President of JPMorgan Chase Bank, N.A. Successor by Merger to Washington Mutual Bank FKA Washington Mutual Bank, FA, as Assignor, in initiating a Satisfaction of Mortgage to David and Beverley Bassett (*Section Six*, Case No. 25), as Assignee (after Chase filed suit to foreclose (through Shapiro & Fishman, LLP); no proof that Chase actually got the Note); filing suspect for UPL issues (appears to be a forced settlement; unjust enrichment?)**
**Notary: Crystal Moore (also known robosigner and NTC employee; Florida Notary Commission No. DD 927242; expired on 09-23-2013)**
**Witness: Vilma Castro (two witnesses may be required on a reconveyance)**
**NOTE: This document appears to still be within the statute of limitations for prosecution.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(NTC. EX. 43) CFN#2010184269, recorded by presentment on 12-08-2010**
**Return to: CitiMortgage, Inc.**
**C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signer: Bryan Bly (allegedly an NTC employee), claiming to be a Vice President of Citi-Mortgage, Inc., using a heading belonging to IBM Lender Business Process Services, Inc. (in Beaverton, Oregon; formerly belonging to Wilshire Credit Corporation)., as Assignor; attempting to assign the Mortgage (only) to Fannie Mae, using its Midwest Regional Center address in Dallas, Texas, followed by the MERS post office box in Flint, Michigan, as Assignee.**
**Notary: Crystal Moore (Florida Notary Commission No. DD 927242; expired; Moore's testimony is featured in a video deposition (along with Bly and Dhurata Doko, another NTC employee), included in the USB Exhibit package accompanying this Report.**
**Witnesses: Mary D. Sarmiento, Patricia L. Vega (also alleged NTC employees)**
**NOTE: This document appears to still be within the statute of limitations for prosecution.**

### *Ocwen Loan Servicing, LLC*

This entity has become one of the biggest loan servicers in the mortgage industry. It appears that it also comes under more scrutiny since it acquired Litton Loan Servicing, LP from Goldman-Sachs Group, Inc. in 2011 for $263.7-million. Prior to its purchase, Litton had been cooperating with the investigations by the 50 state attorneys general into faulty paperwork being used to seize homes as part of the foreclosure process. During that time, several courts, including many of the courts within the boroughs of the New York City metro area, had found fault with Ocwen's handling of loan and related servicing paperwork, especially in cases where Ocwen Vice President Scott Anderson's signature was concerned (robosigning practices). Further, there were constant legal challenges of affidavits issued by various individuals claiming to be "officers" of Ocwen, when it appears that many of the signors of the documents (many of which are included below) are given some sort of title to facilitate assignments and transfers in name only and are really Ocwen employees. The courts also appeared to detect surrogate signing practices at Ocwen.

On October 21, 2014, Reuters was reporting that Ocwen may have harmed hundreds of thousands of borrowers by sending them letters about loan modifications and foreclosures that were dated months earlier, according to New York financial regulator Benjamin Lawsky. The company, which has been under scrutiny by New York's Department of Financial Services for loan-servicing problems, denied loan modifications in letters borrowers received more than 30 days after they were mailed, according to a letter that Lawksy sent to Ocwen. Receiving the letter so late would have cut off the opportunity to appeal. The letter also maintained that Ocwen also sent backdated letters to borrowers facing foreclosure that may have left them unable to avoid default.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Reuters article also indicated that "when alerted to the backdating issues, Ocwen ignored the problem and still has not resolved the issue today", Lawsky said, demanding the company "fix its systems without delay."  This is another example of servicer abuse that ties into Ocwen's apparent money-making scheme to increase revenues through shoddy and perhaps deliberate practices. A copy of the letter from Lawsky to Ocwen is attached hereto by reference as **OCWEN EX. 1.**

*The Ocwen "Signing Team"*

In the following instances, it appears that the individuals on the "signing team" juxtapose their positions between signors, witnesses and notaries in an apparent attempt to thwart identification of specific signing patterns; however, the intent is still clear, according to **WITNESS B**, that these signors are working in tandem with each other to manufacture documents, as Ocwen employees, for Ocwen clients. Further, it is also clear that Ocwen utilizes third-party, computer data software programs which appear to generate third-party-inputted hearsay data, which the document preparers at Ocwen (separate from the signing teams), cause to be systematically transferred onto paper which is then taken to the signing teams for execution.

The examiners believe that the signing teams do not have any manner available to them in which to verify the information they are attesting to as accurate before they execute these documents.

It further appears that Ocwen may have sponsored these notary-signors as part of their employment and that there is the appearance that many of these individuals may have limited educational or vocational skills. This would certainly hold Ocwen supervisory staff accountable as to having specific knowledge of how these departments work. The notaries public that work for Ocwen however, are officers of the State and thus the examiners believe that the notaries participating in this alleged scheme should be held to a higher standard.

Also, **WITNESS B** is believed to have knowledge that Goldman-Sachs supervisory personnel are directing Ocwen's signing teams (consisting of the individuals shown below) to manufacture documents that tie Goldman-Sachs to various second mortgage loans, in potential violation of 18 USC 371, in attempting to defraud the United States government by using the manufactured documents as proof to connect the second mortgage loans to Goldman-Sachs, so it could write down the settlement figure it agreed to pay the government as part of its Consent Order.

Further, **WITNESS B** also claims that the signing teams and supervisory personnel also involve former Litton Loan Servicing employees, all of whom are being kept at "arm's length" distance from each other so that no two departments know what each other is doing at any given moment (to reduce culpability), operating (through coordinated efforts) from locations in New York, Dallas and West Palm Beach, Florida.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It further appears that once these items were recorded, they were sent to Financial Dimensions, Inc. (1400 Lebanon Church Road, Pittsburgh, PA 15236). A 24-page report on what "assistance" Financial Dimensions, Inc. provides Ocwen would account for possible third-party information (hearsay) based on other parties' research and does not account for actual personal knowledge possessed by the "signing team" at Ocwen. This report is attached as **OCWEN EX. 2** to this report and is incorporated by reference herein. Financial Dimensions may only be acting as a servicer support conduit, but also may be supplying Ocwen with the information its document preparers were utilizing on the Assignments of Mortgage and Affidavits of Lost Assignment.

It appears that the Ocwen employees involved on its "signing team" are headquartered in West Palm Beach, Florida, bringing them under the jurisdiction of the State. Ocwen is the servicer for multiple REMICs and is known to be handling document manufacturing duties for Goldman-Sachs in New York. Out of concern for **WITNESS B's** personal safety, further discussion of his involvement and knowledge is reserved for the grand jury and personal conversation's with the State's Attorney. This same group of employees (NOT OCWEN **OFFICERS** as required by MERSCORP's own policies) has been discovered by the examiners on this team to be repetitiously manufacturing assignments to REMICs known to have been unable to accept them. It is estimated that these documents (throughout the assignment target date examined) run into the thousands within the Osceola County, Florida real property records.

The following 42 items are presented in chronological order for easier reference to aid in establishing patterns of behavior within the 2-year period target period:

**(OCWEN EX. 3) CFN#2012032272, recorded by presentment on 03-07-2012**
**Document Prepared By: Nadine Alvarez (alleged Ocwen Loan Servicing LLC employee)**
**Signer: Noemi Morales (also an alleged Ocwen Loan Servicing LLC employee), signing as Assistant Secretary of MERS (the language within the Assignment dictates that MERS is a nominee for Taylor Bean & Whitaker ("TB&W"); using a MERS Flint, MI address to misrepresent the real address of defunct TB&W), as Assignor to the trust REMIC Plaintiff, as Assignee.**
**Notary: Cory Messer (Florida Notary Commission No. EE 097259; expires 05-25-2015)**
**Witnesses: Christina T. Daugirdas (known Ocwen document preparer), Vanessa Pino (known Ocwen employee)**


**(OCWEN EX. 4) CFN#2012091019, recorded by presentment on 06-15-2012**
**Signor: Yamali Martinez, Assistant Secretary of MERS**
**Notary: Debra Spruill (EE167045)**
**Witnesses: Jasmin Vazquez, Vanessa Pino**
**This document purports to assign a mortgage from a defunct lender into a closed Goldman Sachs (GSAMP) 2006-FM2 REMIC trust.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(OCWEN EX. 5) CFN#2012099183, electronically recorded on 07-03-2012**
**Signor: Yamali Martinez, Assistant Secretary of MERS**
**Notary: Debra Spruill (EE167045)**
**Witnesses: Vanessa Pino, Naomi Smith**
**This document purports to assign a mortgage from a defunct lender to a closed Goldman-Sachs (GSAMP) 2006-FM2 REMIC trust.**

**(OCWEN EX. 6) CFN#2012099265, electronically recorded on 07-03-2012**
**Signor: Yamali Martinez, Assistant Secretary of MERS**
**Notary: Debra Spruill (EE167045)**
**Witnesses: Jasmin Vazquez, Vanessa Pino**
**This document purports to assign a mortgage from a DHI Mortgage Compnay to a closed Goldman-Sachs (GSAA) 2006-15 REMIC trust.**

**(OCWEN EX. 7) CFN#2012102437, electronically recorded on 07-11-2012**
**Signor: Leticia N. Arias, Contract Manager for defunct NCMC as attorney-in-fact**
**Notary: Jami Dorobiala (DD878994)**
**Witnesses: Jasmin Vazquez, Vanessa Pino**
**This document purports to assign a mortgage from a defunct lender to a closed Goldman-Sachs (GSAMP) 2004-NC2 REMIC trust.**

**(OCWEN EX. 8) CFN#2012107638, recorded by presentment on 07-20-2012**
**Signor: Noemi Morales, Assistant Secretary of MERS**
**Notary: Jami Dorobiala (DD878994)**
**Witnesses: Jasmin Vazquez, Vanessa Pino**
**This document purports to assign a mortgage from a subsidiary of a defunct lender to a closed Soundview Home Loan 2008-1 REMIC trust.**

**(OCWEN EX. 9) CFN#2012109202, recorded by presentment on 07-24-2012**
**Signor: Noemi Morales, Sr. Contract Mgr. for Deutsche Bank as attorney-in-fact**
**Notary: Naomi Smith (EE196761)**
**Witnesses: Jasmin Vazquez, Vanessa Pino**
**This document purports to assign a mortgage from a closed Soundview Home Loan Trust 2006-EQ2 REMIC trust to the same closed Soundview Home Loan Trust 2006-EQ2 REMIC trust. This basically involves a change in the way the name of the REMIC is presented.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(OCWEN EX. 10) CFN#2013096173, electronically recorded on 06-20-2013**
**Signor: Noemi Morales, Assistant Secretary of MERS**
**Notary: Victoria Vazquez (EE 845391)**
**Witnesses: Christian J. Ferrer, Debra Spruill**
**This document purports to assign a mortgage from MERS as nominee for CIT Group/Consumer Finance, Inc. using a MERS post office box to closed C-Bass Series 2006-CB4 REMIC trust.**


**(OCWEN EX. 11) CFN#2013147542, electronically recorded on 09-18-2013**
**Signor: Clara Taberoa, Assistant Secretary of MERS**
**Notary: Cory Messer (EE 097259; active)**
**Witnesses: Harrison Whittaker, Yamali Martinez**
**This document purports to assign a Mortgage from MERS as nominee for defunct WMC Mortgage Corporation into a closed MLMI 2004-WMC5 REMIC trust.**


**(OCWEN EX. 12) CFN#2013157844,  electronically recorded on 10-04-2013**
**Signor: Noemi Morales, Assistant Secretary of MERS**
**Notary: Stephanie Simpson (EE45386)**
**Witnesses: Victoria Vazquez, Christopher Kelley**
**This document purports to assign a mortgage from a subsumed lender to an assignee that is a closed Novastar Mortgage Funding 2205-3 REMIC Trust.**


**(OCWEN EX. 13) CFN#2013160255, recorded by presentment on 10-09-2013**
**Signor: Leticia N. Arias, Assistant Secretary of MERS**
**Notary: Stephanie Simpson (EE845386)**
**Witnesses: Victoria Vazquez, Christian J. Ferrer**
**This document purports to assign a mortgage from a defunct lender to an assignee that is a closed Renaissance Home Equity Loan 2007-3.**


**(OCWEN EX. 14) CFN#2013161275, electronically recorded on 10-10-2013**
**Signor: Noemi Morales, Assistant Secretary of MERS**
**Notary: Janira Walker (EE861713)**
**Witnesses: Stephanie Simpson, Christopher Kelley**
**This document purports to assign a mortgage from a defunct lender to an assignee that is a closed Renaissance Home Equity Loan 2006-3 REMIC trust.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(OCWEN EX. 15) CFN#2013163056, electronically recorded on 10-15-2013**
**Signor: Leticia N. Arias, Assistant Secretary of MERS**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Christian J. Ferrer, Janira Walker**
**This document purports to assign a mortgage from a subsumed assignor to an assignee that is a closed 2007-1 REMIC trust.**

**(OCWEN EX. 16) CFN#2013174152, electronically recorded on 11-05-2013**
**Signor: Leticia N. Arias, Contract Mgr. for Bank of New York Mellon as attorney-in-fact**
**Notary: Debra Spruill (EE167045)**
**Witnesses: Jami Dorobiala, Jasmin Vazquez**
**This document purports to assign a mortgage from a closed Novastar 2006-1 REMIC trust to the same reworded, closed Novastar 2006-1 REMIC trust (which includes the name of JPMorgan Chase Bank, NA as Trustee) in an effort to clarify the parties on the assignment.**

**(OCWEN EX. 17) CFN#2013176848, electronically recorded on 11-12-2013**
**Signor: Noemi Elizabeth Morales, Assistant Secretary of MERS**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Derek Garrett, Jason R. Berkeley**
**This document purports to correct an assignment recorded in 2012 (CFN#2012079889). The assignor is no longer in business.  Assignee is closed 2006-3 REMIC trust.**

**(OCWEN EX. 18) CFN#2013177849, electronically recorded on 11-14-2013**
**Signor: Leticia N. Arias, Contract Manager for HSBC Bank USA as attorney-in-fact**
**Notary: Debra Spruill (EE167045)**
**Witnesses: Stephanie Simpson, Victoria Vazquez**
**This document purports to assign a mortgage from a closed Fremont Home Loan Trust 2006-D REMIC trust to the same closed Fremont Home Loan Trust 2006-D REMIC trust. This basically involves a change in the way the name of the REMIC is presented.**

**(OCWEN EX. 19) CFN#2013184256, electronically recorded on 11-22-2013**
**Signor: Leticia N. Arias, Contract Manager for Deutsche Bank as attorney-in-fact**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Victoria Vazquez, Debra Spruill**
**This document purports to assign a mortgage from one closed Novastar 2006-5 REMIC trust to another closed Novastar 2006-5 REMIC trust.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(OCWEN EX. 20) CFN#2013188514, recorded by presentment on 12-04-2013**
**Signor: Joel Pires, Assistant Secretary of MERS**
**Notary: Jason R. Berkeley (FF063528; active)**
**Witnesses: Derek Garrett, Joe Simmons**
**This document purports to assign a mortgage from then-defunct Encore Credit Corp. into
a closed C-BASS 2006-CB3 REMIC trust.**


**(OCWEN EX. 21) CFN#2013189502, electronically recorded on 12-05-2013**
**Signor: Noemi Morales, Assistant Secretary of MERS**
**Notary: Christian J. Ferrer (FF062234)**
**Witnesses: Jason Ayers, Christopher Kelley**
**This document purports to assign a mortgage from a subsumed lender to a closed Novastar
2004-3 REMIC trust.**


**(OCWEN EX. 22) CFN#2013192201, recorded by presentment on 12-10-2013**
**Signor: Joel Pires, Contract Manager for Deutsche Bank as attorney-in-fact**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Derek Garrett, Stephanie Simpson**
**This document purports to assign a mortgage from a closed Morgan Stanley 2007-1
REMIC to a Morgan Stanley FV-1, Inc. holding LLC.**


**(OCWEN EX. 23) CFN#2013196101, recorded by presentment on 12-17-2013**
**Signor: Leticia N. Arias, Assistant Secretary of MERS**
**Notary: Derek Garrett (FF063536)**
**Witnesses: Derek Garrett, Jason R. Berkeley**
**This document purports to assign a mortgage from a defunct assignor to an assignee that
is a closed 2005-1 REMIC trust.**


**(OCWEN EX. 24) CFN#2013196280, electronically recorded on 12-17-2013**
**Signor: Joel Pires, Assistant Secretary of MERS**
**Notary: Christian J. Ferrer (FF062234)**
**Witnesses: Jason Ayers, Gladys M. Prieto**
**This document purports to assign a mortgage from a defunct lender to an assignee that is a
closed Ace Securities 2007-HE1 REMIC trust.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(OCWEN EX. 25) CFN#2014045226, electronically recorded on 04-01-2014**
**Signor: Donealia Wilson, Authorized Signer for defunct NCMC as its attorney-in-fact**
**Notary: Jason R. Berkeley (FF063528)**
**Witnesses: Christopher Kelley, Shavene Sharpe**
**This document purports to correct an assignment (CFN#2009043213) of a mortgage from**
**New Century Mortgage Corporation into a closed NCMC 2005-B REMIC trust.**

**(OCWEN EX. 26) CFN#2014050271, recorded by presentment on 04-10-2014**
**Signor: Leticia N. Arias, Contract Mgr.,  Litton Loan Scvg by Ocwen (successor in interest)**
**Notary: Jason R. Berkeley (FF063528); Witnesses: NONE**
**This document purports to claim that Ocwen, Litton's successor in interest, is transferring**
**assignment of the mortgage to Green Tree Servicing LLC on behalf of Suntrust Bank to**
**Suntrust Mortgage, Inc. (a Virginia corporation). It also purports that CFN#2011113027 is**
**invalid as recorded three years earlier.  The document appears to have been prepared by**
**Latrice Coleman from Suntrust Mortgage, Inc.**

**(OCWEN EX. 27) CFN#2014052742, recorded by presentment on 04-16-2014**
**Signor: Leticia N. Arias, Assistant Secretary of MERS**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Jason Ayers, Darryl Millett**
**This document purports to assign a mortgage from a defunct lender to an assignee that is a**
**closed Goldman-Sachs (GSAMP) 2005-HE4 REMIC trust.**

**(OCWEN EX. 28) CFN#2014052786, recorded by presentment on 04-16-2014**
**Signor: Joel Pires, Assistant Secretary of MERS**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Aisha Ansar, Jason R. Berkeley**
**This document purports to assign a mortgage from a subsidiary of a defunct lender to an**
**assignee that is a closed Goldman-Sachs (GSAMP) 2007-NC1 REMIC trust.**

**(OCWEN EX. 29) CFN#2014052804, recorded by presentment on 04-16-2014**
**Signor: Joel Pires, Assistant Secretary of MERS**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Darryl Millett, Jason Ayers**
**This document purports to assign a mortgage from a subsidiary of a defunct lender to an**
**assignee that is a closed Goldman-Sachs (GSAMP) 2007-NC1 REMIC trust.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(OCWEN EX. 30) CFN#2014052827, recorded by presentment on 04-16-2014**
**Signor: Leticia N. Arias, Assistant Secretary of MERS**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Jason Ayers, Darryl Millett**
**This document purports to assign a mortgage from a subsumed lender to a closed Novastar 2007-2 REMIC trust.**

**(OCWEN EX. 31) CFN#2014053257, recorded by presentment on 04-17-2014**
**Signor: Joel Pires, Assistant Secretary of MERS**
**Notary: Gladys M. Prieto (FF063551)**
**Witnesses: Darryl Millett, Jason Ayers**
**This document purports to assign a mortgage from the nearly-defunct Mortgage Investors Corporation to a closed GMACM 2004-GH1 REMIC trust.**

**(OCWEN EX. 32) CFN#2014053261, recorded by presentment on 04-17-2014**
**Signor: Leticia N. Arias, Assistant Secretary of Sand Canyon Corporation**
**Notary: Derek Garrett (FF063536)**
**Witnesses: Aisha Ansar, Jason Ayers**
**This document purports to assign a mortgage from Sand Canyon Corporation to an assignee that is a closed Soundview 2005-OPT4 REMIC trust.**

**(OCWEN EX. 33) CFN#2014053296, recorded by presentment on 04-17-2014**
**Signor: Leticia N. Arias, Assistant Secretary of MERS**
**Notary: Ivelka Angeles (EE 218470)**
**Witnesses: Jason Ayers, Christian J. Ferrer**
**This document purports to assign a mortgage from Wilmington Finance to an assignee that is a closed C-Bass 2007-CB4 REMIC trust.**

**(OCWEN EX. 34) CFN#2014053299, recorded by presentment on 04-17-2014**
**Signor: Joel Pires, as Assistant Secretary of MERS**
**Notary: Christian J. Ferrer (FF062234)**
**Witnesses: Jason Ayers, Gladys M. Prieto**
**This document purports to be a self-assignment of a mortgage from a lender in receivership with the FDIC to Ocwen Loan Servicing, LLC.**

**(OCWEN EX. 35) CFN#2014053351, recorded by presentment on 04-17-2014**
**Signor: Leticia N. Arias, Assistant Secretary of MERS**
**Notary: Ivelka Angeles (EE 218470)**
**Witnesses: Jason Ayers, Christian J. Ferrer**
**This document purports to assign a mortgage from Lincoln Mortgage Corp. to an assignee that is a closed Alternative Loan 2004-28CB REMIC trust.**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(OCWEN EX. 36) CFN#2014053355, recorded by presentment on 04-17-2014**
**Signor: Leticia N. Arias, Assistant Secretary of MERS**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Jason Ayers, Gladys M. Prieto**
**This document purports to assign a mortgage from a defunct lender to an assignee that is a closed American Home 2006-6 REMIC trust.**

**(OCWEN EX. 37) CFN#2014055627, electronically recorded on 04-22-2014**
**Signor: Joel Pires, Assistant Secretary of MERS**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Rene A. Ponzio, Samir Margetic**
**This document purports to assign a mortgage from a defunct lender to an assignee that is a closed Nomura Home Equity 2007-2 REMIC trust.**

**(OCWEN EX. 38) CFN#2014056674, electronically recorded on 04-23-2014**
**Signor: Rene A. Ponzio, Assistant Secretary of MERS**
**Notary: Christian J. Ferrer (FF062234)**
**Witnesses: Shavene Sharpe, Jason R. Berkeley**
**This document purports to correct an assignment of mortgage from a defunct lender to an assignee that is a closed Deutsche Alt-A 2006-AB1 REMIC trust.**

**(OCWEN EX. 39 CFN#:2014059751, electronically recorded on 04-29-2014**
**Signor: Rene A. Ponzio, Assistant Secretary of MERS**
**Notary: Christopher Kelley (EE861683)**
**Witnesses: Jason R. Berkeley, Christian J. Ferrer**
**This document purports to assign a mortgage from a defunct lender to an assignee that is a closed Nomura Home Equity Loan 2006-HE3 REMIC trust.**

**(OCWEN EX. 40) CFN#2014067793, recorded by presentment on 05-14-2014**
**Signor: Samir Margetic, Assistant Secretary of MERS**
**Notary: Christian J. Ferrer (FF062234)**
**Witnesses: Jason R. Berkeley, Shavene Sharpe**
**This document purports to assign a mortgage from a defunct lender to an assignee that is a closed RAMP 2003-RS11 REMIC trust.**

**(OCWEN EX. 41) CFN#2014071368, recorded by presentment on 05-21-2014**
**Signor: Leticia N. Arias, Assistant Secretary of MERS**
**Notary: Ivelka Angeles (FF092816)**
**Witnesses: Jason Ayers, Christian J. Ferrer**
**This document purports to be a self-assignment of an apparent lender-servicer (Homecomings Financial Network, Inc.) to Ocwen Loan Servicing, LLC.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(OCWEN EX. 42) CFN#2014075007, electronically recorded on 05-29-2014**
**Signor: Jason R. Berkeley, Assistant Secretary of MERS**
**Notary: Kemar Easie (FF086617)**
**Witnesses: Christian J. Ferrer, Samir Margetic**
**This document purports to assign a mortgage from a subsumed assignor to an assignee that is a closed Novastar 2007-1 REMIC trust.**

*Manufacture of Other Ocwen Documents: Affidavits of Lost Assignments*

There appear to be other instances where these same Ocwen employees were "tasked" with the opportunity to attest as an "affiant" to a lost or missing assignment with the apparent intent to give the lost or missing document some sort of validity in attempting foreclosure on properties in Osceola County, Florida, or in the alternative, to file a Satisfaction or Release of Mortgage.

In each instance as shown in the following scenarios, the signors and witnesses would attempt to assert a nexus between one party assigning an interest to another party, when in fact, it appears that none of the signing parties had actual or personal knowledge of the alleged events they appear to be attesting to. Further, it is highly likely that the executors of these documents were not supervised by an attorney; thus, there are felony issues with unauthorized practice of law in addition to the RICO issues involving the third-party document processing information highway and those involved in its transmittal. Thus, the documents purport to claim (under oath) that the signor had personal knowledge of the facts attested therein contained false and misrepresentative information with the intent to deprive the property owner of their property in violation of F. C. C. § 817.535 et seq. if in fact the Affidavits of Lost Assignment were used in tandem with a foreclosure action which would give rise to probable cause of intent to deprive the homeowners of their property.

The following 15 items are presented in chronological order for easier reference to aid in establishing patterns of behavior within the 2-year period target period:

**(OCWEN EX. 43) CFN#2012088231, recorded by presentment on 06-08-2012**
**Signor: Yamali Martinez, Contract Manager for Ocwen Loan Servicing, LLC, purports to have actual personal knowledge of the lost assignment, when the Affidavit she attempts to attest to was prepared by Christina Daugirdas, another Ocwen employee, who is asserting the information, more than likely obtained that information from hearsay third-party sources and appears simply to be regurgitating this information on paper for the purposes of document manufacturing, under which no oath appears to have been taken. Ms. Martinez is not referred to herein as an "affiant" nor an "officer", but rather a "Contract Manager".**
**Notary: Jasmin Vazquez (EE103493)**
**Witnesses: Naomi Smith, Jami Dorobiala (both are Florida notaries)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**The recorded facts of this matter are as follows:**

**(1) On or about November 21, 2005, the original lender of the loan taken out by the borrower (Alex Grigoryev, hereinafter "Grigoryev"), Resmae Mortgage Corpora tion, a U. S. home lender who loans money to people with bad credit, filed for bank ruptcy protection. In this instance, it appears Credit Suisse Group agreed to buy most of its assets for $19.1 million. There is nothing to indicate if the "assets" consti tuted the Borrower's loan.  Office and certified copies are included as part of this exhibit.**

**(2) On October 15, 2008, alleged employees of JPMorgan Chase Bank, N.A. in Columbus, Ohio (in conjunction with the Law Office of Marshall C. Watson in Fort Lauderdale, Florida) "manufactured" what appears to be a self-assignment of the Grigoryev mortgage to Chase (CFN#2008183434). The document was prepared by a Watson-office attorney, Nathalie F. Demesmin, Esquire.  It is highly likely that an non-lawyer entity other than the law firm was directing the law firm via a third-party computer software platform as to what language to put into the assignment.**

**(3) The "Assignment of Mortgage" was recorded and returned to the Law Office of Marshall C. Watson. The assignment claimed that MERS, as nominee for the then-defunct lender (together with the note, which MERS does not own, by its own ad mission), assigned both the note and mortgage to Chase.  The document was alleged ly signed on October 15, 2008 by Christina Trowbridge (a known robosignor) as Vice President of MERS as nominee for the then-defunct lender (Resmae) Mortgage Corporation). Most importantly, it is noted that the template "blank" provided for the "effective date" of transfer was not filled in.  The execution was allegedly wit nessed by "Meghan Maxey" and "Sara Knight".  This document contains several markers of robosigning and document manufacturing.**

**(4) The apparent self-assignment to Chase was recorded in the real property records of Osceola County, Florida as CFN#2008183434) on November 7, 2008, one month AFTER the Marshall C. Watson law firm recorded a Notice of Lis Pendens (on Oc tober 6, 2008, CFN#2008159526), showing a Cause No. of 2008 CA 8853.  The origi nal lender (Resmae) was listed as a Defendant in the action.**

**(5) Signing the Notice of Lis Pendens was Florida attorney April Glover Harriott (FBN37547) on behalf of Mark Olivera (FBN22817). However, because the Notice of Lis Pendens was recorded BEFORE the self-assignment, with no effective date of transfer of the note and mortgage, Chase could not have had legal standing to pursue foreclosure.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Instead, it appears Chase, through the Watson Law Firm, slandered the Borrower's title to property while at the same time, intended to foreclose on the property by knowingly filing a document containing false and misrepresentative information in violation of Florida Criminal Code § 817.535.

(6) Due to the fact there are several individuals were involved in the creation and execution of this document, there exists probable cause for violation of Florida's RICO statute.

(7) In this instance,  there may be sufficient issues involving the ability to charge the actors involved, as Court records show that on April 11, 2011 (well within the statutory time frame under both statutes) Judge Ronald A. Legendre issued a Notice of Lack of Prosecution/Court's Motion to Dismiss/Notice of Hearing-Order of Dismissal (CFN#2010175745; recorded by presentment on November 19, 2010).  It is also noted that the Borrower's chain of title appears to have been falsely slandered, which in of itself has civil consequences attached. However, the intent of the parties was to use the recorded documents to deprive the property owner of his property, which carries criminal consequences.

(8) It is equally important to note that Marshall C. Watson's bar license was sus pended for six months and the Marshall C. Watson Law Firm changed its name to Choice Legal, P.A.

(9) In continuation of this summary, on November 17, 2006, U. S. Bank, N.A. as Trustee for Lehman Brothers Structured Asset Securities Corporation SASCO 2006-BC2, by and through counsel, Natalie S. Pappas (FBN26721) on behalf of Karen A. Thompson (FBN96440) of the Marshall C. Watson Law Firm, filed a Notice of Lis Pendens (Cause No. 49 2006 CI 002697). The document was recorded by presentment on November 17, 2006 as CFN#2006277877.  It appears that the Clerk's file stamp was compromised by the handwriting of counsel.

(10) It should also be noted that there is no recorded assignment filed whatsoever in this instance, which was dismissed by both Judge Ronald Legendre and Judge Margaret Waller on September 29, 2010 for failure to prosecute.  Said Notice was recorded by presentment on September 7, 2010 (CFN#2010129233), which also released the Lis Pendens.  However, the release of the Lis Pendens did not constitute expungment of the filed records.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(11) On June 1, 2012, a Satisfaction of Mortgage was recorded by employees of Nationwide Title Clearing of Palm Harbor, Florida (CFN#2012083721). The document appears to have been prepared by "E. Lance" as noted in the following § on Nationwide Title Clearing, Inc.  After the document was recorded, it was purportedly returned to Chase C/O Nationwide Title Clearing (2100 Alt. 19 North, Palm Harbor, FL 34683). It appears to have been executed on May 15, 2012 by two employees of Chase in Monroe, Louisiana (Ingrid Whitty, alleged "Vice President"; and witnesses Jonita Johnson-Carter and George Standifer).

(12) The document purports that MERS as nominee for Resmae Mortgage Corporation (see Paragraphs #2-#4 herein) shows the mortgage as "satisfied" when the self-assignment to Chase (using MERS on behalf of the defunct lender) was apparently defective in the first place, which would be construed to mean that Chase did NOT have the authority (through MERS or any other party) to release or satisfying anything; thus, all of the parties involved again appear to have slandered the borrower's title.

The question for the record then is: How can Ocwen Loan Servicing, LLC issue an Affidavit of Lost Assignment that does not state who the claimant real party in interest is?  The recorded document clearly states the first mortgage loan (Resmae) on the document, when it appears that Chase (through its own efforts, recorded a self-manufactured assignment). Further, how can Ocwen record an Affidavit of Lost Assignment on June 8, 2012, when Chase initiated (through NTC, on June 1, 2012) a Satisfaction of Mortgage?

It is clear at this point that probable cause exists, applicable to all of the parties involved in the intent to commit a criminal RICO act of perjury (in the false manufacture of a recorded document pursuant to Florida Criminal Code § 817.535) with the intent to deprive Girgoryev of his property by fraudulent means.

(OCWEN EX. 44) CFN#2012125922, recorded by presentment on 08-28-2012
Signor: Leticia N. Arias, Contract Manager for Ocwen Loan Servicing, LLC
Notary: Naomi Smith (EE196761)
Witnesses: Jasmin Vazquez, Vanessa Pino
In what appears to be a precursor to a Satisfaction of Mortgage (the "RECORD 1ST" rubber stamp indicates a release of lien is likely pending), Arias declares that she is an "officer" of Ocwen Loan Servicing, LLC when her title indicates otherwise. The document was prepared by Christina Daugirdas (also an Ocwen employee), so it is uncertain whether Arias was in fact familiar with the reasons behind the Lost Assignment affecting property belong to Michael J. and Suzanne M. Laemers. There is nothing in the document that describes the chain of title or custody of the note; how the assignment became lost; and what due diligence was exercised in trying to locate it.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is highly unlikely that this document was drafted or executed under attorney supervision; thus, there are issues with unauthorized practice of law and at best, violation of Florida RICO statutes.

NOTES: The legal description on Page 1 of 2 of the recorded document appears to contain a legal description that appears to have been "cut and pasted" onto the document.

The foregoing recorded document is presented to illustrate a pattern, to wit:

> (1) The foregoing Affidavit of Lost Assignment is executed by Ocwen, filed on August 28, 2012 (CFN#2012125922);

> (2) Immediately following the foregoing recordation, Ocwen records a Satisfaction of Mortgage (thinking it has satisfied the requirements of justifying the lost assignment with this allegedly manufactured affidavit) by filing a "Full Satisfaction & Release of Collateral" in succession with the preceding Instrument as CFN#2012125923.

> (3) On September 24, 2012, the Ocwen-alleged missing assignment magically appears in the public records in Osceola County, Florida as CFN#2012138006, in what looks like a manufactured assignment to Ocwen in an attempt to validate a release of lien on the property belonging to Michael and Suzanne Laemers.

> (4) It should be noted here that the original mortgage (CFN#2007113050) was recorded in favor of Bank of America, N.A. and that MERS was not involved.

The examination team is using the foregoing example to illustrate a pattern of behavior wherein Ocwen's "manufacturing team" does whatever is necessary to facilitate whatever intent is necessary to satisfy its objectives, even if there are perjury issues involved.

(OCWEN EX. 45) CFN#2012135967, electronically recorded on 09-18-2012
Signor: Noemi Morales, Sr. Contract Mgr. for Ocwen Loan Servicing, LLC, purports to have actual personal knowledge of the lost assignment, when the Affidavit she attempts to attest to was prepared by Christina Daugirdas, another Ocwen employee, who is asserting the information, more than likely obtained that information from hearsay third-party sources and appears simply to be regurgitating this information on paper for the purposes of document manufacturing, under which no oath appears to have been taken.
Notary: Debra Spruill (EE167045)
Witnesses: Jasmin Vazquez, Naomi Smith

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

NOTES: It is unknown why there is an attorney code supplied of #13760.  There is nothing in the real property records which would indicate that at the time of the recording of this Affidavit, a foreclosure action was imminent.    The Borrower's name was misspelled as "NITCOLE" instead of "Nicole".  Again, it is important to note the following items:

(1) The Borrower, Nicole S. Todd, took out a MERS loan (CFN#2007166074), recorded by presentment on September 12, 2007.  Because MERS was utilized, it is implied that the borrower's loan was securitized into a REMIC trust.

(2) On March 16, 2012, CFN#2012036772 was electronically recorded to indicate that MERS (via Ocwen manufactured signors and witnesses) conveyed its interests in the MORTGAGE ONLY (not the Note, which is still assumed to have been securitized, with the real party in interest not present here) from Countrywide Bank, FSB to Countrywide Home Loans, Inc.  This assignment was prepared by Ocwen employee Nadine Alvarez and not by anyone at Countrywide, since both entities were already defunct and subsumed by Bank of America, N.A.  It is important to note that this document was executed by Yamali Martinez, who claims to be an Assistant Secretary of MERS; witnessed by Harrison Whittaker and Vanessa Pino. It was notarized by Krysta Sebastian (EE50513); her commission is still current at the time of this report's issuance.

(3) On September 18, 2012, the subject document was recorded.  It appears to be a self-assignment of Ocwen's "interest" in the borrower's "mortgage/deed of trust" (not delineated, another marker of document manufacturing).  There is no real party in interest here, as the MERS-originated mortgage still appears to have been securitized and NOT in Ocwen's favor (as Servicer of the loan only).

Thus, there remains confusion as to who really owns the borrower's note and whether or not Bank of America, N.A. will claim an interest if the borrower should allegedly default. The clear intent here however, is to demonstrate the document manufacturing process of Ocwen.

(OCWEN EX. 46) CFN#2012148236, recorded by presentment on 10-15-2012
Signor: Yamali Martinez, as Contract Manager for Ocwen as Attorney-in-Fact for Bank of New York Mellon as Successor Trustee to a closed 2002-3 ABS REMIC trust.
Notary: Naomi Smith (EE196761)
Witnesses: Jasmin Vazquez, Vanessa Pino
This document purports to that Martinez is an affiant when there is no evidence on the document of such.  Martinez declares that he/she has knowledge of a missing or lost assignment which purports to assign a mortgage from Equity One, Inc. to a closed Equity One ABS, Inc. Trust 2002-3 REMIC trust.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA


Considering there is a ten-year time span here, it is highly likely this trust no longer exists; the Borrower's note may be paid in full and that the intent is to hide the mortgage as a loss where it can be written off (here, the examiner is suggesting income tax evasion).


(OCWEN EX. 47) CFN#2013013313, recorded by presentment on 01-24-2013
Signor: Yamali Martinez, signing as Contract Manager for Ocwen, as attorney-in-fact, for Deutsche Bank National Trust Company, as trustee for a closed 2007-2 REMIC trust.  The Affidavit that Martinez is attempting to attest to (see Paragraph #2 for alleged violation) was prepared by Janira Walker, also an Ocwen employee, whose limited access to this data that Martinez was attesting to was not available to Martinez to have personal knowledge of.  Research shows that a Limited Power of Attorney was recorded as CFN#2010172621; however, the specific knowledge of this transfer could not have been possibly made available to Martinez to even review prior to signing this document.
Notary: Jami Dorobiala (Florida Notary Commission DD878994)
Witnesses: Franci Boothney, Jasmin Vazquez
NOTE: The attached Exhibit "A", which also appears to have manufactured by Texas attorney Michael L. Riddle and recorded by Stewart Mortgage Services (Houston, TX), contains NO NAMED ASSIGNEE; contains no delineated notarial execution; and further shows an indorsement stamp on the past page which does NOT belong on an assignment (it belongs under the Borrower's signature on a promissory note), as evidence of manufacture.


(OCWEN EX. 48) CFN#2013034681, recorded by presentment on 03-04-2013
Signor: Noemi Morales, St. Contract Manager for Deutsche Bank National Trust Company as Trustee for Saxon Asset Mortgage Loan Asset-Backed Certificates Trust 2007-4, as its Attorney-in-Fact
Notary: Jami Dorobiala (EDD 878994)
Witnesses: Franci Boothney, Stephanie Simpson
This document was prepared by Ocwen employee Christian Lazu; thus, it is highly likely that Morales had any personal knowledge of the facts contained in this affidavit, wherein she claims to be an officer, but her title is shown as "Sr. Contract Manager". This Affidavit of Lost Assignment was filed by Ocwen AFTER a suit to foreclose was commenced against the property by Albertelli Law attorney Valerie Pendino (FBN81715) as Case No. 2011 CA 2038 MF, against Defendants Victor and Carmen Padilla.  Morales signs this document as having attorney-in-fact status, with no reference to the authority or capacity she has been given to execute this document.  It is also highly unlikely that Morales understands that even in light of this Affidavit, the Assignment into the 2007 series REMIC trust would be void. There is also nothing to indicate how Morales exercised any due diligence to locate the missing Assignment, or whether she had ever even seen the Assignment.  It is highly likely that her execution of this document was done without any knowledge of the facts.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Plaintiff trust's law firm ended up dismissing the Complaint; however, the intent is clear that Ocwen was asked to record this document for perhaps yet another run at the property in Court.

NOTE: The Adjustable Rate Note attached to the Complaint contained no endorsement stamps underneath the Borrower's signatures (there was plenty of room to put at least six of them. Instead, laughably, Saxon Mortgage appeared to have simply invented an undated Allonge indorsed in blank by Saxon Mortgage, Inc.; thus, there is no effective date of transfer into the trust, which at this juncture would be unable to accept it.

(OCWEN EX. 49) CFN#2013059274, recorded by presentment 04-15-2013
Signor: Leticia N. Arias, Contract Mgr. for Wilmington Trust Co. as Successor to Bank of New York as Successor to JPMorgan Chase Bank, NA as Successor Trustee for a closed C-Bass 2006-CB3 REMIC trust
Notary: Jasmin Vazquez (Florida Notary Commission EE103493)
Witnesses: Victoria Vazquez, Debra Spruill
This document claims to be supported by a Limited Power of Attorney (CFN#2013189138) which was first recorded 01-17-2012 in Palm Beach County, Florida in an attempt to support this document and then re-recorded in Osceola County, Florida well AFTER the Notice of Lis Pendens had been filed (CFN#2013088174; recorded by presentment on June 4, 2013 by the foreclosure mill law firm of Clarfield, Okon, Salomone & Pincue, P.L. There is an attorney code (24120) which appears to indicate that a foreclosure action is imminent. The manner in which this document is executed parallels the same type of document manufacturing process that is common to all other recorded assignments where Ocwen employees are asserting some sort of claim with intent to defraud the property owner. There is another suspect document (CFN#2010066543), a Loan Modification Agreement, that was recorded in the real property records of Osceola County, Florida on May 11, 2010 that contains evidence of document manufacturing involving Brown & Associates, whose signor (Randy Reynolds, who purports to claim himself as Vice President of Wilmington Trust Company), in connection with a foreign document preparer in Rockwall, Texas, signed and caused to be recorded an agreement on behalf of Wilmington Trust Company that may in of itself, be "manufactured". The examiner believes that the Loan Modification was allowed to be recorded despite the fact that the date of the loan modification agreement is well past the closing date of the REMIC trust, C-BASS Mortgage Loan Asset-Backed Certificates 2006-CB3. Research of comparison documents issued by Ocwen Loan Servicing, LLC offered as part of this report, appear to indicate that:

(1) The preparer of this Affidavit is Joe Simmons, who created the Affidavit with third-party information that was at best unverified, which he relied upon when he prepared this Affidavit of Lost Assignment;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(2) There is nothing to indicate that Leticia N. Arias was sworn to anything, nor had an oath administered to her wherein she declared she was the Affiant therein, but instead signed as a Contract Manager with no apparent personal knowledge of any of the facts she was attesting to;

(3) On November 16, 2006, employees and/or officers of New Century Mortgage Corporation (hereinafter "NCMC") recorded an Assignment of Mortgage (CFN#2006274303) in the real property records of Osceola County, Florida. The assignment purports to assign NCMC's interests in the Moody's mortgage loan to JPMorgan Chase Bank,  as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates Series 2005-CB8. The document contains a rubber stamp that says "2006-CB3" but the language in the document conflicts with this rubber stamp, which is not placed within the body of the document language.  Further, the closing date of the trust pool was December 8, 2005, yet the assignment was not executed until December 21, 2005, after the closing date, and given public recorded status un til almost a year later, in violation of New York trust law.  Further, the assignment does not delineate that the trust is a CITIGROUP trust anywhere in the language of the document. This is the first apparent issue with the borrower's chain of title;

(4) On November 21, 2012, employees of Wells Fargo's Default Assignment Team executed a Corporate Assignment of Mortgage (CFN#2012172644) and caused it to be recorded in the real property records in Osceola County, Florida.  The assign ment purported to transfer a second mortgage (whether the Note was actually trans ferred is in question) on the property from then-defunct New Century Mortgage Corporation (April, 2007)   to an already closed 2006-NC2 REMIC trust, which the examiners believe continued to compromise the borrower's chain of title;
(5) There is a complete disconnect in the chain of title that would appear to conflict with the chain of custody of both promissory notes, which the examiners believe were shredded after they were converted into eNotes in the MERS System; and

(6) On July 29, 2013, AFTER the Affidavit of Lost Assignment was recorded, the Clarfield law firm, by and through its partner Robert C. Okon (FBN 513873) filed a Notice of Voluntary Dismissal and Discharge of Lis Pendens, which was sent to all of the concerned parties.

Thus, the parties created this assignment with an attorney code with intent to deprive the owner of his property.  Even if the intent to dismiss the case was because there was no recorded assignment giving the foreclosing party standing, the Affidavit of Lost Assignment still appears to represent a feeble manufacturing attempt to assist counsel in the intent to falsely manufacture a lien interest in the property.  There are ancillary "copies" (not certi-fied) attached for reference.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are clearly issues with document manufacturing with the intent to deprive the homeowner of his property, in violation of Florida Criminal Code Section 817.535 and potential Florida RICO issues exist due to the multiple engagement of actors involved in the document production and procurement.

(OCWEN EX. 50) CFN#2013084218, recorded by presentment on 05-29-2013
Signor: Leticia N. Arias, signing as Contract Manager and not "affiant". The Affidavit she attempts to attest to was prepared by Joe Simmons, an Ocwen employee in West Palm Beach, Florida, who is asserting the information, more than likely obtained that information from hearsay third-party sources and appears simply to be regurgitating this information on paper for the purposes of document manufacturing, under which no oath appears to have been taken. The affidavit is undelineated as to gender. There is no possible way Arias would have personal knowledge as to whether such an assignment was missing and how it came to be lost. Further, in lieu of the date of this Affidavit's recording, there would be no viable proof of effective transfer into the trust REMIC and thus would be considered void for PSA violations.
Notary: Victoria Vazquez (Florida Notary Commission EE845391)
Witnesses: Christopher Kelley, Joel Pires
NOTE: There is an "attorney code" of #14721 attached to this document, which likely means this case is being reviewed for possible intent to foreclose on the property.

(OCWEN EX. 51) CFN#2013059726, recorded by presentment on 06-19-2013
Signor: Yamali Martinez, who purports to be a Vice President of Homeward Residential, Inc., attesting as an attorney-in-fact for a closed REMIC 2007-5 trust and not an "affiant" for Ocwen. The Affidavit she attempts to attest to was prepared by Christian Lazu, an Ocwen employee in West Palm Beach, Florida, who is asserting the information, more than likely obtained that information from hearsay third-party sources and appears simply to be regurgitating this information on paper for the purposes of document manufacturing, under which no oath appears to have been taken. The affidavit is undelineated as to gender.
Notary: Joel Pires (Florida Notary Commission EE861698)
Witnesses: Victoria Vazquez, Debra Spruill

(OCWEN EX. 52) CFN#2013111962, recorded by presentment on 07-19-2013
Signor: Joel Pires, who purports to be a Contract Manager for Ocwen, attesting as an attorney-in-fact for a closed 2002-HE2 REMIC trust and not an "affiant" for Ocwen. The Affidavit she attempts to attest to was prepared by Christian Lazu, an Ocwen employee in West Palm Beach, Florida, who is asserting the information, more than likely obtained that information from hearsay third-party sources and appears simply to be regurgitating this information on paper for the purposes of document manufacturing, under which no oath appears to have been taken. The affidavit is undelineated as to gender.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Notary: Victoria Vazquez (Florida Notary Commission EE845391)
Witnesses: Janira Walker, Christopher Kelley
NOTE: This Affidavit may have been devised as part of Goldman-Sachs scheme to either foreclose on the property or in the alter nature, manufacture a connective document in an attempt to write off a loss against the settlement agreement with the U.S. government, in violation of 18 USC 371.

(OCWEN EX. 53) CFN#2013125185, recorded by presentment on 08-08-2013
Signor: Joel Pires, who purports to be a Contract Manager for Ocwen, attesting as an attorney-in-fact for a closed HSBC Bank USA, N.A. (Trustee) for Fremont Home Loan 2005-E REMIC trust and not an "affiant" for Ocwen.  The Affidavit he attempts to attest to was prepared by Joe Simmons, an Ocwen employee in West Palm Beach, Florida, who is asserting the information, more than likely obtained that information from hearsay third-party sources and appears simply to be regurgitating this information on paper for the purposes of document manufacturing; with all of the "fill-in-the-blank markers"; undelineated as to gender.
Notary: Stephanie Simpson (Florida Notary Commission EE845386)
Witnesses: Christian J. Ferrer, Christopher Kelley
NOTE: There is an attorney code of #24846 attached to this document, making it likely that this document was manufactured and recorded with the intent to deprive the homeowner of their property, in violation of Florida Criminal Code Section 817.535.

(OCWEN EX. 54) CFN#2013159249, recorded by presentment on 10-07-2013
Signor: Ashley Arnold, who purports to be an "authorized signer" and not an "affiant" for Ocwen when the Affidavit she attempts to attest to was prepared by Josie Tindell, an Ocwen employee in St. Paul, Minnesota, who is asserting the information, more than likely obtained that information from hearsay third-party sources and appears simply to be regurgitating this information on paper for the purposes of document manufacturing, under which no oath appears to have been taken.
Notary: C. Robbins (Iowa Notary Commission No. 743949); the notarial execution is undelineated as to gender.
Witnesses: None listed
NOTES: The type of document is non-specific, based on information in Paragraph #3. The foregoing recorded Instrument was followed by an Ocwen-generated Release of Mortgage (CFN#2013259250); however, the problem with the foregoing Affidavit of Missing Assignment reflects badly on the existing Assignment of Mortgage (CFN#2009179612) which was prepared and executed by employees of U. S. Recordings (later subsumed by Indecomm, which is shown as a document manufacturing facility that appears to record and shred original notes once they are recorded into the MERS electronic database). The foregoing Assignment of Mortgage (CFN#2009179612) attempts to transfer all beneficial interest from Ally Bank fka GMAC Bank into a closed GMACM 2006-HE4 REMIC trust, in violation of the pooling and servicing agreement.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thus, what interest did the Ocwen-GMAC "Affidavit of Missing Assignment" purport to transfer if the trust did not legally own or possess effective transfer of the Note?  Further, how could a loan be transferred out of a performing trust to Ocwen without again depriving investors of distribution of payments due to them in compliance with the pooling and servicing agreement (unless the note was already paid in full and Ocwen was simply going to collect and keep the borrower's payments)?

In this instance however, a pattern of robosigning and document manufacturing appears to exist and the Affidavit appears to be false and misrepresentative considering the basis for which it was created.

(OCWEN EX. 55) CFN#2013188514, recorded by presentment on 12-04-2013
NOTE: The mortgagor's name is misspelled (leaving off the "S" from his last name).  This has resulted in two separate listings for the recorded documents in the real property records of Osceola County, Florida.
Signor: Joel Pires (Ocwen employee) signing as Assistant Secretary for MERS only; signing title or authorization is missing from the document, prepared by Ocwen employee Joe Simmons.
Notary: Jason R. Berekeley (Florida Notary Commission No. FF063528)
Witnesses: Derek Garrett, Joe Simmons
Issues: This Corrective Assignment is the second attempt to establish ownership of the loan. The first attempt was done through a Litton Loan Servicing LP-attempted manufacture, recorded on January 27, 2010 as CFN#2010012238.  The first recording appears to have been done with an attempted foreclosure by Shapiro & Fishman's Craig T. Smith (FBN20315) by Jessica Conte (FBN58412), who filed a Notice of Lis Pendens on December 31, 2009, almost a month BEFORE the assignment from MERS to its client took place.  This will be discussed under Shapiro & Fishman's listing in this report.

(OCWEN EX. 56) CFN#2014000208, recorded by presentment on 01-02-2014
Signor: Ashley Arnold, who purports to be an "authorized signer" and not an "affiant" for Ocwen at its 3451 Hammond Avenue, Waterloo, Iowa 50702 address.  When an address search was run, the following information came up:

GMAC MORTGAGE CORP, 3451 HAMMOND AVE ... - Cortera
start.cortera.com/company/research/k2j4oyk4p/gmac-mortgage-corp/
Free Business profile for GMAC MORTGAGE CORP at 3451 HAMMOND AVE, WATER-LOO, IA, 507025345, US. ... WATERLOO, IA 50702-5345 | view map.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thus, Ms. Arnold's affidavit may be in dispute because there is nothing in this affidavit that ties GMAC Mortgage Corp. to this Affidavit of Lost Assignment.

Notary: D. Storey (Iowa Notary Commission #769870; no witnesses signed the document. The notarial execution is undelineated as to gender. The affidavit is undelineated as to gender. The signatures are scribbled which are markers of robosigning.

The document appears to have been prepared by Harish Thimmaraju of Ocwen in Little Canada, MN and thus, it is questionable that Arnold has actual personal knowledge of the contents of the document she is attesting to.

NOTES: The type of document is non-specific, based on information in Paragraph #3.

Again, the examiners note the following issues which demonstrate document manufacturing and lack of personal knowledge is present in the Affidavit at hand, to wit:

(1) The borrowers (Paolo Vicin Ersetti and Fabiola Martinez) executed a mortgage which was recorded by presentment on July 15, 1998 as CFN#1998080681. The original lender is Interbanc Mortgage Services of Maitland, Florida.

(2) On November 20, 1999, Interbanc Mortgage Services executes an Assignment of Mortgage (CFN#1999165520) to Bankers Trust Company as Trustee (3 Park Plaza, 16th Floor, Irvine, CA 92714). The document does NOT say WHO Bankers Trust Company is acting as "Trustee" for. The attempt may be to securitize the Note.

(3) On January 2, 2014, Ocwen causes two successive documents to be recorded in the real property records of Osceola County, Florida. The documents are noted as follows:

(a.) CFN#2014000208 purports to claim that Ocwen Loan Servicing, LLC is entitled to claim an interest in the borrower's loan, but its lost the assignment that it claims was from Deutsche Bank Trust Co. FKA Bankers Trust Co. (RFC)** to Ocwen Loan Servicing, LLC.

(b.) "RFC" is NOT named in the 1999 assignment by Interbanc to Bankers Trust Company, let alone a specific REMIC trust.

(c.) Thus Ocwen and its manufacturing team in Little Canada, Minnesota, along with signors from GMAC (who appear to have manufactured the Release of Mortgage, CFN#2014000209) appear to have misrepresented the facts, wherein the real party in interest is not named in the release, or the Affidavit, which is the sworn oath that precedes it.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Again, this is to note specific examples of how Ocwen facilitates document manufacturing to achieve whatever ends it needs to achieve, despite whether or not making false statements (perjury) is involved. There are multiple actors in at least two different locations involved in the manufacture and recording of these instruments.

**(OCWEN EX. 57) CFN#2014001576, recorded by presentment on 01-06-2014**
**Signor:** Leticia N. Arias, Contract Mgr. for Ocwen Loan Servicing, LLC, purports to have actual personal knowledge of the lost assignment, when the Affidavit she attempts to attest to was prepared by Matthew Reuter, another Ocwen employee, who is asserting the information, more than likely obtained that information from hearsay third-party sources and appears simply to be regurgitating this information on paper for the purposes of document manufacturing, under which no oath appears to have been taken.
**Notary:** Christopher Kelley (EE861683)
**Witnesses:** Darryl Millett, Jason Ayers
This document purports to transfer a second mortgage loan from Option One Mortgage Corporation to Ocwen Loan Servicing, LLC in what appears to be a self-assignment by Ocwen employees. Option One is clearly not involved in this recorded transaction. As of June 4, 2008, Option One Mortgage Corporation changed its name to Sand Canyon Corporation. Had the document preparer (Matthew Reuter) had proper documentation, he would have seen that Option One changed its name and the Assignment would have been listed as Sand Canyon Corporation fka Option One Mortgage Corporation. Since this obviously was not noticed, the Ocwen employees did not have this accurate information in 2014 when the alleged assignment was transferred.

Relative to OCWEN EX. 58 and OCWEN EX. 59: Both of the following document Exhibits are attached together with a copy of the recorded 2nd mortgage for comparison review. These documents have to do with a foreclosure that was discussed in detail in *Section Six*, Case No. 53. These documents were recorded over a year after the case was dismissed:

**(OCWEN EX. 58) CFN#2014028720, recorded by presentment on 02-27-2014**
This Document is entitled "Assignment of Mortgage - Florida"
This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is NOT a member of the Florida Bar (unlicensed, non-lawyer).
**Signor:** Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen team doing the alleged conveyance under orders from Goldman Sachs), signing as Assistant Secretary of MERS as nominee for Fremont Investment & Loan (long since defunct).
**Notary:** Christian J. Ferrer (Florida Notary Commission No. FF 062234; still active)
**Witnesses:** Vanesa Francis, Kemar Easle (also Ocwen employees)

**"RFC" could be an acronym for Residential Funding Corporation, a depositor in the sequence of pooling and servicing agreements set up to regulate conveyances of notes into any given trust pool of loans.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Issues with these two documents are discussed below, to wit:

(1) This document purports to assign Fernando and Luz Vazquez's second mortgage loan, which MTGLQ Investors LP (an affiliate of Goldman-Sachs), claimed was a holder of a certain mortgage loan (MERS as nominee for defunct Fremont Investment & Loan), wherein Ocwen (under contract to Goldman Sachs) signers are creating documents that appear to tie the loan to Goldman Sachs, potentially for the purpose of forgiveness and write down of the settlement figure;

(2) Because of the nature of the behavior of the Ocwen signing team, the two transactions discussed herein could create issues of probable cause for not only unauthorized practice of law, but also of felony perjury under the Florida RICO statutes and for violation of 18 USC 371 for using false documents to defraud the United States Government;

(3) All of the signers executing BOTH documents and the document preparer are apparently all working under the direction of supervisory personnel at both Ocwen and Goldman Sachs;

(4) The Assignment purports that MERS is assigning the Note as well as the Mortgage.  This could not have happened because MERS does NOT have an interest in the Note;

(5) The document allegedly contains false and misrepresentative information within in it that could be construed in violation (thus, probable cause) of Florida Criminal Code § 817.535 and Florida RICO statutes; thus, any activity related to that subject property now comes under scrutiny for further issues involving manufacturing and improper filing; and

(6) The suspect acts within the Assignment would then have affected the following Satisfaction of Mortgage (recorded in sequence thereof), as the Note not being conveyed would have left the chain of title compromised; thus the Release could not be legally effective.

The document signing team was obviously not supervised by an attorney; thus, the issues of unauthorized practice of law, also a felony in the State of Florida.

(OCWEN EX. 59) CFN#2014028721, recorded by presentment on 02-27-2014
This document is entitled "Full Satisfaction & Release of Collateral"
This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is NOT a member of the Florida Bar (unlicensed, non-lawyer).

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Signor:** Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen team doing the alleged conveyance under orders from Goldman Sachs), signing as attorney-in-fact for MTGLQ Investors, LP as a Senior Contract Manager for Ocwen Loan Servicing LLC.
**Notary:** Christian J. Ferrer (Florida Notary Commission No. FF 062234; still active)
**Witnesses:** Vanesa Francis, Kemar Easle (also Ocwen employees)
**Issues:** On Page 2 of 4 of the document, it claims that the "holder" has "received **FULL** payment".  If this was allegedly evidenced by the previously-recorded Assignment, there are issues of perjury under the Florida RICO statutes as to the basis for which the Assignment falsely purports that MERS had the authority to transfer something that it didn't have.  Further, the Owen signing team has no personal knowledge of any of the facts contained therein. They appear to be under strict orders from Goldman-Sachs to simply sign the documents as prepared and cause them to be recorded, knowing the information contained therein may not be factual. The acts of Satisfaction of Mortgage in this instance were obviously not supervised by an attorney; thus, the issues of unauthorized practice of law, also a felony in the State of Florida.

The State's Attorney may wish to refer this particular set of documents/exhibits to the U. S. Attorney for the Middle District of Florida, the State Bar of Florida, the Florida Supreme Court and the Florida Attorney General for further investigation.  The Second Mortgage is also attached as part of these two Exhibits, noted together as one package containing two alleged violations.

<u>Relative to OCWEN EX. 60 and OCWEN EX. 61</u>: Both of the following document Exhibits are attached together with a copy of the recorded 2nd mortgage for comparison review. These documents have to do with a foreclosure that was discussed in detail in *Section Six*, Case No. 61.  These documents were recorded three and one-half (3-1/2) years AFTER the Final Summary Judgment for Foreclosure was recorded on 10-15-2010 as CFN#2010155489.

(OCWEN EX. 60) CFN#2014028741, recorded by presentment on 02-27-2014
This document is entitled "Full Satisfaction & Release of Collateral"
This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is NOT a member of the Florida Bar (unlicensed, non-lawyer).
**Signor:** Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen team doing the alleged conveyance under orders from Goldman Sachs), signing as attorney-in-fact for MTGLQ Investors, LP as a Senior Contract Manager for Ocwen Loan Servicing LLC.
**Notary:** Joel Pires (Florida Notary Commission No. EE 861698; still active)
**Witnesses:** Christian J. Ferrer, Gladys M. Prieto (also Ocwen employees)

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA


There are multiple issues with this Satisfaction of Mortgage, to wit:

(1) This document purports to release Nathalie Novak's second mortgage loan, which MTGLQ Investors LP (an affiliate of Goldman-Sachs), claiming to be a holder of a certain mortgage loan (MERS as nominee for defunct American Brokers Conduit), wherein Ocwen (under contract to Goldman Sachs) signers are creating documents that appear to tie the loan to Goldman Sachs, potentially for the purpose of forgiveness and write down of the settlement figure;

(2) **The Assignment and Release are recorded backwards**!

(a.) Fred Jeune did not put a stamp on the document that said "RECORD 1ST" and "RECORD 2ND"; thus, they appear to have been recorded in the order they were received; and

(b.) This clouds the chain of title and constitutes an improper release of lien because MTGLQ Investors LP had to "own" or "hold" the Note BEFORE they could release it; thus, the release was ineffective and MTGLQ has not legally released the loan, even if it could prove otherwise; and

(3) Because of the nature of the behavior of the Owen signing team, the two transactions discussed herein could create issues of probable cause for not only unauthorized practice of law, but also of felony perjury under the Florida RICO statutes and for violation of 18 USC 371 for using false documents to defraud the United States Government.


(OCWEN EX. 61) CFN#2014028742, recorded by presentment on 02-27-2014
This Document is entitled "Assignment of Mortgage - Florida"
This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is NOT a member of the Florida Bar (unlicensed, non-lawyer).  This document purports to assign Nathalie Novak's second mortgage loan, which MTGLQ Investors LP (an affiliate of Goldman-Sachs), claimed was a holder of a certain mortgage loan (MERS as nominee for defunct American Brokers Conduit), wherein Ocwen (under contract to Goldman Sachs) signers are creating documents that appear to tie the loan to Goldman Sachs, potentially for the purpose of forgiveness and write down of the settlement figure.  Because of the nature of the behavior of the Ocwen signing team, the two transactions discussed herein could create issues of probable cause for not only unauthorized practice of law, but also of felony perjury under the Florida RICO statutes and for violation of 18 USC 371 for using false documents to defraud the United States Government.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Signor: Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen team doing the alleged conveyance under orders from Goldman Sachs), signing as Assistant Secretary of MERS as nominee for Fremont Investment & Loan (long since defunct).
Notary: Joel Pires (Florida Notary Commission No. EE 861698; still active)
Witnesses: Jason R. Berkeley, Jason Ayers (also Ocwen employees)**

**The Issues with these two documents are discussed below, to wit:**

> **(1) All of the signers executing BOTH documents and the document preparer are apparently all working under the direction of supervisory personnel at both Ocwen and Goldman Sachs;**

> **(2) <u>The Assignment and Release are recorded backwards</u>!**

>> **(a.) Fred Jeune did not put a stamp on the document that said "RECORD 1ST" and "RECORD 2ND"; thus, they appear to have been recorded in the order they were received; and**

>> **(b.) This clouds the chain of title and constitutes an improper release of lien because MTGLQ Investors LP had to "own" or "hold" the Note BEFORE they could release it; thus, the release was ineffective and MTGLQ has not legally released the loan, even if it could prove otherwise;**

> **(3) The document allegedly contains false and misrepresentative information within in it that could be construed in violation (thus, probable cause) of Florida RICO statutes; thus, any activity related to that subject property now comes under scrutiny for further issues involving manufacturing and improper filing; and**

> **(4) The acts of Satisfaction of Mortgage in this instance were obviously not supervised by an attorney; thus, the issues of unauthorized practice of law, also a felony in the State of Florida.**

**The State's Attorney may wish to refer this particular set of documents/exhibits to the U. S. Attorney for the Middle District of Florida, the State Bar of Florida, the Florida Supreme Court and the Florida Attorney General for further investigation.  The Second Mortgage is also attached as part of these two Exhibits, noted together as one package containing two alleged violations.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Relative to OCWEN EX. 62 and OCWEN EX. 63**: Both of the following document Exhibits are attached together with a copy of the recorded 2nd mortgage for comparison review. These documents have to do with a foreclosure that was discussed in detail in *Section Six*, Case No. 101.  These documents were recorded shortly after the short sale of the property (apparently in proper order as submitted).

**(OCWEN EX. 62) CFN#2014028743, recorded by presentment on 02-27-2014**
**This Document is entitled "Assignment of Mortgage - Florida"**
**This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is NOT a member of the Florida Bar (unlicensed, non-lawyer).  This document purports to assign Evaristo Lopez's second mortgage loan, which MTGLQ Investors LP (an affiliate of Goldman-Sachs), claimed was a holder of a certain mortgage loan (MERS as nominee for defunct American Brokers Conduit), wherein Ocwen (under contract to Goldman Sachs) signers are creating documents that appear to tie the loan to Goldman Sachs, potentially for the purpose of forgiveness and write down of the settlement figure.  Because of the nature of the behavior of the Ocwen signing team, the two transactions discussed herein could create issues of probable cause for not only unauthorized practice of law, but also of felony perjury under the Florida RICO statutes and for violation of 18 USC 371 for using false documents to defraud the United States Government.**
**Signor: Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen team doing the alleged conveyance under orders from Goldman Sachs), signing as Assistant Secretary of MERS as nominee for DHI Mortgage Company Ltd.).**
**Notary: Christian J. Ferrer (Florida Notary Commission No. FF 062234; still active)**
**Witnesses: Venesa Francis, Kemar Easle (also Ocwen employees)**
**The Issues with these two documents are discussed below, to wit:**

> **(1) All of the signers executing BOTH documents and the document preparer are apparently all working under the direction of supervisory personnel at both Ocwen and Goldman Sachs;**

> **(2) MERS doesn't own the Note!**

>> **(a.) There is apparent disregard for case law in the legal system, especially in the manufacture of documents purporting to effectuate an event which cannot legally happen and has been set by case precedent;**

>> **(b.) This clouds the chain of title and constitutes an improper release of lien because Ocwen document preparers and signors reverse engineered the Assignment so MTGLQ Investors LP could "own" the Note so they could release and use the release as a set-off (write-down) on their settlement; the signors are all notaries and should be held to a higher standard.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

If this was fully investigated, it would present potential issues with
the chain of custody of the Note, which would bring unwanted scrutiny
down on Goldman-Sachs, suspect that the documents were manufactured
for that specific purpose;

(3) The document allegedly contains false and misrepresentative information within
in it that could be construed in violation (thus, probable cause) of Florida Criminal
Code § 817.535 and Florida RICO statutes; thus, any activity related to that subject
property now comes under scrutiny for further issues involving manufacturing and
improper filing; and

(4) The acts of Satisfaction of Mortgage in this instance were obviously not
supervised by an attorney; thus, the issues of unauthorized practice of law,
also a felony in the State of Florida.

The State's Attorney may wish to refer this particular set of documents/exhibits to the U. S.
Attorney for the Middle District of Florida, the State Bar of Florida, the Florida Supreme
Court and the Florida Attorney General for further investigation.  The Second Mortgage is
also attached as part of these two Exhibits, noted together as one package containing two
alleged violations.


(OCWEN EX. 63) CFN#2014028744, recorded by presentment on 02-27-2014
This document is entitled "Full Satisfaction & Release of Collateral"
This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is
NOT a member of the Florida Bar (unlicensed, non-lawyer).  This document purports to
release Evaristo Lopez's second mortgage loan, which MTGLQ Investors LP (an affiliate of
Goldman-Sachs), claiming to be a holder of a certain mortgage loan (MERS as nominee for
DHI Mortgage Company Ltd., still active), wherein Ocwen (under contract to Goldman
Sachs) signers are creating documents that appear to tie the loan to Goldman Sachs, poten-
tially for the purpose of forgiveness and write down of the settlement figure.  Because of the
nature of the behavior of the Owen signing team, the two transactions discussed herein
could create issues of probable cause for not only unauthorized practice of law, but also of
felony perjury under the Florida RICO statutes and for violation of 18 USC 371 for using
false documents to defraud the United States Government.
Signor: Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen
team doing the alleged conveyance under orders from Goldman Sachs), signing as attor-
ney-in-fact for MTGLQ Investors, LP as a Senior Contract Manager for Ocwen Loan Ser-
vicing LLC.
Notary: Christian J. Ferrer (Florida Notary Commission No. FF 062234; still active)
Witnesses: Venesa Francis, Kemar Easle (also Ocwen employees)

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Relative to OCWEN EX. 64 and OCWEN EX. 65**: Both of the following document Exhibits are attached together with a copy of the recorded 2nd mortgage for comparison review. These documents have to do with a foreclosure voluntarily dismissed, which was discussed in detail in *Section Six*, Case No. 75.  These documents were recorded nearly (4) years AFTER the Notice of Voluntary Dismissal was recorded on 05-04-2010 as CFN#2010062327.

**(OCWEN EX. 64) CFN#2014028747, recorded by presentment on 02-27-2014**
**This document is entitled "Full Satisfaction & Release of Collateral"**
**This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is NOT a member of the Florida Bar (unlicensed, non-lawyer).  This document purports to release Marc Elie Eugene's second mortgage loan, which MTGLQ Investors LP (an affiliate of Goldman-Sachs), claiming to be a holder of a certain mortgage loan (MERS as nominee for defunct Fremont Investment & Loan), wherein Ocwen (under contract to Goldman Sachs) signers are creating documents that appear to tie the loan to Goldman Sachs, potentially for the purpose of forgiveness and write down of the settlement figure.  Because of the nature of the behavior of the Owen signing team, the two transactions discussed herein could create issues of probable cause for not only unauthorized practice of law, but also of felony perjury under the Florida RICO statutes and for violation of 18 USC 371 for using false documents to defraud the United States Government.**
**Signor: Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen team doing the alleged conveyance under orders from Goldman Sachs), signing as attorney-in-fact for MTGLQ Investors, LP as a Senior Contract Manager for Ocwen Loan Servicing LLC.**
**Notary: Christian J. Ferrer (Florida Notary Commission No. FF 062234; still active)**
**Witnesses: Vanessa Francis, Kemar Easle (also Ocwen employees)**

**(OCWEN EX. 65) CFN#2014028748, recorded by presentment on 02-27-2014**
**This Document is entitled "Assignment of Mortgage - Florida"**
**This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is NOT a member of the Florida Bar (unlicensed, non-lawyer).  This document purports to assign Marc Elie Eugene's second mortgage loan, which MTGLQ Investors LP (an affiliate of Goldman-Sachs), claimed was a holder of a certain mortgage loan (MERS as nominee for defunct Fremont Investment & Loan), wherein Ocwen (under contract to Goldman Sachs) signers are creating documents that appear to tie the loan to Goldman Sachs, potentially for the purpose of forgiveness and write down of the settlement figure.**

**Because of the nature of the behavior of the Owen signing team, the two transactions discussed herein could create issues of probable cause for not only unauthorized practice of law, but also of felony perjury under the Florida RICO statutes and for violation of 18 USC 371 for using false documents to defraud the United States Government.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Signor: Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen team doing the alleged conveyance under orders from Goldman Sachs), signing as Assistant Secretary of MERS as nominee for Fremont Investment & Loan (long since defunct).**
**Notary: Christian J. Ferrer (Florida Notary Commission No. FF 062234; still active)**
**Witnesses: Vanessa Francis, Kemar Easle (also Ocwen employees)**

**The Issues with these two documents are discussed below, to wit:**

> **(1) All of the signers executing BOTH documents and the document preparer are apparently all working under the direction of supervisory personnel at both Ocwen and Goldman Sachs;**

> **(2) The Assignment and Release are recorded backwards!**

>> **(a.) Fred Jeune did not put a stamp on the document that said "RECORD 1ST" and "RECORD 2ND"; thus, they appear to have been recorded in the order they were received; and**

>> **(b.) This clouds the chain of title and constitutes an improper release of lien because MTGLQ Investors LP had to "own" or "hold" the Note BEFORE they could release it; thus, the release was ineffective and MTGLQ has not legally released the loan, even if it could prove otherwise;**

> **(3) The first Mortgage does NOT appear to have been satisfied and it further appears that a Goldman Sachs-related trust REMIC (GSAMP 2006-FM1) related suspect Assignment of Mortgage was prepared by the Wells Fargo Default Assignment Team in Dakota County, MN and recorded on 10-18-2011 as CFN#2011145102 (as discussed in Case No. 21 of *Section Six*, Part Two, Section Two: INACTIVE CASES); and**

> **(4) The acts of Satisfaction of Mortgage in this instance were obviously not supervised by an attorney; thus, the issues of unauthorized practice of law, also a felony in the State of Florida.**

**The State's Attorney may wish to refer this particular set of documents/exhibits to the U. S. Attorney for the Middle District of Florida, the State Bar of Florida, the Florida Supreme Court and the Florida Attorney General for further investigation.**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Relative to OCWEN EX. 66 and OCWEN EX. 67**: Both of the following document Exhibits are attached together with a copy of the recorded 2nd mortgage for comparison review. These documents have to do with a foreclosure that was discussed in detail in *Section Six*, Case No. 54.  These documents were recorded nearly two years AFTER the case was voluntarily dismissed (apparently in proper order as submitted).

**(OCWEN EX. 66) CFN#2014032963, recorded by presentment on 03-06-2014**
This Document is entitled "Assignment of Mortgage - Florida"
This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is NOT a member of the Florida Bar (unlicensed, non-lawyer).
Signor: Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen team doing the alleged conveyance under orders from Goldman Sachs), signing as Assistant Secretary of MERS as nominee for then-defunct Taylor, Bean & Whitaker Mortgage Corp. ("TB&W"; whose President Lee Farkas is now serving a 30-year prison term for bank fraud).
Notary: Christian J. Ferrer (Florida Notary Commission No. FF 062234; still active)
Witnesses: Duamel Torres, Kemar Easle (also Ocwen employees)

The Issues with these two documents are discussed below, to wit:

> **(1) This document purports to assign Jesus M. Garcia's second mortgage loan, which MTGLQ Investors LP (an affiliate of Goldman-Sachs), claimed was a holder of a certain mortgage loan (MERS as nominee for defunct TB&W), wherein Ocwen (under contract to Goldman Sachs) signers are creating documents that appear to tie the loan to Goldman Sachs, potentially for the purpose of forgiveness and write down of the settlement figure;**

> **(2) Because of the nature of the behavior of the Ocwen signing team, the two transactions discussed herein could create issues of probable cause for not only unauthorized practice of law, but also of felony perjury under the Florida RICO statutes and for violation of 18 USC 371 for using false documents to defraud the United States Government;**

> **(3) All of the signers executing BOTH documents and the document preparer are apparently all working under the direction of supervisory personnel at both Ocwen and Goldman Sachs;**

> **(4) <u>MERS doesn't own the Note</u>!**

> > **(a.) There is apparent disregard for case law in the legal system, especially in the manufacture of documents purporting to effectuate an event which cannot legally happen and has been set by case precedent;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(b.) This clouds the chain of title and constitutes an improper release of lien because Ocwen document preparers and signors reverse engineered the Assignment so MTGLQ Investors LP could "own" the Note so they could release and use the release as a set-off (write-down) on their settlement; the signors are all notaries and should be held to a higher standard;**

**(c.) If this was fully investigated, it would present potential issues with the chain of custody of the Note, especially the false manufacturing thereof, which would bring unwanted scrutiny down on Goldman-Sachs, suspect that the documents were manufactured for the specific purpose of tying itself to the chain of custody of the Note, when in fact, Goldman officials knew otherwise;**

**(5) The document allegedly contains false and misrepresentative information within in it that could be construed in violation (thus, probable cause) of Florida RICO statutes; thus,any activity related to that subject property now comes under scrutiny for further issues involving manufacturing and improper filing; and**

**(6) The acts of creating this Assignment were obviously not supervised by an attorney; thus, the issues for probable cause for unauthorized practice of law, also a felony in the State of Florida.**

The State's Attorney may wish to refer this particular set of documents/exhibits to the U. S. Attorney for the Middle District of Florida, the State Bar of Florida, the Florida Supreme Court and the Florida Attorney General for further investigation.  The Second Mortgage is also attached as part of these two Exhibits, noted together as one package containing two alleged violations.

**(OCWEN EX. 67) CFN#2014032964, recorded by presentment on 03-06-2014**
**This document is entitled "Full Satisfaction & Release of Collateral"**
**This document was prepared by Fred Jeune of Ocwen Loan Servicing, LLC. Fred Jeune is NOT a member of the Florida Bar (unlicensed, non-lawyer).**
**Signor: Noemi Morales (WITNESS B has stated she is one of the two signers of the Ocwen team doing the alleged conveyance under orders from Goldman Sachs), signing as attorney-in-fact for MTGLQ Investors, LP as a Senior Contract Manager for Ocwen Loan Servicing LLC.**
**Notary: Christian J. Ferrer (Florida Notary Commission No. FF 062234; still active)**
**Witnesses: Duamel Torres, Kemar Easle (also Ocwen employees)**
**There are issues with this Satisfaction of Mortgage, to wit:**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) This document purports to release Jesus M. Garcia's second mortgage loan, which MTGLQ Investors LP (an affiliate of Goldman-Sachs), claiming to be a holder of a certain mortgage loan (MERS as nominee for then-defunct TB&W), wherein Ocwen (under contract to Goldman Sachs) signers are creating documents that appear to tie the loan to Goldman Sachs, potentially for the purpose of forgiveness and write down of the settlement figure; and**

**(2) Because of the nature of the behavior of the Owen signing team, the two transactions discussed herein could create issues of probable cause for not only unauthorized practice of law, but also of felony perjury under the Florida RICO statutes and for violation of 18 USC 371 for using false documents to defraud the United States Government.**

**<u>Relative to OCWEN EX. 68 and OCWEN EX. 69</u>: Both of the following document Exhibits are attached together with a copy of the recorded mortgages for comparison reviews.  In this instance, the documents are improperly recorded (backwards) and were NOT labeled, "RECORD 1ST" and "RECORD 2ND" to make sure that the Release was the last document recorded in the Thilburg's chain of title (as discussed in *Section Three* of this report).**

**(OCWEN EX. 68) CFN#2014053210, recorded by presentment on 04-16-2014**
**This document was allegedly prepared by an employee of Ocwen Loan Servicing, LLC.**
**Signor: Joel Pires, Contract Mgr. for Ocwen Loan Servicing, LLC, purports to have actual personal knowledge of the release or satisfaction of the Mortgage. Unfortunately, the Affidavit of Lost Assignment that his counterpart, Leticia N. Arias (Ocwen Loan Servicing, LLC employee) claims occurred was not recorded until AFTER this document was recorded, which would be construed to mean that Owen Loan Servicing, LLC didn't attest to the missing Assignment until AFTER THE FACT; thus, the chain of title has now been slandered and compromised.**
**Notary: Derek Garrett (FF63536); the notarial execution is undelineated as to gender.**
**Witnesses: Jason Ayers, Aisha Ansar (also Ocwen employees)**

**(OCWEN EX. 69) CFN#2014053211, recorded by presentment on 04-16-2014**
**Signor: Leticia N. Arias, Contract Mgr. for Ocwen Loan Servicing, LLC, purports to have actual personal knowledge of the lost assignment, when the Affidavit she attempts to attest to was prepared by Christian Lazu, another Ocwen employee, who is asserting the information, more than likely obtained that information from hearsay third-party sources and appears simply to be regurgitating this information on paper for the purposes of document manufacturing, under which no oath appears to have been taken.**
**Notary: Derek Garrett (FF63536); the notarial execution is undelineated as to gender.**
**Witnesses: Jason Ayers, Joel Pires**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**NOTES: The legal description was "cut and pasted" onto Page 1 of 2 of the recorded Instrument, another marker of document manufacturing. The reason for this Affidavit of Lost Assignment is because Ocwen employees were directed to manufacture a 3-page Full Satisfaction & Release of Collateral (CFN#2014053210), which was recorded by mistake BEFORE the Affidavit of Lost Assignment was recorded (CFN#2014053211). Since the assignment is lost, how effective is the Affidavit, especially if the Ocwen employees have no personal knowledge of the facts contained therein?**

**Thus, there is no apparent authority given to these signors, which are construed herein to reflect document manufacturing that contains potential perjury and RICO violations. Due to the fact that the Assignment was recorded AFTER the Satisfaction was recorded, there are now suspect clouds on the Property Owner's chain of title.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

## B. DOCUMENT MANUFACTURING BY FLORIDA FORECLOSURE LAW FIRMS

This segment of the report illustrates (by Clerk's File Number) that Florida foreclosure mill law firms, which also utilize third-party, computer-generated (hearsay) data, are responsible for the preparation of documents (many under the direction of non-lawyers or through direction by the officers of their own law firms) for use in foreclosure processes in Florida, when there were no documents present to assign a loan from one party to another (who then would attempt to foreclosure proceedings) wherein the signors of the document would be acting under the direction of a servicer or other third-party that do not have personal knowledge of the contents of the documents as they were created by the foreclosure mill law firm.   The following file numbers are generated and noted under each law firm's separate heading for the purposes of establishing involvement in RICO-style activities:

*Ablitt-Scofield, P.C.*

See also *Connolly, Geaney, Ablitt & Willard, P.C.*

*Refer to Section Five for a complete discussion on this law firm.*

*Adorno & Yoss, LP*

**(A & Y EX. 1) CFN#2009155767, recorded by presentment on 09-29-2009**
**Signer: Isabel V. Colleran (alleged Adorno & Yoss, L. P. employee), signing as Assistant Secretary of MERS as nominee for defunct Imperial Lending, LLC, attempting to transfer BOTH the Mortgage and the Note to a closed CWABS, Inc. 2007-SEA2 REMIC trust), using "c/o" Adorno & Yoss's address misrepresenting the address of the now-defunct lender (inactive since 09-26-2008).**
**Notary: T. F. Morales (Florida Notary Commission No. 685679; expired)**
**Witness: Mijal Rosenblum (?), Kelly Tingler (?) (names scribbled and illegible)**
**There are multiple issues with this Assignment, to wit:**

> **(1) The manner in which the trust is listed on the Assignment cannot be identified on http://www.secinfo.com; therefore, a random search was conducted generally, which produced the following results under the heading (Issuing Entities with No Demands for Repurchase or Replacement):**
>
> **CWABS ASSET-BACKED CERTIFICATES, SERIES 2007-SEA2**
> **907  194,534,034  100.00%**
> **Taken from EX-99 2; this REMIC was involved in settlement negotiations apparently as part of the Countrywide/Bank of America investor litigation, a pdf Exhibit which has been printed and made a part of this case file;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) MERS does not have an interest in the Note; thus, it cannot transfer something that it does not have an interest in; and**

**(3) The signor, Isabel Vals Colleran (FBN 450472) is a current practicing bankruptcy attorney with Blaxberg, Grayson & Kukoff, P. A.; formerly an Associate with Adorno & Yoss.**

**Thus, the law firm was directly involved in the manufacture and execution of the document whether directly involved in the litigation or not.  The Settlement attached hereto may have resulted in the investors who funded Tammy Jones' loan may have been made whole in part or in sum.  See *Section Six*, Case No. 83 for further analysis.**

*Albertelli Law*

**(ALBERTELLI EX.1) CFN#2014045502, recorded by presentment on April 1, 2014
Signor: Erik DeL'Etoile (Florida Bar #71675; for Joseph Dillon, Florida Bar #95039)
This Assignment of Bid purports to assign the winning sale bid from the same closed 2006-HE5 REMIC that succeeded in foreclosing on the subject property to the same closed 2006-HE5 REMIC as high bidder at sale.  This foreclosure was initiated by the David J. Stern law offices and later counsel appears to have been substituted to continue the proceedings, using a back-dated Stern-manufactured assignment (CFN#2010119244) as reliance to support its foreclosure activity.   Thus, the Assignment of Bid and subsequent Certificate of Sale appear to have been awarded to a party that is NOT the real party in interest.**

**(ALBERTELLI EX. 2) CFN#2014051135, recorded by presentment on April 11, 2014
Signor: Erik DeL'Etoile (Florida Bar #71675; for Joseph Dillon, Florida Bar #95039)
This Assignment of Bid purports to assign the winning sale bid from the same closed REMIC that succeeded in foreclosing on the subject property to the same closed REMIC as high bidder at sale.  This foreclosure was initiated by the David J. Stern law offices and later counsel appears to have been substituted to continue the proceedings, using a back-dated Stern-manufactured assignment (CFN#2010119244) as reliance to support its foreclosure activity.   Thus, the Assignment of Bid and subsequent Certificate of Sale appear to have been awarded to a party that is NOT the real party in interest. It is noted here that final judgment of foreclosure was issued on January 15, 2014 by Circuit Judge Miller and the property was subsequently sold to the trust that claimed ownership in the suit, when there is no evidence of recorded assignment prior to commencement of foreclosure showing the trust as owner.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(ALBERTELLI EX. 3) CFN#2014060369, recorded by presentment on April 30, 2014
Signor: Erik DeL'Etoile (Florida Bar #71675; for Joseph Dillon, Florida Bar #95039)
This Assignment of Bid purports to assign the winning sale bid from what appears to be the servicer for a mortgage loan executed by property owner Anna Appezzato to a closed RALI 2007-Q05 (in care of Nationstar Mortgage's address in Lewisville, Texas). The case history appears to begin in 2009 with a suit to foreclose initiated by Aurora Bank FSB which appears to have been refiled later on behalf of Aurora Loan Services LLC, who, during the pendency of the case, assigned its alleged interest to MERS (ONLY, no lender shown) as CFN#2009118278 on July 28, 2009. In another assignment, Aurora Bank FSB, then assigned its interest to Nationstar Mortgage, LLC (this document was mailed to NTC in Palm Harbor, Florida after being electronically recorded as CFN#2012132497). Nationstar then used this assignment to foreclose on the property, which was later transferred to the trust.

In all three of the foregoing instances, there are robosigning issues with the relevant assignments used to foreclose on the properties.


_**Connolly, Geaney, Ablitt & Willard, P.C. (fka Ablitt Scofield, P.C.)**_

(CONNOLLY EX. 1) CFN#2013168310, recorded by presentment on October 24, 2013
Signer: "T. Moore" (printed name: Tamika Moore aka Tamika L. Moore; alleged employee of Bank of America, N.A.), claiming to be an Assistant Vice President of Deutsche Bank National Trust Company, as Trustee for Vendee Mortgage Trust 2003-2 (an already closed REMIC trust). The document purports to correct a previous assignment (CFN correction NOT shown on this Assignment) in what appears to be a name change. The related file is CFN#2003228890). See *Section Five*, Case No. 4 for further details.
Notary: Dyland Harvill (Texas Notary Commission Expires May 4, 2016)
Witnesses: Shirley J. Harris, Cynthia Adade Fordjour
Issues:
This assignment appears to take place just prior to the filing of the Corrective Assignment. At issue here however is the legitimacy of the Corrective Assignment, based strictly on its manufacturing markers. The employees of Bank of America, N.A. could not possibly have had knowledge of the facts to which they were attesting to. Further, the address of the Assignor (1761 East Saint Andrew Place, Santa Ana, CA 92705) does NOT match the Assignee address (c/o 7105 Corporate Drive, Plano, TX 75024) which is actually Bank of America, N.A.'s address and not the real address of the Trustee. Thus, not even the Trustee had apparent knowledge of the Assignment and the parties claiming to have knowledge of its contents. The examiners maintain that the knowledge of this transaction was limited to someone at Connolly, Geaney, Ablitt & Willard, P.C. (using the same address as Ablitt Scofield, P. C. in West Palm Beach, Florida). After recording, the document was returned to the home office of the law firm (also the home office for Ablitt Scofield, PC) in Woburn, MA.

159 of 326

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Subsequently, Case No. 2013 CA 4077 MF was filed (foreclosure complaint) against the property owners, using this Assignment as support of the law firm's efforts to foreclose on the property.  The Notice of Lis Pendens, dated November 20, 2013 and filed for record as CFN#2013188058 by Michael P. Bruning (Florida Bar #37361) on November 21, 2013, appears to have been based on alleged "facts" contained in the Assignment which was drafted by a law firm employee (unknown) using apparent third-party (hearsay) computer-generated data, unknown to the signors of the document.  Further, the trust in question does NOT appear to exist as a registered REMIC trust according to list of registrants shown the link below:

h t t p : / / w w w . s e c i n f o . c o m / $ / S e a r c h . a s p ?
Find=2003%2D2&R=X&M=X&N=X&I=X&B=X&T=X&List=R#Registrants

While the Circuit Court case appears to have been voluntarily dismissed, it appears that the law firm, in conjunction with employees at Bank of America, N.A., intended to manufacture a document for use with the intent to foreclose on the subject property, which contained misrepresentative statements of correcting an assignment to convey an interest into a closed REMIC trust, in violation of Florida Criminal Code § 817.535.

*Brock & Scott, PLLC*

(BROCK EX. 1) CFN#2014074566, recorded by presentment on 05-28-2014
This Assignment of Bid was filed for record by Brock & Scott attorney Jimmy Keenan Edwards (FBN81855) as the result of a foreclosure proceeding that was originally started in 2009 by another law firm [Greenspoon Marder, P.A., which is also reflected on its heading, whose attorney Marisol Morales (FBN147478, unknown signor for Morales; by the filing of a Notice of Lis Pendens, CFN#2009107085, on July 9, 2009) commenced as Case No. 2009 CA 6851 MF, which was later dismissed for failure to prosecute. Acting on another "manufactured assignment", this law firm was later substituted for Greenspoon Marder, P. A., whose listings herein also contain reference to Case No. 2010 CA 0421 MF.   Final Judgment of Foreclosure was granted on December 4, 2013 by a judge whose signature was an illegible scribble, with no printed name as a reference.  A copy of this action was recorded by presentment on December 6, 2013 (CFN#2013190594) and Greenspoon Marder, P.A. was provided with a copy of this event.  However, this law firm appears to have initiated the sale and presented a Certificate of Title to the trust, who legally did not have an "alleged manufactured recorded interest" until TWO (2) YEARS AFTER the 2010 foreclosure proceedings had been commenced.  It is highly likely that the promissory note offered in the case will reflect manufactured endorsement stamps or note allonges.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

*Butler & Hosch, P.A.*

**(B & H EX. 1) CFN#2009174483, recorded by presentment on 10-29-2009, in contradiction of CFN#2013050690, electronically recorded on 04-11-2014**

**The actual Assignment is marked B of A EX. 1 and is contained within the file.**

**It appears that employees of the law firm of Butler & Hosch, P.A. manufactured an assignment in 2009 that was signed by Bank of America, N.A. employee Serena Harman (see the link at https://www.linkedin.com/pub/serena-harman/64/437/52) with NO witnesses (the examiner believes that all assignments done in Florida require two (2) witnesses), which was recorded prior to the Assignee and its representative law firm commencing a foreclosure action against the property as Case No. 2009 CA 11463.**

**A Notice of Lis Pendens was filed on November 5, 2009 as #CFN2009177357 (by presentment) by Butler & Hosch attorney Shannon Marie Charles (FBN55533), which was later cancelled (the examiner is referring to the Court Docket Sheet for this information and not the actual case files).  There is no public record of any recorded judgment or certificate of sale at this stage of the foreclosure process on the property belonging to David A. and Jeanette E. Rodgie.**

**Four and one-half years later, third-party document scanner/manufacturer Indecomm endeavored to prepare and produce an assignment purporting to transfer interest from defunct Countrywide Bank, FSB (using MERS and its Flint, Michigan mailing address) to Ocwen Loan Servicing, LLC.**

**This assignment was recorded in contradiction to the prevoiusly-noted assignment because someone else using MERS as a catch-all had previously transferred the mortgage to its own servicing entity (which at that time was owned by Bank of America, N.A.) and thus could not have effectuated a transfer to Ocwen via CFN#2014052555 in 2014.**

**If the second transfer did not occur, then Ocwen did not own the mortgage and thus could not have been able to transfer it to Christiana Trust (who was probably looking for a write-off, potentially seeking a "back door" transfer to commit a violation of 18 USC 371); thus, there are issues with chain of title because MERS cannot assign multiple times from the same lender to different parties.  This is typical of a "right hand doesn't know what the left hand is doing" scenarios, a typical marker of document manufacturing.  These issues will become manifest if Christiana Trust attempts foreclosure on this property unless the entire process is stopped through prosecution of the parties involved.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(B & H EX. 2) CFN#2010070301, recorded by presentment on 05-18-2010**
**Document Prepared by: Unknown party at Butler & Hosch, P.A.'s Dallas, Texas office**
**Signer: Kathy E. Sanchez (Name: Kathy E. Sanchez - Texas Notary ID: 5045293; commission still active until May 2, 2017; P. O. Box 867463, Plano, TX 75086; Collin County, TX; Bonding Company: NNA Insurance Services; Surety Company: Merchants Bonding Company (Mutual); claiming to be a Vice President of MERS as nominee for AMCAP Mortgage, Inc. (which ceased doing business in Florida on December 4, 2007) in an Assignment of Mortgage executed on May 11, 2010.**
**Notary: Jennifer J. Swoope (Texas Notary Commission ID: 125243609; 4502 Kensington Court, Grand Prairie, TX 75052; Commission Expires 02-11-2018; Dallas County, American Association of Notaries, Inc.; Surety Company: Western Surety Company)**



It appears that this Texas Notary performs mobile closings of residential real estate at present; however, her former employers included ServiceLink (LPS now known as a Black Knight company, Vendor Resource Management) and Butler & Hosch, P.A., which means that it was highly likely that Swoope and Sanchez (the Signer) were employees of Butler & Hosch, P.A. and that Sanchez was NOT a Vice President of MERS as she claims (according to MERSCORP/MERS policies, signers of documents claiming to be a Vice President are actually supposed to be a Vice President of the company that has an executory contract with MERSCORP/MERS; this obviously was NOT the case). Thus, the signer, as well as the information contained within the language of the Assignment, is suspect for perjury under Florida RICO statutes. There are other issues with this Assignment, when compared to what is stated in the Complaint, to wit:

(1) MERS does not have an interest in the Note (by its own admission); thus, it cannot transfer something it doesn't own;

(2) The Assignee of this Assignment is Chase Home Finance, LLC, a JPMorgan Chase servicer. Instead of making sure that the documentation matched up on the proffered Note on the Complaint, the indorsement-in-blank under the Borrower's signatures on Page 3 of 3 of the Note was rubber stamped "VOID" and another rubber stamp states "see attached allonge";

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(3) The page following appears to be a reverse image of the previous page, which is accompanied by an unidentified bar code and the "VOID" stamp does not show through as the rubber stamped, "see attached allonge" does show through;

(4) The page following the blank page (highly likely the back side of the Note) is entitled: ENDORSEMENT ALLONGE TO NOTE.  This page is dated the same date as the Note (03-09-2007) and is signed by Judith Willette who purport to be an "Office Manager" of AMCAP Mortgage, Inc. and it further appears that the endorsement is a special indorsement that shows an affixed rubber stamp that says "BSM Financial LP" (and NOT Chase Home Finance, LLC). At this juncture, the Assignment of Mortgage (and Note) do NOT appear to agree with each other;

(5) The next page appears to be nearly a "mirror image" of the AMCAP Mortgage, Inc. previous endorsement page.  It shows a "John Wioht" (spelling illegible) as Vice President of BSM Financial, LP, providing a special endorsement to JPMorgan Chase Bank, N.A. (by rubber stamp), dated "03-13-07", as if to tie all of the parties together; however, the identical use of the same parties' endorsement page makes the two pages suspect for manufacturing for the purposes of attempting to create a chain of custody of the Note;

(6) On the following page, there are two (2) "Allonges", BOTH are dated 5/25/2007. The first "Allonge" purports to transfer the Note from JPMorgan Chase Bank, N.A. to Chase Home Finance, LLC and the second "Allonge" purports to be an indorse-ment-in-blank from Chase Home Finance, LLC to an unknown entity.  The second Allonge appears to be signed by "Angela Nolan", whose deposition transcript is included as a USB Exhibit on the flash drive by reference herein;

(7) The Closing Date of the Trust REMIC Plaintiff is May 30, 2007; however, even though the endorsements issued from Chase are dated prior to the Closing Date, there is nothing in the Complaint to indicate the effective date of transfer into the Trust REMIC; and

(8) Still, there is nothing in the foregoing Assignment of Mortgage (and Note) showing that the trust REMIC was the Assignee.

(B & H EX. 3) CFN#2012118594, recorded by presentment on 08-14-2012
Signer: Mary Ann Hierman (Bank of America employee and known robosignor), signing as an Assistant Secretary for then-defunct Countrywide Home Loans, Inc. under the direction of the law firm of Butler & Hosch, P.A. (who prepared the document for execution by Bank of America employees in Ventura County, California), as Assignor, to a closed (June 29, 2007) Deutsche Alt-A Securities, Inc. 2007-OA4 series REMIC trust.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Despite the fact this Assignment purports to correct the Assignee's name, the REMIC series trust is still the same and the Closing Date is still what it is, closed; thus the transfer was void. Butler & Hosch, P.A. drafted this document and caused it to be recorded to effectuate standing for their Plaintiff in Case No. 2009 CA 9016.    The Examiner observed that the copy of the Note proffered with the Complaint contained no endorsements to the trust. At the time of the filing of this Complaint, the Examiner believes that the Trust REMIC could not have accepted the note into the pool; thus, the Complaint verification was false. The recording discussed here appears to contain false and misrepresentative information and constitutes probable cause under Florida Criminal Code Section 817.535 and because of multiple actors, would be subject to Florida RICO violations as well.   The property was sold at auction for $100 to the trust, which appears to have unjustly enriched itself at the expense of the property owner, on October 21, 2014.

**(B & H EX. 4) CFN#2009125860, recorded by presentment on 08-07-2009**
This document becomes pertinent within the statute of limitations for prosecution of felony statutes due to the law firm's: (a.) drafting of the document; (b.) causing the document to be recorded; and (c.) relying on the document as a means to foreclose on real property using a manufactured document that contained false and misrepresentative information under Florida Criminal Code Section 817.535.   Refer to *Section Six*, Case No. 19 for details. In this instance, Robert J. Hosch, Jr. himself signed the Assignment as VP of MERS.

**(B & H EX. 5) CFN#2012099400, recorded by presentment on 07-05-2012**
This Assignment of Mortgage is attached to the Complaint to Foreclose on a property owned by Amanda Mejia and Sixto Urrutia, wife and husband. It appears to have been drafted by Butler & Hosch, P.A. of Orlando, Florida for the purposes of effectuating foreclosure on their property.   The document appears to have been forwarded to Bank of America, N.A. for signature (two witnesses' names customarily seen in assignments are missing), under penalty of perjury under Texas law.  Michelle Reece claims to have signed the document in her "authorized capacity" with no verification as to what her capacity is, other than a title of Assistant Vice President.

If Ms. Reece knew of all of the factors involved in the assignment, she would have known that the Closing Date of the Harborview Mortgage Loan Trust Series 2004-2 was April 30, 2004 and that there is now way that Bank of America, N.A. could have successfully conveyed the note and mortgage into the pool over eight (8) years too late.  More details can be obtained at *Section Six*, Case No. 20.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

*Choice Legal P.A. (fka Marshall C. Watson, P.A.)*

**(CHOICE EX. 1) CFN#2009091671, recorded by presentment on 06-11-2009**
**This Assignment was documented outside of the target date parameters due to the issues involved with the Watson law firm, represented by attorney Alan Schwartzseld (Florida Bar #57124), acting for Tara Castillo (Florida Bar #722901), wherein MERS as nominee for Countrywide Bank, FSB is attempting assignment to an already-closed LXS 2007-16N REMIC trust fund. The document was signed by Caryn A. Graham, who claims to be an Assistant Secretary for MERS; however, in realty, Graham was an attorney with the Watson law firm, as noted in the following paragraph:**

**Caryn Alina Graham,** P.O. Box 654436, **Miami, suspended** for 60 days, effective Dec. 13, 2013, following a Dec. 5, 2013, court order. (Admitted to practice: 2001)  As a supervising/managing attorney for a law firm, Graham failed to properly manage some aspects of the fast-growing company. It resulted in numerous problems, including: failure of some attorneys to appear in court before judges in approximately 22 cases; failure to timely cancel foreclosure sales and/or failure to file a publication notice and pay the clerks fees; failure to promptly notify the court or file a substitution of lead counsel for those cases assigned to attorneys who left the law firm, and notaries notarized signatures executed outside their presence. (Case No. SC13-1931).

**Thus, Graham initiated and participated in the manufacture of the assignment which U. S. Bank as Trustee used to foreclose on the property owner in 2013, within the target period. This document is suspect for probable cause under the Florida Criminal Code Section 817.535.  See the balance of the case under *Section Six* of this report.  Attached to the case file is a 51-page Affidavit of Lynn E. Szymoniak, Esq. (as Defendant's expert witness).**

**The foregoing case was adjudicated by Judge Miller (Case No. 2009-CA-6366) on June 3, 2013, almost four (4) years to the date the assignment was recorded in the real property records of Osceola County, Florida.  The examiners believe that Nationstar Mortgage LLC was also involved in this foreclosure.  The property has been liquidated and Certificate of Title issued on October 22, 2013, to the detriment of the property owner, Sandra T. Cajina.**

**Thus, someone from OceanFirst Bank would have had to execute an assignment representing its interest in Columbia's loan to Dinardo.  Instead, Chase on behalf of its own interests in its Bear Stearns acquisitions, caused the document to be manufactured using its own employees.  The concern here is WHY the document was created on January 11, 2012 but not filed for record in Osceola County until January 9, 2013, nearly a year later, prior to the commencement of suit to foreclose, using MERS to cover what the examiner believes is a "multitude of flaws" connected with not only with the chain of title but also with the chain of custody of the note, something MERS was not directly or intimately involved with.**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In the matter of GreenPoint Mortgage Funding, Inc. (closed in 2007 by its purchaser, Capital One Financial Corp.), **CFN#2012104688** appears to indicate that the document was manufactured in Fort Lauderdale, Florida by an attorney on behalf of a law firm and notarized and executed on **May 22, 2012** in Ventura County, California, more than likely by employee of LPS, claiming to be an Assistant Secretary of MERS as nominee for the defunct entity. News of GreenPoint's closing can be found at the following link shown below:

**http://www.bloomberg.com/apps/news?pid=newsarchive&sid=a4f5h6jm4x60**

In a number of instances during this forensic examination, it was also noted that JPMorgan ChaseBank, N.A., in concert with Nationwide Title Clearing (**CFN#201205199**), caused to be manufactured an apparent self-serving assignment to Deutsche Bank National Trust Company as Trustee for Long Beach Mortgage Loan Trust 2006-4, whose address was shown as that of Chase's document archive (and suspected document manufacturing) plant in Monroe, Louisiana. In this instance, Chase is claiming "attorney-in-fact" status to give it the authority necessary to effectuate the document's manufacture; however, the signor of the document (Kadesha Slaughter) does not appear to have personal knowledge of the information that "E. Lance" of Nationwide Title Clearing appears to have been privy to, if in fact such information was indeed accurate.

**On March 5, 2010, over (4) years BEFORE the foregoing assignment was recorded, Lea W. Vandergrid (FBN573175; on behalf of Marshall C. Watson, P.A.; 1800 N.W. 49th Street, Suite 120, Fort Lauderdale, FL 33309) filed a Notice of Lis Pendens in the real property records of Osceola County, Florida (CFN#2010032277) when in fact, her REMIC client was not yet assigned the note and mortgage.  This Notice of Lis Pendens followed another Notice of Lis Pendens, filed on March 2, 2010 as CFN#2010030130 by attorney Giselle Hughes (FBN66821). As a side note to this event, Marshall C. Watson's bar license was suspended in 2013 and his firm name was changed to Choice Legal, P.A.**

**It further appears that the REMIC changed law firms in 2013 to Robertson, Anschutz & Schneid, P.L. (6409 Congress Avenue, Suite 100, Boca Raton, Florida 33487), who then filed another Notice of Lis Pendens, signed by one of its representing attorneys, Michelle Lewis (FBN70922).  There has been no judgment rendered to date in this matter.  The intended conveyance in 2014 however, appears to indicate that the most recent Notice of Lis Pendens was filed BEFORE the assignment, conveying ownership interest into the REMIC, which failed based on previous assertions of PSA violations.**

**It appears that there may have been some confusion as to how one REMIC was supposed to convey an allegedly non-performing loan into another REMIC, both instances in which Bank of New York Mellon was acting as Trustee.  It is suspected that Bank of New York Mellon has no knowledge of whether the Borrower is ever in default.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(CHOICE EX. 2) CFN2012083721, recorded by presentment on 06-01-2012
Return To: JPMorgan Chase Bank, N.A.
c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683
Signor: Ingrid Whitty (who claims to be a Vice President of MERS as nominee for Resmae Mortgage Corporation), issuing a release of lien which may constitute the unauthorized practice of law.
Notary: Amy Gott (Louisiana Notary Commission No. is illegible; lifetime)
Witnesses: Jonita Johnson-Carter, George Standifer
This Satisfaction of Mortgage is based on a MERS-originated mortgage (and note) executed by Alex Grigoryev and recorded in the real property records of Osceola County, Florida as on 12-16-2005 in favor of Resmae Mortgage Corporation (CFN#2005278448).  Only the notary (Joaquin Colon) witnessed the mortgage.  At this juncture, there are prevalent issues with the chain of title, to wit:

(1) In 2008, the Law Office of Marshall C. Watson, by and through its attorney, Nathalie F. Demesmin, prepared a document for signing by Chase employees at Chase's main headquarters in Columbus, Ohio.  The intent was to foreclose on the property in the name of Chase Home Finance, LLC.  The Assignment was signed by known robosignor Christina Trowbridge, who claimed to be a Vice President of MERS when in fact, she was an employee of Chase, who for all intents and purposes directed Trowbridge (no other witnesses) to sign the document which the examiner believes contains false and misrepresentative information (CFN#2008183434). This assignment has no effective date (left blank), a marker of document manufacturing.

(2) The Marshall C. Watson law firm filed a Notice of Lis Pendens on the property by and through their attorney representative, Natalie S. Pappas (FBN 26721) for attorney Karen A. Thompson (FBN96440) on November 17, 2006, on behalf of U. S. Bank, N.A. as Trustee for a Lehman Brothers 2006-BC2 REMIC trust (CFN#2006277877).

At this point in the Borrower's chain of title, the Lis Pendens appears to have slandered title to the property because there was no action taken even though a case number had been assigned (2006 CA 2697 MF). The apparent cloud on title exists because there was no recorded assignment to the Lehman Brothers REMIC trust in the real property records as noted.

(3) In 2008, the Marshall C. Watson law firm filed another Notice of Lis Pendens on the property by and through its attorney representative April Glover Harriott (FBN37547), recorded by presentment as CFN#2008159526 on 10-06-2008, claiming to represent Chase Home Finance, LLC.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) It is evident to the examiner that Chase employees and E. Lance from NTC
had no prior knowledge of the facts in the chain of title because the Satisfaction
was drafted and signed naming MERS as nominee for the original lender, when
in fact, the mortgage and note were assigned to Chase Home Finance, LLC
which was NOT listed on the Satisfaction of Mortgage document.  Instead, Chase
employees executed the Satisfaction (with no apparent attorney assistance) and
further appear to have clouded the Borrower's chain of title by recording a release
of lien from a party that was not entitled to issue such a release.**

**Thus, there are issues with the chain of title and the numerous potential clouds that exist on
it, due solely to document manufacturing and what appears to be unauthorized practice of
law issues due to the lack of attorney supervision on the Satisfaction of Mortgage.  Had an
attorney examined the release, it would have been noted that Chase Home Finance, LLC
was the alleged party in interest at the time.  As a result, the borrower, whose title appears
to have been slandered, is now stuck with these issues until he can quiet his title.**

**(CHOICE EX. 3) CFN#2012091746, recorded by presentment on 06-18-2012**
**This document was recorded under the direction of the Marshall C. Watson law firm by
Bank of America employees, who attempted to file a Corrective Assignment of Mortgage on
behalf of MERS as nominee for Ascent Home Loans, Inc. (whose name at the time had
changed to Loan Simple, Inc. in its Florida Registration; as Assignor) to a closed Deutsche
Alt-A 2007-OA4 REMIC trust, as Assignee, whose Closing Date was June 29, 2007.**
**Signer: Cecilia Rodriguez (alleged Bank of America employee signing as an Assistant Sec-
retary of MERS and known robosigner)**
**Notary: S. Greenwald (California Notary Commission Expired June 25, 2014)**
**Witnesses: Dominique Johnson, Mary Ann Hierman (both alleged Bank of America em-
ployees and known robosigners)**
**NOTE: This Corrective Assignment was filed to replace CFN#2011002920 (attached hereto
as part of the exhibit file.)**

**(CHOICE EX. 4) CFN#2012091871, recorded by presentment on 06-18-2012**
**This document was recorded under the direction of the Marshall C. Watson law firm by
Bank of America employees, who attempted to file an Assignment of Mortgage on behalf of
their employer, Bank of America, N.A., as Assignor, to a closed Deutsche-Harborview 2006-
9 REMIC trust, as Assignee, whose Closing Date was October 4, 2006.**
**Signer: Kevin Middleton (alleged Bank of America employee signing as an Assistant Vice
President and known robosigner)**
**Notary: Maxine P. Luster (Texas Notary Commission Expired 01-29-2014)**
**Witnesses: Jimmy Duran, Francis Kiiru (both alleged Bank of America employees and
known robosigners)**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(CHOICE EX. 5) CFN#2013004592, recorded by presentment on 01-09-2013**
**Chase employees attempt to assign a mortgage using MERS as a nominee for defunct Columbia Home Loans LLC+ (2008) into a closed 2007-HE3 Bear Stearns REMIC trust. The document preparer was NTC in Florida. The document was returned to Choice Legal, P.A. at its Fort Lauderdale, Florida address. Original litigation was filed on 09-26-2008 (CFN#2008155109) by Ingrid G. Fadil (FBN 40977) on behalf of Mark Olivera (FBN 22817) for the Watson Law Firm.  Watson's client was LaSalle Bank, N.A. (Case No. 2008 CA 8660). At the time the suit was filed, there was no recorded assignment in the real property records of Osceola County, Florida to validate a recorded interest in property titled to Carmela Dinardo from the original lender, Columbia Home Loans, LLC. A history of this company is provided here wit (as noted in http://www.wikinvest.com/stock/OceanFirst_Financial_(OCFC)/Subsidiary_Activities)**

**(CHOICE EX. 6) CFN#2013004594, recorded by presentment on 01-09-2013**
**It appears that Nationstar employees, in conjunction with Choice Legal Group, P.A., caused the manufacture of an assignment (by Nationstar employee Alex Choi) and signed by other Nationstar employees in an attempt to use MERS (as nominee for First Horizon Home Loan Corporation) to assign a mortgage (using MERS's Reston, Virginia address instead of First Horizon's real address in Irving, Texas) to a closed First Horizon 2006-FA1 REMIC trust.  This attempted assignment was done prior to the execution of a Notice of Lis Pendens (CFN#2013182966) in Case No. 2013-CA-3947, which is set for hearing in December, 2014, filed by Choice Legal's Faith Dominique Everett (FBN96339), in an attempt to take the home using an allegedly "manufactured" recorded assignment.**

**(CHOICE EX. 7) CFN#2013014106, recorded by presentment on 01-25-2013**
**Signor: John Brady, who purports to be an Assistant Secretary of MERS as nominee for CIT Group/Consumer Finance, Inc. in what appears to be an assignment of a mortgage to a closed Bear Stearns 2006-HE6 REMIC trust.   Someone in the law offices of this entity prepared the document for signing purposes; thus, the actual knowledge of this information appears to have been kept from the signers.  The document alleges that the lender is headquartered at Metro Detective Agency in Danville, Illinois and that the trust is headquarted at JPMorgan Chase's main offices in Columbus, Ohio.  The document appears to have been executed in Denton County, Texas as an assignment benefitting JPMorgan Chase Bank, N.A. by employees of JPMorgan Chase Bank, N.A. for use by the Watson law firm in litigation against Osceola County Property owners Melvin L. Ewen II and Tracy Ewen.**

+Columbia Home Loans, LLC was acquired by the (OceanFirst Financial) Bank on August 18, 2000 and operated as a mortgage banking subsidiary based in Westchester County, New York. Columbia originated, sold and serviced a full product line of residential mortgage loans primarily in New York and New Jersey. Loans were originated through retail branches and a network of independent mortgage brokers and, to a lesser extent direct Internet sales. Columbia sold virtually all loan production in the secondary market or, to a lesser extent, to the Bank. In September 2007, the Bank discontinued all of the loan origination activity of Columbia, the offices were closed and all employees were either discharged or reassigned. The Bank retained Columbia's loan servicing portfolio.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Court records indicate that a 2014 case filed by Watson law firm named successor Choice Legal, P.A. is open and active as Case No. 2014 CA 1891. Two previous cases filed by the Watson law firm in 2008 (Case No. 2008 CA 11059, by a different trustee claimant) and again in 2013 (Case No. 2013 CA 2626) went nowhere and appeared to have wasted the Court's time and resources.

(CHOICE EX. 8) CFN#2013171010, recorded by presentment on 10-30-2013
Signor: Susan Lindhorst, claiming to be Assistant Secretary for Bank of America, N.A. when in fact she is employed by Nationstar Mortgage in Scottsbluff, Nebraska.
Notary: Helen Scott (Nebraska Notary Commission expires 10-25-2016)
Witnesses: Angel Bolton, Angela Sanchez
Document prepared by E. Lance of Nationwide Title Clearing; sent to Choice Legal P.A. after recording.
This restated Assignment of Mortgage purports to assign a mortgage from Bank of America to a closed Structured Asset Mortgage 2005-AR7 REMIC trust under the direction of Choice Legal Group, P.A., who requested that this assignment be recorded. Markers of robosigning and document manufacturing are present. The recorded files on the property do not indicate legal action being commenced as of the release of this report.

(CHOICE EX. 9) CFN#2013171013, recorded by presentment on 10-30-2013
Signor: Barry Coon, for Bank of America, N.A. by Specialized Loan Servicing, as Attorney-in-Fact
Notary: Jackie Hartman (Colorado Notary Commission #19934011619)
This restated Assignment of Mortgage purports to assign a mortgage from Bank of America to a closed Deutsche Alt-A Securities, Inc. 2007-OA4 REMIC trust under the direction of Choice Legal Group, P.A., who requested that this assignment be recorded. The witnesses signatures and printed names were illegible, markers of robosigning and document manufacturing.

_**Clarfield, Okan, Salamone & Pincus, P.L. (West Palm Beach, Florida)**_

(CLARFIELD EX. 1) CFN#2012163204, recorded by presentment on 11-06-2012
Document Prepared by: Courtney A. Ryan (M & T Bank's "Lien Release" Department employee)
Signer: Meghan Halpin (alleged employee of M & T Bank's "Assignment" department), signing as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. as nominee for defunct Countrywide Home Loans, Inc., using MERS's "Metro Detective Agency" address in Danville, Illinois address in an attempt to self-assign the Mortgage ONLY!
Notary: Bess E. Katerinsky (New York Commission expired 01-12-2013)
Witnesses: None (two may be required in Florida)

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Issues: Establishment of pattern of alleged perjury under Florida RICO statutes, involving known suspect Florida foreclosure mill law firms and M & T Bank.  See the listing under (M & T EX. 4) heading.  This Assignment was affixed to Case No. 112 under *Section Six* (Chavez), which Clarfield was handling.**

**(CLARFIELD EX. 2) CFN#2013166552, recorded by presentment on 10-22-2013**
**This two-page Assignment of Mortgage appears to have been executed on September 20, 2012 under the direction of this law firm for the purposes of effectuating a foreclosure against a property belonging to Viviana Morales of Kissimmee, Florida.  After recording, the law firm requested the original be returned to them.**
**Signor: Lynne Ruberto, who purports to be an Assistant Secretary of MERS, signing as nominee for American Brokers Conduit that went belly-up in 2007, using her position at AMS Servicing in Depew, New York (which coincidentally is where HSBC Bank USA, N.A.'s headquarters is located).  The assignee is Bank of New York Mellon Trust Company, N.A. as Grantor Trustee of the Protium Master Grantor Trust, whose address is in c/o Statebridge Company, LLC (4600 South Syracuse Street, Suite 700, Denver, CO 82037).  Research on the signor produced the following information:**



**Lynne Ruberto, AVP of Default Mortgage Operations at AMS Servicing, Depew, New York**

Previous
.    **AMS Servicing, HSBC Mortgage Corporation, Marine Midland Bank**
Education
.    **Bryant and Stratton College**
https://www.linkedin.com/pub/lynne-ruberto/83/b79/5b3

**On September 13, 2012, Clarfield-Okon attorney Matc Steven Ruderman (Florida Bar #899585), executed a Notice of Lis Pendens, Case No. 2013 CA 2384 MF and caused it to be filed as CFN#2013100362, but did not record it until 07-01-2013 (over three months BE FORE the assignment itself was recorded).  The case is still in pendency.**
**Notary: Lisa J. Costa (New York Notary Commission #01CO6037786; expired 03-30-2014)**
**Witnesses: Lisa Costa, Pamela Gibson, Tracy Berry**
**It would be impossible for the preparer of this assignment (in Florida) to accurately have the facts even if obtained from a third-party computer software platform, as that would be hearsay information.  Further, all the parties knew or should have known that American Brokers Conduit has been defunct since 2007; thus, the parties are using the "MERS" system to hide the real parties in interest behind a defunct lender to assign it to a trust that may not be able to accept it.  The full case file has been requested for further examination.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**CFN#2014053506, recorded by presentment on 04-17-2014
This Notice of Lis Pendens was filed by Marc Ruderman (FBN899585) on behalf of
Clarfield, Okon, Salomone & Pincus, P.L. appearing to represent M & T Bank against a
case reference in *Section Six* of this report as Case No. 11.  An Assignment of Mortgage
(referenced under the _M & T Bank_ heading) appears to have been self-assigned previous to
the filing of this foreclosure complaint with the intent to deprive the homeowners of their
property.  See the Assignment related to this Complaint as CFN#2014029895 under _M & T
Bank_.**

**_Daniel C. Consuegra (Law Firm)_**

**(CONSUEGRA EX. 1) CFN#2009069179, recorded by presentment on 05-04-2009
This assignment was recorded nearly a month AFTER the Notice of Lis Pendens had been
filed (CFN#2009053970; on 04-06-2009; Case No. 2009 CA 3856) by Justin T. Pikramentos
(FBN43496).  This would indicate that the MERS assignment to the trust vehicle was done
AFTER the filing, which means that by notice, the trust did not have possession of the note
with the right to enforce it before that time.  Consuegra's attorney continued the foreclo-
sure proceedings anyway.  The property owner's name is Tracy A. Gilbert.  See *Section Six*,
Case No. 8 for complete case analysis.**

**A final judgment was granted by August 20, 2014 by Judge Miller (for the Consuegra Law
Firm, Peter Cirrinicione, FBN98332) and the document was recorded in the real property
records as CFN#2014122126.**

**Issues: The party plaintiff or the substituted version thereof relates to the trust series 2005-
63.  The Closing Date for this trust entity was October 28, 2005.  According to the trust
documents, there were to be three true sales between the loan originator and the trustee
and none of these apparently occurred.  The depositor has 90 days to make sure all correct-
ed loan documents are in the pool and that final date would have been or or about January
31, 2006; thus, the 2009 and 2013 assignments to the trust were of no consequence and were
void according to the trust's own governing documents.**

**There is a genuine possibility that the Borrower's loan was paid in full sometime during
2006; thus, the documents generated by Plaintiff's counsel and relied upon by the Court
are considered fraudulent by the examiner and in violation of Florida Criminal Code §
817.535. How it is that Bayview ended up executing the second assignment is unknown.
With all of the parties acting in concert to produce these documents, it is highly likely that
Florida RICO issues are present.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Signor:** David Perez, Assistant Vice President of MERS (MERS does NOT designate such titles) as nominee for Countrywide Home Loans, Inc.
**Notary:** Melissa Flanagan (Texas Notary Commission Expired 11-17-2009; recommissioned on 11-17-2009; voluntarily terminated on 10-31-2011)
**Witnesses:** Jessica Villa, Louis Taylor
**Issues:** Prepared in Florida, executed in Texas; lack of personal knowledge by signors; undelineated notarial execution; numerous document manufacturing markers present


**(CONSUEGRA EX. 2) CFN#2010117650, recorded by presentment on 08-16-2010**
This Assignment was recorded in concert with Case No. 2008 CA 10129 (Smithson), as shown below in CONSUEGRA EX. 4.  Case supplements have been provided with this Assignment of Mortgage.  The Assignment was generated by the Consuegra law firm during the pendency of the case, which makes it suspect for deliberate manufacturing with the intent to deprive the homeowners of their property, probable cause for violation of Florida Criminal Code § 817.535.
**Signer:** Christopher J. Bossman (alleged Manager of Business Relations) of MERS as nominee for DHI Mortgage Company, Ltd.
**Notary:** Tammy Martinez (Florida Notary Commission DD 885786; expired 05-3-2013)
**Witnesses:** Kym Jensen, Missy Lee Hoffman
There are multiple issues with this Assignment of Mortgage, to wit:

    (1) The company is based in Texas, yet the signatures were notarized in
    Hillsborough County, Florida;

    (2) There is no such designated title of "Manager of Business Relations"
    designed by MERS or MERSCORP to anyone (against policy);

    (3) A LinkedIn search showed Bossman to be a Senior Analyst at
    American Mortgage Consultants, Inc. and NOT who Bossman claims he is;

    (4) It is implied that person(s) within the Consuegra law firm orchestrated
    and directed the execution of this document; and

    (5) The Closing Date of this REMIC trust was October 30, 2006; thus,
    the assignment is void under New York Estates, Powers & Trusts § 7-2.4.


While Adorno & Yoss initiated this action, Consuegra manufactured two (2) assignments during the pendency of the case (one of them Corrective, as shown below).  Due to the apparent involvement of third parties, probable cause for Florida RICO violations also exists.  The Final Judgment of Foreclosure was granted in 2014, which makes this statutorily viable for prosecution.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(CONSUEGRA EX. 3) CFN#2013155081, electronically filed on 10-01-2013**
**This 3-page Assignment (prepared by Consuegra himself) purports to self-assign a mort-**
**gage to Suntrust Mortgage, Inc. by HSBC Bank USA N.A. as Trustee for a <u>closed</u> Suntrust**
**Alternative Loan 2006-1F REMIC trust.  The parties executing this assignment are clearly**
**employees of the Assignee, Suntrust Mortgage, Inc. as attorney-in-fact.**
**Signer: Kip D. Judson, who claims to be Vice President of SunTrust Mortgage, Inc. as at-**
**torney-in-fact for the SunTrust 2006-1F REMIC Alternative Loan Trust, whose Closing**
**Date was listed in the PSA as May 30, 2006.  The Assignment was executed 09-25-2013, over**
**seven (7) years too late to be accepted, contravening New York trust law.**
**Notary: Dean Liverman (Virginia Notary Commission #7509255; active until 11-30-2015)**
**Witnesses: Ava Tucker, Shaundra Hunt (alleged SunTrust employees)**
**NOTES: Shapiro & Fishman, LLP's Kimberley A. Humphrey (FBN 0008745) filed this ac-**
**tion on behalf of Hollan M. Fintel (FBN 0847631); recorded by presentment on 01-02-2009**
**as CFN#2009000646 (Case No. 2008 CA 12144 MF; *HSBC Bank USA, N.A., as Trustee for***
***the SunTrust Alternative Loan Trust 2006-1F v. Curtis Saunders et al*).  Final Judgment was**
**recorded on 08-19-2009 as CFN#2009132206 and later vacated on 09-22-2011.  The forego-**
**ing assignment was filed in tandem with another case filing on the same property, A 2013**
**CA 3559 MF.  This time the case is styled as *SunTrust Mortgage, Inc. v. Curtis Saunders et al***
**yet the Note and Mortgage (according to the 2009 Assignment, contravened New York trust**
**law); thus, this new assignment is still apparently invalid and constitutes probable cause for**
**violation of Florida Criminal Code § 817.535.   Consuegra's Rebecca N. Rodimer (FBN**
**102819) filed the Complaint and the Notice of Lis Pendens.  The Note shows an undated,**
**restrictive endorsement to SunTrust Mortgage, Inc. from now-defunct MFC Mortgage, Inc.**
**of Florida; and a second undated indorsement-in-blank from Suntrust Mortgage, Inc.,**
**which may render it bearer paper, but the intent appears that Suntrust had transferred the**
**Note elsewhere, otherwise, why the indorsement-in-blank?  This case is still OPEN with two**
**suspect Assignments being recorded, one in tandem with the filing of the Complaint, which**
**is suspect for manufacture with intent.**


**(CONSUEGRA EX. 4) CFN#2013163726, electronically recorded on 10-16-2013**
**This 3-page Assignment appears to have been manufactured by Bank of America, N.A. or**
**ReconTrust Company, N.A. employees in Ventura County, California for the purposes of**
**effectuating foreclosure on a property titled in the name of Leroy G. Smithson, Sr. and**
**Marlene J. Smithson.  It appears as if a previous assignment was recorded to effectuate**
**foreclosure upon further research of the real property records.  This Corrective Assign-**
**ment of Mortgage appears to have been generated by the Consuegra law firm for execution**
**by Bank of America employees with the intent to defraud the homeowners by the recording**
**of a document containing false and misrepresentative information, probable cause for vio-**
**lation of Florida Criminal Code § 817.535.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The original Assignment of Mortgage, filed by presentment on 08-16-2010 as CFN#2010117650. This 4-page Assignment was filed 3 weeks AFTER the suit to foreclose was filed (as 2008 CA 10129 MF). The Notice of Lis Pendens was not filed by Consuegra but rather by Clive M. Ryan of the law firm of Adorno & Yoss LLP in Miami, Florida. The 2010 assignment purports to assign the mortgage and note to Bank of New York as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2006-J7, Mortgage Pass-Through Certificates Series 2006-J7.

The signer of the document, Christopher J. Bossman, who holds the title of "Manager of Business Relations" (which is not a title given for use in assigning MERS-originated Mortgages) is signing for MERS as nominee for DHI Mortgage Company, LTD which is still in business. DHI representatives could have executed this assignment on their own, but instead, other individuals who claim to represent DHI (via MERS as nominee) attested to this document in Hillsborough County, Florida. These people are not specifically identified as DHI employees; thus, only Consuegra himself could potentially identify who these signers are witnesses (Kym Jensen , Missy Lee Holland) are. The notary on the 2010 Assignment was Tammy Martinez (Florida Notary Commission #DD885786). There are indicators on the document that could lead one to believe that the signers are Bank of America employees, yet they are not specifically identified, which leads the examiner to believe that the signers have no knowledge of the facts to which they are attesting. While in Florida, notaries public are only required to acknowledge as to being physically present before the signers, it is highly likely that this notary may not have kept a notary log book or journal of the transaction. Other issues involving potential manufacture of documents include a filing by Shan P. Massand (FBN13727) of Adorno & Yoss LLP (CFN#2009121352) that indicates the Plaintiff is dismissing Count III of the Complaint, "Reestablishment of Note", as it claims to have found the original. This is highly unlikely considering the eNote scenario promulgated by MERS, wherein the original notes are scanned into the MERS System and then shredded; thus, such a count would not have been necessary to be included unless a "copy" of the original had just been manufactured. Considering the suspect behaviors involved in the robosigning scandal and the recent disbarment of David J. Stern and imprisonment of Lorraine Brown of DOCX, forensic measures should have been employed to examine the age of the paper, watermarks, "photoshopping" indices and pixelation factors as part of identifying the legitimacy of this "new-found note". The examiners believe this was a ploy to bring fraud on the court, given the issues presented in the *U. S. Bank v. Harpster* case in Pasco County, Florida. Consuegra's "prepared assignment" was invalidated by the fact that Bank of New York changed its name to Bank of New York Mellon; thus, another assignment, CFN#2013163726, had to be created and recorded to give "legitimacy" to the bank's campaign that it indeed possessed the note. Unfortunately, however, the CLOSING DATE of the trust (where it could accept the original documents) was October 30, 2006. The recorded assignment would have had to have been proffered to the Trustee by the Depositor, along with the note, by no later than December 31, 2006 to comply with New York trust law regulations and the trusts own governing documents.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The Final Judgment that was issued by Osceola County Circuit Judge Jeffords Miller (CFN#2014007539; filed by presentment on 01-16-2014) is believed by the examiner to have been predicated on fraudulent claims of Plaintiff's counsel and that the intent of the trust and its officers was to violate 18 USC 371 (via income tax evasion).  It is also highly likely that this CWALT, Inc. trust and its "certificateholders" were made whole by third-party payers and thus the Borrowers were never actually in default as claimed by the Plaintiff.

There is reasonable belief on the part of the examination team that the Trustee is not aware of any default, alleged or otherwise.  The Master Servicer is responsible for maintaining the accounts within the trust.  There are also two Southern District of New York court cases wherein U. S. District Judges have declared the certificates as "evidence of debt" and not equity.  Therefore, the certificate holders, who bought non-recourse bonds, suffered their loss at the hands of the trust operators and not by the borrowers.  This is reflected in the dozens of investor lawsuits being brought, many of which alleged a 100% PSA failure rate.

*__Florida Foreclosure Attorneys, PLLC__*

(FFA EX. 1) CFN#2012103699, recorded by presentment on 07-13-2012
This document appears to have been manufactured by American Home Mortgage Servicing, Inc. in Jacksonville, Florida, judging by the names of the signors and who they are allegedly employed by.   Despite the fact there is no Court record of any foreclosure action against the property's owners, Cheery and Jackie Davis, the intent of a law firm being involved in a servicer-manufactured document being filed and prepared by known robosignors shows a pattern of design with intent to defraud the homeowners of their property.

Further, the filing shows a law firm file number in the upper, left-hand corner of "CA12-00620".  When this number is run in proper numerical sequence on the Osceola County Court Records Database (as "2012 CA 000620"), the following information is revealed: 2012 CA 000620 MF - *Freedom Mortgage Corporation v. Robert J. Cardaci et al.* This is NOT Cheery and Jackie Davis's case file number, as the assignment indicates; thus, there is misrepresentative information contained on this recorded Instrument, despite the fact that Option One was Davis' lender of record at the time this assignment was recorded.

Thus, the Assignment of Mortgage contains false and misrepresentative information, recorded with the intent to deprive the homeowners of their property, probable cause for violation of Florida Criminal Code § 817.535.   Because the law firm acted in concert in the drafting and direction of its execution, there is also probable cause for violations of Florida RICO statutes against the firm and American Home Mortgage Servicing, Inc.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(FFA EX. 2) CFN#2012147376, recorded by presentment on 10-11-2012**
This Notice of Lis Pendens accompanied the filing of a Complaint to foreclose on real property belonging to Eugenio and Lucia Rios of Kissimmee, Florida by Josh Arthur (FBN95506), representing Florida Foreclosure Attorneys, PLLC and their client U. S. Bank, N.A. as Trustee for a Morgan Stanley 2006-5AR series REMIC trust.

From indications within the case file, Matthew Forbes Braunschweig (FBN84047); Joe Ryan Paxton (FBN33431); Mark Morales (FBN64982); Matthew Glachman (FBN98967); Erik T. Silevitch (FBN92048) also appeared to have participated in this scheme to deprive the Rios's of their property. Rios filed for bankruptcy during the pendency of this case. Judge Robert Pleus granted a Final Judgment of Foreclosure on March 26, 2014, which was later vacated by Judge Jeffords Miller on April 21, 2014.  It appears now that William Noriega (FBN98042) is attempting to reopen this case, based on the original Complaint.

The Verified Complaint for Mortgage Foreclosure and Other Relief filed by this law firm failed to take into account that its party claiming to have attorney-in-fact status did NOT have such status, as verified by CFN#2013096829, until June 21, 2013.  <u>Dianna Todd, who claimed to be an Assistant Secretary for Homeward Residential, Inc. as Attorney-in-Fact for U.S. Bank, N.A., under penalty of perjury, appears to have falsely sworn that she had the authority when in fact she did not.</u>  Further, the promissory Note proffered by the law firm contains undated endorsements, which does not prove effective date of transfer.

Further, there are no recorded Assignments of Mortgage from the original Lender, Minnesota Lending Company, LLC dab Central Florida Lending, LLC (also registered in the State of Florida as Central Florida Lending Co. LLC, which was voluntarily dissolved on November 30, 2010 and was misrepresented in the original Note and Mortgage executed by the Rios's on December 15, 2005.  Also extraordinary is that there is no recorded Assignment of Mortgage from the originating lender (non-MERS mortgage) to American Home Mortgage Corporation, which went out of business in 2008. Further, there is no restrictive (special) indorsement to U.S. Bank, N.A. accompanied by an Assignment of Mortgage from American Home Mortgage Corporation to show the effective date of transfer.

Any future assignment purporting to claim that a transfer occurred (which could not be backdated), when the REMIC's closing date was March 31, 2006 would be considered void under New York trust law.  Any future assignment would have to be manufactured for the purposes of bringing fraud on the court.  Thus, absent a recorded Assignment, the Notice of Lis Pendens was filed in the public record with the intent to represent a court case filing to foreclose on a property wherein a lack of power of attorney status was shown to be deficient in the filing of this case.  There is sufficient belief that perjury has occurred within the filing of the Complaint, therefore the Notice of Lis Pendens: (1) slanders title to the property; and (2) is false and misrepresentative under Florida Criminal Code § 817.535.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

*Gilbert Garcia Group, P.A.*

**(GARCIA EX. 1) CFN#2008172376, recorded by presentment on 10-22-2008**
This document was prepared by Michelle Garcia Gilbert (FBN549452) in an attempt to assign a note and mortgage from MERS as a standalone nominee (using its Flint, Michigan post office box address) as Assignor to a closed SAMI II 2006-AR6 REMIC trust. There were no witness signatures on the document. The signor, Mark Bishop, is believed to have been an employee for Countrywide Home Loans, Inc. in Collin County, Texas (taken over by Bank of America, N.A. in 2009). Countrywide was still in business in 2008 and could have drafted this assignment itself; however, the drafting of the assignment was for the purposes of foreclosure commencement and so it appears to have been prepared and signed under the direction of the attorney, whether the signor had any knowledge of the actual facts or not. It is also interesting to note that MERS cannot transfer the Note as it did not have an interest in the Note, yet in this assignment, the Note was also transferred. It is also further interesting to note that a second assignment of mortgage (CFN#2013187561) was electronically filed on 12-02-2013 by Orion Financial Group, Inc.

This CORRECTIVE Assignment of Mortgage is alleged to only correct the name of the purported Assignee, yet there is no mention of the Note being assigned, only the Mortgage. So if the Corrective Assignment of Mortgage is to be believed, then the first Assignment of Mortgage was faulty and misrepresentative of the facts, designed to be used to deprive Bounlath Phouasalith of his property, in violation of Florida Criminal Code Section 817.535. The documents relating to this Exhibit are also attached for reference.

**(GARCIA EX. 2) CFN#2012092157, recorded by presentment on 06-18-2012**
This document was prepared by someone inside the Gilbert Garcia Group, P.A., who caused this Assignment of Mortgage to be recorded and returned to them for the purposes of effectuating a mortgage foreclosure against Dianne Hinckson and Sean K. Forrester as 2012 CA 4300 MF, initiated by Kalei McElroy Blair (FBN44613) on behalf of the Gilbert Garcia Group, P.A. The document was executed in Dallas County, Texas by unknown individuals on June 7, 2012, to a First Franklin trust REMIC 2005-FFH4, in which the Closing Date of the REMIC was December 15, 2005. There was a 2-year substitution provision (12-15-2007) only in the event an opinion letter was rendered by counsel that the REMIC would not be affected. This too, appears to have been violated; thus, the transfer was void under New York trust law. Summary judgment of foreclosure was recorded on 05-22-2013 as CFN#2013080835 and was eventually vacated by the Plaintiff because Sean K. Forrester appears to have paid the mortgage off in full. However, if the Plaintiff did not own the Note, then the Defendants would have been deprived of personal property (funds) involving the use of a suspect document, creating probable cause under Florida Criminal Code Section 817.535. A copy of the Motion to Vacate is attached to this Exhibit for reference.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(GARCIA EX. 3) CFN#2013008195, recorded by presentment on 01-15-2013**
**This is a redux (continuation) of the case started (and dismissed by the Wolfe Law firm).**
**This CFN is a Notice of Lis Pendens filed by Carol A. Lawson (FBN132675) of the Gilbert**
**Garcia Group, P.A. against Teodulio Misael Martinez and his wife Lidia Martinez of St.**
**Cloud, Florida as Case No. 2013 CA 0037 MF.  The case paperwork has been ordered and**
**made a part of this law firm's file, as it relied on past recordation of Assignments of Mort-**
**gage which appear to have been faulty.  The case was dismissed on June 5, 2013.  The mere**
**fact that this law firm relied on past Assignments makes them suspect for probable cause**
**for violation of Florida Criminal Code Section 817.535.    See *Section Six*, Case No. 89 for**
**full case analysis.**

*Gladstone Law Group, P.A.*

**(GLADSTONE EX. 1) CFN#2013134847, electronically filed on 08-27-2013**
**(NOTE: *This is included under Gladstone Law Group because it initiated a foreclosure action***
***in reliance of the documents noted herein. See Orion Financial Group, Inc.'s heading for the***
***actual reference documents.*)**
**Signer: Michael E. Wileman, claiming to be an authorized signer for Citimortgage, Inc. as**
**Successor by reason of merger to Citifinancial Mortgage Company, Inc.**
**Notary: "C. Lafferty" (see above paragraphs for details); Witnesses: None**
**Issues: This document falls back on document CFN#2004008098, recorded by presentment**
**on 01-14-2004 wherein Orion's signer "A. Tucker", claiming to be a Vice President of Orion**
**as attorney-in-fact had no recorded LPOA in the real property records of Osceola County,**
**Florida to back up those claims. Thus, the newly-assigned Mortgage into the Christiana**
**Trust in this instance fails because the original assignment (attached hereto and included**
**with this Exhibit) failed due to lack of authority. Additionally, Premium Capital Funding**
**went under in Florida on March 15, 2010.   Further, since the earlier assignment failed, the**
**suit filed by Citimortgage, Inc. against Duerett Dempster (the property owner herein) also**
**failed and was voluntarily dismissed for lack of prosecution.  However, the intent was clear**
**through the filing of this new Assignment of Mortgage, to attempt to perfect standing.  It**
**appears that Roger Gladstone of the Gladstone Law Group, P.A. (FBN612324) by and**
**through Traci B. Ruben (Florida Bar Bo. 91221) filed a Notice of Lis Pendens on**
**11-02-2012 as CFN#2012161747 in an attempt to utilize what appears to be false and mis-**
**representative documents to effectuate a foreclosure proceeding.   This case will be listed**
**under *Gladstone Law Group*'s heading in this section (Case No. 2012 CA 5041).  It further**
**appears that there was a substitution of party plaintiff with no court record noted as such.**
**The case was dismissed on August 28, 2014 and filed for record as CFN#2014144547.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(GLADSTONE EX. 2) CFN#2014056707, recorded by presentment on 04-23-2014**
**This document purports to use MERS as nominee for Countrywide Home Loans, Inc. (using MERS's Danville, Illinois Metro Detective Agency street address); prepared under the direction of the foregoing law firm and signed in Texas by employees of Residential Credit Solutions, Inc. instead of by and through officers with actual knowledge of the transaction details.   Signers: Alicia Wood and Kim Brouse are known robosignors and have been the subject of previous investigations.**
**Notary: Ricardo Recio (Texas Notary Commission Expires on 12-23-2017); Witnesses:  0**
**Issues: There are numerous document manufacturing and robosigning issues present. Wood and Brouse are attempting to convey the mortgage and note to a closed CHL 2007-9 REMIC trust with no apparent knowledge that the effective date of transfer actually occurred.  The Assignment of Mortgage was designed with the intent to defraud under Florida Criminal Code 817.535.   Since there is only one specific item, RICO may not be an option.  Maya Rubinev (FBN99986) appears to be directing this foreclosure and may have directed the production of this Assignment of Mortgage.  See *Section Six*, Case No. 65 for a complete case analysis.**

**_Greenspoon Marder, P.A._**

**(GSM EX. 1) CFN#2012041202, electronically filed on 03-23-2012**
**It appears that Michael S. Ross of the foregoing law firm prepared and directed the recording of the foregoing instrument, which purports to utilize MERS (as a nominee for Countrywide Home Loans, Inc.) as a "catch-all" to assign property into a closed LXS 2005-7N REMIC trust.  This assignment was re-recorded (not as a corrective assignment) in only MERS name less than three months later.  Both filings represent multiple document manufacturing issues and false representations as to the use of MERS (who does NOT own the note) to convey notes into closed REMIC trusts.  Income tax evasion issues may be present. Bank of America, N.A. employees appear to have been used to execute the assignment.**

**A final judgment of foreclosure was obtained against property owner Loukas Pelekanos and recorded as CFN#2013178936 on 11-15-2013 (Case No. 2010 CA 3223 MF).  The property was sold and a Certificate of Title was filed with the Court and recorded as CFN#2014022789, which the printed Court file record was attached hereto. Thus, it appears that Greenspoon Marder, P.A., its document preparer Michael S. Ross and Bank of America, N.A. employees all conspired to produce this fraudulent and misrepresentative document and caused it to be recorded for the purposes of depriving Loukas Pelekanos of his real property, probable cause under Florida Criminal Code Section 817.535.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(GSM EX. 2) CFN#2012042190, electronically recorded on 03-26-2012

[Greenspoon Marder, P.A. employee Michael S. Ross prepared this Assignment of Mortgage and appears to have directed its manufacture by employees of Saxon Mortgage Corporation in Dallas, Texas to attempt assignment using MERS as a nominee for DHI Mortgage Company LTD (using a MERS address in Danville, Illinois, which belongs to Metro Detective Agency) in an attempt to cover up Saxon employee's participation in the execution of this document, which attempts to assign the mortgage to a closed ACE Securities Corp. 2006-ASAP1 trust.

Even more glaring is the address used for the Trustee (HSBC) is Ocwen Loan Servicing's address, which is misrepresentative and untruthful, thus giving probable cause to allegations arising under Florida Criminal Code Section 817.535.

Greenspoon Marder attorney Marisol Morales (FBN 147478), unknown signor for Morales; filed a Notice of Lis Pendens, CFN#2009107085, on July 9, 2009) commenced as Case No. 2009 CA 6851 MF, which was later dismissed for failure to prosecute, based on facts claimed in this alleged 2012 misrepresentative assignment.  This law firm-created assignment was used by the law firm of Brock & Scott to effectuate foreclosure and sale of the property.

However, this law firm's participation in the drafting and execution of this assignment appears to be in violation of Florida Criminal Code § 817.535 and may also make this law firm culpable as an actor under the Florida RICO statutes.  Further, the firm (through attorney Morales, supra; and Michael A. Rodriguez, FBN127256) then filed another Notice of Lis Pendens (CFN#2010011030), recorded by presentment on January 26, 2010, claiming that HSBC as Trustee had standing to foreclose when there was no assignment recorded to the trust until over two (2) years later.

The firm then proceeded under Case No. 2010 CA 0421 MF to judicially foreclose on the property belonging to Kristina Lynn Sinykin without any validly-recorded proof of ownership interest in her property.  Substitution of counsel was effectuated in April of 2014, wherein the Brock & Scott law firm took over the proceedings and completed the foreclosure and sale of the property.  The proceedings are also reflected under Brock & Scott's listings, since this law firm relied on the recorded Assignment of Mortgage in the taking of the Property belonging to Kristina Lynn Sinykin.

(GSM EX. 3) CFN#2012908959, recorded by presentment on 07-03-2012

This document was prepared by Michael S. Ross of Greenspoon Marder, P.A for execution by persons in New Castle County, Delaware that are believed to work for Bank of America, N.A.  The research shown by the following information leads the Examiner to believe that the notary now only holds a commission Pennsylvania.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**The following information is proffered below for consideration:**



A likely choice for getting a mortgage would be where you are employed as it offers certain advantages; thus, the reason for the Examiner believing that this group of signors works for Bank of America.  This document is signed under penalty of perjury under Delaware law.  This Assignment of Mortgage affects property owned by Sherry Currens.  It should be noted that the law firm of Smith Hiatt & Diaz filed a Notice of Lis Pendens on 01-13-2009 as CFN#2009005951 on behalf of the Assignee in the 2012 assignment (Case No. 2009 CA 0052), which would be construed to mean that the alleged plaintiff did not have standing to foreclose.  The court records indicate that Ms. Currens filed for bankruptcy protection as the property was about to be sold in foreclosure. Because the apparent re-establishment of the Note was in part due to predication on an alleged fraudulent assignment manufactured under the authority of Greenspoon Marder, P.A., both law firms (Smith, Hiatt & Diaz initiated the Notice of Lis Pendens); and all others involved in this proceeding are suspect for probable cause for violations of the Florida Criminal Code Section 817.535 and Florida RICO statutes.  There are multiple issues with the Assignment of Mortgage, to wit: (1) The Closing Date for the REMIC trust was April 26, 2007, as shown at the link here: **http:// www.secinfo.com/dsvr4.u5ut.htm#ksv**; thus, the transfer was ineffective and thus void as it contravenes New York trust law; (2) The parties signing the document used MERS to cover up the chain of title and chain of custody of the Note; and (3) The parties signing the document did NOT work for the defunct lender. The Examiner has attached additional documents showing the lender in bankruptcy.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(GSM EX. 4) CFN#2012170085, electronically recorded on 11-19-2012**
**Chase employees in Denton, Texas attempted to assign a Peirson Patterson LLP-law firm-prepared (by William H. Peirson) assignment from MERS, as nominee for then-defunct AmericaHomeKey, Inc. to a closed Bear Stearns closed 2007-AR3 REMIC trust.  The address of the Assignee is a Chase Monroe, Louisiana address.  There is no address for the Assignor. This document was recorded OVER FIVE (5) MONTHS AFTER Senior Judge Robert J. Pleus, Jr. ordered Ruben Fortin's property officially foreclosed on June 12, 2012 (CFN#2012092170; Case No. 2008-CA-7095), in an apparent attempt to prove alleged trust ownership; apparently for the benefit of Chase.**
**NOTE: See also *GSM EX. 4* for an identical re-recording of this Assignment of Mortgage.**


**(GSM EX. 5) CFN#2013005479, electronically recorded on 01-10-2013**
**NOTE: THIS IS A RE-RECORDATION OF THE SAME IDENTICAL ASSIGNMENT OF MORTGAGE AS GSM EX. 4; THIS IS COUNTED AS A SEPARATE CRIMINAL ALLEGATION!**
**Chase employees in Denton, Texas attempted to assign a Peirson Patterson LLP-law firm-prepared (by William H. Peirson) assignment from MERS, as nominee for then-defunct AmericaHomeKey, Inc. to a closed Bear Stearns closed 2007-AR3 REMIC trust.  The address of the Assignee is a Chase Monroe, Louisiana address.**

**There is no address for the Assignor. This document was recorded NEARLY SEVEN (7) MONTHS AFTER Senior Judge Robert J. Pleus, Jr. ordered Ruben Fortin's property officially foreclosed on June 12, 2012 (CFN#2012092170; Case No. 2008-CA-7095), in an apparent attempt to prove alleged trust ownership; apparently for the benefit of Chase. The sale of this property was vacated because the Defendant homeowner filed for bankruptcy.**

**It further appears that Shapiro, Fishman & Gache was noticed in the Suggestion of Bankruptcy, post-sale, which is on Greenspoon Marder, P.A. as to the allegations herein set forth, as counsel prior to the sale of the property and the vacating of the sale.**


**(GSM EX. 6) CFN#2014074566, recorded by presentment on 05-28-2014**
**In the foregoing case, tied to GSM EX. 2, Jimmy Edwards (FBN81855) recorded the Assignment of Bid to the trust as CFN#2014074566.  Based on the recorded Assignment, this document would constitute another allegation of Florida Criminal Code Section 817.535 and would trigger allegations under the Florida RICO statutes.  This Exhibit is attached to the back end of GSM EX. 2 for reference.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

*Heller & Zion, LLP*

**(H & Z EX. 1) CFN#2012090497, recorded by presentment on 06-14-2012**
**Signor: Kimberly T. Sumrall (known robosignor for Bank of America in Dallas, Texas),**
**who purports to be an "Assistant Vice President" for Ameriquest Mortgage Company, who**
**is assigning the mortgage and note to Deutsche Bank National Trust Company as Trustee**
**for the Holders of a GSAMP TRUST 2004-AR1 series REMIC trust, which at this juncture,**
**was closed and could not accept it.**
**Notary: Sache N. Keeton (Texas Notary Commission Expired on 02-11-2013)**
**Witnesses: Michelle Reese, Kevin Middleton (known employees of Bank of America)**



**Kimberly Sumrall, Foreclosure Specialist II at Bank of America (misspelled on the website)**
Dallas, TexasBanking
Education-Cedar Valley College
**https://www.linkedin.com/pub/kimberly-sumrall/70/345/804**

**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) The LinkedIn website, with information allegedly filled out by Sumrall, indicates**
**that she has been at Bank of America for "5 years and 3 months", which would**
**mean that she was NOT at Ameriquest Mortgage Company as an Assistant Vice**
**President at the time she executed this Assignment in favor of the trust;**

**(2) The GSAMP (http://www.secinfo.com/dScj2.134g.htm) trust's Closing Date was**
**July 12, 2004, which would cause this Assignment to contravene New York trust law,**
**which would render the Assignment void; and**

**(3) It was signed under Penalty of Perjury under Texas law.**

**Thus, due to the apparent blatant fraudulent and misrepresentations contained in this As-**
**signment, all parties involved as actors, including the law firm preparing and directing the**
**document's manufacture, have created enough issues of probable cause for violation of**
**Florida Criminal Code Section 817.535 and perjury under Florida's RICO statutes. Heller**
**& Zion, LLP appear to have used this fraudulent and misrepresentative Assignment to fa-**
**cilitate a foreclosure on the property (2012 CA 3429). The complaint was filed shortly after**
**the Assignment of Mortgage was recorded in the real property records of Osceola County,**
**Florida.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### _Kahane & Associates_

**(KAHANE EX. 1) CFN#2013088242, electronically recorded on 06-04-2013**
**Document Prepared by: Robert S. Kahane (FBN 946850), Kahane & Associates, P.A.**
**Signer: Thomas Earl Brown, signing as Assistant Vice President of Nationstar Mortgage,**
**LLC, as attorney-in-fact for Bank of America, N.A., as Assignor; in attempting to assign a**
**Mortgage and Note to Federal National Mortgage Association ("Fannie Mae"), as Assignee.**
**Notary: Michael Ray Galloway (Texas Notary Commission expires 03-18-2017)**
**Witnesses: James Morgan, Sarah Terry**
**NOTE: BOTH Kahane documents listed here are related to _Section Six_, Case No. 50.**
**There are multiple issues with this Assignment of Mortgage, to wit:**

> **(1) The signor is an alleged officer for Nationstar Mortgage LLC and has**
> **misrepresented himself on the Assignment (see below):**

**Thomas Brown, Assistant Vice President at Nationstar Mortgage**
**Mckinney, Texas (Financial Services); Previous (Employment) Terrell State Hospital;**
**Education, The University of Texas at Arlington  (taken from Brown's LinkedIn page)**

> **(2) The language within in the Assignment claims that Bank of America, N.A.**
> **is assigning the Mortgage to Fannie Mae; however, the notarial execution nor**
> **the language within the document states that "Nationstar" (and not Nationstar**
> **Mortgage LLC) has been granted any "attorney-in-fact" status and there is**
> **nothing stated on the document referencing an incomplete entity as scribbled**
> **onto the page allegedly by Brown in his own handwriting;**

> **(3) These documents were drafted due to a law suit being initiated and a**
> **settlement agreement being reached (a copy of the Notice of Voluntary Dismissal**
> **is attached hereto for reference) as a "deed in lieu of foreclosure"; thus, no**
> **party prevailed which means that the Hecks took Bank of America's word**
> **for it that they owned the loan, which appears NOT to be the case, as Brown**
> **assigned the Mortgage and Note on May 10, 2013 to Fannie Mae (which would**
> **be construed to mean that Fannie Mae did NOT own the Mortgage and Note**
> **at the time the suit was commenced (by Bank of America on its behalf);**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(4) Brown provides no proof of authority and does not spell out the full name of the alleged servicer on this document; and

(5) Fort Worth, Texas, where the Bank of America, N.A. address is shown, is NOT in Denton County, Texas, where Nationstar Mortgage, LLC is located.

Based on the following document, there are other issues that now become unproven due to the deed in lieu of foreclosure and thus, are concealed from the Borrowers (homeowners). The potential of unjust enrichment may constitute probable cause of violating Florida Criminal Code § 817.535 in that the real party in interest did not commence the foreclosure and thus the entire proceeding could be construed as a potential sham, resulting in the manufacture of documents which revealed that the real owner of the Note and Mortgage was a Fannie Mae-administered trust REMIC.

(KAHANE EX. 2) CFN#2013088244, electronically recorded on 06-04-2013
Document Prepared by: Robert S. Kahane (FBN 946850), Kahane & Associates, P.A.
Signer: Thomas Earl Brown, signing as Assistant Vice President of Fannie Mae, attempting to release a Mortgage executed by Christopher A. Heck and Patricia Ann Heck.
Notary: Michael Ray Galloway (Texas Notary Commission expires 03-18-2017)
Witnesses: James Morgan, Sarah Terry
NOTE: BOTH Kahane documents listed here are related to *Section Six*, Case No. 50.
There are multiple issues with this Satisfaction of Mortgage, to wit:

(1) Thomas Earl Brown is NOT an Assistant Vice President of Fannie Mae on this document (despite his claims to the contrary); he is employed by Nationstar Mortgage, LLC;

(2) Fannie Mae appears to have been the real party in interest, which would lead the Examiner to believe that the entire proceeding was a sham proceeding;

(3) There is the question of why Nationstar is acting in the stead of Bank of America, N.A. if Bank of America, N.A. (which is still in business) was capable of assigning the Note and Mortgage;

(4) It would thus be unknown as to who the real party in interest was at the time the foreclosure Complaint was filed.

Thus, despite the fact that Kahane drafted this document, its execution appears to have been unsupervised by counsel, which could be alleged as unauthorized practice of law, especially if this document is found to contain false statements and misrepresentations. Further, due to the collaboration of multiple parties acting in concert with one another to manufacture these documents, it is highly likely there is probable cause of Florida RICO issues.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

### _Kass Shuler, P.A._

**CFN#2013000880, this document, prepared by Edward B. Pritchard, an attorney for Kass Shuler, P.A. in Tampa, Florida (with the apparent intent to foreclose on the property), caused the document to be manufactured by unknown parties in Denton County, Texas who then filed it in Osceola County, Florida instead of Okaloosa County, Florida.**

**The document purports to be an assignment from Connecticut-based Access Mortgage Corporation (http://www.ct.gov/dob/cwp/view.asp?a=2246&q=458688) to JPMorgan Chase Bank, N.A.**

This scenario is typical of MERS-originated mortgages, where a MERS "member" assigns a mortgage to itself using MERS as a "catch-all" in an attempt to preserve the chain of title. This is problematic due to securitization and the number of parties that may claim an interest at some point in time in the future. None of these intervening assignees recorded their interests in the real property records.

More unfortunately, however, the Humphrey's property is located in **Okaloosa County, Florida**, NOT Osceola County, Florida. Whoever processed this questionable assignment recorded it in the wrong county; thus, constructive notice had been given to no one. Also unfortunate is the fact that Kass Shuler, P.A. didn't realize its error until AFTER it filed a Notice of Lis Pendens (to effectuate a foreclosure on the property 3 months earlier) and had to re-record the self-assignment of mortgage to Chase in the Okaloosa County real property records on 06-10-2013 as CFN#2860528. The Osceola County Clerk's stamp appears on the document.

Despite the late recording, the Humphreys were foreclosed on by Chase, who appear to have self-assigned the mortgage in order to do so, using MERS as a "cover" for its own employees apparent misdeeds. This has led the Examiners to believe that a majority of American property owners do not understand the foreclosure process and cannot recognize the patterns developing in their cases. Sadly, it also appears that most Florida judges don't want to recognize these processes or don't care.

These kinds of document manufacturing abuses are common to this scenario, as Lenders who were in a rush to make money: (a.) made predatory, subprime loans; (b.) issued faulty and incorrect paperwork; (c.) gave loans to people who couldn't afford them; (d.) more than likely shredded the original paperwork and thus had to re-create it; (e.) falsified and forged documents in an attempt to effectuate foreclosures; (f.) brought fraud on the court in doing so; and (g.) took people homes using this methodology in violation of Florida Criminal Code § 817.535.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(K. S. EX. 2) CFN#2013187561, electronically filed on 12-02-2013**
**This "Corrective Assignment of Mortgage" appears to utilize MERS as a standalone (with no nominee present; but obviously under the direction of Specialized Loan Servicing, LLC) wherein the Assignor (Orion's Wileman) purports to transfer the borrower's mortgage and note to a closed Structured Asset Mortgage Investments II Series 2006-AR6 (using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado) REMIC trust (seven years too late). There is mention of the original document number being recorded (CFN#2008172376), which also appears suspect for document manufacturing.**

**The 2008 Assignment of Mortgage also appears to utilize MERS as a standalone (with no nominee present; but obviously under the direction of Michelle Garcia Gilbert, a Tampa attorney, who prepared the document for signing. It was signed by Mark Bishop, who claims to be a 1st Vice President of MERS (even though no such titles were ever delegated), representing itself (by seal) as a standalone party in interest, paralleling its successor assignment. Both assignments were signed in Texas (the first allegedly by Bank of America employees in Collin County, Texas; the second by a third-party document manufacturer in Tarrant County, Texas). Both assignments appear to assign the mortgage from MERS directly to a trust. Unless a person examined the original mortgage (noted only as "Book 3232, Page 950"; no CFN listed) would they be able to figure out that the original lender was the now-subsumed Countrywide Home Loans, Inc. The information in both of these assignments however does not mention Countrywide Home Loans, Inc. but rather claims MERS is the "Assignor" without naming them in "nominee status". Both of these assignments appear misrepresentative of the real party in interest, as MERS cannot transfer something it does not have an interest in.**

**Similarly, no matter how you state the name of the 2006-AR6 trust, the closing date of this entity was August 4, 2006, as shown in the information contained in the following link: http://www.secinfo.com/dRQ1j.vf8.htm; thus, the REMIC could not (in either instance) have accepted the mortgage and note into the trust in violation of the PSA, SEC and IRS regulations. Despite the lack of any filing of foreclosure litigation against the property, the documents themselves contain false and misrepresentative information, in apparent violation of Florida Criminal Code § 817.535. Further, Edward B. Pritchard of Kass Shuler initiated Case No. 2008 CA 9051 MF on behalf of Plaintiff Bank of New York Mellon and foreclosed on the Property belonging to Bounlath Phouasalith. A Certificate of Title was issued to the trust on April 2, 2010.**

**THIS ASSIGNMENT OF MORTGAGE WAS NOT RECORDED UNTIL NEARLY THREE (3) YEARS AFTER THE CERTIFICATE OF TITLE WAS ISSUED! Thus, the Plaintiff did not have effectual proof of standing or of transfer of the Note and Mortgage into the trust pool. It is highly likely that further investigation may reveal fraud on the Court.**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(K.S. EX. 3) CFN#201407953, recorded by presentment on 05-20-2014**
**This 2-page document purports to Notice Assignment of Judgment and Credit Bid to a Truman 2013-SC4 Title Trust that was closed as of the date of conveyance.  Further, the address on the Corporate Assignment of Mortgage filed as CFN#2014034289 on March 11, 2014 attempted to tie Wells Fargo Bank to Wachovia Mortgage to World Savings Bank (using Wells Fargo's Des Moines campus address in Iowa), to a closed 2013 private trust (more than likely a 144-A type trust) using the address of Rushmore Loan Management Services instead of the actual address of the trust.  The document was attested to by Lindsay M. Alvarez, an attorney for the foregoing law firm (Florida Bar #39064).  The entire sale was later withdrawn and the judgment for foreclosure vacated; however, attempt was made using assignments and other recorded documents to misrepresent the true facts at bar.**

**(K.S. EX. 4) CFN#2008186096, recorded by presentment on 11-14-2008**
**This Assignment was drafted by Clay A. Holtsinger (FBN294330) of the then law firm of Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A. (now Kass Shuler) for the obvious purpose of filing a Complaint for Foreclosure on a property owned by Amanda Mejia and her husband, Sixto Urrutia.  The reason this case moves into our statutory area (5-years from the date of involvement) as that another assignment relative to this foreclosure case was filed in 2013 in tandem with the taking of this property, CFN#2013177297, recorded by presentment on 11-13-2013 (attached as a supplement to this Exhibit).  The 2008 Assignment is particularly suspect because of the manner in which the notary public exited her commission:**

| Name: Melissa Flanagan - ID: 3935424 | | | |
|---|---|---|---|
| Address: | 3537 Porter Creek Plano, Tx 75025-0000 | | |
| Expires: | Oct 31, 2011 | | |
| County: | Collin | | |
| Agency: | Mark Master Inc | | |
| Surety Company: | Western Surety Company | | |
| **History** | **As** | **Effective** | **Expire Date** |
| Voluntary Termination | Melissa Flanagan | 10/31/2011 | |
| Recommissioned | Melissa Flanagan | 11/17/2009 | 10/31/2011 |
| Commissioned Notary Public | Melissa Flanagan | 11/17/2005 | 11/17/2009 |
| Commissioned Notary Public | M. Wyatt | 06/11/1987 | 06/11/1991 |

**Flanagan and the signor of the document, Micall Bachman, are believed to have been employees of Bank of America, N.A. or BAC Home Loans Servicing, LP.  Further investigation is warranted as to the reasons why Flanagan resigned her commission (conscience?).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The 2008 Assignment of Mortgage purports to utilize MERS and its Flint, Michigan post office box address in consideration of the sum of $10.00 (which MERS could not accept without violating its charter) as a standalone Assignor (which is shown above Bachman's signature; no corporate seal present), but shown as nominee for Countrywide Bank, N.A. (it does NOT say and/or assigns) to assign the mortgage AND NOTE (which MERS cannot do because it does not own the Note) to MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-3, which has a listed Closing Date of May 15, 2007 according to its SEC-registered 424(b)(5) prospectus.   Specifically, the language within the PSA states as follows, using MERS as a "search term" (emphasis supplied):

"If so specified in the related prospectus supplement, and in accordance with the rules of membership of Merscorp, Inc. and/or Mortgage Electronic Registration Systems, Inc. or, MERS, assignments of the mortgages for the mortgage loans in the related trust fund will be registered electronically through Mortgage Electronic Registration Systems, Inc., or MERS® System. With respect to mortgage loans registered through the MERS® System, MERS **shall serve as mortgagee of record solely as a nominee in an administrative capacity on behalf of the trustee and shall not have any interest in any of those mortgage loans.**"

By virtue of the foregoing language, the MERS® System was never disclosed to the Borrowers at the closing table and the term "or" is construed by the Examiner to be separate from Mortgage Electronic Registration Systems, Inc., because the term MERS® System as shown in the search term, is NOT found anywhere in the Mortgage. Holtsinger, as the attorney for the alleged Plaintiff, should have known that the Closing Date prohibited him from using MERS as a standalone Assignor, since it did NOT have an interest in the Note.

It further appears that Anne-Marie Calderon, an employee of Bank of America, N.A., caused to be prepared, executed and recorded a second Assignment of Mortgage, which contradicts the first Mortgage assignment, by having Bank of America's Joshua Neal and Deanna Lara sign as Assistant Vice Presidents of Bank of America, N.A. (before witnesses Janie Martinez and Martha R. Gallardo) and acknowledged under penalty of perjury by Judith Herrera (California Notary Commission No. 1936916; still active), re-assign ONLY the Mortgage to Nationstar Mortgage, LLC of Lewisville, Texas, after it had already been Assigned to the trust vehicle (allegedly).  This has not only appeared to separate the mortgage from the Note (because THE MORTGAGE FOLLOWS THE NOTE) but it clearly clouds the chain of title and makes conveyance to a bona fide purchaser uninsurable if not unmarketable.  Further, Bank of America, N.A. is NOT listed anywhere in the prospectus as having anything to do with this REMIC.

The promissory Note in this case is also "lost" and there is no Lost Note Affidavit recorded in the real property records of Osceola County, Florida to demonstrate who last had the Note and where it went to; thus, Holtsinger had to draft and record an Assignment to make it appear as if the Note in fact was transferred to the trust REMIC.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Unfortunately, the misrepresentation here carried this Assignment forward into the case, which appears to be Closed, but the Court (in 2014) was still filing responses in the case. The chain of Assignments thus were utilized to misrepresent the true owner of the Note in an attempt to foreclose on the property in violation of Florida Criminal Code Section 817.535 and Florida RICO statutes.  Kass Shuler also appears culpable.

_Lender Legal Services, LLC_

CFN#2014029882, electronically recorded on 02-28-2014
Signer: Elizabeth A. Ostermann (who claims to be a Vice President of Foreclosure for Carrington Mortgage Services, LLC, Attorney-in-Fact)
Notary: Raschelle Holmes (California Notary Commission No. 2034693; still active)
Witnesses: None
THIS CHAIN OF TITLE CONTAINS FRAUDULENT DOCUMENTS THAT WERE USED IN THE APPARENT ILLICIT TAKING OF THE REAL PROPERTY BELONGING TO JODI A. KLEIN (Certificate of Title issued on May 21, 2014; CFN#2014072412)
There are multiple issues with this case, to wit:

>(1) Lender Legal Services, LLC, by virtue of the recorded document containing its name, is a party to this issue;

>(2) The Corporate Assignment of Mortgage was executed on January 16, 2014; however, it was backdated to July 12, 2013, in order to make it appear as if it was effectuated in line with the alleged trust's ability to accept it;

>(3) The LPOA that appears to have been utilized to effectuate the authority of this Assignment was not recorded in the real property records of Osceola County, Florida until January 23, 2014 (CFN#2013010084); thus, the January 16, 2014 authority vested with signor Elizabeth A. Ostermann was not constructively noticed until a week later, making the entire assignment suspect ultra vires;

>(4) It appears that an unknown party with the Law Offices of David J. Stern, P.A. initiated the filing of the Notice of Lis Pendens on behalf of Maribel Diaz (Florida Bar No. 55716; allegedly FBN88607) as CFN#2010020260, on behalf of BAC Home Loans Servicing LP F/K/A Countrywide Home Loans Servicing, LP through what appears to be a host of in-house assigned mortgage documents.

It appears that Scott M. Gross (FBN63921) from Ablitt-Scofield, P.C. was substituted as counsel during the pendency of the proceeding.  It further appears as if someone influenced the homeowner to sign away her rights to the property during the pendency of the proceeding, despite the issues unknown to her with the suspect assignment.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Assignment of Mortgage, in effect, resulted in the apparent improper taking of the property because Christiana Trust:

> **(a.) was taking a property whose mortgage loan was allegedly non-performing at the time the Assignment was drafted; and**

> **(b.) the issues involving the LPOA would have negated the Assignment.**

Thus, there is probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statute violations.   See *Section Six*, Case No. 123 (Klein) for a complete analysis.

### *Marinosci Law Group, P.C.*

**(MARINOSCI EX. 1) CFN#2012050138, electronically recorded on 04-02-2012 (first mortgage, preceded by CFN#2012044448, electronically recorded on 03-28-2012 (second mortgage)**

The earlier Assignment (**CFN#2012044448; second mortgage loan**) appears to have been relied upon when Daphne Blum Tako (FBN51621) filed a Notice of Lis Pendens (**CFN#2012162828**) on 11-05-2012 in a foreclosure case against the Defendants, Jose A. Baez Sanchez et al (Case No. 2012 CA 4961).

Signors: Jeanine Abramoff and Srbui Muradyan, both claiming to be Assistant Secretaries of MERS in an alleged Assignment using MERS (as a standalone Assignor; using an address belonging to Metro Detective Agency in Danville, Illinois) to allegedly assign a mortgage and note into a closed Countrywide CWHEQ, Inc. Revolving Home Equity Loan 2007-D REMIC trust (using an address that appears to belong to Bank of New York Mellon in Chicago, Illinois).

Notary: Violet Thomas-Hicks (California Notary Commission No. 1820527; expired)

Witnesses: Talisha Wallace, Bad Kamyabi (known robosignor)

The latter Assignment (**CFN#2012050138; first mortgage loan**) appears to have been relied upon when Daphne Blum Tako (FBN51621) filed a Notice of Lis Pendens (**CFN#2012162828**) on 11-05-2012 in a foreclosure case against the Defendants, Jose A. Baez Sanchez et al (Case No. 2012 CA 4961).

Signors: Amanda Stackhouse and Chester Levings, both claiming to be Assistant Secretaries of MERS in an alleged Assignment using MERS (as a standalone Assignor; using an Ocala, Florida address, ignoring MERSCORP policies which prohibit the use of that address after December 6, 2010) into a closed Deutsche Alt-A 2007-OA4 REMIC trust (using Wells Fargo Bank, N.A.'s Master Servicer address in Columbia, Maryland).

Notary: Cynthia R. Goldbeck (California Notary Commission No. 1808746; expired)

Witnesses: Beverly Brooks, Rene Rosales

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are multiple issues with these Assignments as they relate to the current case file, to wit:

(1) The Assignments of Mortgage contain scribbled signatures of all of the signors executing the document, a marker of document robosigning;

(2) The Assignments of Mortgage contain rubber-stamped names, titles and dates, common markers of document manufacturing (sped-up document processing);

(3) False and misrepresentative addresses for BOTH Assignor and Assignee;

(4) The documents were prepared by Bank of America employees without the purview of the signors of the documents; thus, they lacked personal knowledge of the alleged details contained within the documents;

(5) The documents were certified by the Notaries under penalty of perjury under the laws of the State of California;

(6) MERS, as party of the first part does NOT have an interest in the Note; thus, it cannot transfer something it does not have an interest in. It can only transfer the Mortgage; thus, there is an issue with bifurcation, which is in conflict with the Florida Courts' assumption that the Mortgage allegedly "follows"the Note and does not precede it;

(7) The alleged Note proffered as an exhibit to the Complaint shows two (2) indorsements.  The first appears to have been affixed by employees of Bank of America's ReconTrust unit (the Laurie Meder stamp) showing an endorsement from Countrywide Bank, FSB to Countrywide Home Loans, Inc.   The second stamp is an indorsement-in-blank from Countrywide Home Loans, Inc. (using the stamp naming Michele Sjolander, whose **deposition is included as a USB Exhibit** to this report), who may have not personally affixed this stamp to the Note.  Both endorsements were undated; thus, there is no demonstration of when effective transfer of the Note and Mortgage occurred; and

(8) The transfers, as recorded in the real property records of Osceola County, Florida are void because the effective date of the transfers needed to occur in 2007 and not 2012, in violation of both REMIC trust's Pooling and Servicing Agreements.

Thus, without the dates proving effective transfer of the Note in either instance (the second mortgage was not shown, yet there appears a separate claimant not named in the Complaint here), there are issues with standing to bring a foreclosure action.  In light of the two misrepresentative Assignments, there is probable cause to believe that at least two violations of Florida Criminal Code Section 817.535 have occurred.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It further appears that Karen A. Green (FBN628875) is also involved with this case, to which the pendency is still showing as active with a status hearing set for December 3, 2014.

**(MARINOSCI EX. 2) CFN#2012116511, recorded by presentment on 09-09-2012**
In this apparent Marinosci Law Group manufactured document, it appears that Bank of America, N.A. (as successor by merger to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP; using an old address belonging to Countrywide, now belonging to Bank of New York Mellon) employees were directed to execute an Assignment of Mortgage prepared by Marinosci Law Group in favor of HSBC Bank USA, N.A. as Trustee for a closed Deutsche Bank Alt-A Securities 2006-OA1 trust (using a NY, NY address for the trust).
Signor: Lewis Wilson (purporting to be an Assistant Vice President)
Notary: LaSena Harvill (Texas Notary Commission expires 05-25-2015; still valid)
Witnesses: Myeisha Lofton, Edwin Hill
Issues: This Assignment follows a previously-recorded Bank of America-generated Assignment of Mortgage (**CFN#2011143239**) on 10-13-2011 wherein Bank of America employees (using a Columbia, Maryland address that doesn't appear to be valid) used MERS (as Assignor; with an address in Ocala, Florida that violates MERSCORP's own policies), to self-assign a mortgage to one of its subsidiaries, BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP.   On July 26, 2012, Marinosci, by and through its attorney Matthew Slowik (FBN92553), filed a Notice of Lis Pendens in conjunction with the creation of the foregoing first-noted Assignment which the Marinosci Law Group itself created for the purposes of effectuating a foreclosure in the name of the Plaintiff trust against Kissimmee residents Awilda Molfulleda and Carlos Simons.   The series of a self-assignment and an attorney-directed assignment is suspect for F.C.C. 817.535 and RICO violations.

**(MARINOSCI EX. 3) CFN#2012138820, recorded by presentment on 09-25-2012**
In this apparent Marinosci Law Group manufactured document, it appears that Bank of America, N.A. (as successor by merger to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP; using an old address belonging to Countrywide, now belonging to Bank of New York Mellon) employees were directed to execute an Assignment of Mortgage prepared by Marinosci Law Group in favor of HSBC Bank USA, N.A. as Trustee for a closed Deutsche Bank Alt-A Securities 2006-OA1 trust (this time using a Buffalo, NY address for the trust).
Signor: Robert Scott Moran (purporting to be an Assistant Vice President)
Notary: James L. Zurlis (Texas Notary Recommission expires 01-28-2017; still valid)
Witnesses: Ricky Trent Bolds, Kevin Anthony Middleton
Issues: This Assignment preceded the fling of a Notice of Lis Pendens of a Complaint to Fore-close by the Marinosci Law Group (Case No. 2012 CA 4960) against Ramon L. Snachez of Kissimmee.  A Final Judgment of Foreclosure was issued in this case and the property was sold to HSBC as Trustee, showing a New York, New York address (not a Buffalo, NY address as before).  A Certificate of Title was recorded as **CFN#2014129706**.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(MARINOSCI EX. 4) CFN#2012138868, recorded by presentment on 09-25-2012**
In this apparent Marinosci Law Group manufactured document, it appears that Bank of America, N.A. (as successor by merger to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP; using an old address belonging to Countrywide, now belonging to Bank of New York Mellon) employees were directed to execute an Assignment of Mortgage prepared by Marinosci Law Group in favor of HSBC Bank USA, N.A. as Trustee for a closed Deutsche Bank Alt-A Securities 2007-OA1 trust (using a Buffalo, NY address for the trust).
Signor: Kevin Anthony Middleton (purporting to be an Assistant Vice President; a noted witness on the previous Marinosci-directed Assignment)
Notary: Maxine P. Luster (Texas Notary Recommission expires 01-23-2018; still valid)
Witnesses: Robert Scott Moran, noted signor on the previous Marinosci-directed Assignment; Kimberly Tetta Sumrall (known robosignor for Bank of America)
Issues: This Assignment follows a previously-recorded Bank of America-generated Assignment of Mortgage (CFN#2011106273) on 08-04-2011 wherein Bank of America employees (using a Columbia, Maryland address that belongs to Wells Fargo Bank as Master Servicer for thousands of REMIC trusts) used MERS (as Assignor; with an address in Ocala, Florida that violates MERSCORP's own policies), to self-assign a mortgage to one of its subsidiaries, BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP. The series of a self-assignment and an attorney-directed assignment is suspect for F.C.C. 817.535 and RICO violations. The trust (through Security Connections, Inc. in Idaho, filed a Satisfaction of Mortgage on the property on 05-08-2014 as **CFN#2014064258**; see *Security Connections* heading for details on this Release of Lien.  This may have been as the result of the sale of the home in order to retire the issues with the lien.

**EXAMINER'S NOTES: In all three of the foregoing Marinosci instances, there are common denominators prevalent, to wit:**

> **(1) The assignments all appear to have been manufactured by Marinosci Law Group employees (attorney supervision unknown);**

> **(2) All of the key assignments here were filed at the direction of Marinosci Law, following precedent assignments wherein Bank of America, N.A. used MERS to self-assign the documents in-house;**

> **(3) There are numerous document manufacturing markers common to all three (3) Assignments (i.e. "fill in the blank template forms", "interchangeability of signors", etc.); and**

> **(4) All three notaries signing the key assignments all have $7,500 bonds that the State of Florida can file a claim against, especially in light of criminal allegations.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(MARINOSCI EX. 5) CFN#2013000186, recorded by presentment on 01-02-2013**
Bank of America, N.A. employees appear to have manufactured an assignment of mortgage using MERS as nominee for defunct Countrywide Home Loans, Inc. (using Metro Detective Agency's address in Danville, Illinois) to attempt assignment to a closed CWHEQ, Inc. 2006-S10 REMIC trust.  CoreLogic's computer system appears to have been used as part of the digital information highway to relay hearsay information amongst the parties.  Several robosigning and document manufacturing markers present.  Keith Lehman (FBN85111) appears to have electronically filed a Notice of Lis Pendens (CFR#2014033371; Case No. 2014-CA-0596) on behalf of Bank of America, whose interests do not match what is on the assignment (the trust allegedly owns the note, not Bank of America). A previously-recorded (electronically filed on May 2, 2012) assignment (CFN#2012065786) shows Bank of America employees again using MERS (standalone)'s Metro Detective Agency address in Danville, Illinois to convey to self-assign the mortgage to Bank of America, N.A. (using a Freddie Mac address of 8609 Westwood Center Drive, Vienna, VA 22182-2215; (703) 760-2000). Thus, it appears that Freddie Mac may have an unrecorded interest in the property, which further subjects the property belonging to Jose and Lisa Galloway to further issues with their chain of title and to potential double liability.  BOTH Freddie Mac and the Trust cannot own the same note and the trust is closed, so how could it accept a non-performing loan? The court records indicate the case is still pending; however, the manufactured documents do not indicate that Bank of America, N.A. may have standing to foreclose and that Bank of New York Mellon as Trustee (which does not have standing either as it does not possess ownership either, has to explain how Bank of America owns the note that has allegedly been conveyed into a non-performing trust.  It appears that Keith Lehman (FBN85111) filed a Complaint of Foreclosure on behalf of Marinosci Law Group (Case No. 2014 CA 0596) on behalf of Bank of America, N.A. (v. Jose A. Galloway, Jr. et al); the case file is attached.

**(MARINOSCI EX. 6; CFN#2014033371).**  The REMIC trust also appears to have filed an Answer and Petition to Share in the Surplus of the Sale, yet this Assignment of Mortgage shows that Bank of America employees transferred the mortgage into the closed trust, a year before the Notice of Lis Pendens was filed.  Whatever the case, it appears that the law firm relied on the information contained in the Assignment and instead named the trust as a Defendant, even though the information in the Assignment said otherwise, presenting suspect issues for consideration.

**(MARINOSCI EX. 7) CFN#2013004439, recorded by presentment on 01-09-2013**
The Marinosci Law Group, P.C. directed that this document be returned to the law firm after recording despite directions in the heading of the document to return it to Bill Koch at Select Portfolio Servicing, Inc. ("SPS") The document purports to assign the mortgage using MERS as nominee for then-defunct Accredited Home Lenders, Inc. c/o SPS at its Salt Lake City address. The document purports to assign the mortgage (but not specifically the Note) to U. S. Bank, N.A. as Trustee for a closed 2005-3 REMIC trust.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The signer of the document, Greg Ott, claims to be signing as Vice President for MERS, yet there is no additional language to indicate the Assignor's full identity or nominee status above Ott's signature, which is scribbled, another marker of robosigning.

Notary: Kyle J. Sterner (Utah Notary Commission #659205)

Witnesses: Luisa Alfonso, Ana Novakovich (names rubber stamped below their signatures)

Issues: The document contains manufacturing markers and small, type-written print at the bottom of the document indicative of template use.  The filing of this document appears to have been used in tandem with the foreclosure action commenced against the property of Darryn and Melinda Crist of Saint Cloud, Florida. The Notice of Lis Pendens was filed by Nazieh Zeheer (Florida Bar #92172) on behalf of the law firm on June 4, 2013 (Case No. 2013 CA 2156; **CFN#2013008256).**  Co-counsel for U. S. Bank was Wendy S. Griffith from Pearson Bitman, LLP of Maitland, Florida. Final judgment of foreclosure was rendered on April 14, 2014 by Circuit Judge Miller **(CFN#2014054800; filed 04-21-2014).   The property was later sold and Certificate of Title issued to American Residential Leasing, LLC of Scottsdale, Arizona (CFN#2014107317; filed 07-29-2014).**

There is reason to believe that U. S. Bank never received the paperwork in compliance with the PSA and thus did not own the note with the right to enforce it in Court.  It should also be noted here that it took two (2) law firm's participation to argue this case for the Plaintiff.


**(MARINOSCI EX. 8) CFN#2013172867, recorded by presentment on 11-04-2013**

This Notice of Lis Pendens (Case No. 2013 CA 3775 MF) was filed following the recordation of an Assignment of Mortgage prepared by Bank of America, N.A. and executed by its employees (most of them known robosignors in Ventura County, California) on March 16, 2012 and recorded as **CFN#2012040499** on 03-22-2012.

The entire document package was procured for review and supplemental items are attached to this Exhibit as previously noted at the beginning of this document review.  The Verified Complaint was filed by Nazish Zaheer (FBN92172), which appears to have relied on the Assignment, previously filed as noted. America's Wholesale Lender ("AWL") is named as the Original Mortgagee in the Assignment; however, even though it appears that Bank of America, N.A. employees are utilizing MERS as a "standalone assignor".  This presents certain issues discussed below, to wit:

> (1) The Assignment is from MERS (not as nominee for anyone); however, America's Wholesale Lender is listed and the attached case from Seminole County, Florida, where it appears that Osceola County, Florida Judge Robert Pleus also presides, has ruled in the case of *Bank of America, N.A. v. Nash* (Case No. 2011 CA 4389) that because AWL was not registered to do business in the State of Florida, the original mortgage was invalid.  This a copy of the case is attached as part of this Exhibit package;

**197 of 326**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(2) The Adjustable Rate Note in this case was executed in favor of AWL on October 14, 2005.  AWL was licensed to do business in the State of Florida; however, the Assignment of Mortgage executed in 2012 misrepresents what is filed in the real property records;

(3) The Note shows an indorsement-in-blank stamp from Countrywide Home Loans, Inc. a New York Corporation doing business as America's Wholesale Lender.  The Note does not reflect that Countrywide Home Loans, Inc. was involved ab initio; thus, this case appears to assert that: (a.) the trust REMIC is valid; (b.) the assignment is valid; and (c.) the MERS-originated Mortgage (**CFN#2005238210**), attached to the Complaint, is being relied on as having a nexus with Countrywide Home Loans, Inc.

(4) The Complaint that the trust REMIC exists is allegedly verified by Whitney E. Eckert who claims to be an Assistant Vice President of Bank of America, N.A. as an attorney-in-fact for the Bank of New York Mellon as Trustee; however, given the complexities of the number of listings for the Limited Power of Attorney listings recorded in October 2012 in the real property records of Osceola County, Florida, it is highly likely that Eckert had personal knowledge of what she was attesting to here, considering that the law firm had probably drafted the Complaint.

(5) The transfer to the trust could not have been valid if AWL's Mortgage was invalid.

(6) If the transfer to the trust was void, then the Plaintiff's claim of acceleration was also in violation of Paragraph 22 of the invalid Mortgage, inevitably unenforceable.

Thus, due to the reliance of the false and misrepresentative Assignment of Mortgage being recorded, there is probable cause for violation of the Florida Criminal Code Section 817.535 and Florida RICO statutes.

### *McCalla Raymer, LLC*

**(McCALLA EX. 1) CFN#2013088386, electronically recorded on 06-04-2013**
**Following recordation of the foregoing self-assignment, Peter J. Kapsales (Florida Bar No. 91176) filed a Notice of Lis Pendens on November 21, 2013 (CFN#2013182848) as Case No. 2013 CA 3916 MF.  The case appears to have been voluntarily dismissed in March of 2014; however, the intent was made to attempt foreclosure using a self-assigned, obviously-manu-factured assignment using Nationstar's own employees.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(McCALLA EX. 2) CFN#2013191504, electronically filed on 12-09-2013**
**This "Corrective Assignment of Mortgage" appears to utilize MERS as a standalone (with no nominee present; but obviously under the direction of Specialized Loan Servicing, LLC) wherein the Assignor (Orion's Wileman) purports to transfer the borrower's mortgage and note to a closed CWABS, Inc. 2007-9 (using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado) REMIC trust (six years too late). It appears that after the filing of this Assignment, a foreclosure action against the property was commenced as Case No. 2014 CA 2321 MF by Kristina A. Nubaryan, an attorney with McCalla Raymer LLC, who filed a Notice of Lis Pendens on 08-06-2014 as CFN#2014112762. The pendency of the case is still ACTIVE. However, the Assignment by Wileman is being conveyed using MERS to cover up the fact that the originating lender, First Interstate Financial Corp., lost its right to do business in Florida on June 30, 2010, over three years earlier. McCalla Raymer, LLC, in acting on this Assignment, will also show this listing under its law firm heading. The document was produced by and is listed as ORION EX. 3 under the _Orion Financial Group, Inc._ heading. Because the law firm is relying on this Assignment, it too is now involved in whatever future criminal implications are determined.**


**(McCALLA EX. 3) CFN#2011093222, recorded by presentment on 07-12-2011**
**This Assignment of Mortgage was prepared by McCalla Raymer, LLC law firm, who caused it to be executed and recorded as such, basically using MERS to cover up the chain of title as a standalone Assignor it what appears to be a self-Assignment to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP by Bank of America's ReconTrust unit in Maricopa County, Arizona.**
**Signer: Asa Bonds (known ReconTrust employee and known robosigner), signing as Assistant Secretary of MERS as a standalone entity.**
**Notary: Amanda Rodriguez (Arizona Notary Commission expired on 09-26-2014)**

**There are multiple issues with this Assignment, to wit:**

> **(1) The date of execution of this Assignment (written in what appears to be a medium black ink ball pen) is noted as June 16, 2011;**

> **(2) The date of acknowledgement of this Assignment (written in what appears to be a fine black ink ball pen) is noted as June 22, 2011; thus, it is unknown whether or not the notary physically witness the execution by the signer;**

> **(3) The notarial execution falsely states that Mortgage Electronic Registration Systems, Inc. is "a corporation organized and existing under and by virtue of the laws of the United States of America (stated as if MERS were of the same statutory creation as a national bank), when in fact, MERS is a Delaware corporation;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) MERS is claimed as a standalone, "party of the first part", who allegedly received $10.00 and other valuable consideration, when in fact, MERS is a shell corporation whose charter prohibits it from receiving any monetary "or other consideration" lest it violate its corporate charter;**

**(5) The original lender (DHI Mortgage Company, Ltd.) is completely hidden as the lender of record and thus MERS's nominee status is also obscured and misrepresented; and**

**(6) MERS does not own the Note; therefore, stating that it is conveying the Note is false and misrepresentative and appears to constitute perjury on this document.**

**Thus, as noted in STERN EX. 5 (below), this Assignment was used to force the sale of the property belonging to Dennis Hewett and Sandra Guevara, without proof that the proper party was being paid, as this Assignment does not purport that delivery of the note and mortgage actually occurred, but that it is "intended" to occur. Due to the fact that the proferred Note in the Complaint filed by Bank of America, N.A. in 2012 has an undated indorsement-in-blank, effective date of transfer is still unproven; thus, unknown party or parties may have unjustly enriched themselves by self-assignment through apparent document manufacturing processes.**

**This document squarely places McCalla Raymer, LLC and all parties relying on this and the previously-recorded Stern Assignment (which also attempts to convey the Note by MERS) as probable cause for violation of Florida Criminal Code § 817.535 as well as alleged co-conspirators, in violation of the Florida RICO statutes.**

**_Morris | Schneider | Wittstadt LLC  (fka Morris | Hardwick | Schneider LLC)_**

**This law firm is incorporated and headquartered in Atlanta, Georgia and has reportedly has offices in 13 states, including Florida, where it was registered to do business until September 2, 2014 as Morris Hardwick Schneider, LLC.  On September 3, 2014, the firm's name was changed to Morris | Schneider | Wittstadt LLC.  This firm is basically known by the Examiners within this report as a "foreclosure mill law firm", which handles _inter alia_ judicial foreclosures in Osceola County, Florida.  This information was derived from the firm's LinkedIn website as shown below at the following link:**

**https://www.linkedin.com/company/morris-hardwick-schneider**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

What happened to this firm within the last three years may speak to the character of its very nature (the taking of property, potentially and allegedly by illegal means), when one of its former partners, Nathan E. Hardwick IV, was accused in a Complaint of bilking the firm and its related title company (Landcastle Title) of more than $30,000,000, which was allegedly used for gambling, the rental of private jets, a luxury condo and other assets. There is a separate Exhibit file within the USB exhibits proffered with this report, which explains in detail the nature of the Complaint (including a copy of the original Complaint).

While there does not appear to be any "created" Assignments associated with this report, these recent accusations certainly reflect "honor among thieves" when it comes to the discussion of the integrity of the foreclosure law firms contained within this report.   The LinkedIn site appears to represent as if this law firm has been around for years and has built itself a wonderful reputation and can be trusted, when in fact, Fidelity National Financial had to come in and bail out Landcastle Title (virtually taking it over) to save it from insolvency after the alleged actions of Hardwick. There were numerous cases discussed within this report however, that involve questionable issues regarding the foreclosures and the Complaints filed by this firm, mostly under *Section Six* of this report.   The Examiner observes that the company-related issues may speak to this firm's character in the manner in which they handle foreclosure-related litigation.


### *Peirson Patterson, L.L.P.*

In all four of the following instances, William H. Peirson, who appears to be one of the partners of the firm, manufactured the document to assign the mortgage from MERS to a Non-MERS Servicer/Investor (MERS's own terminology), which would be construed to mean that the loan is no longer appearing in the MERS® System:

(PEIRSON EX. 1) CFN#2013005479, electronically recorded on 01-10-2013
Signor: Bill A. Capener, Jr. (unknown, not stated as to true employment) claiming to be an Assistant Secretary of MERS as a nominee for then-defunct America Home Key, Inc., attempting to assign a mortgage to a closed SAMI-Bear Sterns 2007-AR3 REMIC trust whose Closing Date was April 30, 2007.
Notary: Betty S. Williams (Texas Notary Commission expired on 03-27-2013)
Witnesses: None listed
Issues: This Assignment appears to have been filed during the pendency of Case No. 2008 CA 7095 MF, in which final judgment was filed, a sale was held and then subsequently vacated after the alleged borrower (Ruben Fortin) filed bankruptcy.  The origin of the signer and notary are unknown; further investigation is warranted.  The trust REMIC could not receive the Note and Mortgage because the assignment date exceeded the Closing Date.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(PEIRSON EX. 2) CFN#2013121952, electronically recorded on 08-02-2013
Signor: Kathryn Coffee-House, who claims to be an Assistant Secretary of MERS, allegedly executed the Assignment on 11-06-2012 to a closed Bear Stearns 2007-AR4 REMIC Trust whose Closing Date was April 30, 2007.
Notary: Kylethia Y. Davis (Texas Notary Commission ID #125232513; expires 05-14-2017; whose LinkedIn page, https://www.linkedin.com/pub/kylethia-davis/4a/38b/a30, states she has been a "self-employed legal professional/notary since 2010"; believed to be a Texas JPMorgan Chase Bank, N.A. employee); no witnesses signed this document.
There are multiple issues with this Assignment of Mortgage, to wit:

(1) The notarial seal, which is required in Texas, did NOT affix to the document. When one observes the document under the notarial execution, one will see a bare imprint of the margin of the seal only and not the seal itself;

(2) Marisol Morales (FBN 147478) of the Greenspoon Marder, P.A. law firm had, years before, commenced a foreclosure suit (eventually dismissed and recorded in the real property records of Osceola County, Florida as CFN#2010088894 on 06-22-2010) as 2008 CA 9707 MF (Notice of Lis Pendens recorded on 10-21-2008 as CFN#2008171433);

(3) If the loan was in default as claimed back in 2008 (and it appears from the court docket records that the Defendant, Fernando Arbelaez, filed bankruptcy), and the REMIC Closing Date was April 30, 2007, then this Assignment of Mortgage is at best being recorded containing false and misrepresentative information for the purposes of either a loss-write down (in potential violation of IRS regulations, in an attempt to defraud the U. S. government under 18 USC 371) or in the alternative, to be used to further facilitate a foreclosure proceeding on behalf of the REMIC, who never had the mortgage in the first place (note the working flow chart of the REMIC trust as shown below in Figure 1);

(4) While the court records were not available to be viewed online, it was apparent that back in 2008, the foreclosing trust was NOT assigned the mortgage at the time it commenced the proceedings;

(5) The alleged claimant Assignor (Lending 1st Mortgage, LLC), ceased doing business in the State of Florida on July 7, 2006, which the Examiner construes to mean that MERS is being used as a "cover" to "clear up" the chain of title and assign a mortgage to a trust who couldn't accept it;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

*FIGURE 1*



(6) There is also probable cause for violation of the Florida RICO statutes involving perjury with the manufacturing of this Assignment for the purpose of claiming that a REMIC trust now owns the mortgage, when there is no effective proof of transfer of the Note.  Thus, MERS, MERSCORP Holdings, Inc., Peirson, JPMorgan Chase Bank, N.A. and the signer and notary are all allegedly culpable in this instance; and

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(7) It is also apparent that Peirson, who is in Dallas County, Texas, drafted this document but did not observe and direct its actual execution, which would lead the Examiner to believe that the Assignment was executed without attorney supervision, potential issues for unauthorized practice of law.**

It is unknown why JPMorgan Chase Bank's Monroe, Louisiana archive would end up with the original recording of this document, but without the seal present, there are facial defects with the Assignment as to its validity.

As another example of how the Borrower is a party to the securitization process (involving this particular trust), despite the banks' arguments to the contrary, the following diagram of the foregoing closed REMIC trust shows the "Mortgagors" box placed within it:

It is also interesting to note here that as of the date of the Assignment and its recordation, the sponsor-seller (EMC) was also defunct at the time of the Assignment, which would more than likely indicate the trust was virtually wound down and third-party payments made have been applied to the Borrower's loan.

(PEIRSON EX. 3) CFN#2014050683, electronically recorded on 04-11-2014

Signor: Jeanette P. Sly, who claims to be an Assistant Secretary of MERS, as nominee for JPMorgan Chase Bank, N.A., attempting to assign the mortgage to Bayview Loan Servicing, LLC (there is no evidence of transfer of the Note) of Coral Gables, Florida, who in fact, is a MERSCORP member as previously noted in this report; thus, the document contains false and misrepresentative information, as the form indicates the mortgage is being transferred out of MERS to a non-MERS Servicer, which appears false.

Notary: Todd C. Sylvester (Louisiana Lifetime Notary Commission ID #062367; known Chase notary). There are no witnesses present on this document.

NOTE: A MERS 1999 Seal appears to the left of the signature in an apparent attempt to give the document "official" looking validity, when there is no proof that the signor is indeed an officer of MERS or that Hultman or anyone else had the authority to sign for MERS.  As a results, there are potential Florida RICO violations here. This document has further multiple issues that manifest themselves in due course, to wit:

**(1) This Assignment of Mortgage was transferred to Bayview Loan Servicing, LLC, however, JPMorgan Chase Bank, N.A., through its attorneys at Kass-Shuler P.A. (David J. Melvin, FBN 93607), filed a Notice of Lis Pendens on 03-28-2013 (over a year earlier) as CFN#2013049772, noting Case No. 2013 CA 1221 MF;**

**(2) This Assignment of Mortgage does not make sense if Chase was the Plaintiff in this action, as it should have held both the note and mortgage at the time it filed suit;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) The originating Lender, Home Loan Center, Inc., a California corporation, was apparently referenced in a MERS-originated assignment created by NTC's Erika Lance and signed by Chase employees on 12-22-2011 and recorded as CFN#2012003055 on 01-09-2012, and was attached to the Complaint found in the Court case files. The document appears to have been self-assigned and thus is considered self-manufactured for the purposes of depriving the homeowner of his property under Florida Criminal Code § 817.535;**

**(4) There is also another notarial execution within the subject complaint involved here (verifying the previous Exhibit's notary, Davis, supra, that she appears to be employed by Chase), affixing her seal to the Verification in the Complaint; and**

**(5) This Complaint (within the Note section), contains an unmarked page with two indorsement stamps on it, one being that of the notorious Cynthia Riley, which not only makes the indorsement-in-blank itself suspect (even though Riley was employed by WaMu up until November of 2006), but since it is undated there is no effective proof of actual transfer of the Note and the other factors involving Chase's acquisition of WaMu loans now becomes suspect.**

The Complaint is attached to this Exhibit in copy form to illustrate that during the pendency of the proceedings (the case is still active and OPEN) that Chase assigned its interests away to Bayview, but Chase is still the named Plaintiff, which makes this entire scenario suspect for probable cause for violation of Florida RICO statutes and Florida Criminal Code § 817.535, as well as alleged fraud on the Court issues. Kass Shuler, P.A.'s counsel appears to rely on the previously-recorded self-assignment to Chase using MERS as a cover, which makes the entire scenario suspect for multiple criminal violations.

**(PEIRSON EX. 4) CFN#2014076280, electronically recorded on 05-30-2014**
Signor: Angela Bowden, who claims to be an Assistant Secretary of MERS, as nominee for JPMorgan Chase Bank, N.A., attempting to assign the mortgage to itself in what appears to be a redundant self-transfer (as Chase is a MERSCORP member; there is no evidence of transfer of the Note) by its own employees in Ouachita Parish, Louisiana; thus, the document contains false and misrepresentative information, as the form indicates the mortgage is being transferred out of MERS to a non-MERS Servicer, which appears false.
Notary: Eva Reese (Louisiana Lifetime Notary Commission ID #17070; known Chase notary). There are no witnesses present on this document.
There are multiple issues with this Assignment, to wit:

**(1) Previously, Nationwide Title Clearing ("NTC")'s Erika Lance drafted and caused NTC's employees to execute a previous Rescission/Vacation of Assignment of Mortgage, recorded on 09-06-2011 as CFN#2011123030 (a copy of which is attached hereto for reference);**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(2) On the previously-mentioned "Rescission/Vacation of Assignment of Mortgage" there appears a reference to an "Investor: FNMA" (an acronym for Fannie Mae), which would indicate to the Examiner that Chase is servicing this loan for a Fannie Mae-administered REMIC which is and to date (including the subject Assignment) has not been made manifest; thus, the Examiner believes that the Marshall C. Watson law firm was attempting to negate CFN#2013075721, recorded on 05-14-2013, to transfer the mortgage (only) away from Fannie Mae; and

(3) This Assignment appears to have been manufactured and filed during the pendency of Case No. 2013 CA 2642, which is listed as PennyMac Corp v. Gordon E. Lynch, but the Verified Complaint filed with the Court lists JPMorgan Chase Bank, N.A. as the Plaintiff; thus, this Assignment appears to put ownership of the mortgage back in possession of JPMorgan Chase AFTER the suit was filed, with a questionable, manufactured Note Allonge and assignment attached to the filing.

Thus, the reliance by counsel (Choice Legal Group's Molly Emma Carey; FBN 100184) of this manufactured document creates probable cause under Florida Criminal Code § 817.535 as well as the Florida RICO statutes for the involvement of multiple actors herein.

_**Pendergast & Morgan, P.A.**_

**(P & M EX. 1) CFN#2012101403, recorded by presentment on 07-10-2012**
**Document Prepared by: Clive N. Morgan (for the firm)**
**Signer: Ann-Marie Owens, who claims to be Vice President of MERS as nominee for then-defunct Pinnacle Financial Corporation (using MERS's cover address which belongs to Metro Detective Agency in Danville, Illinois), as Assignor, to a IMH Assets Corporation Series 2005-5 REMIC trust, whose actual creation is at issue.**
**Notary: Nolan Hoffman (Pennsylvania Notary Commission active until 11-15-2015)**
**Witnesses: None Listed**

There are multiple issues with this Assignment of Mortgage, to wit:

(1) The creation of the Assignment was done by the firm litigating the foreclosure, which the Examiner construes to mean that GMAC Mortgage Corporation was working in concert with the law firm to manufacture paperwork, with the intent to deprive the homeowners of their property;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) There are 76 Registrants listed under the search "IMH" on secinfo.com;
however, there are only three (3) registrants listed as IMH Assets Corp.,
Collateralized Asset Backed Bonds, Series 2005 and are shown as 2005-4,
2005-6 and 2005-7).   There is no 2005-5 listed on the SEC's registry; thus,
it would appear that the Plaintiff is fictitious;**

**(3) Pendergast & Morgan attorney Jean C. Zabin (FBN 418439) the proceeded
to file a Complaint based on the firm's own manufactured (and apparently
incorrect assignment, which states false and misrepresentative information);
using a verified complaint that appears to have been initiated by GMAC
Mortgage LLC (the alleged Servicer) and not the lender of record (the REMIC);**

**(4) There are multiple issues of document manufacturing on both the Complaint
(filed as Case No. 2012 CA 5932 MF; Dos Santos) and the Assignment; and**

**(5) The both indorsements placed under the Borrower's signature on the proffered
Note are undated and it appears that Impac Funding Corporation inserted itself
into the Pinnacle Financial Corporation indorsement-in-blank, which could be a
precursor to a remanufacture of the Note for the purposes of fooling the Court
into believing the Note was now bearer paper.**

**Thus, the now-foreclosed and sold property, coupled with the manufactured documents,
constitute probable cause for violation of Florida Criminal Code § 817.535 and because of
multiple actors being involved, probable cause for violations of Florida's RICO statute.**

**_Phelan Hallinan, PLC_**

**(PHELAN EX. 1) CFN#2012089599, recorded by presentment on 06-12-2012**
**This document was prepared by the Phelan Hallinan Law Firm and sent to Dallas County,
Texas for execution and recordation in favor of the new Plaintiff, U. S. Bank, N.A. as
Trustee for the Holders of the WMALT 2006-AR7 Trust, in c/o Bank of America, N.A. in
Plano, Texas, then making U. S. Bank, N.A. as Trustee the official Plaintiff in the real prop-
erty records.   Unfortunately, since MERS could not transfer the Note and America's
Wholesale Lender wasn't registered to do business in the State of Florida in the first As-
signment; this assignment fails to transfer the loan into the trust pool.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Further, this Assignment, executed on June 6, 2012, and relied upon by counsel to substitute the Party Plaintiff, could not be assigned because the Closing Date of the trust was August 29, 2006, almost six (6) years earlier, making this document a sham document, involving multiple parties in violation of Florida RICO statutes and in violation of Florida Criminal Code Section 817.535.  See *Section Six*, Case No. 67 for complete case analysis.

(PHELAN EX. 2) CFN#2013096718, recorded by presentment on 06-21-2013
This Assignment was recorded five (5) months after this law firm commenced foreclosure proceedings on Huggins and Erzulia Chery of Kissimmee, Florida, Case No. 2013 CA 0050.

This case was apparently settled and subsequently dismissed.  It is unknown whether any party managed to unjustly enrich itself, but there is the appearance of intent to use this Assignment in violation of Florida Criminal Code § 817.535.

*Robertson, Anschutz & Schneid, P.L.*

(RA&S EX. 1) CFN#2011090798, recorded by presentment on 07-05-2011
This document appears to have been prepared by RA&S employee Nicolas Aristia (no Florida Bar No.) and sent to employees of Bank of America, N.A. in Phoenix, Arizona for execution for the purposes of commencing a foreclosure action on real property belonging to Evelyn Aponte and Miguel A. Velazquez-Guadarrama.
Signor: Amy DelaPaz (alleged Bank of America employee), acting as Assistant Secretary of MERS in an apparent self-assignment to BAC Home Loans Servicing, LP using a Bank of America Jacksonville, Florida address; using MERS as nominee for a now-defunct lender.
Notary: Christine Jones (Arizona Notary Commission Expired 12-21-2013)
Witnesses: Thomarat Lertkulprayad, Ana Bonds

Issues: Use of rubber stamps, the same felt-tip ink pen to affix signatures, scribbled signatures, all markers for document manufacturing and robosigning.  The "Penalty of Perjury" notation has been crossed out by the notary and initialed.  The authorized capacity of the signor (due to MERS) is questionable.  Despite the fact the case (2010 CA 6158) in December of 2013 was voluntarily dismissed, the intent was clear that RA&S and its counterparts in Maricopa County, Arizona recorded a document suspect for violations under Florida Criminal Code Section 817.535 and Florida RICO statutes may also be viable.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(RA&S EX. 2) CFN#2011090801, recorded by presentment on 07-05-2011**
**This document appears to have been prepared by RA&S employee Nicolas Aristia (no Florida Bar No.) and sent to employees of Bank of America, N.A. in Phoenix, Arizona for execution for the purposes of commencing a foreclosure action on real property belonging to Caridad Amable and Annalie Mazola.**
**Signor: Ana Bonds (alleged Bank of America employee), acting as Assistant Secretary of MERS in an apparent self-assignment to BAC Home Loans Servicing, LP using a Bank of America Jacksonville, Florida address; using MERS as nominee for a now-defunct lender.**
**Notary: MichelleR. Blank (Arizona Notary Commission Expired 01-18-2014)**
**Witnesses: Thomarat Lertkulprayad, Amy DelaPaz**
**Issues: It now appears there is a "switch up of signors". Use of rubber stamps, the same felt-tip ink pen to affix signatures, scribbled signatures, all markers for document manufacturing and robosigning. The "Penalty of Perjury" notation has been partially crossed out by the notary and initialed. The authorized capacity of the signor (due to MERS) is questionable. Despite the fact the case (2010 CA 5341) was voluntarily dismissed, the intent was clear that RA&S and its counterparts in Maricopa County, Arizona recorded a document suspect for violations under Florida Criminal Code Section 817.535 (and Florida RICO statutes) for using said document to deprive Caridad Amable and Annalie Mazola of their property.**

**(RA&S EX. 3) CFN#2011090805, recorded by presentment on 07-05-2011**
**This document appears to have been prepared by RA&S employee Kelsey Simmons (no Florida Bar No.) and sent to employees of Bank of America, N.A. in Ventura County, California for execution for the purposes of commencing a foreclosure action on real property belonging to Karina and Carol Ramos.**
**Signor: Mercedes Judilla (alleged Bank of America employee and known robosignor), acting as Assistant Secretary of MERS in an apparent self-assignment to BAC Home Loans Servicing, LP using a Bank of America Jacksonville, Florida address; using MERS as nominee for a now-defunct lender.**
**Notary: Terry Fishman (California Notary Commission No. 1795613; expired 05-11-2012)**
**Witnesses: Danno Cuenca, Youda Crain (known robosignor)**
**See *Section Six*, Case No. 69 for complete analysis.**

**Issues: Use of rubber stamps, the same felt-tip ink pen to affix signatures, scribbled signatures, all markers for document manufacturing and robosigning. The "Penalty of Perjury" notation has been filled in. The authorized capacity of the signor (due to MERS) is questionable. The Examiner found multiple, undated indorsement stamps on the proffered Note, which ended up indorsed-in-blank (also undated). Despite the suspect assignment herein, there was a substitution of counsel in the case (2011 CA 2484) AFTER Final Judgment of Foreclosure was rendered in February of 2014 and the sale of the property appears pending.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA


In light of the suspect assignment, the intent was clear that RA&S and its counterparts in Ventura County, California recorded a document suspect for violations under Florida Criminal Code Section 817.535 and Florida RICO statutes may also be viable.


**(RA&S EX. 4) CFN#2011103890, recorded by presentment on 07-29-2011**
This document appears to have been prepared by RA&S employee Nicolas Aristia and sent to employees of Bank of America, N.A. in Phoenix, Arizona for execution for the purposes of commencing a foreclosure action on real property belonging to Desiree Senter.
Signor: Karen Malcomson (alleged Bank of America employee), acting as Assistant Secretary of MERS in an apparent self-assignment to BAC Home Loans Servicing, LP using a Bank of America Jacksonville, Florida address; using MERS as nominee for Cornerstone Home Mortgage Corp. which went under in 2009.
Notary: Rozan Contreras (Arizona Notary Commission Expired 08-28-2013)
Witnesses: Teddie Travers, Kathy Cochran (known robosignor)
Issues: Use of rubber stamps, the same felt-tip ink pen to affix signatures, scribbled signatures, all markers for document manufacturing and robosigning. The "Penalty of Perjury" notation has been filled in by the notary. The authorized capacity of the signor (due to MERS) is questionable. Final judgment was granted in the case (2010 CA 6310) and filed for record on June 30, 2014. The sale of the property is scheduled for 11-03-2014. Given the nature of the fabricated Assignment of Mortgage, the intent was clear that RA&S and its counterparts in Maricopa County, Arizona recorded a document suspect for violations under Florida Criminal Code Section 817.535 and Florida RICO statutes may also be viable. There are further suspect issues with fraud on the court considering the nature and application of two, undated endorsements on the Note which were not there in the first Complaint filed by David J. Stern's law firm. Ablitt Scofield was later substituted in the case, so all three firms face potential criminal liability. Because MERS is listed as a mortgagee, it too may face potential criminal liability. Frenkel, Lambert, Weiss, Weisman & Gordon, LLP ("Frenkel") was later substituted and a claim of scrivener's error was allowed by the Court to change the complete name of the Plaintiff to Bank of America, N.A. with absolutely no proof by the current attorney (or previous attorney of record) as to effective date of transfer or modification of the Note, or an amended Complaint thereto; thus, it appears that either these attorneys confused Judge Pleus or he allowed the bank to proceed just because they said so.


In a subsequent "Notice of Filing", Matthew Edward Hearne (FBN84251) filed on behalf of Frenkel what it claimed was the "original Note" original "Mortgage". There were too many variations between the first Note proffered by the Stern law firm and the final one by Frenkel to lead the Examiner to believe that the final documents were manipulated for the purpose of taking of the property by the use of fraudulent means.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There is also a disturbing pattern with this case. Every time things appear to be challenged by Defendant's counsel, there would be a change in Plaintiff's law firm. Every time a major development would happen in favor of the Plaintiff that was questioned by the Defendant, there would be a change in the Plaintiff's law firm. As a result, this case is being noted under each participating law firm's heading.


**(RA&S EX. 5) CFN#20111129853, recorded by presentment on 09-15-2011**
This document appears to have been prepared by an unknown RA&S employee and sent to employees of Bank of America, N.A. in Ventura County, California for execution for the purposes of commencing a foreclosure action on real property belonging to Edwin Ortiz-Velasquez and Lisa A. Rivera Garcia.
Signor: Debbie Nieblas (alleged Bank of America employee), acting as Assistant Secretary of MERS in an apparent self-assignment to BAC Home Loans Servicing, LP using a Bank of America Jacksonville, Florida address; using MERS as a standalone ("nominee for no one"). This in of itself is misrepresentative and false. Upon examination of the original MERS-originated Mortgage, the originating lender was the now-defunct MFC Mortgage. This fact is NOT listed on this Assignment, which uses MERS's post office box in Flint, Michigan to hide behind the factual information which is not provided.
Notary: Wendy L. Lau (California Notary Commission No. 1794900; expired 05-02-2012)
Witnesses: Cecilia Rodriguez, Edward Gallegos (Both signing as "witnesses" using their "Assistant Secretary" of MERS title; BOTH known robosignors).
Issues: Use of rubber stamps, the same felt-tip ink pen to affix signatures, scribbled signatures, all markers for document manufacturing and robosigning. The "Penalty of Perjury" notation has been filled in by the notary. The authorized capacity of the signor (due to MERS) is questionable. Final judgment was granted in the case (2009 CA 13279) and filed for record on January 8, 2014. The property was sold on 03-13-2014 until Lisa M. Rivera Garcia filed Chapter 11 Bankruptcy, then the sale was vacated and the funds returned.
Two law firms have been substituted since Robertson Anschutz & Schneid, P.L. got involved with the Complaint. Given the nature of the fabricated Assignment of Mortgage, the intent was clear that RA&S and its counterparts in Maricopa County, Arizona recorded a document suspect for violations under Florida Criminal Code Section 817.535 and Florida RICO statutes may also be viable. The new counsel of record may also be involved if they rely on said assignment and succeed in the taking of the property. The pendency of the case is reportedly closed. See *Section Six*, Case No. 39 for a complete case analysis.


**(RA&S EX. 6) CFN#2012103998, electronically recorded on 07-13-2012**
There is reasonable belief to suspect that this law firm (RA&S) prepared and caused this document to be recorded by American Home Mortgage Servicing, Inc. in an attempt to move forward on a foreclosure on an Osceola County property titled in the name of Gary and Yvette Allen. The Osceola County Court online database revealed the following case:

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

2012 CA 005604 MF - *Deutsche Bank National Trust Company vs. Yvette Allen et al*; thus, the intent is clear that the Assignment was manufactured by the law firm, naming MERS as nominee for a defunct lender, attempting to assign the mortgage and note (which MERS does not own) into a closed American Home Mortgage 2006-2 Asset Trust. There is reasonable belief that probable cause exists that AHMSI (now Homeward Residential, Inc.) and the law firm acted in concert to manufacture a document that is suspect for a fraudulent recording under Florida Criminal Code § 817.535.  The case was voluntarily dismissed and there are notes on the docket sheet that indicate the following as of July 30, 2014: LETTER TO RETURN THE ORIGINAL NOTE AND ORIGINAL MORTGAGE TO ROBERTSON, ANSCHUTZ, & SCHNEID. The Examiner believes that there is no "original note and mortgage" and that anything proffered to the Court is also manufactured.  *See the Assignment details under AHMSI/Homeward Residential's list header.  A copy of this Assignment is attached merely as an Exhibit reference.*

(RA&S EX. 7) CFN#2012106156, electronically recorded on 07-18-2012
This Corrective Assignment of Mortgage, prepared by this law firm (RA&S) attempts to assert that an error was made in the first assignment (recorded in Book 3822 at Page 2778). This reference was traced to CFN#2009058836, which was prepared by DOCX, then a division of Lender Processing Services, Inc. and filed by presentment on April 15, 2009. *(NOTE: Since this document was a DOCX manufacture, it will be also shown under LPS's heading)*  The newer corrective assignment appears to correct not only language, but also appears (under direction and preparation of the law firm of Robertson, Anschutz & Schneid, P.L.) to deflect scrutiny from DOCX, whose President Lorraine Brown, plead guilty of document manufacturing and is currently in federal prison and replace it with another MERS-attempted assignment of the mortgage and note into the same closed Goldman-Sachs Home Equity 2006-11 REMIC trust. *A copy of this Assignment is attached merely as an Exhibit reference.*

Signor: April King (known employee of American Home Mortgage Servicing, Inc.), signing as Assistant Secretary of MERS as nominee for FBC Mortgage LLC (still showing ACTIVE under the Florida Department of State business registration's section) to a closed 2006-11 REMIC trust.
Notary: Linda G. Bayless (Florida Notary Commission #EE140306)
Witnesses: Lori Richard, W. D. Zaleski
ISSUES: The sum and substance of the assignment appears to assert the same information as its predecessor assignment.  Evidence of document manufacturing markers present.  As the law firm prepared this document, it is highly likely that AHMSI employees had actual, personal knowledge of its contents and used their alleged authority to execute the assignment into a closed REMIC trust.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

ACTION: The property was taken by commencement (re-filing) of the foreclosure action on June 5, 2012 (CFN#2012085430, Notice of Lis Pendens filed by presentment) by RA&S attorney Melissa Konick (FBN17569) on behalf of lead attorney Jonathan Meisels (FBN29235), dated May 30, 2012.  Realizing there were issues with the first recorded 2009 assignment, RA&S drafted this new assignment for execution, which was recorded AFTER the foreclosure suit was initiated as Case No. 2012 CA 2614 MF.  A final judgment of foreclosure was granted on October 16, 2012 and recorded as CFN#2012157641 by presentment on October 26, 2012.  IT IS NOT SIGNED BY A JUDGE!  A Certificate of Title was issued and filed by presentment on August 14, 2013 as CFN#2013127834 in favor of the closed 2006-11 Goldman-Sachs REMIC trust.  *NOTE: It is also possible that as a result of this sale, Goldman-Sachs violated its Consent Order with the federal government that it would not foreclose on any property during the pendency of said Order.*  Knowing the past history of this case, the examiner believes that this law firm, as well as Shapiro & Fishman, knew that the assignments were improperly executed, containing false misrepresentations that resulted in DOCX and LPS paying hefty fines and Lorraine Brown being imprisoned for five years.  Further, RA&S, knowing of these investigations, changed the assignment on its own volition (prepared by "K. Simmons" under the direction of the law firm) to deflect suspicion from the current investigation and used the same information with new signors to take the property using a known falsely-manufactured assignment, in violation of Florida Criminal Code § 817.535 and possible RICO violations, acting in concert with multiple parties to manufacture the assignment.


(RA&S EX. 8) CFN#2013106983, recorded by presentment on 07-15-2013
This law firm appears to have filed a new Notice of Lis Pendens regarding the foregoing Corporation Assignment of Mortgage (containing questionable issues), in an attempt to initiate foreclosure proceedings on real property belonging to Dennis Hewett and Sandra Guevara. Vanessa Lee (Florida Bar #84421), representing the firm, filed a Notice of Lis Pendens (CFN#2012008630; Case No. 2012 CA 0231).  Final Judgment of Foreclosure was granted by Senior Judge Robert J. Pleus, Jr. on August 29, 2012 (CFN#2012133747; filed on 09-12-2012).


The assignment from the original lender (DHI Mortgage Company) to BAC Home Loans Servicing is non-existent in the real property records.  An earlier Assignment of Mortgage, which appears to have been effectuated on June 22, 2011 (CFN#2011093222) shows MERS as "party of the first part" with no nominee status shown. It appears that the foreclosure mill law firm of McCalla Raymer, LLC prepared and caused this assignment to be recorded from MERS to BAC Home Loans Servicing, LP.  The document appears to have been executed by Bank of America, N.A.'s subsidiary ReconTrust Company, N.A. in Maricopa County, Arizona in favor of BAC Home Loans Servicing, LP as a self-assignment with the intent to initiate foreclosure proceedings on the Property.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The examiner believes that there are issues with the self-assignment that are suspect for fraudulent recordings under Florida Criminal Code § 817.535 (as to misrepresentative information).  A case synopsis follows in brief:

> (1) Notice of Lis Pendens: Doc #2012008630; Dated January 11, 2012.
> The Notice of Lis Pendens consisted of 2 pages and did not have attached
> to it a copy of a Power of Attorney;

> (2) Final Judgment of Foreclosure: Doc #2012133747; Dated August 29, 2012;

> (3) Despite the fact the case is CLOSED, there was no Certificate of Title issued
> as of yet.

*Shapiro & Fishman, LLP (nka Shapiro, Fishman & Gache, LLP)*

(SHAPIRO EX. 1) CFN#2009058836, which was prepared by DOCX, then a division of Lender Processing Services, Inc. and filed by presentment on April 15, 2009.  *(NOTE: Since this document was a DOCX manufacture and is also shown under LPS's listings).*  This assignment appears to have been prepared by DOCX to effectuate a foreclosure proceeding against the property by this law firm ("S&F") and its attorney Craig T. Smith (FBN20315) on behalf of Deutsche Bank, claiming to be trustee for a Goldman Sachs Home Equity 2006-11 REMIC trust.   The assignment was attempted roughly three years after this REMIC closed and could not accept it.  Smith, on behalf of Shapiro & Fishman, filed a Notice of Lis Pendens (CFN#2009054875) by presentment on April 8, 2009.  The Assignment was not filed until April 15, 2009, AFTER foreclosure proceedings had been commenced as Case No. 2009 CA 3981 MF.  Despite the fact the case was voluntarily dismissed and judgment was vacated, the law firm, using this false and misrepresentative document manufactured by DOCX, attempted foreclosure using a document that reasonable suspicion exists to believe that is in violation of Florida Criminal Code § 817.535.  As a footnote, realizing his error, Smith attempted to refile the Notice of Lis Pendens on July 7, 2009 (CFN#2009110933).  Again, the Final Judgment of Foreclosure (CFN#2010029665), issued by Hon. Margaret Waller, was vacated.  (*see Robertson, Anschutz & Schneid, P.L. for final issues on this case*)

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(SHAPIRO EX. 2) CFN#2009090164, recorded by presentment on 06-10-2009**
**Document Prepared by: Hollan M. Fintel (for the firm)**
**NOTES: A majority of the case issues involved here were discussed in CONSUEGRA EX. 3 on Page 174 of this Report.**
**Significant to this Assignment of Mortgage are the known Litton Loan Servicing, LP robosigners (Marti Noriega and Denise Bailey) who both claims to be Vice Presidents of MERS as nominee for MFC Mortgage, Inc. of Florida, when in fact, both signers are in Houston, Texas and are employed by Litton.   There were no witnesses to this document, which was acknowledged by Brenda McKinzy (whose Texas notary commission appears to have expired on 12-05-2010). The document attempts to assign the Mortgage and Note to the SunTrust Alternative Loan Trust 2006-1F, which was long since closed and could not accept it.   This document was then relied upon in a foreclosure action, which carried on into the target period of this forensic examination; thus, the criminal implications therein. The subsequent Consuegra Exhibit 3 which was filed is also attached for quick reference.**

**(SHAPIRO EX. 3) CFN#2010012238, recorded by presentment on 01-27-2010**
**It appears that this document was recorded to prove up a lender's position for a defunct Florida corporation by utilizing MERS as the "catch-all" for the purposes of effectuating foreclosure by S&F.**
**Signor: (known robosignor) Marti Noriega (employee of Litton Loan Servicing, LP) signing for the defunct lender as Assistant Vice President of MERS as nominee for ECC Credit Corporation of Florida.**
**Notary: Karen Quiller (Texas Notary Commission expired)**
**Witnesses: Tanya Bass, (second name illegible)**
**Issues: The document was executed two days after the Notice of Lis Pendens was filed by Craig T. Smith (FBN20315) by Jessica Conte (FBN58412). The assignment purports to convey a loan from a defunct lender using MERS into a closed C-Bass 2006-CB3 REMIC trust (CFN#2009206150); styled as Case No. 2009 CA 13179.  A corrective assignment by Ocwen in 2013 (after the foreclosure was voluntarily dismissed).**
**NOTE: Former Litton employees are allegedly involved in the Goldman-Sachs (WITNESS B) scenario with potential violations of 18 USC 371.**

***Shapiro, Fishman & Gache, LLP***

**(SHAPIRO EX. 4) CFN#2013031840, electronically recorded on 02-25-2013**
**The Shapiro, Fishman & Gache law firm appears to have been involved in the execution of this document, which appears to have been executed by JPMorgan Chase Bank, N.A. employees in Denton, Texas by MERS (ONLY, no nominee status) to a closed Bear Stearns 2007-HE2 REMIC trust to the benefit of Chase.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

This document appears to be part of current litigation against the property owner (Yexenia Fernandez) in the taking of her property through the use of this manufactured document in Case No. 2013-CA-000822, in a Final Judgment of Foreclosure signed by Senior Judge Robert J. Pleus, Jr. *in chambers* on September 2, 2014.  It is highly likely that Judge Pleus didn't give this document any scrutiny.


**(SHAPIRO EX. 5) CFN#2012099225, electronically recorded on 07-03-2012**
The Shapiro, Fishman & Gache law firm appears to have been involved in the execution of this document, which appears to have been executed by Vericrest Financial, Inc. on June 28, 2012 in an attempt to assign a Mortgage executed by Bogdan and Joyce Bladek into a closed Accredited Acceptance Corp. 2008-1 Trust REMIC, which appears to be a private equity (144 or 144-A trust); thus, the 2008 date would appear to indicate that the regulations for this specific REMIC were probably violated.  Not surprising, this Assignment was filed during the pendency of Case No. 2010 CA 5095 MF, which makes this document suspect for manufacture with the intent to deprive the Bladek's of their property.

It appears that the homeowner's retained counsel and eventually, by August 1, 2013, the case was dismissed.  The fact that this document was filed within the pendency of the case makes it suspect for reliance to give rise to probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statute violations as multiple parties participated in the creation and manufacture of the instrument, which was recorded with apparent intent.


*Smith, Hiatt & Diaz, P.A.*

**(SH&D EX. 1) CFN#2012104688, recorded by presentment on 07-16-2012**
There is reasonable suspicion that Tanya D. Simpson, an attorney with the Smith, Hiatt & Diaz, P.A. law firm, manufactured this document for execution by employees of Bank of America, N.A.  The suspect second assignment purports to claim that the transfer of the mortgage was sufficient to warrant foreclosure proceedings, which were commenced on August 25, 2009.

The problem here is that there is probable cause to believe that Simpson does NOT have first-hand knowledge about the facts.  She is only regurgitating what she is getting off of a computer screen within the framework of a third-party data software platform. The examiner believes that Simpson is being told what to prepare by a non-lawyer.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

At the time this document was prepared, it is unknown whether Simpson knew that Greenpoint Mortgage Funding, Inc. was closed by Capital One (August 20, 2007) and that any attempt to convey the borrower's note and mortgage from a defunct entity to a closed Goldman-Sachs 2004-11 REMIC trust using MERS as a "conveyance tool" is moot and thus the recorded document contains misrepresentations that were declared valid under Penalty of Perjury under the laws of California with the intent to deceive the court in a foreclosure action.

The filing of the document itself represents probable cause under Florida Criminal Code § 817.535 as to containing misrepresentative information designed to deceptively take the property Demetrio and Margarita Costa.  The document also misrepresents MERS address as 1200 South Pine Island Road, Plantation, Florida 33324, when in fact, the address belongs to CT Corporation System, a service which receives process for various companies doing business within the State of Florida.  It certainly is NOT MERS address.  MERS is a Delaware corporation which has established service of process without the State of Florida.

The first Assignment of Mortgage was filed shortly before Simpson's prepared Assignment was filed (CFN#2012090526, electronically recorded on 06-14-2012; see listing under _Bank of America, N.A. Ventura County, California_'s listings; also attached here for reference).  Further, it appears that a Final Judgment of Foreclosure was granted by the Court by Senior Judge Robert J. Pleus, Jr. on December 13, 2012, filed for record as CFN#2012188875 on December 17, 2012.

Shapiro & Fishman, LLP appears to have been handling the matter at the time of the actual judgment and issuance of the Certificate of Title.  The original mortgage was a MERS-originated mortgage. The original lender was the now-defunct GreenPoint Mortgage Funding, Inc. (CFN#2004185754).  There was another attempted assignment (CFN#2012090526, electronically filed on 06-14-2012) which appears to have an intended use to effectuate the foreclosure process, prior to the subject assignment being issued.


(SH&D EX. 2) CFN#2012104691, recorded by presentment on 07-16-2012
There is reasonable suspicion that Tanya D. Simpson, an attorney with the Smith, Hiatt & Diaz, P.A. law firm, manufactured this document for execution by employees of Bank of America, N.A.
Signer: Aida Duenas (known Bank of America, N.A. employee and known robosigner), claiming to be an Assistant Secretary of MERS for already subsumed Countrywide Bank, N.A.
Notary: Eric T. Way (California Notary Commission expired on 02-07-2013)
Witnesses: None Listed
NOTE:   _See Section Six_, Case No. 31 for a complete case analysis.  This document was manufactured with the intent to deprive the homeowner of their property (FCC § 817.535).

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(SH&D EX. 3) CFN#2012166865, recorded by presentment on 11-13-2012**
**There is reasonable suspicion that Tanya D. Simpson, an attorney with the Smith, Hiatt & Diaz, P.A. law firm, manufactured this document for execution by employees of Bank of America, N.A.   This Correction of Assignment attempts to correct SH&D EX. 2.**
**Signer: Mary Ann Hierman (known Bank of America, N.A. employee and known robosigner), claiming to be an Assistant Secretary of MERS for already subsumed Countrywide Bank, N.A.**
**Notary: Danya Bucaro (California Notary Commission expired on 03-15-2014)**
**Witnesses: None Listed**
**NOTE:   *See Section Six*, Case No. 31 for a complete case analysis.   This document was manufactured with the intent to deprive the homeowner of their property (FCC § 817.535). The trust REMIC's Closing Date was May 8, 2007; thus, this Assignment does nothing to correct the PSA's violation and contravention of New York Estates, Powers & Trusts § 7-2.4 (even with the correction).  The intent to defraud is still present here.**

_**David J. Stern, P.A.**_

If any one attorney in Florida history has brought more scrutiny and legal action against a foreclosure mill law firm, the Examiners believe it was David J. Stern.  The Examiner preparing this portion of the report notes that the 83-page, 17-count Florida Bar Complaint ("FBC", included in the USB flash drive of listed Exhibits within this report; even though not listing every single internal suspect issue) was sufficient enough reference to highlight the relevant issues that are at all times materially pertinent to this forensic examination.   It is interesting to note here that Stern clients ran the gamut of lenders, servicers and MERS (and that the

What brought the most public scrutiny of this individual was the unsupervised non-lawyer behaviors of Cheryl Samons, Stern's office manager, whose name came to light in the case of *U. S. Bank, N.A. v. Ernest Harpster* (Case No. 51-2007-CA-6684ES, Pasco County, FL) a case also included in the USB Exhibit File and included here in printed form as **STERN EX. 1**), where Cheryl Samons' signature was affixed to a backdated Assignment of Mortgage in an attempt to garner standing for U. S. Bank, N.A. so it could foreclose on Mr. Harpster's property.

If any one thing can be gleaned from the Stern issues brought within the FBC, it would be Stern's lack of supervisory control over his staff of over 1,500 employees (more than 10% of which were Florida bar-licensed attorneys), which became a serious problem for the Florida Circuit Court systems (including Osceola County).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thousands of foreclosure cases were put on hold while the Stern law firm "bat cleanup" on the messes the lack of supervisory control created.  Many of the cases filed within this Circuit were handed off to other law firms to wrap up. The 35-page Report of Referee arising from the FBC is attached hereto as **STERN EX. 2** and incorporated by reference herein.

Many of the actions filed by Stern were so facially deficient and blatantly mismanaged (due to Stern's apparent greed and need to corner the market by taking on as many cases as possible) that once another firm was substituted in by the alleged party plaintiff, the new law firm ended up dismissing these cases.  This is only part of the problem that tied up the courts all across Florida by actually contributing to the backlog that eventually brought the ire of the Florida Supreme Court down on the Stern law firm.  What is even more evident, as recognized in the FBC, is the firm's willingness to backdate or change dates on documents that were filed in the real property records (including Osceola County, Florida) of the Circuit Clerk.

While the current Clerk (Mr. Ramirez) was not then-victimized by Stern's errant behaviors, which caused him to be disbarred and his doors shuttered in 2013, he has had to deal with the apparent issues that this Report reflects upon that were directly caused by Stern firm employees. While other law firms also brought scrutiny upon themselves for similar behaviors, many of which saw some of their key attorneys being suspended from practicing law for six (6) months, their suspect behaviors paled in comparison to the magnitude of issues created by the Stern law firm, some of which are noted below.

The key issues here involve the Assignments of Mortgage (even though filed in the real property records of Osceola County, Florida well outside of the target period of this forensic examination). Many of these records were relied upon by foreclosure law firms as the basis for maintaining that their client had standing to foreclose; hence the allegations of probable cause under Florida Criminal Code § 817.535 as well as violations of the Florida RICO statutes.

Many firms appear to have found ways to skirt around the issues created by Stern by causing apparent creation of newer and "corrective" Assignments of Mortgage which were then relied upon to "fix" the initial problems the Stern firm created.  This apparent, errant behavior has not gone unnoticed in this Report.

It is because of foreclosure mill law firms like Stern's that all of the apparent suspect behaviors noted in **STERN EX. 2** herein made manifest the patterns and behaviors of other foreclosure law firms which are noted in this Report. It is fundamentally important to acknowledge that Stern was never prosecuted for creating these suspect documents (as noted below) for use with the intent to deprive homeowners of their real or personal property (F.C.C. § 817.535) by colluding with other parties (both within and without the State of Florida; allegedly violating Florida RICO statutes for perjury) in the manufacturing and recording of these documents for said purposes. That being said, the following 14 exhibits are offered for consideration for probable cause of the foregoing statutes:

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(STERN EX. 3) CFN#2009163848, recorded by presentment on 10-13-2009**
**This Assignment of Mortgage was manufactured by the Stern Law Firm in connection with a Complaint to Foreclose Mortgage (2008 CA 2471). It comes into the target period based on the date the Certificate of Title was issued and recorded on 08-02-2010 as CFN#2010109443; issued back to the Plaintiff trust.**
**Signer: John Kennerty (aka John Herman Kennerty, known robosigner and employee of Wells Fargo Bank, N.A.), signing as Assistant Secretary of MERS (using Wells Fargo's DBA "America's Servicing Company" address in Ft. Mill, SC as a standalone Assignor, to the Plaintiff trust as a means to prove standing to foreclose on a property belonging to Khawar Qureshi, an unmarried woman. Kennerty's Deposition is included as an Exhibit in the USB flash drive Exhibit Package.**
**Notary: Kelly A. Ruff (South Carolina Notary Commission expires March 10, 2018)**
**Witnesses: Camilla Garcia, RoseAna Cortinez (alleged Wells Fargo employees)**
**Issues: The Closing Date of the trust is April 25, 2006; thus, contravention of New York trust law, the transfer is void. The address of both the Assignor and Assignee is the same. This Assignment was filed over a year AFTER the Notice of Lis Pendens was filed (04-02-2008, as CFN#2008058971, Case No. 2008 CA 2471 MF) by Stern Law Firm attorney whose name and Bar No. is not legible, on behalf of Adam F. George (FBN635502).**
**NOTE: See *Section Six*, Case No. 76 for a complete case analysis.**

**(STERN EX. 4) CFN#2009166551, recorded by presentment on 10-16-2009**
**This was the first of two assignments filed in connection with a mortgage foreclosure case against Jose and Celina Martinez. This Assignment was Stern-manufactured and was recorded nearly three (3) months AFTER the Complaint was filed (July 21, 2009) and the Notice of Lis Pendens was filed (CFN#2009118456 on 07-28-2009) by Amoy Allison Montaque (FBN 64392; inactive) for Daphne B. Tako (FBN 51621) for the Stern Law Firm.**
**Signor: Kimberly Dawson, who claims to be Vice President of MERS as a standalone Assignor, attempting assignment of BOTH the Mortgage and Note to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP in what appears to be a self-assignment using a former MERS-related Ocala, Florida mailing address.**
**Notary: Azfar Siddiqui (Texas Notary Commission Expired 11-16-2010)**
**Witnesses: Gwendylon Spencer, Shadondra Ogati**
**All parties executing this document are Bank of America, N.A. employees (working for BAC Home Loans Servicing, LP); MERS cannot convey something it does not own, namely, the Note; thus, this Assignment contains false and misrepresentative information, created by Stern's law firm for the purpose of giving BAC Home Loans Servicing, LP standing to foreclose on Jose and Celina Martinez's property.**
**NOTE: See *Section Six*, Case No. 87 for a complete case analysis.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(STERN EX. 5) CFN#2009204922, recorded by presentment on 12-29-2009**
**The case involving this Stern-generated Assignment of Mortgage dates back to Case No. 2009 CA9602 MF, filed by the Stern law firm on September 4, 2009 as *BAC Home Loans Servicing, LP v. Dennis Hewett et al*.  It appears that this is one of the cases previously noted that was stalled and subsequently, McCalla Raymer, LLC (used under license by Stone, McGehee and Silver, LLC of Orlando, Florida) was substituted by court Order on March 3, 2011. This Assignment of Mortgage was filed over three (3) months AFTER the Complaint was filed.  The case was subsequently CLOSED; however, McCalla Raymer did in fact cause to be drafted an Assignment of Mortgage that was send to ReconTrust Company, N.A. (Bank of America's trustee unit in Maricopa County, Arizona) for execution.  This document was caused to be filed as CFN#2011093222 on 07-12-2011. This Assignment virtually replicates the Stern-generated Assignment, with the exception that this Assignment promulgates F. S. A. § 701.02 and maintains (but does not specifically say which) that "the intention of the parties herein be such that deliver of the mortgage and note be established and evidence by electronic or physical delivery of the mortgage and note", but again does not say WHEN this delivery occurred, just that the parties "intended" to deliver the note and mortgage.  This does not establish physical possession of the Note and Mortgage but rather establishes suspicion of document manufacturing for that purpose.  A copy of this Assignment is attached as a supplement to this file and is also noted as McCALLA EX. 3 in this Report.**

**Subsequently, Case No. 2012 CA 0231 MF (styled *Bank of America, N.A. v. Dennis Hewett at al*) was filed by Robertson, Anschutz & Schneid, P.L. ("RA&S") attorney Vanessa Lee (FBN 84421) on January 17, 2012. RA&S attorney Melissa Konick (FBN 17669) caused to be filed the Notice of Lis Pendens as CFN#2012008630 on 01-19-2012.**

**The Note proffered in the Complaint appears manufactured, as there are systematic markings on the attached sheet of paper which appear to be computer manipulated to include the previously-noted set of endorsements within the Countrywide Home Loans entities wherein ReconTrust Company, N.A. affixed endorsement stamps of Laurie Meder and Michele Sjolander (in blank).  These indorsement stamps were not noted on an attached ALLONGE per se, but just placed on what appears to be a 2-hole punched generated piece of paper, both undated, trying to simulate "bearer paper".  The MERS-originated Mortgage was also attached to this Complaint; however, the Stern Assignment was not included nor was there any reference to it; thus, as it stands in the real property records, it serves as constructive notice that it in fact is being relied on here.  RA&S's April Harriott (FBN 37547) filed what she claimed was a Notice containing the original Note; however, the final endorsement page did not contain the 2-hole punch markings at the bottom of the page, which would make this document even more suspect for computer-manipulated manufacture for the purposes of creating standing for the Plaintiff.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Judge Pleus signed a Final Judgment of Foreclosure on August 29, 2012, which was filed for record as CFN#2012133747 on 09-12-2012, which places this case within our target parameters for forensic examination. It appears as a result of the judgment, the Defendant filed bankruptcy and the Court was noticed of it as of 10-5-2012. Ablitt Scofield was eventually substituted as counsel for RA&S; however there doesn't appear to be an Order of such filed in the Court record. Further, the Plaintiff's name changed to Nationstar Mortgage LLC without any apparent submission of a Motion by Plaintiff's counsel to substitute the Party Plaintiff.

It appears that the foreclosure case forced a short sale of the property by the homeowners, which appears to have closed the case file at some point in time in late 2013. It appears that a General Warranty Deed was issued March 14, 2014 by Hewett and Guevara to Benancio Lopez, a married man; duly recorded as CFN#2014039646 on 03-21-2014. It appears that Infinity Title Group of Orlando, Florida handled the transfer of the property. Again, it is unknown whether or not the right party in interest is paid due to the self-assignments. Further, this General Warranty Deed places an apparent legal burden on the couple to warrant to defend in the event the wrong party was paid. Because MERS is involved, the title company will not insure defects created by MERS. This too is by design as noted under *Schedule B* of virtually all title policies issued.

(STERN EX. 6) CFN#2010000593, recorded by presentment on 01-04-2010
A complete explanation of the series of attempted foreclosure which occurred here based on a misrepresentative and fraudulent assignment by GMAC's Jeffrey Stephan can be found in detail under the Indecomm listings at CFN#2014043481.
Issues: On January 4, 2010, GMAC Mortgage LLC, by and through its counsel, David J. Stern, caused to be filed CFN#2010000593. This assignment, executed by noted robosignor Jeffrey Stephan (witnesses unknown due to scribbled signatures) who claims to be Vice President of MERS (Stephan has been deposed on at least two occasions according to the examiner) attempting to assign the mortgage to a closed RALI 2007-HQ2 REMIC Trust (Deutsche Bank is named Trustee). The same book and page number for the original loan from the failed bank are noted. Prior to the foregoing scenario, Adam F. George (FBN635502), also from the Stern Law Firm, filed a Notice of Lis Pendens on 11-02-2007 on behalf of Deutsche Bank Trust Company as Trustee (no named series trust) as CFN#2008197045 (Case No. 2007 CA 4654). This case was voluntarily dismissed. Later, An unknown attorney with the Stern law firm (FBN54672), signing for Elsa Hernandez Shum (FBN295544) and Miriam Mendieta (FBN866880) of the Stern law firm, filed a Notice of Lis Pendens on September 9, 2009 , shown    in the public record as (CFN#2009143178; Case No. 2009 CA 9577), nearly four months PRIOR TO recordation of the foregoing assignment; this was the second attempt by the Stern Law Firm to attempt foreclosure, which also ended up being voluntarily dismissed.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The attempted, repeated attempts to take a property (belonging to Mario Osnaya and Guillermo and Carmen Quiroga) that was clearly not assigned to Deutsche Bank based on a misrepresentative assignment containing false information leads the examiner to believe there is probable cause of a violation under the Florida Criminal Code § 817.535 and potential issues involving the Florida RICO statutes.

(STERN EX. 7) CFN#2010046168, recorded by presentment on 04-01-2010
Signor: Christopher M. Zeis (purportedly an employee of M & T Bank) signing as Vice President of MERS as nominee for a defunct FBC Mortgage, LLC on March 16, 2010 in an apparent self-assignment (using M&T Bank's Buffalo, NY address for both Assignor and Assignee).
Notary: Katherine M. Kraus (New York Notary Commission No. 01KR6168154; current commission expired on 06-11-2011)
Attesting Witness: Maureen Vishion
Witnesses: Becky Beranek, Patricia Sneck
Issues: This assignment was prepared by the Stern law firm, who directed its manufacture and execution for the purposes of effectuating foreclosure on property belonging to Manuel Otero and Ana Melendez; thus, the persons executing this document had no direct knowledge of the facts they were attesting to. See *Section Six*, Case No. 103 for complete analysis.

(STERN EX. 8) CFN#2010086729, recorded by presentment on 06-17-2010
Signor: Christopher M. Zeis (purportedly an employee of M & T Bank) signing as Vice President of MERS as nominee for a defunct lender (FBC Mortgage, LLC; as of January of 2008) on May 21, 2010 in an apparent self-assignment to HSBC Bank USA as Trustee (it does NOT say who the bank is a Trustee for) in c/o M & T Bank.
Notary: Katherine M. Kraus (New York Notary Commission No. 01KR6168154; current commission expired on 06-11-2011)
Attesting Witness: Maureen Vishion
Witnesses: Becky Beranek, Patricia Sneck
Issues: The Assignor used an old mail stop belonging to Pinnacle, which is misrepresentative of the facts as Stern's law firm requested the document be sent back to them once it was recorded. MERS cannot convey the Note as it does NOT have an interest in the Note.

This Assignment of Mortgage affects real property belonging to Bertha Sanclemente and her spouse, Manuel E. Avalos.   The Assignment was recorded AFTER Sheri Braun (FB-N10508) filed a Complaint to Foreclose Mortgage on May 19, 2010, attempting to self-verify the Complaint. The proffered Note contained no indorsements-in-blank or allonges to note.  Ablitt Scofield's Scott M. Gross (FBN63921) filed a Stipulation for Substitution of Counsel on May 20, 2011 (on behalf of WITNESS A to this report).

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Ablitt Scofield was eventually substituted as counsel during the pendency of the case. Despite the fact that the Court (on its own motion) dismissed the case without prejudice, the intent was clear that the Stern-manufactured document containing these false misrepresentations was used in tandem with the Complaint to Foreclose to deprive the homeowners of their property, probable cause for violation of Florida Criminal Code Section 817.535 and Florida RICO statutes.  NOTE: An expanded case file is attached as part of this Exhibit.

(STERN EX. 9) CFN#2010086756, recorded by presentment on 06-17-2010
Signor: James P. Colosanti (purportedly an employee of M & T Bank) signing as Assistant Vice President of MERS as nominee for a defunct lender (FBC Mortgage LLC) to M & T Bank in an apparent self-assignment, under the preparation and direction of the David J. Stern law firm for the purposes of filing a foreclosure complaint (Case No. 2010 CA 2894 MF); however, Stern didn't cause the Assignment of Mortgage to be filed until nearly two months AFTER the Notice of Lis Pendens was filed in the case on behalf of M & T Bank (CFN#2010057928).
Notary: Katherine M. Krauss (New York Notary Commission No. 01KR6168154; expired)
Witnesses: Maureen Vishion, Becky Beranek (alleged employees of M & T Bank)
Issues: MERS does not own the Note, thus M&T Bank cannot convey the Note to themselves using MERS to hide behind a defunct lender (FBC Mortgage, LLC) in order to effectuate standing.
Issues: This assignment was prepared by the Stern law firm, who directed its manufacture and execution for the purposes of effectuating foreclosure on a property belonging to Jose V. and Ana E. Ramirez (via Case No. 2010 CA 2894 MF); thus, the persons executing this document had no direct knowledge of the facts they were attesting to.   Ablitt Scofield was eventually substituted for the Stern law firm and this case was subsequently dismissed. NOTE: An expanded case file is attached as part of this Exhibit.

(STERN EX. 10) CFN#2010099899, recorded by presentment on 07-13-2010
This Stern-manufactured Assignment of Mortgage appears to have been executed by BAC Home Loans Servicing, LP employees in Dallas County, Texas in an apparent self-assignment using MERS as a standalone "cover" for misrepresentation of the chain of title and chain of custody of the Note.
Signer: Sandra Williams (alleged BAC employee), claiming to be Vice President of MERS as a standalone Assignor.
Notary: Special K. Bell (Bank of America notary whose Texas Notary Commission expired on 04-23-14)
Witnesses: Perla Parades, Louis Taylor (both alleged BAC employees)
NOTE: See *Section Six*, Case No. 16 for a complete case analysis.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(STERN EX. 11) CFN#2010119244, recorded by presentment on 08-18-2010**
Signor: Michall Bachman, who purports to be Vice President of then-defunct New Century Mortgage Corporation; in what appears to be a backdated, self-assignment by Deutsche Bank National Trust Company (or someone under their direction in Collin County, Texas at an address belonging to Bank of America, N.A.) for use in initiating foreclosure proceedings on a property belonging to Iara Mabel Rodriguez Palencia. Someone under his direction at David Stern's law firm appears to have created the document for signing purposes for Bank of America, who may have been the servicer, to a closed REMIC (as referenced in Albertelli Law CFN#2014045502), used in tandem to support the REMICs position as Plaintiff when the parties knew or should have known that the REMIC was not the real party in interest. This assignment does not purport to delegate attorney-in-fact status, which would make the assignment misrepresentative as to the authority required to sign it.

**(STERN EX. 12) CFN#2010123140, recorded by presentment on 08-25-2010**
Signor: Greg Samel, who purports to be Assistant Secretary of MERS as nominee for Decision One Mortgage Company in what appears to be a self-assigned mortgage to CitiMortgage, Inc. (in which Samel and his notary and witnesses appear to be CitiMortgage employees). Someone under his direction at David Stern's law firm appears to have created the document for signing purposes by Citimortgage employees. The document claims to have been drafted by the Stern law firm for signing on June 11, 2010; however, the places where the apparent robosigning took place in the document manufacturing scheme of things were not filled out as to the actual date signed. In other words, it appears that Citimortgage employees can't even "manufacture" a document properly for use in foreclosure proceedings, discussed as Case No. 2 in *Section Six* of this report.

**(STERN EX. 13) CFN#2010159248, recorded by presentment on 10-21-2010**
Signer: Jere Morris (alleged BAC employee), signing as Assistant Secretary of MERS as nominee for then-defunct Countrywide KB Home Loans, LLC.
Notary: Melissa Flanagan (Texas Commission was voluntarily surrendered)
Witnesses: Ruby Gutierrez, Dekendrick Ganison
Issues: The Stern Law Firm prepared this Assignment in an attempt to prove standing for its client. MERS does not own the Note, therefore, it cannot convey something it does not own. BAC used MERS and one of its subsidiaries' addresses to hide behind the self-assignment conducted out of Dallas County, Texas in the taking of property belonging to Sonia Diaz. See *Section Six*, Case No. 81 for a complete case analysis.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(STERN EX. 14) CFN#2011123972, recorded by presentment on 09-08-2011**
**Signer:** Rebecca A. Colvin (alleged employee of M & T Bank's "Lien Release" department) signing as Vice President of Mortgage Electronic Registration Systems, Inc. as nominee for defunct FBC Mortgage, LLC, using M & T Bank's Buffalo, New York address to misrepresent a self-assigned party of interest in the Release of the Mortgage belonging to Jose and Ana Ramirez of Osceola County, Florida.   See *David J. Stern* law firm heading under CFN#2010086756, where the Stern law firm attempted foreclosure by directing M & T Bank employees in Buffalo, New York to execute a Stern-prepared self-Assignment of Mortgage from MERS as nominee for then defunct FBC Mortgage LLC to M & T Bank for the purposes of filing Case No. 2010 CA 2894 MF, which was subsequently voluntarily dismissed in November of 2011 after substitution of counsel (Ablitt Scofield's Scott M. Gross, FBN63921; for Lorelei Fiala (WITNESS A herein).
**Notary:** Gloria J. Dishman (New York Commission expired 04-24-2014)
**Witnesses:** None (two may be required in Florida)
**Issues:** Establishment of pattern of alleged perjury under Florida RICO statutes, involving known suspect Florida foreclosure mill law firms and M & T Bank.  The Complaint, signed by Miguel A. Gonzalez (FBN872572) was not properly verified (but rather verified by the attorney).  The Note attached to the Complaint appears to have a "typed in" specific (restrictive) endorsement to M & T Mortgage Corporation (not M & T Bank, a different entity entirely).  It is undated and UNSIGNED/UNTITLED.  It further appears as if the document could have had the last page of the Note physically manipulated.  It further appears that counsel was substituted for Matthew Pingeton of Ablitt-Scofield (for Lorelei Fiala) and the case was voluntary dismissed on November 1, 2011.   However, the intent to use a recorded document containing false and misrepresentative information constitutes probable cause under Florida Criminal Code 817.535.

**(STERN EX. 15) CFN#2013106983, recorded by presentment on 07-15-2013**
**This document appears to have been manufactured by Bank of America employees in Simi Valley, California post-foreclosure to "bat clean up" for issues created by litigation involving the Stern law firm.  There are document manufacturing issues involved as noted under Bank of America's listing for this specific document.**
**Issues:** The Stern Law Firm filing was the first in a two-part attempt to foreclose on the property belonging to Dennis Hewitt and Sandra Guevara of St. Cloud, Florida (Case No. 2009 CA 9602; CFN#148986, Notice of Lis Pendens filed 09-16-2009 by Denise E. Kestner (Florida Bar #70866) on behalf of Daphne B. Tako (Florida Bar #51621) and Miriam Mendieta (Florida Bar #866880).  The suit appears to have been voluntary dismissed in 2010 and continued by another firm, as substitution of counsel was noted in Court filings.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(STERN EX. 16) CFN#2014071910, electronically recorded on 05-22-2014**
**This document appears to have been manufactured by the Wells Fargo Assignment Team on behalf of Wells Fargo Bank, N.A., who requested the recording of the document. The document was executed by eSignatures of both the signor and the notary, despite the fact the notarial execution is inaccurate and misrepresentative of how this document was executed. This document purports to assign the mortgage from MERS as nominee for now-defunct Aegis Wholesale Corporation (which filed for bankruptcy in Delaware in 2007) to a closed Deutsche Alt-A 2006-AR3 REMIC trust that legally could not accept it.  Thus, there are misrepresentative issues contained within the language of this recorded document.  The employees of the team *(see the 150-page Foreclosure Attorney Manual, contained herein as an exhibit by reference)* did NOT have personal knowledge of the facts they were attesting to.   NOTE: This document was recorded over five (5) years AFTER HSBC (as Trustee) attempted to initiate foreclosure proceedings on the property belonging to Maria and Jimmy Acosta and was eventually voluntarily dismissed.   A Notice of Lis Pendens was filed on March 10, 2009 (CFN#2009038498) by Adam F. George (FBN25501) on behalf of the David J. Stern law firm attempting to foreclose on the mortgage executed as CFN#2006091626 on April 5, 2006.**

*Tripp Scott, P.A.*

**(TRIPP EX. 1) CFN#2012085108, recorded by presentment on 06-04-2012**
**Document Prepared by: Tripp Scott, P.A. (unknown document preparer with the firm)**
**Signer: Cecilia Rodriguez, purporting to be an Assistant Secretary of MERS as nominee for then-defunct Aegis Wholesale Corporation (as of August of 2007), as Assignor, to Bank of America, N.A. in what appears to be a self-assignment of the Mortgage.**
**Notary: Evette Ohanion (California Notary Commission active until 12-27-2015)**
**Witnesses: Aida Duenas, Mary Ann Hierman (known Bank of America document preparers and known robosigners)**
**Execution Date: May 15, 2012**
**Issues: Tripp Scott's document preparer is using the Metro Detective Agency's address in Danville, Illinois to cover for Aegis Wholesale Corporation's Houston, Texas address.**
**NOTE: See *Section Six*, Case No. 51 for a complete case analysis.  Known to the Examiner preparing this report is the Aegis attorney in Houston (Michael Balog), who is winding down the affairs of the Lender and all of its subsidiaries and affiliates in their Chapter 11.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(TRIPP EX. 2) CFN#2012121350, recorded by presentment on 08-20-2012
Document Prepared by: Tripp Scott, P.A. (unknown document preparer with the firm)
Signer: Clinton Kyle Duncan, purporting to be an Assistant Vice President with Bank of America, N.A. (as successor by merger to its predecessors).
Notary: Jiju K. Thomas (Texas Notary Commission still active; expires on 07-22-2015)
Witnesses: Andrew Robertson Darkol, Joshua Andrew Temple
Execution Date: August 6, 2012
There are multiple issues with this Assignment of Mortgage, to wit:

(1) In order for this Assignment to be effective, the first Assignment (which did NOT name the trust REMIC) would also have to be effective.  Since there are apparent issues with the first Assignment of Mortgage, this Assignment of Mortgage appears to be predicated on past deficiencies, most of which (if not all) negate the outcome of this document;

(2) There are markers of document manufacturing, namely, BOLD-FACED CAPITAL LETTER copy insertions from a computer template;

(3) The visible address of Deutsche Bank National Trust Company is now apparent in this Assignment (which covered up the real party in interest, misrepresenting the address for Bank of America in its predecessor Assignment;

(4) Since MERS did not own the Note, how then can Bank of America transfer it into the REMIC trust?;

(5) The address shown as Bank of America, N.A.'s address really belongs to Deutsche Bank National Trust Company.  The use of MERS as a standalone Assignor appears to cover up the chain of custody of the Note as well as the chain of title; thus, constructive notice to the world appears confusing at best; and

(6) The Closing Date of the REMIC Plaintiff trust was still October 4, 2006; thus, no matter what Tripp Scott's document preparer thought, this Assignment would serve no other purpose that to promulgate one apparent fraud on top of another apparent fraud.  This Assignment still appearsto contravene the PSA for the trust REMIC, rendering it void under New York Estates, Powers & Trusts § 7-2.4, even after a second "more legal appearing" attempt.

Thus, the Examiner asserts that this document was manufactured by Tripp Scott with the intended purpose of causing it to be executed and recorded to be used in reliance of a verified complaint of foreclosure. See *Section Six*, Case No. 44 for a complete case analysis.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(TRIPP EX. 3) CFN#2012140705, recorded by presentment on 09-29-2012**
**Document Prepared by: Tripp Scott, P.A. (unknown document preparer with the firm)**
**Signer: Thomas Robert Davis, Jr., purporting to be an Assistant Vice President with Bank of America, N.A. (as successor by merger to its predecessors).**
**Notary: Tommy J. Harris (Texas Notary Commission still active; expires on 07-25-2016)**
**Witnesses: Eduardo Marquez, ? Edward Burnell (first part of name is illegible)**
**Execution Date: August 16, 2012**

**The Examiner asserts that this document was manufactured by Tripp Scott with the intended purpose of causing it to be executed and recorded to be used in reliance of a verified complaint of foreclosure (Case No. 2012 CA 5231 MF; *HSBC Bank USA, N.A. et al v. Carmen Irizarry et al*) with the intended purpose of creating standing to deprive the homeowner of her property in violation of Florida Criminal Code § 817.535. The case is OPEN.**

**Tripp Scott's Christina V. Paradowski  (FBN56708) filed the Complaint along with the Notice of Lis Pendens, filed for record as CFN#2012168830 on 11-15-2012.  The Complaint, which is verified by the servicer and NOT the Plaintiff trust, contains a Note that has suspect endorsements contained within it.  Further, two of the endorsements are standard Countrywide indorsements that appear to be manufactured together as seen in other Notes, by employees of ReconTrust Company, N.A., which may also be photocopied or "photoshopped" onto the blank page following the initial endorsement.  Coupled with the apparent foregoing self-assignment, this creates additional probable cause for violation of Florida's RICO statutes.**
**NOTE: The entire case file has been retrieved and is attached to this Exhibit for reference.**

**_Van Ness Law Firm, PLC_**

**(VAN NESS EX. 1) CFN#2010099899, recorded by presentment on 07-13-2010**
        **See *Section Six*, Case No. 16 for details**

**(VAN NESS EX. 2) CFN#2011161860, recorded by presentment on 11-21-2011**
        **See *Section Six*, Case No. 16 for details**

**(VAN NESS EX. 3) CFN#2013150625, electronically recorded on 09-23-2013**
**Signor: Tyler Driver, who claims to be an Assistant Secretary of MERS but is actually an employee of Nationwide Title Clearing in Palm Harbor, Florida.**
**Notary: Nicole Baldwin (Florida Notary Commission No. EE 222285; still active)**
**Witnesses: Daniel Thompson, Jessica Sheetz (known robosignors who allegedly work at Nationwide Title Clearing).**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Issues: As discussed previously under Nationwide Title Clearing's heading, the Van Ness law firm relied on this assignment in its attempt to foreclose on real property belonging to James and Susan Cunningham.    At this time this Assignment was drafted, the original lender was still in business; however, the document was prepared in conjunction with Nationstar Mortgage's attempt to prove standing when the assignment only conveyed the Mortgage.  It says nothing about the Note being conveyed.

Further, the claim that "All Authorized Signatories whose signature appear above are employed by NTC and have reviewed this document and supporting documentation prior to signing." is untrue because Erika Lance is the person preparing the document and she alone knew the validity of the contents therein.

The Complaint, filed by Van Ness attorney Lance E. Forman (FBN493864), contains a void endorsement stamp, followed by a restrictive endorsement to Flagstar Bank, FSB from the original lender. There is also an additional endorsement stamp on a blank page following the Note with a circle drawn around it.  The page is not properly labeled as to comport to a proper Note Allonge (or Allonge to Note) and it still purports to be a restrictive endorsement to Flagstar Bank, FSB.  There is nothing to indicate, other than the self-serving assignment previously noted above, that Nationstar has anything to do with this case.

Despite the fact the case was voluntarily dismissed, the intent was clear that the Assignment was manufactured and recorded for the specific purpose of creating standing for the alleged Plaintiff; insodoing, the Van Ness law firm subjected itself to probable cause under the Florida Criminal Code Section 817.535 and Florida RICO statutes.

_**Weltman, Weinberg & Reis, Co. L.P.A.**_

(WELTMAN EX. 1) CFN#2012100153, recorded by presentment on 07-06-2012
Document Prepared by: Alan Kingsley (FBN 44355; now employed by Florida Foreclosure Attorneys, PLLC)
Signer: Ann-Marie Owens (alleged GMAC Mortgage LLC employee), signing as Vice President of MERS as nominee for Popular Mortgage Corp., which was not registered to do business in Florida until 2008, as Assignor; attempting to assign the Mortgage (only) to a closed Deutsche Bank IMPAC Secured Assets Corp. 2006-2 REMIC trust, whose Closing Date was June 29, 2006; thus void under New York Estates, Powers & Trusts § 7-2.4.
Notary: Patricia Nolan Hoffman (Pennsylvania Notary Commission active until 11-15-2015).
Attest: Deandra Curry (also claiming to be a Vice President of MERS; a GMAC employee)

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

On the same day that Ann-Marie Owens signed the foregoing Assignment of Mortgage, she signed a Verified Complaint, allegedly drafted by Kingsley for the Weltman firm, who then commenced a foreclosure action against the property on June 19, 2012 (within our target period for this forensic examination) as Case No. 2012 CA 2923 MF.  Kingsley also appears to have caused the filing of the Notice of Lis Pendens on 06-27-2012 as CFN#2012096402. After service of process appears to have been completed, the firm's Neil Dhawan (FBN 65295) filed a Motion to Voluntarily Dismiss the case without prejudice on 09-11-2012. There was no explanation given.  The case filed has been requested and attached hereto for reference.

The Examiner asserts that this document was manufactured by Kingsley on behalf of the Weltman firm with the intended purpose of causing it to be executed and recorded to be used in reliance of a verified complaint of foreclosure with the intended purpose of creating standing to deprive the homeowners of their property in violation of Florida Criminal Code § 817.535 and furthered this scheme by causing employees of GMAC Mortgage LLC to act in concert with said manufacture to further the recordation of the artifice. The case is now CLOSED.

_Ronald R. Wolfe (FBN138223) & Associates, P.L. (fka Florida Default Law Group, P. L. (her-reinafter "FDLG" or "Wolfe"_

(WOLFE EX. 1) CFN#2010036337, recorded by presentment on 03-12-2010
This document appears to have been prepared by Florida Default Law Group's Anabell Arauz for BAC Home Loans Servicing, LP to commence a foreclosure proceeding on property belonging to Duane and Saadia Desett.  It appears Bank of America employees are involved in manufacture of this document; numerous markers are present.
Signors: Mary Kist (Vice President) and Julia Myra (Assistant Secretary) BOTH signing for MERS as nominee for defunct Countrywide Home Loans, Inc., whose address is "left blank"; attempting to convey an interest into a closed CWABS, Inc. 2007-6 REMIC trust (whose address is the same as Bank of America, N.A. in Dallas, Texas, over six years too late.  See _Section Six_, Case No. 7 for a complete analysis of this case.
Notary: Kelly Kay Loomis (Texas Notary Commission expired on 08-14-2013).
Witnesses: Regina Francois, Caroline Johnson
Issues: This assignment and the one following it (CFN#2013191088) were allegedly executed within thirty days of each other in 2012.  This assignment was manufactured on February 24, 2010.  The second assignment was manufactured on March 3, 2010.  The first assignment was recorded on the date shown.  The second identical assignment (with new signors and witnesses/notary) wasn't recorded until over 3-1/2 years later.  Rubber stamps (markers of document manufacturing) are prevalent on both assignments.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(WOLFE EX. 2) CFN#2011119121, recorded by presentment on 08-29-2011**
This Assignment appears to have been prepared by Ken Porter of Florida Default Law Group, P. L. ("FDLG") in Tampa, Florida. This would be construed by the examiners to mean that Porter had third-party computer access to a system which provided him with third-party hearsay information which he transcribed to this template assignment form and sent it off to Bank of America's signing team in Ventura County, California for execution. The document contains numerous markers for document manufacturing. It shows a different trust name that the corrective assignment electronically filed on 04-14-2014 as CFN#2014052016. Both referenced assignments here were apparently "manufactured" in an attempt to foreclose on a property belonging to *Aida L. Merrill*.  See *Section Six*, Case No. 3 in for the case analysis.
Signor: Cecelia Rodriguez, purporting to be an Assistant Secretary of MERS as nominee for then-subsumed Countrywide Home Loans, Inc. who is attempting to assign the mortgage to a closed CWMBS, Inc. 206-OA1 REMIC trust (using an old Bank of America address in Simi Valley, California).
Notary: Darryl Brown (California Notary Commission #1812305; under penalty of perjury).
Witnesses: None shown (two may be required to be legitimate in Florida)


**(WOLFE EX. 3) CFN#2012000129, recorded by presentment on 01-03-2012**
This is a Notice of Lack of Prosecution and the Court's Motion to Dismiss the Case No. 2007 CA 6081 filed as Florida Default Law Group's case.  However, the final documents were returned to Ronald R. Wolfe & Associates, P.L., hence the involvement with the firm in utilizing a series of faulty Assignments of Mortgage, particularly CFN#2008036403, wherein apparent employees of Countrywide Home Loans, Inc. in Collin County, Texas attempted to assign a note and mortgage to a CWABS, Inc. 2007-10 REMIC trust.  The Closing Date of this trust REMIC was June 29, 2007.  Technically, most trusts only allow ninety (90) days to correct any errors in documentation once the pool is closed and the certificates have been issued; thus, the 90-day period would have expired on September 30, 2007. The date of this Assignment was February 5, 2008, well past the Closing Date and in contravention of the trust, which is void under New York Estates Powers & Trusts Section 7-2.4.


Next on the Assignment list is CFN#2013191658, which is included as ORION EX. 4, which purports to utilize MERS as a nominee for Countrywide Home Loans, Inc. DBA America's Wholesale Lender, which was never in business in Florida. See *Bank of America, N.A. v. Linda A. Nash,* Case No. 2011 CA 4389 MF (Div. 14K, 18th Jud. Cir. Ct., Seminole Co., FL). This Assignment was filed AFTER the fact, years after the Note and Mortgage were supposed to have been conveyed into the trust pool, also void under the same trust law.


NOTE: See *Section Six*, Case No. 89 for the case analysis and files.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It further appears that after this case was dismissed, Mark Hernandez, an attorney with Quintairos, Prieto, Wood & Boyer, P.A. in Orlando caused to be drafted a Corrective Assignment of Mortgage, filed for record as CNF#2014150446 on 10-10-2014.  A copy of this document is attached to this file for reference. It appears that this Assignment was executed by the servicer, Select Portfolio Servicing, LLC of Douglas County, Colorado.   The case files were ordered and made a part of this forensic examination because the statute of limitations runs five (5) years from the date of last activity in the case, which stopped in January of 2012 but picked up against in December of 2012 with a filing of a Notice of Lis Pendens by the Gilbert Garcia Group, P.A.

(WOLFE EX. 4) CFN#2013014546, recorded by presentment on 01-28-2013
Chase employees in Denton, Texas attempted to assign a Wolfe law firm-prepared assignment (by Ken Porter) from Argent Mortgage Company to a closed Bear Stearns closed 2006-AQ1 REMIC trust.  The addresses of BOTH the Assignor and Assignee is a Chase Jacksonville, Florida address.

(WOLFE EX. 5) CFN#2013191088, recorded by presentment on 12-09-2013
This document appears to have been prepared by Florida Default Law Group's Anabell Arauz for BAC Home Loans Servicing, LP to commence a foreclosure proceeding on property belonging to Duane and Saadia Desett.  It appears Bank of America employees are involved in manufacture of this document; numerous markers are present.
Signors: Tiaquanda Turner (Assistant Vice President) and Lisa Wickser (Assistant Secretary) BOTH signing for MERS as nominee for defunct Countrywide Home Loans, Inc., attempting to convey an interest into a closed CWABS, Inc. 2007-6 REMIC trust over six years too late.
Notary: Jackie Greenwald (Texas Notary Commission expired on 10-30-2011).
Witnesses: Valencia Warren, Meredith Young
Issues: BOTH this assignment and the previous assignment discussed under this heading (CFN#2010036337) are identical in nature and what they purport to convey. The Notice of Lis Pendens was filed after the first assignment was recorded, on June 29, 2010 (CFN#2010093710) by Kristin L. Poll (FBN77036); Jonathan W. Mesker (FBN805971); and Christina N. Riley (FBN46836), dated June 21, 2010.  The examiner chose to also review the case file in this instance.   A final judgment of foreclosure was granted by Circuit Judge Miller on July 14, 2014 and was recorded on July 16, 2014 as CFN#2014100045. It names the trust as the Plaintiff, listing Case No. 3020 CA 4141.  Due to the fact that there are issues with the assignments to the trust being recorded as they were, there are issues with suspect robosigning, document manufacturing and ignorance of the issues regarding acceptance of the note and mortgage into the trust pool.  The examiner does not believe that ever happened and the court ignored that fact when it issued the final judgment.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA


Due to manufacturing issues, the documents are not self-authenticating and bear further scrutiny because the party preparing them was not the party executing them.

**(WOLFE EX. 6) CFN#2014056802, recorded by presentment on 04-23-2014**
This Assignment of Bid was recorded by Amy K. Recla (Florida Bar #103811) on behalf of the foregoing law firm in favor of Suntrust Mortgage, Inc. ; however, the bid was assigned to a closed Goldman-Sachs GSR2007-4F REMIC trust (Closing Date: June 29, 2007). Further, the name of the trust is (according to SEC filings): GSR Mortgage Loan Trust 2007-4F and NOT as shown. The Certificate of Title, filed as CFN#2014068738 also contains false information as the address shown for the alleged "trust" is Suntrust Mortgage's address. There are suspect income tax evasion issues present with this assignment and certificate. A Corrective Assignment (CFN#2013122339) using MERS as a go-between was also filed previous to the filing of the Notice of Lis Pendens by the old Wolfe law firm name of Florida Default Law Group, by its representative William T. Rieder, Jr. (Florida Bar #44834). The previous assignment (recorded as CFN#2012092614) contains numerous misstatements and is missing an address. MERS was also used to create a "catch all", albeit unsuccessfully to the point that Suntrust employees had to re-execute a corrective assignment. This assignment (CFN#2012092614) was prepared and requested for recording by Carla Waltower of Florida Default Law Group, P.L., which the examiner construes to mean that the Suntrust employees did not have actual personal knowledge of the facts they were attesting to. The signing signatures appeared to be that of "teenagers" and not of a professional banker.




_Douglas C. Zahm, P.A._

**(ZAHM EX. 1) CFN#2012084114, recorded by presentment on 06-01-2012**
This document was prepared by the law firm of Douglas C. Zahm, P.A. and appears to have been executed by an officer of U. S. Bank, N.A. in relation to a Verified Complaint filed with the Circuit Court of Osceola County, Florida as Case No. 2012 CA 2202 MF.
Signer: Kelly Gammon (an alleged employee of U. S. Bank, who purports to be a Vice President of MERS) signing for MERS as a standalone Assignor in an attempt to transfer the Mortgage (ONLY, the note is not mentioned) to U. S. Bank, N.A. in what appears to be a self-assignment.
Notary: Cynthia M. Krampe (Kentucky Notary Commission ID# 253538; still active)
Witnesses: None
Issues: The initial MERS-originated Mortgage as proffered in the Complaint was executed in favor of Ryland Mortgage Company, an Ohio corporation (still registered to do business in Florida; filed by presentment as CFN#2011102093 on 07-27-2011).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The original mortgagee could have assigned this to U. S. Bank on its own; however, the intent with the use of MERS was to securitize the Note into a trust wherein U. S. Bank was Trustee of the trust REMIC.  This was never disclosed to the Court but was evident with the presentation of the "added, extra Note page, unmarked" containing two endorsement stamps. The first stamp was from Ryland to U. S. Bank, without recourse.  The second was from U. S. Bank, indorsed-in-blank, presumably to the trust; otherwise, why would the second indorsement-in-blank stamp be there in the first place.  As a result of the added endorsement stamp, the Verification appears to fail because it is signed by an Assistant Vice President of U. S. Bank, N.A. and not from a representative of who is claiming to enforce the note as indorsed-in-blank.  Despite the apparent defects in the case, Final Judgment of Foreclosure was granted by Judge Robert J. Pleus, Jr.   The other issue with the law firm's reliance on the recorded Assignment of Mortgage is that the Assignment was dated May 24, 2012 and the Complaint was filed May 9, 2012; thus, the evidence of record (which appears to contain false and misrepresentative information) was not even signed until AFTER the Complaint was filed and no constructive notice was given to the world, via the real property records, until AFTER the Complaint was filed; thus, the apparent self-assigned document was part of the entire process as manufactured for the purposes of recording a document containing false information into the real property records, in violation of Florida Criminal Code 817.535.  Because multiple actors are involved, RICO issues may also be prevalent. The sale of the property appears to have been avoided due to the granting of a Loan Modification Agreement (CFN#2014084180, electronically recorded on 06-13-2014). Unfortunately, if there was an issue with the indorsement-in-blank and the presentation of the added page of the Note, unmarked as to its purpose; along with the Assignment which appears to be self-serving, drafted by Zahm, then it would appear that even the Loan Modification Agreement may be based on fraud and Daniel R. Adams may not be paying his monthly payments to the proper party, which at this juncture could represent deprivation of personal property, namely, his mortgage payments being paid to a party that cannot legally accept it.


(ZAHM EX. 2) CFN#20121911118, electronically recorded on 12-19-2012
This Power of Attorney Affidavit was prepared by Douglas C. Zahm (himself) on behalf of Consumer Title & Escrow Services, Inc.  The document appears to have been executed by Janene K. Brennan, who purports to be a Vice President of Loan Documentation of Wells Fargo Bank, N.A.; acknowledged in Dallas County, Iowa on November 14, 2012 by Lisa Vanhaaften (Iowa Notary Commission #757708; expires 05-30-2015).   There are three (3) issues with this Affidavit, to wit: (1) the Power of Attorney ("LPOA") which it references was executed on 09-17-2009 but was not recorded until 03-25-2011; (2) the use of initials to reference a title and a State "IA" is a postal reference, "Iowa" is a State); and (3) no document may be executed if it is NOT permitted under the servicing agreement (which would include an Assignment that post-dates the Closing Date of the listed trust of 01-31-2007). This Affidavit is another typical example of a precursor of manufacturing abuses.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The understanding of Affidavits is that if they are relying on a specific LPOA, then the party Granting the authority has to be able to verify what Wells Fargo Bank, N.A. is attempting is valid.  Anyone relying on the foregoing Affidavit would have to wonder why it took the Trustee nearly two (2) years to record this LPOA.  Thus, anything that is permitted by the servicing agreement must be challenged as to whether the servicing agreement (which is vague and ambiguous as to its meaning; e.g. Pooling and Servicing Agreement, "PSA", may be a "servicing agreement"); thus, if the Closing Date is exceeded, then the act committed by Wells Fargo's Default Assignment Team is then questionable, at best.  The next document, which appears to have been directed to be recorded by the Zahm law firm illustrates such a point.

(ZAHM EX. 3) CFN#2013101856, recorded by presentment on 07-03-2013
This Corrective Assignment of Mortgage attempts to correct a previously-recorded Assignment (CFN#2011116219) in an attempt to correct the name of the Assignee, yet still attempts to assign the Mortgage (only) to a closed 2005-RP1 REMIC trust, affecting a mortgage executed by Roderick D. J. and Deborah E. Fair.
Signer: Kelly Christine Butikofer (known Wells Fargo employee and robosigner)
Notary: Andrew M. Applequist (Minnesota Notary Commission active until 01-31-2017)
There were no provisions made for witnesses to sign this document.

There are multiple issues with this Corrective Assignment of Mortgage, to wit:

(1) No matter whether the name of the trust is one way or another, the fact that it is a 2005 trust would be construed to mean that the Pooling and Servicing Agreement has a Closing Date in 2005, more than likely, during the first quarter of 2005;

(2) Once the Closing Date has been exceeded, there are only very limited provisions wherein a note and mortgage can be transferred into a trust pool and generally, there is a 90-day window of opportunity that cannot be exceeded;

(3) The date of this Assignment (shown at the top of the document) was June 10, 2013; however, the notary did not acknowledge the document until June 11, 2013;

(4) The first recorded Assignment was on record since August 16, 2011, nearly two years earlier, which makes the creation of this document suspect because even in August of 2011, the REMIC was still closed and could not accept the mortgage and note into the pool; and

(5) Because the Wells Fargo Default Assignment Team is involved in this matter, it is highly likely that the attorney request involved procedures outlined in the 150-page Wells Fargo Foreclosure Attorney Manual, referenced on Page 287 herein.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

## C. DOCUMENT MANUFACTURING PLANTS WITHOUT THE STATE OF FLORIDA

There are several suspect document manufacturing plants outside of the State of Florida that appear to be having an effect on the issues involving the scenario of multiple parties acting in concert with each other, whether isolated or connected by third-party computer software platforms, to manufacture documents that fall under the category of false and misleading representations in the land records with the intent to defraud property owners of their homes under RICO and Florida Criminal Code § 817.535.   The apparent nexus was created through the use of not only MERS, but also due to the actual electronic or presented recording into the real property records of Osceola County, Florida by parties working within the State of Florida to effectuate foreclosure processes upon Osceola County property owners.   To that end, the same types of processes parallel previous discussions and thus are subject to further examination due to their alleged misrepresentative content and intended use.   A listing of these file numbers are catalogued by the entity that appears to have manufactured them, a result of their presence during the specific target examination period.   If electronically recorded from out of state, the following list of recorded documents represent issues involving additional violations of 18 USC 1343 (wire fraud) and should be carefully considered for both state and federal prosecution:

### _Aurora Bank FSB and/or in conjunction with Aurora Loan Services, LLC_

**(AURORA EX. 1) CFN#2009076778, recorded by presentment on 05-15-2009**
**Signer: JoAnnRein (known robosignor), claiming to be a Vice President of MERS as nominee for the then-defunct Lehman Brothers Bank, FSB, using an outdated MERS 1995 Corporate Seal (which may not have been adopted for use by the Board of Directors) which is misrepresentative of the entity being utilized therein.**
**Notary: Irene Guerrero (known robo-notary; Nebraska Notary Commission Expired)**
**Witnesses: Susan Lindhorst (known robosigner), Janie Flores**
**Issues: This document claims to have assigned the Note as well as the Mortgage.   MERS does not have an interest in the Note and thus cannot assign the Note.**
**NOTE: See _Section Six_, Case No. 49 for details in how this Assignment was utilized.**

**(AURORA EX. 2) CFN#2010089447, recorded by presentment on 06-22-2010**
**Signer: Theodore Schultz (known robosignor), claiming to be a Vice President of MERS as nominee for the then-defunct First National Bank of Arizona, using an outdated MERS 1995 Corporate Seal (which may not have been adopted for use by the Board of Directors) which is misrepresentative of the entity being utilized therein.**
**Notary: Irene Guerrero (known robo-notary; Nebraska Notary Commission Expired)**
**Witnesses: Susan Lindhorst (known robosigner), Janie Flores**
**Issues: This document claims to have assigned the Note as well as the Mortgage.   MERS does not have an interest in the Note and thus cannot assign the Note.**
**NOTE: See _Section Six_, Case No. 9 for details in how this Assignment was utilized.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(AURORA EX. 3) CFN#2012050016, electronically recorded on 04-05-2012**
**Document Prepared By:** Carmelia Latham (alleged employee of Aurora Bank, FSB)
**Signer:** Stacy Sandoz (also alleged employee of Aurora Bank, FSB), claiming to be Vice President of MERS as nominee for GreenPoint Mortgage Funding, Inc. (using Metro Detective Agency's Danville, Illinois address, to misrepresent the location of the originating Assignor) using MERS as a "cover" for self-assignment.
**Notary:** Deb Seibert (Nebraska Notary Commission active until 03-23-2015)
**Witnesses:** None
**NOTE:** See *Section Six*, Case No. 41 for details in how this Assignment was utilized.

**Date of Execution:** September 27, 2011; long after GreenPoint Mortgage Funding, Inc. was closed down (2007).
**NOTE:** This appears to be an Assignment of the First Mortgage loan. The use of the Wilmington, Delaware address of Aurora Bank, FSB appears to be an attempt to conceal the self-Assignment of only the Mortgage and NOT the Note. Misrepresentation of transferring parties. Highly likely there was no attorney supervision (unauthorized practice of law) and Florida RICO (for perjury) violations.

**(AURORA EX. 4) CFN#2012141140, recorded by presentment on 10-01-2012**
**Signer:** Regina Lashley (known robosignor), claiming to be a Vice President of MERS as nominee for the then-defunct Homefield Financial, Inc., using an outdated MERS 1999 Corporate Seal (in contrast to the previous document shown above).
**Notary:** Irene Guerrero (known robo-notary; Nebraska Notary Commission Expired)
**Witnesses:** None listed
**Issues:** This document claims to have assigned ONLY the Mortgage. MERS does not have an interest in the Note and thus cannot assign what it does not have an interest in. See *Section Five*, Case No. 14 for details in how this Assignment was utilized.

**(AURORA EX. 5) CFN#2013008407, electronically recorded on 01-15-2013**
This assignment, created by Heather Carter of Aurora Bank FSB's "Assignment Prep" team and signed by known robosignor Regina Lashley and known robonotary Irene Guerrero in Scottsbluff, Nebraska, attempt to use MERS as nominee for American Financial Resources, Inc. to self-assign a mortgage to Aurora Bank FSB. The address shown for the lender is the address for Metro Detective Agency in Danville, Illinois. What Aurora Bank FSB did then was to assign its "self-assigned" interests to Nationstar Mortgage LLC.

**(AURORA EX. 6) CFN#2013056789, electronically recorded on April 11, 2013**
Nationstar, acting as "attorney-in-fact for Aurora Bank FSB, used the same signor and notary in the previous assignment to assign to itself to foreclose on property belonging to John E. and Gina L. Frey. On May 3, 2013, Kahane & Associates attorney Craig P. Rogers (FB-N352128) on behalf of Robert S. Kahane (FBN946850), filed a Notice of Lis Pendens (CFN#213070285; Case No. 2013-CA-1661).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Senior Circuit Judge Robert J. Pleus, Jr. granted final judgment of foreclosure on March 27, 2014, *in chambers*. It is highly unlikely that Judge Pleus understood the self-assignment protocols effectuated to give the appearance that the real party in interest may not have been the proper party that was granted the benefit of Summary Judgment.

### *Bank of America, N.A. - ReconTrust Company, N.A. (Ventura County, California; Dallas County, Texas; and Maricopa County, Arizona)*

(B OF A EX. 1) CFN#2009174483, recorded by presentment on 10-29-2009
In contradiction of CFN#2014050690, electronically recorded on 04-11-2014 (see *B & H EX. 1* for the copy and certified copy of the referenced 2009 Assignment of Mortgage. It appears that employees of the law firm of Butler & Hosch, P.A. manufactured an assignment in 2009 that was signed by Bank of America, N.A. employee Serena Harman (see the link at https://www.linkedin.com/pub/serena-harman/64/437/52) with NO witnesses (the examiner believes that all assignments done in Florida require two (2) witnesses), which was recorded prior to the Assignee and its representative law firm commencing a foreclosure action against the property as Case No. 2009 CA 11463.

A Notice of Lis Pendens was filed on November 5, 2009 as #CFN2009177357 (by presentment) by Butler & Hosch attorney Shannon Marie Charles (FBN55533), which was later cancelled (the examiner is referring to the Court Docket Sheet for this information and not the actual case files). There is no public record of any recorded judgment or certificate of sale at this stage of the foreclosure process on the property belonging to David A. and Jeanette E. Rodgie. Four and one-half years later, third-party document scanner/manufacturer Indecomm endeavored to prepare and produce an assignment purporting to transfer interest from defunct Countrywide Bank, FSB (using MERS and its Flint, Michigan mailing address) to Ocwen Loan Servicing, LLC.

This assignment was recorded in contradiction to the preveiously-noted assignment because someone else using MERS as a catch-all had previously transferred the mortgage to its own servicing entity (which at that time was owned by Bank of America, N.A.) and thus could not have effectuated a transfer to Ocwen via CFN#2014052555 in 2014. If the second transfer did not occur, then Ocwen did not own the mortgage and thus could not have been able to transfer it to Christiana Trust (who was probably looking for a write-off, potentially seeking a "back door" transfer to commit a violation of 18 USC 371); thus, there are issues with chain of title because MERS cannot assign multiple times from the same lender to different parties. This is typical of a "right hand doesn't know what the left hand is doing" scenarios, a typical marker of document manufacturing. These issues will become manifest if Christiana Trust attempts foreclosure on this property unless the entire process is stopped through prosecution of the parties involved.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(B OF A EX. 2) CFN#2011102976, recorded by presentment on 07-28-2011**
This document appears to have been prepared by Bank of America,N.A. employee Barbara Nord and executed by Bank of America employees in Ventura County, California in what appears to be a directed self-assignment of the Mortgage and Note, executed by Evelyn Aponte and Miguel A. Velazquez-Guararrama, wife and husband.
Signors: Christopher Herrera and Tina LeRaybaud, who claim to be an Assistant Secretaries of MERS (as a standalone entity, as Assignor) as a nominee for no one.
Notary: Norma Rojas (California Notary Commission No. 1925662; still active)
Witnesses: Martha Munoz, Yomari Quintanilla (both alleged Bank of America employees)
Issues:  Use of unauthorized MERS address in Ocala, Florida (after December 6, 2010) in complete ignorance of MERS own policies; robosigned scribbled signatures; signed under penalty of perjury under California law as to their true "authorized capacity"; original "lender" was still in existence at the time of execution of this document and thus had the capacity to initiate this Assignment.

**(B OF A EX. 3) CFN2011104665, recorded by presentment on 08-01-2011**
This document appears to have been prepared by Bank of America,N.A. employee Diana DeAvila and executed by Bank of America employees in Ventura County, California in what appears to be a hidden directed self-assignment of the Mortgage and Note, executed by Kamlawati Rewah and her husband, Hemchand Rewah.
Signers: Bud Kamyabi and Luis Roldan (known robosigners for Bank of America)
Notary: Irma Diaz (California Notary Commission expired 09-13-2014)
Witnesses: Chester Lovings, Beverly Brooks (both Bank of America robosigners)
Issues: The address that Bank of America's document preparer (Diana DeAvila) is using actually belongs to Fannie Mae; thus, false and misrepresentative under F.C.C. § 817.535.
Further, Roldan's signature is vastly different from other signings; MERS address is improper and against company policy after December 6, 2010; signed under penalty of perjury under California law on May 12, 2011.
NOTE: See *Section Six*, Case No. 51 for details in how this Assignment was utilized.

**(B of A EX. 4) CFN#2011135218, recorded by presentment on 09-28-2011**
This document appears to have been prepared by Bank of America,N.A. employee Diana DeAvila and executed by Bank of America employees in Ventura County, California in what appears to be a directed self-assignment of the Mortgage and Note, executed by Duane and Carolyn Dienst.
Signors: Richard Fox and Edward Gallegos, who claim to be an Assistant Secretaries of MERS (as a standalone entity, as Assignor) as a nominee for no one.  Both are known robosignors.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Notary:** Dee Ann Westfall Cortes (California Notary Commission No. 1805013); her name and notary seal has been commonly seen on many Bank of America-related document manufactures.

**Witnesses:** Mary Ann Hierman (also known document preparer and robosignor), Cecilia Rodriguez (also known robosignor).

See *Section Five,* Case No. 30 for complete details of how this document was relied upon.

**(B OF A EX. 5)** CFN#2011135500, recorded by presentment on 09-28-2011

This document appears to have been prepared by Bank of America, N.A. employee Srbui Muradyan and executed by Bank of America employees in Ventura County, California in what appears to be a hidden directed self-assignment of the Mortgage and Note, executed by Carmela and Maureen Ruano (both single women).

**Signers:** Barbara Nord and Debbie Nieblas (known employees and robosigners for Bank of America)

**Notary:** Roudabeh Beygzadeh-Elias (California Notary Commission expired 06-04-2015)

**Witnesses:** Bud Kamyabi, Aida Duenas (both known Bank of America robosigners)

There are multiple issues with this Assignment of Mortgage, as noted below:

(1) The use of the Assignor's address by Bank of America's document preparer is improper and against MERS company policy for use after December 6, 2010;

(2) The document is using MERS as a standalone Assignor to hide the real party in interest within the MERS® System while the document only represents the originating lender as then-defunct Aegis Wholesale Corporation (August, 2007);

(3) MERS does not have an interest in the Note, which is also allegedly being assigned; thus, the document misrepresents what transfer authority MERS has;

(4) The Assignee's address appears to be that of Deutsche Bank National Trust Company and not Bank of America's actual address; thus, also misrepresentative in content as to the real party in interest;

(5) There is reason to suspect surrogate signing and robosigning in this document due to the scribbled signatures and their variations from signatures on other documents viewed by the Examiners; and

(6) All of the signatures were affixed under penalty of perjury under California law on September 9, 2011. The Closing Date of the alleged REMIC trust was October 4, 2006, thus in contravention of New York trust law at § 7-2.4.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

This Assignment was created with the intent to deprive the homeowners of their property using false and misrepresentative information, probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes.  There is also probable cause for unauthorized practice of law, since these employees appear to be unsupervised by legal counsel.
NOTE: See *Section Six*, Case No. 44 for details in how this Assignment was utilized.


(B OF A EX. 6) CFN#2011137370, recorded by presentment on 10-04-2011
Document Prepared by: Danilo Cuenca (Bank of America employee)
Signers: Alice Rowe and Malik Basurto (known Bank of America robosigners), claiming to be Assistant Secretaries of MERS as a standalone Assignor (not as a nominee for any specific lender; only listing Countrywide Bank, FSB as the originating lender and not the real party in interest); attempting to assign BOTH a Mortgage and Note into a closed CWALT, Inc. 2007-OH2 REMIC trust.
Notary: Evette Ohanion (California Notary Commission #1787925; expired on 12-27-2011)
Witnesses: Luis Roldan, Chester Lovings (both known Bank of America robosigners)
There are multiple issues with this Assignment of Mortgage, as noted below:

> (1) The use of the Assignor's address by Bank of America's document preparer is improper and against MERS company policy for use after December 6, 2010;
>
> (2) The document is using MERS as a standalone Assignor to hide the real party in interest within the MERS® System while the document only represents the originating lender as then-subsumed Countrywide Bank, FSB (2009);
>
> (3) MERS does not have an interest in the Note, which is also allegedly being assigned; thus, the document misrepresents what transfer authority MERS has;
>
> (4) There is reason to suspect surrogate signing and robosigning in this document due to the scribbled signatures and their variations from signatures on other documents viewed by the Examiners; and
>
> (6) All of the signatures were affixed under penalty of perjury under California law on August 22,  2011.  The Closing Date of the alleged REMIC trust was June 29, 2007, thus in contravention of New York trust law at § 7-2.4.

This Assignment was created with the intent to deprive the homeowners of their property using false and misrepresentative information, probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes.  There is also probable cause for unauthorized practice of law, since these employees appear to be unsupervised by legal counsel.  See *Section Six*, Case No. 43 for details in how this Assignment was utilized.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(B OF A EX. 7) CFN#2011143204, recorded by presentment on 10-13-2011**
**Document Prepared by: Srbui Muradyan (alleged Bank of America employee)**
**Signers: Barbard Nord and Debbie Nieblas (also alleged Bank of America employees), who claim to be Assistant Secretaries of MERS as a standalone Assignor into a closed REMIC trust.**
**Notary: Roudabeh Beygzadeh-Elias (California Notary Commission # 1939521; active until 06-04-2015), signed under penalty of perjury under California law as to "authorized capacities".**
**Witnesses: Byd Kamyabi, Aida Dumas (also alleged Bank of America employees)**
**Execution Date: September 9, 2011**
**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) All signers to this document are known robosignors., as evidenced by each's scribbled signatures;**

**(2) There are markers of document manufacturing (i.e., BOLD-FACED CAPITAL LETTER copy insertions from a computer template, use of a rubber stamp);**

**(3) Use of MERS to convey the Note, which MERS does not have an interest in;**

**(4) Violation of MERS' policy which dictates that after December 6, 2010, the MERSCORP member will not use the Ocala, Florida address (which does NOT belong to either MERS or DHI Mortgage Company Ltd.); and**

**(5) The Closing Date of the REMIC trust was December 28, 2005; thus, the September 9, 2011 attempt to assign the mortgage and note using MERS appears to contravene the PSA for the trust REMIC, rendering it void under New York Estates, Powers & Trusts § 7-2.4.**

**NOTE: See *Section Six*, Case No. 42 for details on how this Assignment was utilized.**

**(B OF A EX. 8) CFN#2011148300, electronically recorded on 10-24-2011**
**Document Prepared by: Aida Duenas (known Bank of America, N.A. robosigner)**
**Signers: Cynthia Santos and Jane Martorana (also known Bank of America, N.A. employees and known robosigners), claiming to be Assistant Secretaries of MERS as a standalone Assignor, attempting to convey BOTH the Mortgage and Note into the Plaintiff REMIC trust, which was already closed by then and could not accept it.**
**Notary: Barbara J. Gibbs (California Notary Commission # 1864186; expired; signed under penalty of perjury under California law)**
**Witnesses: Richard Paz, Bud Kamyabi (also known Bank of America, N.A. robosigners)**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are multiple issues with this Assignment of Mortgage, to wit:

> (a.) The Closing Date of the REMIC trust was May 17, 2006. An Assignment of Mortgage affecting the Mortgage and Note was not recorded until over (5) years later:

> (b.) The foregoing Assignment utilizes a forbidden, alleged MERS address in Ocala, Florida in contradiction of MERS' own policies that this address was not to be used after December 10, 2006.  Still, Bank of America, N.A. employees appear to disregard this fact because they can, according to MERS's own policies and rules;

> (c.) MERS does not own the Note, therefore it cannot convey what it does not own; thus, the Assignment is suspect as a recording containing false and misrepresentative information to be relied upon by  Plaintiff's counsel for the purpose of depriving the homeowner of her property, probable cause for violation of Florida Criminal Code § 817.535; and

> (d.) Because this Assignment was electronically recorded, probable cause also exists for violation of 18 USC 1343 (wire fraud).

(B OF A EX. 9) CFN#2011151323, recorded by presentment on 10-31-2011
Document Prepared by: Srbui Muradyan (known Bank of America robosigner); executed by Bank of America employees in Ventura County, California in what appears to be a second Assignment of the Mortgage and Note, executed by Carmela and Maureen Ruano (both single women).  See B OF A EX. 5 for details.
Signers: Barbara Nord and Debbie Nieblas (known employees and robosigners for Bank of America)
Notary: Roudabeh Beygzadeh-Elias (California Notary Commission expired 06-04-2015)
Witnesses: Bud Kamyabi, Aida Duenas (both known Bank of America robosigners)
There are multiple issues with this Assignment of Mortgage, as noted below:

> (1) The use of the Assignor's address by Bank of America's document preparer is improper and against MERS company policy for use after December 6, 2010;

> (2) The document is using MERS as a standalone Assignor to hide the real party in interest within the MERS® System while the document only represents the originating lender as then-defunct Aegis Wholesale Corporation (August, 2007);

> (3) MERS does not have an interest in the Note, which is also allegedly being assigned; thus, the document misrepresents what transfer authority MERS has;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(4) The Assignee's address appears to be that of Deutsche Bank National Trust Company and not Bank of America's actual address; thus, also misrepresentative in content as to the real party in interest;

(5) There is reason to suspect surrogate signing and robosigning in this document due to the scribbled signatures and their variations from signatures on other documents viewed by the Examiners; and

(6) All of the signatures were affixed under penalty of perjury under California law on September 12, 2011. The Closing Date of the alleged REMIC trust was October 4, 2006, thus in contravention of New York trust law at § 7-2.4.

This Assignment was created with the intent to deprive the homeowners of their property using false and misrepresentative information, probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes. There is also probable cause for unauthorized practice of law, since these employees appear to be unsupervised by legal counsel.
NOTE: See *Section Six*, Case No. 44 for details in how this Assignment was utilized.

(B OF A EX. 10) CFN2011161860, recorded by presentment on 11-21-2011
Document Prepared by: Edward Gallegos (known Bank of America robosigner)
Signers: Tina LeRaybaud and Swarupa Slee, who claim to be Assistant Secretaries of MERS, who are attempting to correct the mistake in the first Assignment by assigning the Mortgage and all beneficial interest therein using MERS as a "cover" from MFC Mortgage, Inc. of Florida, A Corporation to Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP.
Notary: Vazrik Sarafians (California Commission No. 1867732)
Witnesses: Luis Roldan and Bud Kamyabi (also a known robosignor on Bank of America documents)

There are multiple issues with this Assignment of Mortgage, to wit:

(1) Tina LeRaybaud and Swarupa Slee, are known employees for Bank of America, N.A. and are NOT employees or in reality, officers of MERS;

(2) The address listed for MERS in the Assignment is 3300 SW 34th Avenue, Suite 101, Ocala, Florida 34474. This facility is a known and advertised as a document manufacturing plant, previously occupied by Electronic Data Systems and Hewlett-Packard, as noted;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) There is significant use of rubber-stamped names and dates, which are considered markers of document manufacturing; and**

**(4) This still appears to be a self-assignment to Bank of America, N.A. in an attempt to create standing to foreclose.**

This Assignment was created with the intent to deprive the homeowners of their property using false and misrepresentative information, probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes. There is also probable cause for unauthorized practice of law, since these employees appear to be unsupervised by legal counsel.

NOTE: See *Section Six*, Case No. 16 for the analysis of this case.

**(B OF A EX. 11) CFN#2011180381, electronically recorded on 12-29-2011**
**Document Prepared By: Kathy Oriard (alleged employee of Bank of America)**
**Signers: Jane Martorana and Cynthia Santos (also alleged employees of Bank of America), claiming to be Assistant Secretaries of MERS as a standalone Assignor, using Metro Detective Agency's Danville, Illinois address to conceal GreenPoint Mortgage Funding, Inc.'s real address (the address shown for the Assignee) so the viewer can't spot duplication, assigning ONLY the Mortgage and NOT the Note to itself using MERS as a cover for potential securitization.**
**Notary: Lillian J. Ellison (California Notary Commission #1925617; active until 03-13-2015); certified under penalty of perjury under California law.**
**Witnesses: Dominique Johnson, Miguel Romero (also alleged Bank of America employees)**
**Date of Execution: December 27, 2011; long after GreenPoint Mortgage Funding, Inc. was closed down (2007).**
**NOTE: This appears to be an Assignment of the Second Mortgage loan of $63,000.00. There are numerous markers of document manufacturing (i.e. rubber stamp use for affixing dates, names and titles) and robosigning (i.e., scribbled signatures of the signers) and potential surrogate signing (a file copy of signature comparisons is included in this report, within this particular file).**
**This Assignment was created with the intent to deprive the homeowners of their property using false and misrepresentative information, probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes. There is also probable cause for unauthorized practice of law, since these employees appear to be unsupervised by legal counsel.**
**NOTE: See *Section Six,* Case No. 41 for details on how this Assignment was utilized.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(B OF A EX. 12) CFN#2012013482, electronically recorded on 01-30-2012**
**Signors: Bud Kamyabi, Luis Roldan** (both known robosignors for Bank of America, N.A.), claiming to be Assistant Secretaries of MERS, using MERS as a standalone Assignor (using Metro Detective Agency's Danville, Illinois address) to attempt assignment of BOTH the Mortgage and Note into a closed CWABS, Inc. 2005-9 REMIC trust in violation of New York trust law and IRS regulations, nearly seven (7) years too late.
**Notary:** Desiree Carson (California Notary Commission No. 1873687; still active)
**Witnesses: Jeanine Abramoff, Srbui Muradyan** (both known robosignors for Bank of America)
**Issues:** MERS doesn't own the Note.  America's Wholesale Lender mortgage and note invalid according to *Bank of America, N.A. v. Linda Nash* (as previously noted and attached as an exhbit to this report).

This Assignment was created with the intent to deprive the homeowners of their property using false and misrepresentative information, probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes.  There is also probable cause for unauthorized practice of law, since these employees appear to be unsupervised by legal counsel.
**NOTE:** See *Section Six,* Case No. 62 for details on how this Assignment was utilized.


**(B OF A EX. 13) CFN#2012065899, electronically recorded on 05-02-2012**
**Document Prepared by:** Unknown employee of Bank of America, N.A.
**Signers: Juan Soto and Ebony Clayborn** (alleged Bank of America, N.A. employees), claiming to be Assistant Secretaries of MERS as a standalone Assignor, attempting to convey BOTH the Mortgage and Note into the Defendant REMIC trust, which was already closed by then and could not accept it.  The Closing Date of the REMIC was March 30, 2006.
**Notary:** Emmanuel Oluwole Adetula (California Notary Commission #1831707; expired; signed under penalty of perjury under California law)
**Witnesses: Lance Cohen, Aaron Hawkes** (also alleged Bank of America, N.A. employees)

> **(a.)** The foregoing Assignment utilizes a misrepresentative MERS address in Danville, Illinois which actually belongs to Metro Detective Agency;

> **(b.)** Specific language from this trust REMIC's own pooling and servicing agreement ("PSA") states: For each of these mortgage loans, MERS® serves as a mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the owner trustee, and does not have any interest in that mortgage loan; thus,

> **(c.)** Since MERS does not have an interest in the Note, it cannot convey what it does not own;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(d.) The Assignment is suspect as a recording containing false and misrepresentative information to be relied upon by Defendant's counsel (Amina M. McNeil; FBN 67239), from the Gladstone Law Group, P.A., who on September 9, 2014, filed a Motion claiming an interest in the property and further asking that any surplus funds (after sale) be awarded to said REMIC trust;**

**(e.) It is also highly likely that due to the nature of the way REMIC trusts operate, this loan may have been paid in whole or in part due to third-party payments (insurance, credit default swap payments, etc.), and would thus appear to contain false and misrepresentative information, relied upon by Defendant REMIC trust's counsel for the purpose of depriving the homeowner of her property, probable cause for violation of Florida Criminal Code § 817.535; and**

**(f.) Because this Assignment was electronically recorded, probable cause also exists for violation of 18 USC 1343 (wire fraud); and**

**(4) Because all of these parties appear to be acting in concert with one another in an apparent attempt to defraud the homeowner, probable cause also exists for violation of Florida RICO statutes;**

**(5) Due to the fact that this Assignment was executed under penalty of perjury, likely without attorney supervision, probable cause also exists for unauthorized practice of law involving the drafting of, execution of and recordation of this Assignment of Mortgage; and**

**(6) The originating lender of both of these loans withdrew its right to do business in the State of Florida on June 12, 2012. Up until that time, it could have generated the foregoing Assignment of Mortgage.**

**NOTE: See *Section Six*, Case No. 117 for details on how this Assignment was utilized.**

**(B OF A EX. 14) CFN#2012072753, electronically recorded on 05-16-2012**
**Document Prepared by: unknown Bank of America, N.A. employee**
**Signors: Jeanine Abramoff, Talisha Wallace (known robosignors; employees of Bank of America), signing as Assistant Secretaries of MERS, attempting to convey the Mortgage and Note to Bank of America, N.A., as Assignee, in what appears to be a self-assignment.**
**Notary: Kim Williams (California Notary Commission #1956846; expired 10-23-2014)**
**Witnesses: Srbui Muradyan, Bud Kamyabi (also known Bank of America robosigners)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**NOTES: The document was executed 05-10-2012 by Bank of America employees, who swore under penalty of perjury that they had "authorized capacities" to assign both the note and mortgage, which are suspect absent solid proof. Additionally, MERS does not have an interest in the Note and cannot convey what it does not have an interest in. Thus, using MERS as a sole Assignor, hiding the chain of custody of the Note and chain of title from the Borrower (and the world via the public record) represents false and misleading information as to the real party in interest, which is Fannie Mae, because Fannie Mae's Herndon, VA address is shown for Bank of America, N.A., which in of itself, now conceals the true owner of the Note in the real property records until the suit to foreclose is filed (at Paragraph 3 of the Complaint). See *Section Six*, Case No. 94 for details on how this Assignment was utilized.**

**(B OF A EX. 15) CFN#2012089034, electronically recorded on 06-12-2012**
**This document appears to have been prepared by Bank of America employees in Ventura County, California in concert with CoreLogic in Chapin, South Carolina, using MERS (with no nominee status listed as to the current lender's assigns; using MERS Danville, IL Metro Detective Agency address) to attempt assignment to a closed LXS 2005-7N REMIC trust. There are numerous issues involving document manufacturing, including swearing under penalty of perjury under California law, which also provides for criminal penalties for filing false documents in the real property records. This appears to be a restatement of an Assignment of Mortgage recorded earlier under the direction of the Greenspoon Marder, P.A. law firm *(see the law firm for further details)*.**

**(B OF A EX. 16) CFN#2012090526, electronically recorded on 06-14-2012**
**Bank of America, N.A. employees appear to have manufactured an assignment of mortgage using MERS as nominee for defunct Greenpoint Mortgage Funding, Inc. (using Metro Detective Agency's address in Danville, Illinois) to attempt assignment to a closed Goldman-Sachs Home Equity 2004-11 REMIC trust. CoreLogic's computer system appears to have been used as part of the digital information highway to relay hearsay information amongst the parties. Several robosigning and document manufacturing markers present. This was the first of two recorded assignments by Bank of America with the intention to direct foreclosure law firm *Smith, Hiatt & Diaz* to commence proceedings against the Property owners in Case No. 2009 CA 9273 (see CFN#2012104688 filed by presentment on 07-16-2012 under the law firm heading SH&D EX. 1), Demetrio and Margarita Costa.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(B OF A EX. 17) CFN#2012104688, recorded by presentment on 07-16-2012**
**This document was prepared by Tanya D. Simpson, an attorney with the law firm of Smith, Hiatt & Diaz, P.A. in Fort Lauderdale, Florida and sent to Bank of America employees in Ventura County, California for execution and recording prior to the law firm's filing of a foreclosure action against Demetrio and Margarita Costa.**
**Signer: Aida Duenas, who claims to be an Assistant Secretary of MERS as a nominee for the then-defunct Greenpoint Mortgage Funding, Inc.**
**Notary: Eric T. Way (California Notary Commission No. 1835518; expired 02-07-2013)**
**Witnesses: None (two are customarily seen in Florida)**
**Issues: Closing Date is December 30, 2004; this was executed over seven (7) years later, in contravention of the trust regulations; thus, the transfer is void. The document claims that the loan was held by the Assignee prior to the August 25, 2009 foreclosure action; however, this Assignment was not recorded until July of 2012, nearly three (3) years after the fact. It is obvious that the intent of Simpson and SH&D was to manufacture the document with the intent to deprive the homeowners of their property by and through the use of a recorded document containing false and deceptive, self-serving information which is sufficient to create probable cause for two separate violations of Florida Criminal Code Section 817.535.**


**(B OF A EX. 18) CFN#2012165596, recorded by presentment on 11-08-2012**
**Document Prepared by: Diana DeAvila (known Bank of America, N.A. employee)**
**Signors: Jane Martorana, Miguel Romero (known robosignors; employees of Bank of America), signing as Assistant Vice Presidents of Bank of America, N.A., attempting to convey the Mortgage and Note to Green Tree Servicing, LLC, as Assignee.**
**Notary: Carmen L. Morse (California Notary Commission #1956846; expires 10-16-2015)**
**Witnesses: Richard Paz, Edward Gallegos (also known Bank of America robosigners)**
**NOTES: The document was executed 11-05-2012 by Bank of America employees, who swore under penalty of perjury that they had "authorized capacities" to assign both the note and mortgage, which appears to have been executed by the Defendant in favor of Countrywide Home Loans, Inc. on 06-09-2004. The Complaint shows an indorsement-in-blank from Countrywide Home Loans, Inc. (it is undated, which would be construed to be ineffective as to proof of date of transfer). Based on the issues created within the MERS assignment in February of 2012, it renders the foregoing Assignment of Mortgage to thus contain false and misrepresentative facts, creating intent and probable cause for violation of Florida Criminal Code § 817.535.**
**NOTE: See *Section Six*, Case No. 94 for details on how this Assignment was utilized.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(B of A EX. 19) CFN#2013000186, recorded by presentment on 01-02-2013**
**Document Prepared by: Diana DeAvila (Bank of America, N.A. employee)**
**Signers: Rene Rosales and Martha Munoz (known Bank of America robosigners) claiming to be officers of MERS as nominee for defunct Countrywide Home Loans, Inc. (using Metro Detective Agency's address in Danville, Illinois) to attempt assignment to a closed CWHEQ, Inc. 2006-S10 REMIC trust. CoreLogic's computer system appears to have been used as part of the digital information highway to relay hearsay information amongst the parties. Several robosigning and document manufacturing markers present.**
**Notary: Christy Morse (California Notary Commission expired on 12-05-2014); signed under penalty of perjury under California law.**
**Witnesses: Trisha Jackson, Mercedes Judilla (known Bank of America robosigners)**
**This Assignment was manufactured with the intent to falsely misrepresent the real party in interest (as the REMIC) when in fact the Assignment contravened New York trust law and is thus void, probable cause for violation of Florida Criminal Code § 817.535.**


**(B OF A EX. 20) CFN#2013000907, electronically recorded on 01-03-2013**
**Document Prepared by: Diana DeAvila (alleged Bank of America, N.A. employee)**
**Signers: Edward Gallegos and Luis Roldan (also alleged Bank of America, N.A. employees) claiming to be Assistant Secretaries of Mortgage Electronic Registration Systems, Inc. as nominee for "FIRST FRANKLIN A DIVISION OF NAT. CITY BANK OF IN", which does not specifically identify the Plaintiff (which should have been spelled out in full as there is no "IN" and the viewer of the document, not knowing the history of the loan, may not know that "NAT." stands for "National") in an attempt to transfer the Mortgage ONLY to the trust pool, whose Closing Date was March 30, 2006.**
**Notary: D. L. Turner (California Notary Commission # 1979229; expires 06-20-2016), certifying under penalty of perjury under California law that the signers' capacities are "authorized" when that is, at best, questionable until proven otherwise.**
**Witnesses: Richard Paz, Aida Duenas (also alleged Bank of America, N.A. employees)**
**Issues: All parties signing this Assignment are known robosigners. There are multiple issues of document manufacturing (use of rubber stamps for names, dates and titles; CAPITAL LETTERS that are BOLD-FACED TYPE that are document templates).**
**There are multiple issues with this recorded Assignment, to wit:**

> **(1) First Franklin's real address is NOT 1901 E. Voorhees Street, Suite C, Danville, IL 61834. This address belongs to Metro Detective Agency and is misrepresentative of the truth;**

> **(2) The trust REMIC's address is not in Simi Valley, California;**

> **(3) The purported Assignee Series 2006-FF13 does not appear to be the proper Assignee identified as the "Plaintiff" in this proceeding;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(4) The Closing Date of THIS purported REMIC trust is September 28, 2006; thus, any attempt on January 2, 2013 or thereafter would contravene the trust's PSA governing regulations and would be considered void under New York trust law at § 7-2.4; and

(5) It further appears that the "right hand didn't know what the left hand was doing" because of the fact that another Assignment of Mortgage had to be filed a month later (as discussed below).

There is no apparent "simple mistake" or "scrivener's error" when New York trust law is violated; thus, the false and misrepresentative statements contained within this Assignment of Mortgage constitutes probable cause for violation of Florida Criminal Code § 817.535 and 18 USC 1343, as this document was recorded five (5) years too late in an attempt to prove the standing of the Plaintiff to foreclose on this Property in lieu of a lost Note.

(B OF A EX. 21) CFN#2013010224, electronically recorded on 01-17-2013
Signor: Justin Harris-El, claiming to be Assistant Vice President of Bank of America, N.A. has attempted to assert by his eSignature that a Satisfaction of Mortgage took place involving property belonging to Joseph and Susan Steiger. The notary, Lorena Malaquias, whose commission expires on December 4, 2014, also appears to have been involved by her eSignature. The notarial execution, claimed that Harris-El, who appears to have prepared this document, "personally appeared" before her, which is untrue. There are also two witnesses signatures missing from this release. This Satisfaction was manufactured out of the Phoenix, Arizona plant. It is also highly likely that the transaction was not recorded in the notary's journal. Two signatures may be legally required here, which further illustrates that these non-lawyer-prepared documents may constitute the unauthorized practice of law.

(B OF A EX. 22) CFN#2013020780, recorded by presentment on 02-06-2013
Document Prepared by: Diana DeAvila (alleged Bank of America, N.A. employee)
Signers: Trisha Jackson and Janet Gordon (also alleged Bank of America, N.A. employees) claiming to be Assistant Secretaries of Mortgage Electronic Registration Systems, Inc. as nominee for "FIRST FRANKLIN A DIVISION OF NAT. CITY BANK OF IN", which does not specifically identify the Plaintiff (which should have been spelled out in full as there is no "IN" and the viewer of the document, not knowing the history of the loan, may not know that "NAT." stands for "National") in an attempt to transfer the Mortgage ONLY to the trust pool, whose Closing Date was March 30, 2006.
Notary: D. L. Turner (California Notary Commission # 1979229; expires 06-20-2016), certifying under penalty of perjury under California law that the signers' capacities are "authorized" when that is, at best, questionable until proven otherwise.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Witnesses: Talisha Wallace, Bud Kamyabi (also alleged Bank of America, N.A. employees)**
**Issues: All parties signing this Assignment are known robosigners. There are multiple issues of document manufacturing (use of rubber stamps for names, dates and titles; CAPITAL LETTERS that are BOLD-FACED TYPE that are document templates).**
**There are multiple issues with this recorded Assignment, to wit:**

**(1) First Franklin's real address is NOT 1901 E. Voorhees Street, Suite C, Danville, IL 61834.  This address belongs to Metro Detective Agency and is misrepresentative of the truth;**

**(2) The trust REMIC's address is not in Simi Valley, California;**

**(3) The purported Assignee Series 2006-FF4 was inserted in an apparent attempt by the Assignor to create "standing" for the Plaintiff;**

**(4) The Closing Date of THIS purported REMIC trust is March 30, 2006; thus, any attempt on February 6, 2013 or thereafter would contravene the trust's PSA governing regulations and would be considered void under New York trust law at § 7-2.4; and**

**(5) It further appears that the "right hand didn't know what the left hand was doing" because of the fact this second Assignment of Mortgage had to be filed in an apparent last-minute attempt to create standing.**

**There is no apparent "simple mistake" or "scrivener's error" when New York trust law is violated; thus, the false and misrepresentative statements contained within this Assignment of Mortgage constitutes probable cause for violation of Florida Criminal Code § 817.535 and 18 USC 1341, as this document was recorded five (5) years too late in an attempt to prove the standing of the Plaintiff to foreclose on this Property in lieu of a lost Note.**
**NOTE: See *Section Six*, Case No. 27 as to how this Assignment was utilized.**

**(B OF A EX. 23) CFN#2013106983, recorded by presentment on 07-15-2013**
**Bank of America, N.A. employees appear to have manufactured an assignment of mortgage from Bank of America, N.A. to Nationstar Mortgage, LLC.   Numerous document manufacturing markers are present: (1) Signor's signature is not even a signature; (2) The document was prepared by someone other than the signor; (3) The notarial execution is undelineated as to basis of personal appearance or on the basis of identification; gender; and plurality; and (4) fill-in-the-blank template form.   The stacking of Assignments in this particular case forced a short sale of the property and potential unjust enrichment of parties not authorized to receive payments.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(B OF A EX. 24) CFN#2013130714, recorded by presentment on 08-21-2013**
Bank of America, N.A. employees appear to have manufactured an assignment of mortgage from Bank of America, N.A. to Nationstar Mortgage, LLC.   Numerous document manufacturing markers are present: (1) use of rubber stamps throughout the document; (2) the document was prepared by someone other than the signor; (3) The notarial execution is undelineated as to basis of personal appearance or on the basis of identification; gender; and plurality; and (4) fill-in-the-blank template form.  The document purports to also convey the promissory Note as well (non-MERS issues).  Signed in Dallas County, Texas.

**(B OF A EX. 25) CFN#2013178510, recorded by presentment on 11-15-2013**
Document Prepared by: Marcus Jones (alleged Bank of America, N.A. employee)
Signers: Sharon Derrough, Shequilar Williams, claiming to be Assistant Vice Presidents of Bank of America, N.A. as Assignor, attempting to transfer the note and mortgage to Nationstar Mortgage LLC as Assignee.
Notary: Laslo Reed (California Notary Commission expired on 09-01-2014)
Witnesses: Janelle A. Mcbeath, Zuasaday Anzmandi (alleged Bank of America employees)
It is also interesting to note that once recorded, these documents were sent to CoreLogic's document facility in Westlake, Texas.   There are however, serious issues with this Assignment, to wit:

> **(1) This appears to give the Servicer questionable authority to be able to transfer a note and mortgage out of a closed REMIC trust that never got it in the first place to a completely different entity using its own credentials;**

> **(2) If MERS didn't own the Note during the transfer, then Bank of America, as the Servicer couldn't have transferred it again unless Bank of America had possession of it all along, which is unknown; thus misrepresentative as to its ability to convey something out of a REMIC trust without violating IRS and Securities Laws; and**

> **(3) The employees signing this document have no apparent idea what exactly their authorized capacities really are, given the nature of WITNESS F's statements under oath in a deposition taken in California in November of 2014;**

> **(4) There are numerous markers of robosigning and document manufacturing (e.g., scribbled signatures, use of rubber stamps to indicate names, titles and dates).**

The use of the existing assignments to give Nationstar Mortgage, LLC standing would then contradict how its attorneys could sue the trust as a Defendant in the action and then (coincidentally) the trust all of a sudden assigns everything to the Plaintiff?  This activity is suspect for fraud on the court and violation of the Florida RICO statutes.  See *Section Six*, Case No. 87 as to how this Assignment was utilized.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(B OF A EX. 26) CFN#2013186056, recorded by presentment on 11-26-2013**
Signor: Akia Pierce, claiming to be Assistant Vice President of Bank of America, N.A. has attempted to assert by an eSignature that a Satisfaction of Mortgage took place involving property belonging to Annalie Mazola and Caridad Amable.   The notary, Karen P. Accordino, whose commission expires on December 4, 2014, also appears to have been involved by her eSignature.   The notarial execution, claimed that Pierce "personally appeared" before her, which is untrue.   There are also two witnesses signatures missing from this release.  This Satisfaction was manufactured out of the Phoenix, Arizona plant.  It is also highly likely that the transaction was not recorded in the notary's journal.  Further, like B of A EX. 8, both notaries commission expire on the same date, which appear to indicate that Bank of America sponsored their notary commissions for a given purpose.

**(B OF A EX. 27) CFN#2013194537, recorded by presentment on 12-13-2013**
Document Prepared by: Diana DeAvila (known Bank of America employee); executed by Bank of America, N.A. employees on 09-24-2013.
Signers: Christopher Herrera and Talisha Wallace (both known Bank of America robosigners), claiming to be Assistant Secretaries of MERS as a nominee for America's Wholesale Lender, as Assignor; attempting to assign the Mortgage to a closed CWALT, Inc. 2006-OA10 REMIC trust.  This case parallels the *Bank of America, N.A. v. Linda A. Nash* case, listed as an Exhibit in this Report, wherein Judge Pleus determined the America's Wholesale Lender ("AWL") Mortgage and Note to be invalid, since AWL was not registered to do business in the State of Florida.  This document would thus contain false and misrepresentative information, used with the intent to deprive homeowners Nicola and Robin Elliott of their property, probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.

*Citimortgage, Inc.*

**(CITI EX. 1) CFN#2014072308, recorded by presentment on 05-22-2014**
Signor: Brandon Boleyjack (purported Citimortgage employee), self-assigning using MERS as a nominee for Catholic Home Loan LLC.
Notary: Sheila Brooks (Missouri Notary Commission No. 12316673)
Witnesses: Jill Tyner, Sybil Short (alleged Citimortgage employees)
NOTES: This affects property owned by Vincent J. and Mary Ann Acceturo. There does not appear to be any activity regarding this Mortgage at present; however, the self-assignment does establish a pattern that CitiMortgage, Inc. has a propensity to manufacture documents, especially in light of admissions made by NTC's Erika Lance.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### *Indecomm Global Services, Inc. (Little Canada, Minnesota)*

According to information provided by this entity through its website, the company started out in 1967 as Credit Investigators, Inc. and later changed its name to U. S. Recordings, Inc. based in Little Canada, Minnesota. As of July 27, 2007 U. S. Recordings, Inc. operates as a subsidiary of Indecomm Global Services, Inc.

U. S. Recordings, Inc. operates as a real estate document recording company, providing mortgage recording solutions. These solutions allegedly involve the recording of mortgage and transfer documents, lien releases and assignments for both residential and commercial real estate lenders, third-party vendors, the title industry and the legal community (which would include law firms that are connected to its software platforms) in various U. S. jurisdictions. It handles the preparation of cover sheets and tracks documents through scanned barcodes.

Of concern here is that the company's services also include the signing and notarizing of documents; preparing "goodbye letters"; maintaining templates following business rules and compliance requirements of recording jurisdictions (including Osceola County, Florida). It basically operates as a document manufacturing plant, employing the use of third-party software data platforms, wherein shared information is then transferred onto documents to be recorded in the real property records. Unfortunately, when compared to the activities of other "industry service providers", this entity appears no different in hiring unskilled labor to execute and notarize documents without the actual, personal knowledge of the facts contained in the documents it causes to be recorded; thus, any document being generated by and through the operations of this plant is suspect for content that could be considered false and misrepresentative under Florida Criminal Code § 817.535. The following documents represent a pattern of behavior that is also suspect for potential Florida RICO violations (as all of the signers/employees herein are suspect actors):

**(INDECOMM EX. 1) CFN#2012124829 recorded by presentment on 08-24-2012**
**This document purports to be a Non-HAMP Loan Modification Agreement between Osceola County real property owner Kalmaldai Singh and GMAC Mortgage, LLC, which does not specifically stipulate whether the counterparty is the "Lender/Servicer" or "Agent for Lender/Servicer". It was returned to Indecomm after recording. This modification appears to have been based on a previous mortgage executed by the Borrower on 12-22-2006 in favor of Home Mortgage, Inc. (and Illinois corporation). This is a MERS-originated Mortgage, which already makes it suspect for issues involving transfer or assignment. According to the Florida Department of State, Division of Corporations, Home Mortgage, Inc., also known as Home Mortgage of Illinois, Inc., had its entity status revoked on 09-25-2009 for failing to file an annual report; thus, as of that date, it was not licensed to do business in the State of Florida. There are no recorded Assignments of Mortgage in the real property records prior to the recording of this modification agreement that would indicate that GMAC Mortgage, LLC was the real party in interest with the right to enter into this agreement.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**NOTE:** *There are two recorded Instruments in this set of Indecomm documents that follow this particular property and its owner and will be referenced accordingly to demonstrate the pattern of alleged document manufacturing abuse.*

**(INDECOMM EX. 2) CFN#2012140085, recorded by presentment on 09-27-2012**
**Signor: Lisa Marie Spurbeck, who claims to be an Assistant Vice President of MERS as nominee for then-defunct lender Pinnacle Direct Funding Corporation to a closed RAMP 2003-RS6 REMIC trust.**
**Notary: Sandra Jean Kinnunen (Minnesota Notary Commission Expires 01-31-2016)**
**Witnesses: Kia Vang, Mary Hall (also alleged Indecomm employees)**
**Issues: The document was prepared by alleged Indecomm employee Peter Chang and when recorded, the document appears to have been returned to Indecomm for archival application.  There is no recorded address for RAMP 2003-RS6 trust REMIC as shown, not even the Servicer's c/o address).  There are typical markers of document manufacturing (bold-faced type insertions, scribbled signatures and the presence of a MIN) and robosigning. The document appears to have been executed on 09-18-2012, when the REMIC could not accept it, as its closing date was in 2003.**

**(INDECOMM EX. 3) CFN#2012146031, recorded by presentment on 10-10-2012**
**Signor: Donna Kurzhal, who claims to be an Assistant Secretary of MERS as nominee for the still-active lender GMFS, LLC to a closed RAMP 2006-RZ4 REMIC trust.**
**Notary: Mary Xiong (Minnesota Notary Commission Expires 01-31-2016)**
**Witnesses: Kia Vang, Pangmee Yang (also alleged Indecomm employees)**
**Issues: The document was prepared by alleged Indecomm employee Fredericka Carter and when recorded, the document appears to have been returned to Indecomm for archival application.  There is no recorded address for RAMP 2003-RS6 trust REMIC as shown, not even the Servicer's c/o address).  There are typical markers of document manufacturing (bold-faced type insertions, scribbled signatures and the presence of a MIN) and robosigning.  The document appears to have been executed on 10-03-2012, when the REMIC could not accept it, as its closing date was September 25, 2006.**

**(INDECOMM EX. 4) CFN#2013000450, recorded by presentment on 01-02-2013**
**Signor: Ramona Rae Yaritz, who claims to be an Assistant Secretary of MERS as nominee for Resource Bank, which was subsumed by Fulton Bank, N.A. on March 27, 2008, which would be construed to mean that the corporation was no longer active at the time this document purports to have Assignment the mortgage to a Structured Asset Securities Corporation 2006-S1 REMIC trust.**
**Notary: Bao Cindy Fang (Minnesota Notary Commission Expires 01-31-2017)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Witnesses: Donna Kurzhak, Curtis Leeson (alleged Indecomm employees)**
It appears that employees of third-party document scanner/manufacturer Indecomm endeavored to prepare and produce an assignment purporting to transfer interest from Resource Bank to a closed Structured Asset Securities 2006-S1 REMIC trust.  In an assignment filed later, as referenced below, Nationstar Mortgage LLC self-assigned the trust mortgage to itself using its own staff of employees.

Further, since this document appears to have been prepared by Marcy Koopman, it is highly likely the signors who executed this document were privy to any of the information contained within it, since it is stated in the notarial execution that the signor acted in her "authorized capacity" when she claimed she was a MERS Assistant Secretary with the right to transfer a Mortgage (ONLY, no mention of the Note) from a defunct bank to a closed trust; thus the misrepresentations within the document.

**(INDECOMM EX. 5) CFN#2013000451, recorded by presentment on 01-02-2013**
Signor: Mary Hall, who claims to be an Assistant Secretary of MERS as nominee for DB Home Lending, LLC which was inactive as a corporation in Florida as of 10-12-2007, which would be construed to mean that the corporation was no longer active at the time this document purports to have Assignment the mortgage to an Ace Securities Corp. 2007-SL1 REMIC trust.
Notary: Pang Mee Yang (Minnesota Notary Commission Expires 01-31-2017)
Witnesses: Ramona Yaritz, Curtis Leeson (alleged Indecomm employees)
It appears that employees of third-party document scanner/manufacturer Indecomm endeavored to prepare and produce an assignment purporting to transfer interest from defunct DB Home Lending LLC to a closed ACE Securities Securities 2007-SL1 REMIC trust.  In an assignment filed later, as referenced below, Nationstar Mortgage LLC self-assigned the trust mortgage to itself using its own staff of employees.

**(INDECOMM EX. 6) CFN#2014020050, electronically recorded on 02-12-2014**
Signor: Va Thao (an Indecomm employee claiming to be an Assistant Secretary of MERS; known robosignor), signing for then-defunct Lehman Brothers Bank, FSB to a closed 2006-S1 REMIC trust.  See *Section Six*, Case No. 49 for the case analysis.
Notary: Bao Cindy Fang (Minnesota Notary Commission Expires 01-31-2017)
Witnesses: Nhia Moua, Marcy Koopman (also a document preparer at Indecomm)
Issues: Numerous markers of document manufacturing; the document was prepared by LeeAnn Samuelson, also a signor of these types of documents; lack of actual, personal knowledge of the signors as a result.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(INDECOMM EX. 7) CFN#2014050690, electronically recorded on 04-11-2014**
**Signor: Nhia Indiati Moua (an Indecomm employee claiming to be an Assistant Secretary of MERS; known robosignor)**
**Notary: Bao Cindy Fang (Minnesota Notary Commission Expires 01-31-2017)**
**Witnesses: Marcy Koopman (also a document preparer at Indecomm), Va Thao**
**Issues: Numerous markers of document manufacturing; the document was prepared by Lisa Spurbeck, also a signor of these types of documents; lack of actual, personal knowledge of the signors as a result.**
**It appears that employees of third-party document scanner/manufacturer Indecomm endeavored to prepare and produce an assignment purporting to transfer interest from defunct Countrywide Bank, FSB (using MERS and its Flint, Michigan mailing address) to Ocwen Loan Servicing, LLC. There is no mention of the Note being transferred here.**

**NOTE: This assignment was executed in contradiction of CFN#2009174483 (shown under Bank of America's listings herein) wherein a different MERS "Assistant Vice President" (no known titles of that genre are ever assigned by MERS for anyone to use) made the same attempted transfer from Countrywide Bank FSB to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP four and one-half (4-1/2) years earlier; thus, there are issues with chain of title because MERS cannot assign multiple times from the same lender to different parties. This is typical of a "right hand doesn't know what the left hand is doing" scenarios, a typical marker of document manufacturing. This assignment appears to have been executed on March 25, 2014, whereas, the subsequent assignment to the Christiana Trust (CFN#2014052555) appears to have been executed on April 8, 2014, yet both were recorded electronically by Indecomm days apart in April, 2014. The examiner clearly believes that the parties executing these documents were not privy to any of the actual transfer information, have no actual knowledge of the facts they are attesting to and probably possess only a high school education. Clearly, it amazes this examiner that a group of individuals such as this can appear to cloud a property's title.**

**(INDECOMM EX. 8) CFN#2014052044, electronically recorded on 04-15-2014**
**This document was prepared by Indecomm employee Matt Marsh and appears to have been executed on March 11, 2014 by Lee Lisa Yang, who is also an Indecomm employee that claims to be an Assistant Secretary of MERS as nominee for Home Mortgage, Inc. (which went inactive in Florida in 2009), attempting to transfer the mortgage and all beneficial interest therein to Ocwen Loan Servicing, LLC. The document purports to use MERS's Flint, Michigan post office box as the address for the defunct lender.**
**Notary: Pang Mee Yang, as opposed to Pangmee Yang, the signor in another referenced document whose notary commission is active until January 31, 2017 (unless revoked sooner).**
**Witnesses: Yu Yee Vang, Marcy Koopman**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**NOTE:** In what appears to parallel the last scenario involving multiple recordations covering the same property, it appears that the same document preparer, Matt Marsh, created another document for Ocwen Iowa employees to execute on April 8, 2014 (electronically recorded on 04-21-2014 as CFN#2014054146).

**Signor:** Karen Smith, as an Authorized Signer for Ocwen Loan Servicing, LLC, purporting to transfer a mortgage executed by Kalmaldai Singh to Christiana Trust, a division of Wilmington Savings Fund Society, FSB as Trustee for the Knoxville 2012 Trust.  This trust does not appear to be an SEC registered trust, which could mean that it is a privately-held 144 or 144-A trust vehicle, but which is also subject to certain restrictions.  This entity may have a closing date as well and thus the transfer into this vehicle would be void under New York trust law at 7-2.4.

**Notary:** Amber Pett (Iowa Notary Commission No. 769931); information on this notary was revealed on a search of the Iowa Secretary of State's website:

**https://sos.iowa.gov/search/notary/details.aspx?n=Ul77Q3VI2X2LBn0zsjX84dhza-_zYxN6ZtFctFnE03g1**

**Name: AMBER PETT**
**Address: 711 GILBERTVILLE RD**
**City, State Zip: ELK RUN HEIGHTS, IOWA 50707**
**Phone: (319) 239-2229**
**Business: OCWEN LOAN SERVICING LLC**
**Address: 3451 HAMMOND AVE**
**City, State Zip: WATERLOO, IOWA 50702**
**Phone: (866) 850-4622**

| Original Commission: Issue Date | Expiration Date |
|---|---|
| 9/30/2011 | 9/30/2014 |
| 9/30/2014 | 9/30/2017 |

**Witnesses: Renae Davidson, Michelle R. Mcgeough**

**Issues:** A search of the Hammond Avenue address also reveals that the address belongs to GMAC Mortgage LLC, which appears to have executed the previously discussed Non-HAMP Loan Modification Agreement, recorded by presentment on 08-24-2012 as CFN#2012124829 (INDECOMM EX. 1).  It is not known whether the mortgage is actually owned by the Knoxville 2012 Trust.  There is reason to believe that the successive series of assignments are also improper, because there is no purported assignment of the note and mortgage from GMAC to Ocwen Loan Servicing, LLC; thus, there are now issues with the chain of title to this property.  Despite the fact there is no foreclosure action pending, the documents appear to be misrepresentative and indicative of similar behaviors to DOCX.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(INDECOMM EX. 9) CFN#2014052555, electronically recorded on 04-15-2014**
**Ramsey County, Minnesota-based firm Indecomm Global Services initiated a second recorded assignment involving the same property, attempting this time to sign for Ocwen Loan Servicing, LLC in an alleged transfer of the subject mortgage to Christiana Trust, using language that probably confused the people signing it (if they even read the assignment).   Unfortunately, as explained in the paragraph above (referencing the document CFN#2013050690), the assignment to the trust could not have taken place because the mortgage had already been assigned to BAC Home Loans Servicing, LP, who had previously commenced foreclosure on the property and ended up dismissing their complaint.**
**Signor: Pangmee Yang (alleged Indecomm employee who purports to be a Vice President of Ocwen Loan Servicing LLC in West Palm Beach, Florida; using Ocwen's physical address when this person is clearly in Ramsey County, Minnesota.**
**Notary: Bao Cindy Fang (whose Minnesota notary commission is still valid until 01-31-2017).**
**Witnesses: Va Thao, Marcy Koopman**
**Issues: The examiner believes that the title to the property is so clouded that the Borrowers could not sell this property to mitigate the lender's damages, if the real party of interest could even be determined.  These signing behaviors parallel the signing behaviors of DOCX whose President, Lorraine Brown, is now in federal prison for masterminding the same type of signing processes.**

**(INDECOMM EX. 10) CFN#2014053481, electronically recorded on 04-17-2014**
**This document purports to have been executed by employees of Indecomm in Ramsey County, Minnesota on March 17, 2014 with the intent to assign a mortgage from MERS as nominee for the defunct First National Bank of Arizona (using the MERS post office box address for the defunct lender) to Ocwen Loan Servicing, LLC.**
**Signor: Marcy Kay Koopman, claiming to be Assistant Secretary of MERS**
**Notary: Pang Mee Yang (Minnesota Notary Commission expires 01-31-17)**
**Witnesses: Lee Lisa Vang, Vu Yee Vang**
**Issues: See the link at https://www.fdic.gov/bank/individual/failed/fnbnv.html regarding the bank failure of First National Bank of Arizona and its successor First National Bank of Nevada.  The document was created by Sam Strandmo. It is highly likely the employees of Indecomm who executed this document were aware of the lender failure and thus did not question the validity of this assignment.**

**Further, upon examination of the recorded documents, there are conflicting assignments in the real property records of Oceola County, Florida affecting this property.  All of these assignments contain known robosignors and multiple document manufacturing issues, to wit:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) Prior to the attempted assignment transfer above, it is necessary to note that the failed bank and its successor-in-interest (also failed) did not file proper assignments in the real property records to show transfer to GMAC Mortgage LLC;**

**(2) On January 4, 2010, GMAC Mortgage LLC, by and through its counsel, David J. Stern, caused to be filed CFN#2010000593.  This assignment, executed by noted robosignor Jeffrey Stephan (witnesses unknown due to scribbled signatures) who claims to be Vice President of MERS (Stephan has been deposed on at least two occasions according to the examiner) attempting to assign the mortgage to a closed RALI2007HQ2 REMIC Trust (Deutsche Bank is named Trustee). The same book and page number for the original loan from the failed bank are noted;**

**(3) Adam F. George (FBN635502), also from the Stern Law Firm, filed a Notice of Lis Pendens on November 2, 2007 on behalf of Deutsche Bank Trust Company as Trustee (no named series trust) as CFN#2008197045 (Case No. 2007 CA 4654).  This case was voluntarily dismissed;**

**(4) An unknown attorney with the Stern law firm (FBN54672), signing for Elsa Hernandez Shum (FBN295544) and Miriam Mendieta (FBN 866880) of the Stern law firm, filed a Notice of Lis Pendens on September 9, 2009, as (CFN#2009143178; Case No. 2009 CA 9577), nearly four months PRIOR TO recordation of the foregoing assignment; this was the second attempt by the Stern Law Firm to attempt foreclosure, which also ended up being voluntarily dismissed;**

**(5) After the Stephan-executed assignment was recorded (which clearly presented issues for cloud on title), Indecomm employees effectuate the assignment discussed under CFN#2014053481;**

**(6) Ten days later, Ocwen or GMAC employees in Black Hawk County, Iowa, exe cuted another assignment wherein Ocwen attempted transfer of the mortgage, which was already assigned to Deutsche Bank's closed RALI Trust when the failed bank didn't assign it to GMAC in the first place. The alleged Ocwen signor, Dacari Palmer, attempted to assign the mortgage to the  same Christiana Trust as discussed previously within the Indecomm listings. Clearly, because of previous title issues, it is questionable whether assignment to the trust actually took place;**

**(7) On August 20, 2014, Troy Fussell, who claimed to be an Assistant Secretary of MERS, appears to have self-assigned the same mortgage to 21st Mortgage Corpora tion of Knoxville, Tennessee.  The examiner believes this is a self-assignment due to the notarial execution taking place in the location of the Assignee.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Clearly, there are so many issues with the chain of title at this juncture, created by document manufacturing, the examiner believes that the chain of title is so compromised that title is not insurable let alone marketable; and**

**(8) Finally, the Fiesta Key Homeowners Association appears to have foreclosed and sold the property to itself, albeit with what appears to be a throughly-clouded title. Anyone purchasing this property would have serious title issues to contend with.**

The following documents were prepared by Indecomm employees for use and execution by GMAC Mortgage, LLC in Black Hawk County, Iowa.   The first document involves **INDE-COMM EX. 1**.

**(INDECOMM EX. 11) CFN#2014054146, electronically recorded on 04-21-2014**
**Prepared by alleged Indecomm employee Matt Marsh**
**Signor: Karen Smith, purporting to be an "Authorized Signer" for Ocwen Loan Servicing, LLC (which also purportedly has offices at the same address as GMAC Mortgage, LLC), claiming authorized capacity, with no proof referenced or attached thereto.**
**Notary: Amber Pett (see INDECOMM EX. 8 for current information)**
**Witnesses: Renae Davidson, Michelle R. Mcgeough.**
**Issues: Numerous markers for document manufacturing (standard template form, rubber stamps used to identify the parties and titles); document executed in favor of a 2012 trust that may have limitations in accepting ONLY the mortgage assigned to it (there is no mention of the Note being included in this assignment).**

**(INDECOMM EX. 12) CFN#2014054998, electronically recorded on 04-22-2014**
**Prepared by alleged Indecomm employee Sam Strandmo**
**Signor: Dacari Palmer, purporting to be an "Authorized Signer" for Ocwen Loan Servicing, LLC (which also purportedly has offices at the same address as GMAC Mortgage, LLC), claiming authorized capacity, with no proof referenced or attached thereto.**
**Notary: Amber Pett (see INDECOMM EX. 8 for current information)**
**Witnesses: Renae Davidson, Michelle R. Mcgeough.**
**Issues: Numerous markers for document manufacturing (standard template form, rubber stamps used to identify the parties and titles); document executed in favor of a 2012 trust that may have limitations in accepting ONLY the mortgage assigned to it (there is no mention of the Note being included in this assignment).**

**NOTE:** *It is important to note here that the mortgage follows the Note, not the other way around as it appears many foreclosure mill attorneys seem to indicate to the Courts.*

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In certain instances, there were assignments issued prior to releases of mortgage or in the alternative, intentions to file foreclosure complaints.  A majority of the foregoing instances appear to indicate that most of the "Assignor" entities were defunct at the time of the MERS-related conveyance of only the Mortgage and NOT the Note. It is unknown whether or not these employees are being supervised by an attorney, which brings to bear issues involving unauthorized practice of law, given the apparent level of education of the participants in the documents and the number of documents this plant manufactures.

### *JPMorgan Chase (Jacksonville, Florida and Denton, Texas)*

**(CHASE EX. 1) CFN#2013014106, recorded by presentment on 01-25-2013**
**Chase employees in Denton, Texas attempted to assign a Marshall Watson law firm-prepared assignment from CIT Group to a closed Bear Stearns closed 2006-HE6 REMIC trust.  The addresses of BOTH the Assignor and Assignee is a Chase Jacksonville, Florida address.  This document appears to be part of current litigation against the property owners in an attempt to take their property through the use of this manufactured document.**

**(CHASE EX. 2) CFN#2013014546, recorded by presentment on 01-28-2013**
**Chase employees in Denton, Texas attempted to assign a Ronald R. Wolfe law firm-prepared assignment (by Ken Porter) from Argent Mortgage Company to a closed Bear Stearns closed 2006-AQ1 REMIC trust.  The addresses of BOTH the Assignor and Assignee is a Chase Jacksonville, Florida address.  This document appears to be part of current litigation against the property owners in an attempt to take their property through the use of this manufactured document.**

**(CHASE EX. 3) CFN#2013031840, electronically recorded on 02-25-2013**
**The Shapiro, Fishman & Gache law firm appears to have been involved in the execution of this document, which appears to have been executed by JPMorgan Chase Bank, N.A. employees in Denton, Texas by MERS (ONLY, no nominee status) to a closed Bear Stearns 2007-HE2 REMIC trust to the benefit of Chase. This document appears to be part of current litigation against the property owner (Yexenia Fernandez) in the taking of her property through the use of this manufactured document in Case No. 2013-CA-000822, in a Final Judgment of Foreclosure signed by Senior Judge Robert J. Pleus, Jr. *in chambers* on September 2, 2014.  It is highly likely that Judge Pleus didn't give this document any scrutiny.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

*JPMorgan Chase (Monroe, Louisiana)*

**(CHASE EX. 4) CFN#2012099825, recorded by presentment on 07-06-2012**
**Signor: Toni Boland, alleged Chase employee, claiming to be a Vice President of MERS,**
**attempts to self-assign a mortgage using MERS as a nominee for Suntrust Mortgage, Inc.**
**to Chase. The document preparer was NTC in Florida.**
**Notary: Helen P. Tubbs (Louisiana Notary Commission No. 40392; lifetime)**
**Witnesses: Iquisha J. Criff, Erin Auger**
**Issues: Suntrust Mortgage, Inc. is still in business and could have effectuated a proper as-**
**signment.**

**(CHASE EX. 5) CFN#2012105199, recorded by presentment on 07-17-2012**
**Signor: Kadesha (Slaughter or Vaughter, last name illegible), alleged Chase employee,**
**claiming to be a Vice President of FDIC as successor in interest to Long Beach Mortgage**
**Company (which technically was subsumed into Washington Mutual Bank FA) attempts to**
**assign a mortgage using her claimed authority into a closed Long Beach Mortgage 2006-4**
**REMIC trust. The document preparer was NTC in Florida.**
**Notary: Helen P. Tubbs (Louisiana Notary Commission No. 40392; lifetime)**
**Witnesses: Erin Auger, second name illegible**
**Issues: WaMu mortgage trusts were strictly managed by Washington Mutual Bank.  NTC**
**prepared document, NTC has details, signors have no actual personal knowledge of the**
**events. Long Beach Mortgage Company was the original lender (CFN#2006122947). A bar**
**code appears in the upper, left-hand corner of the document that is not self-explanatory.**
**The loan number on the original mortgage (6704105-7898) does not match the loan number**
**shown on this recorded document (0697844777).  Chase used to attempt validation of a loan**
**it did not own and was only servicing it.**

**(CHASE EX. 6) CFN#2012165416, recorded by presentment on 11-08-2012**
**Chase employees attempt to assign a mortgage using MERS as a nominee for Freedom**
**Mortgage Corporation attempted self-assignment to JPMorgan Chase Bank, N.A., follow-**
**ing which attempted foreclosure proceedings ensued. The document preparer was NTC in**
**Florida; thus the Chase employees executing the document had no actual personal knowl-**
**edge of the event to which they were attesting to.**

**(CHASE EX. 7) CFN#2013004592, recorded by presentment on 01-09-2013**
**Chase employees attempt to assign a mortgage using MERS as a nominee for defunct Co-**
**lumbia Home Loans LLC (2008) into a closed 2007-HE3 Bear Stearns REMIC trust. The**
**document preparer was NTC in Florida.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(CHASE EX. 8) CFN#2013005479, electronically recorded on 01-10-2013**
**Chase employees in Denton, Texas attempted to assign a Pierson Patterson LLP-law firm-prepared assignment from MERS, as nominee for defunct AmericaHomeKey, Inc.** *(see Exhibit regarding government audit which led to this lender being banned originating loans, incorporated herein by reference)* **to a closed Bear Stearns closed 2007-AR3 REMIC trust. The address of the Assignee is a Chase Monroe, Louisiana address.  There is no address for the Assignor. This document was recorded NEARLY SEVEN (7) MONTHS AFTER Senior Judge Robert J. Pleus, Jr. ordered Ruben Fortin's property officially foreclosed on June 12, 2012 (CFN#2012092170), in an apparent attempt to prove alleged trust ownership.**


**(CHASE EX. 9) CFN#2013011413, electronically recorded on 01-18-2013**
**Chase employees attempt to assign a mortgage using MERS as a nominee for defunct Bear Stearns in an attempt to assign a mortgage to a closed 2007-HE1 Bear Stearns REMIC trust. The document preparer was NTC in Florida.**


**(CHASE EX. 10) CFN#2013015332, electronically recorded on 01-29-2013**
**Chase employees attempt to assign a mortgage using MERS as a nominee for defunct Quick Loan Funding, Inc.** *(see Exhibit files, attached hereto as part of this report and incorporated herein by reference)* **in an attempt to assign a mortgage to a closed 2006-HE6 Bear Stearns REMIC trust. The document preparer was NTC in Florida.**


**(CHASE EX. 11) CFN#2013015334, electronically recorded on 01-29-2013**
**Chase employees attempt to assign a mortgage using MERS as a nominee for defunct Encore Credit Corp. in an attempt to assign a mortgage to a closed 2006-EC1 Bear Stearns REMIC trust for the benefit of Chase. The document preparer was NTC in Florida.**


**(CHASE EX. 12) CFN#2013096718, recorded by presentment on 06-21-2013**
**Signor: Mikell Banks (alleged Chase employee), purporting to be an Assistant Secretary of MERS (ONLY, no nominee status shown), attempted to self-assign a mortgage and note executed by Huggins and Erzulia Chery to JPMorgan Chase Bank, N.A.**
**Notary: Carolyn B. Mahoney (Louisiana Notary Commission No. 41493; lifetime)**
**Witnesses: Tiffany Bibbs, Jenny Burrell**
**Issues: The assignment was manufactured on three pages where the information shown could have been contained on a single page.  Multiple pages are a marker of document manufacturing, especially in light of the signing page as Page 2 of 3.  This instrument was recorded over five (5) months AFTER Chase commenced foreclosure proceedings.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(CHASE EX. 13) CFN#2013145084, recorded by presentment on 09-16-2013**
**Signor: Jessica Alston (also the preparer of the document), claiming to be Vice President of JPMorgan Chase Bank, N.A. assigning the mortgage (ONLY) and not the Note, to the Secretary of Housing and Urban Development; a mortgage executed by William and Michelle Gaskin. See** *Section Six*, **Case No. 4 for details.**

**(CHASE EX. 14) CFN#2014046610, electronically recorded on 04-03-2014**
**Chase employees attempt to assign a mortgage using FDIC authority using Chase's Monroe, Louisiana address as the address of record in an attempt to assign a mortgage to a closed 2004-4 Long Beach Mortgage trust (which appears to have benefitted Chase eventually). The document preparer was NTC in Florida. Actual personal knowledge of the facts related to the execution were not made privy to Chase employees.**
**Signor: Sara Lynn Manly**
**Notary: Eva Reece (Louisiana Notary Commission No. 17070; lifetime)**
**Witnesses: Kaila A. Murphy, Mark B. Eaton**

**(CHASE EX. 15) CFN#2014050683, electronically recorded on 04-11-2014**
**This 2-page assignment was prepared by William H. Peirson, a Dallas, Texas attorney with Peirson Patterson, LLP and purports to assign a MERS-originated mortgage to a NON-MERS member using Chase signors in Monroe, Louisiana to convey all "right, title and interest" to Bayview Loan Servicing, LLC. There is no mention whatsoever about conveyance of the promissory note. If the mortgage follows the Note, as it is supposed to in Florida, then the mortgage appears to have been split from the mortgage in this transaction. This Assignment involves a property belonging to Richard J. Starling of Saint Cloud.**
**Signor: Jeanette P. Sly (Chase employee as Assistant Secretary of MERS as nominee for Chase)**
**Notary: Todd C. Sylvester (Louisiana Notary Commission No. 062367)**
**Witnesses: NONE (the Examiner believes that two witnesses are required)**
**Issues: The declaration by this document that the transfer of the mortgage is to a non-MERS member is patently false, as proven by the extraction from the MERSCORP member listing for the Assignee:**

**Corporate Name: Bayview Loan Servicing, LLC**
**Address: 4425 Ponce de Leon Blvd 5th floor**
**City,State,Zip: Coral Gables, FL**
**Toll Free Number: (800) 870-7084**
**Direct Number: (305) 341-3695**
**Fax Number: (305) 631-6213**
**Primary Contact: MAGALY MILAGROS BRODKEY**
**Website: www.Bayviewloanservicing.com**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Member Org ID: 1007786**
**Lines Of Business: Originator, Servicer, Subservicer, Investor, Document Custodian**
**eRegistry Participant: No**
**eDelivery Participant: No**
**Copyright© 2012 by MERSCORP Holdings, Inc. 1-800-646-MERS (6377)**
**Other products or company names are or may be trademarks**
**or registered trademarks and are the property of**
**their respective holders.**

**This member may not participate in transferring eNotes, but the loan ceased to be reported in the "MERS System" if a non-MERS member takes possession of the "eNote" (which is NOT the original note but a metadata file of said note, as proffered in the eNote opinion as shown in the Exhibit attached to this report by Covington & Burling regarding the legal use of eNotes, incorporated herein by reference. Further, MERSCORP managed to get the ratings company Moody's Investor Service to issue an opinion letter in an effort to legitimize the MERS electronic database processes. This letter is also attached to the Exhibit file and incorporated herein by reference.**

The following five (5) documents are Chase-manufactured Affidavits of Lost or Missing Assignments. There appear to be various reasons why Chase needed to record these documents; (all manufactured in Monroe, Louisiana) however, the recordations all appear to have been manufactured for the purpose of proving ownership or authority so that Chase employees could effectuate a process, as described below:

**(CHASE EX. 16) CFN#2012104116, recorded by presentment on 07-13-2012**
**Signer: Arla Haney (who claims to be a Vice President of JPMorgan Chase Bank, N.A.)**
**Notary: Karen B. McAdams (Louisiana Lifetime Notary Commission #40878)**
**Witnesses: John Cox, Gloria Kimes (assumedly Chase employees)**
**NOTE: The Affidavit references two documents. One is the original Mortgage, filed for record on 09-09-2003 as CFN#2003174634, which the Examiner verified. The other recorded document, attached hereto as a supporting exhibit, is CFN#2003213185, which was filed for record on 11-07-2013, as noted in the Affidavit, the Assignment of Mortgage from the now-defunct Liberty Mortgage of South Florida, LLC (as of March 6, 2008). There are multiple issues with the Assignment and its intent to further what is attached as the supporting Exhibits, to wit:**

> **(1) The original Mortgage is a MERS-originated Mortgage. Liberty Mortgage's alleged President (Richard Phillips) assigned the Mortgage from Liberty Mortgage of South Florida, LLC to Liberty Mortgage of South Florida, Inc. MERS was not mentioned as a nominee in the transaction;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(2) Liberty Mortgage of South Florida, Inc., a distinctly separate entity, went out of business on September 24, 2010, without recording any assignments to any other named entity wherein the Borrower's (Armando Velez and Rosa Torres) are named as such;

(3) Subsequent to the filing of this Affidavit, Chase then filed a "Modification Agreement", wherein JPMorgan Chase Bank, N.A. names itself as the "Lender" or "Servicer", without specifying which one it is;

(4) There is no recorded proof that JPMorgan Chase Bank, N.A. was assigned this Note and Mortgage and as MERS members, Chase would have access to the MERS® System, wherein it could track the transfer of the Note.  Because of the fact the Mortgage is involved in MERS, the intent was to securitize the Mortgage and Note.  There is no recorded evidence of the Mortgage and Note ever being assigned to a REMIC trust;

(5) The Modification Agreement was signed by the Borrower's on June 11, 2012, which puts the Modification Agreement within the target parameters of the forensic examination of the real property records of Osceola County, Florida;

(6) An "R. Rodriguez" (Florida Notary Commission DD0950625) acknowledged the Borrower's signatures on behalf of Chase.  R. Rodriguez may have personal knowledge of the back-office transactions involving this Modification Agreement;

(7) An alleged Vice President of Chase (Taccara Roberts) allegedly signed for her employer on June 25, 2012 in Denver County, Colorado; acknowledged by Colorado notary Laurie Erlandson (whose commission expires on 01-20-2015). Erlandson may also be a Chase employee;

(8) The Affidavit only states that Arla Haney (the Affiant) reviewed the public records and conducted a title search; however, Haney did not specify as to the date and time that any of these searches were conducted; what title company provided her with the information (if any); or how he/she came into possession of the Borrower's loan file; and finally makes a blanket statement (prepared by the Notary and not in Haney's own words) that a "diligent search" was then conducted, without providing any information as to HOW a search could be conducted if Haney did not specifically describe HOW the loan file was in the possession of JPMorgan Chase Bank, N.A.; thus, this paperwork appears to have been manufactured with no recorded proof with the intent to deprive the homeowners of their property (personal property, payments to Chase), probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(CHASE EX. 17) CFN#2012143797, recorded by presentment on 10-04-2012
Signer: Arla Haney (who claims to be a Vice President of JPMorgan Chase Bank, N.A.)
Notary: Karen B. McAdams (Louisiana Lifetime Notary Commission #40878)
Witnesses: John Cox, Gloria Kimes (assumedly Chase employees)
NOTE: The Affidavit references only a single document, that being the original Mortgage, filed for record on 05-05-2004 as CFN#2004110815, which the Examiner verified.  It appears that the original Lender (Mortgageone Financial Services Corporation; which went out of business on September 23, 2011) was a table-funded Lender working on behalf of Chase Manhattan Mortgage Corporation, a distinctly separate entity from JPMorgan Chase Bank, N.A.  There are no recorded Assignments from the original Lender to Chase Manhattan Mortgage Corporation or to JPMorgan Chase Bank, N.A.
There are multiple issues with the Assignment and its intent to further what is attached as the supporting Exhibits, to wit:

> (1) Since MERS was not involved in the transaction; it is unknown (without further discovery) how and whether Chase Manhattan Mortgage Corporation actually funded this loan or whether it was simply an interim funding lender for a private acquisition trust (which Chase has many of);

> (2) Mortgageone went out of business in 2011, so it is implied that between the time the mortgage was executed and the time this Affidavit was executed and recorded, that a collateral loan file was developed; however, there is no proof (without further discovery) that Chase actually is in possession of the collateral loan file that would contain such verifiable information;

> (4) Prior to filing this Affidavit, Chase Home Finance, LLC, by and through its counsel of record Florida Default Law Group, P.L., filed a Notice of Lis Pendens on 1-28-2010 as CFN#201012833 and commenced a Complaint to Foreclose on the property belonging to Camilo and Veronica Garcia as Case No. 2010 CA 0321 MF.  It appears the case was voluntarily dismissed, which was also filed for record on 12-29-2010 as CFN#2010193962; appearing to force the Garcia's into a Loan Modification without any recorded proof that Chase had the right to enforce payment of anything;

> (5) Subsequent to the filing of this Affidavit, Chase then filed a "Modification Agreement", wherein JPMorgan Chase Bank, N.A. names itself as the "Lender" or "Servicer", without specifying which one it is;

> (6) There is no recorded proof that JPMorgan Chase Bank, N.A. was assigned this Note and Mortgage and there is no recorded evidence of the Mortgage and Note ever being assigned to a REMIC trust;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(7) The Modification Agreement was signed by the Borrower's on August 28, 2012, which puts the Modification Agreement within the target parameters of the forensic examination of the real property records of Osceola County, Florida;

(8) Margaret Coote (Florida Notary Commission EE128807) acknowledged the Borrower's signatures on behalf of Chase.  Coote may have personal knowledge of the back-office transactions involving this Modification Agreement;

(9) An alleged Vice President of Chase (Tonya Hawkins) allegedly signed for her employer on September 13, 2012 in Denver County, Colorado; acknowledged by Colorado notary Ahmed Eloumrani (whose commission expires on 01-20-2015).  Eloumrani may also be a Chase employee;

(10) The Affidavit only states that Arla Haney (the Affiant) reviewed the public records and conducted a title search; however, Haney did not specify as to the date and time that any of these searches were conducted; what title company provided her with the information (if any); or how he/she came into possession of the Borrower's loan file; and finally makes a blanket statement (prepared by the Notary and not in Haney's own words) that a "diligent search" was then conducted, without providing any information as to HOW a search could be conducted if Haney did not specifically describe HOW the loan file was in the possession of JPMorgan Chase Bank, N.A.; thus, this paperwork appears to have been manufactured with no recorded proof with the intent to deprive the homeowners of their property (personal property, payments to Chase), probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.

NOTE: The case file may have to be considered as additional evidence to determine whether Chase Home Finance, LLC actually had standing to foreclose in this matter.

(CHASE EX. 18) CFN#2012146479, recorded by presentment on 10-10-2012
Signer: Tobias Bryant (who claims to be a Vice President of JPMorgan Chase Bank, N.A.)
Notary: Angela Ruth Payne (Louisiana Lifetime Notary Commission #60422)
Witnesses: Marquitha Williams, Shaquita Knox (known Chase robosigner)
NOTES: This document was returned to Nationwide Title Clearing, Inc. in Palm Harbor, Florida after it was recorded.  The Notary acknowledged this document twice.  Bryant has no personal knowledge of where the file originated or what data was entered into the computer database he relied on; thus, all of the knowledge he asserts appears based upon hearsay information and data.  His affidavit fails based on pure assumptions alone.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are multiple issues with this Affidavit when the Examiner reviewed existing court case files in Case No. 2013 CA 1572 MF, to wit:

(1) The case was filed by Butler & Hosch, P.A.'s David M. Cozad (FBN 333920) on April 20, 2013.  Cozad never filed a Notice of Lis Pendens.  The court record appears to indicate (on Docket Line Item #12) only:

| 12   4/23/2013 LIS PENDENS OVER PAY ASSESSED $9.00 |
|---|

but does NOT indicate that a Notice was ever filed with the Court, nor is there any recorded Notice anywhere in the real property records of Osceola County, Florida;

(2) The case is styled Deutsche Bank National Trust Company, as Indenture Trustee for the FBR Securitization Trust 2005-5, Mortgage-Backed Notes, Series 2005-5.  The Pooling and Servicing Agreement (within the 424(b)(5) Prospectus) shows that JPMorgan Chase Bank, N.A. is the "Servicer" and NOT the holder of the Note with the right to enforce; thus, the Affidavit of Missing or Incomplete Assignment recorded on 10-10-2012 appears to have been manufactured in an attempt to "tie all of the ends of the chain of title" together;

(3) The Complaint alleges that the Borrower defaulted on her loan on 08-01-2011 and further alleges an Exhibit A containing a Note with an indorsement-in-blank from Aames Funding Corporation's Assistant Secretary, dated August 5, 2005, yet this Mortgage and Note are NOT MERS-originated; thus, despite the fact that Chase claims to have the collateral file, it would become suspect that Chase employees would be instructed to file an Affidavit, claiming to have the collateral file (with no assignment contained to Chase or the trust), at a time when it is apparent that the attorney for Deutsche Bank had an "endorsed note" in blank to show the Court; and

(4) This makes the entire scenario suspect because there was plenty of room under the Borrower's signature on the last page of the Note to affix the Aames Funding Corporation's indorsement-in-blank, yet instead, an additional, 2-hole-punched document was attached to the Complaint.  All that needed to be accomplished to convey the Note into the trust was an Assignment, which Chase's own "officer" claims could not be located (using a form template containing "markers" of document manufacturing) to prove Chase and/or the trust complied with the terms of the PSA; thus, effective date of transfer appears unprovable at the time the suit was filed.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The case was closed on July 17, 2013 and on 08-20-2013, a "Satisfaction of Mortgage" was recorded as CFN#2013130702 by Louisiana employees of JPMorgan Chase Bank, N.A.  All of the signatures on this document appear to have been electronically affixed, including the acknowledgement of the notary, Vicki C. Knighten (Louisiana Lifetime Notary Commission No. 54231), as shown on the supporting exhibit contained within the exhibit file.  There was no reason given for the dismissal of the case; however, the Notice of Voluntary Dismissal, signed by Butler & Hosch's Sujata J. Patel (FBN 0082344) stated that the "dismissal serves as a discharge of the Lis Pendens filed in the Public Records of Osceola County, Florida", when in fact, there was never a Notice of Lis Pendens filed in the case.  How then can one dismiss something that was never filed in the first place?  It should be noticed that service of process was commenced in this proceeding without the Notice of Lis Pendens being filed.  This also creates suspect issues in that it is highly likely that the homeowner potentially sold her property in order to pay off the Note in order to satisfy the Mortgage.

Due to all of the foregoing scenarios, it is also highly likely that Chase and this trust, who could not accept transfer of the Note and Mortgage because an Assignment was required and said Assignment was missing, which in turn caused the creation of this Affidavit to "bat clean-up" so that Chase could retain Butler & Hosch, P.A. to file the Complaint to Foreclose, worked in concert with the law firm to deprive the homeowner of personal property, probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes.  The fact that the Satisfaction appears to have been produced by Chase employees in the manner in which it was created is further suspect for potential issues involving the unauthorized practice of law.


(CHASE EX. 19) CFN#2013014894, recorded by presentment on 01-29-2013
Signer: Ronnie Sanders (allegedly a Vice President of JPMorgan Chase Bank, N.A.)
Notary: Wanda Inez Kinser (Louisiana Lifetime Notary Commission No. 16541)
Witnesses: None
Issues: Chase employees recorded the promissory Note of the alleged Borrower, Patricia A. Grinnals, containing endorsements that Chase itself could have engineered to be self-serving. Due to other items found recorded in the real property records of Osceola County, Florida, as referenced by Ronnie Sanders in the Affidavit, there are multiple issues with this Affidavit, to wit:

> (1) The Mortgage was executed in favor of Gmc Lending & Mortgage Corp. on October 21, 2005.  It is noted as not being a MERS-originated Mortgage;

> (2) It appears that the Mortgage was prepared by and returned to JPMorgan Chase Custody Services (P. O. Box 8000, Monroe, LA 71211) after it was filed for record as CFN#2005254977 on 11-17-2005;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(3) On January 22, 2013, Sanders executed a "Florida Assignment of Mortgage" which assigned the Mortgage (only) to Fannie Mae and caused it to be recorded in the real property records of Osceola County, Florida as CFN#2013015801 on 01-30-2013;**

**(4) On February 12, 2013, Melanie Hanson, who claims to be an "Assistant Secretary for Title Services" (but it actually an employee of Security Connections, Inc. in Bonneville County, Idaho) executed a "Mortgage Release, Satisfaction, and Discharge" on behalf of Fannie Mae by Seterus, Inc. as its attorney-in-fact;**

**(5) The Satisfaction of Mortgage was recorded on 02-19-2013; however, the Limited Power of Attorney to Seterus, Inc. (and NOT Security Connections, Inc.) was recorded on 08-01-2013 as CFN#2013120380, which the Examiner construes to mean that neither Seterus, Inc. or Security Connections, Inc. was not vested with any authority to release the Mortgage at the time said execution took place;**

**(6) Due to the fact that the Assignment of Mortgage and Satisfaction of Mortgage took place within three weeks of each other (in close proximity), there is probable cause to believe that (given all of the circumstances) that the recorded documents were manufactured with the intent to deprive the homeowner of her personal property (funds) and potentially her property (in the forced sale thereof), to pay funds to an entity that is relying on documents suspect for manufacture, in violation of Florida Criminal Code § 817.535 and Florida RICO statutes, not to mention the unauthorized practice of law by individuals who were not authorized to execute Satisfactions of Mortgage without a power of attorney in force and due to apparent lack of attorney supervision therein; and**

**(7) As the result of this transaction, another Exhibit has been created for Security Connections, Inc. in addition to Seterus, Inc., who, acting in concert with Chase, appears to have been involved in the probable cause for RICO violations herein. Further, because the Limited Power of Attorney was electronically filed, there is also apparent issues involving violation of 18 USC 1343 (wire fraud). The other suspect documents may have been presented as the result of mailings through the United States Mails, which may constitute violations of 18 USC 1341 (mail fraud).**

**(CHASE EX. 20) CFN#2013054656, electronically recorded on 04-21-2014**
**Signer: Lyneisa Moran (allegedly a Vice President of JPMorgan Chase Bank, N.A.)**
**Notary: Wanda Inez Kinser (Louisiana Lifetime Notary Commission No. 16541)**
**Witnesses: None**
**Issues: Chase employees recorded the promissory Note of the alleged Borrower, Peter Serrano, containing endorsements that Chase itself could have engineered to be self-serving.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Due to other items found recorded in the real property records of Osceola County, Florida, as referenced by Lyneisa Moran in the Affidavit, there are multiple issues with this Affidavit, to wit:

> (1) A foreclosure action had been commenced by Florida Default Law Group's Jonathan W. Mesker (FBN 805971), who also filed the Notice of Lis Pendens in the case on 11-05-2008 as CFN#2008181770 (included in the case file that is made a part of this Exhibit) on behalf of Chase Home Finance, LLC;

> (2) It appears that Certificate of Title was issued as the result of a sale of the property to Chase Home Finance, LLC, the Plaintiff in this action; and

> (3) As the result of the Affidavit being recorded years after the Certificate of Title was issued, issues are now suspect for self-manufacture of documents necessary to prove standing to take the property, probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.

This cause is within the target parameters of this forensic examination due to the Affidavit being recorded on April 21, 2014. Florida Default Law Group and JPMorgan Chase Bank, N.A. appear to be the actors involved in this instance.

### _M & T Bank (Buffalo, New York_

(M&T EX. 1) CFN#2011087038, recorded by presentment on 06-27-2011
Document Prepared by: Rebecca A. Colvin, M&T Bank Lien Release Dept. (Buffalo, NY)
Signer: Tiffany A. Kisloski (alleged employee of M & T Bank's "Collateral Perfection" department; also the apparent preparer of the document) signing as Vice President of Mortgage Electronic Registration Systems, Inc. as nominee for M&T Bank, using M & T Bank's Buffalo, New York address to misrepresent a self-assigned party of interest in the previous Assignment filed by M & T prepared by the Stern Law Firm as CFN#2010046168 as part of a foreclosure case filing (_M&T Bank v. Manuel A. Otero et al_; 2010 CA 2291 MF)
Notary: Diane S. Horn (New York Notary Commission expires 02-12-2015)
Witnesses: Matthew Graber, Maria Reese (alleged M & T Bank employees)
Issues: It appears that M & T Bank employees are attempting to "clean up" the previous Assignment and in turn by assigning only the Mortgage to M&T Bank so it can attempt to foreclose as the Servicer.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(M&T EX. 2) CFN#2011122616, recorded by presentment on 09-06-2011**
**Signer: David R. Ligammari** (alleged employee of M & T Bank's "Assignments" department) signing as Assistant Vice President of "MERS, Inc." as nominee for defunct FBC Mortgage, LLC, using M & T Bank's Buffalo, New York address to misrepresent BOTH the Assignor and Assignee in this Assignment of Mortgage.
**Notary: Katie M. Stock** (New York Commission No. 01ST6217241; expired 02-08-2014)
**Witnesses: Jason D. Benner, Shannon E. Ormond**
**Issues:** This Assignment of Mortgage appears to have been drafted and caused to be recorded in favor of M & T Bank to give it standing to engage in a Loan Modification Agreement with the homeowner, Nelsa F. Santos (filed as CFN#2011122622). The use of the name "MERS" (instead of the spelled out "Mortgage Electronic Registration Systems, Inc.) misrepresents the real party having a claimed interest in the original mortgage. MERS, Inc. is a separate entity unrelated to Mortgage Electronic Registration Systems, Inc.; thus, the filing of a fraudulent and misrepresentative document. This is the first of five (5) noted assignment patterns herein. This was done AFTER the Law Offices of Marshall C. Watson attempted a foreclosure action (Case No. 2010 CA 1255 MF) BEFORE this Assignment was filed.

The case may have been dismissed due to a lack of prosecution, but the intent was clear that the self-Assignment of Mortgage was used to deprive the homeowner of personal property (monthly mortgage payments) under Florida Criminal Code § 817.535.

**(M&T EX. 3) CFN#2011123972, recorded by presentment on 09-08-2011**
**Signer: Rebecca A. Colvin** (alleged employee of M & T Bank's "Lien Release" department) signing as Vice President of Mortgage Electronic Registration Systems, Inc. as nominee for defunct FBC Mortgage, LLC, using M & T Bank's Buffalo, New York address to misrepresent a self-assigned party of interest in the Release of the Mortgage belonging to Jose and Ana Ramirez of Osceola County, Florida. See *David J. Stern* law firm heading under CFN#2010086756, where the Stern law firm attempted foreclosure by directing M & T Bank employees in Buffalo, New York to execute a Stern-prepared self-Assignment of Mortgage from MERS as nominee for then defunct FBC Mortgage LLC to M & T Bank for the purposes of filing Case No. 2010 CA 2894 MF, which was subsequently voluntarily dismissed in November of 2011 after substitution of counsel (Ablitt Scofield's Scott M. Gross, FBN63921; for Lorelei Fiala (WITNESS A herein).
**Notary: Gloria J. Dishman** (New York Commission expired 04-24-2014)
**Witnesses: None** (two may be required in Florida)
**Issues: Establishment of pattern of alleged perjury under Florida RICO statutes, involving known suspect Florida foreclosure mill law firms and M & T Bank.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(M&T EX. 4) CFN#2011156814, recorded by presentment on 11-08-2011**
**Signer: Tiffany A. Kisloski (alleged employee of M & T Bank's "Lien Release" department; also the apparent preparer of the document) signing as Vice President of Mortgage Electronic Registration Systems, Inc. as nominee for defunct FBC Mortgage, LLC, using M & T Bank's Buffalo, New York address to misrepresent a self-assigned party of interest in the Release of the Mortgage belonging to Jose and Ana Ramirez of Osceola County, Florida.**
**Notary: Gloria J. Dishman (New York Commission expired 04-24-2014)**
**Witnesses: None (two may be required in Florida)**
**Issues: Establishment of pattern of alleged perjury under Florida RICO statutes, involving known suspect Florida foreclosure mill law firms and M & T Bank.**

**(M & T EX. 5) CFN#2012163204, recorded by presentment on 11-06-2012**
**Document Prepared by: Courtney A. Ryan (M & T Bank's "Lien Release" Department employee)**
**Signer: Meghan Halpin (alleged employee of M & T Bank's "Assignment" department), signing as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. as nominee for defunct Countrywide Home Loans, Inc., using MERS's "Metro Detective Agency" address in Danville, Illinois address in an attempt to self-assign the Mortgage ONLY!**
**Notary: Bess E. Katerinsky (New York Commission expired 01-12-2013)**
**Witnesses: None (two may be required in Florida)**
**Issues: Establishment of pattern of alleged perjury under Florida RICO statutes, involving known suspect Florida foreclosure mill law firms and M & T Bank.  See the listing under Clarfield Okon's law firm heading.**

**(M & T EX. 6) CFN#2014029895, recorded by presentment on 02-28-2014**
**Signer: Veronika A. Steen (alleged employee of M & T Bank's "Assignments" department) signing as Assistant Secretary of MERS as nominee for Austin, Texas-based DHI Mortgage Company, Ltd. (still in existence), using the Metro Detective Agency address (for MERS) in Danville, Illinois to misrepresent the true address of the real party in interest with knowledge of the assignment.**
**Notary: Tammy M. Hamilton (New York Commission No. 01HA6199021; still active)**
**Witnesses: None (two may be required)**
**Issues: This Assignment of Mortgage appears to have been drafted and caused to be recorded in favor of M & T Bank to give it standing to foreclose.  A Notice of Lis Pendens was filed by Marc Ruderman (FBN899585) on behalf of the Clarfield-Okon law firm.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

### *Nationstar Mortgage LLC*

In this section, all references to the above servicer are noted as "Nationstar". It maintains two offices in Scottsbluff, Nebraska (Scotts Bluff County) and Lewisville, Texas (Denton County). Many of these documents are apparent self-assignments by Nationstar employees, posing as officers of MERS or other entities. One Exhibit herein contains an example of a Limited Power of Attorney ("LPOA") which is facially deficient and the Examiner cautions that further investigation is required to validate all claimed attorney-in-fact statuses claimed by Nationstar employees. All of the following recorded documents were filed with the intent to deprive the property owner by virtue of a recorded document containing false or misrepresentative information, probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes:

**(NATIONSTAR EX. 1) CFN#2012084635, recorded by presentment on 06-04-2012**
**Return to: Nationstar Mortgage, LLC**
**C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Brady Niehaus (allegedly a Nationstar employee), claiming to be an Assistant Secretary of MERS as nominee for Suntrust Mortgage, Inc. as Assignor (using MERS's Flint, Michigan post office box address), attempting to assign ONLY the Mortgage (and not the Note) to itself, as Assignee (using Nationstar Mortgage's Lewisville, Texas address). The signer has absolutely no knowledge of the facts and is NOT an officer of MERS or Suntrust, but an employee paid by Nationstar to assign the Mortgage to his employer.**
**Notary: Keri Jonker (Texas Notary Commission expired 10-24-2012)**
**Witnesses: Sam Maurer, (second name and signature illegible); both alleged Nationstar employees.**
**NOTE: See *Section Six*, Case No. 113 for identification as to how this Assignment was used.**

**(NATIONSTAR EX. 2) CFN#2012094325, recorded by presentment on 06-22-2012**
**Return to: Alex Choi (Preparer) Nationstar Mortgage, LLC (350 Highland Drive, Lewisville, Texas 75067)**
**Signor: Michael Kelso (?; name illegible in both signature area and notarial execution; allegedly a Nationstar employee), claiming to be an Assistant Secretary of MERS as nominee for First Horizon Home Loan Corporation as Assignor (using MERS's office address of 1818 Library Street, Suite 300, Reston, Virginia 20190), attempting to assign ONLY the Mortgage (and not the Note) to First Horizon Home Loans, a division of First Tennessee Bank, N.A., successor in interest by merger to First Horizon Home Loan Corporation, as Assignee.**
**Notary: Brady James Niehaus (Texas Notary Commission expires on 09-01-2015; active)**
**Witnesses: Sam Maurer, Amber Oharani (both alleged Nationstar employees)**
**NOTE: See *Section Six*, Case No. 116 for identification as to how this Assignment was used.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(NATIONSTAR EX. 3) CFN#2013004594, recorded by presentment on 01-09-2013**
**It appears that Nationstar employees, in conjunction with Choice Legal Group, P.A., caused the manufacture of an assignment (by Nationstar employee Alex Choi) and signed by other Nationstar employees in an attempt to use MERS (as nominee for First Horizon Home Loan Corporation) to assign a mortgage (using MERS's Reston, Virginia address instead of First Horizon's real address in Irving, Texas) to a closed First Horizon 2006-FA1 REMIC trust.  This attempted assignment was done prior to the execution of a Notice of Lis Pendens (CFN#2013182966) in Case No. 2013 CA 3947 MF, which is set for hearing in December, 2014, filed by Choice Legal's Faith Dominique Everett (FBN 96339).**
**Notary: Tiera Lynde Thune (Texas Notary Commission Expires 12-16-2016)**
**Witnesses: Matthew Johnstone, Vishal Desai (alleged employees of Nationstar)**
**NOTE: This is an OPEN case, filed as 2013 CA 3947 MF, which relies on this Assignment.**

**(NATIONSTAR EX. 4) CFN#2013021693, recorded by presentment on 02-08-2013**
**Nationstar Mortgage LLC employees used MERS as Nominee for Resource Bank (for a second time, on January 25, 2013) to assign the same mortgage to itself using a known Nationstar/Aurora Loan Services robosignor and robonotary.   The reference document is CFN#2013000450 (filed 01-02-2013 as attached as a supporting document to this Exhibit). How can a servicer assign a mortgage out of a REMIC trust without violating the PSA?  No litigation is noted but there are numerous document manufacturing issues which could warrant probable cause to defraud the homeowner (Rodney D. Hankins) in addition to slandering his title.  In the least, there is probable cause for Florida RICO violations.**

**(NATIONSTAR EX. 5) CFN#2013024990, electronically recorded on 02-14-2013**
**Document Prepared by: Tyler Gold, Esq. (Tyler Gold, P. A.), Plantation, Florida**
**Signer: Lauren Trevathan, who claims that she is an Assistant Secretary of Nationstar, in what appears to be a "fill-in-the-blank" reference form to an attached "EXHIBIT A", which provides the viewer with identification of the property in question.  However, the recorded instrument only consists of a single page and EXHIBIT "A" is not included, which makes this Affidavit facially deficient.**
**Notary: Heidi Long (Colorado Notary Commission Expires on 12-15-2016)**
**Witnesses: None Listed**
**NOTE: Aurora Loan Services LLC operates offices out of Littleton, Colorado (Douglas County), which then would lead the viewer of this document to believe that Trevathan, who works for Nationstar, was also in Colorado signing this document at the same time she was in Nebraska or Texas.  At best, this represents probable cause for RICO violations considering that multiple parties generated facially-deficient instruments with the intent to manufacture other documents to be used in tandem for the taking of property.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(NATIONSTAR EX. 6) CFN#2013065827, electronically recorded on 04-24-2013**
**Document Prepared By: Linda Parks (alleged employee and notary of Nationstar Mortgage LLC)**
**Signer: Traci Garton (also alleged employee of Nationstar Mortgage LLC), claiming to be Assistant Secretary of Aurora Bank FSB by Nationstar Mortgage, LLC, its Attorney-in-Fact, in an attempt to execute a self-Assignment to Nationstar Mortgage, LLC in Lewisville, Texas.**
**Notary: Irene Guerrero (Nebraska Notary Commission expired); known employee of Nationstar Mortgage, LLC in Scottsbluff, Nebraska.**
**Witnesses: None**
**Date of Execution: April 8, 2013; this appears to be an assignment of the First Mortgage loan. The use of "attorney-in-fact" status to self-assign ONLY the Mortgage is suspect in creating "standing" for Nationstar Mortgage, LLC to foreclose on the property. Misrepresentation of transferring parties. Highly likely there was no attorney supervision (unauthorized practice of law) and Florida RICO (for perjury) violations.**
**NOTE: See *Section Six*, Case No. 41 for identification as to how this Assignment was used.**

**(NATIONSTAR EX. 7) CFN#2013088242, electronically recorded on 06-04-2013**
**Document Prepared by: Robert S. Kahane (FBN 946850), Kahane & Associates, P.A.**
**Signer: Thomas Earl Brown, signing as Assistant Vice President of Nationstar Mortgage, LLC, as attorney-in-fact for Bank of America, N.A., as Assignor; in attempting to assign a Mortgage and Note to Federal National Mortgage Association ("Fannie Mae"), as Assignee.**
**Notary: Michael Ray Galloway (Texas Notary Commission expires 03-18-2017)**
**Witnesses: James Morgan, Sarah Terry**
**NOTE: BOTH Kahane documents listed here are related to *Section Six*, Case No. 50.**
**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) The signor is an alleged officer for Nationstar Mortgage LLC and has misrepresented himself on the Assignment (see below):**

**Thomas Brown, Assistant Vice President at Nationstar Mortgage Mckinney, Texas (Financial Services); Previous (Employment) Terrell State Hospital; Education, The University of Texas at Arlington (taken from Brown's LinkedIn page);**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(2) The language within in the Assignment claims that Bank of America, N.A. is assigning the Mortgage to Fannie Mae; however, the notarial execution nor the language within the document states that "Nationstar" (and not Nationstar Mortgage LLC) has been granted any "attorney-in-fact" status and there is nothing stated on the document referencing an incomplete entity as scribbled onto the page allegedly by Brown in his own handwriting;

(3) These documents were drafted due to a law suit being initiated and a settlement agreement being reached (a copy of the Notice of Voluntary Dismissal is attached hereto for reference) as a "deed in lieu of foreclosure"; thus, no party prevailed which means that the Hecks took Bank of America's word for it that they owned the loan, which appears NOT to be the case, as Brown assigned the Mortgage and Note on May 10, 2013 to Fannie Mae (which would be construed to mean that Fannie Mae did NOT own the Mortgage and Note at the time the suit was commenced (by Bank of America on its behalf);

(4) Brown provides no proof of authority and does not spell out the full name of the alleged servicer on this document; and

(5) Fort Worth, Texas, where the Bank of America, N.A. address is shown, is NOT in Denton County, Texas, where Nationstar Mortgage, LLC is located.

The potential of unjust enrichment may constitute probable cause of violating Florida Criminal Code § 817.535 in that the real party in interest did not commence the foreclosure and thus the entire proceeding could be construed as a potential sham, resulting in the manufacture of documents which revealed that the real owner of the Note and Mortgage was a Fannie Mae-administered trust REMIC.

(NATIONSTAR EX. 8) CFN#2013088244, electronically recorded on 06-04-2013
Document Prepared by: Robert S. Kahane (FBN 946850), Kahane & Associates, P.A.
Signer: Thomas Earl Brown, signing as Assistant Vice President of Fannie Mae, attempting to release a Mortgage executed by Christopher A. Heck and Patricia Ann Heck.
Notary: Michael Ray Galloway (Texas Notary Commission expires 03-18-2017)
Witnesses: James Morgan, Sarah Terry
NOTE: BOTH Kahane documents listed here are related to *Section Six*, Case No. 50.
There are multiple issues with this Satisfaction of Mortgage, to wit:

(1) Thomas Earl Brown is NOT an Assistant Vice President of Fannie Mae on this document (despite his claims to the contrary); he is employed by Nationstar Mortgage, LLC;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(2) Fannie Mae appears to have been the real party in interest, which would lead the Examiner to believe that the entire proceeding was a sham proceeding;

(3) There is the question of why Nationstar is acting in the stead of Bank of America, N.A. if Bank of America, N.A. (which is still in business) was capable of assigning the Note and Mortgage;

(4) It would thus be unknown as to who the real party in interest was at the time the foreclosure Complaint was filed.

Thus, despite the fact that Kahane drafted this document, its execution appears to have been unsupervised by counsel, which could be alleged as unauthorized practice of law, especially if this document is found to contain false statements and misrepresentations. Further, due to the collaboration of multiple parties acting in concert with one another to manufacture these documents, it is highly likely there is probable cause of Florida RICO issues.

(NATIONSTAR EX. 9) CFN#2013088386, electronically recorded on 06-04-2013
Document Prepared by: Angela Sanchez (alleged Nationstar employee)
Signor: Susan Lindhorst (alleged employee of Nationstar and known robosignor) attempting to utilize authority as Assistant Secretary of MERS to self-assign an interest from defunct Countrywide Home Loans, Inc. to Nationstar for the purposes of effectuating foreclosure.
Notary: Linda D. Parks (Nebraska Notary Commission Expires on 11-14-2015)
Witnesses: None listed
NOTES: McCalla Raymer LLC's Peter J. Kapsales (FBN 91176) filed a Notice of Lis Pendens on 11-21-2013 as CFN#2013183848 in regards to Case No. 2013 CA 3916 MF, which was later voluntary dismissed; however, the intent under F. C. C. § 817.535 appears to render probable cause here.

(NATIONSTAR EX. 10) CFN#2014050170, electronically recorded on 04-10-2014
This four-page document brings into question a second round of Affidavit-based issues. Carmen Johnson, who claimed to be an attorney-in-fact (who assumedly is an employee of Nationstar as this is where the document was executed) in this instance, attached her Affidavit to a facially-deficient LPOA (which was requested by Nationstar) from U. S. Bank, N.A., in order to be able to represent various trusts attached as "SCHEDULE A" thereto. However, when one examines the document, one realizes that the schedule of trusts is not attached, therefore, there is no attorney-in-fact status and thus, the document is not only erroneous but the Affidavit was signed under penalty of perjury. The Examiner believes that this constitutes probable cause for (at least) violation of Florida RICO statutes.
Notary: Amanda Cefalu (Texas Notary Commission expires on 04-13-2016); no witnesses.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(NATIONSTAR EX. 11) CFN#2014071013, recorded by presentment on 05-20-2014**
**Nationstar Mortgage LLC appears to have used its employee, Susan Lindhorst, a known robosigner, to claim that she is an Assistant Secretary for MERS as nominee for Country-wide Bank, N.A. (then-subsumed by Bank of America, N.A.) to attempt assignment of a mortgage and note (which MERS cannot convey an interest in) to a closed CHWEQ, Inc. 2006-S8 REMIC trust.  This document was previously noted in NTC's file and it appears that NTC is tracking the related paperwork.  There are numerous document manufacturing markers contained in this document.**
**Notary: Kelsey E. Craig (Nebraska Notary Commission expires on 02-28-2018)**
**Witnesses: None listed**
**Executed on: April 11, 2014 (the Closing Date of the REMIC trust was December 28, 2006).**


In other instances, other firms file documents on behalf of this entity.  In the following instance, third-party document manufacturer Nationwide Title Clearing, Inc. ("NTC"; of Florida) drafted the following document with the intent to create standing on behalf of the Plaintiff trust in **Case No. 2013 CA 3064 MF**:


**(NATIONSTAR EX. 12) CFN#2014073685, electronically recorded on 05-27-2014**
**Document Prepared by: NTC's Erika Lance**
**Signer: Daniel Thompson (who claims to be Vice President of Loan Documentation but in reality is an NTC employee), who purports to be an officer of a Bank of New York Mellon REMIC trust, whose Closing Date was November 28, 2003, while this Assignment wasn't executed until May 23, 2014.**
**Notary: Nicole Baldwin (Florida Notary Commission No. EE 222285; expires 08-05-2015).**
**Witnesses: Tyler Driver, Nadine Homan (known NTC employees and alleged robosigners)**
**NOTE: The intent of the manufacturing of the document is to create standing for the Plaintiff trust, using false and misrepresentative information to deprive the homeowner of his property, probable cause for violation of Florida Criminal Code § 817.535.   The balance of the case file may have to be examined, along with previously-recorded documents, to establish the facts leading up to this Assignment of Mortgage.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

## _OneWest Bank, FSB_

There has been much controversy surrounding the FDIC's Shared-Loss Agreement ("SLA") with OneWest Bank, FSB.  The FDIC acquired the failed IndyMac Federal Bank, FSB and entered into this Agreement on March 19, 2009.  A copy of the SLA is attached to this file as **ONE WEST EX. 1** and incorporated by reference herein.

The SLA appears to incentivize OneWest and its representatives to foreclose on real property rather than negotiate loan modifications and in the alternative, short sales, for what the Examiner believes to be created by the following scenarios (based on specific research):

(1) It only applied to the Portfolio Loans being purchased. It did not apply to servicing rights. 1st Mortgage Loans were purchased for 70% of the original balance;

(2) Second Mortgage loans were purchased at a much lower rate, at 55% or lower at times.  Second mortgage Loans also did apply to this deal (even though the Examiner discusses first mortgage loans only at this point);

(3) IndyMac had a large portfolio of Negative Amortization ("Neg Am") loans, so the 70% purchase price of individual loans might be "lower" if the loan had accrued a Neg Am balance above the original loan amount. If there were a large number of 30-year fully-amortized loans, then there might be a greater than 70% purchase price. There is no way to break down the proportion of each;

(4) The first 20% of losses on the "Total Portfolio" purchase would be absorbed by OneWest Bank. There would be no reimbursement on those losses;

(5) The next 10% of losses, up to 30%, are reimbursed at 80%; so to begin to make any claims, the 20% level must be reached;

(6) From 30% on, the reimbursement rate is 95%; however, the 30% loss level must be reached before the 95% can be claimed;

(7) The total purchase of Portfolio loans was approximately $12.5 billion, so a 20% loss would be $2.5 billion before claims could begin.

(8) If every single loan (first mortgage) had defaulted on the first day of purchase, and after reimbursement, the agreement, every $.70 spent would have resulted in $.745 being returned. Not a bad investment, is it?  (If that is all that happened; but there is more.)

**284 of 326**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(9) Most of the loans were not in default. Therefore, interest would continue to be earned until the loan refinanced, or defaulted, so they were making a profit, and as their filings have shown, they made very good profits on these loans; thus

(10)  It is always in the best interests of OneWest Bank to foreclose on defaulted properties. The sooner that the 20% loss is reached, then the quicker that OneWest can make claims for reimbursement.

Because of this scenario, OneWest has no obvious need to modify loans or short sell properties. However, it is also interesting to note that when these loan balances are challenged in foreclosure that the unexpected may happen.  Such is the case with a pro se case filed in the United States District Court of Arizona, styled **Hugh Gerald Huffington, et al v. U. S. Bank, N.A., et al** (CV-14-00615-PHX-DJH, filed October 28, 2014), a copy of which is attached hereto as **ONE WEST EX. 2**, incorporated by reference herein.

Specific and pertinent sections to the Exhibits cited herein are highlighted for reference in this Exhibit, as it appears that when OneWest is involved in a foreclosure proceeding, it stands to gain from the taking of the property; thus, any Assignment drafted that is recorded to claim OneWest as a beneficiary of any mortgage loan must be viewed with the intent to defraud the property owner under the SLA, wherein not only does OneWest get the privilege of selling the foreclosed property, it will get reimbursed by the FDIC to the point where all of its alleged damages would be mitigated, to the potential point of a surplus (that would be shared with everyone but the property owner, after the fact).  The foregoing listed case exhibit illustrates these issues.

The false and misrepresentative content then would constitute probable cause under Florida Criminal Code § 817.535 (and potentially Florida RICO statutes) due to the fact that in order for the foreclosure to take place and OneWest (whose principal owners are George Soros, Michael Dell and John Paulson) to get paid by the FDIC, an Assignment of Mortgage would have to be created.  Thus, all suspect documents issued by OneWest are deemed manufactured for the purpose of having a proof of claim to file with the FDIC.

Further, it is also important to establish the reasons for the belief that OneWest and its employees conduct the same type of document manufacturing processes as the other lenders reviewed as part of this report.  To that end, the Depositions and Detail Report regarding Erica A. Johnson-Seck are attached within the USB Exhibit File accompanying this Report to further explain the reasons that these Assignments should be considered suspect and worthy of further grand jury investigation.

It is also important to recognize that in order to be a party Plaintiff, the Plaintiff in a foreclosure action must have suffered injury ("one must have equity to do equity") such as economic harm. In this instance, it does not appear that any OneWest loan discussed within this report suffered any economic harm; thus, no injury and no standing to pursue a claim of foreclosure.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(ONEWEST EX. 3) CFN#2012164092, electronically recorded on 11-07-2012**
**Document Prepared by: Daniel C. Consuegra (law firm)**
**Signor: Wendy Traxler (alleged OneWest employee) signed as an Attorney-in-Fact for the FDIC as Receiver for IndyMac Federal Bank, FSB, Successor to IndyMac Bank, FSB, as Assignor to OneWest Bank, FSB in an apparent self-assignment to OneWest Bank, FSB by its own employee.  A check of the real property records in Osceola County, Florida revealed no recorded Limited Power of Attorney ("LPOA") giving Traxler any authority to sign anything.  This involves a Mortgage executed by George Horine.**
**Notary: Diana C. Miralles (Texas Notary Commission expired on 06-29-2013)**
**Witnesses: Mary A. Fulton, Lisa C. Payne**
**NOTES: After this Assignment was drafted, executed and recorded, Consuegra attorney Suzanne Fried (FBN 84994) filed a Complaint for foreclosure (Case No. 2013 CA 0280 MF), relying on the recorded self-Assignment.  The intent, based on this document, which is believed to contain false and misrepresentative information, constitutes probable cause for violation of Florida Criminal Code 817.535 and Florida RICO statutes.**


**(ONE WEST EX. 4) CFN#2012171228, electronically recorded on 11-20-2012**
**Signor: John P. Gagnon (alleged OneWest employee) signed as Assistant Secretary of MERS as nominee for  DHI Mortgage Company Ltd. (still an active concern) in an attempt to assign a mortgage and note (which MERS has no interest in and thus cannot convey) to Deutsche Bank National Trust Company as Trustee of the IndyMac INDX Mortgage Loan 2006-AR29 (under the Pooling and Servicing Agreement Dated September 1, 2006) REMIC trust.  By citing the PSA, the Examiner elected to review certain portions to determine the validity of the Assignment.**
**Notary: Michelle M. Wilhelm (Texas Notary Commission Expires 05-30-2015)**
**Witnesses: Mary A. Fulton, Jeremy Briscoe**
**The intent, based on this document, which is believed to contain false and misrepresentative information, constitutes probable cause for violation of Florida Criminal Code 817.535 and Florida RICO statutes.**
**NOTE: See *Section Six*, Case No. 101 to see how this Assignment was utilized.**


**(ONEWEST EX. 5) CFN#2013043600, electronically recorded on 03-15-2013**
**Document Prepared by: Daniel C. Consuegra (law firm)**
**Signor: Wendy Traxler (alleged OneWest employee) signed as an Attorney-in-Fact for the FDIC as Receiver for IndyMac Federal Bank, FSB, Successor to IndyMac Bank, FSB, as Assignor to OneWest Bank, FSB in an apparent self-assignment to OneWest Bank, FSB by its own employee.  A check of the real property records in Osceola County, Florida revealed no recorded Limited Power of Attorney ("LPOA") giving Traxler any authority to sign anything.  This involves a Mortgage executed by Eva Apostolou.**
**Notary: Carla A. Hardin (Texas Notary Commission expires on 07-11-2015)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Witnesses: Mary A. Fulton, Kathleen M. Farmer**
**NOTES: After this Assignment was drafted, executed and recorded, Consuegra attorney Suzanne Fried (FBN 84994) filed a Complaint for foreclosure (Case No. 2013 CA 1300 MF), relying on the recorded self-Assignment. The intent, based on this document, which is believed to contain false and misrepresentative information, constitutes probable cause for violation of Florida Criminal Code 817.535 and Florida RICO statutes.**


**(ONEWEST EX. 6) CFN#2013069528, electronically recorded on 05-02-2013**
**Document Prepared by: Elizabeth R. Wellborn, P. A. (law firm)**
**Signor: Wendy Traxler (alleged OneWest employee) signed as an Attorney-in-Fact for the FDIC as Receiver for IndyMac Federal Bank, FSB, Successor to IndyMac Bank, FSB, as Assignor to OneWest Bank, FSB in an apparent self-assignment to OneWest Bank, FSB by its own employee. A check of the real property records in Osceola County, Florida revealed no recorded Limited Power of Attorney ("LPOA") giving Traxler any authority to sign anything. This involves a Mortgage executed by Samuel and Nyvia Delgado.**
**Notary: Carla A. Hardin (Texas Notary Commission expires on 07-11-2015)**
**Witnesses: None Listed**
**NOTES: Before this Assignment was ever drafted, executed and recorded, Marshall C. Watson, P. A. attorney Yanique Johnson (FBN 63939) filed a Complaint for foreclosure (Case No. 2010 CA 1962 MF), which was eventually dismissed by the Court on May 3, 2012. It appears that there may be a future attempt to foreclose on the property. This recorded document however, may represent probable cause for RICO issues based on perjury.**


**(ONE WEST EX. 7) CFN#2013097428, electronically recorded on 06-25-2013**
**Signor: Wendy Traxler (alleged OneWest employee) signed as Assistant Secretary of MERS as nominee for Amnet Mortgage, Inc. DBA American Mortgage Network of Florida (Inactive in Florida May 12, 2009) in an attempt to assign a mortgage and note (which MERS has no interest in and thus cannot convey) to Wells Fargo Bank as Trustee of a closed Lehman Brothers 2007-1 REMIC trust.**
**Notary: Emily Butler (Texas Notary Commission Expires 08-08-2013)**
**Witnesses: Mary A. Fulton, Jeremy Briscoe**


**(ONEWEST EX. 8) CFN#2013154790, electronically recorded on 09-30-2013**
**Document Prepared by: Daniel C. Consuegra (law firm)**
**Signor: Wendy Traxler (alleged OneWest employee) signed as an Attorney-in-Fact for the FDIC as Receiver for IndyMac Federal Bank, FSB, Successor to IndyMac Bank, FSB, as Assignor to OneWest Bank, FSB in an apparent self-assignment to OneWest Bank, FSB by its own employee.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

A check of the real property records in Osceola County, Florida revealed <u>no recorded Limited Power of Attorney</u> ("LPOA") giving Traxler any authority to sign anything.  This involves a Mortgage executed by George Horine.

**Notary: Diana C. Miralles (Texas Notary Commission expired on 06-29-2013)**

**Witnesses: Mary A. Fulton, Lisa C. Payne**

**NOTES: This appears to be a verbatim recordation of ONEWEST EX. 3. Irregardless,  the intent, based on this document, which is believed to contain false and misrepresentative information, constitutes probable cause for violation of Florida Criminal Code 817.535 and Florida RICO statutes.**

### Orion Financial Group (Southlake, Texas)

This firm appears to be using manufactured signatures in its assignments, as noted in many instances below.  One can literally hold the documents' signatures over each other (into the light) and see how they match up perfectly. This is part of technology that has inherently created an abuse within the manufacturing processes of third-party document manufacturers. Due to these abuse issues, it is highly likely that when the notary signature of "C. Lafferty" (Cathy B. Lafferty) is utilized, that "C. Lafferty" does not keep a log book (journal) of the notarial transactions as required under Texas statutes. Her Texas notary recommission expires 11-30-2018.

It should also be noted here that there are no recorded documents in the real property records of Osceola County, Florida that give this entity "attorney-in-fact" status; thus, the claims of "authorized signature" (*in whatever form*) are invalid as to proof and thus were construed here to be false and misrepresentative in violation of Florida Criminal Code § 817.535.

**(ORION EX. 1) CFN#2012091296, electronically filed on 06-15-2012**

**Signer: Michael E. Wileman, claiming to be an authorized signer for Citifinancial Services, Inc., successor by merger to Citifinancial Services, Inc. 344, LLC A/K/A/ Citifinancial Mortgage Company (FL), LLC (as Assingor) to Florida Mortgage Resolution Trust 2012-4, showing an address in Santa Ana, California (as Assignee), transferring ONLY the Mortgage and NOT the Note.**

**Notary: "C. Lafferty" (Texas Notary Commission Expires November 30, 2018)**

**Witnesses: None**

**Issues: Orion only generates documents when it is told to do so by its client, apparently by communication through a third-party (hearsay) computer software platform.  It is highly likely that no attorney supervised the drafting of this Assignment; thus, issues of unauthorized practice of law may be present. The signatures of "M. E. Wileman" and "C. Lafferty" appear to be computer generated and manufactured onto the document.  Because the document was electronically recorded, there are also 18 USC 1343 issues present.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(ORION EX. 2) CFN#2012093517, electronically filed on 06-21-2012**
**Signer: Michael E. Wileman, claiming to be an authorized signer for Citimortgage, Inc. as Successor by reason of merger to Citifinancial Mortgage Company, Inc.**
**Notary: "C. Lafferty" (Texas Notary Commission Expires November 30, 2018)**
**Witnesses: None**
**Issues: This document falls back on document CFN#2012091296, electronically filed on 06-15-2012, wherein Orion's signers, the same   "M. E. Wileman" and "C. Lafferty", now claim by corrective Assignment of Mortgage (a week later), that U. S. Bank, N.A. as Trustee for the previously-named trust is added to "fix" what was not completely "set in stone" the first time. You can take both sets of Assignments and align the signatures over each other and see they are manufactured onto the page, as they clearly overlap each other.**

**(ORION EX. 3) CFN#2013134847, electronically filed on 08-27-2013**
**Signer: Michael E. Wileman, claiming to be an authorized signer for Citimortgage, Inc. as Successor by reason of merger to Citifinancial Mortgage Company, Inc.**
**Notary: "C. Lafferty" (Texas Notary Commission Expires November 30, 2018)**
**Witnesses: None**
**Issues: This document falls back on document CFN#2004008098, recorded by presentment on 01-14-2004 wherein Orion's signer "A. Tucker", claiming to be a Vice President of Orion as attorney-in-fact had no recorded LPOA in the real property records of Osceola County, Florida to back up those claims. Thus, the newly-assigned Mortgage into the Christiana Trust in this instance fails because the original assignment (attached hereto and included with this Exhibit) failed due to lack of authority.**

**Additionally, Premium Capital Funding went under in Florida on March 15, 2010.**

**Further, since the earlier assignment failed, the suit filed by Citimortgage, Inc. against Duerett Dempster (the property owner herein) also failed and was voluntarily dismissed for lack of prosecution.**

**However, the intent was clear through the filing of this new Assignment of Mortgage, to attempt to perfect standing.  It appears that Roger Gladstone of the Gladstone Law Group, P.A. (FBN612324) by and through Traci B. Ruben (Florida Bar Bo. 91221) filed a Notice of Lis Pendens on 11-02-2012 as CFN#2012161747 in an attempt to utilize what appears to be false and misrepresentative documents to effectuate a foreclosure proceeding.  This case will be listed under _Gladstone Law Group_'s heading in this section (Case No. 2012 CA 5041). It further appears that there was a substitution of party plaintiff with no court record noted as such.   The case was dismissed on August 28, 2014 and filed for record as CFN#2014144547.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(ORION EX. 4) CFN#2013187561, electronically filed on 12-02-2013**
This "Corrective Assignment of Mortgage" appears to utilize MERS as a standalone (with no nominee present; but obviously under the direction of Specialized Loan Servicing, LLC) wherein the Assignor (Orion's Wileman) purports to transfer the borrower's mortgage and note to a closed Structured Asset Mortgage Investments II Series 2006-AR6 (using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado) REMIC trust (seven years too late).   There is mention of the original document number being recorded (CFN#2008172376), which also appears suspect for document manufacturing.

The 2008 Assignment of Mortgage also appears to utilize MERS as a standalone (with no nominee present; but obviously under the direction of Michelle Garcia Gilbert, a Tampa attorney, who prepared the document for signing. It was signed by Mark Bishop, who claims to be a 1st Vice President of MERS (even though no such titles were ever delegated), representing itself (by seal) as a standalone party in interest, paralleling its successor assignment. Both assignments were signed in Texas (the first allegedly by Bank of America employees in Collin County, Texas; the second by a third-party document manufacturer in Tarrant County, Texas). Both assignments appear to assign the mortgage from MERS directly to a trust.

Unless a person examined the original mortgage (noted only as "Book 3232, Page 950"; no CFN listed) would they be able to figure out that the original lender was the now-subsumed Countrywide Home Loans, Inc.  The information in both of these assignments however does not mention Countrywide Home Loans, Inc. but rather claims MERS is the "Assignor" without naming them in "nominee status".  Both of these assignments appear misrepresentative of the real party in interest, as MERS cannot transfer something it does not have an interest in.

Similarly, no matter how you state the name of the 2006-AR6 trust, the closing date of this entity was August 4, 2006, as shown in the information contained in the following link: http://www.secinfo.com/dRQ1j.vf8.htm; thus, the REMIC could not (in either instance) have accepted the mortgage and note into the trust in violation of the PSA, SEC and IRS regulations.  Despite the lack of any filing of foreclosure litigation against the property, the documents themselves contain false and misrepresentative information, in apparent violation of Florida Criminal Code § 817.535.   Further, Edward B. Pritchard of Kass Shuler initiated Case No. 2008 CA 9051 MF on behalf of Plaintiff Bank of New York Mellon and foreclosed on the Property belonging to Bounlath Phouasalith.  A Certificate of Title was issued to the trust on April 2, 2010.  THIS ASSIGNMENT OF MORTGAGE WAS NOT RECORDED UNTIL NEARLY THREE (3) YEARS AFTER THE CERTIFICATE OF TITLE WAS ISSUED!  Thus, the Plaintiff did not have effectual proof of standing or of transfer of the Note and Mortgage into the trust pool.  It is highly likely that further investigation may reveal fraud on the Court.  This study is being copied on *Kass Shuler*'s heading as well.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(ORION EX. 5) CFN#2013191504, electronically filed on 12-09-2013**
**This "Corrective Assignment of Mortgage" appears to utilize MERS as a standalone (with no nominee present; but obviously under the direction of Specialized Loan Servicing, LLC) wherein the Assignor (Orion's Wileman) purports to transfer the borrower's mortgage and note to a closed CWABS, Inc. 2007-9 (using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado) REMIC trust (six years too late). It appears that after the filing of this Assignment, a foreclosure action against the property was commenced as Case No. 2014 CA 2321 MF by Kristina A. Nuboryan, an attorney with McCalla Raymer LLC, who filed a Notice of Lis Pendens on 08-06-2014 as CFN#2014112762. The pendency of the case is still ACTIVE. However, the Assignment by Wileman is being conveyed using MERS to cover up the fact that the originating lender, First Interstate Financial Corp., lost its right to do business in Florida on June 30, 2010, over three years earlier. McCalla Raymer, LLC, in acting on this Assignment, will also show this listing under its law firm heading.**

**(ORION EX. 6) CFN#20131911658, electronically filed on 12-10-2013**
**This Assignment of Mortgage appears to utilize MERS as nominee for Countrywide Home Loans, Inc. (already subsumed by Bank of America, N.A. but NOT disclosed on this form; using MERS's post office box in Flint, Michigan) DBA (fictitious) America's Wholesale Lender, wherein the Assignor purports to transfer the borrower's mortgage and all beneficial interest therein to a closed CWABS, Inc. 2007-10 (using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado) REMIC trust. As this document appears to have been relied upon to commence foreclosure proceedings by not only Ronald Wolfe & Associates but also the Gilbert Garcia Group, both entities will incorporate this listing with their appropriate exhibit paperwork supplied by court records.**

**(ORION EX. 7) CFN#2013191659, electronically filed on 12-10-2013**
**This Assignment of Mortgage appears to utilize MERS as nominee for America's Wholesale Lender (an unregistered DBA for Countrywide Home Loans, Inc. (already subsumed by Bank of America, N.A. but NOT disclosed on this form), using MERS's post office box in Flint, Michigan DBA (fictitious) America's Wholesale Lender, wherein the Assignor purports to transfer the borrower's mortgage and all beneficial interest therein to a closed CWALT, Inc. 2006-OA10 (using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado) REMIC trust. It appears that there was another assignment filed three days after this one was filed as CFN#2013194537 on 12-13-2013 by Bank of America, N.A. employees in Ventura County, California who probably had absolutely no idea that they were duplicating the efforts of Orion. On October 21, 2014, Security Connections' employees caused a Satisfaction of Mortgage to be recorded on behalf of the Servicer, with what appears to be no attorney supervision, which may constitute unauthorized practice of law. The ancillary documents (in copy form) are attached for reference.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(ORION EX. 8) CFN#2013192151, electronically filed on 12-10-2013**
**This "Corrective Assignment of Mortgage" appears to utilize MERS as nominee for de-**
**funct Aegis Lending Corporation (Aegis filed for bankruptcy in Delaware in 2007) using**
**MERS's post office box in Flint, Michigan, wherein the Assignor purports to transfer the**
**borrower's mortgage and and all beneficial interest therein to a closed CWABS, Inc. 2007-9**
**(using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado)**
**REMIC trust.   The document makes reference to CFN#2008189171, filed by presentment**
**on 11-21-2008, which contains a "blank space" where Aegis Lending's address is supposed**
**to be filled in and contained more suspect markers of Bank of America document manufac-**
**turing than the newer version.  That document is also attached to the back of this document**
**in full, for reference.  Florida Default Law Group appears to have attempted foreclosure**
**back in 2010; the case was voluntarily dismissed.  The current Assignment of record could**
**be a precursor to another foreclosure action being filed at some point.**

**(ORION EX. 9) CFN#2013192339, electronically filed on 12-11-2013**
**This "Corrective Assignment of Mortgage" appears to utilize MERS as a standalone with**
**no nominee status shown (as the "assignor", for valuable consideration, which MERS can-**
**not accept as it is a bankruptcy-remote shell), using MERS's post office box in Flint,**
**Michigan, wherein the Assignor purports to transfer the borrower's mortgage and and all**
**beneficial interest therein to a closed CWABS, Inc. 2007-9 (using an address belonging to**
**Specialized Loan Servicing in Highlands Ranch, Colorado) REMIC trust.   The document**
**makes reference to CFN#2011137665, filed by presentment on 11-21-2008, which contains**
**an address for MERS that violates MERSCORP policies and contains the actual address of**
**the closed trust in addition to numerous suspect markers of Bank of America document**
**manufacturing than the newer version.  It appears that Kass Shuler attempted foreclosure**
**back in 2008 (based on the previous assignment); the case was voluntarily dismissed in**
**April of 2011 (failure to prosecute).  The current Assignment of record could be a precursor**
**to another foreclosure action being filed at some point.**

**(ORION EX. 10) CFN#2013198765, electronically filed on 12-20-2013**
**This "Corrective Assignment of Mortgage" appears to utilize MERS as nominee for then-**
**defunct Pinnacle Direct Funding Corporation, using MERS's post office box in Flint,**
**Michigan, wherein the Assignor purports to transfer the borrower's mortgage and and all**
**beneficial interest therein to a closed Residential Asset Mortgage Products, Inc. ("RAMP")**
**2003-RS6 (using an address belonging to Specialized Loan Servicing in Highlands Ranch,**
**Colorado) REMIC trust.    The document makes reference to CFN#2012140085, filed by**
**presentment on 09-27-2012, which contains the same use of MERS for the same defunct**
**lender to the same closed trust (only the acronym for the trust, RAMP is present and there**
**is no recorded address for RAMP shown, not even the Servicer's c/o address).  See also, the**
**Indecomm listings, as the predecessor trust assignment was prepared by another third-par-**
**ty, document manufacturing company in Minnesota (Indecomm), with the same apparent**
**lack of personal knowledge as the current assignment demonstrates.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(ORION EX. 11) CFN#2013199067, electronically filed on 12-23-2013**
**This "Assignment of Mortgage" appears to utilize MERS as a nominee for then-defunct Pinnacle Direct Funding Corporation, using MERS's post office box in Flint, Michigan, wherein the Assignor purports to transfer the borrower's mortgage and and all beneficial interest therein to a closed RAMP, Inc. 2004-RS5 (using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado) REMIC trust.**

**(ORION EX. 12) CFN#2013190902, electronically filed on 12-23-2013**
**This "Assignment of Mortgage" appears to utilize MERS as a nominee for Southstar Funding, LLC (which went out of business April 5, 2011), using MERS's post office box in Flint, Michigan, wherein the Assignor purports to transfer the borrower's mortgage and and all beneficial interest therein to a closed CWABS, Inc. 2003-RS4 (using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado) REMIC trust.**

**(ORION EX. 13) CFN#2014052016, electronically filed on 04-14-2014**
**This "Corrective Assignment of Mortgage" appears to utilize MERS as nominee for Countrywide Home Loans, Inc. (already subsumed by Bank of America, N.A. but NOT disclosed on this form; using MERS's post office box in Flint, Michigan) wherein the Assignor purports to transfer the borrower's mortgage and all beneficial interest therein to a closed Luminent Mortgage Trust Series 2006-1 (using an address belonging to Specialized Loan Servicing in Highlands Ranch, Colorado. The document makes reference to CFN#2011119121, filed by presentment on 08-29-2011, which contains the changed the name of the Trustee (adding "Mellon" to "Bank of New York") but also more particularly, it changes the entire name of the trust vehicle from the foregoing listed Luminent trust as shown, from the older assignment which shows the trust to be a closed CWMBS, Inc. Alternative Loan Trust 2006-OA1, which is now suspect for PSA, SEC and IRS violations, since both trusts are closed. The 2011 assignment appears to have been prepared by Ken Porter of Florida Default Law Group (to be signed by Bank of America employees; no witnesses shown and numerous document manufacturing markers exist.)**
**As a result of tracking this assignment to its affected mortgage, refer to the listing of this assignment under Florida Default Law Group's (_Wolfe & Associates_) heading for further explanation. See also _Section Six_, Case No. 3 for a complete synopsis.**

**(ORION EX. 14) CFN#2014070943, recorded by presentment on 05-20-2014**
**This "Corrective Assignment of Mortgage" appears to utilize MERS as a standalone (as nominee for no entity, using MERS's Flint, Michigan post office box address) Assignor, wherein Robin Mathews, who claims to be an Assistant Secretary of MERS, is assigning the mortgage (not the Note per se) to a closed First Franklin 2006-FF4 REMIC trust. It appears that Frank Albert Reder (FBN 154229) and Sujata J. Patel (FBN 82344) unsuccessfully attempted foreclosure in Case No. 2009 CA 9017 MF; the case was voluntarily dismissed. A copy of the Order to Vacate the Final Judgment in Foreclosure is attached to this document from the Court files as a reference.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(ORION EX. 15) CFN#2014075972, electronically filed on 05-30-2014**
**This Assignment of Mortgage purports to utilize MERS as a nominee for now-defunct Countrywide Home Loans, Inc. (using MERS's Flint, Michigan post office box address) as Assignor, in which Wileman claims he's an Assistant Secretary of MERS for a defunct lender, assigning the mortgage (ONLY) to E\*Trade Bank in care of SPS (using its Highlands Ranch, Colorado address).  This appears to be a MERS-originated HELOC Mortgage.**

*NOTE: Again, the Examiner notes that the signatures of M. E. Wileman and C. Lafferty were mechanically reproduced onto paper.  Take any two documents from this exhibit package and hold them one over the other until the signatures line up.  They are an obvious match, which leads the Examiner to believe that neither party witnessed the other signing the document/exhibit in question.*

*Saxon Mortgage Services (Dallas-Fort Worth, Texas)*

**(SAXON EX. 1) CFN#2012042190, electronically recorded on 03-26-2012**
**Signor: Daniel L. Charles as Vice President of MERS as nominee for DHI Mortgage Company LTD (alleged Saxon employee) claiming to assign the mortgage to a closed ACE Securities Corp. 2006-ASAP1 REMIC trust which later foreclosed on the property.**
**Notary: Melanie L. Harris (Texas Notary Commission expired April 8, 2014)**
**Witnesses: Albert Shirley, Ramanda Hostler (whose identity was researched and found to hold a supervisory level position with Saxon)**
**NOTE: See the listings under _Greenspoon Marder P.A._ and _Brock & Scott PLLC_**

**(SAXON EX. 2) CFN#2013192199, recorded by presentment on 12-10-2013**
**Signor: Aaron Saunders, claiming to be Vice President of Saxon Mortgage Services, Inc.**
**Notary: Nicole Roseline Turner (Texas Notary Commission Expires on 06-10-2017)**
**Witnesses: Kevin Moran, Carrie Tacinelli**
**It appears that this document was prepared by Morgan Stanley Home Loans (4718 Mercantile Drive, Fort Worth, TX 76137). The document purports to convey Saxon's interest in the mortgage ONLY to Deutsche Bank National Trust Company as Trustee for a Morgan Stanley Structured Trust I 2007-1 REMIC trust (in which the Closing Date for the trust was July 6, 2007; thus, the Mortgage (and certainly NOT the Note) did not make the Trust.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### *Security Connections, Inc. (Idaho Falls, Idaho)*

This firm has been identified by the Examiners in this Forensic Examination as a document manufacturing plant headquartered in Idaho Falls, Idaho (believed to have been headquartered there based on its lax notary laws). Due to lax restrictions on notarizations, this document manufacturing plant set up operations in Idaho and since its inception, at least one of its alleged "robosignors", Krystal Hall, has been deposed. Her deposition is included herein, incorporated by reference as **S. C. EX. 1**. Certain employees of this suspect manufacturing plant appear to misrepresent officers of specific trust REMIC entities or in the alternative, naming themselves as "officers" or "authorized signors" of specific entities, with no recorded proof of such authority.

Due to the fact that it is suspected that these employees have no immediate attorney supervision in the preparation of these recorded documents, it is likely that they constitute unauthorized practice of law.

Additionally, these recorded suspect documents may also contain issues involving the use of MERS; of false swearing (perjury) prosecutable under Florida RICO statutes, as well as 18 USC 1341 (mail fraud) and 18 USC 1343 (wire fraud).

Despite the fact that Lost Assignment Affidavits are apparently allowed to be recorded in Florida, the employees of Security Connections that are affixing their signatures to these documents (in one alleged capacity or another) are in reality only hourly paid employees; thus, these documents representation false and misrepresentative information (potentially perjury) which have been recorded in the real property records of Osceola County, Florida:

**(S.C. EX. 2) CFN#2012014399, recorded by presentment 02-01-2012**
**Security Connections, Inc. in Idaho Falls, Idaho, attempted transfer from Mortgage Electronic Registration Systems, Inc. (as Assignor without any nominee status whatsoever) into the REMIC shown in the current lawsuit filed with the Osceola County, Florida Clerk of the Circuit Court. A search of the REMIC produced a link, as shown below:**

### http://www.secinfo.com/dsvRa.z143.htm

**The closing date of this REMIC was on or about March 30, 2005, which means that when even the most recent assignment was effectuated, the REMIC had already wound down its business and most of the tranches within the Trust may have already been paid off, including the Borrower's loan in this instance. This document appears to have been recorded as part of the intent to foreclose on real property belonging to Andrew La Rosa. There is attached documentation from the case included with this Exhibit.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(S. C. EX. 3) CFN#2013027266, recorded by presentment on 02-19-2013**
**This document was prepared by an unknown employee of Security Connections, Inc.  The document purports to release a Mortgage executed by Patricia A. Grinnals, first recorded as CFN#2005254977.**
**Signer: Melanie Hanson, who claims to be Assistant Secretary for Title Services for Fannie Mae, as attorney-in-fact, acting as an agent for Seterus, Inc. (this Exhibit will appear under Seterus, Inc., verbatim), when the attached Limited Power of Attorney wasn't recorded until 6-1/2 months AFTER this document was filed for record; thus, it is facially deficient and constitutes, at best, part of an attempt to intimidate the Borrower into selling her property to avoid foreclosure, when the parties attempting it manufactured documents purporting to give themselves apparent standing to foreclose, probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.    The following is a step-by-step analysis of what happened in the series of recordations:**

> **(1) The Mortgage was executed in favor of GMC Lending & Mortgage Corp. on October 21, 2005.  It is noted as not being a MERS-originated Mortgage;**

> **(2) It appears that the Mortgage was prepared by and returned to JPMorgan Chase Custody Services (P. O. Box 8000, Monroe, LA 71211) after it was filed for record as CFN#2005254977 on 11-17-2005;**

> **(3) On January 22, 2013, Sanders executed a "Florida Assignment of Mortgage" which assigned the Mortgage (only) to Fannie Mae and caused it to be recorded in the real property records of Osceola County, Florida as CFN#2013015801 on 01-30-2013;**

> **(4) On February 12, 2013, Melanie Hanson, who claims to be an "Assistant Secretary for Title Services" (but it actually an employee of Security Connections, Inc. in Bonneville County, Idaho) executed a "Mortgage Release, Satisfaction, and Discharge" on behalf of Fannie Mae by Seterus, Inc. as its attorney-in-fact;**

> **(5) The Satisfaction of Mortgage was recorded on 02-19-2013; however, the Limited Power of Attorney to Seterus, Inc. (and NOT Security Connections, Inc.) was recorded on 08-01-2013 as CFN#2013120380, which the Examiner construes to mean that neither Seterus, Inc. or Security Connections, Inc. was not vested with any authority to release the Mortgage at the time said execution took place;**

> **(6) Due to the fact that the Assignment of Mortgage and Satisfaction of Mortgage took place within three weeks of each other (in close proximity), there is probable cause to believe that (given all of the circumstances) that the recorded documents were manufactured with the intent to deprive the homeowner of her personal property (funds) and potentially her property (in the forced sale thereof);**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(7) There is also reasonable belief that parties NOT entitled to the payment of funds may have unjustly enriched itself, relying on documents suspect for manufacture, containing false and misrepresentation, probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes, not to mention the unauthorized practice of law by individuals who were not authorized to execute Satisfactions of Mortgage without a power of attorney in force and due to apparent lack of attorney supervision therein; and

(8) As the result of this transaction, another Exhibit has been created for Security Connections, Inc. in addition to Seterus, Inc., who, acting in concert with Chase, appears to have been involved in the probable cause for RICO violations herein. Further, because the Limited Power of Attorney was electronically filed, there is also apparent issues involving violation of 18 USC 1343 (wire fraud).  The other suspect documents may have been presented as the result of mailings through the United States Mails, which may constitute violations of 18 USC 1341 (mail fraud).

(S. C. EX. 4) CFN#2013088878, recorded by presentment on 06-05-2013
This Lost Assignment Affidavit purports to claim that the signor is an authorized officer of Deutsche Bank National Trust Company, as Indenture Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2007-SL3, showing an address that actually belongs to Specialized Loan Servicing, LLC, when in fact, Deutsche Bank's operations are not in that location. The document claims that the "note and mortgage were subsequently sold and purportedly assigned to the Assignee (Deutsche) by Equity Resources, Inc., executed by Mario G. Lopez and Lourdes C. Lopez, husband and wife.  This Affidavit claims that the original document was "lost" or "misplaced", but does not indicate which specifically. When the word "purportedly assigned" is used, it is deemed non-specific by the examiner.
Signor: Hope Reger (alleged Security Connections employee who claims to be Assistant Vice President of Deutsche Bank NTC), by Specialized Loan Servicing, its attorney-in-fact.
Notary: Emmett Green
Witnesses: Kaylene Brown, Amy Pence (the signatures appear to have been affixed by teenagers)

There are multiple issues with this document, to wit:

(1) After a check of the real property records in Osceola County, Florida, it was discovered that the Limited Power of Attorneys issued to Specialized Loan Servicing, LLC:

(a.) does not appear to cover the employees of Security Connections who claim to be officers of Deutsche National Bank Trust Company; and

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(b.) do not cover ACE Securities Corp Home Equity Loan Trusts. The two POA's recorded in the land records wherein SLS has power of attorney cover specific Terwin trust REMICs.

(2) After a check of the real property records under the file of Mario G. Lopez, it was discovered that Security Connections employees (specifically Hope Reger as signor), attempted a Satisfaction of Mortgage.

(3) This is problematic for the chain of title because:

(a.) the signor is not a Deutsche Bank officer in reality;

(b.) the document was prepared by Security Connections, who caused the document to be recorded; and

(c.) the document (CFN#2013088879) makes statements that the signor could not possibly have personal knowledge of, which constitute hearsay.

(4) This scenario also poses issues of unauthorized practice of law.

(S.C. EX. 5) CFN#2013088879, filed by presentment on 06-05-2013
Signor: Hope Reger (alleged Security Connections employee) signing as Assistant Vice President for Deutsche Bank National Trust Company, as Indenture Trustee for Ace Securities Corp. Home Equity Loan Trust, Series 2007-SL3, by Specialized Loan Servicing, LLC, its attorney in fact; attempting to release the mortgage lien recorded as CFN#2006297079.
Notary: Emmett Green (Idaho Notary Commission Expires 05-31-2018)
Witnesses: Marlen Villegas, Amy Pence (believed to be Security Connection employees)

Issues: The recorded documents were likely NOT supervised by an attorney; therefore constituting unauthorized practice of law.  The Examiner believes that the Signor of the document had no personal knowledge that the loan was in fact released.  The note may still be existent and continuing to be traded in the securities markets, despite what was recorded in the real property records of Osceola County, Florida.  If proven, this issue could construe slander of title.  More particularly however, multiple actors being used to claim a lost assignment and then release a mortgage loan by the creation of manufactured documents could be construed to be probable cause for criminal RICO violations.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(S.C. EX. 6) CFN#2013139073, filed by presentment on 09-04-2013**
**Signor:** Melanie Hanson (alleged Security Connections employee) signing as Assistant Secretary of MERS, using a Flint, Michigan address that misrepresents the true identity of the lien holder (Fannie Mae).; making use of MERS as a standalone Assignor within the document, while showing who MERS claims to be a nominee for in the notarial execution.
**Notary:** Emmett Green (Idaho Notary Commission Expires 05-31-2018)
**Witnesses:** Emily Pottle, Tracy Jolley (also believed to be Security Connection employees)
**Issues:** Misrepresentation of the real party in interest; lack of recorded attorney-in-fact status or any other statement of authority in the real property records of Osceola County, FL. The Examiner believes that the Signor of the document had no personal knowledge that the loan was in fact released.

**(S.C. EX. 7) CFN#2013139073, filed by presentment on 09-04-2013**
**Signor:** Melanie Hanson (alleged Security Connections employee) signing as Assistant Secretary for "Title Services"; using an address that misrepresents the true identity of the lien holder, as a common address search revealed the Beaverton, Oregon address used in this Release of Mortgage belongs to Seterus, Inc. (a servicer with predecessor histories of document manufacturing and robosigning; fka IBM, Wilshire Credit Corporation).
**Notary:** Emmett Green (Idaho Notary Commission Expires 05-31-2018)
**Witnesses:** Emily Pottle, Tracy Jolley (also believed to be Security Connection employees)
**Issues:** Misrepresentation of the real party in interest; lack of recorded attorney-in-fact status or any other statement of authority in the real property records of Osceola County, FL. The Examiner believes that the Signor of the document had no personal knowledge that the loan was in fact released.

**NOTE:** The foregoing two notes may still be existent and continuing to be traded in the securities markets, despite what was recorded in the real property records of Osceola County, Florida. If proven, this issue could construe slander of title. More particularly however, multiple actors being used to assign and then release mortgage loans by the creation of manufactured documents could be construed to be probable cause for criminal RICO violations.

**EXAMINER'S NOTES:** The next four (4) Mortgage Release, Satisfaction, and Discharge documents were all prepared by the Signor, Pamela Stoddard, who claims to be an Assistant Secretary for "Flagstar Bank, FSB, by Security Connections, Inc., its Agent and Attorney in Fact". In all instances noted below, unless noted differently, the notaries utilized appear to be company-sponsored notaries whose commissions both expire on the same date (05-31-2018).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Flagstar Bank, FSB was recently fined $37.5-million dollars for servicer abuses inter alia. Upon a check of the real property records of Osceola County, Florida for a Limited Power of Attorney naming Security Connections, Inc. as the Grantee of a Limited Power of Attorney (and alternatively Flagstar Bank as a Grantor of the same) no such documents were noted as being recorded at all.  It is also highly likely that:

> (1) the Preparer of the document accessed this information from hearsay, third-party, computer-generated data from a software platform and thus had no actual personal knowledge of the information she was attesting to;

> (2) the issues involving the number of signatures and/or witnesses required on a document to be recorded in Florida are not represented here;

> (3) the document was prepared with no attorney supervision, which would thus constitute the unauthorized practice of law; and

> (4) the number of actors involved in the alleged execution and filing of these documents, which contain false swearing and misrepresentative information, could be construed as criminal violations of the Florida RICO statutes for perjury.

(S.C. EX. 8) CFN#2013149369, electronically recorded on 09-19-2013
Signor: Pamela Stoddard (believed to be a Security Connections employee)
Notary: Bonnie Lovell (Idaho Notary Commission Expires on 05-31-2018)
Witnesses: NONE
Issues: This release potentially affects the condition of title created by CFN#2006170659, executed on July 5, 2006 by Jose M. Burgos Miranda, a single person.

(S.C. EX. 9) CFN#2013154368, electronically recorded on 09-27-2013
Signor: Pamela Stoddard (believed to be a Security Connections employee)
Notary: Emmett Green (Idaho Notary Commission Expires on 05-31-2018)
Witnesses: NONE
Issues: This release potentially affects the condition of title created by CFN#2007040358, executed on February 27, 2007 by Samuel L. Davis and Lenora S. Davis, husband and wife.

(S.C. EX. 10) CFN#2013169423, electronically recorded on 10-28-2013
Signor: Pamela Stoddard (believed to be a Security Connections employee)
Notary: Emmett Green (Idaho Notary Commission Expires on 05-31-2018)
Witnesses: NONE

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Issues: This release potentially affects the condition of title created by CFN#2007171902, executed on September 19, 2007 by Nathaniel J. Smith and Julie L. Smith, husband and wife.


(S.C. EX. 11) CFN#2014047980, electronically recorded on 04-07-2014
Signor: Pamela Stoddard (believed to be a Security Connections employee)
Notary: Emmett Green (Idaho Notary Commission Expires on 05-31-2018)
Witnesses: NONE
Issues: This release potentially affects the condition of title created by CFN#2007117607, executed on June 21, 2007 by Gilsiri Rivera, an unmarried woman.


(S.C. EX. 12) CFN#2014067521, filed by presentment on 05-13-2014
Signor: Debra Huskinson (alleged Security Connections employee) signing as Assistant Vice President for Deutsche Bank National Trust Company, as Indenture Trustee for Ace Securities Corp. Home Equity Loan Trust, Series 2007-SL3, by Specialized Loan Servicing, LLC, its attorney in fact; attempting to claim on behalf of Deutsche Bank that the Assignment was lost, as Part 1 of 2 of a two-part series of public filings with the intent to release the mortgage lien recorded as CFN#20070212622.
Notary: Emmett Green (Idaho Notary Commission Expires 05-31-2018)
Witnesses: NONE (two may be required under Florida Law)
Issues: The recorded documents were likely NOT supervised by an attorney therefore constituting unauthorized practice of law.  The Examiner believes that the Signor of the document had no personal knowledge that the assignment was lost as she is actually employed by a third-party document manufacturer; thus, the supporting documents in the lien release were false and misrepresented.  The note may still be existent and continuing to be traded in the securities markets, despite what was recorded in the real property records of Osceola County, Florida.  If proven, this issue could construe slander of title.  More particularly however, multiple actors being used to assign and then release mortgage loans by the creation of manufactured documents could be construed to be probable cause for criminal RICO violations.


(S.C. EX. 13) CFN#2014067522, filed by presentment on 05-13-2014
Signor: Debra Huskinson (alleged Security Connections employee) signing as Assistant Vice President for Deutsche Bank National Trust Company, as Indenture Trustee for Ace Securities Corp. Home Equity Loan Trust, Series 2007-SL3, by Specialized Loan Servicing, LLC, its attorney in fact; attempting to release the mortgage lien recorded as CFN#20070212622.
Notary: Emmett Green (Idaho Notary Commission Expires 05-31-2018)
Witnesses: NONE (two may be required under Florida Law)

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Issues: The recorded documents were likely NOT to be supervised by an attorney; therefore constituting unauthorized practice of law.  The Examiner believes that the Signor of the document had no personal knowledge that the loan was in fact released.  The note may still be existent and continuing to be traded in the securities markets, despite what was recorded in the real property records of Osceola County, Florida.   If proven, this issue could construe slander of title.   More particularly however, multiple actors being used to assign and then release mortgage loans by the creation of manufactured documents could be construed to be probable cause for criminal RICO violations.**

**(S.C. EX. 14) CFN#2014155716, electronically recorded on 10-21-2014**
**Document Prepared and Signed by: Jared Pett, who claims to be an Assistant Vice President of the Bank of New York Mellon as Trustee for a CWALT, Inc. 2006-OA10 REMIC trust, signed as attorney-in-fact by Specialized Loan Servicing, LLC ("SLS") when in fact there is no power of attorney for employees from Security Connections to act as SLS officers.**
**Notary: Brandy Johnson (Idaho Notary Commission expires 09-15-2020); no witnesses.**
**Issues: The recorded documents were likely NOT to be supervised by an attorney; therefore constituting unauthorized practice of law.  The Examiner believes that the Signor of the document had no personal knowledge that the loan was in fact released.  The note may still be existent and continuing to be traded in the securities markets, despite what was recorded in the real property records of Osceola County, Florida.**

**EXAMINER'S NOTES: Report Exhibit 30 contains a MERS Signing Agreement specific to Security Connections, as granted by Flagstar Bank, FSB.    It is interesting to note that Flagstar Bank is the alleged "MERS member" that gives its vendor the authority (with MERS and MERSCORP's "okay") to sign as an officer of MERS.   There is no power of attorney and the vendor (Security Connections) as well as Flagstar, has to indemnify MERS from both of their errors and mistakes they make using MERS's name on documents.  These are NOT Limited Powers of Attorney and it is implied here, from conversations that one of the Examiners on this forensic examination has had with one of the supervisors at Security Connections, that most of the signers that work for the company are just out of high school and have no knowledge of what authority they have to sign anything. When asked, the supervisor insisted that MERS was a valid lender.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

## *Select Portfolio Servicing, Inc. (Salt Lake City, Utah)*

Select Portfolio Servicing, Inc. (hereinafter "SPS") is another servicer who appears to have "long arms" when it comes to alleged Limited Powers of Attorney or in the alternative, uses LPOA's in its claims of foreclosure when in fact, such LPOA's may in fact, NOT exist.  Thus, the Examiner believes that in every foreclosure instance involving this entity, if attorney in fact status is alleged, then this must be verified.

**(SPS EX. 1) CFN#2013004439, recorded by presentment on 01-09-2013**
**SPS signers used MERS as nominee for defunct (2009) Accredited Home Lenders, Inc. to assign mortgage to a closed 2005-3 REMIC trust; prepared by someone other than signers.**
**Prepared by: Bill Koch (alleged employee of SPS) under the direction of Marinosci Law Group for what appears to be an intent to effectuate a foreclosure complaint.**
**Signor: Greg Ott, who claims to be a Vice President of MERS, as nominee for the defunct 2009 corporation; using SPS's Salt Lake City address to misrepresent the true address of the defunct lender**
**Notary: Kyle J. Sterner (Utah Notary Commission No. 659205; still active)**
**Witnesses: Luisa Alfonso, Ana Novakovich**
**Issues: Robosigned (scribbled) signatures; rubber stamps; direction of Florida law firm; prepared by a third-party who may have relied on hearsay third-party information in the preparation of the document.**

## *Selene Finance LP*

**(SELENE EX. 1) CFN#2013000046, electronically filed on 01-02-2013**
**This entity (apparently manufacturing a document to benefit a third-party debt collector) appears to have attempted assignment using MERS as nominee for Decision One Mortgage Company, LLC (not as attorney-in-fact) to assign a mortgage to Consumer Solutions, LLC. Consumer Solutions however, filed a Notice of Lis Pendens (Case No. 2009-CA-0845; CFN#2009020508).  To add more confusion to the scenario, Selene Finance LP also caused an assignment to be prepared and filed as CFN#2012135630, which attempted to convey the mortgage from MERS as nominee for Decision One to its own closed RMOF REO 2011-1 Trust.  How then could Selene turn around and reconvey a "trust" interest outside of the PSA to Consumer Solutions, who filed suit in 2009 against Camilo and Isabel Valdera, when in fact, it didn't allegedly own the note until 2013?  The attempted foreclosure proceeding was dismissed; however, the intent was to record a series of manufactured assignments to prove an interest to be able to foreclose.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

*Seterus, Inc. (Beaverton, Oregon)*

**(SETERUS EX. 1) CFN#2013120380, electronically recorded on 08-01-2013**
**This document was prepared by an unknown employee of the Federal National Mortgage
Association.   The document purports to grant a Limited Power of Attorney ("LPOA") to
Seterus, Inc. (its "agent's" attorney-in-fact status is questionable).  This document was used
to support a release a Mortgage executed by Patricia A. Grinnals, first recorded as
CFN#2005254977.**
**Signer: Barbara Cushman, who claims to be Assistant Vice President and Shanicka Single-
ton, who claims to be an Assistant Secretary for Fannie Mae, as attorney-in-fact, acting as
an agent for Seterus, Inc., when the attached Limited Power of Attorney wasn't recorded
until 6-1/2 months AFTER this document was filed for record; thus, it is facially deficient
and constitutes, at best, part of an attempt to intimidate the Borrower into selling her
property to avoid foreclosure, when the parties attempting it manufactured documents
purporting to give themselves apparent standing to foreclose, probable cause for violation
of Florida Criminal Code § 817.535 and Florida RICO statutes.**

**The following is a step-by-step analysis of what happened in the series of recordations:**

> **(1) The Mortgage was executed in favor of GMC Lending & Mortgage Corp.
> on October 21, 2005.  It is noted as not being a MERS-originated Mortgage;**

> **(2) It appears that the Mortgage was prepared by and returned to JPMorgan
> Chase Custody Services (P. O. Box 8000, Monroe, LA 71211) after it was
> filed for record as CFN#2005254977 on 11-17-2005;**

> **(3) On January 22, 2013, Sanders executed a "Florida Assignment of Mortgage"
> which assigned the Mortgage (only) to Fannie Mae and caused it to be recorded
> in the real property records of Osceola County, Florida as CFN#2013015801 on
> 01-30-2013;**

> **(4) On February 12, 2013, Melanie Hanson, who claims to be an "Assistant
> Secretary for Title Services" (but it actually an employee of Security Connections,
> Inc. in Bonneville County, Idaho) executed a "Mortgage Release, Satisfaction, and
> Discharge" on behalf of Fannie Mae by Seterus, Inc. as its attorney-in-fact;**

> **(5) The Satisfaction of Mortgage was recorded on 02-19-2013; however, the
> Limited Power of Attorney to Seterus, Inc. (and NOT Security Connections, Inc.)
> was recorded on 08-01-2013 as CFN#2013120380, which the Examiner construes
> to mean that neither Seterus, Inc. or Security Connections, Inc. was not vested
> with any authority to release the Mortgage at the time said execution took place;**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(6) Due to the fact that the Assignment of Mortgage and Satisfaction of Mortgage took place within three weeks of each other (in close proximity), there is probable cause to believe that (given all of the circumstances) that the recorded documents were manufactured with the intent to deprive the homeowner of her personal property (funds) and potentially her property (in the forced sale thereof);**

**(7) There is also reasonable belief that parties NOT entitled to the payment of funds may have unjustly enriched itself, relying on documents suspect for manufacture, containing false and misrepresentation, probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes, not to mention the unauthorized practice of law by individuals who were not authorized  to execute Satisfactions of Mortgage without a power of attorney in force and due to apparent lack of attorney supervision therein; and**

**(8) As the result of this transaction, another Exhibit has been created for Security Connections, Inc. in addition to Seterus, Inc., who, acting in concert with Chase, appears to have been involved in the probable cause for RICO violations herein. Further, because the Limited Power of Attorney was electronically filed, there is also apparent issues involving violation of 18 USC 1343 (wire fraud).  The other suspect documents may have been presented as the result of mailings through the United States Mails, which may constitute violations of 18 USC 1341 (mail fraud).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### *Suntrust Bank (Atlanta, Georgia)*

**(SUNTRUST EX. 1) CFN#2014067277, recorded by presentment on 05-13-2014**
**Signer:** Sandra Lancaster, who claims to be a Vice President for MERS as nominee for Suntrust Mortgage, Inc. (using MERS's Metro Detective Agency address in Danville, Illinois instead of Suntrust's Richmond, Virginia address) only assigning the Mortgage.
**Notary:** Janet M. Elleby (Virginia Notary Commission No. 7031622; still active)
**Witnesses:** None listed (two may be required)
**Issues:** There is no reason why Suntrust Mortgage, Inc. could not have conveyed the Mortgage directly to Suntrust Bank, other than the potential unofficial use of MERS in the original mortgage (Eric Malee).  It is likely since MERS is involved that securitization of the Note was attempted; thus, the real party in interest is not present here.
**NOTE:** Suntrust Mortgage, Inc. (acting as attorney-in-fact for Bank of America, N.A.) appears to have filed a foreclosure Complaint against Eric Malee as Case No. 2014 CA 3270 MF (unrelated to this property).

### *Suntrust Mortgage, Inc. (Richmond, Virginia)*

**(SUNTRUST EX. 2) CFN#2011113027, recorded by presentment on 08-16-2011**
**Signer:** Raechel Dixon (claiming to be an Assistant Vice President of Suntrust Mortgage, Inc., a Virginia corporation), assigning what appears to be only the Mortgage, to Litton Loan Servicing, LP of Houston Texas.  This would be construed to mean that only the Servicers changed hands and not the Note (whereabouts unknown).  The following document reveals more chicanery with a self-assignment of the Mortgage to Owen by Owen's own employees. At best, this may constitute probable cause for violation of Florida RICO statutes; and when relied upon in a Complaint, as probable cause for violation of Florida Criminal Code § 817.535.
**Notary:** Chiquita L. Cross (Virginia Notary Commission #7250169; expired on 11-20-2013)
**Issues:** The use of rubber stamps and scribbled signatures are markers of document manufacturing.

**(SUNTRUST EX. 3 ) CFN#2014050271, recorded by presentment on 04-10-2014**
**Signer:** Leticia N. Arias, Contract Manager (who misrepresents who she is signing for in what appears to be a self-assignment from Litton to Ocwen).  Arias is an Ocwen employee.
**Notary:** Jason R. Berkeley (Florida Notary Commission No. FF 063528; still active)
**Witnesses:** None
Latrice Coleman of Suntrust Mortgage, Inc. prepared this document, which should have been prepared by a Litton employee before Ocwen subsumed Litton Loan Servicing, LP.
**Issues:** There is also no apparent indication that the Note was transferred to Ocwen as part of this Assignment.  While the two foregoing documents may appear to be just a formality, there is no evidence of the Note being transferred.  Both of these entities are servicers.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

### *TD Service Company (Orange County, California)*

This entity operates out of Orange County, California (4000 W Metropolitan Dr., Suite 400, Orange, CA 92868).  For all intents and purposes, this entity is a document manufacturing plant. On its website (http://www.tdsf.com) this entity is claimed to be a primary subsidiary of the parent corporation, which is TD Service Financial Corporation.  This corporation's brochure is made a part of this Report as Exhibit by reference herein.  Research into this company further shows a connection between TD Service Company and Security Connections, Inc. ("SCI"), whose information is shown above.  Parts of SCI's files are included as Exhibits by reference herein, for further examination.

It also appears that T. D. Service Company also has a foreclosure division, wherein it appears to act as a Trustee in charge of foreclosure sales in Deed of Trust States.  In mortgage States, it appears that this company works in consort with the foreclosure mill law firms.  This may cause potential issues with non-lawyers telling lawyers what to do; giving the lawyers legal advice in foreclosure-related cases, which would constitute the unauthorized practice of law. Because of the admissions that this company scans documents, archives documents and operates a third-party software platform, it is highly likely that third-party "hearsay" communications, both written and verbal, may be transmitted without source attribution.

**In the following instances, T. D. Service Company appears to claim that it has been given a Limited Power of Attorney ("LPOA") by Deutsche Bank National Trust Company in some capacity connected with securitized trusts.  However, after a search in the land records, only one (1) limited power of attorney was located in the real property records of Osceola County, Florida, naming Deutsche Bank National Trust Company as a Grantor of any authority (CFN#2012141986).  This document is being attached as (TD SVC EX. 1) and is incorporated by reference herein.**

**In this LPOA, in order for authority to be effective and applicable to this document, Countrywide Home Loans Servicing, LP (which by then was subsumed by Bank of America, N.A.) had to be the Servicer of the named trusts.**

**After searching each trust entity within the SECINFO.com site, none of the following trusts even contained the word "Countrywide" anywhere in their 424(b)(5) prospectus documentation. Thus, the claimed attorney in fact status of T. D. Service Company appears non-existent.**

**This leads the Examiner to believe that there is probable cause to suspect criminal violations of Florida's RICO statutes, despite the fact that what was recorded was a Satisfaction of Mortgage.  This act may also slander title if the facts contained within the document were shown to be untrue, thus rendering it unmarketable in violation of Florida statutes.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

However, that being stated, there are also issues "under Penalty of Perjury" that false statements of perjury were committed in the filing by presentment (18 USC 1341, mail fraud) of these documents and causing them to be recorded for the purpose of claiming that there is no longer an enforced loan.   However, that being stated, it is unknown as to whether the parties executing this document, relying on the information in their database, were not aware of the actual facts therein.   There are also suspect issues for unauthorized practice of law if these documents were not prepared under the supervision of counsel.


(TD SVC EX. 2) CFN#2012194385, recorded by presentment on 12-28-2012
Signor: Connie Almaguer-Carrillo, claiming to be an Assistant Secretary of Bank of New York Mellon F/K/A Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. (F/K/A The Chase Manhattan Bank), as Trustee for the Holders of the GRMT Mortgage Pass-Through Certificates, Series 2001-1 by Select Portfolio Servicing, Inc. F/K/A Fairbanks Capital Corp. as Attorney-in-Fact
Notary: E. Chavez (California Notary Commission No. 1960890; still active)
Witnesses: N. Alcantara, J. Bolton

Once one gets past all of the gobbledygook phrasing shown above, the focus centers around the trust vehicle ("GRMT") known on the U. S. Securities and Exchange Commission as "<u>G</u>e <u>R</u>eremic <u>M</u>ortgage <u>T</u>rust Cert Series 2001-1" ("GRMT" is underlined for definition), which can be found at the following link (<u>http://www.secinfo.com/drjtj.31c.htm#8qw</u>).

The "F/K/A" (formerly known as) additions were inserted to "throw the reader off" the actual scenario of the viability of such an Assignment being recorded over 11 years after the fact.   In fact, the gobbledygook is listed multiple times throughout the Affidavit to "wear the reader out" so by the time the reader gets through the document, they'll believe anything they read.   This would go for the judges readings this too.

Putting the scenario in reverse first revealed only eight (8) recorded Limited Power of Attorney ("LPOA") documents in the real property records of Osceola County, Florida, dating as early as May 31, 2001 and none of these LPOAs have anything to do with the foregoing REMIC trust where Fairbanks Capital Corp. is concerned.

There are 57 known recorded LPOAs naming Select Portfolio Servicing, Inc. as the Grantee of an LPOA.   Since Bank of New York Mellon is the featured heading in this instance, further examination revealed only one LPOA recorded BEFORE the date of this Affidavit (2011) and it has only to do with Countrywide Alternative Loan Trusts and nothing to do with GRMT.   All the rest of the LPOAs were recorded in 2014, well AFTER the claimed Attorney-in-Fact status shown on this document, executed on December 19, 2012.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is interesting to note that the last LPOA recorded on October 14, 2014 stated that the LPOA covered the trusts listed on "Exhibit A", yet there was no Exhibit A attached to the document (CFN#2014152504).

This would be construed to mean that the Lost Assignment Affidavit, prepared by TD Service Company, in concert with apparent employees of its own Orange County, California office, manufactured this Lost Assignment Affidavit in 2012 alleging that the Assignment took place (unknown as to the actual date) using a claimed power of attorney status that in fact did not exist when it was drafted, virtually negates any claimed authority whatsoever. The Closing Date of this trust was November 30, 2001.  It is laughable that 11 years later, someone would attempt to assert such a claim, affecting the property of Stephen J. and Julie A. Carpenter of St. Cloud, Florida.  To say the least, the Carpenter's chain of title has certainly been affected by this recordation.   Therefore, the Satisfaction of Mortgage that follows in numerical succession creates further issues within the chain of title.

The scribbled signatures on both documents are indicative of robosigning and the rubber stamps applied within the documents are indicative of document manufacturing, in addition to the bold-faced assertions.  The Examiner herein believes that these employees were not supervised by an attorney; thus, issues with unauthorized practice of law in connection with potential RICO claims.

(TD SVC EX. 3) CFN#2012194386, recorded by presentment on 12-28-2012
Signor: Connie Almaguer-Carrillo, claiming to be an Assistant Secretary of Bank of New York Mellon F/K/A Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. (F/K/A The Chase Manhattan Bank), as Trustee for the Holders of the GRMT Mortgage Pass-Through Certificates, Series 2001-1 by Select Portfolio Servicing, Inc. F/K/A Fairbanks Capital Corp. as Attorney-in-Fact
Notary: E. Chavez (California Notary Commission No. 1960890; still active)
Witnesses: N. Alcantara, J. Bolton

The signer attempts to claim that she has a been vested with authority (which is certainly questionable given the previous review) to release the Mortgage described in TD SVC EX. 2 by the REMIC trust, which has no proof it ever received the Mortgage and Note in the first place.  The blank space within the template form being used here and the rubber stamps being used to date this document are markers of document manufacturing and the scribbled signatures highly likely demonstrate that: (1) the signer has no knowledge of the contents she is attesting to in her questionable "authorized capacity; (2) that it is highly likely the California Notary did not record this transaction in her notary journal; and (3) that all of this transaction was acknowledged under penalty of perjury under California law, which makes this document also suspect for violations of Florida RICO statutes.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The following documents all contain certain commonalities, which are:

(1) There were signed by Greg Schleppy, who claims to be Senior Vice President of the Grantor within each named trust series.  It is highly likely that he is an employee of T. D. Service Company;

(2) Schleppy claims he has a power of attorney to execute the document; however, none of the "attorney-in-fact" claims made by Schleppy appear to be factual and there are no recorded documents in favor of Carrington Mortgage Services, LLC in Osecola County, Florida that would give a subagent contractual rights to claim an LPOA authority actually exists;

(3) The documents were all acknowledged by Leticia Macias (California Notary Commission #1974419), who certified under Penalty of Perjury under California Law that the statements contained in the notarial execution were true and correct, including the authorized capacity of the signor;

(4) One of the witnesses to each document was Sandra Margaria; the alternate wit nesses varied with each document (and are separately noted);

(5) It is also highly likely that the stated trust never actually received effective transfer of the borrower's loan, which could suffer continued trading on Wall Street despite the filed Satisfaction of Mortgage;

(6) The information contained on the signed document was prepared by someone that utilized the third-party platform and obtained information unknown to the signor;

(7) The scribbled signatures affixed to the document are all markers of robosiging; and

(8) the template formatting of the document is a noted marker of document manu-facturing and appears to contain false statements acknowledged by the notary.

(TD SVC EX. 4) CFN#2013091883, recorded by presentment on 06-11-2013
Alternate Witness: Valerie Ovalle
Trust Entity: Carrington Mortgage Loan Trust , Series 2005-NC2

(TD SVC EX. 5) CFN#2013123323, recorded by presentment on 08-06-2013
Alternate Witness: Maria Reyes
Trust Entity: New Century Home Equity Loan Trust 2006-2

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(TD SVC EX. 6) CFN#2014005266, recorded by presentment on 01-13-2014**
**Alternate Witness: Cristina Hernandez**
**Trust Entity: New Century Home Equity Loan Trust 2005-3**
**Issues: It is also highly likely that the information used to develop corresponding Assign-**
**ments of Mortgage in each case also relied on document manufacturing to suit the purpose**
**of convenience, relying solely on hearsay information in the development of the document.**
**The three documents here all occurred within a 5-year period, which quality T. D. Service**
**Company for consideration of Florida criminal RICO violations.**

**Finally, the Examiner reviews the following exhibit, which appears to be a newer, updated**
**version of manufactured documents produced by this company, wherein both signatures**
**are electronically manufactured; thus, neither party has any idea they were involved in the**
**transaction to release a Mortgage executed by Ti Tang and Melissa Tang.  See *Section Six*,**
**Case No. 52 in Part 2 of this Report for a complete analysis of the following document:**

**(TD SVC EX. 7) CFN#2014029168, electronically recorded on 02-27-2014**
**Signer: Sandra M. Armenta, who claims to be an Assistant Secretary of U. S. Bank, N.A. as**
**Trustee, on behalf of certificate holders of a JPMorgan Alternative Loan Trust series**
**REMIC trust (2007-S1), whose Closing Date was May 30, 2007.**
**Notary: "M. Tulio", who claims under penalty of perjury under California law that the**
**signer "personally appeared" before her; or in the alternative, "who proved to me on the**
**basis of satisfactory evidence to be the person whose name is subscribed to the within in-**
**strument" (with no witnesses; California Notary Commission #1947006; active until 08-16-**
**2015).  How is it possible, if all of this was done electronically, that: (1) the person "person-**
**ally appeared" before the notary; or (2) "proved to be that person" that they are the person**
**who signed the document when neither party was present at signing? Further, there is a**
**specific notation in the Pooling and Servicing Agreement ("PSA"), when utilizing the**
**search term "closing" that states:**

### THE SPONSOR AND SELLER

J.P. Morgan Mortgage Acquisition Corp., a Delaware corporation, has previously acquired the
mortgage loans from the originators.  On the closing date, J.P. Morgan Mortgage Acquisition
Corp., as seller, will sell all of its interest in the mortgage loans to the depositor.

### THE DEPOSITOR

On the closing date, J.P. Morgan Acceptance Corporation I, a Delaware corporation, will assign
all of its interest in the mortgage loans to the trustee for the benefit of certificateholders.

**There are no recorded Assignments in the real property records of Osceola County, Florida**
**to reflect any of the foregoing regulations, which were attested to as being factual under the**
**Sarbanes-Oxley Act of 2002 (which provides for both civil and criminal penalties for viola-**
**tions thereof).   There is also probable cause for violation of Florida RICO statutes here.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### *Wells Fargo Bank, N.A. Default Assignment Team (Dakota County, Minnesota)*

### *Discussion Regarding Wells Fargo Home Mortgage Default Assignment Team*

Despite the fact that this entity may be out of subpoena range, there is probable cause to believe that ALL documents generated by the signing entities in the following document are specifically manufactured with the intent to defraud homeowners or their properties.  A 150-page "Foreclosure Attorney Manual" produced and amended as of 2012, attached hereto as **WF EX. 1** purports to order attorneys working for Wells Fargo Bank, N.A. (or any other entity under its directive) to email the Default Mortgage Team if they are missing documents.

According to the manual, there are specific instructions as to HOW TO manufacture assignments, either by counsel or by the "team" in Dakota County, Minnesota for the purposes of foreclosing on real property.  In other words, the document encourages the parties to simply "make stuff up", whatever is needed to foreclose.   This manual has now come under fire from at least one New York bankruptcy court judge in addition to further scrutiny by New York State regulators.  Foreclosure defense attorneys are also bringing this manual up as evidence in representing the illicit manufacture of these documents, attempting to get their respective courts to approve 30(b)(6) depositions of anyone at Wells Fargo Bank familiar with this manual.

### *Wells Fargo Bank, N.A. Assignment and Document Prep Team (Charlotte, North Carolina)*

There is another apparent Wells Fargo Bank document manufacturing plant in Charlotte, North Carolina, as explained by an article noted as, *"Wells Fargo Insiders Detail Foreclosure Fraud Practices"*, which specifically states (emphasis supplied in **bold-faced type**, attached hereto as **WF EX. 2**, incorporated herein by reference):

"**Unqualified employees** with salaries ranging from $30,000 to $50,000 are given titles like **"Vice President of Loan Documentation"** so they can sign foreclosure documents. Actual supervisors institute quotas on employees, forcing them to sign a certain number of foreclosure files each day — sometimes telling them they can't eat breakfast or take lunch until they're done.

**Documents required for homeowners to avoid foreclosure were ignored**, left sitting on an unattended fax machine."

### *The Use of eSignatures in Preparing "Default Team" Assignments*

Another serious issue with Wells Fargo's alleged document manufacturing practices is the use of "eSignatures" on documents.  Part of the problem with this is the conflict between what is stated on the Assignment of Mortgage and the eSign laws adopted into the statutes which allow for this type of document signature to be affixed in the stead of a real signature.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

It appears that the conflict in the language of the actual Assignment (as a standalone exhibit) could portend itself as suspect because the notarial execution stipulates certain language that creates the conflict. The focus on the notarial execution makes no provision for the exclusion of either the signor nor the notary's acknowledgment.

Specifically, the paragraph states "personally appeared" the signor; it makes no distinction whether the signor appeared electronically by her signature.  Further contradictory language involves the "witness my hand and seal" when in fact, by eSignature of the notary public, there is no actual "witness", thus, the acknowledgment is determined as false and misrepresentative.  The use of eSignatures, especially when the document teams in these scenarios are discussed, appears to be an open invitation to commit document manufacturing abuse.

Despite some jurisdictions accepting such documents, there are not only suspect issues present involving multiple actors involved in the manufacture of these documents (RICO), but also as to the signors' lack of participation and actual knowledge in the REMIC assignment failure due to PSA violations.  Here is an example of a signing eSignature of a person believed to be employed by Wells Fargo's Default Assignment Team in Dakota County, Minnesota:

TASASHA D. F. JEMISON, Assistant Secretary

Below is a sample of a signor for an alleged employee of Wells Fargo's Default Assignment Team in Dakota County, Minnesota:

Witness my hand and official seal.

STEPHANIE THERESE TAUTGES
Commission #: 31045531
My Commission Expires: 01/31/2016

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The eSignatures of the above signor and notary are visible and easy to spot because they rest above the signature line and appear pixelated; these signatures will appear "standard" on every eSigned document produced by the Wells Fargo Default Assignment Team in Dakota County, Minnesota. Thus, on eSigned documents:

> (1) How then could the signors of this document know as fact the information they attested to and acknowledged when neither was present at signing?

> (2) How could these signors have knowledge of the actual transfer of the loan if the original entity was already defunct and they were only present by eSignature?

There are similarities in document manufacturing procedures between Wells Fargo and Ocwen, in that the employees are also asked to "switch duties".  In this instance, to apparently avoid obvious "pattern signing", the notaries will become signors of the document and be given an official title when in fact, they are simply cheaply-paid labor used to affix a signature to a document and nothing more.  Notice the foregoing Notary (Tautges)'s real signing signature as opposed to her "eSignature"?:



In contrast, when Tautges (the Notary) is asked to "switch up" and sign on behalf of defunct New Century Mortgage Corporation, by Wells Fargo Bank, N.A. as their attorney-in-fact, as "Vice President of Loan Documentation", Tautges's signing signature is markedly different from her eNotary signature.  Tautges's title also appears to have been "manufactured" in conjunction with the **USB Exhibit** previously noted as declaring these signing titles to be purely perfunctory.  It is believed that upon further legal scrutiny, the real truth about these document manufacturing operations will reveal that virtually every land record filed document manufactured by either Wells Fargo "team" will contain numerous falsehoods and misrepresentations designed to deceive the viewer of the document, including a court justice, when this document is relied upon in the taking of a property owner's home.  As is implied in most document manufacturing scenarios "left hand does not know what the right hand is doing".

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Further examination of the noted documents in this report as recorded by Wells Fargo Bank, N.A.'s employees, especially involving eSignatures, which the bank's attorneys in Court would clearly state are allowable under Florida law, would clearly demonstrate manufacturing issues, noted by the Examination Team as follows:

> (1) The eSignature of the notary acknowledgment (shown above) states "Witness my hand and official seal", subscribed and sworn, when the notary was not present and in apparent control of either her signature or application of her seal. This "control" appears to have been vested with supervisory personnel of Wells Fargo Bank's "Default Assignment Team", the same team that is alleged to be responsible for applications discussed in the Wells Fargo Foreclosure Attorney Manual discussed previously;

> (2) With respect to Paragraph 1 (above), neither signor is aware of the other's physical presence, let alone when someone else affixed their eSignature to a document;

> (3) That neither signor possesses personal knowledge of the contents of the document they are purportedly attesting and acknowledging as fact;

> (4) That both are employees of Wells Fargo Bank, N.A. and at all times and places, were under supervisory control of said bank, who is responsible for their actions;

> (5) That these signors (in reality) possessed no authority whatsoever to sign as officers of MERS when they were not "officers" of the bank that represented the parties involved in the actual assignment, in violation of MERSCORP's own policies;

> (6) That had they known and understood the issues involving the PSA violations, they would have certainly asked whether what they were signing was in fact legal; or in the alternative, would not have signed the document in the first place; and

> (7) That the documents are being manufactured with the intent to defraud the property owner and that it was only manufactured when the intent was to convey it into a trust pool when in fact the conveying parties knew (or never knew) that the loan was non-performing.

More than likely, the signors and notaries involved in the manufacturing processes at the Wells Fargo Default Assignment Team location in Dakota County, Minnesota are $10-an-hour employees who work under the direction and supervisory control of the bank, doing only what they are told, even though the notaries are operating "in a capacity to authenticate signatures and capacities as officers of the Secretary of State of Minnesota".

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

*Wells Fargo Default Assignment Plant Notary Issues*

There are further suspect issues with the acknowledgment by the notary public to suspect documents in that in virtually every State, the notary must affix her signature as it appears on their notary commission application.  Such is the case in Florida; and also where the Default Assignment teams operate, in Minnesota and North Carolina.  Here are some blatant examples of eSignature document manufacturing abuse:

**CFN#2014058126**

**The notary did NOT sign as their commission dictated.  In the following example, a Minnesota notary, who also doubles as a MERS Assistant Secretary, submitted her electronic signature, which did NOT match her notary seal:**

Witness my hand and official seal.

KELLEY CHRISTINE BUTIKOFER
Commission #: 31048878
My Commission Expires: 01/31/2017



**One notary was acknowledging another notary (acting as a signor).   Neither one was present to physically witness anything because both signatures were eSignatures, a common practice and marker of document manufacturing.**

**CFN#2013000706**

**Minnesota Notary April Emily Jones, who acknowledged the signature of Kelly Christine Butikofer, did not provide an eSignature that matched her official notary seal either:**

Witness my hand and official seal.

APRIL EMILY JONES
Commission #: 31050501
My Commission Expires: 01/31/2017

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

CFN#2013155085

**Minnesota Notary Lynn Marie Sevick, who acknowledged the signature of Tasasha D. F. Jemison, did not provide an eSignature that matched her official notary seal either:**

Witness my hand and official seal.

LYNN MARIE SEVICK
Commission #: 31049019
My Commission Expires: 01/31/2017



**The following item was excerpted from the Minnesota Notary Laws:**

- Submit two sample signatures to the county when registering your commission: one that includes your full name as listed on the commission and one that is your normal signature, which you should use to sign all notarial acts.

- Purchase a notary stamp from a stamp manufacturer or office supply store. It must contain the state seal, the term "Notary Public," your name as it appears on your notary certificate, and the commission expiration date. See *Minnesota Statutes* 359.03, subd. 3 for additional stamp requirements. If it is ever lost or stolen, contact the Office of the Minnesota Secretary of State.

- Obtain a journal to keep a record of your notarial acts (optional—see "Notarial Journal" section for more information).

It is highly likely that the signature on the notary certificate as noted above conflicts with what is shown on the preceding page for each of these notary/signors. It is also highly likely that the "Notarial Journal", which is required under Minnesota Law, is not kept or is deficient as to accommodation of document manufacturing practices. North Carolina's Notary Law does not negate the sufficiency of a notarized document if the notarial certificate is undelineated; however, Section 10B-126(e) states that when eSignatures are used, the Secretary of State may require an electronic notary to maintain a journal to record entries of each electronic notarial act. The following excerpt should also be noted:

The following documents were incorporated into the Forensic Examination as part of the submissions in the real property records of Osceola County, Florida that were caused to be placed there by Wells Fargo Bank, N.A.'s employees (in any capacity) and are suspect for violations of Florida Criminal Code Section 817.535 and Florida RICO statutes:

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

§ 10B-116.  Prohibitions.
   An electronic notarization shall not be performed if the signer of the electronic document:

(1)   Is not in the presence of the electronic notary at the time of notarization; and
(2)   Is not personally known to the notary or identified by the evidence in accordance with other provisions of this Chapter; or

**(W. F. EX. 3) CFN#2011145102, recorded by presentment on 10-18-2011**
**Document Prepared by: Wells Fargo Bank Default Assignment Team**
**Signer: Yen Nguyen (alleged Wells employee), claiming to sign as Assistant Secretary of MERS as nominee for Fremont Investment & Loan, using MERS's post office box address in Flint, Michigan AND Metro Detective Agency's address in Danville, Illinois to misrepresent the location of the real party in interest.**
**Notary: Robert W. Caruso (Minnesota Notary Commission expired on 01-31-2014)**
**Witnesses: None Listed**
**Issues: This assignment attempts to convey the Mortgage into a Goldman-Sachs 2006-FM1 closed REMIC trust, whose Closing Date was April 27, 2006.  See Section Six, Case No. 75 to see how this Assignment was utilized (intent for probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes).**

**(W. F. EX. 4) CFN#2012035162, recorded by presentment on 03-14-2012**
**Document Prepared by: Wells Fargo Bank Default Assignment Team**
**Signer: Jason P. Brumm (alleged Wells employee and Minnesota notary), claiming to sign (with only his initials) as Assistant Secretary of MERS as nominee for then-defunct New Century Mortgage Corporation (which issued a rejection Order of all MERS/MERSCORP executory contracts), using MERS's post office box address in Flint, Michigan AND Metro Detective Agency's address in Danville, Illinois to misrepresent the location of the real party in interest.  Affixed by electronic signature.  Unknown if present before the notary.**
**Notary: Janet L. Jones (Minnesota Notary Commission expires on 01-31-2017)**
**Witnesses: None Listed**
**Issues: This assignment attempts to convey the Mortgage into a closed HSI Asset Securitization  REMIC trust, whose Closing Date was June 5, 2007.  See *Section Three*, Page 61 to see how this Assignment was utilized (intent for probable cause for violation of Florida RICO statutes (perjury) and potential issues for unauthorized practice of law).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(W. F. EX. 5) CFN#2012040396, electronically recorded on 03-21-2012**
**It appears that Wells Fargo's Default Assignment team manufactured this self-Assignment of Mortgage from defunct MortgageIt, Inc. to Wells Fargo Bank, N.A. using MERS to transfer BOTH the Note and Mortgage, which MERS cannot do because it does not have an interest in the Note.**
**Signer: Nancy D. Sorensen, who claims to be an Assistant Secretary of MERS (eSignature)**
**Notary: Nicholas J. Wolf (Minnesota Notary Commission No. 31043836; still active; eSignature and Seal?)**
**Issues: Use of BOTH MERS addresses in Flint, Michigan and Danville, Illinois. eSignature'd notary claims the signor "personally appeared" before him; notarial execution was not filled out; suspect use of 150-page Wells Fargo Foreclosure Attorney Manual (in effect at the time).  See *Section Six*, Case No. 68 for details (Valladares) and exhibits.**


**(W. F. EX. 6) CFN#2013000706, electronically recorded on 01-03-2013**
**Document Prepared by: Wells Fargo Bank Default Assignment Team**
**Signer: Kelley Christine Butikofer (Wells Fargo employee and known Minnesota notary) attempting assignment of a mortgage using MERS as nominee for Equity Mortgage Bankers, LLC (using BOTH MERS address in Flint, MI and Danville, IL) to self-assign the mortgage to Wells Fargo Bank, N.A. using eSignatures on BOTH the signor and the notary. MERS cannot convey the Note as it doesn't have an interest in it. Multiple issues with criminal counts for RICO and unauthorized practice of law and notary fraud.**
**Notary: April Emily Jones (Minnesota Notary Commission expires on 01-31-2017)**
**Issues for perjury and notary fraud, in addition to probable cause for violation of Florida RICO statutes.**


**(W. F. EX. 7) CFN#2013003161, recorded by presentment on 01-08-2013**
**This document was recorded at the request of Wells Fargo Bank, N.A. (also responsible for the preparation of the attempted assignment of a mortgage from then-defunct New Century Mortgage Corporation to a closed HSI 2007-HC1 REMIC trust.**


***It should be noted here that an Exhibit repudiating MERSCORP executory contracts is included in this report by reference and thus, the MERS assignment to this trust was done without original lender permission as ordered by the Bankruptcy Court handling NCMC's bankruptcy affairs.* Thus, this assignment appears invalid. It was signed by Wells Fargo Default Assignment Team employees.  It should also be noted that a similar assignment was recorded electronically as CFN#2012035162, which purportedly was attempted to prove trust ownership.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(W. F. EX. 8) CFN#2013004019, electronically recorded on 01-09-2013**
**This document was purportedly prepared and executed by the Wells Fargo Default As-**
**signment Team and eSigned as to both signor and notary.   The signor purports to be a**
**MERS Assistant Secretary, assigning in the name of MERS as nominee for still active Sirva**
**Mortgage, Incorporated (who could have generated this Assignment by officers who had**
**first-hand knowledge of the events of the transfer; using the Metro Detective Agency's ad-**
**dress in Danville, Illinois) in an apparent self-assignment to Wells Fargo Bank, N.A.**
**The way the document appears to have been structured, MERS is also attempting to assign**
**the note (in which it does NOT have an interest).  With both signor and notary not present**
**at signing, the notarial execution contains false and misrepresentative information.**


**(W. F. EX. 9) CFN#2013100722, electronically recorded on 07-01-2013**
**It appears that Wells Fargo's Default Assignment team manufactured this self-Assignment**
**of Mortgage from Wells Fargo Home Mortgage, Inc. to Wells Fargo Bank, N.A. using**
**MERS to transfer BOTH the Note and Mortgage, which MERS cannot do because it does**
**not have an interest in the Note.**
**Signer: Andrew Patrick Colligan, who claims to be an Assistant Secretary of MERS (eSig-**
**nature)**
**Notary: Bhavdip Chhotalal Chauhan (Minnesota Notary Commission No. 31045527; still**
**active until 01-31-2016; eSignature and Seal?)**
**Issues: Use of BOTH MERS addresses in Flint, Michigan and Danville, Illinois. eSigna-**
**ture'd notary claims the signor "personally appeared" before him; notarial execution was**
**not filled out; suspect use of 150-page Wells Fargo Foreclosure Attorney Manual (in effect**
**at the time).**


**(W. F. EX. 10) CFN#2013100722, electronically recorded on 07-01-2013**
**It appears that Wells Fargo's Default Assignment team manufactured this self-Assignment**
**of Mortgage from Wells Fargo Home Mortgage, Inc. to Wells Fargo Bank, N.A. using**
**MERS as nominee for then-defunct Home First Funding, LLC to transfer ONLY Mort-**
**gage, which would indicate that Wells Fargo Bank, N.A. may only be the Servicer here.**
**Signer: Kelley Danielson, who claims to be an Assistant Secretary of MERS as nominee for**
**a then-defunct lender.**
**Notary: Michelle Rae Petersen (Minnesota Notary Commission still active until 01-31-2017)**
**Issues: Use of BOTH MERS addresses in Flint, Michigan and Danville, Illinois. eSigna-**
**ture'd notary claims the signor "personally appeared" before him; notarial execution was**
**not filled out; suspect use of 150-page Wells Fargo Foreclosure Attorney Manual (in effect**
**at the time).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(W. F. EX. 11) CFN#2013101329, electronically recorded on 02-02-2013**
**It appears that Wells Fargo's Default Assignment team manufactured this Assignment of the Mortgage and the Note from Wells Fargo Bank, N.A. to a closed Goldman Sachs Home Equity 2005-12 REMIC trust, whose Closing Date was October 28, 2015; thus, this transaction contravenes New York trust law and is void, which results in the use of false and misrepresentative information to attempt foreclosure of a property, probable cause for violation of Florida Criminal Code § 817.535.**
**Signer: Lynn Marie Sevick (known Wells employee, known robosigner and Minnesota notary), who claims to be Vice President of Loan Documentation for Wells Fargo Bank, N.A.**
**Notary: Alexander Frederick Koch (Minnesota Notary Commission No. 31048008; still active until 01-31-2017; eSignature and Seal?)**
**Issues: Suspect use of 150-page Wells Fargo Foreclosure Attorney Manual (in effect at the time). Also probable cause for violation of Florida RICO statutes and unauthorized practice of law.**

**(W. F. EX. 12) CFN#2013155085, electronically recorded on 10-01-2013**
**This document was purportedly prepared and executed by the Wells Fargo Default Assignment Team and eSigned as to both signor and notary. The signor purports to be a MERS Assistant Secretary, assigning in the name of MERS as nominee for then-defunct Wachovia Mortgage Corporation to a closed RALI2007-QS10 series REMIC trust. The way the document appears to have been structured, MERS is also attempting to assign the note (in which it does NOT have an interest). With both signor and notary not present at signing, the notarial execution contains false and misrepresentative information.**

**(W. F. EX. 13) CFN#2013159345, electronically recorded on 10-08-2013**
**This document was purportedly prepared and executed by the Wells Fargo Default Assignment Team and eSigned as to both signor and notary. The signor purports to be a MERS Assistant Secretary, assigning in the name of MERS as nominee for then-defunct Pinnacle Financial Corporation to a closed Nomura Asset Acceptance Corporation 2007-1 Series REMIC trust. The way the document appears to have been structured, MERS is also attempting to assign the note (in which it does NOT have an interest). With both signor and notary not present at signing, the notarial execution contains false and misrepresentative information, probable cause for violation of Florida Criminal Code § 817.535.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(W. F. EX. 14) CFN#2013172270, electronically recorded on 11-01-2013**
This document was prepared by employees of and recorded at the request of Wells Fargo Bank, N.A., purporting to assign a mortgage using MERS as nominee for Lakeland Regional Mortgage Corporation (showing BOTH MERS addresses in Flint, MI and Danville, IL) to a closed Deutsche Alt-A Securities, Inc. 2005-4 REMIC trust (using HSBC's address in Brandon, Florida).  There is no current court activity noted of record at present.  There are numerous markers for robosigning and document manufacturing contained herein.

**(W. F. EX. 15) CFN#2013186334, electronically recorded on 11-27-2013**
This document was prepared by employees of and recorded at the request of Wells Fargo Bank, N.A., purporting to assign a MERS-originated Mortgage using MERS as a nominee for the now defunct "The Force Group" (Sept. 2006) using the Metro Detective Agency address in Danville, Illinois to represent the address of The Force Group.
The Assignee is a closed Adjustable Rate Mortgage Trust 2005-1 series REMIC trust, which does not appear to be listed as such in the SEC database (there are variations of the name, but not this name).  The misrepresentations are apparently indicative of RICO-style manufacturing behaviors; however, the notary claims that the signor "personally appeared", when both signatures were electronically signed to the document, therefore, the false claims on record and a publicly-recorded document that fails to list a proper Assignee.

**(W. F. EX. 16) CFN#2013186662, electronically recorded on 11-27-2013**
This document was prepared by employees of and recorded at the request of Wells Fargo Bank, N.A., purporting to assign a mortgage from HSBC Bank USA, NA as trustee by Wells Fargo as its attorney-in-fact; however, the document does NOT name who HSBC is a trustee for, thus, the document contains serious misrepresentations, something that had the signor and notary of the document had personal knowledge of, the error would not have gone unnoticed.  The Assignee is the same entity as the Assignor only with the name of the REMIC added … a <u>closed</u> Home Equity Asset-Backed Securities Series 2005-3.   The listed address for both Assignor and Assignee come back to the Trustee, HSBC, in Brandon, FL.

**(W. F. EX. 17) CFN#2014034290, recorded by presentment on 03-11-2014**
Document Prepared by: Wells Fargo Assignment Team, Minneapolis, MN on 03-03-2014
Signer: Shelji Dahip (who claims to be … a Vice President of Loan Documentation) for Wells Fargo Bank, N.A. S/B/M Wachovia Mortgage FSB F/K/A World Savings Bank, FSB, as Assignor, to U.S. Bank as Trustee for Truman 2013 SC4 Title Trust, whose Closing Date was likely in 2013 (this appears to be a privately-held trust) that could not be located within the SEC registry.
Notary: Michelle Rae Petersen (Minnesota Notary Commission Expires 01-31-2017)

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Witnesses: None**
**Issues: There is no evidence of transfer of the Note, just the beneficial interest in the Mortgage. It is further highly likely that the Notary did not witness the signature being affixed by the signer. There are numerous markers of document manufacturing and robosigning.**

**(W. F. EX. 18) CFN#2014054488, electronically recorded on 04-21-2014**
**This document appears to have been manufactured by the Wells Fargo Assignment Team on behalf of Wells Fargo Bank, N.A., who requested the recording of the document. Even those the document was hand signed, the originating lender was defunct (New Century Mortgage Corporation) and the trust that the Wells Fargo employees attempted conveyance into (a series 2006-4 REMIC trust) was closed and could not accept it. Thus, there are misrepresentative issues contained within the language of this recorded document.**

**The employees of the team** *(see the 150-page Foreclosure Attorney Manual, contained herein as an exhibit by reference)* **did NOT have personal knowledge of the facts they were attesting to and the assignment date does NOT match the notary execution date.**

**(W. F. EX. 19) CFN#2014058126, electronically recorded on 04-28-2014**
**This document appears to have been manufactured by the Wells Fargo Assignment Team on behalf of Wells Fargo Bank, N.A., who requested the recording of the document. The document was executed by eSignatures of both the signor and the notary, despite the fact the notarial execution is inaccurate and misrepresentative of how this document was executed. This document purports to assign the mortgage from MERS as nominee for now-defunct Pinnacle Direct Funding Corporation (according to the Florida Department of Corporations, this entity ceased to exist in January of 2008) to a closed Deutsche Alt-B 2006-AB1 REMIC trust that legally could not accept it. Thus, there are misrepresentative issues contained within the language of this recorded document.**

**It is highly likely that only certain members of the Wells Fargo Default Assignment Team** *(see the 150-page Foreclosure Attorney Manual, contained herein as an exhibit by reference)* **had personal knowledge of the facts that they incorporated into the documents they manufactured; thus, the signing team probably had absolutely no knowledge whatsoever of anything contained in the documents. They were only ordered to affix their signatures and seals.**

**(W. F. EX. 20) CFN#2014071908, electronically recorded on 05-22-2014**
**This document appears to have been manufactured by the Wells Fargo Assignment Team on behalf of Wells Fargo Bank, N.A., who requested the recording of the document. The document was executed by eSignatures of both the signor and the notary, despite the fact the notarial execution is inaccurate and misrepresentative of how this document was executed.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

This document purports to assign the mortgage from MERS as nominee for now-defunct Wachovia Mortgage Corporation (which was subsumed into Wells Fargo Bank, N.A. on December 31, 2008) to a closed Deutsche Alt-A 2007-1 REMIC trust that legally could not accept it.  Thus, there are misrepresentative issues contained within the language of this recorded document.   The employees of the team *(see the 150-page Foreclosure Attorney Manual, contained herein as an exhibit by reference)* did NOT have personal knowledge of the facts they were attesting to as they were not present at signing.

**(W. F. EX. 21) CFN#2014071910, electronically recorded on 05-22-2014**
This document appears to have been manufactured by the Wells Fargo Assignment Team on behalf of Wells Fargo Bank, N.A., who requested the recording of the document. The document was executed by eSignatures of both the signor and the notary, despite the fact the notarial execution is inaccurate and misrepresentative of how this document was executed. This document purports to assign the mortgage from MERS as nominee for now-defunct Aegis Wholesale Corporation (which filed for bankruptcy in Delaware in 2007) to a closed Deutsche Alt-A 2006-AR3 REMIC trust that legally could not accept it.  Thus, there are misrepresentative issues contained within the language of this recorded document.

NOTE: This document was recorded over five (5) years AFTER HSBC (as Trustee) attempted to initiate foreclosure proceedings on the property belonging to Maria and Jimmy Acosta and was eventually voluntarily dismissed.  A Notice of Lis Pendens was filed on March 10, 2009 (CFN#2009038498) by Adam F. George (FBN25501) on behalf of the David J. Stern law firm attempting to foreclose on the mortgage executed as CFN#2006091626 on April 5, 2006.  *(these reference notes also listed under the Stern law firm's heading)*  It is highly likely that this document will be used in another attempt to foreclose on the subject property.

The employees of the team *(see the 150-page Foreclosure Attorney Manual, contained herein as an exhibit by reference)* did NOT have personal knowledge of the facts they were attesting to as they were not present at signing.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### III. Summary

In conclusion of Part 1 of this Forensic Examination, the Examiners (after exhaustive research) have probable cause to believe that violations exist in multiple circumstances involving virtually every single item listed within this first part of the Report, including but not limited to:

(1) Reasonable belief that virtually all original copies of the promissory Notes and Mortgages entered into the MERS® System were destroyed after being converted into image files, as implied by virtue of demonstrated communication with the Florida Foreclosure Task Force (Hon. Jennifer Bailey) in September of 2009;

(2) Reasonable belief that when it became necessary (generally upon the alleged default of the borrower in any given situation), the parties as described herein would order their supervisory personnel to direct the manufacture of documents (which in part would be based on the retrieval of these image files) by subordinate personnel who were given "official titles" for the purposes of creating and causing to be recorded documents that contained false and misrepresentative information, with the intent that these recorded documents be relied on as "conditions precedent" for the purposes of effectuating Complaints to foreclose on real property, with the intent to deprive the property owners of their property, in violation of Florida Criminal Code § 817.535;

(3) Reasonable belief that in order to "tie all of the ends together", that these default assignment departments of the lenders, servicers and in conjunction with third-party document manufacturing mills, would then initiate computer-generated promissory Notes that were enhanced and manipulated using computer software designed for that purpose, with the intent to manufacture such endorsements and Note Allonges that contained such manufactured information, with the intent to deceive the Court in Osceola County, Florida, in violation of Florida Bar Rules as to Ethics in bringing these documents forward as evidence in an effort to match what was filed for record, thus allegedly bringing forward fraud upon the Court;

(4) Reasonable belief that these entities acted in concert with each other to labor to produce (under the direction of both Florida Bar-licensed attorneys and under the direction of supervisory personnel) said documentation with the intent to carry out a scheme and artifice, through both the land and court records, to commit perjury on both the land and court records, all probable cause for violations of the Florida statutes governing the criminal behavior as noted in the "white collar crime", involving Racketeer Influenced Corrupt Organizations (RICO Act;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(5) Reasonable belief that said RICO violations were facilitated through the use of Mortgage  Electronic Registration Systems, Inc. ("MERS"), which is owned by MERSCORP Holdings, Inc. (fka MERSCORP, Inc.) and its MERS® System, in which the member-users of said "system" would randomly violate MERS's own policies and procedures to engage in such patterns of behavior to commit RICO-based perjury in both the real property records and court records of Osceola County, Florida;

(6) Reasonable belief that in the facilitation of these false and misrepresentative documents, said facilitators often relied on the MERS® System, despite assurances to MERS, MERSCORP and its Board of Directors that they would adhere to MERS policies, did violate said policies with the intent to re-create said promissory Notes and with the aid of the Florida foreclosure law firms, manufactured these false and misrepresentative documents without attorney supervision, which constitutes probable cause for violation of Florida's felony unauthorized practice of law statutes;

(7) Reasonable belief that in majority of the instances herein, said employees were told by their supervisors to manufacture said documentation with complete and utter disregard for the rules and regulations governing the use of Notaries Public with the intent to utilize the State-sanctioned capacity which was given to each of these individuals, which holds them to a higher standard, to then order them to affix their signatures and notarial seals to these documents, when in fact they were not in the physical presence of the signers and witnesses to these documents, which facilitates notary fraud upon both the real property records and court records of Osceola County, Florida; and

(8) Reasonable belief that all of the foregoing issues manifested themselves within the following cases as summarized in *Section Five* and *Section Six* in Part 2 of this Report.


Therefore, it is the recommendation of the Examiners that the Clerk of the Circuit Court of Osceola County, Florida, upon the rendering of this Report, facilitate its distribution to the proper authorities for review and consideration of the empaneling of a grand jury to investigate such matters and to prosecute what the Examiners believe to be crimes of various natures and magnitudes to the fullest extent of the law.

# FORENSIC EXAMINATION OF THE REAL PROPERTY RECORDS AND THE CIRCUIT COURT RECORDS OSCEOLA COUNTY, FLORIDA

## PART 2 OF 2: SECTIONS 5 - 7



**EXAMINATION CONDUCTED BY DK CONSULTANTS LLC**
**SAN ANTONIO, TEXAS**
**July 14, 2014 - December 20, 2014**

**REPORT ISSUED: December 29, 2014**

# INTRODUCTION

The forensic examination of the real property records of Osceola County, Florida was commissioned by Armando Ramirez, a duly elected public official with the title of Clerk of the Circuit Court of Osceola County, Florida. In all times and places within this report, the Clerk of the Circuit Court shall be hereinafter referred to as "Clerk".

There are common suspect issues that will become manifest within the case studies in *Section Five* and *Section Six*:

> (1) There are suspect issues where promissory Notes appear to have been manufactured for the purposes of bringing fraud on the court;

> (2) The objective in all instances is to make the Note appear negotiable, or in the least, "bearer paper" under U. C. C. § 3;

> (3) There is evidence in most of these cases wherein there is suspect computer manipulation of image files, particularly with the placement of indorsements;

> (4) There are still suspect issues of robo-signing and surrogate signing, due to obvious variations in the way signatures are affixed to Assignments;

> (5) There are multiple issues of pattern document manufacturing, where certain documents (particularly promissory Notes and Assignments of Mortgages) are developed in concert with attorneys representing the Plaintiff "parties in interest" with "signing teams" employed by the Plaintiff or the Servicer, to produce results favorable to them, when the original documents that were supposed to be relied upon were in fact, shredded and thus, had to be reconstructed to "manufacture" the Plaintiff's case;

> (6) There is a 99% chance that when MERS is utilized in any scenario involving an Assignment of Mortgage that is proffered as exhibit evidence in these matters, that the chain of title is being "covered up" to intimate standing of the Plaintiff;

> (7) As will be explained in *Section Five*, the assumption is asserted that once the Plaintiff's representative signed the document verification, there is reason to suspect that supervisory management ordered the documents to be "embellished" or "altered" to speed up the filing process (if mistakes, errors or issues were discovered) without having the Plaintiff's representative "reverify" the information; thus, probable cause for perjury (fraud on the court); and in *Section Six*, there is pattern evidence that the alleged party in interest will often substitute counsel, especially when pattern abuse of documents is suspect to have occurred, in order to divert the court's attention.

# TABLE OF CONTENTS

**SECTION FIVE: CASE STUDIES OF COURT FILINGS INVOLVING
ALLEGED ALTERATION OF SWORN DECLARATIONS
WITHIN VERIFIED COMPLAINTS (page numbers in parentheses)**

**I. Analysis of Scenario Involving Suspect Ablitt-Scofield Case Filings**          **1**

**II. Listings and Relevant Information of Suspect Ablitt-Scofield Case Filings**          **4**

**Case No. 1:** *U. S Bank, N.A., as Trustee, on behalf of the holders of the Home Equity Asset Trust 2007-2 Home Equity Pass-Through Certificates, Series 2007-2 v. Grace Posa et al (2013 CA 3521 MF)(4)*

**Case No. 2:** *M & T Bank v. Paul J. McNamee et al (2013 CA 3006 MF)(6)*

**Case No. 3:** *JPMorgan Chase Bank, N.A. v. Byron L. Shaw et al (2013 CA 3718 MF)(7)*

**Case No. 4:** *Deutsche Bank National Trust Company fka Bankers Trust Company of California, N.A. as Trustee for the Holders of the Vendee Mortgage Trust 2003-2 v. Brent W. Parenteau et al (2013 CA 4077 MF)(8)*

**Case No. 5:** *Nationstar Mortgage LLC v. Jose J. Rivera Quinones et al (2013 CA 3969 MF)(9)*

**Case No. 6:** *JPMorgan Chase Bank, N.A. v. Miguel A. Velasco et al (2013 CA 3967 MF)(11)*

**Case No. 7:** *HSBC Mortgage Services, Inc. v. Nydia Labiosa et al (2013 CA 3387 MF)(14)*

**Case No. 8:** *Bank of America, N.A. v. Mary K. Watts et al (2013 CA 3397 MF)(15)*

**Case No. 9:** *Bank of America, N.A. v. Edwin Soto et al (2012 CA 5227 MF)(17)*

**Case No. 10:** *JPMorgan Chase Bank, N.A. v. Angel Andrews et al (2013 CA 2977 MF)(18)*

**Case No. 11:** *Bank of America, N.A. v. Adrienne A. Larson et al (2013 CA 2580 MF)(20)*

**Case No. 12:** *HSBC Bank USA, N.A. as Trustee for Deutsche Alt-A Securities, Inc. Mortgage Loan Trust Series 2005-2 v. Denise M. Diaz et al (2013 CA 2568 MF)(22)*

**Case No. 13:** *U. S. Bank Trust, N.A. as Trustee for LSF8 Master Participation Trust v. Debra J. Romack et al (2013 CA 4089 MF)(27)*

**Case No. 14:** *Nationstar Mortgage, LLC v. Louis S. Anastasio et al* **(2012 CA 5828 MF)(28)**

**Case No. 15:** *HSBC BANK USA, N.A. as Trustee of J. P. Morgan Alternative Loan Trust 2007-A1, Mortgage Pass-Through Certificates, Series 2007-A1 v. Kristen L. Hutterly et al* **(2012 CA 5601 MF)(32)**

**Case No. 16:** *HSBC BANK USA, N.A. as Trustee for Deutsche Mortgage Securities, Inc. Mortgage Loan Trust, Series 2004-5 v. Mercedes Jurado et al* **(2012 CA 5482 MF)(33)**

**Case No. 17:** *U. S. Bank, N.A. as Trustee, successor in interest to Bank of America, N.A. as Trustee, successor by merger to LaSalle Bank, N.A. as Trustee for Washington Mutual Asset-Backed Certificates WMABS Series 2007-HE2 Trust v. Ingrid J. Constanzo et al* **(2013 CA 2477 MF)(34)**

**Case No. 18:** *HSBC Mortgage Services, Inc. v. Sofia M. Aguinaga et al* **(2013 CA 1719 MF) (35)**

**Case No. 19:** *Bank of America, N.A. v. Valeen Bell et al* **(2013 CA 2078 MF)(36)**

**Case No. 20:** *Beneficial Florida, Inc. v. Lisa Simcoe et al* **(2013 CA 2133 MF)(38)**

**Case No. 21:** *HSBC Mortgage Services, Inc. v. Alba Nelly Medina et al* **(2013 CA 2488 MF) (40)**

**Case No. 22:** *JPMorgan Chase Bank, N.A. v. Margaret L. Lillich et al (*2013 CA 2386 MF) (43)**

**Case No. 23:** *Bank of America, N.A. v. Patricia Sterling et al* **(2013 CA 2118 MF)(48)**

**Case No. 24:** *JPMorgan Chase Bank, N.A. v. Henry J. Werner et al* **(2012 CA 5051 MF)(50)**

**Case No. 25:** *JPMorgan Chase Bank, N.A. v. Jose A. Villegas Encarnacion et al* **(2013 CA 0201 MF)(52)**

**Case No. 26:** *JPMorgan Chase Bank, N.A. v. Emilia Hoy et al* **(2012 CA 4828 MF)(56)**

**Case No. 27:** *HSBC Bank USA, N. A. as Trustee for Deutsche Securities, Inc. Mortgage Loan Trust, Series 2004-5 v. Manuel E. Avalos et al* **(2013 CA 0979 MF)(58)**

**Case No. 28:** *U. S. Bank, N.A., as Trustee, successor in interest to Bank of America, N.A. as Trustee as successor by merger to LaSalle Bank, N.A. as Trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA5 v. Estate of Barbara A. D'Amico et al* **(2013 CA 1686 MF)(61)**

**Case No. 29:** *JP Morgan Chase Bank, N.A. v. Barbara A. Jamason et al* **(2013 CA 0259 MF)(63)**

**Case No. 30:** *U. S. Bank, N.A. as Trustee for the Holders of the WMALT 2007-OA3 Trust v. Estate of Duane Dienst, Deceased et al* **(2013 CA 1288 MF)(64)**

**Case No. 31:** *Wells Fargo Bank, N.A. as Trustee, on behalf of the holders of the Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1 v. Duc C. Nguyen et al* **(2013 CA 0140 MF)(69)**

**Case No. 32:** *JPMorgan Chase Bank, N.A. v. Veronica Blandon et al* **(2013 CA 1437 MF)(76)**

**Case No. 33:** *Bank of America, N.A. v. Jason A. Palmer et al* **(2013 CA 1439 MF)(77)**

**III. Summary** **82**

**SECTION SIX: CASE STUDIES OF FORECLOSURE COMPLAINTS USING SUSPECT DOCUMENTS TO "PROVE" STANDING**

**Case No. 1:** *BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP v. Julius K. Franccini et al* **(2010 CA 5339 MF)(85)**

**Case No. 2:** *Citimortgage, Inc. v. William Colon et al* **(2010 CA 4504 MF)(90)**

**Case No. 3:** *The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., Alternative Loan Trust 2006-OA1, Mortgage Pass-Through Certificates, Series 2006-OA1 v. Merrill et al* **(Case No. 2011 CA 4178 MF)(95)**

**Case No. 4:** *JPMorgan Chase Bank, N.A. v. Gaskin et al* **(Case No. 2012 CA 4827 MF)(99)**

**Case No. 5:** *The Bank of New York Mellon Trust Company, N.A. as Grantor Trustee of the Proteum Master Grantor Trust v. Viviana Morales et al* **(Case No. 2013 CA 2384 MF)(101)**

**Case No. 6:** *Bank of America, N.A. v. Sandra Harvey et al* **(Case No. 2010 CA 2040 MF)(103)**

**Case No. 7:** *The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders, CWABS, Inc., Asset-Backed Certificates Series 2007-6  v. Duane E. Desett et al* **(Case No. 2010 CA 4141 MF)(105)**

**Case No. 8:** *The Bank of New York Mellon fka The Bank of New York, as Trustee (CWALT-2005-63) v. Tracy A. Gilbert et al* **(2009 CA 3856 MF)(108)**

**Case No. 9:** *Aurora Loan Services, LLC v. Francisco J. Botella et al* **(2010 CA 3740 MF)(112)**

**Case No. 10:** *BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP v. Pius Adenrian et al (2010 CA 3256 MF; later amended to Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP v. Adenrian et al)* **(118)**

**Case No. 11:** *M & T Bank v. Cynthia A. Boger et al* **(2014 CA 0983 MF)(125)**

**Case No. 12:** *Wilmington Trust Company v. Elias Rebolledo et al* **(2014 CA 1391 MF)(127)**

**Case No. 13:** *BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP v. Francisco J. Perez et al* **(2010 CA 5213 MF)(131)**

**Case No. 14:** *LNV Corporation v. Mariano Ayala et al*  **(2011 CA 3479 MF)(136)**

**Case No. 15:** *Green Tree Servicing LLC v. Angel Pagan et al* **(2013 CA 2454 MF)(138)**

**Case No. 16:** *Bank of America, N.A. v. Antonio Santiago et al* **(2013 CA 0460 MF)(139)**

**Case No. 17:** *U.S. Bank National Association, As Trustee, on Behalf of the Holders of the Home Equity Asset Trust 2006-4 Home Equity Pass Through Certificates, Series 2006-4 v. Zoila Molleturo et al* **(2013 CA 1807 MF)(143)**

**Case No. 18:** *SunTrust Mortgage, Inc. v. Radames Quinones et al* **(2013 CA 0655 MF)(145)**

**Case. No. 19:** *U. S. Bank, N.A. as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-CB6 v. Carmen Colon et al*  **(2009 CA 7799 MF)(148)**

**Case No. 20:** *U. S. Bank, N.A. as Trustee for Harborview Mortgage Loan Trust 2004-2 v. Amanda Mejia et al* **(2012 CA 5350 MF)(150)**

**Case No. 21:** *The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2007-OA3, Mortgage Pass-Through Certificates, Series 2007-OA3 v. Robert Frick et al* **(2013 CA 1173 MF)(155)**

**Case No. 22:** *The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWABS INC., Asset-Backed Certificates, Series 2006-22 v. Dan Durfey et al* **(2013 CA 1475 MF)(156)**

**Case No. 23:** *Citifinancial Mortgage Company (FL), LLC v. Guerdine Charles et al* **(2010 CA 4223 MF)(158)**

**Case No. 24:** *Bank of America, N.A. v. Jesus D. Urquiza et al* **(2013 CA 664 MF)(163)**

**Case No. 25:** *JPMorgan Chase Bank, N.A. v. David Bassett et al* **(2010 CA 2484 MF)(167)**

**Case No. 26:** *Bank of America, N.A. v. Mirsad Fako et al* **(2013 CA 3787 MF)(173)**

**Case No. 27:** *Deutsche Bank National Trust Company, as Trustee for FFMLT 2006-FF4, Mortgage Pass-Through Certificates, Series 2006-FF4 v. Sandra Garro et al* **(2008 11031 MF)(181)**

**Case No. 28:** *Bank of America, N.A. v. Luz Maria Betancourt et al* **(2011 CA 4373 MF)(185)**

**Case No. 29:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2006-OA10, Mortgage Pass-Through Certificates, Series 2006-OA10 v. Marlen Sanchez et al* **(2011 CA 3563 MF)(186)**

**Case No. 30:** *Bank of America, N.A. v. Gary Witcher et al* **(2012 CA 0157 MF)(187)**

**Case No. 31:** *Deutsche Bank National Trust Company, as Trustee for Holders of the GSR Mortgage Loan Trust 2007-OA1 v. Enrique Menendez et al* **(2012 CA 5297 MF)(188)**

**Case No. 32:** *U. S. Bank, N.A. as Trustee for the Benefit of Harbourview 2005-16 Trust Fund v. Amanda Mejia et al* **(2009 CA 9369 MF)(189)**

**Case No. 33:** *Bank of America, N.A. v. Damian M. Rivera et al* **(2012 CA 1262 MF)(192)**

**Case No. 34:** *Bank of America, N.A. v. Betty M. Bruestlen et al* **(2012 CA 1251 MF)(193)**

**Case No. 35:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Certificateholders Alternative Loan Trust 2007-8CB Mortgage Pass-Through Certificates, Series 2007-8CB v. Gustavo Valencia et al* **(2010 CA 4242 MF) (195)**

**Case No. 36:** *U. S. Bank, N.A. as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2005-2, Home Equity Pass-Through Certificates, Series 2005-2 v. Carmen L. Rojas et al* **(2011 CA 3763 MF)(197)**

**Case No. 37:** *Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-WL2 v. Nelson Bermudez et al* **(2012 CA 0542 MF)(198)**

**Case No. 38:** *Citimortgage, Inc., Successor by Merger to ABN AMRO Mortgage Group, Inc. v. Noel Matos, Sr. et al* **(2010 CA 5696 MF)(199)**

**Case No. 39:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP v. Edwin Ortiz-Velasquez et al* **(2009 CA 13729 MF)(201)**

**Case No. 40:** *Green Tree Servicing, LLC v. Maria Lyn Ramirez et al* **(2013 CA 0130 MF) (202)**

**Case No. 41:** *Nationstar Mortgage LLC v. William John Disbrow et al* **(2013 CA 0996 MF) (203)**

**Case No. 42:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-85CB, Mortgage Pass-Through Certificates, Series 2005-85CB v. Cassandra Moore et al* **(2012 CA 4546 MF)(207)**

**Case No. 43:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OH2, Mortgage Pass-Through Certificates, Series 2007-OH2 v. Mark Hollingsworth et al* **(2012 CA 4607 MF)(210)**

**Case No. 44:** *Deutsche Bank National Trust Company, as Trustee for the Harbourview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-9 v. Carmela Ruano et al* **(2012 CA 4779 MF)(212)**

**Case No. 45:** *JPMorgan Chase Bank, N.A. v. James A. Brown et al* **(2012 CA 5859 MF)(217)**

**Case No. 46:** *U. S. Bank, N.A., as Trustee, Successor in Interest to Bank of America, N.A., as Successor by Merger to LaSalle Bank, N.A. as Trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-5 v. Patrice Denike et al (2012 CA 3916 MF)(218)*

**Case No. 47:** *Nationstar Mortgage LLC v. Hoa T. Do et al  (2014 CA 0006 MF)(220)*

**Case No. 48:** *The Bank of New York Mellon Trust Company, N.A. FKA The Bank of New York Trust Company, N.A. as Successor to JPMorgan Chase Bank, N.A. as Trustee for RAMP 2006-RZ4 v. Helen Rae Donaway et al  (2013 CA 1375 MF)(223)*

**Case No. 49:** *Nationstar Mortgage LLC v. Angel Cardenas et al  (2013 CA 4251 MF)(225)*

**Case No. 50:** *Bank of America, N.A. v. Christopher Heck  (2012 CA 2674 MF)(231)*

**Case No. 51:** *Bank of America, N.A. v. Kamlawati Rewah et al  (2014 CA 0580 MF)(236)*

**Case No. 52:** *U. S. Bank, N.A., as Trustee for JPMorgan Alternative Loan Trust 2007-S1 v. Ti Tang et al  (2013 CA 1304 MF)(239)*

**Case No. 53:** *HSBC Bank USA, N.A., as Trustee for Fremont Home Loan Trust 2006-A, Mortgage-Backed Certificates 2006-A v. Fernando Vazquez et al  (2012 CA 1809 MF)(243)*

**Case No. 54:** *The Bank of New York Mellon F/K/A The Bank of New York as Successor in Interest to JPMorgan Chase Bank, N.A., as Trustee for the Benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2006-B v. Jesus M. Garcia et al  (2012 CA 3093 MF)(244)*

**Case No. 55:** *Bank of America, N.A., Successor by merger to BAC Home Loans Servicing, LP v. Timothy W. Cope et al  (2011 CA 3485 MF)(246)*

**Case No. 56:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2006-35CB, Mortgage Pass-Through Certificates, Series 2006-35CB v. Eliseo Galvan et al  (2011 CA 3636 MF)(248)*

**Case No. 57:** *Bank of America, N.A. v. Eric J. Waddell et al  (2010 CA 2323 MF)(249)*

**Case No. 58:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP v. Fidel Petisco et al  (2010 CA 2620 MF)(250)*

**Case No. 59:** *The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificate Holders of the CWALT Inc. Alter-native Loan Trust 2005-59, Mortgage Pass-Through Certificates Series 2005-59 v. Nazmeen Salfarlie et al* **(2012 CA 3184 MF)(251)**

**Case No. 60:** *Bank of America, N.A. v. Debbie Vincenty Diaz et al* **(2012 CA 0457 MF)(253)**

**Case No. 61:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders CWABS, Inc. Mortgage-Backed Certificates, Series 2006-1 v. Nathalie Novak et al* **(2010 CA 2215 MF)(254)**

**Case No. 62:** *The Bank of New York Mellon FKA The Bank of New York as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2005-9 v. Elizabeth Alamo et al* **(2012 CA 1572 MF)(256)**

**Case No. 63:** *Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement relating to IMPAC Secured Assets Corp. Mortgage Pass-Through Certificates Series 2006-1 v. Ida R. Blanco et al* **(2008 CA 10557 MF) (256)**

**Case No. 64:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP v. Rodney Veilleux et al* **(2010 CA 5877 MF)(257)**

**Case No. 65:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-9, Mortgage Pass-Through Certificates Series 2007-9 v. Joan M. Sharpe et al* **(2014 CA 2012 MF)(259)**

**Case No. 66:** *MTGLQ Investors, L.P. v. Michael J. Maguire et al* **(2008 CA 9784 MF)(261)**

**Case No. 67:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP v. Chris W. Itonyo et al* **(2010 CA 3485 MF)(262)**

**Case No. 68:** *Wells Fargo Bank, N.A. v. Obdulio Valladares et al* **(2012 CA 2241 MF)(264)**

**Case No. 69:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP v. Carol Ramos et al* **(2011 CA 2484 MF)(265)**

**Case No. 70:** *U. S. Bank, N.A. as Successor to LaSalle Bank, N.A. as Trustee for the Certifi-cateholders of Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-HE1 v. Felicia McGee et al* **(2012 CA 1803 MF) (265)**

**Case No. 71:** *U. S. Bank, N.A. as Trustee for the Holders of the Banc of America Funding Corporation, 2008-FT1 Trust, Mortgage Pass-Through Certificates, Series 2008-FT1 v. Patty A. Kishbaugh et al* **(2013 CA 1755 MF)(266)**

**Case No. 72:** *U. S. Bank, N.A., as Trustee for the Benefit of the LXS 2007-16N Trust Fund v. Sandra T. Cajina et al* **(2009 CA 6366 MF)(267)**

**Case No. 73:** *U. S. Bank, N.A. as Trustee on behalf of the Holders of the Home Equity Asset Trust 2005-7 Home Equity Pass-Through Certificates, Series 2005-7 v. Noreley Velasco et al* **(2009 CA 0125 MF)(269)**

**Case No. 74:** *Countrywide Home Loans, Inc. v. Abelardo Chavez et al* **(2008 CA 9289 MF) (270)**

**Case No. 75:** *Deutsche Bank National Trust Company, as Trustee for GSAMP 2006-FM1 v. Marc Elie Eugene et al* **(2009 CA 5347 MF)(271)**

**Case No. 76:** *U. S. Bank, N.A. as Trustee for the Holder of Bear Sterns Asset Backed Securities I Trust 2006-IM1 v. Khawar Qureshi et al* **(2008 CA 2471 MF)(273)**

**Case No. 77:** *Aurora Loan Services, LLC v. Julio A. Gonzalez et al* **(2008 CA 10467 MF) (275)**

**Case No. 78:** *U. S. Bank, N. A., Successor-in-Interest to Bank of America, N. A., Successor by Merger to LaSalle Bank, N. A., as Trustee for Mortgage Stanley Mortgage Loan Trust 2006-5AR, Mortgage Pass-Through Certificates, Series 2006-5AR v. Eugenio Rios et al* **(2012 CA 4608 MF)(277)**

**Case No. 79:** *Aurora Loan Services, LLC v. Edward Aristizabal et al* **(2010 CA 0991 MF) (281)**

**Case No. 80:** *Bank of America, N.A., Successor by Merger to Countrywide Bank, FSB v. Frances V. Morales et al* **(2010 CA 2896 MF)(282)**

**Case No. 81:** *BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP v. Sonia Diaz et al* **(2010 CA 6111 MF)(285)**

**Case No. 82:** *Bank of America, N.A. v. Juan Castillejos et al* **(2009 CA 11799 MF)(286)**

**Case No. 83:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates Series 2007-SEA2 v. Tammy A. Jones et al* **(2011 CA 4432 MF)(288)**

**Case No. 84:** *American Home Mortgage Servicing, Inc., a Delaware Corporation, f/k/a/ Mortgage Acquisition Co., Inc. v. Marleny Escobar et al  (2008 CA 9187 MF) (289)*

**Case No. 85:** *Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-3 v. Marleny Escobar  (2011 CA 2121 MF)(292)*

**Case No. 86:** *The Bank of New York Mellon kA The Bank of New York, not in its Individual Capacity but Solely as Trustee for the Benefit of the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-21 v. Nancy B. Merced et al (2012 CA 3122 MF)(297)*

**Case No. 87:** *BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP v. Jose R. Martinez et al  (2009 CA 7941 MF and 2013 CA 1921 MF)(301)*

**Case No. 88:** *Nationstar Mortgage, LLC v. Willie E. McLean et al  (2011 CA 1736 MF)(305)*

**Case No. 89:** *The Bank of New York Mellon FKA the Bank of New York, as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2007-10 v. Teodulio Misael Martinez et al  (2013 CA 0037 MF)(307)*

**Case No. 90:** *Federal National Mortgage Association v. Marie Gabriel et al (2011 CA 2003 MF)(310)*

**Case No. 91:** *Green Tree Servicing, LLC v. Lydia Rodriguez et al  (2012 CA 5510 MF)(314)*

**Case No. 92:** *Green Tree Servicing, LLC v. Glaycon L. Oliveira et al  (2012 CA 5113 MF) (316)*

**Case No. 93:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2007-12 v. DeJesus-Canas et al  (2013 CA 1524 MF)(318)*

**Case No. 94:** *Green Tree Servicing, LLC v. Jeffrey W. Jacobs et al  (2013 CA 2797 MF)(321)*

**Case No. 95:** *HSBC Bank USA, N.A., as Trustee for the Holders of Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA4 Mortgage Pass-Through Certificates v. Luis Oswaldo Arcila et al  (2009 CA 9646 MF)(322)*

**Case No. 96:** *JPMorgan Chase Bank, N.A. v. Antonio Vega et al  (2012 CA 5280 MF)(324)*

**Case No. 97:** *Deutsche Bank National Trust Company, as Trustee for the Holders of Morgan Stanley Mortgage Loan Trust 2005-6AR v. Yury Maldonado et al* **(2012 CA 5924 MF)(326)**

**Case No. 98:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-J14, Mortgage Pass-Through Certificates, Series 2005-J14 v. Luisa A. Checo et al* **(2011 CA 4536 MF)(329)**

**Case No. 99:** *The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2004-6CB, Mortgage Pass-Through Certificates, Series 2004-6CB v. Taylor O. Rubio et al* **(2012 CA 4577 MF)(333)**

**Case No. 100:** *The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2005-84, Mortgage Pass-Through Certificates, Series 2005-84 v. Alfredo Calle et al* **(2012 CA 4621 MF)(336)**

**Case No. 101:** *Deutsche Bank National Trust Company, as Trustee of the Indymac INDX Mortgage Loan Trust 2006-AR29, Mortgage Pass-Through Certificates, Series 2006-AR29 under the Pooling and Servicing Agreement Dated September 1, 2006 v. Evaristo Lopez et al* **(2012 CA 5379 MF)(337)**

**Case No. 102:** *JPMorgan Chase Bank, N.A. v. Marcos A. Giraud et al* **(2012 CA 3149 MF) (343)**

**Case No. 103:** *M & T Bank v. Manuel A. Otero et al* **(2010 CA 2291 MF)(346)**

**Case No. 104:** *The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-18CB, Mortgage Pass-Through Certificates, Series 2006-18CB v. Hector Diaz et al* **(2012 CA 4609 MF)(348)**

**Case No. 105:** *JPMorgan Chase Bank, National Association, Successor by Merger to Chase Home Finance, LLC v. Susan Sam et al* **(2013 CA 0670 MF)(350)**

**Case No. 106:** *Deutsche Bank National Trust Company, as Trustee for the Certificateholders of the First Franklin Mortgage Loan Trust 2005-FFH3, Asset-Backed Certificates, Series 2005-FFH3 v. Adriana Arone et al* **(2012 CA 1591 MF) (351)**

**Case No. 107:** *PHH Mortgage Corporation v. Teresita Gaylon et al* **(2012 CA 002699 MF) (355)**

**Case No. 108:** *U. S. Bank, N.A. as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2006-CB2 v. Jose B. Castro et al* **(2009 CA 6680 MF)(357)**

**Case No. 109:** *Wells Fargo Bank, N.A. as Trustee for the Certificateholders of the MLMI Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-WMC1 v. Adaljisa Revelo et al* **(2012 CA 1402 MF)(358)**

**Case No. 110:** *Countrywide Home Loans, Inc. v. Edith Chavez et al* **(2008 CA 8001 MF)(360)**

**Case No. 111:** *Bank of America, N.A. v. Joseph S. Steiger et al* **(2010 CA 5795 MF)(361)**

**Case No. 112:** *M & T Bank v. Sandra Chavez et al* **(2013 CA 3800 MF)(362)**

**Case No. 113:** *Nationstar Mortgage LLC v. Rosita Karla Castanera et al* **(2012 CA 3383 MF) (363)**

**Case No. 114:** *U. S. Bank, N.A., as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS3 v. Sofia M. Guerrero et al* **(2014 CA 1346 MF)(365)**

**Case No. 115:** *The Bank of New York Mellon FKA The Bank of New York as Successor Trustee for JPMorgan Chase Bank, N.A. as Trustee for Novastar Mortgage Funding Trust, Series 2006-3 Novastar Home Equity Loan Asset-Backed Certificates, Series 2006-3 v. Winston A. Chedda et al* **(2013 CA 1436 MF)(368)**

**Case No. 116:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2005-AA9, by First Horizon Home Loans, a Division of Tennessee Bank, N.A., Master Servicer, in its Capacity as Agent for the Trustee under the Pooling and Servicing Agreement v. Adnan Mirza et al* **(2009 CA 0115 MF)(372)**

**Case No. 117:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2006-OA6 Mortgage Pass-Through Certificates, Series 2006-OA6 v. Noemy Pantoja et al* **(2010 CA 0369 MF)(375)**

**Case No. 118:** *Lehman Brothers Bank, FSB v. Robert V. Chapman et al* **(2009 CA 6287 MF) (378)**

**Case No. 119:** *Pontus Investment Portfolio I, LLC, v. Martin Hernandez et al* **(2012 CA 2610 MF)(382)**

**Case No. 120:** *Wells Fargo Bank, N.A. v. Grizel Bidot et al* **(2012 CA 4505 MF)(388)**

**Case No. 121:** *Citimortgage, Inc., as Successor by Merger to ABN AMRO Mortgage Group, Inc. v. Juanita M. Briceno et al* **(2011 CA 3658 MF)(390)**

**Case No. 122:** *Wells Fargo Bank, N.A. v. Gildardo Rivas et al* **(2010 CA 7245 MF)(392)**

**Case No. 123:** *BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, L.P. v. Jodi A. Klein et al* **(2010 CA 1068 MF)(394)**

## SECTION SEVEN: FINAL SUMMARY

**I. Specific Causes of Action Believed to have Occurred that are Evident**      **398**
**in this Examination**

**II. Specific Noted Patterns of Behavior that are Suspect for Criminal Activity**      **400**

**III. Implications Arising from this Forensic Examination**      **403**

**IV. Closing Comments**      **408**

**V. Attorney Opinion Statement of Jennifer Englert, The Orlando Law Group, P.A.**   **409**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

# SECTION FIVE: CASE STUDIES OF COURT FILINGS INVOLVING ALLEGED ALTERATION OF SWORN DECLARATIONS AND VERIFIED COMPLAINTS

### I. Analysis of the Scenario Involving Suspect Ablitt-Scofield Case Filings

This analysis involves the revelation of a "whistleblower type" lawsuit filing made known to the Examination Team regarding a former Senior Partner of the law firm then known as Ablitt-Scofield, P.C. (now known as Connolly, Geaney, Ablitt & Willard, P.C. (hereinafter "Connolly") headquartered in Woburn, Massachusetts; which operated a satellite office in West Palm Beach, Florida. In late 2013, Connolly filed for Chapter 11 bankruptcy protection.

Prior to the commencement of the examination, news reports surfaced that the Connolly law firm was being evicted from its Woburn, Massachusetts headquarters for failure to pay the rent. There were also reports that its vendors' checks were bouncing. More meaningful to this scenario however was the lawsuit reportedly filed by **WITNESS A** in this Report as referenced herein. A copy of her Amended Complaint is attached as **Exhibit 25** and incorporated by reference herein.

There are specific mentions of the unethical activities alleged by **WITNESS A** regarding demands by her superiors in Woburn, Massachusetts that she alter sworn declarations to embellish them to make them more believable in an effort to speed up the foreclosure filing process as a way to speed up the fees paid by clients to the parent company, which obviously was struggling financially, without sending the altered documents back to the lender for approval.

When **WITNESS A** refused the home office's demands to alter the documents, she was terminated from her position. Connolly also refused to pay **WITNESS A** a promised bonus and that is part of the whistleblower litigation in Florida. After consideration of the alleged matters, the whistleblower case in Palm Beach County, Florida was set for trial. The trial appeared to have taken a turn in favor of the Plaintiff with a default judgment rendered against Connolly; however, shortly afterward, the Connolly firm filed its bankruptcy action.

It is important to recognize that in the cases involving this law firm, the examiners are aware that a whistleblower lawsuit has been filed in Palm Beach County, Florida (Case No. 2013 CA 0750) by **WITNESS A**. The public record will show her to be an attorney in Palm Beach County, Florida named Lorelei Fiala. Ms. Fiala now has her own practice as a foreclosure defense attorney after she was involuntarily dismissed from her position at Ablitt-Scofield, P. C. (now Connolly, Geaney, Ablitt & Willard, P.C.), located at 100 S. Dixie Highway, West Palm Beach, FL 33401. The Osceola County Clerk's office was able to pull down listings of the filings involving the Ablitt Scofield address on S. Dixie Highway and these listings are attached as one **Exhibit 26**, incorporated herein by reference. Also included, as **Exhibit 27**, is a printed website copy of the case court record in Palm Beach County, Florida as a reference of the proceedings.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The main headquarters of this firm appears to be in Woburn, Massachusetts. It is also known to the Examiners that a certain attorney (Matthew A. Pingeton, FBN 177830; "Pingeton") who is also bar-licensed in Massachusetts, has been accused of filing foreclosure complaints that (according to **WITNESS A**) contain sworn verifications (declarations) by their clients that have been altered under the direction of Connolly, Geaney, Ablitt & Willard, P.C. in Woburn, Massachusetts and filed in the Court in Osceola County, Florida under the direction of Pingeton. In her Amended Complaint, **WITNESS A** described this process, beginning at Page 5 of her Complaint against Ablitt-Scofield (see attached **Exhibit 25**, as Amended Complaint of Lorelei Fiala), excerpted in part under the section marked *"Document Fraud Scheme"*:

> (a.) The paralegals in the Boston office would draft the lawsuits and send them to the Florida officer for the attorneys there to proofread and approve. If there were changes, and often there were, to the complaints, then the Florida team would send the complaints and return them to Boston for editing.  In turn, the Boston office made corrections and sent the complaints to Florida for attorney signing.  Once signed by the attorneys, the complaints were returned to Boston and sent to the clients for verification.

> (b.) The firm received payment for their attorney's fees on these foreclosure actions after the verified lawsuits were filed with the Court.

> (c.) In 2011, Steve Ablitt was pushing **WITNESS A** and other lawyers to generate fees, faster, complaining that the editing processes between offices was taking too long.

> (d.) Ablitt changed the verification procedure and mandated that the initial complaint should be drafted in Boston, but instead of sending the complaints to the Florida attorneys for approval the complaints were sent directly to the clients for verification.

> (e.) After the clients signed the verification page of the lawsuits, the complaint and verification would be sent to Florida for filing with the Court.  More often than not, when the Florida attorneys received the complaints they needed substantial changes to the documents. Since the firm required that the verification page be *on a separate sheet of paper* the firm encouraged **WITNESS A** and other attorneys to simply *make the requested changes and use the original verification, without re-verifying with client.*

> (f.) Because **WITNESS A** considered the directions of the firm and its officers to be unethical and in violation of Florida Bar Rules, she refused to alter the documents and was subsequently involuntary dismissed from her job in late 2011.

As a result of the foregoing scenario, the examiners dealing with Ablitt-Scofield generated pleadings were forced to apply the following standards to examining related case documents and files:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) All target period filings by Ablitt-Scofield were considered suspect as to the alteration of sworn declarations by the Affiants' attorneys therein;

(2) All target period filings by Ablitt-Scofield (according to **WITNESS A**) were prepared by the firm's paralegals, which would be construed to mean that the verifications (in the form of client-signed, verified complaints) were NOT the words of the client's "affiant", but rather the words of the paralegals, based on potential hearsay information they received over third-party, computer-generated software networks relied upon by the paralegals whose sources of information were unknown to them; and

(3) Because of the examiners' awareness of the whistleblower action (having had contact with **WITNESS A**), her description of the above-mentioned practices has led the examiners to believe that certain attorneys may have filed these documents with the Court in Osceola County, Florida on behalf of **WITNESS A** in order to make her culpable in their alleged, contrived scheme to defraud homeowners through the submission of these altered, sworn declarations by the affiants named in their complaints.

Thus, the examiners believe that **WITNESS A** has relevant, credible information to aid in the prosecution of what appears to be fraud on the court and criminal wrongdoing. This led the examiners to believe that Connolly attorneys knew or should have known that what was being alleged by **WITNESS A** was unethical and constituted issues involving fraud on the court, RICO and perjury-based allegations.

Two of the Forensic Examiners spoke with **WITNESS A** by phone during the course of the Forensic Examination and **WITNESS A** revealed the names of at least two of the persons involved, both of whom are licensed in Massachusetts AND Florida, that were suspected of following these alleged unethical company-mandated directives.  This information led the Forensic Examination Team to request further file documents for study.

It further appeared to the examiners looking at this information that the paper trail led back to the main office in Massachusetts, who coordinated the foreclosure filings and subsequent litigation. This would then lead the Examiners to believe that there was an alleged RICO conspiracy among the attorneys in both Massachusetts and Florida to:

(1) Draft the initial foreclosure complaints for client review (by paralegals under the direction of Connolly attorneys); and

(2) Once the client's representative signed the verified complaint under penalty of perjury, the firm's officer would order the complaints to be modified to put more "teeth" into them to make them more effective, despite the fact that the Complaint had already been signed as "verified".

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Therefore, it is the belief of the Examination Team that attorneys acting within the scope of their practice as foreclosure attorneys allegedly altered verified complaints and submitted them to the Court in Osceola County, Florida as "represented fact" when they knew or should have known that they (the Connolly attorneys and officers) altered said verified complaints which was not only unethical but places the firm and its member attorneys of record as suspects for subornation of perjury, perjury, fraud on the court and for Florida RICO violations as one or more parties acted in concert with the Connolly firm to alter the documents prior to their filing and after they had been sworn to as verified.

These suspected case filings took place after the dismissal of **WITNESS A**, thus, the allegations involve filing dates within the two-year scope of this Forensic Examination or within proximity of statutory considerations in light of any pending criminal proceedings.

The following listed cases, along with all suspect cases listed throughout this report involving this law firm, are suspect for criminal violations under the Florida RICO statutes as well as in violation of Florida Criminal Code § 817.535 if there appears any recorded document manufacturing involving Ablitt-Scofield, P.C. or any of its employees, who operate under the direction of the Connolly firm:

## II. Listings and Relevant Information of Suspect Ablitt-Scofield Case Filings:

**Case No. 1:** ***U. S Bank, N.A., as trustee, on behalf of the holders of the Home Equity Asset Trust 2007-2 Home Equity Pass-Through Certificates, Series 2007-2 v. Grace Posa et al* (2013 CA 3521 MF)**

This case involves two different assignments.

### CFN#2005260298, recorded by presentment on 11-13-2005

The first Corporation Assignment of Mortgage was executed on April 18, 2004 from Paragon HomeFunding, Inc. (which went bankrupt and was dissolved in 2008) to Chase Home Finance, LLC.

There was only one witness to the Instrument, the Notary (Karyn W. Allison, Florida Notary Commission No. DD259982), signed by Edward Parnell, who claims to be President of the apparent table-funded lender.  Two witness signatures  are generally required on Assignments in Florida. Chase Home Finance, LLC (the Assignee) was subsumed into JPMorgan Chase Bank, N.A. on or about July 1, 2011.

It appears that Peelle Management Corporation ("PMC"; a known third-party document manufacturer) of Reno, Nevada was involved in the preparation or assignment of this document.

**4 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2013106994, recorded by presentment on 07-15-2013**

The second Corporate Assignment of Mortgage was executed on May 29, 2013 by Matt Faiola, who claims to be Vice President of MERS as nominee for ResMae Mortgage Corporation (which filed for bankruptcy in February of 2007 and is presumed defunct) as Assignor to U. S. Bank, N.A. (the alleged Plaintiff) as Trustee for a trust series whose closing date was April 2, 2007; thus, too late (by over six years) to transfer the mortgage and note into the trust. Betsy Ozmore and Helen Tobler (known robosignors) witnessed Faiola's signature, which was acknowledged by Shirley Tuitupou, a notary public in and for the State of Utah (Commission No. 659599).

At issue here is the fact that the Borrowers never agreed to have MERS involved in their Mortgage; it was not stated in their original mortgage contract. However, just prior to the filing of the Complaint by Ablitt-Scofield's attorneys, the second Corporate Assignment of Mortgage was filed. The notarial execution was undelineated, a marker of document manufacturing. Further, MERS on behalf of a defunct originating lender, not a nominee party to the contract, could not transfer something it did not have an interest in, namely, the Note. The notarial execution only mentioned MERS and not the defunct ResMae Mortgage Corporation, stating that Faiola was acting in an "authorized capacity" by signing as MERS Vice President, when the Borrower's did not contractually involve MERS as a party to their Mortgage. Further, the document was prepared by Select Portfolio Servicing's Bill Koch and it is implied here that the signor, the witnesses and the notary, were all employees of the servicer and NOT the original or defunct lender. This document would then appear to contain misrepresentative information with the intent to deprive the property owner of their property, in violation of Florida Criminal Code § 817.535.

Further, Ablitt-Scofield attorneys Menina E. Cohen (FBN 14236), in concert with home office attorney Matthew Pingeton (FBN 177830), who signed FOR Cohen on the Notice of Lis Pendens, filed by presentment for record as **CFN#20131691** on 10-28-2013, submitted a Complaint that is believed to contain an altered sworn statement, which was known to be allegedly false to both attorneys filing the Complaint, at the direction of the home office in Woburn, Massachusetts according to **WITNESS A**. This would constitute a RICO violation in addition to unethical practices in violation of Florida Bar Rules and would further constitute fraud on the Court. The case record now shows the matter to be in mediation. The first mediation was attended by the Borrowers and their attorney and a paralegal; however, the Plaintiff's counsel failed to appear and it was so noted. Despite the fact there has been no formal adjudication in the case, the intent appears clear that the use of the false and misrepresentative assignment was filed in tandem with the filing of the Complaint which led the Examiner to believe that probable cause exists for violations of Florida RICO statutes and for at least one violation of F. C. C. § 817.535. Subsequent documents filed by these attorneys (one of the known actors identified by **WITNESS A**) may constitute further fraud on the Court, which could result in sanctions, discipline or disbarment. A copy of the note showing an undated indorsement from ResMae Mortgage Corporation's Marjorie Jorgensen, in blank, does not verify the effective date of transfer. Again, the Borrowers did not agree to allow MERS into their contract.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 2:** *M & T Bank v. Paul J. McNamee et al* **(2013 CA 3006 MF)**

Despite the fact that there do not appear to be any Assignments of Mortgage affecting the Plaintiff's alleged lien interest (along with a previously-ordered Voluntary Dismissal by the Court), the same actors as in the previous case scenario filed a Notice of Lis Pendens by presentment on 08-30-2013 (**CFN#2013137666**) along with a Complaint alleging that a Note and Mortgage was attached as Exhibit "A", except there was no Exhibit "A" attached as is generally required under the Florida Rules of Civil Procedure.

Even more suspect is that attorney Cohen filed a "Certification of Possession of Original Note", which appears to contain suspect issues, to wit:

> (1) Cohen alleges that he personally verified possession and location of the original promissory note on August 1, 2013;

> (2) Cohen stated under penalty of perjury that the original promissory note was located in Woburn, Massachusetts at a specific address (with no suite number, as it is an office building), when in fact this attorney works out of the West Palm Beach, Florida office;

> (3) Further, his certification appears false because he claims that "copies of the original and allonge(s), if any, are attached hereto. There were no attachments of record and if there were any allonge(s) ("if any"), then Mr. Cohen should have stated such; and

> (4) He certified that the Plaintiff was in physical possession of the Note, when he just stated the original promissory note was located at his main office headquarters in the Boston, Massachusetts area when in fact, the Plaintiff, M & T Bank, is headquartered in Buffalo, New York.

Thus, this is only a sample of a certification that appears to be false, despite other filed documentation at a later date (fraud on the Court is already alleged here), his statements in this certification are contradictory and believed to be false. Given the developing pattern, and despite the fact there has been no formal adjudication in the case, the intent appears clear that the use of the false and misrepresentative certification and Complaint with no Note and Mortgage attached as proffered was suspect to believe probable cause exists that multiple actors designed this litigation in violation of the Florida RICO statutes: (a.) to bring fraud on the Court; and (b.) to deprive the property owner of his property while committing apparent perjury using Court filings as the scheme to defraud.

**CASE NOTES:** The second assignment to the Plaintiff from National City Mortgage Company appears to have been executed on February 9, 2004 and was filed by presentment on 06-09-2009 as **CFN#2009090032**. The endorsement shown on the Note in the Court filings is undated, unlike the indorsement previous to it; thus, there was no effective date of transfer shown here.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 3:** *JPMorgan Chase Bank, N.A. v. Byron L. Shaw et al* **(2013 CA 3718 MF)**

**Byron L. Shaw executed a MERS-originated mortgage in favor of SunTrust Mortgage, Inc. which was recorded by presentment on 11-06-2009 as CFN#2009178635. This case involves an Assignment of Mortgage that is suspect for violation of Florida Criminal Code § 817.535.**

There are numerous issues with this foreclosure Complaint filing, to wit:

(1) The verification signature by the Chase representative appears to be that of a young person, who claims to be a Vice President of Chase, executed on October 7, 2013;

(2) The attorney for the Connolly law firm is Menina E. Cohen (FBN 14236).
There is small-faced type below his signatures that claims that a "division of this law firm's practice" without specifically stating which division;

(3) The "Certification of Possession of Original Note" appears to be a boiler-plated document, in which the attorney (or his paralegal in Massachusetts) makes the same apparent claims as in the previous case issues discussed, supra, to wit:

(a.) Cohen alleges that he personally verified possession and location of the original promissory note on August 9, 2013;

(b.) Cohen stated under penalty of perjury that the original promissory note was located in Woburn, Massachusetts at a specific address (with no suite number, as it is an office building), when in fact this attorney works out of the West Palm Beach, Florida office;

(c.) Further, his certification appears false because he claims that "copies of the original and allonge(s), if any, are attached hereto. There were no attachments of record and if there were any allonge(s) ("if any"), then Mr. Cohen should have specifically stated such;

(d.) He certified that the Plaintiff was in physical possession of the Note, when he just stated the original promissory note was located at his main office location in Boston, Massachusetts area when in fact, the Plaintiff, Chase, is headquartered in Monroe, Louisiana (or Jacksonville, Florida), according to the apparent, self-assigned Assignment of Mortgage filed by presentment on 09-07-2012 as **CFN#2012130623**; and

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(e.) While the Note proffered by Cohen has two indorsement stamps affixed to the document, they are undated and one of them is indorsed in blank when Chase was allegedly in possession of it.  Effective date of transfer appears to be unknown and unproven at the time of the filing of this Complaint.

Further, the Assignment which is being used to predicate the foreclosure action was prepared by Erika Lance of Nationwide Title Clearing in Tampa, Florida, under directions from Chase or other identified sources.  It is apparent to the Examiner that the document was signed by parties not privy to the same alleged "hearsay" information that Lance had in her possession.  It further appears, from checking Court records, that a Final Judgment of Foreclosure is pending as of the entry herein.

**Case No. 4: *Deutsche Bank National Trust Company fka Bankers Trust Company of Cali fornia, N.A. as Trustee for the Holders of the Vendee Mortgage Trust 2003-2 v. Brent W. Parenteau et al* (2013 CA 4077 MF)**

**This foreclosure action involves two assignments, one of which appears to have been manufactured by Countrywide employees back in 2003 (CFN#2003338890) and the other by Bank of America, N.A. employees (CFN#2013168310) as a Corrective Assignment.  The Corrective Assignment was prepared by a Connolly employee in West Palm Beach, Florida and executed allegedly by the Bank of America, N.A. employees in Dallas County, Texas and returned to Connolly's address in Woburn, Massachusetts, which would render the document suspect for not only criminal violation of Florida Criminal Code 817.535 but also of Florida RICO statutes.**

**Further, the corrective assignment purports to correct the Plaintiff name, but it failed to assert the other information about the Secretary of Veterans Affairs, which should have been included in the corrective assignment as it was in the first recorded assignment.  Instead, because the foreclosure mill law firm prepared it, calling it a "Confirmatory Assignment of Mortgage", left the VA completely out of the equation, making the assignment suspect for manufacture and suspect for multiple legal challenges.**

The main cognizable issue here is that the Corrective Assignment was filed prior to the commencement of the proceedings to give Deutsche Bank some alleged standing to foreclose; however, there are other issues present as well, to wit:

(1) Despite the fact the case was voluntarily dismissed, due to what appears to be the apparent issuance of a Satisfaction of Mortgage, the Satisfaction was initiated by employees of Bank of America's trustee, ReconTrust Company, N.A. and not be Deutsche Bank as Plaintiff;

**8 of 412**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(2) The Satisfaction of Mortgage does NOT contain two witnesses' signatures, which makes the document subject to legal challenge as to whether the party effectuating the Satisfaction document actually had knowledge or was directed by an attorney or prepared by an attorney, which may make this Satisfaction subject to issues involving the unauthorized practice of law ("UPL");

(3) The preparation of the Connolly assignment would also be subject to UPL issues if there was no attorney directing its manufacture;

(4) The fact that Connolly, by and through its employees and agents, caused the alleged erroneous assignment to be recorded in the real property records, makes the misrepresentation of the facts suspect enough to assert criminal violations under Florida Criminal Code § 817.535 because the intent, as stated in the assignment itself, was to correct the Plaintiff's name in the Complaint, yet the manufactured document is alleged by the Examiners to contain false and misleading information, potentially slanderous to the chain of title, despite the canceling of the Notice of Lis Pendens; and

(5) The Vendee Mortgage Trust 2003-2 is not a registered trust with the U. S. Securities and Exchange Commission, which may mean that it is a 144 or 144-A trust vehicle, subject to certain restrictions.  It is unknown whether the Parenteau loan was multiply pledged into other trusts, thus, it is unknown if the Satisfaction was properly initiated.

Further, the Bank of America, N.A. claim of Note-Allonge was not properly labeled (even though it was dated) as an "Allonge to Note"; thus, there are issues here with document manufacturing by Jacksonville or Dallas Bank of America, N.A. employees.

**Case No. 5:** *Nationstar Mortgage LLC v. Jose J. Rivera Quinones et al* **(2013 CA 3969 MF)**

**CASE NOTES: This case involves two suspect Assignments of Mortgage directed by Bank of America, N.A. out of Dallas County, Texas and Ventura County, California.  Both documents contain multiple markers of robosigning and document manufacturing.**

**Whether it was a work product mistake or not, Connolly attached a cover letter than was recorded with the Complaint and filed with the case and is in Certified Copy format as evidence herein, which appears to comport with WITNESS A's allegations of Connolly's intent to alter sworn declarations.  The letter appears to verify that Connolly's staff prepared the Complaint.  It further appears that a caveat sentence was added to thwart suspicion that the Connolly law firm was involved in such a caper, through the use of the phrase, "improper or suspect authority respecting the verification by plaintiff may result in the dismissal of the complaint and the foreclosure action."**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The letter says nothing about Connolly attorneys in Massachusetts "embellishing" the verification, only that the Florida attorneys prepared it.  However, it does reflect that multiple parties were involved in the preparation of the complaint, which could be construed as hearsay based on multiple parties' work product input to the verification itself.

The first Assignment of Mortgage was recorded on 03-13-2012 as **CFN#2012034578**.  The signors, Cynthia Romo and Larisa Post, both claiming to be Assistant Secretaries of MERS, are allegedly Bank of America, N.A. employees, who attested to information within a document prepared by another Bank of America employee, Diana DeAvila.   This assignment claims that MERS' address is the address for Metro Detective Agency in Danville, Illinois.  More egregious however is that the Assignment claims that the Assignee's address (Bank of America, N.A.) is 451 7th Street, SW, B-#133, Washington, DC 20410.  The Assignment also appears to assign the mortgage "together with the Note", something that MERS cannot do because it does not have an interest in the Note. A simple internet search revealed the following misrepresentation in this Assignment:

**U.S. Department of Housing and Urban Development 451 7th Street S.W., Washington, DC 20410 Telephone: (202) 708-1112 TTY: (202) 708-1455**

The second Assignment of Mortgage does not even mention HUD.  It just purports to jump from Bank of America, N.A. (acting as one servicer for the note and mortgage) to Nationstar Mortgage. The Examiner believes this was done to purposefully throw off any misdeeds from Bank of America and put it in the hands of another servicer to isolate any potential liability.  The document appears to have been executed out of Bank of America's Dallas office, prepared by a Bank of America, N.A. employee, which would mean the signors did not have personal knowledge of the facts they were attesting to, not to mention the lack of involvement of HUD in this document.

It further appears that the case involved the same two Connolly attorneys, Pingeton and Cohen, with Pingeton being alleged by **WITNESS A** as the party to whom is suspect for altering the verified Complaint AFTER the client signed it and BEFORE it was filed with the Court.  It further appears that Albertelli Law was substituted by Counsel in August of 2014 during the pendency of the case, which is still ongoing as of the filing of this entry. It further appears that during the early stages of this case, Michael P. Bruning was also involved for the Connolly law firm (FB-N37361).

The Certification of Possession of the Original Note, contains similar issues to the previously-discussed apparent flaws in the Certification, to wit:

> (1) Cohen alleges that he personally verified possession and location of the original promissory note on August 8, 2013;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(2) Cohen stated under penalty of perjury that the original promissory note was located in Woburn, Massachusetts at a specific address (with no suite number, as it is an office building), when in fact this attorney works out of the West Palm Beach, Florida office and NOT out of the Connolly office in Woburn, Massachusetts;

(3) Further, his certification appears false because he claims that "copies of the original and allonge(s), if any, are attached hereto.  There were no attachments of record and if there were any allonge(s) ("if any"), then Mr. Cohen should have specifically stated such; and

(4) He certified that the Plaintiff was in physical possession of the Note, when he just stated the original promissory note was located at his main office headquarters in the Boston, Massachusetts area when in fact, the Plaintiff, Bank of America, N.A., is head quartered in Charlotte, North Carolina.

Despite the fact that the copy of the Note proffered to the Court contains an indorsement from Bank of America, N.A. by known robosignor Michele Sjolander, without recourse, there is no appearance of HUD anywhere in the chain of custody of the Note, which creates more suspect issues involving Florida RICO violations in addition to probable cause to believe that violations of Florida Criminal Code § 817.535 also occurred, twice.

**Case No. 6:** *JPMorgan Chase Bank, N.A. v. Miguel A. Velasco et al* **(2013 CA 3967 MF)**

**CFN#2013142752, recorded by presentment on 09-11-2013**
**Signor: Rosalva Cardenas (as Assistant Secretary of MERS as nominee for involuntary dissolved as of 07-08-1988 FBC Mortgage, LLC), as Assignor.**
**Witnesses: Viviana Balanta, Micole J. Lee**
**Notary: William H. Dabney - ID: 124770033**

Address: 1205 Vincent St 202, Fort Worth, Tx 76120-0000
Expires:Mar 10, 2017; County: Tarrant; Agency: Mark Master Inc.
Surety Company: Western Surety Company

| History | As | Effective | Expire Date |
|---|---|---|---|
| Recommissioned | William H. Dabney | 03/10/2013 | 03/10/2017 |
| Commissioned Notary Public | William H. Dabney | 03/10/2009 | 03/10/2013 |
| Commissioned Notary Public | William H. Dabney | 12/12/2003 | 12/12/2007 |

This notary's commission appears to be valid and was at the time of execution and acknowledgment of this document.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The document misrepresents the defunct entity's address as Metro Detective Agency in Danville, Illinois, who accepts service of process for MERS.  A search of Chase's address (14800 Frye Road, Fort Worth, TX 76155) comes up with JPMorgan Chase Bank, N.A. as Assignee.

The county of execution however is noted as Dallas County, Texas and NOT Tarrant, which is where the notary is listed and Chase is listed.  This makes this document suspect for self-assignment by Chase employees.  The document was prepared by Connolly staff and after recordation, returned to Connolly's Woburn, Massachusetts main office.  The fact that Connolly employees probably accessed this information by computer from third-party data sources would mean that:

> (1) the person drafting the assignment had no personal knowledge of the facts therein;

> (2) the signor had no knowledge of the facts because the signor was allegedly in Dallas County, Texas while the law firm that prepared the document was in Palm Beach County, Florida; and

> (3) the notary taking acknowledgment of the signor swore under Penalty of Perjury that the signor acted in an "authorized capacity", which is highly likely since that would have had to have been recorded previous to the event as an attorney-in-fact or through the demonstration of some other document.  None was provided here.

Thus, this document was prepared with the intent to be recorded in the real property records of Osceola County, Florida to be used in conjunction to attempt validation of the loan for the purposes of depriving the property owner of his property using a manufactured assignment containing false and misrepresentative information, in violation of Florida Criminal Code § 817.535.  Subsequently, a Notice of Lis Pendens was filed by Connolly attorney Menina Cohen.

Due to issues presented through **WITNESS A's** whistleblower Complaint, there is reason to suspect that not only did the Connolly law firm manufacture the assignment, but could have manipulated the language within the verified complaint as well, bringing with it issues of fraud on the Court and subornation of perjury, using an assignment manufactured to give Chase standing to foreclose.  Further, the ***Certification of Possession of Original Note*** contains the same errors found in previous Connolly/Ablitt issued documents, which are all suspect for perjury in that:

> (1) Cohen alleges that he personally verified possession and location of the original promissory note on October 28, 2013;

> (2) Cohen stated under penalty of perjury that the original promissory note was located in Woburn, Massachusetts at a specific address, when in fact this attorney works out of the West Palm Beach, Florida office and NOT out of the Connolly main office in Woburn, Massachusetts;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(3) Further, his certification appears false because he claims that "copies of the original and allonge(s), if any, are attached hereto.  There were no attachments of record and if there were any allonge(s) ("if any"), then Mr. Cohen should have specifically stated such; and

(4) He certified that the Plaintiff was in physical possession of the Note, when he just stated the original promissory note was located at his main office headquarters in the Boston, Massachusetts area when in fact, the Plaintiff, Chase, in consort with the law firm, caused an assignment to be generated out of Dallas County, Texas.  There is no way the Note could be in two places at once.

Page 3 of 3 of the alleged "Note" contains an indorsement stamp that was stamped **VOID**; another indorsement stamp that similarly states that Victoria Alex is signing as Attorney-in-Fact for FBC Mortgage LLC, a Florida LLC (that is defunct) and again, signed as Assistant Secretary in another indorsement stamp as "Pay to the Order of: in blank", without recourse, from Chase, when in fact, Chase is the clamant holder.

A check of the Osceola County, Florida real property records revealed that there was no previously-recorded LIMITED POWER OF ATTORNEY from FBC Mortgage LLC to anyone, whether this LLC was defunct or not; thus, there are issues with fabrication of the indorsement stamps being allegedly used to prove standing.

**NOTE: A Facebook search of this individual produced the following:**

**Victoria Alex**. Works at **JPMorgan Chase** Lives in Monroe, Louisiana

Alex also signed as "its Authorized Assistant Secretary" for both Chase and long since defunct-FBC.   Thus, the alleged "Original Note" could be in Monroe, Louisiana where Alex is located. It is highly likely that Connolly orchestrated the entire event at the direction of Chase supervisory staff (telling Connolly what to do), which could be construed as the unauthorized practice of law, in addition to violation of Florida RICO statutes.

Also attached to the Court file was a letter from the Defendant property owner who attached a Residential Real Estate Sale Contract (which appears he is being forced to sell the property in lieu of foreclosure).  It is not known however, given this set of circumstances, whether the proper party was paid in full at closing as it appears a Warranty Deed was issued to Xun Zhou and Zhongrui Zhou on April 14, 2014 by the Defendants.

There is no Satisfaction of Mortgage recorded in the real property records of Osceola County, Florida. It appears that Watson Title Services, Inc. of Longwood, Florida (407) 645-1310 handled the transaction.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thus, someone at Watson Title may have knowledge as to which party was paid and why a Warranty Deed was issued when MERS was involved in the original mortgage with FBC. The Defendants warranted to defend title "against the lawful claims of all persons whosoever"; thus, they may have incurred potential liability in the process of negating the foreclosure. It further does NOT appear that the Notice of Lis Pendens was ever cancelled in this case.

**Case No. 7:** *HSBC Mortgage Services, Inc. v. Nydia Labiosa et al* **(2013 CA 3387 MF)**

**CASE NOTES: The Notice of Lis Pendens was electronically filed with the Court by Matthew Pingeton (FBN177830) of the Connolly law firm (one of the attorneys named by WITNESS A who is suspect of spearheading the alteration of verified complaints filed by the Connolly law firm on behalf of its clients). The original Mortgage (CFN#2006097562) was executed in favor of EquiFirst Corporation of North Carolina, which went out of business in February of 2009. MERS was also listed on this Mortgage.**

The Property has been similarly affected by other actions on behalf of both Villas Del Sol at Kissimmee (for non-payment of a COA lien) in 2009 and a prior mortgage foreclosure (2010 CA 4975) filed by the law offices of Daniel Consuegra, which was subsequently dismissed without prejudice. However, this foreclosure case was initiated by HSBC in 2010 shortly after filing an Assignment (CFN#2010111787) prepared by Florida attorney Daniel C. Consuegra of the same law firm, naming MERS as nominee for the then-defunct EquiFirst Corportion, as Assignor to HSBC Mortgage Services, Inc. as Assignee.

It appears from the notarial execution and jurat that the signor, notary and witnesses were all employed by HSBC Mortgage Services, Inc.; thus, the assignment was "self-assigned" just prior to the commencement of the foreclosure action five (5) days later, which makes the assignment now suspect for document manufacturing with the intent to defraud the property owner in violation of Florida Criminal Code § 817.535. Further, the alleged verified complaint purports to have a "Composite Exhibit A" attached to it, which is NOT attached, as noted. The Verification is purportedly signed by Tanya M. Rone, who claims to be a Vice President AND Assistant Secretary of Administrative Services Division. It is signed by Menina Cohen; however, the filing is still suspect for alteration of the sworn declaration within the verified Complaint as asserted by WITNESS A.

Attached to the Complaint is a Certification of Possession Pursuant to Florida Statute 702.015(4), which makes the filing further suspect. The Certification appears to have drafted like an affidavit and appears to fail because it does not appear as if Jeffrey W. Kordecki, who claims he has the same title as Tanya M. Rone, supra, has personal knowledge of the actual assignment of the Note and its whereabouts. He only appears to have knowledge that HSBC Mortgage Services, Inc. keeps records he has access to.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Kordecki further claims he obtained the original Note at the Brandon, Florida offices of HSBC Mortgage Services, Inc. yet, neither the Note nor the Mortgage is attached to this Complaint, which makes it further suspect for document manufacturing and perjury issues. The Certification appears to be notarized by Victoria M. Escobar, who claims this is an Affidavit, when it purports to be a Certification, which makes it more suspect for manufacturing by the law firm in concert with Plaintiff HSBC and its employees.

It now appears that Albertelli Law has been substituted as the new counsel for HSBC, which is still appears to be in its pendency at this time.

**Case No. 8:** *Bank of America, N.A. v. Mary K. Watts et al* **(2013 CA 3397 MF)**

This case begins with a MERS-originated Mortgage that was recorded by presentment on 01-20-2005 as **CFN#2005015187** in favor of Countrywide Home Loans, Inc.

In 2010, the David J. Stern Law Firm recorded a Notice of Lis Pendens by presentment on 04-12-2010 as **CFN#2010051414** on behalf of BAC Home Loans Servicing, LP fka Country-wide Home Loans Servicing, LP ("BAC"); noted as Case No. 2010 CA 2563 MF.

Unfortunately, there were apparent issues with the lack of assignment to BAC, so someone at Stern appears to have created an Assignment of Mortgage for the express purpose of proving standing and caused it to be executed by BAC/Bank of America, N.A. employee Ann Marie Cook, who claims to be Vice president of MERS as nominee for Countrywide Home Loans, Inc. in an attempt to transfer the Mortgage "together with the Note" to BAC, in what appears to be a self-assignment, one of many document manufacturing abuses (in this case, contributed to by the foreclosure mill law firm, now defunct). The parties caused this document (which contains numerous markers of document manufacturing and evidence of robosigning) to be filed in the real property records of Osceola County, Florida, suspect for misrepresentations under Florida Criminal Code § 817.535, as the parties executing this Assignment were directed to do so by the law firm expressly for the purposes of foreclosure on its own behalf. The Assignment was filed by presentment on 08-17-2010 as CFN#2010117830, four months AFTER the Stern Law Firm filed the Notice of Lis Pendens and Complaint for Foreclosure.

The case was subsequently dismissed by Judge Ronald A. Legendre on April 15, 2011 for lack of prosecution on the Court's own motion, recorded by presentment on 06-28-2011 as **CFN#2011087820**. During the pendency of the proceedings, Bank of America, N.A. subsumed Countrywide Home Loans, Inc. and its servicing unit, Countrywide Home Loans Servicing, LP. Following the pendency of the proceedings, Bank of America, N.A. subsumed its own servicing unit, BAC, into itself on or about July 1, 2011.

**15 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

A new Notice of Lis Pendens was filed by presentment on 10-14-2013 as CFN#2013162612 by Matthew Pingeton (FBN177830), executed on September 12, 2013 on behalf of Menina E. Cohen (FBN14286).  Cohen's signature appears on the Notice of Lis Pendens, but his name is omitted in favor of his Florida Bar number.  Both attorneys work for the Connolly law firm.  Pingeton also is a member of the Massachusetts Bar and again is suspected of directing the filing of altered sworn verified complaints into the Court in Osceola County, Florida as named by WITNESS A, herein restated for reference. Because the Mortgage was originated using MERS, it appears that Bank of America, N.A. may just be the Servicer for an unnamed trust entity that does not appear present before the Court in the filing of the instant case, naming Bank of America, N.A. as Plaintiff.

The Verification portion of the Complaint appears to have been executed on September 10, 2013 by Lindsey Ann Vought who claims to be an Assistant Vice President of Bank of America, N.A. A search of this individual (http://www.indeed.com/resumes/Bank-of-America/in-Pittsburgh-PA) found her to be a "Foreclosure Specialist" for Bank of America.

Again, considering the issues involving the use of the MERS electronic database, which involves the securitization of the note, it is highly likely that Bank of America only has an image file and hearsay information inputted into the Bank's databases that Vought relied on when she signed this Verification.

Further, because of the allegations of WITNESS A against Pingeton and others involved in the alteration of sworn statements, the entire Complaint is suspect for fraud on the Court.  Because the Complaint relies on the previously-recorded Assignment to establish standing, the Complaint is the furtherance of the scheme to deprive the property owners of their property through the use of a recorded document containing alleged false and misrepresentative information in violation of Florida Criminal Code § 817.535.

The Note and Mortgage do not appear to have been included in the Court file, despite the Complaint's reference as   "composite Exhibit A". Additionally, under Certifications to the Court known as "Form A", Pingeton also appears to have executed this document on behalf of Cohen.  It appears that Pingeton prepared and directed the initial service of process in this case.

It further appears that the Defendant in this action filed a letter with the Court explaining the situation with Bank of America, N.A.  It appears her personal circumstances include Bank of America's unwillingness to help her stay in her home with her elderly mother, who has dementia.  She appears to plead with the court to give her until March 2014 to move into a retirement home with her mother.  It appears that the law firm and Mrs. Watts agreed to mediation, as there is evidence of fees paid by Watts and the law firm, interestingly on an "Ablitt-Scofield" check.  An examination of the balance of the Court files showed no agreement being reached.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It further appears that Clarfield, Okon, Salamone & Pincus, P.L. ("Clarfield") was then substituted as new counsel of record as of May 15, 2014 by its representative Marc Ruderman (FB-N899585).   The Clarfield law firm is also named under a separate heading in this Report as having participated in the manufacture of an Assignment of Mortgage.

An Order confirming Substitution of Counsel was signed by Judge Robert J. Pleus, Jr. on May 27, 2014.  It further appears that on August 19, 2014 (after the initial forensic examination was conducted by the team) that Judge Pleus Ordered a substitution of the Party Plaintiff as Bayview Loan Servicing, LLC.  This is an indicator that Bank of America, N.A. was simply the Servicer and not a holder with the rights to enforce the Note.

It further appears that there is no recorded Assignment in the real property records of Osceola County, Florida that would indicate that Bayview was assigned any rights to the Mortgage or Note whatsoever and that this case appears to be moving forward simply based on an "agenda" and nothing else.  A Status Hearing also appears to have been set for October 3, 2014, the results of which are unpublished in the Court file.

**If indications of procedure are correct, the actors involved in this scenario will all have relied on the original Assignment of Mortgage, supra, to:**

      **(1) continue to perpetrate fraud on the Court; and**

      **(2) to eventually deprive the property owner of her property.**



**Case No. 9:** *Bank of America, N.A. v. Edwin Soto et al* **(2012 CA 5227 MF)**

**CASE NOTES: Given the fact it appears that the Defendant property owner secured a non-MERS mortgage and note directly with Bank of America, N.A. from the onset of this scenario, recorded by presentment on 03-26-2009 as #CFN2009048950, the original action by Plaintiff's counsel (Pingeton and Cohen, acting in concert to produce the Complaint, which may contain altered sworn declarations), the alleged attached "Note" contains no indorsements to any other party and thus appears to indicate that Bank of America is the holder with the right to enforce. On November 13, 2013, attorney Michael P. Bruning (FBN37361), who is also bar licensed in Massachusetts (and thus a suspect actor in the alleged alteration of sworn declarations) filed a Motion to Substitute the Party Plaintiff and Change the Case Style to Nationstar Mortgage LLC, which Judge Miller granted the next day.  As part of the Motion, Bruning submitted a new Assignment of Mortgage, recorded by presentment on 08-21-2013 as CFN#2013130714.  A certified copy of said Assignment was made part of the Court file.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Assignment contains numerous markers of document manufacturing and was executed in Dallas County, Texas. The document appears to have been prepared by one Bank of America employee (Marcus Jones) and executed by signors that appears to have no knowledge of the facts to which they are attesting. This may be the only set of misrepresentative facts alleged in this instance.

The manufacturing and alleged robosigning of this document may make it suspect, but the conveyance of record from Bank of America, N.A. to Nationstar Mortgage LLC using this document involved the law firm during the pendency of this case; thus, the intent to create the document for the purpose of foreclosure is apparent to the Examiner.

No additional evidence of transfer of the Note is offered to date, showing a transfer of the Note to Nationstar Mortgage, LLC. Due to the violation of Court Extended Time to Perfect Service of Process being exceeded, Judge Miller dismissed the case as to non-specific Defendants on September 14, 2014; however, the pendency of the case still shows ACTIVE in the Court files.

**Case No. 10: *JPMorgan Chase Bank, N.A. v. Angel Andrews et al* (2013 CA 2977 MF)**

**CASE NOTES: Given the fact it appears that the Defendant property owner secured a non-MERS mortgage and note directly with JPMorgan Chase Bank, N.A. from the onset of this scenario, recorded by presentment on 02-01-2008 as #CFN2008024385, it would appear at first blush that the Plaintiff in interest is present in this action. The Verified Complaint to Foreclose Mortgage however, has numerous apparent flaws with it, not to mention the pattern of suspect alterations of sworn declarations that may be present within it, to wit:**

> **(1) Paragraph 2 states that the Note is attached as Exhibit "A", yet there is no attached Exhibit "A";**

> **(2) Paragraph 2 also states that the Mortgage is attached as Exhibit "B", yet there is no attached Exhibit "B"; and**

> **(3) The Complaint declares in Paragraph 3 that it is in "physical possession of the Note "endorsed in blank" which is the subject of this action and therefore, is the holder of that Note. If the Defendants executed the note and mortgage in favor of JPMorgan Chase Bank, N.A., what would be the purpose for an "endorsement in blank"?**

**Thus, the Examiner believes that, inter alia:**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) the party drafting this Complaint at the Connolly law firm was not paying attention to the details as provided, or in the alternative, an endorsement in blank would indicate that Chase sold the Note and Mortgage to another party in interest, who is not present in these proceedings;

(2) the law firm prepared the document which was verified by Tina Lyons who claims to be a Vice President of JPMorgan Chase Bank, N.A., but may have allowed subornation of perjury to occur by way of:

> (a.) her failing to read and recognize what misinformation the law firm put into the pleadings; and/or

> (b.) the attestant to the facts had absolutely no knowledge of the actual facts or relied on hearsay information and simply signed it as directed by someone else at Chase;

(3) Menina E. Cohen (FBN14236) is ultimately responsible for the actions of his paralegals who drafted the Complaint, yet failed to adequately supervise the drafting of the Complaint, in violation of Florida Bar Rules; and/or

(4) Someone else may have altered the sworn declaration once Cohen affixed his/her signature to it.

Despite these issues, it appears that the Defendant Borrowers individually submitted letters to the Court indicating they were working with Chase to sell the Property at short sale and that they were under contract with a potential buyer for the full appraised value of the home.  Whether this will actually retire the entire Mortgage and Note is undisclosed.

Despite these issues, it appears that a Release of Lien was filed by JPMorgan Chase Bank, N.A., executed on May 29, 2014.  There are issues with this Release of Lien, to wit:

(1) The document was prepared by Erika Lance of Nationwide Title Clearing in Palm Harbor, Florida;

(2) The document was executed by employees of Chase, signed by Ingrid Whitty (a known robosignor) as Vice President and witnessed by Amy Kight and Chastity A. Newsome and notarized by Bridget A. Chunn (Louisiana Notary Commission No. 64479; lifetime commission);

(3) The document was not delineated (within the notarial execution) as to gender and plurality, which is a marker of document manufacturing;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) Whitty's scribbled signature is a marker of robosigning. The witnesses also appear to have scribbled their signatures, as also did the notary.**

Thus, there is apparent lack of attorney supervision in the drafting and filing of this document, which may constitute unauthorized practice of law, because there appears lack of personal knowledge as to its contents, making this simply an act of convenience, whether the statements are true or not.

On August 21, 2014, the Court noticed Cohen that intended to dismiss the action for lack of prosecution, despite the fact a Release had been filed three months earlier; thus, Cohen and Ablitt-Scofield/Connolly appear to be wasting the Court's valuable time by not dismissing the case themselves, based on a resolution between the parties.

Case No. 11: *Bank of America, N.A. v. Adrienne A. Larson et al* (2013 CA 2580 MF)

CASE NOTES: This case developed from a MERS-orignated Mortgage executed by the Defendants in favor of Franklin American Mortgage Company (at 501 Corporate Centre Drive, Suite 400, Franklin, Tennessee 37067), recorded by presentment on 05-05-2010 as CFN#2010063878.

CFN#2011152318, electronically recorded on 11-01-2011
Signors: Dominique Johnson (known robosignor) and Cynthia Santos, both claiming to be Assistant Secretaries of MERS as a standalone assignor, using an Ocala, Florida address that MERS issued a policy bulletin to MERSCORP members NOT to use that address after December 6, 2010. This appears to be a self- assignment to Bank of America, N.A. using MERS as a cover for the document manufacturing and robosigning.
Witnesses: Amanda Stackhouse, Swarupa Slee (both known robosignors)
Notary: Marcellus Ellis (California Notary Commission #1869981; expired on 10-31-2103)
Issues: The notarial jurat is undelineated as to gender and plurality; notarized under penalty of perjury under California law; claimed the signors acted in their "authorized capacity" even though there was no proof provided of such. There are numerous markers of document manufacturing including liberal use of rubber stamps and scribbled signatures. The self-assignment using MERS as a "cover" makes this document suspect. Further, the address of the Assignee in Washington, DC actually belongs to The Secretary of the U. S. Department of Housing and Urban Development ("HUD") and NOT Bank of America.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Again, Ablitt Scofield attorney Matthew Pingeton filed a Notice of Lis Pendens, signed by co-worker attorney Menina E. Cohen (no name listed however) by presentment on 07-23-2013 as CFN#2013113560, using the information in the suspect assignment of mortgage to name Bank of America, N.A. as the real party in interest, when the information on the Assignment of Mortgage does not comport to the facts at bar.

More particularly, the Complaint, in Paragraph 13 states that the "record legal title to the property secured by the Mortgage is now vested in the property owner. This runs contrary to the MERS business model, wherein MERS claims to hold legal title as this is a MERS-originated mortgage. MERS is NOT named as a Defendant in this suit, so it could have been given the chance to respond to these allegations accordingly. The Examiners however, believe that since all of the vagaries contained within the language of the Mortgage are not specifically defined as to their meaning, this creates more confusion on the Court as to title disputes and issues related to rightful claimants therein.

The Note contains two indorsement stamps, both undated, the first in favor of Bank of America, N.A. by Benita J. Hill, who claims to be Senior Vice President of Franklin American Mortgage Corporation.

The second indorsement stamp is "in blank", which means that it was the intent of Bank of America, N.A. to transfer the Note into a REMIC, which obviously did not occur. If transfer wasn't contemplated, why did someone affix Michele Sjolander's indorsement stamp to the document? The affixing of the stamp may NOT have been done by Sjolander herself, as noted in the Exhibit Deposition, previously referenced herein.

Page 4 of the Complaint is also suspect for alterations of the sworn declaration by Plaintiff's representative Janet R. Miller, who purports to be an Assistant Vice President of Bank of America, N.A., as the entire bottom half of the page is "blank" in favor of the balance of the paragraph and Verification signatures confined to Page 5, where the Ablitt-Scofield attorney's signature is. It took up until January 30, 2014 for Connolly attorney Cohen to submit what he claims is an original Note and Mortgage, which is disputed here because the MERS loan was converted into a security via an "eNote" and the original Note is believed to have been shredded after being converted into an image file, of which a copy of each is believed to have been inserted instead of the originals, as claimed by Counsel. Despite the fact that Franklin American Mortgage Company, the original lender and MERSCORP member, is still in business, Bank of America self-assigned the Mortgage using its own employees with the intent to claim standing in the event foreclosure became necessary using a document that is suspect for violations of Florida Criminal Code 817.535. Because of the fact MERS is involved, the intent was to securitize the Borrower's loan; thus, the real party in interest should be a REMIC trust. At this stage of the sequence of the events, conveyance to a 2010 REMIC trust would be in violation of the trust's PSA and any related SEC or IRS regulations governing the tax-exempt status of the REMIC itself.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It further appears that the Larsons had been defending this matter pro se and then finally retained counsel, which forced what appears to be a change in Counsel to, substituting the Connolly law firm with Frenkel, Lambert, Weiss, Weisman & Gordon, LLP, represented by Tania Marie Amar (FBN84692), which Judge Miller granted on June 4, 2014.   The Examiners believe the change was made because the Larsons retained counsel.   As of the date of this entry, there are multiple motions before the Court and the pendency of the case is still open and active.

**Case No. 12:** *HSBC Bank USA, N.A. as Trustee for Deutsche Alt-A Securities, Inc. Mortgage Loan Trust Series 2005-2 v. Denise M. Diaz et al* **(2013 CA 2568 MF)**

**CASE NOTES: This case involves an Assignment of Mortgage executed by Emily Witt who claims to be an Assistant Secretary of MERS (https://www.linkedin.com/pub/emily-witt/ 38/28/445) when in fact she is employed by M & T Bank in Buffalo, New York as shown through the preceding link to her LinkedIn website, as shown on the next page at *Figure 1*.**

**The Assignment appears to have been prepared by Courtney A. Ryan at M&T Bank's Lien Release Department, 4th Floor, P. O. Box 1288, Buffalo, New York 14240-1288 (800) 724-2224, which solely occupied the content on Page 2 of 2 of the recorded Instrument.  After recording this assignment by presentment on 07-10-2013 as CFN#2013104369, it was returned to Witt at M&T Bank.   The recordation of this Assignment preceded the filing of a Notice of Lis Pendens by Ablitt Scofield's Matthew Pingeton (FBN177830), who executed the Notice two days AFTER the Assignment was recorded; however, the Assignment itself was actually executed by Witt on October 31, 2012.**

**FIGURE 1**

Emily Witt, Operations Manager at M&T Bank, Buffalo, New York



November 2011 – Present (3 years) M&T Center
Manage the Collateral Support Services team
Bankruptcy Supervisor
M&T Bank
June 2008 – October 2011 (3 years 5 months)

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are multiple issues with this Assignment of Mortgage, to wit:

**(1) Pinnacle Direct Funding Corporation was defunct at the time this Assignment was executed by Witt (as shown at the following link):**

**http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail/EntityName/domp-p98000033921-77f66633-b8a8-4ad6-b433-78eab48ef950/Pinnacle%20Direct%20Funding%20Corporation/Page1:**

**Detail by Entity Name**
Florida Profit Corporation
PINNACLE DIRECT FUNDING CORPORATION
Filing Information
Document Number: P98000033921
FEI/EIN Number: 593504854
Date Filed: 04/14/1998
State: FL
Status: INACTIVE
Effective Date: 04/13/1998
**Last Event: VOLUNTARY DISSOLUTION**
**Event Date Filed: 01/11/2008**
Event Effective Date: NONE

**(2) The assignment drafted by Ryan and executed by Witt did NOT contain any witness signatures (two are required in Florida); thus subjecting this document to legal challenges;**

**(3) The Notarial Execution was not only delineated on the basis of identification, gender and plurality, but did NOT contain the full title of Emily Witt, only identifying her as "Assistant Secretary" and NOT of MERS. Further, Witt's signature is scribbled, a marker of robosigning.**

**(4) The address provided for then-defunct Pinnacle Direct Funding Corporation was the address MERS uses for service of process (Metro Detective Agency) and NOT the address of the defunct lender; thus, misrepresenting the fact that Pinnacle was defunct and that it had an Illinois address when in fact it was an Orlando, Florida-based corporation;**

**(5) The Assignment purports to transfer the Diaz Mortgage and all interest in said Mortgage to HSBC Bank USA, N.A. as Trustee for the Plaintiff trust REMIC.  The Closing Date for this trust was on or about February 28, 2005.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The Assignment is dated October 31, 2012, over 7-1/2 years too late for the trust REMIC to accept it,  as shown at the following link:

<u>http://www.secinfo.com/dScj2.z1Cc.htm?Find=closing#5thPage</u>

(6) How is it possible that M & T Bank's Operations Manager could execute an assignment on behalf of Pinnacle Funding without M & T first having the Note and Mortgage in its possession?  M & T did not acquire Pinnacle Funding nor was M & T Bank acquired by HSBC Bank USA, N.A., also headquartered in Buffalo, New York.  Where is the connection?  The Assignment shows the trust REMIC's address c/o M & T Bank at its One Fountain Plaza, Buffalo, NY 14203 street address; thus, M & T had a role in the REMIC's activities, as shown in *Figure 2* below;

(7) As Operations Manager of M & T Bank, Witt may have had access to the foregoing REMIC information and was instructed to initiate Assignments of Mortgages (loans) into the trust. However, M & T Bank is only the Servicer, yet still connected to the trust pool; and

(8) It would then appear that parties connected to the REMIC trust initiated assignments into the trust pool wherein M & T Bank derives a benefit as servicer of these mortgage loans. Since Pinnacle Direct Funding  Corporation, who was listed in the Pooling and Servicing Agreement ("PSA") as a Servicer  (and went under in January of 2008), Witt had to have knowledge of that fact and used MERS as a "cover" to assign the note into the pool.

The Assignment thus contains misrepresentative information that was assigned and recorded nearly nine months later in order for Ablitt-Scofield, who relied on the document, to effectuate a foreclosure, in violation of the Florida Criminal Code § 817.535.

Further, there was no Note or Mortgage attached to the Complaint as proffered in Exhibit "A".

*NOTE: Refer to Figure 2 below (from Paragraph 6, above).*

**24 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

*FIGURE 2 (using search parameters containing the phrase "M & T"):*

Thus, the verification provided by Ablitt-Scofield's attorney Menina E. Cohen (FBN14236) was not only misrepresentative of the standing of the client, the Limited Power of Attorney recorded in the real property records of Osceola County, Florida on July 24, 2013 as CFN#2013114010 (executed on April 10, 2013), did NOT give constructive notice to the world until AFTER the Verification was executed, the day AFTER the Notice of Lis Pendens was filed.  In order to have had standing, the Note and Mortgage would have had to have been conveyed before February 28, 2005.  This did not happen.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Further, since Ablitt-Scofield's new directives involved potential alteration of sworn declarations (according to WITNESS A), the involvement of multiple actors like Matthew Pingeton (FB-N177830; who appeared to have initiated all of the service of process for this case) in the allegations presented give rise to violations of the Florida RICO statutes, not to mention suspect fraud on the Court.

It further appears the property owner retained counsel in this action.  On December 19, 2013, Cohen (now on behalf of the Connolly law firm) filed a Motion for Final Judgment of Foreclosure.  Cohen also filed a Notice claiming he was presenting the "Original Note and Original Mortgage", which is highly unlikely given that the use of the MERS business model involves scanning the documents into image files and potentially shredding the original documents.

Further, the alleged "original note" contains an undated indorsement-in-blank at the bottom, left-hand corner of Page 3 of 3; thus, showing no effective date of transfer into the REMIC trust.  The other issue herein is that the "Original Mortgage" in its signed form, was NOT recorded.  This version appears to be recorded.

**Also suspect is the fact that MERS was not named as a Defendant in this action.  Per the Court files:**

8/6/2014
NOTICE OF STIPULATION TO VOLUNTARY DISMISSAL WITHOUT PREJUDICE AND RELEASE OF LIS PENDENS

10/28/2014 1:30 PM
STATUS HEARING, FORECLOSURE SENIOR JUDGE, HEARING ROOM 6E

**Despite the fact that the case may be dismissed, the intent of the Witt Assignment, using MERS as a cover, which contained misrepresentative information, purposefully designed to be used by counsel in a foreclosure action to deprive the property owner of her property appears to violate the Florida Criminal Code, noted supra.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 13:** *U. S. Bank Trust, N.A. as Trustee for LSF8 Master Participation Trust v. Debra J. Romack et al* **(2013 CA 4089 MF)**

**CASE NOTES: A search of the <u>secinfo.com</u> produced no specific results for this trust entity. This entity could be a 144 or 144-A Trust vehicle, subject to discovery or further testimony to elicit specific factual information. This case begins with a reference to two MERS-originated Mortgages taken out by the Defendants in late 2005, recorded by presentment on 12-21-2005 as CFN#2005282101 and CFN#2005282102.**

**Further, it was noted in the real property records of Osceola County, Florida that three assignments were filed in connection with this property. The Assignments of Mortgages are noted as CFN#2012035300, CFN#2012048011 and CFN#2013175536. The first two assignments appear to use MERS to "cover up" the chain of custody of the Note". The third assignment appears to have been a self-assignment by Caliber Home Loans employees to assign the first mortgage from HSBC Mortgage Services, Inc. into the LSF8 Master Participation Trust, which again, would merit case discovery to determine the validity of such a trust.**

**Further, the Complaint fails to name MERS as a Defendant in the action. As to the Certification filed following the Complaint, there are issues with the Certification, to wit:**

(1) The "Certification of Possession of Original Note" appears to be a boiler-plated document, in which the attorney (or his paralegal in Massachusetts) makes the same apparent claims as in the previous case issues discussed, supra, to wit:

(a.) Cohen alleges that he personally verified possession and location of the original promissory note on November 15, 2013;

(b.) Cohen stated under penalty of perjury that the original promissory note was located in Woburn, Massachusetts at a specific address, when in fact this attorney works out of the West Palm Beach, Florida office;

(c.) Further, his certification appears false because he claims that "copies of the original and allonge(s), if any, are attached hereto. There were no attachments of record and if there were any allonge(s) ("if any"), then Mr. Cohen should have specifically stated such;

(d.) He certified that the Plaintiff was in physical possession of the Note, when he just stated the original promissory note was located at his main office location in Boston, Massachusetts area when in fact, the Plaintiff trust, by and through its alleged "Attorney-in-Fact, is allegedly headquartered in Oklahoma City, Oklahoma, as shown in the third Assignment, stated supra.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(2) Despite the fact that there is an indorsement-in-blank below the Borrower's signatures (by David Mercurio, who purports to be CFO of the original mortgagee), the indorsement is undated, thus, the effective date of transfer remains unproven; and

(3) Based on the previously-noted issues, there is enough suspect documentation to question the validity of the proffered Note, which the Examiner believes was extracted and reproduced from an image file and is NOT the original Note.

It further appears that after three Motions to Compel were filed by Defendant's counsel of record, Albertelli Law, by and through its attorney Kjel Horneland (Florida Bar No.76933), filed a Notice of Appearance of Co-Counsel.  This behavior is seen as a "pattern" that occurs when the Plaintiff is having difficulty proving standing in a foreclosure case.    The pendency of the case appears ACTIVE and is in the discovery phase.  The second and third self-assigned assignments are at the core of this dispute.  There is no recorded Limited Power of Attorney.  This forms the basis of the Examiner's suspicions that probable cause exists on the foregoing statutory violations noted herein.

**Case No. 14:** *Nationstar Mortgage, LLC v. Louis S. Anastasio et al* **(2012 CA 5828 MF)**

**CASE NOTES:  This case begins with a reference to a MERS-originated Mortgage taken out by the Defendants in 2005, recorded by presentment on 08-22-2005 as CFN#2005187379.**

**The Mortgage was executed on August 4, 2005 in favor of Homefield Financial, Inc., a California corporation.  A search of the Florida Department of Corporations revealed that this entity's corporate charter was revoked by the Department of State of Florida on September 26, 2008 for failing to file an annual report. There is also an Assignment of Mortgage that appears to be involved in this instant case,  suspect for fraudulent misrepresentation as discussed below.**

**CFN#2012141140, recorded by presentment on 10-01-2012**
**Document Prepared By: Heidi Anderson, Aurora Bank FSB, Scottsbluff, Nebraska**
**Date of Assignment: 10-17-2011**
**Signor: Regina Lashley (known Aurora Bank employee) signing as Vice President of MERS as nominee for Homefield Financial, Inc., using a MERS address in Danville, Illinois that really belongs to Metro Detective Agency (as Assignor); in an apparent self-assignment of the Mortgage to Aurora Bank FSB (using its New York address, as Assignee).**
**Notary: Irene Guerrero (known notary involved in Aurora's document manufacturing, as a "robo-notary"; Nebraska notary commission expired).**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**The Notary also failed to delineate the notarial execution based on identification, gender and plurality, on behalf of Lashley's alleged "authorized capacity", of which there was no attached proof.  Acknowledged in Scottsbluff County, Nebraska.**

**Witnesses: None Listed (may not comport to Florida law)**

**Issues: Apparent self-assignment using MERS as a "cover" for the act. Since Homefield Financial, Inc. was listed as the originating lender (from California), the Examiner conducted a search of the online records within the database maintained by the California Secretary of State, which yielded the following results:**

**Thus, it appears that the use of MERS was to "cover up" the apparent failure of the originating lender in favor of a self-assignment.**

| | |
|---|---|
| **Entity Name:** | HOMEFIELD FINANCIAL, INC. |
| **Entity Number:** | C2113765 |
| **Date Filed:** | 07/08/1998 |
| **Status:** | FTB SUSPENDED |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | 410 EXCHANGE STE 100 |
| **Entity City, State, Zip:** | IRVINE CA 92602 |
| **Agent for Service of Process:** | ** RESIGNED ON 05/10/2010 |
| **Agent Address:** | * |
| **Agent City, State, Zip:** | * |

The Notice of Lis Pendens was filed by Ablitt-Scofield's Cohen, using the West Palm Beach, Florida street address for the law firm.  The Complaint itself was filed by Matthew A. Pingeton for Cohen, also using the West Palm Beach, Florida street address for the law firm.  There are multiple issues with the Complaint and the resulting presentation of the Note, to wit:

(1) There is suspect alterations of the sworn declaration as proffered by **WITNESS A**;

(2) There is no assignment of record to Nationstar Mortgage, LLC, giving it the right to do anything in this matter; thus, the unknown "signor" to the Verification appears to fail simply based on the lack of assignment;

(3) It is unproven, based on the endorsement to an alleged trust, that Deutsche Bank has given Nationstar Mortgage, LLC (as Servicer) the right to do anything in this case;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(4) The Verification appears to contain full pages, while other boiler-plated templates used by Ablitt-Scofield (and subsequently the Connolly law firm) appear to leave gaps on certain pages;

(5) On the ALLONGE TO NOTE, the Allonge is allegedly dated August 10, 2005; while the Assignment to Aurora Bank FSB did not occur until October 17, 2011, which then appears to invalidate the Allonge or at best, pose serious legal questions regarding its potential manufacture under the direction of Plaintiff's counsel or Nationstar itself;

(6) The Allonge proffered here purports to assign the Note, without recourse, to Residential Funding Corporation (now in bankruptcy).  It it undated, thus, it is to be believed, according to the presented Note, that Residential Funding Corporation had the Note at one time, but then, through another special indorsement, assigned it to Deutsche Bank Trust Company Americas as Trustee, yet this endorsement is undated as well, which fails to validate the effective date of transfer; and

(7) The recorded Assignment of Mortgage went to Aurora Bank FSB, yet there is nothing on the Note as to any named Trust Series which Deutsche Bank claims to be representing as Trustee, thus neither Aurora nor Nationstar appears to have standing to enforce an unspecified special (restrictive) endorsement.

It further appears that since the commencement of discovery in the case, Nationstar Mortgage, LLC, through its new counsel (Robertson, Anschutz & Schneid, P.L. of Boca Raton, Florida), file a Motion to Substitute Counsel, which goes to the Examiner's belief that there is a distinct fact pattern of substitutions of counsel when the existing counsel of record "gets into trouble".  This Motion was electronically filed with the Court on June 26, 2013.

It appears that counsel of record at that point is Laura Elise Goorland (FBN55402). It further appears, in an electronic filing submitted by Plaintiff's counsel on October 17, 2013, that an attached **NOTE ALLONGE** "magically" appears following the initial **ALLONGE TO NOTE**, despite the fact that there was room on the NOTE ALLONGE for another indorsement stamp.

There are issues with this new addition, to wit:

(1) The Note Allonge is undated and attempts to comport with the self-Assignment recorded in the real property records of Osceola County, Florida over a year earlier;

(2) However, Aurora Loan Services, LLC, claiming to have "attorney-in-fact" status for Deutsche Bank Trust Company Americas as Trustee, is not the "Assignee" in the recorded assignment a year earlier, as the Assignment of Mortgage was to Aurora Bank, FSB.  There was no mention of Deutsche Bank in the Assignment of Mortgage;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(3) Aurora Bank, FSB and Aurora Loan Services, LLC are two distinctly different entities and thus, the Note Allonge appears to be a document manufacturing ploy to commit fraud on the Court; and

(4) Nowhere in this document does it name Nationstar Mortgage, LLC as owner / holder of the Note with the right to enforce it.

In order for the Note to have been modified, the Addendum would have had to have been removed from the back § of the Note; thus, the Examiner's position that this was added at the last minute yet still fails to show where Nationstar has standing to foreclose on the Property.

Further, the Motion for Summary Final Judgment of Foreclosure, electronically filed June 1, 2014 by Goorland, appears to reflect a boiler-plated template.  The Affiant therein, Daniel Robinson, who purports to be an Assistant Secretary for Nationstar Mortgage LLC, claims to have personal knowledge of the facts contained in the Affidavit; however, he relies on the system of record maintained by Nationstar, which could contain erroneous data entries, doesn't give him personal knowledge of anything other than he retrieved the company's business records which he probably had no previous knowledge thereof, prior to signing this Affidavit.

More glaring in error is the information following the Affidavit, which appears to be some other Borrower's Home Equity Note unrelated to this case, signed by Donald and Aletta Miller on December 4, 2006.  Further, there is nothing on the payment histories that reflects any third-party payers involved in the bottom-line balance of the Note.

This loan utilized the MERS business model to securitize the loan, yet there is no named Trust Series for which Deutsche Bank is acting as Trustee for, listed anywhere on this document. Thus, by virtue of the saying, "The left hand doesn't know what the right hand is doing", it appears that the addition of the erroneous documents, mixed in with the current alleged payment statements, adds suspicion to the processes used to effectuate these documents, further suspect for bringing fraud on the Court.

In yet another June 1, 2014 electronic filing with the Court entitled "Notice of Filing", Goorland stated she is filing a "Copy of the Redacted Original Note" and a "Copy of the Redacted Original Mortgage", yet, when examined, this reveals what was attached was the previous **MILLER NOTE** and there did not appear to be any "redacted Mortgage" attached at all.

It further appears that a new "original note and mortgage" was to be propounded on the Court on behalf of Nationstar Mortgage LLC.  The Examiner requested the court files for further viewing; thus, they are made a part of the certified evidence pool.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 15:** *HSBC BANK USA, N.A. as Trustee of J. P. Morgan Alternative Loan Trust*
*2007-A1, Mortgage Pass-Through Certificates, Series 2007-A1 v. Kristen L.*
*Hutterly et al* **(2012 CA 5601 MF)**

**CASE NOTES: This case involves an Assignment of Mortgage (CFN#2012021534) that was previously discussed under the Nationwide Title Clearing heading in this report. The Assignment was drafted in Florida and signed by Chase employees in Monroe, Louisiana, attempting to assign a mortgage into a closed 2007-A1 REMIC trust.**

On that basis, as well as the issues involving the Ablitt-Scofield issued Complaint, prepared by Matthew A. Pingeton on behalf of Menina E. Cohen, suspect issues again permeate the Complaint based on allegations of alteration of sworn declarations as part of the verified Complaint.

Also at issue were the two ALLONGES attached to the back end of the proffered Note. It appears that on the same date (February 9, 2007), Angela Nolan (a known robosignor whose deposition on a similar 2007 trust is included as an Exhibit to this report, incorporated by reference herein), along with "A. Young" appear to have "affixed" indorsements to the note in such a manner as to create suspicion of manufacture, based on the Assignment of Mortgage, which contradicts the actual transfer shown on the Note.

There is no Assignment of the Mortgage to Chase Home Finance, LLC anywhere in the real property records of Osceola County, Florida in relation to this property; yet Nolan, acting as Assistant Vice President of Chase Home Finance, LLC, was shown in an indorsement-in-blank below the "A. Young" endorsement.

Here, the chain of title does not comport to the chain of custody of the Note.   Further, there appeared to be plenty of room to place indorsement stamps below the Borrower's signature on the existing Note, another marker of document manufacturing (of the allonges).

Further, this Note was attached to an electronically-filed Notice of Filing regarding an Affidavit of Reasonable Attorney's Fees, yet the Allonges are not present on this Note, another marker of document manufacturing.

It also further appears that McGlinchey Stafford was also involved as co-counsel in this matter. A Final Judgment of Foreclosure was issued, despite protestations of the Defendant, on March 20, 2014 by Judge Robert J. Pleus, Jr.

Eventually, because of concerns brought to the Court's attention by the Defendant that she had been trying to sell her condominium, the sale date was cancelled so she and the alleged Plaintiff could work out a resolution.  However, despite the outcome, it appears the Defendant was forced out of her property using a manufactured, misrepresentative assignment, in violation of Florida Criminal Code § 817.535 and Florida RICO statutes.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 16:** *HSBC BANK USA, N.A. as Trustee for Deutsche Mortgage Securities, Inc.
Mortgage Loan Trust, Series 2004-5 v. Mercedes Jurado et al* (2012 CA 5482
MF)

**CASE NOTES: This case involves the recording of an Assignment of Mortgage by M & T
Bank's Emily Witt, Case No. 12, supra, on August 24, 2012, using MERS as a "cover up"
for then-defunct Pinnacle Direct Funding Corporation (using a MERS address in Danville,
Illinois that is really the address of Metro Detective Agency) to a closed Series 2004-5
REMIC trust, in potential violation of not only the Pooling and Servicing Agreement for
the Trust REMIC, but also in violation of SEC and IRS regulations.  This document was
filed in the real property records of Osecola County, Florida on October 16, 2012 (by pre-
sentment) as a precursor to a foreclosure action against the property.**

The Complaint has an attached Note with an undated indorsement-in-blank from Pinnacle Direct
Funding Corporation, specifically to "HSBC Bank USA as Trustee under the applicable agree-
ment"; however it did NOT name a specific trust series entity.

Thus, the verification provided by Ablitt-Scofield's attorney Menina E. Cohen (FBN14236) was
not only misrepresentative of the standing of the client, the Limited Power of Attorney recorded
in the real property records of Osceola County, Florida on July 24, 2013 as CFN#2013114010
(executed on April 10, 2013), did NOT give constructive notice to the world until LONG AFTER
the Verification was executed, the Verification fails based on false swearing, which would consti-
tute fraud on the Court.

In addition, the manufacture of the Assignment, which appears to contain false and misrepresen-
tative information, designed for use against the Property owner to deprive her of her property,
further appears to give probable cause for violation of Florida Criminal Code § 817.535.   An
office copy and certified copy of said assignment were attached to the Court filings, as noted
herein.

Despite the fact the case appears to have been settled, a suspect assignment created the intent to
believe probable cause exists that multiple parties engaged in the effectuation of this assignment,
potentially warranting examination of Florida criminal RICO issues.

**COMMENTARY ON EXISTING PATTERNS:**

**Within the Ablitt-Scofield P.C. nka Connolly, Geaney, Ablitt & Willard, P.C. firm there ap-
pears to be participation of two or three key attorneys handling cases in Osceola County.
These individuals are Matthew A. Pingeton, who is also bar licensed in Massachusetts as
well as in Florida; Menina E. Cohen, Florida Bar licensed and working out of the West
Palm Beach satellite office; and Michael P. Bruning, also duly licensed in Massachusetts
and Florida.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**There seems to be a propensity for this firm to use boiler-plated filings, including but not limited to:**

> **(1) Certifications of Original Notes and other related documents;**
>
> **(2) Notices of Filings claiming to proffer the original note and mortgage; and**
>
> **(3) Motions for Final Summary Judgment, containing repeated case citations.**

**It further appears that two or more of the players interchange with each other so more hands and minds know what's going on with each of the cases in case one attorney has to cover the other attorney for any reason.**

There also appears to be assignments filed just prior (or in close proximity) to the filing of Complaints to Foreclose.  Tied in with these Complaint filings is the alleged propensity (working in concert with the Woburn, Massachusetts office) to (as alleged by WITNESS A) alter sworn declarations, which makes every one of the relevant filings herein suspect for such behavior.  Connolly firm attorneys also appear to rely on the Assignments to give their clients standing; however, there is some concern that the manufactured assignments are not going to comport with what they're filing in Court; thus, the additional pattern of the lender-Plaintiff changing counsel midway through the process appears to either confuse the Court or to cover their suspected misdeeds, or both.  Full determination of these issues can only be made through a more thorough investigation of such matters.

**Case No. 17:** *U. S. Bank, N.A. as Trustee, successor in interest to Bank of America, N.A. as Trustee, successor by merger to LaSalle Bank, N.A. as Trustee for Washington Mutual Asset-Backed Certificates WMABS Series 2007-HE2 Trust v. Ingrid J. Constanzo et al* **(2013 CA 2477 MF)**

**The subject MERS-orginated Mortgage (CFN#2006297532) was executed in favor of the now-defunct (July of 2010) Master Financial, Inc. of California.   The first assignment (CFN#2009057409) appears to have been signed by a JPMorgan Chase Bank employee in Jacksonville, Florida using MERS as a "cover" to assign a Mortgage to the closed REMIC trust Plaintiff (above), with Shapiro & Fishman's Craig T. Smith preparing the document. Despite the fact that no attorney-in-fact status was demonstrated within the notarial execution, no signor is claiming  attorney-in-fact status.**
**Notary: Deborah A. McNulty (Florida Notary Commission No. DD 851452)**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The second Assignment (CFN#2013090497) was signed by a Bank of America Dallas employee claiming attorney-in-fact status granted by JPMorgan Chase Bank, NA, using Metro Detective Agency address in Danville, Illinois for the Assignor as a Chase address in Fort Worth, TX for the Assignee., again assigning the mortgage to the same closed REMIC trust).  Both assignments appear to be misrepresentative self-assignments. The foregoing case was filed by and subsequently voluntarily dismissed by Connolly attorney Menina E. Cohen. Matthew Pingeton appears to have been involved in the case, which makes it suspect for issues involving alterations of sworn testimony.

Case No. 18: *HSBC Mortgage Services, Inc. v. Sofia M. Aguinaga et al* (2013 CA 1719 MF)

The subject MERS-orginated Mortgage (CFN#2005199883) was executed in favor of Wilmington Finance, a division of AIG Federal Savings Bank. Two assignments followed; one prior to and one after the filing of a foreclosure complaint by Ablitt-Scofield's Menina E. Cohen.  The first assignment (CFN#2012051358) appears to have been self-assigned to the Plaintiff by Melissa D. Cleary, who claimed to be an Assistant Secretary of MERS, assigning the Mortgage and all beneficial interest therein using MERS as a "cover" for Wilmington, who could have properly executed such. The Assignor's address is MERS' own Vienna, Virginia address.  The document was prepared by another HSBC employee in Brandon, Florida, Michelle Lytle.
Notary: Edinson Guzman (Florida Notary Commission No. EE 098221)
Witnesses: Angela M. Johnson, Jill Kinsell
Issues: The notarial execution was undelineated as to the basis of identification, gender and plurality and also attested to Cleary's "authorized capacity", which is suspect here due to the self-assignment using MERS. Using this manufactured self-assignment, Ablitt-Scofield attempted foreclosure on the property.

The second Assignment (CFN#2014025855) was manufactured and signed by Caliber Home Loans, Inc. employee Roy Lacey, who claimed he had attorney-in-fact status granted to him by HSBC Mortgage Services, Inc.  There was no Limited Power of Attorney recorded in the real property records of Osceola County, Florida prior to the execution of this self-assignment to Caliber-managed LSF8 Master Participation Trust (highly likely a private label trust). As of this entry, there still is no recorded Limited Power of Attorney by HSBC to Caliber Home Loans, Inc. Both assignments appear to be misrepresentative self-assignments. Further, it appears that Matthew Pingeton assisted in the case, which makes it suspect for issues involving alterations of sworn testimony.   Michael P. Bruning (FB-N37361) submitted a Notice of Filing on June 26, 2013, declaring presentation of the original note and mortgage.  An undated ALLONGE TO NOTE appears AFTER the Prepayment Rider and was not attached directly to the Note itself; suspect for fraud on the Court.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There was plenty of room below the Borrower's signature at the end of the Note to affix an in-dorsement-in-blank, which appeared AFTER THE FACT, leading the Examiner to believe the Allonge was manufactured well after the fact and improperly attached in haste to make a case. Using the second assignment, Cohen then filed a Motion to Substitute the Party Plaintiff, which Judge Miller granted, based on the attached second self-assigned assignment with no power of attorney authority attached to it; thus, the judge appears to have been duped by Cohen and Ablitt-Scofield.

Whether a foreclosure is granted or not, based on this second illegitimate assignment, attached by Cohen as part of the pleadings, there is probable cause to believe a violation of Florida Crimi-nal Code § 817.535 has been committed and due to the large number of these infractions, includ-ing another Ablitt-Scofield case containing the same named trust Plaintiff, there is probable cause to believe that there are also violations of the Florida RICO statutes.

## Case No. 19: *Bank of America, N.A. v. Valeen Bell et al* (2013 CA 2078 MF)

The subject MERS-orginated Mortgage (CFN#2007092810) was executed in favor of now-de-funct MFC Mortgage, Inc. of Florida.

There was a Loan Modification Agreement filed by presentment on 10-12-2011 as CFN#2011142381, which is suspect as containing false and misrepresentative information be-cause there were no Assignments of Mortgage in favor of Bank of America, N.A. recorded PRI-OR to the execution of the Loan Modification Agreement ("Agreement").

The Agreement states that BAC Home Loans Servicing, LP is the "Lender", when there was no assignment in the real property records of Osceola County, Florida to indicate such. Further, the document was acknowledged in Florida by Kelly L. Merchant (FBNDD738516).  There were no witnesses to this Agreement.

The document was then sent to Houston, Texas, where Kimble Monroe, who claims she is Vice President of MERS as Nominee for Bank of America, N.A. as successor by Merger to BAC Home Loans Servicing, LP, when in fact, her official title is "Exception Processor" for Stewart Lender Services, a division of Stewart Title Company.  Monroe only affixed her initials to the document, which was acknowledged by Aondrea M. Smith without delineation of the basis of identification, gender or plurality and further failed to specifically identify her "authorized ca-pacity".

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

| Name: Aondrea M. Smith - ID: 11828481 | | | |
|---|---|---|---|
| Address: | 7426 Troulon Dr<br>Houston, Tx 77074 | | |
| Expires: | Mar 28, 2016 | | |
| County: | Harris | | |
| Agency: | American Association Of Notaries Inc | | |
| Surety Company: | Western Surety Company | | |
| **History** | **As** | **Effective** | **Expire Date** |
| Recommissioned | Aondrea M. Smith | 03/28/2012 | 03/28/2016 |
| Commissioned Notary Public | Aondrea M. Smith | 03/28/2008 | 03/28/2012 |
| Commissioned Notary Public | Aondrea M. Smith | 12/29/2003 | 12/29/2007 |
| Commissioned Notary Public | Aondrea M. Smith | 12/23/1999 | 12/23/2003 |

**The notary still has a valid commission as shown below:**

This Agreement also appears to maintain that MERS (listed first in the title) is somehow the "Lender" or related to the Lender, who did not have an assigned interest; thus, Monroe exceeded her authorized capacity in signing this Agreement, which appears to create probable cause for violation of Florida Criminal Code § 817.535, especially in light of the self-assigned Assignment, which did not occur until Bank of America employees executed and electronically filed the document as CFN#2012044050 on 03-28-2012, six months AFTER the Loan Modification Agreement was recorded.

The self-assignment to Bank of America, N.A. utilized only MERS (using the Metro Detective Agency address in Danville, Illinois) as a "standalone" assignor and not as a nominee for the then-defunct lender, MFC Mortgage, Inc. of Florida.  This is misrepresentative in of itself, because the ensuing foreclosure action relied on both documents to present Bank of America's standing to the Court.

It now appears that Ablitt-Scofield and its attorneys had reason to voluntary dismiss the case in January of 2014. Still, the intent to deprive the property owners of their property was clearly the motive, utilizing fraudulent and misrepresentative documents to do so, including apparent subornation of perjury on a Verified Complaint, using multiple actors to achieve said ambitions, also appear to have violated Florida RICO statutes.  Pingeton and Bruning were also involved in this cause of action for the law firm.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 20:** *Beneficial Florida, Inc. v. Lisa Simcoe et al* **(2013 CA 2133 MF)**

**CASE NOTES: This case appears to be similarly structured as Case Numbers 13 and 18, wherein suspect assignments reflect an attorney-in-fact status that does not exist in the real property records of Osceola County, Florida, represented in this 04-08-2014 electronically recorded Assignment of Mortgage as CFN#2014049241.**

There are multiple issues with this Assignment, to wit:

(1) The Assignor's address is shown as an address belonging to HSBC Mortgage Services, Inc. in Brandon, Florida.  The real address of Beneficial Florida, Inc. was found in the Florida Department of State online database as 26525 N RIVER-WOODS BLVD., METTAWA, IL 60045; thus, this address is misrepresentative as to the alleged party in interest;

(2) The recording was requested by Caliber Home Loans, Inc., who appears to be the alleged Servicer for U. S. Bank Trust, N.A. as Trustee for the LSF8 Master Participation Trust, using an Oklahoma City, Oklahoma address that actually represents the location of Caliber Home Loans, Inc.;

(3) There is an alleged "attorney-in-fact" status noted in the document; however, a check of the real property records of Osceola County, Florida shows no Limited Power of Attorney being recorded to Caliber Home Loans, Inc. as a Grantee;

(4) In the alternative from Beneficial Florida, Inc. as a Grantor; thus, the document misrepresents the true status of the signor;

(5) The signor appears to have scribbled his signature on the document, which is a marker of robosigning;

(6) The witnesses (Lydia Rodriguez and Ashlee Paunce) appear to have only initialed the document, which is a marker of document manufacturing; and

(7) Based on the fact that the notary (Sasha Candelaria, California Notary Commis sion Number 2057753) acknowledged this act under penalty of perjury under the laws of the State of California as to Jason Origer's "authorized capacity", she appears to have been involved in false swearing in the execution of this document.

Matthew Pingeton (FBN177830) was involved in the manufacturing of some of the case files, which appear to have been coordinated with the home office in Woburn, Massachusetts (Pingeton is bar licensed in both Massachusetts and Florida).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is implied here that Pingeton had complete access to the case file herein and knew of its contents before and after it was sent to the alleged Lender for signing.  Pingeton appears to have filed the Notice of Lis Pendens by presentment on 06-04-2013 as CFN#2013088202, declaring that Beneficial Florida, Inc. was the party in interest with the right to enforce the Note. Pingeton also appears to have handled and filed all Service of Process forms in the case.

There are multiple issues involved in this case, to wit:

(1)  The Complaint claims to have been verified; however, there is no "printed name" and due to the scribbled signature, this "affiant" remains unidentified;

(2) The Complaint was prepared by Ablitt-Scofield, P.C. and signed by Pingeton, who WITNESS A claims was involved in the alteration of the sworn declaration AFTER the signatures were affixed by the affiants;

(3) In the filing of the Defendant's Motion to Dismiss, Defendant's counsel of record appears to have picked apart and expounded upon the allegations noted herein; and

(4) There does not appear to be an attached Note or Mortgage to this Complaint.

The pendency of the case was then stayed based on a filing of a Suggestion of Bankruptcy on March 5, 2014 by Defendant's counsel.  The foregoing referenced Assignment was filed just over a month later.  This document appears to have been used in the federal bankruptcy case to cause the stay to be lifted and the notice of filing was entered into the case on August 27, 2014, citing the presence of the new, alleged  Plaintiff in interest.

More noteworthy, a Notice of Appearance of Popkin & Rosaler, P.A. was entered into the Court files during the stay in the pendency of the state proceedings; thus, the co-counsel has now become involved (by contractual nexus) with the issues brought by Ablitt-Scofield and could be potentially cited in Ablitt's alleged RICO concerns.  Brian L. Rosaler (FBN174882) and Seth M. Karasik (FBN10204) now appear to be directly involved in the alleged issues as attorneys of record due to the subsequent filings by this law firm.

The pendency of the case now appears to be active and it further appears that the newly-recorded Assignment of Mortgage is being relied on by both law firms as a means to foreclose on the Property; hence, the probable cause issues for violation of Florida Criminal Code § 817.535 and Florida RICO statutes, as this involves multiple actors in the commission of the use of the alleged fraudulent document with the intent to take the property.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 21:** *HSBC Mortgage Services, Inc. v. Alba Nelly Medina et al* **(2013 CA 2488 MF)**

**CASE NOTES: It appears that Ablitt-Scofield's Menina Cohen (FBN14236), with the assistance of Matthew Pingeton, handled the filing of this case. There was a previous attempt by the Marshall C. Watson, P.A. law firm in 2008 to foreclose on behalf of the same named Plaintiff herein (2008 CI 8403 MF).**

The originating lender on the named MERS-originated Mortgage (CFN#2005247051) Choice Capital Funding, Inc., a Georgia corporation (223 Roswell Street, #100, Alpharetta, Georgia 30004), that had its corporate status revoked by the State of Florida on September 14, 2007 for failing to file its annual report. The lender did not attempt to seek reinstatement. There are three (3) assignments involved in this case:

**CFN#2008116860, recorded by presentment on 07-16-2008**
**Signor: Larry Pettrone, (alleged employee of HSBC Mortgage Services, Inc.) claiming to be a Vice President of MERS as nominee for defunct Choice Capital Group, Inc. (using a MERS address in Vienna, Virginia), as Assignor to HSBC Mortgage Services, Inc. using an Illinois address belonging to Household Finance Corp. (also showing in general searches as HSBC Finance Corp.); in what appears to be a self-assignment using MERS as a "cover" for the chain of title and chain of custody of the Note.**
**Notary: Devika Bustillos (Illinois Notary Commission Expired 02-26-2009)**
**Witnesses: Nadia Moreno, Shehia Rehman (also believed to be employees of HSBC)**
**Issues: It appears that this assignment was directed to be executed and filed and returned to the law offices of Marshall C. Watson, P.A. (now Choice Legal, P.A.; because of the dating of this assignment, it is not listed under the heading of Choice Legal fka Watson) for the purposes of filing litigation to foreclose on the property owner. The document was prepared by Lizzest Thomas of HSBC and does not contain a MERS corporate seal.**

**CFN#2013062447, recorded by presentment on 04-27-2012**
**Signor: Melissa D. Cleary, (alleged employee of HSBC Mortgage Services, Inc. in Florida) claiming to be an Assistant Secretary of MERS as nominee for defunct Choice Capital Group, Inc. (using a MERS address in Vienna, Virginia), as Assignor to HSBC Mortgage Services, Inc. NOW using their Brandon, Florida address); in what appears to be a repeat performance of a self-assignment using MERS as a "cover" for the chain of title and chain of custody of the Note.**
**Notary: Trevin Myers (Florida Notary Commission No. EE 098231; still valid)**
**Witnesses: Angela M. Johnson, Jill Kinsell (also believed to be known employees of HSBC)**
**Issues: It appears that this assignment was prepared by Deveri Dorsey of HSBC, who was not involved in the signing of this document, executed on April 18, 2012. Since the Assignment pattern has moved to Florida within what appears to be an active case, the issues, even though apparently redundant, moved within the target period of this examination.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

This document does contain a 1999 MERS corporate seal (in an attempt to make the document look more "official").

**CFN#2014130666, electronically recorded on 09-08-2014**
**Signor: Jason Adams (claiming to be an Assistant Vice President of HSBC Mortgage Services, Inc.), signing as Attorney-in-Fact for Caliber Home Loans, Inc. for HSBC.**
**Notary: B. Gravitt (California Notary Commission No. 2027923; expires 06-07-2017; signing under penalty of perjury under California law.)**
**Witnesses: Sasha Candelaria, Angela Garrou (name only partially legible)**
**Issues: There are multiple issues with this assignment, to wit:**

> **(1) The assignment purports to transfer the Mortgage and Note from HSBC to the REMIC trust of U. S. Bank Trust, N.A. as Trustee for LSF8 Master Participation Trust, using the address of the Servicer, Caliber Home Loans, Inc. in Oklahoma City, Oklahoma;**

> **(2) The document was prepared by Gayle Clay, believed to be in Caliber Home Loans offices in Oklahoma City, Oklahoma; thus, the information relied upon by the signors was only known to the document preparer, potentially hearsay;)**

> **(3) The document was signed in San Diego County, California, which makes the document more suspect for manufacturing, until the parties can be specifically identified;**

> **(4) There are scribbled signatures on the Assignment, a known marker of robosigning;**

> **(5) Until this act can be authenticated, it is deemed by the Examiner to contain fraudulent and misrepresentative information, used for the purpose of effectuating foreclosure on the property;**

> **(6) Based on the given set of markers, it is highly likely that "B. Gravitt", did not keep a notary journal (log) as required under California notary law;**

> **(7) There is no recorded Limited Power of Attorney from HSBC to Caliber Home Loans, Inc. in the real property records of Osceola County, Florida; which makes the signing of this document an issue for perjury; and**

> **(8) Based on the signing under Penalty of Perjury, the notary, who acknowledged that the signor acted under an "authorized capacity" when none existed, is now suspect as part of the scheme to execute a fraudulent document, in violation of Florida Criminal Code § 817.535.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Because the document was electronically filed from across state lines, there are also issues under 18 USC 1343 (wire fraud).**

Ablitt-Scofield Attorney Matthew Pingeton (FBN177830) filed this document on behalf of Menina E. Cohen (FBN14236), in reliance of the second manufactured self-assignment to HSBC Mortgage Services, Inc. (dated February 26, 2013); however, the Notice of Lis Pendens was not electronically filed with the Court until June 24, 2013 and subsequently recorded by presentment on 07-01-2013 as CFN#2013100704, which the Examiner believes effectively slandered title.

**There are issues with the Complaint itself, to wit:**

> **(1) Because Pingeton is involved in this action (according to WITNESS A), there is the potential that the verified complaint was altered after it was signed by the Plaintiff's representative;**

> **(2) The law firm, through its correspondence to Nationstar Mortgage LLC, offered as an Exhibit to this report as part of the Ablitt-Scofield evidence package, indicated that the firm prepared the statement signed by the Plaintiff's representative; thus, the words being attested to are the statement of the law firm and not the Plaintiff's representative;**

> **(3) The signature of the Plaintiff's representative is illegible and unidentifiable because there was no printed name incorporated into the Verification; thus, the official title of the Plaintiff's representative is also suspect;**

> **(4) The law firm claims to be the Agent for the Plaintiff, yet the original Lender was a participant in the MERS business model, which would indicate that there exists the possibility that the original Note was shredded and that the law firm relies solely on an image file and not the original Note;**

> **(5) There were no exhibits attached to the Complaint, as noted herein;**

> **(6) There are hash marks along the left margin of Page 3 of the Complaint, when the last sentence could have been incorporated onto the page; which is suspect for document alteration; and**

> **(7) MERS was not named as a Defendant, in an effort to further the alleged cover-up of misdeeds within the chain of title and chain of custody of the Note.**

Further, the law firm utilized FDCPA and FCC-related language at the end of the Verified Complaint, opening the door for potential litigation against the law firm for misrepresentation of a debt under 15 USC 1692e et seq. Cohen appears to have signed the Complaint.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It should also be noted that during the pendency of these proceedings (07-31-2013), the law firm filed a Notice of Change of Firm Name to Connolly, Geaney, Ablitt & Willard, P. C. (hereinafter "Connolly"), signed by Cohen.

Also suspect in these proceedings was the attempt to serve co-Defendant Hugo Castano, also named in the Complaint. The Affidavit of Due and Diligent Search appears to contain only "research information" and only relies on the "process server's return of non-service" as a means to validate this actions to do further research.

The document was acknowledged in Middlesex County, Massachusetts, where Connolly's home office (Woburn) is located and is undelineated as to gender.  It further appears that a Suggestion of Pendency of Bankruptcy Proceedings was filed by the lead Defendant (Medina; Case No. 13-bk-11114) by and through her counsel Luis Davila; thus, Judge Miller issued an order, filed with the Court on May 16, 2014, staying the action until further notice of resolution of the bankruptcy case.  It should be noted that the third Assignment of Mortgage was filed in the real property records on September 8, 2014, which would then cause the Connolly law firm to have to motion the Court to allow a Substitution of Party Plaintiff in order to continue the proceedings.

Further, the bankruptcy stay appears to have been lifted on November 13, 2013 due to an apparent ineffectiveness of counsel to file a Negative Notice under Local Rules 2002-4; thus, the Bankruptcy Judge lifted the stay.  Meanwhile, a Motion for Substitution of Counsel was filed by the Albertelli Law Firm. The pendency of the case shows ACTIVE and proceeding forward, based on the new Party Plaintiff, relying on the alleged fraudulent and misrepresentative assignment with the intent to deprive the Defendant of her Property.


**Case No. 22:** *JPMorgan Chase Bank, N.A. v. Margaret L. Lillich et al (*2013 CA 2386 MF)

**CASE NOTES: This case was later modified as to a change in the Defendant's name to note that the Defendant was deceased and that the suit was now against her Estate. This case began with a mortgage executed by Margaret L. Lillich, a single person, in favor of Chase Manhattan Mortgage Corporation recorded by presentment on 06-02-2003 as CFN#2003095697.  A Notice of Lis Pendens was filed by Ablitt Scofield attorney Menina E. Cohen (FBN14236) and recorded on July 1, 2013 as CFN#2013100364.**

After service of process was effectuated and returns of service processed, Wanda Lillich, as Personal Representative of the Estate of Margaret L. Lillich, Deceased, filed an answer with the Court electronically on September 6, 2013.  It appears that the Estate retained counsel to file said answer that appears to have been emailed to Ablitt attorney Matthew Pingeton on September 4, 2013.  It appears that the Answer filed denied all allegations except for what could be substantiated by facts of record.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

On February 12, 2014, Judge Miller allowed the Partial Substitution of the Party Defendant to be changed to "The Estate of Margaret L. Lillich".   It further appears that the Plaintiff retained Nicholas J. Vanhook (FBN37881) of the McCalla Raymer, LLC law firm as co-counsel in the matter. It further appears that the McCalla Raymer law firm took over the case as of 09-26-2014.

**The issues within the case appear to revolve around two Assignments of Mortgage, to wit:**

**CFN#2014015493, recorded by presentment on 02-04-2014**
**Signor: John B. Idol (who claims to be a Vice President of JP Morgan Chase Bank, N.A. as Successor by Merger to Chase Home Finance, LLC as Successor by Merger to Chase Man-hattan Mortgage Corporation), as Assignor, attempts to assign the Mortgage to HUD.**
**Notary: Y. K. Wilson (Louisiana Notary Commission No. 064399; lifetime commission)**
**Witnesses: Joshua McClinton, Leonard James.**
**Issues:  This assignment appears to have been effectuated in the name of a subsumed entity and NOT in the name of the formal entity as shown above the signor's signature.   The promissory Note offered into evidence contains an indorsement-in-blank from the original Lender; however, it is undated; thus, the effective date of transfer cannot be determined without full discovery.  Also, there are typical markers of robosigning and document manu-facturing, which raises suspicions as to the lack of personal knowledge of the attestants.**

**CFN#2014059756, electronically filed on 04-30-2014**
**Signor: Michelle Moeller (signing as Vice President of HUD) assigning the Mortgage to the LVS Title Trust I (7505 Irvine Center Drive, Irvine, CA 92618), as Assignor, to U. S. Bank, N.A. as Assignee (showing the U. S. Bank address in St. Paul, MN).**
**Notary: Tiffany M. Jeanson (Minnesota Notary Commission Expires 01-31-2019)**
**Witnesses: Tanveer Ashraf (claiming to be an Assistant Vice President of HUD), John Poyre (the second witness's printed name is illegible).**
**There are multiple issues with this Second Assignment, to wit:**

> **(1) There are scribbled signatures on the document, a marker of robosigning;**

> **(2) The document was manufactured by John Idol at Chase's document plant in Monroe, Louisiana and not by officials at HUD; however, the document was executed by parties in Ramsey County, Minnesota;**

> **(3) It is likely that the signor, Michelle Moeller, works at U. S. Bank, as found in the following link:**

> **https://www.facebook.com/michelle.moeller.56808?fref=browse_search**

> **(4) The foregoing notations would appear to indicate this to be a self-assignment by U.S. Bank employees to a trust REMIC that U.S. Bank represents;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(5) The signor claims to have attorney-in-fact status to signed on behalf of HUD by U.S. Bank, N.A. as Legal Title Trustee for the LVS Title Trust I; however, numerous searches conducted in the online Osceola County, Florida real property records database yielded the following results:**

> **(a.) Secretary of Housing and Urban Development: No Records Found; and**

> **(b.) U. S. Bank, National Association & LVS Title Trust I: 2 Records Found; noted as CFN#2012097403, recorded by presentment on 06-29-2012; and CFN#2014083141, electronically recorded on 06-12-2014;**

**(6) Further examination of the two documents revealed the following:**

> **(a.) HUD was not named or noted in either Limited Power of Attorney;**

> **(b.) BSI Financial Services, Inc., as Servicer, was given Limited Power of Attorney;**

> **(c.) The second Limited Power of Attorney included signatures from both Michelle Moeller and Tanveer Ashraaf, who are parties to the execution of the Assignment, acting as attorney-in-fact for HUD, when HUD is not mentioned in the newer Limited Power of Attorney recordation; and**

> **(d.) The apparent inclusion of the two foregoing officers makes them a party to the contract, that is irrelevant to the assignment scenario presented here;**

**(7) Thus, it appears that no formal authority was granted to U. S. Bank officers to self-execute an Assignment (or in the alternative, to self-assign the Mortgage and Note into a trust that appears to be a private label trust), without raising suspicion of why a non-performing Note and Mortgage was conveyed into an apparent non-SEC registered REMIC trust in violation of New York Trust law.**

The balance of this case involves the September 3, 2014 filing of an Amended Complaint by Nicholas J. Vanhook (FBN37881) for McCalla Raymer, LLC (unknown as to the real authority of U. S. Bank, N.A. as Legal Title Trustee for what appears to be a private label trust (not registered on the SEC website wherein recognition is readily identifiable) on behalf of a new Substituted Party Plaintiff.

**Further, there appears to be multiple issues now present within the Amended Complaint, to wit:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) The party attempting to Verify the Amended Complaint does NOT appear to be an officer of U. S. Bank, NA but claims to be a Vice President of 3Point Asset Management, with no specific authority granted to act in the stead of the REMIC;**

**(2) As to Count II, Paragraph 4(a), there is no effective date of transfer that appears provable to prove the facts that would grant standing to the new Party Plaintiff;**

**(3) The Note is only a "copy" and not the original Note; thus, Count II, Paragraph 2 (without proof of effective transfer) cannot legitimately claim standing to enforce the note it doesn't have;**

**(4) Further, as to Count II, Plaintiff cannot indemnify a party against unlawful enforcement of a Note that it first has not proven it legally owned or had possession of at one time;**

**(5) Further, the Affiant is not employed by U.S. Bank or Chase Manhattan Mortgage Corporation or any of its successors and assigns; thus, the party attempting to Verify this Amended Complaint has no personal knowledge of the facts she's attesting to (as McCalla Raymer probably drafted this Amended Complaint) and cannot attest as to:**

> **(a.) how she came into the knowledge of the lost note;**

> **(b.) what due diligence she exercised that could reasonably prove she conducted a search and diligent inquiry into how the Note was lost;**

> **(c.) the Affiant lacks personal knowledge of who had possession of the Note at the time it was lost;**

> **(d.) the Affiant could not possibly rely on the attorney-in-fact status of the Assignment when it is apparent that no recorded presence of such in the real property records of Osceola County, Florida exists;**

> **(e.) the newly-substituted Party Plaintiff also asks for Cancellation of a Mortgage not a party to this proceeding as there was no recorded Satisfaction of Mortgage of a Note and Mortgage claimed to have been held in favor of the Secretary of Veterans Affairs in violation of Florida Statute 701.04;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(f.) there does not appear to be a motion to add new Defendants to this foreclosure case prior to their inclusion, which now puts an apparent undue burden on the Estate of Margaret L. Lillich to notice all the additionally-added parties to the action and to defend title generally to any claimants of record;**

**(g.) the claim by the current Party Plaintiff appears unsubstantiated as to any attorney-in-fact or any other authority to verify through unrelated parties not familiar with the facts of the case;**

**(h.) the reliance of the recorded suspect Assignments wherein attorney-in-fact status is at best questionable as to its source could constitute not only fraud on the Court but also issues involving a false and misrepresentative document being recorded in the real property records with the intent to deprive the Property owner, or in the alternative, her Estate and its rightful heirs, in violation of Florida Criminal Code § 817.535, directly involving U. S. Bank and its employees in an apparent criminal RICO conspiracy under the Florida RICO statutes; and**

**(i.) because the assignment of mortgage was prepared by a Chase employee, the lack of relevant knowledge of the manufactured and self-serving assign ment to U. S. Bank, N.A. on its own behalf into a REMIC trust that may be involved in an improper transfer would also constitute securities fraud issues.**

The second Assignment of Mortgage was attached to the Complaint, proving reliance on this document by the current counsel of record and its law firm, which are also culpable in the manu-facture of the Amended Complaint.

This appears to prove that someone had the note at one point, but no one knows who has it now and the current Plaintiff's representative in the Complaint (as to its Verification) is foreign to the true party in interest and cannot make such claims unless some authority can be brought forward and proven giving that signing party the right to make such claims; otherwise, the Amended Complaint seeks to bring fraud on the Court.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 23:** *Bank of America, N.A. v. Patricia Sterling et al* **(2013 CA 2118 MF)**

**CASE NOTES: This cause of action references the recording of a MERS-originated Mortgage on 11-16-2007 as CFN#2007204927 in favor of Countrywide Bank FSB.  An Assignment of Mortgage was filed electronically on 03-29-2012 as CFN#2012044829, prior to the commencement of a foreclosure action against the property owner.**

The Assignment names MERS (as a standalone Assignor) as the "holder of a Mortgage" and lists the address of Metro Detective Agency in Danville, Illinois as its own; attempting to convey to Bank of America, N.A. as Successor by Merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP, as Assignor, and listed and address belonging to the Federal Home Loan Mortgage Corporation in McLean, Virginia ("Freddie Mac") as the address of record for Bank of America, N.A., which appears to be a clear-cut misrepresentation in this recordation which further appears to be a self-serving assignment designed to mislead the reader into believing that Bank of America, N.A. held the note and mortgage on the property. There were multiple issues with this document, to wit:

> **(1) There are numerous rubber stamps used for names, dates and titles, a marker of document manufacturing; there are scribbled signatures, which is a marker of robosigning;**

> **(2) The document was manufactured and executed in Ventura County, California, more than likely by Bank of America, N.A. employees, who appear to have self-assigned the mortgage and note to Bank of America, N.A., when the Assignee's address clearly shows that Freddie Mac is involved in some way;**

> **(3) The California notary (Vazrik Sarafians; Commission No. 1867732) signed under Penalty of Perjury under California law that Martha Munoz and Swarupa Slee (both alleged to be Bank of America, N.A. employees) are acting in their authorized capacities, when in fact, they claim to be acting in only a signing capacity to cover up the china of title, albeit apparently unsuccessfully;**

> **(4) MERS does not have an interest in the Note, which started out with Countrywide Bank FSB, yet that entity is NOT mentioned anywhere in the assignment; thus, the chain of title appears compromised in favor of making false and misrepresentative statements;**

> **(5) Diana DeAvila, a known Bank of America, N.A. employee, appears to have prepared the document, which could be construed to mean that the signors are mere $10/hour employees being handed a stack of assignment to affix their signatures to with no personal knowledge of any of the information they're attesting to in the document; and**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(6) Freddie Mac appears to be the real party in interest, yet it is not shown as the Plaintiff in this action.**

The first action filed by the law firm of Daniel C. Consuegra appears to have been dismissed on July 1, 2013, based on an electronic Court filing by Julian A. Braithwaite-Pierre (FBN 101065), which indicates that a settlement was reached prior to a hearing on the matter.

Unfortunately, the same named Plaintiff (Bank of America, N.A.) by and through its attorney of record, Matthew Pingeton (FBN177830) of Ablitt-Scofield, P.C. on behalf of Menina E. Cohen (FBN14236), also filed a Notice of Lis Pendens dated April 25, 2013, during the pendency of the first proceeding ("the apparent left hand does not know what the right hand is doing" scenario), recorded as CNF#2013088192 as filed by presentment on 06-04-2013.

Relying on the previously-recorded self-assignment, it appears that Cohen initiated the Complaint for Foreclosure, electronically filed with the Court on 05-28-2013.  The Complaint references the same mortgage previously being foreclosed on by the Consuegra Law Firm, in which Bank of America, N.A. also claims to be the Plaintiff with the right to foreclose.  There was no mention of Freddie Mac in either law suit.  It appears that Matthew Pingeton helped to route and directed the summons to the intended recipients.  Despite the fact that the apparent real party in interest was not present, a Notice of Voluntary Dismissal was filed by Cohen dated August 9, 2013 and the case was closed.

A Satisfaction of Mortgage was created by ReconTrust Company, N.A. out of Maricopa County, Arizona, executed on August 12, 2013 by Yannette Ramos-Leyva, who claims to be an Assistant Vice President of Bank of America, N.A. as Successor by Merger to BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP.   The document was acknowledged by Shirley Humberd (Arizona Notary Commission Expires 02-15-2015).

The document offered now explanation as to how the mortgage was retired.  There were no witnesses signatures on the document, which purported to Release the Lien from the subject property.

However, the fact remains that the party may have paid the wrong Lender who was not present during the pendency of these proceedings. The filing of the Assignment, which appears to contain false and misrepresentative informaiton, is construed to be a violation of Florida Criminal Code § 817.535.  There may also be issues with the chain of title and its marketability, despite the release of lien, which, as prepared, may also constitute the unauthorized practice of law.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 24: *JPMorgan Chase Bank, N.A. v. Henry J. Werner et al* (2012 CA 5051 MF)**

**CASE NOTES: This case begins with a MERS-originated Mortgage executed by Henry J. Werner, joined by his wife Jessica Werner, in favor of Suntrust Mortgage, Inc. (of Virginia), which was recorded in the real property records of Osceola County, Florida as CFN#2009180370 (by presentment) on 11-12-2009.   There appears to be one recorded Assignment of record, as shown below, which was relied upon by the Ablitt-Scofield law firm in the filing of the Complaint to foreclose.**

**CFN#2012099825, recorded by presentment on 07-06-2012**
**Signor: Toni Boland, alleged Chase employee, claiming to be a Vice President of MERS, attempts to self-assign a mortgage using MERS as a nominee for Suntrust Mortgage, Inc. to Chase. The document preparer was NTC in Florida.**
**Notary: Helen P. Tubbs (Louisiana Notary Commission No. 40392; lifetime)**
**Witnesses: Iquisha J. Criff, Erin Auger**
**There are multiple issues with this Assignment, to wit:**

    **(1) Suntrust Mortgage, Inc. is still in business and could have effectuated a proper assignment.  Their endorsement stamp to JPMorgan Chase Bank, N.A. seems to have made it onto the bottom of the 3-page Note that Henry Werner signed;**

    **(2) The document was prepared by Erika Lance of Nationwide Title Clearing, Inc. in Florida. After recording, the document was returned to NTC and apparently archived there;**

    **(3) Since the document was prepared in Florida, the Monroe, Louisiana Chase employees who appear to have executed this document using MERS as a "cover" for the chain of title (and chain of custody of the Note) would not have had actual, personal knowledge of the facts they were attesting to "by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association)";**

    **(4) In reference to the Paragraph 3 herein, there is no specific mention of which "board of directors" granted the signors the authority (MERS? Suntrust? Chase?);**

    **(5) In reference to the Paragraph 3 herein, the notarial execution is undelineated as to gender and plurality, a common marker of document manufacturing; and**

    **(6) If the parties executing this document were deposed or subpoenaed, it would be highly likely discovered that they were merely $10 an hour employees of Chase, using glorified titles to misrepresent their actual authority, which is misrepresented in this Assignment's notarial execution.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**In regards to the representations made on the promissory Note, the following issues were noted:**

> **(1) There were no attached Allonges to the Note, as there appeared sufficient room to affix indorsement stamps thereon;**

> **(2) There are two undated indorsement stamps affixed to the bottom of Page 3 of 3 of the Note; thus, the effective date of transfer of the Note is unknown;**

> **(3) The two indorsement stamps appear common to other documents endorsed by Suntrust Mortgage, Inc.;**

> **(4) Considering who the Plaintiff is in the foreclosure action, there is one too many indorsement stamps on the Note:**

>> **(a.) The first endorsement appears to be by way of the rubber stamp application of an indorsement from SunTrust Mortgage, Inc. directly to JPMorgan Chase Bank, N.A., by Valerie J. Ziglar, who claims to be a Vice President of SunTrust Mortgage, Inc., which should have been sufficient to make the transfer;**

>> **(b.) The second endorsement appears to the left of the first indorsement stamp affixed to Page 3 of 3.  It too appears to have been affixed by a rubber stamp, within which it appears to contain the signature of April Scott (hereinafter the "Scott Stamp"), who claims to be an Assistant Secretary for JPMorgan Chase Bank, N.A.; and**

>> **(c.) By virtue of the extra indorsement-in-blank Scott Stamp added to the scenario, it appears that the intent of JPMorgan Chase Bank, N.A. was to assign the Werner Note elsewhere; otherwise, why would the Scott Stamp be on that document in the first place?**

Thus, if this undated second Scott Stamp indicates what the Examiner believes happened with the chain of custody of the Note, then JPMorgan Chase Bank, N.A. may only be acting as the Servicer on the loan and a different real party in interest is effectively entitled to enforce the Note, but NOT Chase.

Further, the original Complaint has a glaring gap in the text on Page 4, followed by a notarial execution (not customarily seen on Complaints) on Page 5 of the Complaint itself, signed by Menina E. Cohen (FBN14236), which leads the Examiner to believe that there is probable cause that alterations occurred at some point in time in the processing of this document, prior to its filing with the Court.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Using the alleged self-assigned Assignment along with the alleged issues involving document alterations in reliance of its case, Cohen obtained a Final Judgment of Foreclosure, recorded on December 18, 2013 in the real property records of Osceola County, Florida as CFN#2013196816. Due to issues involving the alleged closing of the Connolly law firm, the sale was postponed until November 18, 2014.

**Case No. 25:** *JPMorgan Chase Bank, N.A. v. Jose A. Villegas Encarnacion et al*
**(2013 CA 0201 MF)**

**CASE NOTES:  This case relies on the MERS-originated Mortgage executed by the named Defendant in favor of Residential Acceptance Corporation of Georgia, still registered as ACTIVE in the Florida Department of State's online database:**

Foreign Profit Corporation

RESIDENTIAL ACCEPTANCE CORPORATION

Filing Information

| | |
|---|---|
| Document Number | F09000004870 |
| FEI/EIN Number | 582442998 |
| Date Filed | 12/08/2009 |
| State | GA |
| Status | ACTIVE |

Principal Address

5100 W. KENNEDY BLVD
SUITE 160
TAMPA, FL 33609

**The Mortgage was recorded on 05-10-2011 as CFN#2011062362.  Its filing corresponds to the Book and Page numbers referenced in the Complaint filed by Ablitt Scofield's Menina E. Cohen (FBN14236) on January 23, 2013 as noted.**

**Suspect issues involving the Complaint:**

> **(1) Page 3 of 4 of the Complaint shows a lot of blank space potentially due to copy manipulation, which could be the result of alteration of language within the document by Ablitt Scofield;**

> **(2) The original Complaint contains a notarial execution on Page 4 of 4, with the attorney signature below it.  Page 4 of 4 appears conveniently placed to include the notarial execution and complete Verification, along with the balance of the language run on from the preceding paragraph from Page 3 of 4, which contains the gaps on the page, appearing by design;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) By virtue of the fact it is notarized, this appears to be an effort by Ablitt Scofield to bring more "validity" to the document, which was signed out of state (Texas); however, due to the previous notations in the suspect issues presented (#1 and #2), the potential manipulation of the document is possible;**

**(4) There is nothing shown in the initial Complaint (based on the pleadings system in Florida courts) that demonstrates where the Plaintiff obtained the figures it claims are due and owing; and**

**(5) The balance of the document appears to be boiler-plated, similarly constructed to a template previously noted in other submitted Ablitt Scofield Complaints.**

Cohen also filed a Notice of Lis Pendens and caused it to be recorded by presentment in the real property records of Osecola County, Florida on 01-25-2013 as CFN#2013014083. It further appears that Cohen also exclusively handled the service of process.

As part of the Court files, there also appears to be included a "copy" of the Note, marked "Exhibit A", which appears to contain suspect issues, to wit:

**(1) There is a redaction of the MERS MIN, which is noted as irregular;**

**(2) Page 3 of 3 of the Note appears to contain a special (restrictive) endorsement to JPMorgan Chase Bank, N.A.; however, the indorsement stamp appears to contain typed in language after it was affixed, which appears to indicate that:**

> **(a.) the signor (Kristie Self), who purports to be a Mortgage Loan Clerk with Texas Star Bank, S.S.B. claims she is an agent and attorney in fact for the Assignor, the originating MERS Lender; and**

> **(b.) when conducting a search for a recorded Limited Power of Attorney using the name of the originating Lender, as noted in the indorsement, there is no recorded attorney-in-fact in the real property records of Osceola County, Florida;**

**(3) Thus, the endorsement appears to lack recorded authority, not attached to the Complaint or the Note as part of the evidence package to authenticate such.**

A copy of the Mortgage and Assignment used in the Complaint to back up the claims of the Plaintiff were also made a part of Exhibit "A".  In this instance however, the original copy shown as a Certified Copy of the Assignment of Mortgage:

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) appears to have been labeled EXHIBIT "A" as recorded in its original form;

(2) appears to have been prepared by Ablitt Scofield for use as Exhibit "A" and not as an official recorded document, by design (or mistake);

(3) appears to have been returned to Ablitt Scofield to be incorporated into the Complaint as Exhibit "A" in its originally-recorded form, which makes it suspect for fraud on the Court issues; and

(4) appears to have been designed to have Chase's own employees, using MERS as a "cover" for the design (or mistake; using the Metro Detective Agency's address in Danville, Illinois instead of the originating Lenders' address in Georgia), in an apparent self-assignment of the Mortgage to Chase without the participation of the originating Lender who is still in business and could have executed the document itself through its own employees who would have had more personal knowledge of the effective date of transfer.

The foregoing discussion is based on an Assignment of Mortgage filed on October 24, 2012 as CFN#2012154560.  The Certified Copy submitted was found to be stamped EXHIBIT "A" when recorded into the real property records of Osceola County, Florida.

Thus, this would lead the examiner to believe that the recorded Instrument was "manufactured by design as an EXHIBT to purposefully bring fraud on the Court and make use of a fraudulent and deceptive document, containing misrepresentative information, intended to be used in the deprivation of a person's property, in violation of Florida Criminal Code § 817.535.

Because the document appears to contain the use of the MERS business model to cover up the intent of the parties, the employees of Chase, Chase itself, Ablitt Scofield (who is responsible for the allegations brought by WITNESS A) and MERS, who provided the "cover" for the false and misrepresentative assignment proffered as manufactured evidence in the real property records, appear to be complicit in violations of Florida's RICO statutes for perjury and for violation of Florida Criminal Code § 817.535.

This is not the first time an Assignment of Mortgage was recorded in this instance.  A previous Assignment of Mortgage was recorded four (4) months earlier, on July 27, 2012 as CFN#20122110710, without the EXHIBIT "A" stamped on the face of the document.

The recorded Assignment presents the Examiner with specific suspect issues, to wit:

(1)  The document was prepared by Erika Lance, an employee of NTC, a known third-party document manufacturing plant in Palm Harbor, Florida;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(2) The document again uses MERS as a "cover" for an apparent Chase self-assignment by Chase's own employees in Monroe, Louisiana; and**

**(3) The document states that the originating Lender's address is the MERS post office box in Flint, Michigan; when in fact, the originating Lender, still in business, is headquartered in Georgia;**

**(4) Since the document was prepared in Florida, the Monroe, Louisiana Chase employees who appear to have executed this document using MERS as a "cover" for the chain of title (and chain of custody of the Note) would not have had actual, personal knowledge of the facts they were attesting to "by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association)";**

**(5) In reference to the Paragraph 3 herein, there is no specific mention of which "board of directors" granted the signors the authority (MERS? the originating Lender? Chase?);**

**(6) The notarial execution is undelineated as to gender and plurality, a common marker of document manufacturing; and**

**(7) If the parties executing this document were deposed or subpoenaed, it would be highly likely discovered that they were merely $10 an hour employees of Chase, using glorified titles to misrepresent their actual authority, which is misrepresented in this Assignment's notarial execution.**

**Thus, the previously-recorded Assignment of Mortgage appears to contain as many noted misrepresentations as its apparent EXHIBIT A manufactured successor, using a second recorded document to further the artifice (since recorded by presentment) and scheme to defraud a property owner in violation of 18 USC 1341 (mail fraud) and further, creating more intent in violating Florida Criminal Code § 817.535 et seq as well as Florida's RICO statute.**

A check of the existing court files shows that Cohen (on behalf of Connolly, Geaney, Ablitt & Willard, P.C.) filed a Notice of Voluntary Dismissal and Discharge of Lis Pendens on July 9, 2013, which to date does not appear to have been ruled on.

Thus, the chain of title to this homeowner's property still appears to be slandered with two suspect assignments and a Notice of Lis Pendens.  The Examiner believes that even with the Borrower-Property Owner's desire to liquidate the Property (via sale to a third-party purchaser) in an effort to mitigate a proven Plaintiff-Claimant's damage, the title appears unmarketable and uninsurable at this juncture.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 26:** *JPMorgan Chase Bank, N.A. v. Emilia Hoy et al* (2012 CA 4828 MF)

**CASE NOTES: The Mortgage was recorded on 12-18-2001 as CFN#2001185916. Its filing corresponds to the Book and Page numbers referenced in the Complaint filed by Ablitt Scofield's Matthew A. Pingeton (FBN177830) for Menina E. Cohen (FBN14236) on October 17, 2012 as noted.**

**There are multiple suspect issues involving the Complaint, to wit:**

**(1) Page 3 of 4 of the Complaint shows a lot of blank space potentially due to copy manipulation, which could be the result of alteration of language within the document by Ablitt Scofield;**

**(2) The original Complaint contains a notarial execution on Page 4 of 4, with the attorney signature below it. Page 4 of 4 appears conveniently placed to include the notarial execution and complete Verification, along with the balance of the language run on from the preceding paragraph from Page 3 of 4, which contains the gap on the page, appearing by design;**

**(3) By virtue of the fact it is notarized, this appears to be an effort by Ablitt Scofield to bring more "validity" to the document, which was signed out of state (Texas); however, due to the previous notations in the suspect issues presented (#1 and #2), the potential manipulation of the document is possible;**

**(4) There is nothing shown in the initial Complaint (based on the pleadings system in Florida courts) that demonstrates where the Plaintiff obtained the figures it claims are due and owing; and**

**(5) The balance of the document appears to be boiler-plated, similarly constructed to a template previously noted in other submitted Ablitt Scofield Complaints.**

**Cohen also filed a Notice of Lis Pendens and caused it to be recorded by presentment in the real property records of Osecola County, Florida on 10-23-2012 as CFN#2012153456. It further appears that Cohen also exclusively handled the service of process.**

**As part of the Court files, there also appears to be included a "copy" of the Note, marked "Exhibit A", which on Page 3 of 4 of the Note appears to contain an indorsement-in-blank from Chase Manhattan Mortgage Corporation's Maria Teresa Gonzalez (Supervisor) below the signatures of the Borrowers; however, the endorsement is undated and fails to demonstrate the effective date of transfer to JPMorgan Chase Bank, N.A.;**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

A copy of the Mortgage and Assignment used in the Complaint to back up the claims of the Plaintiff were also made a part of Exhibit "A".  In this instance however, as different from the previous case, this Complaint proffers what appears to be a copy (shown as a Certified Copy of the Assignment of Mortgage in the Court record) of an UNRECORDED Assignment of Mortgage:

> (1) which also appears to have been labeled EXHIBIT "A" as if it were designed to be recorded as the original form; however, the document is NOT RECORDED;

> (2) appears to have been prepared by Ablitt Scofield for use as Exhibit "A" and not as an official recorded document, by design (or mistake);

> (3) appears to have been returned to Ablitt Scofield to be incorporated into the Complaint as Exhibit "A" in its unrecorded form, which makes it suspect for fraud on the Court issues because of the proximity in which it was prepared, showing the effective date of the Assignment being September 18, 2012, right before Ablitt Scofield attorney Cohen filed the action; and

> (4) appears to have been designed to have Chase's own employees self-assign the Mortgage to JPMorgan Chase Bank, N.A., so Chase could effectuate suit to foreclose, at the apparent direction of the law firm who prepared it; and

> (5) as this document was drafted by the law firm, it is highly likely that the Chase employees executing this document would not have had actual, personal knowledge of  the effective date of transfer.

NOTE: It should be noted that the foregoing drafted and executed Assignment of Mortgage, despite the fact it is not recorded, does not preclude issues of perjury under the RICO statutes of Florida.

Should this prepared Assignment be recorded at some point in time in the future, it would represent the same suspect issues discussed in the previous case in this § (#25).  The intent however, was to create a document with the purposes of committing fraud on the Court, as the same Texas notary (Shelley Kuhn) participated in both the "Verification" and the apparent "Self-Assignment of Mortgage".

It appears that Ablitt Scofield's Cohen filed a Notice of Voluntary Dismissal and Discharge of Lis Pendens with the Court on December 3, 2012.  This document was filed in the real property records of Osceola County, Florida on January 3, 2013 as CFN#2013000830, which the Examiner finds to be irregular, based on the fact the Court records show the case closed on December 19, 2012, without Order.  It does NOT appear that the Notice of Lis Pendens has been discharged simply because Cohen filed this Instrument.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 27:** *HSBC Bank USA, N. A. as Trustee for Deutsche Securities, Inc. Mortgage Loan Trust, Series 2004-5 v. Manuel E. Avalos et al* (2013 CA 0979 MF)

**CASE NOTES:** This case began with the execution of a MERS-originated Mortgage by the Defendants, which was recorded in the real property records of Osceola County, Florida on 04-05-2004 as CFN#2004065821 in favor of the now-defunct Pinnacle Direct Funding of Orlando, Florida. Two different assignments were utilized in this case.

The first assignment, found also under the David J. Stern law firm headings is shown here:

CFN#2010086729, recorded by presentment on 06-17-2010
Signor: Christopher M. Zeis (purportedly an employee of M & T Bank) signing as Vice President of MERS as nominee for a defunct lender (as of January of 2008) on May 21, 2010 in an apparent self-assignment to HSBC Bank USA as Trustee (it does NOT say who the bank is a Trustee for) in c/o M & T Bank.
Notary: Katherine M. Kraus (New York Notary Commission No. 01KR6168154; current commission expired on 06-11-2011)
Attesting Witness: Maureen Vishion
Witnesses: Becky Beranek, Patricia Sneck
Issues: This assignment was prepared by the Stern law firm, who directed its manufacture and execution for the purposes of effectuating foreclosure; thus, the persons executing this document had no direct knowledge of the facts they were attesting to.   The Assignor used an old mail stop belonging to Pinnacle, which is misrepresentative of the facts as Stern's law firm requested the document be sent back to them once it was recorded.

The second assignment appears to have been manufactured by M & T Bank to effectuate foreclosure, as discussed below:

CFN#2013106992, recorded by presentment on 07-15-2013
Signor: Emily Witt (an alleged employee of M & T Bank, previously noted) signing as Assistant Secretary for MERS as a nominee "cover" for the now-defunct Pinnacle Direct Funding Corporation; in a Corrective Assignment of Mortgage, cleaning up the language of the Assignee to clarify the closed REMIC trust she attempted a conveyance of the Mortgage into.
Notary: Tammy M. Hamilton (New York Notary Commission No. 01HA6199021; current commission expired on 01-12-2013)
Witnesses: There were no witness (Florida law may require 2 witnesses)

There are numerous issues with the filed Complaint, to wit:

(1) The Assignment relied upon to effectuate the foreclosure appears backdated to December 11, 2012 but wasn't recorded until July15, 2013;

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) The Complaint was filed March 7, 2013 by Matthew Pingeton (FBN 177830) for Menina E. Cohen (FBN 14236) despite the fact that the Verification was signed on December 31, 2012, in close proximity to the backdated Assignment of Mortgage, which was based on the belief that the Note contained sufficient proof to show that the Plaintiff trust was not designated in the specific endorsement;**

**(3) Despite the fact that it appears that M & T Bank has been given attorney-in-fact status to execute documents in the stead of HSBC Bank USA, N.A. as the Servicer of the relative loans, including the apparent subject loan, Page 3 of 3 of the Note that is proffered as evidence does NOT specifically name as part of the restrictive (specific) endorsement the name of the trust series covered under the Agreement for which the Power of Attorney allegedly applies;**

**(4) The indorsement stamp shown on Page 3 of 3 of the Note is undated, construed to mean that the effective date of the transfer is unknown;**

**(5) Based on the backdated Assignment, suspect issues are prevalent as to whether Colleen Newton, who claims to know all of the facts she is attesting to in the Verification, is attesting to what was put into the document by Pingeton, who is equally suspect for being involved in a scheme to alter sworn declarations, including the statements made in the Verification by Newton;**

**(6) The closing date of the trust pool (on which the Power of Attorney relies to make what M & T Bank did in attempted manufacture of the Assignment) was on or about August 30, 2004; thus, the transfer into the trust was void according to New York Trust law and several SEC and IRS-promulgated regulations;**

**(7) Pinnacle Direct Funding Corporation was still defunct when this Assignment of Mortgage was manufactured;**

**(8) The parties at M & T Bank engaging in this pattern of behavior:**

> **(a.) did not appear privy to the information relief upon in the Assignment before they affixed their signatures and seal to the document as the document appears to have been drafted by Tiffany A. Kisloski who works in the bank's "lien release" department in Buffalo, New York;**

> **(b.) are commonly known signors utilized in the alleged manufacture of these documents, many of which are self-assigned to trusts on M & T's behalf; and**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(c.) lack complete delineation of the issues within the notarial jurat, all claimed to have been done within the authorized capacity of the signor and sworn to by the notary; and**

**(9) The Assignment was attached to the Exhibits proffered by Ablitt Scofield's Cohen; however, the document that was attached as part of the EXHIBIT package:**

**(a.) was NOT recorded in the real property records of Osceola County, Florida; thus, there was no constructive notice to the world that an actual Assignment took place;**

**(b.) was NOT the same Assignment of Mortgage eventually recorded in in the real property records of Osceola County, Florida; thus, there is probable cause to believe that the Assignment attached to the Complaint's Exhibit package was part of a scheme to commit fraud on the Court, as:**

**(i.) this Assignment was executed by Laurie Benard, who claims to be a Vice President of MERS as nominee for the still-defunct Pinnacle Direct Funding Corporation; and**

**(ii.) this unrecorded Assignment was not backdated but rather dated AFTER the Verification was executed by Newton, supra, but BEFORE Pingeton signed the Complaint and submitted it to the Court, apparently hoping no one would notice;**

**(c.) was prepared by the same document preparer (Tiffany A. Kisloski) who prepared the December 11, 2012 backdated Assignment that was eventually recorded in the real property records of Osceola County, Florida; thus, it appears that the information being fed to Kisloski in order to manufacture the documents was dictated as alleged hearsay information by other outside parties (including Pingeton and Ablitt Scofield) to further the schemes and artifices to defraud the Property owner.**

**It is also noteworthy here, as previously discussed in the issues involving securitization, that in order to do equity, the trust REMIC claimant must have equity.**

Two U. S. District Court judges in New York have already ruled that the certificate holders HSBC as Trustee claims to represent have evidence of debt and not equity; thus, the Party Plaintiff could not possibly have sustained any damage and thus, had no standing to pursue a Complaint to foreclose on the Property in the first place.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thus, it would appear that the recorded Assignment was drafted under the direction of the servicer, working in concert with Pingeton and Ablitt-Scofield, to manufacture this said document with the intent to defraud the property owner using a document recorded in the real property records of Osceola County, Florida, containing false or misrepresentative information in violation of Florida Criminal Code § 817.535 and Florida RICO statutes.  Further, two witnesses may be required under Florida law; however, none are present here.

Further, on June 12, 2014, a Stipulation for Substitution of Counsel for Plaintiff was electronically filed with the Court which contains the signatures of Connolly attorney Walter H. Porr, Jr. by Antonio Campos (FBN 672467) and Lisa Woodburn (FBN11003) on behalf of Kristina A. Nubaryan (FBN 51318) on behalf of the McCalla Raymer law firm, which now appears to indicate that the McCalla Raymer law firm is tied to the entire scenario of this case, since it appears the Connolly law firm filed for bankruptcy.

A complete listing of all of the cases was proffered to the Court within this filing and should be so noted in this forensic examination.  There is a Client Consent with M & T Bank with the signature of Maureen Vishion (who has signed other documents as noted previously) for said bank, attached to this filing, previous in order to the listings of the cases that McCalla Raymer has agreed to take over on behalf of the Connolly law firm.

**Case No. 28:** *U. S. Bank, N.A., as Trustee, successor in interest to Bank of America, N.A. as Trustee as successor by merger to LaSalle Bank, N.A. as Trustee for WaMu Mortgage Pass-Through Certificates Series 2007-OA5 v. Estate of Barbara A. D'Amico et al (2013 CA 1686 MF)*

**CASE NOTES:  There are no assignments of record filed in the real property records of Osceola County, Florida in this case.   It is suspect that such an Assignment would be filed prior to the start of foreclosure proceedings; however, none was noted here.**

**There is a recorded Power of Attorney (p. 11) giving JPMorgan Chase Bank the power to sign the Verified Complaint; however, the facts and figures attested to in the Complaint are lacking, as their is no recorded proof of effective date or assigned transfer into the trust as is required under the Pooling and Servicing Agreement.**

**It appears that Chase employees executed the Verification on this Complaint, filed by Ablitt Scofield's Matthew A. Pingeton (FBN177830) for Menina E. Cohen (Florida Bar No.14236), along with the Notice of Lis Pendens, filed by presentment on 05-13-2013 as CFN#2013074692, creating what the Examiner believes is a slander on title.  Pingeton appears to have handled the filing of the service of process in the case.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It further appears that the late Defendant's husband retained counsel.  It further appears that on January 9, 2014, there was a Motion for Substitution of Counsel for Plaintiff, from Ablitt Scofield/Connolly to Robertson, Anschutz & Schneid, P.L.

There are multiple issues with this case, which is set for a non-jury trial on November 19, 2014, to wit:

(1) There are questionable issues as to who gave Select Portfolio Servicing, Inc. (hereinafter "SPS") "attorney-in-fact privileges" to be able to substitute Robertson, Anschutz & Schneid, PL.  The "Client Consent to Substitution of Counsel" became part of the Court record on January 9, 2014.  SPS's "Document Control Officer", Karter Nelson, allegedly signed this document on December 18, 2013 attesting to that fact;

(2) Nelson does not indicate WHO gave he/she attorney-in-fact privileges (was it U. S. Bank, N.A. or JPMorgan Chase Bank, N.A.?);

(3) A search of the real property records in Osceola County, Florida under U. S. Bank, National Association and every derivation thereof shows no Limited Power of Attorney being issued to SPS for the purposes of dealing with issues regarding that specific trust pool;

(4) A search of the real property records in Osceola County, Florida under JPMorgan Chase Bank, National Association and every derivation thereof shows no Limited Power of Attorney being issued to SPS for the purposes of dealing with issue regarding that specific trust pool;

(5) The Note and Mortgage have not been filed with the Court as noted in the existing record.  Typically, there has to be an Assignment of the Mortgage into the trust pool.  There is no evidence in the real property records of Osceola County, Florida wherein such an Assignment has been duly recorded;

(6) The Closing Date of this trust REMIC was May 24, 2007.  Any assignment that would be conveying an interest to this trust pool would be void under New York Trust Law at § 7-2.4; thus, this trust (in the Examiner's opinion) lacks the standing and certainly the capacity necessary to foreclose on this Property without a recorded Assignment of Mortgage to the Trust REMIC.

It will be interesting to note what endorsements will appear on the Note and who will bear the responsibility for bringing fraud on the Court.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 29:** *JP Morgan Chase Bank, N.A. v. Barbara A. Jamason et al* **(2013 CA 0259 MF)**

**CASE NOTES: This case evolved from a non-MERS Mortgage executed by William Jamason (Barbara's husband), a married man, in favor of JPMorgan Chase Bank, N.A., filed for record by presentment on 04-05-2010 as CFN#2010047052.**

On January 17, 2013, Ablitt Scofield attorney Matthew Pingeton (FBN177830) on behalf of attorney Menina E. Cohen (FBN14236), caused to be filed a Notice of Lis Pendens (by presentment) on 02-26-2013 as CFN#2013020771.  As part of the legal description provided, included was the information taken from a Certificate of Title issued on the Property wherein Wells Fargo Bank, N.A. as Trustee for IMPAC Secured Assets Corp. Mortgage Pass-Through Certificates, Series 2005-2, had obtained such title at sale and sold it to the Jamasons as the result of a previous foreclosure.  The law offices of David J. Stern was involved in the preparation of the Certificate of Title. Despite the issuance of a Special Warranty Deed wherein Wells Fargo Bank, N.A. as Trustee warranted to defend title, the case from which the Certificate of Title evolved was at best suspect for violations of the very pooling and servicing agreement it claimed to be working under at the time of the foreclosure against the previous property owners.

**The Complaint filed by the Pingeton/Cohen team appears to contain a verification on Page 4 of the Complaint; however, there are issues with this case that bear concern, to wit:**

**(1) The law firm preparing this document filed for bankruptcy and was recently defaulted on a lawsuit brought against it by WITNESS A, who accused Ablitt Scofield's partners and Pingeton of manipulating files AFTER they were signed by the person verifying the Complaint.  This allegation was part of her whistleblower lawsuit against the firm; thus, the preparation of this document, wherein the entire signatory is reserved for Page 4 of 4, could be construed to mean that the first three (3) pages of the Complaint could have been subject to manipulation;**

**(2) The Complaint document itself appears to have been prepared by Pingeton; thus, the person verifying the Complaint is seemingly verifying Pingeton's words and not her own;**

**(3) Despite the fact there are no recorded Assignments of Mortgage in the real property records of Osceola County, Florida, Cohen later claimed to file the Original Note and Original Mortgage, which the Court copy made privy to the Examiner herein contains a suspect item, namely, an indorsement-in-blank made by Crystal Williams, who purports to be an Assistant Secretary of JPMorgan Chase Bank, N.A., without recourse.  It is the Examiner's guess that unless Chase intended to assign this property to some other party, the indorsement-in-blank would not be necessary.  This is turn has created a suspect issue as to:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(a.) why the indorsement stamp was applied in the first place; and**

**(b.) if the intent was to transfer the Note and Mortgage, who was it transferred or assigned to?; and**

**(4) Despite the proffering of the Note and Mortgage, another "EXHIBIT A" was also tendered to the Court record which DOES NOT SHOW the two-hole punch marks in the Note pages as proffered in the Original Note claimed to be filed by Cohen. Any point in time wherein the Note is duplicated for any purpose, certain suspect issues are noted when the copies do not match with the originals purported to be filed with the Court.**

A status hearing in this case has been set for January 13, 2015 at 9:30 a.m. Its outcome is unknown due to the known fact that Ablitt Scofield (through its changed name as Connolly, Geaney, Ablitt & Willard, P.C.) filed for bankruptcy protection and that in the *Werner* case, supra, the Court was noticed that Chase was substituting Phelan Hallinan, P.C. as counsel in all of Chase's Florida cases. However, this case was NOT noted on the list that was attached to the Chase-Phelan Hallinan filed notice in *Werner*.

Further, the fact that the Jamasons purchased this foreclosed property from the Trustee raises further concerns that the previous foreclosure action was wrongful and that the subsequent purchasers (the Jamasons) purchased a property that was suspect for issues with title and potential secondary liability, as the previous Borrower's Note could have been fractionalized and placed into multiple trust pool tranches within the same trust or into multiple other trusts which may bring claims against the Property in the future.

**Case No. 30:** *U. S. Bank, N.A. as Trustee for the Holders of the WMALT 2007-OA3 Trust v. Estate of Duane Dienst, Deceased et al* **(2013 CA 1288 MF)**

**CASE NOTES: This case begins with the execution of a MERS-originated Mortgage by Duane Dienst (now deceased) and his wife Carolyn Dienst in favor of Countrywide Bank, N.A. which was filed for record by presentment on 09-13-2006 as CFN#2006226229. The real property records indicate that Duane Dienst died on March 18, 2008 and the property appears to have been plagued with legal issues ever since, starting with a Notice of Lis Pendens being filed against the Property by Countrywide Home Loans, Inc. (by presentment) on 08-28-2008 as CFN#2008138948. This was followed by a Notice of Lis Pendens being filed against the Property by the Runaway Beach Club Condominium Association, Inc. for a claim of lien owed to it for non-payment of apparent COA dues.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

During the history of the property, three assignments were filed in relation to the existing Mortgage, as discussed in the following paragraphs below:

**CFN#2008147197, recorded by presentment on 09-15-2008**
This document appears to have been prepared by Jack S. Lewis, an attorney for Adorno & Yoss, LLP (who appear to have brought the first foreclosure action on the property on behalf of Countrywide Home Loans, Inc. for the benefit of Washington Mutual Mortgage Securities Corp.); recorded in conjunction with the filing of a foreclosure action against the property of Duane and Carolyn Dienst.
Signor: Isabel V. Colleran (in what appears to be a law-firm manufactured assignment by the law firm's own employees) claiming to be an Assistant Secretary of MERS as nominee for Countrywide Bank, N.A. (more than likely under the direction of Lewis and others at the firm), as Assignor, to Countrywide Home Loans, Inc. for the benefit of Washington Mutual Mortgage Securities Corp., as Assignee.
Notary: Maria Yolanda Ruiz (Florida Notary Commission No. DD371801; expired)
Witnesses: Francisca Hidalgo, Yolanda Ruiz (the Notary)
Issues: This document was executed on August 12, 2008 but NOT recorded until September 15, 2008, just before the Lis Pendens was filed by Adorno & Yoss, LLP; thus, despite the fact that the suspect issues may give probable cause to the scenario, the date of the recording excludes it from prosecution under Florida Criminal Code § 817.535. However, the predisposition to manufacture documents by this firm has been established, as the attorney preparing this document was under the direction of Countrywide (or its servicer) and more than likely prepared this document from computer-accessed third-party hearsay information.

**CFN#2011135218, recorded by presentment on 09-28-2011**
This document appears to have been prepared by Bank of America,N.A. employee Diana DeAvila and executed by Bank of America employees in Ventura County, California in what appears to be a directed self-assignment of the Mortgage and Note, executed by Duane and Carolyn Dienst.
Signors: Richard Fox and Edward Gallegos, who claim to be an Assistant Secretaries of MERS (as a standalone entity, as Assignor) as a nominee for no one. Both are known robosignors.
Notary: Dee Ann Westfall Cortes (California Notary Commission No. 1805013); her name and notary seal has been commonly seen on many Bank of America-related document manufactures.
Witnesses: Mary Ann Hierman (also known document preparer and robosignor), Cecilia Rodriguez (also known robosignor).
There are multiple issues with this Assignment, to wit:

(1) MERS does not own the Note and therefore cannot convey something that it does not have a pecuniary interest in;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) MERS "standalone" use in this scenario constitutes document manufacturing abuse by Bank of America, N.A. employees;**

**(3) MERS Ocala address actually belonged to Electronic Data Systems ("EDS"), no longer occupies that leased space.  Attached to this report is an Exhibit regarding communication involving that leased space;**

**(4) There are numerous "black, bold-faced type" appearances throughout the document, suggesting third-party computer-generated data access by DeAvila, unknown to the signors and especially the notary, who acknowledged this document under penalty of perjury (while failing to delineate the notarial execution as to gender and plurality, another common marker of document manufacturing);**

**(4) MERSCORP put out a Policy Bulletin directing the members who use the MERS electronic database to no longer use the Ocala, Florida address after December 6, 2010.  MERSCORP/MERS Rules of Membership appear to state that the members who utilize MERS in any capacity can ignore the MERS rules and do whatever they want, including but not limited to, recording their transactions in the MERS electronic database as well as to ignore the foregoing policy, also attached as an Exhibit to this Report (both Exhibits are incorporated by reference herein); and**

**(5) This Assignment was created in favor of Bank of America, N.A. (as successor to all other entities) with only a single indorsement-in-blank stamp on the Note itself, as proffered in the current litigation; thus, the chain of custody of the Note is in question and the chain of title appears compromised.**

**CFN#2013107000, recorded by presentment on 07-15-2013**
**This document was prepared by Ablitt Scofield in conjunction with the litigation it filed in the matter connected with the manufacture of this document, which contains false and mis-leading information with the intent to deprive the property owners of their property, in vio-lation of Florida Criminal Code § 817.535 and Florida RICO statutes.  After recording, it appears to have been returned to Ablitt Scofield at its Woburn, Massachusetts office.**
**Signor: Sandra Brown Waites (who only signed as Sandra Waites), claiming to be an As-sistant Vice President of Bank of America, N.A. (as successor), as Assignor, transferring the Dienst's Mortgage and Note to U.S. Bank in favor of the WMALT 2007-OA3 REMIC trust.**
**Notary: Quan Nguyen (Texas Notary Commission Expires 09-11-2013)**
**Witnesses: Stephen Allen Johnson (signing as Stephen A. Johnson), Edwin Hill**
**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) The document was manufactured (as noted therein) "as a formality pursuant to the requirements set forth under § 701.02"; however, the section is not specific as to what state or federal statute or rule this "section" is attributed to;**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) The existing indorsement-in-blank on the proffered Note is undated and non-specific as to the balance of the chain of custody of the Note;**

**(3) The document was prepared in Florida and notarized in Texas based on likely third-party, computer database-generated hearsay information;**

**(4) The Closing Date of the alleged Trust was March 28, 2007.  The chain of Assignments went from Countrywide Bank to Countrywide Home Loans for the benefit of the former litigant not present here; to Bank of America, N.A. to the Trust, from the inception of the loan to the final recordation date of 07-15-2013, in an apparent attempt to persuade the Court that the conveyance into the trust REMIC was valid, when in fact, the Pooling and Servicing Agreement was contravened and is thus void under the New York Estates Powers and Trusts law, § 7-2.4.  The particulars of the method of the conveyance into the trust are shown below as taken from the SECINFO.com website link, as noted below (using "closing" as the search term):**



**http://www.secinfo.com/$/SEC/Filings.asp?
AN=0000930413-07-002861&Find=closing&Page=1&List=Docs&Show=Each**

**Thus, even the purported January 14, 2013 (error on the Assignment Date crossed out and initialed by the signor) Assignment to the Trust REMIC:**

**(a.) the document was signed and acknowledged under penalty of perjury under Texas law;**

**(b.) the language in the Florida-manufactured and Texas-signed and acknowleged document purports to represent the address of the REMIC trust and Bank of America, N.A. (475 Cross Point Parkway, Getzville, NY) are one in the same entity location for everyone involved in the assignment;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(c.) the constructive Notice to the world was nearly six (6) years AFTER the fact of when the trust REMIC should have received it;

(5) As the result of the foregoing scenario, the Plaintiff could not possibly own the Borrower's Note and thus cannot have standing; and

(6) Based on the misrepresentations within the document as noted, the intent by the parties is to deprive the homeowner (Carolyn Dienst) of her property, in violation of the foregoing noted statutes, using multiple actors to commit the fraud.

There are multiple issues involved with the filed Complaint, in light of the foregoing, to wit:

(1) On Page 4 of 5 of the actual Complaint, there appears to be a manipulation of the Page which shows roughly a 3/4-page "gap" in the text, which appears to have been manipulated to insure that the entire "Verification" § is contained on Page 5 of 5, along with the Pingeton/Cohen sign-off on the Complaint;

(2) Charlotte B. Mistick (or Mistich), who claims to be an Assistant Vice President, does not delineate whether she is an officer of Bank of America, N.A. as the Servicing Agent; is an officer for U. S. Bank, N.A. as Trustee; or is an officer of the trust REMIC; thus, the Verification is ambiguous as to misrepresentation of authority to sign;

(3) In light of the foregoing discussion within Paragraph 2, supra, it is highly likely that:

(a.) Mistich/ck actually prepared this document for signing;

(b.) that given the manipulations, the document may have suffered alterations post-signing of the Verification; and

(c.) the proffered EXHIBIT A as noted herein only takes the chain of custody of the Note through Countrywide Bank, N.A. and does not involve the balance of the chain showing an effective date of transfer to each part of the chain, in time to meet the REMIC's Closing Date.

(4) The Assignment of Mortgage (as noted in the recorded version) was attached to the Complaint BEFORE it was recorded, thus, only the parties involved in the proceeding and the Court had actual Notice of the Assignment, used in an apparent attempt to add some sort of credibility to the law firm's contrived allegations, yet unproven; and

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(5) Counsel for the Plaintiff also saw fit to attach the second recorded, self-assigned Assignment of Mortgage, dated September 6, 2011, still well past the Closing Date of the REMIC trust.**

At this juncture, it appears that Erike DeL'Etoile (FBN71675) filed a Notice of Appearance as Co-Counsel, on behalf of the Albertelli Law firm in Tampa, Florida, requesting that all pleadings and papers now be sent to Albertelli Law, filed with the Court electronically on June 4, 2014. Six days later (June 10, 2014) Albertelli Law filed a Motion for Substitution of Plaintiff's Counsel, as stipulated, based on the Connolly law firm's failure and subsequent bankruptcy filing.

Attached to this filing was a Client Consent form, signed by Sherry Sumerauer on April 29, 2014, who claims to be an Assistant Secretary for Nationstar Mortgage LLC, who at this juncture appears to have taken over for Bank of America, N.A. as Servicing Agent, notwithstanding the foregoing issues discussed in the other aspects of the Verification within the Complaint filed by Ablitt Scofield attorneys.

An Order of Substitution of Counsel was granted by Judge Robert Pleus, Jr.; as of the entry of these items into the report, a Status Hearing is set for October 28, 2014 at 1:30 p.m.

The issues here clearly involve the standing of the Plaintiff and the relevant issues regarding the chain of custody of the Note, which appears to fail due to the lack of specific endorsements between the parties that do not clarify the effective date of the transfer of the Note to any of the parties involved in this proceeding; thus, the manufactured, self-assigned documents appear to stand of record, containing the previously-noted misrepresentations.

**Case No. 31:** *Wells Fargo Bank, N.A. as Trustee, on behalf of the holders of the Harborview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2007-1 v. Duc C. Nguyen et al* **(2013 CA 0140 MF)**

**CASE NOTES: This case involves real property which appears to have been titled in the name of Duc C. and Wendy L. Nuygen [hereinafter "Nuygen(s)"], husband and wife, by Lennar Homes, Inc. (a Florida corporation), as Grantor of a Special Warranty Deed. This case concerns the subject Property located at 3105 Twisted Oak Loop, Kissimmee, Florida 34744. There appear to be three (3) mortgage loans involved with the subject Property.**

**MORTGAGE #1: The Nuygens, as Borrowers, appear to have executed a MERS-originated Mortgage executed by which was recorded in the real property records of Osceola County, Florida by presentment on 12-01-2006 as CFN#2006284301 (Book 3345; Page 1144).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The document appears to have been prepared by the now-defunct First Magnus Financial Corporation, an Arizona corporation (603 N. Wilmot, Tucson, AZ 85711).

First Magnus Financial Corporation filed a voluntary bankruptcy petition under Chapter 11 on August 21, 2007. The case number is 4-07-bk-01578-JMM.  A pdf file was converted to a hard copy for the Exhibit file and is incorporated by reference herein as part of the Exhibit listings in this Report.   Keeping in mind that First Magnus filed for Chapter 11 Bankruptcy, the two Assignments of Mortgage that follow herein become suspect for violations under Florida Criminal Code § 817.535, as each contains false and misrepresentative information, designed to convince the viewer relying on these documents, that certain instances occurred which in part were attested to under penalty of perjury, or in the alternative, attested to as being executed under an "authorized capacity" which is suspect as to whether such capacity even exists.

CFN#2011138975, recorded by presentment on 10-06-2011
This document appears to have been prepared by Bank of America,N.A. employee Diana DeAvila and executed by Bank of America employees in Ventura County, California in what appears to be a directed self-assignment of the Mortgage and Note, executed by the Nguyens. Signors: Richard Fox and Edward Gallegos, who claim to be an Assistant Secretaries of MERS (as a standalone entity, as Assignor) as a nominee for no one.   Both are known robosignors.
Notary: Dee Ann Westfall Cortes (California Notary Commission No. 1805013); her name and notary seal has been commonly seen on many Bank of America-related document manufactures.
Witnesses: Mary Ann Hierman (also known document preparer and robosignor), Cecilia Rodriguez (also known robosignor).

There are multiple issues with this Assignment, to wit (mimicking the Assignment in Case No. 30 herein, which establishes a timeline pattern of manufacturing here):

> (1) MERS does not own the Note and therefore cannot convey something that it does not have a pecuniary interest in;

> (2) MERS "standalone" use in this scenario constitutes document manufacturing abuse by Bank of America, N.A. employees;

> (3) MERS Ocala address actually belonged to Electronic Data Systems ("EDS"), no longer occupies that leased space.  Attached to this report is an Exhibit regarding communication involving that leased space;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) There are numerous "black, bold-faced type" appearances throughout the document, suggesting third-party computer-generated data access by DeAvila, unknown to the signors and especially the notary, who acknowledged this document under penalty of perjury (while failing to delineate the notarial execution as to gender and plurality, another common marker of document manufacturing);**

**(5) MERSCORP put out a Policy Bulletin directing the members who use the MERS electronic database to no longer use the Ocala, Florida address after December 6, 2010.  MERSCORP/MERS Rules of Membership appear to state that the members who utilize MERS in any capacity can ignore the MERS rules and do whatever they want, including but not limited to, recording their transactions in the MERS electronic database as well as to ignore the foregoing policy, also attached as an Exhibit to this Report (both Exhibits are incorporated by reference herein);**

**(6) This Assignment was created in favor of Bank of America, N.A. (while First Magnus Financial Corporation was still in bankruptcy (see BK Exhibit for the timeline); yet this fact was not disclosed in the Assignment, nor was the name of the originating Lender placed into the position of Assignor in this document; and**

**(7) The address shown as the address of the Assignee, Bank of America, N.A. (as successor), is really the address of Wells Fargo Bank, N.A. as Master Servicer for thousands of trust REMICS, as shown in IRS Publication 938 (www.irs.gov) and is noted here that .pdf files (what are available in format on the IRS website) are provided for review on a USB flash drive, as the publications are too voluminous for presentation here.  The address of 9062 Old Annapolis Road, Columbia, MD is confirmed on this publication as belonging to Wells Fargo Bank's trust vault and NOT Bank of America's address (another misrepresentation of the truth).**

*At this juncture, it should also be noted that this pattern of manufactured, self-serving, self-Assignments will continue throughout the discussion of this case.*

**CFN#2013005948, recorded by presentment on 01-11-2013**
**The Examiner believes that this document was purposefully manufactured prior to foreclosure for the express purpose of giving the Party Plaintiff standing in this instance, which is the subject of dispute considering the Pooling and Servicing Agreement and other SEC and IRS issues affecting this alleged transfer.  There is also discussion regarding the authority of SPS to execute such an Assignment.**
**Signor: Bill Koch (who also prepared this document), claiming to be a "Document Control Officer", and NOT an officer of Bank of America, N.A. (an employee of SPS).**
**Notary: Kyle J. Sterner (Utah Notary Commission No. 659205; still active)**
**Witnesses: Mary Jean Thomas, Helen Tobler**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Issues: The Limited Power of Attorney located in the real property records of Osceola County, Florida, electronically recorded on 03-27-2012 as CFN#2012042671 fails to specifically state what "Servicing Rights Purchase Agreement" the Limited Power of Attorney applies to, nor does it cite where in the real property records of Osceola County, Florida the "Servicing Rights Purchase Agreement" specified herein may be located.  Further, this Assignment is self-authenticating and must be verified by the party (Grantor) extending such "attorney-in-fact" status BEFORE such status can be accorded.**

**There are multiple issues involving the execution and recordation of this Assignment, to wit:**

> **(1) The Assignment of Mortgage herein is based on whether or not a true and lawful Assignment of Mortgage actually exists as proffered in the previous scenario, as the misrepresentative information may negate that Assignment, which in turn, would immediately raises concerns about the validity of this Assignment;**

> **(2) There is nothing in the Limited Power of Attorney discussed herein that brings Fairbanks Capital Corporation into the current Assignment being shown here;**

> **(3) The questionable Limited Power of Attorney [hereinafter "LPOA"] appears to fail in not specifying what particular authority is represented as lawful, as the reference to the "Servicing Rights Purchase Agreement" that mandates such authority is not present here; despite the execution of this document AFTER the LPOA was recorded, as previously noted;**

> **(4) The notarial execution is undelineated as to the basis of identification, gender and plurality, which is a common marker of document manufacturing;**

> **(5) The Assignment purports to transfer the first Mortgage loan into the Plaintiff trust as a matter of convenience, so SPS, using its questionable "authority" can appear to give the trust REMIC standing to foreclose;**

> **(6) The document was executed on December 5, 2012 and recorded in the real property records on January 11, 2013.  The trust REMIC's information can be found at the link: http://www.secinfo.com/d12TC3.ubPc.htm**

**The Closing Date of this trust REMIC was on or about March 9, 2007; thus, neither Assignment of Mortgage recorded in the real property records of Osceola County, Florida appears to satisfy the requirements for conveyance of the Mortgage and Note into the trust pool, in contravention of New York Powers Estates and Trusts at § 7-2.4 and is thus void;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(7) The Complaint proffered here contains a 3/4-page "gap" in the text, which could be suspect for alteration of a sworn declaration as similarly noted in other cases mentioned in § Five herein;**

**(8) The Document Control Officer signing the prepared words of the law firm generating the Complaint is not the words of the Officer but rather of the law firm;**

**(9) The questionable Complaint Verification was purportedly signed by the Document Control Officer on January 4, 2013, when in fact, the Assignment (alleged) to the Plaintiff trust was NOT recorded until January 11, 2013, the date that Ablitt Scofield attorney Menina E. Cohen (FBN14236) signed the subject Complaint; and**

**(10) The number of suspect issues involved in the manufacture and recordation of the chain of assignments discussed herein, from a lender in bankruptcy to the date of this filing, is suspect for fraud and misrepresentation under Florida Criminal Code § 817.535; and the actors, acting in concert with each other raises concerns about Florida RICO statute violations.**

**MORTGAGE #2:** **The Nuygens, as Borrowers, appear to have originally executed a another MERS-originated Mortgage, which was recorded in the real property records of Osceola County, Florida by presentment on 02-07-2006 as CFN#2006037326 (Book 3057; Page 1439).  The document appears to have been prepared by the now-inactive Univeral American Mortgage Company, LLC, a Florida limited liability company, as noted below:**

Florida Profit Corporation

UNIVERSAL AMERICAN MORTGAGE COMPANY

Filing Information

| | |
|---|---|
| Document Number | 435349 |
| FEI/EIN Number | 591494026 |
| Date Filed | 11/02/1973 |
| State | FL |
| Status | INACTIVE |
| Last Event | CORPORATE MERGER |
| Event Date Filed | 08/12/2002 |
| Event Effective Date | 08/14/2002 |

Principal Address

730 NW 107 AVE
STE 400
MIAMI, FL 33172

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It appears that an Assignment of Mortgage was executed on February 9, 2006 by Darlene Fajardo, who claims to be an "Assistant Vice President" of MERS as nominee for Universal American Mortgage Company, LLC, a Florida limited liability company, when this entity was inactive as of August 12, 2002 (by merger; yet this is not stated for the record as to who this LLC was merged into); thus the entire Assignment appears to be a sham assignment to the now-defunct New Century Mortgage Corporation, who revoked its MERSCORP executory contract during its bankruptcy proceedings.  A copy of the Notice is provided as an Exhibit to this Report and incorporated herein by reference.

The foregoing document was recorded in the real property records of Osceola County, Florida on 07-23-2007, almost 1-1/2 years AFTER it was executed, as CFN#2007136119.

However, more unfortunately, a Release of Mortgage (Mortgage #1 appears to have paid off Mortgage #2) was manufactured by employees of a division of Wells Fargo Home Mortgage in San Bernardino, California (America's Servicing Company's Rosa Garcia-Espinosa apparently prepared the document) on January 18, 2007 and caused this document to be recorded on 01-24-2007 as CFN#2007013541 in the real property records of Osceola County, Florida.

**CFN#2007136119, recorded by presentment on 07-23-2007**
**Signor: Darlene Fajardo, acting as Assistant Vice President of MERS**
**(Potential address: 2416 Havana Drive, Clearwater, FL 33764)**
**Notary: Janet Tirado (Florida Notary Commission No. DD 468472)**
**Witnesses: Patricia Herberger, Heather Meverden (Potential Address: 801 Riverside Dr.,**
**Tarpon Springs, FL 34689)**

**There are multiple issues with the Assignment, to wit:**

**(1) The Assignment misrepresents the fact that Universal American Mortgage Company LLC was still in business and had the specific power to assign the mortgage as that entity (since it was merged and not bankrupted);**

**(2) At the time of the alleged transfer, New Century Mortgage Corporation was still a member of the MERS System; thus, the language that the Assignment was from MERS to a non-MERS servicer or investor was known to be false;**

**(3) The legal description is grossly incomplete, as noted therein;**

**(4) The document lacks delineation as to the basis of identification and gender, another marker of document manufacturing;**

**(5) It appears that New Century Mortgage Corporation may have had a hand in the manufacture of the assignment (which would render it a self-assignment);**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

    **(6) Other than questions the parties who executed this Assignment, there is nothing on this Assignment that clarifies who these four individuals are that took part in executing the Assignment; and**

    **(7) The Assignment of Mortgage, despite its earlier creation date, wasn't filed for record until AFTER the Release of Mortgage was filed; thus, creating an apparent cloud (backwards recording) on title since July 23, 2007.**

**MORTGAGE #3:** It further appears that the Nguyens also executed a $56,000 line of credit MERS-originated Mortgage, which was recorded behind the First Mortgage (the subject Mortgage within the foreclosure action) on 12-01-2006 as CFN#2006284302 (Book 3345; Page 1170) in favor of the now-defunct First Magnus Financial Corporation, an Arizona corporation.  The HELOC appears to follow the First Mortgage which is the subject of this action; however, the Assignment of Mortgage which follows it contains numerous suspect issues in violation of Florida Criminal Code § 817.535 as well as potential Florida RICO statute violations and 18 USC 1343 wire fraud violations, to wit:

**CFN#2012104419, electronically recorded on 07-16-2012**
This document appears to have been prepared by Bank of America, N.A. employee Diana DeAvila and executed by Bank of America employees in Ventura County, California in what appears to be a directed self-assignment of the Mortgage and Note, executed by the Nguyens.
Signors: Mercedes Judilla and Srbui Muradyan, who claim to be an Assistant Secretaries of MERS (as a standalone entity, as Assignor) as a nominee for no one.  Both are known robosignors.
Notary: Markus Hicks (California Notary Commission No. 1925373); his name and notary seal has been commonly seen on many Bank of America-related document manufactures; his $15,000-bonded notary commission is still active.
Witnesses: Alice Rowe (known robosigor) and Luis Reidan

There are multiple issues with this Assignment, to wit:

    **(1) MERS does not own the Note and therefore cannot convey something that it does not have a pecuniary interest in;**

    **(2) MERS "standalone" use in this scenario constitutes document manufacturing abuse by Bank of America, N.A. employees;**

    **(3) MERS claims to be a "holder of a Mortgage", using Metro Detective Agency's Danville, Illinois address to create the appearance of a headquarters, when in fact, MERS is the actual name of the "system database" used by MERSCORP members;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(4) Whoever the "eNote" is held by within the MERS database is the "holder" of that "eNote" and not MERS, another apparent misrepresentation; and

(5) There are numerous "black, bold-faced type" appearances throughout the document, suggesting third-party computer-generated data access by DeAvila, unknown to the signors and especially the notary, who acknowledged this document under penalty of perjury (while failing to delineate the notarial execution as to gender and plurality, another common marker of document manufacturing).

The Nguyens appear to have filed bankruptcy and said relief was ordered on November 26, 2013.  A Suggestion of Bankruptcy was electronically filed with the Court on 12-04-2013. As of May 30, 2014, the foreclosure action was stayed pending resolution of the bankruptcy.

Case No. 32: *JPMorgan Chase Bank, N.A. v. Veronica Blandon et al* (2013 CA 1437 MF)

CASE NOTES: It appears that the Defendant, as Borrower, executed a Mortgage in favor of Family Home Lending Corp. of Palm Coast, Florida, which was recorded in the real property records of Osceola County, Florida on 07-19-2005 as CFN#2005163426, which appears to have been later assigned to JPMorgan Chase Bank, N.A. via an Assignment of Mortgage recorded on 03-13-2006 as CFN#2006068584.

It appears that the date of execution of the Assignment was the same date as the execution of the Mortgage, May 5, 2005. It appears that the Assignment contains all the relevant information except the legal description of the Property; everything else appears proper. However, it is also noted that the original Note and Mortgage was not found within the Court file examined here.

As noted in other Ablitt Scofield-generated cases in this Section, there is a "gap" on Page 4 of 5 of the Complaint, wrapped inside of the boiler-plated template, that appears to give credence to the allegations by WITNESS A that alterations of the Verified Complaint, post-representative's signature are at serious issue, noticeably with the confinement of the signatories on Page 5 of 5 being laid out carefully, so as to continue the sentence from Page 4's larger paragraph, hoping not to around suspicion of manufacture.

This appears to be another Matthew Pingeton/Menina Cohen-generated tag team approach in what appears to be the final year of the Ablitt-turned-Connolly financial failure to "speed up the process" to bring in greater revenues from their clients.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Complaint itself, assumedly prepared by Ablitt Scofield personnel in their own words; in this instance, notarized as if to give the Complaint more credibility, while leaving the first four pages open to post-verification alteration under threat of being fired (as WITNESS A maintains in her Amended Complaint against Ablitt Scofield, who she says fired her because she refused to participate in the alteration of sworn declarations).

The Notice of Lis Pendens was filed for record on 04-23-2013 as CFN#2013064244.  Osceola County, Florida (Human Services) was also a party to this action, having issued a "Third Mortgage" to the Defendant, a single woman, recorded in the real property records on 07-02-2009 as CFN#2009104471.  The Defendant also appears to have retained counsel.

It further appears that Monica L. Miller (FBN 91555) also participated in the foreclosure effort on behalf of the now-named Connolly law firm.  After a certain period of responses from both sides, a Notice of Voluntary Dismissal and Discharge of Lis Pendens was electronically filed with the Court on September 25, 2013 and recorded by presentment in the real property records of Osceola County, Florida on 10-04-2013 as CFN#2013158019.

It appears that this action occurred in favor of a Loan Modification between the parties. Despite the fact that no further action was taken (or has been taken to date), the issues with the potential alteration of a sworn declaration/verification may still invoke potential RICO claims under Florida statutes, where perjury within the Complaint is concerned.

**Case No. 33: *Bank of America, N.A. v. Jason A. Palmer et al* (2013 CA 1439 MF)**

**CASE NOTES: This Complaint arises from an alleged default of a Note and MERS-originated Mortgage executed by the Defendant and his wife, Paula, on December 7, 2007, recorded on 12-11-2007 as CFN#2007218352.  This appears to have been connected to a Federal Housing Administration ("FHA") case number at its inception (which generally construed to mean the Borrower put 3 to 3-1/2% down payment on the purchase price of the home.  The originating Lender is shown as MFC Mortgage, Inc. (an obvious table-funded lender who used the Borrower's credit and financial information to further the funding of the loan through MFC's line of credit.  In other words, MFC appears NOT to have loaned the Borrower's the funds to purchase the home, they came from another source, as is the case with all MERS-originated Mortgages).**

**It appears the couple divorced and Paula A. Palmer quit claimed the Property to Jason A. Palmer by recorded document on 10-14-2011 as CFN#2011143657.  The document, which appears to have been prepared by Jason A. Palmer (returned to him after recording). However, the quit claim deed contained an error in the legal description (from that of the original deed issued to the Palmers in 2007), as shown below:**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) The recorded original deed showed the legal description of:**

LOT 197, SOUTHERN PINES - UNIT 2, according to the Plat thereof as Recorded in Plat Book 18, Pages 135 through 140, inclusive, of the Public Records of OSCEOLA County, Florida.

**(2) The Complaint asks the Court to reform the Quit Claim Deed, which left out the Unit number "2" in the legal description (as the Quit Claim Deed only shows "UNIT" without the number.**

Three Assignments of Mortgage follow in sequence, before and after the filing of the Complaint, to wit:

CFN#2012065789, electronically recorded on 05-02-2012
Signors: Juan Soto and Randy Kevin Lindsey (alleged Bank of America, N.A. employees, signing for MERS as a "standalone" Assignor, using Metro Detective Agency's Danville, Illinois address) are attempting to assign a Mortgage (and the Note, which MERS has no interest in) to itself, as successor-by-merger to all the named Bank of America entities (which is irrelevant and appears to provide another deceptive ploy) using an address belong to the Secretary of Housing and Urban Development.
Notary: Emmanuel Oluwole Adetula (California Notary Commission No. 1831707; expired)
Witnesses: Lance Cohen, Ebony Clayborn
Issues: The notarial execution is undelineated as to the basis of identification of the signors; gender; plurality and the notary further attests to the authorized capacity of the signors under penalty of perjury under California law.  There are numerous markers of document manufacturing and robosigning. MERS cannot assign the Note, only the Mortgage. *NOTE: According to the Florida Department of State, MFC Mortgage, Inc. was not inactive and was still in business until September 28, 2012 and could have executed this Assignment, yet Bank of America, N.A. chose to utilize MERS as "Assignor" instead.*

Due to the manufacturing issues involved with the foregoing Assignment, the Examiner believes that probable cause exists for violation of Florida Criminal Code § 817.535.

Next in the chain of title, a Notice of Lis Pendens was filed by Ablitt Scofield attorney Matthew Pingeton (FBN177830) on behalf of Menina Cohen (FBN14236) on 04-23-2013 as CFN#2013064255, citing the case number as noted above.

CFN#2013106991, recorded by presentment on 07-15-2013
Signor: L. Moore (Tameka L. Moore), signing as Assistant Vice President of Bank of America, N.A. (successor by merger to all the foregoing noted entities) in the previous assignment, again, apparently self-assigned to Bank of America, N.A. (both Assignor and Assignee addresses in New York belonging to Bank of America, N.A.).

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Notary: Tommy J. Harris (Texas Notary Commission Expires on 07-25-2016; #4033922)
Witnesses: Eduardo Marquez, (first name illegible) Edward Burrell**

**There are multiple suspect issues involved with the manufacture of this document, to wit:**

**(1) The document was prepared by someone at Ablitt Scofield in West Palm Beach, Florida, more than likely under third-party direction via a computer-generated database containing information that is likely regarded as hearsay;**

**(2) The document contains addresses of the Assignor and Assignee BOTH in New York, which appears to hide the true address of both parties;**

**(3) The document was executed in Dallas County, Texas, presumably at a Bank of America, N.A. branch location;**

**(4) Tameka Moore is a known robosignor with Bank of America, N.A.;**

**(5) The document was signed under penalty of perjury under Texas law;**

**(6) Given the mass production of documents suspected to have been signed by Moore and others, whether or not the Texas notary kept a journal of this transaction is questionable, as is required under Texas law;**

**(7) The document appears to have been executed on February 14, 2013, but that figure originally was shown as "2012" but apparently scratched out and initialed by the signor, because what the original figure shows was provided by Ablitt Scofield in Florida in what appears to be a directed self-assignment from Bank of America, N.A. (in one form) to Bank of America, N.A. (in another form); and**

**(8) The document was recorded over 3 months AFTER the Complaint was filed, meaning that constructive notice was not recorded until five (5) months AFTER the self-Assignment was executed; albeit in conjunction with the filing of the Complaint.**

**Due to the manufacturing issues involved with the foregoing Assignment, the Examiner believes that probable cause exists for violation of Florida Criminal Code § 817.535.**

**There are additional case notes shown on the following page:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

CNF#2014009490, recorded by presentment on 01-22-2014
Signor: Noemi Elizabeth Morales (alleged Ocwen employee), signing as Assistant Secretary of MERS (despite the language on Page 1 of the 2-page document that purports MERS as a nominee for MFC Mortgage, Inc.), as Assignor, and NOT from Bank of America, N.A., who was the Assignee of record (as purported, albeit containing suspect issues).
Notary: Victoria Vazquez (Florida Notary Commission No. EE 845391; still valid)
Witnesses: Jason R. Berkeley, Christian J. Ferrer
There are multiple issues with this Assignment of Mortgage, to wit:

(1) The two witnesses to this document are both Florida notaries, who should be held to a higher standard than to witness manufactured documents such as this;

(2) The Assignment was executed on October 25, 2013, but wasn't recorded until January 22, 2014;

(3) The document was prepared by Joe Simmons, who highly likely relied on third-party computer-generated hearsay information unknown to the signor;

(4) The alleged Assignee appears to be a private label trust; however, the trust is shown to be headquartered c/o Ocwen Loan Servicing, LLC, which creates suspicion as to why the actual trust location was not noted;

(5) The first 2012 assignment already made use of MERS as a nominee for the original lender, who by this time was defunct; thus, there are issues with the use of MERS to act again as a "cover" so its signor can have "another bite at the apple", assigning into a trust vehicle (likely way past its closing date), well AFTER the Complaint was already filed; and

(6) The purported signing team is notorious for creating documents in tag team fashion, containing numerous markers of document manufacturing, again, incorporating the use of MERS for a defunct lender in executing an assignment, when Bank of America, N.A., the last noted Assignee of record, was not named in this Assignment of Mortgage as the Assignor of record.  This issue is probably the most suspect of all of the document manufacturing ploys in this Assignment.

Due to the manufacturing issues involved with the foregoing Assignment, the Examiner believes that probable cause exists for violation of Florida Criminal Code § 817.535.

There are multiple issues with the filing of the Complaint, to wit:

(1) The fact that Matthew Pingeton was involved in the preparation and filing of this Complaint makes it suspect for document alteration, post-verification;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) There is nothing attached to the Complaint to verify the figures on which the alleged default occurred;**

**(3) Paragraph 11 in Count I alleges that Bank of America, N.A. "may have" advanced sums due in Ad Valorem taxes, yet there is no attached proof of such, making this claim ambiguous;**

**(4) Count II of the Complaint asks for a Reformation of the Deed; however, any action by the Court would depend on standing as to whether such a reformation would subsequently occur; and**

**(5) The Complaint in sum, bases the factors on the standing of the Plaintiff, which, given the nature of the manufactured Assignment by Ablitt Scofield and the self-assignment issues surrounding the most recently-recorded suspect assignment, the real party in interest was not present at the commencement of this action.**

It appears that in May of 2013, the Defendant retained counsel ("KEL"), who appears to claim that the Plaintiff in this action violated the National Housing Act.  Defendant's counsel appears to have propounded discovery on the Plaintiff.

As of March 19, 2014, the Plaintiff motioned the Court for Substitution of Counsel, given the circumstances surrounding the Connolly law firm's bankruptcy filing.  Aldridge Connors, LLP, on behalf of its attorney of record, Andrew Scolaro (FBN44927) appears to have been substituted by the Plaintiff to handle the case, subject to the existing issues of record.

Subsequent to the entry of the substitute counsel for Plaintiff, the Plaintiff's name changed in the style of the case without a Motion by Counsel substituting the Party Plaintiff and without Court approval.  The third Assignment of Mortgage created by Ocwen was recorded on January, 22, 2014, yet the Connolly law firm did nothing to bring the alleged new real party in interest forward in the matter.

On July 1, 2014, the Court approved Substitution of Counsel; however, there has been no hearing on the matter in the substitution of the Party Plaintiff and the case at bar remains styled in the name of Plaintiff Bank of America, N.A. despite the changes in the case styling by the Substituted Counsel.  This raises suspect issues for fraud on the Court because Aldridge Connors, LLP is moving the case forward on its own motion in apparent disregard of the court's lack of rulings in the matter. The pendency of the case is still showing ACTIVE at this juncture and discovery has not been answered.  It appears that the KEL group of attorneys is not being aggressive with this case.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Given the nature of the three (3) manufactured Assignments, and the Mortgage and Note not being submitted with the initial Complaint (along with any other exhibits), it is highly likely that the Note is readily available for production because the Servicer (Ocwen) may be in the process of altering (or manufacturing) allonges and/or indorsement stamps in reproducing the promissory note to make it appear genuine.  The Examiner expects that these documents and all relevant exhibits will magically appear at some point in time in the future.  The Examiner further believes that the Assignments and Complaint documentation were all manufactured without knowledge of the parties executing the documents, which contain intentional misrepresentations of fact with the intent of depriving Mr. Palmer of his property, in violation of Florida Criminal Code § 817.535.

### III. Summary

(1) The cases noted in *Section Five* all appear to share common denominators:

>    (a.) Common boilerplate use of template forms to create the Complaint;

>    (b.) Suspect allegations involving sworn declaration alteration;

>    (c.) Rampant document manufacturing; and

>    (d.) Ineffective use of affidavits, subject to legal challenges.

(2) In instances where one or more assignments appeared:

>    (a.) Most assignments involved the use of MERS as a "cover" for the missing parts of the chain of custody of the promissory note as well as the chain of title;

>    (b.) Use of MERS as a standalone entity, or the "Assignor" as "party of the first part";

>    (c.) Many assignments were executed by the Assignee's own employees for the benefit of their employer;

>    (d.) There were numerous markers of document manufacturing and robosigning, including but not limited to the preparation of assignments by Ablitt Scofield attorneys or even other law firm's attorneys in conjunction with a Substitution of Counsel;

>    (e.) The endorsement stamps on the notes proffered to the Court did not align with the information contained on the assignments;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

(f.) Where assignments to trust REMICs were involved, the closing date of the trust appears to have been exceeded by years after the transfer was legally allowed; and

(g.) Misdirection of information through the use of false addresses (not belonging to the entity stated in the assignment) and alleged MERS "officers" that were obvious employees of the lender or servicer directing the manufacture of the assignment.

(3) In specific instances noted within certain case filings:

(a.) Cases were dismissed due to lack of prosecution due to suspect issues that seemed to be too much to legally overcome (Plaintiff "dug itself a legal hole");

(b.) Where cases appeared to get too complex in details, there was a Substitution of Counsel, wherein MORE "new evidence" would be produced;

(c.) There were claims of "attorney-in-fact" status, when in fact, no such Limited Power of Attorney was ever recorded in the real property records of Osceola County, Florida. This seemed to occur in particular where REMIC-Servicer signing relationships were necessary to be established BEFORE the act occurred;

(d.) MERS filed an Answer and Motion asking the Court to share in the spoils of the foreclosure action (through a law firm separate from the Plaintiff banks's law firm);

(e.) The cases were put on hold due to Suggestions of Bankruptcy filed with the Court during the pendency of the case; or in the alternative, the Borrowers were forced out through liquidation and/or short sale;

(f.) Suspect loan modifications using false and misrepresentative signors was indicated;

(g.) The attorney preparing the Assignment for use in the case to give his Plaintiff "standing" in the case, manufactured an Assignment and caused a marker to be placed onto the top of the document labeled, "EXHIBIT A", in an attempt to create evidence to include in the actual case filing (using an already-recorded document). Standing on its own merits, this recorded EXHIBIT A document is a false statement; and

(h.) In certain cases, the promissory notes contained Allonges to Notes that were misfiled or misplaced in subsequent filings in the Court records; and

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

> (4) All of the foregoing issues appear to have been part of the overall picture to "speed up" and streamline the process of filing foreclosure actions to increase the payment of up-front fees so that the Connolly law firm could pay its bills, which to date, appear to have failed miserably.  This scheme was pontificated within an actual case filing, wherein the front page of the case document was procured and utilized as **Exhibit 28** within the exhibits herein, by reference.

This letter, dated August 7, 2013 (unsigned), asks Nationstar Mortgage LLC to "review the attached Complaint documents **in their entirety**"; however, in instances where there were signings as an "authorized officer or signatory" (as this letter may have been sent to multiple Plaintiffs), a power of attorney was required to be attached.  The Examiner did not see any Limited Power of Attorney attached to any of the reviewed Verified Complaints.

The Examiner believes this letter was sent to the client as stated at the beginning of this paragraph … to expedite the foreclosure process so Connolly could get paid as soon as possible to help out its cash flow problems.

Unfortunately, the expediency on which this process seems to have turned has invited suspect issues including but not limited to the filing of false and misrepresentative documents into the real property records of Osceola County, Florida in addition to their insertion and reliance within the foreclosure Complaints allegedly manipulated by the Connolly law firm.

Due to the fact there are multiple actors involved, RICO issues appear predominant.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**SECTION SIX: CASE STUDIES OF IRREGULAR COMPLAINT FILINGS
USING SUSPECT DOCUMENTS TO PROVE A FORECLOSURE COMPLAINT**

**Case No. 1:** *BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP
v. Julius K. Franccini et al* (2010 CA 5339 MF)

**NOTE: The following recorded (allegedly "manufactured" by the parties involved in the proceeding) Assignments are attached hereto by reference in this case as CFN2011090799 (recorded by presentment on July 5, 2011); CFN#2014029267 and CFN#2014029268 (successively and electronically recorded on February 27, 2014). Office file and certified copies of all assignments herein are included at the front of the case file, which was requested for further examination and for good cause as the belief exists that multiple parties and multiple teams of lawyers and outside participants were utilized to effectuate the mortgage foreclosure through the manufacture of multiple documents with the intent to commit fraud on the Court as well as in the real property records in violation of Florida RICO Statutes and Florida Criminal Code § 817.535.**

The details of this case are shown as follows:

The affected property appears in the land records as having belonged to one Julius K. Franccini and his wife, Esperanza D. Franccini (3310 Pekin Street, Saint Cloud, FL 34772).

**LAW FIRM #1:** The Law Offices of David J. Stern (disbarred Florida attorney, see attached file exhibits on Stern incorporated herein by reference)

The Stern Law Firm, Sheri Braun (FBN10308) on behalf of and under the direction of Noemy Estevez (FBN74347) and Miriam Mendieta (FBN866880), filed a Complaint to Foreclose Mortgage and subsequently filed a Notice of Lis Pendens (CFN#2010125505) on August 31, 2010, the pendency of which dragged on into the forensic examination period and thus was included in this report. The case number is styled as noted. The original lender on the attached mortgage and note was Universal American Mortgage Company, LLC, yet there is no recorded Assignment to the Lender shown in the case caption as the same lender bringing the foreclosure action at the time of commencement of the action.

Despite the fact that both Franccini and his wife Esperanza appear to have signed the original mortgage, only Julius Franccini signed the promissory note (only a copy of which appears to have been provided for examination as part of the case file). Noticeably, there is no endorsement on the promissory note to the captioned Plaintiff. The examiner believes that the original note has been converted into an "eNote" and subsequently shredded along with the original MERS-originated mortgage. The Franccini's appear to have retained a non-lawyer "foreclosure service", which appear to have filed an answer which admits they did not make their payments. The Stern Law Firm made sure to have this document included in their file with the Court.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Up until February 22, 2011, the Stern Law Firm appears to have effectuated service on the parties and insodoing, slandered the property owner's title with the filing of the Lis Pendens, not to mention creating apparent Fair Debt Collection Practices Act and Florida (FCC) Act issues.  The Stern firm was dismissed at this juncture of the case.

**LAW FIRM #2:** Roberson, Anschutz & Schneid, P.L. was substituted as counsel by Circuit Judge Jeffords Miller on February 21, 2011.  BAC is still the named Plaintiff and there still is no recorded assignment in the real property records in Osceola County, Florida giving BAC any right to claim an interest in the mortgage and note.

On May 6, 2011, alleged employees of the named Plaintiff (in Ventura County, California) generated an Assignment of Mortgage that was created by Nicolas Aristia of the Robertson, Anschutz & Schneid law firm, which purports to assign the mortgage and all beneficial interest therein, from Universal American Mortgage Company (which is still in business and could have generated the assignment in Florida) using MERS as nominee, in what appears to be a self-manufactured, self-assignment, recorded as CFN#2011090799 on July 5, 2011, nearly a year after Stern filed the initial Complaint.

Signor: Cecilia Rodriguez (signing as Assistant Secretary of MERS, only)
Notary: Dee Ann Westfall Cortes (California Notary Commission #1805013; expired; signed under Penalty of Perjury under the laws of the State of California, which appears to be delineated.
Witnesses: Lori Fitch, Kathy Oriard

This law firm then filed a Motion for Leave to Amend the Complaint, which was filed by Melissa Konick (FBN17569) for Jonathan Meisels (FBN29235) for the firm. Paragraph 6 of the Complaint states the borrowers are in default, yet there is no supporting proof attached to the complaint, which is signed under penalty of perjury by Melissa L. Stoops, who purports to be an Assistant Vice President of Bank of America, N.A. as Successor by Merger to BAC Home Loans Servicing, LP fka as Countrywide Home Loans Servicing, LP.  Unfortunately, Bank of America, N.A. is NOT named in the amended caption and thus, until the party in interest can show by certain figures that a default occurred, then the allegations stand as allegations. The mortgage and note are attached, yet there still is no endorsement on the note from Universal American Mortgage Company to BAC Home Loans Servicing, LP to validate the recently-manufactured assignment. Judge Miller approved the motion on August 30, 2011.

The United States, on behalf of the U.S. Department of Housing and Urban Development ("HUD"), filed an answer, claiming it was the holder of a mortgage in the amount of $16,619.03 and attached an exhibit marked, "Certificate of Indebtedness" without attaching a copy of the mortgage and note.  It is signed by Sha Terrell, who purports to be an Assistant Secretary for C&L Service Corporation, attorney-in-fact for HUD.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

A power of attorney appears to have been recorded as CFN#2010175810 on 11-19-2010; however, HUD Secretary Shaun Donovan's name appears above the signature line and Sharon Lundstrom, who claims to be the Director of the Single Family Servicing & Loss Mitigation Division, has affixed her signature.

There is no indication as to what authority she has to sign this document.  Further, the document was executed on September 2, 2010 but the notarial execution clearly says the 3rd of September, 2010 that Sharon Lundstrom appeared before notary Larry Davenport (Oklahoma Notary Commission #08001431), which certainly leaves room for legal questions as to the authority and validity of this Power of Attorney.  The pendency of the case continued until May 15, 2012, when this law firm filed a Motion for Summary Judgment of Foreclosure.  Attached to this Motion was an Affidavit from Jodi A. Zook, who purports to be an Assistant Vice President of Bank of America, N.A. who is still not listed as the Plaintiff of record at this juncture.  The affidavit appears to fail because it does not cite whether there were any third-party payments applied to the loan balance from credit swap or default insurance.  Further, the Affidavit was signed February 9, 2012, yet the firm did not file it until May 15, 2012.  Further, the attached Note, which appears to have been amended, did NOT contain an endorsement to BAC Home Loans Servicing, LP from Universal American Mortgage Company, LLC.  However, there appears an unnamed, attached page to the back of the note which contains "two-hole punch" markings at the top, that has an undated endorsement from Universal American Mortgage Company, LLC by its Assistant Secretary, Courtney Preston, without recourse, specifically endorsed to Countrywide Bank, FSB and NOT BAC Home Loans Servicing, LP, an entirely different entity than the foreclosing party.  Further, there was plenty of room to insert the endorsement stamp below the borrower's signature.

The Examiner believes that the servicer and the law firm orchestrated its manufacture.  The page does not have the title of "NOTE ALLONGE" written at the top.  There is no other identifying information on the attached page that specifies it is the Borrower's property that this endorsement affects.  Further, the signature that appears on the endorsement appears to be that of a younger female and not of an officer of a lender with any authority.  Respectfully, the endorsement fails as a matter of law.  The examiners advise a forensic examination of the original file copy held by the plaintiff to determine its validity and origin of manufacture.

At the same time, the law firm also filed a Motion for Default against all Defendants and also filed what appears to be more evidence of a manufactured promissory note, filed separately on the same date (May 15, 2012) with 3 separate endorsements that attempt to "tie up all of the loose ends" after submitting a note on the same day, previously discussed here, that did NOT contain the three indorsements. Further, two of the endorsements have the signature of Michele Sjolander, who has been deposed in 2012 regarding the appearance of her endorsements placed on notes.  The 3 endorsements are placed out of other on the page, and the attached page that appeared on the previously-filed document has been kept behind (on the last page) the signature page with the three endorsements, which should have been placed on the existing signature page with the rest of the endorsements, another marker of document manufacturing.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The endorsements appear to be deliberately matched side-by-side and in deposition, Ms. Sjolander admitted that other people have control of her endorsement stamp. Thus, it is unknown that Sjolander had personal knowledge that employees at ReconTrust Company, N.A., the trustee for Bank of America, N.A. used her endorsement stamp at any given moment, which it also appears that multiple stamps exist, which is another marker of document manufacturing. Since these endorsements are undated, it cannot be confirmed as to exactly when the chain of custody of the note actually changed hands and in what order. The fact that the initial endorsement remains on the back page of the note, still undelineated as to the purpose of the indorsement, appears to be a deliberate deception upon the Court.

Further (and more seriously), a Bank of America, N.A. Department Manager revealed to the examining team that once the original mortgages and notes were scanned to image files (admitted to by Sjolander that image files were created) they were shredded; thus, the law firm attorneys who claimed in the May 15, 2012 Notice of Filing that the original note and mortgage were attached were more than likely lying to the Court because as the examiners understand it, the original notes no longer exist (only copies, which can be manipulated). On September 1, 2012, the law firm withdrew its representation of Plaintiff BAC Home Loans Servicing, Inc. It is also interesting to note at this juncture, that given the number of endorsements on the "alleged note", there is only one recorded Assignment of Mortgage from the original lender (Point A) to the Plaintiff (Point D), with "B" and "C" missing from the chain of title.

**LAW FIRM #3:** Ablitt-Scofield, P.C. by Matthew Pingeton (a Massachusetts attorney who is also licensed to practice in Florida, Bar No. 14236), filed a Motion for Substitution of Counsel for the Plaintiff on October 11, 2012; consented to by Robertson, Anschutz & Schneid, P.L. In a subsequent Notice of Appearance, Menina E. Cohen (FBN14236) filed an appearance for the Plaintiff. Judge Miller signed an Agreed Order on October 16, 2012.

**LAW FIRM #4:** Lender Legal Services, LLC filled a notice as co-counsel, by its attorney Marc Jandy (FBN91735) on December 27, 2013. A stipulation for co-counsel was agreed to by the parties on January 23, 2014. Judge Miller signed an Agreed Order the following day and further allowed a 30-day extension of time for completion of service of process upon the Defendants.

It appears that Marc Jandy's Lender Legal Services, LLC law firm was involved in the manufacture of two (2) separate Corporate Assignments of Mortgage (CFN#2014029267 and CFN#2014029268), BOTH filed on February 27, 2014, BOTH executed on February 10, 2014, BOTH backdated to different dates to reflect consecutive assignments. The first Assignment purports to assign the borrower's note and mortgage (mid-foreclosure) from BAC Home Loans Servicing, LP to HUD, effective May 22, 2013 (almost a year earlier). The second Assignment purports to assign the borrower's note and mortgage (mid-foreclosure) from HUD to Wilmington Savings Fund Society, FSB as Trustee for Normandy Mortgage Loan Trust Series 2013-4, whose address appears to be adjacent to Deutsche Bank National Trust Company's Santa Ana, California address.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Both assignments purport to incorporate attorney-in-fact attestations by the same person (Elizabeth Ostermann), both notarized by the same notary (Wheny Wulandari) with the notarial executions being attached as separate pages from the signing pages (another marker of document manufacturing).

There is a problem with the first Power of Attorney from Bank of America, N. A. to Carrington Mortgage Services, LLC, to wit:

> (a.) The assignment was backdated effective May 22, 2013. The specific Limited Power of Attorney presented to the Court in the attorney's filings was not officially recorded in the real property records of Osceola County, Florida until December 16, 2013.

> (b.) Further, the Power of Attorney filed for record DOES NOT MATCH the Limited Power of Attorney filed with Court; thus, there appears to be an issue with fraud on the Court in this instance.

There is also a problem with the second Power of Attorney from HUD to Carrington Mortgage Services, LLC, to wit:

> (a.) The assignment was backdated effective July 12, 2013. The specific Limited Power of Attorney presented to the Court in the attorney's filings does not specifically MATCH any of the six (6) Limited Powers of Attorney on file, ALL FILED AFTER THE EFFECTIVE DATE OF THE ASSIGNMENT.

> (b.) It thus appears that no authority was recorded in the real property records PRIOR TO the act of the assignment taking place.

> (c.) Further, if the first Power of Attorney execution was defective, anything subsequent to that failed act would also fail.

Still, despite these apparent errors, Judge Miller granted the Motion to Substitute the Party Plaintiff (mid-foreclosure) on March 5, 2014.

Further, there is no presentation to date of the proceedings of any indication of endorsements or alleges affecting the original note (which the examiners maintain was shredded and thus could NOT accommodate endorsements). Plaintiff's Counsel filed a Motion for Judicial Default on behalf of the newly-substituted Plaintiff utilizing the Defendant's 2012 response to the Stern Law Firm original filing. On March 27, 2014, Judge Robert Pleus, Jr. granted the Motion without question. On April 3, 2014, Plaintiff's counsel Jandy filed an Notice containing a purported" Affidavit of Ownership and Amounts Due and Owing". There are issues involving this Affidavit and the information contained therein, to wit:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(a.) The Affidavit is dated March 28, 2014 and relies on the previous failed assignments as a means of affirming the amounts are due and owing to the Trust.

(b.) If the note is allegedly in default, what is the REMIC doing purchasing a non-performing debt?

(c.) The Limited Power of Attorney attached to this Notice of Filing was executed on May 13, 2013, but was not recorded in Osceola County until August 2, 2013, AFTER the effective date of the transfer occurred (July 12, 2013); thus, this appears to be another example of apparent fraud on the Court committed by Jandy and his co-counsel from Ablitt-Scofield, LP.

Plaintiff's counsel then filed a Motion for Summary Judgment with the new Party Plaintiff on April 3, 2014. A Notice of Hearing was filed with the Court, with a hearing set for April 28, 2014. A Non-Jury Trial Order was signed by Judge Robert Pleus, Jr.; however, Plaintiff's "cover" attorney, Ronda Westfall, listed the caption as "BAC Home Loans". Judge Miller signed a Summary Final Judgment for Foreclosure on April 28, 2014 and set a sale date on the Property on June 2, 2014.

It should also be noted that there was no filing of any subsequent "original notes", showing the endorsement to the Trust; thus, there was no proof that actual transfer to the Trust actually took place. The Trust appeared to have purchased the Property (that it already allegedly owned) at sale for $100.00 and was subsequently issued a Certificate of Title on June 16, 2014. The Trust, by and through its counsel, filed for a Writ of Possession.

Based on the foregoing information, there appear to be multiple issues of RICO-style behavior involving multiple parties; including multiple preparation and document manufacturing with the intent to defraud the homeowner, including but not limited to, fraud on the Court issues involving the manufacture of note endorsements which failed at the conclusion of the case, which cause the examiners to have reasonable belief that probable cause exists of felony violations under Florida Criminal Code § 817.535.

**Case No. 2:** *Citimortgage, Inc. v. William Colon et al* **(2010 CA 4504 MF)**

**NOTE: There are five (5) different assignments that present themselves in this scenario. CFN#2010123140 (recorded by presentment on August 25, 2010); CFN#2010160602 (recorded by presentment on October 25, 2010); CFN#2011051354 (recorded by presentment on April 19, 2011); CFN#2011053861 and CFN#2011053862 (recorded by presentment on April 25, 2011)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The affected property appears in the land records as having belonged to one William J. Colon and Olga Colon, husband and wife, at 640 Mercado Court, Kissimmee, Florida 34758.

It appears from real property and court records that Citimortgage, Inc. by and through its agent, the law offices of David J. Stern, initiated a foreclosure action against the property without having valid proof of perfected lien interest in the real property records when it filed a Notice of Lis Pendens (by Curtis C. Turner, Jr. (FBN51646).

As a side note, the signature on the Notice of Lis Pendens does not appear to match either name, signed July 13, 2010 and recorded in the real property records as CFN#2010103853 on July 21, 2010. Realizing potential issues might occur, the Stern Law Firm prepared and initiated the execution of an assignment to Citimortgage, Inc. by Decision One Mortgage Company, LLC via MERS, which for all intents and purposes, did NOT involved Decision One Mortgage Company employees but rather Citimortgage, Inc. employees, at Stern's direction. Greg Samel, who purported to be an Assistant Secretary for MERS appears to have affixed his signature.

Two witnesses, Stephanie Jackson and Brad Lunn, both also assumed to be Citimortgage, Inc. employees, appear to have affixed their signatures as well. The entire execution of the document was apparently acknowledged by Brandon D. Lewis, a notary public in and for the State of Missouri in Lincoln County, Commission #06947465, which expired on October 4, 2010. It appears that the date of the assignment is June 11, 2010; however, there are two blanks on the document that call for a date to be entered as to the execution of the document, "In Witness Whereof", where it is unknown as to when the actual signing occurred. This is a marker of document manufacturing. The document is obviously self-assigned with the intent to defraud the homeowner by means of an assignment that is misrepresentative of the facts at hand, which are missing here.

In this instance, the notary did not even place a 2010 date on the "form assignment", another marker of document manufacturing, which could be construed to mean that none of the parties to the execution of this document had prior knowledge of its contents other than David J. Stern, who claims to have prepared the assignment, yet even that seems highly unlikely.

The Complaint itself appears unverified as there is no notarized signature. The alleged signature of Andrew Moore does not in of itself represent that he is authorized by the Plaintiff to act on the Plaintiff's behalf. It further appears that the legal description filed in the original mortgage contains an incorrect legal description and it appears that Plaintiff's counsel asked the Court to reform the MERS-originated mortgage in Count II of the Complaint. This could also mean that the incorrect mortgage recording slandered someone else's chain of title. The note was also attached as an Exhibit, which appears to contain an undated endorsement stamp which purports to assign the mortgage in blank, courtesy of Decision One Mortgage Company LLC by Melissa McDermott, its Assistant Secretary; yet the Assignment of Mortgage wasn't filed until August 25, 2010.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It also appears that an extra "Page 1" of the Note was attached AFTER the Note in the Exhibits. In the court record, it also appears that the property owner wrote the court a letter asking for time to resolve the issue with the lender.

The next Assignment of Mortgage was filed for record by presentment on 10-25-2011. This assignment appears to have also been manufactured under the direction of Orion Financial Group, Inc., another document manufacturing plant out of the Dallas-Fort Worth, Texas area that produces thousands of similar documents on a weekly basis for its client base. The document was prepared by M.E. Wileman and signed by D.M. Wileman as Vice President of MERS who already assigned the note to Citimortgage, Inc. (thus, another questionable "bite at the apple"). There were no witnesses to the document's execution, notarized by Julie Bacon, whose Texas notary commission appear to be expiring at the end of November, 2014.  The assignment purports to re-assign the mortgage to Arch Bay Holdings LLC-2010C, as Assignee. There was no re-filing of the case or substitution of Party Plaintiff.  Instead, the Stern Law Firm filed a Motion to Withdraw from the case, citing irreconcilable differences with the Plaintiff.

On April 19, 2011, the Orion Group again caused a document to be manufactured and recorded as a "Corrective Assignment of Mortgage", attempting to claim that "M. Matthews" (an alleged employee of Orion) is a Vice President of Citimortgage, Inc.  Using the same notary (Julie Bacon) that acknowledged the previous assignment, this assignment purports to transfer the mortgage to Arch Bay Holdings, LLC Series 2010C as Assignee. This would appear to make more sense; however, Citimortgage, Inc. is in St. Charles County, Missouri and not Tarrant County, Texas and it is highly likely that the signor of this document has no personal knowledge of the facts nor the actual transfer of the note and mortgage.  Also, to this date, there has been no new presentation of any endorsement from Citimortgage to anyone else entered into the case.

On April 25, 2011 (not even a week later), Credit Solutions International, Corporation of Clermont, Florida generated a letter to Judge Waller in Osceola County, informally requesting that the Law Office of Edward G. Milgram, P.A. be substituted as counsel of record, dismissing the Stern Law Firm from further representing Credit Solutions International, when there was no assignment or any proof that this entity had authority (standing) to proceed in the case.  This was filed by an Ex Parte Motion for Substitution of Counsel by Edward G. Milgrim (FBN69990) on April 26, 2011.  Milgrim also filed an Ex Parte Motion to Substitute the Party Plaintiff at the same time he Motioned for Substitution of Counsel.  In the latest Motion, the first Stern-prepared assignment was entered as an Exhibit, followed by the third (Corrective) assignment manufactured by Wileman and Orion, but conveniently omitting the second Orion-produced assignment, which probably would have drawn suspicion to the case. Also attached was a fourth Assignment of Mortgage (filed by presentment on the day the Ex Parte Motions were delivered to the Court), wherein Orion produced another assignment for signing by an alleged CEO of Arch Bay Holdings, LLC-Series 2010C to Vacation Finance of Kissimmee, Florida.  There were no witness signatures on this assignment (as two may be required in Florida).

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

At this juncture, there was still no explanation as to how effective transfer of the mortgage and note took place.  Yet, another assignment from Vacation Finance LLC was then attached, showing  transfer of the mortgage to Credit Solutions International of Clermont, Florida. It appears to have been executed on April 6, 2011, five (5) days after the previous assignment was executed.

Unfortunately however, the assignment previous to these two was executed on April 13, 2011, AFTER Vacation Finance LLC executed its assignment to the current alleged Plaintiff, which would indicate to the examiner herein that the dates of the document manufactures did not line up properly with each other as to effective date transfers, which would demonstrate that:

> (a.) The right hand in the equation did not know what the left hand was doing; and

> (b.) The assignments were drafted by parties that had no knowledge of the effective dates of the transfers because the documents were manufactured with the intent to misrepresent the facts, a violation of Florida Criminal Code § 817.535, and deprive the owner of his property by deceiving the Court, into substituting the Party Plaintiff, which would constitute fraud on the Court.

On April 29, 2011, a Circuit Judge whose signature is not identifiable granted the Ex Parte motions.  The Party Plaintiff however is not captioned properly as Credit Solutions International, as Trustee for Trust #640, and no proof was provided as to acquired effective date of transfer of the note to the Trust (which is unknown to the examiner of the documents).

The Plaintiff filed a Motion for Summary Final Judgment of Foreclosure on May 26, 2011.  This was followed by a Notice that the June 17, 2011 Hearing on the matter was cancelled.  This was followed by a Motion and Order to dismiss the Complaint and to partially release the Lis Pendens on the case, appears to have been granted by the Court on June 10, 2011 and filed for record on June 14, 2011.

While the pendency of the case is undetermined because the state of affairs regarding the Lis Pendens is undetermined, there appears to be issues involving a series of manufactured documents which were recorded in the real property records of Osceola County, Florida with the obvious intent to deprive the owner of their property as stated previously in Subparagraph (b.), supra.

In this instance, D. M. Wileman, M. E. Wileman and their cohort notary Julie Bacon at Orion Financial Group, Inc., who acted in concert to produce and sign this assignment, again transferred the mortgage to Arch Bay Holdings. LLC- Series 2010C (which appears to be some sort of unregistered REMIC) from Decision One Mortgage Company, LLC *after* Stern and his group previously used MERS to transfer the same mortgage to Citimortgage, Inc.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thus, it appears that TWO PARTIES are holding the same note and mortgage because the "right hand does not know what the left hand is doing". This clearly created chain of title issues at the time before and after the Notice of Lis Pendens was filed, representing Case No. 2010-CA-004504.

One of the "actors" in this scenario obviously caught the error in the previously-recorded assignment and on April 13, 2011, months after the foreclosure suit was commenced, caused what appears to be another manufactured assignment by Orion Financial Group, Inc., this time using the name "M. Mathews" as Vice President of Citimortgage, Inc. (which M. Mathews knew to be false since the document was notarized and signed in Texas and not St. Charles County, Missouri, where Citimortgage, Inc. is headquartered) to effectuate the assignment.

 "M. Matthews" appears to be an employee of Orion Financial Group, Inc., who along with his counterpart notary Julie Bacon, effectuated an assignment created by the head of Orion, Michael E. Wileman, to assign the mortgage to Arch Bay Holdings LLC - Series 2010C, which, if further examined, may have violated New York Trust Law in accepting assignment into its holdings trust. In any case, the actors who created this assignment were not employees of Citimortgage, Inc.; thus, the document contains false and misrepresentative statements.

The foregoing assignment shows Arch Bay Capital LLC's address as being the address for Arch Bay Holdings LLC - Series 2010C. It is significant to note the date of execution of the foregoing assignment because the same parties involved in the execution of this assignment also engineered the following assignment, the last of four assignment in this series, filed for record on April 25, 2011 as CFN#2011053861.

Finally, to make matters worse, Shawn Miller, alleged CEO of Arch Bay Holdings, LLC - Series 2010C, affixed his scribbled signature to an Assignment of Mortgage dated April 1, 2011. This is BEFORE the actual date of the assignment to his company, Arch Bay Holdings, LLC - Series 2010C, occurred in the previous document. This document was prepared by M. E. Wileman of a Texas document manufacturing plant, only this time it was executed in Orange County, California.

In any case, it would appear that Vacation Finance, LLC, the "assignee" of the last assignment, may claim ownership interest if it can prove it was not a part of a larger conspiracy to criminally defraud the Colon's out of their property and manage to properly tie the entire chain of title together so that it matches the chain of custody of the promissory note, which appears to have gone into two different directions in 2010.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 3:** *The Bank of New York Mellon fka The Bank of New York, as Trustee for the
Certificateholders of CWMBS, Inc., Alternative Loan Trust 2006-OA1, Mortgage
Pass-Through Certificates, Series 2006-OA1 v. Aida L. Merrill et al  (2011 CA
4178 MF)*

*NOTE: This case was discussed in brief under the Ronald L. Wolfe & Associates listings, ref-
erenced herein under CFN#2011119121, recorded by presentment on 08-29-2011.*

**The foregoing Assignment appears to have been prepared by Ken Porter of Florida Default
Law Group, P. L. ("FDLG") in Tampa, Florida. This would be construed by the examiners
to mean that Porter had third-party computer access to a system which provided him with
third-party hearsay information which he transcribed to this template assignment form
and sent it off to Bank of America's signing team in Ventura County, California for execu-
tion. The document contains numerous markers for document manufacturing.**

**The assignment appears to have been recorded prior to commencement of foreclosure pro-
ceedings against the property owner using a manufactured document to give the appear-
ance that the trust REMIC was properly conveyed the promissory note from a lender who
was already defunct and had been subsumed by Bank of America, N.A. in 2009.**

**Signor: Cecelia Rodriguez, purporting to be an Assistant Secretary of MERS as nominee
for then-subsumed Countrywide Home Loans, Inc. who is attempting to assign the mort-
gage to a closed CWMBS, Inc. 206-OA1 REMIC trust (using an old Bank of America ad-
dress in Simi Valley, California).**
**Notary: Darryl Brown (California Notary Commission #1812305; under penalty of per-
jury).**
**Witnesses: None shown (two may be required in Florida)**

**The scenario of the case appears to present itself as follows (the entire case file has been
provided for further examination; the assignments were obtained separately from the pub-
lic record of Osceola County, Florida):**

> **(1) This assignment was filed prior to the filing of a Notice of Lis Pendens on
> 12-02-2011 as CFN#2011165855; Case No. 2011 CA 4178 by FDLG attorneys
> Justin J. Kelley (FBN32106) (FBN 84285) on behalf of the foregoing closed
> REMIC trust (which appears to be falsely assumed to be the Plaintiff
> during the pendency of these proceedings).**

> **(2) The forensic examination of the Complaint issued by Wolfe/FDLG appears
> to contain numerous misrepresentations, to wit:**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(a.) Paragraph 6 of the initial Complaint alleges that the Borrower is in default, which is unproven, as the accounting provided in the Affidavit does not contain any information regarding third-party payments being reflected (default swap or insurance payments applied to the balance);**

**(b.) FDLG also enclosed a copy of an August 24, 2011 letter it sent to the Defendant, which appears to be misrepresentative under California's Rosenthal Act as well as in violation of the Fair Debt Collection Practices Act, as there was no proof provided that the amount shown was the real amount owed;**

**(c.) The promissory note provided shows an "indorsement in blank"; however, it is undated and the Assignment of record as described herein is dated August 29, 2011, when the closing date of the REMIC trust is February 28, 2006 (http://www.secinfo.com/dr66r.vf6.htm#d2b) as shown on the link included herein by reference; thus, the conveyance was improper according to New York Trusts, Powers & Estates § 7-2.4 and was void:**

## Assignment of the Mortgage Loans

Pursuant to the pooling and servicing agreement, **on the closing date**, the depositor will sell, transfer, assign, set over and otherwise convey without recourse to the trustee in trust for the benefit of the certificateholders all right, title and interest of the depositor in and to each Mortgage Loan and all right, title and interest in and to all other assets included in Alternative Loan Trust 2006-OA1, including all principal and interest received on or with respect to the Mortgage Loans, but not any principal and interest due on or before the cut-off date *(February 1, 2006)*.

**(d.) The Plaintiff, through its representative, Kumar Franklin Caughey, who purports to work for BAC Home Loans Servicing, LP and NOT the Lender purporting to bring the action, claims he has personal knowledge of the information contained in his Affidavit, when in fact, he is not employed by the REMIC trust, but by the servicer, who on July 1, 2011, was also subsumed into Bank of America, N.A.;**

**(e.) The file appears to contain a MERS Servicer ID printout, which MERSCORP, the owner of the website, disclaims for accuracy, as the member lenders maintain the data input and thus can place whatever information they wish for the Court to see on the document. BAC is shown as the "Investor" which is patently false (with Green Tree Servicing shown as the Servicer) and was not the party submitting the Affidavit;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(f.) The signor purported to be affiliated with Bank of America, N.A. who is not the lender of record, nor the purported "investor"; and

(g.) All of the figures listed in the Affidavit that Caughey appears to have "affixed his signature" (scribbled) to may not be correct. Based on the appearance of the information contained in the affidavit, the examiner states that the Court may have been fooled into believing the allegedly "sworn" declaration, especially regarding "charges" assessed by the Servicer.

(3) During the pendency of this proceeding, Bank of America employees appear to have manufactured and caused to be electronically filed another assignment (CFN#2012088852) which now contains two witness signatures and at that time, changed the name of the trust to the Luminent Mortgage Trust 2006-1. The examiner deems this assignment impossible since BOTH trusts were closed and could not have transferred any mortgages or notes without violating PSA, SEC and IRS regulations. While the Courts in Florida appear to side with the banks on the argument that they are not a beneficiary to the trust, after much research, the examiner believes they have a beneficial interest because they received money from the certificate holders indirectly through the sponsor-seller, who funded the loan.

(4) It further appears that the Defendant homeowner was not present during these proceedings and was defaulted out by Circuit Judge Miller, who issued a Final Judgment in favor of the 2006-OA1 trust (and not the newly-recorded assignment claimant 2006-1) as CFN#2012095132, recorded by presentment on 06-25-2012. It is highly unlikely that Plaintiff's counsel informed the court of this assignment and change of Plaintiff's complete name, which would constitute an alleged fraud on the court the way this scenario currently presents itself. Copies of this judgment were directed to Trent A. Kennelly (FBN89100) and sent to the law firm of Ronald R. Wolfe & Associates, P.L. who had at that time, informed the Court of the firm's name change, but not of the name change of their client.

(5) The Final Judgment also contained a name misrepresentative of the assigned servicing interests and showed a copy of service sent to MERS as nominee for Green Tree Servicing LLC c/o "Electronic Data Systems Corporation, R.A. (using Metro Detective Agency's Danville, Illinois address). However, service on MERS was not effectuated at the Danville, Illinois address, but rather on a CT Corporation System address. MERS was named as a Defendant because until it is served, it has no idea that there is an obligation to report the matter to the federal agencies it has a written Consent Order with.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The examiner believes that a deposition of any MERSCORP officer will confirm this. Further, there is nothing shown on the assignment filed by Bank of America employees to indicate Green Tree Servicing, LLC was involved at all in the suit.

(6) It appears that Certificate of Title was issued to the Plaintiff of record, when in fact, at the time the Certificate of Title was recorded as CFN#2012125945 on 08-28-2012, the electronically-filed Bank of America assignment to the Luminent 2006-1 trust had already been filed for record, under penalty of perjury under California law (where notary bonds are $15,000).
Signor: Bud Kamyabi (known robosignor); Attest: Alice Rowe (known robosignor) all signing on behalf of MERS (as a standalone Assignor and not as a nominee)
Witnesses: Luis Roldan, Assistant Secretary for MERS (known robosignor)
Srbui Muradyn (no title noted).

(7) Despite the fact that the new assignment indicated that the Luminent 2006-1 REMIC trust was the alleged "real party in interest", which in of itself is debatable due to violations of PSA, SEC and IRS regulations, this Assignment appears to have been manufactured by Orion Financial Group in Southlake, Texas long after the Certificate of Title was issued to the originating Complainant, using MERS again to "hide behind" any real party in interest. Again, according to MERSCORP 2009 Rules of Membership, which are attached to this report and referenced as an Exhibit therein, MERSCORP owns the electronic database that its contractually-bound members utilize in the system known as MERS.

(8)  The Court granted a default judgment without considering any of the relevant issues, because there was no objection and the aim of the court systems in Florida at present is to "clear the docket" at all costs.

Thus, the Examiner believes that:

(1) the recorded assignments used in the taking of the property belonging to Aida L. Merrill were "manufactured" and contain false and misrepresentative information;

(2) the false and misrepresentative information was filed with the court to effectuate the taking of the property;

(3) Ronald R. Wolfe & Associates' counsel at all times knew or should have known they appeared to commit fraud on the Court;

(4) due to the actions in concert with Bank of America employees and others within the Wolfe/FDLG law firm, Florida RICO issues also appear to be involved; and

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(5) because the manufactured documents appear to have been recorded to effectuate foreclosure, the intent appears certain that probable cause for violations of Florida Criminal Code § 817.535 exist.**

The suspect parties shown to be actors in the RICO issues are Wolfe/FDLG and its counsel of record; Bank of America; all servicers directing the attorney's behaviors (including BAC Home Loans Servicing, LP and Specialized Loan Servicing, LLC); Orion Financial Group, Inc.; and any party involved in the preparation of any of the documents used to foreclose on the property.

**Case No. 4:** *JPMorgan Chase Bank, N.A. v. Gaskin et al* **(2012 CA 4827 MF)**

**NOTE: The following suspect manufactured documents are also discussed as part of this review:**

**CFN#2012154561, filed by presentment on 10-24-2012**
**This document clearly appears to have been prepared by Ablitt-Scofield in West Palm Beach, Florida.  After recordation, it was directed to be returned to the firm's Boston office.**
**Signor: Elizabeth D. Franklin, Assistant Secretary of MERS as nominee for FBC Mortgage, LLC. The signor purports to transfer the mortgage (does not mention the note) to JP Morgan Chase Bank, N.A. (using its main headquarters address in Ohio) using MERS, who has no interest in the promissory note.**
**Notary: Shelley Kuhn (Texas Notary Commission Expires on 01-13-2014)**
**Witnesses: Lisa Haire (a Texas notary shown on the verified complaint, as working for Chase), Dorothy M. Nafus**
**Issues: This is clearly a self-assigned, manufactured document (by Chase employees to Chase).**

**CFN#2013145084, filed by presentment on 09-16-2013**
**This 3-page Assignment appears to have been manufactured by Jessica Alston in Chase's Monroe, Louisiana document plant.  In the document, the signor (Alston, claims to be Chase's Vice President) allegedly affixed her signature to the document before witnesses Adriane Matthews and Patrick Cherry, as well as Y. K. Wilson, a notary public in and for the State of Louisiana, Ouachita Parish (Notary ID #064399; lifetime commission), executed on July 30, 2013, containing the legal description of the subject property. The manner in which the 3-page document was assembled is indicative of document manufacturing, wherein Chase purports to assign the mortgage and all rights therein to HUD.  There is no mention of the promissory note in this recording.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2013171222, electronically recorded on 10-31-2013**
**This 2-page Assignment appears to have been prepared by Jessica Alston of Chase (after she executed an Assignment to HUD), claiming that the parties signing the document were HUD employees, when in fact, she knew that Jason Burr, who purports to be an Assistant Vice President of HUD (when in fact he was an employee of Houston, Texas-based Selene Finance LP, claiming to be an attorney-in-fact). Burr purports to assign a HUD-owned mortgage to a closed 2012-1 SRMOF II Trust before a witness whose printed name and signature are illegible and one Calliope Mitchell, as well as before Texas notary Amy Gaffney (who must keep a journal of the transaction according to Texas notary law). Gaffney's commission is still active until 01-23-2017. The notarial execution was manufactured separate from the signing page, a marker of document manufacturing. Further, the document purports that a Power of Attorney was recorded in Miami-Dade County as CFN#20130789225; it further appears to have been recorded in Osceola County, Florida. Still, the assignment is not self-authenticating and appears self-manufactured.**

The foreclosure complaint was filed by Ablitt-Scofield attorney Menina E. Cohen (FBN14236) on October 17, 2012. The first assignment, manufactured by the law firm, appears to have been signed on September 6, 2012 in preparation of the filing of the complaint, was was not recorded until October 24, 2012. After Paragraph 23 of the Complaint, there is a large gap in the page (blank space), which indicates potential removal or alteration of the document.

The 2-page promissory note appears attached to the Complaint, the Lender is named as FBC Mortgage LLC. There is an attached along, which appears to be manufactured and signed by Tina Owen who claims to be an Executive Financial Assistant for FBC Mortgage, LLC, indorsed to Freedom Mortgage Corporation. There is no recorded assignment anywhere in the real property records indicating that FBC assigned the mortgage and note to Freedom Mortgage, only directly to Chase using MERS. There is also a second page attached that has no identifiable heading, wherein exists what appears to be an undated indorsed-in-blank stamp allegedly containing the signature of Stan Moskowitz/cpa, who purports to be the Treasurer and Chief Financial Officer of Freedom Mortgage Corporation. The chain of title clearly does not reflect these transfers.

The certified copy of the assignment (attached to the Complaint as Exhibit "A") also does not reflect this chain of title transfer within the land records; thus, the examiner implies that the chain of title has been compromised. Ablitt-Scofield's Cohen then filed a Notice of Lis Pendens, dated October 3, 2012 (three weeks BEFORE the assignment was ever recorded) and recorded by presentment on October 23, 2012 as CFN#2012153454, in close proximity of the intential recording of the self-manufactured assignment. At that juncture, standing was at issue.

The Borrower appears to have retained the Ticktin Law Group of Deerfield Beach, Florida, who requested discovery in the case. It further appears that counsel filed a Motion for Leave to Withdraw, citing irreconcilable differences between the Defendants and counsel.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**ENTER LAW FIRM #2:** Quintaros, Prieto Wood & Boyer, P.A., by and through co-counsel, Courtney M. Johnson (Florida Bar #99812), filed a Notice of Appearance in the case. Antonio Campos (Florida Bar #672487) stipulated for Connolly Geaney Ablitt & Willard, PC, which was not the formal attorney of record to begin with. It further appears that Neal J. Gambler II (Florida Bar #592560) and Catherine Remler Michaud (Florida Bar #72199) also appear to be involved in the case.

On June 6, 2014, co-counsel (Gambler) filed a Motion for Substitution of Party Plaintiff and Amending the style of the case.  Attached were the other two assignments noted above, filed in September and October of 2013.  This is suspect as to the negligence of counsel to act sooner to bring the relevant parties into the case.

On June 10, 2014, Judge Miller granted said motion.   A non-jury trial was set for August 28, 2014.  On that date, Circuit Judge Robert J. Pleus, Jr. issued a Final Judgment of Foreclosure and set a sale date on the Property for October 13, 2014.It is the examiner's belief that the documents created for use at trial were manufactured with the intent to take the Property by fraudulent means by recording said assignments in the real property records, with the intent to deprive the property owners of their property, in violation of Florida Criminal Code § 817.535.

**Case No. 5:** *The Bank of New York Mellon Trust Company, N.A. as Grantor Trustee of the Proteum Master Grantor Trust v. Viviana Morales et al  (2013 CA 2384 MF)*

**NOTE: The following assignment was recorded in the real property records of Osceola County, Florida under the direction of the law firm Clarfield, Okon, Salamone & Pincus, P.L. (see listing under law firm for an explanation of the assignment, attached in certified form to the case file and restated here):**

**CFN#2013166552, recorded by presentment on 10-22-2013**
**This two-page Assignment of Mortgage appears to have been executed on September 20, 2012 under the direction of this law firm for the purposes of effectuating a foreclosure against a property belonging to Viviana Morales of Kissimmee, Florida.  After recording, the law firm requested the original be returned to them.**
**Signor: Lynne Ruberto, who purports to be an Assistant Secretary of MERS, signing as nominee for American Brokers Conduit that went belly-up in 2007, using her position at AMS Servicing in Depew, New York (which coincidentally is where HSBC Bank USA, N.A.'s headquarters is located).  The assignee is Bank of New York Mellon Trust Company, N.A. as Grantor Trustee of the Protium Master Grantor Trust, whose address is in c/o Statebridge Company, LLC (4600 South Syracuse Street, Suite 700, Denver, CO 82037).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In the "Notice of Supporting Plaintiff's Motion For Summary Final Judgment; AMS Servicing LLC "did not" retain the Law offices of Clarfield, Okon, Salomore & Pincus, "The Bank of New Your Mellon Trust Corporation "did". See Page 2.

**Other suspect issues in this case include:**

   **(1) Order setting the NON-Jury Trial---Plaintiff's name is not completed…(2 times);**

   **(2) Plaintiff Notice of Serving of Court Order Page 2: "no year date by Judge was en tered";**

   **(3) Transfer of Ocwen Loan Servicing LLC as owner of loan servicing rights of "numerous loans throughout Florida".  See Ocwen's Letter to the Court;**

   **(4) Ocwen Loan Servicing has never been a Plaintiff in this case. What does the owner of Servicing Rights have to do with being the Owner of the Note (American Mortgage Conduit) which carries a blank endorsement? Ocwen is not a party to this complaint;**

   **(5) The "Assignment of Mortgage Florida" Filed on October 22, 2013 however on Page 2 of the Assignment of Mortgage Florida, the date at the top of the document is dated 20th day of September, 2013 with the 3 written over the 2. Below the middle of the page the Notary, notarized the document on September 20, 2012.**

   **(6) MERS as Nominee for American Brokers Conduit, by (unreadable) as Servicer. American Brokers Conduit went out of business November 30, 2010;\*\***

   **(7) With the Texas-based company out of business how was the document signed in Erie County, New York?**

   **(8) The Bank of New York Mellon Trust Company, National Association, as Grantor Trustee of the Protium Master Grantor Trust cannot also own the Note as per the closing date of the Trust; and**

   **(9) There is no endorsement to the Trust on the promissory Note.**

*\*\*On November 30, 2010, American Brokers Conduit went out of business as per its Chapter 11 liquidation filing under bankruptcy. American Brokers Conduit operates as a portfolio lender. The company is based in Dallas, Texas (5151 Beltline Road; Suite 1201, Dallas, TX 75254 Phone: 972-788-0264 Fax: 972-788-0064)*

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 6:** *Bank of America, N.A. v. Sandra Harvey et al* **(2010 CA 2040 MF)**

*NOTE: There is no recorded assignment in the real property records that matches with the case Note offered in the Plaintiff's Amended Complaint. The following case notes are offered:*

**CFN#2006289303, recorded by presentment on 12-06-2006**
**The mortgage and note were executed in favor of Bank of America, N.A.**

**CFN#2010040115, recorded by presentment on 03-22-2010**
**A Notice of Lis Pendens was filed by Patrice Tedesco (FBN628451) on behalf of the Smith, Hiatt & Diaz, P.A. law firm on March 17, 2010 and later recorded with the posted Case Number as noted.**

**The Complaint contains copies of the note and mortgage. The attorney signed the verification on behalf of Bank of America, N.A. There is no recorded Power of Attorney giving Tedesco the right to sign on behalf of Bank of America, N.A. It appears this alleged "verified complaint" was never challenged under Florida Rules of Civil Procedure Rule 1.510.**

**Further, it is unlikely that Tedesco had personal knowledge of all the facts and it is highly likely that she obtained what information she presented through a third-party, computer software platform. The Defendant's counsel apparently noted that through objections.**

Explanation: Rule 1.110(b), Florida Rule of Civil procedures was amended to require verification of mortgage foreclosure complaints involving residential real property. The primary purposes of this amendment are (1) to provide incentive for the plaintiff to appropriately investigate and verify its ownership of the note or right to enforce the note and ensure that the allegations in the complaint are accurate; (2) to conserve judicial resources that are currently being wasted on inappropriately pleaded ⸺lost note counts and inconsistent allegations; (3) to prevent the wasting of judicial resources and harm to defendants resulting from suits brought by plaintiffs not entitled to enforce the note; and (4) to give trial courts greater authority to sanction plaintiffs who make false allegations. The Notice of Lis Pendens was based on a Complaint that was not properly verified because when filing a foreclosure action on a residential real property mortgage-the complaint shall be verified. Document verification shall include an oath, affirmation or the following statement:

"Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief."

The purpose of the verification is to create accuracy and accountability. Designations or titles are meaningless, insufficient and do not clarify the veracity of the facts. Rule 1.110(b) requires a clean, plain statement of accuracy by the person who actually verifies the truth of the claims made, and who is identified as being in a position to actually do so.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

According to Memorandum N0. 2012-CH-1803 of the Office of the Inspector General of the Department of Housing and Urban Development, September 28, 2012; and the Press Release of the Department of Justice Financial Fraud Enforcement Task Force, March 12, 2012 Bank of America had "flawed control environments" which permitted (i) affidavits to be filed in court where the affiant did not have personal knowledge of the assertions made or had reviewed the relevant books and records; (ii) allowed filings of "inaccurate sworn documents" that resulted in judgments with financial errors in favor of the banks; and failed to sufficiently oversee outside counsel and other third-party providers who handled its sworn documents and collections litigations.

**It appears that the Court granted the Harvey's Motion to Dismiss; however, Judge Miller gave Bank of America 30 days to file an Amended Complaint and the Harveys 30 days to respond to the Amended Complaint, which was filed with the Court on May 25, 2011.**

**The examiner believes that the Notice of Lis Pendens initially filed by the Plaintiff's attorney was to give the "illusion" that they are the "owner" of the note. However, in its Amended Complaint, the Note had been modified from the first version, in that there was an undated indorsement-in-blank stamp affixed to the upper, right-hand corner of the attached copy of the Note, which reads: "Pay To The Order Of _____. "**

**Further, it is signed by Christina M. Schmitt, a known robosigner.  The examiner notes that if Bank of America, N.A. is the actual Plaintiff, clarification of the newly-presented issues would rest with the affiant in the Plaintiff Verification.**

**Plaintiff Verification: On May 13, 2013, Ms. Mary Fran Felion verified Plaintiff's complaint on behalf of BAC Home Loans Servicing, L.P. f/k/a Country Home Loans Servicing, L.P., which is purportedly the servicer for the Plaintiff. No evidence was provided. BAC Home Loans Servicing, L.P. f/k/a Country Home Loans Servicing, L.P. has absolutely no cognizable relationship to the present action and its status of servicer for the allegations.**

Moreover, § 709.2201, Florida Status, entitled "Power of Attorneys," which provides that an agent of the plaintiff, including an attorney in fact, may not "…(b) make any affidavit as to the personal; knowledge of the principal.

**Plaintiff's Affidavits: None of the items listed in the exhibit list were included. This does not support their claim. It violates Florida's Rule of Civil Procedure (Rule 1.510) because these records were not attached to support their suit.**

**In what the examiner believes was a procedural move to out-resource and outspend the Defendants, the Plaintiff substituted SHD Legal Group, P.A. and appointed Ablitt, Scofield, PC. Plaintiff substituted Ablitt, Scofield, PC and appointed Connolly, Geaney, Ablitt & Willard, P.C. for the current law firm. Defendants entered into a confidential agreement with Bank of America, N.A. and received cash for keys, leaving unresolved issues in play.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 7:** *The Bank of New York Mellon fka The Bank of New York, as Trustee for the
Certificateholders, CWABS, Inc., Asset-Backed Certificates Series 2007-6 v.
Duane A. Desett et al (2010 CA 4141 MF)*

**NOTES: There are two assignments involved in this chain of title in addition to other case
documents presented. Each are noted separately by date of entry into the scenario.**

**CFN#2007042223, recorded by presentment on 03-01-2007**
**This MERS-originated Mortgage was executed by Duane and Saadia Desett ("Desett") on
February 22, 2007 in favor of Countrywide Home Loans, Inc.**
This case comes into our target period as the result of later filings. The loan appears predatory in
nature. In the case file, there is a note rubber stamped "Original"; however, the examiner believes
this to be a copied document and not the original. There is one undated indorsement stamp on
Page 3 of 3 of the Note document from Michele Sjolander, whose deposition is included in the
Exhibit file as noted previously, as Executive Vice President of Countrywide Home Loans, Inc.
All of the foregoing was included in the Complaint for Foreclosure filed by Kristin L. Poll (FB-
N77036) on behalf of Florida Default Law Group. It appears to have been verified by Bank of
America, N.A. Assistant Vice President Ameila Sauceda on June 14, 2010; however, Bank of
America, N.A. is not listed on the indorsement as having been specifically conveyed the Note,
despite the fact Bank of America, N.A. subsumed Countrywide Home Loans, Inc. by stock
merger in 2009.

The first Assignment of Mortgage (CFN#2010036337), which appears to have been executed in
favor of the Trust entity named in the Complaint, is NOT Bank of America, N.A., thus, the party
executing the verification would have no specific knowledge of the details because the verifying
party is NOT representing nor employed by the trust entity.  The signing parties appear to be em-
ployees of Bank of America, N.A. executing the document as Vice President and Assistant Secre-
tary of MERS as nominee for the already-subsumed Countrywide Home Loans, Inc. (with the
address of Countrywide left blank; a marker of document manufacturing).  There are numerous
document manufacturing markers throughout the document.

The address of the REMIC trust is shown as Bank of America's Plano, Texas address and not any
address in New York proper.  There is vague language as to when the assignment may have actu-
ally occurred and is shown **"on or before January 11, 2010"**.  It appears to have been "request-
ed by, prepared by and returned to" Anabell Arauz, an employee of Florida Default Law Group,
P. L. ("FDLG"), which further appears to have been necessary to effectuate foreclosure.  It fur-
ther appears that FDLG was taking orders from non-lawyers at the servicing entities involved in
the assignment, which could be construed as unauthorized practice of law.  **The trust's closing
date had been exceeded by nearly three (3) years (March 30, 2007) at the time the Assign-
ment appears to have been manufactured by the law firm with the intent to take the prop-
erty.  It appears the document was created with the intent to precede the filing of the Notice
of Lis Pendens by FDLG.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

If further appears that FDLG's Justin J. Kelley (FBN32106) executed a letter to the Senior Judge (R. Legendre) with an attached Motion to Amend the Complaint, dated November 30, 2011. It also appears that on May 16, 2012, Trent A. Kennelly (FBN89100) filed a notice of the firm's changing its name from FDLG to Ronald R. Wolfe & Associates, PL.

It further appears that after this Notion was filed, McCalla Raymer LLC was substituted as counsel for the Plaintiff, represented by Ryan P. Finnegan (FBN84170). The Plaintiff filed an Affidavit in Support of its Motion for Summary Final Judgment in the case. Attached to the Notice was an Affidavit, apparently signed by another McCalla Raymer attorney, attempting to validate the fees charged by the law firm in this case.

On November 20, 2013, it appears Finnegan filed what he purports to be an "Original Note and Mortgage".  From the observations of the examiner, the first Note claimed to be the "original note" does NOT match the Finnegan Note proffered to the Court. The numbers on the bar code in the bottom-right corner are NOT the same. This would indicate possible manufacture by the parties effectuating the foreclosure. The document content appears to have been "stretched" across the page to assimilate an original document with "margins".

**The supporting Affidavit submitted by McCalla Raymer has specific issues within it, to wit:**

**(1) Paragraph 1 states that Lauren A. Koslosky claims she is authorized to sign the Affidavit on behalf of the Plaintiff, yet attached no specific documentation demonstrating such;**

**(2) Paragraph 3 does not specifically state that Koslosky has personal knowledge of the records she relies on in her affidavit;**

**(3) Paragraph 4 does not specifically delineate who has possession of the Note, quoting here, "Plaintiff directly or through an agent" (it does not specify);**

**(4) The Affidavit does not contain all of the accounting for the trust.  It only contains information that appears to be available to the Servicer in its Collateral Loan File. It does not contain the internal accounting information specific to the Borrower's loan from the trust itself (i.e. application of default, credit swap or other third-party payments); and**

**(5) Kolosky also attempted to validate retainer with McCalla Raymer.  Even though she does not stipulate the charges within the Affidavit, she claims the document is an "attached record" that is subject to change, which makes it part of the Affidavit she is not familiar with.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Specifically, on Page S-35 of the applicable Pooling and Servicing Agreement for the Trust Plaintiff, it states (in part):**

Assignments of the Mortgage Loans to the Trustee (or its nominee) will be recorded in the appropriate public office for real property records … the Co-Trustee will review the Initial Mortgage Loan documents **on or prior to the Closing Date** (or promptly after the Co-Trustee's reßceipt of any document permitted to be delivered after the Closing Date) … after review of the Mortgage Loan documents, if any document is found to be missing or defective in any material respect, the Trustee or the Co-Trustee is required to notify the Master Servicer and Countrywide Home Loans in writing. If Countrywide Home Loans cannot or does not cure the omission or defect within 90 days of its receipt of notice from the Trustee or the Co-Trustee, Countrywide Home Loans is required to repurchase the related Mortgage Loan …

**CFN#2013191088, recorded by presentment on 12-09-2013**
**This appears to be a duplicate of the 2010 Assignment of Mortgage, created by the same parties, only with a new set of Bank of America, N.A. employees signing the document. Even with the new signors, this does not erase the previous recordation, which was also directed by FDLG to attempt to validate its foreclosure. As the result of both of the foregoing Assignments, the following suspect issues must be examined (as they do not appear to have been examined by the Court):**

> **(1) BOTH assignments appear to have been manufactured, executed with an effective date of "on or about January 11, 2010", there is no feasible way the trust could have received it, which meant that Countrywide would have had to buy the loan back; thus, the Plaintiff could NOT have owned the Defendant's Note.\*\***

> **(2) The Amended Complaint asserts claims that do not appear to have been proven.  It is signed by Shannon N. Varner, another Bank of America, N.A. alleged "officer" with unsubstantiated proof of authority and lacking apparent facts as to the amounts owed and effective proof of transfer of the loan into the trust, which she claims to represent on behalf of the Servicer;**

> **(3) The "new and improved" Adjustable Rate Note proffered in the Amended Complaint has the bar code in the lower, right-hand corner missing altogether; and**

> **(4) The "copy" of the attached mortgage is not the same "copy" as submitted in the first FDLG Complaint; thus, the examiner believes that the assignments and the filing of the Complaint were shams to effectuate the taking of the property by illegal means.**

*\*\*This is not construed to mean that some other party did not own the note, it is apparent that the party presenting itself before the Court in this matter apparently doesn't own it.*

**107 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

A Final Judgment of Foreclosure was issued by Hon. Jeffords J. Miller (an appointee of the Florida Supreme Court as part of its apparent "Rocket Docket" plan) on July 14, 2014, despite the clear objections of Desett's counsel.  The issues identified by Desett's counsel were similar to those (but not completely identical) observed in this examination.

The significant aspect of this case is that there is probable cause that BOTH Assignments of Mortgage used in this case were manufactured with the intent to deceive not only the Court, but when filed in the real property records of Osceola County, Florida, created issues in apparent violation of Florida Criminal Code § 817.535.  The property is scheduled to be sold at sale on November 26, 2014.  Once the sale has been completed, all parties involved in this proceeding, including the law firms and their counsel, are suspects in this alleged criminal violation.

Case No. 8: *The Bank of New York Mellon fka The Bank of New York, as Trustee*
*(CWALT-2005-63) v. Tracy A. Gilbert et al* (2009 CA 3856 MF)

NOTES: Two Assignments of Mortgage (one corrective) were filed in connection with this foreclosure litigation.  These are separately discussed under the headings of each of the Preparers of the documents; one executed by alleged bank employees, the other by the alleged Servicer's employees.  The property was sold to the trust at sale for $100 to the claimant Plaintiff trustee on September 30, 2014; thus, this case ended up on our target examination period. This case appears to have been appealable. This case was filed on April 2, 2009 by Justin T. Pikramentos (FBN55030) on behalf of the law firm of Daniel C. Consuegra, as counsel for  Bank of New York Mellon Trustee, for a CWALT, Inc. Alternative Loan Trust Series 2005-63 against Tracy A. Gilbert et al, affecting property at 2428 Berkshire Court in Kissimmee, FL 34746.

The Notice of Lis Pendens was recorded by presentment on April 6, 2009 as CFN#2009069179.  Final Judgment (CNF#2014122126) was entered on August 20, 2014 in favor of the Plaintiff by Circuit Judge Jeffords J. Miller. It appears that Peter Cirrinicione (FBN98332) from the Consuegra law firm was among a handful of actors involved in the taking, as noted throughout this discussion.

The taking of the property is suspect, based on a number of factors discussed below:

   (1) The first Assignment of Mortgage was not filed, representing the Plaintiff's recorded interest in the property was not filed until May 4, 2009, nearly a month AFTER the filing of the Complaint;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) The first Assignment of Mortgage was manufactured by the law firm that prosecuted the case. It appears to have been executed in Collin County, Texas by alleged employees of either Countrywide Home Loans, Inc. or Bank of America, N.A., using MERS as a "cover" for any issues involving chain of title or chain of custody of the Note. The assignment contains multiple markers for document manufacturing and robosigning;**

**(3) Paragraph 5 does not appear to be substantiated (Plaintiff claims to own the note and mortgage). The Note offered as evidence by Exhibit ("A") in the Complaint is NOT ENDORSED. This has been seen in multiple cases reviewed by the examining team in similarly-filed foreclosure complaints;**

**(4) The Pooling and Servicing Agreement for this Trust (2005-63) requires that the Assignment be filed with the Trust on or before the Closing Date of the Trust which in this case is October 28, 2005 (http://www.secinfo.com/dsVsb.z3t.htm#62h at Page S-4 of the 424(b)(5) Prospectus's PSA); thus, the May, 2009 recording of the Assignment in the land records appears to be void;**

**(5) Other concerns involving the transfer include the following PSA language (with emphasis supplied in bold-faced type):**

The trustee will review each mortgage file relating to the Mortgage Loans within 90 days of the closing date (or promptly after the trustee's receipt of any document permitted to be delivered after the closing date), and **if any document in a mortgage file is found to be missing or defective in a material respect and Countrywide Home Loans does not cure the defect within 90 days of  notice of the defect from the trustee** (or within such longer period not to exceed 720 days after the closing date as provided in the pooling and servicing agreement in the case of missing documents not returned from the public recording office), **Countrywide Home Loans will be obligated to repurchase the related mortgage loan from the trust fund.** Rather than repurchase the mortgage loan as provided above, Countrywide Home Loans may remove the mortgage loan (referred to as a "DELETED MORTGAGE LOAN") from the trust fund and substitute in its place another mortgage loan (referred to as a "REPLACEMENT MORTGAGE LOAN"); however, such a substitution is permitted only within two years of the closing date and may not be made unless an opinion of counsel is provided to the trustee to the effect that such a substitution will not disqualify any REMIC or result in a prohibited transaction tax under the Code.

**Thus, it appears that the REMIC, in concert with the law firm, violated not only the PSA's governing regulations in assigning the mortgage too late, but also violated the IRS Tax Code of 1986. These rules are set forth to govern the behavior of the trust. It appears that the actions of the Consuegra law firm were conducted in conjunction and in concert with Bank of America, N.A. or Countrywide in complete disregard of the PSA;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(6) The MERS-originated Mortgage was executed in favor of Countrywide Home Loans, Inc. who should have been the Plaintiff here, according to the terms of the PSA as shown in the above excerpted paragraph, as it was allegedly supposed to repurchase the loan from the Trust according to the PSA regulations;**

**(7) According to Memorandum N0. 2012-CH-1803 of the Office of the Inspector General of the Department of Housing and Urban Development, September 28, 2012; and the Press Release of the Department of Justice Financial Fraud Enforcement Task Force, March 12, 2012 banks had "flawed control environments" which permitted (i) affidavits to be filed in court where the affiant did not have personal knowledge of the assertions made or had reviewed the relevant books and records; (ii) allowed filings of "inaccurate sworn documents" that resulted in judgments with financial errors in favor of the banks; and failed to sufficiently oversee outside counsel and other third-party providers who handled its sworn documents and collections litigations;**

**(8) The foregoing Memorandum, when compared to the procedures utilized here, appear to present multiple violations of this OIG report;**

**(9) The Complaint does NOT appear to be verified.  The filing attorney could not possibly have personal knowledge of the events, since he is in Florida and may have communicated with his firm (who appears to have created the Complaint) utilizing third-party "hearsay" data sources;**

**(10) On May 5, 2009, the Plaintiff, by and through its counsel of record, claims in a Notice to the Court (and all parties) that it filed the Original Note and Mortgage in this case.  The original note (as compared to the NOTE now proffered), appears to contain an undated indorsement-in-blank from Countrywide Home Loans, Inc. on behalf of David A. Spector, who purports to be Managing Director;**

**(11) The two variations of the originally-filed Complaint Note and this Note are markedly different, which is now suspect for fraud on the Court, which appears to have either ignored this apparent legal maneuvering or disregarded any additional facts in the case.  The examiner believes these were manufactured copies that do not comport with the Assignment of Mortgage filing date in contravention of New York trust law;**

**(12) On June 9, 2009, the Consuegra law firm filed the first recorded Assignment of Mortgage (previously discussed); restating previously-discussion PSA and 1986 IRS Tax Code violations;**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(13) On August 21, 2009 Consuegra law firm attorney Dessa Lansen (Florida Bar No. 66384) filed an Affidavits of Reasonable Attorneys Fees and of Costs to the law firm (in favor of itself), attested to by Florida Notary Lori Lynn Horner (Florida Notary Commission #DD 479906), as part of a Motion for Summary Judgment filing. To date, there is still no verified Complaint filed by the Trust or Countrywide or any other party;**

**(14) It appears that the Defendant, Tracy A. Gilbert, filed for bankruptcy protection which Scott G. Layden (FBN73871) attempted to utilize to persuade the Court from dismissing the case for lack of prosecution. The Court held a hearing at which time Judge Ronald Legendre held the case should be kept open until the stay was lifted in the bankruptcy court. Said hearing was held May 26, 2011;**

**(15) Senior Judge Robert Pleus, Jr. appears to have attempted dismissal of the case for lack of prosecution on December 5, 2012 but the Consuegra law firm appeared and convinced the judge to allow the case to remain open, which was granted January 22, 2013;**

**(16) In doing so, it appears that Bayview Loan Servicing, LLC in Coral Gables, Florida manufactured a Corrective Assignment of Mortgage and again, using the same parties as "Assignor" and "Assignee" (restated differently) as compared to the first assignment generated by the Consuegra law firm, Bayview employees executed the document, which also appears to have been drafted using third-party "hearsay" data, which was notarized by Jane R. Diaz (Florida Notary Commission Number DD 957753) in an attempt to "convince" the Court it had standing to proceed with its foreclosure Complaint, still unverified. Lynn A. Brauer (FBN467420) provided this recorded Assignment in what appears to be a ploy to "substitute a party plaintiff", which appears to be the same original Plaintiff trust as the Plaintiff who commenced the proceeding in the first place. Judge Pleus granted the Motion on February 18, 2014;**

**(17) Missing from the Exhibit List submitted by the Consuegra Law Firm on June 5, 2014 was the full accounting from the Trust, showing any third-party payments to the Defendant's loan balance by any default or swap payment. It also appears that there may be additional violations of Florida Rules of Civil Procedure Rule 1.510 as none of these Exhibits appear to have been attached to the initial Complaint.**

Based on PSA, IRS and Florida Rules of Civil Procedure and the issues involving the manufacturing of said assignments, the Examiners believe that these documents were created with the intent to misrepresent the real party in interest, in violation of F. C. C. 817.535. The Final Judgment and Certificate of Sale are attached to this file as part of the evidence package.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 9:** *Aurora Loan Services, LLC v. Francisco J. Botella et al* **(2010 CA 3740 MF)**

**NOTES: This case involves an apparent self-assigned mortgage using an outdated MERS seal. Further issues are discussed regarding this manufactured paperwork within the text.**

The initial Complaint to Foreclose Mortgage was filed June 4, 2010 by David Stern Law Firm attorney Curtis C. Turner, Jr. (FBN51646). The document submitted was not a verified Complaint and was only signed by Turner himself.  The copy of the 2006 MERS-originated Mortgage was attached as Exhibit "A" (CFN#2006206764).  A copy of the Adjustable Rate Note was also attached as Exhibit "A".

On Page 4 of 4 of the Note, there appears plenty of room for at least one if not two indorsement stamps; there are none present.  Instead, following an "Addendum to Note", attached is an undated "Allonge to Note" that contains two indorsement stamps, both undated, one showing an endorsement from First National Bank of Arizona (a National Bank that was inactive as of June 30, 2008 and was merged into First National Bank of Nevada; https://www2.fdic.gov/idasp/confirmation_outside.asp?inCert1=35222).  First National Bank of Nevada was merged (with financial assistance) into Mutual of Omaha Bank and became inactive July 25, 2008.

**The second indorsement stamp purports to indorse-in-blank from First National Bank of Nevada to an unknown party, which Turner and the Stern Law Firm only had an apparent manufactured assignment to represent the recorded interests.  There are issues with the alleged "Corporate Assignment of Mortgage" used in this case in an attempt to prove standing, to wit:**

> **(1) CFN#2010089447 was recorded by presentment AFTER the Complaint was filed on June 22, 2010.  The recording appears to have been requested by Aurora Loan Services and appears to have been returned to "Assignment Prep" at Aurora Loan Services post office box (1706) in Scottsbluff, Nebraska following recordation;**

> **(2) The Assignment shows the MERS MIN # and Date of Assignment as May 5th, 2010 (apparently backdated to fit with the scheme of the Complaint filed by Turner);**

> **(3) The assignment was dated AFTER First National Bank of Arizona was closed.  First National Bank of Nevada, who would also be considered a "Successor or Assign" according to what the signor claims MERS is representing as a "nominee", was also closed well BEFORE the effective Date of Assignment;**

> **(4) The document contains numerous markers of robosigning and document manufacturing, to wit:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(a.) The scribbled signature of Theodore Schultz, who claims to be a Vice President of MERS as nominee for the defunct bank, a known robosignor;**

**(b.) The affixing of a MERS 1995 stamp, which at the time it was affixed, misrepresents the true MERS corporation now in existence, which users using MERS as a "cover" for the chain of custody of the Note use a MERS 1999 corporate seal;**

**(c.) Susan Lindhorst and Janie Flores, also known robosignors, witnessed the document;**

**(d.) The document was notarized by Irene Guerrero, a known "robo-notary" that has affixed her notary signature and seal to tens of thousands of similar documents;**

**(e.) The document's notarial execution is not delineated as to the basis of identification, gender or plurality, another marker of document manufacturing;**

**(f.) The proximity of the two filing dates (of the Complaint and Assignment) are so close together that it appears Aurora's own employees self-assigned by execution of this document to purportedly create an interest to itself for the alleged misrepresentative purpose of creating "standing" to proceed with a foreclosure sale; and**

**(g.) More than likely, the document was produced in concert with other parties for the express purpose of foreclosure, using a third-party "hearsay" computer software platform.**

Thus, the assignment does not match with the information presented on the Allonge to Note offered by Turner in his initial Complaint to the Court. Turner filed the Notice of Lis Pendens with the Court on June 4, 2010 as CFN#2010083708. To further his Cause, Turner attached a Verification signed by Angela Martinez, who purports to be an Assistant Vice President of Aurora Loan Services, LLC. The Examiner herein believes that the statement made by Martinez in Sentence #4 of the Verification contains a false statement in light of the recently-manufactured self-assignment by Aurora employees. Further, if questioned under oath, Martinez highly likely will not have personal knowledge of the facts she claims to have, which are unsupported by lack of attached proof.

There appears a "Clerk's Default" against Cross-Defendant Botella for failure to serve or file any paper as required by law in this matter, issued August 6, 2010.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Stern Law Firm, by and through counsel Randolph H. Clemente (FBN67189) filed an "Entry of Default" on September 15, 2010.

Clemente then filed a Motion for Summary Final Judgment of Foreclosure and attached an Affidavit of Neva Hall, who claims to be an Assistant Vice President of Aurora Loan Services, LLC. The Affidavit was apparently executed out of Marion County, Indiana and not Scottsbluff, Nebraska. A 95-page Deposition of Neva Hall is attached to this report as an Exhibit and incorporated herein by reference (as taken in another Florida case where Aurora Loan Services, LLC was the Plaintiff in a foreclosure action).

In this deposition, Hall admitted that the Affidavits she signed were prepared and issued to her for her signature from "outside counsel" (meaning Clemente and the Stern Law Firm), which could be construed to mean that Hall did NOT have personal knowledge that was claimed by signature. Angela Martinez, the first Affiant signing in this Complaint, is also mentioned in Hall's deposition at Pages 18-19. Hall also admits in the deposition that Aurora used the LPS Fidelity computer platform (a third-party software platform accessible by anyone in the network with specific usernames and pass codes; it is unknown as to where the information came from as it's generally submitted into the data stream from various sources. This was confirmed by Hall in the deposition on Page 39, wherein Hall refers to the LPS Desktop Management System being used to communicate to the law firms (at Line 6).

**There is something else that is even more alarming, to wit (from Pages 23-25 of the Deposition of Neva Hall, by Florida Attorney Dustin Zaks, in part, emphasis in bold-face type):**

Q   **Would the notary be right there with you?**
A   **No.**
Q   Where was the notary?
A   On the same floor, in the same area.
Q   **So the notary would not watch you sign the document?**

A   **No.**

Q   Would you -- how would you present documents
     you signed to the notary?  Send a big stack all at once
     or --
A   Can we go back to the last question?
Q   Sure.
A   Because it wasn't always.  Occasionally I did sign
     in front of them because they were there.  I mean, they
     would hand you a document.  So to say, no, was an
     inaccurate statement.

**114 of 412**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Q   Sure.  You said the notary is on the same --
well, let's go back to how you delivered it.  Assuming
the notary was not sitting at the table with you right
there, would you just take a big stack, drop them off at
her desk and watch the notary sign it?  Or how would you
do that?

MR. ELLISON:  Object to the form.
You can answer.

THE WITNESS:  Okay.  I don't know what you
would call a big stack but I would just hand them
back to the person that gave me the documents
initially.

BY MR. ZACKS:

Q   And that would be the same person we talked
about earlier under the generic title, "person who
distributes documents?"

A   Yes.

Q   Was that always the same person or was that
somebody different each time?

A   Occasionally it was someone else, but primarily it was
Amber Smoot.

**(*The same notary who notarized the affidavit here in this case.*)**

Q   **So Amber would come to your desk; drop off the
affidavits; you would sign it sometimes in front of the
notary, but when the notary wasn't sitting at the desk,
Amber would go drop those affidavits off at the notary's
desk; is that right?**

A   **Primarily that's what happened, yes.**

Q   Okay.  And you said the notary is in the same
area.  What do you mean by that?

A   I could see them.  They were all on this -- we
are all in the same room.

Q   Okay.  How far away were you?

A   I don't know how many feet it would be.  I
could see them.  They are all in the same room.


**Hall appears to lack personal knowledge of the information contained in what Hall attempts to verify, claiming the information Hall relied on was "transmitted by, a person with knowledge", but not Hall. It further appeared that as of April 15, 2011, the Albertelli Law Firm, represented by Claire Brueck (FBN 85754), filed a Notice of Appearance as Co-Counsel with the Stern Law Firm.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It also appears that the Villas at Shadow Bay Condominium Association, Inc. also filed as a Cross-Plaintiff in the case, claiming the Defendant was in arrears on his COA fees.  It also appears that Jana L. Keenan (FBN67949) was also joining with Brueck and Albertelli Law as co-counsel on this matter.

**On December 27, 2011, Albertelli Law by an through Claire Brueck, claimed through a Notice of Filing that it was in possession of the Original Note and Mortgage. This Notice raises serious concerns about the authenticity of the documents being presented to the Court and to the Real Property Records of Osceola County, Florida, to wit:**

**(1) The Stern Law Firm did not include the new Allonge in its original Complaint;**

**(2) The specific inclusion of an Allonge to Promissory Note NOT attached to the original complaint, inserted BEFORE THE PRIOR ALLONGE TO NOTE (submitted by Stern) and NOT AFTERWARDS, throws the endorsement sequences out of genuine order;**

**(3) The apparent "new and improved" Allonge purports to Pay to the Order of: Indorsed-in-Blank by Residential Funding Corporation, signed by John Hagebook, who claims to be its Assistant Vice President.  This creates a conflict as to how Aurora Loan Services, LLC actually ended up with the original Note with the added extra intervening assignee;**

**(4) There appears to have been a "cut and paste" effort to line the Allonge proffered here up with the Addendum to Note, covering up the language with what appears to be a newly-manufactured indorsement; and**

**(5) On the following page, the actual Addendum to Note actually appears in its alleged real format, without the apparent "cut and paste" as shown on the previous page.**

**The Affidavit filed with the Plaintiff's Renewed Motion for Summary Judgment appears to have been directed by Claire Brueck from Albertelli Law.  In this Affidavit, Sheena Winn, who claims to be a Foreclosure Processor III by Aurora Bank, FSB, is attesting to the alleged facts given to her by Brueck through the LPS Desktop System.  However, there are issues that cannot be ignored here, to wit:**

**(1) Winn says she works for Aurora Bank, FSB and NOT the Plaintiff herein;**

**(2) Winn attributes the information she relies on as coming from the Desktop System, which relies on work product submitted from multiple sources;**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(3) Since Residential Funding Corporation is a Depositor for REMIC trusts, the accounting figures for the debts shown in this Affidavit are now suspect;**

**(4) Winn would not have personal knowledge as to how many "drive-by" inspections of the property occurred since she was not in the State of Florida at the time; and**

**(5) There may be misapplication of specific fees regarding any potential default insurance, which potentially would bring the Borrower out of default.  These alleged third-party payments are not shown nor referred to within this Affidavit.**

Apparently, the Court (through Senior Judge Ronald Legendre on February 23, 2012) found issues with the case file and sua sponte, ordered the Plaintiff to file an Amended Complaint or the case would be dismissed without prejudice.  Judge Jeffords J. Miller granted the Plaintiff's Motion for an Extension of Time to file an Amended Complaint.

On April 13, 2012, Aurora Loan Services, LLC, by and through Claire Brueck of Albertelli Law in Tampa, attempted again to file a Verified Amended Complaint, signed by Julie Elliott who claims to be a Foreclosure Processor III with Aurora Bank, FSB (NOT Aurora Loan Services, LLC).  In the Amended Complaint, Aurora Bank, FSB now asserts it is the "servicing agent" and NOT the owner of the note and mortgage as it asserted previously.  This creates certain issues regarding the holder with the rights to enforce a mortgage. At issue is the fact that Elliott does not provide any evidence in the Affidavit to support her authority to execute an Affidavit on behalf of a Plaintiff she does not work for, as Aurora Bank, FSB is an entirely different entity than Aurora Loan Services, LLC.  At this juncture, there appears to be no one verifying the authenticity of this Affidavit that represents the Plaintiff in this proceeding.

The Mortgage and Adjustable Rate Note were attached, but NOT marked as Exhibits.  The "new and improved Allonge To Note" now features the endorsements in the proper order; however, it would be impossible to move them around if they were firmly affixed to the Note in the first place as promulgated under Uniform Commercial Code § 3-302(2). Thus, the Examiner believes this to be another contrived method of plying fraud on the Court to obtain foreclosure of the Property by the use of a self-assigned assignment and a shuffled Note with undated indorsements so as not to be able to prove effective date of transfer.

Further, the Addendum to Note was moved to the rear of the document BEHIND the two Allonges to Note and the second Allonge to Note now does NOT have the "Addendum to Note" header on top of it as it did in the last production and Notice of presentation of the Original Note and Mortgage, proffered by Albertelli Law.  Thus, this appears to be another document manufacturing job designed to deprive the owner of his property by filing false documents in the Court and the Real Property Records in violation of Florida Criminal Code § 817.535.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It appears that Judge Jeffords Miller granted the Final Judgment to Foreclose on June 20, 2012. It appears that Albertelli's Brueck and David Miller (FBN69995) were involved in obtaining said judgment using the proffered documents.  After numerous attempts to set the sale date, it appears appears the property was sold on October 13, 2013.

**Case No. 10:** ***BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP v. Pius Adenrian et al (2010 CA 3256;*** *later amended to* ***Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP v. Pius Adenrian et al)***

**NOTES: There are two separate suspect assignments involved in this case. The first is CFN#2010074368, which was recorded by presentment on 05-24-2010. This appears to have been executed by Smith, Hiatt & Diaz, P.A. law firm Vice President Virginia R. Hiatt and was included in the initial complaint in unrecorded form, wherein Hiatt claims to have authority to act for MERS based on an "Agreement for Signing Authority" which she claims was recorded in Broward County, Florida but was NOT recorded in the real property records of Osceola County, Florida prior to the commencement of this action or the filing of this Complaint.**

The second Assignment of Mortgage, CFN#2012021482, electronically filed by Bank of America, N.A on 02-14-2012, is suspect for self-assignment and document manufacturing, giving MERS two distinctly separate "bites at the apple" by virtue of naming MERS as the sole "Assignor" in an attempt to "clean up" the parties of record so the Complaint could be amended to "make more sense" to the Court.  In other words, the document was manufactured without actual personal knowledge of the events in question taking place, as explained further within the discussion below.

It should also be noted that all Aegis affiliates discussed in this § filed for Chapter 11 bankruptcy in Delaware in August of 2007.  Since there is no court approval for the assignment of a note and mortgage attached to the Complaint, it appears that MERS again is being used as a "cover" for the alleged misdeeds of the servicer and its attorney representatives, who all appear to have plied fraud on the Court in this instance.  Certified copies of all documents are made part of the internal exhibit package as part of this examination.

The Complaint was filed on behalf of the first-named Plaintiff (Servicer) on May 7, 2010, prior to its being merged into Bank of America, N.A. (which all the major banks appear to have done with their respective servicing entities on or about July 1, 2011) and the Notice of Lis Pendens was filed in the real property records of Osceola County, Florida on 5/11/2010; as CFN#20100066419.  Both documents were filed by AnneMarie B. Tedford (FBN30143) on behalf of the Smith, Hiatt & Diaz, P.A. ("SH&D") law firm.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It should be noted that the Certified Copy provided as referenced herein is left "blank" as to the date of the filing of the action.  The Complaint appears to fail as to specify what authority Tedford has to swear under penalty of perjury to facts that she is not personally aware of, including making any statement about default or money due and payable to its client.  It is implied here that Tedford and anyone else in the SH&D law firm received any knowledge they had second-hand by "hearsay" information provided to them by their client, whose foreclosure departments also exchanged "hearsay information" among themselves to be shared as directed to counsel, potentially by non-lawyers, which would constitute the unauthorized practice of law.

**Again, the Florida Rules of Civil Procedure 1.110(b) are restated here, as amended:**

Rule 1.110(b), Florida Rule of Civil procedures was amended to require verification of mortgage foreclosure complaints involving residential real property. The primary purposes of this amendment are (1) to provide incentive for the plaintiff to appropriately investigate and verify its ownership of the note or right to enforce the note and ensure that the allegations in the complaint are accurate; (2) to conserve judicial resources that are currently being wasted on inappropriately pleaded —lost note counts and inconsistent allegations; (3) to prevent the wasting of judicial resources and harm to defendants resulting from suits brought by plaintiffs not entitled to enforce the note; and (4) to give trial courts greater authority to sanction plaintiffs who make false allegations.

The Complaint was not properly verified because when filing a foreclosure action on a residential real property mortgage-the complaint shall be verified. Document verification shall include an oath, affirmation or the following statement:

**"Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief."**

The purpose of the verification is to create accuracy and accountability. Designations or titles are meaningless, insufficient and do not clarify the veracity of the facts. Rule 1.110(b) requires a clean, plain statement of accuracy by the person who actually verifies the truth of the claims made, and who is identified as being in a position to actually do so.

**There are multiple suspect issues within this action that should be noted:**

> **(1) The Assignment of Mortgage was manufactured in close proximity to the filing of the Complaint, further making it suspect for violations of Florida Criminal Code, § 817.535;**

> **(2) The Adjustable Rate Note included in the Complaint is missing pages 2, 4 and 6. Pages 1, 3 and 5 have two black circles on the top of the pages (as shown below):**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA



It appears that these are due to punch holes.  The barcode located on the bottom left side of Page 1 appears altered.  Additionally, below the barcode there is a stamp stating, "I hereby certify this document to be a true and correct copy of the original."  The signature is an "initial or symbol" and the person signed on behalf of AEGIS Mortgage Corporation;

(3) There are no indorsements on the Note below the signatures of the Borrowers and no attached allonges to the initial Complaint Note;

(4) Aegis Mortgage Corporation had a contract with then-MERSCORP, Inc.  At the time this Complaint was filed, Aegis and all of its affiliates were in bankruptcy.  An attorney in the Houston, Texas office contacted previously in other Aegis-related litigation believed the Notes were securitized and subsequently shredded after being recorded into the MERS electronic database;

(5) The Assignment of Mortgage included in the Certified Copy of the Complaint was signed by SH&D's Vice President Virginia R. Hiatt with no knowledge of the transaction in apparent and blatant disregard for Aegis's current state of affairs.  This was notarized by Florida Notary Helen Wade (Florida Notary Commission No. DD 735292);

(6) On July 16, 2010, BAC's attorney (Gabrielle M. Strauss; Florida Bar No. 59563) filed the following suspect documents within the Motion for Summary Judgment and Attorney's Fees:

> (a.) Another "copy" of the promissory Note which at this juncture is shown NOT to have been missing any pages;

> (b.) The "copy" of the Note contains a second bar code that was not present on the first Note provided in the initial Complaint;

> (c.) The "copy" certification is not present on the second Note;

> (d.) The bar code which was scribbled out in the Note provided in the initial Complaint is now "unscribbled" and partially redacted by what appears to be computer manipulation;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(e.) All six page of the Note are present; however, the numbers "1183-84907" appear in the middle of the page above the heading shown as "Adjustable Rate Note" (not present on the Note in the initial Complaint filing);

(f.) On the new included pages 2 of 6, 4 of 6 and 6 of 6) of the new Note, there are two-hole punch "shaded" areas present which appear to line up with what appears to be an "upside-down" recording of a potential image file, such as an "eNote", recorded by image only in the MERS electronic database (and potentially in the database imaging files of the lender/servicer); and

(g. ) The two-punch holds on the new Note are missing and are likely to have been redacted by computer manipulation; and

(7) The "new and improved" Note in the July 16, 2010-filed Motion contains an "Allonge To Note", which creates further suspect issues, to wit:

(a.) There is sufficient room to place the indorsement stamps below the Borrowers' signatures on Page 6 of 6 of the Note;

(b.) The Uniform Commercial Code at § 3-302(2) appears to have been violated, considering the Plaintiff's position as Servicer and the relationship presenting itself between the chain of endorsements on the "attached" page, which should have been incorporated into the first initial Complaint as the endorsements would have to have been affixed to give BAC standing to bring the action;

(c.) None of the indorsements are dated and they do not appear to reasonably prove the effective date of transfer of the Note;

(d.) The Examiner believes that the Note was taken from the MERS "eRegistry" and manipulated by computer prior to its attachment with the intent to commit fraud on the Court;

(e.) Due to the proximity of the attachments, the Examiner believes that BAC and its "document manufacturing teams" created the allonge, which could have been attached to the initial Complaint, but did not have it completed it time; thus, it was attached to a "new and improved" Complaint; and

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(f.) The page following the Allonge To Note appears to contain an indorsement "bleed-through", which would indicate that the stamps were recently affixed to an additional page, which does not comport to the U.C.C. rules for use of an Allonge.**

**(8) The deposition of Michele Sjolander, whose name appears on one of the Note's indorsement stamps is attached to this Report as an Exhibit as previously noted;**

**(9) The Affidavit of Attorney's Fees was also signed by Strauss, which makes it even more suspect, as she is the attorney filing this Motion.  This was acknowledged by Stacey Edwards (Florida Notary Commission No. DD807089); and**

**(10) The second Affidavit of John A. Watson, also an SH&D attorney, appears self-serving to inure to the benefit of the law firm.**

In a Supplemental Exhibit filed with the Court on the same date, the issues previously discussed appear to be restated.  This was handled by SH&D attorney Ryan T. Cox (FBN32686), who, as part of the ploy to defraud the Court, should also be considered an actor in this event. At this juncture, this cause of action now presents itself within the target examination period, the reason for its inclusion herein.

**The second Assignment of Mortgage was filed on behalf of MERS as "Assignor" and not as a nominee for "anyone", using the Metro Detective Agency address in the attempt to mis-represent its interests in this matter to the viewer of the document.  Multiple issues are suspect within this document, to wit:**

**(1) There is significant use of rubber-stamped names and dates, along with an undelineated notarial execution (as to gender and plurality), considered markers of document manufacturing;**

**(2) The scribbled signatures are markers of robosigning.  The signors are all significant here as they are employed by the upcoming "new and improved" Plaintiff;**

**(3) The Assignment was prepared by Mary Ann Hierman, another known robosignor; who appears to have knowledge unknown to the signors herein;**

**(4) The signors and witnesses herein are all known robosignors and employees of Bank of America in what appears to be a self-assignment of the Mortgage using MERS as a "cover" as a means to misrepresent the real parties in interest in the alleged assignment;**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(5) The document's notary (Christy Morse; California Notary Commission No.
1915314) is attesting under Penalty of Perjury that the persons signing herein are
acting in their "authorized capacities".  The Examiner believes that these employees
are acting similar to the DOCX employees (making $10 an hour) under the direction
of a supervisor acting similarly to Lorraine Brown of DOCX, now in prison; and**

The proximity of the recordation of this document into the land records leads the Examiner to
believe that this document was used to misrepresent the real parties in interest in violation of
Florida Criminal Code § 817.535.

**Other relevant issues with this Complaint include the following:**

**(1) If BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing,
LP, N.A. is the Plaintiff, there needs to be clarification of authority of the Affiant
in the Plaintiff  Verification;**

**(2) § 709.2201, Florida Status, entitled "Power of Attorneys," which provides
that an agent of the plaintiff, including an attorney in fact, may not "…(b) make any
affidavit as to the personal; knowledge of the principal.**

**(3) As to the Plaintiff's Affidavits: None of the items listed in the exhibit list were
included. This does not support their claim. It violates Florida's Rule of Civil
Procedure (Rule 1.510) because these records were not attached to support their
suit, also as noted below:**

According to Memorandum N0. 2012-CH-1803 of the Office of the Inspector General of the De-
partment of Housing and Urban Development, September 28, 2012; and the Press Release of the
Department of Justice Financial Fraud Enforcement Task Force, March 12, 2012, **Bank of
America** had "flawed control environments" which permitted (i) affidavits to be filed in court
where the affiant did not have personal knowledge of the assertions made or had reviewed the
relevant books and records; (ii) allowed filings of "inaccurate sworn documents" that resulted in
judgments with financial errors in favor of the banks; and failed to sufficiently oversee outside
counsel and other third-party providers who handled its sworn documents and collections litiga-
tions.

**(4) Further, the alleged Affidavit Supporting Plaintiff's Motion for Summary
Judgment, filed on June 4, 2012, does not represent the real, actual personal
knowledge of the records by Affiant Erik D. Griffin, who purports to be an
Assistant Vice President of Bank of America, N.A., as it is likely he accessed a
computer system to retrieve the information used for this report, which was
inputted by others; thus, he would not have the requisite knowledge to make
this Affidavit;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(5) The figures do not include bottom-line applications of any default or credit swap payments to the account for the alleged trust entity that may claim to own the Note and Mortgage, as MERS was utilized with the intent to securitize the Borrower's loan; and**

**(6) Another similar Affidavit attempt was tried by Kumar Franklin Gaughey, an Affiant seen in other foreclosure case pleadings involving Bank of America, which also appears to fail for many of the same reasons.**

It should also be noted that Bank of America, N.A., through SH&D counsel Jennifer Schick (FBN195790), filed an Amended Complaint in Substitution of Bank of America, N.A. as Successor by Merger to BAC Home Loans Servicing, LP, using much the same declaration procedures as noted in preceding filings this time having an alleged Assistant Vice President of Bank of America, N.A. (Cherie Parrala Hines) signing as to the foregoing facts, which were more than likely prepared by counsel and not based on her own stated beliefs.

It should further be noted that Schick also caused the original Assignment of Mortgage to be placed into the Amended Complaint (signed by Hiatt with no recorded Signing Authority), using a Note that contains marked out redactions dissimilar to the previously-noted case issues herein, as well as dissimilar redactions on the Allonge To Note which do not comport with the design of the second proffered Note in these proceedings.

The blank page contained in preceding pleadings (following the Allonge to Note) is noticeably missing from this Amended Complaint, which would mean it was not physically attached to and made a permanent part of the Note in the first place.

At the conclusion of this cause of action, SH&D was substituted by Ablitt-Scofield, P.C. by and through its counsel Menina E. Cohen (FBN14236), on June 17, 2013. On July 19, 2013, Cohen voluntarily dismissed the Complaint, recorded into the real property records of Osceola County, Florida as CFN#2013123557 by presentment on 08-06-2013.

Clearly, the Examiner believes that the intent here was to utilize false and deceptive manufactured documents in alleged violation of Florida RICO statutes as well as Florida Criminal Code § 817.535, for the purpose of the taking of this property. Further, the attempts to foreclose using these manufactured processes also appear to be a complete waste of the Court's (and the taxpayer's) time and resources.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 11:** *M & T Bank v. Cynthia A. Boger et al* **(2014 CA 0983 MF)**

**The subject MERS-originated Mortgage (CFN#2006267348) was executed in favor DHI Mortgage Company, LTD. Two assignments followed; one prior to and one after the filling of a foreclosure complaint by Clarkfield, Okon, Salomone & Pincus, P.L. The first assignment (CFN#2014029895) appears to be self-assigned to the Plaintiff by Veronica A. Steen, who claimed to be an Assistant Secretary of MERS, assigning the Mortgage and all beneficial interest therein using MERS as a "cover" for DHI Mortgage Company, LTD, who could have properly executed such. The document was prepared by another M&T Bank employee (Tiffany A. Kisloski), Lien released Department, 4th Floor, P.O. Box 1288, Buffalo, NY 14240-1288.**

**Notary: Tammy M. Hamilton (New York Commission No. 01HA699021)**

**Witnesses: None**

**Issues: The notarial execution was undelineated as to the basis of identification, gender and plurality; and also attesting to Steen's "authorized capacity", which is suspect here due to the self-assignment using MERS as a "cover". Using this self-assignment, Clarkfield, Okon, Salomone & Pincus, P.L.'s Marc Ruderman (FBN899585) attempted foreclosure on the property.**

**The second assignment (CFN#2014132745) was signed by Marck Churchill, alleged Bayview Loan Servicing, LLC employee. There is a Limited Power of Attorney by M&T Bank.**

**Notary: Allison Krall (Florida Notary Commission No. FF141128); no witnesses.**

**Issues: The notarial execution was "delineated." Both assignments appear to be false and misrepresentative self-assignments.**

**The following suspect issues within this action that should be noted:**

> **(1) On the first page of the Mortgage below the recordation information the following information was handwritten: CW# 131293321; Buettner; 10/31/06. The letters CW correspond to "Countrywide". However, after reviewing Osceola County's land records, the Preparer did not find an assignment for Countrywide. Furthermore, there are no punch holes on this document. (*see below*)**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**



2. **After examining the Note, it has two-punch holes on the top of each page;**

3. **None of the four endorsements are dated and they do not appear to reasonably prove the effective date of transfer of the Note, as shown below:**



4. **The Examiner believes that the Note was taken from the MERS "eRegistry" and manipulated by computer prior to its attachment with the intent to commit fraud on the Court; and**

5. **The deposition of Michele Sjolander, whose name appears on one of the Note's endorsement stamp is attached to this Report as an Exhibit as previously noted.**

**The Defendant appears to have retained a law firm and on August 29, 2014, she responded to Plaintiff's Summons.  The pendency of the case is still active.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 12:** *Wilmington Trust Company v. Elias Rebolledo et al* (2014 CA 1391 MF)

**The subject MERS-originated Mortgage (CFN#2007125851) was executed in favor Green-Point Mortgage Funding, Inc.  An assignment was filed prior to the filing of a foreclosure complaint by Greenspoon Marder, P.A. There are multiple issues with this Assignment (CFN#2012028644), to wit:**

**(1) The Mortgage appears to have been assigned to the Plaintiff by Rebecca J. Bingham, a known employee of JPMorgan Chase Bank, N.A. in Columbus, Ohio, who claims to be an Assistant Secretary of MERS, assigning the Mortgage and all beneficial interest therein using MERS as a "cover" for GreenPoint Mortgage Funding, Inc., who went out of business in August of 2007;**

**(2) The document was prepared by an NTC employee (Erika Lance; 2100 Alt., 19 North, Palm Harbor, FL 34683);**

**(3) The signor, witnesses and the notary were all in Ohio.  It appears highly likely that Lane seems to have been privy to information not available to Bingham to verify the authenticity of her attestation;**

**(4) It further appears that JPMorgan Chase Bank, N.A. is directing the processing of the Assignment;**

**(5) The rubber stamps used to identify the parties within the executed assignment are common markers of document manufacturing;**

**(6) The address listed for the REMIC trust is the address for Chase's Monroe, Louisiana document manufacturing plant.  The real address of the REMIC trust is 383 Madison Avenue, New York, New York 10179, which is shown on Page S-38 of the 424(b)(5) Prospectus, as demonstrated at the following link:**

**http://www.secinfo.com/dRQ1j.uYx.htm#2ord**

**(7) Further, the Closing Date of the REMIC trust was on or about August 31, 2007, as shown by the link below; therefore, a 2012 assignment of a non-performing loan into an allegedly performing REMIC trust would be void under New York trust law:**

**http://www.secinfo.com/$/SEC/Filings.asp?
AN=0000911420-07-000599&Find=closing&Page=1&List=Docs&Show=Each**

**Notary: Rodney A. Elkins (Ohio Commission No. 2011-RE-361808)
Witnesses: Tricia L. Cross and Darin Harrington Culler**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Issues:** The notarial execution was undelineated as to the basis of identification, gender and plurality; and appears to fail to attest to Steen's "authorized capacity", which is suspect here due to the assignment using MERS. Using this Assignment, which contains numerous misrepresentations in violation of Florida Criminal Code § 817.535, Greenspoon Marder, P.A. by and through its attorney Shannon Jones (FBN106419), then attempted foreclosure on the property.

Regarding the Complaint, the following suspect issues should be noted:

(1) Plaintiff, Wilmington Trust Company is NOT named in the Assignment per se. A search in the Osceola County Land Records did not yield an Assignment of Mortgage naming Wilmington Trust Company as the beneficiary of the Note;

(2) The named Trustee is never made aware of any default and is serving as an administrator of the certificates, which are non-recourse; thus, the investors that are relying on monthly distribution of payments from Borrowers have no recourse to foreclose;

(3) A party must have equity to do equity. The foreclosure process is an in rem action in equity. If the certificate holders of the REMIC trust only possess evidence of debt, the Trustee has no standing because the certificate holders suffered no damage. Thus, the Trustee has suffered no injury and therefore has no standing to bring an action to foreclose. The Borrower may owe someone, but not the Trustee; and

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(4) The foreclosure mill law firm may be subject to fines and penalties under the
Fair Debt Collection Practices Act and the Florida Consumer Credit Act for making
false and misleading misrepresentations regarding the validity of the debt.

Regarding the Exhibits within the Complaint, the following suspect issues should be noted:

(1) It appears that there was plenty of room to affix the indorsement-in-blank
stamp underneath the Borrower's signature on the Note itself.  In fact, there
appears to be enough room to affix several endorsement stamps to the Note
itself BEFORE an Allonge should be attached.  This appears not to comport
to the Uniform Commercial Code at § 3-302(2);

(2) The separate use of paper to attach an undated indorsement-in-blank is
suspect for document manufacturing with the intent to defraud the Court, as
well as the Borrower.  The use of this "empty titled" page also appears not to
comport to Uniform Commercial Code at § 3-302(2);

(3) Because the indorsement-in-blank is undated, there is no proof of the effective
date of transfer of the Note from a defunct Lender to the trust pool; and

(4) The language within the 2012 Assignment of Mortgage does not match the party
of record as a Successor to Citibank, N.A. as Trustee.

(5) The Examiner believes that the Note was taken from the MERS "eRegistry" and
manipulated by computer prior to its attachment with the intent to commit fraud on
the Court, as shown below (observe the pixelation in the photo below):

**129 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(6) Exhibit "C" contains a copy of a "Loan Modification Agreement " (hereinafter "Agreement") between the Rebolledo's and EMC Mortgage Corporation, as the servicer for Citibank, N.A., as Trustee, for the registered certificate holders of Structured Asset Mortgage Investment II Trust 2007-AR5, Mortgage Pass-Through Certificates, Series 2007-0AR5.**

**There are issues with this Modification Agreement, to wit:**

> **(a.) There was no recorded Assignment of Mortgage to the REMIC trust from GreenPoint Mortgage Funding, Inc. at the time the Agreement was executed;**

> **(b.) The Agreement was never recorded in the real property records of Osceola County, Florida; and**

> **(c.) Even if the Agreement was in fact recorded, there was no signature page containing the signature of the Lender's representative, acknowledged by a notary public.**

**Thus, this Agreement fails to comport as a qualified Exhibit because it was incomplete and unverified. In this instance, Plaintiff's counsel appears to be inserting this incomplete Agreement into its Complaint in an attempt to persuade the Court that it further validates the Plaintiff's claim, when in fact, the Note had not been properly conveyed into the REMIC trust in the first place.**

**Regarding the Certification of the Note by the Attorney of Record:**

**The collateral file held by the Servicer of the loan generally contains copies of the Note, not the original, which was assumedly destroyed after it was scanned and recorded as an eNote into the MERS eRegistry; thus, the attorney's statements under penalty of perjury are suspect.**

**A department manager at JPMorgan Chase has admitted to one of the team's Examiners that Notes are shredded once they are scanned into the system. This would make this Certification suspect for fraud on the Court. It appears that the defendant has retained a law firm. The pendency of the case shows as ACTIVE.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 13:** *BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP v.*
*Francisco J. Perez et al* **(2010 CA 5213 MF)**

The subject MERS-originated Mortgage (CFN#2007109490) was executed in favor now-defunct MortgageIT, Inc.  An assignment was recorded as CFN#2010156324 prior to the filing of a foreclosure complaint by the Law Offices of David J. Stern, P.A.

There are multiple issues with this Assignment, to wit:

(1) The Mortgage appears to have been assigned to the Plaintiff by Julia Norton, a known employee of for the Assignee, BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP in Plano, Texas, who claims to be an Assistant Secretary of MERS, assigning the Mortgage and all beneficial interest therein using MERS as a "cover" for BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP;

(2) The document was prepared by David J. Stern, ESQ; 900 South Pine Island Road, Suite 400, Plantation, Florida 33324-3920 as shown on the document:

Prepared by:      DAVID J. STERN, ESQ
Record &Return to:  900 South Pine Island Road Suite 400
                    Plantation, FL 33324-3920
                    10-35970(CWF)(FNM)

MIN: 100112065746387642
MERS PHONE NUMBER: 1-888-679-6377

(3) This address is the same address as to the Plaintiff's attorney. Further, below the Preparer's information, the following reference numbers are present which could be part of an internal reference system to identify the documents being manufactured by Plaintiff's attorney. It appears that the numbers 10-35970 could be the year 2010 and 35970 the firm's file number to identify the file they are manufacturing the documents for. "(CWF)(FNM)" could correspond to Countrywide and Fannie Mae;

(4) The address listed for MortgageIT, Inc in the Assignment is: 3300 SW 34th Avenue, Suite 101, Ocala, Florida 34474 is a defunct foreclosure manufacturing plant that was occupied by Electronic Data Systems and Hewlett-Packard;

(5) The signor, witnesses and the notary were all in Texas;

(6) It further appears that BAC Home Loans Servicing, LP. is directing the processing of the Assignment; and

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(7) The rubber stamps used to identify the parties within the executed assignment are common markers of document manufacturing.**

**(8) The notarial execution appears undelineated as to the basis of identification, gender and plurality; and appears to fail to attest to Steen's "authorized capacity", which is suspect here due to the assignment using MERS. Using this Assignment, which contains numerous misrepresentations in violation of Florida Criminal Code § 817.535, Law Offices of David J. Stern, P.A. by and through its attorneys Lourdes W. Clerge (FBN 52020) and Rosemarie A. Wildman (FBN 645869), who then attempted a foreclosure on the property. The voluntary surrender of Texas Notary Melissa Flanagan's commission is also suspect here;**

**Regarding the Complaint, the following suspect issues should be noted:**

**(1) The named Trustee is never made aware of any default and is serving as an administrator of the certificates, which are non-recourse; thus, the investors that are relying on monthly distribution of payments from Borrowers have no recourse to foreclose;**

**(2) A party must have equity to do equity.  The foreclosure process is an in rem action in equity.  If the certificate holders of the REMIC trust only possess evidence of debt, the Trustee has no standing because the certificate holders suffered no damage.  Thus, the Trustee has suffered no injury and therefore has no standing to bring an action to foreclose.  The Borrower may owe someone, but not the Trustee; and**

**(3) The foreclosure mill law firm may be subject to fines and penalties under the Fair Debt Collection Practices Act and the Florida Consumer Credit Act for making false and misleading misrepresentations regarding the validity of the debt.**

**Regarding the Exhibits within the Complaint, the following suspect issues should be noted:**

**(1) Because the indorsement-in-blank is undated, there is no proof of the effective date of transfer of the Note from a defunct Lender to the trust pool. Countrywide ceased operations in January 2008 and was subsumed by Bank of America, N.A. in 2009;**

**(2) The Original Note filed with the complaint has an undated endorsement stamp on the bottom of Page 3 of the Note and is signed by Stephanie Baylis as Assistant Secretary for the originator MortgageIT, Inc. and it reads: Pay to the Order of _____ Without Recourse", as noted below:**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(3)** The Examiner believes that the Note was taken from the MERS "eRegistry" and manipulated by computer prior to its attachment with the intent to commit fraud on the Court, as shown below (observe the pixelation in the above photo);

**(4)** On May 4, 2012 the new Plaintiff's Attorney, Van Ness Law Firm, P.A. and through its attorney Adam G. Levine, Esq. (FBN 100102) filed a Notice of Filing with the "Original Note," almost two years later;

**(5)** This new and improved undated endorsement conflicts with the Note filed with the Original Complaint to Foreclose Mortgage. The endorsement was altered and now shows Countrywide Bank, FSB as the payee;

**(6)** The new Note appears to have an Allonge after Page 3 of the Note on a separate page without any reference to the Note to which it is purportedly affixed;

**(7)** Further, on the top left hand corner of the endorsement to the Note, appears to contain two endorsements' "bleed-through", which would indicate that the stamps were recently affixed to an additional page, which does not comport to the U.C.C. rules for use of an Allonge;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**



**(8) Due to the proximity of the attachments, the Examiner believes that BAC and its "document manufacturing teams" created the Allonge, which could have been attached to the initial Complaint, but did not have it completed in time; thus, it was attached to a "new and improved" Complaint;**



**(9) The undated Allonge carries the following two endorsements:**

    **(a.) The first undated endorsement stamp appearing on the Allonge bears the endorsement stamp of Laurie Meder as Senior Vice President for Countrywide Bank, FSB, and reads: Pay to the Order of Countrywide Home Loans, Inc. Without Recourse."; and**

    **(b.) The second undated endorsement stamp appearing on the Allonge bears the endorsement stamp of Michelle Sjolander as Executive Vice President for Countrywide Home Loans, Inc. and reads:**

    **"Pay to the Order of _____ Without Recourse.";**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(10) Michele Sjolander previously testified in a deposition in another case contained within this Report that there is a stamp such as the one in this case that bears her endorsement and has been in use since 1999 in foreclosure cases and she has testified that she instructs records custodians to endorse notes and/or alonges in foreclosures cases when needed; thus, it would appear that Sjolander had no personal knowledge of when this endorsement was affixed and for what purpose;

(11) The deposition of Michele Sjolander, whose name appears on one of the Note's endorsement stamps is attached to this Report as an Exhibit as previously noted; and

(12) The Uniform Commercial Code at § 3-302(2) appears to have been violated, considering the Plaintiff's position as Servicer and the relationship presenting itself between the chain of endorsements on the "attached" page, which should have been incorporated into the first initial Complaint as the endorsements would have to have been affixed to give BAC standing to bring the action.

Regarding the Certification of the Note by the Attorney of Record:

The collateral file held by the Servicer of the loan generally contains copies of the Note, not the original, which was assumedly destroyed after it was scanned and recorded as an eNote into the MERS eRegistry; thus, the attorney's statements under penalty of perjury are suspect. A department manager at JPMorgan Chase has admitted to one of the team's Examiners that Notes are shredded once they are scanned into the system. This would make this Certification suspect for fraud on the Court.

During the pendency of the action, the Plaintiff substituted counsel from the Law Offices of David J. Stern to the Van Ness Law Firm, P.A.

After all of the evidence presented to the court that the Plaintiff did not have standing, on July 8, 2014, Judge Robert J. Pleus, Jr. ruled on behalf of the Plaintiff and set a foreclosure sale date for October 6, 2014.

The defendant has retained a law firm. The pendency of the case shows as CLOSED. This case is currently on appeal before the 5th DCA.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 14:** *LNV Corporation v. Mariano Ayala et al* (2011 CA 3479 MF)

The subject MERS-originated Mortgage (CFN#200715889) was executed in favor of Accredited Home Lenders, Inc. In the Assignment of Mortgage (CFN#2009020217), Ms. Sandra Zirkle, who claimed to be an Assistant Secretary of MERS, assigned the Mortgage and all beneficial interest therein using MERS as a "cover" for Accredited Home Lenders, Inc, to LVN Corporation, 7195 Dallas Parkway, Plano, TX 75024. Ms. Zirkle, is a known employee for Accredited Home Lenders, Inc. Therefore, Sandra Zirkle is most likely NOT an employee for MERS.
Notary: Kim Young (California Notary Commission No. 1785939)
Witness: Sonia Evans and Cynthia Pacheco
Issues: The notarial execution was undeliniated as to the basis of identifying, gender and plurality and also attested to Zirkle's "authorized capacity", which is suspect here due to the assignment using MERS. Using this manufactured assignment, which contains numerous misrepresentations in violation of Florida Criminal Code Section 817.535, the Gladstone Law Group, P.A., attempted by and through its attorney Roger N. Gladstone (Florida Bar No. 612324) then attempted foreclosure on the property. Ms. Zirkle, is a known employee for Accredited Home Lenders, Inc. Therefore, Sandra Zirkle is most likely NOT an employee for MERS. This represents a clear conflict of interest.

The undeleneated notarial execution as to gender and plurality is considered markers of document manufacturing. The assignment attested to Zircle's "authorized capacity", which is suspect here due to the assignment using MERS. Furthermore, this assignment was "executed" in San Diego County, California; however, Ms. Zirkle's address is 1595 Spring Hill Road, Suite 310, Vienna, Virginia 22182 (this is another one of MERS's listed addresses).

Further discovery and/or deposition would need to be conducted to identify if in fact, Ms. Zirkle is employed by MERS. The Assignment of Mortgage may have been fraud upon the court. There is no evidence establishing the Lender was validly assigned the Mortgage and the Note to subject property. See attached cases for sample arguments that can be made especially *LNV Corp v. Madison Real Estate*. The following suspect issues within the Complaint should be noted:

> (1) Accredited Home Lenders, Inc. is a dissolved California corporation which was acquired by Lone Star Funding sometime in 2008 and subsequently declared bankruptcy in 2009;

> (2) There are no two-punch holes in the following Exhibits filed on October 11, 2011 with the complaint: (a.) Exhibit A: Copy of the Promissory Note and Allonge; and (b.) Exhibit B: Mortgage;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) However, on November 21, 2012 Plaintiff filed a Motion for Summary Judgment of Foreclosure and for Award of Attorney's Fees and Cost and Exhibits A and B have two-punch holes. Exhibit B does not have the Allonge;**

**(4) The Assignment of Mortgage was not included in the Complaint;**

**(5) The Allonge to the Note (found after page three of the Note) has an undated indorsement-in blank stamp made by Linda S. Vanderveer as Assistant Secretary for the Originator, Accredited Home Lenders, Inc.  This indorsement-in blank stamp appears on a separate page, which creates further suspect issues, to wit:**

> **(a.) There is sufficient room to place the endorsement stamps below the Borrower's signature on Page 3 of 3 of the Note;**

> **(b.) The Uniform Commercial Code at Section 3-302(2) appears to have been violated, considering the Plaintiff's position as Servicer and the relationship presenting itself between the chain of endorsements on the "attached" page, which should have been incorporated into the first initial Complaint as the endorsements would have to have been affixed to give LNV Corporation standing to bring the action;**

> **(c.) The endorsement is not dated and do not appear to reasonably prove the effective date of transfer of the Note; and**

> **(d.) The Examiner believes that the Note was taken from the MERS "eRegistry" and manipulated by computer prior to its attachment with the intent to commit fraud on the Court.**

**(6) It is unclear if the Affiant, Michael Nennig, on the September 2012 Affidavit Supporting Plaintiff's Motion for Summary Final Judgment is an employee for LNV Corporation or for the Attorney, Gladstone Law Group, P.A.  The Affiant, Michael Nennig, is most likely NOT an employee of LNV Corporation and therefore it is highly unlikely that he actually has any personal knowledge of the facts he purportedly attested to under penalty of perjury.**

**Plaintiff's Attorneys: Gladstone Law Group, P.A. was substituted by Robertson, Anschutz & Schneid, P.L.  The defendant has retained a law firm.  The pendency of the case shows as ACTIVE.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 15:** *Green Tree Servicing LLC v. Angel Pagan et al* **(2013 CA 2454 MF)**

**The subject Mortgage (CFN#2005203756) was executed in favor of Bank of America, N.A. at 6700 Lakeview Center Drive, Tampa, FL 33619-0000. An assignment (CFN#2011177027) was filed almost six years after closing.**

**There are multiple issues with this Assignment, to wit:**

> **(1) The Mortgage appears to have been assigned to the Plaintiff by Larisa Post, a known employee for CoreLogic, Inc. CoreLogic is a third party vendor employed to aid in mortgage documentation and management by the Assignee. Ms. Post claims to be an Assistant Vice President of Bank of America, N.A., Merger to BAC Home Loans Servicing, LP. She assigned the Mortgage and all beneficial interest to Green Tree Servicing, LLC, 7360 South Kyrene Rd., T330, Tempe, Arizona 85283;**

> **(2) The document was prepared by a Bank of America employee (Andrew Bui; 1800 Tapo Canyon Rd., Simi Valley, California 93063;**

> **(3) It's obvious that this Assignment of Mortgage was not created by Bank of America, NA., as successor by merger to BAC Home Loans Servicing, LP or Green Tree Servicing, LLC. This document may have been created by CoreLogic; and**

> **(4) This Assignment only reflects a transfer of Mortgage Servicing Rights to Green Tree Servicing, LLC and is not an actual assignment of beneficial interest to the Borrower's loan.**

**Notary: Takayuki E. Uto (California Commission No. 1842250)**
**Witnesses: None**

**Issues: The notarial execution was undelineated as to the basis of identification, gender and plurality; and appears to fail to attest to Post's "authorized capacity." Using this Assignment, which contains numerous misrepresentations in violation of Florida Criminal Code § 817.535, Shapiro, Fishman & Gache, LLP, by and through its attorney Kari Martin (FB-N92862), then attempted foreclosure on the property.**

**Regarding the Complaint, the following suspect issues should be noted:**

> **(1) A party must have equity to do equity. The foreclosure process is an in rem action in equity. If the certificate holders of the REMIC trust only possess evidence of debt, the Trustee has no standing because the certificate holders suffered no damage. Thus, the Trustee has suffered no injury and therefore has no standing to bring an action to foreclose. The Borrower may owe someone, but not the Trustee;**

**138 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) The foreclosure mill law firm may be subject to fines and penalties under the Fair Debt Collection Practices Act and the Florida Consumer Credit Act for making false and misleading misrepresentations regarding the validity of the debt.**

**Regarding the Exhibits within the Complaint, the following suspect issues should be noted:**

**(1) There are none of the required corresponding endorsements on the Note and there are not of the required corresponding assignments and/or notices filed in the Osceola County land records;**

**(2) Page 3 of 3 of the Note and an undated endorsement stamp made by William L. Graig as Assistant Vice President for Bank of America, N.A. and reads; "Pay to the Order of _____ Without Recourse";**

**(3) Because the endorsement-in-blank is undated, there is no proof of the effective date of transfer of the Note.**

**(4) There is no way to determine if the "Lender" held ownership of Borrowers' loan at the time the foreclosure action commenced. Further discovery and /or deposition would need to be conducted to make a final determination; and**

**(5) These are serious issues of fact that need to be meted out properly to determine the authenticity of this mortgage assignment and the lender's standing.**

**It appears that the defendant had retained a law firm.  The pendency of the case shows as CLOSED with a sale date set for February 24, 2015.**

**Case No. 16: *Bank of America, N.A. v. Antonio Santiago et al* (2013 CA 0460 MF)**

**The subject MERS-originated Mortgage (CFN#2007202452) was executed in favor of MFC Mortgage, Inc. of Florida.  Two assignments followed; one prior to and one after filing of the foreclosure complaint by Van Ness Law Firm, P.A. Both Assignments were manufactured and do not correct the breach in the chain of title created when the Plaintiff's manufacturing plant did not properly "assign" the mortgage. The first assignment (CFN#2010099899) was registered in the real property records of Osceola County, Florida 07-13-2010.  It appears to have been self-assigned to the Plaintiff by Sandra Williams, who claimed to be a Vice President of MERS assigning the Mortgage and all beneficial interest therein using MERS as a "cover" for BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**The address for both the assignor and the assignee is the same: c/o Countrywide Home Loans, 7105 Corporate Drive, Mail Stop PTX-B-35, Plano, TX 75024.**

**Notary: Special J. Bell (Texas Commission No. 128249723; commission no longer active)**
**Witnesses: Perla Paredes and Louis Taylor**
**Issues: The witnesses date was left blank (see below):**

*In Witness Whereof*, the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed , this ____ day of _____ , 2010, but effective as of the 29th day of September, 2009.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
(CORPORATE SEAL)

**The notarial execution was undelineated as to the basis of identification, gender and plurality and also attested that to William's "authorized capacity" , which is suspect here due to the self-assignment using MERS. Using this manufactured self-assignment, which contains numerous misrepresentations in violation of Florida Criminal Code § 817.535, Van Ness Law Firm, PLC, attempted by and through its attorney MarK C. Elia, Esq. (FBN695734) then attempted foreclosure on the property.**

**Ms. Sandra Williams is a known employee for the Assignee, BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing LP. This represents a clear conflict of interest and therefore, Ms. Sandra Williams is NOT an employee or actual officer of MERS.**

**There is significant use of rubber-stamped names and dates, along with an undelineated notarial execution (as to gender and plurality), considered markers of document manufacturing. The document was prepared by David J. Stern, ESQ; 900 South Pine Island Road, Suite 400, Plantation, Florida 33324-3920.**

Prepared by:           DAVID J. STERN, ESQ
Record &Return to:   900 South Pine Island Road Suite 400
                       Plantation, FL 33324-3920
                       09-95495 CWF

**Further, below the Preparer's information the following reference numbers are present which could be part of an internal reference system to identify the documents being manufactured by Plaintiff's attorney. It appears that the numbers 09-95495 CWF could be the year 2009 and 95495 the firm's file number to identify the file they are manufacturing documents for. (CWF) could correspond to Countrywide Financial.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The second Assignment (CFN#201161860) was registered in the real property records of Osceola County, Florida on 11-21-2011.

Signors: Tina LeRaybaud and Swarupa Slee, who claimed to be Assistant Secretaries of MERS are trying to correct the mistake in the first Assignment by assigning the Mortgage and all beneficial interest therein using MERS as a "cover" from MFC Mortgage, Inc. of Florida, A Corporation to Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP. Tina LeRaybaud and Swarupa Slee, are known employees for the Assignee, Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing LP. Again, this represents a clear self-assignment of interest as Tina LeRaybaud and Swarupa Slee are NOT employees or in reality, officers of MERS.
Notary: Vazrik Sarafians (California Commission No. 1867732)
Witnesses: Luis Roldan and Bud Kamyabi (also a known robosignor on Bank of America documents)

The address listed for MERS in the Assignment is 3300 SW 34th Avenue, Suite 101, Ocala, Florida 34474. This facility is a known and advertised as a document manufacturing plant, previously occupied by Electronic Data Systems and Hewlett-Packard, as noted. There is significant use of rubber-stamped names and dates are considered markers of document manufacturing.

Regarding the promissory Note, the following suspect issues appear to exist:

(1) There are none of the required corresponding endorsements on the Note and there are not of the required corresponding assignments and/or notices filed in the Osceola County land records;

(2) Page 3 of 3 of the Note contains three undated endorsement stamps. See below.



## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(3) Because the endorsement-in-blank is undated, there is no proof of the effective date of transfer of the Note;

(4) There is no way to determine if the "Lender" held ownership of Borrowers' loan at the time the foreclosure action commenced. Further discovery and /or deposition would need to be conducted to make a final determination;

(5) Page 2 of 2 of the Amended And Restated Note contains an undated endorsement stamp made by Danka Siljegovic made as Assistant Vice President for Bank of America, N.A. and reads; "Pay to the Order of _____ Without Recourse";



(6) Because this endorsement-in-blank is also undated, there is no proof of the effective date of transfer of the Note.

(7) There is no way to determine if the "Lender" held ownership of Borrowers' loan at the time the foreclosure action commenced. Further discovery and /or deposition would need to be conducted to make a final determination; and

(8) These are serious issues of fact that need to be meted out properly to determine the authenticity of this mortgage assignment and the lender's standing.

Thus, the May 12, 2014 Final Judgment In Mortgage Foreclosure may have been based on misleading and/or erroneous and inaccurate documentation filed by the Lender.  There are none of the required corresponding endorsements on the Note; and there are not any of the required corresponding assignments and/or notices filed in the applicable County Records showing that Bank of America, N.A. was granted the appropriate authority to foreclose on Borrowers' Note and Mortgage. This case is closed. Sale date is scheduled for 10/31/2014.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 17:** *U.S. Bank, N.A., As Trustee, on Behalf of the Holders of the Home Equity Asset Trust 2006-4 Home Equity Pass Through Certificates, Series 2006-4 v. Zoila Molleturo et al* **(2013 CA 1807 MF)**

The subject MERS-originated Mortgage (CFN#2006032927) was executed in favor of Encore Credit Corporation, a California Corporation, dba ECC Credit Corporation of Florida. An assignment (CFN#2013047952) was filed almost six years after closing. There are multiple issues with this Assignment, to wit:

(1) Encore Credit Corporation was sold to Bear Stearns Residential Mortgage Corporation on or about October 2007 and ECC Credit Corporation of Florida is an expired Florida Fictitious Name as of December 31, 2009;

(2) There is no corresponding endorsement found on the Note;

(3) The Mortgage appears to have been assigned to Select Portfolio Servicing, Inc., by Mr. Curtis Pulsipher. Mr. Pulsipher claims to be a Vice President of MERS. He assigned the Mortgage and all beneficial interest to Select Portfolio Servicing, Inc, 3815 South West Temple, Salt Lake City, UT 84115;

(4) The document was prepared by Bill Koch a Select Portfolio Servicing, Inc. employee, 3815 South West Temple, Salt Lake City, UT 84115;

(5) Page 3 of 3 of the Note contains the borrower signature, but an "endorsement" was stamped on the backside of Page 3 of 3 of the Note, when the signature page had plenty of space for the endorsement; further, the endorsement on this note is undated and executed by known robosigners; and

(6) This Assignment only reflects a transfer of Mortgage Servicing Rights to Select Portfolio Servicing, Inc. and is not an actual assignment of beneficial interest to the Borrower's loan.

Notary: Shirley Tuitupou (Utah Commission No. 659599)
Witnesses: Mary Jean Thomas and Ana Novakovich
Issues: The notarial execution was undelineated as to the basis of identification, gender and plurality; and appears to fail to attest to Pulsipher's "authorized capacity." Using this Assignment, which contains numerous misrepresentations in violation of Florida Criminal Code Section 817.535, Elizabeth R. Wellborn, P.A., by and through its attorney Brian Streicher, Esquire (FBN92561), then attempted foreclosure on the property.

Regarding the Complaint, the following suspect issues should be noted:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) A party must have equity to do equity.  The foreclosure process is an in rem action in equity.  If the certificate holders of the REMIC trust only possess evidence of debt, the Trustee has no standing because the certificate holders suffered no damage.  Thus, the Trustee has suffered no injury and therefore has no standing to bring an action to foreclose.  The Borrower may owe someone, but not the Trustee; and

(2) The foreclosure mill law firm may be subject to fines and penalties under the Fair Debt Collection Practices Act and the Florida Consumer Credit Act for making false and misleading misrepresentations regarding the validity of the debt.

Regarding the Exhibits within the Complaint, the following suspect issues should be noted:

(1) There are none of the required corresponding endorsements on the Note and there are not of the required corresponding assignments and/or notices filed in the Osceola County land records;

(2) The backside of Page 3 of 3 of the Note and an undated endorsement stamp made by Christopher Ladezma, Sr. Shipping Analyst for Encore Credit Corporation, a California Corporation dba ECC Encore Credit Corporation of Florida and reads; "Pay to the Order of _____ Without Recourse";

(3) Because the endorsement-in-blank is undated, there is no proof of the effective date of transfer of the Note.

(4) There is no way to determine if the "Lender" held ownership of Borrowers' loan at the time the foreclosure action commenced. Further discovery and /or deposition would need to be conducted to make a final determination;

(5) On December 15, 2009, Ms. Molleturo signed a Home Affordable Modification Agreement with Select Portfolio, Inc., this agreement is not registered in the Osceola County Land Records; and

(6) These are serious issues of fact that need to be meted out properly to determine the authenticity of this mortgage assignment and the lender's standing.

Plaintiff's Attorney: Elizabeth R. Wellborn, P.A
A review of the real property records of Osceola County, Florida under Limited Power of Attorney yielded negative results.  It appears that the defendant has retained a law firm. The pendency of the case shows as ACTIVE.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 18:** *SunTrust Mortgage, Inc. v. Radames Quinones et al* (2013 CA 0655 MF)

The subject originated Mortgage (2006230557) was executed in favor of SunTrust Mortgage, Inc. Three assignments followed; two prior to and one after filing of the foreclosure complaint by the Law Offices of Daniel Consuegra, P.L.

The first assignment (CFN#2008183617) was registered in the Osceola County Land Records on November 7, 2008. Mr. Chris Jones, who claimed to be a Vice President of SunTrust Mortgage, Inc., whose address is 1001 Semmes Avenue, Richmond, VA 23224 assigned the Mortgage and all beneficial interest therein to MERS.
Notary: Bryan J. Bly (Florida Commission No. DD691055)
Witnesses: Vilma Castro and Dhurata Doko
Issues: The notarial execution was undelineated as to the basis of identification, gender and plurality and also attested that to Jones' "authorized capacity", which is suspect here due to the assignment using MERS. Using this manufactured assignment, which contains numerous misrepresentations in violation of Florida Criminal Code Section 817.535, the Law Offices of Daniel Consuegra, P.L., attempted by and through its attorney Dessa Wilson, Esq. (FBN66384) then attempted foreclosure on the property.

Mr. Chris Jones is a known employee for National Title Clearing, Inc. Mr. Chris Jones is NOT an employee for SunTrust Mortgage, Inc. This represents a clear conflict of interest.

There are significant uses of initials instead of signatures, along with an undelineated notarial execution (as to gender and plurality), considered markers of document manufacturing. Furthermore, this assignment was "executed" in Pinellas County, Florida; however, Mr. Jones' address is in Richmond, Virginia. Further discovery and/or deposition would need to be conducted to identify if in fact, Mr. Jones is employed by SunTrust Mortgage, Inc.   The document was prepared by Jessica Fretwell, National Title Clearing, Inc., 2100 Alt. 19 North, Palm Harbor, FL 34683.

The second Assignment (CFN#2010066198) was registered in the Osceola County Land Records on May 3, 2012. Ms. Kim Goelz who claimed to be a Assistant Secretary of MERS whose address is P.O. Box 2026, Flint, Michigan 48501-2026 assigned the Mortgage and all beneficial interest therein to SunTrust Mortgage, Inc.
Notary: Miranda Avila (Florida Commission No. EE019063)
Witnesses: Debra Goyer and Shay Mossing
Issues: The notarial execution was undelineated as to the basis of identification, gender and plurality and also attested that to Goelz' "authorized capacity", which is suspect here due to the assignment using MERS.  Kim Goelz is a known employee for National Title Clearing, Inc. Ms. Goelz is NOT an employee for SunTrust Mortgage, Inc.  This represents a clear conflict of interest.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are significant uses of initials instead of signatures, along with an undelineated notarial execution (as to gender and plurality), considered markers of document manufacturing. Furthermore, this assignment was "executed" in Pinellas County, Florida; however, Ms. Goelz' address is in Flint, Michigan. Further discovery and/or deposition would need to be conducted to identify if in fact, Mr. Goelz is employed by MERS. The document was prepared by Erica Lance, Nationwide Title Clearing, Inc., 2100 Alt. 19 North, Palm Harbor, FL 34683

**The third Assignment (CFN#2013133185) was registered in the Osceola County Land Records on August 26, 2013. Ms. Rachel Dixon who claimed to be a Vice President of Sun-Trust Mortgage, Inc., whose address is 1001 Semmes Avenue, Richmond, Virginia 23224 assigned the Mortgage and all beneficial interest therein to Wilmington Savings Funds Society, FSB, not in its individual capacity but solely as Trustee for the Primestar-H Fund I Trust, Its Successors or Assigns, (Assignee).**

**Notary: Leiza C. Norris-Jones (Virginia Commission No. 7169927)**
**Witnesses: James M. Elleboy and _____ (name cannot be decipher) See below.**



**Issues: The notarial execution was undelineated as to the basis of identification, gender and plurality and also attested that to Dixon's "authorized capacity", which is suspect here due to the assignment using MERS. There are significant use initials instead of signatures, along with an undelineated notarial execution (as to gender and plurality), considered markers of document manufacturing.  The document appears to have been prepared by James Love (alleged employee of SunTrust Bank; 1001 Semmes Avenue RVW 5303 Richmond, VA 23224).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Paragraph seven (7) of the Affidavit of Indebtedness filed on February 2, 2014, states: "The loan record for the Borrower are maintained by STATEBRIDGE COMPANY, LLC AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL, CAPACITY BUT SOLELY AS TRUSTEE FOR THE PRIMESTAR-H FUND I TRUST in the course of its regularly conducted business." After reviewing the Osceola County Land Record, the auditor found two Powers of Attorneys for Statebridge Company, LLC, but they were not on behalf of SunTrust Mortgage, Inc.

Regarding the Note, the following suspect issues should be noted:

(1) The transfer to MERS, and then back, to SunTrust Mortgage, Inc., and finally to Wilmington Savings Funds Society, FSB, not in its individual capacity but solely as Trustee for the Primestar-H Fund I Trust Its Successors or Assigns, (Assignee) likely reflects the "selling" of Borrowers' Note into a secondary market;

(2) According to Paragraph four (4) of the February 4, 2013 Verified Complaint to Foreclose Residential Mortgage: "SunTrust Mortgage, Inc. is the owner of the note. Federal National Mortgage Association (Fannie Mae) has authorized the Plaintiff to bring this present action on the note." There are no corresponding endorsements on the Note; and there are not any corresponding assignments and/or notices filed in Osceola County Land Records;

(3) On February 27, 2014, an Affidavit of Indebtedness was filed by Wilmington Savings Funds Society, FSB, not in its individual capacity but solely as Trustee for the Primestar-H Fund I Trust indicating that the law Offices of Daniel Consuegra were retained to enforce the Note and Mortgage. However, the Note and Mortgage included in the Affidavit do not belong to Mr. Radames Quinones, Defendant;

(4) The Exhibit A filed on February 14, 2013 with the Complaint has the correct Note without endorsement(s). However, the Plaintiff, on Page 1 of 5 covered up the AP # QUIN00039002530 and LN# 003900530 on the top right hand side and on the top left hand side the MIN: 1000104-0039002530-0 above the Adjustable Rate Note. (See below) On pages 2 of 5, 3 of 5, 4 of 5 and 5 of 5 the AP# and LN# were covered up.  The MIN is MERSCORP-owned and thus, where are the privacy violations?



## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**5) There are corresponding endorsements on the Note and there are no corresponding assignments and/or notices filed in the Osceola County land records;**

**These are serious issues of fact that need to be properly decided to determine the authenticity of this mortgage assignment and the lender's standing. The May 21, 2014 Final Judgment of Mortgage Foreclosure may have been based on misleading and/or erroneous and inaccurate documentation filed by the Lender.  There are none of the required corresponding endorsements on the Note; and there are not any of the required corresponding assignments and/or notices filed in the applicable County Records showing that Wilmington Savings Funds Society, FSB, not in its individual capacity but solely as Trustee for the Primestar-H Fund I Trust or SunTrust Mortgage, Inc. were granted the appropriate authority to foreclose on Borrowers' Note and Mortgage. The law offices of Daniel Consuegra, P.L. appear to have been handling the case at this time and it appears that the property was sold and a Certificate of Title was issued but not recorded at the time this Report was released.**

**Case No. 19:** *U. S. Bank, N.A. as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2007-CB6 v. Carmen Colon et al* **(2009 CA 7799 MF)**

**CASE NOTES: This case falls into our parameters because of actions relied upon due to a self-serving Assignment of Mortgage into a trust by the law firm's attorney representing the Plaintiff.  HOME 123 Corporation was no longer licensed to do business in the State of Florida as of October of 2007.  The Assignment of Mortgage (CFN#2009125860) is noted as B & H EX. 3.  In this document, Hosch also attempts to assign the note using MERS, claiming to be its Vice President.  MERS cannot convey the Note as it does NOT have an interest in it; thus, this Assignment contains multiple issues that are reflected in this discussion.**

**The Notice of Lis Pendens was filed by Frank Albert Reder (FBN154229) on behalf of Butler & Hosch's Orlando, Florida office.   In his two-count complaint to foreclose Reder signed the Complaint as if he was the party verifying it, which would be impossible since he has no first-hand knowledge of any of the events leading up to the foreclosure, unless he was informed by Hosch, Jr. that Hosch, Jr. manufactured the Assignment of Mortgage to the trust REMIC through inter-office communication channels.**

**Still, the Complaint does not appear to comport to Florida Statutes (2013), Section 673.3091. Enforcement of lost, destroyed, or stolen instrument.**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Further, Count II of the Complaint seeks to re-establish a lost note, which fails because Reder cannot (by his own statements) validate the facts he is attesting to because he is NOT the Plaintiff, as noted in *Delia v. GMAC Mortgage Corporation*, 5D14-78, below:**

> **702.11. Adequate protections for lost, destroyed, or stolen notes in mortgage foreclosure**
> (1) In connection with a mortgage foreclosure, the following constitute reasonable means of providing adequate protection under s. 673.3091, if so found by the court:
> (a) A written indemnification agreement by a person reasonably believed sufficiently solvent to honor such an obligation;
> (b) A surety bond;
> (c) A letter of credit issued by a financial institution;
> (d) A deposit of cash collateral with the clerk of the court; or
> (e) Such other security as the court may deem appropriate under the circumstances.
> Any security given shall be on terms and in amounts set by the court, for a time period through the running of the statute of limitations for enforcement of the underlying note, and conditioned to indemnify and hold harmless the maker of the note against any loss or damage, including principal, interest, and attorney fees and costs, that might occur by reason of a claim by another person to enforce the note.

In most instances reviewed by the Examiners, there was no due diligence commentary brought forward in the Complaint.  If the Notes were shredded as the Florida Mortgage Bankers Association claims in its 2009 letter to Judge Bailey, then due diligence arguments are moot because the point of the whole claim is to re-establish something that was purposefully destroyed because an electronic image file was created of it at its inception.  The Examiner here believes that if the Note is lost, is that it was lost at the inception of the loan, after it was scanned into an image file and shredded.  It is possible that not all Notes were shredded, but how is the judicial body overseeing these cases supposed to determine which is which?  How can a claimant party indemnify a bona fide purchaser at sale if the claimant party never owned the note with the right to enforce it in the first place?

Despite the fact the foregoing statute was not in effect when the Complaint was filed, the case appears to rely on the alleged false and misrepresentative Assignment filed by Hosch, which is suspect for probable cause for violation of Florida Criminal Code Section 817.535.

It further appears that the Defendant retained counsel and it appears that Reder submitted a Notice of Filing an Original Note, Mortgage and Assignment of Mortgage, certified by the Clerk in this instance as being B & H Ex. 3 herein.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The indorsement-in-blank on the last page of the Note is undated and is non-specific as to whether a restrictive (special) endorsement was required and further does not prove effective date of transfer.

It further appears that Butler & Hosch's Sujata Patel (FBN82344) was involved in this matter. On the final disposition form, Patel, signing for Monica D. Shepard (FBN86242), claims that the Plaintiff is the "prevailing party", showing the case dismissed before hearing due to completed loss mitigation. This could also mean that the Defendants sold the property and retired the debt. Whatever the case, if funds were used to mitigate the alleged Plaintiff's losses, based on the foregoing Assignment of Mortgage, the criminal issues involved in this case carried them forward through the actions of Butler & Hosch, P.A. and its attorneys in violation of Florida Criminal Code § 817.535 and potential violation of Florida RICO statutes.

**Case No. 20:** *U. S. Bank, N.A. as Trustee for Harborview Mortgage Loan Trust 2004-2 v. Amanda Mejia et al* **(2012 CA 5350 MF)**

**CASE NOTES: This is the first of several mortgage foreclosures involving this couple, who appear to have acquired several pieces of real property in Osceola County, Florida. There is one recorded Assignment of Mortgage which appears to precede the filing of the Complaint as shown below.**

This case begins with the filing of a Notice of Lis Pendens and Complaint to Foreclose Mortgage by Sadika Parti (FBN86242), filing for Monica D. Shepard (FBN93609) for Butler & Hosch, P.A., claiming that U. S. Bank, N.A. has the right to foreclose on their property. The Complaint was allegedly verified by Lacy Lynn Spera, who claims to be an Assistant Vice President of Bank of America, N.A. as Servicer for the Plaintiff.

This is where the situation gets difficult because the servicer is NOT the lender and therefore, the Complaint is deficient on its face because the servicer in NOT a holder with the right to enforce the Note. Spera declares under penalty of perjury that she alleges that the facts are true; however, the facts put before her were likely drafted by the law firm and not in her own words.

Further, the Note attached to the Complaint shows an indorsement-in-blank without recourse from Countrywide Home Loans, Inc. and it is undated and is not restrictive to U. S. Bank as Trustee; thus, the effective date of transfer is unknown.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2012099400, recorded by presentment on 07-05-2012**
**Document Prepared by: unknown parties at Butler & Hosch, P.A. (Dallas, Texas offices)**
**Signer: Michelle A. Reese, who claims to be an Assistant Vice President of Bank of America as successor in interest to the Countrywide entities, as Assignor; attempting to assign the note and mortgage to a 2004-2 Harborview Mortgage Loan Trust which has a Closing Date of April 30, 2004; thus, the transfer is void under New York trust law.**
**Notary: Marilyn A. Woodard (Texas Notary Commission ID #128546028; active until 03-19-2015)**
**Witnesses: None**

The document appears to have been forwarded to Bank of America, N.A. for signature (two witnesses' names customarily seen in assignments are missing), under penalty of perjury under Texas law.  Michelle A. Reece claims to have signed the document in her "authorized capacity" with no verification as to what her capacity is, other than a title of Assistant Vice President of Bank of America, N.A..  If Ms. Reece knew of all of the factors involved in the assignment, she would have known that the Closing Date of the Harborview Mortgage Loan Trust Series 2004-2 was April 30, 2004 and that there is now way that Bank of America, N.A. could have successfully conveyed the note and mortgage into the pool over eight (8) years too late.   It is highly likely that she had no idea of the truthfulness of the document before she signed it.  The document was manufactured for a purpose, to give standing to a Plaintiff that rightfully does not appear to have had it.

It further appears that David M. Cozad (FBN33392) refiled what he claimed were the original note, mortgage and assignment that appears to be self-serving, along with an Affidavit for Attorney's Fees and Costs.

The presentation of the note contained two-hole punches at the top of the document.  It is unknown whether the Note was NOT from the collateral file or whether it was a reproduction from the collateral file.  Based on the documentation from the Florida Banker's Association to Hon. Jennifer Bailey, many of the documents, including this one, were deemed in most instances to have been "eliminated", which would be construed to mean that the documents provided here were recreations of the originals and were manipulated to look like the original documents.

It appears that on or about August 29, 2013, the Defendant homeowners filed an objection with the Court to the Default Action being taken against them, pro se. They further appear to have attempted to interject an audit done by James T. Wilson of Legal Forensic Auditors in Delaplane, Virginia.  The audit presented purports to indicate that the Note was sold into a mortgage pool, but misrepresents that Bank of America is not the "owner in due course" when Bank of America, N.A. is not even the represented Plaintiff.   Pooling and Servicing Agreements for the various Wall Street REMICs clearly show that certain indorsements-in-blank or restrictive endorsements must be present on the Note itself, which did not appear to be the case here.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Unfortunately, *Palmer v. Hoffman*, 318 U.S. 109 (1943) does not allow for working "back office" research to be submitted as evidence, despite what rulings are presented by other courts outside of Florida, as noted below, in part:

> The problem was well stated by Judge Learned Hand in Massachusetts Bonding & Ins. Co. v. Norwich Pharmacal Co., 2 Cir., 18 F.2d 934, 937:

> "The routine of modern affairs, mercantile, financial and industrial, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine itself, and of the self-consistency of their contents. Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt, if only his creditor does a large enough business."

**Thus, the document submitted by Wilson fails in its effort to explain the entire sequence of events regarding the governing regulations of the trust pool. Unless the entire securitization process can be thoroughly vetted, back office research from multiple sources will not suffice. This is what the banks appear to have counted on in obfuscating the securitization process through the use of MERS.**

It further appears that on or about November 1, 2013, the content of the documents appear to indicate that Nationstar Mortgage LLC has submitted borrower payment histories, which were included in the court file. Absent from those records however were applicable third-party payments made by credit default swap payments, default insurance payments or any other time of Lender Private Mortgage Insurance ("LPMI"). Butler & Hosch also filed a Stipulation for Substitution of Counsel, substituting Shapiro Fishman & Gache LLP.

Judge Pleus granted the substitution of counsel on May 29, 2014. Generally, this pattern is seen in close proximity with an event that changes the course of the case, before or after. It further appears that a non-jury trial was sent for September 2, 2014; Ron Nesbitt, appearing for Shapiro, Fishman & Gache, LLP and the Defendants, pro se.

At this juncture, there are no other recorded assignments in the real property records of Osceola County, Florida other than the self-servicing Assignment drafted by Butler & Hosch, P.A., which is suspect under Florida Criminal Code Section 817.535. David Tracy Thornhill (FBN523194) submitted the Plaintiff's Exhibit List for the REMIC trust. Thornhill also submitted a Motion to Substitute Party Plaintiff and Change Case Style. This two-page document asserts "that a transfer of interest has been made to Nationstar Mortgage LLC" and that it should be substituted as a party plaintiff.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**There are problems with the "transfer of interest" to Nationstar, to wit:**

**(1) There is still no recorded assignment showing such a transfer in the real property records of Osceola County, Florida at this point in time in the pendency of the case;**

**(2) The reason for the foreclosure complaint being filed is that the loan is allegedly in default;**

**(3) There are specific governing regulations in the trust pool when an alleged default occurs, as noted herein (424B5 26th Page of 295, S-25) within the 424(b)(5) prospectus of the Harborview 2004-2 trust pool's PSA, to wit:**

High Loan-to-Value Mortgage Loans. Approximately 7.16% of all of the mortgage loans, and approximately 11.98% and 5.20% of the group 1 and group 2 mortgage loans, respectively, have original loan-to-value ratios in excess of 80%. Each such mortgage loan is covered by a primary mortgage guaranty insurance policy (which policy insures, generally, any portion of the unpaid principal balance of a mortgage loan in excess of 80% of the value of the related mortgaged property), except for approximately 4.80% of such mortgage loans, and approximately 0.44% and 8.89% of such group 1 and group 2 mortgage loans, respectively. No such primary mortgage guaranty insurance policy will be required to be maintained with respect to any such mortgage loan after the date on which the related loan-to-value ratio is 80% or less.

**(4) Thus, based on the foregoing, the trust pool does have third-party payor provisions, none of which were represented (if not paid by a credit default swap) in this instance. This is why the Examiner maintains that the trust pools had provisions in place because of the way the loans were structured to fail. That way, the swap insurance payment would make all or part of the pool whole.**

Further, if the note was fractionalized and a portion of the note put into each tranche (in a grouping of tranches), then when one tranche (containing the same portion of the note) failed, then it can be assumed that all the tranches in the pool failed, and the credit default swaps, which were tied separately to each tranche, would then pay the losses to each tranche, thus making the certificateholders whole.

The fact that Plaintiff's counsel now wants a substitution of Party Plaintiff is suspect for securities fraud. Further, with no assignment being recorded, and the previous suspect being relied upon, there is clear reason to believe that probable cause exists for violation of Florida Criminal Code § 817.535 as well as for violation of Florida RICO statutes.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

A determination must be made by the grand jury as to whether the trust pool would allow a substitution of a servicer over eight (8) years after the fact that the pool itself, which has filed an SEC Form 15, has not been winding down its affairs, with most of its tranches paid or settled. This trust, as well as Nationstar Mortgage LLC, may have not suffered any damage or injury whatsoever; thus, they cannot be a Plaintiff.

**Sadly, the Courts do not wish to appear to be willing to get an education about how this process works and demand to see proof of third-party payments to the non-recourse bond holders.  This could be occurring for a number of reasons, including but not limited to:**

**(a.) The argument by the banks that the "Borrower" is NOT a party to the trust pool or the securitization process, when the facts brought forward herein seem to indicate otherwise;**

**(b.) The argument that despite the fact the notes may or may not have been fractionalized, the certificate holders received non-recourse bonds.  What did or did not happen is not the court's concern; yet the Trustees for the certificate holders are the parties claiming they were damaged; and**

**(c.) The judges believe that they are vested in some way in the trust pools and that they will be damaged if they discover the real truth about the securitization process and have to rule for the homeowner.  This would certainly cause a conflict of interest in any securitization case or any case where MERS was involved in the Mortgage.**

**Therefore, the duty is left up to the grand jury to further investigate as to whether the defendant homeowners are even in default at all.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 21:** *The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2007-OA3, Mortgage Pass-Through Certificates, Series 2007-OA3 v. Robert Frick et al* **(2013 CA 1173 MF)**

**This case appears to center around a suspect document titled "Assignment of Mortgage" electronically recorded by Bank of America, to wit:**

**CFN#2012046479, recorded electronically on 4-2-2012**
**Document prepared by: Diana DeAvlla (sic), alleged employee of Bank of America**
**Signor(s): Luis Roldan, who claims to be an Assistant Secretary of MERS and Allee Rows, who also claims to be an Assistant Secretary of MERS.  The document does not disclose if MERS is acting as a "Nominee" for SILVER STATE FINANCIAL SERVICES, INC. D/B/A SILVER STATE MORTGAGE, the claimed original lender, but rather appears to represent MERS as a standalone Assignor.  The document attempts to assign a Mortgage and note(s) to The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the certificateholders CWALT, Inc., Alternative Loan Trust 2007-OA3, Mortgage Pass-Through Certificates, Series 2007-OA3 on 3-28-2012.**
**Witnesses: The signing of the instrument was apparently witnessed by two separate individuals, Srbui Muradyan & Bud Kamyabi.**
**Notary: Xiomara M. Oliva (California Notary Public for Los Angeles County)**
**Issues: Signatures which are 1-2 letters in length are potential markers of robosigning.**

The Complaint to Foreclose was filed by BROCK & SCOTT, PLLC attorney Neha Baumann, Esq. (FBN 62235) who appears to have relied on the foregoing document to commence foreclosure proceedings.  Attached to the Complaint is a copy of a purported promissory note with 2 (two) endorsements on the 4th page, one of which is a blank endorsement by a Michele Sjolander, EVP of Countrywide Home Loans, Inc. Michele Sjolander has admitted under oath that she does not personally sign any endorsements. In an 11th Circuit Case out of Miami-Dade County, Florida, Case Number 09-21198 CA 09, the defendant deposed one Michele Sjolander as then-Executive Vice President, where she admitted under oath that she does not personally sign any indorsements, but rather her signature has been duplicated in the form of a stamp, which is disseminated throughout the country and affixed outside her presence.  She does not know who applies her stamp, nor what policies govern the application if the same.

**The Complaint declares that the Mortgage was subsequently assigned to The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2007-OA3, Mortgage Pass-Through Certificates, Series 2007-OA3 and that the Plaintiff "is the holder of the Note", however there are issues present with the alleged Assignment, to wit:**

**(1) The Closing Date of the trust REMIC is March 1, 2007;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) Since MERS cannot convey the Note into anything, only the Mortgage could be assigned into the REMIC pool;**

**(3) In order for the Assignment to be valid, it would have had to have been Assigned prior to the Closing Date, which was March 1, 2007, long after the March 28, 2012 date of recordation in the public record of Osceola County, Florida.**

**It is questionable whether an assignment purporting to take place on 3-28-2012 would be in compliance with the governing agreements of the alleged Certificateholders CWALT, Inc., Alternative Loan Trust 2007-OA3, Mortgage Pass-Through Certificates, Series 2007-OA3 trust.  As of the time of this examination the Case Status is OPEN and the Plaintiff moved for a Renewed Summary Final Judgment of Foreclosure on or about 11-10-2014. Despite the case outcome, the intent to use manufactured documents containing false and representative information constitutes probable cause for violation of Florida Criminal Code § 817.535 and potential Florida RICO violations.  Further, the fact the Assignment may NOT have been attorney supervised may constitute unauthorized practice of law.**

**Case No. 22:**  *The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWABS INC., Asset-Backed Certificates, Series 2006-22 v. Dan Durfey et al* **(2013 CA 1475 MF)**

**This case appears to center around a suspect document titled "Assignment of Mortgage" electronically recorded by Bank of America, to wit:**

**CFN#2012136370, recorded electronically on 9-19-2012**
**Document prepared by: Diana DeiAvila (alleged employee of Bank of America, N.A.**
**Signor(s): Janet Gordon, who claims to be an Assistant Secretary of MERS as a standalone assignor and Cynthia Romo, who also claims to be an Assistant Secretary of MERS as a standalone assignor.  The document does not disclose if MERS is acting as a "Nominee" for COUNTRYWIDE HOME LOANS, INC., the claimed original lender.   The document attempts to assign a Mortgage and note(s) to The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of the CWABS INC., Asset-Backed Certificates, Series 2006-22 on 9-17-2012.**
**Notary: Linda J. Stone (California Notary Public for Los Angeles County)**
**Witnesses: Talisha Wallace, Alice Rowe (also alleged Bank of America employees; known robosignors)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Issues: Signatures which are 1-2 letters in length are potential markers of robosigning. The assignment appears to be prepared by and/or with the assistance of a document manufacturer. There is no corporate seal on the assignment nor are there any signatures by an acting Officer (President, Vice President, or CEO).  Witness Talisha Wallace, has been known to portray herself as an Assistant Secretary of MERS on similar assignments that have been prepared by Bank of America.**

**A Lis Pendens was filed by HELLER & ZION, LLP attorney Eric T. Magoon (FBN 562300) as CFN#2013067877 on 4-29-2013.**

The Complaint to Foreclose was also filed by HELLER & ZION, LLP attorney Eric T. Magoon, Esq. (FBN 562300) who appears to have relied on the foregoing document to commence foreclosure proceedings.  Attached to the Complaint is a copy of a purported promissory note with a single indorsement on the 3rd page which is a blank endorsement by a Michele Sjolander, Executive Vice President of Countrywide Home Loans, Inc. Michele Sjolander has admitted under oath that she does not personally sign any endorsements.

In an 11th Circuit Case out of Miami-Dade County, Florida, *Case Number 09-21198 CA 09*, the defendant deposed one Michele Sjolander as then-Executive Vice President, where she admitted under oath that she does not personally sign any indorsements, but rather her signature has been duplicated in the form of a stamp, which is disseminated throughout the country and affixed outside her presence.  She does not know who applies her stamp, nor what policies govern the application if the same.

**The Complaint declares that the "Plaintiff owns and holds the Note and Mortgage, *or are persons entitled to enforce the Note* within the meaning of §673.3011, by virtue of an assignment of Mortgage recorded in…Osceola County, Florida" however there are issues present with the alleged Assignment, to wit:**

> **(1) The Closing Date of the trust REMIC is November 30, 2006;**

> **(2) Since MERS cannot convey the Note into anything, only the Mortgage could be assigned into the REMIC pool;**

> **(3) In order for the Assignment to be valid, it would have had to have been Assigned prior to the Closing Date, which was November 30, 2006, long after the September 19, 2012 date of recordation in the public record of Osceola County, Florida.**

**It is questionable whether an assignment purporting to take place on 9-17-2012 would be in compliance with the governing agreements of the alleged Certificateholders of the CWABS INC., Asset-Backed Certificates, Series 2006-22 trust.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**As of the time of this examination the Case Status is OPEN and litigation is ongoing.**

**Despite the case outcome, the intent to use manufactured documents containing false and representative information constitutes probable cause for violation of Florida Criminal Code § 817.535 and potential Florida RICO violations.   Further, the fact the Assignment may NOT have been attorney supervised may constitute unauthorized practice of law.**

**Case No. 23:** *Citifinancial Mortgage Company (FL), LLC v. Guerdine Charles et al* **(2010 CA 4223 MF)**

This action was filed by Stacie Vecchione (FBN 70997) for Curtis C. Turner, Jr. (FBN 51646) of the David J. Stern law firm on June 28, 2010.  After the Stern law firm closed its doors, Turner went to work for the now-defunct Ablitt Scofield, P.C. NKA Connolly, Geaney, Ablitt & Willard, P.C. (who recently filed for bankruptcy amidst a whistleblower lawsuit brought by Witness A, which it defaulted on).

At first glance, the two filed what appeared to be a self-verified Complaint (making both of them apparent fact-based witnesses who have no actual personal knowledge of the real facts and figures but rather claiming to have knowledge of nothing more than third-party, hearsay information transmitted to them by a third-party computer software platform), with no real accounting attached.

It further appears that someone else from the firm (unknown as to name and FBN) filed the Notice of Lis Pendens by presentment on 07-01-2010 as CFN#2010094705.  It further appears that an Exhibit "A" containing the proffered alleged Mortgage and Note was filed as part of the Complaint, executed in favor of the Plaintiff, by name.   There were no endorsements on the Note; thus, no reason for the Examiner to believe it had been transferred to another party.   However, there was an attached verification at the END OF Exhibit "A", which appears to have a double line drawn through it, which is an apparent indication of document manufacturing ("cut and paste") because of the angle of the double line being drawn through the center of the Verification page.

This presentation (of the Verification) is also suspect because it customarily seen contained within the body of the Complaint itself; detached, it says absolutely nothing about what account and who Foreclosure Analyst Patricia A. Schollmeyer is talking about.  Just because the Foreclosure Analyst states under penalty of perjury that the Plaintiff has possession of the subject Note does not mean they own the Note with the right to enforce it.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It further appears that the Defendants retained counsel in this matter.  It was not until three months later that another Affidavit in Support of Motion for Summary Judgment was filed, containing a sworn statement from Janet C. Latessa, another Foreclosure Analyst with Citifinancial Mortgage, who then declared she is an "authorized signator on behalf of the Plaintiff" as a "mortgage loan servicing agent".

The Verification further appears to fail because Latessa claims she has "direct access to" or "have been provided with" the business records, which means that the information she relies on it based on the statements made by someone else (hearsay), which is verified in Paragraph 3, "transmitted by, a person with knowledge" (but NOT Latessa).

It appears that the pendency of this case dragged on into April 11, 2011, when Valerie Pendino (FBN 81715), on behalf of Albertelli Law, filed a Notice of Appearance of Co-Counsel.  On that same date, Pendino also filed a "Notice of Filing of Breach Letter", wherein the attached document, dated April 14, 2010 (nearly a year earlier), appears to backdate a Paragraph 22 issue within the Mortgage, regarding the rights of the parties to accelerate the Note.  The letter claims that this is a "Citimortgage" loan, when the Plaintiff is NOT Citimortgage, but an entirely separate corporation.

The pendency of the case continued to drag on until March 7, 2012, when a Notice of Intent to Dismiss was filed by Judge Ronald Legendre, giving the Plaintiff 20 days to file an Amended Complaint or the case would be dismissed without prejudice.  A week later, Albertelli's Pendino filed a Motion for Extension of Time to File an Amended Complaint, which was granted by Judge Legendre.  What followed on July 3, 2012 was a "Notice of Transfer of Claim and Motion to Substitute Party Plaintiff and to Substitute Counsel", filed by Edward A. Storey III (FBN 640867) of Thorne & Storey, P.A. (its first entry into this report as a participating law firm), now claiming that U. S. Bank, N.A. as Trustee of the Florida Mortgage Resolution Trust, Series 2012-4, is now the owner of the Note and Mortgage with the right to enforce it. This led the Examiner to check for recorded Assignments to verify the chain of title.

**A cross-check of the public record evidenced the fact there were two (2) Assignments of Mortgages electronically filed, to wit:**

**CFN#2012091296, electronically filed on 06-15-2012**
**Signer: Michael E. Wileman, claiming to be an authorized signer for Citifinancial Services, Inc., successor by merger to Citifinancial Services, Inc. 344, LLC A/K/A/ Citifinancial Mortgage Company (FL), LLC (as Assingor) to Florida Mortgage Resolution Trust 2012-4, showing an address in Santa Ana, California (as Assignee), transferring ONLY the Mortgage and NOT the Note.**
**Notary: "C. Lafferty" (Texas Notary Commission Expires November 30, 2018)**
**Witnesses: None**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Issues: Orion only generates documents when it is told to do so by its client, apparently by communication through a third-party (hearsay) computer software platform.  It is highly likely that no attorney supervised the drafting of this Assignment; thus, issues of unauthorized practice of law may be present. The signatures of "M. E. Wileman" and "C. Lafferty" appear to be computer generated and manufactured onto the document.  Because the document was electronically recorded, there are also 18 USC 1343 issues present.**

**CFN#2012093517, electronically filed on 06-21-2012**
**Signer: Michael E. Wileman, claiming to be an authorized signer for Citimortgage, Inc. as Successor by reason of merger to Citifinancial Mortgage Company, Inc.**
**Notary: "C. Lafferty" (Texas Notary Commission Expires November 30, 2018)**
**Witnesses: None**
**Issues: This document falls back on document CFN#2012091296, electronically filed on 06-15-2012, wherein Orion's signers, the same    "M. E. Wileman" and "C. Lafferty", now claim by corrective Assignment of Mortgage (a week later), that U. S. Bank, N.A. as Trustee for the previously-named trust is added to "fix" what was not completely "set in stone" the first time. You can take both sets of Assignments and align the signatures over each other and see they are manufactured onto the page, as they clearly overlap each other.**

Since there are no endorsed Notes involved thus far, the Assignments appear to be relied upon as the reason for the Motion in the court case.  Thus far in the pendency of this case, there are no new offerings by Plaintiff's counsel to indicate an update of endorsements-in-blank or any other "Allonges to Note" to indicate the presence of the new Plaintiff in the chain of custody of the Note, which makes the Court filings suspect, not only of manufacture, but of the possibility that a defaulted loan was placed into a 2012 series trust for the purposes of allegedly and illegally writing off a loss (income tax evasion) against this trust. On September 12, 2011, Judge Legendre allowed the substitutions and gave counsel thirty (30) days to file an Amended Complaint.  Seeing that was not done, on November 7, 2012, Senior Judge Robert Pleus issued a Final Order of Dismissal in the case (filed for record on 11-28-2012 as CFN#2012176153), leaving two suspect Assignments of Mortgage still to be considered.

**It further appears that a Satisfaction of Mortgage was filed in the real property records of Osceola County, Florida:**

**CFN#2012174372, recorded by presentment on 11-27-2012**
**Document Prepared by: Brenda Cortez (an employee with T. D. Service Company in Orange, California)**
**Signer: Greg Schleppy (known robosigner and alleged employee of T. D. Service Company in Orange, California), who claims to be Senior Vice President of the substituted party plaintiff in this case, by Carrington Mortgage Services, Inc. ("Carrington") as Attorney-in-Fact.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Notary: Angelica Rosales Pacheco (California Notary Commission No. 1973291; still active)**
**Witnesses: Leticia Macias, Sandra Magana (alleged T. D. Service Company employees)**
**There are multiple issues with this Satisfaction of Mortgage, to wit:**

**(1) It appears that there was a Limited Power of Attorney ("LPOA") electronically recorded as CFN#2012153869 on 10-23-2012 in the real property records of Osceola County, Florida. The recording was requested by Carrington Mortgage Services, LLC, showing an address of 1610 E. St. Andrew Place, Santa Ana, CA 92705, the same address Orion Financial Group, Inc. used in BOTH of its allegedly-manufactured Assignments of Mortgage in July of 2012;**

**(2) The LPOA was executed On July 19, 2012 by U. S. Bank, N.A. as Trustee, for a list of scheduled trusts as attached as "Exhibit A", which included the subject trust giving Carrington attorney-in-fact status);**

**(3) However, the Assignments of Mortgage were executed on June 15th and June 20th of 2012, respectively and recorded BEFORE the LPOA was executed by U. S. Bank, N.A. ("left hand does not know what the right hand is doing"); thus, the Assignments of Mortgage were false and misrepresentative because there was no basis in fact that U. S. Bank authorized Orion Financial Group, Inc. or any other third-party document mill (like T. D. Service Company) to manufacture a Satisfaction of Mortgage, calling itself (and its trust) the new "Lender", because the Assignments of Mortgage used to create that basis in fact appear illegitimate as to authority.**

**Due to the series of manufacture of recorded documents, the Examiner alleges that the following issues of probable cause exist:**

**(1) Against U. S. Bank as Trustee; Carrington Mortgage Services, LLC; Orion Financial Group, Inc. and all of their employees, for causing the recording of a series of false and misrepresentative Assignments of Mortgage when there was no recorded or timely basis in fact to do so, in violation of Florida RICO statutes;**

**(2) Against Florida Bar member lawyers involved in this case; against the Thorne & Storey, P.A. law firm and its lawyers for fraud on the Court, based on the reliance of the manufactured Assignments of Mortgage using the schemes and artifices that are described in the preceding Paragraph 1 herein;**

**(3) Against all parties acting in concert with each other, collaborating with the intent to deprive the homeowners of their property in violation of Florida Criminal Code § 817.535 by causing the Substitution of the Party Plaintiff by and through the reliance of said suspect Assignments of Mortgage to further effectuate foreclosure;**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(4) Against all parties found to have had a connection with the interstate wiring of documents into the real property records of Osceola County, Florida in violation of 18 USC 1343 and/or recorded by presentment with the intent to defraud the homeowners under Florida Criminal Code § 817.535 by the use of the United States mails containing said documents to further the schemes and artifices under 18 USC 1341;**

**(5) Against U. S. Bank and Carrington Mortgage Services, LLC for conspiring to defraud the United States Government under 18 USC 371 by placing a defaulted consumer loan into a trust vehicle for the purposes of including said defaulted loan for the purposes of committing income tax evasion by falsely writing down the loan as a loss when there may have been unjust enrichment on the part of the trustee or the servicer based on third-party payments by credit default swaps or other policies issued against the performance of the loan; and through the unjust enrichment of a payment issued to it by the escrow firm handling the closing of the Defendant homeowner's property; and**

**(6) Against T. D. Service Company, LLC and its employees who acted in concert to produce a Satisfaction of Mortgage:**

> **(a.) without the supervision of counsel, which could be construed as the unauthorized practice of law, a felony under Florida statutes; and**

> **(b.) with the intent to misrepresent the real party in interest, claiming it had authority when in fact there are no recorded Limited Powers of Attorney in the real property records of Osceola County, Florida giving T. D. Service Company the right to sign for Carrington Mortgage Services, LLC or ANY OTHER company or its duly-authorized representative(s); thus committing perjury under Florida RICO statutes because it was instrumental in the taking of property under Florida Criminal Code § 817.535 (by allowing a trust vehicle to misappropriate funds through the use of the filing of false and misrepresentative document, as proof of the alleged act, in concert with the Trustee and Carrington).**

On February 14, 2013, Suzanne Delaney (FBN 957941) of Thorne & Storey, P.A., filed a Notice of Voluntary Dismissal (after Judge Pleus already dismissed the action).   This Notice is deemed superfluous and redundant and a waste of the Court's time and resources.

It appears that the foreclosure action in of itself, forced the homeowners to liquidate their property for the purposes of resolution; only to result in more issues with the chain of title, as MERS was in their mortgage previous to this scenario.  There are also issues relevant to potential double liability on the part of the purchaser, as the funds derived from the proceeds may have been paid to the wrong party, based on the foregoing case study.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 24:** *Bank of America, N.A. v. Jesus D. Urquiza et al* **(2013 CA 664 MF)**

This allegedly Verified Complaint by Jacqueline Costoya (FBN 98478) of the law firm of Tripp Scott, P.A. (Costoya also filed the Notice of Lis Pendens as CFN#2013031275 on 02-25-2013) claims that Fannie Mae is the owner of the Note and that Bank of America, N.A. is the servicer of the loan and is the holder of the Note, yet there is nothing contained within the Complaint that proves Bank of America, N.A. is "authorized" to act in the stead of Fannie Mae (Fannie Mae has to provide proof of agency).  In Paragraph #7 of the Complaint, it further states that "all conditions precedent to the filing of this action have been met by Plaintiff", which does not appear to be true because of the nature of the following Assignments of Mortgage and other conditions now relevant to the final outcome of this case, which are discussed following the issues related to this case.

**CFN#2012046502, electronically recorded on 04-02-2012**
**Document Prepared By: Diana DeAvila (alleged employee of Bank of America, N.A.)**
**Signers: Luis Roldan and Alice Rowe (both claiming to be Assistant Secretaries of MERS), both alleged employees of Bank of America (or its ReconTrust Company, N.A. unit) in Ventura County, California, claiming to assign BOTH the Defendant's second note and second mortgage into a closed 2005-K REMIC trust.**
**Notary: Xiomara M. Oliva (California Notary Commission No. 1913041; expired 11-12-14)**
**Witnesses: Srbui Muradyan, Bud Kamyabi (both known robosigners for Bank of America)**
**There are multiple issues with this Assignment of Mortgage, to wit:**

   **(1) There is clear evidence of document manufacturing and robosigning:**

   **(a.) the signatures present are not common with other signatures noted on different assignments by the same individuals, which would indicate surrogate signing;**

   **(b.)  Use of rubber stamps for dates, names and titles;**

   **(c.) Scribbled signatures (all robosigning markers);**

   **(d.) BOLD-FACE CAPITAL LETTERS (evidence of computer data entry used in document manufacturing);**

   **(2) This document was executed under penalty of perjury under California law (notary bonds are $15,000 or more in California);**

   **(3) Since MERS has no interest in the Note, it cannot assign something as an Assignor, giving an Assignee something it does not have an interest in;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) The original lender was not registered to do business in the State of Florida. Further, America's Wholesale Lender ("AWL") is a "DBA" for Countrywide Home Loans, Inc.   This is construed to mean that AWL was not the New York corporation; but rather Countrywide Home Loans, Inc. is the New York corporation; thus, misrepresentation of the facts within this Assignment;**

**(5) Lacking the validity to assign an invalid mortgage and note (as discussed below) the entire Assignment (based on current applicable case law, *Bank of America, N.A. v. Linda Nash*) is void, making it fraudulent and misrepresentative because the persons executing this document should have known the status of the corporation and whether or not AWL was a legitimate corporation or not BEFORE they affixed their "signatures" to the document; and**

**(6) The Closing Date of this REMIC trust was December 29, 2005; thus, this March 28, 2012 Assignment would be construed as invalid and void under New York Estates Powers & Trusts § 7-2.4.**

Thus, DeAvila, Oliva and the signers on this document, who work for the Plaintiff in this case, appear to have conspired to produce a document (under the direction of Bank of America, N.A.) which contains probable cause for perjury under the Florida RICO statutes.

**CFN#2012062008, electronically recorded on 04-25-2012**
**Document Prepared By: An unknown employee of Bank of America, N.A.**
**Signers: Martha Munoz, who claims to be a Vice President of MERS and Dominique John-son, who claims to be an Assistant Secretary of MERS, both alleged employees of Bank of America (or its ReconTrust Company, N.A. unit) in Ventura County, California, claiming to assign BOTH the Defendant's first note and first mortgage to itself.**
**Notary: Vazrik Sarafians (California Notary Commission No. 1867732; expired 11-06-13)**
**Witnesses: Rene Rosales, Beverly Brooks (both known robosigners for Bank of America)**
**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) There is clear evidence of document manufacturing and robosigning:**

**(a.) the signatures present are not common with other signatures noted on different assignments by the same individuals, which would indicate surrogate signing;**

**(b.)  Use of rubber stamps for dates, names and titles;**

**(c.) Scribbled signatures (all robosigning markers);**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(d.) BOLD-FACE CAPITAL LETTERS (evidence of computer data entry used in document manufacturing);**

**(2) This document was executed under penalty of perjury under California law (notary bonds are $15,000 or more in California);**

**(3) Since MERS has no interest in the Note, it cannot assign something as an Assignor, giving an Assignee something it does not have an interest in;**

**(4) The original lender was not registered to do business in the State of Florida. Further, America's Wholesale Lender ("AWL") is a "DBA" for Countrywide Home Loans, Inc.   This is construed to mean that AWL was not the New York corporation; but rather Countrywide Home Loans, Inc. is the New York corporation; thus, misrepresentation of the facts within this Assignment;**

**(5) Lacking the validity to assign an invalid mortgage and note (as discussed below) the entire Assignment (based on current applicable case law, *Bank of America, N.A. v. Linda Nash*) is void, making it fraudulent and misrepresentative because the persons executing this document should have known the status of the corporation and whether or not AWL was a legitimate corporation or not BEFORE they affixed their "signatures" to the document;**

**(6) The Assignment utilizes Metro Detective Agency's Danville, Illinois mailing address to attempt assignment on behalf of MERS as a standalone Assignor and not as a nominee for AWL (to hide the true party in interest's address); and**

**(7) The Assignment misrepresents Bank of America, N.A.'s address with that of the address of Fannie Mae.**

Thus, Sarafians (who acknowledged the execution of the document and the signers on this document, who work for the Plaintiff in this case, appear to have conspired to produce a document (under the direction of Bank of America, N.A.) which contains probable cause for perjury under the Florida RICO statutes. The two chain of Assignments appear to be part of the "conditions precedent" spoken of by Plaintiff's counsel in its Verified Complaint filed on February 15, 2013.   Also, during the pendency of the case, the following Assignment of Mortgage was filed:

CFN#2013111776, recorded by presentment on 07-19-2013
Document Prepared By: Julia Cortez (alleged employee of Bank of America, N.A.)
Signers: Sandra Cole and Aaron Simpson, who both claim to be Assistant Vice Presidents of Bank of America in Los Angeles County, California, claiming to assign ONLY the Defendant's first mortgage to Nationstar Mortgage LLC.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Notary: Monette L. Stevenson (California Notary Commission # 1956374; expires 10-14-15)
Witnesses: Patricia Quintanilla, Sanita Wagoner (also alleged Bank of America, N.A. employees)**

**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) There is clear evidence of document manufacturing and robosigning:**

**(a.) the signatures present are not common with other signatures noted on different assignments by the same individuals, which would indicate surrogate signing;**

**(b.) Use of rubber stamps for dates, names and titles;**

**(c.) Scribbled signatures (all robosigning markers);**

**(d.) BOLD-FACE CAPITAL LETTERS (evidence of computer data entry used in document manufacturing);**

**(2) This document was executed under penalty of perjury under California law;**

**(3) Since the basis in fact for this Assignment to be valid is based on a previous MERS-related Assignment of Mortgage, which is invalid at present according to the Bank of America, N.A. v. Linda Nash case, this Assignment is invalid;**

**(4) If the original lender was not registered to do business in the State of Florida, then there would be an obvious misrepresentation of the facts within this Assignment; and**

**(5) The persons executing this document should have known the status of the corporation and whether or not AWL was a legitimate corporation or not BEFORE they affixed their "signatures" to the document;**

Thus, with the invalid Mortgage with Nationstar and the invalid Note with Fannie Mae, the entire Complaint would constitute a sham pleading as it appears to rely on the Second Assignment of Mortgage (despite the entire chain of Assignments' questionable nature in the first place) to create the sham pleading. It should also be noted that an indorsement-in-blank appears on the Complaint's proffered Note from "Countrywide Home Loans, Inc., a New York Corporation Doing Business as America's Wholesale Lender. This scenario pairs with the *Bank of America, N.A. v. Linda Nash* case. In this case however, Judge Pleus ruled for the bank; the property was sold; and a Certificate of Title issued, filed for record on 04-02-2014 as **CFN#2014046082**.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Based on the relevant facts, the Examiner herein believes that there is probable cause:

(1) Against Bank of America, N.A. and its employees for manufacturing and causing to be recorded CFN#2012046502, with the intent to misrepresent the true nature of the transaction, thus committing perjury under the Florida RICO statutes;

(2) Against Bank of America, N.A. and its employees for manufacturing and causing to be recorded CFN#2012062008; knowingly containing false and misrepresentative statements, with the intent to defraud the homeowners of their property under Florida Criminal Code § 817.535; and

(3) Against Bank of America, N.A. employees and non-lawyer supervisory personnel for unauthorized practice of law under the Florida statutes.

It further appears that a Suggestion of Bankruptcy was filed, post-issuance of the Certificate of Title. It is unknown whether that will affect this entire proceeding.

Case No. 25: *JPMorgan Chase Bank, N.A. v. David Bassett et al*  (2010 CA 2484 MF)

CASE NOTES: The pendency of this case lasted just over four (4) months and appears to end with a recorded suspect Satisfaction of Mortgage, wherein the statutory prosecution period may expire by July 14, 2015 if not addressed sooner.  Discussion of this case follows:

This case was filed by then-Shapiro & Fishman, LLP attorney James H. Johnson IV (FBN 26271) for Vivian J. Elliott (FBN 64804) on April 6, 2010.  Johnson also filed the Notice of Lis Pendens for Elliott as well (for record) on 04-08-2010 as **CFN#2010049770**.

The case was dismissed August 17, 2010, following the recordation by presentment of the Notice of Dismissal and Discharge of Lis Pendens on 06-23-2010 as **CFN#2010089589**.  The important matters within this case file involve the claims made by the Plaintiff within the initial Complaint.

Following service of process, the case was terminated, ending in the filing of a Satisfaction of Mortgage (also suspect, which is what appears to start the "statutory clock"), which appears to mean that someone was paid in full, to wit:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2010100545, recorded by presentment on 07-14-2010**
**Document Prepared By: J. Lesinski (alleged employee of Nationwide Title Clearing; "NTC" in Palm Harbor, Florida; a known third-party document manufacturer)**
**When recorded, Return To: Nationwide Title Clearing, Inc., 2100 Alt 19 North, Palm Harbor, FL 34683 (not JPMorgan Chase in Monroe, LA).**
**Signer: Bryan Bly (verified NTC employee and known robosigner; see video deposition on the USB drive Exhibit package); claiming to sign the document as Vice President of JPMorgan Chase Bank, N.A., successor by merger to Washington Mutual Bank FKA Washington Mutual Bank, FA in an attempt to claim that the Mortgage held by Washington Mutual Bank, executed by David and Beverly Bassett, was then Satisfied.  At the time of the signing, Bly was also a Florida Notary.**
**Notary: Crystal Moore (Florida Notary Commission DD 927242; expired 09-23-2013)**
**Witnesses: Vilma Castro; no second witness signing, which may be required for conveyances.**
**Issues: Bly claims that his address is 780 Kansas Lane, Suite A, Monroe, LA 71203, when in fact, his office is in Palm Harbor, Florida.  Scribbled signatures of all three signers is a common marker of robosigning (Bly estimates 200-300 an hour).  In his deposition, Bly claims he is a Vice President of Chase ("Chase") for signing purposes only, but that is NOT what is stated and represented in the Assignment.  Further, it is highly likely that an attorney did NOT supervise this activity, which makes it suspect for unauthorized practice of law.**

**There are multiple issues with the Complaint, which become the subject of this review, to wit:**

**(1) The Complaint was verified through an Affirmation submitted by Margaret Dalton (a known Chase robosigner) in Duval County, Florida;**

**(2) The Notarial Jurat and Execution by Rose Hunter (Florida Notary Commission No. DD856913; expired on 02-01-2013) appears facially deficient because the Florida statutes (Chapter 117) clearly state that the execution must be proceeded by "State of Florida, County of _____", which is absent to form;**

**(3) It is unconfirmed that Margaret Dalton is actually a Vice President of Chase;**

**(4) Margaret Dalton highly likely signs hundreds of forms a day without having personal knowledge of the facts contained therein;**

**(5) There is nothing specific about the Affirmation that denotes Dalton is attesting to the validity of the case at bar.  This document (in its present form) could be attached to every filed Complaint issued on behalf of Chase;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(6) There is nothing specific related to Dalton's personal knowledge, nor is anything mentioned in her Affirmation (noted as not being under penalty of perjury) relating to Count Two of the Complaint, which relies on a totally different Affirmation, which is attached to the Complaint as an "Affidavit of Lost Note" by Christie H. Hill, who also claims to be a Vice President of "Washington Mutual Bank, FA" and NOT Chase (dated 03-05-08);**

**(7) On September 25, 2008, following a 9-day bank run by its customers, the FDIC placed Washington Mutual Bank ("WaMu") into receivership and sold certain of its assets and proceeds to JPMorgan Chase Bank, N.A. ("Chase"); thus, the Note discussed here was lost BEFORE WaMu's "certain assets" were sold to Chase;**

**(8) On September 26, Washington Mutual, Inc. filed for Chapter 11 voluntary bankruptcy in Delaware;**

**(9) There are issues with this Affidavit of Lost Note, to wit:**

> **(a.) Hill also signed an Indemnity Agreement.  How can a bankrupt entity indemnify and pay claims to a damaged party when it is no longer in business?**

> **(b.) The supplied "form" appears to be a "fill-in-the-blank" template;**

> **(c.) Hill does NOT state HOW she believes the subject Note was lost, or in the alternative, whether the Note was scanned into an electronic image and destroyed;**

> **(d.) Hill further fails to state the recorded Instrument Number representing the security interest that WaMu had in the Note; and**

> **(e.) Hill does NOT state what caused her to conduct a search of her records for this Note and what specific departments were required and WHO was responsible for conducting an audit (because obviously Hill was not the person responsible for conducting the audit), thus, relying on hearsay information used to formulate the statements contained in the Affidavit;**

**(10) In light of the foregoing Affidavit, it appears that the Plaintiff attached a copy of the Adjustable Rate Note, executed in favor of Washington Mutual Bank, FA on December 8, 2007, which contains an indorsement-in-blank stamp containing the signature of Cynthia Riley (Vice President of Washington Mutual Bank, FA). There are issues with this indorsement-in-blank stamp, to wit:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(a.) On January 15, 2013, Cynthia Riley was deposed in the case of JPMorgan Chase Bank, N.A. v. Eduardo Orozco (Case No. 09-29997 CA (11) in the 11th Judicial Circuit Court in an for Miami-Dade County, Florida;

(b.) On Pages 64 & 65 of the Deposition, Riley admits that she was laid off by Washington Mutual Bank in November of 2006 and was no longer a Vice President of either Washington Mutual Bank or Washington Mutual Bank, F.A.  This would be construed to mean that someone else continued to use the stamp of Riley knowing that Riley was no longer an officer at WaMu, which appears to be fundamentally fraudulent;

(c.) On Page 49 of the Deposition, Riley stated that "multiple stamps, nine to ten stamps" (bearing her signature) were affixed to note by other WaMu employees. Riley also claimed (on Pages 57 & 58) that she never used the stamp herself; and

(d.) Riley also stated that she was never an employee of Chase from the time she was laid off until the time her Deposition was taken.

Thus, Shapiro & Fishman and the Chase employees appear to have misrepresented the facts of what was presented to the Court regarding the "copy" of the alleged Note;

(11) Also attached to the Complaint was an Affidavit that was recorded in King County, Washington which named Chase (the Plaintiff) as the "Grantee" of the in formation allegedly promulgated within the Affidavit (dated 10-02-2008);

(12) According to the notations in the Complaint, an "*" (asterisk) was placed on either side of the Robert C. Schoppe Affidavit at Paragraph #5, which stated:

"As a result, on September 25, 2008, JPMorgan Chase became the owner of the loans and loan commitments of Washington Mutual by operation of law."

Unfortunately, Schoppe failed to denote WHICH WaMu he was referring to;

(13) Further, the Affidavit refers to a Purchase & Assumption Agreement between the FDIC and Chase, wherein Chase acquired certain of the assets, including all loans and all loan commitments.  Unfortunately, there was no "Schedule A" of all of the "loans and all loan commitments" to back up the claims of Schoppe;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(14) Further, there is nothing to indicate (on the Exhibit attached to the Complaint) that this Affidavit was recorded in the real property records of Osceola County, Florida to give anyone in the County "constructive notice" of this fact;**

**(15) Further, in the case of Chase v. Sherone D. Waisome et al (5th Judicial Circuit, Lake County, Florida, Case No. 2009 CA 05717), there were significant rebuttals of Schoppe's Affidavit by Lawrence Nardi in a two-volume Deposition, taken by Defendant's counsel on May 9, 2012, where on Page257, Nardi (a former officer of WaMu and current officer of Chase) states:**

```
                                              Page 257

1    seen it, and I've never come across anyone that has.

2        Q    Where did you look for the Schedule 3.1(a)

3    when you were looking for it?

4        A    Anywhere that I could.  And, really, the quest

5    wasn't just in systems or repositories of MS documents.

6    It was research through contacting folks who may have

7    had contact with it in the past in working in different

8    cases.  And so the search was exhaustive, not just

9    limited to documentation.
```

**Thus, there is some reason to believe that Chase never actually acquired the loan in question, and would have a hard time proving it, unless it could validate the alleged Lost Note; and (following up on the next page), Nardi continues:**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

```
11        Q     Where would we find the assets purchased by

12   the assuming bank that are indicated on Page 9 of the

13   purchase and assumption agreement?

14              MS. CREWS:  Object to form.

15        Q     (By Ms. Mack)  I mean, where would we find the

16   Schedule 3.1(a) that's indicated in Section 3.1 of the

17   purchase and assumption agreement?

18        A     I think I answered the question with previous

19   testimony, but I will do it again.  I've never seen the

20   schedule reflected -- contemplated here.  I've been

21   searching for it for some time in relation to other

22   cases I've been preparing for.  And from what I can

23   tell, it never actually materialized.  Through the

24   transaction, it was either too lengthy a document to

25   actually put on paper, or what have you.  But I've never
```

**(16) In this same case, Cynthia Riley (as noted previously) was also deposed; however, her deposition was placed under seal by the Court, which may be problematic for the purposes of grand jury reference, but not of Riley directly, should she receive subpoena and be required to testify as to the matters related to her employment with WaMu.**

Thus, given the circumstances with the issues involving the lost note, the receivership, the issues involving the Purchase & Assumption Agreement (which is included in pdf format, taken from the FDIC's own website [for review] and placed within the USB Exhibit archive), Florida Criminal Code ¶ 817.535 may be applicable here based on WHO was entitled to be satisfied as to the Mortgagee within the meaning of the recorded Satisfaction of Mortgage. If it is discovered (prior to the statutory clock expiring) that the information contained in this document was false and misrepresentative, then § 817.535 would be applicable because it would have meant the Bassetts paid the wrong party and the wrong party then unjustly enriched itself at their expense.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

If the property was sold to retire the alleged indebtedness (unproven at this juncture), then the purchaser faces indemnification issues, not to mention issues with clouds on title due to the suspect nature of the recorded Satisfaction of Mortgage, which should be investigated fully for all aspects of criminal prosecution, including but not limited to violation of Florida RICO statutes for perjury.

**Case No. 26:** *Bank of America, N.A. v. Mirsad Fako et al* (2013 CA 3787 MF)

**The Verified Complaint was filed on October 31, 2013 by Albertelli Law attorney Christie Renardo (FBN 60421), apparently for attorney Sean Belmudez (FBN 68212), who also appeared to have recorded the Notice of Lis Pendens on 11-06-2013 as CFN#2013175260. Both the office and certified copies of this Complaint do NOT adequately reveal the person who verified the Complaint as they are reproduced as "light" and "faded" and cannot be ascertained, even with a lighted magnifier.  Their title appears to be an Assistant Vice President of Bank of America, N.A. and the date of  October 21, 2013 is believed to be what is barely legible.  There was no case number written on the document provided to the Examiner reviewing this case.**

**The Plaintiff's representative claims that Bank of America, N.A. is in physical possession of the Note endorsed in blank, which appears to contend they have "bearer paper", or as some Florida "Rocket Docket" judges have been quoted by counsel as saying, "They stole the Note!".  This expression clearly may be another way of saying, "as long as they claim to have the documents, we have to give them the house!"  But as the song goes and as the rest of this case is reviewed, "It Ain't Necessarily So" seems to bring conditions precedent that are suspect for document manufacturing and for reliance on a manufactured document for the purposes of depriving a homeowner of their property under Florida Criminal Code § 817.535, which appears to be the case here.**

**The case further appears to rely on the following, attached Assignment of Mortgage, to wit:**

**CFN#2009020846, recorded by presentment on 02-09-2009**
**Document Prepared by: Courtney Jared Bannan, Esq. of the Law Office of Marshall Watson, P.A.  (now Choice Legal, P.A.)**
**Signer: Patricia Arango (an attorney with the then-Marshall Watson law firm), claiming to be an Assistant Secretary of MERS as nominee for Countrywide Bank, N.A.**
**Notary: Angie Whitson (more than likely a notary/employee for the law firm; Florida Notary Commission No. DD 689461; expired)**
**Witnesses: Kay Tyler, Yvonne Jacobs (also likely law firm employees)**
**Executed on: December 8, 2008**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**CASE NOTES: It appears that this document was also relied upon in a previously-filed Complaint against the Defendants in Case No. 2008 CA 12305 MF, which appears to have been voluntarily dismissed on April 9, 2014.  During the pendency of that case (where BAC Home Loans Servicing, LP was substituted as a Party Plaintiff), the Defendants filed bankruptcy and the case was put on hold and subsequently dismissed.**

**This appears to be a parallel case that was still in play during the pendency of this case and it does NOT appear there was a Suggestion of Bankruptcy filed for record in THIS particular case as there was in the 2008 case, where the front end of that cases's documents were not available for viewing by the Examiner for some reason.**

**There are multiple issues with the foregoing Assignment of Mortgage, to wit:**

**(1) This Assignment appears to rely on MERS's alleged "agent/officer's" ability to assign BOTH the Note and Mortgage, which could not have occurred because MERS can only assign what it has an interest in, which is NOT the Note;**

**(2) The document was clearly manufactured by the law firm based on information its attorney obtained from a computer-generated, third-party, hearsay source and thus, its reliability for truth is suspect;**

**(3) There are numerous markers of document manufacturing contains throughout the document (i.e., fill-in-the-blank, lined templates) and scribbled signatures, which are markers of robosigning;**

**(4) The document's "Effective Date" is "BLANK"; thus, it is constructively unknown to the world when Countrywide Home Loans Servicing, LP actually (and allegedly) received the Note and Mortgage (if that was legally possible);**

**(5) The signing ability of the attorneys for the law firm is in doubt or at best, in question;**

**(6) The fact the law firm and its attorneys executed the Assignment of Mortgage for the purposes of litigation is also suspect for misrepresentation and fraud;**

**(7) The address of the Assignor (MERS as nominee) is noted as MERS's Vienna, Virginia address.  The address of the Assignee is noted as then-Countrywide Home Loans Servicing, LP's address; however, Countrywide Bank, N.A. is the actual Lender of both first and second mortgage in this scenario, whose Alexandria, Virginia address is NOT noted here (which should be);**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(8) It appears that this MERS-related Assignment is attempting to hide the chain of custody of the Note, which is not recorded and unknown, constructively, to the world, to be able to be verified, because the sales of this loan were tracked only within the MERS electronic database and not recorded here;**

**(9) Both first and second Mortgages and their respective Notes were individually packaged to go in separate directions. The second Assignment of Mortgage, discussed below, allegedly was destined to be assigned to a trust REMIC, while the first mortgage went elsewhere, unknown to anyone but the parties "behind the scenes", until these assignments were recorded; and**

**(10) This Assignment was relied upon to verify standing in this Complaint.**

**There are however, multiple issues with this Complaint, to wit:**

**(1) The reliance on this 2009 Assignment of Mortgage still does not prove the effective date of transfer to Countrywide Home Loans Servicing, LP; in fact, it renders the intention of the Albertelli Law firm and its attorney as markedly questionable as to the legality of the transfer of either the mortgage or the Note;**

**(2) The Complaint proffers a "Possession Certificate", which appears to be manufactured based on a template form that only requires the insertion of the name of the Borrower, something that foreclosure mill law firms enjoy commingling with the name of the Defendant;**

**(3) The signer of this document does NOT state that she was also at the same location as the Note and HOW she personally "saw" that "BANA" had it in their possession and could thus (without personal knowledge) identify it with specificity as the Original Note with a "wet ink" signature of the Borrowers, given the propensity (as discussed by the Florida Mortgage Bankers Association letter to Judge Bailey in September, 2009) to "eliminate" the documents in favor of use of an "electronic image" copy, which this alleged Note may have been reproduced from;**

**(4) Page 5 of 5 of the proffered Note contains two (2) side-by-side indorsement stamps:**

> **(a.) the first stamp alleged indorsement from Countrywide Bank to Countrywide Home Loans, Inc. (it is undated, just like the recorded Assignment of Mortgage, as to the effective date of transfer; and**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(b.) the second stamp is from Countrywide Home Loans, Inc., indorsed-in-blank to anyone claiming to hold the Note with the right to enforce it (still undated, with no proof of effective date of transfer);**

**(5) Both of these stamps are admittedly in the possession of ReconTrust Company, N.A. employees (as admitted by Michele Sjolander in her deposition, included as referenced). Sjolander states she has no idea who affixed the stamp and when it was affixed to this document (as it could have been affixed right before the litigation was filed with the Court) as a manufactured attempt at gaining standing;**

**(6) If the Assignment of Mortgage could not be drafted and properly processed and is suspect, it is deemed that all that follows it is suspect; and**

**(7) The endorsement stamps have been affixed ABOVE the Borrower's signature, when there was plenty of room below the Borrower's signature to affix them. This would lead the Examiner to believe that these stamps were affixed by someone with little knowledge of Uniform Commercial Code and even more damning, without knowledge of effective transfer of this Note (the alleged first mortgage Note).**

The purported suspect Assignment of Mortgage appears to be the last page attached to this Complaint; thus, this law firm's reliance on the truthfulness of it. It is unknown whether this law firm was involved in the last attempt to foreclose on the property because the subject litigation documents were not viewable to the Examiner.

**EXAMINER'S NOTES: It needs to be noted here that the purpose of using MERS is to allow for electronic transfers of the Note between parties in the securitization process. When the MERS business model is used, the intended purpose is securitization to a REMIC trust registered with the SEC; to a REMIC trust not required to be registered with the SEC, such as a 144 or 144-A private equity trust (limited in size and scope to the number of investors with regulations variant from the mainstream SEC-registered trust REMICs but all with the same tax-exempt consequences); or a GSE (Government Sponsored Entity) trust, owned by Fannie Mae, Freddie Mac, Ginnie Mae or other source as found on IRS Publication 938 (listings of which are included in the USB drive of the Exhibit archive). Because of the toxic nature of Countrywide-originated loans, the GSE's were negatively affected and had to resort to litigation to force loan put-backs. Thus, the first mortgage loan, if not placed within a REMIC trust within a certain period of time, was sold to a GSE, not present in this equation. The Examiner believes that Bank of America, N.A. was NOT the owner or holder with the rights to enforce the Note, but rather acting in the unproven interests of Fannie Mae, as evidenced at the end of this review. The second assignment was recorded PRIOR TO commencement of this litigation, which also makes it suspect for probable cause of violation of Florida Criminal Code § 817.535:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

CFN#2013025515, recorded by presentment on 02-15-2013
Document Prepared by: Diana DeAvila (alleged employee of Bank of America, N.A.)
Signers: Srbui Muradyan and Luis Roldan (both alleged employees of Bank of America, N.A.), who claim to be Assistant Secretaries of MERS, claims to be assigning ONLY the Mortgage to the REMIC trust, when the Note is required to be assigned into the REMIC pool also.
Notary: Yuliana Salcido (California Notary Commission # 1930596; still active with a $15,000 notary bond)
Witnesses: Jeanine Abramoff, Mercedes Judilla (both known Bank of America robosigners)
There are multiple suspect issues with this Assignment of Mortgage, to wit:

(1) The Assignment of Mortgage using MERS, does not meet the requirements of the Pooling and Servicing Agreement ("PSA") for the trust REMIC as to means of assignment into the trust;

(2) The Closing Date of this trust REMIC was September 28, 2006; thus, this Assignment (executed on December 18, 2012 and recorded two months later) violates the PSA regulations, which contravene New York Estates, Powers & Trust at § 7-2.4 and is thus void;

(3) There are multiple markers of document manufacturing, including but not limited to the use of: (a.) rubber stamping of names, dates and titles; (b.) CAPITAL LETTER, BOLD-FACED TYPE templating; and (c.) drafted by one party in one location, signed by other parties in other locations;

(4) The use of scribbled signatures, which is a marker of robosigning:
(a.) signed under penalty of perjury under California law; (b.) Muradyan's signatures are markedly different from one assignment to another, which suggests that someone else may have affixed his signature to this document (surrogate signing); and (c.) it is highly likely that other signer's signatures may have also been affixed, since "scribbling" appears to be all that is required here;

(5) This Assignment of Mortgage misrepresents the address of the Assignor as using an address actually registered to Metro Detective Agency in Danville, Illinois;

(6) The Assignee trust REMIC appears to utilize the address of BAC Home Loans Servicing, LP in Simi Valley, California, when the purported address used here to misrepresent the real location of the Trustee is not shown on Bank of New York Mellon's own website, but multiple locations in California NOT related to BAC Home Loans Servicing, LP;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(7) The second mortgage document refers to the loan as a SECOND MORTGAGE loan and does NOT refer to it as a Home Equity Line of Credit, which is what the PSA of the trust REMIC being used to convey the Mortgage (but NOT the Note) into claims to be set up for the purpose of;

(8) On January 17, 2007, Darren Bigby, who claims to be Vice President of CWHEQ, Inc. (the REMICs sponsor-seller), filed an SEC Form 15d-6, which stated that the number of certificateholders at the time of filing was: 2;

(9) Thus, on THAT DATE in 2007, the pool (for all intents and purposes) had been wound down at the time that this alleged "defaulted" loan was conveyed into this REMIC trust (potential issues of income tax evasion, deliberate write down as a loss against the pool, deviation of Generally Accepted Accounting Principles, "GAAP" (under FASB 133 and FASB 140; 17 CFR 210, 228, 229 et seq, etc.);

(10) This Assignment of Mortgage appears to be deliberately executed for the purposes of "dumping" the second mortgage loan off so the trust REMIC could be listed as a Defendant for the purposes of GAAP deviation while the first mortgage loan was "designed" by the law firm for the purposes of effectuating the foreclosure; and

(11) It is also possible that a credit default swap paid off this Note in full, so it was never in default in the first place; hence, the first mortgage loan may have also been positioned accordingly (being subprime and predatory) to suffer the same effects and derive the same benefits.

Despite all of the foregoing issues, Judge Miller issued a Final Judgment of Foreclosure on June 9, 2014, recorded as CFN#2014082520 on 06-11-2014.

What is interesting (and also further suspect) here is just before the Certificate of Title was issued (as CFN#201421113 on 08-19-2014), Albertelli Law attorney Vernon A. Woodson (FBN 93656) filed an Assignment of Bid (on 08-04-2014 as CFN#2014111426) in favor of Federal National Mortgage Association ("Fannie Mae"), which presents suspect issues, to wit:

(1) That Fannie Mae owned the loan the entire time and was now being given the "spoils" to cash in on (based on third-party benefits potentially being paid to the REMIC investors on an alleged default);

(2) That Fannie Mae was not present during the foreclosure proceeding, nor was it listed as a Defendant in the proceeding;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) Paragraph #8 of the Complaint appears to have falsely declared that, "All conditions precedent to the acceleration of the Note and foreclosure of the Mortgage have been performed or have occurred", while relying on an Assignment of Mortgage (and Note) that are suspect for the foregoing issues discussed, to conceal the real party in interest; and**

**(4) Nowhere in the Albertelli Law Complaint was Fannie Mae mentioned, yet at the end of the sale, why would Albertelli Law's attorney assign the bid to a party that wasn't entitled to the proceeds in the first place?**

**Thus, the Examiner suggests that probable cause exists under the following suspect issues:**

**(1) Against the attorneys and employees of the Marshall Watson law firm, for directing the manufacture of an Assignment of Mortgage that contained incomplete, false and misrepresentative information regarding the actual ability to assign both the Note and Mortgage (with no effective date) with the intent to deprive the homeowners of their property, in violation of Florida Criminal Code § 817.535;**

**(2) Against the attorneys and employees of the Albertelli Law firm, for their reliance on said manufactured Assignment of Mortgage, knowing its "precedent condition", or having the opportunity to correct said issues with an Assignment; to direct the proper party to file a Corrective Assignment to correct the errors committed on the foregoing first mortgage Assignment, but failing to do so; thus depriving the homeowners of their property through a sham proceeding, knowing that Fannie Mae was the intended beneficiary, yet concealing it from the Court and the Defendant homeowners, in violation of Florida Criminal Code § 817.535;**

**(3) Against both law firms and Bank of America, N.A. and its employees for acting in concert to direct, participate and knowingly record a document containing incomplete, false and misrepresentative information, knowing the intended consequences thereof, in violation of Florida RICO statutes for committing (in concert) perjury in the direction, manufacture and recordation thereof;**

**(4) Against MERS and MERCORP, Inc. nka MERCORP Holdings, Inc., for providing the mechanism to hide, conceal, misrepresent and thus thwart detection of the real parties in interest, through abusive document manufacturing practices, in concert with the misrepresentation and fraudulent concealment of the MERS® System trademark; and**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(5) The fraudulent concealment of the true owner of the MERS "MIN" (MERSCORP Holdings, Inc.), which if known, might have caused the Borrower to decide NOT to engage in the mortgage loan transaction, which both directly and indirectly aided in the production and recording of the said Assignments for the purposes of committing potential income tax evasion under 18 USC 371; 18 USC 1341 (mail fraud) through the recording by presentment of two (2) Assignments used in this process, as a co-conspirator under Florida Criminal Code § 817.535 and also under Florida RICO statutes.**

**The allegations in Paragraph #4 could be applied to any MERS-originated account listed within this forensic examination report.  This instance appears to make these allegations more predominant as a factor in the concealment of alleged real parties in interest.**

**EXAMINER'S NOTES:  It is also suspect that the Trustee, Bank of New York Mellon, as well as other Trustee's here that may claim "standing" to foreclose, yet claim ignorance of default on the part of Borrowers when such occurs (as noted in the U.S. Bank-issued, "Role of the Corporate Trustee", made available as report Exhibit 29 and incorporated herein by reference), do not have an economic or beneficial interest in the loans and has no authority to manage or otherwise take action on the loans which is reserved for the servicer.  Thus, if the Trustee has no beneficial interest, then what are judges in Florida doing handing over the properties of the homeowners to parties have do not have beneficial interest, especially in light of third-party payments which the sponsor-sellers and their hedge fund managers enriched themselves in (in the form of big fancy bonuses in 2008 and 2009) while record numbers of foreclosures took place all over the United States.  In short, none of the Borrowers connected to a trust REMIC foreclosure may have actually been in default at all.**

Further, the previously-referenced "Role of the Corporate Trustee" brochure also states unequivocally that, "Parties involved in a MBS transaction include the Borrower," yet in Courts across Florida, as well as in Osceola County, judges are told that Borrowers have no beneficial interest in the securitization transaction, when this brochure indicates otherwise. Without the Borrower's filling out of the patented Fannie Mae "Form 1003" Loan Application, the Borrower's personal identifying information would not have been able to have been shared all over Wall Street (without the Borrower's permission), so this Borrower's personal identifying information could be compromised by unscrupulous sponsor-sellers who thus far have been able to avoid prosecution simply by "buying their way out of it".

The current administration has apparently failed to execute a full criminal investigation of the REMICs to determine the violations of the Internal Revenue Code through the alleged, illicit write downs of these allegedly-defaulted mortgage loans, when in fact, third-party benefits should have been applied to those loan balances, but instead may have been concealed from the declaration of income or in the alternative, deviation of GAAP for the purposes of violation of accounting practices, intended to defraud the United States Government under 18 USC 371.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is highly likely that the reasoning behind so many foreclosure attempts is that the servicers of these trusts, including Bank of America as shown here, do not want to maximize investor benefits when they can maximize more benefits for themselves through the taking and sale of the homes they're foreclosing on, which is why they routinely deny loan modifications.

As was previously discussed in Section One of this Report, the Office of the Comptroller of the Currency even recognized back in November of 1997 that the Borrower was a necessary party to securitization because without securitization, he might not have had the chance to obtain a loan factoring in "subprime risk". Unfortunately however, the credit scores and information provided by certain banking entities as "factors" were many times inflated or distorted, as alleged by multiple investor groups who are filing lawsuits against the REMIC trusts and their sponsor-sellers, some alleging 100% default rates in the pools.

**Case No. 27:** *Deutsche Bank National Trust Company, as Trustee for FFMLT 2006-FF4, Mortgage Pass-Through Certificates, Series 2006-FF4 v. Sandra Garro et al* **(2008 11031 MF)**

This Complaint appears to have been filed by Florida Default Law Group ("FDLG") attorney Courtney E. Nicholson (FBN 13190). FDLG is now known as Ronald R. Wolfe & Associates ("Wolfe") and the terms may be used interchangeably here. Nicholson also appears to have caused the Notice of Lis Pendens to be recorded as well as CFN#2008192915 on 12-02-2008. The pendency of this case culminated with a Certificate of Title being issued to Fairhomes Sunshine Housing, LLP of Unionville, Ontario, Canada, recorded on 06-04-2013 as CFN#2013087961, which, when taken into account the two suspect Assignments of Mortgage issued within the examination's target period, make this case suspect for multiple criminal issues.

In brief, the Mortgage Foreclosure Complaint appeared "authenticated" by the attorney filing it, which would have been based on third-party, hearsay communication from her client. The attorney had no direct knowledge of the facts because she is NOT the Lender. Based on the review of the two (2) Assignments of Mortgage (below), the Examiner believes there is probable cause for violation of Florida Criminal Code § 817.535 and potential Florida RICO and unauthorized practice of law violations.

Also suspect in this case is the filing of two (2) intentional "Patriot-type" documents, filed with the apparent intent to: (1) knowingly create a false lien in an attempt to "muddy up" any potential foreclosure case (CFN#2010012946); and (2) knowingly slander title to the subject property involved in this proceeding, which involves the recording of an instrument in two Florida counties (CFN#2010030304, Osceola County; and CFN#2006006372, Palm Beach County).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Both of these records will be examined as part of this review.  The Examiner herein has seen one other instance in New York where these same individuals attempted to further a similar ploy, without result.

It would then appear that the Defendant in this action was duped into believing these recorded documents would save her from the prosecution of a foreclosure action; however, this action was file November 19, 2008 and these two instruments were filed until January and March of 2010, respectively, which could be construed to mean that the recorded lien and release represented: (1) fraud upon the land records through the filing of a false lien and thus a false release; and (2) the unauthorized practice of law.

It further appears, based on a review of the real property records of Osceola County, Florida, that the Defendant utilized the public record to carry out what appears to be a debt validation process (which would customarily be pursued without a public filing as a Qualified Written Request, "QWR", under RESPA § 6 (12 USC § 2605(e) et seq).

Not only was the document filed for record (CFN#2009205136), it was then sent to four (4) different entities by certified mail, return receipt requested, to: (1) the alleged Lender; (2) to the alleged servicer; (3) to "MERS"; and to (4) FDLG; thus, the law firm and its attorney were made aware of this issue at its apparent inception.

It is apparent that FDLG did not respond to this matter on behalf of its alleged client, because the Defendant then caused to be recorded a Notice of Default on the four parties for failing to respond to her publicly-recorded Debt Validation Letter (CFN#2010018904).   These four (4) recorded instruments were effectuated during the pendency of the case at bar.

Again, the Examiner views this entire process as extrajurisdictional in nature, a misuse and abuse of the "system's own established methods" to attempt to validate a debt, when the challenge should legally be made within the scope of a QWR and proper litigation within the system that was set up to function as a Circuit Court by the will of the people.

Part of the reason that homeowners across the country are duped by these extrajurisdictional processes, such as the "non-statutory abatement" process of the late 1980's and 1990's and this, "administrative process" is because they've lost faith in the justice system and feel that the Circuit Judges have failed them.  They are frustrated and thus easily duped into believing that these alternative processes work, but instead, end up getting in trouble both civilly and criminally for utilization of these processes.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### THE COMPLAINT

As to the Complaint itself, there is a COUNT II added in an attempt to re-establish the Note. Part of the problem with this entire scenario is that only the MERS-originated Mortgage was attached to the Complaint and the attorney claiming to have personal knowledge of the loss of the Note makes claims within the Complaint that cannot possibly be backed up by what actual personal knowledge she claims to have.

The attorney only makes a statement that if a copy of the Note is obtainable, then the Plaintiff will file a copy with the Court.  At the time the Complaint was filed, the attorney did not specify what the "due and diligent search" consisted of, because she had no personal knowledge of the Plaintiff's action other than what she was told.

Further, the last sentence of the Complaint claimed that, "The Mortgage Note has not been seized or transferred by the Plaintiff"; however, there was nothing at the time of the filing of the Complaint to indicate that the Plaintiff had standing to foreclose either.

Any attempt at effectuating standing did not apparently occur until 2013, five years later, when the Assignments of Mortgage were filed (as discussed below). The following items were also placed within Bank of America's Ventura County, California suspect document listings:

CFN#2013000907, electronically recorded on 01-03-2013
Document Prepared by: Diana DeAvila (alleged Bank of America, N.A. employee)
Signers: Edward Gallegos and Luis Roldan (also alleged Bank of America, N.A. employees) claiming to be Assistant Secretaries of Mortgage Electronic Registration Systems, Inc. as nominee for "FIRST FRANKLIN A DIVISION OF NAT. CITY BANK OF IN", which does not specifically identify the Plaintiff (which should have been spelled out in full as there is no "IN" and the viewer of the document, not knowing the history of the loan, may not know that "NAT." stands for "National") in an attempt to transfer the Mortgage ONLY to the trust pool, whose Closing Date was March 30, 2006.
Notary: D. L. Turner (California Notary Commission # 1979229; expires 06-20-2016), certifying under penalty of perjury under California law that the signers' capacities are "authorized" when that is, at best, questionable until proven otherwise.
Witnesses: Richard Paz, Aida Duenas (also alleged Bank of America, N.A. employees)
Issues: All parties signing this Assignment are known robosigners. There are multiple issues of document manufacturing (use of rubber stamps for names, dates and titles; CAPITAL LETTERS that are BOLD-FACED TYPE that are document templates).

There are multiple issues with this recorded Assignment, to wit:

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) First Franklin's real address is NOT 1901 E. Voorhees Street, Suite C, Danville, IL 61834. This address belongs to Metro Detective Agency and is misrepresentative of the truth;**

**(2) The trust REMIC's address is not in Simi Valley, California;**

**(3) The purported Assignee Series 2006-FF13 does not appear to be the proper Assignee identified as the "Plaintiff" in this proceeding;**

**(4) The Closing Date of THIS purported REMIC trust is September 28, 2006; thus, any attempt on January 2, 2013 or thereafter would contravene the trust's PSA governing regulations and would be considered void under New York trust law at § 7-2.4; and**

**(5) It further appears that the "right hand didn't know what the left hand was doing" because of the fact that another Assignment of Mortgage had to be filed a month later (as discussed below).**

**There is no apparent "simple mistake" or "scrivener's error" when New York trust law is violated; thus, the false and misrepresentative statements contained within this Assignment of Mortgage constitutes probable cause for violation of Florida Criminal Code § 817.535 and 18 USC 1343, as this document was recorded five (5) years too late in an attempt to prove the standing of the Plaintiff to foreclose on this Property in lieu of a lost Note.**

**CFN#2013020780, recorded by presentment on 02-06-2013**
**Document Prepared by: Diana DeAvila (alleged Bank of America, N.A. employee)**
**Signers: Trisha Jackson and Janet Gordon (also alleged Bank of America, N.A. employees) claiming to be Assistant Secretaries of Mortgage Electronic Registration Systems, Inc. as nominee for "FIRST FRANKLIN A DIVISION OF NAT. CITY BANK OF IN", which does not specifically identify the Plaintiff (which should have been spelled out in full as there is no "IN" and the viewer of the document, not knowing the history of the loan, may not know that "NAT." stands for "National") in an attempt to transfer the Mortgage ONLY to the trust pool, whose Closing Date was March 30, 2006.**
**Notary: D. L. Turner (California Notary Commission # 1979229; expires 06-20-2016), certifying under penalty of perjury under California law that the signers' capacities are "authorized" when that is, at best, questionable until proven otherwise.**
**Witnesses: Talisha Wallace, Bud Kamyabi (also alleged Bank of America, N.A. employees)**
**Issues: All parties signing this Assignment are known robosigners. There are multiple issues of document manufacturing (use of rubber stamps for names, dates and titles; CAPITAL LETTERS that are BOLD-FACED TYPE that are document templates).**

**There are multiple issues with this recorded Assignment, to wit:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) First Franklin's real address is NOT 1901 E. Voorhees Street, Suite C, Danville, IL 61834.  This address belongs to Metro Detective Agency and is misrepresentative of the truth;

(2) The trust REMIC's address is not in Simi Valley, California;

(3) The purported Assignee Series 2006-FF4 was inserted in an apparent attempt by the Assignor to create "standing" for the Plaintiff;

(4) The Closing Date of THIS purported REMIC trust is March 30, 2006; thus, any attempt on February 6, 2013 or thereafter would contravene the trust's PSA governing regulations and would be considered void under New York trust law at § 7-2.4; and

(5) It further appears that the "right hand didn't know what the left hand was doing" because of the fact this second Assignment of Mortgage had to be filed in an apparent last-minute attempt to create standing.

There is no apparent "simple mistake" or "scrivener's error" when New York trust law is violated; thus, the false and misrepresentative statements contained within this Assignment of Mortgage constitutes probable cause for violation of Florida Criminal Code § 817.535 and 18 USC 1341, as this document was recorded five (5) years too late in an attempt to prove the standing of the Plaintiff to foreclose on this Property in lieu of a lost Note.

EXAMINER'S NOTE: To illustrate the complexities of the First Franklin corporate infrastructure, a sample copy of a "Form of Compliance Certificate" is attached to this file on behalf of a similar trust series (2005-FF4), which appears to outline the same parties in this proceeding.

Case No. 28: *Bank of America, N.A. v. Luz Maria Betancourt et al*  (2011 CA 4373 MF)

CFN#2011099733, recorded by presentment on 02-22-2011
This document was prepared by Tanya D. Simpson of Smith, Hiatt & Diaz, P.A. ("SH&D") and sent to BAC Home Loans Servicing, LP for execution in what appears to be a self-assignment of Mortgage.  The signer, Cecelia Rodriguez, is a known robosigner, whose scribbled signature is a marker of such. She claims to be an Assistant Secretary of MERS as nominee for defunct Aegis Wholesale Corporation.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Notary:** Darryl Brown, a known employee of Bank of America, N.A. (California Commission # 1812305; expired) notarized the document under penalty of perjury under California law.

**Issues:** BAC Home Loans Servicing had already been subsumed into Bank of America, N.A. prior to the drafting of this Assignment of Mortgage. Aegis went into bankruptcy in 2007. Most Aegis loans went into Merrill Lynch trust REMICs, which are not represented here. Bank of America, N.A. is likely the Servicer of the loan, with no proof of ownership with the right to enforce.

The Notice of Lis Pendens was filed by Joanna C. Evans (FBN43784) of SH&D on 12-15-2011 as CFN#2011172861. The Verification does not match the Plaintiff's case styling. Bank of America has provided no proof in any of the Court records showing how it acquired the Note. The suspect self-assignment leads the Examiner to believe that the undated endorsements placed on the Note offered as evidence were manufactured.

There are no recorded Assignments that support effective transfer of the Note into a trust (MERS = Securitization) REMIC and the manufactured Assignment of Mortgage, prepared by the initiating law firm, is evidence of probable cause for violation of Florida Criminal Code Section 817.535. Ablitt Scofield, P.C. was also involved in this case. The current law firm representing the Plaintiff is Frenkel, Lambert, Weiss. Weisman & Gordon, LLP ("Frenkel"), through a substitution of counsel. Florida RICO issues may also apply in this case.

**Case No. 29:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2006-OA10, Mortgage Pass-Through Certificates, Series 2006-OA10 v. Marlen Sanchez et al* **(2011 CA 3563)**

**CFN#2011138812, recorded by presentment on 10-05-2011**
This document was prepared by Tanya D. Simpson of Smith, Hiatt & Diaz, P.A. ("SH&D") and sent to Bank of America, N.A. in Ventura County, California for execution by known robosignor Mary Ann Hierman (also a document preparer for Bank of America), who claims to be an Assistant Secretary of MERS as nominee for what appears to be a non-existent "Centric Mortgage" (an unregistered business in the State of Florida), dated September 14, 2011. It was notarized by Vazrik Sarafians (California Notary Commission No. 1867732; expired), under penalty of perjury of California law. There are no witnesses attesting to this Assignment of Mortgage. The Notice of Lis Pendens was filed by Joanna C. Evans (FBN43784) of SH&D on 10-24-2011 as CFN#2011148220; four days AFTER it filed the Complaint with the Court.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**This makes this assignment particularly suspect for intent to defraud the homeowner, evidence of probable cause under Florida Criminal Code § 817.535, in addition to potential Florida RICO issues.**

The Assignment, which is attached to the Complaint (unrecorded) claims that Mary Ann Hierman has the authorized capacity to transfer the mortgage and note into a closed 2006 trust REMIC (whose Closing Date was June 30, 2006), when in fact, Hierman is a known Bank of America, N.A. employee. There is no address supplied on the Assignment for either party. Thus, the Examiner believes that this Assignment was drafted for the express purpose of giving the trust standing to foreclose. The response from the Defendant's attorney seems to address the lack of standing issues based on a lack of full verification within the Complaint. The Note contains plenty of room for endorsements underneath the Borrower's signature; however, an extra page appears to have been attached, containing three endorsement stamps, none of which are dated; thus, effective transfer to a trust is unproven and the attached, unmarked document (as to "Allonge to Note") does not appear to comport to U.C.C. 3-302(2) guidelines, which makes it suspect for manufacture by ReconTrust employees in California, who have access to the endorsement stamps.

Further, the Affidavit supporting the Plaintiff's Motion for Final Summary Judgment fails because the Affiant fails to state what specific personal knowledge he has as to whether the Borrower's are even in default, let alone whether the facts (which SH&D prepared) weren't simply transferred from a third-party hearsay computer platform.  Again, as to pattern of practice and behavior here, with discovery pending, the Plaintiff substituted counsel (Ablitt Scofield's Menina Cohen, FBN14236) to take over the case.  It now appears that Greg Dreilinger (FBN25615); Radoyka J. Minaya (FBN59346); and Lisa M. Rogers (FBN478369) have taken over the case from Ablitt Scofield (dated in a Notice of Appearance filed July 12, 2014) without Court approval. There is discovery still pending on a Motion to Compel by defense counsel.

**Case No. 30:** *Bank of America, N.A. v. Gary Witcher et al*  **(2012 CA 0157 MF)**

**CFN#2011169015, recorded by presentment on 12-08-2011**
**Document Prepared by: Tanya D. Simpson of Smith, Hiatt & Diaz, P.A. ("SH&D") and sent to Bank of American in Ventura County, California for execution in what appears to be a self-assignment of Mortgage.**
**Signer: Mary Ann Hierman (known Bank of America robosigner), who claims she is an Assistant Secretary of MERS as nominee for defunct American Home Mortgage Acceptance, Inc. (which filed for bankruptcy in August of 2007).**
**Notary: Vazrik Sarafians (California Notary Commission No. 1867732; expired), under penalty of perjury of California law. There were no attesting witnesses.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The Notice of Lis Pendens was filed by Lauren E. Barbati (FBN68180) of SH&D on 01-12-2012 as CFN#2012005218, four (4) days AFTER it recorded the Assignment, which makes it suspect for probable cause in violation of Florida Criminal Code Section 817.535.  Further, the Note proffered in the case contains no two-hole punch stamps at the top, which makes the undated endorsements suspect for untimely manufacture by ReconTrust Company, N.A. employees who have access to Countrywide stamps.

It appears that a Motion for Defendant's deposition of Kumar Franklin Caughey (Bank of America employee in Allegheny County, Pennsylvania) was granted by the Court.  Amidst an apparent barrage of discovery propounded by Defendant's counsel (as the pattern would indicate, "when the going gets tough, you switch counsel"), Ablitt Scofield's Menina E. Cohen was substituted as Plaintiff's counsel.

Again, the law firm of Frenkel Lambert Weiss Weisman & Gordon, LLP ("Frenkel") was later substituted for Ablitt Scofield/Connolly, as that law firm filed for bankruptcy protection, amidst a scandal relating to cases filed after WITNESS A involuntarily left Ablitt Scofield's employment. Frenkel then filed what it claimed to be an "original note and mortgage", which looked dissimilar to the originally filed documents in the case.

Despite the responses and pending issues in the case, Judge Miller granted a Final Summary Judgment of Foreclosure on May 6, 2014 and a sale date of December 1, 2014 was set, which is still pending as of the issuance of this report.

**Case No. 31:** *Deutsche Bank National Trust Company, as Trustee for Holders of the GSR Mortgage Loan Trust 2007-OA1 v. Enrique Menendez et al* **(2012 CA 5297 MF)**

**CFN#2012104691, recorded by presentment on 07-16-2012**
**This document was prepared by Tanya D. Simpson of Smith, Hiatt & Diaz, P.A. ("SH&D") and sent to Bank of America in Ventura County, California for execution in what appears to be a MERS-related Assignment of Mortgage into a closed Goldman Sachs 2006 REMIC trust, by Aida Duenas, who claims she is an Assistant Secretary of MERS as nominee for defunct Countrywide Bank, N.A. (which was subsumed by Bank of America in 2009).  The document was notarized by Eric T. Way (CA Notary Commission No. 1835518; expired).**
**The document was signed under penalty of perjury of California law. There are no witnesses attesting to this Assignment of Mortgage.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There was a second Corrective Assignment of Mortgage filed in this case, again prepared by Tanya D. Simpson of SH&D and recorded by presentment as **CFN#2012166865** on 11-13-2012, a week before Joanna C. Evans (FBN43784) of SH&D recorded a Notice of Lis Pendens in the case as CFN#2012172613 on 11-21-2012.  The close proximity of the Assignment filing makes it (as well as its erroneous predecessor assignment) suspect for violations of Florida Criminal Code Section 817.535 and the Florida RICO statutes.  The second Assignment corrects the series of the REMIC trust from 2006-OA1 to 2007-OA1.  It was allegedly assigned by Bank of America employee and known robosignor Mary Ann Hierman who claims she is an Assistant Secretary of MERS as nominee for Countrywide Bank, N.A.  It was acknowledged under penalty of perjury under California law by Danya Bucaro (California Notary Commission No. 1880386; expired).

In either case, the Closing Dates of both REMICs were violated with the recordation of both assignments of mortgage.  The Closing Date for the 2006-OA1 Trust was August 24, 2006 and the Closing Date for the 2007-OA1 Trust was May 8, 2007; thus, both assignments contravene New York trust law and are void.  Therefore, despite the fact the case was eventually dismissed, it is the Examiner's belief that these two assignments were manufactured by multiple actors specifically to be recorded with the intent to deprive the homeowners of their property.

**Case No. 32:** *U. S. Bank, N.A. as Trustee for the Benefit of Harborview 2005-16 Trust Fund v. Amanda Mejia et al*  **(2009 CA 9369 MF)**

**This ACTIVE case involves three (3) Assignments of Mortgage.  All three assignments involve the same group of signors in Ventura County, California, all presumed to be Bank of America employees, acting under the direction of the law firm handling the foreclosure case.   The case shows CLOSED as of June 25, 2014; however, there appears a Motion to Cancel the Sale of the property filed with the Court on October 29, 2014.**

Therefore, this case still appears to have activity associated with it and is thus listed in the ACTIVE section of this report.  This case also involves multiple actors and multiple substitutions of counsel, starting with the Smith, Hiatt & Diaz, P.A. law firm.   The Closing Date for the specific trust pool mentioned, which is incorrectly listed in the Plaintiff's caption of the case styling, is November 30, 2005; thus, all three assignments contravene New York trust law and are void.

Of concern here is that part of the initial Complaint consists of a count (I) to re-establish a lost note.  A copy of a Note appears to be attached, but there is no endorsement stamp on it.  The original Notice of Lis Pendens was recorded by presentment as CFN#2009139953 on 09-01-2009; however, it is unknown which SH&D attorney recorded it.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2012015261, recorded by presentment on 02-02-2012**
This document was prepared by Tanya D. Simpson of Smith, Hiatt & Diaz, P.A. ("SH&D") and sent to Bank of American in Ventura County, California for execution in what appears to be a MERS-related Assignment of Mortgage into a closed Harborview 2005-16 REMIC trust.
Signer: Cecilia Rodriguez (known Bank of America robosigner) who claims she is an Assistant Secretary of MERS as nominee for defunct Countrywide Home Loans, Inc. (which was subsumed by Bank of America in 2009).
Notary: Darryl Brown (CA Notary Commission No. 1812305; expired).
Witnesses: None

**CFN#2012089215, electronically recorded on 06-12-2012**
This document was prepared by someone at Bank of America (unknown) and mailed to CoreLogic after it was electronically recorded in the real property records of Osceola County, Florida. This time, the Assignment is a MERS-related "standalone" assignment, with MERS only as the Assignor into the currently-stated Plaintiff's name, along with the note, which MERS cannot assign because it does not have an interest in the Note.
Signers: Martha Munoz and Beverly Brooks (two known Bank of America robosignors), who claim to be Assistant Secretaries of MERS appear to have affixed their signatures therein.
Notary: Vazrik Sarafians (California Notary Commission No. 1867732; expired); under penalty of perjury under California law.
Witnesses: This time, two other known robosignors, Rene Rosales and Alice Rowe, scribbled their signatures on the document as witnesses.
Issues: By virtue of the fact this document was electronically recorded, there are also federal issues of violation of 18 USC 1343, in addition to Florida Criminal Code Section 817.535 (as all 3 are suspect for probable cause in this case). The address shown for the Assignor is Metro Detective Agency's address in Danville, Illinois. The address for the Assignee is BAC's address in Simi Valley, CA, both misrepresentative of the factual addresses for the parties.

**CFN#2013179726, recorded by presentment on 11-18-2013**
This document was prepared by Gevorg Grigoryants, presumed to be an employee of Bank of America and mailed to CoreLogic after it was recorded in the real property records of Osceola County, Florida. This time, the Assignment purports to transfer the Mortgage and note to Nationstar Mortgage, LLC in Lewisville, Texas from Bank of America, N.A., who appears to be in conflict from the previously-recorded assignment to the Harborview REMIC trust. It does not appear that Bank of America had the authority to transfer the Note and Mortgage to Nationstar since Bank of Ameirca employees already allegedly transferred it into a REMIC trust; thus, the entire chain of title on this property appears corrupted and is now unmarketable.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Matthew Gordon and Aaron Simpson, who claim to be Assistant Vice Presidents of Bank of America, N.A., scribbled their signatures on the document (markers of robosigning); witnessed by Nancy Scothorn and Sanita Wagoner, who also scribbled their signatures onto the document.   There are multiple rubber stamps of titles, names and dates which are markers of document manufacturing. The document was acknowledged by Sophie Neary Pok (California Notary Commission No. 1946008; active), under penalty of perjury under California law.**

It is clear to the Examiner that these Assignments of Mortgage (and Note) have corrupted the possibility of a clear outlay of any presentable chain of custody of the Note, which was claimed to have been lost; thus, the Examiner finds it hard to believe that the Court would grant a final summary of foreclosure on the property, which is now on appeal to the 5th DCA.  At first glance, it appears that David M. Massey (FBN59279); Gavin W. MacMillian (FBN37641); Gabrielle M. Strauss (FBN59563); Glen M. Lindsay (FBN59200); Sarah M. Stemer (FBN87595); Michael L. Eisenband (FBN94235); Amber L. Johnson (FBN96007); Diana B. Matson (FBN07250); and Adam Willis (FBN100441) are all involved with the case on behalf of SH&D.  The Affidavit of Indebtedness was submitted by BAC Home Loan Servicing, LP who is NOT the Plaintiff in interest here.  It too appears to have been manufactured as it contains numerous markers of document manufacturing.

On April 7, 2010, Ryan T. Cox of SH&D (FBN32686) submitted an Exhibit to the Complaint, namely, what he purports to claim is the original Note, which, prior to all of the recorded Assignments, appears for the first time in the case, nine months after it was filed.  It appears that: (a.) there are no two-punch holes at the top of the document, which would indicate the document did NOT come from archives; and (b.) there now magically appears a stamp which would indicate it came from a stamp maintained in the alleged custody of ReconTrust Company, N.A. in Ventura County, California, indorsed-in-blank, yet undated; thus, no effective date of transfer appears to have been demonstrated here, which makes this Note document suspect for manufacture under the direction of SD&H to commit fraud on the Court.   It appears that through procedural errors caused by the Defendants that Judge Pleus defaulted them on the case on January 9, 2013 and further denied the Defendant's Motion for Mediation.

Further, the Limited Power of Attorney ("LPOA") giving Nationstar Mortgage, LLC any rights to proceed was not effective until September 4, 2013, AFTER all 3 assignments of mortgage were recorded.   This LPOA appears to have been submitted (in unrecorded form) in the court files, by attorney Amber L. Johnson as part of her filing of the Amended Affidavit of Indebtedness.  Despite the fact a title policy from First American Title Insurance Company was attached, there was no indication that any third-party payors application of payments were noted on the worksheet; however, the first Assignment of Mortgage is noted as being contained within the filing by Johnson.  Summary Judgment for Foreclosure was granted by Judge Miller in chambers on June 25, 2014, despite all of the issues with the Assignments and purported manufacture of the Note.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The purported "Original Note" submitted by attorney Willis now contains two-hole punched prints on the copy submitted as an "Original", which the Examiner deems is fraud on the Court. Based on the number of attorneys involved in this case and the suspect assignments and note manufacture, there exists probable cause for multiple felonies for perjury under Florida RICO statutes and for at least three violations of Florida Criminal Code Section 817.535, despite the outcome of the Defendants' appeal to the 5th DCA.

**Case No. 33: *Bank of America, N.A. v. Damian M. Rivera et al* (2012 CA 1262 MF)**

**CFN#2011107936, recorded by presentment on 08-08-2011**
**This document was prepared by Tanya D. Simpson of Smith, Hiatt & Diaz, P.A. ("SH&D") and sent to Bank of America in Ventura County, California for execution in what appears to be a MERS-related Assignment of Mortgage to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Cecilia Rodriguez, who claims she is an Assistant Secretary of MERS as nominee for defunct Countrywide Home Loans, Inc. (which was subsumed by Bank of America in 2009).   The document was notarized by Darryl Brown (CA Notary Commission No. 1812305; expired). There were no witnesses attesting to Rodriguez's signature.  A second page notarial execution page was added by the Assignor for the notarial execution under penalty of perjury under California law.**

**CFN#2012104481, electronically recorded on 07-16-2012**
**This document was prepared by Bank of America's Diana DeAvila wherein MERS appears to get another "bite at the apple" showing it as a standalone Assignor (using Metro Detective Agency's address in Danville, Illinois to cover up for BAC Home Loans Servicing, LP), and naming Bank of America, N.A. as Assignee, in what appears to be a self-servicing assignment of mortgage (and the Note), which MERS cannot convey since it does not have an interest in the Note.  The document is signed by Srbui Muradyan and Mercedes Judilla, both known employees of Bank of America and known robosigners; and witnessed by Luis Roldan and Alice Rowe, two known robosignors, who all scribbled their names on the document; acknowledged by Tina Mazahri (California Notary Commission No. 1908072; active).**

**It appears that Maribel Diaz (FBN55716) filed the initial Complaint.  The verification however shows an altered party than what is named on the face of the Complaint.  The first Assignment of Mortgage (as noted above) is attached to the Complaint.  There appears to be a "Michelle Sjolander" indorsement in blank stamp affixed under the Borrower's signature on the Note.  Since MERS is involved in both assignments, it is implied that the note was securitized and that the real party in interest is not present in this action.**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**The manufactured assignments appear to set the stage (in addition to the potential Recon-Trust applied indorsement-in-blank stamp) for potential Florida RICO violations in addition to at least 2 violations of Florida Criminal Code § 817.535.**

**It appears that Glen M. Lindsay (FBN59200); Sarah M. Stemer (FBN87595); Benny A. Ortiz (FBN91912); Melody A. Martinez (FBN124151); and Ralph W. Confreda (FBN85794) participated with Diaz for the firm. It appears that when the firm got hit with discovery from Defendant's counsel there was a substitution of counsel (Ablitt Scofield's Menina Cohen; FBN14236). Cindy Olea-Diaz (FBN638927) then changed the name of the firm to Connolly. Monica L. Miller (FBN91555) then filed Plaintiff's reply to Defendant's answer.**

**Ryan Lumbreras (FBN72596) then filed a "Notice of Readiness for Trial" on behalf of Bank of America, N.A. Since the Defendants retained counsel and Connolly was filing bankruptcy, Frenkel Lambert Weiss Weisman & Gordon LLP ("Frenkel") was then substituted as counsel for the Plaintiff. Trial has been set for 01-08-2015.**

**Case No. 34:** *Bank of America, N.A. v. Betty M. Bruestlen et al* **(2012 CA 1251)**

**There do not appear to be any recorded assignments involved in this case; however, there are apparent errors in the way that indorsements-in-blank were affixed to documents. The case appears to have been filed by SH&D's Luciana A. Martinez (FBN86125). It appears to have been verified by someone claiming to be an officer of Bank of America, N.A. as "Successor by Merger to BAC Home Loans Servicing, LP" in 2012, when the latter entity was not even involved with Bank of America, N.A. in the making of the loan.**

Exhibit "A" of the Complaint is mismarked. It is NOT the Mortgage as described by counsel but rather the Promissory Note. The Note was executed in favor of the Plaintiff, Bank of America, N.A. which would be construed to mean that no endorsements were necessary. However, there appears an indorsement-in-blank containing the signature of "John E. Mack, Sr. Vice President" of Bank of America, N.A. as if the intent was to sell the Note to another party. It is possible that Fannie Mae or Freddie Mac may have an interest in this Note and thus, the real party in interest would not be present here. If an endorsement was necessary, it belonged under the signature of the Borrower, not on the front page of the Note.

The Mortgage follows as an unmarked Exhibit (or is included within Exhibit "A"). At the top of the Mortgage instrument is an indorsement-in-blank, which appears to be the same endorsement affixed to the front page of the Note.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

This would indicate to the Examiner in this instance that: (a.) John E. Mack does not have control of his indorsement stamp; (b.) the party that actually affixed the indorsement stamp to the front of both documents does not have a financial education and obviously does not understand where endorsement stamps belong on a financial instrument; and (c.) someone with less authority other than John E. Mack has been affixing his indorsement stamps with willful disregard to documents where they don't belong, indicating false intent, which may be construed at this juncture to be a document containing false and misrepresentative information.

This document was recorded as CFN#2001096607 on July 11, 2001.

The indorsement-in-blank stamp could be construed as a means of conveyance to another party, which may require the appearance of a recorded Assignment of Mortgage (and Note) if the intent were to sell the loan.  As it stands, the Courts in Florida will deem that any bearer of this Note has the right to enforce it, as part of the Court's agenda to "clear the docket", whether due process is fully meted out or not.

**More confusing is the Affidavit proffered by Bank of America's Pharaoh Luca Carol, to wit:**

**(1) This document appears to be a template used either by Bank of America, N.A. but more than likely prepared by employees of SH&D for bank employees to sign;**

**(2) The Affiant only claims to have knowledge of how the bank creates the records, but it does not appear that this person has actual, personal knowledge of the true and accurate record itself, but rather relies on information "transmitted by a person with personal knowledge", which is not THIS person, the Affiant;**

**(3) Paragraph 4 clearly states that the Plaintiff, "directly or through an agent" (without describing exactly which party) has possession of the promissory note;**

**(4) Paragraph 4 clearly states that "The promissory note has been duly indorsed" but does not explain why it needed to be indorsed in the first place if the Note had not intended to be sold to another party not present in these proceedings; and**

**(5) If the Affiant reviewed the business records that someone else inputted into the business record filed within this Affidavit, "described above", then there is no concrete proof that anyone is in default and it certainly does not show whether third-party payors paid down the balance at any given point in time during the history of the loan.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Further, only when confronted with failure to post a Non-Resident Cost Bond did the Plaintiff then post a cost bond with the Court.  It further appears that had the Defendant not retained counsel, she would have been defaulted on.  It is at this point that Ablitt Scofield was substituted as new counsel (as per the typical pattern shown previously). The examiner believes that this pattern is followed to: (1) Confuse or misdirect the Court as to pertinent facts advantageous to the Defendant; (2) Add additional costs against the Defendant in the event the Plaintiff prevails; and (3) To thwart any suspicion of potential fraud on the court by "changing the horses in the middle of the race".

Michel Morgan (FBN102764) by another unknown attorney (FBN98976) then filed an Emergency Notice of Cancellation of Hearing on Defendant's Motion to Compel discovery.  The case entered mediation.  In the meantime, as expected from other typical case fashion, the Frenkel law firm filed an appearance and motioned to be substituted in for Ablitt Scofield as that firm had filed bankruptcy.  Maria Margarita Camps (FBN930441) and Angela Vittiglio (FBN51657) handled the matter.  A status hearing in the matter was set for November 3, 2014 at which time a non-jury trial was set (status not filed in the Court record as of the preparation of this report).

**Case No. 35:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Certificateholders Alternative Loan Trust 2007-8CB Mortgage Pass-Through Certificates, Series 2007-8CB v. Gustavo Valencia et al  (2010 CA 4242 MF)*

**CFN#2010099907, recorded by presentment on 07-13-2010**
**Signer: Virginia R. Hiatt (a partner in the law firm) who claims she has been given permission to be a Vice President of MERS when there is no established authority that William Hultman was granted authority to appoint her as such.  Haiti is signing for MERS as nominee for Countrywide Home Loans, Inc., when this entity had already been subsumed by Bank of America, N.A.**
**Notary: Helen A. Wade (more than likely a notary for the law firm; Florida Notary Commission No. DD 735292; may have been renewed)**
**Witnesses: None (two may be required)**
**Document prepared by: Tanya D. Simpson, Esq.; attorney for the law firm (limited knowledge of the effective date of actual transfer, if in fact it actually occurred).**
**Issues:  Signed in Broward County, Florida when Countrywide Home Loans, Inc. was already subsumed by another entity.  Assigning from a defunct lender into a trust vehicle with a Closing Date of March 29, 2007; thus, this assignment contravenes New York trust law and is void.  Under that assumption, plus the misrepresentation of authority on the part of the signor, this document is suspect for probable cause of violation of Florida Criminal Code Section 817.535 and Florida RICO statutes involving perjury.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The first glaring error in this case is SH&D's attorney's (Alexander A. Palamara; FBN 37170) attempts at self-verification of the Affidavit, especially in light of the Plaintiff trust REMIC. Palamara certified under penalty of perjury that the facts alleged are true, however, his knowledge and belief was highly likely ascertained from third-party computer-generated information (hearsay) from outside parties. The unrecorded Assignment of Mortgage was included in the exhibits attached to the Complaint. The recorded version was filed within close proximity to the filing of the case, thus, the intent to use a recorded instrument containing false and misrepresentative information. The interest only fixed rate Note contains no endorsements. This exhibit purports to be an original note. Without an indorsement-in-blank, the trust could not accept it, even if it showed up during the pendency of this case.

The MERS-originated Mortgage, executed in favor of Countrywide Home Loans, Inc. is also attached. The trust REMIC is affiliated with Countrywide Financial. Countrywide Home Loans Servicing, LP is listed as the Master Servicer; thus, its parent should have known about the Closing Date, yet chose to ignore the governing regulations of the trust and the promulgated regulations imputed by the Internal Revenue Service under 17 CFR 210, 228 and 229 et seq. The Borrowers then filed an Answer to the Complaint, admitting they were in default without knowledge as to whether Countrywide Home Loans Servicing, LP was required to continue making their payments when they couldn't per the PSA.

SH&D then filed a Motion to Amend the Complaint, this time include a Verification (to clean up the previous mistake it apparently made), this time by someone who is an Assistant Vice President but NOT for the Plaintiff. This person swore under penalty of perjury that the facts were correct when this party is not employed by the trust REMIC. Exhibit A to the Amended Complaint now has the recorded Assignment, which now creates probable cause for the Florida Criminal Code Section 817.535 charges to be meted. And magically, the "new and improved" Note has a Michelle Sjolander indorsement-in-blank on it. It is highly likely (according to her deposition, made a part of this report) that she did not affix this stamp to the document herself, but it was attached as part of the scheme to make the Court believe that this endorsement was always a part of the Note, which the Examiner believes was not the case.

Again, the Defendant (pro se) attempts to advise the Court that his mortgage has been discharged, but fails to attached the Exhibit as noted therein. Further, he prays for jurisdiction that the Court would obviously lack and dismiss the case. The Court could only dismiss the case if it DID NOT have jurisdiction, which is why pro se litigants (in many instances) cause their own demise. It appears at this point that the Defendant retained counsel. Despite retention of counsel, who propounded discovery on the Plaintiff's law firm, the law firm chose to ignore the discovery and instead filed an Affidavit supporting its Motion for Summary Final Judgment. Again, the bank's representative is NOT the trust Plaintiff.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Being apparently bombarded with discovery, SH&D filed a motion to temporarily stay the proceedings, which was denied by Judge Pleus, which forced SH&D to get the Plaintiff to substitute counsel, which it did (Ablitt Scofield); and, not knowing of the bankruptcy, the Servicer for the Plaintiff (as it appears here) then substituted the Van Ness Law Firm, PLC in the stead of Ablitt Scofield.   Despite a non-jury trial "hearing" on October 8, 2014, the pendency of the case still shows active.   Despite the outcome, the intent on recording the self-serving assignment which contains suspect misrepresentations is still present here.

**Case No. 36:** *U. S. Bank, N.A. as Trustee for Credit Suisse First Boston Mortgage Securities Corp., Home Equity Asset Trust 2005-2, Home Equity Pass-Through Certificates, Series 2005-2 v. Carmen L. Rojas et al* **(2011 CA 3763)**

**CFN#2011103662, recorded by presentment on 07-29-2011**
**This Corporate Assignment of Mortgage appears to have been prepared by the Wells Fargo Default Assignment Team in Dakota County, Minnesota, who also appears to have executed it (without witness signatures) on July 26, 2011 by Dennis Lindgren (an apparent Wells Fargo employee), who purported to be an Assistant Secretary of MERS as nominee for Taylor, Bean & Whitaker Mortgage Corporation, whose CEO is in prison and the corporation in bankruptcy in the Middle District of Florida since 2009. Angela Marie Williams, a Minnesota Notary Public, acknowledged Lindgren's signature.**

**Wells Fargo Bank, N.A. may be the Master Servicer for the trust REMIC; however, there are pertinent issues involving a 2011 conveyance into a 2005 trust, to wit:**

**(1) Like a corporation, each trust has a specific name attached to it.  In this case, there are variations of Credit Suisse First Boston ("CSFB"), followed by an SEC listing of 36 different registrants, none of which is specifically named "Home Equity Asset Trust 2005-2";**

**(2) There is a "Home Equity Asset Trust 2005-1", but not a "2005-2" series. There also appears to be a commingling of trust REMIC names within the Assignee portion of the Assignment; however, the subject entity does NOT exist, which the Examiner herein construes to mean that the court filing contains a Fictitious Plaintiff;**

**(3) When the Wells Fargo Default Assignment Team prepares documents, it does NOT appear that the employees drafting and signing these agreements are supervised by an attorney; the end result is what you see listed in the foregoing scenario;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) It appears that there is a CSFB Home Equity Mortgage Trust 2005-2, but the Closing Date for that REMIC is March 30, 2005; thus, any attempt to transfer a 2011 assignment into this REMIC would be void under New York trust law and IRS REMIC regulations.**

**Thus, the Verified Complaint attested to under Penalty of Perjury by Elizabeth L. Case of Wells Fargo Bank, N.A. as Servicer for this REMIC, appears to have committed perjury. Because she acted in concert with the law firm of Douglas C. Zahm, P.A. to produce such a Complaint, Florida RICO statutes may be considered.  Because the law firm relied on the Assignment, which was produced in concert with Wells Fargo Bank, N.A. and U.S. Bank, there are issues with the Florida Criminal Code Section 817.535 because the Assignment contains material misrepresentations, despite anything else presented here, namely, the Assignee DOES NOT EXIST.**

**This forced the Defendant into bankruptcy, which has stalled the case.**

**Further, Judy Schnier, a North Carolina notary public (commission still active) appears to have committed false swearing when she acknowledged Welo G. Ahata-Nelson's Affidavit which was obviously NOT prepared by Ahata-Nelson (but probably by the Zahm law firm), signing as directed to further proliferate the case with apparent fraud on the Court.**

**Case No. 37: *Deutsche Bank National Trust Company, as Trustee for Long Beach Mortgage Loan Trust 2006-WL2 v. Nelson Bermudez et al*  (2012 CA 0542 MF)**

**CFN#2011149288, electronically recorded on 10-20-2011**
**This case begins with the filing of an Assignment of Mortgage date July 1, 2011 that appears to have been initiated by JPMorgan Chase Bank, N.A.'s employees in Monroe, Louisiana.  The Assignment purports to transfer the Mortgage (but does NOT specifically mention the Note) from JPMorgan Chase Bank, N.A., successor in interest by purchase from the FDIC as Receiver of Washington Mutual Bank successor in interest to Long Beach Mortgage Company.  The original mortgage was executed by the Defendants on 10-13-2005 in favor of Long Beach Mortgage Company.**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There is only one indorsement-in-blank noted on the proffered promissory note, filed by Kari Martin (FBN92862) from Shapiro, Fishman & Gache, LLP in Tampa, Florida.  The Examiner believes that the indorsement stamp is NOT properly affixed, as it shows up on what appears to be the upper, back side of the last page, but was reprinted out to appear as a separate page within the Complaint exhibit.  The problem here is that the indorsement could have been placed underneath the Borrower's signature as there was plenty of room to do so.

To place the stamp in another location without proper markings or labelings makes it suspect for document manufacturing and electronic manipulation; thus, apparent fraud on the Court.  In fact, in a Notice of Filing dated August 15, 2012, Kari Martin purports that the documents are Originals, yet the placement of the indorsement-in-blank stamp is different and is enlarged from its previous version.

The Complaint was allegedly verified by Jacqueline Hinton who at that time was an apparent employee of JPMorgan Chase Bank, N.A. but appears to be working for another loss mitigation firm in Tampa.  While there does appear to be a Limited Power of Attorney recorded that gives Chase attorney-in-fact status to deal with affairs concerning this trust, the Assignment of Mortgage was recorded on 10-25-2011 does not comport to the Pooling and Servicing Agreement for this trust REMIC, which has a Closing Date of January 30, 2006.  This would contravene New York trust law and IRS regulations governing REMICs and would be void.  Discovery and mediation are ongoing at this point in the pendency of the case.

**Case No. 38: *Citimortgage, Inc., Successor by Merger to ABN AMRO Mortgage Group, Inc. v. Noel Matos, Sr. et al* (2010 CA 5696 MF)**

Stern Law Firm attorney Staci Vecchione (FBN 70997) filed this suit on behalf of Suzette A. Maylor (FBN 63423) on September 10, 2010.  The Complaint appears to be verified by one Rita F. Mackenberg; however, she is referred to as an Authorized Signatory on behalf of Citimortgage, Inc., yet there is no explanation of where her authority came from and there is no official title asserted therein.  Further, default has not been proven.  The Mortgage and Note are attached.  The Mortgage was executed by the Defendant and his wife in favor of ABN AMRO Mortgage Group, Inc.  Despite the merger, ABN AMRO Mortgage Group, Inc. is a separate corporation from Citimortgage, Inc.; thus, one would be led to believe that an Assignment of Mortgage from Party A to Party B would be a necessity here, but such appears not to have occurred.  There are no indorsements-in-blank on the proffered Note.  It appears that the Defendant retained counsel in this case.  It further appears that the Cost Bond was paid in this matter.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Within the Court case file are numerous documents stamped with "FREDDIE MAC". It is possible that without the use of MERS, that this loan was sold to Federal National Mortgage Corporation (and placed into a Freddie Mac REMIC trust). This is not indicated anywhere in the initial paperwork. On February 25, 2011, it appears that Ashley L. Simon (FBN 064472) from the law firm of Kass, Shuler, Solomon, Spector, Foyle & Singer P.A. ("K.S.") filed a Notice of Appearance of Co-Counsel. This marks similar patterns of change in firms by the Plaintiff whenever the Defendant retains counsel and defense counsel files an Answer or requests discovery.

After failed mediation, K.S.'s Simon filed a Motion for Leave to File an Amended Complaint, which contains a Verification by Kimberly M. Knickmeyer, who purports to be a Document Control Officer for Citimortgage, Inc., Successor by Merger to ABN AMRO Mortgage Group, Inc. The same Mortgage and Note are attached, except this filing contains a Certificate of Merger of ABN AMRO Mortgage Group, Inc. into Citimortgage, Inc.

Both entities in this Merger are represented by William P. Beckmann, who claims to be President for BOTH entities. Beckmann is also the CEO of MERSCORP Holdings, Inc. This document appears to have been filed with the State of New York -  Department of State on August 31, 2007.

**Paragraph 1 of the Motion filed by Simon of K. S. declares the following:**

> **"In an abundance of caution, and due to published reports and/or allegations of improper conduct by Plaintiff's former attorneys of record, Plaintiff wishes to file an amended complaint."**

On February 28, 2013 another Substitution of Counsel request was filed by Tiffanie Waldman (FBN 86591) on behalf of Robertson, Anschutz & Schneid, P.L ("RA&S").   Attached to this document was a letter from Kass Shuler, P.A. dated December 28, 2012 stating that Citimortgage, Inc. "is the servicer, as shown on the attached list".  This would lead the Examiner to believe that  RA&S is NOT representing the real party in interest, but rather, only the servicer.  It is likely that the real party in interest is Freddie Mac.

Of particularity is the mention of Paragraph 9 of the Plaintiff's Reply to Defendant's Affirmative Defenses (which do not appear to be part of the Court case file) wherein the statement is made that, "This defense fails to state a legal defense to plaintiff's action and should be stricken.  The plaintiff is not Deutsche Bank National Trust Company."

After Judge Pleus granted a Motion to Strike the Defendant's Affirmative Defenses, defense counsel filed an Amended Answer to Mortgage Foreclosure Complaint and Affirmative Defense (on 05-05-2014), naming a violation of Paragraph 22 of the Mortgage as a sole Affirmative Defense to the Complaint, but this was non-specific.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**The Reply Brief from RA&S showed an attached letter dated July 8, 2010 from CitiMortgage, Inc. to the Defendant; however, it did NOT say the the Note is being accelerated, it clearly states:**

> **"Failure to cure the default by 08/08/10 may results in the acceleration of all sums due under the Security Instrument."**

**However, there is no evidence to indicate that a Notice of Acceleration letter was ever sent to the Defendants, based on what appears in the Court case file.**

Also ironic is that K. S. then filed a Plaintiff's Motion for Summary Judgment of Foreclosure, requesting Attorney's Fees AFTER it had been substituted out as Plaintiff's counsel (K.S.'s attorney Kari D. Marsland-Pettit (FBN 730858) handled the paperwork. This was followed by an Affidavit of Amounts Due and Owing that contain numerous suspect charges for alleged "drive-by" inspections that may in fact have NOT occurred.

The pendency of the case is still active, awaiting trial. Betsy Falgas (FBN 76882) is representing the Plaintiff. The Examiner believes that Freddie Mac is the real party in interest in this scenario and that at this juncture, there has been no evidence to indicate what authority CitiMortgage, Inc. has been given to pursue foreclosure in this instance.

**Case No. 39:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP v. Edwin Ortiz-Velasquez et al* **(2009 CA 13729 MF)**

**CFN#20111129853, recorded by presentment on 09-15-2011 (*see also* RA&S EX. 5)**
**This document appears to have been prepared by an unknown RA&S employee and sent to employees of Bank of America, N.A. in Ventura County, California for execution for the purposes of commencing a foreclosure action on real property belonging to Edwin Ortiz-Velasquez and Lisa A. Rivera Garcia.**
**Signor: Debbie Nieblas (alleged Bank of America employee), acting as Assistant Secretary of MERS in an apparent self-assignment to BAC Home Loans Servicing, LP using a Bank of America Jacksonville, Florida address; using MERS as a standalone ("nominee for no one"). This in of itself is misrepresentative and false. Upon examination of the original MERS-originated Mortgage, the originating lender was the now-defunct MFC Mortgage. This fact is NOT listed on this Assignment, which uses MERS's post office box in Flint, Michigan to hide behind the factual information which is not provided.**
**Notary: Wendy L. Lau (California Notary Commission No. 1794900; expired 05-02-2012)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Witnesses: Cecilia Rodriguez, Edward Gallegos (Both signing as "witnesses" using their "Assistant Secretary" of MERS title; BOTH known robosignors).**

**Issues:** Use of rubber stamps, the same felt-tip ink pen to affix signatures, scribbled signatures, all markers for document manufacturing and robosigning. The "Penalty of Perjury" notation has been filled in by the notary. The authorized capacity of the signor (due to MERS) is questionable. Final judgment was granted in the case (2009 CA 13279) and filed for record on January 8, 2014. The property was sold on 03-13-2014 until Lisa M. Rivera Garcia filed Chapter 11 Bankruptcy, then the sale was vacated and the funds returned.

It should be noted that the Stern Law Firm filed the initial Complaint, which was not Verified (attorney apparent self-verification), on December 29, 2009. This involves a MERS-originated Mortgage executed in the name of the now-defunct lender MFC Mortgage, Inc. of Florida. The Note contains a restrictive indorsement to Countrywide Bank, FSB from MFC Mortgage. Two law firms have been substituted since Robertson Anschutz & Schneid, P.L. got involved with the Complaint. Given the nature of the fabricated Assignment of Mortgage, the intent was clear that RA&S and its counterparts in Maricopa County, Arizona recorded a document suspect for violations under Florida Criminal Code Section 817.535 and Florida RICO statutes may also be viable. The new counsel of record may also be involved if they rely on said assignment and succeed in the taking of the property. The pendency of the case is reportedly closed. At the time of the vacated sale, Frenkel Lambert Weiss Weisman & Gordon LLP was handling the case ("Frenkel"). Tania M. Amar (FBN 84692) filed the Notice of Filing Order of Dismissal in the case on 05-07-2014.


**Case No. 40:** *Green Tree Servicing, LLC v. Maria Lyn Ramirez et al* **(2013 CA 0130 MF)**

**CFN#2012136956, electronically recorded on 09-20-2012**
**Prepared by: Erika Lance, NTC employee (see deposition in file exhibits)**
**Signor: Ashley Braband (alleged NTC employee) claiming to be an Assistant Secretary of MERS as nominee for America's Wholesale Lender, attempting to assign ONLY the MERS-originated Mortgage to Green Tree Servicing, LLC shortly before the filing of this case by Benjamin A. Ewing (FBN 62478) on behalf of the Consuegra Law Firm.**
**Notary: Tonya L. Tejera (Florida Notary Commission No. DD 864570; expired; unknown if renewed)**
**Witnesses: France Marie Moss, Wendy Ramirez**

The pendency of this case is still appears to be active. Despite the verified complaint submitted by the Consuegra Law Firm, Judge Robert Pleus recently issued a ruling on America's Wholesale Lender in Seminole County on October 16, 2014 (Case No. 59-2011-CA-4389; Div. 14-K) in *Bank of America, N.A. et al v. Linda A. Nash, et al* that parallels the exact indorsement-in-blank stamp shown on what is claimed as the Original Document proffered as an exhibit within this Complaint.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Ewing also filed the Notice of Lis Pendens on 01-17-2013 as CFN#2013010529.   Given the foregoing case citation, it may not matter whether Fannie Mae "claims" to own the Note or Green Tree holds the mortgage, if both are invalid.

**Case No. 41:** *Nationstar Mortgage LLC v. William John Disbrow et al*  **(2013 CA 0996 MF)**

**The pendency of this case is still listed as OPEN and active within the Osceola County Circuit Court records.   There appear to be three known, recorded Assignments of Mortgage that are suspect under Florida Criminal Code § 817.535 as will be discussed further below.**

This case appears to have been initiated by Robertson Anschutz & Schneid, P.L.'s ("RA&S") attorney Michelle Lewis (FBN 70922) on behalf of Jonathan Meisels (FBN 29235) for the firm.  It also appears that Lewis caused the Notice of Lis Pendens to be filed for record as CFN#2013059934 on 04-16-2013.  It further appears that an "Assistant Secretary" from Nationstar Mortgage LLC (which has "members", not "officers", technically, which lends suspicion to the attestation) just prior to the April 3, 2013 filing of the case.

The Examiner believes that Nationstar Mortgage LLC does not own this MERS-originated Mortgage Note and it is questionable whether Nationstar has the right to enforce it given the nature of the Assignments recorded in connection with the case. Further, the "MIN" was redacted on all copies (which in of itself is suspect due to the presentation of "MERS" within the Mortgage Definitions) available for review in this instance, as nominee for GreenPoint Mortgage Funding, Inc., which was subsumed by Capital One shortly after this Mortgage and Note were executed and shut down.

**There are two issues with the proffered Note attached as Exhibit "A" to this Complaint:**

> **(1) There is nearly two-thirds of a blank page below the Borrower's signature, sufficient enough to affix an indorsement-in-blank stamp on the page, to comport to U. C. C. 3-302(2); however,**

> **(2) A second page has been attached behind the signature page of the 7-page Note and there appears an indorsement-in-blank stamp allegedly signed by Thomas K. Mitchell who purports to be Vice President of GreenPoint Mortgage Funding, Inc.**

**No recorded Assignments of Mortgage were attached to the original Complaint.**

**The Examiner now discusses the three Assignments related to this case as follows:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2011180381, electronically recorded on 12-29-2011**
**Document Prepared By: Kathy Oriard (alleged employee of Bank of America)**
**Signers: Jane Martorana and Cynthia Santos (also alleged employees of Bank of America), claiming to be Assistant Secretaries of MERS as a standalone Assignor, using Metro Detective Agency's Danville, Illinois address to conceal GreenPoint Mortgage Funding, Inc.'s real address (the address shown for the Assignee) so the viewer can't spot duplication, assigning ONLY the Mortgage and NOT the Note to itself using MERS as a cover for potential securitization.**
**Notary: Lillian J. Ellison (California Notary Commission # 1925617; active until 03-13-2015); certified under penalty of perjury under California law.**
**Witnesses: Dominique Johnson, Miguel Romero (also alleged Bank of America employees)**
**Date of Execution: December 27, 2011; long after GreenPoint Mortgage Funding, Inc. was closed down (2007).**

**NOTE: This appears to be an Assignment of the Second Mortgage loan of $63,000.00. There are numerous markers of document manufacturing (i.e. rubber stamp use for affixing dates, names and titles) and robosigning (i.e., scribbled signatures of the signers) and potential surrogate signing (a file copy of signature comparisons is included in this report, within this particular file).   Misrepresentation of transferring parties. Highly likely there was no attorney supervision (unauthorized practice of law) and Florida RICO (for perjury) violations.**

**CFN#2012050016, electronically recorded on 04-05-2012**
**Document Prepared By: Carmelia Latham (alleged employee of Aurora Bank, FSB)**
**Signer: Stacy Sandoz (also alleged employee of Aurora Bank, FSB), claiming to be Vice President of MERS as nominee for GreenPoint Mortgage Funding, Inc. (using Metro Detective Agency's Danville, Illinois address, to misrepresent the location of the originating Assignor) using MERS as a "cover" for self-assignment.**
**Notary: Deb Seibert (Nebraska Notary Commission active until 03-23-2015)**
**Witnesses: None**
**Date of Execution: September 27, 2011; long after GreenPoint Mortgage Funding, Inc. was closed down (2007).**

**NOTE: This appears to be an Assignment of the First Mortgage loan. The use of the Wilmington, Delaware address of Aurora Bank, FSB appears to be an attempt to conceal the self-Assignment of only the Mortgage and NOT the Note. Misrepresentation of transferring parties. Highly likely there was no attorney supervision (unauthorized practice of law) and Florida RICO (for perjury) violations.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**CFN#2013065827, electronically recorded on 04-24-2013
Document Prepared By: Linda Parks (alleged employee and notary of Nationstar Mortgage LLC)
Signer: Traci Garton (also alleged employee of Nationstar Mortgage LLC), claiming to be Assistant Secretary of Aurora Bank FSB by Nationstar Mortgage, LLC, its Attorney-in-Fact, in an attempt to execute a self-Assignment to Nationstar Mortgage, LLC in Lewisville, Texas.
Notary: Irene Guerrero (Nebraska Notary Commission expired); known employee of Nationstar Mortgage, LLC in Scottsbluff, Nebraska.
Witnesses: None
Date of Execution: April 8, 2013; this appears to be an assignment of the First Mortgage loan. The use of "attorney-in-fact" status to self-assign ONLY the Mortgage is suspect in creating "standing" for Nationstar Mortgage, LLC to foreclose on the property.**

Misrepresentation of transferring parties. Highly likely there was no attorney supervision (unauthorized practice of law) and Florida RICO (for perjury) violations. During the pendency of this case (and following the recordation of the three Assignments), RA&S's Laura Elise Goorland (FBN 55402) filed a Notice of Hearing, containing a Plaintiff's Amended Motion for Leave to File Amended Complaint (filed on 05/14/2014). The Motion is for leave to file a count for Re-Establishment of a Lost Note. The language contained in the apparent 2013 self-Assignment to the Plaintiff only transferred the Mortgage, according to the language contained within it. Without the Note, the Plaintiff would have no right to enforce anything. However, it is the belief of the Examiner that the intended beneficiary of this Mortgage and Note is Fannie Mae and that any resulting sale will be demonstrated as such by the Assignment of a Bid to Fannie Mae, after whatever alleged frauds are to be perpetrated upon the Court have succeeded. Further, the Amended Complaint does not appear to be compliant with the following Florida statute:

**702.11. Adequate protections for lost, destroyed, or stolen notes in mortgage foreclosure**
(1) In connection with a mortgage foreclosure, the following constitute reasonable means of providing adequate protection under s. 673.3091, if so found by the court:
(a) A written indemnification agreement by a person reasonably believed sufficiently solvent to honor such an obligation;
(b) A surety bond;
(c) A letter of credit issued by a financial institution;
(d) A deposit of cash collateral with the clerk of the court; or
(e) Such other security as the court may deem appropriate under the circumstances.
Any security given shall be on terms and in amounts set by the court, for a time period through the running of the statute of limitations for enforcement of the underlying note, and conditioned to indemnify and hold harmless the maker of the note against any loss or damage, including principal, interest, and attorney fees and costs, that might occur by reason of a claim by another person to enforce the note.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The "Assistant Secretary" for an LLC (which allegedly only has "members") may not be sufficient because there is no indication from the previous self-assignment that this verification is anything less than dishonest. It appears that Lindset Brooke Yarmuth (FBN 93156) (for Jonathan Meisels, FBN 29235) was responsible for the execution of this Amended Complaint.  Exhibit "A" then proffers an "Affidavit of Lost Promissory Note", which appears to have been taken from a template and robosigned with initials.

**Further, there are other suspect issues (misstatements) within the Affidavit that the Examiner believes constitutes fraud on the Court and perjury on the part of the Plaintiff, to wit:**

**(1) Michael Engleman (the alleged Plaintiff employee)'s initials appear to be "MSS" as scribbled onto the form;**

**(2) Paragraph 2 of the Affidavit is NOT gender-specific to lead the Examiner to believe that this Affidavit was anything but transcribed from a template;**

**(3) Paragraph 3 appears to misrepresent the truth of the history of transfers of the Mortgage when the Affiant attempts to commingle the Note into the assignment history, which does not mention MERS as a cover for potential wrongdoing under Florida Criminal Code § 817.535;**

**(4) Further Paragraph 3 appears to misrepresent the fact that the (self-assignment) to Nationstar was recorded in Flagler County on April 8, 2013 when the document (according to the recorded alleged self-assignment) was in fact EXECUTED on April 8, 2013 but not electronically recorded (suspect for violation of 18 USC 1343) until April 24, 2013 and referred to his employer as an "LL" instead of an "LLC";**

**(5) Paragraph 4 appears to infer a legal conclusion based on what appears to be hearsay information, as it is highly likely that Engleman has personal, first-hand knowledge of HOW the Note was lost; WHO lost it; or in the alternative, WHO stole it (given the fact he commingled the Note argument in the previous paragraph and misrepresented the county it was recorded in); and**

**(6) Engleman then contradicts himself in Paragraph 5 when he states that the loss of the Note was not "the result of a transfer", when in Paragraph 4 when he claimed that Aurora Bank, FSB lost the note during its transfer.  Further, Engleman cannot attest to what happened at Aurora Bank, FSB because any communication he may have had with them would be apparent hearsay.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Thus, regardless of whether Nationstar Mortgage LLC will indemnify the Defendant from double liability, the Affiant appears to have sufficiently misrepresented the facts of the case enough to be impeachable and thus, appears to commit perjury under Florida's RICO statutes for authoring and attesting to an Affidavit that further attempts to misrepresent the facts contained in the chain of Assignments that were recorded in the real property records of Osceola County, Florida with the intent to deprive the homeowners of their property under Florida Criminal Code § 817.535.

Additionally, it appear that FDLG/Wolfe are acting as RICO co-conspirators in the furtherance of this scheme to defraud the Court and commit perjury in the process. To further compound the issue, the statements made by counsel in the original Complaint, with an attached Note with an apparent improperly-placed indorsement-in-blank, is now "magically missing" from this Amended Complaint, substituted with an apparent manufacture of an "Allonge to Note", which appears to show all of the alleged co-conspirators working in concert with the law firm to perpetrate the scheme of fraud upon the Disbrows. The Examiner believes that the substitution of the indorsement with the "Allonge to Note" is suspect for fraud on the Court and proves nothing as to the Plaintiff's standing to pursue anything but jail terms, stiff fines and sanctions.

**Case No. 42:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-85CB, Mortgage Pass-Through Certificates, Series 2005-85CB v. Cassandra Moore et al* **(2012 CA 4546 MF)**

The Verified Complaint appears to have been filed by Christina V. Paradowski (FBN 56708) on behalf of the Tripp Scott, P.A. law firm ("Tripp Scott") on October 2, 2012, which is within the examination's target range.  Paradowski also appears to have caused the Notice of Lis Pendens to be recorded as CFN#2012144129 on 10-05-2012.

**There is a suspect assignment apparently relied upon in this case, to wit:**

**CFN#2011143204, recorded by presentment on 10-13-2011**
**Document Prepared by: Srbui Muradyan (alleged Bank of America employee)**
**Signers: Barbard Nord and Debbie Nieblas (also alleged Bank of America employees), who claim to be Assistant Secretaries of MERS as a standalone Assignor into a closed REMIC trust.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Notary: Roudabeh Beygzadeh-Elias (California Notary Commission # 1939521; active until 06-04-2015), signed under penalty of perjury under California law as to "authorized capacities".**
**Witnesses: Byd Kamyabi, Aida Dumas (also alleged Bank of America employees) Execution Date: September 9, 2011**
**There are multiple issues with this Assignment of Mortgage, to wit:**

> **(1) All signers to this document are known robosignors., as evidenced by each's scribbled signatures;**

> **(2) There are markers of document manufacturing (i.e., BOLD-FACED CAPITAL LETTER copy insertions from a computer template, use of a rubber stamp);**

> **(3) Use of MERS to convey the Note, which MERS does not have an interest in;**

> **(4) Violation of MERS' policy which dictates that after December 6, 2010, the MERSCORP member will not use the Ocala, Florida address (which does NOT belong to either MERS or DHI Mortgage Company Ltd.); and**

> **(5) The Closing Date of the REMIC trust was December 28, 2005; thus, the September 9, 2011 attempt to assign the mortgage and note using MERS appears to contravene the PSA for the trust REMIC, rendering it void under New York Estates, Powers & Trusts § 7-2.4.**

**There are also multiple issues with the Complaint, to wit:**

> **(1) The verification is signed by the Servicer and not by someone with authority within the trust REMIC;**

> **(2) Based on past history and from the sworn statements of Bank of America employees, the Examiner believes that Bank of America, N.A. as servicer of this trust, could have attempted modification, but chose not to do so in favor of foreclosure;**

> **(3) The Complaint relies on the Assignment of Mortgage, attached and noted as Exhibit "C" therein (see the foregoing issues, supra);**

> **(4) Exhibit "D", which the Complaint relies on to set "conditions precedent", appears to have been served by BAC Home Loans Servicing, LP, who declares itself to be the servicer, when the Complaint states otherwise; and**

> **(5) The attached Exhibit "A" (NOTE), contains issues within itself, to wit:**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

> **(a.) There is a restrictive endorsement to Countrywide Bank, N.A., found underneath the Borrower's signature;**
>
> **(b.) There are two more "woefully distorted" indorsement stamps which appear to have been affixed (potentially by ReconTrust Company, N.A. employees) without the knowledge of the officers whose names appear on those stamps;**
>
> **(c.) The stamps are undated; thus offering no proof of effective date of transfer; and**
>
> **(d.) The attached endorsement stamps could have been affixed under the Borrower's signature, yet were inadvertently placed on a separate and unmarked sheet of paper (no title, i.e. "Allonge to Note"), which further does not comport with U. C. C. 3-302(2).**

The case is still OPEN and active, with a Status Hearing set for January 26, 2015 at 10:30 a.m. It further appears that the process servers who served the Defendant homeowners are claiming that the homeowners are avoiding service of process, knowing from the attached Mortgage contains a Second Home Rider and it is possible that the residence was rented out and the renters were "Unknown Tenants" as described in the Complaint and not the Defendant owners, as described in the return of service.

**The Examiner believes that the Assignment of Mortgage contains false and misrepresentative information and was recorded with the intent to deprive the homeowners of their property, in violation of Florida Criminal Code § 817.535.**

Further, the Assignment was more than likely drafted without attorney supervision, which may constitute the unauthorized practice of law.  In furtherance of the scheme to defraud, the reliance on the Assignment by the law firm would appear to make all participants alleged accomplices in violation of Florida RICO statutes to commit perjury with the intent to defraud under the previously-noted statute.

It is also possible that any claims made within this case may be false due to applied third-party payments to the loan balance from credit default swaps or other insurance payouts.  Thus, the Plaintiff may have been attempting to write down the Note and Mortgage as a loss, if in fact in even had the Note and Mortgage to begin with, which is suspect for income tax evasion.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 43:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-OH2, Mortgage Pass-Through Certificates, Series 2007-OH2 v. Mark Hollingsworth et al* **(2012 CA 4607 MF)**

**CASE NOTES:** The Verified Complaint appears to have been filed by Christina V. Parad-owski (FBN 56708) on behalf of the Tripp Scott, P.A. law firm ("Tripp Scott") on October 5, 2012, which is within the examination's target range.   Paradowski also appears to have caused the Notice of Lis Pendens to be recorded as CFN#2012147048 on 10-11-2012. There is a suspect assignment apparently relied upon in this case, to wit:

**CFN#2011137370, recorded by presentment on 10-04-2011**
**Document Prepared by: Danilo Cuenca (alleged Bank of America employee)**
**Signers: Alice Rowe and Malik Basurto (also alleged Bank of America employees), who claim to be Assistant Secretaries of MERS as a standalone Assignor into a closed REMIC trust.**
**Notary: Evette Ohanian (California Notary Commission # 1787925; expired 12-27-2011), signed under penalty of perjury under California law as to "authorized capacities".**
**Witnesses: Luis Roldan, Chester Lovings(also alleged Bank of America employees)**
**Execution Date: August 22, 2011**
**There are multiple issues with this Assignment of Mortgage, to wit:**

> **(1) All signers to this document are known robosignors., as evidenced by each's scribbled signatures.  Based on the review of Luis Roldan's previously-viewed signatures, his signature does NOT appear to have been affixed by him;**

> **(2) There is an obvious marker of document manufacturing, namely, the use of BOLD-FACED CAPITAL LETTER copy insertions from a computer template;**

> **(3) Use of MERS to convey the Note, which MERS does not have an interest in;**

> **(4) Violation of MERS' policy which dictates that after December 6, 2010, the MERSCORP member will not use the Ocala, Florida address (which does NOT belong to either MERS or Countrywide Bank, FSB); and**

> **(5) The Closing Date of the REMIC trust was June 29, 2007; thus, the August 22, 2011 attempt to assign the mortgage and note using MERS appears to contravene the PSA for the trust REMIC, rendering it void under New York Estates, Powers & Trusts § 7-2.4.**

**There are also multiple issues with the Complaint, to wit:**

**210 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) The verification is signed by the Servicer and not by someone with authority within the trust REMIC;**

**(2) Based on past history and from the sworn statements of Bank of America employees, the Examiner believes that Bank of America, N.A. as servicer of this trust, could have attempted modification, but chose not to do so in favor of foreclosure;**

**(3) The Complaint relies on the Assignment of Mortgage, attached and noted as Exhibit "C" therein (see the foregoing issues, supra);**

**(4) Exhibit "D", which the Complaint relies on to set "conditions precedent", appears to have been served by BAC Home Loans Servicing, LP, who declares itself to be the servicer, when the Complaint states otherwise; and**

**(5) The attached Exhibit "A" (NOTE), contains issues within itself, to wit:**

> **(a.) There are two indorsement stamps which appear to have been affixed (potentially by ReconTrust Company, N.A. employees) without the knowledge of the officers whose names appear on those stamps;**

> **(b.) The stamps are undated; thus offering no proof of effective date of transfer; and**

> **(c.) The stamps appear to have conveniently placed within the Note, under the Borrower's signature, as if they were manipulated by a computer software program to appear that way.**

**Despite the foregoing issues, Judge Miller signed a Final Judgment of Foreclosure on March 3, 2014 (recorded on 03-06-2014 as CFN#2014032564).**

The property was sold and a Certificate of Title issued to the REMIC trust Plaintiff (unknown as to whether the $100 was a credit bid or a cash bid) on May 21, 2014 and filed for record on 05-22-2014 as CFN#2014072155.  The Examiner believes that the Assignment of Mortgage contains false and misrepresentative information and was recorded with the intent to deprive the homeowners of their property, in violation of Florida Criminal Code § 817.535.  Further, the Assignment was more than likely drafted without attorney supervision, which may constitute the unauthorized practice of law.  In furtherance of the scheme to defraud, the reliance on the Assignment by the law firm would appear to make all participants alleged accomplices in violation of Florida RICO statutes to commit perjury with the intent to defraud under the previously-noted statute.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is also possible that any claims made within this case may be false due to applied third-party payments to the loan balance from credit default swaps or other insurance payouts. Thus, the Plaintiff may have been attempting to write down the Note and Mortgage as a loss, if in fact in even had the Note and Mortgage to begin with, which is suspect for income tax evasion. With the potential for third-party payments to the loan balance, it is highly likely that all or a substantial portion of the loan was paid off and the trust REMIC and the Servicer, Select Portfolio Servicing unjustly enriched themselves at the expense of the homeowner, who appears to have been deprived of their property.

**Case No. 44:** *Deutsche Bank National Trust Company, as Trustee for the Harbourview Mortgage Loan Trust Mortgage Loan Pass-Through Certificates, Series 2006-9 v. Carmela Ruano et al  (2012 CA 4779 MF)*

The Verified Complaint appears to have been filed by Christina V. Paradowski (FBN 56708) on behalf of the Tripp Scott, P.A. law firm ("Tripp Scott") on October 15, 2012, which is within the examination's target range. Paradowski also appears to have caused the Notice of Lis Pendens to be recorded as CFN#2012151822 on 10-19-2012. There are three (3) suspect assignments apparently relied upon in this case, to wit:

**CFN#2011135500, recorded by presentment on 09-28-2011**
**Document Prepared by: Srbui Muradyan (alleged Bank of America employee)**
**Signers: Barbard Nord and Debbie Nieblas (also alleged Bank of America employees), who claim to be Assistant Secretaries of MERS as a standalone Assignor in what appears to be a self-assignment to their employer.**
**Notary: Roudabeh Beygzadeh-Elias (California Notary Commission # 1939521; active until 06-04-2015), signed under penalty of perjury under California law as to "authorized capacities".**
**Witnesses: Byd Kamyabi, Aida Dumas (also alleged Bank of America employees) Execution Date: September 9, 2011**

**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) All signers to this document are known robosignors., as evidenced by each's scribbled signatures;**

**(2) There are markers of document manufacturing (i.e., BOLD-FACED CAPITAL LETTER copy insertions from a computer template, use of a rubber stamp);**

**(3) Use of MERS to convey the Note, which MERS does not have an interest in;**

**212 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(4) Violation of MERS' policy which dictates that after December 6, 2010, the MERSCORP member will not use the Ocala, Florida address (which does NOT belong to either MERS or Aegis Wholesale Corporation, which has been in bankruptcy since 2007);

(5) The address shown as Bank of America, N.A.'s address really belongs to Deutsche Bank National Trust Company.  The use of MERS as a standalone Assignor appears to cover up the chain of custody of the Note as well as the chain of title; thus, constructive notice to the world appears confusing at best;

(6) The Closing Date of the REMIC Plaintiff trust was October 4, 2006; thus, the September 9, 2011 attempt to assign the mortgage and note using MERS appears to contravene the PSA for the trust REMIC, rendering it void under New York Estates, Powers & Trusts § 7-2.4; and

(7) The assignment appears to have been so haphazardly prepared that the document preparer put the wrong entity into the "Assignee" space; thus, this Assignment of Mortgage failed to transfer anything to the Plaintiff trust.

The foregoing Assignment of Mortgage appears to affect the First Mortgage loan. Over a month later, Bank of America employees executed the Second Mortgage assignment:

CFN#2011151323, recorded by presentment on 10-31-2011
Document Prepared by: Srbui Muradyan (alleged Bank of America employee)
Signers: Barbard Nord and Debbie Nieblas (also alleged Bank of America employees), who claim to be Assistant Secretaries of MERS as a standalone Assignor in what appears to be an attempted assignment to a closed Countrywide Home Equity Loan REMIC trust.
Notary: Roudabeh Beygzadeh-Elias (California Notary Commission # 1939521; active until 06-04-2015), signed under penalty of perjury under California law as to "authorized capacities".
Witnesses: Byd Kamyabi, Aida Dumas (also alleged Bank of America employees) Execution Date: September 12, 2011

There are multiple issues with this Assignment of Mortgage, to wit:

(1) All signers to this document are known robosignors., as evidenced by each's scribbled signatures;

(2) There are markers of document manufacturing (i.e., BOLD-FACED CAPITAL LETTER copy insertions from a computer template, use of a rubber stamp);

(3) Use of MERS to convey the Note, which MERS does not have an interest in;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(4) Violation of MERS' policy which dictates that after December 6, 2010, the MERSCORP member will not use the Ocala, Florida address (which does NOT belong to either MERS or Aegis Wholesale Corporation, which has been in bankruptcy since 2007);

(5) The address shown as Bank of America, N.A.'s address really belongs to Deutsche Bank National Trust Company.  The use of MERS as a standalone Assignor appears to cover up the chain of custody of the Note as well as the chain of title; thus, constructive notice to the world appears confusing at best;

(6) The Closing Date of the REMIC Plaintiff trust was September 26, 2006; thus, the September 12, 2011 attempt to assign the mortgage and note using MERS appears to contravene the PSA for the trust REMIC, rendering it void under New York Estates, Powers & Trusts § 7-2.4; and

(7) More specifically, Page S-77 of the PSA contains a provision that states, unequivocally: "A defective mortgage loan will be substituted for only if the substitution occurs within two years of the Closing Date."  Obviously, this did not occur, making this assignment false and misrepresentative.

It is highly likely that an attorney supervised the drafting and execution of the foregoing Assignment; thus, apparent issues involving the unauthorized practice of law; not to mention perjury issues.  Then, due to the issues apparently discovered with the bogus Assignment of First Mortgage, someone at Tripp Scott, P.A. caused to be drafted and executed (and recorded) an Assignment of Mortgage, that appears to convey both the Mortgage and the Note from Bank of America, N.A. to the Plaintiff REMIC trust for the purposes of foreclosure (as discussed below):

CFN#2012121350, recorded by presentment on 08-20-2012
Document Prepared by: Tripp Scott, P.A. (unknown document preparer with the firm)
Signer: Clinton Kyle Duncan, purporting to be an Assistant Vice President with Bank of America, N.A. (as successor by merger to its predecessors).
Notary: Jiju K. Thomas (Texas Notary Commission still active; expires on 07-22-2015)
Witnesses: Andrew Robertson Darkol, Joshua Andrew Temple
Execution Date: August 6, 2012
There are multiple issues with this Assignment of Mortgage, to wit:

(1) In order for this Assignment to be effective, the first Assignment (which did NOT name the trust REMIC) would also have to be effective.  Since there are apparent issues with the first Assignment of Mortgage, this Assignment of Mortgage appears to be predicated on past deficiencies, most of which (if not all) negate the outcome of this document;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(2) There are markers of document manufacturing, namely, BOLD-FACED CAPITAL LETTER copy insertions from a computer template;

(3) The visible address of Deutsche Bank National Trust Company is now apparent in this Assignment (which covered up the real party in interest, misrepresenting the address for Bank of America in its predecessor Assignment;

(4) Since MERS did not own the Note, how then can Bank of America transfer it into the REMIC trust?;

(5) The address shown as Bank of America, N.A.'s address really belongs to Deutsche Bank National Trust Company.  The use of MERS as a standalone Assignor appears to cover up the chain of custody of the Note as well as the chain of title; thus, constructive notice to the world appears confusing at best; and

(6) The Closing Date of the REMIC Plaintiff trust was still October 4, 2006; thus, no matter what Tripp Scott's document preparer thought, this Assignment would serve no other purpose that to promulgate one apparent fraud on top of another apparent fraud.  This Assignment still appears  to contravene the PSA for the trust REMIC, rendering it void under New York Estates, Powers & Trusts § 7-2.4, even after a second "more legal appearing" attempt.

Applying the alleged issues with the previous assignments to this case, there would then be multiple issues with the Complaint, to wit:

(1) The verification is signed by the Servicer and not by someone with authority within the trust REMIC;

(2) Based on past history and from the sworn statements of Bank of America employees, the Examiner believes that Bank of America, N.A. as servicer of this trust, could have attempted modification, but chose not to do so in favor of foreclosure;

(3) The Complaint relies on the Assignment of Mortgage, attached and noted as Exhibit "C" therein (see the foregoing issues, supra);

(4) Exhibit "D", which the Complaint relies on to set "conditions precedent", appears to have been served by BAC Home Loans Servicing, LP, who declares itself to be the servicer, when the Complaint states otherwise; and

(5) The attached Exhibit "A" (NOTE), contains issues within itself, to wit:

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(a.) There is literally almost a full empty page below the Borrower's signature on Page 6 of 6 of the Note, almost as if it was designed for the purpose of applying endorsement stamps (yet there are none);**

**(b.) Instead, there is an attached "Allonge To Note" which appears to have been potentially manufactured and does not comport to the concerns involving U. C. C. 3-302(2);**

**(c.) The indorsement stamps are undated; thus offering no proof of effective date of transfer from Aegis Wholesale Corporation to Aegis Mortgage Corporation … and indorsed-in-blank by Aegis Mortgage Corporation; and**

**(d.) It is highly likely that given the pattern of transfer and interaction between Aegis and Bank of America in other cases that the Examiner is familiar with, these endorsement stamps could have been affixed by a computer software program, made to look as if it transferred the loan away from now-bankrupt Aegis to the trust; however, this is contradicted by the final Assignment of Mortgage recorded prior to commencement of the foreclosure action and relied upon by Plaintiff's counsel.**

Despite all of the foregoing issues, Judge Miller signed a Final Judgment of Foreclosure on December 18, 2013; filed for record as **CFN#2013198667** on 12-20-2013.  The property was sold on June 27, 2014 (to the Plaintiff trust c/o Nationstar Mortgage LLC). A Certificate of Title was issued on July 8, 2014 in favor of the Plaintiff trust and filed for record on 07-09-2014 as **CFN#2014096673**.

The Examiner believes that all three Assignments of Mortgage contain false and misrepresentative information and were recorded with the intent to deprive the homeowners of their property, probable cause for violation of Florida Criminal Code § 817.535.

Further, the first two assignments were more than likely drafted without attorney supervision, which may constitute the unauthorized practice of law.  In furtherance of the scheme to defraud, the reliance on the First Mortgage Assignment by the law firm in drafting and participating in the scheme to record the third Assignment into the trust would appear to make all participants alleged accomplices in violation of Florida RICO statutes to commit perjury with the intent to defraud under the previously-noted statute. It is also possible that any claims made within this case may be false due to applied third-party payments to the loan balance from credit default swaps or other insurance payouts.  Thus, the Plaintiff may have been attempting to write down the Note and Mortgage as a loss, if in fact in even had the Note and Mortgage to begin with, which is suspect for income tax evasion.  Sadly, it is also highly likely that the Borrower may not have been in default in the first place.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 45:** *JPMorgan Chase Bank, N.A. v. James A. Brown et al* **(2012 CA 5859 MF)**

**This Complaint was filed by Albertelli Law firm's attorney Vivian Viejo (FBN 96543) for Jana L. Keenan (FBN 67949) on December 26, 2012. Viejo also appears to have recorded the Notice of Lis Pendens, filed for record on 01-04-2013 as CFN#2013001948. The case surrounds a MERS-originated Mortgage executed in favor of Pulte Mortgage LLC, which still appears to be registered to do business in the State of Florida. It appears that a copy of the promissory note was attached to the Complaint, which appears to have plenty of room to affix an indorsement-in-blank underneath the Borrower's signature; however, contrary to U. C. C. 3-302(2), it appears an extra, unmarked page was added to the Note by parties unknown, containing an indorsement-in-blank from Pulte Mortgage LLC that is undated, so effective date of transfer of this Note to anyone is undetermined. Further, the case filing also appears to contain an Assignment of Mortgage which is being relied upon, to wit:**

**CFN#2012084152, recorded by presentment on 06-01-2012**
**Document Prepared by: Erika Lance, Nationwide Title Clearing ("NTC") in Palm Harbor, Florida. After recording, the document was returned to Chase c/o NTC in Florida.**
**Signer: LeShonda Anderson, who claims she is a Vice President of MERS as nominee for Pulte Mortgage LLC., who appears to attempt a self-assignment to her employer (Chase).**
**Notary: Angela Ruth Payne (Louisiana Lifetime Notary Commission No. 60422)**
**Witnesses: LaQuina Wilson Doaty, Sandy Wells**
**There are numerous issues with this Assignment, to wit:**

**(1) The notary is attesting to the "authorized capacities" of the signers, which is at best, questionable due to the lack of proof of legitimate MERS authority;**

**(2) JPMorgan Chase Bank, N.A. ("Chase") declares on a publicly recorded document that it is "responsible for receiving payments", in an attempt to make itself look as if it is a creditor;**

**(3) Erika Lance, a known third-party document manufacturer for NTC, more than likely obtained the information she relied on to prepare the document from hearsay, third-party sources;**

**(4) The address used to represent Pulte Mortgage LLC (which is still in business and could have prepared this document themselves, by someone with full knowledge and authority to do so) is the MERS post office box in Flint, Michigan;**

**(5) At the bottom of the document, just below the Document Preparer's name, are the capital letters, "EMC", which means that this defunct lender (EMC Mortgage) may be the interim funding lender that was instrumental in funding the loan (unknown to the Borrowers in this instance);**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(6) The document only assigns the Mortgage.  It does NOT assign the Note.  The argument here is that the Note is "bearer paper" because it is "indorsed-in-blank"; however, the assignment is self-executing (meaning the Assignor and Assignee are one in the same party); and**

**(7) There is no effective date of transfer of the Note, despite what the information states on the Assignment; Assignments are NOT self-authenticating.**

On April 21, 2014, Albertelli Law counsel Megan L. Roach (FBN 103150) directed a filing to the Court on behalf of the Plaintiff, voluntarily dismissing the action and releasing the Lis Pendens.  It was filed with the Court and made a part of the permanent record the following day.

However, the fact that the Assignment is attached and being relied upon declares intent to deprive a homeowner of their property, probable cause for violation of Florida Criminal Code § 817.535.  Due to the fact that Erika Lance has declared that she prepares these documents without attorney supervision, unauthorized practice of law is also suspect.  Further, the law firm, acting in concert and under the direction of Chase, who was aware of the assignment and its self-executing provisos, should be considered for Florida RICO violations.

**Case No. 46:** *U. S. Bank, N.A., as Trustee, Successor in Interest to Bank of America, N.A., as Successor by Merger to LaSalle Bank, N.A. as Trustee for Washington Mutual Mortgage Pass-Through Certificates WMALT Series 2006-5 v. Patrice Denike et al* **(2012 CA 3916 MF)**

**CASE NOTES: This Complaint was filed by Albertelli Law firm's attorney Jana L. Keenan (FBN 67949) on August 20, 2012.  Keenan also appears to have recorded the Notice of Lis Pendens, filed for record on 08-24-2012 as CFN#2012124872.  The case surrounds a MERS-originated Mortgage executed in favor of AMNET Mortgage, Inc. DBA American Mortgage Network of Florida, which withdrew its registration to do business in the State of Florida on May 12, 2009.**

It appears that a copy of the promissory note was attached to the Complaint, which appears to have plenty of room to affix an indorsement-in-blank underneath the Borrower's signature; however, contrary to U. C. C. 3-302(2), it appears an extra, unmarked page was added to the Note by parties unknown, containing an indorsement-in-blank from American Mortgage Network that was apparently affixed to the back of the signature page of the Note, which appears to have bled through, absent the signature of the officer assigning the Note.

**218 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The extra page was added to mirror the reverse image from the back of the Signature Page; however, when the pages are affixed over the top of each other, the page margins do not line up with the darkened two-hole punches, which makes the Note suspect for manufacturing (potential fraud on the Court). Further, the indorsement-in-blank is undated, so effective date of transfer of this Note to anyone is undetermined. Further, the case filing also appears to contain an Assignment of Mortgage which is being relied upon.

**CFN#2012084641, recorded by presentment on 06-04-2012**
**Document Prepared by: Erika Lance, Nationwide Title Clearing ("NTC") in Palm Harbor, Florida. After recording, the document was returned to Chase c/o NTC in Florida.**
**Signer: Tina Richard, who claims she is a Vice President of MERS as nominee for the now-defunct America Mortgage Network, who appears to attempt an of the Mortgage only to a closed WaMu 2006-5 REMIC trust.**
**Notary: Eva Reese (Louisiana Lifetime Notary Commission No. 17070)**
**Witnesses: Pearl M. Burch, LeShonda Anderson**
**There are numerous issues with this Assignment, to wit:**

**(1) The notary is attesting to the "authorized capacities" of the signers, which is at best, questionable due to the lack of proof of legitimate MERS authority;**

**(2) JPMorgan Chase Bank, N.A. ("Chase") declares on a publicly recorded document that it is "responsible for receiving payments", in an attempt to make itself look as if it is a creditor;**

**(3) Erika Lance, a known third-party document manufacturer for NTC, more than likely obtained the information she relied on to prepare the document from hearsay, third-party sources;**

**(4) The address used to represent the now-defunct American Mortgage Network is the MERS post office box in Flint, Michigan;**

**(5) At the bottom of the document, just below the Document Preparer's name, are the capital letters, "WAMU", which means that this defunct lender (Washington Mutual Bank, FA) may be the interim funding lender that was instrumental in funding the loan (unknown to the Borrowers in this instance);**

**(6) The document only assigns the Mortgage. It does NOT assign the Note. The argument here is that the Note is "bearer paper" because it is "indorsed-in-blank"; however, the assignment brings into question the validity of the transfer of BOTH the Mortgage and the Note, because the effective date of transfer of the Assignment violates the PSA, which shows a Closing Date for this REMIC trust as June 29, 2006, which contravenes New York trust law and is thus void; and**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(7) There is no effective date of transfer of the Note, despite what the information states on the Assignment; Assignments are NOT self-authenticating.**

On July 15, 2013, Albertelli Law counsel Matthew Bronkema (FBN 91329) directed a filing to the Court on behalf of the Plaintiff, voluntarily dismissing the action and releasing the Lis Pendens.  It was filed with the Court and made a part of the permanent record the following day.  It appears the reason for the dismissal was due to a short sale of the property in order to avoid foreclosure.

However, the fact that the Assignment is attached and being relied upon declares intent to deprive a homeowner of their property, probable cause for violation of Florida Criminal Code § 817.535.  Due to the fact that Erika Lance has declared that she prepares these documents without attorney supervision, unauthorized practice of law is also suspect.  Further, the law firm, acting in concert and under the direction of Chase, who was aware of the assignment and its self-executing provisos, should be considered for Florida RICO violations.

Unknown to the Borrower is whether there were any third-party payments applied to her loan balance from credit default swaps or other default insurance policies designed to pay off REMIC trust pools in whole or in part.  Again, to reiterate, the certificateholders are holding non-recourse debt instruments, not equity instruments.  Part of the issue with the foreclosure complaints being filed is that the accounting appears incomplete, many times riddled with excess servicer charges.  This is why servicers are highly incentivized to take the property versus engage in a loan modification; with foreclosure it means huge profits.

**Case No. 47: *Nationstar Mortgage LLC v. Hoa T. Do et al*  (2014 CA 0006 MF)**

**Despite the fact the pendency of this case only last two (2) months and was subsequently voluntarily dismissed, the intent by Lisa M. Lewis (FBN 86178) and the Ronald R. Wolfe & Associates, P.L. law firm appears to have relied on the utilization of the Assignment of Mortgage as described below:**

**CFN#2013150622, electronically recorded on 09-23-2013**
**Document Prepared by: Erika Lance (known Nationwide Title Clearing employee)**
**Return to: Nationstar Mortgage LLC**
**C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Tyler Driver (purporting to be an NTC employee) as Assistant Secretary of MERS as nominee for Home First Funding, LLC (dissolved January 29, 2008), attempting to assign ONLY the Mortgage to Nationstar Mortgage LLC.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Notary: Nicole Baldwin (Florida Notary Commission #EE222285)
Witnesses: Daniel Thompson, Jessica Sheetz
NOTE: This file is also listed as "NTC EX. 29" under *Nationwide Title Clearing*'s heading.
There are multiple issues with this recorded Assignment and Complaint, to wit:

(1) The Mortgage ONLY was conveyed to Nationstar, while the proffered
Note attached to the Complaint, which had plenty of room to accept indorse-
ments under it, shows an attached "ALLONGE FOR THE PURPOSE OF
ENDORSEMENT" on a separate sheet of paper with two-hole punch markings
on it, containing three undated indorsements:

(a.) It appears that the largest of the indorsement stamps, from
Home First Funding, LLC to Pinnacle Financial Corporation
(also now defunct), was done by Pinnacle's "Linda S. Morgan,
Authorized Agent". This person and her authority to transfer
is unproven because there is nothing attached in the Complaint
to explain her status and who allowed authorization to affix this
special indorsement stamp to Pinnacle by Pinnacle's own apparent
employee;

(b.) It appears that the next special indorsement stamp from was
executed by Pinnacle's "Scott Taylor", who claims to be "VP" of
Pinnacle Financial Corporation. There is nothing shown within
the Florida Department of State's Corporations' section to indicate
this person's existence on the Board of Directors, which makes this
execution suspect (pending further discovery or investigation);

(c.) On the endorsement discussed in the preceding paragraph, it
appears that Taylor's intent was to make it an indorsement-in-blank,
because another "rubber stamp" appears to have been conveniently
affixed to the right of the indorsement-in-blank stamp that reads:
"CitiMortgage, Inc."; and

(d.) The final endorsement stamp does appear to be an indorsement-
in-blank intent by Janet L. Sims, who claims to be Vice President of
CitiMortgage, Inc., affixed to the right of the first indorsement stamp.

All of this information could have been conveniently placed on the previous page,
under the Borrower's signature, which makes this entire scenario suspect as it does
not comport to U. C. C. § 3-302(2) regarding the rules for the use of indorsements
and allonges.

221 of 412

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(2) Had the parties utilized all of the blank space below the Borrower's signatures on Page 5 of 5 of the Note (as was proper under U.C.C. 3-202(2), it would not have been necessary to "invent" such an artifice to attempt to tie all of the parties in the chain of custody of the Note together with what appears to be a manufactured heading. It is obvious that repetition of the Note's information would have been self-contained within the five-page Note; thus making this added page suspect for document manufacturing to bring fraud on the Court;**

**(3) Since none of the endorsements were dated, there is no provable way to demonstrate effective transfer of the Note among the parties. When compared to the timeliness of the creation of this Assignment of Mortgage (executed 09-20-2013), by parties who (despite written claims) more than likely had no personal knowledge of any of the facts contained therein, affixed their signatures to and had them acknowledged with the intent to take part in a SELF-ASSIGNMENT of the Mortgage to the Plaintiff, containing false and misrepresentative information (because MERS has no idea of when its "members" use its name to transfer whatever they feel like transferring at any given moment) with the intent to deprive the homeowner's of their property, probable cause for violation of Florida Criminal Code § 817.535; and**

**(4) Further, due to the apparent self-assignment manufacture, the verified Complaint now becomes suspect for perjury and fraud on the Court.**

Lewis also appears to have filed and caused to be recorded the Notice of Lis Pendens as CFN#2014006651 on 01-15-2014. Lewis also filed the Notice of Voluntary Case Dismissal on February 12, 2014.

Because multiple parties were involved in the creation of the Assignment, which was relied on to manufacture what appears to be a falsely-verified Complaint, there is probable cause to believe that Florida RICO statutes were also violated (perjury in both the land records and the Court records) by all of the parties involved in this proceeding.

Further, as Erika Lance and her "team" of signers at NTC (more than likely) were not attorney supervised during the "alleged manufacture" of the suspect Assignment, unauthorized practice of law issues appear prevalent.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 48:** *The Bank of New York Mellon Trust Company, N.A. FKA The Bank of New York Trust Company, N.A. as Successor to JPMorgan Chase Bank, N.A. as Trustee for RAMP 2006-RZ4 v. Helen Rae Donaway et al* **(2013 CA 1375 MF)**

This case appears to have been filed by Aldridge Connors, LLP attorney Amy P. Slaman (FBN 92052) on April 4, 2013. Slaman also appears to have caused to be filed the Notice of Lis Pendens on 04-16-2013 as CFN#2013059996. The Complaint appears to rely on the existing assignment filed in the real property records of Osceola County, Florida, to wit:

CFN#2012146031, recorded by presentment on 10-10-2012
Signor: Donna Kurzhal, who claims to be an Assistant Secretary of MERS as nominee for the still-active lender GMFS, LLC to a closed RAMP 2006-RZ4 REMIC trust.
Notary: Mary Xiong (Minnesota Notary Commission Expires 01-31-2016)
Witnesses: Kia Vang, Pangmee Yang (also alleged Indecomm employees)
Issues: The document was prepared by alleged Indecomm employee Fredericka Carter and when recorded, the document appears to have been returned to Indecomm for archival application. There is no recorded address for RAMP 2003-RS6 trust REMIC as shown, not even the Servicer's c/o address). There are typical markers of document manufacturing (bold-faced type insertions, scribbled signatures and the presence of a MIN) and robosigning. The document appears to have been executed on 10-03-2012, when the REMIC could not accept it, as its closing date was September 25, 2006.
NOTE: This document is also noted in this report as "INDECOMM EX. 2" under the *Indecomm Global Services* heading.
There are multiple issues with this Assignment of Mortgage, when compared to the Complaint, to wit:

> (1) The recorded Assignment of Mortgage is not self-authenticating. The fact that it was created by a known "archive" and "document manufacturing plant" makes it suspect for execution without authority (based on the previous MERS' discussion);

> (2) The Assignment attempts to "tie all of the ends of the Mortgage together" however, the Mortgage follows the Note and the Note does not appear to have travelled the same path according to the Complaint;

> (3) The Assignment (using the MERS® System) conceals the true parties in interest, since GMFS, LLC is still in existence and registered to do business in Florida. GMFS, LLC could have initiated and recorded an Assignment of Mortgage and Note to any party it chose to (which, when compared to the proffered Note within the Complaint), when in fact, it appears that the ALLONGE TO NOTE that is attached to the Complaint could have, as in the previous case (above), been incorporated below the Borrower's signature on Page 3 of 3;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) However, inappropriately, this ALLONGE appears to have been attached behind the "PREPAYMENT RIDER TO NOTE", which makes it suspect for manufacture due to its placement, with the intent to bring fraud on the Court;**

**(5) Further, the ALLONGE was created in such a way to that someone could rubber stamp an entity's name onto the document and then affix whatever other indorsement stamps were necessary to "create" conditions precedent to standing to bring a foreclosure case forward, which appears to have been the case here; and**

**(6) Due to the fact that JPMorgan Chase Bank, as Trustee was succeeded by The Bank of New York Trust Company, N.A., which then was succeeded by The Bank New York Mellon Trust Company, N.A., the Assignment of Mortgage fails to disclose any involvement with Residential Funding Company, LLC, which as of 09-24-2014, is no longer registered to do business in the State of Florida. There is no written authority stated within the Complaint, which is then verified by someone at Ocwen Loan Servicing, LLC (Dwight Blake), whose signature is illegible and further provides no recorded proof of authority as to WHO he is an attorney-in-fact for.**

Thus, based on the manufacture of the Assignment of Mortgage, which utilizes MERS to cover up the chain of custody of the Mortgage (and only Assigned the Mortgage to the Trust REMIC, far past the Closing Date), the entire case is based on an apparent sham pleading. Because multiple parties were involved in the creation of the Assignment, which was relied on to manufacture what appears to be a falsely-verified Complaint, there is probable cause to believe that Florida RICO statutes were also violated (perjury in both the land records and the Court records) by all of the parties involved in this proceeding.

Further, as it appears the signers at Indecomm (more than likely) were not attorney supervised during the "alleged manufacture" of the suspect Assignment, unauthorized practice of law issues appear prevalent. Aldridge Connors, LLP's Suzanne A. Maylor (FBN 63423) field a "Plaintiff's Notice of Voluntary Dismissal without Prejudice" on 12-13-2013 and caused it to be recorded as CFN#2014002183, a copy of which is attached to this case file.

The Assignment of Mortgage (being relied upon by the Plaintiff's counsel to further the suspect allegations made within the Complaint reviewed here), based on its contents, which appear to contain false and misrepresentative information, constitute probable cause for violation of Florida Criminal Code § 817.535.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 49:** *Nationstar Mortgage LLC v. Angel Cardenas et al* **(2013 CA 4251 MF)**

**CASE NOTES: This case was initiated on December 9, 2013 by Robertson, Anschutz & Schneid, P.L. ("RA&S") attorney Eric S. Orner (FBN 95690) for Jonathan Meisels (FBN 29235). It further appears that Orner also caused the Notice of Lis Pendens to be recorded on 12-11-2013 as CFN#2013193109. The original Note is attached as Exhibit "A", executed in favor of Lehman Bother Bank, FSB, a Federal Savings Bank (which filed for bankruptcy on September 15, 2008). There are three (3) Assignments of Mortgage involved in this property's chain of title; two (2) of them were involved in the taking of the property. To avoid confusion, it becomes necessary to start at the point of inception of the mortgage loan.**

The first Mortgage was executed on January 5, 2006. A second Mortgage was also executed on that same date, both in favor of the bankrupt Lehman Bother Bank, FSB, a Federal Savings Bank. The first Mortgage was recorded on 01-31-2006 as CFN#2006031719. The second Mortgage was recorded right behind it on the same date as CFN#2006031720. It appears that Aurora Loan Services was handling the servicing duties for Lehman Brothers.

Due to an alleged Default, David Stern Law Firm attorney Misty Allen Barnes (FBN 31001) filed a complaint on behalf of Aurora Loan Services LLC ("Aurora", the alleged Servicer) on behalf of Stern attorney Margaret Kepler (FBN 59118). It also appears that Barnes filed the Notice of Lis Pendens on 05-04-2009 as CFN#2009069319; Case No. 2009 CA 5032 MF. This is where things really become suspect for criminal behavior, with the filing of the first Assignment of Mortgage.

**CFN#2009076778, recorded by presentment on 05-15-2009
Document Prepared by: Lawrence Leseberg (alleged Aurora employee)
Signer: JoAnn Rein (also alleged Aurora employee), who claims to be Vice President of MERS as nominee for Lehman Bother Bank, FSB, a Federal Savings Bank (who was in bankruptcy at the time), using an Electronic Data Systems mailing address in Ocala, Florida it what appears to be a self-assignment of the Mortgage and Note to Aurora in an apparent effort to give it standing to foreclose.
Notary: Robert A. Rummel (Nebraska Notary Commission Expired on 09-18-2010)
Witnesses: Susan Lindhorst, Janie Flores (also alleged Aurora employees)**

**There are multiple issues with this Assignment, when compared to the Complaint, to wit:**

> **(1) All of the signers to the foregoing Assignment of Mortgage are known robosigners. The deposition of JoAnn Rein is attached as previously noted;**

> **(2) MERS does not have an interest in the Note; thus, Aurora did not have the right to convey something to itself that MERS did not own;**

**225 of 412**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(3) The Assignment appears to be backdated to April 23, 2009 because the Complaint had already been filed with the Court and with the real property records by the time this Assignment was finally recorded;**

**(4) This would be construed to mean that at the time the Complaint was filed, Aurora did not own the Note and Mortgage and did not have standing to file the foreclosure in the first place;**

**(5) The proffered Complaint Note (Exhibit "A") had plenty of room to place at least two (2) if not four (4) endorsement stamps on it. Instead, there is an unidentified and unmarked page attached to the back of the Note which does not comport to U. C. C. 3-302(2).  It contains two endorsement stamps:**

> **(a.) the top indorsement is restrictive to Lehman Brothers Holdings, Inc. by Lehman Brothers Bank, FSB (it is undated) by Rick W. Skogg, who purports to be Vice President of Lehman Brothers Bank, FSB; and**

> **(b.) the bottom indorsement-in-blank is from Lehman Brothers Holdings, Inc. (also undated), signed by Denise E. Elwell, who purports to be Senior Vice President of Lehman Brothers Holdings, Inc.**

**Thus, there is no effective date of transfer to Aurora Loan Services LLC, nor is there any indication that Aurora was transferred the Mortgage at the time the Note was indorsed-in-blank; and**

**(6) During the pendency of the proceedings, it appears that the Defendant entered into an Agreement with Aurora Loan Services LLC.  It is attached to this Complaint as Exhibit "C". On the header of this Exhibit, there are two redactions, one noted as "Freddie Mac Loan No.", which the Examiner construes to mean that the real owner and holder of the Note is Federal Home Loan Mortgage Corporation and NOT Aurora Loan Services LLC.  Unless Aurora had proof at the time it filed the Complaint to foreclose that it owned the Note and Mortgage, its complaint failed to prove standing.**

**More suspect issues begin to develop involving MERS in the following equation, to wit:**

**It further appears that on the back of the Loan Modification signature page, there appear two (2) signatures:**

> **(a.) Pamela J. Pedersen appears to be signing as Vice President of the "Lender", Aurora Loan Services LLC;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(b.) Jan Walsh appears to be signing as Assistant Secretary of MERS, as "Mortgagee", with no specific Definition as to the difference between the "Mortgagee" and the "Lender".**

It is implied here than Jan Walsh was employed by Aurora (the Servicer) at the time this Loan Modification Agreement was executed.  Thus, Nationstar Mortgage LLC's ("Nationstar") attorneys are claiming that a Loan Modification Agreement that Aurora did not actually have the apparent right to sign as a "Lender" and MERS didn't have the apparent right to sign as "Mortgagee" because of the inclusion of "Freddie Mac", brings more suspicion as to multiple parties acting in concert to commit violations of Florida's RICO statute.

Thus, due to the suspect manufacturing of a self-assignment by Aurora employees, the conditions that Nationstar's counsel claim are "precedent" appear to be based on fraud, specifically, the recordation of a document known to contain false and misrepresentative information with the intent to deprive the homeowner of his property, probable cause for violation of Florida Criminal Code § 817.535.  Further, as the result of Aurora and MERS entering into a loan modification it questionably did not have the right to enter into with the Borrower, and then failing to adhere to its own specific instructions, furthers the RICO claim.

**Specifically, the instructions above the title "LOAN MODIFICATION AGREEMENT" state:**

**"THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS. ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE THE SECURITY INSTRUMENT IS RECORDED."**

Not only was the Original Note NOT affixed to this Agreement, the Original Note that was supposed to be AFFIXED to this Agreement was not AFFIXED to this Agreement when it was attached to Nationstar's Complaint to foreclose in this instance, which means that the Exhibit (which is supposed to outweigh the pleadings in judicial proceedings) was deficient on its face ab initio.

Further, the balance of the instructions indicated that "ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE THE SECURITY INSTRUMENT IS RECORDED."  This was obviously not done either because Exhibit "C" contains no Osceola County Clerk's file stamp on it.

The document appears to have been prepared by Ruth Ruhl, a Texas attorney, who may have been entrusted to supervise the transaction, yet appears not to have done so and thus, would be complicit insofar as violating state Bar Association Rules regarding such practices.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

It further appears from the notarial execution that the signers of the attached Rider to the Loan Modification are different.   Regina Lashley, who now claims to be Vice President of Aurora signs as "Lender" and Pamela J. Pedersen now signs as Assistant Secretary of MERS and BOTH corporate seals are attached, when it is clearly obvious that MERS was already present in the original Mortgages.  The Nebraska Notary (Sandra J. Hanson)'s commission appears to have already expired.   Further, the Notarial Execution misrepresents MERS's appearance in this document by stating that it is a Mortgagee, without defining exactly WHAT a Mortgagee is, as is vaguely and ambiguously NOT defined in either original Mortgage loan executed by the Borrower, who is now claimed as the Defendant in this action.

It should be noted that in the previous case, Judge Ronald Legendre dismissed this case for lack of prosecution, which was filed for record on 05-05-2011 as CFN#2011060077.

**In 2013, right before the case at bar was commenced, Nationstar appears to have contracted with a third-party document manufacturer, Nationwide Title Clearing, Inc. ("NTC"), to utilize its employees to execute another apparent false and misrepresentative Assignment of Mortgage:**

**CFN#2013138857, electronically recorded on 09-03-2013
Document Prepared by: Erika Lance (NTC employee)
Signer: Tyler Driver (also an NTC employee), who claims he is a Vice President of Loan Documentation for Aurora Loan Services LLC, by Nationstar Mortgage LLC, its attorney-in-fact, attempting to assign the Mortgage ONLY, to Nationstar, using Nationstar's address in Lewisville, Texas for BOTH the Assignor (who is in Nebraska) and the Assignee (who is in Texas).  It is obvious that Erika Lance did not have attorney supervision here.
Notary: Nicole Baldwin (Florida Notary Commission No. EE 222285; active until 08-2015)
Witnesses: Daniel Thompson, Jessica Scheetz (also NTC employees)**

**THERE ARE NO RECORDED LIMITED POWERS OF ATTORNEY IN THE REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA THAT GIVE TYLER DRIVER THE AUTHORITY TO SIGN AS "VICE PRESIDENT OF LOAN DOCUMENTATION", LET ALONE ACT AS AN ATTORNEY-IN-FACT FOR ANYONE.**

**Thus, the foregoing Assignment appears to have been recorded for the purposes of giving Nationstar apparent standing to bring the current case at bar.**

**It is also interesting to note that during the pendency of this proceeding, another Assignment of Mortgage was recorded, this time involving the Second Mortgage loan, to wit:**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**CFN#2014020050, electronically recorded on 02-12-2014
Document Prepared by: LeeAnn Samuelson (employee of Indecomm Global Services)
Signer: Va Thao (also an employee of Indecomm Global Services), claiming to be an Assistant Secretary of MERS as nominee for Lehman Brothers Bank, FSB, a Federal Savings Bank, assigning what appears to be a "defaulted" loan involved as a Defendant (along with its agent MERS) in an active foreclosure proceeding, into a Structured Asset Securities Corporation Series 2006-S1 trust REMIC, whose Closing Date was February 28, 2006; almost eight (8) years too late to assign anything to a trust connected with Lehman Brothers.
Notary: Bao Cindy Fang (Minnesota Notary Public Commission Expires 01-31-2017).
Witnesses: Nhia Moua, Marcy Koopman (also employees of Indecomm Global Services)
The Assignor MERS, is being used with wonton disregard by Indecomm employees to commit perjury by falsely:**

> **(a.) intimating that Lehman Brothers has an address in Flint, Michigan;**
>
> **(b.) intimating that any of the signors have personal knowledge of what they are doing signing this document; and**
>
> **(c.) intimating that they are actually aware of any questionable "authority" they have been designated with (only by resolution and not power of attorney); and**
>
> **(d.) failed to state in the Notarial Execution WHO the signor is acting as a signing authority for what nominee?**

It is the Exminer's belief that it is highly likely that three of these signers do not speak fluent English, let alone understand what authority they claim to possess as signers on these documents. This document mill also contains this listing as an Exhibit under Indecomm Global Services. This Examiner has already made the Assistant Minnesota Attorney General aware of the activities of this entity in addition to Wells Fargo's Assignment Team's behaviors.  The foregoing Assignment of Mortgage is believed to present probable cause for violations of Florida RICO statutes as well as violations of IRS regulations, SEC regulations and for violations of 18 USC 371.  Further, this Assignment appears to have been executed without Notice to the Court during the pendency of the foreclosure proceedings, when in fact, MERS as nominee for Lehman Brothers Bank, FSB, was listed as a Defendant in the proceedings.  This certainly brings concern on the part of the Examiner as to fraud on the Court, as well as intent to defraud the United States government, as well as being suspect for securities fraud.  Because this document was electronically recorded, it also appears there is probable cause for violations of 18 USC 1343 (wire fraud). Both proceedings thus appear to be sham proceedings, which relied on said fraudulent documents with the intent to commit fraud on the Court and further the conspiracy to defraud the homeowner of his property in violation of Florida Criminal Code § 817.535.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Despite all of the foregoing issues, Judge Miller granted a Final Judgment of Foreclosure on July 7, 2014, which was filed for record on 07-11-2014 as CFN#2014098330.  A Certificate of Sale was issued to Nationstar Mortgage LLC on August 22, 2014 and a Certificate of Title was then issued and filed for record on 11-19-2014 as CFN#2014170542.  Thus, it is the belief of the Examiner that there is probable cause:

(1) Against all of the attorneys, alleged Plaintiffs, third parties and their employees participating in this chain of recorded documents, to act in concert through the use of recorded fraudulent documents for the purpose of depriving the homeowner of his property, in violation of Florida RICO statutes;

(2) Against NTC, its Directors, Officers and Supervisors, acting in concert with one another to cause to be created, executed and recorded in the public record a document known to contain false and misrepresentative statements, created with the purpose of providing standing to Nationstar Mortgage LLC, in furtherance of its intent to deprive the homeowner of his property, in violation of Florida Criminal Code § 817.535;

(3) Against Indecomm, its Directors, Officers and Supervisors, acting in concert with one another to cause to be created, executed and recorded in the public record a document known to contain false and misrepresentative statements, created with the purpose of conveying a second mortgage loan out of a debtor's estate in bankruptcy (Lehman Brothers), with the intent to aid and abet, using the electronic mails to aid in such conveyance into the land records, with the intent to commit fraud on the Court (during the pendency of the proceedings at bar), but also to aid and abet others in a conspiracy to commit securities fraud and income tax fraud, with the intent to defraud the United States government under 18 USC 371 and 1343;

(4) Against both NTC and Indecomm and its supervisors and employees who created and executed said documents without apparent attorney supervision in violation of the Florida Unauthorized Practice of Law Statutes;

(5) Against MERS, MERSCORP Holdings, Inc. and its nominees and nominee's agents and agents of MERSCORP/MERS members, for providing the alleged vehicle (alleged signing authority) in which to further the criminal enterprises of the members/users of the MERS® System, in furtherance to deprive the homeowner of his property, in violation of the Florida RICO statutes; and

(6) Against Aurora Loan Services LLC, whose employees and supervisors caused to be executed and recorded a self-assigned document containing misrepresentative and statements known to be false with the intent to deprive the homeowner of his property, in violation of Florida Criminal Code § 817.535.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 50:** *Bank of America, N.A. v. Christopher Heck*  (2012 CA 2674 MF)

**CASE NOTES: This case appears to have been filed with the Court on June 5, 2012 by Albertelli Law ("Albertelli") attorney Valerie Marie Pendino (FBN 81715) who also appears to have caused to be filed the Notice of Lis Pendens on 06-11-2012 as CFN#2012088533.  It further appears (as noted within the court case file) that the Defendant was in the process of attempting to do a short sale on his home; hence, the reason for the voluntary dismissal of this case on August 15, 2013 by Albertelli attorney Laurence R. Scudder (FBN 96505).**

Despite the dismissal of this case, there are multiple issues within this case that constitute probable cause for violation of Florida Criminal Code §817.535 involving the manufacture and recordation of three (3) Assignments of Mortgage, filed with the intent to deprive the homeowner of his property.  These will be discussed in relation to the claims made within the Complaint in the chronological order of filing (below).

**CFN#2011179459, electronically recorded on 12-28-2011**
**Document Prepared by: Rene Rosales (alleged Bank of America employee and also a known robosigner); returned to CoreLogic after recording.**
**Signers: Amanda Stackhouse and Chester Lovings (both alleged Bank of America employees and also known robosigners, claiming to be Assistant Secretaries of MERS (using Metro Detective Agency's Danville, Illinois address in an apparent attempt to hide the failed First Magnus Financial Corporation (Arizona), which filed bankruptcy in 2007; attempting what appears to be a self-assignment of BOTH the Note and Mortgage to their employer, Bank of America, N.A.**
**Notary: Navid Paktan (California Notary Commission # 1837714; expired on 03-11-2013), acknowledged on 12-23-2011 under penalty of perjury under California law.**
**Witnesses: Cynthia Santos, Swarupa Rani Slee (both alleged Bank of America employees and also known robosigners).**
**There are multiple issues with this Assignment of Mortgage, to wit:**

> **(1) When compared to the claims made within the Complaint, particularly at Paragraph 3, the person verifying under penalty of perjury (James M. Brandemarte, who claims to be an Assistant Vice President of Bank of America, N.A.) claims that Federal National Mortgage Association ("Fannie Mae") is the owner of the Note.  The Assignment of Mortgage discussed above, included with and apparently relied upon in the Complaint, contradicts these allegedly "verified" statements.  The Assignment purports to claim that Bank of America, N.A. owns the Note and Mortgage, if that is to be believed;**

> **(2) Since MERS does not own the Note, it cannot convey what it does not own; therefore, perjury is suspect as to which party is lying here (the attestant to the Complaint or the persons executing the Assignment, which purports otherwise;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) Bank of America, N.A. employees appear to have been directed by their employer to manufacture an Assignment of Mortgage and to cause it to be recorded to be relied upon to give it "standing" to file this action; and**

**(4) The promissory note ("Note") attached to this Complaint appears to contain suspect manufacturing issues, to wit:**

> **(a.) The endorsement stamp from First Magnus Financial Corporation ("First Magnus") signed by Rosalinda McCoy (who purports to be a "Closer" for First Magnus), is undated;**

> **(b.) It appears that a rubber stamp was inserted into the alleged indorsement-in-blank bearing the name "Countrywide Bank, N.A.";**

> **(c.) The endorsement as described in subparagraph (b.), supra, was found placed on a separate, unmarked page BEHIND the page that contained the Borrower's signature, when there was plenty of room to put the endorsement stamp on the preceding page. This scenario is typical of a computer manipulation process called "photoshopping" and is suspect for fraud on the Court in contravention to U. C. C. 3-302(2);**

> **(d.) Underneath the Borrower's signature on Page 3 of 3 of the Note are two endorsement stamps that appear to "pick up" where the suspect manufactured indorsement as described in subparagraph (c.) "left off". The stamps are side-by-side, which is another marker of computer manipulation, given the appearance of the black, shaded areas around the second endorsement-in-blank stamp, which, when magnified, will more than likely reveal pixelation (a breaking up) of the dots per inch, which would thus reveal a computer-generated addition of the stamps for the purposes of also committing fraud on the Court; and**

> **(e.) When a common bank check is endorsed to a subsequent party, a bank will not accept a piece of paper attached to the check as an indorsement to "pay to the order of" parties who signed underneath the payee signature; thus, the addition of the separated page is out of sequence and thus suspect, as BOTH of the endorsements are undated and do not prove effective and timely transfer of the Note to anyone.**

**If Fannie Mae purportedly owns the Note, then Bank of America would actually be the servicer for the Lender. Thus, Fannie Mae's representative should be making these assertions within the Complaint, and should be the Plaintiff in the case caption, as there is no "proof" attached wherein Bank of America, N.A. appears to be self-authenticating its authority.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

CFN#2013098002, electronically recorded on 06-25-2013
Document Prepared by: Julia Cortez (alleged Bank of America employee and also a known robosigner); returned to Nationstar Mortgage LLC ("Nationstar") after recording.
Signers: Sandra Cole and Matthew Gordon, both claiming to be Assistant Vice Presidents of Bank of America, N.A., in what appears to be a furtherance to advance the scheme wherein Bank of America, N.A. (based on the previous Assignment, above) claims to own the Note and Mortgage and is now assigning BOTH to Nationstar.
Notary: Monette L. Stevenson (California Notary Commission #1956374; still active until 10-14-2015), acknowledged on 04-04-2013 under penalty of perjury under California law.
Witnesses: Senita Wagoner, Aaron Simpson (both alleged Bank of America employees)
There are multiple issues with this Assignment of Mortgage, to wit:

>    (1) If MERS did not own the Note to begin with, then the Note did not transfer with first Assignment of Mortgage; thus, MERS is being used to further the conspiracy among multiple parties to violate Florida RICO statutes;

>    (2) This entire scheme appears to be facilitated and appears to act as the impetus for the homeowners of the property to conduct a short sale to take a loss of any equity they may have, potentially creating a deficiency for themselves, post-sale;

>    (3) Due to the issues contained within the first Assignment and the Complaint's Note appearance, both standing and Note transfers appear to be manufactured for the purpose of depriving the homeowner of his property, probable cause for violation of Florida Criminal Code § 817.535;

>    (4) If Bank of America used MERS to self-assign the Note and Mortgage, then if this were to be believed, then Bank of America would have fully transferred its interest to Nationstar.  This Assignment was done during the latter part of the pendency of these proceedings (more than likely without the Court's knowledge), which then would have removed Bank of America's standing to foreclose; and

>    (5) If Nationstar now owns the Note and Mortgage, how did Bank of America manage to claim standing while selling Fannie Mae's Note to Nationstar?

If Fannie Mae owned the Note, then neither Bank of America nor Nationstar had any apparent rights to enforce it without written proof that either had authority to act on Fannie Mae's behalf.  This brings us to the final chapter in this story. Despite the fact that Albertelli Law's attorneys were handling the proceedings during the pendency of this case, it appears that the homeowners did in fact sell their property.  It is unknown whether they were able to extinguish the entire note however.  Further, it appears that the final issues presented themselves with the following two (2) attorney-prepared recordations on behalf of Fannie Mae, drafted by Robert S. Kahane of Kahane & Associates (FBN 946850):

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

CFN#2013088242, electronically recorded on 06-04-2013
NOTE: This document was prepared by an attorney who operates a suspect foreclosure mill law firm in Plantation, Florida.
Signer: Thomas Earl Brown, who claims to be an Assistant Vice President of Bank of America, N.A., attempting to assign (on May 10, 2013) the Note and Mortgage (claiming what appears to be in handwriting, "Nationstar as it's in fact") to Fannie Mae.
Notary: Michael Ray Galloway (Texas Notary Commission Expires 03-18-2017)
Witnesses: James Morgan, Sarah Terry
There are multiple issues with this Assignment of Mortgage, to wit:

(1) A simple map search on the internet shows that the purported address of Bank of America, N.A. is in Fort Worth, which is in Tarrant County, Texas;

(2) The notarial jurat and execution states that the signing took place in Denton County, Texas (ironically where Nationstar's main offices are located);

(3) The notarial execution has the phrase, "is personally known" scratched out and the remaining identification space within the execution was left "blank";

(4) The signer did not specify that he was Nationstar's "Attorney-in-Fact"; he only stated "it's in fact", which leads the Examiner to believe that despite the fact an attorney drafted this document, its execution was not supervised by an attorney, which would thus constitute unauthorized practice of law, as this document is being used to facilitate a Satisfaction of Mortgage; and

(5) The Assignment appears to be backdated "in order to formalize and memorialize an assignment of the subject mortgage, which took place prior to March 13, 2013". This would appear to indicate that "the right hand did not know what the left hand was doing", manufacturing documents that appear to contradict each other for the apparent purpose of creating probable cause for violation of Florida Criminal Code § 817.535 and committing perjury on the land records in violation of Florida RICO statutes.

The Examiner believes that a Corrective Assignment of Mortgage may have sufficed here; however, given the fact that MERS was used to facilitate an apparent "cover up" of the failed bank and subsequent chain of custody of the Note, which as proffered, is also suspect for manufacturing, the entire Complaint would constitute a sham pleading; thus, fraud on the Court.  This leads up to the final recorded document, which also appears to be part of the facilitation of fraud (as the true holder and owner with the right to enforce was never proven) as it appears that Kahane also created the following document, which appears to have been executed on May 10, 2013 by the same group of signers at Bank of America, N.A. in Tarrant County, Texas:

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

CFN#2013088244, electronically recorded on 06-04-2013
NOTE: This document was prepared by an attorney who operates a suspect foreclosure mill law firm in Plantation, Florida.
Signer: Thomas Earl Brown, who claims to be an Assistant Vice President of Fannie Mae, attempting to release (on May 10, 2013) the Note and Mortgage.
Notary: Michael Ray Galloway (Texas Notary Commission Expires 03-18-2017)
Witnesses: James Morgan, Sarah Terry
Again, many of the same multiple issues exist with this Satisfaction of Mortgage, to wit:

    (1) A simple map search on the internet shows that the purported address of Bank of America, N.A. is in Fort Worth, which is in Tarrant County, Texas;

    (2) The notarial jurat and execution states that the signing took place in Denton County, Texas (ironically where Nationstar's main offices are located);

    (3) The notarial execution is undelineated as to the basis of identification;

    (4) The Assignment of Mortgage was nearly recorded in succession in the real property records with this document.  If the signer is an employee of Bank of America, where in the document does it state he is now an employee of, or in the alternative, given any authority to act on behalf of Fannie Mae, in executing this Satisfaction of Mortgage?;

    (5) This leads the Examiner to believe that despite the fact an attorney drafted this document, its execution was not only NOT supervised by an attorney, which would thus constitute unauthorized practice of law; but this document contains statements that could constitute perjury under the Florida RICO statutes,  as this document is being used to "persuade" the homeowner to liquidate his property, not knowing whether the proper party was being paid;

    (5) The Assignment referenced in this Document states, "and assigned in Official Records Book 74213, Page 1282", when in fact there is no such "Records Book"; and

    (6) This again would appear to indicate that:

        (a.) "the right hand did not know what the left hand was doing"; and

        (b.) Kahane & Associates was in such a hurry to manufacture the Assignment and Satisfaction to facilitate this transaction that it apparently committed scrivener's errors and errors relating to the confusion created by all of these multiple Assignments; and

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(7) As the result of these multiple Assignments, and their reliance to commit acts to the detriment of the property owner by forcing him to liquidate in favor of a foreclosure proceeding that is at best, suspect for fraud on the Court and in the real property records of Osceola County, Florida, that multiple issues exist for probable cause for multiple violations of Florida Criminal Code § 817.535 and committing perjury on the land records in violation of Florida RICO statutes.**

**There is nothing to indicate that the property owner would be indemnified from any future economic harm based on issues within the chain of title created through no fault of his own. Further, because the sale appears to have negated the foreclosure proceeding, none of these existing issues could have been proven to exist; thus, the foregoing issues of probable cause for a grand jury to decide.**

**Given the scenario presented here, coupled with the fact that Fannie Mae is one of the founders of the MERS® System and is a stockholder in MERSCORP Holdings, Inc. (MERS's parent corporation), that MERS and Fannie Mae were part of this conspiracy to defraud the homeowner by and through these same issues.**

**Case No. 51:** *Bank of America, N.A. v. Kamlawati Rewah et al* **(2014 CA 0580 MF)**

**CASE NOTES: This case appears to have had precedence from two (2) previous case filings, with this case being filed on February 25, 2014 by Albertelli Law ("Albertelli") attorney Sean Saval (FBN 96500), who also appears to have filed the Notice of Lis Pendens and caused it to be recorded on 03-07-2014 as CFN#2014033357. This case appears to rely on two previous Assignments of Mortgage, which are discussed below.**

This case was preceded by Case No. 2012 CA 4652 MF (Notice of Lis Pendens filed for record on 10-11-2012 as CFN#2012147208), filed by Henny K. Shomar (FBN 91226) of Tripp Scott, P.A., which ended up being voluntarily dismissed and refiled again as Case No. 2013 CA 2023 MF (Notice of Lis Pendens filed for record on 05-30-2013 as CFN#2013086224), filed by Donnell Wright of Elizabeth Wellborn, P.A. law firm; which was also voluntarily dismissed on November 25, 2014. It appears that this second case was running in tandem with the current case at bar.

The Plaintiff claims that it is in physical possession of the Note endorsed in blank ("bearer paper"), claiming to be the holder of the Note (whether the Plaintiff has the right to enforce the Note however, given the precedent circumstances is still in question, as this particular case is still active. The originating MERS Lender is Aegis Wholesale Corporation of Houston, Texas, which filed for bankruptcy in August of 2007.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

At issue with the "Possession Certificate" attached to the Complaint is that the attestant does not state where his/her physical location is. The attestant could have contacted someone in Simi Valley, California from Fort Worth, Texas for all anyone knows. This template form could be filled in for anyone, not specific to this case; thus, it is also suspect for manufacturing in an effort to led credence to the Complaint. It is not notarized, even though the declarant states per Florida statutes. This document cannot be assumed to be self-authenticating.

Further, the six-page Note appears to have been designed to accommodate endorsements underneath the Borrower's signature on Page 6 of 6 (nearly 95% of the page is blank). There are NO endorsements on this page whatsoever. Any time an ALLONGE TO NOTE is attached, it creates suspicion for manufacture because, as previously noted in Section One of this report, the Florida Mortgage Bankers Association indicated to Judge Bailey that the notes were "eliminated"; thus, if the Notes were shredded after they were converted into an electronic image, how then can you place indorsements on them if they don't exist? One would have to reprint the image and then affix endorsement stamps to the image file, which is NOT the Original Note. Aegis Mortgage loans typically end up with a Merrill Lynch Mortgage Investors trust REMIC or some other variation thereof, wherein Bank of America ends up servicing the loan (NOT owning it). In this instance, the ALLONGE TO NOTE shows undated endorsements, unidentified and non-specific bar coding, as well as an extra page containing two Countrywide-related indorsement stamps, which appear to be manufactured onto a separate sheet of paper for the purposes of "manufacturing standing" to foreclose.

Additionally, on the first page of the ALLONGE TO NOTE, it is unknown WHO filled out the indorsement-in-blank; whether the Aegis officer did it or whether someone from Countrywide affixed a rubber stamp is unknown and without a date, effective transfer cannot be authenticated. If U. C. C. 3-302(2) were to be adhered to, this ALLONGE TO NOTE would be unnecessary. The Florida courts appear to have gotten lax regarding enforcement of the Uniform Commercial Code in favor of "clearing the docket".

**Further, reliance on the suspect recorded assignments to "enhance" a case with the intent of perfecting standing would constitute fraud on the Court and that appears to be the case here, as explained further in the following analysis of the Assignments of Mortgage:**

**CFN#2011104665, recorded by presentment on 08-01-2011**
**Document Prepared by: Diana DeAvila (alleged Bank of America employee). The document appears to have been mailed to CoreLogic for archival purposes after recording.**
**Signers: Bud Kamyabi and Luis Roldan (also alleged Bank of America employees), both claiming to be Assistant Secretaries of MERS as a standalone Assignor in an apparent attempt to self-assign both the Mortgage and Note to its own servicing arm.**
**Notary: Irma Diaz (California Notary Commission # 1903988; expired 09-13-2014), acknowledged under penalty of perjury under California law.**
**Witnesses: Chester Lovings, Beverly Brooks**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Issues: Major signature variations of Lovings, Kamyabi's and Roldan's signatures suggest surrogate signing; use of a MERS-prohibited address in Ocala, Florida (prohibited as of December 6, 2010); Assignee's address is that of Federal National Mortgage Association ("Fannie Mae"), which is undisclosed; thus, false and misrepresentative declarations under penalty of perjury in this Assignment; further, MERS cannot assign ( even through its representatives) something it does not have an interest in, which is the Note.**

**BAC/Bank of America employees then caused this document to be recorded with the intent, in conjunction with the first foreclosure law firm (Tripp Scott, see the next Corrective Assignment below), to deprive the homeowners of their property, probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.**

**CFN#2012085108, recorded by presentment on 06-04-2012**
**Document Prepared by: Tripp Scott, P.A. (known foreclosure law firm)**
**Signer: Cecilia Rodriguez (also alleged Bank of America employee), claiming to be an Assistant Secretary of MERS as nominee for then-defunct (and in bankruptcy) Aegis Wholesale Corporation, as Assignor, in an apparent attempt to self-assign both the Mortgage and Note to Bank of America, N.A., highly likely because of the suspect appearance of the first recorded Assignment. Rodriguez is a known robosigner.**
**Notary: Evette Ohanian (California Notary Commission # 1961990; still active until 12-27-2015), acknowledged under penalty of perjury under California law.**
**Witnesses: Aida Duenas, Mary Ann Hierman (both Bank of America employees and known robosigners).**
**Issues: Major address variation of Assignee (eliminating suspicion of the use of Fannie Mae's address in favor of Bank of America's address). Use of Metro Detective Agency's Danville, Illinois address to "cover up" the chain of title from Aegis Wholesale Corporation's Houston, Texas address; this Assignment says nothing about the Assignment of the Note, only the Mortgage.  Who then has the Note?**

With MERS involved in the equation, the Note would be assigned to Fannie Mae, Freddie Mac, Ginnie Mae or a REMIC trust.  The intent is to securitize the Note.  It would appear that the more a foreclosing law firm can confuse the issues, while slandering the homeowner with statements like, "deadbeat" and "free and clear house", the more impetus the Court has to award the bank the home whether the chain of title is convoluted or not.  Is it really the Court's problem at that point?  Thus, the Corrective Assignment appears to compound the issues of who actually has the Note, if Bank of America, N.A. was not assigned the Note in the first place.  The use of the Fannie Mae address would lead the Examiner to believe that Fannie Mae (and a hidden Fannie Mae-administered REMIC trust) actually own the Note; thus, the false and misrepresentative statements contained in the Corrective Assignment are equally suspect despite the fact they were created by the foreclosing law firm, probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 52:** *U. S. Bank, N.A., as Trustee for JPMorgan Alternative Loan Trust 2007-S1 v. Ti Tang et al*  (2013 CA 1304 MF)

**This case appears to have been initiated by Butler & Hosch, P.A.'s ("Butler") David M. Cozad (FBN 333920) who submitted a verified Complaint allegedly attested to as fact by Timothy Davison, who claims to be Vice President of JPMorgan Chase Bank, N.A. as attorney-in-fact for the Plaintiff (who is a Trustee for JPMorgan's sponsored trust REMIC). It further appears that Cozad also filed the Notice of Lis Pendens and caused it to be recorded on 04-09-2013 as CFN#2013055084.  This case appears to have been preceded by the recording of two (2) Butler-generated Assignments, to wit:**

**CFN#2010070301, recorded by presentment on 05-18-2010**
**Document Prepared by: Unknown party at Butler & Hosch, P.A.'s Dallas, Texas office**
**Signer: Kathy E. Sanchez (Name: Kathy E. Sanchez - Texas Notary ID: 5045293; commission still active until May 2, 2017; P. O. Box 867463, Plano, TX 75086; Collin County, TX; Bonding Company: NNA Insurance Services; Surety Company: Merchants Bonding Company (Mutual); claiming to be a Vice President of MERS as nominee for AMCAP Mortgage, Inc. (which ceased doing business in Florida on December 4, 2007) in an Assignment of Mortgage executed on May 11, 2010.**
**Notary: Jennifer J. Swoope (Texas Notary Commission ID: 125243609; 4502 Kensington Court, Grand Prairie, TX 75052; Commission Expires 02-11-2018; Dallas County, American Association of Notaries, Inc.; Surety Company: Western Surety Company)**



**It appears that this Texas Notary performs mobile closings of residential real estate at present; however, her former employers included ServiceLink (LPS now known as a Black Knight company, Vendor Resource Management) and Butler & Hosch, P.A., which means that it was highly likely that Swoope and Sanchez (the Signer) were employees of Butler & Hosch, P.A. and that Sanchez was NOT a Vice President of MERS as she claims (according to MERSCORP/MERS policies, signers of documents claiming to be a Vice President are actually supposed to be a Vice President of the company that has an executory contract with MERSCORP/MERS; this obviously was NOT the case).**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Thus, the signer, as well as the information contained within the language of the Assignment, is suspect for perjury under Florida RICO statutes.  There are other issues with this Assignment, when compared to what is stated in the Complaint, to wit:

(1) MERS does not have an interest in the Note (by its own admission); thus, it cannot transfer something it doesn't own;

(2) The Assignee of this Assignment is Chase Home Finance, LLC, a JPMorgan Chase servicer. Instead of making sure that the documentation matched up on the proffered Note on the Complaint, the indorsement-in-blank under the Borrower's signatures on Page 3 of 3 of the Note was rubber stamped "VOID" and another rubber stamp states "see attached allonge";

(3) The page following appears to be a reverse image of the previous page, which is accompanied by an unidentified bar code and the "VOID" stamp does not show through as the rubber stamped, "see attached allonge" does show through;

(4) The page following the blank page (highly likely the back side of the Note) is entitled: ENDORSEMENT ALLONGE TO NOTE.  This page is dated the same date as the Note (03-09-2007) and is signed by Judith Willette who purport to be an "Office Manager" of AMCAP Mortgage, Inc. and it further appears that the endorsement is a special indorsement that shows an affixed rubber stamp that says "BSM Financial LP" (and NOT Chase Home Finance, LLC). At this juncture, the Assignment of Mortgage (and Note) do NOT appear to agree with each other;

(5) The next page appears to be nearly a "mirror image" of the AMCAP Mortgage, Inc. previous endorsement page.  It shows a "John Wioht" (spelling illegible) as Vice President of BSM Financial, LP, providing a special endorsement to JPMorgan Chase Bank, N.A. (by rubber stamp), dated "03-13-07", as if to tie all of the parties together; however, the identical use of the same parties' endorsement page makes the two pages suspect for manufacturing for the purposes of attempting to create a chain of custody of the Note;

(6) On the following page, there are two (2) "Allonges", BOTH are dated 5/25/2007. The first "Allonge" purports to transfer the Note from JPMorgan Chase Bank, N.A. to Chase Home Finance, LLC and the second "Allonge" purports to be an indorsement-in-blank from Chase Home Finance, LLC to an unknown entity.  The second Allonge appears to be signed by "Angela Nolan", whose deposition transcript is included as a USB Exhibit on the flash drive by reference herein;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(7) The Closing Date of the Trust REMIC Plaintiff is May 30, 2007; however, even though the endorsements issued from Chase are dated prior to the Closing Date, there is nothing in the Complaint to indicate the effective date of transfer into the Trust REMIC; and**

**(8) Still, there is nothing in the foregoing Assignment of Mortgage (and Note) showing that the trust REMIC was the Assignee.**

**Thus, Butler & Hosch, P.A. created a "Corrective Assignment of Mortgage", to wit:**

**CFN#2011163864, recorded by presentment on 11-28-2011**
**Signer: Kathy E. Sanchez (Name: Kathy E. Sanchez - Texas Notary ID: 5045293; commission still active until May 2, 2017; P. O. Box 867463, Plano, TX 75086; Collin County, TX; Bonding Company: NNA Insurance Services; Surety Company: Merchants Bonding Company (Mutual); claiming to be a Vice President of MERS as nominee for AMCAP Mortgage, Inc. (which ceased doing business in Florida on December 4, 2007) in an Assignment of Mortgage executed on May 11, 2010.**
**Notary: Paige K. Myrlin (Texas Commission Expired 07-22-2014)**
**Witnesses: None**

**Thus, in order to "create" the appearance that all of the document chain of custody were in order, the Assignment had to "match" as well, which appears to be the case here. Unfortunately, the Assignment (Corrective or otherwise), appears to have been manufactured by Butler & Hosch, P.A. who then appeared to rely on their own handiwork for the purposes of effectuating foreclosure on the property, probable cause for violation of Florida Criminal Code § 817.535. The fact that MERS was utilized in the Assignment in an attempt to convey something it does not have a true "beneficial interest" in (the Note), the misrepresentations contained in the Assignments utilizing MERS to "cover up" the chain of title is probable cause for violation of Florida RICO statutes.**

**On February 12, 2014, Amber Johnson (FBN 96007), on behalf of Adam Diaz (FBN 98379) for the SDH Legal Group, P.A., filed a Notice of Dismissal and Discharge of Lis Pendens. The language contained in the document appears to indicate there was a settlement in the case. A Release of Mortgage was then filed, which further contains more suspect issues, to wit:**

**CFN#2014029168, electronically recorded on 02-27-2014**
**Signer: Sandra M. Armenta (likely a T.D. Service Company employee), claiming to sign as Assistant Secretary for the REMIC trust by Select Portfolio Servicing, Inc., its Attorney-in-fact. Armenia also prepared the contract, highly likely without attorney supervision.**
**Notary: M. Tulio (California Notary Commission # 1947006; active until 08-16-2015)**
**Witnesses: None (two may be required on releases of lien in Florida)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are multiple issues with this Release of Mortgage, to wit:

(1) Due to the settlement, none of the foregoing issues were brought to light through discovery; thus, this Release is equally as suspect for depriving the homeowner of his property (namely, his personal property, funds, etc. used to liquidate the alleged debt by a creditor that is only at this juncture unproven);

(2) There is nothing in this document that indicates that the NOTE was paid in full and cancelled; thus, the note could still be in the alleged trust's portfolio;

(3) After an exhaustive search of the real property records of Osceola County, Florida, this Examiner cannot locate a Limited Power of Attorney recorded wherein Select Portfolio Servicing, Inc. (a Utah corporation), has been given any authority to assign or release any mortgages or loans on behalf of this 2007-S1 REMIC trust;

(4) The document was prepared and executed in California by person(s) not related to Select Portfolio Servicing, Inc. in an apparent attempt to misrepresent the release of the Mortgage (and Note); and

(5) It is also highly likely that the trust REMIC received third-party insurance payments; when potentially applied to the Borrower's loan balance (if in fact the REMIC actually could prove it owned the loan), would have virtually rendered it fully paid BEFORE the settlement; thus, there is probable cause to believe that, given the circumstances, that T. D. Service Company, in concert with Select Portfolio Servicing, Inc. conspired to create a document that was false and misrepresentative with the intent to deprive the homeowner of their personal property, probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes.

The authorized capacity declared within this document under penalty of perjury under California law appears to be false, based on the lack of power of attorney as declared, further giving basis to the Florida RICO claims herein.

One of the Examiners researching this case also included copies of Sanchez's other "claims" of authority for different entities, when she may have actually been in the employ of Butler & Hosch, P.A., which, if found to contain fraudulent and misrepresentative statements, would subject the law firm and its employees to Florida RICO claims as well. T. D. Service Company employees may also be liable for unauthorized practice of law charges as well.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 53:** *HSBC Bank USA, N.A., as Trustee for Fremont Home Loan Trust 2006-A, Mortgage-Backed Certificates 2006-A v. Fernando Vazquez et al* **(2012 CA 1809)**

**This case appears to have been filed on April 17, 2012 by Clarfield, Ikon, Solomone & Pincus, P.L.'s ("Clarfield") Steven J. Clarfield (FBN 892610), despite the fact that the signature does not appear to represent that attorney, there is a check mark next to his name. Clearfield also appears to have caused the filing of the Notice of Lis Pendens on 04-19-2012 as CFN#2012056978.  There are additional case notes attached to this case file by the Examiner which demonstrate the trust particulars.  Unfortunately, the Assignment of Mortgage that appears to have been filed in connection with this case was not filed until AFTER the Complaint was filed, as noted below:**

**CFN#2012062739, recorded by presentment on 04-27-2012**
**Document Prepared By: Nadine Alvarez (alleged Ocwen Loan Servicing LLC employee)**
**Signer: Yamali Martinez (also an alleged Ocwen Loan Servicing LLC employee), signing as Assistant Secretary of MERS (the language within the Assignment dictates that MERS is a nominee for Fremont Investment & Loan ("Fremont"); using a MERS Flint, MI address to misrepresent the real address of Fremont), as Assignor to the trust REMIC Plaintiff, as Assignee.**
**Notary: Krysta Sebastian (Florida Notary Commission No. EE 050513; expires 12-20-2014)**
**Witnesses: Christina T. Daugirdas (known Ocwen document preparer), Debra Spruill (known Ocwen employee and Florida notary)**

**There are multiple issues with this Assignment when compared with the Complaint, to wit:**

> **(1) The Closing Date of this REMIC trust was May 10, 2006, nearly six years PRIOR to this Assignment date; thus, the transfer contravenes New York trust law and is void;**

> **(2) It appears that only the Mortgage was Assigned to the REMIC trust by MERS; there is no endorsement on Page 4 of 4 of the Note that would demonstrate "bearer paper;**

> **(3) There is an extra page that appears to be inserted behind the last page of the Note.  It appears to contain an indorsement-in-blank executed by Fremont Vice President Michael Koch, without recourse.  It is undated; thus, no proven effective date of transfer into the trust;**

> **(4) The page containing this indorsement-in-blank is not identified as an Allonge. Even if it were, there if plenty of room under the Borrower's signatures on the last page of the Note to affix the indorsement-in-blank stamp; thus, neither comports to U. C. C. 3-302(2); and**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(5) The signing team at Ocwen Loan Servicing, LLC appears to be attempting to represent the interests of the Trustee, who is administering a trust pool of bond holders that contain non-recourse certificates (representing debt and not equity).**

The signers at Ocwen Loan Servicing, LLC are simply robosigning and manufacturing this document in an apparent attempt to make the mortgage comport to the furtherance of the Complaint's Note, probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.

Clarfield's Bradley B. Smith (FBN 76676) appears to have filed and caused to be recorded a Notice of Voluntary Dismissal and Discharge of Lis Pendens as CFN#2013007865 on 01-14-2013. The preceding probable cause however does not negate the intent of the parties to deprive the homeowners of their property using a document known to contain false and misrepresentative information. By virtue of the fact that this appears to involve multiple actors, the Examiner believes that RICO charges would be applicable. Because it is apparent that the Ocwen Loan Servicing LLC team is not supervised by an attorney, there is probable cause to assert the unauthorized practice of law in this instance.

**Case No. 54:** *The Bank of New York Mellon F/K/A The Bank of New York as Successor in Interest to JPMorgan Chase Bank, N.A., as Trustee for the Benefit of the Certificateholders of Popular ABS, Inc. Mortgage Pass-Through Certificates Series 2006-B v. Jesus M. Garcia et al* **(2012 CA 3093 MF)**

**This case appears to have been filed on July 3, 2012 by Robertson, Anschutz & Schneid, P.L.'s ("RA&S") Melissa Konick (FBN 17569) on behalf of RA&S attorney Jonathan Meisels (FBN 29235). Konick also appears to have caused the filing of the Notice of Lis Pendens on 07-06-2012 as CFN#2012099963. There appears to be an Assignment of Mortgage that appears to have been filed in in close proximity with the filing of this Complaint, as noted below:**

**CFN#2012032272, recorded by presentment on 03-07-2012**
**Document Prepared By: Nadine Alvarez (alleged Ocwen Loan Servicing LLC employee)**
**Signer: Noemi Morales (also an alleged Ocwen Loan Servicing LLC employee), signing as Assistant Secretary of MERS (the language within the Assignment dictates that MERS is a nominee for Taylor Bean & Whitaker ("TB&W"); using a MERS Flint, MI address to misrepresent the real address of defunct TB&W), as Assignor to the trust REMIC Plaintiff, as Assignee.**
**Notary: Cory Messer (Florida Notary Commission No. EE 097259; expires 05-25-2015)**
**Witnesses: Christina T. Daugirdas (known Ocwen document preparer), Vanessa Pino (known Ocwen employee)**

**244 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**There are multiple issues with this Assignment when compared with the Complaint, to wit:**

**(1) The Closing Date of this REMIC trust was March 29, 2006, OVER SIX YEARS PRIOR to <u>this Assignment date</u>; thus, the transfer contravenes New York trust law and is void (New York Estates, Powers & Trusts § 7-2.4);**

**(2) It appears that only the Mortgage was Assigned to the REMIC trust by MERS; the Assignment appears to "skip over" the entire chain of custody of the Note;**

**(3) Of the three indorsement stamps appearing below the Borrower's signature, none of them are dated; thus, there is no effective date of transfer of the Note to verify what the Assignment purports to claim;**

**(4) The first endorsement in the chain of custody of the Note appears to be what started out as an indorsement-in-blank by TB&W Mortgage Corp.  In then appears that a rubber stamp naming, "Popular Financial Services, LLC" was affixed within the first endorsement stamp;**

**(5) The second endorsement appears to be an indorsement-in-blank from "Popular Financial Services, LLC, which appears below the "Page 4 of 4" sequence margin;**

**(6) There appears a third restrictive endorsement to the Plaintiff trust REMIC; however, there are issues with this indorsement, to wit:**

**(a.) The second endorsement-in-blank should have been filled out to "Popular ABS, Inc." (and dated) in order to make the third endorsement to the trust operative; and**

**(b.) Because the first indorsement-in-blank was undated, effective date of transfer to Popular ABS, Inc. is unknown and does not compare to the purported claims of the Assignment of Mortgage, to coincide with the assigning of the Note;**

**(7) The signing team at Ocwen Loan Servicing, LLC appears to be attempting to represent the interests of the Trustee, who is administering a trust pool of bond holders that contain non-recourse certificates (representing debt and not equity).**

The signers at Ocwen Loan Servicing, LLC are simply robosigning and manufacturing this document in an apparent attempt to make the mortgage comport to the furtherance of the Complaint's Note, probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes. Because it is apparent that the Ocwen Loan Servicing LLC team is not supervised by an attorney, there is probable cause to assert the unauthorized practice of law in this instance.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Due to the fact that this appears to be a MERS-originated Mortgage, MERS is also deemed cul-pable under the same RICO violations for allowing its "members" to utilize it to commit document manufacturing abuses as a precursor to the commission of Florida Criminal Code § 817.535.

RA&S's Jamie Epstein (FBN 68691) appears to have filed and caused to be recorded a Notice of Voluntary Dismissal as CFN#2012182379 on 12-06-2012.  The preceding probable cause how-ever does not negate the intent of the parties to deprive the homeowners of their property using a document known to contain false and misrepresentative information.  By virtue of the fact that this appears to involve multiple actors, the Examiner believes that RICO charges would be ap-plicable, especially against MERS for allowing Owen signers to utilize is as a misrepresentative cover for TB&W, who was in bankruptcy at the time and whose CEO, Lee Farkas, was sentenced to 30 years in prison.

**Case No. 55:** ***Bank of America, N.A., Successor by merger to BAC Home Loans Servicing, LP v. Timothy W. Cope et al*  (2011 CA 3485 MF)**

**CFN#2011107812, recorded by presentment on 08-08-2011**
**This document was prepared by Tanya D. Simpson of Smith, Hiatt & Diaz, P.A. ("SH&D") and sent to BAC Home Loans Servicing, LP in Phoenix, Arizona for execution in what ap-pears to be a self-assignment of Mortgage.  The signer, Christine Daymude, affixed her ini-tials to the document in such a manner as to exhibit a marker of robosigning, claiming to be an Assistant Secretary of MERS as nominee for defunct Franklin Bank, SSB, which was closed by Texas regulators and the FDIC on November 7, 2008.  BAC Home Loans Servic-ing had already been subsumed into Bank of America, N.A. prior to the drafting of this As-signment of Mortgage.   Bank of America, N.A. is likely the Servicer of the loan, with no proof of ownership with the right to enforce.  The Notice of Lis Pendens was filed by Joan-na C. Evans (FBN43784) of SH&D on 10-28-2011 as CFN#2011150833.**

The Verification shown on the Complaint signed by Ariell Dremsek appears as if a teenager signed it.  It is highly likely that she had personal knowledge of the facts stated therein, since SH&D drafted the Complaint based on computer-generated suspect hearsay information.  Fur-ther, the unrecorded Assignment of Mortgage, manufactured by an SD&H attorney, appears to have been manufactured for the purposes of filing the Complaint; it was included in the Com-plaint, unrecorded.  The promissory Note has two endorsement stamps on it, the first endorsed from Franklin Bank, SSB to Countrywide Bank, N.A.   The second endorsement is a a rubber stamp endorsement that shows "Pay to the order of" on the first line, "Without Recourse" on the second line and "Countrywide Bank, N.A. on the first line, followed by Laurie Meder's rubber-stamped signature.  Neither endorsement is dated; thus, there is no effective date of transfer to any other entity.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Further, there is a bleed-through on the rubber stamp from Franklin Bank, SSB which does not match the reverse side of the document on a separate sheet of paper, which could have been inserted into the file. Further, the December 13, 2011 Affidavit of Dareen P. Ivanoff, submitted to the Court by SD&H fails to demonstrate that the Affiant had personal knowledge of the effective transfer of the loan to the Plaintiff; further attesting to fees that did not include full accounting of sums paid on the loan by third-party payers.

Further, there is an "Account Information Statement" attached to the complaint that shows what appears to be computer-generated $15.00 charges for "inspections" done on the property which has been proven in other jurisdictions (to the knowledge of the Examiner) to be fraudulent charges, as these so-called inspections never took place.  The suspect self-assignment leads the Examiner to believe that the undated endorsements placed on the Note offered as evidence were manufactured.

There are no recorded Assignments that support effective transfer of the Note into a trust (MERS = Securitization) REMIC and the manufactured Assignment of Mortgage, prepared by the initiating law firm, is evidence of probable cause for violation of Florida Criminal Code Section 817.535.

Ablitt Scofield, P.C. was substituted as counsel for the Plaintiff in this case. Giuseppe Cataudella (FBN88976) appears for the renamed Connolly law firm.  A Joint Stipulation for Consent to a Final Judgment of Foreclosure of Mortgage appears to have been signed by counsel for both sides and filed in open court on November 18, 2013; was certified by the Clerk, but was NOT signed by the judge. It is part of the court record.

Further, the alleged Original Note provided to the Court in this instance is faded (the indorsement) as compared to the original Note.  The case ended up being settled and the sale vacated due to a confirmed loan modification between the parties.

However, based on the suspect manufactured Assignment to give Bank of America, N.A. authority to grant a loan modification there is probable cause to believe a violation of Florida Criminal Code Section 817.535 has occurred and that other case evidence supports Florida RICO violations for involvement among multiple law parties including Ablitt/Connolly, who is already suspect for document alterations.  The Frenkel law firm was handling the case at the time of the loan modification and vacating of the sale.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 56:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders CWALT, Inc. Alternative Loan Trust 2006-35CB, Mortgage Pass-Through Certificates, Series 2006-35CB v. Eliseo Galvan et al* **(2011 CA 3636 MF)**

**CFN#2011119119, recorded by presentment on 08-29-2011**
**This document was prepared by Tanya D. Simpson of Smith, Hiatt & Diaz, P.A. ("SH&D") and sent to Bank of America, N.A. in Ventura County, California for execution by known robosignor Mercedes Judilla, who claims to be an Assistant Secretary of MERS as nominee for defunct Dove Capital Corporation (a California corporation), dated August 9, 2011. There are multiple suspect issues involving the Mortgage and Note herein, to wit:**

> **(1) Dove Capital Corporation's license (C2311860) was suspended by the California Secretary of State on May 8, 2001; thus, it lacked capacity to make loans as "a Cali fornia corporation" as shown on the Mortgage loan;**

> **(2) Despite the revocation of its corporate capacity, Dove Capital continued to operate in Florida until its license was revoked on September 25, 2009;**

> **(3) Further, the trust REMIC's Closing Date was October 27, 2006; thus, effective transfer into this trust REMIC was void in contravention of New York trust law;**

> **(4) Thus, the Verification signed by Ronald W. Stewart on behalf of Bank of America, N.A. on October 12, 2011, claiming it had rights to foreclose, appears to be false;**

> **(5) Luciana A. Martinez (FBN86125) claimed that the Verification was true.  She also filed the Notice of Lis Pendens on 10-25-2011 as CFN#2011149271; proof of intent to rely on the suspect Assignment of Mortgage with the intent to deprive the Galvan's of their property in violation of Florida Criminal Code Section 817.535;**

> **(6) The Note contained plenty of room below the Borrower's signatures to place sufficient indorsements to the trust.  However, an attached Allonge to Note appears to have been manufactured with the customarily seen Countrywide stamps affixed to it (which ReconTrust Company, N.A. had access to in Ventura County, California and could have made the entire document up.   Neither the Allonge to Note nor the attached endorsements were dated; thus, no effective transfer is shown into the trust; and**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(7) The Affidavit submitted in the case by Bank of America's Judy Johnson fails to demonstrate effective transfer of the Note to the trust REMIC without violating its PSA, using vague and ambiguous language that appears to have been drafted by counsel for her signature.**

Ablitt Scofield again (as part of an apparent pattern) filed a Notice of Appearance on June 20, 2013 by Michel A. Morgan (FBN102764).  Ablitt Scofield ended up voluntarily dismissing the case on July 8, 2013 (apparently due to overwhelming opposition by Defendant's counsel).  The case is closed and has not been refiled; still the intent to deprive the homeowners of their property appears relevant in light of the manufactured assignment.

**Case No. 57:** *Bank of America, N.A. v. Eric J. Waddell et al*  **(2010 CA 2323 MF)**

The Defendants appear to have executed a Mortgage and Note in favor of Bank of America, N.A., the Plaintiff in this action.  The first Adjustable Rate Note however, does NOT contain an indorsement-in-blank on it as the second proffered version by Smith Hiatt & Diaz Legal Group, P.A. purports to offer.  Tanya D. Simpson (FBN 36523), who has prepared various assignments of mortgage in this Report, appears to have filed the Notice of Lis Pendens. In her Motion for Summary Judgment however, Simpson's Note exhibit appears to have an indorsement-in-blank included ABOVE the Borrower's signature (not below, as is customary for endorsement on checks, etc.). The endorsement stamp is undated and shows the stamp containing the signature of Christina M. Schmitt, who purports to be an Assistant Vice President of Bank of America, N.A., indorsing the Note to an unknown party.   This would render the document transferrable and thus suspect that the Party Plaintiff has assigned its rights to enforce the Note elsewhere, otherwise, why the endorsement stamp on this Note as opposed to the originally proffered Note?

SH&D's Jennifer Schick (FBN 195790) then filed a Motion to Amend Complaint on November 30, 2011.  Within the Complaint is the Note with the indorsement-in-blank stamp on it as well as the original mortgage. The Verification however, is not signed by the Plaintiff but rather by someone representing to be an Assistant Vice President of Bank of America, N.A. as Successor by Merger to BAC Home Loans Servicing, LP, who was never an assignee of anything since the pendency of this case began.  Further, in a subsequently-submitted Affidavit, there is lacking information as to whether the affiant, Megan Nicole Oxendale (who appears to be signing what is put in front of her by SH&D attorneys), as to her specific personal knowledge of all of the details of the Waddell loan and where the information actually came from. Entry of discovery in the case forced an apparent change in counsel to Ablitt Scofield's Menina Cohen (again, a pattern of behavior here).  Leslie Rushing (FBN98106) took over for Cohen as a Connolly attorney in the case.  Connolly then was substituted by the Plaintiff with Frenkel Lambert Weiss Weiman & Gordon LLP (again, the pattern of typical behavior).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Court ruled in favor of the Plaintiff bank and the property was disposed of and Certificate of Sale issued forthwith.  There may be potential issues in this case with perjury under the Florida RICO statutes.

**Case No. 58:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP*
*v. Fidel Petisco et al* **(2010 CA 2620 MF)**

There do NOT appear to be any <u>recorded</u> assignments of Mortgage involved in this case. An un-recorded assignment of mortgage however, was filed during the pendency of the case; to date it has not been recorded. Tanya D. Simpson (FBN36523) appears to have handled the initial Complaint filing.  The problem with the filing however is Simpson is attempting Verification on her own and is not personally involved with the case (only retained by the Plaintiff servicer); thus, her Complaint fails as to her personal knowledge of the case.

Simpson attached what is purported to be the ORIGINAL NOTE to the Complaint, which appears to have been executed by the Defendants in favor of Countrywide Bank, FSB and contains no endorsements on the last page of the actual Note.   This is a MERS-originated Mortgage, which would indicate that the real party in interest (a trust REMIC, since MERS = Securitization) is not present in this case.

Christine N. Green (FBN65347) submitted an Affidavit of Indebtedness, which does not appear to include any third-party payor notations.  Glen M. Lindsay (FBN59200) filed a Memorandum of Law in the case, which contained a lot of out-of-state case references, followed by a "Composite B" exhibit … also the Original Note, which now contains an indorsement-in-blank stamp by Laurie Meder, which Bank of America's ReconTrust unit had access to affix to the Note to make it appear more "palatable" to the Court.  The endorsement is undated however and does not prove effective transfer of the Note. Rick A. Garcia (FBN 78187); Luciana A. Martinez (FBN86125); Joanna C. Evans (FBN43784); Michael L. Eisenband (FBN94235); Ralph W. Confreda (FBN85794); Sarah M. Stemer (FBN87595; Michael A. Shifrin (FBN86818); Benny A. Ortiz (FBN91912); Bryan S. Jones (FBN91743); and Jennifer Schick (FBN195790) also participated on behalf of SH&D. As the Court was getting ready to dismiss the Complaint for what appears to be irregular activity within the filings (without prejudice), SD&H filed an Amended Complaint, which contained an unrecorded Assignment of Mortgage, dated January 21, 2012 (the Examiner believes that this was by design).  It was executed by Youda Crain, a known robosignor of Bank of America, N.A., in what appears to be a self-assigned Mortgage, acknowledged by Deborah L. Beard (California Notary Commission No. 1853913; expired) under penalty of perjury under California law, using MERS as an Assignor for MERS as nominee for Countrywide Bank, FSB, since subsumed by Bank of America, N.A.  This makes the entire Assignment self-serving and suspect for perjury under Florida RICO statutes and would thus constitute fraud on the court.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Amended Affidavit, filed on May 16, 2012, by Smith Hiatt & Diaz, contains numerous references to computer-generated "inspections" which the Examiner (based on communications with other attorneys litigating against Bank of America) believes are fraudulent. Ablitt Scofield was later substituted as Counsel for Plaintiff. Ablitt-Connolly attorney Guiseppe Cataudella (FBN88976) also participated with Menina E. Cohen on behalf of the firm. Upon entry into the case, they requested substitution of the Party Plaintiff to Bank of America, N.A. Not surprisingly, Frenkel Lambert Weiss Weisman & Gordon LLP ("Frenkel") was later substituted as counsel (the pattern continues).

At this point it appears that the Plaintiff's counsel styled the case *Bank of America, N.A. Successor by Merger to BAC Home Loans Servicing, LP* as the new party Plaintiff. Todd Droksy (FBN54811) appeared for Frenkel. The case is now closed based on a final summary judgment of foreclosure and the property's sale date appears in question. The unrecorded Assignment (in the Examiner's estimation) should not have been ignored as to its content and basis for perjury under Florida RICO statutes. If such a document were to be recorded F.C.C. § 817.535 would have applied here.

**Case No. 59:** *The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificate Holders of the CWALT Inc. Alter-native Loan Trust 2005-59, Mortgage Pass-Through Certificates Series 2005-59 v. Nazmeen Salfarlie et al* **(2012 CA 3184 MF)**

This is one of many cases this Defendant has been involved with in the Osceola County Court system. In this instance, the property was foreclosed on and sold and a subsequent Certificate of Title issued forthwith. Smith Hiatt & Diaz's Michael Eisenband (FBN94235) filed the initial Complaint and Notice of Lis Pendens (CFN#2012103348) on 07-12-2012. The Complaint's Verification however, was signed by an alleged "officer" for Bank of America, N.A. as Servicing Agent for the Plaintiff, with no attached proof that Bank of America, N.A. was the Plaintiff in this case.

**Further, as part of the Complaint exhibit package, a recorded Assignment of Mortgage was attached which appears to contain false and misrepresentative information:**

**CFN#2012085298, recorded by presentment on 06-05-2012**
**This document was prepared by SH&D's own Tanya D. Simpson, an attorney for the law firm. It should be noted that when an attorney has to participate in the manufacture of an assignment, that non-lawyers may be ordering the attorney to take part in something illicit. The document was signed by Mary Ann Hierman, a known robosignor for Bank of America, N.A. and acknowledged under penalty of perjury under California law by L. A. Llanos (California Notary Commission No. 1821705; still active as of this report filing).**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**There were no witnesses to this document. It appears that most attorney-generated filings do not contain witness provisions; however, when the bank generates them, there are witness provisions included. This in of itself is suspect of pattern behavior, especially when the alleged lender and the law firm collude in the production of a recorded Instrument with the intent to use it as recorded proof to foreclose on a piece of real property. The assignment attempts to assert that the Assignee held the Note prior to the foreclosure action and that this recorded document is just "making it official". However, there is nothing in the document to indicate WHEN the Assignee had possession of the Note, which could be construed to indicate that if one looks at the Note, one will see an undated endorsement that reflects the same vague and ambiguous behavior reflected here. MERS's address (where it is served with process) is misrepresented with a Florida address, wherein MERS is generally served at its Registered Agent address in New Castle County, Delaware.**

The problem with this Assignment is that the Closing Date of the trust REMIC was on September 30, 2005; thus, this 2012 Assignment of Mortgage is invalid because it contravenes New York trust law and IRS REMIC regulations.

Hierman alleges that she is an Assistant Secretary of MERS as nominee for then-defunct and subsumed Countrywide Bank, A Division of Treasury Bank, N.A. There are obvious gaps in the chain of custody of the Note (because MERS is involved) that are not present here. There is evidence of document manufacturing through the use of: (1) attorney participation; (2) rubber stamps to indicate names and titles; (3) non-delineation of the notarial execution (a common marker of "sped up" signing processes). Since there is no discussion within this document about the exact date of effective transfer and no specific mention about the transfer of the Note itself (which MERS cannot convey because it does not have an interest in it), this Assignment is deemed pure "window dressing" and should be regarded as suspect for criminal violations under Florida Criminal Code Section 817.535 and Florida RICO statutes.

The alleged Note attached to this Complaint as part of the exhibit shows an undated restrictive indorsement to Countrywide Home Loans, Inc. from Treasury Bank, N.A., which contradicts what the previously-discussed Assignment of Mortgage purports to represent because the Assignment thus falsely misrepresents that Countrywide Bank, a Division of Treasury Bank, N.A. is the party that did the conveying on the Assignment of Mortgage. This is what makes this document suspect for criminal violations. It misrepresents what actually took place in the chain of custody of the Note as well as within the chain of title of alleged lien interest claims.

There is a second indorsement-in-blank from Countrywide Home Loans, Inc. which is also undated. Neither of these indorsements prove effective date of transfer. The Court seemingly did not question this, but appears to have just taken the bank's attorney's word for what took place.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thus, the MERS-originated Mortgage gave credence to this alleged criminal behavior; thus, the aspects for violation of Florida RICO statutes involving MERS, the law firm, the litigation attorney and the alleged lender who managed to get the property through the use of this suspect assignment. To make matters worse for the Plaintiff trust, a second Assignment of Mortgage was prepared by Bank of America, N.A. employees, who executed it and caused it to be recorded and returned to CoreLogic in South Carolina, electronically filing it on 06-12-2012 as CFN#2012089173.

This Assignment was also manufactured using MERS as a standalone Assignor, assigning BOTH the Mortgage and the Note, which could not have happened because MERS does not have enforcement rights to the Note as it has no beneficial interest in the Note. This assignment has two signers and two witnesses, which corroborates the behavior patterns discussed previously. There is no need to explore the case further, as Judge Jeffords Miller granted Final Summary Judgment of Foreclosure on March 10, 2014 (CFN#2014034732; recorded on 03-12-2014); an what appears to be a self-assigned Assignment of Judgment (manufactured by the law firm) was issued to the same REMIC trust (CFN#2014122191) and a Certificate of Title was issued (CFN#2012128451) to MK Land Trust.

**Case No. 60:** *Bank of America, N.A. v. Debbie Vincenty Diaz et al* **(2012 CA 0457 MF)**

This case does not appear to involve the use of Assignments of Mortgage. The Promissory Note signed by the Borrowers does not appear to contain endorsements. The Mortgage was also executed in favor of Bank of America, N.A. The case appears to have been initiated by Smith Hiatt & Diaz attorney Lauren E. Barbati (FBN68180) who also appears to have filed the Notice of Lis Pendens (CFN#2012014209) for record on 01-31-2012.

It appears that the Defendants retained counsel to represent them. At issue within the Complaint is that Bank of America, N.A.'s Verification is represented as that of the Servicer and not of the Defendant Bank itself (Fla.R.Civ.P. Rule 1.110(b)). The Motion to Dismiss the Complaint by Defendant's counsel is worth further examination with regards to the irregularities of the initial Complaint. It further appears that after an exchange of document filings, Defendants counsel requested withdrawal from the case. SH&D then filed Motions for Default against the Defendant and unknown parties, which the Court granted for failure to file a responsive pleading.

The Affidavit that was filed (which appears to have been prepared by the law firm's Amber L. Johnson (FBN96007) by Bank of America, N.A.'s employee Celia Regina Hernandez does not distinguish whether Bank of America "directly or through an agent" has possession of the promissory note (with the right to enforce).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is entirely possible that Bank of America, N.A. is acting as servicer for Fannie Mae or Freddie Mac (or some other government-sponsored entity; "GSE") and that Bank of America, N.A. sold this loan to a GSE or other party after closing.  Additionally, the Affiant does not describe with specificity how she came to have personal knowledge of the contents therein. It further appears that since the Court denied the Plaintiff's request for a Temporary Stay in the proceedings, counsel was substituted by the Plaintiff (Ablitt Scofield's Menina Cohen; FBN14236) to force an extension of time.

Further, the Plaintiff filed an objection to the Order of Referral to the General Magistrate. Shortly after the Court ordered a pre-trial conference, Cohen filed a Notice of Voluntary Dismissal and Discharge of Lis Pendens (3 days before the pre-trial conference was to take place).  This rendered the pendency of the case CLOSED.  This however, does not mean that Bank of America, N.A. will not try to attempt foreclosure again through another law firm.

**Case No. 61: *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders CWABS, Inc. Mortgage-Backed Certificates, Series 2006-1 v. Nathalie Novak et al  (2010 CA 2215 MF)***

**This case began with a MERS-originated Mortgage executed by the Defendant in favor of the now-defunct American Brokers Conduit, whose undated indorsement-in-blank is evidenced on the Note contained within the Smith Hiatt & Diaz-filed Complaint.**

The Complaint itself bears a scribbled signature by someone from the law firm (unidentified) with no Verification by the alleged Plaintiff or its duly-authorized representative.  This filing with the Court occurred on March 24, 2010.  An Assignment of Mortgage was filed in this case, but not until after its pendency, which makes the entire foreclosure suspect for fraud and various criminal violations.

In the law firm's Notice of Filing Documents, SH&D's Rick Garcia (FBN78187) attached another version of the Note, which had marked differences from the first Note proffered at the time of the filing of the initial Complaint (in what is referred to by the Examiner as a "TA-DA! Moment").

This "new and improved" Note contains the original American Brokers Conduit indorsement-used-to-be-blank but now has "Countrywide Home Loans, Inc." inserted into it with what appears to be a rubber stamp imprint.  Not only is this endorsement undated, it makes the entire document suspect for manufacture because the original intent of the Assignor was "indorsed-in-blank" (as an non-restrictive endorsement).

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The altered intent does not comport with the original intent because the altered intent then went further and affixed a second endorsement to the Note, this time an indorsement-in-blank stamp was affixed by an employee (probably at ReconTrust Company, N.A. in Ventura County, California) acting under the direction of Bank of America, N.A. to "manufacture" what appears to be an arguable "chain of custody of the Note", without recourse from Countrywide Home Loans, Inc.   Since Countrywide was subsumed into Bank of America, N.A. in 2009, this presentation, filed in the court record on October 8, 2010, is suspect for fraud on the Court.   A Summary Final Judgment of Foreclosure was granted that same day by the Court.

**What brings this case into the present day is that over FOUR (4) YEARS AFTER Summary Judgment was issued did a Certificate of Title issued (CFN#2014012921; recorded by presentment on 01-29-2014) to the REMIC trust in care of Bank of America, N.A. in Simi Valley, California.  The property was already foreclosed on when employees of Ocwen Loan Servicing, LLC in West Palm Beach, Florida executed and caused to be recorded an Assignment of Mortgage from MERS as nominee for the original defunct (2007) lender American Brokers Conduit; completely bypassing the chain of title and custody of the Note as proffered in the foreclosure case; bypassing the Certificate of Title showing ownership of the Note to the REMIC trust; directly to MTGLQ Investors, LP (an entity allegedly controlled by Goldman Sachs), whose address was shown in c/o Ocwen Loan Servicing, LLC.**

**CFN#2014028742, recorded by presentment on 02-27-2014
Signer: Noemi Morales, who claims to be an Assistant Secretary of MERS as nominee for the then-defunct American Brokers Conduit.
Notary: Joel Pires (Florida Notary Commission EE 861698; still active)
Witnesses: Jason R. Berkeley, Jason Ayers
Issues: The Assignment was allegedly executed on November 27, 2013; however, constructive notice to the world did not occur until AFTER the Certificate of Title was issued.**

**This makes the entire process suspect for: (1) fraud on the Court; (2) false and misleading information filed into the real property records of Osceola County, Florida with the intent to deprive ownership of real property in violation of Florida Criminal Code Section 817.535; (3) with multiple actors involved in the manufacture and execution of this document under the apparent direction of Goldman-Sachs, may have been used in violation of Goldman Sachs Consent Order and for violation of 18 USC 371; and (4) violation of Florida RICO statutes by parties within the State of Florida, acting in concert with parties outside of the State of Florida to commit perjury and subornation of perjury.**

**The deprivation of property rights did in fact occur and the Examiner believes there is probable cause to charge all parties involved in this process with criminal intents and acts as noted.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 62:** *The Bank of New York Mellon FKA The Bank of New York as Trustee for the
Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2005-9
v. Elizabeth Alamo et al* **(2012 CA 1572 MF)**

**CFN#2012013482, electronically recorded on 01-30-2012**
**Signors: Bud Kamyabi, Luis Roldan (both known robosignors for Bank of America, N.A.),
claiming to be Assistant Secretaries of MERS, using MERS as a standalone Assignor (using
Metro Detective Agency's Danville, Illinois address) to attempt assignment of BOTH the
Mortgage and Note into a closed CWABS, Inc. 2005-9 REMIC trust in violation of New
York trust law and IRS regulations, nearly seven (7) years too late.**
**Notary: Desiree Carson (California Notary Commission No. 1873687; still active)**
**Witnesses: Jeanine Abramoff, Srbui Muradyan (both known robosignors for Bank of
America)**
**Issues: MERS doesn't own the Note. America's Wholesale Lender mortgage and note in-
valid according to** *Bank of America, N.A. v. Linda Nash* **(as previously noted and attached
as an exhbit to this report).**

Thus, despite the fact the trust did not own the Note, the attorneys presenting the case (April
Harriott, FBN37547; and Melissa Konick, FBN17569) representing the law firm of Robertson,
Anschutz & Schneid, P.L., relied on the Assignment of Mortgage and attempted foreclosure on
behalf of a REMIC that could not have owned the Note and Mortgage. Ablitt Scofield's Menina
E. Cohen (FBN14236) took over the case. The case was eventually voluntarily dismissed by an-
other law firm.

**Case No. 63:** *Deutsche Bank National Trust Company, as Trustee under the Pooling and
Servicing Agreement relating to IMPAC Secured Assets Corp. Mortgage Pass-
Through Certificates Series 2006-1 v. Ida R. Blanco et al* **(2008 CA 10557 MF)**

**CFN#2009133122, recorded by presentment on 08-19-2009**
**Despite the fact this case is CLOSED, the property sold and Certificate of Title issued, the
Assignment was relied upon to confer standing to the Plaintiff. It was manufactured by the
Stern Law Firm and sent to GMAC Mortgage, LLC for signing.**
**Signor: Jeffrey Stephan (known robosigner whose depositions are included as part of the
exhibit package in USB format for this report), who purports to be Vice President of MERS
in an attempted to convey (on July 9, 2009), backdated as of October 16, 2008 to be effec-
tive, with no proof of effective transfer of the note on the indorsement-in-blank which was
inserted as an extra page to the Note proffered in the exhibit filed with the Complaint.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Closing Date for this trust was March 30, 2006 and there is nothing in the Pooling and Servicing Agreement referred to (the case styling is improper; but since the PSA was referenced, the Examiner is applying the details from the PSA to this summary) to identify WHY the Assignment was backdated to be effective October 16, 2008, other than Stern wanted to have the date shown on the Assignment to be effective BEFORE he filed the suit. There still is an issue with this however, because: (1) Stern relied on the Assignment as a means to get standing for his client; (2) the case forced the Defendants into bankruptcy and their property was taken by and through the use of this assignment; (3) the Closing Date of the trust pool was March 30, 2006; thus, the Assignment appears to contravene New York trust law, which renders the Assignment void; and (4) the Notary Seal and notary identification on the Assignment is illegible. The Certificate of Title was recorded on 10-28-2010, which is still within the statute of limitations for prosecution under Florida RICO statutes and since the foreclosure relied on the Assignment, which was included and noted as such in the case, despite being manufactured by Stern in concert with GMAC and Stephan, still weighs in on the results under Florida Criminal Code § 817.535.

**Case No. 64:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP v. Rodney Veilleux et al* **(2010 CA 5877 MF)**

**CFN#2010112190, recorded by presentment on 08-05-2010**
**Signors: Rhonda Weston, Timothy E. Moran, both claiming to be Vice Presidents of MERS as nominee for Countrywide Home Loans, Inc. (which had already been subsumed by BAC Home Loans Servicings, LP in 2009), trying to assign BOTH the Note and Mortgage to themselves. This Shapiro & Fishman manufactured Assignment of Mortgage was designed purposefully to record a document with false and misleading information in it to foreclose on property belonging to Rodney and Michele Veilleaux.**
**Notary: Jennifer L. Gorczynski (New York Notary Comission No. 01GO6222499; expired)**
**Witnesses: None**
**Issues: MERS does not own the Note; therefore, it cannot assign what it doesn't own.**



Rhonda Weston - Senior Operations Consultant at Bank of America
Buffalo/Niagara, New York Area Banking
Previous - M & T Bank, Bank of America
Education - State University of New York College at Buffalo

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The foregoing Assignment was recorded just prior to the commencement of the foreclosure proceedings by Shapiro & Fishman attorney Denise E. Elder (FBN18442) for Vivian J. Elliott (FBN64804).  Weston's picture came from her LinkedIn website and her title clearly is NOT Vice President of Bank of America, even though her rubber stamped title says so.  The rubber stamped items are markers of document manufacturing. This Assignment was filed WITH the Complaint, meaning the intent of Shapiro & Fishman attorney Elder was to rely on it to give her client standing to foreclose, despite the fact there were no endorsements on the originally-proffered Note. Again, for BAC to have standing, there would have had to have been sufficient proof of effective transfer of the Note and MERS cannot be utilized to do that, especially with the questionable authority of the signers.

There is a problem with this Assignment however, which leads the Examiner to believe that this Assignment and the successor Assignment, were not simply a scrivener's error, but a bungled attempt to prove standing.  The recorded Assignment designed by Shapiro & Fishman was only two (2) pages in length and contained the signatures of the foregoing employees of Bank of America, N.A.  It is signed July 14, 2010.  What was submitted to the Court however (in the initial Complaint filed by the law firm), was a 3-page Assignment dated July 27, 2010, which the attached third page showing two entirely different Bank of America signers: Angelica B. Williams and Benjamin Hills, both claiming to be Assistant Secretaries of MERS as nominee for Countrywide Home Loans, Inc. and notarized in Dallas County, Texas (not Erie County, New York) by Warren Holmes (Texas Notary Commission Expired on this document).  It is up to the attorneys filing the case to make sure their documents are accurate.  The firm ended up submitting a Notice of Filing containing the two-page assignment in an attempt to apparently "contain the damage" they caused with their original filing.  The Examiner regards this chicanery as fraud on the court.

**CFN#2012084645, electronically recorded on 06-04-2012**
**Signers: Mary Ann Hierman, Aida Deunas (both known robosigners), claiming under penalty of perjury under California law that they are Vice Presidents of MERS as a stand-alone Assignor, in a Corrective Assignment of Mortgage, claiming a "scrivener's error", adding that "the execution of the Assignment was intended to document the acutal transaction being the transfer of the Mortgage only."   This would be construed to mean that for the time period from July 14, 2010 until June 4, 2012 (almost 2 years), Shapiro & Fishman insisted (albeit in error) that their client had the right to enforce the Note, when later, they admitted their client didn't have the Note.**
**Notary: L. A. Llanos (California Notary Commission No. 1921705; expired)**
**Witnesses: None**
**Issues: This is the second demonstration of an apparent self-assignment using MERS alleged signing authority by known robosigners, post-AG settlement (February of 2012) when the banks said they weren't going to robosign documents anymore.  Bank of America was included in that settlement agreement.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The First Amended Complaint, submitted by Shapiro, Fishman & Gache, LLP's Kari Martin (FBN92862) contained a Note that was clearly different from the first one, in that this "new and improved" Note had an indorsement-in-blank from Countrywide Home Loans, Inc. containing the stamped signature of known robosignor Mercedes Judilla, who claims she is an Assistant Secretary for Countrywide Home Loans, Inc.  The latest information available shows that she is an Assistant Secretary for BAC Home Loans Servicing, LP; now subsumed into Bank of America, N.A.  The Second Amended Complaint listed the same indorsement-in-blank stamp from Judilla. Using these two alleged false and misrepresentative self-assigned assignments, Shapiro & Fishman (and Gache) and its attorneys conspired with Bank of America/BAC employees to create and record the documents and insodoing relied on those documents in the taking of the Veilleux's property, which was sold through Green Tree Servicing, LLC in an obvious, last-minute servicer switch and a Certificate of Title was issued (CFN#2014084347), in violation of Florida Criminal Code Section 817.535 and Florida RICO statutes.  The Examiner has attached a signature compareson of Mercedes Judilla from another jurisdiction as a comparison to the scribble contained on the indorsement-in-blank, which obviously DOES NOT MATCH.

**Case No. 65:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-9, Mortgage Pass-Through Certificates Series 2007-9 v. Joan M. Sharpe et al* **(2014 CA 2012 MF)**

This case appears to have been electronically filed by Maya Rubinov (FBN 99986) of the Gladstone Law Group, P. A. on 07-07-2014.  It further appears that Rubinov also filed the Notice of Lis Pendens and caused it to be recorded on 07-18-2014 as CFN#2014101920.  The filing of the Complaint was prefaced by two (2) Assignments of Mortgage, which the law firm appears to have relied on in filing the Complaint, to wit:

**CFN#2014030433, electronically recorded on 03-03-2014**
**Signer: Rebecca Higley (alleged Security Connections employee), claiming to be a Vice President of MERS as a nominee for Countrywide Home Loans, Inc. (even though the nominee status is not listed above her signature), as Assignor; attempt to assign the Mortgage to a closed CWMBS, Inc. 2007-9 REMIC trust which has a Closing Date of June 8, 2007; thus, contravenes New York trust law and is void.**
**Notary: Tiffany Bitsoi (Idaho Notary Commission appears valid until 06-15-2018)**
**Witnesses: None**
**Issues: Aside from the REMIC's PSA issues, the signor, who also prepared the document, highly likely obtained the information she transcribed onto this document from third-party hearsay computer data sources from without the State she is employed in.   The bigger issue is the name of the Plaintiff (as well as the name on the Assignment), is incorrect.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The actual name of the REMIC trust as listed with the United States Securities and Exchange Commission is "CWABS Asset-Backed Certificates Trust 2007-9" and NOT as shown.  Thus, the wrong party appears to be feeding Security Connections … and the Court … false and misrepresentative information, with the intent to deprive the homeowner of her property, probable cause for violation of Florida Criminal Code § 817.535 as well as RICO statutes.

CFN#2014056707, recorded by presentment on 04-23-2014
Document Prepared by: unknown parties at the Gladstone Law Group, P.A. in Florida
Signers: Alicia Wood, Kim Brouse (both alleged employees of Residential Credit Solutions in Fort Worth, Texas; 4708 Mercantile Drive, 76137), signing as Assistant Secretary of MERS as nominee for already-subsumed Countrywide Home Loans, Inc., as Assignor, into the same incorrectly-named REMIC trust as shown in the Assignment of Mortgage above.
Notary: Ricardo Recio (Texas Notary Commission Active until 12-23-2017)
Witnesses: None listed.
Issues: The notarial execution fails to state the "day" of execution, purported to be March 27, 2014; thus, it is unknown exactly what date (or if in fact the signers actually appeared before the notary; in Texas, signing a notary journal is required under Notary law).  None of these employees were ever involved with the loan per se; appear to be acting as the Servicer of this loan.  All other issues from the preceding assignment apply here as to PSA issues.  Thus, the "remanufacture" of virtually the same assignment appears unsupervised, which could constitute the unauthorized practice of law or in the least, violation of Florida Bar Rules for failing to supervise the conduct of non-lawyers under attorney control.  The above-manufactured assignment also appears to violate Florida Criminal Code § 817.535.
There are further issues with the Complaint itself, to wit:

(1) The Note being proffered in the Complaint appears to contain enough space to put the lone indorsement-in-blank underneath and to the right of the Borrower's signature; however, it appears that a separate sheet of paper was attached, in which:

(a.) the stamp appears to be under the control and use of ReconTrust Company, N.A. employees on behalf of the signor, Michele Sjolander, who does not appear to know (from previous deposition testimony) exactly who and when her endorsement stamp is affixed to documents;

(b.) the endorsement page contains no heading that states it is an ALLONGE to be used for the purpose of affixing indorsements, which further does not appear to comport with U. C. C. 3-302(2); and

(c.) the indorsement-in-blank is undated and thus does not prove effective transfer of the Note into the REMIC trust by the Closing Date, which is specifically required for transfer into the REMIC trust pool.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Thus, it does not appear that the Note actually was transferred in a timely manner into the trust pool and the Plaintiff (absent valid transfer) does not have standing to foreclose. It further appears that the homeowner has not retained counsel at this juncture.  A letter appears to have been attached by her regarding her living situation.  A status hearing appears to have been set for February 24, 2015.**

**Case No. 66: *MTGLQ Investors, L.P. v. Michael J. Maguire et al* (2008 CA 9784 MF)**

This case involves the Goldman Sachs - Litton Loan Servicing (now Ocwen Loan Servicing, LLC) connection, which dragged the case from its inception up until the foreclosure sale was cancelled; the final judgment was vacated; and the Complaint was fully dismissed, due to a negotiated loan modification with Goldman Sachs Mortgage Company.

The initial Complaint was filed by Suzanne Wong (FBN47829) on behalf of David J. Stern, P.A. Wong also initiated the Notice of Lis Pendens.  Roger N. Gladstone (FBN612324) and Carly R. Weitzman (FBN89862) appears to have filed what is purported to be the orginal note and mortgage on behalf of Gladstone Law Group, P.A.

The indorsement-in-blank is situated ABOVE the Borrower's signature, when it was evident there was plenty of room below to affix it; this after Wong's Complaint attempted to enforce lost loan documents.  At issue is an Assignment of Mortgage (CFN#2009051563) recorded on 04-01-2009 that was clearly manufactured by Litton Loan Servicing employees under the direction of Goldman Sachs, using MERS as a sole Assignor of the mortgage and note.  Marti Noriega and Denise Bailey (both known robosignors for Litton) affixed their signatures to this document claiming to be "officers" of MERS (Bailey attesting with a rubber stamped title).

Even though the outcome ended up in favor of the homeowner, the intent to use a recorded document containing false information was clearly a part of the effort to foreclose on the property, in violation of Florida Criminal Code § 817.535.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 67:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP*
*v. Chris W. Itonyo et al* **(2010 CA 3485 MF)**

This case ended up turning into a new Party Plaintiff, namely, *U. S. Bank, N.A. as Trustee for the Holders of the WMALT 2006-AR7 Trust v. Chris W. Itonyo et al*, initiated by Maribel Diaz (FB-N55716) of the law firm of David J. Stern, P.A., who filed an unverified Complaint to Foreclosure Mortgage, self-attesting to the facts contained therein; and subsequently filed the Notice of Lis Pendens (CFN#2010072778) on 05-21-2010. The original lender was America's Wholesale Lender, claiming to be a New York corporation (see the *Bank of America, N.A. v. Linda Nash* case, supra, where Judge Pleus ruled in Seminole County that the America's Wholesale Lender mortgage and note were invalid). The attached Note was indorsed-in-blank by Michele Sjolander of Countrywide Home Loans, Inc., a New York Corporation doing business as America's Wholesale Lender. Countrywide was not the named lender however; thus, the undated indorsement-in-blank does not comport to the real party in interest here.

**There are three (3) suspect Assignments of Mortgage that appear in the Borrower's chain of title that give probable cause for violation of Florida Criminal Code § 817.535:**

**CFN#2010138957, recorded by presentment on 09-22-2010**
**This document was prepared by the Stern Law Firm and sent to Erie County, New York for execution and it appears that the first named Plaintiff in the action, four (4) months AFTER the fact, is now the official Plaintiff in the real property records. Unfortunately, MERS cannot transfer the Note and America's Wholesale Lender wasn't registered to do business in the State of Florida; thus, the entire document, signed by Bank of America's Rhonda Weston, who claims to be a Vice President of MERS (before witnesses Cassandra Hollomon and Lisa C. Glene), signing the document on July 19, 2010, had misrepresented the actual facts that she had the authority to Assign both a MERS-originated mortgage and Note when in fact, she did not have such authority, making this document a sham document, involving multiple parties in violation of Florida RICO statutes.**

On May 13, 2011, Drew Melville (FBN34986) filed a Notice of Appearance for the Plaintiff, styled only as BAC Home Loans Servicing, LP (eliminating the FKA part) and subsequently, Betzy Falgas (FBN76882) filed a Motion for Default against the Defendants, as Judge Legendre was about to dismiss their case in lieu of filing an amended Complaint. It was on March 19, 2012 that the Plaintiff's law firm chose to file an Ex-Parte Motion to Substitute the Party Plaintiff to Bank of America, N.A. as successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP.

**David Cramer (FBN64780) handled this motion, after asking and getting an extension to file its Amended Complaint, Phelan Hallinan, PLC (by its Legal Assistant, Laura Kleinberg) caused to be manufactured and recorded a second suspect Assignment of Mortgage to timely act in accordance with another substitution of Party Plaintiff:**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2012089599, recorded by presentment on 06-12-2012**
**This document was prepared by the Phelan Hallinan Law Firm and sent to Dallas County, Texas for execution and recordation in favor of the new Plaintiff, U. S. Bank, N.A. as Trustee for the Holders of the WMALT 2006-AR7 Trust, in c/o Bank of America, N.A. in Plano, Texas, then making U. S. Bank, N.A. as Trustee the official Plaintiff in the real property records. Unfortunately, since MERS could not transfer the Note and America's Wholesale Lender wasn't registered to do business in the State of Florida in the first Assignment; this assignment fails to transfer the loan into the trust pool. Further, this Assignment, executed on June 6, 2012, and relied upon by counsel to substitute the Party Plaintiff, could not be assigned because the Closing Date of the trust was August 29, 2006, almost six (6) years earlier, making this document a sham document, involving multiple parties in violation of Florida RICO statutes and in violation of Florida Criminal Code Section 817.535.**

Assuming that both loans were in default, which is debatable due to PSA conditions, Bank of America, N.A. employees in Ventura County, California assigned the second Note and Mortgage, again using MERS as a standalone Assignor (as nominee for the original lender, Countrywide Bank, N.A.) to The Bank of New York Mellon FKA The Bank of New York, as successor trustee to JPMorgan Chase Bank, N.A. as Trustee on Behalf of the Certificateholders of the CWHEQ, Inc. , CWHEQ Revolving Home Equity Loan Trust, Series 2006-F, which also violated New York trust law, as the closing date of this trust was June 30, 2006. The same cast of characters appear to have robosigned this document (Mary Ann Hierman and Dominique Johnson, claiming to be Assistant Secretaries of MERS) and witnesses (Cecilia Rodriquez and Mercedes Judilla) affixing their signatures, which were acknowledged by L . A. Llanos (California Notary Commission No. 1821705; expired) on June 13, 2012, nearly six (6) years AFTER the Closing Date of the trust. On August 24, 2012, Phelan Hallinan's David A. Cramer (FBN64780) filed the Amended Complaint showing the substituted Party Plaintiff.

The Assignments were attached as Exhibits "C" and "E", thus, Plaintiff's counsel appeared to have conveniently relied on them and their alleged misrepresentations, in violation of the foregoing statutes. A Final Judgment of Foreclosure was issued on November 20, 2012, the day that Phelan Hallinan's Ian Norych (FBN56615) filed what he claimed were the original note and mortgage (still the same undated Sjolander indorsement-in-blank appearing on the Note. However, the case moved significantly forward into the target forensic examination period when the Order for the Clerk to Issue a Certificate of Title was not filed until October 10, 2013, courtesy of actions taken by Phelan Hallinan's Michael S. Spoliansky (FBN99178), in favor of the trust Plaintiff. Thus, all of the foregoing actors were involved in what appears to be a RICO-style criminal conspiracy to file recorded documents in the real property records of Osceola County, Florida in violation of Florida Criminal Code § 817.535.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 68:** *Wells Fargo Bank, N.A. v. Obdulio Valladares et al* **(2012 CA 2241 MF)**

**CFN#2012040396, electronically recorded on 03-21-2012**
**It appears that Wells Fargo's Default Assignment team manufactured this self-Assignment of Mortgage from defunct MortgageIt, Inc. to Wells Fargo Bank, N.A. using MERS to transfer BOTH the Note and Mortgage, which MERS cannot do because it does not have an interest in the Note.**
**Signer: Nancy D. Sorensen, who claims to be an Assistant Secretary of MERS (eSignature)**
**Notary: Nicholas J. Wolf (Minnesota Notary Commission No. 31043836; still active; eSignature and Seal?)**
**Issues: Use of BOTH MERS addresses in Flint, Michigan and Danville, Illinois. eSignature'd notary claims the signor "personally appeared" before him; notarial execution was not filled out; suspect use of 150-page Wells Fargo Foreclosure Attorney Manual (in effect at the time).**

**The Assignment of Mortgage appears to have been recorded in conjunction with the intent to deprive the homeowners of their property; thus, issues of probable cause for violation of Florida Criminal Code § 817.535 are prominent, in addition to RICO claims, since the Wolfe Law Firm is involved (Ivan D. Ivanov; FBN39023) filed the Notice of Lis Pendens (CFN#2012072203) on 05-16-2012.  During the pendency of the case, Florida Default Law Group changed its name to Ronald R. Wolfe & Associates, P.L. ("Wolfe").**

It appears Wells Fargo is foreclosing on behalf of Freddie Mac.  The alleged Note contains an indorsement-in-blank by MortgageIt (undated) that was later filled in with a rubber stamp to Wells Fargo Bank, N.A.    Then (as the Examiner believes) Wells Fargo Bank, N.A.'s Default Team added the indorsement-in-blank stamp from Wells Fargo Bank, N.A. to continue the charade as to the chain of custody of the Note.

The Plaintiffs apparently filed a lawsuit in the U. S. District Court of the Middle District of Florida in Orlando, but nobody informed the Circuit Court of it.  It appears this litigation was ongoing for part of the time the state case was in pendency.

Wolfe's Luke Kiel (FBN98631) was also involved with filing documents with the Court in this case as was Katherine E. Tilka (FBN14768) in setting the matter for trial.  Tilka also appears to have served a full set of Discovery on the Defendants.  It further appears that the Defendants consented to a Final Judgment of Foreclosure and Matthew Wolf (FBN92611) assigned the bid over from Wells Fargo Bank, N.A. to Freddie Mac BEFORE the actual foreclosure sale took place (CFN#2014120819) on 08-19-2014; thus, the issues involving the self-assignment and potential self-manufacture of potential note indorsements for the purpose of depriving the Valladares' of their property (coercing and inducing them to believe that Wells Fargo owned the Note), in violation of Florida Criminal Code § 817.535.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 69:** *BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP v. Carol Ramos et al* **(2011 CA 2484 MF)**

**CFN#2011090805, recorded by presentment on 07-05-2011 (see RA&S EX. 3)**
**This document appears to have been prepared by RA&S employee Kelsey Simmons (no Florida Bar No.) and sent to employees of Bank of America, N.A. in Ventura County, California for execution for the purposes of commencing a foreclosure action on real property belonging to Karina and Carol Ramos.**
**Signor: Mercedes Judilla (alleged Bank of America employee and known robosignor), acting as Assistant Secretary of MERS in an apparent self-assignment to BAC Home Loans Servicing, LP using a Bank of America Jacksonville, Florida address; using MERS as nominee for a now-defunct lender.**

**Notary: Terry Fishman (California Notary Commission No. 1795613; expired 05-11-2012)**
**Witnesses: Danno Cuenca, Youda Crain (known robosignor)**
**Issues: Use of rubber stamps, the same felt-tip ink pen to affix signatures, scribbled signatures, all markers for document manufacturing and robosigning. The "Penalty of Perjury" notation has been filled in. The authorized capacity of the signor (due to MERS) is questionable. The Examiner found multiple, undated indorsement stamps on the proffered Note, which ended up indorsed-in-blank (also undated). Despite the suspect assignment herein, there was a substitution of counsel in the case (2011 CA 2484) AFTER Final Judgment of Foreclosure was rendered in February of 2014 and the sale of the property appears pending.**

In light of the suspect assignment, the intent was clear that RA&S and its counterparts in Ventura County, California recorded a document suspect for violations under Florida Criminal Code § 817.535 and Florida RICO statutes may also be viable.

**Case No. 70:** *U. S. Bank, N.A. as Successor to LaSalle Bank, N.A. as Trustee for the Certificateholders of Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-HE1 v. Felicia McGee et al* **(2012 CA 1803 MF)**

**CFN#2011097219, recorded by presentment on 07-20-2011**
**Signers: Swarupa Slee and Miguel Romero, who claim they are Assistant Secretaries of MERS, signing as a Standalone Assignor using a MERS policy-prohibited mailing address in Ocala, Florida, attempting to transfer ONLY the Mortgage to a 2007-HE1 series trust REMIC whose Closing Date was March 8, 2007, over four (4) years too late to be accepted.**
**Notary: Violet Thomas-Hicks (California Notary Commission No. 1820527; expired)**
**Witnesses: Yomari Quintanilla, Cynthia Santos (all robosigning scribbled signatures)**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA


This recorded assignment appears to have been used to deprive Felicia McGee and others of their property, which was sold at sale and certificate of title issued (CFN#2014114606) on 08-08-2014.

CASE NOTES: The Note proffered by Vanessa Lee for Robertson, Anschutz & Schneid, P.L. (FBN84421) and Cedric Charles Small (FBN70879) contains a restrictive indorsement NOT to the trustee or trust entity, plus (as an extra added bonus) a Note Allonge which pretty much appears to be manufactured by an unverified source that is undated; thus, no effective date of transfer appears to have occurred.   This Allonge is signed by Charlene Busselaar, who identifies herself as "Title Services Team Lead".   Busselaar was employed by Wilshire Credit Corporation in Beaverton, Oregon (now defunct) and claims attorney-in-fact status (a comparative copy is attached from another jurisdiction to illustrate her document originating location).   THERE IS NO LIMITED POWER OF ATTORNEY IN THE REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA; therefore, this entry into the Court record appears to have been fraud on the Court.  The apparent manufacture of the document is suspect for probable cause under Florida Criminal Code 817.535 and Florida RICO statutes.


Case No. 71: *U. S. Bank, N.A. as Trustee for the Holders of the Banc of America Funding Corporation, 2008-FT1 Trust, Mortgage Pass-Through Certificates, Series 2008-FT1 v. Patty A. Kishbaugh et al* (2013 CA 1755 MF)

Despite the fact the pendency of this case lasted only six (6) months and was subsequently dismissed voluntarily by Brock & Scott, PLLC's Suly Espinoza (FBN14282), who filed the case and the Notice of Lis Pendens on May 22, 2013 as CFN#2013075195; there are two suspect assignments involved in this case; thus, intent under Florida Criminal Code § 817.535:

CFN#2013127422, recorded by presentment on 08-14-2013
Signors: Emily Talley, Reginald Hester, both claim to be Assistant Vice Presidents of Bank of America, N.A., assigning the Mortgage to Nationstar Mortgage, LLC, THREE MONTHS AFTER the suit to foreclose was filed.  At this juncture, the trust was NOT assigned the mortgage yet.
Notary: Launi Dee Cooper (Texas Notary Commission Renewed until 08-07-2018)
Witnesses: Manuel D. Elizondo, Kunakose Vettichirayii (alleged B of A employees)

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Issues: Numerous dates, titles and names all rubber stamped; template manufacturing; highly likely that signers and witnesses have no knowledge of anything they're attesting to and notary highly likely doesn't have this transaction in her notary log book (required).**

**CFN#2014024671, electronically recorded on 02-19-2014**
**In this suspect Corporate Assignment of Mortgage (well after the fact), Nationstar Mortgage's Susan Lindhorst (known robosignor) is attempting to assign the Mortgage to the closed Plaintiff trust (Closing Date: May 30, 2008); the trust's name is wrongly entered on this document (should read: Banc of America Funding 2008-1 Trust).**
**Linda D. Parks (robo-notary; Nebraska Notary Commission expires on 11-14-2015); notarial jurat not filled in (marker of document manufacturing). This entity may try to foreclose again.**

**Case No. 72: *U. S. Bank, N.A., as Trustee for the Benefit of the LXS 2007-16N Trust Fund v. Sandra T. Cajina et al* (2009 CA 6366 MF)**

**CFN#2009091671, recorded by presentment on 06-11-2009**
**This Assignment was documented outside of the target date parameters due to the issues involved with the Watson law firm, represented by attorney Alan Schwartzseld (Florida Bar #57124), acting for Tara Castillo (Florida Bar #722901), wherein MERS as nominee for Countrywide Bank, FSB is attempting assignment to an already-closed LXS 2007-16N REMIC trust fund.**

**The document was signed by Caryn A. Graham, who claims to be an Assistant Secretary for MERS; however, in realty, Graham was an attorney with the Watson law firm, as noted in the following paragraph:**

**Caryn Alina Graham,** P.O. Box 654436, **Miami, suspended** for 60 days, effective Dec. 13, 2013, following a Dec. 5, 2013, court order. (Admitted to practice: 2001) As a supervising/managing attorney for a law firm, Graham failed to properly manage some aspects of the fast-growing company. It resulted in numerous problems, including: failure of some attorneys to appear in court before judges in approximately 22 cases; failure to timely cancel foreclosure sales and/or failure to file a publication notice and pay the clerks fees; failure to promptly notify the court or file a substitution of lead counsel for those cases assigned to attorneys who left the law firm, and notaries notarized signatures executed outside their presence. (Case No. SC13-1931). Thus, Graham initiated and participated in the manufacture of the assignment which U. S. Bank as Trustee used to foreclose on the property owner in 2013, within the target period. This document is suspect for probable cause under the Florida Criminal Code Section 817.535.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

See the balance of the case under *Section Six* of this report.  Attached to the case file is a 51-page Affidavit of Lynn E. Szymoniak, Esq. (as Defendant's expert witness).

The foregoing case was adjudicated by Judge Miller (Case No. 2009-CA-6366) on June 3, 2013, almost four (4) years to the date the assignment was recorded in the real property records of Osceola County, Florida.   The examiners believe that Nationstar Mortgage LLC was also in-volved in this foreclosure.   The property has been liquidated and Certificate of Title issued on October 22, 2013, to the detriment of the property owner, Sandra T. Cajina.

Thus, someone from OceanFirst Bank would have had to execute an assignment representing its interest in Columbia's loan to Dinardo.  Instead, Chase on behalf of its own interests in its Bear Stearns acquisitions, caused the document to be manufactured using its own employees.   The concern here is WHY the document was created on January 11, 2012 but not filed for record in Osceola County until January 9, 2013, nearly a year later, prior to the commencement of suit to foreclose, using MERS to cover what the examiner believes is a "multitude of flaws" connected with not only with the chain of title but also with the chain of custody of the note, something MERS was not directly or intimately involved with.

In the matter of GreenPoint Mortgage Funding, Inc. (closed in 2007 by its purchaser, Capital One Financial Corp.), **CFN#2012104688** appears to indicate that the document was manufac-tured in Fort Lauderdale, Florida by an attorney on behalf of a law firm and notarized and exe-cuted on **May 22, 2012** in Ventura County, California, more than likely by employee of LPS, claiming to be an Assistant Secretary of MERS as nominee for the defunct entity. News of GreenPoint's closing can be found at the following link shown below:

**http://www.bloomberg.com/apps/news?pid=newsarchive&sid=a4f5h6jm4x60**

In a number of instances during this forensic examination, it was also noted that JPMorgan ChaseBank, N.A., in concert with Nationwide Title Clearing (**CFN#201205199**), caused to be manufactured an apparent self-serving assignment to Deutsche Bank National Trust Company as Trustee for Long Beach Mortgage Loan Trust 2006-4, whose address was shown as that of Chase's document archive (and suspected document manufacturing) plant in Monroe, Louisiana.

In this instance, Chase is claiming "attorney-in-fact" status to give it the authority necessary to effectuate the document's manufacture; however, the signor of the document (Kadesha Slaugh-ter) does not appear to have personal knowledge of the information that "E. Lance" of Nation-wide Title Clearing appears to have been privy to, if in fact such information was indeed accu-rate. On March 5, 2010, over (4) years BEFORE the foregoing assignment was recorded, Lea W. Vandergrid (FBN573175; on behalf of Marshall C. Watson, P.A.; 1800 N.W. 49th Street, Suite 120, Fort Lauderdale, FL 33309) filed a Notice of Lis Pendens in the real property records of Osceola County, Florida (CFN#2010032277) when in fact, her REMIC client was not yet as-signed the note and mortgage.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

*This Notice of Lis Pendens followed another Notice of Lis Pendens, filed on March 2, 2010 as CFN#2010030130 by attorney Giselle Hughes (FBN66821). As a side note to this event, Marshall C. Watson's bar license was suspended in 2013 and his firm name was changed to Choice Legal, P.A.*

It further appears that the REMIC changed law firms in 2013 to Robertson, Anschutz & Schneid, P.L. (6409 Congress Avenue, Suite 100, Boca Raton, Florida 33487), who then filed another Notice of Lis Pendens, signed by one of its representing attorneys, Michelle Lewis (FBN70922). There has been no judgment rendered to date in this matter.

The intended conveyance in 2014 however, appears to indicate that the most recent Notice of Lis Pendens was filed BEFORE the assignment, conveying ownership interest into the REMIC, which failed based on previous assertions of PSA violations.  It appears that there may have been some confusion as to how one REMIC was supposed to convey an allegedly non-performing loan into another REMIC, both instances in which Bank of New York Mellon was acting as Trustee.  It is suspected that Bank of New York Mellon has no knowledge of whether the Borrower is ever in default.

**Case No. 73:** *U. S. Bank, N.A. as Trustee on behalf of the Holders of the Home Equity Asset Trust 2005-7 Home Equity Pass-Through Certificates, Series 2005-7 v. Noreley Velasco et al  (2009 CA 0125 MF)*

**CFN#2009031869, recorded by presentment on 02-26-2009**
**This Assignment was recorded over a month AFTER commencement of the Complaint against Noreley Velasco by Yanina Miculitzki (FBN52751) of the Marshall C. Watson, P.A. law firm.  The document appears to have been prepared by Mary Herndon of the Richmond Monroe Group (15511 Highway 13, Branson West, MO 65737).  It was executed in Salt Lake County, Utah by employees of Select Portfolio Servicing, Inc. (apparently acting as the servicer for the alleged trust entity claiming standing in this litigation).**
**Signor: Barbara Neale, claiming to be Assistant Secretary of MERS as nominee for Master Financial, Inc., which at the time this document was executed was still in existence (and thus could have produced this Assignment).  This entity's (C1054058) business registration was suspended by the California Franchise Tax Board.**
**Notary: Kimberly Clark (Utah Notary Commission No. 572136; expired on 12-11-2011)**
**Witnesses: Heather Matson, Ana Novakovich (both known robosigners)**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Issues: The document purports to transfer BOTH the Mortgage and Note into the trust. There are two suspect issues with this Assignment: (1) The Closing Date for the trust was October 3, 2005; thus, the transfer was over 3 years too late; and (2) MERS cannot transfer something (even as a nominee) it does not have an interest in, namely, the Note.**

Further, there are false misrepresentations contained within this Assignment: (1) MERS's address is shown as the Salt Lake City address of the servicer (not even in care of); (2) the Trustee's address is shown as the Salt Lake City address of the servicer (not even in care of); (3) MERS cannot receive "the sum of TEN and N0/100ths DOLLARS" because it is a bankruptcy-remote corporation; and (4) It is highly likely that the parties executing this document had any personal knowledge of the contents to which they were attesting or acknowledging and their "capacity" to sign and transfer Notes as an officer of MERS appears questionably non-existent.

Further, the Note Allonge attached to the Complaint Note Exhibit appears to be conveniently manufactured, despite the claims made by counsel; it is further undated and does not appear to comport to U.C.C. 3-302(2).  When the law firm filed what it claimed to be the "Original Note", the Allonge was missing completely. The law firm and its attorney relied on the foregoing document to proceed with its Complaint; thus, the intent to deprive the homeowners of their property using a false and misrepresentative document, suspect for probable cause under Florida Criminal Code Section 817.535.  It appears that the case was voluntarily dismissed because the Defendant entered into a loan modification, which in of itself is suspect due to the foregoing circumstances claimed here.  At present, Velasco may not be paying the proper party, who may be currently unjustly enriching itself and depriving the homeowner of his property under Florida Criminal Code Section 817.535 (his money).

**Case No. 74:  *Countrywide Home Loans, Inc. v. Abelardo Chavez et al*  (2008 CA 9289 MF)**

**CFN#2008151233, recorded by presentment on 09-22-2008
This document appears to have been a self-assignment of the Note and Mortgage, using MERS (which does not have an interest in the Note), prepared by one attorney and allegedly signed by Patricia Arango (another attorney with the firm of Marshall C. Watson), who was suspended from practicing law in December 2013 for allowing notaries for the firm to notarize signatures executed without the presence or active involvement of a lawyer.  The Examiner herein states that this Assignment goes much further than the following notation:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Case No. SC13-1929; Patricia Ann Arango, 1800 N.W. 49th St., Suite 120, Fort Lauderdale, suspended for 30 days, effective Dec. 13, 2013, following a Dec. 5, 2013, court order. (Admitted to practice: 2001) As a non-supervisory and supervisory attorney, Arango did not identify, correct or manage an aspect of a fast-growing litigation division. That resulted in notaries notarizing signatures executed without the presence or active involvement of a lawyer.

Thus, the Examiner, after viewing depositions of attorneys with the firm of Marshall C. Watson, P.A., believes that this document was manufactured by the law firm for the purpose of: (1) filing said document containing false and misrepresentative information (Countrywide's address is NOT in Vienna, Virginia … this is another MERS address; (2) containing misrepresentative information that illustrates that Countrywide Home Loans, Inc. is assigning the Mortgage and Note to itself, when the original Mortgage was executed in favor of Countrywide Home Loans, Inc. and then using that information contained within the document to deprive the homeowners of their property, probable cause for violation of Florida Criminal Code Section 817.535.  Further, as a result of working in concert with other attorneys and employees at the firm, there is suspect probable cause for Florida RICO violations for perjury in connection with the taking of the property by alleged false and fraudulent means.

A Certificate of Title was issued on April 18, 2012, which brings the action within our forensic examination target period.  NOTE: Please also refer to the *Marshall C. Watson file* on the USB drive provided with this report.

**Case No. 75:** *Deutsche Bank National Trust Company, as Trustee for GSAMP 2006-FM1 v. Marc Elie Eugene et al* **(2009 CA 5347)**

This case comes within our target range (with all of its accompanying documents, based on the recorded date of Notice of Voluntary Dismissal (CFN#2010062327) on 05-04-2010 by Stern Law firm attorney Nickisha Webb (FBN74199).  No reason for the dismissal was ascertained. The David J. Stern Law Firm (by and through its attorney Courtney C. Kilbourne; FBN44349) on May 8, 2009, attempting to foreclose on a MERS-originated Mortgage executed by the Defendant on January 26, 2006 in favor of the now-defunct Fremont Investment & Loan (a California corporation).  The last page of the Complaint appeared to have a magnified copy of the 2009 Assignment of Mortgage to the Plaintiff, signed by Cheryl Samons, who is Stern's personal secretary, claiming to be an Assistant Secretary of MERS.   We discuss the two Assignments of Mortgage which contain false and misrepresentative information (Florida Criminal Code Section 817.535) below:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2009078882, recorded by presentment on 05-20-2009**
**This document was manufactured by the Stern law firm for the purposes of proving stand-ing for its client and was recorded AFTER the Complaint and Notice of Lis Pendens were filed ("putting the cart before the horse").**
**Signor: Cheryl Samons (known robosignor, whose deposition is included in this report)**
**Notary: Tammy Sweatt (Florida Notary Commission No. DD 563461; expired)**
**Witnesses: None**
**Issues: The Note attached to the Complaint was executed in favor of Fremont Investment & Loan and contains no indorsements or attached allonges; thus, the chain of recorded As-signments proffered here are false and misrepresentative as to their content, to wit:**

> **(1) The Plaintiff trust's Closing Date was April 27, 2006; thus, the trust could NOT have accepted the Note and Mortgage.  Further, the proffered Note has no required indorsement-in-blank; thus, the transfer fails by violation of the PSA and New York Trust law;**

> **(2) This Assignment claims that MERS is "residing or located at" in care of Wells Fargo Bank, N.A. (which is the Servicer for the trust).  This address is listed for both the Assignor AND the Assignee;**

> **(3) Samons, a known robosigner and no stranger to scandal and fraud on the Court, has no title under her signature.  Her title appears in the notarial execution; and**

> **(4) MERS does not have an interest in the Note and cannot convey the Note; thus, the Assignment fails purely on principle.**

**CFN#2011145102, recorded by presentment on 10-18-2011**
**After the case ended, Wells Fargo's Default Assignment Team in Dakota County, MN ap-pears to have manufactured a "Corporate Assignment of Mortgage", this time containing more language than its predecessor, which now declares that instead of being a standalone Assignor, MERS now assigns the MERS-originated Mortgage ONLY to the trust as nomi-nee for the defunct Fremont Investment & Loan.**
**Signor: Yen Nguyen (an employee of Wells Fargo Bank), claiming to be an Assistant Secre-tary of MERS as nominee for the defunct lender.**
**Notary: Robert W. Caruso (Minnesota Notary Commission Expired 01-31-2014)**
**Witnesses: None**
**Issues: This Assignment lists BOTH MERS addresses for the Assignor (Flint, MI/Danville, IL).  The trust is still closed and thus the transfer is void under New York trust law.  The document was prepared by Loletha Palmer (a Wells Fargo Bank employee).**

**Both Assignments were most likely NOT attorney supervised, which would render them not only false and misrepresentative but containing issues of unauthorized practice of law.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 76:** *U. S. Bank, N.A. as Trustee for the Holder of Bear Sterns Asset Backed Securities I Trust 2006-IM1 v. Khawar Qureshi et al* **(2008 CA 2471 MF)**

**CFN#2009163848, recorded by presentment on 10-13-2009**
**This Assignment of Mortgage was manufactured by the Stern Law Firm in connection with a Complaint to Foreclose Mortgage (2008 CA 2471). It comes into the target period based on the date the Certificate of Title was issued and recorded on 08-02-2010 as CFN#2010109443; issued back to the Plaintiff trust.**
**Signer: John Kennerty (known robosigner and employee of Wells Fargo Bank, N.A.), signing as Assistant Secretary of MERS (using Wells Fargo's DBA "America's Servicing Company" address in Ft. Mill, SC as a standalone Assignor, to the Plaintiff trust as a means to prove standing to foreclose on a property belonging to Khawar Qureshi, an unmarried woman.**
**Notary: Kelly A. Ruff (South Carolina Notary Commission expires March 10, 2018)**
**Witnesses: Camilla Garcia, RoseAna Cortinez (alleged Wells Fargo employees)**

**There are multiple issues involving the Assignment and presentation of the Note in this case, to wit:**

> **(1) The Closing Date of the trust is April 25, 2006; thus, contravention of New York trust law, the transfer is void;**

> **(2) The address of both the Assignor and Assignee is the same, Wells Fargo's address in Ft. Mill, South Carolina;**

> **(3) This Assignment was filed over a year AFTER the Notice of Lis Pendens was filed (04-02-2008, as CFN#2008058971, Case No. 2008 CA 2471 MF). by Stern Law Firm attorney whose name and Bar No. is not legible, on behalf of Adam F. George (FBN635502);**

> **(4) The Original Complaint did not contain an allonge or endorsements. The Amended Complaint did not contain them either. At the time the Amended Complaint was filed (September 8, 2009), there was no indication of how the original lender, the still active Impact Funding Corporation DBA Impact Lending Group, a California corporation, conveyed the Note to the Plaintiff trust; and**

> **(5) On May 24, 2010, the Stern Law Firm filed what it claimed was an original Note and Mortgage and a copy of an Assignment of Mortgage with the Court. The "new and improved Note" contained an unidentified additional page containing what appears to be an indorsement-in-blank stamp from Linda Caballero (inserted in between the pages of the already-existing Complaint exhibits) with another rubber stamp to the right of the indorsement-in-blank stamp endorsed to the Plaintiff.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

As soon as the foregoing documents were produced, Judge Margaret Waller signed a Final Judgment of Foreclosure.  The Property was sold and Certificate of Title issued and recorded as CFN#2010109443 on 02-02-2010.  Based on the suspect Assignment manufactured by Stern and signed by known robosigner, John Kennerty (aka Herman John Kennerty), along with the introduction of an unmarked, inserted Note page containing an endorsement stamp that was highly likely manufactured to achieve the "new and improved look" of the Note, the Examiner believes that:

> **(1) The Note and Assignment both contain false and misrepresentative manufactured information designed to commit fraud on both the land records and on the Court;**

> **(2) The Assignment and Note were manufactured in concert between the Stern Law Firm and Wells Fargo Bank, N.A. as Master Servicer for the Plaintiff trust;**

> **(3) Based on the statements made by Kennerty in a Deposition that is included in the USB Exhibits file and based on the information obtained from the 150-page Wells Fargo Foreclosure Attorney Manual, also included as a printed Exhibit in this report, the Assignment and the additional page to the Note were manufactured to deceive the Court into granting Final Summary Judgment of Foreclosure; and**

> **(4) Based on the assertions that the trust REMIC's pooling and servicing agreement ("PSA") was violated, in contravention of New York trust law, the entire process of foreclosure was a sham.**

Due to the involvement of multiple parties, including but not limited to notaries public and attorneys who supervised the production of these documents, and due to apparent lack of attorney supervision in the production of the Assignment and execution by the Stern Law Firm, there is probable cause for violation of Florida RICO statutes, based on perjury.

Due to the involvement of multiple parties, including but not limited to notaries public and attorneys who supervised the production of the Assignment, containing false and misrepresentative information, which was then recorded in the real property records of Osceola County, Florida, it would appear there is probable cause for violation of Florida Criminal Code Section 817.535.

There also appear to be indications that the manufacture of these documents may constitute the unauthorized practice of law, in addition to numerous ethics violations of Florida Bar Association Rules.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 77: *Aurora Loan Services, LLC v. Julio A. Gonzalez et al* (2008 CA 10467 MF)**

This case was placed in the Inactive Files because of a Suggestion of Bankruptcy, filed in 2012, which was dismissed in 2012 and refiled again in 2013. The Court file is showing CLOSED, despite the Final Judgment of Foreclosure that was entered in the case by Judge Miller. The case was initiated by Cassandra M. Rigaud (FBN450065) of the David Stern Law Firm, who also filed the Notice of Lis Pendens for record as CFN#2008183170 on 11-07-2008. The outcome of the case appears to be premised on two (2) assignments, discussed below:

CFN#2009053928, recorded by presentment on 04-06-2009
Signer: Joann Rein (known robosigner for Aurora Loan Services), claiming to be a Vice President of MERS, using MERS's street and post office box address to represent MERS as a standalone Assignor, claiming to transfer BOTH the Note and Mortgage to itself (Aurora Loan Services), which is impossible since MERS doesn't own the Note and thus cannot assign what it does own, if the questionable premise of authority to sign for MERS holds true. The MERS Corporate Seal is out of date (1995, not 1999).
Notary: Darline Dietz (Nebraska Notary Commission Expired March 22, 2010)
Witnesses: Janie Flores, Susan Lindhorst (known robosigners)
Key Issues: Self-assigned using MERS for defunct lender; false corporate seal; MERS can't assign Note it doesn't own. See Deposition of Joann Rein, in the USB Exhibit File.

CFN#2012145916, recorded by presentment on 10-09-2012
Signer: Jason L. Rupp (alleged Vice President for Aurora Loan Services LLC), claiming to backdate an Assignment of the Mortgage ONLY; meaning Aurora still claims to hold the Note, since it used MERS to make the previous and assumedly-void transfer, Nationstar only holds the Mortgage with no apparent rights to the Note, based on the previous Assignment of Mortgage.
Notary: S. Jodel Bohl (Nebraska Notary Commission Expired August 3, 2014)
Witnesses: None
Key Issues: Use of claimed MERS-originated Mortgage it claims to assigned to itself, now assigning ONLY Mortgage to Nationstar; backdated Assignment that still does not validate ownership of the Note. Prepared by someone other than the signor; signor has no knowledge of the contents of the document in their authorized capacity.

In the case itself, the originally-proffered EXHIBIT B is not even marked "Allonge to Note" so the Examiner believes it is a mock-up that was manufactured to convince the Court of Note ownership. The attorney is attempting to self-verify third-party hearsay information. Brian L. Rosaler (Florida Bar Bo. 174882; representing Popkin & Rosaler, P.A.) filed a Notice of Appearance as Counsel for Plaintiff on February 24, 2011, removing Stern from the case. Sarah S. Rezai (FBN44823) filed an Amended Complaint. There are issues with the Amended Complaint, to wit:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) It is highly likely that Affiant Jodi Wilson of Aurora Loan Services had no personal knowledge of the facts she is attesting to in the Verified Complaint, as the information was likely transferred by a hearsay third-party computer software platform which Popkin & Rosaler used to prepare the Complaint. The party who should be signing the Complaint is the holder of the Note, as there is nothing in the Complaint to indicate HOW Aurora Loan Services, LLC has the authority to represent Deutsche Bank National Trust Company as proffered in Paragraph 5 of the Amended Complaint;**

**(2) The Amended Complaint Note, shown as EXHIBIT "A", has an attached Allonge ("new and improved") attached to the Note, inserted within the pages of the Note (that wasn't there before);**

**(3) the first alleged indorsement/allonge combination appears to restrictively indorse the Note to Residential Funding Corporation (not Aurora as the 2009 self-assignment indicates (which makes the 2009 Assignment false and misleading under Florida Criminal Code Section 817.535) and NOT Aurora Loan Services, LLC;**

**(4) The second alleged restrictive indorsement names Deutsche Bank Trust Company as Trustee as the new holder of the Note by Assignment; thus, neither Aurora nor Nationstar owns the Note with the right to enforce it;**

**(5) Because of the failure of the First Assignment of Mortgage, using MERS to transfer something it doesn't have an interest in, namely, the Note, the Second Assignment also fails because it relied on the First Assignment being accurate and truthful; thus, neither Assignment is truthful; and**

**(6) Both Assignments appear to have been relied upon to take the owner's property in violation of F. C. C. 817.535, not to mention the multiple actors involved with Florida RICO claims.**

Neither restrictive indorsement is dated and neither party is before the Court. There is no effective date of transfer of the Note and no specific documentation to prove that Aurora has the right to enforce the Note. Based on the apparent false and misrepresentative Assignments of Mortgage, the Complaint pleadings are a sham. The judge relied on these sham pleadings to sign a Final Summary Judgment of Foreclosure. It appears to have forced the Defendant homeowner into bankruptcy again, further ruining his credit history and his ability to refinance the property to mitigate the damages of the real party in interest, who does not appear present here. Deutsche Bank is only the trustee; the administrator of the trust. It has not apparently been damaged either.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 78:** *U. S. Bank, N. A., Successor-in-Interest to Bank of America, N. A., Successor by Merger to LaSalle Bank, N. A., as Trustee for Mortgage Stanley Mortgage Loan Trust 2006-5AR, Mortgage Pass-Through Certificates, Series 2006-5AR v. Eugenio Rios et al (2012 CA 4608 MF)*

This case appears to have been initiated within the target period by Josh Arthur (FBN 95506) of Florida Foreclosure Attorneys, PLLC; who also appears to have filed the Notice of Lis Pendens and caused it to be recorded on 10-11-2012 as **CFN#2012147376** (included in this case file). The Verification within the Complaint appears to have been initiated by an Assistant Secretary of Homeward Residential, Inc. F/K/A American Home Mortgage Servicing, Inc. as attorney-in-fact for the alleged Plaintiff.  The issues with this Limited Power of Attorney ("LPOA") are noted as follows:

The Verified Complaint for Mortgage Foreclosure and Other Relief filed by this law firm failed to take into account that its party claiming to have attorney-in-fact status did NOT have such status, as verified by <u>CFN#2013096829</u> (contained within the case file) until June 21, 2013.  <u>Dianna Todd, who claimed to be an Assistant Secretary for Homeward Residential, Inc. as Attorney-in-Fact for U.S. Bank, N.A., under penalty of perjury, appears to have falsely sworn that she had the authority when in fact she did not.</u>  Further, the promissory Note proffered by the law firm contains undated endorsements, which does not prove effective date of transfer.

From indications within the case file, Matthew Forbes Braunschweig (FBN84047); Joe Ryan Paxton (FBN33431); Mark Morales (FBN64982); Matthew Glachman (FBN98967); Erik T. Silevitch (FBN92048) also appeared to have participated in this scheme to deprive the Rios's of their property. Rios filed for bankruptcy during the pendency of this case.  Judge Robert Pleus granted a Final Judgment of Foreclosure on March 26, 2014, which was later vacated by Judge Jeffords Miller on April 21, 2014.  It appears now that William Noriega (FBN98042) is attempting to reopen this case, based on the original Complaint. Further, the Verified Complaint included a copy of an unrecorded Corrective Assignment of Mortgage, which the Examiner traced to its recorded version as follows:

**CFN#2012101927, recorded by presentment on 07-10-2012**
**Document Prepared by: Florida Foreclosure Attorneys, PLLC (unknown author)**
**Signer: Tonya Hopkins (known Homeward Residential, Inc. employee in Jacksonville, FL), claiming to be an Assistant Secretary of MERS, as a standalone Assignor (using a MERS post office box in Flint, Michigan to cover up the real identity and location of the true assignor); attempts to assign only the Mortgage to the already closed 2006-5AR REMIC trust.**
**Notary: Linda G. Bayless (Florida Notary Commission active until 10-23-2015)**
**Witnesses: Vicki Brantley, Lori Richard (known Homeward Residential, Inc. employee in Jacksonville, FL)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are multiple issues with this Assignment of Mortgage, to wit:

> **(1) The document was manufactured by the law firm for the intended purpose of "fixing" any errors prior to attempting foreclosure; thus attaching and relying on the document to foreclose on the property;**

> **(2) Unless the viewer goes directly to the Book and Page noted in the Corrective Assignment, the true Assignor is misrepresented on this document;**

> **(3) The employees are that of the Servicer and NOT the real party in interest, apparently being told to initiate this document to cover up the chain of title as well as the chain of custody of the promissory note;**

> **(4) The REMIC trust's address is NOT the address of the Servicer; thus, unless the parties knew where the actual location of the REMIC trust was, it is clearly misrepresented here; and**

> **(5) Despite this law firm's attempts to declare that their Plaintiff client owns the Note and Mortgage, the factors within the Complaint make that seem impossible.**

Thus, the foregoing document appears to give rise to probable cause to violation of the Florida Criminal Code § 817.535. The Examiner next reviewed the previous Assignments of Mortgage, in reverse, to attempt to connect the chain of title, to no avail.  The previous assignments are listed below, to wit:

CFN#2010167921, recorded by presentment on 11-05-2010
Document Prepared by: "A. Stenstrom", potentially employed by the now-defunct law firm of Ben-Ezra & Katz, P.A. (2901 Stirling Road, Suite 300, Fort Lauderdale, FL 33312)
Signer: Elizabeth Boulton (known Homeward Residential, Inc. employee in Jacksonville, FL), claiming to be an Assistant Secretary of MERS, as a standalone Assignor (using a MERS post office box in Flint, Michigan to cover up the real identity and location of the true assignor); attempts to assign only the Mortgage to the already closed 2006-5AR REMIC trust.
Notary: Brenda L. Frazier (Florida Notary Commission expired)
Witnesses: both scribbled and illegible

There are multiple issues with this Assignment of Mortgage, to wit:

> **(1) The document was manufactured by the law firm for the intended purpose of assigning BOTH the Note and Mortgage, something which MERS cannot be involved in since it has no interest in the Note;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) The employees are that of the Servicer and NOT the real party in interest, apparently being told to initiate this document to cover up the chain of title as well as the chain of custody of the promissory note;**

**(3) The REMIC trust's address is NOT the address of the Servicer; thus, unless the parties knew where the actual location of the REMIC trust was, it is clearly misrepresented here; and**

**(4) Despite this law firm's attempts to declare that their Plaintiff client owns the Note and Mortgage, the factors within the Complaint make that seem impossible.**

**Thus, the foregoing document appears to give rise to probable cause to violation of the Florida Criminal Code § 817.535.**

**CFN#2009054887, recorded by presentment on 04-08-2009**
**Document Prepared by: "Ron Meharg", DOCX (whose President, Lorraine M. Brown, is in prison for orchestrating the frauds outlined below).**
**Signers: Korell Harp, Tywanna Thomas (both known DOCX robosginers in Alpharetta, GA), claiming to be a Vice President and an Assistant Secretary of MERS, respectively, as a standalone Assignor (using an address in California belonging to Option One Mortgage Corporation) to cover up the real identity and location of the true assignor).**
**Notary: Shawanna Crite (Georgia Notary Commission expired on 03-12-2013); Ms. Crite was featured on CBS News *"60 Minutes"* program on April 3, 2011 with Scott Pelley.**
**Witnesses: Dawn Williams, Christina Huang (both known robosigners)**

**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) The document contains vague and ambiguous language regarding the Note; MERS cannot be involved in assigning any rights in the Note since it has no interest in the Note;**

**(2) The U. S. Justice Department investigated DOCX (along with other law enforcement agencies) into the document manufacturing aspects of this firm. This resulted in the plea deal with Lorraine M. Brown, who plead guilty to orchestrating the fraud scheme to record documents in the real property records of counties all over the United States using techniques that were found to be fraudulent (robosigning, surrogate signing; notary fraud, etc.);**

**(3) The employees are that of the Servicer and NOT the real party in interest, apparently being told to initiate this document to cover up the chain of title as well as the chain of custody of the promissory note;**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) The REMIC trust's address is the address of the Master Servicer; thus, unless the parties knew where the actual location of the REMIC trust was, it is clearly misrepresented here; and**

**(5) Despite this law firm's attempts to declare that their Plaintiff client owns the Note and Mortgage, the factors within the Complaint make that seem impossible.**

**Thus, the foregoing document appears to give rise to probable cause to violation of the Florida Criminal Code § 817.535.**

Further, there are no recorded Assignments of Mortgage from the original Lender, Minnesota Lending Company, LLC dab Central Florida Lending, LLC (also registered in the State of Florida as Central Florida Lending Co. LLC, which was voluntarily dissolved on November 30, 2010 and was misrepresented in the original Note and Mortgage executed by the Rios's on December 15, 2005. Also extraordinary is that there is no recorded Assignment of Mortgage from the originating lender (non-MERS mortgage) to American Home Mortgage Corporation, which went out of business in 2008. Further, there is no restrictive (special) indorsement to U.S. Bank, N.A. accompanied by an Assignment of Mortgage from American Home Mortgage Corporation to show the effective date of transfer. Any future assignment purporting to claim that a transfer occurred (which could not be backdated), when the REMIC's closing date was March 31, 2006 would be considered void under New York trust law. Any future assignment would have to be manufactured for the purposes of bringing fraud on the court.

Thus, absent a recorded Assignment, the Notice of Lis Pendens was filed in the public record with the intent to represent a court case filing to foreclose on a property wherein a lack of power of attorney status was shown to be deficient in the filing of this case. There is sufficient belief that perjury has occurred within the filing of the Complaint, therefore the Notice of Lis Pendens: (1) slanders title to the property; and (2) is false and misrepresentative under Florida Criminal Code § 817.535.

It appears that Judge Pleus granted a Final Judgment of Foreclosure on March 25, 2014, recorded as CFN#2013043892 on 03-28-2014; but later vacated that judgment on April 21, 2014 in what appears to be the Defendant homeowner's counsel's arguments in favor of vacating the judgment. Still, the intent to utilize three (3) recorded Assignments and a facially deficient LPOA constitutes multiple violations of Florida Criminal Code § 817.535; multiple violations of the Florida RICO statutes involving perjury and fraud on the Court (perjury), not to mention alleged multiple violations unauthorized practice of law or in the least, Florida Bar Rules for failing to supervise non-lawyer employees in the creation of documents used to facilitate foreclosure actions. It further appears that Plaintiffs' counsel has reopened the case in an attempt to again seek foreclosure (relying on the same allegedly fraudulent documents).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 79:** *Aurora Loan Services, LLC v. Edward Aristizabal et al*  (2010 CA 0991 MF)

**The Stern Law Firm's original Complaint (filed by Curtis C. Turner, Jr.; FBN51646) filed the original Complaint, attempting self-verification, on February 8, 2010.  Turner appears to have relied on a Corporate Assignment of Mortgage, CFN#2010060071, recorded by presentment on 04-28-2010 (within the statute of limitations for probable cause of violation of Florida Criminal Code Section 817.535). It was notarized by Linda D. Parks (Nebraska Notary Commission expired).**

**There are issues with the Assignment, to wit:**

>**(1) It was manufactured by the Assignee and signed by the Assignee's representative, Theodore Schultz (a known robosignor) and witnessed by Susan Lindhorst and Janie Flores (two known robosignors), using a MERS 1995 (outdated) seal;**

>**(2) MERS cannot assign a Note it doesn't own, especially from a defunct lender to the Assignee by the Assignee's own employees; and**

>**(3) The document was prepared by Assignment Prep employee Rhonda Gail, who highly likely was working off of hearsay, computer-generated instructions from an unknown outside entity, who caused it to be recorded nearly three (3) months AFTER the suit was filed.**

**The Adjustable Rate Note was unendorsed.   The Complaint also sought to enforce lost loan documents.  On July 1, 2010, Turner again filed an Amended Complaint, this time also self-verified, this time attempting to attached the relied upon 2010 Assignment and an Allonge to Note.  There are issues with BOTH documents, to wit:**

>**(1) The Allonge to Note was undated as to all 3 endorsements, which are scattered on a page with what appears to be a copied FIRST NATIONAL BANK OF NEVADA restrictive indorsement to FIRST NATIONAL BANK OF NEVADA from Amy Hawkins, who claims to be an Assistant Vice President of First National Bank of Arizona;**

>**(2) The second indorsement stamp appears to contain the same signature patterns, except this is paid to the order of Residential Funding Corporation (rubber stamped) by Amy Hawkins, who this time claims to be Assistant Vice President of First National Bank of Nevada (which subsumed First National Bank of Arizona);**

>**(3) The third restrictive indorsement stamp purports to transfer the Note from Residential Funding Corporation to Deutsche Bank Trust Company Americas, as Trustee, but failing to specify which trust REMIC received the Note; and**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) The document appears to have been "Photoshopped" by the way it was so neatly designed.**

Thus, it appears that document manufacturing was employed to deceive the Court, which appears to be fraud on the Court.   As to the Assignment: (1) The recorded Assignment was two pages long, but only Page 1 of 2 was attached and marked EXHIBIT "B"; thus, only half of the document (without the acknowledgement) is present, which fails on its face as prima facie evidence; (2) The self-assigned document using MERS invalidates the transfer because effective transfer has not only NOT been proven, but MERS cannot transfer something it does NOT have an interest in; and (3) The real party in interest cannot be present in Court if the Assignment fails.   The Along was also misplaced behind the Addendum and not behind the Note itself, another suspect feature of inappropriate violation of U.C.C. 3-302(2).

As to the Plaintiff's Motion for Final Summary Judgment, see the Deposition of Neva Hall, contained in the USB Exhibit File, regarding the manner in which Aurora Loan Services, LLC conducts it business in Marion County, Indiana, which adds suspect issues to the filing of this Motion. The Affiant, Cheryl Marchant, is mentioned in this Deposition.   Based on the Amended Complaint "manufactured appearance" of the Allonge, there is no possible way Aurora owns this Note and Mortgage and thus, the Assignment contains false and misrepresentative information, probable cause for violation of Florida Criminal Code Section 817.535 and Florida RICO statutes.

The "Original Documents" file was also corrupted, containing the same presentation of documents (single-page assignment, failed UCC-styled Note, etc.) as the Amended Complaint.  Judge Miller granted a Final Judgment of Foreclosure anyway on October 14, 2010. Randolph J. Clemente (FBN67189) handled the final summary matters for Stern.   Judge Miller denied the Defendant's objection to set aside the ruling and ordered sale and writ of possession.  A Certificate of Title was issued to Aurora Loan Services, LLC on December 8, 2010, despite the fact the Note did NOT convey anything to Aurora, recorded as CFN#2010187017 on 12-13-2010.

**Case No. 80:** *Bank of America, N.A., Successor by Merger to Countrywide Bank, FSB v. Frances V. Morales et al  (2010 CA 2896 MF)*

**CFN#2010164239, recorded by presentment on 11-01-2010**
**Signor: Serena Harman (known robosigner) claiming to be a Vice President of MERS, attempting to assign BOTH the Note and Mortgage to Bank of America, N.A. (her employer) in what appears to be a self-assignment of Mortgage, involving the David Stern Law Firm (who appears to have drafted it).**
**Notary: Krista Garza (Texas Notary Commission Expired on 06-18-2013)**
**Witnesses: Greg Juarez, Miranda Cristerria (alleged Bank of America, N.A. employees)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are multiple issues with this Assignment, to wit:

    **(1) Just Mortgage, Inc. was still in business at the time of the Assignment;**

    **(2) Just Mortgage, Inc. discontinued business in Florida on September 28, 2012;**

    **(3) Just Mortgage, Inc. is still an active corporation in the State of California;**

    **(4) The signor (and Stern) claims the address for Just Mortgage, Inc. is a "c/o BAC Home Loans Servicing, LP" (using BAC's Plano, TX address), which is false;**

    **(5) There are multiple uses of rubber stamps for names, dates and titles, which is a common marker of document manufacturing; and**

    **(6) Scribbled signatures are common markers of robosigning; thus, it is doubtful that Harman:**

        **(a.) signed the notary journal;**

        **(b.) had personal knowledge of the contents of what she was signing; and**

        **(c.) did not understand that MERS did not own the note and could not transfer something it didn't own.**

**Thus, the Assignment of Mortgage contains false and misrepresentative information and was used in the taking of property belonging to Francis V. Morales, a single woman.**

Linda E. Singer (FBN872512) filed the Complaint, attempting self-verification, on behalf of Marron T. Gebremeskel (FBN68819) for the Stern Law Firm. Despite the attached Loan Modification, there was no recorded Assignment of Mortgage and Note from Just Mortgage, Inc. to Countrywide Bank, FSB; thus the validity of the Loan Modification Agreement (CFN#2009016463) may also be false and misrepresentative of the true facts contained therein. The Assignment was not filed for record until seven (7) months AFTER the Complaint was filed; thus, Bank of America, N.A. did NOT have standing to foreclose at the time the Complaint was initiated.  Singer also recorded the Notice of Lis Pendens well before her client allegedly owned the Mortgage and Note, on 04-23-2010.

The Stopa Law Firm was retained by the Defendant homeowner and cited many of the concerns observed here in its October 6, 2010 Motion to Dismiss.  This forced the Bank to apparently bring in another law firm, Robertson, Anschutz & Schneid, P.L., represented by Jonathan Meisels (FBN 29235).

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Melissa Konick (FBN 17569) for Measles, then filed a Motion for Leave to File an Amended Complaint on September 1, 2011 and a copy of the Assignment referenced herein as Exhibit "B". Still, the Complaint relies on a Loan Modification Agreement in which there was no proof of effective transfer of the Note and attached and relied on the allegedly false assignment.

After another round of defense challenges, Robertson, Anschutz & Schneid, P.L. filed a Motion to Withdraw from the case; replaced by Ablitt Scofield, P. C.'s Menina E. Cohen (FBN14236); Matthew A. Pingeton (FBN177830; see *Section Five* for particulars); Allegra Knopf (FBN307660); Rachel Taube (FBN73179); and Colin D. White (FBN45194), who "magically" filed a promissory Note in the case.

The Note contains an extra page (despite the fact there is plenty of room under U.C.C. 3-302(2) to affix indorsements underneath the Borrower's signature, this attached document purports to be an "Allonge to Note". It is undated. It contains two (2) indorsements: (1) from Just Mortgage, Inc., a California corporation to Countrywide Bank, FSB, whose name is rubber stamped onto the page; and (2) a second indorsement-in-blank stamp from Laurie Meder, claiming to be Senior Vice President of Countrywide Bank, FSB to (no one), without recourse, making it appear as if anyone could enforce the Note.

It is highly likely that Meder herself did NOT affix the stamp; someone at ReconTrust in possession of her stamp (with no knowledge of the actual transfer) did. After another round of defense challenges and propounding of discovery on the Plaintiff, Todd Droksy (FBN54811) filed a Notice of Appearance as Co-Counsel on behalf of Frenkel, Lambert, Weiss, Weisman & Gordon LLP. This was followed by Substitution of Counsel (Ablitt Scofield was filing bankruptcy at that time) on or about June 1, 2014. It appears that Matthew Hearne (FBN84251) and Todd Droksy handled the Consent Judgment on behalf of the Plaintiff, who to date, still appears to have failed to explain how it managed to execute a self-assignment using MERS to convey the Note to itself.Matthew Hearne then filed a Notice of Filing containing what he claimed was an "Original Note" and "Original Mortgage".

There are two copies of the Note, one with the Allonge and one without. Which "Note" are we to believe?

The judge signed the Order of Foreclosure anyway. Further, it is questionable as to whether Minh Lam actually signed the Note Allonge. His LinkedIn page shows he was employed at Just Mortgage, Inc. as as "Docs and Funding Assistant Manager" from October 2007 - October 2009; and then as a "Mortgage Funder" from July 2005 - July 2007. It does NOT say on his LinkedIn page that he was an "Assistant Vice President" as the Note signature "title" states on the proffered Note. He appears to be a "Mortgage Closing Specialist" with Cathay Bank, which he has been at since August of 2012, also as a Notary Public in and for the State of California (expires 05-2017). The Note appeared in the Court records in 2014, which makes this presentation by counsel suspect for fraud on the Court in addition to perjury in the land records.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 81:** *BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP v. Sonia Diaz et al*  **(2010 CA 6111 MF)**

**CFN#2010159248, recorded by presentment on 10-21-2010**
**Signer: Jere Morris (alleged BAC employee), signing as Assistant Secretary of MERS as nominee for then-defunct Countrywide KB Home Loans, LLC.**
**Notary: Melissa Flanagan (Texas Commission was voluntarily surrendered)**
**Witnesses: Ruby Gutierrez, Dekendrick Ganison**
**Issues: The Stern Law Firm prepared this Assignment in an attempt to prove standing for its client.  MERS does not own the Note, therefore, it cannot convey something it does not own.  BAC used MERS and one of its subsidiaries' addresses to hide behind the self-assignment conducted out of Dallas County, Texas in the taking of property belonging to Sonia Diaz.  The Assignment was recorded just days before the Complaint to Foreclose was field with the Court.**

The Complaint file by Stern Law Firm attorney Nicholas Parres (FBN72844) on behalf of Ralph Mora (FBN70039) attempts to intimate that Gina Zuckerman (rubber stamped name on the Verification) signed this document under penalty of perjury when the signature is not legible and could have been affixed by someone in the Stern Law Firm.  The MERS-originated Mortgage is attached along with the Note, which contains no endorsements.  It further appears that a cost bond was filed with the Court.  The Defendant filed a letter with the Court explaining her default and hardship and that the property was for sale and no longer being rented. The Stern Law Firm filed the Notice of Lis Pendens as CFN#2010145766 on 09-30-2010.

Robertson, Anschutz & Schneid, P. L. ("RA&S") was substituted for the Stern Law Firm on June 1, 2011, who then filed an Amended Complaint in the case.  The Amended Complaint included an Assignment of Mortgage (above) that was drafted by the Stern Law Firm to attempt to effectuate standing for its client.  The Note still did NOT contain endorsements. RA&S's April Harriott (FBN37547) then filed a Motion for Summary Judgment of Foreclosure, this time attaching a Note with an Affidavit from Stefanie J. Buchanan who claims to be an officer from Bank of America, N.A. (since it had already subsumed BAC Home Loans Servicing, LP) and the Note contains THREE (3) INDORSEMENTS on it.  All are undated; all appear to be affixed to tie any entity past Countrywide Bank, FSB to the loan (all more than likely affixed by persons unknown at ReconTrust Company in Ventura County, California under the instructions of Bank of America, N.A. and the law firm, without any effective proof of transfer of the Note.

Tiffany Ashley Feuer Waldman (FBN 86591) appears to have handled most of the back-end filings for RA&S. RA&S's Jonathan Meisels (FBN 29235) then filed a Motion to Withdrawn RA&S from the suit.  Again, as in the previous lawsuit, Ablitt Scofield's Matthew A. Pingeton (FBN 177830) was substituted in, along with Menina E. Cohen (FBN14236) and Michael P. Bruning (FBN37361).  Ablitt Scofield then filed a second Affidavit with the Court.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

After the filing of the Affidavit, Angela Vittglio (FBN 51657) filed a Notice of Appearance for Frenkel, Lambert, Weiss, Weisman & Gordon, LLP ("Frenkel") and was substituted in to replace Ablitt Scofield.  Final Judgment of Foreclosure was signed on July 14, 2014 by Judge Miller and a Certificate of Title was issued to BAC Home Loans Servicing, LP, which had already (in July of 2011) been subsumed into Bank of America, N.A. with no challenge from the homeowner.  Again, the suspect Assignment using MERS to convey a Note it has no interest in is suspect in the taking of the property, probable cause under Florida Criminal Code Section 817.535.  Because multiple law firms were involved in the taking, all are now suspect under Florida RICO Statutes for perjury for their culpability in manufacturing or relying on the suspect Assignment to effectuate standing.

**Case No. 82:** *Bank of America, N.A. v. Juan Castillejos et al*  **(2009 CA 11799 MF)**

This two-count Complaint was filed by Stern Law Firm attorney Edwin Y. Cordova (FBN 55567) for Margaret E. Kepler (FBN 59118) November 12, 2009.  Count II was to enforce a lost note; however, the Complaint is not verified by someone from Bank of America, N.A., the originating lender, but rather the attorney for the law firm.  Cordova failed to identify what due diligence had been exercised to locate the lost note.  It is also highly likely that this loan may have been sold to Fannie Mae or Freddie Mac.  It is not a MERS-originated Mortgage and there are no suspect Assignments involved here.  The Note submitted as an Exhibit with the Complaint contains no endorsements to any other party.   The Notice of Lis Pendens was filed for record on 11-18-2008 by Denise Elizabeth Kistner (FBN 70866) on behalf of Margaret E. Kepler (FBN 59118).

On April 14, 2010, Jonathan Scott Wilinsky (FBN 45200) filed a Motion for Final Summary Judgment of Foreclosure (on behalf of Kepler, supra).  This Motion also included an Affidavit submitted by Tyira Ganison who claims to be an Assistant Secretary for Bank of America, N.A.  This Affidavit makes absolutely no mention of the lost note, just that her employer (the Plaintiff) holds it, attempting to assert a sum certain that is owed to her employer.  There is nothing to indicate due diligence on Ganison's part as to how this information was within the purview of her actual, personal knowledge.

On June 25, 2010, Wilinsky again attempted to file the same Motion with the same Affidavit, seeking Final Judgment of Foreclosure.  On that same date, what was purported to be the Original Note was filed with the Court, this time containing an indorsement-in-blank rubber stamp by Bank of America which contained the rubber-stamped signature of Christina M. Schmitt.  The Examiner believes that by virtue of affixing an endorsement-in-blank from Bank of America, N.A., the intent was to transfer the promissory note (which was claimed to have been lost) to another party not present in this proceedings.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

A Final Judgment of Foreclosure was granted on July 13, 2010 by Judge Ronald Legendre. Shortly before the sale of the property, the Defendant appears to have filed a Chapter 7 bankruptcy and Bank of America had declared a moratorium on foreclosures and requested the sale be cancelled.

On March 12, 2012, Mary Corbin (FBN 84101), representing the law firm of Aldridge Connors, LLP, filed two Motions: (1) to Substitute Counsel for the Stern Law Firm; and (2) a Motion to Reset the Foreclosure Sale, stating the self-imposed moratorium by Bank of America, N.A. had been lifted.

At this juncture, there is no mention of the Lost Note and how it was located.  Two days later, Aldridge Connors Ex Parte Motion ot Substitute Counsel was granted by Judge Miller.  On the Consent to Substitution of Counsel however, was an Exhibit foreign to the proceeding, signed by Kevin Marks, who claims to be Vice President of Wells Fargo Home Mortgage.  This is NOT the Plaintiff of record.

At this point in the pendency of the case, the Defendant again filed bankruptcy; this time a Chapter 13 and a Notice was filed with the Court on May 21, 2012.  The following day, Judge Miller granted the Plaintiff's Ex Parte Motion to Assign the Bid to Freddie Mac, as previously suspected.

Due to the bankruptcy filing, the foreclosure sale was rescheduled to January 7, 2014 and then subsequently cancelled; and reset again for April 9, 2014.  Nalini Singh (FBN 43700) from the new firm appears to be handling the sale arrangements.  On April 3, 2014, Singh filed a Motion to vacate the Summary Judgment; Dismiss the Case Without Prejudice; Discharge the Lis Pendens and Return the Original Documents (which are suspect for actually being "Original"), which Judge Miller granted on April 7, 2014.

Since the case was dismissed without prejudice, the Examiner believes that Freddie Mac may attempt foreclosure against the property in the future, since Aldridge Connor's counsel assigned the "bid" to Freddie Mac, pre-foreclosure sale.  No such Assignment of Bid however was recorded.

With the appearance of a Consent to Substitution by Wells Fargo Home Mortgage, there are apparent unresolved issues "behind the scenes" that may have resulted in potential fraud on the Court in this instance. Probable cause may exist for violation of Florida RICO Statutes since the Affidavits and claimed self-verification by Stern's attorney is suspect, in light of the lost note count.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 83:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates Series 2007-SEA2 v. Tammy A. Jones et al* **(2011 CA 4432 MF)**

This dismissed case was prefaced by an Assignment of Mortgage which the law firm of Robertson, Anschutz & Schneid, P.L.'s attorney Cedric Charles Small (FBN 70679), filing for attorney Vanessa Lee (FBN 84421), appears to have relied upon in naming the Plaintiff in the action (*see* A & Y EX. 1)   It appears that a Cost Bond was filed with the Court.   The Notice of Lis Pendens was filed for recorded on 12-21-2011 as CFN#2011176643, also by Small.

CFN#2009155767, recorded by presentment on 09-29-2009
Signer: Isabel V. Colleran (alleged Adorno & Yoss, L. P. employee), signing as Assistant Secretary of MERS as nominee for defunct Imperial Lending, LLC, attempting to transfer BOTH the Mortgage and the Note to a closed CWABS, Inc. 2007-SEA2 REMIC trust), using "c/o" Adorno & Yoss's address misrepresenting the address of the now-defunct lender (inactive since 09-26-2008).
Notary: T. F. Morales (Florida Notary Commission No. 685679; expired)
Witness: Mijal Rosenblum (?), Kelly Tingler (?) (names scribbled and illegible)

There are multiple issues with this Assignment, to wit:

>    (1) The manner in which the trust is listed on the Assignment cannot be identified on http://www.secinfo.com; therefore, a random search was conducted generally, which produced the following results under the heading (Issuing Entities with No Demands for Repurchase or Replacement):

>    CWABS ASSET-BACKED CERTIFICATES, SERIES 2007-SEA2
>    907  194,534,034  100.00%
>    Taken from EX-99 2; this REMIC was involved in settlement negotiations apparently as part of the Countrywide/Bank of America investor litigation, a pdf Exhibit which has been printed and made a part of this case file;

>    (2) MERS does not have an interest in the Note; thus, it cannot transfer something that it does not have an interest in; and

>    (3) The signor, Isabel Vals Colleran (FBN 450472) is a current practicing bankruptcy attorney with Blaxberg, Grayson & Kukoff, P. A.; formerly an Associate with Adorno & Yoss.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thus, the law firm was directly involved in the manufacture and execution of the document whether directly involved in the litigation or not.  The Settlement attached hereto may have resulted in the investors who funded Tammy Jones' loan may have been made whole in part or in sum.   The Plaintiff may not have made the law firm aware of this Settlement and what if any relief or damages were paid to the alleged investors who funded the Jones' mortgage loan.   The Note attached to the original Complaint contains an enlarged indorsement stamp from Imperial Lending, LLC (with a line drawn down the paper) to Countrywide Home Loans, Inc.  and a second indorsement-in-blank appears on the right-hand side of Page 5 of 5 of the Note, featuring the signature of Michele Sjolander, whose stamp was in the possession of ReconTrust Company, N.A., a subsidiary of Countrywide Home Loans, Inc. at that time.  Neither endorsement is dated, thus, no certain way to prove effective date of transfer.  Further, even if the PSA were available, the Assignment would have violated the PSA and made the transfer void under New York Estates, Powers & Trusts at Section 7-2.4.

Therefore, despite the dismissal of the case, due to the fact that an action to foreclose appears to have relied on the recorded Assignment which appears to contain false and misrepresentative information, there is probable cause for violation of Florida Criminal Code §  817.535 as well as Florida RICO statutes and potential fraud on the Court.

**Case No. 84:** *American Home Mortgage Servicing, Inc., a Delaware Corporation, f/k/a/*
*Mortgage Acquisition Co., Inc. v. Marleny Escobar et al*  **(2008 CA 9187 MF)**

**This case was dismissed on December 16, 2010, which brings it into our target period's 5-year statute of limitations.  It contains an Assignment of Mortgage which was relied on by the law firm of Adorno & Yoss, LLP's Shan Massand (FBN INACTIVE) for Awilda Esteras (FBN 605174) when it filed this action on behalf of the Plaintiff.  The attorney attempted to self-verify the Complaint, which also seeks to re-establish a lost note, which Massand cannot ascertain the whereabouts or existence of. Massand also filed a Notice of Lis Pendens on 10-10-2008 as CFN#2008162876.**

**This pleading is contradictory regarding the filing of the Note, to wit:**

> **(1) In Count I, the attorney claims that the Plaintiff owns and holds the Note and that a "true and correct copy of the Note is attached hereto as Exhibit A;**

> **(2) In Count II, the attorney reallages Paragraphs 2 and 3 regarding the Note;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) In Count III, the attorney now claims the Note has been lost or destroyed (he can't say which);**

**(4) In Count III, the attorney claims that the Plaintiff is unaware when the loss or destruction occurred (but it's attached to the Complaint?);**

**(5) In Count III, the attorney states (in his self-verification) that the Plaintiff "or its predecessor" (he can't say which for sure) was in possession of the Note with the right to enforce it when the loss or destruction occurred;**

**(6) In Count III, the attorney claims that "A substantial copy of the Note is attached hereto as Exhibit "A"". (The Examiner cannot locate this alleged "Note" as "Exhibit A" in the Court files.);**

**(7) If the attorney has no idea where the Note is, then how can he claim what he states is fact in Paragraph 32 (Count III) of the Complaint?**

Here again, the Examiner references the letter sent to Hon. Jennifer Bailey by the Florida Mortgage Bankers Association in September of 2009 as to what might have happened to the Note. If the attorney cannot prove his client even has standing then there is probable cause for violation of the Fair Debt Collection Practices Act.

**Exhibit "B" appears to represent the Mortgage. Exhibit "C" is more disturbing, because the President of DOCX, Lorraine M. Brown, is in prison for spearheading the effort to fraudulently manufacture documents, especially in this case, where the infamous "Linda Green's" signature appears.**

**There are multiple issues with this Assignment of Mortgage:**

**(1) Ron Meharg listed the addresses for the Assignor and Assignee by one digit, showing the Assignor at 6501 Irvine Center Drive, Irvine, CA 92618 and for the Assignee 6502 Irvine Center Drive, Irvine, CA 92618. "6501" is the actual address for Option One Mortgage Company. "6502" shows multiple listings for various businesses;**

**(2) Attached to this file is a comparison file containing 22 pages of Assignments of Mortgage fabricated by DOCX. Notice the variations in Linda Green's signatures? For counsel to rely on this Assignment, which contains false and misrepresentative information, and mentions the Note per se is confusing and misrepresentative of the fact that since MERS is involved here and the Note was allegedly securitized into a REMIC trust;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) This cannot be an actual copy of what is recorded in the real property records of Osceola County, Florida because what is recorded does NOT have the bar code with the coded phrase "ANNA6470030749717" redacted as the Exhibit "C" does; this is false and misrepresentative in of itself to the Court generally due to the nature of the fact that the Florida Attorney General and the U. S. Department of Justice investigated DOCX.  To rely on this document would represent legal suicide;**

**(4) All of the signors on the document are known robosigners and signed documents for DOCX at the rate of 350 an hour.  Further, the 22-page attachment to this case represents the multiple variations of Green's signature, which the Examiner believes constitutes surrogate signing, meaning, Linda Green did not actually sign her name to all of the 350 documents an hour that her name and signature are shown on; therefore, the notary committed false swearing; and**

**(5) Without the Note to back up what is on this Assignment, the Plaintiff has no case.**

On November 1, 2010, Kahane & Associates, P.A., represented by Marc C. Granger (FBN 146870) filed a Motion to Amend Pleadings and Substitute Parties.   Further, the amended pleadings contained a copy of the promissory Note, unindorsed to anyone.

Now, it appears that, without the benefit of a recorded Assignment, Deutsche Bank National Trust Company as Indenture Trustee for the American Home Mortgage Investment Trust 2006-3, Mortgage-Backed Nots, Series 2006-3 is the new Plaintiff (again, the attached Assignment is NOT recorded in the real property records of Osceola County, Florida; therefore, only the Court has official Notice of this event).

**There are multiple issues with the Assignment proffered in this Amended Complaint, to wit:**

**(1) It was prepared by Robert S. Kahane for the obvious purpose of providing standing to his client; however:**

**(a.) The address of American Home Mortgage Servicing has now changed to (handwritten into a blank) "1525 S. Belt Line Road, Coppell, TX 75019";**

**(b.) The Assignment is based on the assertion that the DOCX assignment is valid and not the subject of criminal investigation under Florida Criminal Code § 817.535;**

**(c.) The Assignment is assigned by employees of American Home Mortgage Servicing, Inc. in Duval County, Florida and NOT Coppell, TX;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(d.) Kathy Smith is a known robosignor.  Tanya Hopkins is a known robosignor.  Their names come up in other suspect assignments within the scope of this report;**

**(e.) American Home Mortgage's address on the subject mortgage offered as evidence is shown being in Melville, NY and this entity went belly-up in 2007;**

**(f.) The trust that allegedly is being assigned the Mortgage and Note is based on the premise that MERS transferred the NOTE to the Assignor in this instance. Because of the confusing language in that Assignment, it is uncertain whether the Note was actually transferred in the first instance;**

**(g.) This document claims that it "is being recorded in order to formalize and memorialize an assignment of the subject mortgage which took place prior to October 6, 2008 (this date appears arbitrary, as long as it follows the date of the first Assignment done by DOCX employees); and**

**(h.) The Assignee REMIC trust has a Closing Date of December 28, 2006; therefore, the Assignment contravenes New York trust law and is void.**

At the time this summary was written, a check was made of real property records of Osceola County, Florida.  What was found recorded instead was NOT the Assignment claimed by Mr. Kahane that would be recorded, as an Exhibit to the Court in this case, so his Exhibit memorializes nothing.  On December 10, 2010, Hon Ronald A. Legendre dismissed this case without prejudice.   This case may have been closed, but not over.

**Case No. 85:** *Deutsche Bank National Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-3 v. Marleny Escobar* **(2011 CA 2121 MF)**

**CASE NOTE: This case represents the taking of the property through the alleged use of manufactured assignments, based on an original Assignment of Mortgage previously discussed in Case No. 84 of this Section.  It begins with the discussion of two recorded Assignments, as stated below:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

CFN#2013053352, electronically recorded on 04-05-2013

Signor: Roger Kistler, claiming to be Vice President of Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc., purporting to assign the mortgage and note executed by Marleny Escobar to a closed 2006-3 REMIC trust.

Notary: Jamie Torda (Texas Notary Commission still valid; expires on 10-11-2016), certifying under Penalty of Perjury under Texas law that the notarial execution is accurate and truthful.

Witnesses: Caroline S. Martin, Jean A. Morris (Homeward Residential, Inc. employees)

There are multiple issues with this Assignment as well, to wit:

(1) It was prepared by Mardi Nunn of Meridian Asset Services, Inc., showing an address in St. Petersburg, Florida (780 94th Avenue N., Suite 102, 33702), which now brings Meridian Asset Services, Inc. into the suspect pool of actors under Florida's RICO statutes involving this assignment and any potential attempts to rely on it in an Osceola County, Florida Court;

(2) The Assignor is American Home Mortgage Servicing, Inc., showing the Belt Line Road address in Coppell, Texas. Again, the Assignment attempts to convey the Mortgage and Note into a closed REMIC trust, especially one that is allegedly non-performing;

(3) The Assignor is shown as Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc.  The Assignor's name should have been listed as it was being assigned, if such an "f/k/a" was apparent at the time;

(4) This time the document was signed and notarized in Dallas County, Texas and not Duval County, Florida (as the unrecorded Kahane assignment proffers);

(5) Again, this Assignment relies on the validity of the DOCX Assignment in 2008, which was one of the reasons Lorraine M. Brown is in federal prison at this time;

(6) After recording, the document was returned to another document manufacturing plant in Houston, Texas (Brown & Associates), which appears to be connected by some agreement to Litton Loan Servicing (now Ocwen Loan Servicing, LLC); and

(7) Not only does there appear genuine issues of fraud on the Court, but also a joint effort to manufacture assignments to give the appearance that a closed REMIC trust actually owns the note and mortgage, when it was technically impossible in light of the contravention of the trust and subsequently, New York trust law.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2013149370, electronically recorded on 09-19-2013**
**Signor: Joel Pires, an Ocwen employee who claims to have attorney-in-fact status to sign the Assignment on behalf of Deutsche Bank National Trust Company, for the trust.**
**Notary: Stephanie Simpson (Florida Notary Commission No. EE 845836; still valid)**
**Witnesses: Janira Walker, Christopher Kelley (both Ocwen employees)**
**Issues: Scribbled signatures and rubber stamped names (markers of robosigning and document manufacturing); non-attorney supervised may bring potential unauthorized practice of law issues; Ocwen employees have no idea whether the effective dates of transfer actually occurred.   There are other issues with this Assignment of Mortgage, to wit:**

**(1) The  Assignment purports to transfer all of the interest of the Assignor to the Assignee c/o Ocwen Loan Servicing, LLC; however, it does NOT say what those interests are;**

**(2) The Assignment appears to have been prepared by Joe Simmons, an Ocwen Loan Servicing, LLC employee.  He is highly likely relying on information fed to him by MTGLQ INVESTORS, LP, owned by Goldman Sachs;**

**(3) It appears from the language within the listing of the referred "Instrument", that the Note was not part of that Instrument, only the Mortgage was; and**

**(4) The entire chain of Assignments of Mortgage still appears to rely on the suspect criminal assignment manufactured by DOCX and Ronald Meharg.**

It is obvious that this is another manufactured document based on the previous chain of assignments.  However, in order for them to work, the first Assignment had to have been valid.

It is recommended that Lorraine M. Brown be subpoenaed before the grand jury to testify to yet another unfortunate circumstance involving one of her suspect assignments.  All of the parties involved in the assignment are also considered "actors" for RICO issues.

Kahane & Associates, P.A.'s Courtney Kilbourne (FBN 44349) and Charlene Eligon (FBN 294070) appear to have been responsible for filing the Verified Complaint in this instance.

The Complaint states that Plaintiff Deutsche Bank is the holder entitled to enforce the mortgage and the Note.  As previously discussed, this is not only debatable but suspect for fraud on the Court, based on probable cause violations of Florida RICO statutes and for recording assignments that contain false and misrepresentative information with the intent to deprive a homeowner of their property under Florida Criminal Code § 817.535.   Theresa Esposito, who claims to be Vice President of the Servicer for the trust (providing absolutely no proof of such), signed the Verification.  Further, the Verification is not being signed by the Trust but rather by the Servicer, which is suspect until the Trust proves otherwise.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

A copy of the Mortgage and Note are allegedly attached. There is still no indorsement-in-blank on the Note that would comport to conveyance into the trust REMIC. The Notice of Lis Pendens was recorded by Kahane & Associates attorneys Deborah I. Branham (FBN 0892531) for Adelia Schuina (FBN 78410), which again appears to effectively slander title based on precedent suspect criminal issues.

Stacey Dara Rosenthal (FBN 598291) caused a Motion for Leave to File a Verified Amended Complaint to be filed with the Court on March 12, 2012, again inserting a Lost Note Count into the Complaint. Again, if the Note was lost or destroyed, how did the REMIC trust get ahold of it in order to effectuate transfer into the trust, absent the alleged April recorded Assignment of Mortgage?

If the said Note is not in the custody or control of the Plaintiff, an Affidavit of Lost Note is required to be filed with the REMIC trust, WITHIN THE PSA GUIDELINES AND DATES PROVIDED, shortly AFTER the REMIC's Closing Date, but not six years later.

**The Affidavit of Lost Note proffered in this case by the Plaintiff's Servicing representative David Mitchell, fails to state or provide:**

> **(1) Evidence of his recorded Limited Power of Attorney to act on behalf of the trust;**

> **(2) Evidence of more specific information of how HE personally KNEW when and where the Mortgagor executed the documents referenced therein;**

> **(3) Evidence in Paragraph (2)(b) that makes mention of the electronic scanning of the Note and Mortgage to be placed into the MERS electronic database BEFORE the "Loan Origination File" was transferred from American Home Mortgage to American Home Mortgage Servicing, Inc. ("AHMSI"), as what was proffered in the 2008 suspect criminal Assignment of Mortgage, since MERS was utilized in the 2008 Assignment of Mortgage;**

> **(4) Evidence within the Loan Origination File of the Warehouse Lending Agreement; the Whole Loan and Sale Agreement; and the Gestation Agreement, as provided for by then-MERSCORP, Inc., the electronic agent, if applicable, as required under the MERS Rules of Membership for 2009;**

> **(5) Evidence that there exists a promissory Note that contains the properly-dated indorsement-in-blank as required under the Pooling and Servicing Agreement;**

> **(6) Evidence that the effective date of transfer of the Note and all accompanying documents into the REMIC trust comported with the Cutoff Date and Closing Date of the REMIC trust.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

This Affidavit of Lost Note is dated November 1, 2011, years after the Closing Date and thus, appears ineffective and in contravention of New York Estates, Powers & Trusts § 7.2-4 and is thus void; and

(7) Evidence that differentiates his "X" check marked blank under Paragraph (4)(b) as to specifically identify whether the Plaintiff "directly" or "indirectly" acquired ownership, in light of the alleged contravention of New York trust law.

There also appears to be another unrecorded Assignment of Mortgage from the previous case that appears to be different from the original Assignment proffered by Robert S. Kahane, Esq.   The unrecorded Assignment is technically of no force and affect given the recorded Assignments, but appears to be another attorney-manufactured document in an effort to rack up more legal fees for document preparation.   Since this unrecorded Assignment of Mortgage was located in the Case File, it bears further scrutiny, to wit:

(1) The document purports to convey ONLY THE MORTGAGE AND NOT THE NOTE from MERS as nominee for the defunct lender (executed on May 24, 2011) to the REMIC trust; thus ignoring the most recently, electronically-filed Assignment on April 5, 2013 (which is now suspect for wire fraud under 18 USC 1343);

(2) Andrew Fuerstenberger claims to be an Assistant Secretary of MERS, but the line above where he allegedly affixed his scribbled signature (a marker of robosigning) does not say, MERS "as nomimee for", it simply says Mortgage Electronic Registration Systems, Inc.;

(3) The document is notarized by Tammy M. Hansen, a Florida Notary (DD 925072) who acknowledged the signor's scribbled signature claiming an "authorized capacity" existed within the notarial execution; and

(4) Despite the fact the document was never recorded, the intent was clear that Kahane & Associates made sure it was part of the case file so the Court would see it.

That being stated, the second Assignment of Mortgage was executed by Ocwen Loan Servicing, LLC employees under the apparent direction of Goldman Sachs and filed for record just prior to the filing of the Motion for Substitution of Party Plaintiff (to Goldman's entity, MTGLQ Investors, LP).

Kahane attorney Clive M. Ryan (FBN 388955) then attached the manufactured mortgage (self-assignment) as Exhibit A.  This is another indication of suspect fraud on the Court and perjury in the land records under Florida Criminal Code § 817.535, in addition to multiple actors creating the assignment in apparent violation of Florida RICO statutes.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Hon. Jeffords Miller signed a Final Judgment of Foreclosure (in light of all of the suspect issues discussed herein) on February 3, 2014, which brings this and the previous action, which relied on the same suspect Assignment of Mortgage issued in 2008, which made every other Assignment of Mortgage suspect thereafter (for manufacturing for the purposes of recordation in the land records with the intent to take the property using false and misrepresentative information under Florida Criminal Code § 817.535.

The Certificate of Title was issued and recorded on 04-03-2014 as CFN#2014046710. The property was then titled in the name of Goldman's entity, MTGLQ Investors, LP. Every attorney involved in this case is also subject to Florida Bar Disciplinary Action or Disbarment if criminal charges are proven.

**Case No. 86:** *The Bank of New York Mellon kA The Bank of New York, not in its Individual Capacity but Solely as Trustee for the Benefit of the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-21 v. Nancy B. Merced et al (2012 CA 3122 MF)*

This case was filed by Udren Law Offices, P.C. by and through its attorney Courtney Jared Bannan (FBN 703931) on July 5, 2012, who also filed the Notice of Lis Pendens on 07-05-2012 by presentment as CFN#2012099631. The Complaint contained the MERS-originated Mortgage, executed in favor of Centric Mortgage (a Florida corporation, which does not appear to have a registration with the Department of State in that name). The Complaint contained the Note, which appears to have been dated 9-18-06; however, there appears to be plenty of room in which to affix an endorsement stamp, yet none are affixed here per UCC 3-302(2). Instead, there is an attached "Allonge to Promissory Note", which contains an undated restrictive endorsement to Countrywide Bank, N.A.

Conveniently, below what appears to be a manufactured attempt at assigning the Note to Countrywide Bank, N.A. are two endorsement stamps (in the possession of ReconTrust Company, N.A., according to Michele Sjolander, whose deposition is made a part of this report); one endorsed from Countrywide Bank, N.A. to Countrywide Home Loans, Inc. and the second endorsement-in-blank is Solander's stamp from Countrywide HomeLoans, Inc. to (blank).

**There are multiple issues with this "Allonge" and the conveyances thereto, to wit:**

**(1) The Closing Date of the Trust REMIC is November 30, 2006;**

**(2) The Depositor is required to deliver the Note to the pool before the Closing Date;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) There is nothing in the Complaint to indicate that an effective transfer occurred;**

**(4) Neither Laurie Meder nor Michele Sjolander probably knew who affixed the indorsement stamps containing their signatures and when they were affixed and thus, the undated endorsements do not prove effective transfer to the Trust REMIC, in contravention of New York Estates, Powers & Trust § 7-2.4.**

Despite the fact the Complaint appeared to be verified by Danielle Smith, who claims to be an Assistant Vice President of Bank of America, N.A. as servicing agent for the trust, Bank of America is NOT the Plaintiff here; thus, Smith's Verification appears to fail because she does not have actual personal knowledge of the facts to which she attests but rather relies on the input of others to establish her facts (hearsay upon hearsay testimony).

Further, in the real property records of Osceola County, Florida, there  appears to be two (2) closely-recorded Assignments of Mortgage, as shown below.  The Udren Law Firm and its attorney appear to rely on these Assignments to give their Complaint credibility.

**CFN#2011172914, electronically recorded on 12-15-2011**
**Signors: Tina LeRaybaud, Jeanine Abramoff, signing under penalty of perjury under California law that they are Assistant Secretaries of MERS as nominee for Centric Mortgage, when in fact, Bank of America, N.A. had already subsumed BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP which was formerly owned by Countrywide Ban, N.A., which owned ReconTrust Company, N.A. and thus, these two employees worked for Bank of America, N.A. or one of its subsidiaries.**
**Notary: Dee Ann Westfall Cortes (known Bank of America robo-notary; California Notary Commission Expired on 07-01-2012).**
**Witnesses: None Listed**
**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) There is an area on Page 2 of 3 of the recorded Assignment that declares: "I CERTIFY that the correct address of the within-named Assignee is: C/O BAC Home Loans Servicing, LP AT 16001 North Dallas Parkway, Addison, TX 75006".  The area below it was scratched out in favor of an attached Page 3;**

**(2) Multiple pages utilizing a general notary form is a marker of document manufacturing;**

**(3) The Assignment purports to assign the Mortgage only and NOT the Note;**

**(4) MERS doesn't have an interest in the Note; thus, only the Mortgage could be assigned to Countrywide Bank, N.A.;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(5) Centric Mortgage was most likely the Borrower on the Warehouse Lender Agreement wherein MERSCORP, Inc. was the Electronic Agent; thus, it is unknown how many times the Merced loan was sold before the couple signed the Note and Mortgage at the closing table;

(6) Because Countrywide Bank, N.A. was already subsumed into Bank of America, N.A., this Assignment appears to be a self-assignment type of paper shuffle among the remnants of Bank of America, N.A. in an attempt to make it look like an official transfer happened.  These "Assignments" should have occurred shortly after October 9, 2006 and not over five (5) years later; and

(7) After recording, Udren Law Offices, P.C. in Cherry Hill, NJ is the designated receiver of the recorded document.  This would appear to indicate that Udren, in conjunction with Bank of America, N.A., coordinated the effort to manufacture the Assignment of Mortgage for the purposes of foreclosure.

The foregoing Assignment then appears to contain false and misrepresentative statements, recorded for the purpose of depriving the owners of real property (Merced), probable cause for violation of Florida Criminal Code § 817.535.  Due to the fact that it appears multiple actors were involved in the production of the Assignment of Mortgage, there is probable cause to believe that Florida RICO statutes may also be at issue.

CFN#2011176693, electronically recorded on 12-21-2011
Signors: Kari Goblin and Regina Flynt, this time signing the Page 2 that the California notary (Cortes) scratched out on the previous Assignment (shown above; another suspect marker of document manufacturing), attesting that they are both Assistant Vice Presidents of Countrywide Bank, N.A., when they signed the document on August 20, 2011. Then, someone wrote in the attempted successions of merger in handwriting.

Unfortunately, this attempt at explaining the mergers appears to misrepresent the facts because "formerly known as" ("fka") designations apply to a scenario when one bank subsumes another:

(1) On Monday, April 27, 2009, Countrywide Bank, FSB was subsumed into Bank of America, N.A.;

(2) Countrywide Bank, FSB was formerly known as Countrywide Bank, N.A.; however, Bank of America did not merge with Countrywide Bank, N.A. as the handwriting indicates, it acquired Countrywide Bank, FSB; thus, the language is false and misrepresentative of the real facts.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Whatever the case, it appears that the second Assignment of Mortgage attempts to tie the Assignment from Centric Mortgage to Countrywide Bank, N.A. to Countrywide Home Loans, Inc. so that it matches the chain of custody of the Note shown on the Exhibit proffered by Udren Law.  It further appears that Udren Law may have been involved in the structuring of the Assignments so it would fit with the "manufactured explanation" of events. However, there is still nothing shown to indicate how the trust receive a timely transfer of the Note and Mortgage without violating New York Trust Law.
Notary: Lasena Harvill (known Bank of America robo-notary; Texas Notary Commission still active until 05-25-2015).
Witnesses: None Listed

There are multiple issues with this Assignment of Mortgage, to wit:

(1) This recorded Assignment utilizes only two of the three pages that were utilized in the other Assignment, which declares:

"I CERTIFY that the correct address of the within-named Assignee is: C/O BAC Home Loans Servicing, LP AT 16001 North Dallas Parkway, Addison, TX 75006";

(2) The notarial execution is misrepresentative and false because it does NOT state specifically which "Board of Directors" gave Goblin and Flynt authority to sign as Assistant Vice Presidents (there are so many of them listed, and Countrywide Bank, N.A. is the first heading shown);

(3) Because Countrywide Bank, N.A. was already subsumed into Bank of America, N.A., this Assignment appears to be a self-assignment type of paper shuffle among the remnants of Bank of America, N.A. in an attempt to make it look like an official transfer happened.  These "Assignments" should have occurred shortly after October 9, 2006 and not over five (5) years later; and

(4) After recording, Udren Law Offices, P.C. in Cherry Hill, NJ is the designated receiver of the recorded document.  This would appear to indicate that Udren, in conjunction with Bank of America, N.A., coordinated the effort to manufacture the Assignment of Mortgage for the purposes of foreclosure.

The foregoing Assignment then appears to contain false and misrepresentative statements, recorded for the purpose of depriving the owners of real property (Merced), probable cause for violation of Florida Criminal Code § 817.535.  Due to the fact that it appears multiple actors were involved in the production of the Assignment of Mortgage, there is probable cause to believe that Florida RICO statutes may also be at issue.  Prior to trial, Sherry J. Braunstein FBN 95530) filed a Notice of Dismissal (09/05/2013) and the case was closed.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 87:** *BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP v. Jose R. & Celina Martinez et al* **(2009 CA 7941 MF and 2013 CA 1921 MF)**

**CASE NOTES: There are actually two cases discussed within this Report as the Party Plaintiff changed and refiled suit to foreclose.  There are two suspect Assignments of Mortgage involved in the 2009 case and two suspect Assignments of Mortgage involved in the 2013 case (involving the second mortgage loan).**

**This case becomes more confusing because it appears that there are two first mortgages in play; however, it appears that the first MERS-originated Mortgage (CFN#2006200116) was allegedly released on 03-27-2007 by CFN#2007061093.  However, even the Satisfaction in question appears to have been manufactured by ReconTrust Company, N.A.'s employees in Tempe, Arizona.**

**It further becomes necessary to comprehend that one MERS-originated Mortgage was replaced with another MERS-originated Mortgage, which the Examiner believes creates two (2) independent scenarios wherein title is potentially clouded to the property by the Satisfied First Mortgage.**

**Despite the claim of Lost Note, a copy of the alleged Note was attached, containing no endorsements to anyone.  The Complaint was not verified by a representative of the Party Plaintiff.  The following Assignment was recorded in the land records post-filing of the case. This was the first of two assignments filed in connection with a mortgage foreclosure case against Jose and Celina Martinez.  This Assignment was Stern-manufactured and was recorded nearly three (3) months AFTER the Complaint was filed (July 21, 2009) and the Notice of Lis Pendens was filed (CFN#2009118456 on 07-28-2009) by Amoy Allison Montaque (FBN 64392; inactive) for Daphne B. Tako (FBN 51621) for the Stern Law Firm.**

**CFN#2009166551, recorded by presentment on 10-16-2009**
**Signor: Kimberly Dawson, who claims to be Vice President of MERS as a standalone Assignor, attempting assignment of BOTH the Mortgage and Note to BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP in what appears to be a self-assignment using a former MERS-related Ocala, Florida mailing address.**
**Notary: Azfar Siddiqui (Texas Notary Commission Expired 11-16-2010)**
**Witnesses: Gwendylon Spencer, Shadondra Ogati**
**All parties executing this document are Bank of America, N.A. employees (working for BAC Home Loans Servicing, LP);  MERS cannot convey something it does not own, namely, the Note; thus, this Assignment contains false and misrepresentative information, created by Stern's law firm for the purpose of giving BAC Home Loans Servicing, LP standing to foreclose on Jose and Celina Martinez's property.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

An Entry of Default was filed in the Court on March 4, 2010 and Judge Waller signed the Final Judgment of Foreclosure on May 27, 2010.  Following a letter to the Court from the Stern Law Firm to reschedule the foreclosure sale (August 6, 2010), Stern attorney Agnes Mombrun (FBN 77001) filed a Motion to Dismiss the Case (October 18, 2012) and Discharge the Lis Pendens, Withdraw the Judgment and Return the Original Loan Documents. The following Assignment of Mortgage was electronically recorded post-foreclosure dismissal:

**CFN#2013014850, electronically recorded on 01-28-2013**
**This appears to bring the case regarding the real property within the 5-year statute of limitations for criminal prosecution of alleged violations under Florida Criminal Code § 817.535 and the Florida RICO statutes for perjury.**
**Signor: Wayne Choe (known Bank of America employee and known robosignor), attempting to assign the note and mortgage (which MERS could not assign the Note the first time) to Nationstar Mortgage, LLC, to give it standing so it could foreclose on the Martinez property in the second foreclosure case, which follows the end of this case.**
**Notary: Cynthia R. Goldbeck (California Notary Commission No. 1984725; expires 08-08-2016); executed on 11/07/2012.**
**Witnesses: None Listed**
**Issues: The document was prepared by Margaret Magallan (Bank of America employee). It appears that Bank of America, N.A. is using the old BAC Home Loans Servicing, LP Simi Valley, California address on this Assignment.  The notarial execution is undelineated and the signor's signature is scribbled; a marker of robosigning.   In order for this Assignment of the Mortgage and Note to actually work, the original Assignment has to be valid. If the previous Assignment is invalid, this Assignment too, cannot operate as intended.**

It becomes necessary to predicate the second foreclosure action with the relevant facts within the first foreclosure action so one can fully understand the magnitude of the suspect document manufacturing that appears to be going on here.  There is a second MERS-originated Mortgage also operating in the property owner's chain of title.  To date, there is no indication that despite the second attempt at foreclosure on the first MERS-originated Mortgage that the Second Mortgage was ever released, but instead appears to have been part of a feeble attempt to convey it into a closed REMIC trust (in an apparent effort to write off the Note as a loss), as discussed below.

**It appears the second case was filed with the Court on May 9, 2013, as Case No. 2013 CA 1921 MF.   It appears that Darla Grondin (FBN 99421) of the Udren Law Offices also caused to be filed the Notice of Lis Pendens on 05-30-2013 as CFN#2013086006.**

**Final Judgment of Foreclosure was issued on June 2, 2014 by Judge Miller and caused to be filed for record on 06-06-2014 as CFN#20140798977.  Even though the principal balance was listed as $343,905.04, the property was sold on July 14, 2014 to Gorilla Capital of Florida 101 LLC for $171,800.00, which left a deficiency (potentially discharged by unknown creditors hidden within the MERS® System) of $172,104.04.**

**302 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Now it becomes necessary to discuss where the Second MERS-originated Mortgage went because this case is not really over until title can be cleared and a Certificate of Title issued.** The second MERS-originated Mortgage appears to have been filed for record on 03-08-2007 as CFN#2007048149, executed by the Defendants in favor of Countrywide Bank, N.A. in the amount of $64,500 (which appears to have been part of the "80-20" subprime loan by this lender. It is unknown what endorsements appear on the last page of this Note; however, the path the two referenced Assignments took appears to have included the Note with the Mortgage being assigned. The assignments are explained as follows:

**CFN#2012104413, electronically recorded on 07-16-2012**
**Document Prepared by: Diana DeAvila (known Bank of America employee)**
**Signers: Mercedes Judilla, Srbui Muradyan (both known Bank of America robosigner-employees), signing as Assistant Secretaries of MERS as a standalone Assignor, to a Countrywide Home Equity Loan Assets 2007-S3 closed REMIC trust, as Assignee.**
**Notary: Jovida Alvarez Diaz (California Notary Commission expired 01-20-2014)**
**Witnesses: Luis Roldan, Alice Rowe (also known Bank of America robosigner-employees, operating as part of the signing team of the bank's known robosigners).**

**This document was signed under Penalty of Perjury under the laws of California.  There is sufficient belief that (due to the markers involved) this document was manufactured in an effort to hide the real party in interest in the MERS® System) at best there is probable cause for violations of Florida's RICO statute for perjury due to the apparent false and misrepresentative information listed below:**

 **(1) MERS cannot convey the Note as it does not have an interest in the Note;**

 **(2) The servicer (Bank of America) is directing its employees to prepare and misrepresent the name and address of the true "Lender" who currently owns the Note into a trust REMIC that they knew or should have known had a Closing Date of March 30, 2007, over five (5) years earlier;**

 **(3) The employees signing this document have no apparent idea what exactly their authorized capacities really are, given the nature of WITNESS F's statements under oath in a deposition taken in California in November of 2014;**

 **(4) The Assignor's address is really that of Metro Detective Agency in Danville, Illnois; the Assignee's address is that of the Servicer (Bank of America, N.A.), who has been controlling all of the loan activity while hiding behind the MERS® System; and**

 **(5) There are numerous markers of robosigning and document manufacturing (e.g., scribbled signatures, use of rubber stamps to indicate names, titles and dates).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The following Assignment of Mortgage was manufactured and recorded during the pendency of the case at bar in an apparent attempt to give Nationstar Mortgage LLC (the alleged Plaintiff in this case), the Note and Mortgage in an attempt to create standing, to wit:

CFN#2013178510, recorded by presentment on 11-15-2013
Document Prepared by: Marcus Jones (alleged Bank of America, N.A. employee)
Signers: Sharon Derrough, Shequilar Williams, claiming to be Assistant Vice Presidents of Bank of America, N.A. as Assignor, attempting to transfer the note and mortgage to Nationstar Mortgage LLC as Assignee.
Notary: Laslo Reed (California Notary Commission expired on 09-01-2014)
Witnesses: Janelle A. Mcbeath, Zuasaday Anzmandi (alleged Bank of America employees)
It is also interesting to note that once recorded, these documents were sent to CoreLogic's document facility in Westlake, Texas.  There are however, serious issues with this Assignment, to wit:

> (1) This appears to give the Servicer questionable authority to be able to transfer a note and mortgage out of a closed REMIC trust that never got it in the first place to a completely different entity using its own credentials;

> (2) If MERS didn't own the Note during the transfer, then Bank of America, as the Servicer couldn't have transferred it again unless Bank of America had possession of it all along, which is unknown; thus misrepresentative as to its ability to convey something out of a REMIC trust without violating IRS and Securities Laws; and

> (3) The employees signing this document have no apparent idea what exactly their authorized capacities really are, given the nature of WITNESS F's statements under oath in a deposition taken in California in November of 2014;

> (4) There are numerous markers of robosigning and document manufacturing (e.g., scribbled signatures, use of rubber stamps to indicate names, titles and dates).

The use of the existing assignments to give Nationstar Mortgage, LLC standing would then contradict how its attorneys could sue the trust as a Defendant in the action and then (coincidentally) the trust all of a sudden assigns everything to the Plaintiff?  This activity is suspect for fraud on the court and violation of the Florida RICO statutes.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 88:** *Nationstar Mortgage, LLC v. Willie E. McLean et al*  (2011 CA 1736 MF)

This case appears to have been handled entirely by the Law Offices of Daniel C. Consuegra and their representative attorney Joshua D. Donnelly (FBN 64788), who filed the initial Complaint and Notice of Lis Pendens, recorded on 06-15-2011 as CFN#2011081100.  It further appears that the Answers filed by the Defendant and his spouse (Juanita) were done pro se and do not conform to proper answers (i.e., responding that the Note was not recorded in the public records, "so the Plaintiff lied.")  Promissory Notes are not recorded in the public records generally; the Examiner has seen some Notes recorded with privately-held financing contracts.

Further, the Defendant took apparent issue with the Court for spending less than two minutes on the case without reviewing the Defendant's submission.  The Defendant further appeared to list several case citations, most of which did not appear to have any foundational basis for an appropriate answer. This is problematic generally for pro se litigants.

There was one Assignment of Mortgage filed for public record relating to the MERS-originated Mortgage, executed by the Defendants in favor of Sunburst Mortgage, Inc., which was filed for record on 07-20-2007 as CFN#2007135351.  A copy of the Note was also attached, showing an indorsement-in-blank stamped by Deborah P. Ellis of Suntrust Mortgage, Inc. (not within the original Complaint, but in the Notice of Filing on September 21, 2011).  The endorsement however, is undated, so date of effective transfer is unknown.

**CFN#2010193158, recorded by presentment on 12-28-2010**
**Signor: Bryan Bly (known deposed robosigner employed by Nationwide Title Clearing ["NTC"] in Palm Harbor, Florida), signing as Vice President of MERS as nominee for Suntrust Mortgage, Inc., attempting to assign BOTH the Mortgage and the Note to Nationstar Mortgage, LLC in Lewisville, Texas.   All addresses in the Assignment, dated 12/06/2010, appear to comport to the known addresses of the entities described herein.**
**Notary: Crystal Moore (Florida Notary Commission No. DD 927242; expired 09-23-2013; it is unknown whether this commission was renewed).**
**Witnesses: Mary D. Sarmiento, Amber Goble (alleged NTC employees)**
**Issues: MERS cannot transfer what it does NOT have an interest in, which is the Note. This does not perfectly comport to what is stated in the Complaint, which is misrepresentative of the facts contained in the Assignment, which is submitted as evidence of record, to wit:**

> **(1) In Paragraph 5 of the Complaint, it states that Federal National Mortgage Association ("Fannie Mae") is the owner of the Note;**

> **(2) However, in Paragraph 4 of the Complaint, it states that "Plaintiff (Nationstar) holds the mortgage by virtue of an Assignment, a copy of which is attached hereto as Exhibit "C";**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) There does not appear to be enough evidence that Nationstar has been authorized to bring this action and there is nothing to demonstrate effective transfer to Fannie Mae, who guarantees mortgages, but more than likely, may have placed the Defendants' loan into one of its own trust REMICs; and**

**(4) At least 3 NTC's signors have been deposed.  Their videos are included on the USB flash drive included with this report.  Whether knowledge or authorized capacity is at issue does not make up for the fact that these documents are being manufactured by third parties who have no interest in the note or mortgage and stating facts within these documents that are misrepresentative, especially as to the alleged capacity to act as a MERS Vice President, given the absence of any proof of Board Resolution giving William Hultman the right to appoint officers to do the bidding of the MERSCORP members, acting under apparent color of law. The scribbled signatures on the document are markers of robosigning.**

Thus, Nationstar may hold the Note, but it may not have the rights to enforce it if it cannot demonstrate how the owner actually acquired the Note in the first place.  An undated, indorsement-in-blank does not prove effective transfer of the Note.  It further appears that the Defendant retained counsel and the Consuegra Law Firm filed an amended Complaint. This Complaint was again verified by an Assistant Secretary for the Servicer and not the owner of the Note.

Consuegra's Benjamin Ewing (FBN 62478) filed the Motion.  Consuegra's David J. Grauman (FBN 86765) filed an Answer to the Defendant's Affirmative Defenses.  Grauman again attached the Note, Mortgage and Assignment to his filing.  Jacquelyn Beik (FBN 95519) filed the Certificate of Service of Order Setting the Pre-Trial Conference and Pre-Trial Statement and Plaintiff's Witness List.  A Final Summary Judgment of Foreclosure was signed by Judge Miller on October 30, 2013 (in Chambers).  Consuegra's Mark N. O'Grady (FBN 0746991) filed an Assignment of Bid on 02-21-2014 showing that Nationstar Mortgage, LLC assigned its bid to Fannie Mae.  Certificate of Title was issued to Fannie Mae; however, the mailing address is the same mailing address as Nationstar Mortgage, LLC.   Certificate of Title was recorded on 03-14-2014 as CFN#2014035768.

It appears that the true issues here have to do with the alleged Assignment; whether Bryan Bly actually physically signed this document in front of Crystal Moore; whether Crystal Moore kept a notary journal recording the acknowledgement as required under Florida Statutes Chapter 117; and whether Bly had actual authority vested in him to sign as Vice President of MERS, given the lack of proof submitted at any time during the existence of MERS and its parent (since January 1, 1999).   If it is found that this document contains false and fraudulent misrepresentative information, which the Examiner believes is suspect and constitutes probable cause, then the entire foreclosure was a sham and potential RICO violations exist under the Florida statutes, in addition to unauthorized practice of law, since Erika Lance, the Assignment's preparer, is NOT an attorney.  It is highly likely that no attorney previewed this document prior to its recordation.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 89:** *The Bank of New York Mellon FKA the Bank of New York, as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2007-10 v. Teodulio Misael Martinez et al* **(2013 CA 0037 MF)**

This Complaint appears to have been filed on January 3, 2013 by the Gilbert Garcia Group's Carol A. Lawson (FBN 132675), allegedly verified byBank of America's Assistant Vice President (Lindsey Ann Vaught), who appears to be representing the trust REMIC as its Servicer. Lawson also appears to have caused to be recorded a Notice of Lis Pendens on 01-15-2013 as CFN#20130008195.   There are three (3) recorded Assignments of Mortgage that will be addressed in this case review, along with the *Bank of America v. Linda Nash* case regarding the standing of the Lender.

**CFN#2008036403, recorded by presentment on 02-21-2008**
**Document Prepared by: (unknown party; however, it appears that its intended use was for a California assignment by Countrywide Home Loans, Inc., which ended up getting transferred to its Plano, Texas headquarters)**
**Signer: M. Kelly Michie, who claims to be a 1st Vice President of MERS (there is no such title accorded by MERS to its robosigners), as nominee for Countrywide Home Loans, Inc. (this Assignment is missing part of the Lender title; dba America's Wholesale Lender).**
**Attest: Micall Bachman, Vice President (of MERS?; unknown)**
**Witnesses: Joe Butler, Melissa Flanagan (known notary for Countrywide/Bank of America)**

**There are multiple issues with this Assignment, to wit:**

**(1) MERS cannot assign the Note.  It does not have an interest in the Note;**

**(2) Countrywide was still in existence; however, America's Wholesale Lender was not registered to do business in the State of Florida; according to the *Nash* ruling, the mortgage and note were invalid;**

**(3) The Closing Date of the trust was June 29, 2007; thus, there are issues with contravention of New York trust law, which would render the transaction void;**

**(4) There are numerous markers of robosigning and document manufacturing (e.g., scribbled signatures, use of rubber stamps for names and titles); and**

**(5) There is no address for the Assignor and the address for the Assignee is that of the Assignor, who appears to be conveying the mortgage and note for self-benefit as the Servicer.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2008036403, recorded by presentment on 02-21-2008**
**Document Prepared by: M. E. Wileman (officer of Orion Financial Group, Inc., third-party independent document manufacturing plant)**
**Signer: M. E. Wileman, who claims to be an Assistant Secretary of MERS, as nominee for Countrywide Home Loans, Inc. dba America's Wholesale Lender.**
**Notary: C. Lafferty (whose Texas notary commission appears to be still valid)**
**Witnesses: None Listed**

**There are multiple issues with this Assignment, to wit:**

**(1) MERS cannot assign the Note. It does not have an interest in the Note; thus, it is unknown exactly WHAT was actually transferred in this Assignment;**

**(2) Countrywide was no longer in existence at the time this document was executed;**

**(3) Still, America's Wholesale Lender was not registered to do business in the State of Florida; according to the *Nash* ruling, the mortgage and note were invalid;**

**(4) The Closing Date of the trust was still June 29, 2007; thus, there are issues with contravention of New York trust law, which would render the transaction void;**

**(5) There are numerous markers of robosigning and document manufacturing (e.g., bold-faced type interfacing, mirrored signatures);**

**(6) The Assignor's address appears to be misrepresented as that of MERS's post office box and the Assignee's address appears to be that of Specialized Loan Servicing in Colorado, who now appears to be the new Servicer;**

**(7) It appears that only the Mortgage was referenced herein. The previously-noted Assignment left suspect issues in the wake of this Assignment, which appears to leave more issues in its wake; and**

**(8) This document appears to falsely state (whether scrivener's error or otherwise) the Book number of the original Mortgage as "06509" when in fact the Book number should have read "03509" (there is no Book numbering sequence that high as of yet in the real property records of Osceola County, Florida).**

**CFN#2008036403, recorded by presentment on 02-21-2008**
**Document Prepared by: Mark Hernandez (FBN 69051) of the Quintairos, Prieto, Wood & Boyer, P.A. law firm (255 S Orange Ave., Ste. 900, Orlando, FL 32801-3454)**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Signer:** Ami Marja McKernan, who claims to be an Assistant Secretary of MERS, as nominee for Countrywide Home Loans, Inc. dba America's Wholesale Lender.
**Notary:** Dedra Kay Dee (Colorado notary commission appears active until 01-30-2018)
**Witnesses:** Sarah A. Mares, Jon Selman (alleged employees of Specialized Loan Servicing)

**There are multiple issues with this Assignment, to wit:**

(1) Given the issues in the previous assignments (the first involving the Note), it is unknown exactly WHAT was actually transferred in this Assignment;

(2) Still, America's Wholesale Lender was not registered to do business in the State of Florida; according to the *Nash* ruling, the mortgage and note were invalid;

(3) The Closing Date of the trust was still June 29, 2007; thus, there are issues with contravention of New York trust law, which would render the transaction void;

(4) There are numerous markers of document manufacturing (e.g., bold-faced type interfacing, rubber-stamped names, titles and dates);

(5) The Assignor's address appears to be misrepresented as that of MERS's post office box and the Assignee's address appears to be that of Specialized Loan Servicing in Colorado, who still appears to be the Servicer; and

(6) It appears that only the Mortgage was referenced herein.  The previously-noted Assignments leave suspect issues in the wake of this Assignment, which appears to leave more issues in its wake, especially regarding the authority of the Servicer to act for the actual Lender in interest.

The alleged Note proffered with the Complaint appears "stretched" across the page, as if manipulated by computer.  The indorsement-in-blank signature of Michele Sjolander does not appear to be hers by comparison with other known indorsement signatures because of being physically manipulated by computer.  Further, she has no idea who at ReconTrust Company, N.A. affixed the indorsement stamp and thus, has no personal knowledge of the actual transfer of the Note.

Further, besides the fact there are issues with the lack of Florida DBA registration of America's Wholesale Lender, the indorsement-in-blank is undated and thus does not prove effective date of transfer.

Further, the Affidavit provided by an alleged "Assistant Vice President" of Bank of America, N.A. fails to state HOW the Affiant came to have personal knowledge of the facts she is attesting to.  She appears to rely on the knowledge of others and not of her own.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Because of the fact the Note is alleged to have been securitized, there are no third-party payments showing as being applied to the principal balance, considering the credit default swaps and other default insurance policies taken out by the trust REMIC. Thus, under penalty of perjury, the Affidavit fails. Further, it is suspect as to the charges shown on the statement as to "Inspection" fees charged of $15.00. Further examination by the grand jury will probably reveal that these charges were automatically assessed by a computer software program and did not in fact, actually occur.

Another unreviewed previously-filed case (2007 CA 6081 MF) has been provided for reference only. There appear to be probable cause for multiple violations of Florida Criminal Code § 817.535 due to the number of apparently fraudulent recorded Assignments all claiming to be "one better than the other", manufactured and utilized for the purposes of proving standing with the intent to deprive the homeowners of their property. Because multiple parties acted in concert to do so, probable cause exists for violation of Florida RICO statutes for perjury; fraud on the Court, unauthorized practice of law ("UPL") and violation of Florida Bar Rules for failure of the attorney to supervise non-lawyers herein.

**Case No. 90:** *Federal National Mortgage Association v. Marie Gabriel et al* **(2011 CA 2003 MF)**

**There are two (2) recorded Assignments that precede the filing of this lawsuit and one (1) recorded Assignment that appears to have been filed AFTER the lawsuit was commenced and BEFORE the lawsuit was dismissed. These will be discussed in part prior to the review summary of this case in the order of recordation.**

**CFN#2010025336, recorded by presentment on 02-22-2010**
**Document prepared by: Shapiro & Fishman, LLP**
**Signers: Stacy E. Spohn, Vice President and Whitney K. Cook, Assistant Secretary (BOTH officers of JPMorgan Chase Bank, N.A. assigning both the Mortgage and Note to Chase Home Finance, LLC (JPMorgan Chase Bank, N.A. was the originating lender).**
**Notary: Wenona S. Church (Ohio Notary Commission Expires 09-26-2012)**
**Witnesses: None**
**There are multiple issues with this Assignment, to wit:**

> **(1) Both signers are known robosigners for Chase (scribbled signatures);**

> **(2) In the notarial execution, only Spohn's name is listed as being acknowledged;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(3) The addresses shown for BOTH Assignor and Assignee is c/o Shapiro & Fishman's Tampa, Florida address;

(4) The deficient notarial execution make this Assignment of Mortgage suspect and contains apparent document manufacturing and robosigning markers; and

(5) Because Shapiro & Fishman prepared the Assignment, Spohn and Cook do not have actual personal knowledge of the contents to which they are attesting are in fact accurate.

This document appears to contain false and misrepresentative information.

CFN#2010139363, recorded by presentment on 09-23-2010
Document prepared by: Jessica Fretwell, Nationwide Title Clearing ("NTC")
Signer: Crystal Moore (also a Florida notary and NTC employee), signing as Vice President of Chase Home Finance, LLC, in an attempt to assign the Mortgage and Note to Federal National Mortgage Association ("Fannie Mae") in Dallas, Texas (Fannie Mae's Midwest Regional Office).
Notary: Christopher Jones (Florida Notary Commission No. DD 811076; expired)
Witnesses: Alexandra Kane, Dhurata Doko
There are multiple issues with this Assignment, to wit:

(1) All signers are known robosigners for NTC (scribbled signatures);

(2) Notary Jones declares that he knows Crystal Moore to be the Vice President of Chase Home Finance, LLC when in fact, they work together as NTC employees in Palm Harbor, Florida;

(3) Moore claims her address is the same as Chase's Monroe, Louisiana document plant when in fact her address is in Palm Harbor, Florida;

(4) Jessica Fretwell prepared this document; therefore, Moore and the other signers to this document had no personal knowledge as to the facts stated therein but signed it anyway because they are paid to scribble their signatures onto documents whether they are factual or not; and

(5) The Investor on the Assignment is shown as "FNMA2", which may indicate that Fannie Mae claims to be involved in the loan BEFORE it was assigned to them.

This document appears to contain false and misrepresentative information.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**After these two Assignments of Mortgage were recorded, the Complaint to Foreclose was filed, which relied on these two (2) Assignments to validate its claim.  The third Assignment of Mortgage was recorded during the pendency of this litigation.**

**CFN#2012083719, recorded by presentment on 06-01-2012
Document prepared by: Erika Lance, Nationwide Title Clearing
Signer: Carl O. Collins, who claims to be Vice President as attorney-in-fact for Fannie Mae, attempts to assign the mortgage back to JPMorgan Chase Bank, N.A. ("Chase")
Notary: Helen Tubbs (Louisiana Notary Commission ID# 40392; lifetime commission)
Witnesses: Latoshia Brazil, Quadricca L. Williams (?)**

**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) Collins appears to be self-assigning ONLY the Mortgage back to Chase;**

**(2) There is no mention of the Note in the transfer and who actually owns it;**

**(3) The document was manufactured by a third party; thus, the signors, paid employees of Chase, dutifully did as they were told, whether the information contained on the document was accurate or not;**

**(4) The signor claims to be an attorney-in-fact for Fannie Mae, by Chase as Successor by Merger to Chase Home Finance LLC Successor by Merger to Chase Manhattan Mortgage Corporation, claiming that the LPOA was recorded on July 2, 1987 as 844 2799 870031449.  These figures do not specifically state what public record they apply to; and**

**(5) Chase Manhattan Mortgage Corporation was not listed as the originating Lender on the original Mortgage and Note; thus, their presence in this Assignment is suspect for third-party error in document manufacturing.**

There are 58 recorded Limited Powers of Attorney on file within the Osceola County, Florida Clerk's database, dating back to March of 1957, showing Federal National Mortgage Association as the Grantee.  Chase Home Mortgage Corporation (unrelated to any of the aforementioned entities) was listed as CFN#4300016104 (Book 793 at Page 601), recorded in December, 1985.  There are NO other Limited Powers of Attorney recorded in the real property records of Osceola County, Florida that validate the authority of the signer; thus, the document is false and misrepresentative and was relied upon during the pendency of the case with the intent to foreclose on the property, probable cause for violation of Florida Criminal Code §  817.535 and Florida RICO statutes.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The entire chain of recorded Assignments rely on each other to convey specific authority and information regarding the transfer of specific documents from one party to another.  At this juncture, it would appear that Fannie Mae, by admission on these documents, if they were to be believed, does NOT hold the Mortgage and thus did not have the right to enforce its terms and should not have been listed as the Plaintiff any longer in this case.   The verified Complaint and Notice of Lis Pendens was filed by Consuegra Law Firm attorney Jennifer A. Garner (FBN 89040).

**There are multiple issues with the Complaint, to wit:**

> **(1) The servicer's representative, Seterus, Inc. F/K/A IBM Lender Business Process Services, Inc. Foreclosure Specialist verified the complaint instead of a representa tive from Fannie Mae;**

> **(2) The Note within the original Complaint has no dated endorsements whatsoever below the Borrower's signature as required to prove effective transfer of the Note and Mortgage, which means, the only reliance is contained within the suspect Assignments of Mortgage filed for record;**

> **(3) Exhibits "C" and "D" within the Complaint demonstrate the reliance by counsel on the recorded Assignments of Mortgage, both manufactured, suspect documents, which now bring "intent" forward into the proceeding;**

> **(4) During the pendency of the proceeding, the third Assignment (of Assignment of only the Mortgage was demonstrated) was filed which creates issues as to whether Fannie Mae had standing to foreclose on the property; and**

> **(5) Due to the fact that an alleged Modification Agreement was entered into by the Defendant as the cause for the Complaint being dismissed, this raises further issues, to wit:**

> > **(a.) The Notice of Dismissal Without Prejudice and Cancellation of Lis Pendens (filed by Consuegra Law Firm attorney Aaron W. Saoud (FBN 96124) lists JPMorgan Chase Bank, N.A. as the Plaintiff;**

> > **(b.) There is nothing in the Court record wherein Mr. Saoud or Ms. Garner filed a Motion to Substitute the Party Plaintiff that was approved by the Court; and**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(c.) The suspect third Assignment filed during the pendency of the case, before the Settlement took place could be construed to mean that standing issue may have been present to keep Fannie Mae from authorizing Chase to conduct a loan modification because there is no POWER OF ATTORNEY recorded in the real property records of Osceola County, Florida giving any party, including the Defendant who is relying on the Plaintiff to have the real authority to negotiate a Loan Modification in the first place and there is nothing in the real property records of Osceola County, Florida to show that the Loan Modification was ever recorded to demonstrate who the parties were that entered into the transaction; thus,**

It is unknown as to who is now collecting money from the Defendant; whether they have the inherent right to collect it, or in the alternative, judging from the suspect document (the third recorded Assignment of Mortgage) whether there was intent to defraud the Defendant in the taking of her personal property (i.e., money, wages), probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes since there are multiple actors involved in these proceedings.

**Case No. 91:** *Green Tree Servicing, LLC v. Lydia Rodriguez et al*  (2012 CA 5510 MF)

**This case appears to center around two (2) suspect documents recorded by Nationwide Title Clearing ("NTC"), to wit:**

**CFN#2012084117, recorded by presentment on 06-01-2012**
**Document prepared by: Erika Lance, NTC employee (reference deposition exhibit herein)**
**Signer: Derrick White, who claims to be an Assistant Secretary of MERS as Nominee for then-defunct (subsumed into Bank of America, N.A.) Countrywide Bank, FSB. Derrick White is also an NTC employee; attempting to assign ONLY the Mortgage to Green Tree Servicing, LLC (c/o NTC in Palm Harbor, Florida)**
**Notary: Miranda Avila (Florida Notary Commission No. EE 019063; expired)**
**Witnesses: Debra Goyer, Shay Mossing**
**Issues: Scribbled signatures are a marker of robosigning.  Based on previous NTC employees' testimony, it is highly likely that Avila, as notary, did not physically witness the signature of Derrick White and further it is highly likely that her notary journal does not contain the acknowledgment transaction mandated by Florida Statutes.  Again MERS authority to sign is questionable.  Numerous markers of document manufacturing.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Complaint to Foreclose was commenced between the two recorded documents by Consuegra Law Firm attorney Benjamin A. Ewing (FBN 62478) who appears to have relied on the foregoing document to commence foreclosure proceedings.

The Complaint declares that Fannie Mae owns the Note, yet there is no restrictive endorsement to Fannie Mae on the Note proffered with the Complaint, just two endorsements most likely placed there by employees working at ReconTrust Company, N.A. (a subsidiary of Bank of America) and not by the signors themselves. Consuegra's Ewing also filed the Notice of Lis Pendens (CFN#2012162950).

After service of process was commenced, it appears that a short sale was negotiated or in the alternative, the property was sold.  Whether or not the proper party was paid however (at closing) is not known.  The case was settled and lis pendens discharged.

**CFN#2013158076, electronically recorded on 10-04-2013**
**Document prepared by: Erika Lance, NTC employee (reference deposition exhibit herein)**
**Signer: Kimberly Nance, who claims to be a Vice President of Green Tree Servicing, LLC, but in reality is also an NTC employee, which is claimed within the document.  After the document was recorded it was returned to Green Tree Servicing, LLC (c/o NTC in Palm Harbor, Florida).**
**Notary: Elizabeth A. Mustard (Florida Notary Commission No. EE 088429; still active)**
**Witnesses: Payson Gibson, Susan Schotsch (also NTC employees)**
**Issues: Scribbled signatures are a marker of robosigning.  Based on previous NTC employees' testimony, it is highly likely that Mustard, as notary, did not physically witness the signature of "Kim Nance" and further it is highly likely that her notary journal does not contain the acknowledgment transaction mandated by Florida Statutes.  Again, the previous Assignment creates suspect capacity/authority to sign as MERS authority, premises whether the proper party was paid on the sale of the property.  Numerous markers of document manufacturing.**

At best, there are potential issues with unauthorized practice of law, as Lance is not an attorney. If this document is found to contain fraudulent information, then at best there are RICO perjury issues potentially involved here.  The 2012 Assignment does contain misrepresentative information (as to Countrywide's address) and the use of MERS; thus, there are issues there to imply intent under Florida Criminal Code § 817.535.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 92:** *Green Tree Servicing, LLC v. Glaycon L. Oliveira et al* **(2012 CA 5113 MF)**

**The Complaint to Foreclose was commenced on 10-31-2012 by Consuegra Law Firm attorney Benjamin A. Ewing (FBN 62478), who also filed the Notice of Lis Pendens on 11-05-2012 as CFN#2012162659.**

**Ewing appears to be foreclosing on the first mortgage (there was a second mortgage loan also taken out, wherein an Assignment of Mortgage was issued; named as a Defendant in the action).**

**CFN#2012016627, electronically recorded on 02-06-2012**
**Document Prepared by: Diana DeAvila (known Bank of America, N.A. employee)**
**Signors: Bud Kamyabi, Luis Roldan (known robosignors; employees of Bank of America), signing as Assistant Secretaries of MERS as a sole Assignor of the Note and Mortgage, into a CWHEQ Revolving Home Equity Loan Trust 2007-C series REMIC trust, which had a Closing Date of March 30, 2007; thus, the transfer was void under New York trust law.**
**Notary: Desiree Carson (California Notary Commission #1873687; expired 12-19-2013)**
**Witnesses: Talisha Wallace, Srbuo Muradyan (also known Bank of America robosigners)**
**NOTES: The document was executed 02-02-2012 by Bank of America employees, who swore under penalty of perjury that they had "authorized capacities" to assign both the note and mortgage, even though MERS cannot assign the Note (as MERS doesn't own it).**
**Copies of the original mortgages were included with the file (not a complete court file); however, from the aspects of the Original Complaint, there were immediate recognizable issues, to wit:**

**(1) Both Mortgages were executed in favor of Countrywide KB Home Loans, a Countrywide Mortgage Ventures, LLC series; however, an entity search of the LLC with the California Secretary of State revealed some interesting data:**

| | |
|---|---|
| Entity Name: | COUNTRYWIDE MORTGAGE VENTURES, LLC |
| Entity Number: | 200131210079 |
| Date Filed: | 11/06/2001 |
| Status: | CANCELED |
| Jurisdiction: | DELAWARE |
| Entity Address: | 150 N COLLEGE ST NC1-028-17-06 |
| Entity City, State, Zip: | CHARLOTTE NC 28255 |
| Agent for Service of Process: | C T CORPORATION SYSTEM (C0168406) |
| Agent Address: | * |
| Agent City, State, Zip: | * |

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**How can this Countrywide Home Loans be listed as part of a series that was cancelled in November of 2001?;**

**(2) There is no Assignment of the first Mortgage to Green Tree Servicing, or any other entity giving it any kind of standing to foreclose on the property;**

**(3) The copy of the first mortgage Note has two endorsements on it, the first of which (undated) is smudged and purports to say what the loan document says as to the originating lender, supra (it appears ABOVE the Borrower's signature);**

**(4) The indorsement-in-blank is from Countrywide Home Loans, Inc. (blank and undated) is rubber stamped (as the first indorsement) by Michele Sjolander, who highly likely did not have knowledge that a ReconTrust Company, N.A. in alleged possession of her indorsement stamps affixed them to the document;**

**(5) It appears that Green Tree Servicing, LLC's Foreclosure Clerk (Tanisha Embry) alleges that Fannie Mae has "authorized" Green Tree to bring the action to foreclose yet there is nothing attached to the Complaint to prove that Fannie Mae owns the loan with the right to assign servicing duties to the Plaintiff;**

**(6) Plaintiff's counsel, who is alleged to be the "bailee" having the "original Note", appears to rely on the indorsement-in-blank as his "lottery ticket" to foreclose; and**

**(7) The business records claimed by the Foreclosure Clerk (who highly likely does NOT have actual, personal knowledge of how they were derived or where they came from), failed to attach copies of the records she claims the Borrower was provided Notice of and further, there is no proof attached to the Complaint that the Borrower was noticed of a default and that the Note was accelerated.**

**It further appears that (from online court records) that there is a short sale pending on the property (despite the Plaintiff's attorneys filing a Motion for Final Judgment). The fact that this scenario has presented itself would appear to indicate that the Plaintiff may not be communicating with Fannie Mae because the servicer and its attorney will make more money if they can foreclose on the property.**

**Apparently, the short sale was approved because the Plaintiff (through a third-party document manufacturer, NTC) filed a Satisfaction of Mortgage on the first mortgage loan:**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**CFN#2013199594, electronically recorded on 12-16-2013**
**Document Prepared by: Erika Lance (employed by Nationwide Title Clearing, "NTC")**
**Document Execution Date: 12-18-2013**
**Signor: Heather Navarro, who claims to be an Assistant Secretary of MERS as nominee for
the questionable "Lender", who according to the Florida Department of State, went inac-
tive in February of 2012, nearly two years BEFORE this Satisfaction was executed.**
**Notary: Tonya L. Tejera (Florida Notary Commission No. EE 849072; active until 02-2017)**
**Witnesses: Kristin Price, Mari Santiago-Rey (alleged NTC employees)**
**Issues: Numerous document manufacturing markers; claims of the signor having "re-
viewed the document and supporting documentation prior to signing", which is highly un-
likely; previous depositions appear to indicate that the notary does not "physically" witness
the signature of the signer (or the witnesses), and may not have the transaction recorded in
a notary journal.  The document does not contain the address of the Assignor and the re-
turn address is in c/o NTC in Palm Harbor, Florida (when the Plaintiff is in Arizona).**

**NOTE: Court files may have to be reviewed to determine if a cost bond was filed.  How can
MERS release something it does not own? (MERS will claim the Mortgage language gives
it the right; however, the capacity of the signor is at issue if the MERS signing authority is
void). Further, there is no recorded evidence of release of the second Mortgage, which still
appears to be a recorded lien against the property.**

**Case No. 93:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the
Certificateholders of CWABS, Inc., Asset-Backed Certificates, Series 2007-12 v.
DeJesus-Canas et al  (2013 CA 1524 MF)*

This case involves the erroneous merging of two cases involving the same property and will be
referred to in brief due to its voluntary dismissal due to that error.

It appears that the Consuegra Law Firm failed to check as to the status of existing litigation be-
fore its attorney, Brenda Jean (FBN 89812) filed this Verified Complaint and Notice of Lis Pen-
dens (CFN#2013067904, recorded by presentment on 04-29-2013) against the property owned
by Jean DeJesus-Canas.

**There is one (1) Assignment of Mortgage to be discussed due to its alleged fraudulent mis-
representation of the facts with the intent to deprive the owner of their property under
Florida Criminal Code § 817.535:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2011136217, recorded by presentment on 09-30-2011**
**Document Prepared by: Danilo Cuenca (alleged Bank of America employee)**
**Signors: Luis Roldan and Chester Lovings (both alleged Bank of America employees), both claiming to be Assistant Secretaries of MERS as a standalone Assignor.**
**Notary: Daisy Salvatierra (California Notary Commission # 1811192; expired)**
**Witnesses: Bud Kamyabi, Alice Rowe**

**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) All signors are known robosigners, signing under penalty of perjury under California law that they are acting in authorized capacities when there is nothing on this document that establishes such. Further, MERS cannot convey the Note as it does not own it;**

**(2) The Assignment purports to transfer BOTH the Mortgage and Note into a 2007-12 series REMIC trust whose Closing Date was August 13, 2007, nearly four (4) years AFTER the trust could legally accept Assignment of a Mortgage and Note; thus contravening New York trust law at §7-2.4, which is void;**

**(3) There are numerous markers of document manufacturing and robosigning, including but not limited to the varied signatures of the signors, if in fact, the signors actually affixed their signatures to this document (see attached copy of sample signatures of the signors of other instruments recorded in other jurisdictions);**

**(4) This document was executed on August 26, 2011.  MERS' own policies to its members clearly state that after December 6, 2010, MERS "members" shall NOT use the Ocala, Florida street address for MERS (MERS was never at that address).**

**The address is a large office space equipped for document manufacturing, leased by Electronic Data Systems (which created the MERS electronic database) and later Hewlett-Packard.  MERS never rented space there. EDS apparently accepted its mail however; and**

**(5) Homebridge Mortgage Bankers Corp. dba refinance.com ceased to do business in Florida in September of 2009; thus, the Assignment contains no nominee status and is misrepresentative of the agency relationship of the originating lender and MERS.**

Because this Assignment of Mortgage was included in the case file, it is implied that counsel for the Consuegra Law Firm is relying on it to establish the Plaintiff's standing.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

This would further represent the use of a recorded document containing false and misrepresentative information with the intent to defraud a homeowner of property under the Florida Criminal Code § 817.535 and due to the fact there are multiple actors involved in the recording and use of the document, Florida RICO statutes for perjury may apply.

**There are further issues with the Complaint, to wit:**

> **(1) The Verification is signed by the Servicing Agent for the Trustee.  Danielle Smith's signatures have appeared in the evidence pool in prior instances, wherein she represents herself to be an Assistant Vice President of Bank of America, N.A.;**

> **(2) The attached Note proffered as Exhibit "A" contains three endorsements, one of which appears to have a rubber stamp inserted into it for the purposes of giving Countrywide Bank, FSB note ownership claims (the indorsement is undated); and**

> **(3) The second and third indorsement stamps (including the indorsement-in-blank executions by Countrywide Bank, FSB to Countrywide Home Loans, Inc. and Countrywide Home Loans, Inc. (bearer paper) does not sufficiently (both are undated) prove effective transfer of ownership, given the fraudulent aspects of the Assignment of Mortgage.  These endorsement stamps were likely applied by employees of ReconTrust Company, N.A (per the Sjolander deposition, supra).**

This case went on for over a year before the Plaintiff and its counsel realized that Case. No. 49-2013-CA-001808 had been filed by the SAME ATTORNEY for the Consuegra Law Firm a week later.

Court records in the second case also indicate Voluntary Dismissal without Prejudice.  Both cases appear to be closed, at least for the time being. Still, the intent to file a Complaint using a document that contains false and misrepresentative information carries with it criminal implications as previously discussed here.

The case discussed here was dismissed by Consuegra's Albert A. Zakarian (FBN 395218) on January 31, 2014.  This is one clear demonstration of a complete waste of the Court's time and resources.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 94:** *Green Tree Servicing, LLC v. Jeffrey W. Jacobs et al*  (2013 CA 2797)

This case, filed July 18, 2013, appears to contain two (2) assignments of mortgage that will be discussed first and then the main case discussion of the Verified Complaint (in brief) will follow.

CFN#2012072753, electronically recorded on 05-16-2012
Document Prepared by: unknown Bank of America, N.A. employee
Signors: Jeanine Abramoff, Talisha Wallace (known robosignors; employees of Bank of America), signing as Assistant Secretaries of MERS, attempting to convey the Mortgage and Note to Bank of America, N.A., as Assignee, in what appears to be a self-assignment.
Notary: Kim Williams (California Notary Commission #1956846; expired 10-23-2014)
Witnesses: Srbui Muradyan, Bud Kamyabi (also known Bank of America robosigners)
NOTES: The document was executed 05-10-2012 by Bank of America employees, who swore under penalty of perjury that they had "authorized capacities" to assign both the note and mortgage, which are suspect absent solid proof.  Additionally, MERS does not have an interest in the Note and cannot convey what it does not have an interest in.  Thus, using MERS as a sole Assignor, hiding the chain of custody of the Note and chain of title from the Borrower (and the world via the public record) represents false and misleading information as to the real party in interest, which is Fannie Mae, because Fannie Mae's Herndon, VA address is shown for Bank of America, N.A., which in of itself, now conceals the true owner of the Note in the real property records until the suit to foreclose is filed (at Paragraph 3 of the Complaint).

CFN#2012165596, electronically recorded on 11-08-2012
Document Prepared by: Diana DeAvila (known Bank of America, N.A. employee)
Signors: Jane Martorana, Miguel Romero (known robosignors; employees of Bank of America), signing as Assistant Vice Presidents of Bank of America, N.A., attempting to convey the Mortgage and Note to Green Tree Servicing, LLC, as Assignee.
Notary: Carmen L. Morse (California Notary Commission #1956846; expires 10-16-2015)
Witnesses: Richard Paz, Edward Gallegos (also known Bank of America robosigners)
NOTES: The document was executed 11-05-2012 by Bank of America employees, who swore under penalty of perjury that they had "authorized capacities" to assign both the note and mortgage, which appears to have been executed by the Defendant in favor of Countrywide Home Loans, Inc. on 06-09-2004.  The Complaint shows an indorsement-in-blank from Countrywide Home Loans, Inc. (it is undated, which would be construed to be ineffective as to proof of date of transfer).

Based on the issues created within the MERS assignment in February of 2012, it renders the foregoing Assignment of Mortgage to thus contain false and misrepresentative facts, creating intent and probable cause for violation of Florida Criminal Code § 817.535.  As to the issues involving the Complaint, these are discussed below:

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(1) If the owner of the Note is Fannie Mae, and Green Tree Servicing, LLC holds only the Mortgage, then Fannie Mae needs to come forward and prove they are the "boss of the Note", otherwise, the ownership with right to enforce argument fails on its face;**

**(2) The Certification of Original Prommissory Note is redacted and fails on its face because Vera Bounds is not the party making the claim of possession of the Note, if in fact, the real Note exists (based on the statements made of the Florida Mortgage Bankers Association to Hon. Jennifer Bailey in September of 2009 about the "elimination" of the paper notes in favor of eNotes; and**

**(3) The indorsement-in-blank is undated; thus, effective date of transfer is not proven.**

Despite the fact the case was voluntarily dismissed, the suspect issues create intent based on the submission of the recordation of the documents containing the suspect fraudulent information, designed with the intent to deprive the homeowner of their property.

**Case No. 95:** *HSBC Bank USA, N.A., as Trustee for the Holders of Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-OA4 Mortgage Pass-Through Certificates v. Luis Oswaldo Arcila et al* **(2009 CA 9646 MF)**

**This foreclosure Complaint, filed by Sabrina M. Moravecky (FBN 44669) of the Florida Default Law Group ("FDLG") appears to be based on one single Assignment of Mortgage:**

**CFN#2009117015, recorded by presentment on 07-24-2009**
**The document appears to have been prepared by Maria Zuniga of FDLG.  Zuniga is not a member of the Florida Bar according to search results.  The document was returned to FDLG after recording.**
**Signers: Micall Bachman, who claims to be a 1st Vice President of MERS**
**Attested to by: Serena Harman, who claims to be an Assistant Vice President of MERS**
**(NOTE: Neither of these two "titles" are common to MERS; you're either an Assistant Secretary or  a Vice President; this is another classic example of how MERSCORP members do not follow MERS policies and guidelines.)**
**Notary: Patricia A. Singletary (Texas Notary Commission Expired on 10-16-2010)**
**NOTE: The Examiner believes that this document was executed in Collin County, Texas by BAC Home Loan Servicing, LP employees.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Witnesses: Courtney Morgan, Gwendylon Spencer (signing as a younger person would sign their name to something; also believed to be BAC Home Loan Servicing, LP employees).**

**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) The Assignment purports to utilize MERS as nominee for the already-subsumed Countrywide Home Loans, Inc. as Assignor to a REMIC trust whose Closing Date is June 29, 2007; thus, the assignment contravenes New York trust law and is void;**

**(2) The Assignor's address is left blank, a typical marker of document manufacturing when a Lender intends to reverse manufacture a chain of custody of the Note and chain of title to hide the "sins" of the unknown intervening assignees in the chain, so as to misrepresent the location of the entity because if the blank were filled in, it would be the same address as the Assignee's address shown on the Assignment, which is BAC Home Loan Servicing, LP's address in Plano, Texas;**

**(3) The repeated use of rubber stamps for dates, titles and names are common markers of document manufacturing;**

**(4) The signor is attempting to convey the Mortgage and the Note. Since MERS does not have an interest in the Note, its conveyance is deemed void; thus, only the Mortgage was conveyed (as suspect to authority) and is unenforceable; and**

**(5) The notarial execution claims that the signors are "duly authorized officers", which is suspect given the nature of the Assignment. Most alleged "officers" have no idea who MERS is and what it represents.**

It appears that Moravecky also filed the Notice of Lis Pendens on 09-16-2009 as CFN#2009149028. There appears to have been filed an Amended Complaint which is reflected in the docket listings; however only the Second Amended Complaint was located in the files. The Original Complaint is not verified (only signed by the attorney, who is not a fact-based witness). The original lender was Countrywide Bank, FSB.

The Note proffered with the Complaint contains what appears to be copies of two indorsement stamps, which were highly likely applied by ReconTrust Company, N.A. employees and not by the officers themselves. These stamps appear to reverse engineer the chain of title to "bearer paper" so the trust can come in and claim it owns the Note with the right to enforce.

Unfortunately, the Closing Date of the trust and the undated indorsement stamps do not effectively prove transfer of the Note.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There is an issue with Count II insofar as the reformation of the mortgage.  Only a party with standing can pursue reformation and the trust is only relying on the bearer paper and the manufactured assignment to convince the Court that it owns the Note with the right to enforce it.  The available Amended Complaint is still not verified and the attorney again appears as a fact-based witness, which is inappropriate.  Despite the fact the Note says "Original Document" on it, the copy looks faded and the rubber stamp is faded.  It appears that Christopher Giacinto (FBN 55866) was involved with the Court filings and the apparent misrepresentations of the Plaintiff's standing.

Despite what appears to be the Defendant's pro se Answer, the Court grant Final Summary Judgment of Foreclosure on March 16, 2010.  On March 8, 2010, Giacinto filed what he claimed to be the ORIGINAL NOTE; however, there are reprint two-punch holes in the paper and not the punch holes themselves; thus, indicating a copy and not the Original as declared by counsel.

Attorneys are officers of the Court and have a duty to uphold the truth and prevent fraud on the Court.  Such does not appear to be the case here.   It appears that a Certificate of Title was issued to the Trust Plaintiff on June 3, 2010.    It was filed for record on 06-08-2010 as CFN#2010082619.

The use of the suspect Assignment appears to create probable cause for violation of § 817.535 of the Florida Criminal Code in addition to violation of Florida RICO statutes, since FDLG (now Ronald R. Wolfe & Associates) manufactured the Assignment of Mortgage in order to effectuate standing to take the property by what appears to be fraudulent misrepresentation contained with the recorded document as previously noted.  The Examiner believes that the five-year statutes applying to this event apply due to the date in which the property was liquidated and the event filed for record as constructive notice brings all suspect documents used in the taking within the purview of the case violations.


**Case No. 96: *JPMorgan Chase Bank, N.A. v. Antonio Vega et al*  (2012 CA 5280 MF)**

**CFN#2012084116, recorded by presentment on 06-01-2012**
**Document Prepared by: Ericka Lance (employed by Nationwide Title Clearing, "NTC")**
**Signer: Carl O. Collins, claiming to be a Vice President of MERS as nominee for American Bank, its successors and assigns, attempting to self-assign the Note to his employer, Chase.**
**Notary: Helen P. Tubbs (Louisiana Notary Commission # 40392; lifetime commission)**
**Witnesses: Melissa J. Riley, second witness name illegible**
**Issues: American Bank, FSB (in Maryland) is still an active bank. It could have completed the Assignment discussed herein and recorded it.  Instead, Chase commissioned a third-party document manufacturing plant (NTC) to draft and execute the document using MERS.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**This would be construed to mean (assigning only the Mortgage and NOT the Note) that Chase (from indications in the first sentence of this Assignment) is only the Servicer and does not own the Note. It is highly likely that the Note was securitized and the real party in interest is NOT present here.**

Thus, the Assignment is self-serving and misrepresentative of the chain of custody of the Note as well as the chain of title. Because it is questionable as to whether these signors actually have "legal authority" to do what they're doing, it is highly likely they are not supervised by an attorney, which could potentially lead to issues involving the unauthorized practice of law, which is a felony in Florida. Relying on this Assignment of Mortgage and what it purports to claim, Kahane & Associates, P. A. attorney Charlene K. Eligon (FBN 294070) filed a Verified Complaint to foreclose on the property, along with the Notice of Lis Pendens, recorded by presentment on 11-16-2012 as CFN#2012169614. It appears from indications on the Note that this is a VA loan. On Page 4 of 4 of the attached Note, a rubber stamp indicates, "See Attached Allonge", even though there is plenty of room below the Borrower's signature to affix an endorsement.

This creates suspect issues for document manufacturing of "extra pages", created with the intent to prove standing to foreclose (potential fraud on the Court).

It appears from the attached "ALLONGE TO THE NOTE:" that American Bank, FSB has created a restrictive (special) indorsement to JPMorgan Chase Bank, N.A. (scribbled signature is a sign of potential document manufacturing and robosigning, despite the purported "look" of the document. The Allonge is UNDATED, thus there is no proof of effective transfer of the Note to Chase. Further, the Assignment previously discussed does NOT comport to what the Examiner is seeing here. The Assignment only purports to use MERS to transfer the Mortgage, so the idea here is to reverse engineer an Allonge to transfer the Note so they both travel together and JPMorgan's attorneys at Kahane can claim that Chase owns both the Note and Mortgage with the right to enforce. Again, the problem reverts back to the manufactured self-assignment when American Bank could have done all that as well. There is also the issue of the "signing authority" of MERS, when the intent on using the MERS business model is to securitize the Note, not simply transfer it to Chase. This is what makes the ALLONGE suspect for fraud on the Court and the Assignment, fraud on the land records.

Absent further discussion of this case, the Court signed a Consent Final Judgment on November 13, 2013 and it was recorded by presentment as CFN#2013180511 on 11-18-2013. An Agreed Order of Dismissal of the case was filed on 09-02-2014 as CFN#2014128065 in light of a forbearance agreement entered into by the Defendant property owner with Chase. The issue with the forbearance agreement is that the Defendant more than likely gave up certain future rights and claims and his monthly payments may be going to the wrong party without his knowledge.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 97:** *Deutsche Bank National Trust Company, as Trustee for the Holders of Morgan Stanley Mortgage Loan Trust 2005-6AR v. Yury Maldonado et al* **(2012 CA 5924 MF)**

This foreclosure action took almost two (2) years to complete and resulted in the sale of the property belonging to Yury and Laura Maldonado and Certificate of Title being issued.  This case was filed on December 28, 2012 by Morris Hardwick Schneider PLLC ("MHS") attorney Mary Lauren Hammons (FBN 92431), who also recorded the Notice of Lis Pendens on 01-07-2013 as CFN#2013002801. It further appears that the Defendants' children wrote letters to the Court, in-appropriate as Answers, begging for the Court's indulgence in this matter.   The Verified Complaint filed by MHS's Hammons contains the signature of Danielle Smith, claiming to be Bank of America, N.A. Assistant Vice President (as Servicer, not the owner of the Note).   There is nothing attached to indicate that Smith or Bank of America, N.A. was authorized by Deutsche Bank to verify any of the statements made in this Complaint as factual.

It is likely that Smith simply signed the document without any knowledge of the contents she was attesting to because they were drafted by the law firm from potential, third-party, hearsay sources; the information being received by and through a third-party, computer software platform.  The Note was executed in favor of Countrywide Home Loans, Inc., which at that time had been subsumed into Bank of America, N.A.   There is an indorsement-in-blank affixed underneath the Borrower's signatures on the Note attached to the Complaint.

**Also attached to the back of the Complaint was a certified copy of an Assignment of Mortgage, discussed below as:**

**CFN#2011130968, recorded by presentment on 09-16-2011**
**Document Prepared by: Danilo Cuenca (Bank of America, N.A. employee)**
**Signers: Luis Roldan and Chester Lovings, both claiming to be Assistant Secretaries of MERS as a standalone Assignor and NOT as a nominee for Countrywide Home Loans, Inc. This in of itself is false and misrepresentative because the Assignment attempts to convey BOTH the Mortgage and Note to the trust.**
**Notary: Navid Paktan (California Notary Commission No. 1837714; expired)**
**Witnesses: Bud Kamyabi, Alice Rowe**
**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) All of the signors present on this recorded Instrument have been previously identified as known robosignors, working for Bank of America, N.A.);**

**(2) The document was executed on August 29, 2011 under penalty of perjury under California law.  The signers may not have actually affixed their signatures to this document and the notary may have not physically witnesses their signatures or recorded the transaction in a notary journal as required under statute;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(3) MERS does NOT own the note, thus it cannot convey what it does not own;**

**(4) The address for MERS was prohibited by MERS's own policy. The Ocala, Florida address was NOT to be used after December 6, 2010; however, MERS members can choose to randomly violate any MERSCORP or MERS policies they want to with wanton impunity. The Assignor address was assigned by the U. S. Post Office to a document manufacturing plant in Ocala, Florida that at that time was occupied by Electronic Data Systems (and NOT MERS);**

**(5) The address being shown for the trust (9062 Old Annapolis Rd., Columbia, MD) is actually the address of Wells Fargo Bank, N.A.;**

**(6) Because of issues involving "authorized capacity/ies" in the use of MERS, the notary may have committed perjury on the document by acknowledging them; and**

**(7) It is highly likely that the signors who executed this document had any knowledge of any of the contents of the document they were attesting to, as Countrywide Home Loans, Inc. had already been subsumed into Bank of America, N.A. and thus, the signors were employed only to scribble their signatures onto the document as a matter of convenience.**

Thus, counsel relied on this document, which appears to contain false and misrepresentative statements on it, probable cause for violation of Florida Criminal Code § 817.535 and for violation of the Florida RICO statutes, in concert with the taking of this property, as the MHS law firm and its attorney-representative relied on this information as being factual and represented it as such.

MHS attorney Carla DiPasquale Cramer (FBN 975087) filed am Amended Complaint to Foreclose, allegedly verified by Bank of America, N.A. employee Kelly R. Morris, who claims to be an Assistant Vice President (on June 27, 2013), still without proof that Bank of America had the authority to act as Deutsche Bank claimed to own the note with the right to enforce it. The Amended Complaint included the children of the Defendant couple, due to the letters they wrote to the Court. MHS then effectuated service of process on the children living in the home. The Affidavit of Non-Service came back undelivered because the process server (Robert J. Down) claimed that the party MOVED OUT.

It further appears that all Answers filed with the Court by the Defendants appear to admit to being in default and an audit attached to the filing purported that the Note was in the pool administered (but not owned) by the Plaintiff trust. This audit and statements made by the Defendant appeared to work to his disadvantage, another issue with pro se litigants who do not understand the legal process. It further appears that as of January 15, 2014, Nationstar Mortgage LLC was involved in the proceedings.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It further appears that Robertson, Anschutz & Schneid, P.L. ("RA&S") and its attorneys, Matthew Shapanka (FBN 52874) and Shannon Elizabeth Caplan (FBN 104925) ended up being substituted in as counsel for the Plaintiff.  A Final Judgment of Foreclosure was signed by Judge Pleus in open Court on May 27, 2014.

The alleged "Original Note" was proffered to the Court by RA&S, but the Note appeared to contain a copy streak and the two-punch holes at the top of each page were NOT hole punched, but copies of the hole punches, leading the Examiner to believe that this was just a copy; obviously because it was returned to the owner and all that was available for review was a certified copy of same.

The property was sold and Certificate of Title issued, recorded on 10-24-2014 as CFN#2014158449, in favor of the trust Plaintiff.

**There are serious concerns with this case, to wit:**

> **(1) The Closing Date of the Plaintiff trust was October 31, 2005. The Assignment of Mortgage was recorded almost six (6) years later.  According to the Pooling and Servicing Agreement ("PSA") for the REMIC trust, all documents (with certain exceptions) had to be transferred to the trust by the Closing Date or those transfers would be non-compliant with the PSA and thus in contravention of New York trust law and would be void;**

> **(2) The suspect Assignment using MERS to transfer the Note when MERS has no ownership interest in the Note creates criminal implications for those parties involved in the manufacture of the Assignment or upon its reliance, as previously noted; and**

> **(3) The Trust itself has no knowledge of when a default occurs.  It is only there to administer payments.  The use of MERS with the intent to securitize without the Borrower's knowledge or consent and the potential issues with identity theft and unauthorized practice of law based on facially-deficient or falsely misrepresentative information stated on the Assignment would appear to in the least, constitute probable cause under Florida Criminal Code § 817.535.  The Master Servicer is supposed to continue to make the payments to the Investors within the pool despite whether the Borrower is paying the servicer any monthly payments.  Technically, after a certain period of time, all or part of the trust pool was probably made whole, something not disclosed to the Court.**

In order to do equity, one must have equity.  The certificates held by these investors is evidence of debt, not equity; thus the issue of unclean hands on behalf of the Plaintiff trust, who ended up with the property in addition to potentially and unjustly enriching itself and the actors within it.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 98:** *The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-J14, Mortgage Pass-Through Certificates, Series 2005-J14 v. Luisa A. Checo et al* (2011 CA 4536 MF)

The Complaint to Foreclose Mortgage was filed by Paul Hunter Fahrney (FBN 84153) of Morris Hardwick Schneider, LLC ("MHS") and also filed the Notice of Lis Pendens on 12-27-2011 as CFN#2011179005, affecting real property owned by Luisa and Ramon Checo, who appear to have executed a Note and Mortgage on the property in favor of DHI Mortgage Company Ltd. ("DHI").   MERS was not involved at the time the Mortgage was executed; however, the following series of events portray a disturbing scenario:

The chain of title begins with the lien placed upon the property by DHI, who then executed an Assignment of Mortgage (AND NOTE), as Assignor,  to  Mortgage Electronic Registration Systems, Inc., as Assignee; recorded in the real property records of Osceola County, Florida, to wit:

CFN#2006039702, recorded by presentment on 02-09-2006
Document Prepared by: DHI Mortgage Company, Ltd. (Austin, TX)
Signer: Frank Ortega, who closing to by the Assistant Secretary of the Lender, a LTD., which is an LLC, which is generally supposed to have partners or members, but there is no requirement to have "officers".  Further, the notarial execution claims that the organization is a "limited partnership".  Limited partnerships can have "general partners" or "limited partners"; however, an "officer" type of title is not common nor generally considered appropriate for a Limited Partnership or an LLC (Ltd.); thus, his authority has been generally misrepresented within this document.
Notary: Teresa Torres (Texas Notary Public Commission Expired on 01-29-2009.) Since then, Torres has been recommissioned twice (now as "Richardson") and her current commission expires 01-29-2017.
Witnesses: Deborah Lane, Heini Hentila
There are multiple issues with this document, to wit:

(1) The Assignment of Mortgage contains a Mortgage Identification Number ("MIN"), which is solely owned by MERSCORP Holdings, Inc.  There is no mention of MERSCORP Holdings, Inc. (then MERSCORP, Inc.) in the Mortgage the Borrowers signed;

(2) The Assignment clearly states that DHI, "does hereby grant, sell, assign, transfer and convey", which would violate MERS's corporate charter, as it is NOT allowed to own anything, especially the Borrower's promissory Note.  This comment is false and misrepresentative of the true facts therein;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(3) Further, the Assignment clearly states, "together with the note(s) and obligations therein described and the money due and to become due thereon with interest". This is NOT what MERS was designed for; thus, it is alleged that:**

**(a.) upon recordation of this document into the real property records of Osceola County, Florida, MERS's corporate charter was violated;**

**(b.) upon recordation of this document into the real property records of Osceola County, Florida, MERS was now the "LIENHOLDER OF RECORD" when in fact, MERS did not loan the Borrowers any money, nor did MERS give anything of "value" to DHI; and**

**(c.) it is clearly obvious that whatever the intention to convey the Borrower's note and mortgage, the manner in which the document was constructed was recorded to be relied upon in future events, such as a foreclosure, which the Borrowers did not agree to.**

**At this juncture, according to the way this document was worded, MERS owns the Note and Mortgage. This runs contrary to what the Note submitted with the Complaint proffers, as there is a single endorsement stamp from DHI Mortgage Company, Ltd. by DHI Mortgage Company, GP, Inc., it's General Partner.**

**The name of the party executing this endorsement to Countrywide Bank, N.A. is illegible and further:**

**(1) The second company heading was not disclosed to the Borrowers on their Mortgage loan as DHI Mortgage Company, GP, Inc.;**

**(2) The restrictive endorsement to Countrywide Bank, N.A. is confusing because it was endorsed by the General Partner, which is either part of the "LTD." or part of the "Inc.", which is at best, misrepresentative and confusing;**

**(3) The Borrowers never agreed in writing to allow MERS into their mortgage, despite Paragraph 20 of their Mortgage. MERS cannot OWN anything; thus, the transfer to MERS implies a breach in the Borrower's contract against the Lender, because MERS is a nominee for a Lender but is NOT the Lender; and**

**(4) It further appears that MERS's own members have confused MERS to be something that it is not, a Lender.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Thus, the Complaint, verified and sworn to under penalty of perjury by Edwina Hitchin, who claims to be Assistant Vice President of Bank of America, N.A. as Servicing Agent, did not tell the whole truth about the real aspects of whether this mortgage and note was their right to fore-close on.   Further, prior to the filing of the Complaint, another Assignment of Mortgage was filed, this time more disturbing.

**CFN#2011085036, recorded by presentment on 06-22-2011**
**This document was attached to the Complaint and relied upon, including all conditions precedent.**
**Document Prepared by: Danilo Cuenca (Bank of America, N.A. employee)**
**Signers: Jane Martorana and Diana DeAvila, both claiming to be Assistant Secretaries of MERS as a standalone Assignor and NOT as a nominee for DHI Mortgage Company, Ltd.**
**Notary: Lillian J. Ellison (California Notary Commission No. 1925617; still active until 03-13-2015)**
**Witnesses: Christopher Herrera, Ricki Aguilar (both alleged Bank of America employees)**

**There are multiple issues with this Assignment of Mortgage, to wit:**

> **(1) All of the signors present on this recorded Instrument have been previously identified as known robosignors, working for Bank of America, N.A.);**

> **(2) The document was executed on May 11, 2011 under penalty of perjury under California law.  The signers may not have actually affixed their signatures to this document and the notary may have not physically witnesses their signatures or recorded the transaction in a notary journal as required under statute;**

> **(3) The document claims that MERS as a standalone Assignor, has the right to transfer the Note and Mortgage, which is outside of its corporate charter, as MERS is NOT allowed to own the note, thus it cannot convey what it does not own;**

> **(4) The address listed for MERS was prohibited by MERS's own corporate policy.  The Ocala, Florida address was NOT to be used after December 6, 2010; however, MERS members can choose to randomly violate any MERSCORP or MERS policies they want to with wanton impunity.  The Assignor address was assigned by the U. S. Post Office to a document manufacturing plant in Ocala, Florida that at that time was occupied by Electronic Data Systems (and NOT MERS);**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(5) The document claims that MERS has the right to assign the Note and Mortgage into the REMIC trust, but this is NOT the way the Pooling and Servicing Agreement is set up.  In fact, the Closing Date of this REMIC trust is November 30, 2005; this, a conveyance by MERS into the trust:**

   **(a.) violates the REMIC's provisions as set forth in the Internal Revenue Code;**

   **(b.) violates the PSA's provisions wherein the "Depositor" is required to convey the Note and Mortgage into the Pool, provided it is done at the appropriate time (before the Closing Date); and**

   **(c.) contravenes New York Estates Powers & Trusts § 7-2.4.**

**(6) There are numerous markers of document manufacturing contained in this document and scribbled signatures which are obvious markers of robosigning; and**

**(7) If the Note is endorsed to Countrywide Bank, N.A., then why did Ortega assign the Mortgage (together with the Note) to MERS and not Countrywide Bank, N.A.?**

This has caused an obvious and complete break in the chain of title as well as in the chain of custody of the promissory Note.   The way the 2011 Assignment reads, MERS owns the Note and conveyed it into the trust. The way the Complaint's "Note" endorsement reads, Countrywide Bank, N.A. owns the Note and there is no indorsement-in-blank to turn the Note into "bearer paper" for Bank of America, N.A. to even claim that the trust REMIC has the right to enforce it, let alone the trust REMIC to come forward as the Plaintiff.

Despite all of these issues, Fahrney filed a Motion for Final Summary Judgment of Foreclosure along with the original "claimed" documents, which shows a clear name under the special endorsement to Countrywide Bank, N.A. by TED JULA WILLIAMS, who claims to be an Assistant Secretary. However, this is a problem, because above Mr. Williams' name, it says the incorporation is the "General Partner".  This is still confusing to the average person trying to interpret WHO Williams is an Assistant Secretary for and why the corporation was not disclosed to the Borrowers on their documents as it appears on the indorsement.

Further, a copy of the 2011 Assignment of Mortgage (meaning that MERS owned the Borrower's note and mortgage for over six (6) years before allegedly transferring it into a trust that couldn't accept it because of its own governing regulations) was attached to the Original Documents as a "copy", relying on conditions precedent in this proceeding.  As a result, the Borrowers filed a Chapter 13 bankruptcy to halt the case, which is now Closed pending the outcome of the bankruptcy.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Whatever the outcome, the intent to use not one but two false recordations for the purposes of deprivation of property constitutes probable cause for two counts of violating the Florida Criminal Code § 817.535.

Because multiple actors are involved, the potential exists for probable cause for violations of the Florida RICO statutes. Because the employees of both DHI and Bank of America, N.A. created and signed these documents, claiming that MERS owned the note and mortgage with the right to convey it, should be considered as unauthorized practice of law, as it is obvious that an attorney neither reviewed nor approved these documents prior to recording. There is also probable cause for perjury based on the false statements they attested to in the recorded Assignments of Mortgage. Since MHS and its attorney relied on the Assignment of Mortgage and its conditions precedent, the Complaint is false and represents alleged fraud on the Court.

**Case No. 99:** *The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2004-6CB, Mortgage Pass-Through Certificates, Series 2004-6CB v. Taylor O. Rubio et al* **(2012 CA 4577 MF)**

**This case appears to rely on the following Assignment of Mortgage to validate the claims made by counsel:**

**CFN#2012008115, recorded by presentment on 01-19-2012**
**This document was attached to the Complaint and relied upon in the apparent taking of this property.**
**Document Prepared by: Youda Crain (Bank of America, N.A. employee and robosignor)**
**Signers: Bud Kamyabi and Luis Roldan, both claiming to be Assistant Secretaries of MERS as a standalone Assignor and NOT as a nominee for Family First Mortgage Corp.**
**Notary: Desiree Carson (California Notary Commission No. 1873687; expired)**
**Witnesses: Talisha Wallace, Srbui Muradyan (both alleged Bank of America employees)**
**Issues: Numerous markers of document manufacturing and scribbled signatures, which are markers of robosigning. MERS does not own the Note; thus it cannot convey what it doesn't own. Bank of America, N.A. is the Servicing Agent; thus, the assignment is self-serving because Bank of America's intention is to foreclose at all costs because it makes more money when it takes property through foreclosure; thus, it is highly motivated to order its employees to manufacture false and misrepresentative Assignments, including this one, probable cause for violation of Florida Criminal Code § 817.535.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Morris Hardwick Schneider ("MHS")'s attorney Stephen Orsillo (FBN 89377) filed this Verified Complaint, where Danielle Smith, again representing Bank of America as servicer, attempts to verify the information that the trust itself (through its duly-authorized officer) should have done. It appears that there are issues involving the use of endorsements, as they were not affixed below the Borrower's signature but rather what appears to be on the back side of the last page.  There is no proper labeling of the page (i.e. "NOTE ALLONGE", "ALLONGE TO NOTE", etc.) to indicate such per U. C. C. 3-302(2).   What happened in this instance is like affixing the endorsement stamp to the front of a check and expecting the bank teller to cash it.   The first endorsement stamp appears to assert "attorney-in-fact"  status by American Mortgage Network, Inc. by Shari Rizzo, who claims to be Operations Manager (for American Mortgage Network, Inc.).   The second endorsement is an indorsement-in-blank from American Mortgage Network, Inc.'s Bobbie Duncan, who claims to be Post Closing Supervisor.   A check of the real property records in Osceola County, Florida for an attorney-in-fact for either entity is non-existent, and Family First Mortgage Corp. is a Florida corporation went inactive in Florida in 2009.  American Mortgage Network, Inc. withdrew its corporate status and its right to do business in Florida in 2009.  Both of the indorsement stamps are undated, so there is no indication when the effective transfer of the note and mortgage occurred.

**There are other issues relative to this case, to wit:**

> **(1) The trust that claims to own this Note and Mortgage had a Closing Date of March 25, 2004, which means that this Assignment should have been delivered almost eight (8) years ago but was not effectively dated until  January 17, 2012, which would mean that any attempt to convey this Note into the trust pool would contravene New York trust law and would be considered void;**

> **(2) Danielle Smith is again signing for Bank of America as Servicer for the REMIC. There should be someone for the REMIC itself verifying this Complaint, as Bank of America, N.A. is NOT the Plaintiff in this action;**

> **(3) It is noteworthy to supply specific language from the PSA for this trust (p. 118; emphasis supplied in bold-faced type):**

### THE POOLING AND SERVICING AGREEMENT

The following is a summary of the material provisions of the pooling and servicing agreement **which are not described elsewhere in this prospectus**. Where particular provisions or terms used in the pooling and servicing agreement are referred to, the provisions or terms are as specified in the related pooling and servicing agreement.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**ASSIGNMENT OF MORTGAGE ASSETS**

Assignment of the Mortgage Loans. At the time of issuance of the certificates of a series, the depositor will cause the mortgage loans comprising the related trust fund to be assigned to the trustee, together with all principal and interest received by or on behalf of the depositor on or with respect to the mortgage loans after the cut-off date, other than principal and  interest due on or before the cut-off date and other than any retained interest specified in the related prospectus supplement.

The trustee will, concurrently with the assignment, deliver the certificates to the depositor in exchange for  the mortgage loans.   Each mortgage loan will be identified in a schedule
appearing as an exhibit to the related pooling and servicing agreement. The schedule will include information as to the outstanding principal balance of  each mortgage loan after application of payments due on the cut-off date, as well as information regarding the mortgage rate, the current scheduled monthly payment of principal and interest, the maturity of the loan, the Loan-to-Value Ratio at origination and other specified information.

In addition, **the depositor will deliver or cause to be delivered to the trustee** (or to the custodian) for each mortgage loan:

- **the mortgage note endorsed without recourse in blank or to the order of the trustee**, except that the depositor may deliver or cause to be delivered a lost note affidavit in lieu of any original mortgage note that has been lost,

- the mortgage, deed of trust or similar instrument with evidence of recording indicated on it (except for any mortgage not returned from the public recording office, in which case the depositor will deliver or cause to be delivered a copy of the mortgage together with a certificate that the original of the mortgage was delivered to the recording office or some other arrangement will be provided for),

- **an assignment of the mortgage to the trustee in recordable form** and

- any other security documents specified in the related prospectus supplement or the related pooling and servicing agreement.

Thus, an Assignment dated January 17, 2012 would violate the specific terms of the PSA as outlined above. If the PSA was violated and the Assignment to the trust was void, tenth Plaintiff trust has no standing to pursue a foreclosure because the Assignment failed to be recorded by the Closing Date.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

With undated indorsements on the Note, there is no effective date of delivery shown to verify WHEN the trust received it, if at all.   Because MERS cannot convey what it doesn't own (the Note), the entire Assignment is suspect for fraud and misrepresentation and does not comport (despite what appears to be an attempt to reverse manufacture the Assignment to make it appear that it comports to what has happened) to what actually happened.

Despite these issues, Judge Pleus signed an Order of Final Judgment for Foreclosure on May 22, 2013 (recorded as CFN#2013082061 on 05-23-2013) and the property was sold and a Certificate of Title issued to the Plaintiff trust (recorded as CFN#2013125833 on 08-09-2013).

**Case No. 100:** *The Bank of New York Mellon FKA The Bank of New York as Trustee for the Benefit of the Certificateholders of the CWALT, Inc., Alternative Loan Trust 2005-84, Mortgage Pass-Through Certificates, Series 2005-84 v. Alfredo Calle et al* **(2012 CA 4621 MF)**

**This case appears to rely on the following Assignment of Mortgage to validate the claims made by counsel:**

**CFN#20111157046, recorded by presentment on 11-09-2011**
**This document was attached to the Complaint and relied upon in the apparent taking of this property.**
**Document Prepared by: Aida Duenas (Bank of America, N.A. employee and robosignor)**
**Signers: Cynthia Santos and Dominique Johnson, both claiming to be Assistant Secretaries of MERS as a standalone Assignor and NOT as a nominee for Countrywide Home Loans.**
**Notary: Barbara J. Gibbs (California Notary Commission No. 1964186; expired)**
**Witnesses: Martha Munoz, Swarupa Slee (both alleged Bank of America employees)**
**Issues: Numerous markers of document manufacturing and scribbled signatures, which are markers of robosigning. MERS does not own the Note; thus it cannot convey what it doesn't own. Bank of America, N.A. is the Servicing Agent; thus, the assignment is self-serving because Bank of America's intention is to foreclose at all costs because it makes more money when it takes property through foreclosure; thus, it is highly motivated to order its employees to manufacture false and misrepresentative Assignments, including this one, probable cause for violation of Florida Criminal Code § 817.535.**

Morris Hardwick Schneider ("MHS")'s attorney Stephen Orsillo (FBN 89377) filed this Verified Complaint, where Christina Howden, representing Bank of America as servicer, attempts to verify the information that the trust itself (through its duly-authorized officer) should have done.  Orsillo also filed the Notice of Lis Pendens on 10-11-2012 as CFN#2012147341.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It appears that there is an indorsement-in-blank under the Borrower's signature from David A. Spector, Managing Director of Countrywide Home Loans, Inc. It is unknown whether Spector actually affixed this indorsement to the Note or someone else at Countrywide or ReconTrust Company, N.A. did.

Whatever the case, the indorsement-in-blank is undated and fails to prove effective date of transfer. Further, the trust that claims to own this Note and Mortgage had a Closing Date of December 28, 2005, which means that this Assignment should have been delivered         almost six (6) years ago but was not effectively dated until  November 3, 2011, which would mean that any attempt to convey this Note into the trust pool would contravene New York trust law and would be considered void.

The same language of the PSA is contained within the previous case assessment, verbatim.

Despite the issues with document manufacturing on the part of Bank of America and the failed Assignment date, Judge Pleus signed the Final Judgment of Foreclosure on 09-02-2014 (recorded as CFN#2014129368 on 09-04-2014) and the property was sold and a Certificate of Title was issued to the Plaintiff REMIC trust (recorded on 11-04-2014 as CFN#2014163336).

**Case No. 101:** *Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Loan Trust 2006-AR29, Mortgage Pass-Through Certificates, Series 2006-AR29 under the Pooling and Servicing Agreement Dated September 1, 2006 v. Evaristo Lopez et al* **(2012 CA 5379 MF)**

**This case represents an almost singular issue involving the connection between OneWest Bank and IndyMac Bank wherein had the Defendant in this case been made fully aware of the contract with the FDIC and what enrichment was received (or would be received) by OneWest Bank, the outcome of this case might have turned out differently.**

**Part of the bigger problem with securitization is that Florida Circuit Court judges:**

**(1) Do not understand what happens to a Borrower's loan when a particular tranche within the REMIC trust fails;**

**(2) Do not understand that a third-party payor could have contributed to payments on the loan balance (see *Buffington et al v. U. S. Bank, N.A. et al*, CV-14-00615-PHX-DJH, U.S.D.C. Ariz. (10/28/14, ORDER, included with this report as a USB Exhibit), in part at Pages 13-14, to wit:**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

### E. Count Four — Payment/Discharge/Satisfaction

"… Plaintiffs allege in Count Four that the Note has been paid by other sources and has no balance due. They contend, therefore, that the Note and Deed of Trust are not in default and any foreclosure proceedings should be terminated.  Plaintiffs allege payments were made to Defendant OneWest by the FDIC pursuant to a "Shared Loss Agreement." (Doc. 20 at 33).  Plaintiffs also allege other possible sources of payment toward the loan balance including "insurance payments", TARP funds, or other currently unknown sources." (*Id.*).

 Defendants argue Plaintiffs' cause of action in Count Four "is nothing more than a preposterous claim that they should own the property free and clear without paying for it." (Doc. 33 at 13).  Defendants fail to acknowledge, however, that this precise claim was allowed to proceed in *Steinberger*.  In that case, the Plaintiff alleged "that part of the loan has already been paid by the FDIC under a 'Shared-Loss Agreement.'" *Steinberger*, 234 Ariz at 144, 318 P.3d at 438.  The "Shared-Loss Agreement" in *Steinberger* involved the same parties and appears to be the same agreement at issue here.  *See id.*  The Steinberger court explained that "the agreement does appear to provide that, in exchange for OneWest's assumption of IndyMac Federal's loans, the FDIC would reimburse OneWest at 80% for any default in payments on those loans." *Id.*  The Plaintiff in *Steinberger* also alleged other sources of reimbursement including insurance coverage but the Court found those to be "speculative and unsupported." *Id.* at 144-145, 318 P.3d at 438-439.

The Court ruled that "if it is true that the FDIC has already reimbursed OneWest for all of part of Steinberger's default, OneWest may not be entitled to recover that amount from Steinberger." *Id.* at 145, 318 P.3d at 439.

 Defendants provide no reason for this Court to treat Plaintiffs' claim in Count Four any differently.  Defendants, however, address only the Shared Loss Agreement and fail to argue dismissal of the claim as it pertains to other sources of payments. (4)  Thus, the Court finds Plaintiffs have adequately stated a claim for discharge based on the alleged Shared Loss Agreement and other alleged sources of payment."

**(3) Nearly every Circuit Judge in Florida (especially the "Rocket Docket" judges) appear to "buy into" the "free house" argument made by Plaintiff's counsel when a default is alleged; thus, judges do NOT want to hear and/or understand the issues regarding third-party payments being applied to the existing loan balance; such as the foregoing issues cited in Buffington;**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(4) Florida judges apparently do not care whether Plaintiff Banks unjustly enrich themselves at the expense of the Borrower multiple times over, because they do not understand that insurance payments, such as *Credit Default Swaps*, enriched the banking community in default payments into the tens of trillions of dollars between 2003 and 2008; therefore, they do NOT demand a full accounting of each loan that is alleged to be in "default" that comes before them, largely because most Defendants and their representative attorneys do not argue this point because they do not understand that third-party payments may have been applied to their loan balance, or in the alternative, believe "it won't get them anywhere because the judge won't buy it";**

**(5) Florida judges do not want to be educated on the fact that most trust Master Servicers have to make up the Borrower's missed payment in the event a payment is not made within 30 days so the account stays current (most PSA regulations state this);**

**(6) Florida judges do not want to be educated on the fact that after Day 91 of "alleged default" on a REMIC loan, the REMIC may "cash in" on its Credit Default Swap payment, thus enriching itself further and potentially and completely paying off the entire loan balance;**

**(7) In this instance, Deutsche Bank and its Servicer, OneWest Bank appear to have potentially enriched themselves twice over:**

> **(a.) Once due to the Borrower's missed payments and potential third-party payments being applied to the loan balance; and**

> **(b.) Once again due to the proceeds from the short sale of the Borrower's (property owner's) home; and**

**(8) Also apparent is that due to the Supreme Court of Florida's mandate to "clear the docket" at all costs, thus, judges see no need to demand a full accounting of the loans because, as one Circuit Judge in Broward County put it, "If the bank files a lawsuit against you, they must own the loan."**

Thus, in instances like the foregoing case and despite the indorsement-in-blank on the proffered note within the Complaint, there was no evidence of any potential "Shared-Loss Agreement" sums being applied to the loan balance in the "Final Judgment of Mortgage Foreclosure", signed by Judge Robert Pleus and recorded in the real property records of Osceola County, Florida as CFN#2014045419 on 04-01-2014.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Potentially, there are tens of thousands of loans whose representative Mortgages are recorded in the real property records of Osceola County, Florida that (if foreclosed upon) faced the same treatment, unjustly enriching the Plaintiff Banks multiple times over at Borrowers' expense and apparent court system-wide ignorance.  After all, NOT telling the Court ALL you know about the accounting in a case doesn't make your argument NOT true and correct, just not complete.

This case was initiated by Kahane & Associates ("Kahane") attorney Antonio Campos (FBN 672467) on November 21, 2012. Campos also filed the Notice of Lis Pendens on 12-04-2012 as CFN#2012180048.

**The day BEFORE the Complaint was filed, OneWest Bank appears to have electronically filed a "Florida Assignment of Mortgage" (filed 11-20-2012) as CFN#2012171228, discussed below and also under _OneWest Bank_'s heading in this report:**

**CFN#2012171228, electronically filed on 11-20-2012**
**Document Prepared by: John P. Gagnon (SK), Attorney Code: At-KAHA; OneWest Bank, FSB, 2900 Experience Crossing, DM-01-08, Austin, TX 78758 (512) 506-6931; who appears to have controlled the manufacture, execution, recording and return of the Assignment to himself once recorded.**
**The "MIN" (100020410001255228) is also shown on this Assignment.  This MIN belongs to MERSCORP Holdings, Inc. (which by that time had filed a Certificate of Merger and had subsumed MERSCORP, Inc.).  Neither MERSCORP nor MERSCORP Holdings, Inc. are mentioned anywhere in the Assignment of Mortgage nor on any of the Complaint paperwork filed with the Court in this case.**
**Signor: John P. Gagnon, who claims to be an Assistant Secretary of MERS as nominee for DHI Mortgage Company Ltd.  (however, the signature on the recorded document does not appear to resemble Gagnon's signature, meaning that the document could have been surrogate signed by someone else).**
**Notary: Michelle M. Wilhelm (Texas Notary Commission Expires on May 30, 2015)**
**Witnesses: Mary A. Fulton, Lucia Castro (both believed to be employees of OneWest Bank)**

**There are multiple issues with this Assignment, to wit:**

> **(1) (2) The Assignment shows DHI Mortgage's address (which is located in Austin, Texas) as 1901 East Voorhees Street, Suite C, Danville, IL 61834, which is really MERS's "service address" which is really the address of Metro Detective Agency;**

> **(2) OneWest Bank's employee prepared this Assignment.  From this employee's LinkedIn page (shown on the following page), he apparently is now employed with DHI Mortgage Company Ltd.:**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**



**Again, the Examiner notes that Gagnon's signature doesn't look like "Gagnon"
signed the document, but rather that it was robosigned or surrogate signed;**

**(3) The Closing Date of the IndyMac INDX Mortgage Loan Trust 2006-AR29 is
September 28, 2006; thus, the Assignment, recorded over six (6) years later, appears
to contravene New York Estates Powers and Trusts § 7-2.4, which renders the
Assignment void;**

**(4) The Plaintiff appears to have "opened the door" as to potential rules of evidence
when the case has captioned the styling to include "under the Pooling and Servicing
Agreement Dated September 1, 2006". This would mean that by 2012, most of the
certificates may have been paid in full due to third-party payments or due to the
OneWest-FDIC-IndyMac "Shared Loss Agreement" payments;**

**(5) There are numerous "bold-faced type" insertions (document manufacturing
template), unknown as to their computer network origin; and**

**(6) Gagnon is attempting to convey the Note into the Trust REMIC using MERS,
which doesn't own the Note and thus cannot convey what it doesn't own or have
an interest in.**

Thus, the Assignment appears to contain multiple false, fraudulent and misrepresentative state-
ments, probable cause for violation of Florida Criminal Code § 817.535 because it was recorded
the day prior to the filing of the Complaint in an effort to effectuate standing for Deutsche Bank
with the intent to deprive the homeowner of his property and further to apparently unjustly en-
rich itself, with the help of OneWest Bank, FSB, who subsumed all of IndyMac's assets (includ-
ing the trust REMICs) on March 19, 2009.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Despite the fact that Deutsche Bank is only the administrative Trustee and not the OWNER of the Certificates of this REMIC series, OneWest Bank stood to make multiple gains off of the sale of the owner's (Lopez's) property even if it was a short sale, because of the Shared-Loss Agreement issues stated above.

It is suggested that the FDIC be subpoenaed to produce records regarding this loan to determine whether OneWest Bank, FSB derived Shared-Loss Agreement (80% of the value of the loan) when the Borrower allegedly defaulted.

Further, the Release of Mortgage is also suspect for unauthorized practice of law, also a felony in Florida, based on the fact that it more than likely was not approved or supervised an attorney. At issue is that OneWest Bank and the Trust Plaintiff shared in the proceeds of that payoff.  Ocwen Loan Servicing, LLC may have also unjustly benefitted because they were responsible for releasing the mortgage on the property.

**CFN#2014127740, electronically recorded on 09-02-2014**
**Document Prepared by: Christie Robbins, Ocwen Loan Servicing, LLC (Waterloo, IA)**
**Signer: Linda Anders (who claims to be an Authorized Signer for Ocwen without providing proof of authority).**
**Notary: B. Arndt (Iowa Notary Commission No. 766996; still active until 03-04-2017)**
**Witnesses: None Listed (two may be required for conveyances in Florida, including releases of lien or mortgage); an attorney could have made sure that the document was correct before recording.  There is a Limited Power of Attorney recorded for IndyMac Bank as Grantee for this REMIC (CFN#2011054349, 04-25-2011); it also names OneWest Bank, FSB as the successor to IndyMac Bank, FSB, acting as the Servicer.**

OneWest Bank then appears to have recorded a non-specific Limited Power of Attorney ("LPOA") on 10-25-2013 as CFN#2013168758, giving Ocwen authority to handle this Release of Mortgage.  Oddly, Linda Anders (the Signer herein) handled the recording of the LPOA.

Thus, it appears that Kahane, in concert with OneWest Bank, FSB and its employees, acted together to manufacture documents (including the Complaint), with the intent to defraud the homeowner, probable cause for violation of Florida's RICO statutes.

In an unrelated matter, a second mortgage loan was also executed by Lopez, which appears to have been written off as a loss by Goldman-Sachs subsidiary MTGLQ Investors, LP through the use of Ocwen alleged robosignors, discussed in the February 27, 2014 listings under _Ocwen Loan Servicing, LLC_'s heading in this report.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 102:** *JPMorgan Chase Bank, N.A. v. Marcos A. Giraud et al*  (2012 CA 3149 MF)

**The Complaint in this matter was filed by Kahane & Associates, P.A.'s ("Kahane") Antonio Campos (FBN 672467) on July 2, 2012 (which places this case directly within the target period for review), along with the Notice of Lis Pendens, which was recorded on 07-11-2012 as CFN#2012103780.  The Verified Complaint appears to rely on an Assignment of Mortgage which was filed shortly before the Complaint was filed with the Court, in what the Examiner believes was an effort (coordinated by this law firm) to "validate" the standing and actions of JPMorgan Chase Bank, N.A. in the taking of the property:**

**CNF#2912084131, recorded by presentment on 06-01-2012**
**Document Prepared by: Erika Lance, Nationwide Title Clearing, Inc., Palm Harbor, FL**
**Signer: Pearl M. Burch (alleged JP Morgan Chase Bank ("Chase") employee) , who claims to be Vice President of MERS as nominee for DHI Mortgage Company Ltd. ("DHI").**
**Notary: Angela Ruth Payne (Louisiana Notary Commission No. 60422; lifetime)**
**Witnesses: Tina Richard, Sandy N. Wells (also alleged Chase employees)**
**This document appears to have been executed on May 11, 2012.  This document appears to indicate that JPMorgan Chase is "responsible for receiving payments", which would make it the Servicer in this matter and NOT the owner of the note with the right to enforce it. There are multiple issues with this Assignment, to wit:**

> **(1) The Assignment was manufactured by a known document manufacturing plant in one state and executed by parties in another state, which is suspect in of itself based on the fact that the signers of the document were allegedly NOT privy to the information that was available to Erika Lance, the document's preparer; thus, verification of the facts presented to the signers was nil;**

> **(2) The document does not specify WHO gave the signers the authority to execute this Assignment (NTC, Chase, DHI, MERS?) as found within the notarial execution;**

> **(3) The Assignment only shows the address for MERS as the post office box in Flint, Michigan and fails to disclose DHI Mortgage Company's ("DHI") address in Austin, Texas, when DHI is still in business and could have created and executed this Assignment by someone with personal and actual knowledge of the alleged facts contained therein; and**

> **(4) There is nothing in the Assignment that purports to transfer the Note to Chase.  The Assignment only references transfer of the Mortgage.  The Note does NOT follow the Mortgage.  It is the other way around.  This in of itself carries with it issues of enforceability.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

As a result of this Assignment of Mortgage, there are now issues with the Complaint:

(1) The person verifying this Complaint (under notary seal from Denton County, Texas), did not sign her full name as proffered in her title and further, appears to have the handwriting of a "teenager" with nothing more than a high school education. It is highly likely that this person works within a foreclosure document department of Chase as Servicer and signs these documents regularly without verifying any of the data contained therein;

(2) The Complaint states in Paragraph 2 that the Note was "negotiated and/or transferred to the Plaintiff"; however the purported "Assignment of Mortgage", if it is to be believed, does not appear to indicate that this event actually happened, as it makes no mention of the transfer of the Note to Chase;

(3) Further, the Assignment appears to have been self-serving and self-assigned using MERS as a "cover" for the chain of custody of the Note and chain of title;

(4) The signer states nowhere in this Complaint that she is the "Affiant" who is authorized to make the statements contained therein; states nothing in this Complaint to indicate how she came to have personal knowledge of any of the facts contained in the verified Complaint (as is customarily seen in other complaints filed by law firms that were reviewed as part of this report); thus, she cannot be what she has not declared herself to be and how she came into the knowledge contained within the Complaint; and

(5) Thus, the Complaint (being notarized by Betty J. Williams to give the appearance of an "official act" by Chase's alleged "officer") appears to fail as it does not provide specific language required by an "affiant"; thus, the appearance of document manufacturing to go along with the self-assigned Assignment.

As to the proffered Note attached to the Complaint, there are suspect issues with it as well:

(1) The endorsements that appear on the Note are undated; thus, there is no proof of when the transfer actually occurred, if in fact, it did at all;

(2) Candiss Farrington claims to be an Assistant Secretary (in the first indorsement stamp) but her title is confusing as LLC's have "members", not officers.   It is unknown whether Candiss Farrington actually affixed this stamp to the document herself or someone else affixed it;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(3) The second indorsement stamp appears unnecessary, unless some other entity that Chase is collecting for actually owns the note with the right to enforce it; further, there is no room on the indorsement-in-blank stamp to allow anyone to insert the name of the indorsee;**

**(4) If Chase is claiming to own the Note with the right to enforce it, what is the indorsement-in-blank stamp doing on the Note in the first place (unless the Note was actually transferred to some other entity not present here; however, a 12/12/2013 filing with the Court to Reschedule the Foreclosure Sale mentions the "Department of Veteran's Administration" within the Motion; and**

**(5) With MERS being involved in the equation, the intent is securitization; thus, Chase appears to be representing an undisclosed trust REMIC.**

Despite all of the foregoing issues, Judge Miller granted Final Summary Judgment of Foreclosure on April 24, 2013 (recorded as CNF#2013067033 on 04-26-2013). The accounting provided within this document appears deficient, as it fails to state unknown third-party payments to the Borrower's loan balance, which may have been paid off in full due to the insurance policies customarily taken out on securitized trust pools.

A day later (on April 25, 2014), Judge Miller signed an "Amended Final Judgment of Mortgage Foreclosure", also filed for record on 04-26-2013 as CFN#2013067023. This Final Judgment too, fails to allege or apply the previously-discussed third-party payments. A Certificate of Title was issued to Chase (who appears to be just the Servicer of the loan) on March 31, 2014 and was recorded on 04-02-2014 as CFN#2014046034.

The nearly year-long discrepancy between the Final Summary Judgment as the issuance of the Certificate of Title in of itself is suspect due to chain of title/chain of note custody issues. The alleged Assignment of Mortgage, which appears to have been self-assigned to give Chase standing in this matter, resulted in the taking of property, probable cause for violation of Florida Criminal Code § 817.535. Further, due to the actions of Lance, Kahane and Chase in the manufacturing of this document, Florida RICO statute violations are also probable as well.

**CASE NOTES: It further appears from a review of the balance of the court files that the Defendant couple separated; that the spouse (Isabel Giraud) allegedly avoided service of process, then retained counsel from Legal Aid on a limited basis; then filed bankruptcy, which was later dismissed, allowing the sale to go forward.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 103: *M & T Bank v. Manuel A. Otero et al*  (2010 CA 2291 MF)**

**This case was initially filed by David Stern Law firm attorney (whose signature and FBN are illegibile) for Miguel A. Gonzalez (FBN 58689). The Notice of Lis Pendens was filed on 03-30-2010 by Stern attorney Estee Leah Lipenholtz (FBN 939307) for Miguel A. Gonzalez (FBN 58689) as CFN#2010044417.    The Complaint appears to have been self-verified by Counsel.  The MERS-originated Mortgage and alleged Note are attached to the Complaint. There are multiple issues with the Note, to wit:**

**(1) There is only one indorsement-in-blank shown on Page 5 of 5 of the Note and there is appears a rubber stamp across it diagonally that reads, "VOID" in all capital letters; thus, the document proffered does not appear to be bearer paper, as the original lender is noted as the now-defunct FBC Mortgage, LLC;**

**(2) U. C. C. 3-202(2) clearly denotes HOW an ALLONGE TO NOTE is to be used;**

**(3) There was sufficient enough room to attached at least 2-4 endorsement stamps directly underneath the Borrower's signature, generally required if the foregoing U. C. C. regulation is to be adhered to.  When the space under the Borrower's signature is full, THEN an Allonge is utilized and must be firmly affixed to the back of the Note so as to become a part of it;**

**(4) Instead of following U. C. C. protocols, someone attached an ALLONGE TO NOTE behind the two (2) pages known as "Addendum to Note" instead of on the page following the Borrower's signature page to the actual Note itself;**

**(5) On the attached (allegedly improper) ALLONGE TO NOTE, there are two (2) undated indorsement stamps, which do not prove effective date of transfer, as comported to the recorded Assignments of Mortgage (of which there are two of them); and**

**(6) The first indorsement is a special indorsement from FBC Mortgage, LLC's Brooke French, who claims to be a Funding Specialist for FBC Mortgage, LLC to M  & T MORTGAGE CORPORATION, which appears to have been rubber stamped onto the page next to the space provided; and**

**(7) The second indorsement appears to be an endorsement-in-blank from M&T Bank (rubber stamp showing "M&T Bank, F/K/A M&T Mortgage Corporation" by Jill M. Smith, who claims to be a Vice President for M & T Bank.  If M & T Bank was the Plaintiff, why would there need to be an indorsement-in-blank on the document, unless the real party in interest was a trust REMIC who is unknown and not represented here.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**There are two (2) Assignments of Mortgage relative to this case, which are discussed below:**

**CFN#2010046168, recorded by presentment on 04-01-2010**
**Signor: Christopher M. Zeis (purportedly an employee of M & T Bank) signing as Vice President of MERS as nominee for a defunct FBC Mortgage, LLC on March 16, 2010 in an apparent self-assignment (using M&T Bank's Buffalo, NY address for both Assignor and Assignee).**
**Notary: Katherine M. Kraus (New York Notary Commission No. 01KR6168154; current commission expired on 06-11-2011)**
**Attesting Witness: Maureen Vishion**
**Witnesses: Becky Beranek, Patricia Sneck**
**Issues: This assignment was prepared by the Stern law firm, who directed its manufacture and execution for the purposes of effectuating foreclosure; thus, the persons executing this document had no direct knowledge of the facts they were attesting to.  The foregoing Assignment of Mortgage was filed AFTER the Notice of Lis Pendens was filed, meaning that M & T Bank's employees, who apparently dated the Assignment ten (10) days BEFORE the Complaint was filed, still misrepresented the facts of the Assignment and cannot prove effective date of transfer.  Further, Zeis used MERS to convey the Note to his employer, which it cannot do, since MERS does NOT own the Note.**

**CFN#2011087038, recorded by presentment on 06-27-2011**
**Document Prepared by: Rebecca A. Colvin, M&T Bank Lien Release Dept. (Buffalo, NY)**
**Signer: Tiffany A. Kisloski (alleged employee of M & T Bank's "Collateral Perfection" department; also the apparent preparer of the document) signing as Vice President of Mortgage Electronic Registration Systems, Inc. as nominee for M&T Bank, using M & T Bank's Buffalo, New York address to misrepresent a self-assigned party of interest in the previous Assignment filed by M & T prepared by the Stern Law Firm as CFN#2010046168 as part of a foreclosure case filing (*M&T Bank v. Manuel A. Otero et al*; 2010 CA 2291 MF)**
**Notary: Diane S. Horn (New York Notary Commission expires 02-12-2015)**
**Witnesses: Matthew Graber, Maria Reese (alleged M & T Bank employees)**
**Issues: It appears that M & T Bank employees are attempting to "clean up" merger issues potentially created within the previous Assignment and in turn by assigning only the Mortgage to M&T Bank so it can attempt to foreclose as the Servicer.**

On December 10, 2010, M&T Bank and the Stern Law Firm had a parting of the ways. The Defendant homeowner filed bankruptcy on November 12, 2010, which put the entire case on hold. On May 20, 2011, Ablitt Scofield filed a Stipulation for Substitution of Counsel (filed by Scott M. Gross [FBN 63921] for WITNESS A (FBN 684570) as noted in this report. D. Sean Noonan (FBN 887064) filed the Original Note and Original Mortgage on October 6, 2011.  This time however, the ALLONGE TO NOTE had been moved from its originally-filed position within the Note paperwork to directly behind the Note itself, making the entire action suspect.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

On May 20, 2013, the Court (on its own motion) moved to dismiss the case.  On June 10, 2013, Menina E. Cohen (FBN 14236) of Ablitt Scofield moved to voluntarily dismiss the case.  The pendency of the case is now shown as CLOSED.  Despite the dismissal, the intent to use manufactured documents containing false and representative information constitutes probable cause for violation of Florida Criminal Code § 817.535 and potential Florida RICO violations.  Further, the fact these Assignments may NOT have been attorney supervised may constitute unauthorized practice of law.

**Case No. 104:** *The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-18CB, Mortgage Pass-Through Certificates, Series 2006-18CB v. Hector Diaz et al* **(2012 CA 4609 MF)**

**This case appears to center around a suspect document titled "Assignment of Mortgage" electronically recorded by Bank of America (and/or CoreLogic), to wit:**

**CFN#2011135955, electronically recorded on 9-30-2011**
**Document prepared by: Estrella Salgado, apparently an employee of Bank of America (and/or CoreLogic).**
**Signor(s): Jennifer Bakes, who claims to be an Assistant Secretary of MERS and Ana Bonds, who claims to be a/the Vice President of MERS.  The document does not disclose if MERS is acting as a "Nominee" for DHI MORTGAGE COMPANY LTD, the claimed original lender, but rather as a standalone Assignor.   The document attempts to assign a Mortgage and note(s) to The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-18CB, Mortgage Pass-Through Certificates, Series 2006-18CB.**
**Witnesses: Rachel Shine, Sandy Alexander.**
**Notary: Marie Barclay (Arizona Notary Public for Maricopa County)**
**Issues: Signatures which are 1-2 letters in length are potential markers of robosigning. MERS as nominee or as a standalone Assignor cannot assign the Note as it does not have an interest in the Note.**

The Complaint to Foreclose was filed by TRIPP SCOTT, P.A. attorney Christina V. Paradowski (FBN 0056708) who appears to have relied on the foregoing document to commence foreclosure proceedings.   Oaradowski also filed the Notice of Lis Pendens on 10-11-2012 as CFN#2-12147012. Attached to the Complaint is a copy of a purported promissory note with 3 (three) endorsements on the 3rd page, one of which is a blank endorsement by a Michele Sjolander, SVP of Countrywide Home Loans, Inc.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Michele Sjolander has admitted under oath that she does not personally sign any endorsements. In an 11th Circuit Case out of Miami-Dade County, Florida, Case Number 09-21198 CA 09, the defendant deposed one Michele Sjolander as then-Executive Vice President, where she admitted under oath that she does not personally sign any indorsements, but rather her signature has been duplicated in the form of a stamp, which is disseminated throughout the country and affixed outside her presence.  She does not know who applies her stamp (potentially some unknown party at ReconTrust Company, N.A.) or what policies govern the application if the same.

**The Complaint declares that The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the certificateholders CWALT, Inc., Alternative Loan Trust 2006-18CB, Mortgage Pass-Through Certificates, Series 2006-18CB "is the present owner of the Note and Mortgage"; however there are issues present with the alleged Assignment, to wit:**

> **(1) The Closing Date of the trust REMIC is May 30, 2006;**

> **(2) Since MERS cannot convey the Note into anything, only the Mortgage could be assigned into the REMIC pool;**

> **(3) In order for the Assignment to be valid, it would have had to have been Assigned prior to the Closing Date, which was May 30, 2006, long after the September 30, 2011 date of recordation in the public record of Osceola County, Florida.**

Case Status is CLOSED, however after final judgment the Plaintiff has asked for Leave to file an Amended Complaint in order to join additional Defendant(s).  Plaintiff also moved TO CANCEL SALE AND VACATE SUMMARY FINAL JUDGMENT OF FORECLOSURE which was granted on 4-29-2014.

As of the time of this examination, the Defendants' home appears not to have been foreclosed as a result of the recent court ruling on vacating the judgment.  One can assume that the Plaintiff will serve any joined Defendants and move for Summary Judgment of Foreclosure and attempt to get a judgment and sale date of the subject property.

Despite the case outcome, the intent to use manufactured documents containing false and representative information constitutes probable cause for violation of Florida Criminal Code § 817.535 and potential Florida RICO violations.  Further, the fact these Assignments may NOT have been attorney supervised may constitute unauthorized practice of law.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 105:** *JPMorgan Chase Bank, National Association, Successor by Merger to Chase Home Finance, LLC v. Susan Sam et al  (*2013 CA 0670 MF)

**This case appears to center around at least 2 (two) suspect documents, both titled "Assignment of Mortgage" prepared by the Law firm of Shapiro, Fishman & Gache, LLP, to wit:**

**CFN#2010128223, recorded by presentment on 9-3-2010**
**Document prepared by: Shapiro & Fishman, LLP (who happens to represent the Plaintiff in the instant action).**
**Signor(s): Angela Aguillar Greene, who claims to be an Assistant Secretary of MERS and Julie Wagner, who also claims to be an Assistant Secretary of MERS solely as  "Nominee" for OHIO SAVINGS BANK, the claimed original lender.  The document attempts to assign *a Mortgage and note* to Chase Home Finance, LLC on 8-19-2010.**
**Witnesses: The signing of the instrument was apparently not witnessed by any separate witnesses other than the Notary.**
**Notary: Daniel R. Hooley (Ohio Notary Public)**
**Issues: There is no corporate seal on the assignment nor are there any signatures by an acting Officer (President, Vice President, or CEO).  The assignment appears to be prepared by the same law firm that drafted the foreclosure complaint-this may be a conflict of interest.  More so, a later Assignment attempting to convey the same was created to correct "a scrivener's error for the Assignor's and Assignee's name."**

**CFN#2013024230, electronically recorded on 2-13-2013.**
**Document prepared by: Shapiro, Fishman & Gache, LLP (who happens to represent the Plaintiff in the instant action).**
Signor(s): Toryn Fowler, who claims to be an Assistant Secretary of MERS and Dominique Lewis, who also claims to be an Assistant Secretary of MERS as a standalone entity.  The document attempts to assign a Mortgage to JPMorgan Chase Bank, National Association, Successor by Merger to Chase Home Finance, LLC on 12-13-2012.
**Witnesses: The signing of the instrument was apparently not witnessed by any separate witnesses other than the Notary.**
**Notary: Kylethia Y. Davis (Texas Notary Public)**
**Issues: There is no corporate seal on the assignment nor are there any signatures by an acting Officer (President, Vice President, or CEO).  The assignment appears to be prepared by the same law firm that is representing the Plaintiff in the foreclosure suit-this may be a conflict of interest. More so, this Assignment was created to correct "a scrivener's error for the Assignor's and Assignee's name" in a previous assignment attempting to convey the same Mortgage and Note.  Furthermore, this assignment does not attempt to assign a note.  Lastly, it appears that this Assignment was created in a rush just before the "verification" of the foreclosure complaint.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Complaint to Foreclose was filed by SHAPIRO, FISHMAN & GACHE, LLP attorney Maulik Sharma (FBN 72802) who appears to have relied on the foregoing documents to commence foreclosure proceedings. Sharma was also responsible for filing the Notice of Lis Pendens on 02-22-2013 as CFN#2013030769.   Attached to the Complaint is a copy of a purported promissory note with a single indorsement on the 3rd page.   This is a blank endorsement by a Boban Bajic, Authorized Agent of "AmTrust Bank FKA Ohio Savings Bank.  However, there is no other documentation supporting an indorsement by AmTrust Bank rather than the Original Lender, Ohio Savings Bank.

The Complaint declares that Federal National Mortgage Association is *the owner of the note*. The Complaint also seeks to reform the mortgage (COUNT II) due to an alleged scrivener's error with the language in which the mortgage conveys the interest in real property.

**More specifically, a party other than the original lender seeks to reform the mortgage so that the following is included:**

>**TRANSFER OF RIGHTS IN THE PROPERTY**
>**This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant, and convey to MERS (solely as nominee for lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in Osceola County, Florida.**

The Case Status is CLOSED with a Certificate of Title recorded as CFN#2014010146 on 01-23-2014. The intent to use manufactured documents containing false and representative information constitutes probable cause for violation of Florida Criminal Code § 817.535 and potential Florida RICO violations.  Further, the fact the Assignment may NOT have been attorney supervised may constitute unauthorized practice of law.

**Case No. 106:** *Deutsche Bank National Trust Company, as Trustee for the Certificateholders of the First Franklin Mortgage Loan Trust 2005-FFH3, Asset-Backed Certificates, Series 2005-FFH3 v. Adriana Arone et al* **(2012 CA 1591 MF)**

**This case was filed by Robertson Anschutz & Schneid, PL's ("RA&S") Mami Sachs (FBN 92531) for April Harriott (FBN 37547), who also filed the Notice of Lis Pendens on 04-05-2012 as CFN#2012049804.  A previous attempt to foreclose on this property was done in 2009.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There are numerous issues with the Complaint, to wit:

(1) The person signing the Verification for the Complaint is an Agent (apparent Servicer and not the owner of the Note. The owner of the Note should be verifying the Complaint;

(2) The Closing Date of this trust REMIC is August 26, 2005; thus, the pool cannot accept an Assignment to the pool well after that date;

(3) The two indorsement stamps on the currently-proffered Note are both undated. This does not prove effective transfer of the Note;

(4) The second indorsement was imprinted BELOW the footer of the document, when it could have been affixed to the right of the first endorsement stamp; and

(5) The second endorsement (indorsement-in-blank) from First Franklin Financial Corporation is partially smudged. It is unknown who applied that second indorsement stamp.

The Complaint fails to state HOW and WHEN the trust REMIC acquired the Note and Mortgage. There should be three (3) true sales to get into the trust REMIC and none are represented here. There are also two (2) Assignments of Mortgage preceding this action to foreclose, as discussed below:

CFN#2006020442, recorded by presentment on 01-23-2006
Document prepared by: Karleen Maughan (employee of Security Connections, Inc., an Idaho Falls, ID known document manufacturing plant).
Signor: Mary Enos, who claims to be a Vice President of First Franklin, A Division of National City Bank of Indiana, who in reality is an employee of Security Connections that makes no more than $10/hour to apparently misrepresent herself as a Vice President of something. The language within the document purports to transfer the Note and Mortgage to First Franklin Financial Corporation. The document was executed on August 31, 2005.
Notary: Joan Cook (Idaho Notary Commission Expired in 2007)
Witnesses: Krystal Hall (known robosignor, whose deposition is included in this report as a USB file Exhibit) and Miranda Wohlschlegel.
Issues: Signatures which are 1-2 letters in length are potential markers of robosigning. There are issues with the notarial execution which do not specifically state what authority that Enos has to sign this document or to act in an official capacity. From research conducted by certain members of the Examination Team, many people at Security Connections do not understand MERS and think that MERS is the "lender".

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**EXAMINER'S NOTE:** The signors appear to be high school graduates with no under-standing of banking and finance and probably lack the capacity to explain the meanings of anything they sign or attest to.

CFN#2009163987, recorded by presentment on 10-13-2009
Document prepared by: Karen Duddy, Pennsylvania Notary (employee of Home Loan Services, Inc.)
Signor: Sharon D. Maerkle, who claims to be a Vice President of Home Loan Services, as attorney-in-fact for First Franklin Financial Corp.
Notary: Karen Duddy (Pennsylvania Notary Commission Expired in 2011)
Witnesses: Matthew Coffman, Nancy E. Madeja (also a Pennsylvania notary public)
There are multiple issues with this Assignment of Mortgage, to wit:

(1) This document was executed on September 11, 2009 but has an effective date of August 1, 2005. That means this document was backdated nearly four (4) years when it is highly likely that none of the parties executing this Assignment:

(a.) may not have even been employed by Home Loan Services, Inc.;

(b.) had no personal knowledge of any of the contents to which they were attesting;

(c.) because the Note endorsements are undated, these employees could not attest to exact dates of transfer; and

(d.) they are attempting to convey the Note into the trust pool when the 2009 recordation makes it impossible to convey the Note and Mortgage into the pool, which makes this Assignment suspect for fraudulent and misrepresentative statements under Florida Criminal Code § 817.535.

(2) This document was executed in conjunction with a Limited Power of Attorney ("LPOA") dated September 10, 2009 and recorded in the real property records of Osceola County, Florida on February 24, 2010 as CFN#2010026671, over four (4) months AFTER the Assignment was recorded;

(3) This assignment appears to be conveniently dated the day after the execution of the LPOA; however, the Assignment was recorded over four (4) months BEFORE the LPOA was recorded, which is construed to mean that the world did not receive constructive notice of the backdated Assignment;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(4) The parties can execute this Assignment and backdate it to whatever date they want to but the Pooling and Servicing Agreement specifically has a Closing Date for when all loan documentation has to be in the hands of the trust's document Custodian, which is by the Closing Date of the trust or within ninety (90) days afterwards with limited exceptions; thus, this transfer, whether backdated or not, still contravenes New York Estates Powers & Trusts § 7-21.4 and is still void;**

**(5) This Assignment circumvents the intent of the first Assignment, contradicting it, rendering BOTH suspect for manufacturing and misrepresentation of the facts, given the undated indorsements on the Note; and**

**(6) It is still suspect as to why the parties chose to wait so long to attempt to convey the Note into the trust pool.  The LPOA clearly refers to Home Loan Services, Inc. as the "Servicer" and so one would think that the Servicer would know the REMIC trust governing regulations better than anyone.  Such is not apparent here, which leads the Examiner viewing this report to view the attempt as suspect document manufacturing, containing false and misrepresentative statements about the nature and legality of the Assignment, probable cause for violation of Florida Criminal Code § 817.535.**

On October 11, 2012, Ablitt Scofield was substituted for RA&S. After approval, Ablitt Scofield changed its name to Connolly, Geaney, Ablitt & Willard ("Connolly"). Monica L. Miller (FBN 91555) filed the paperwork for Connolly's Antonio Campos (FBN 672467).   When the alleged Original Note was produced, the second indorsement-in-blank stamp was smudged and illegible as opposed to the originally-proffered stamp and was still below the footer of the document, making it suspect for an add-on prior to filing the Complaint.

Further, since this is a REMIC trust, there is accounting absent from the filings by the Plaintiff trust, who may have collected default insurance payments, credit default swap payments or other third-party payor benefits which rightfully should have been applied to the accounting for the Borrower's loan.

Further, since the Master Servicer is responsible for making the payments and keeping the loan out of default, there are issues with whether the Borrower was actually in default in the first place.   Despite the foregoing issues, Judge Miller signed the Final Judgment of Foreclosure on March 26, 2014 and it was filed for record on 03-28-2014 as CFN#2014044227.

The property was purchased by the Plaintiff for $100.00, when there are issues as to whether the Plaintiff was even entitled to take the property in the first place.

**Thus, it is highly likely the trust REMIC will:**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) Attempt to write the loan off as a loss to the pool, which could result in hidden attempts to commit income tax evasion because the issues dictate that the loan never made the trust pool in the first place;**

**(2) If the loan was in default as the REMIC trustee claims (Trustees have no knowledge when a default occurs), why was a delinquent loan placed into an allegedly-performing trust pool?; and**

**(3) The trust will sell the home, after making money off of the third-party payments, and allegedly unjustly enrich itself again, on top of the third-party payments.**

It is implied that the State's Attorney and a sitting grand jury may be able to uncover the real truth behind the taking of this property, as the conflicting Assignments bring enough probable cause to the scenario, as relied upon by the Plaintiff and Plaintiff's counsel, to file an action and foreclose, falsely claiming (fraud on the court) that the Borrower was in default, when it knew or should have known, it had already enriched itself on third-party payments.  The multiple actors involved in this process would intimate violations of Florida RICO statutes.

**Case No. 107: *PHH Mortgage Corporation v. Teresita Gaylon et al*  (2012 CA 002699 MF)**

**This case appears to center around at least 2 (two) suspect documents, one titled "Assignment of Mortgage" prepared by PHH Mortgage Corporation, the other tiled as a "Satisfaction of Mortgage" prepared by a Brenda Rostrom to wit:**

**CFN#2012085993, electronically recorded on 06-06-2012.**
**Document Prepared by: Sherri Klish of PHH Mortgage Corporation (who happens to be the Plaintiff in the instant action).**
**Signor(s): Dolores Lauria, who claims to be an Assistant Secretary of MERS as a "Nominee" for BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO MERRILL LYNCH CREDIT CORPORATION.  The document attempts to assign a Mortgage to PHH Mortgage Corporation on 03-07-2012.**
**Witnesses: The signing of the instrument was apparently not witnessed by any separate witnesses other than the Notary.**
**Notary: Beth Lashley (New Jersey Notary Public)**
**Issues: There is no corporate seal on the assignment nor are there any signatures by an acting Officer (President, Vice President, or CEO).  The assignment appears to be prepared by the same entity that is the named Plaintiff in the foreclosure complaint-this may be a conflict of interest.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The signature appears to be that of one's initials which is a potential marker of robosigning. It appears from this document that "Bank of America" is the successor to the Original Lender (Merrill Lynch Credit Corp), however a copy of a Note attached to the Complaint has a special indorsement on the 3rd page whereby PHH Mortgage Corporation asserts itself as an "Authorize (sic) Agent for Merrill Lynch Credit Corporation" as an apparent self-indorsement.

CFN#2012168947, recorded by presentment on 11-15-2012.
Document prepared by: Brenda Rostrom (possibly of Speedy Title & Appraisal Review Services in Mt. Laurel, NJ)
Signor(s): Michelle C. Elizardo-Young, who claims to be an Assistant Secretary of MERS and Dominique Lewis, who also claims to be an Assistant Vice President of PHH Mortgage Corporation. The document claims to show that the Mortgage assigned to PHH Mortgage Corporation was satisfied in full on 10-31-2012.
Witnesses: The signing of the instrument was witnessed by Gwendolyn Hawkins.
Notary: Michelle L. Eichmann (New Jersey Notary Public)
Issues: The Satisfaction may not be valid if the previous assignment falsely conveyed the alleged mortgage.

A Lis Pendens was filed by SHAPIRO, FISHMAN & GACHE, LLP attorney Jennifer L. Terrana (FBN 77648) as CFN#2012089534 on 6-12-2012.

The Complaint to Foreclose was also filed by SHAPIRO, FISHMAN & GACHE, LLP attorney Jennifer L. Terrana (FBN 77648) who appears to have relied on the foregoing assignment to commence foreclosure proceedings. Attached to the Complaint is a copy of a purported promissory note with a 2 (two) indorsements on the 3rd page.

One of the indorsements is a special indorsement to PHH Mortgage Corporation whereby PHH Mortgage Corporation asserts itself as an "Authorize (sic) Agent for Merrill Lynch Credit Corporation" as an apparent self indorsement. The next indorsement is a blank-indorsement by PHH Mortgage Corporation (which appears circumspect given the fact that there is already a specific indorsement to the same).

The Complaint declares that Federal National Mortgage Association is the owner of the note. The Case Status is CLOSED as the defendant short-sold the property prior to any judgment and the case having been dismissed as a result. Despite this case's outcome, the intent to use manufactured documents containing false and representative information constitutes probable cause for violation of Florida Criminal Code § 817.535 and potential Florida RICO violations. Further, the fact the Assignment may NOT have been attorney supervised may constitute unauthorized practice of law.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 108:** *U. S. Bank, N.A. as Trustee for the C-BASS Mortgage Loan Asset-Backed Certificates, Series 2006-CB2 v. Jose B. Castro et al* **(2009 CA 6680 MF)**

**CASE NOTES: This action was brought by the law firm of Shapiro & Fishman, LLP and its attorney representative Hollan Fintel (FBN 847631). She also appears to have filed the Notice of Lis Pendens for record on 07-07-2009 as CFN#1009105942. This attorney is notorious (in other jurisdictions) for operating outside of attorney-in-fact status to achieve the end result (in one instance in a Tampa-area filed assignment of mortgage, Fintel claimed she was a "Vice President of Loan Documentation" for Wells Fargo Bank when she was given no authority of the sort). Fintel appears to have filed this case for Craig T. Smith (FBN 20315). The Complaint was not verified (attorney appears to be acting as a fact-based witness, making unsubstantiated claims). The alleged Note and Mortgage, executed in favor of New Century Mortgage Corporation (which filed for bankruptcy on April 2, 2007) were attached to the Complaint. There was an Assignment of Mortgage recorded in the real property records of Osceola County, Florida which was attached to this case as well.**

**CFN#2006214661, recorded by presentment on 08-28-2006**
**Document Prepared by: "B. Burnett" (alleged employee from Litton Loan Servicing, LP in Houston, Texas)**
**Signer: Stephen L. Nagy (claiming to be "V.P. of Records Management" for New Century Mortgage Corporation), scribbling an initial "S" to the Assignment of Mortgage, signing in Orange County, California, attempting transfer of the Note and Mortgage into the trust REMIC pool.**
**Notary: Michelle Flores (California Notary Commission No. 1464534; expired in 2008)**
**Witnesses: (first name and spelling illegible), Shirley Richard**
**Issues: Aside from what appears to be an extra "2" under the handwritten "at page" portion of this document, there are numerous indicators of robosigning and document manufacturing (i.e. scribbled signatures, rubber stamp insertions, document prepared in one location by preparer with alleged hearsay knowledge, sending it to another party with no knowledge to sign the document).**

The Closing Date of this REMIC appears to be February 28, 2006, which is the date that the trust REMIC issues the Certificates to the investors. On January 24, 2007, the REMIC filed an SEC Form 15-d(6) showing the total number of investors at "84". This would appear to be the fundamental reason why the trust was no longer required to report data to the U. S. Securities and Exchange Commission. It could also mean that the REMIC paid off several of the tranches due to credit events or that the investors moved their funds out of the pools. Whatever the case, the Assignment to the Pool was supposed to have occurred before February 28, 2006. At issue is whether the Assignment was supposed to be fully recorded in the real property records BEFORE the Closing Date and submitted to the trust.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**This issue was probably never addressed by anyone, prior to the taking of the property. The Note proffered with the Complaint shows a partially redacted signature of Diana Noriega ("A.V.P. / Trailing Docs") on an undated indorsement-in-blank, yet the Assignment is specifically rendered to the trust pool (without the three (3) true sales), so it is undetermined whether those true sales actually occurred:**

  **(1) from Party A (the originator) to Party B (the sponsor/seller);**

  **(2) from Party B (the sponsor/seller) to Party C (the Depositor); and**

  **(3) from Party C (the Depositor) to Party D (the Trustee for the REMIC),**
  **as the Assignment shows the transfer immediately from Party A to Party D**
  **with no proof of effective transfer of the Note.**

With third-party payment potential, it may be likely that the Defendant was not in default. Nonetheless, Judge Waller issued a Final Summary Judgement of Foreclosure, which was recorded on 02-05-2010 as CFN#2010016870. A Certificate of Title was issued to the REMIC trust on June 1, 2010 and filed for record on 06-03-2010 as CFN#2010079848.

To date, the Osceola County Sheriff's Office is attempting to serve an Alias Writ of Possession on the Property which was ordered by then-Clerk Malcolm Thompson on June 9, 2011 and it is undetermined whether the REMIC has actually taken possession of the property. The REMIC may have already been paid in full for this Property. Unjust enrichment may be at issue here. The Assignment may be misrepresentative when used in conjunction with the undated Note indorsement-in-blank, thus probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.

**Case No. 109:** *Wells Fargo Bank, N.A. as Trustee for the Certificateholders of the MLMI*
   *Trust, Mortgage Loan Asset-Backed Certificates, Series 2006-WMC1 v.*
   *Adaljisa Revelo et al* **(2012 CA 1402 MF)**

This Complaint was filed by Marni Sachs (FBN 92531) for Jonathan Meisels (FBN 29235) of Robertson, Anschutz & Schneid, P.L. ("RA&S") on March 26, 2012. Sachs also recorded the Notice of Lis Pendens for Meisels on 03-27-2012 as CFN#2012043331. The Lender on the proffered Note with the Complaint is the now-defunct WMC Mortgage Corp., whose trust vehicles were the subject of numerous lawsuits by investors for misrepresentation of facts contained within the prospectus as to the quality of the loans in the pool.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

The indorsement-in-blank affixed to the Note under the Borrower's signature is undated. The MERS-originated Mortgage is also attached to the Complaint.  Instead of Wells Fargo Bank as Trustee having its own duly-authorized representative verify the complaint, it appears that Bank of America, N.A. (through a chain of successors) attempted to verify the Complaint as Servicing Agent, which the Examiner here finds the statements contained in the Complaint to be deficient, as there is nothing in the language herein that states how the person verifying the Complaint came to have personal knowledge of the facts stated therein.

On February 11, 2013, RA&S withdrew as counsel and was substituted by Ablitt Scofield attorneys Menina E. Cohen (FBN 14236); Michel Morgan (FBN 102764), who filed a Notice of Change of Firm Name; and Paul McCord (FBN 913110).  Judge Pleus granted a Final Judgment of Foreclosure on February 13, 2014.  The alleged original Note contained a faded indorsement-in-blank that was totally illegible.

**There is also an Assignment of Mortgage attached to the back of the Original Note and MERS-originated Mortgage, which is discussed below:**

**CFN#2011121115, electronically recorded on 09-01-2011**
**Document Prepared by: Mary Ann Hierman (alleged employee of Bank of America, N.A. in Ventura County, California and known robosigner)**
**Signers: Srbui Muradyan and Kathy Oriard, who both claim to be Assistant Secretaries for MERS, attempting a standalone Assignment of BOTH the Mortgage and Note to the REMIC trust Plaintiff in this proceeding, which the Plaintiff trust and its counsel appear to rely on, having attached it to the Complaint they filed.**
**Notary: L. L. Llanos (California Notary Commission No. 1921705; still active), certifying under Penalty of Perjury under California law that the signors have authorized capacities to act.**
**Witnesses: Barbara Nord, Aida Duenas (known document preparers and robosignors from Bank of America, N.A.)**
**There are multiple issues with this Assignment of Mortgage, to wit:**

**(1) The document contains multiple markers of document manufacturing and robosigning, construed to mean that the signors did NOT read the document before they affixed their signatures to it;**

**(2) MERS cannot convey or assign the Note because MERS does NOT have an interest in the Note;**

**(3) Bank of America, N.A. document preparers appear to have complete and total disregard for MERS policies, as they have used the old MERS address in Ocala, FL in violation of MERS policies which declared that address void after December 6, 2010;**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(4) The MERS address in Ocala, FL was actually assigned to Electronic Data Systems ("EDS") and NOT MERS.  MERS was basically using this address, which in of itself is a document manufacturing plant, as a cover mail stop;**

**(5) The Closing Date of this REMIC trust was February 14, 2006; therefore, any attempt to Assign a Mortgage to this REMIC contravened New York trust law at § 7-2.4 and is void; and**

**(6) Since Bank of America, N.A. appears to be the alleged Servicing Agent in the Complaint, the Assignment appears to be self-serving for Bank of America, N.A. to achieve its objectives in the taking of the property.**

Despite these issues, the property was sold and a Certificate of Title issues to the Trust REMIC in c/o Connolly, Geaney, Ablitt & Willard, P. C., who filed bankruptcy two months later.  The Certificate of Title was recorded on 04-02-2014 as CFN#2014046049.  Because MERS cannot convey the Note, and the signers claim to state that it is so, then MERS is being used as a cover in name only to hide the chain of title and custody of the Note. Due to the improprieties and false and misrepresentative statements upon which counsel and the Plaintiff relied, there is probable cause for violation of Florida Criminal Code § 817.535. Further, because the parties acted in concert in the taking of the property, Florida RICO statutes appear to also apply to this scenario. Because Bank of America, N.A. employees may NOT have been supervised by an attorney when this Assignment was drafted, there are also likely issues of unauthorized practice of law.

**Case No. 110:** *Countrywide Home Loans, Inc. v. Edith Chavez et al* **(2008 CA 8001 MF)**

This older case came into the target period due to the lengthy pendency.  The attempted self-verifying Complaint appears to have been filed by Marshall C. Watson ("Watson") attorney Nalini Singh (FBN 43700) on behalf of Karen A. Thompson (FBN 96440).   The MERS-originated Mortgage attached to the Complaint names the Plaintiff as the original lender on the Mortgage. Singh also filed the Notice of Lis Pendens on 09-16-2008 as CFN#2008147970.

There is an unrecorded Assignment attached to the Complaint wherein Patricia Arango (another Watson attorney who received a brief suspension from practicing law for what appears to be the same behavior here) claims to be an Assistant Secretary of MERS as nominee for the original Lender, as Assignor, in what appears to be an Assignment of the Mortgage and Note to the original Lender, as Assignee.  Other than the use of MERS, and the fact the effective date is "blank", Florida Notary Kelly A. Anderson (DD 505469; expired) affixed her signature and seal to the document.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

<u>This Assignment makes absolutely no sense whatsoever</u>, unless you factor in that that the use of MERS means that the Note was securitized into one of Countrywide's portfolios.  Still, this has not been proven. The Assignment was recorded on 08-21-2008 as CFN#2008134723. Further, the Note contains an indorsement-in-blank by David A. Spector, Managing Director for Countrywide Home Loans, Inc.   This would be construed to mean that the intent of Countrywide Home Loans, Inc. was to assign the Note and Mortgage somewhere else, again unknown.  Countrywide Home Loans, Inc. at that point could have simply been the servicer for the unknown trust REMIC; however, that too has not been established.  It further appears that the Defendant homeowner was trying to do a short sale on the property.   The Defendant then filed for bankruptcy protection and the bankruptcy action was eventually cancelled.

Judge Legendre dismissed the case without prejudice on December 3, 2010, still within our target but if only for the provision of the example of the manufactured Assignment, used to demonstrate a pattern of behavior, even if there is no resulting prosecution.   Whatever the matter, the Examiner does not believe that the real party in interest was present during the pendency of this proceeding and thus constituted a waste of the Court's time and resources.   This case is very marginal within the time frame for being unviable.

## Case No. 111: *Bank of America, N.A. v. Joseph S. Steiger et al*  (2010 CA 5795 MF)

This case was initiated by the Plaintiff though its counsel, Edward B. Pritchard (FBN 712876) of then-Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A. ("Kass-Shuler"), who also filed the Notice of Lis Pendens on 09-28-2010 as CFN#2010142905.   The pendency of the case comes within the target range of our examination, hence the review of this case.   Kass-Shuler's Elizabeth M. Ferrell (FBN 52092) also filed documents in this matter.

Despite the fact that Pritchard claims the Complaint is verified, evidence of it does not show up until the very last page of the Complaint, wherein Aaron Formby (rubber stamped), who claims to be an Assistant Vice President of Bank of America, scribbled his name.

Formby appears to be signing for BAC Home Loans Servicing, LP, LPas Servicing Agent for Bank of America, N.A., which is the servicer's attesation, not the Lender's true representative.  Given the scribbled signature, it is highly likely that if he was put on the stand and examined, Formby could not attest to any of the information he attempts to verify, because he does not have actual personal knowledge of the events to which he is attesting.   The original Lender appears to be the Plaintiff.   There is no endorsement on the Note.   It appears the Defendants retained counsel who filed affirmative defenses, which Kass-Shuler's Ferrell motioned the Court to strike.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

It further appears that Robertson, Anschutz & Schneid, P.L. ("RA&S")'s Jonathan Meisels (FBN 29235) filed a Notice of Appearance as Co-Counsel, illustrating the pattern of resulting activity when a challenge to the foreclosure is filed.  The Plaintiff ended up substituting in RA&S in for Kass-Shuler.

Due to disagreements with the Plaintiff, Ablitt Scofield was substituted in for RA&S.  There was no Motion for Substitution of Party Plaintiff; however, on December 27, 2012 (within the examination target range) Ablitt Scofield's Menina E. Cohen (FBN 14236) filed a Motion to Voluntary Dismiss the case and discharge the Lis Pendens.  The Notice was later filed with the Clerk on 01-14-2013 as CFN#2013007761.  Suspiciously enough however, the last two documents in the case file show the name of the Plaintiff changed to BAC Home Loans Servicing, LP without any apparent permission from the Court.  This is another case that appears to constitute a waste of the Court's time and resources and lends further suspicion to pattern behavior by Plaintiff's counsel.

**Case No. 112: *M & T Bank v. Sandra Chavez et al*  (2013 CA 3800 MF)**

This case was filed by Marc Ruderman (FBN 899585) of Clarfield, Okon, Salomone & Pincus, P.L. ("Clarfield"), who also filed the Notice of Lis Pendens on 11-06-2013 as CFN#2013175220. The Verification by Leticia Sanchez (Document Coordinator) does not state WHO she is employed by nor does it state how she has personal knowledge of the facts stated in the Complaint. More than likely, a Clarfield employee or attorney prepared the document for signing.

The bottom of Page 3 of 3 of the proffered Note contains what appears to be a reversed "smudge" from an endorsement affixed on the back of the Note. The page behind the Note contains two undated indorsements.   There is even a place to date the indorsement-in-blank, yet Meghan Halpin (who signed the following discussed Assignment of Mortgage) failed to place the date within the endorsement.

Further, there is nothing to indicate how and when Michele Sjolander (whose indorsement stamps are allegedly held and affixed by ReconTrust Company, N.A. employees) affixed the stamp and whether or not an M & T Bank employee simply wrote their employer's name into the Countrywide Home Loans, Inc. (first) "indorsement-in-blank" stamp before Assigning their rights to the Note away.  There would not need to be an endorsement from M&T Bank to anyone else if M&T was the Plaintiff.  Here it appears otherwise.  It appears the indorsement signer also signed the Assignment of Mortgage as well.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2012163204, recorded by presentment on 11-06-2012**
**Document Prepared by: Courtney A. Ryan (M & T Bank's "Lien Release" Department employee)**
**Signer: Meghan Halpin (alleged employee of M & T Bank's "Assignment" department), signing as Assistant Secretary of Mortgage Electronic Registration Systems, Inc. as nominee for defunct Countrywide Home Loans, Inc., using MERS's "Metro Detective Agency" address in Danville, Illinois address in an attempt to self-assign the Mortgage ONLY!**
**Notary: Bess E. Katerinsky (New York Commission expired 01-12-2013)**
**Witnesses: None (two may be required in Florida)**
**Issues: Establishment of pattern of alleged perjury under Florida RICO statutes, involving known suspect Florida foreclosure mill law firms and M & T Bank.  Misrepresentative of M & T Bank's self-assignment of the Mortgage using MERS to give it apparent standing in the case.  Meghan Halpin appears to be an Assistant Vice President for M & T Bank when she is Assistant Secretary of MERS.  Multiple titles is a marker of document manufacturing. The undated endorsement-in-blank stamp says nothing about WHY or WHO assumed the Note if Halpin indeed endorsed it for the purposes of Assignment to an unknown party, not present here.**

**Given the self-assignment issues and other items previously discussed, it puzzled the Examiner as to why the Defendant gave into a Consent Final Judgment, signed by Judge Pleus. The property was sold and Certificate of Title issued.  The self-assignment certainly is misrepresentative and constitutes intent to deprive the property owner of her property, probable cause for violation of Florida Criminal Code § 817.535; unauthorized practice of law, and certainly Florida RICO issues.**

**Case No. 113:  *Nationstar Mortgage LLC v. Rosita Karla Castanera et al* (2012 CA 3383 MF)**

**The Complaint was filed by Albertelli Law's Lindsay Ann Wickham (FBN 87091) on July 19, 2012.  Wickham also appears to have filed the Notice of Lis Pendens on 07-27-2012 as CFN#2012110829.  The filing of this Complaint appears to be based on the following Assignment of Mortgage:**

**CFN#2012084635, recorded by presentment on 06-04-2012**
**Return to: Nationstar Mortgage, LLC**
**C/O NTC 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Document Prepared by: Erika Lance, Nationwide Title Clearing ("NTC") employee in Palm Harbor, Florida.**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Signor: Brady Niehaus (allegedly a Nationstar employee), claiming to be an Assistant Secretary of MERS as nominee for Suntrust Mortgage, Inc. as Assignor (using MERS's Flint, Michigan post office box address), attempting to assign ONLY the Mortgage (and not the Note) to itself, as Assignee (using Nationstar Mortgage's Lewisville, Texas address).   The signer has absolutely no knowledge of the facts and is NOT an officer of MERS or Suntrust, but an employee paid by Nationstar to assign the Mortgage to his employer.**
**Notary: Keri Jonker (Texas Notary Commission expired)**
**Witnesses: Sam Maurer, (second name and signature illegible); both alleged Nationstar employees.**

**There are multiple issues with this Assignment of Mortgage, to wit:**

> **(1) Nationstar's Trey Cook, who claims to be an Assistant Secretary (there are no "officers" in an LLC, only "members") claims that Fannie Mae owns the Note;**

> **(2) If Nationstar assigned itself the Mortgage, then Fannie Mae only holds the Note and NOT BOTH the Note and Mortgage; thus, it appears that neither party can foreclose because neither has standing.**

**There are other issues with this Complaint, to wit:**

> **(1) The MERS-originated Mortgage, executed in favor of Suntrust Mortgage, Inc., does NOT have a MIN listed on it;**

> **(2) The Note, also executed in favor of Suntrust Mortgage, Inc. has two indorsement-in-blank stamps affixed to them; both undated; one of them marked "VOID";**

> **(3) It appears that the signature of Deborah P. Ellis, who is purported to be Vice President of Suntrust Mortgage, Inc. (on the stamp) did not sign the stamp; thus, it is highly likely that she did not know WHO and WHEN it was affixed to the Note below the Borrower's signature; and**

> **(4) There is no endorsement to Fannie Mae found in any of the documents; thus, with Nationstar claiming to own the rights and interests in the Mortgage, but not possessing the Note with the right to enforce, appears to negate the standing.**

**Despite the filing of the Notice of Voluntary Dismissal and Release of Lis Pendens by Albertelli Law's Matthew Bronkema (FBN 91329), the Examiner has reason to believe that probable cause exists:**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) Against Nationstar Mortgage LLC for self-assigning a recorded document with the intent to deprive Rosita Karla Castanera of her property, in violation of Florida Criminal Code § 817.535;**

**(2) Against Nationstar Mortgage LLC, Erika Lance and NTC for conspiring to commit perjury in the manufacture of a document purporting to assign only the Mortgage to Nationstar, using false and misrepresentative information contained within the document, knowing said information was false, in violation of the Florida RICO statutes; and for committing unauthorized practice of law in the process; and**

**(3) Against Albertelli Law and its attorneys for the intentional commission of fraud on the court for its reliance on a manufactured assignment with the intent to commit a violation of Florida Criminal Code § 817.535.**

**Case No. 114: *U. S. Bank, N.A., as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-KS3 v. Sofia M. Guerrero et al* (2014 CA 1346 MF)**

This case appears to have been initiated on May 12, 2014 by Can Guner (FBN 20931) of the Robertson, Anschutz & Schneid, P.L. ("RA&S") law firm. Gunner appears to have filed this Complaint on behalf of fellow RA&S attorney Jonathan Meisels (FBN 29235). It further appears that the Notice of Lis Pendens filed by someone at RA&S on May 9, 2014 was not signed by the filing attorney and the Court Clerk sent notice to the firm about it.

Not only are there three (3) suspect assignments involved with the intent to deprive the homeowner of her property, but there is no recorded Notice of Lis Pendens in this case, which would be construed to mean that the "world was not given constructive notice" as the case continued to proceed up through the Clerk's Notice of Default. Shortly after that filing (on July 16, 2014), based on what appears to be defective service of process, the course of events that took place in the case between September 9, 2014 and November 24, 2014 found the case to be closed.

**The following are the serious case issues which should be investigated further:**

**(1) The alleged "ALLONGE", which appears to be self-servicing between the Servicer (Ocwen) and the trust Plaintiff, was attached in the wrong place, not directly behind the promissory Note ("Note");**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) The alleged "ALLONGE TO NOTE" was also filed and placed BEHIND the PREPAYMENT RIDER TO NOTE, where it doesn't belong. This is a key sign of document manufacturing and fraud on the court;**

**(3) All of the alonges and endorsements placed within BOTH drafts were undated, thus ineffective in proving the date of transfer of the Note;**

**(4) The Allonge, attached behind the ALLONGE TO NOTE, appears to be a duplicate effort to assign the Note to a specific REMIC. All have borders around them, which is another sign of document manufacturing;**

**(5) The first Assignment of Mortgage appears to be fraudulent, to wit:**

**CFN#2006279716, recorded by presentment on 11-27-2006**
**Document Prepared by: M. Snelgrove (an employee of Residential Funding Company, LLC, which is NOT the original Lender).**
**Signer: M. Snelgrove, who claims to be an Assistant Secretary of MERS as nominee for GMFS, LLC, in Hennepin County, Minnesota, assigning BOTH the Mortgage and Note to "MERS" c/o of its Vienna, VA address.**
**Notary: Cindy K. Krider (Minnesota Notary Commission Expired 01-31-2008)**
**Witnesses: None**

**This assignment is suspect for the following reasons:**

**(a.) MERS is an electronic database that is bankruptcy-remote; therefore, assigning the mortgage and Note to it violates its corporate charter and by-laws, especially when the language states: "the under-signed hereby grants, assigns and transfers ... all beneficial interest under that certain Mortgage ... together with the Note ... the money due and to become due thereon with interest.";**

**(b.) This Assignment appears to have been relied upon by the attorneys, and represents an apparent breach of the Mortgage contract, because a nominee is an agent, not the beneficial "owner" of all interest in the Note and Mortgage.**

**Thus, U. S. Recordings, Inc. appears to have conspired with MERS and Residential Funding Company, LLC to manufacture a document which becomes case precedent in this matter, probable cause to carry this scenario forward as suspect for violation of Florida Criminal Code § 817.535 and perjury under the Florida RICO statutes, when coupled with the following Assignments of Mortgage:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

CFN#2013002269, recorded by presentment on 01-07-2013
Document Prepared by: Lisa Vang (Indecomm Global Services employee and known ro-bosigner).
Signer: Bao Cindy Fang (Minnesota Notary Public and known Indecomm Global Services employee), claiming to be Assistant Secretary of MERS, in an attempt to assign the Mortgage (ONLY) into the REMIC Plaintiff trust, using MERS as a nominee for the original lender.
Notary: Pang Mee Yang (Minnesota Notary Commission Expires 01-31-2017; the same as the signer's notary commission).  These two persons appear to have been retained as signing document notaries for a known third-party document manufacturing mill that caters to MERS and the mortgage industry.
Witnesses: Kia Vang, Donna Kurzhal (also Indecomm Global Services employees)
Issues: The Closing Date of this Trust REMIC was March 29, 2006 (see additional document information provided by the Examiner and made a part of this case file); thus, the transfer is in contravention of New York trust law and is void.  The Examiner reviewing this case file believes that this was an attempt at correcting the previous Assignment of Mortgage issued by the same group in 2006, which brings the case forward for probable cause under the statutory period of Florida Criminal Code § 817.535 and Florida RICO violations.

CNF#2014020269, electronically recorded on 02-12-2014
Document Prepared by: Fred Jeune (alleged Ocwen employee)
Signer: Leticia N. Arias (alleged Ocwen employee), claiming to be an Assistant Secretary of MERS as nominee for GMFS, LLC in a "corrective" attempt assign the Mortgage into the REMIC Plaintiff trust.
Notary: Christopher Kelley (Florida Notary Commission No. EE 851683; still active)
Witnesses: Jason Ayers, Aisha Ansar
Issues: Besides the scribbled signatures, which are markers of robosigning, the Ocwen signing team used MERS's Flint, Michigan address to misrepresent the original lender's address and further utilizes Ocwen's West Palm Beach address as the address for the U. S. Bank trust, ONLY assigning the Mortgage and not the Note, in another apparent feeble attempt to pledge the Mortgage into the trust, which is still CLOSED, nearly eight (8) years AFTER the fact.

(6) Further, the Motion for Default contains a fraudulent Affidavit of Service, to wit:

(a.) The document refers to Mr. Guerrero's "race" as "BRN" (meaning BROWN).  There is no such "race" as a "BROWN" race; and

(b.) The document is signed by Process Server #1279639 in New York, who served the Defendants with a defective Notice of Lis Pendens, unsigned by the Attorney for the Plaintiff.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE**
**REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Thus, in complete disregard for proper case filing, RA&S's counsel proceeded to effectuate process and continued to file documents in the case, including what it claimed was the original Note and Mortgage, despite the defective and apparently fraudulent and misrepresentative assignments, wherein if any specific party was subpoenaed to testify as to the facts contained on that document, would (as the Examiner believes) be able to attest to any of the said facts and any knowledge regarding any of the assignments proffered within the chain of title.   It is apparent that a Court would find multiple reasons to have dismissed this case, which appears to have "magically" been closed during its pendency.

**Based on the fact that the first Assignment of Mortgage was directed firmly at MERS, it makes an obvious and apparent statement that MERSCORP member employees executing these Assignments:**

>   **(1) did not have attorney supervision;**

>   **(2) may be liable for unauthorized practice of law; and**

>   **(3) violated MERS policies when MERS own dictates and mandates clearly say that MERS cannot own anything.  This complete disregard, which in turn brings false and misrepresentative information into the real property records, constitutes probable cause for violation of Florida Criminal Code § 817.535; Florida RICO violations for perjury; and for unauthorized practice of law, also a felony under Florida Statutes.**

Further, the apparent fraud on the Court with the misplacement of the ALLONGES, is suspect for perjury within the Complaint, wherein, in reliance on the recorded Assignments clearly involve RA&S and its counsel acting on behalf of the Plaintiff, equally liable for the same violations in the attempted deprivation of the homeowner's property.

**Case No. 115:** ***The Bank of New York Mellon FKA The Bank of New York as Successor Trustee for JPMorgan Chase Bank, N.A. as Trustee for Novastar Mortgage Funding Trust, Series 2006-3 Novastar Home Equity Loan Asset-Backed Certificates, Series 2006-3 v. Winston A. Chedda et al  (2013 CA 1436 MF)***

This case file appears to have been initiated on April 11, 2013 by Dane E. Leitner (FBN 91181) on behalf of the West Palm Beach, Florida law firm of Ward, Damon, Posner, Peterson & Bleau, P. L. ("Ward"; its apparent first entry into this forensic examination).  Leitner also appears to have filed a Notice of Lis Pendens and caused it to be recorded on 04-23-2013 as CFN#2013064256.

**368 of 412**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

There do not appear to be any recorded assignments involved in this case; however, there are forensic issues with the court case file that appear to warrant investigation for probable cause of Florida RICO violations and well as potential issues for fraud on the Court. The case was officially CLOSED on August 9, 2013.

**The multiple issues with this case are discussed below:**

**(1) The Verification of the Complaint was signed by alleged Ocwen Loan Servicing, LLC ("Ocwen") employee Shakiva Ruff, who purports within the document to be a Contract Management Coordinator for Ocwen, yet the Verification is not dated;**

**(2) The attorney's signature (if in fact that is the attorney's signature), is not dated;**

**(3) The sole endorsement underneath the Borrower's signature on Page 5 of 5 of the promissory note ("Note") has two signatures underneath it (David A. Pazgan, who purports to be a Senior Vice President; and Larry E. Barage, who purports to be a Vice President) of two persons claiming to be officers of the originating Lender. Underneath the "Pay to the order of:" portion of the endorsement, there appears to have been inserted a different type font face rubber stamp bearing the phrase, "JPMorgan Chase Bank, as Trustee*".  Below the endorsement, there is another phrase of rubber-stamped lettering that states, "JPMorgan Chase Bank, National Association as Trustee for the Novastar Home Equity Loan Asset-Bank Certificates, Series" and in handwriting next to the end of the stamp is written "2006-3";**

**(4) This endorsement stamp is suspect for specific manufacture because it does not match the named Plaintiff in this proceeding;**

**(5) Further, the endorsement stamp is undated; thus, there is no effective date of transfer known to anyone and no recorded Assignment of Mortgage to verify the actual transfer of the Note into the trust;**

**(6) None of the pages of the Note appear to have been "two-hole punched" as is customarily seen in promissory notes that have been archived;**

**(7) Following the Note Exhibit "A" is attached a two-hole punched "Assignment and Assumption Agreement" ("Agreement"), dated October 1, 2006, by and among Chase Manhattan Bank USA, N.A., JPMorgan Trust Company, N.A. and JPMorgan Chase Bank, N.A., each a wholly-owned subsidiary of JPM (which is not fully identified here) and the Bank of New York, a wholly-owned subsidiary of BNY (which is also not fully identified here);**

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(8)  The submitted copy, which is attached to this Exhibit, is barely legible; however, it does appear that the document refers to the "Governing Law" being based in "the State of New York", which appears to open up the New York venue for examination of all laws applicable to this transfer under Florida Rules of Evidence, including but not limited to, New York Estates, Powers & Trusts § 7-2.4;

(9) Whether unintentional or not, four (4) pages of undated signatures follow this Agreement, one signature per page; thus, this document also becomes suspect for manufacture because the pages contained herein are not numbered as are the pages of the actual Agreement itself, which make up three (3) pages;

(10) The Closing Date of this trust REMIC was June 29, 2006, yet the Agreement was not generated until October 1, 2006, which further fails to prove that all of the parties to the trust were established by the time the trust pool closed;

(11) If the attached Assignment and Assumption Agreement was not intended to have been viewed by the Court, it would not have been attached as part of Exhibit "A", which makes the entire pleading appear to be a sham pleading, because the indorsement stamp is misspelled as the Plaintiff did not issue "Asset-Bank Certificates", but rather "Asset-Backed Certificates".  Clearly, there was enough room on the 3-line stamp to put "Asset-Backed Certificates", but it becomes obvious here that someone was not paying attention to what they were doing during the manufacture process and whoever ordered it apparently didn't care whether the stamp matched the Plaintiff's official title;

(12) The Examiner does not believe that the party affixing the Stamp had actual knowledge of the transfer of the Note into the trust pool; otherwise, this person would not only have caught the "scrivener's error" in the rubber stamp, they would have corrected it;

(13) This also further appears to indicate that since there was handwriting wherein the "Series Number" could be affixed, that this stamp was intended to be applied to numerous Notes throughout the alleged securitization process;

(14) There are 65 Limited Power of Attorney ("LPOA") recorded instruments listed in the real property records of Osceola County, Florida, wherein the Bank of New York and/or the Bank of New York Mellon are Grantors of "attorney-in-fact" status to Ocwen Loan Servicing, LLC.   The applicable LPOA that specifically denotes the "attorney-in-fact" status, executed on May 21, 2012 by Gerard F. Facendola and Andrew M. Cooper before Tsilya Zabataya (New York Notary Commission # 01ZU6233191, which expires on 12-27-2014) lists this "trust vehicle as an "Asset-Backed" trust and not an "Asset-Bank" trust;

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**(15) The LPOA, attached as part of this case file, was first recorded in Palm Beach County, Florida as CFN#20120206842 on 05-24-2012, and then electronically recorded in the real property records of Osceola County, Florida on 11-29-2012 as CFN#2012177664, conveniently prior to the filing of this undated Complaint;**

**(16) The LPOA however, also claims that the mortgage loans in the alleged pool were "insured", which could be construed to mean that third-party payments may have been applied to this Borrower's loan balance upon any alleged default;**

**(17) Paragraphs 6 and 7 also specifically refer to recorded Assignments of the "related Mortgage Note", when in fact, there is no recorded Assignment of the Mortgage by Ocwen PRIOR TO the commencement of this proceeding;**

**(18) Since this document is based on an Assignment and Assumption Agreement that post-dates the Closing Date of the trust pool as well as the governing rules and regulations promulgated by the Pooling and Servicing Agreement ("PSA"), there is reason to believe that: (a.) the Borrower's loan may have suffered a "credit event", wherein third-party insurance proceeds paid all or part of any alleged loan balance; and (b.) the effective date of transfer, being unproven, appears to contravene New York Estates, Powers & Trusts § 7-2.4 and is thus void; and**

**(19) The recorded LPOA is only good for one (1) year from the date of execution, which was May 21, 2012, which would be construed to mean that during the pendency of this action, the LPOA expired and Ocwen no longer had any authority to act as the representative to carry out any of the wishes of Bank of New York Mellon as an "independent contractor", which further makes the undated Complaint appear to be more of an intended fraud on the Court by all of the parties named therein, to give the named Plaintiff Trustee standing to pursue a Complaint of Foreclosure.**

Thus, despite the Defendant counsel's Motion to Dismiss the Complaint, the Plaintiff did so voluntarily, which appears to be in conjunction with the fact that the Defendant in fact retained counsel to pursue discovery in this case, which could have revealed the preceding suspect issues.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 116:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the Holders of the Certificates, First Horizon Mortgage Pass-Through Certificates Series FHAMS 2005-AA9, by First Horizon Home Loans, a Division of Tennessee Bank, N.A., Master Servicer, in its Capacity as Agent for the Trustee under the Pooling and Servicing Agreement v. Adnan Mirza et al* **(2009 CA 0115 MF)**

**CASE NOTES: This case was originally styled as** *First Horizon Home Loans, a division of First Tennessee Bank, N.A., successor in interest by merger to First Horizon Home Loan Corporation v. Adnan Mirza et al* **(with the same case number).  This case presents the Examiner with multiple Notices of Lis Pendens and a change in Party Plaintiff, which appear to coincide with servicer-related manufactured assignments of mortgage.**

The original Complaint appears to have been initiated on January 6, 2009 and the pendency of the case ended shortly after the initial forensic examination concluded in Osceola County, Florida (July 25, 2014).  As of the issuance of this report, the Certificate of Title had not yet been issued.  This case ended up being protracted to the point where the Examiner believes that the Defendant consented to the Final Judgment of Foreclosure because of lack of funds or attorney knowledge/wherewithal to litigate this case.

Upon the filing of the Complaint, the initial Notice of Lis Pendens was caused to be recorded by Amy McGrotty (FBN 316938), who also appears to have filed the original Complaint.  It appears that McGrotty was representing her own professional association ("P.A.") at the time of filing.  The original Notice of Lis Pendens was recorded on 01-13-2009 as CFN#2009006386.  There do not appear to have been any recorded Assignments of Mortgage present in the real property records at the time this case was commenced.  Further, the original Complaint filed by McGrotty was self-authenticated (by the attorney) and not by the Plaintiff or the Plaintiff's representative.

Also at the time of the filing of the Original Complaint, the Defendants' caption did not include the former banking entity named in the final captioning of this case.  Further, there was no Note Allonge or endorsement present anywhere in the Original Complaint, which the Examiner believes did not (at that time) constitute "bearer paper".  The MERS-originated Mortgage was also attached as an Exhibit, which was executed in favor of First Horizon Home Loan Corporation.  The fact that MERS is involved automatically meant that the Note was going to be securitized and that this was not disclosed to the Borrower at the time of the loan transaction.

On May 27, 2009 another Notice of Filing occurred in the Court records, which appeared to have been generated by Amy McGrotty.  This filing contains matters of a suspicious nature, as the Note appears to have an additional page added into it that contains no two-hole punch markings as the other pages have, which the Examiner believes is suspect for document manufacturing.  The extra page contains an indorsement-in-blank from First Horizon Home Loan Corporation, allegedly signed by one "B. J. Cooley", who claims to be its Vice President.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The mere fact this document contains an endorsement that could have easily been placed onto the final page of the Note underneath the Borrower's signature but wasn't, constitutes suspect issues for fraud on the Court.  Still, there is no recorded Assignment of Mortgage at this point in the pendency of the case.

On June 23, 2010, Michelle Garcia Gilbert (FBN 549452) filed an Amended Notice of Lis Pendens on behalf of the Gilbert McGrotty Group, P.A. (in an apparent merger of the two persons) and caused it to be recorded by presentment on 06-29-2010 as CFN#2010093729.   On July 2, 2010, Gilbert filed an Amended Complaint. This time the Complaint was still self-authenticated and the Note was still unaffected by indorsement.  It appears that the original count to re-establish lost instruments was eliminated from the Amended Complaint.  Further, on July 7, 2010, Gilbert and McGrotty both appear to have had a hand in recording another Amended Notice of Lis Pendens as CFN#2010096968.

The next set of issues occurred with the following Assignments of Mortgage being recorded in the official property records of Osceola County, Florida, following each other in sequence:

**CFN#2012086208, recorded by presentment on 06-06-2012**
**Return To: Nationstar Mortgage LLC**
**c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683**
**Signor: Brady Niehaus (believed to be a Nationstar employee) claiming to be an Assistant Secretary of MERS as a standalone Assignor (using MERS's Flint, Michigan address to hide the real Assignor), in an attempt to assign only the Mortgage to First Horizon Home Loans in Irving, Texas as Assignee.**
**Notary: Keri Jonker (Texas Notary Commission Expired on 10-24-2012)**
**Witnesses: Sam Maurer, Judah Hargobook (?, second name illegible; also believed to be Nationstar employees and not employees of MERS)**

**CFN#2012094325, recorded by presentment on 06-22-2012**
**Return to: Alex Choi (Preparer) Nationstar Mortgage, LLC (350 Highland Drive, Lewisville, Texas 75067)**
**Signor: Michael Kelso (?; name illegible in both signature area and notarial execution; allegedly a Nationstar employee), claiming to be an Assistant Secretary of MERS as nominee for First Horizon Home Loan Corporation as Assignor (using MERS's office address of 1818 Library Street, Suite 300, Reston, Virginia 20190), attempting to assign ONLY the Mortgage (and not the Note) to First Horizon Home Loans, a division of First Tennessee Bank, N.A., successor in interest by merger to First Horizon Home Loan Corporation, as Assignee.**
**Notary: Brady James Niehaus (Texas Notary Commission expires on 09-01-2015; active)**
**Witnesses: Sam Maurer, Amber Oharani (both alleged Nationstar employees)**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**CFN#2012094325, recorded by presentment on 07-23-2012
Return to: Binot Chhetri (Preparer) Nationstar Mortgage, LLC (350 Highland Drive, Lewisville, Texas 75067)
Signor: Judah Hargabook (?; name illegible in both signature area and notarial execution; allegedly a Nationstar employee), claiming to be an Assistant Secretary of First Horizon Home Loans, a division of First Tennessee Bank, N.A., successor in interest by merger to First Horizon Home Loan Corporation, by Nationstar Mortgage LLC as its attorney-in-fact; attempting to assign ONLY the Mortgage (and not the Note) to First Horizon Home Loans, a division of First Tennessee Bank, N.A., successor in inters by merger to a CLOSED First Horizon 2005-AA9 REMIC trust, as Assignee.
Notary: Andrew Patrick Kane (Texas Notary Commission expires on 06-23-2015; active)
Witnesses: Vishni Desai, Matt Johnstone (both alleged Nationstar employees)
NOTE: This Assignment follows the previous Nationstar Assignment in the chain of title.**

The day following the final recorded assignment (July 24, 2012), Lisa N. Wysong (FBN 521671) filed a "Motion for Substitution of Party Plaintiff and Amend Case Style", to change the name to the current Plaintiff trust shown at the heading of this case review, which Judge Miller granted on July 25, 2102, despite the stacking of the Assignments of Mortgage and questionable positioning of the indorsement-in-blank with no document heading as mandated under U.C.C. 3-302(2).

On the previous day (July 24, 2012) the parties agreed to a Consent Final Judgment of Foreclosure, which Judge Robert J. Pleus, Jr. appears to have signed off on.  The property was ordered sold on Monday, December 1, 2014 and a Certificate of Sale and Certificate of Title are expected to be issued following the sale of the property.

Based on the fact that the Assignments and the suspect added page to the "Note" appear in short sequence, the Examiner believes that this was a coordinated effort among the parties involved in the proceeding, manufactured with the intent to deprive the homeowner of his property, despite the suspicion he may not have been in default at all (unknown to him) and thus, there is probable cause for violation of Florida Criminal Code § 817.535 and the Florida RICO statutes.

Because the employees of the servicer were probably NOT supervised by an attorney during the manufacture and execution of the Assignments, it is likely that unauthorized practice of law is also suspect.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

**Case No. 117:** *The Bank of New York Mellon F/K/A The Bank of New York, as Trustee for the
Certificateholders of the CWALT, Inc., Alternative Loan Trust 2006-OA6
Mortgage Pass-Through Certificates, Series 2006-OA6 v. Noemy Pantoja et al
(2010 CA 0369 MF)*

This case begins with the execution of a MERS-originated Mortgage and HELOC, both executed
by Aida L. Pinero (a single woman), who ended up passing away before the two Mortgages and
their respective Notes had been satisfied; thus, the initiation of this case by Sarah M. Barbaccia
(FBN 30043) on behalf of the Aldridge Connors, LLP law firm. Due to apparent investigative
work prior to the suit, the alleged lender and its counsel determined that the current listed Defen-
dant was the deceased's personal representative; thus, the apparent reason for her being listed as
such in the styling of this case. It further appears that Barbaccia also caused the Notice of Lis
Pendens to be filed on 04-29-2014 as CFN#2014058948. The Verified Complaint contains the
signature and identification of one "Cynthia Wallace" who claims to be Second Assistant Vice
President of Specialized Loan Servicing, LLC ("SLS"), its attorney-in-fact (for the trust
REMIC). Despite the fact that in Florida, loan servicers have been authorized to bring the suit
on behalf of the real party in interest, **there are multiple issues with this Complaint, to wit:**

> **(1) The case was filed April 17, 2014. There is no recorded Limited Power of
> Attorney ("LPOA") until October 23, 2014, when the first of a series of four (4)
> LPOA's virtually identical in content, were recorded in what appears to be an
> "overkill" by parties involved in the foreclosure proceeding, seeking to give SLS
> attorney-in-fact status to file foreclosure paperwork, to wit:**

>> **(a.) On 10-23-2014, it appears that Alexander P. Almazan, P.A. caused
>> the first LPOA to be recorded as CFN#2014157894, after having had
>> it previously recorded in Leon and Charlotte Counties in Florida,
>> respectively;**

>> **(b.) On 10-28-2014, it appears that Town Title & Trust LLC caused
>> the second LPOA to be recorded as CFN#2014160158, after having had
>> it previously recorded in Pasco County, Florida;**

>> **(c.) On 11-05-2014, it appears that an unidentified party caused
>> the third LPOA to be recorded as CFN#2014164061, after having had
>> it previously recorded in Broward and Pinellas Counties in Florida,
>> respectively; and**

>> **(d.) On 11-14-2014, it appears that an unidentified party caused
>> the fourth LPOA to be recorded as CFN#2014157894, after having had
>> it previously recorded in Miami-Dade County, Florida;**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) All of these documents, which appear to contain the trust REMIC's name on an attached "Schedule 1", are all marked "EXHIBIT D", which would lead the Examiner to believe that these LPOA's were specifically "manufactured" as an "Exhibit" in anticipation of it being entered as such into a court case filing to give SLS the appearance of having power to foreclose on Bank of New York Mellon's behalf.  There is a concern however with the filing of these documents, claiming the Trustee actually owns the Borrower's Note:**

**CFN#2011148300, electronically recorded on 10-24-2011**
**Document Prepared by: Aida Duenas (known Bank of America, N.A. employee and known robosigner)**
**Signers: Cynthia Santos and Jane Martorana (also known Bank of America, N.A. employees and known robosigners), claiming to be Assistant Secretaries of MERS as a standalone Assignor, attempting to convey BOTH the Mortgage and Note into the Plaintiff REMIC trust, which was already closed by then and could not accept it.**
**Notary: Barbara J. Gibbs (California Notary Commission # 1864186; expired; signed under penalty of perjury under California law)**
**Witnesses: Richard Paz, Bud Kamyabi (also known Bank of America, N.A. employees and known robosigners)**

> **(a.) The Closing Date of the REMIC trust was May 17, 2006. An Assignment of Mortgage affecting the Mortgage and Note was not recorded until over (5) years later;**

> **(b.) The foregoing Assignment utilizes a forbidden, alleged MERS address in Ocala, Florida in contradiction of MERS' own policies that this address was not to be used after December 10, 2006.  Still, Bank of America, N.A. employees appear to disregard this fact because they can, according to MERS's own policies and rules;**

> **(c.) MERS does not own the Note, therefore it cannot convey what it does not own; thus, the Assignment is suspect as a recording containing false and misrepresentative information to be relied upon by  Plaintiff's counsel for the purpose of depriving the homeowner of her property, probable cause for violation of Florida Criminal Code § 817.535; and**

> **(d.) Because this Assignment was electronically recorded, probable cause also exists for violation of 18 USC 1343 (wire fraud);**

**(3) The Second Mortgage (HELOC) loan was also assigned by a different group of Bank of America, N.A. alleged robosigners:**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

CFN#2012065899, electronically recorded on 05-02-2012
Document Prepared by: Unknown employee of Bank of America, N.A.
Signers: Juan Soto and Ebony Clayborn (alleged Bank of America, N.A. employees), claiming to be Assistant Secretaries of MERS as a standalone Assignor, attempting to convey BOTH the Mortgage and Note into the Defendant REMIC trust, which was already closed by then and could not accept it.  The Closing Date of the REMIC was March 30, 2006.
Notary: Emmanuel Oluwole Adetula (California Notary Commission #1831707; expired; signed under penalty of perjury under California law)
Witnesses: Lance Cohen, Aaron Hawkes (also alleged Bank of America, N.A. employees)

(a.) The foregoing Assignment utilizes a misrepresentative MERS address in Danville, Illinois which actually belongs to Metro Detective Agency;

(b.) Specific language from this trust REMIC's own pooling and servicing agreement ("PSA") states: For each of these mortgage loans, MERS® serves as a mortgagee of record on the mortgage solely as a nominee in an administrative capacity on behalf of the owner trustee, and does not have any interest in that mortgage loan; thus,

(c.) Since MERS does not have an interest in the Note, it cannot convey what it does not own; thus, the Assignment is suspect as a recording containing false and misrepresentative information to be relied upon by Defendant's counsel (Amina M. McNeil; FBN 67239), from the Gladstone Law Group, P.A., who on September 9, 2014, filed a Motion claiming an interest in the property and further asking that any surplus funds (after sale) be awarded to said REMIC trust;

(d.) It is also highly likely that due to the nature of the way REMIC trusts operate, this loan may have been paid in whole or in part due to third-party payments (insurance, credit default swap payments, etc.), and would thus appear to contain false and misrepresentative information, relied upon by Defendant REMIC trust's counsel  for the purpose of depriving the homeowner of her property, probable cause for violation of Florida Criminal Code § 817.535; and

(e.) Because this Assignment was electronically recorded, probable cause also exists for violation of 18 USC 1343 (wire fraud); and

(4) Because all of these parties appear to be acting in concert with one another in an apparent attempt to defraud the homeowner, probable cause also exists for violation of Florida RICO statutes;

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(5) Due to the fact that both of these Assignments were executed under penalty of perjury, likely without attorney supervision, probable cause also exists for unauthorized practice of law involving the drafting of, execution of and recordation of both of these Assignments of Mortgage;**

**(6) The originating lender of both of these loans withdrew its right to do business in the State of Florida on June 12, 2012.  Up until that time, it could have generated BOTH of the foregoing Assignments of Mortgage; and**

**(7) The Note attached an Exhibit to the Complaint is suspect for document manufacturing, as it does not comport to U. C. C. 3-302(2) as there is ample room for multiple endorsements under the Borrower's signature, which makes this case suspect for fraud on the Court.**

There does not appear to have been any activity in the case past November 19, 2014 (Status Hearing). It is the Examiner's belief that if this case is allowed to continue, given the recording of the series of "Exhibit D" style LPOA's and the two alleged false and misrepresentative Assignments of Mortgage (and Note) by Bank of America employees, the Court will likely ignore all of these issues and issue a Final Summary Judgment for Foreclosure on behalf of the REMIC.

It further appears that prior to commencement of this case, Westgate Town Center Owners Association, Inc. recorded an Assignment of Bid on 2013088344 on 06-04-2013, as the apparent result of a foreclosure sale of what appears to be an attached Exhibit "A" for the property involved in this proceeding.  This foreclosure appears to be unrelated to the case at bar.

**Case No. 118:** *Lehman Brothers Bank, FSB v. Robert V. Chapman et al*  **(2009 CA 6287 MF)**

This rather protracted case dates back to June 5, 2009 and continued up until February 12, 2014, when an actual Assignment of Mortgage was filed under questionable circumstances (preceded by a Limited Power of Attorney, "LPOA" recordation as explained below) and thus raises suspect concerns since it appears to have been coordinated through Orion Financial Group, Inc., a known third-party document manufacturing plant out of Southlake, Texas.

The case begins with the execution of a Note and Mortgage in favor of Wells Fargo Bank, N.A., which was referenced in the Complaint as CFN#2006003755, recorded on 01-05-2006. The original Mortgage does not appear to have anything to do with MERS.  From indications within the original "Mortgage Foreclosure Complaint", a Loan Modification Agreement was attached as an Exhibit that was recorded as CFN#2008157790 on 10-01-2008, which then-Florida Default Law Group ("FDLG") has alleged the Defendants are in default on.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

The Complaint however, does appear to have a "Count II - RE-ESTABLISHMENT OF NOTE" contained within it, apparently self-verified by FDLG attorney Jacqueline F. Kuyk (FBN 52730; who also recorded a Notice of Lis Pendens on 06-09-2009 as CFN#2009089298), asserts that the "Plaintiff does not presently have a copy of the Note", yet it appears that a 4-page Note was attached to the Complaint, contradicting the language contained within the pleading. The Note is unendorsed and does not appears to have been transferred to any other party, which would indicate that Wells Fargo Bank, N.A. should be the Plaintiff here and NOT Lehman Brothers Bank, FSB. From indications within the court case file, it appears that Wells Fargo Bank, N.A. may have originated this Mortgage but that it is now servicing the Note for Lehman Brothers Bank, FSB.

Further, on September 16, 2010, it appears that Kuyk filed a Notice of Voluntary Dismissal of Count II of the Complaint (Docket #28); followed by a "Notice of Filing" (Docket #29) which appears to contain a copy of the lost Note. This copy is maintained to be the original (absent forensic testing of the paper and application of an indorsement-in-blank stamp from Wells Fargo Bank, N.A., which appears to have been "expanded" to fill the page, portrayed as if this were the "original" and not a computer-manipulated copy of the Note, rubber-stamp signed by Joan M. Mills, who claims to be Vice President of Wells Fargo Bank, N.A. On September 13, 2011, Judge Miller issued a Final Summary Judgment of Foreclosure, which was filed for record on 09-23-2011 as CFN#2011133582 and set a sale date for January 5, 2012. While this case appears to have seemingly been outside of the "target period" of this examination, a subsequent Assignment of Mortgage (discussed below) was filed, preceded by an "all-too-convenient" Limited Power of Attorney ("LPOA").

The pendency of the case continued to November 6, 2012, when Judge Pleus issued an Order dismissing the case without prejudice (Docket #63 and #65, in its recorded version) was filed for record as CFN#2012176078 on 11-28-2012, which is now within the target range of this examination. There was no apparent rationale provided by the Court as to why the case was dismissed, other than the possibility that there was no recorded evidence that the Mortgage had transferred with the Note, which in the form presented to the Court, was undated; thus, not able to prove date of effective transfer of the Note. The Examiner's attention now focuses on the set of documents filed for record in 2014, to wit:

**CFN#2014020352, recorded by presentment on 02-12-2014**
**NOTE: The document preparer is unknown; however, it appears that Orion Financial Group, Inc. of Southlake, Texas may have directed its manufacture as the document was returned to it after it was first recorded in Miami-Dade County, Florida and then in Osceola County, Florida's real property records.**
**Signer: Sally Nancoz, who claims to be an "Authorized Signatory" for Lehman Brothers Holdings, Inc. (which was NOT the Plaintiff in this case), giving Little AJAX, LLC as "Purchaser", in connection with a "Mortgage Loan Sale and Warranties Agreement" (not attached), as of September 13, 2013, showing an attached "Schedule 1" of loans purchased.**

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

Notary: Lauren M. Oliver (New York Notary Commission No. 01OL6270735; commission active until 10-22-2016)
Witnesses: John Griffin, Michelle Rosolinsky
There are multiple issues with this Limited Power of Attorney ("LPOA"), to wit:

> (1) It is dated September 6, 2013 (execution date), while it references a point in time in the future (September 13, 2013; the actual date of transfer), in an apparent attempt to give credence to the Assignment of Mortgage being filed in sequence with this document, which is marked "RECORD FIRST", put there by someone for the purposes of "legitimacy" to effectuate an Assignment;

> (2) It is not understood WHY Lehman Brothers Holdings, Inc. could sell something to Little AJAX LLC and then grant it power of attorney to do something, when Little AJAX LLC actually purchased the loans.  Why then would a power of attorney be necessary at all other than to reasonably conduct due diligence prior to the sale taking place?

> (3) It would appear that any due diligence required on Little AJAX LLC's part would not require a Limited Power of Attorney if it actually owned the loans claimed to be sold to it by Lehman Brothers Holdings, Inc. (who did not attach proof of ownership, which still hangs in the balance in this transaction);

> (4) Lehman Brothers Bank, FSB was the Plaintiff in this case, which lends suspicion regarding this set of recorded transactions, claiming that Lehman Brothers Holdings, Inc. (which is NOT the same entity as Lehman Brothers Bank, FSB, which filed for bankruptcy September 15, 2008; its North American banking entities and its New York headquarters were purchased by Barclays [England]), could even be a Plaintiff in this instance if Lehman Brothers Holdings, Inc. actually owned the Note, which is included in Schedule 1 of the attached Exhibit to the recorded document; and

> (5) Further, the way the LPOA was put together with the notarial execution on an entirely separate page lends suspicion that this "Page 3" could have been randomly placed on multiple LPOA's issued by this entity, NOT specific to this transaction, as it shows a "blank line" where the number "6" was written.  It is possible that multiple transactions occurred involving this same "Page 3", which was simply copied and attached to whatever applicable transaction was to be processed.

The LPOA only appears to give those directly involved within Little AJAX LLC and no other listed entities, the right to conduct any business on behalf of Lehman Brothers Holdings, LLC; this LPOA expired six months AFTER it was issued, as there is no evidence it was refiled regarding the following document:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

CFN#2014020353, recorded by presentment on 02-12-2014 (in succession with the previous document). This document was prepared by M. E. Wileman of Orion Financial Group, Inc. (a known third-party document mill in Texas), to be signed by entities in Washington County, Oregon (where Seterus, Inc. and other corporate entities are located (Beaverton)). Signer: Irving Potter, who claims to be an Authorized Agent for Gregory Funding, LLC, as Manager, executing an Assignment of Mortgage on January 28, 2014 from Lehman Brothers Holdings, Inc. (NOT the Plaintiff here), to U. S. Bank, N.A. as Trustee for a AJAX Mortgage Loan Trust 2013-C REMIC (apparently a privately-registered entity; 144 or 144-A trust vehicle), whose Closing Date cannot be identified; however, it is suspect that the Closing Date was in 2013 and that the trust (unless otherwise proven, which is not the case here) could not have accepted this Assignment without violating its own Pooling and Servicing Agreement ("PSA"), which would contravene New York trust law and would be void. Notary: Kathie A. Garcia (Oregon Notary Commission No. 922707; active until 11-26-2017) Witnesses: Ivy Draughon, Dan Izoita
There are multiple issues with this recorded Assignment, to wit:

(1) If Lehman Brothers Holdings, Inc. actually owned the Note, then Lehman Brothers Bank, FSB (with no recorded proof prior to commencing a foreclosure) could not have been the real party in interest in the proceeding, which at best, would be fraud on the Court due to the misrepresentations of Plaintiff's counsel;

(2) Little AJAX LLC, claims to be an Attorney-in-Fact for Lehman Brothers Holdings, Inc., which is why the document was signed in Washington County, Oregon and not in New York, where Lehman Brothers Holdings, Inc. may be;

(3) The problem here is, "Who is Gregory Funding LLC?" There is no mention of their right to sign any document as purported in the LPOA, where this entity is NOT mentioned;

(4) What is Little AJAX LLC doing purchasing and placing allegedly defaulted loans into a trust vehicle, despite any case activity indicating that a loan modification agreement had taken place, using an entity that was not named in the Limited Power of Attorney? and

(5) There is no recorded LPOA from Little AJAX LLC to Gregory Funding, LLC (in the real property records of Osceola County, Florida) giving Gregory Funding LLC the right to transact any business on Little AJAX's behalf, indicating that Gregory Funding LLC may be the servicer of this loan. Again, since the case was apparently closed, should a future claimed default occur, this set of documents becomes suspect for: (a.) potentially clouding the homeowner's chain of title; and (b.) becomes an issue of probable cause for violation of Florida Criminal Code § 817.535 and Florida RICO statutes.

# COMPREHENSIVE FORENSIC EXAMINATION OF THE
# REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

At best, this case presents itself as offering probable cause for suspect document manufacture to indicate alleged fraud on the Court by Plaintiff's counsel by perjury.  Second, the documents that were manufactured under the direction of Orion Financial Group, Inc. were highly likely not attorney supervised, which would then constitute probable cause for unauthorized practice of law. Until this entity attempts another foreclosure, would the § 817.535 and RICO claims be statutorily viable.

**Case No. 119:** *Pontus Investment Portfolio I, LLC, v. Martin Hernandez et al* **(2012 CA 2610 MF)**

**CASE NOTES: There is a non-jury trial scheduled in this case for January 28, 2015 (this case is still OPEN). Both complete sets of documents from the Osceola County real property records and the circuit court files of Osceola County were reviewed as part of this report. There were multiple suspect assignments filed as part of this case, which appear to have been relied on by counsel in attempting to establish standing on the part of the Plaintiff.**

This case is highly irregular in that the attorneys (and their non-attorney subordinates) who appear to have NOT paid attention to the location of the subject property they are trying to foreclose on did in fact INITIALLY FILED SUIT IN THE WRONG COUNTY. This clearly indicates to the Examiner herein that Dumas & McPhail, LLC did NOT supervise their paralegal staff, who the Examiner believes actually prepared the Complaint.  This in of itself should have been reason enough to sanction this law firm for its blatant mistake, as the Mortgage clearly (on Page 1) notes the physical location of the subject property, along with the Clerk's file stamp, as having been recorded in Osceola County, Florida.  The filing also lends credence to the Examiner's belief that if this blatant error occurred, then the entire file merits suspect attention for other issues, as discussed below.

The initial Notice of Lis Pendens appears to have been filed in Orange County, Florida on December 20, 2011 by Kent D. McPhail (FBN 852767) of Dumas & McPhail, LLC, showing Case No. 2011 CA 17197 (Orange County, Florida).  It further appears that all of the Orange County documents were later assigned the current case file after it was discovered that the Plaintiff's counsel filed the case in the wrong county.  Aside from the alleged document abuses discussed in Section One of this Report, this would be the first foreclosure case misfiled in the wrong county shown in this Report.   The Assignment of Mortgage discussed herein also showed "Osceola County" stamped on it in the upper, right-hand corner of the page.  It is disconcerting at best to even speculate how a law firm, allegedly supervised by attorneys, could conduct its business in this fashion and allow its paralegal staff to apparently run amok of the system and abuse process in this fashion, not to mention the Court's valuable time and resources in processing a case that clearly did not belong in Orange County, Florida.  Clearly, this case did not merit claims of "excusable neglect" considering the fact the law firm relied on Osceola County Assignments.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**EXAMINER'S NOTES:** Prior to the discussion of the recorded Assignments, it should also be noted that, in conjunction with the misfiled case in Orange County, Florida, that there is no recorded Notice of Lis Pendens in Osceola County, Florida; thus, it appears that the Plaintiff is proceeding and has created over a 2-year case pendency without properly noticing all interested claimants.  The Examiner herein deems the case is facially defective because constructive notice has not been provided to all concerned parties regarding the foreclosure action taken and that this proceeding is, for all intents and purposes, unperfected.

**CFN#2010189951, first recorded by presentment on 12-20-2010**
**Document Prepared by:** Teri Augustine (appears to be an employee of Optimal Asset Management LLC), which is not listed in full on this document. This information appears to be misrepresentative in that it includes a "Deal Name: P&C Loans; Loan #1137), which is not the Plaintiff in this action.
**Signer:** Nicholas L. Press, who claims to be a "Managing Member" for Clark Partners, LLC, as Assignor, attempting to assign BOTH the Mortgage and Note to the Plaintiff, naming Household Finance Corporation III as the "Original Lender".
**Notary:** Michelle D. Tice (California Notary Commission # 1872328; commission expired on 11-26-2013)
**Witnesses:** Linda R. DeLong, Sharon K. Siron
There are multiple issues with this Assignment, to wit:

> (1) On the first page of this assignment there is a rubber stamp marking that says "RECORD 1st".  This would then be construed to mean that something was to be "Recorded 2nd" (meaning the following Assignment), which was not the case here. In fact, it appears the recordings were mismarked with the rubber stamp, as the following Assignment (CFN#2010189952) should have been recorded before this Assignment was recorded;

> (2) To correct the "mistake" with this Assignment of Mortgage, it was then re-recorded as CFN#2011141611 on 10-11-2011 in an apparent attempt to "correct" the mistake, without attributing the Assignment as being "corrective";

> (3) As a result of the misfiling, there is now a suspect issue with the documents as to their relevant manufacturing in an attempt to create standing, as the original Note and Mortgage appear to have been created on 10-09-2006; and

> (4) Thus it would appear that these Assignments of Mortgages were created with the sole purpose to create the illusion (when compared with the proffered Complaint) for the Court that they were the legal owner and holder of the Borrower's Note and Mortgage vested with the rights to foreclose on the Property.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**CFN#2010189952, recorded by presentment on 12-20-2010**
**Document Prepared by: Teri Augustine (appears to be an employee of Optimal Asset Management LLC), which is not listed in full on this document. This information appears to be misrepresentative in that it includes a "Deal Name: P&C Loans; Loan #1137), which is not the Plaintiff in this action.**
**Signer: M. R. Gold, who claims to be BOTH "Vice President" AND "Assistant Secretary" (as if one title wasn't enough) for the Original Lender, Household Finance Corporation III, as Assignor, attempting to assign BOTH the Mortgage and Note to the Plaintiff, naming Clark Partners, LLC as the Assignee.**
**Notary: Alfred J. Marsh (Virginia Notary Commission # 274373; commission expired on 05-31-2011)**
**Witnesses: Charnell Evans, Sheryl Yao**

**There are multiple issues with this Assignment, to wit:**

**(1) On the first page of this assignment there is a rubber stamp marking that says "Record 2nd". This would then be construed to mean that something was to be "RECORDED 1st" (meaning the preceding Assignment), which was not the case here. In fact, it appears the recordings were mismarked with the rubber stamp, as the preceding Assignment (CFN#2010189951) should have been recorded AFTER this Assignment was recorded;**

**(2) To correct the "mistake" with this Assignment of Mortgage, it was then re-recorded as CFN#2011141611 on 10-11-2011 in an apparent attempt to "correct" the mistake, without attributing the Assignment as being "corrective";**

**(3) As a result of the misfiling, there is now a suspect issue with the documents as to their relevant manufacturing in an attempt to create standing, as the original Note and Mortgage appear to have been created on 10-09-2006; and**

**(4) The alleged signature of "M. R. Gold" does not appear to be that of the real signer; thus, the Examiner recommends this individual's handwriting samples be taken and analyzed (compared) with the original recorded signature of this individual;**

**(5) The Florida Department of State's Corporations Section lists the address of the Assignor as "26525 N. Riverwoods Blvd., Mettawa, IL 60045", with its Registered Agent shown as CT Corporation System in Plantation, FL. There is no listing of the noted address within the Assignment (Orlando, FL address); and**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(6) The corporation's Florida address is in Orlando, yet M.R. Gold is allegedly in the Commonwealth of Virginia.  The Assignor's business registration in Florida is still showing ACTIVE, originating in Delaware; thus, "M. R. Gold", who is NOT listed among the officers with the Florida Secretary of State, would then have to prove which "officer" he is because this Assignment is not self-authenticating, especially considering that it was prepared by someone in Novato, California that appears to be a document manufacturer that also prepared the other Assignment filed out of sequence in this set of recorded assignments.

It further appears that the alleged Plaintiff's counsel relied on the re-recorded Assignment of Mortgage as (CFN#2011141611) in its attempt to foreclose on the subject property.  M. R. Gold may also be a robosigner (not the actual M. R. Gold) which may also purport surrogate signing in this instance.  Nicholas L. Press may also be misrepresenting his real authority in the proffered Assignment relied upon by the Plaintiff.

The most damaging issues presented here as a result of the misfiled recording of these Assignments is the dates that they were executed, to wit:

(1) The first Assignment, which should have been recorded second in sequence but wasn't, was executed on November 19, 2010, but backdated to be effective on August 18, 2010;

(2) The second Assignment, which should have been recorded first in sequence but wasn't, was executed on November 17, 2010, but backdated to be effective on September 16, 2010.

Even if the second Assignment were properly recorded, constructive notice would have caused the backdating of the Assignments to become suspect, not only because the backdating of any Assignment to "be effective as of" makes the Assignment suspect for document manufacturing, but also creates suspect issues as to the actual effective date of transfer of the Note (as the actual NOTE was not placed within the original Complaint).

Further, the fact that BOTH of the notarial executions were placed on a separate page when there clearly was enough room to generate the executions on the first page is a marker of document manufacturing, which the Examiner construes to mean that the notary did not actually witness the physical signature of the signor to the document.

Thus, there appear to be multiple issues of false and misrepresentative statements contained in these recorded documents which create probable cause for violations of Florida Criminal Code § 817.535 and Florida RICO statutes involving the suspect manufacture of these almost identical third-party document mill recordings.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Further, there are multiple issues within the Complaint itself, to wit:

(1) The Complaint implies that the Defendants executed a Note and Mortgage on August 25, 2005, when in fact, the Exhibits (A & B) both state otherwise;

(2) Exhibit "A" is not even the Note but a Truth-in-Lending Disclosure, which does not prove the right of anyone to enforce any foreclosure, based on the first glance at this document;

(3) The Plaintiff's Ex-Parte Motion for Leave to file an Amended Complaint and Amended Notice of Lis Pendens appears to have been granted by the Judge Pleus on January 3, 2013; however, there was no original Notice of Lis Pendens filed with the Circuit Court of Osceola County, Florida (ONLY Orange County, FL); thus, the Motion to ask the Court to file an Amended Notice of Lis Pendens appears improper. There was never a Notice of Lis Pendens recorded with the real property records in Osceola County, Florida since the transfer of the case two years earlier;

(4) The Notice of Filing of the Original Note (with the Court) on January 22, 2013 did NOT contain the original NOTE, as proffered, but only the Mortgage and the two Assignments that it appears Plaintiff's counsel is attempting to intimate are valid;

(5) The Original Complaint contains an FDCPA-related Notice, proffered as Exhibit "D", which is NOT the law firm that is pursuing foreclosure in the case at bar; thus, there is no explanation as to its inclusion in the Amended Complaint if Dumas & McPhail did not notice the Defendants of their representation of the Plaintiff;

(6) Plaintiff's Exhibit "A" in the Amended Complaint still does not appear to be a signed promissory Note, but rather a "Loan Agreement" containing Truth-in-Lending Disclosures, more of a Financing Statement and not the original Note, which leads the Examiner to believe that Plaintiff's counsel (or its paralegal staff) cannot ascertain the difference between a Truth-in-Lending Disclosure and a promissory Note;

(7) The signer of the Assignment (CFN#2011141611) is Nicholas L. Press, who claims to be Managing Member of Clark Partners, LLC.  The signer of the Verification is Michael Press, who claims to be Managing Member of Pontus RMO Advisors, LLC, which is NOT the Plaintiff, Pontus Investment Portfolio I, LLC.  These are clearly two differently-named LLC's; thus, the real "Managing Member" signing for the Plaintiff is not truly representing the Plaintiff, which further adds suspicion to the filing of this Complaint; and

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(8) There are additional suspect issues with this case, to wit:**

**(a.) In the Plaintiff's response to Defendant's Affirmative Defenses, an Exhibit "E" is attached, which claims to be a "Corrective Assignment of Mortgage" with "RECORD 2ND" on it;**

**(b.) The document appears to have been manufactured by the same company that manufactured the first two assignments that were botched in the recording process, yet this Assignment, which clearly states the location of the property as being in Kissimmee, Osceola County, Florida, was in fact recorded in Charlotte County, Florida as CFN#2229040; thus, not only was the recordation improper, there is no constructive notice in Osceola County, Florida regarding this Assignment, which as submitted, appears facially defective;**

**(c.) Because Plaintiff's counsel was engaged by the Plaintiff during the pendency of these proceedings, the Examiner believes this Assignment was filed under the direction of the Plaintiff's law firm, who still appears to fail to ascertain what County in Florida they are litigating in;**

**(d.) The previous "EXHIBIT D", which is the Florida Foreclosure Attorneys, PLLC January 19, 2011 FDCPA Notice to the Defendants still appears to fail because Florida Foreclosure Attorneys, PLLC is not representing the Plaintiff in this litigation; and**

**(e.) The Affidavit submitted as Exhibit "G" fails because there is no recorded Limited Power of Attorney filed in the real property records of Osceola County, Florida giving Pontus Capital, LLC the right to file an Affidavit in Support of Plaintiff's Standing, which appears to the Examiner to be another fatally flawed attempt to "manufacture standing" to foreclose.**

**On May 7, 2014, Judge Pleus denied the Plaintiff's Motion for Summary Final Judgment of Foreclosure without prejudice.  On June 27, 2014, Plaintiff's Counsel (who to this date still has NOT filed a Notice of Lis Pendens in this case), filed an Affidavit that appears to have been manufactured by Florida Foreclosure Attorneys, PLLC's ("FFA") Melody Maxwell, who claims to be an Operations Director for that firm, who claims to have personal knowledge of the FFA's business records.**

**This Affidavit contains all of the particular "markers" of previously-noted Affidavits that appear to prove nothing as far as this affiant having any knowledge because of the vagueness and ambiguity with which the document was drafted:**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) In Paragraph 2, the term "on or around January 19, 2011" and the use of a former attorney's name (who should have been the party claiming to be the affiant herein), Brian Klingel, would thus represent hearsay information because Maxwell is NOT the attorney; and

(2) Maxwell relies on business records and files that she did NOT personally create or have anything to do with the creation and filing of; thus, her knowledge again relies on the hearsay information of others.

This Affidavit was acknowledged by Douglas Greer (Florida Notary Commission No. EE 137236, which is still active until 12-23-2015), in Pinellas County, Florida, who is only attesting to the Affiant's signature but not to the knowledge possessed by the Affiant as to whether the statements are true or simply hearsay.   The fact remains however, that this Affidavit appears to have been drafted at the request of Plaintiff's counsel with the intent to continue its apparent charade on the Court to prove standing.   Still, no original Note has been tendered for review.

Further, based on the issues surrounding the filings since the inception of the case, there are clear concerns regarding the violations of Florida Bar Rules regarding attorney supervision of non-lawyers and paralegals who are producing work product, which appears to be seriously lacking in this case.

Case No. 120: *Wells Fargo Bank, N.A. v. Grizel Bidot et al* (2012 CA 4505 MF)

This litigation began with the filing of a Complaint that was allegedly verified by a "Vice President of Loan Documentation" for Wells Fargo Bank, N.A.  However, because the Principal Address listed on the declaration does not comport with the listed address registered with the Florida Department of State, Division of Corporations (420 Montgomery Street, San Francisco, CA 94163), but instead shows an old World Savings address in San Antonio, Texas (that was converted to a Wells Fargo address in 2009, the personal knowledge of any of the declarant's facts are at best questionable.   Further research showed that a REMIC was the alleged real party in interest.   That too, is highly questionable.

R. Xavier Celestin (FBN 61109) of the Aldridge Connors, LLP law firm filed the Complaint with the Court on September 28, 2012, along with the Notice of Lis Pendens, which appears to have been filed as CFN#2012141570 on 10-01-2012.  It further appears that on February 20, 2013, the Defendant's attorney filed a Suggestion of Bankruptcy and on or about April 17, 2014, the Court issued an Order of Stay and instructed the Clerk to close the file. The Debtor was granted a Chapter 7 discharge on May 31, 2013 by the Bankruptcy Court of the Middle District of Florida. Judge Pleus granted a Motion to re-open the case on October 2, 2014.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**The Examiner finds multiple issues with the Complaint, to wit:**

**(1) The Mortgage and Note were purportedly executed on 03-16-2004 and filed for record as CFN#2004063230 on 04-01-2004, in favor of World Savings Bank, FSB;**

**(2) There are no recorded Assignments of Mortgage supporting this foreclosure action. On or about October 2006, Wachovia Corporation, including Wachovia Bank and Wachovia Home Mortgage, acquired Golden West Financial Corporation, including World Savings Bank, FSB. However no records of the exact assets included in the acquisition were published; therefore, Wells Fargo Bank, N.A. successors by merger to Wells Fargo Bank Southwest, N.A. F/K/A Wachovia Mortgage, FSB F/K/A World savings Bank, FSB should have been validated prior to filing this Complaint, as Wells Fargo Bank, N.A., N.A. could not have acquired what Wachovia Corporation F/K/A World Savings Bank, FSB did not own;**

**(3) Page 6 of 6 of the proffered Note within the Complaint contains no dated indorsements-in-blank; thus, the Examiner deems the Note to be insufficient as to effective date of transfer to the alleged Plaintiff;**

**(4) According to a Notice filed by the Defendant to the Court on 10-24-2012, the Defendant appears to claim that (based on unknown information sources) "the Seller, Wells Fargo Assets Security Corporation sold the loan to the Issuing Entity, Wells Fargo Mortgage Backed Securities 2004-K Trust"; further claiming that the Plaintiff "is acting as a servicer of the note and has no legal standing", of which there appears to be no attached documentation to support his statements; thus, the Examiner believes that there may be some outside communication received by the Defendant to indicate that such a claimant in interest exists, yet again, this is unverified; and**

**(5) Further, It is likely that only the residential mortgage rights (the right to collect payments on Borrower's loan) were included in the World Savings acquisition by Wachovia and then in the subsequent Wachovia merger with Wells Fargo. The records of the specific Mortgages and Notes included in the acquisitions and mergers have not been made public. Wells Fargo Bank, N.A. could not have acquired what Wachovia Corporation F/K/A World Savings Bank, FSB no longer owned; thus, the statements made in the Verification by Crystal Trevino would constitute probable cause for perjury, in violation of the Florida RICO statutes, acting in concert with the law firm to appear to have "manufactured" standing.**

**As to the civil aspects of this case, it further appears the Defendant's title is clouded by the claims of the alleged current Plaintiff in the case at bar (alleged slander of title).**

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**Case No. 121:** *Citimortgage, Inc., as Successor by Merger to ABN AMRO Mortgage Group, Inc. v. Juanita M. Briceno et al (2011 CA 3658 MF)*

This case appears to have been initiated by Consuegra law firm attorney Jennifer A. Garner (FBN 89040) on 10-19-2011, who also recorded the Notice of Lis Pendens on 10-27-2011 as CFN#2011150164.  There appears to be several defendants involved in the case, including the Internal Revenue Service, the State of Florida (regarding criminal penalties involving the homeowner; it appears that personal identifying information was attached to this Complaint and exposed in the public record [fingerprints]) and Osceola County, Florida (regarding a property tax lien). It further appears that the verification was signed by Howard Kaid III (who claims to be a "Document Control Officer"); however, Kaid does not indicate WHO he is employed by, thus, it is unknown whether Kaid is employed by the Plaintiff.

It further appears that a Note and Mortgage was executed in favor of Monticello Bank on 09-12-2002 and the Mortgage was recorded on 10-03-2002 as CFN#2002166750.  On the Note attached to the Complaint, there appears to be an restrictive endorsement dated the same day as the execution of the Note in favor of ABN AMRO Mortgage Group, Inc., signed by Monticello Bank's Linda Z. Bowen, which appears to make Monticello Bank a table-funded lender and not the lender actually issuing the funds.  There appears to be a second indorsement-in-blank signed by Margaret A. Bezy (who claims to be Vice President of ABN AMRO Mortgage Group, Inc.), which is undated; thus, the effective date of transfer is unknown.  There appears to have been an Assignment of Mortgage recorded in succession to the recordation of the Mortgage, to wit:

CFN#2002166751, recorded by presentment on 10-03-2002
Document Prepared by: Mortgage 2000, Inc. (1400 Oak St., Suite C, Kissimmee, FL 34741)
Signer: Linda Z. Bowen (who is the same signer as on the indorsement), signing as Vice President of Monticello Bank.
Notary: Leesa A. Billotte (Georgia Notary Public Commission expired 12-08-2008)
Witnesses: Megan D. Thompson
Issues: It does not appear that the signature on the Assignment matches the signature on the restrictive endorsement on the Note.  Surrogate signing is suspect.

The Fair Debt Collection Practices Act notice appears to be a custom, fill-in-the-blank template form from the Consuegra law firm that is attached as a standard "Exhibit X". There is no dated evidence to indicate that this form was served on the Defendant homeowner. The foregoing Assignment appears to be the only assignment of record in this case.  It further appears that Nathan A. Kelvy (FBN 96815) also assisted in document preparation in this case.  On December 5, 2012, it appears that the Plaintiff's representative submitted an Affidavit, which there are issues with, to wit:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(1) There is nothing in the document that purports to demonstrate HOW the Plaintiff acquired the Note and Mortgage, despite the presence of "bearer paper";**

**(2) The Affiant appears to rely on the records created by others and likely has no personal knowledge of any of the facts she is attesting to; thus, the Affiant more than likely could not verify (if examined) the amounts she claims are due and owing and specifically how those fees accrued;**

**(3) There is no specific evidence as to when the Borrower was notified of the authority of the Plaintiff to accelerate the Note which comports to Paragraph 22 of the Mortgage;**

**(4) There does not appear to be any evidence of third-party payments applied to the loan from default sources such as credit default swaps and other insurance payments; and**

**(5) It only appears that the first five (5) pages of the 10 pages contained within the recorded Mortgage have been attached to this Affidavit (incomplete exhibit).**

It appears that Judge Miller signed a Final Summary Judgment of Foreclosure on 02-28-2013.   The Consuegra attorneys participating in this scenario appear to include Brenda Jean (FBN 89812); Allison D. Thompson (FBN 36981); Pavithra Raj (FBN 93091); Garner and Kelvy, supra; Francisco Colon, Jr. (FBN 381098); Josh D. Donnelly (FBN 64788); Aaron W. Saoud (FBN 96124); Peter G. Fowler (FBN 723908); Danielle M. Glenn (FBN 109466); and Benjamin A. Ewing (FBN 72678).   It further appears that the Defendant retained counsel, post-judgment and that there was an effort to resolve the matter through loss mitigation.  A Suggestion of Bankruptcy appears to have been filed with the Court on 03-12-2014 and an automatic stay was entered.  During the pendency of this case, it appears that two separate sales of the property were vacated; the most recent sale date of December 15, 2014 is pending.

As the Examiner suspected, as evidenced by prior research, many of the Citimortgage loans were sold to the Federal Home Loan Mortgage Corporation ("Freddie Mac"); however, there is no proof of transfer or assignment to Freddie Mac up until May 5, 2014, when the Plaintiff assigned its bid to Freddie Mac, now claiming that it is the "investor" in this loan, there being no consideration being tendered.  It is widely known that Freddie Mac claims that it does not loan money; that it is simply a guarantor of loans.  Further, it is also evident according to *IRS Publication 938* that Freddie Mac administers multiple REMIC trusts, which are registered with the SEC and it is highly likely that the money for the Borrower's loan came from investors inside of one of those unidentified REMIC trusts.  Citimortgage thus appears to be the interim funding lender, while the transfer to Freddie Mac appears to hide the real parties in interest in this proceeding.

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It is also highly likely that any relevant paperwork involving Freddie Mac's participation in the Borrower's loan is concealed within the Collateral Loan File and deliberately NOT assigned, which would also violate the REMIC's Closing Date; thus, effective transfer to the Freddie Mac trust would have also violated New York trust law.

It further appears that the Assignment of Bid to Freddie Mac has not been recorded to date, which would indicate to the Examiner that Freddie Mac is instructing the parties to withhold disclosure until the actual sale takes place.  This makes the entire issue suspect for fraud on the court and constitutes probable cause for Florida RICO violations.

Case No. 122: *Wells Fargo Bank, N.A. v. Gildardo Rivas et al* (2010 CA 7245 MF)

This case was filed on 12-23-2010 by Robert L. Wunker (FBN 176998) of the Rutherford Mulhall, P.A. law firm (making its first appearance within this report); who also appears to have filed the Notice of Lis Pendens on 12-28-2010 as CFN#2010193727.  There are multiple issues with this Complaint, to wit:

(1) The Plaintiff's law firm attached letters to the Complaint from the Office of Thrift Supervision ("OTS") and the Office of the Comptroller of the Currency ("OCC"), respectively,  explaining the merger of World Savings Bank, FSB into Wachovia Mortgage, FSB (dated 11-19-2007); and from Wachovia Mortgage, FSB to Wells Fargo Bank, N.A.; however, these letters say nothing of the actual transfer of the Borrower's loan from World Savings to Wells Fargo Bank, N.A.;

(2) Wells Fargo Bank filed suit against Wachovia Bank (196 Fed. Appx. 246; U. S. 5th App. Ct; 2006) in which the former sued the latter for failing to deliver all of the loan and origination documents, which goes to the argument that despite the claims within the attached letters, there is no guarantee that Wells Fargo Bank, N.A. ended up with the Borrower's loan paperwork;

(3) Paragraph 7 of the Complaint claims that the note and mortgage "have not been assigned", yet there is no demonstrated proof as to how the note and mortgage made its way through the successive mergers and acquisitions;

(4) A copy of the alleged six-page subprime, "Pick-a-Pay Note" was also attached to the Complaint; however, there is no indorsement-in-blank from World Savings to anyone else and thus, the Note as it is presented does not constitute "bearer paper";

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(5) The Verification is signed by a "Vice President of Loan Documentation", which makes the Complaint suspect because from previous experience with Wells Fargo-related litigation, everyone is a "Vice President of Loan Documentation", even Florida attorneys who have no authority to sign as such, even under a Limited Power of Attorney; and

(6) Because there was no recorded Assignment of Mortgage up until the last of the case's pendency, in an apparent attempt to assign the Mortgage to a closed Truman 2013 SC4 Title Trust REMIC in Irvine, California, the entire proceeding appears to have been manufactured with no affirmative proof of acquisition of the note and mortgage other than the self-authenticating claims of the Plaintiff.

The suspect Assignment of Mortgage is noted below:

CFN#2014034290, recorded by presentment on 03-11-2014
Document Prepared by: Wells Fargo Assignment Team, Minneapolis, MN on 03-03-2014
Signer: Shelji Dahip (who claims to be … a Vice President of Loan Documentation) for Wells Fargo Bank, N.A. S/B/M Wachovia Mortgage FSB F/K/A World Savings Bank, FSB, as Assignor, to U.S. Bank as Trustee for Truman 2013 SC4 Title Trust, whose Closing Date was likely in 2013 (this appears to be a privately-held trust) that could not be located within the SEC registry.
Notary: Michelle Rae Petersen (Minnesota Notary Commission Expires 01-31-2017)
Witnesses: None
Issues: There is no evidence of transfer of the Note, just the beneficial interest in the Mortgage.  It is further highly likely that the Notary did not witness the signature being affixed by the signer.  There are numerous markers of document manufacturing and robosigning.

Kerry Green (FBN 451975) filed a notice of appearance as counsel for the Plaintiff on 03-07-2013 on behalf of Aldridge Connors, LP, not a stranger to this Report.  Counsel was formally substituted by Judge Miller on 03-14-2013. Shortly thereafter, it appears the Defendant homeowner also retained counsel.  On 03-19-2014, Plaintiff's counsel Andrew Scolaro (FBN 44927) submitted an Exhibit List, which included Paragraph 4, which stated, "The Pooling and Servicing Agreement relating to the subject loan, including the mortgage loan schedule associated with the loan".  This would further indicate to the Examiner that the Note was securitized and that Wells Fargo Bank, N.A. was apparently NOT the proper party to bring this action. There is not mention of the 03-11-2014 Corporate Assignment of Mortgage that was discussed previously, being filed as an Exhibit; thus, the Court may not have been informed as to the transfer of only the Mortgage (and not the Note).  Suspect issues then would arise as to whether or not the Plaintiff had standing to do anything, since U.S. Bank was the alleged Trustee as of March 3, 2014, as constructively noticed in the real property records of Osceola County, Florida.   The attached Exhibit List contains a printout apparently generated by Rushmore Loan Management of Irvine, California.

### COMPREHENSIVE FORENSIC EXAMINATION OF THE
### REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Based on the Exhibit, there is no feasible way that any corporate representative from Wells Fargo Bank, N.A. could testify with any accuracy as to where the figures on this printout came from and from whence they were derived.

Despite these issues (and the recorded Assignment filed during the latter part of the case pendency, in apparent reliance of counsel), coupled with what appears to be an attorney-directed production of a Corporate Assignment of Mortgage (see the Wells Fargo Foreclosure Attorney Manual for reference), Judge Pleus entered summary judgment for the Plaintiff, who at that time (04-01-2014) had already transferred its interest to another party.  Also on 04-01-2014, Aldridge Connors' counsel filed what it claimed was the Original Note, which again, contained no endorsements to any subsequent party, including the REMIC trust, which had already been assigned the Mortgage on 03-03-2014; thus, the trust REMIC could not have properly received all of the pertinent documents by its Closing Date to make the transfer effective.  The property was subsequently sold to Wells Fargo Bank, N.A. and a Certificate of Title was issued on May 16, 2014 and filed for record as CFN#2014075649 on 05-30-2014.

There is no feasible reason to explain why the Assignment was not noted in the documents proffered by counsel for Aldridge Connors, LP.  The Assignment itself is suspect as being manufactured; thus, probable cause for violation of Florida Criminal Code § 817.535 (as the property was taken through the intended use of the recorded Assignment).  Further, as the law firm and the Plaintiff appear to have colluded in its manufacture, there is probable cause for violation of Florida RICO statutes.  Further, since it appears that the Wells Fargo Assignment Team is highly likely unsupervised by competent counsel, that there exists potential violations of unauthorized practice of law.  Because of the construction of the case at bar and the failure to note the recently-recorded Assignment, there also exists potential issues for fraud on the Court.


**Case No. 123:** *BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, L.P. v. Jodi A. Klein et al  (2010 CA 1068 MF)*

This case was originally filed by the law firm of David J. Stern, P. A. on 02-09-2010.  The filing signatures of the attorneys were totally illegible (if not for their Florida Bar Numbers, no one would know who handled the paperwork).

It appears that Melissa Muros (FBN 638471) filed the Complaint on behalf of Maribel Diaz (FBN 55716).  Alery Delgado (FBN 88607) appears to have filed the Notice of Lis Pendens; recorded by presentment on 02-12-2010 as CFN#2010020260.  It further appears from the correspondence included with the case file that Klein was in a Chapter 13 bankruptcy in the Middle District of Florida. There were multiple issues with the Complaint, to wit:

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) The Plaintiff appears to be servicing the loan for the real party in interest, who is not present in these proceedings;

(2) The Complaint is not verified. It is signed by a scribbled signature of a Stern law firm attorney who highly likely cannot be a fact-based witness, as everything provided in this Complaint was probably based on computer-generated hearsay information and data;

(3) It further appears that on October 23, 2012, Menina E. Cohen of Ablitt Scofield law firm filed what he purported to be the original Note and Mortgage. The claimed Original Note has a restrictive endorsement to "Countrywide Document Custody Services, A Division of Treasury Bank, N.A." from the originating Lender (HomeBanc Mortgage Corporation), signed by Heidi Buck (there is an attorney for Northwest Trustee Services in Washington State named Heidi Buck Morrison, who could be one in the same person), who purports to be a "Limited Vice President";

(4) On the following page (following Page 3 of 3 of the Note) there are three more indorsement stamps affixed to a page that is NOT marked ALLONGE TO NOTE. It appears these endorsements were manufactured and the signatures of David A. Spector (who claims to be Managing Director for both Countrywide Home Loans, Inc. AND Countrywide Home Loans Servicing, LP) appear to be markedly different in character and it is highly likely someone else affixed his signature to the unmarked allonge. Further, the alleged ALLONGE page has no two-hole punch markings as the other pages do, which is clearly a marker of document manufactur ing and potential fraud on the Court.

At this juncture, it appears that the final endorsement was in blank, turning the Note into alleged "bearer paper", still undated as to effective date of transfer and still suspect.

Further, the "Affidavit of Plaintiff's Counsel as to Fees" and "Affidavit of Plaintiff's Counsel as to Costs" filed on 10-23-2012 by Cohen BOTH contain a notarial execution acknowledged in Middlesex County, Massachusetts, when in fact, Cohen is in Florida. The notary claims that Cohen "personally appeared" before him, which is highly unlikely and further appears to constitute fraud on the Court.

Further, the Affidavit Supporting Plaintiff's Motion for Summary Final Judgment appears to fail for the following reasons:

(1) Megan Nicole Oxendale does not have claim to have personal knowledge of the facts contained within the Affidavit but relies on the hearsay input of others; and

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**(2) Oxendale claims to be an officer of BANA (an acronym commonly used by Bank of America, N.A. officers attesting as affiants to documents such as this), and there is she does not have personal knowledge of how all of the inspection fees (of $15.00 each) accrued. There is also reason to believe that a computer generated these fees wherein an actual inspection did not physically occur; thus, Oxendale's information is suspect for being manufactured and thus fraudulent.**

**Again, Cohen filed three statements named "Verified Statement as to Military Status" that was acknowledged by the same Massachusetts Notary Public (Marc Robert Berninger) in Middlesex County, Massachusetts, who claimed that Cohen appeared before him when it was highly likely this did not happen. So far, that's five documents that appear to have been fraudulently manufactured by Ablitt Scofield and filed with the Court. This would warrant probable cause for violation of Florida's RICO statutes.**

**CFN#2014029882, electronically recorded on 02-28-2014**
**Signer: Elizabeth A. Ostermann (who claims to be a Vice President of Foreclosure for Carrington Mortgage Services, LLC, Attorney-in-Fact)**
**Notary: Raschelle Holmes (California Notary Commission No. 2034693; still active)**
**Witnesses: None**
**THIS CHAIN OF TITLE CONTAINS FRAUDULENT DOCUMENTS THAT WERE USED IN THE APPARENT ILLICIT TAKING OF THE REAL PROPERTY BELONGING TO JODI A. KLEIN (Certificate of Title issued on May 21, 2014; CFN#2014072412)**
**There are multiple issues with this case, to wit:**

**(1) Lender Legal Services, LLC, by virtue of the recorded document containing its name, is a party to this issue;**

**(2) The Corporate Assignment of Mortgage was executed on January 16, 2014; however, it was backdated to July 12, 2013, in order to make it appear as if it was effectuated in line with the alleged trust's ability to accept it;**

**(3) The LPOA that appears to have been utilized to effectuate the authority of this Assignment was not recorded in the real property records of Osceola County, Florida until January 23, 2014 (CFN#2013010084); thus, the January 16, 2014 authority vested with signor Elizabeth A. Ostermann was not constructively noticed until a week later, making the entire assignment suspect ultra vires;**

**(4) It appears that an unknown party with the Law Offices of David J. Stern, P.A. initiated the filing of the Notice of Lis Pendens on behalf of Maribel Diaz (Florida Bar No. 55716; allegedly FBN88607) as CFN#2010020260, on behalf of BAC Home Loans Servicing LP F/K/A Countrywide Home Loans Servicing, LP through what appears to be a host of in-house assigned mortgage documents.**

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

It appears that Scott M. Gross (FBN63921) from Ablitt-Scofield, P.C. filed a substitution of counsel during the pendency of the proceeding (on or about May 12, 2011).

On January 13, 2014, it appears that Marc Jandy (FBN 91735) of Lender Legal Services, LLC filed a Motion to Substitute the Party Plaintiff and Amend the Case Style and it further appears that Jandy was substituted as co-counsel in the case.  Eventually, it appears that both firms agreed to a full substitution of Lender Legal Services, LLC as counsel in the case.

 It further appears as if Jandy convinced the homeowner to sign away her rights to the property during the pendency of the proceeding, despite the issues unknown to her with the suspect assignment.  The Assignment of Mortgage, in effect, resulted in the apparent improper taking of the property because Christiana Trust:

> (a.) was taking a property whose mortgage loan was allegedly non-performing at the time the Assignment was drafted; and

> (b.) the issues involving the LPOA would have negated the Assignment.

A Consent Final Judgment of Foreclosure was signed by Judge Pleus on March 4, 2014, filed for record on 03-06-2014 as CFN#2014032574, which brings this case well within the target range for the Forensic Examination.  The filing of the Assignment appears to indicate probable cause for violation of Florida Criminal Code § 817.535, despite the outcome of the case due to its intended use in depriving the homeowners of their property.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

### SECTION SEVEN: FINAL SUMMARY

This Final Summary is divided into four (4) specific sections, each with its own brief set of concerns and overviews, concluding with an attorney opinion of the overall results of this forensic examination.  It is worthy of note here that no such joint study of corresponding records has ever been conducted in any county of the United States that is involved with the judicial process. By virtue of what we have observed here, we can safely conclude that those actions taken in non-judicial processes would virtually hide all of the factors we have specifically identified from not only the court, but from borrowers as well.

Based on that assumption, it is no wonder that there is a political movement afoot to attempt conversion of Florida into a non-judicial State to expedite the foreclosure process.  This would appear to serve only the banking interests operating within this State (and Oscecola County) and to the detriment of every property owner in Florida due to the shambles that appear evident in a majority of the property records due to the repeated filing of manufactured documents that contain apparent false and fraudulent information, designed for one purpose only: to manufacture proof of claim and thus standing to foreclose.  It is obvious here that the recorded Assignments have to be "designed" to appear congruent with the alleged Note manufactures, if we are to believe what the Florida Mortgage Bankers Association has stated to Judge Jennifer Bailey in the September, 2009 letter regarding opting to "eliminate" paper files of Notes and Mortgages.  As will be evidenced within this Summary, one of more of the WITNESSES listed in this Report have personal knowledge that what is contained in this Report is not just mere speculation.

## I. Specific Causes of Action Believed to have Occurred that are Evident in this Examination

As previously noted in the case studies reviewed here, there is sufficient belief that there are suspect issues are criminally present to assert probable cause for violations of one or more of the following:

> (1) Manufacturing of documents known to contain false and misrepresentative statements, recorded in the public record with the intent to deprive homeowners of their property in violation of Florida Criminal Code § 817.535, a felony in the State of Florida;

> (2) Multiple actors involved in the development of said manufactured documents that were caused to be recorded, including but not limited to:

>> (a.) the use of the United States Mails for the delivery of such documents to be recorded in the real property records of Osceola County, Florida, in violation of 18 U.S.C. § 1341 (mail fraud);

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(b.) the use of electronic recording software to further facilitate the recordation of documents in the public record and in the Court systems in Osecola County (and elsewhere in Florida), in violation of 18 U.S.C. § 1343 (wire fraud), from both within and without the State of Florida;

and insodoing, conspired with each other to manufacture said documents without regard to their content, ordered by their respective management and respective supervisory interests to facilitate perjury in the real property records, in violation of the Florida Racketeer Influenced Corrupt Organization (RICO) statutes, with more than three specific violations within a 5-year period, a felony in the State of Florida;

(3) Involvement in the document manufacturing processes by foreclosure mill law firms' attorneys who prepared the document for signing by other attorneys within said foreclosing law firms or in the alternative, by employees of the servicers who have no personal knowledge of any of the events to which they have affixed their signatures, many of which are acknowledged under penalty of perjury or by claim that an authorized capacity exists, when such capacity is unproven or non-existent. These offenses are clearly violations of Florida Bar Ethics, probable cause for disbarment, sanctions and other criminal penalties as provided under the Florida Criminal Code for perjury and subornation of perjury, since the documents were created with the intent to be signed by someone else with little or no authority;

(4) Due to the involvement of non-lawyers in the document creation process (especially in third-party document manufacturing plants as noted in this Report), there is probable cause for actors within these documents, in making statements within said documents which find their way into a public record by mail, wire or personal presentment by foreclosure mill law firm attorneys, constitute the unauthorized practice of law;

(5) Acknowledgment of all documents by notaries within and without the State of Florida, who are officers of Florida or the respective States in which these notaries carry out their duties, in violation of multiple provisions of F. S. A. Chapter 117, regarded herein as the commission of both misdemeanors and felonies, for failing to:

(a.) physically witness the signatures of the signers involved in the manufacture of said documents;

(b.) maintain a notarial journal or log book which is required in the State of Florida for all notarial transactions;

COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(c.) falsely swear to a document that a signer has lawfully affixed their signature to a document, claiming to have full knowledge of its contents when in fact the signer does not possess said knowledge or knows said contents to be false or non-existent; and

(d.) maintain integrity in the notarial process by refusing to rely on the non-legal opinions of non-attorney supervisory personnel in the process of repeatedly affixing their signatures and notarial seals to documents in robotic fashion, with the intent to further the process of violating any one of the foregoing criminal codes or statutes;

(6) With specific regard to the foreclosure law firm attorneys filing Complaints to Foreclose Mortgages in Osceola County (and elsewhere in Florida), the failure to properly supervise and review and maintain ethical standards for the production and facilitation of recording of said suspect documents and court filings, in violation of all sections of Florida Bar Rule 4-5.3(b); and

(7) With specific regard to the foreclosure law firm attorneys filing Complaints to Foreclose Mortgages in Osceola County (both from within and without the State of Florida), the intent to suborn perjury or knowingly alter sworn declarations after they have been signed by the declarants, that are eventually filed with the Court in Osceola County, with the knowledge that such alterations in fact occurred, thus committing perjury and suborning perjury in violation of Florida Bar Rules and Code of Professional Conduct.

## II. Specific Noted Patterns of Behavior that are Suspect for Criminal Activity

The mere fact that the lenders opted to favor use of the MERS® System, which facilitates the use of computer software platforms to scan original documents to image file, to be uploaded into a database and maintained privately without regard to the statutory processes of public recording is suspect for the furtherance of fraud upon the real property records and the Florida Courts as well.

If we again are to believe that documents were "eliminated" (shredded, spoliated) for the purposes of convenience and easy access of computer-generated accounts of the real documents (using UETA principles), we must then assert that suspect behavior continues to thrive in the retrieval processes of these documents.  If an original document is shredded, then what proof is there that the computer-generated "copy" was in fact not manipulated for such criminal purposes?

The following patterns are suspect for criminal behavior in the manufacture of documentation with the intent to record or file such processes within the public record or with the court file:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) The exchange of unverifiable, computer-generated data which can be readily accessed by those parties which possess the same software platform, that through the use of a username and password, can access such information and then purport to rely on such unverified information as being accurate and truthful and then swearing to said information under penalty of perjury in court-filed verifications;

(2) The deliberate intent to create promissory notes or to affix manufactured or computer-manipulated data files with the indorsement stamps or seals of persons known to facilitate the transfer and assignment of such notes without their knowledge of the actual transfers of said notes and then to portray to the court that such notes are "originals" when in fact, they are known by the submitting parties to be manipulated with the intent to deceive the court into believing they are genuine;

(3) The deliberate intent to create promissory notes or to affix manufactured or computer-manipulated data files with the indorsement stamps or seals of persons known to facilitate the transfer and assignment of such notes without their knowledge of the actual transfers of said notes and then to portray to the United States government that such notes are "originals" when in fact, they are known by the submitting parties to be manipulated with the intent to deceive the court into believing they are genuine;

(4) The deliberate intent to create Assignments of Mortgage which contain false and misrepresentative information as to the specific locations of the parties engaging in the manufacture of such information, which is intended to be relied upon by the court or filed in the public record, with the intent to be relied upon by insurance companies or any other public official or bar-licensed attorney facilitating the use of such document as evidence at trial or for the purposes of issuing an insurance policy against the affected parcel of real property;

(5) The deliberate intent to create Assignments of Mortgage which contain reference to the transferring of the Note, known to be false and misrepresentative (because of the parties' use, generally by employees of the Servicer and not by any person with knowledge of the actual event of transfer of said Note) by facilitating the use of Mortgage Electronic Registration Systems, Inc. ("MERS") to conceal the chain of title from the originating lender to the alleged claimant party-in-interest, when the creator of the document(s) knows is non-existent or in fact has no personal knowledge of the transfer of said Note, but is affixing their signature to documents because their supervisor told them to do so (either by direct order with the threat of loss of employment or by making assertions to said employees that what they were doing was legal) with the intent that the manufacture of such information was intended to be relied upon by the court or filed in the public record, with the intent to be relied upon by insurance companies or any other public official or bar-licensed attorney facilitating the use of such document as evidence at trial;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(6) The use of multiple parties, including bar-licensed attorneys, who create such documents within the privacy of their offices in one part of the State of Florida, to be recorded in the public record in Osceola County (and elsewhere within the State of Florida) with the express intent to be relied upon as fact in evidence in a foreclosure proceeding when the attorney knows that the information in the document was manipulated or altered to "fit into the scheme of" the apparent manufacture or manipulation of the "copy" of the image file of any document relied upon in court proceedings or as fact in the public record, when the information contained therein was known to be false, altered or manipulated; including

      (a.) There is evidence of attorneys who are without the State of Florida also drafting and directing the execution of Assignments of Mortgage; and

      (b.) There is key evidence within the case files in the report of attached Assignments of Mortgage to the Complaint with the intent to bring the recorded document forward from a point in time prior to the target period with the intended use to authenticate it within the pendency of the case;

(7) The deliberate intent by the Plaintiffs-in-interest to substitute counsel at a time when such acts (as noted in the foregoing suspect patterns) would become obvious to the Court, with the intent to "sidetrack" the Court in an attempt to obscure potential issues of fraud upon the Court;

(8) The insertion of Assignments of Mortgage (created well after the filing of the Notice of Lis Pendens by Plaintiff's counsel) into the Court file or simultaneously, into the real property records of Osceola County and then into the Court file, in an attempt to create standing AFTER the fact; and

(9) Direct implications from at least one WITNESS that a certain financial institution is directing the manufacture of promissory notes and Assignments of Mortgage with the intent to defraud the United States government as part of its settlement agreement. A working flow chart provided by this witness, describing the key processes (not including the manufacturing) is attached as part of this Report Summary as **Exhibit 29** herein by reference. It should be noted that the last three (3) pages of this Exhibit contain suspect flow chart data relevant to document manufacturing and RICO issues involving parties in Florida.

All of the foregoing processes are based upon the necessity to retrieve image data or information inputted into computer-generated files, which must then be manufactured or manipulated to make a case for standing in a foreclosure trial for the purpose of the taking of real property through suspect means. These behaviors appear to further the process of fraud on the Court and in the real property records, as a by-product of document manufacturing processes.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**III. Implications Arising from this Forensic Examination**

**As a result of the issues presented within this Report, the following implications must be asserted:**

*A. The use of Lost Note Affidavits may contain False and Misrepresentative Information*

It is no surprise that many of the documents that became part of this forensic examination were targeted because of certain issues that manifested themselves, including but not limited to the following:

(1) In light of the 2009 admissions made regarding the "elimination" of notes:

"The reason many firms file lost note counts as a standard alternative pleading in the complaint is because the physical document was deliberately eliminated to avoid confusion immediately upon its conversion to an electronic file." Comments of the Florida Bankers Association at 4, In re: Amendments to Rules of Civil Procedure and Forms for Use with Rules of Civil Procedure, No. 091460 (Fla. 2009) (citation omitted);

(2) Although the number of notes that were intentionally destroyed is unclear, it seems obvious that in many cases firms have employed the lost note affidavit process simply to avoid the trouble of looking for the note. One Florida legal aid attorney estimated that 80% of the foreclosure complaints in her locality were accompanied by lost note affidavits. *See* Bob Ivry, *Banks Lose to Deadbeat Homeowners as Loans Sold in Bonds Vanish*, Bloomberg (Feb. 22, 2008), www.bloomberg.com/apps/news?pid=newsarchive& sid=aejJZdqodTCM;

(3) Certain types of "Lost Note Affidavits" reviewed in this report contain the same markers of document manufacturing that are customarily seen in "Assignments of Mortgage" which contain the same document manufacturing markers, such as:

(a.) in the case of Ocwen Loan Servicing, LLC, the same notorious 16 robosigners aka notaries public, all signing as one officer or contract manager of one firm or another, through the use of unproven attorney-in-fact status; and

(b.) in the case of Ocwen Loan Servicing, LLC and Bayview Loan Servicing, LLC, the same boilerplate templates are repeatedly used, which do not comport with the case law established by the Florida courts in Section (4) below;

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(4) Certain case law established in the Florida courts challenges the manner in which the Affidavits proffered in support of the bank's claim of lost note:

(a.) *Correa v. U.S. Bank, N.A.*, 118 So. 3d 952, 955 (Fla. Dist. Ct. App. 2013) (finding an affidavit insufficient when a foreclosure plaintiff did not prove the content of the note or the circumstances under which the note was lost);

(b.) *Beaumont v. Bank of N.Y. Mellon*, 81 So. 3d 553, 554–55 (Fla. Dist. Ct. App. 2012) (holding that a foreclosure complaint was properly dismissed when plaintiff failed to prove who lost the note or when it was lost, offered no proof of anyone's right to enforce the note when it was lost, and produced no evidence of ownership of the note);

(c.) U.C.C. § 3309(a)(1)(B) (amended 2002); *see also* Feltus v. U.S. Bank, N.A., 80 So. 3d 375, 377 (Fla. Dist. Ct. App. 2012) (quoting FLA. STAT. ANN. § 673.3091(1)(a) (West Supp. 2014)) (holding that even under the 2002 amendments to U.C.C. section 3309, the complaint was insufficient because it "failed to allege that [the alleged holder of the note] 'was entitled to enforce the instrument when loss of possession occurred, or has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred'"); and

(5) In light of the fact that Florida was one of only 12 states that adopted the 2002 amendments to Uniform Commercial Code Section 3-309(a)(1)(B).

There were also certain instances where Lost Note Affidavits were used to submit "Satisfactions of Mortgages" or in the alternative, "Releases of Liens" when in fact, the Lost Note Affidavit was recorded AFTER the Satisfaction or Release was recorded; thus, confusing the "story" behind the chain of title (effectively clouding title by prescriptive means potentially involving the unauthorized practice of law) as a matter of convenience.

### *B. Cases Involving MERS Confuse the Issue of Signing Authority*

Whenever the use of MERS in any Mortgage-related document is present, grave concern must also be presented as to the authority of the persons affixing their signatures to any Assignment of Mortgage (and/or Note) as to the real validity of the authority they actually possess, based on the assumptions that such signing authority was never accorded in the first place. This information was previously discussed in *Section Two* of this Report and will not be restated here.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

This Report asserts that until proven otherwise before a grand jury and prosecuted to the fullest extent of the law, that the MERS® System will continue to facilitate fraud on the real property records and upon the Court in foreclosures of real property in Osceola County, Florida.

MERS and its parent, MERSCORP Holdings, Inc. are NOT public recordation systems.  They are privately-held corporations, whose founders also consist of Fannie Mae and Freddie Mac. This would appear to place these two GSE's in the middle of the conspiracy to defraud property owners of Osceola County, Florida, since they both derive a profit from holding stock in the parent company, MERSCORP Holdings, Inc.

Again, all entities claiming to have some limited signing authority generally have a recorded Limited Power of Attorney ("LPOA") on file in the real property records PRIOR TO their signing acts.  There are very few non-specific instances where such authority is accorded by MERS, to the point where such authority conferred by LPOA is negligible.  Instead, this shell corporation prefers to utilize a private "Signing Authority Agreement", a copy of which is attached to this Report as **Exhibit 30**, wherein an "Associate Secretary" (Timothy Renner) is giving signing authority not to Flagstar Bank per se, but instead to its document manufacturing vendor employees, yet in Paragraph 6, it plainly states, "Member and Vendor agree to indemnify and hold harmless (MERS and MERSCORP Holdings, Inc.) … from all third-party claims … or willful misconduct of Vendor".   Even though LPOA's may state specific information containing similar language, at least there is recorded authority which can be verified, while in this case, unless one manages to obtain a Signing Agreement, authority is unknown or non-existent.  MERS appears to prefer to self-authenticate its authority by resolution, which is only corporate opinion and does not appear to have any force and effect of recordation as to constructive notice.

MERS has no idea when the users of the MERS® System manufacture and record these Assignments of Mortgage using MERS's name in any form or fashion.  Many of these users facilitate Assignments of Mortgage by claiming that MERS has an interest in promissory notes, which MERS does not.  MERS states this in its very own policies, which its users appear to blatantly disregard.  The mere fact that such misrepresentations continues to occur cannot continue to be ignored if this "system" of proper and truthful recording is to be remedied.

MERS and its officers (in its policies and statements) make the users of the MERS® System indemnify MERS and MERSCORP Holdings, Inc. and its successors and assigns from all liability connected with the use of its name, which, as evidenced here, promulgates fraud in the use of MERS to commit perjury in the real property records by lending impetus to making statements known to be false and misrepresentative.  Thus, the MERS® System appears to facilitate RICO-style criminal acts which have been allowed to permeate the real property records of Osceola County, Florida.  Despite the fact that there are Florida cases that give MERS standing to assign the Mortgage:

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

(1) MERSCORP Holdings, Inc. FKA MERSCORP, Inc. (owner of the MERS® System) is an unknown party to the proceeding that is never disclosed to the Borrower at closing;

(2) That despite MERS policies mandating that users of the MERS® System follow said policies, in most instances, the Servicer of the Lender (or in the alternative, a third-party document manufacturing plant) violates MERS policies by using MERS as a "cover" in either name, address or both, to conceal the true party in interest, to the benefit of the member bank claiming standing in a foreclosure action; and

(3) The use of MERS to create a Mortgage in close proximity to the filing of a Complaint to Foreclose is highly suspect for document manufacturing and thus, perjury.

### *C. Recent Court Cases in Florida Challenge Securitization and Standing Issues*

Copies of the following cases are listed as Exhibits for review based on their involvement with the issues of securitization and standing and are noted as follows:

In *Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, L.P., FKA Countrywide Home Loans Servicing, L.P. v. Linda A. Nash, et al* (2011 CA 4389 MF; Div. 14-K), attached to this Report as **Exhibit 31** by reference, Osceola County Senior Judge Robert J. Pleus (who also serves as a Senior Judge in Seminole County) ruled in a Final Judgment (and then denied a subsequent Motion for Reconsideration filed by Plaintiff's counsel) that since America's Wholesale Lender (a DBA of Countrywide Home Loans, Inc.) was not registered to do business in the State of Florida at the time the Note and Mortgage were executed, they were thus invalid and of no force and effect of law.

In *Delia v. GMAC Mortgage Corporation* (5D14-78; October 17, 2014), the 5th DCA reversed and remanded an Orange County, Florida Circuit Judge's ruling, holding that GMAC failed to introduce any evidence on the element of adequate protection for its lost note, citing F. S. § 673.3091 and F. S. § 702.11(1), both 2013 Florida statutes.  A copy of this case is attached to this Report as **Exhibit 32**, incorporated herein by reference.

In *Burdeshaw v. The Bank of New York Mellon, et al* (1D13-2703; October 13, 2014), the 1st DCA reversed the Final Judgment of Foreclosure and remanded the case for dismissal based on inter alia that the Bank failed to establish any foundation qualifying the printout that its witness (Nancy Johnson of SunTrust Mortgage, Inc.) read as a business record and failed to establish any foundation qualifying Ms. Johnson as a records custodian or person with knowledge of the four elements required for the business records exception (allegations of hearsay testimony).  A copy of this ruling is attached to this Report as **Exhibit 33**, incorporated herein by reference.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In *Kiefert v. Nationstar Mortgage, LLC* (1D13-5998; October 13, 2014), the 1st DCA reversed a Duval County Circuit Judge's ruling, holding that Nationstar's witness was only able to establish that its predecessor, Aurora Loan Services, LLC, was in possession of the note when the complaint was filed, "not that the note had been endorsed at the time the complaint was filed." A copy of this ruling is attached to this Report as **Exhibit 34**, incorporated herein by reference.

In *Lacombe v. Deutsche Bank National Trust Company* (1D13-4094; October 14, 2014), the 1st DCA reversed a Duval County Circuit Judge's ruling, holding that the Bank's witness was "incoherent" and insufficient to support the trial court's judgment because the Bank's documents and witness did not prove the Bank's standing to bring the foreclosure action. Specific to the witness's testimony was "Exhibit 1" (a list of applicable pooling and servicing agreements covered under a Limited Power of Attorney with the Servicer (Select Portfolio Servicing, Inc.)), that the Borrower's mortgage note was actually in one of the pools of mortgages referenced in the exhibit proffered in Court testimony. This was also noted as a similar issue within this Report. A copy of this case is attached to this Report as **Exhibit 35**, incorporated herein by reference.

Despite the fact that many Florida courts have little regard for New York case law, one specific case, *LNV Corp. v. Madison Real Estate, LLC* (2010 NY Slip Op 33376(U), York, J.) is one of many that cite that MERS may have the right to "assign the mortgage" to LNV Corporation, as held in many Florida cases, MERS did not have the right to assign the Note because the Borrowers did not grant MERS that right; thus, MERS "could not transfer any rights to the underlying note"; thus, LNV did not have standing to foreclose. A copy of this ruling is attached to this Report as **Exhibit 36**, incorporated by reference herein.

As previously noted at the beginning of this report, the closest that a Florida Court has come to seriously negating standing of a Plaintiff REMIC trust was noted in *HSBC Bank USA, N.A. v. Teresa M. Marra* (2008 CA 0630 NC; 12th Jud. Dist., Sarasota Co., FL, Williams, J., Bailey, D., Magistrate), attached to this Report as **Exhibit 37**, incorporated by reference herein.

In the foregoing case, HSBC attorney (Kahane & Associates) challenged the Magistrate to go look up the SEC's file references on the REMIC and Magistrate Deborah Bailey took the attorney up on his offer and discovered, as was adopted into the Magistrate's Order, that the note did not make the trust pool by the Closing Date. The Examiner believes that HSBC was forced to settle because it would have created an "open door" to attack REMIC trusts' standing in courts throughout the State. This in of itself, is suspect based on the review of every REMIC case involved in this Report. There is sufficient evidence from other cases across the country that MERS-originated Mortgages, intended to be securitized, contravened New York Estates, Powers & Trusts § 7-2.4 based on the failure of the Assignment of the Mortgage into the REMIC trust within the prescribed time frame allowed (based on the Closing Date of the REMIC) by law. It is this case that established the parameters for the assertions by the Examiners in this Report as to whether a REMIC trust actually has standing based on improper Assignments of Mortgage.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

In other cases, the banks have argued that the Borrower cannot attack the REMIC, yet it appears the REMIC is where the Borrower's actual loan money came from, not the originating Lender.

## IV. Closing Comments

In the September 15, 2014 edition, *The Florida Bar News* reported:

> (1) Florida foreclosure volume has declined with the number of filings in the first half of 2014 about 50% of filings for the same period the year prior;

> (2) The backlog has also been reduced to about one half that of the prior year; and

> (3) Some attribute the reduction in filings to the new foreclosure laws passed in July of 2013.

Generally, the new law [HB87] requires more front-end due diligence by lenders to ensure that they have the legal right to foreclose. This may, in fact, have caused an increase in internal scrutiny of loan documents resulting in the delay or postponement of foreclosure filings. To that end, examination of these documents revealed that lenders and their foreclosure mill attorney law firms continue to be sloppy in their case filings and that there continue to be suspect issues with case development and presentation to the Court.   The Examiners believe that this scenario is common to every county in Florida, not just Osceola County.  The fact that we have circuit court rulings in *Marra* and *Nash* leads the Examiners to further believe that some of the real truths of the matter are starting to be acknowledged; however, seemingly by only a handful of judges who are willing to be educated on such matters and not simply taking the bank counsel's word for every allegation put forth without absolute proof.

Everyone would like to believe that we have an improved real estate economy due to the corresponding willingness of banks to modify loans rather than foreclosing on them may be a factor in the reduction in foreclosures. It should be noted that Florida is still at the top in comparison to other states in pending foreclosure cases with a backlog still at some 185,000 cases.  From previous statistics released by groups such as RealtyTrac and CoreLogic, the 9th Circuit, comprising Orange and Osceola Counties, leads the State of Florida as the #1 market area for foreclosure activity behind Tampa, Miami and Jacksonville.

This still does not change the fact that as part of this alleged "front-end due diligence", that document manufacturing in concert with multiple actors is still a growing concern in light of revelations that original notes and mortgages were shredded after they were scanned into the MERS electronic database.  Based on the results noted within this Report, foreclosure mill law firms have demonstrated that in order to survive, they will stop at nothing to assist lenders in document manufacturing, whether there is a shred of truth to any of the manufactured documents proffered in foreclosure complaints or not.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

**V. Attorney Opinion Statement of Jennifer Englert, The Orlando Law Group, P.A.**



3855 Avalon Park East Boulevard
Orlando, Florida 32828-4853

Tel: 407.512.4394
Fax: 407.982.7250

December 28, 2014

Armando Ramirez
Clerk of the Circuit Court
Osceola County, Florida
2 Courthouse Square
Kissimmee, Florida 34741

Dear Mr. Ramirez:

I have been a member of the Florida Bar since 1999.  I have defended over one hundred home owners in foreclosure matters and I have seen first-hand how the banks and their servicers have harmed home owners in Florida.  I have taken foreclosure cases to trial in Osceola County.

I have been following the actions of Attorneys General of other states with interest to see if they will take any action against those taking homes without the proper paperwork in place.  Further, I have been following any cases that address foreclosures to see if there is any relief for home-owners.

While there has not been much in Florida in the way of legislation to assist homeowners in fore-closure matters there are indications and the Legislature does want foreclosures to be done hon-estly.

Rule 1.110(b), Florida Rule of Civil procedures was amended to require verification of mortgage foreclosure complaints involving residential real property. The primary purpose of this amend-ment is clearly to provide incentive for the plaintiff to appropriately investigate and verify its ownership of the note and the ability to foreclose on it.  It also shows the need to conserve judi-cial resources that are currently being wasted on inappropriate foreclosures and to avoid harm to defendants resulting from suits brought by plaintiffs not entitled to enforce the note.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

Rule 1.110(b) requires a clean, plain statement of accuracy by the person who actually verifies the truth of the claims made, and who is identified as being in a position to actually do so. It would seem that the investigation set forth in the report illustrates many cases in Osceola County alone where the individuals who verified Complaints and supporting affidavits were not qualified to do so or lacked the pertinent knowledge to do so. This alone warrants further investigation.

Throughout the report the Examiner found a clear pattern where "users" of the MERS® System used it to benefit corresponding (originating) lenders, interim funding lenders and warehouse aggregate lenders, who make use of investor money through the pass-through exchange without perfecting the transactions in a timely fashion. Borrowers as well as the applicable government regulatory agencies were unaware notes and mortgages would be converted into image files, to be manipulated and traded within the MERS® System so that no one would know their ultimate path (or whether the loans were fractionalized over multiple trust pools in deviation of GAAP) in the securitization system. MERS appears to have been utilized in RICO-style fashion to cover up the chain of title to make it "fit" into a pattern where the real property records were used to show the path of the mortgage, while the bearer paper (manufactured and manipulated by computer) has been used as evidence in court time after time to foreclose on homeowners. In no other litigation scenario has such unreliable evidence been used on such a regular basis.

Unfortunately members of the bar have been complicit in the efforts of MERS and its users. I am sure the reader is aware of the several attorneys and law firms which have been disciplined and closed due to their behavior in foreclosure litigation as well as the abatement of foreclosure cases due to their behavior. In my fifteen years as a bar member this is unprecedented.

As someone who has dealt with these firms for the past five years I can say that many do their best to hide discovery document, sell notes prior to trial and do whatever else they can to keep defense attorneys from being able to talk to needed witnesses and review the pertinent documents until trial. As Judges have mandates to move these cases along, continuances to get the needed information are virtually non-existent.

The attached report exists to bring light to the abuses of MERS and the court system to improperly foreclose on homeowners. The Examiner found evidence of several statutory violations which will be outlines in the remainder of my letter.

First, in order to perpetuate the scheme of robo-signing and the creation of false affidavits, Florida Statute § 817.15 was violated in that false entries were made to add corporate officers to the books of banks and servicers with intent to defraud which is a felony of the third degree. These false entries were to create new officers so that they could sign assignments and other documents to allow foreclosures to sail through. Creating false officers also violates Florida Statutes §817.155 and §817.16.

## COMPREHENSIVE FORENSIC EXAMINATION OF THE
## REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA

These statutory violations are minor compared to the actions the "fraudulent officers" perpetrated. A highlight of the report is violations of § 817.535 of the Florida Statutes which prohibits filing of false documents or records against real or personal property. A person who files or directs a filer to file false documents with the intent to defraud or harass another commits a felony of the third degree. Repeating this act is a felony of the second degree.

There are also obvious civil penalties which could be addressed with the findings of any criminal investigation which would be a further deterrent to this type of behavior.

The report includes many examples of fraudulent documents which purport to claim under oath that the signor had personal knowledge of the facts attested therein which contained false and misrepresentative information with the intent to deprive the property owner of their property in violation. The "MERS® System" then utilized fraudulent documents to manipulate data in third-party computer software platforms generated and utilized by document manufacturing plants and foreclosure mill law firms to create, manufacture and file documents containing questionable and potentially false and misrepresentative information under the direction of the servicers and title companies to bring fraud on the court.

These actions also consist of forgery in violation of Florida Statutes § 831.01 as MERS, the banks and servicing companies falsely made, altered and counterfeited thousands of public records, in matter wherein such certificate, return or attestation was received as legal proof; with intent to injure or defraud any person, which is a felony of the third degree. By publishing the forged instruments including false deeds, instruments or other writings mentioned in § 831.01 knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud employees of MERS, its users and the applicable law firms were guilty of a felony of the third degree in violation of § 831.02.

The report also outlined statutory violations pursuant to § 117.105 for all the evidence of false and fraudulent notary work based on false acknowledgment on the written instrument which are each felonies of the third degree.

It is clear in the report there is vast evidence of violations of several Florida criminal statutes by MERS, its users and some law firm personnel. From there it is easy to establish under RICO, Florida Statute § 895, an "Enterprise" (a corporation, business trust, or other legal entity) engaged in a "pattern of racketeering activity," (at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents.) The Examiner has documented several hundred pages of incidents where documents were falsely created in order to foreclose on homeowners which is a clear pattern of activity. The sole purpose of generating the documents was to have "evidence" to use in a Court of law at summary judgment and trial.

**COMPREHENSIVE FORENSIC EXAMINATION OF THE
REAL PROPERTY RECORDS OF OSCEOLA COUNTY, FLORIDA**

It is practically impossible to poke holes in these documents as they are verified by witnesses who clearly had no role in creating them who simply testify that according to a computer system they can see in their office the documents are genuine.

As a member of the Bar I do hope that action is taken against the manufacturers of false documents as they have been so extensively used to the detriment of so many citizens in our Courts. Had these documents not been so easily available then there would not have been nearly as many foreclosure cases which cluttered dockets and prevented so many from getting a fair trial.  All of this is incongruous with our legal system.


Sincerely,

Jennifer A. Englert, Esq.